**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| IAN McLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| LILY CHIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**NESENOFF & MILTENBERG, LLP**
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

RELEVANT BACKGROUND .................................................................................................. 3

   I.   Procedural History .......................................................................................................... 3

   II.  The Parties' States of Residence .................................................................................. 6

   III.  Potential Witnesses In This Lawsuit ............................................................................ 7

   IV.  The Amended Complaint's Allegations......................................................................... 8

     A. Plaintiff's Background ............................................................................................... 8

     B.  Plaintiff's Relationship With Sue Roe ..................................................................... 8

     C.  Plaintiff's Encounters with the Defendant ............................................................... 9

     D. Defendant's Retaliatory Conduct ........................................................................... 11

     E.  Plaintiff Returned Home Due to Threats to His Safety............................................ 13

     F.  Defendant's Petition for a Temporary Restraining Order ...................................... 13

     G. Defendant and Sue Roe's Coordinated Action Against Plaintiff............................. 14

     H. Plaintiff Was Substantially Injured By Defendant's Misconduct .................................. 15

ARGUMENT .......................................................................................................................... 16

     A. Defendant's Motion Is Barred By the Doctrine of Judicial Estoppel............................ 17

     B.  Defendant Has Not Met Her Burden of Demonstrating That A Transfer Is Warranted . 20

       1.  Plaintiff's Choice of this Venue Should Be Accorded Substantial Weight .............. 20

       2.  The Factors of Party Convenience, Witness Convenience and Access Militate
          Strongly Against the Proposed Transfer. .................................................................. 21

       3.  The Interest of Justice Will Not Be Served By Transferring This Action ................ 24

         a.  The ██████████████████████████████████.................................. 24

         b.  Louisiana's Relationship to this Action Is Strong But Not Sufficiently So To
           Overcome Other Factors Weighing Against the Transfer. ................................... 24

         c.  A Comparison of Docket Conditions Favors Denial of the Proposed Transfer ... 26

         d.  The Preference for Efficiency and Consistency Militate Toward a Transfer ███
           ██████████████████.................................................................................. 27

CONCLUSION........................................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*,
   No. 5:20-CV-46-M, 2020 WL 4913280 (E.D.N.C. Aug. 20, 2020)...................................23, 28

*Fellores v. Winter*,
   No. CIV.A. 2:06CV551, 2007 WL 473727 (E.D. Va. Feb. 8, 2007) ..........................................18

*Hubbard v. Eitan Group N. America*,
   2023 WL 2959991 (E.D.N.C. Apr. 14, 2023)...........................................................................22

*In re Camp Lejeune Water Litig.*,
   No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023).............................................................................27

*In re Willingham Patent Litig.*,
   322 F. Supp. 1019 (M.D.P.L. 1971) ......................................................................................22

*Info. Control Sys., Inc. v. Avesta Techs., Inc.*,
   No. 1:99CV217-T, 2000 WL 1409862 (W.D.N.C. Sept. 6, 2000).........................................25

*James v. Jacobson*,
   6 F.3d 233 (4th Cir. 1993) ......................................................................................................3

*Martineau v. Weir*,
   934 F.3d 385 (4th Cir. 2019) ................................................................................................19

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)..............................................................................................................17

*Oudeh v. Goshen Med. Ctr., Inc.*,
   No. 5:22-CV-193-D, 2022 WL 18028281 (E.D.N.C. Dec. 29, 2022) ....................................18

*Pegram v. Herdrich*,
   530 U.S. 211 n. 8 (2000)........................................................................................................18

*Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*,
   No. 319CV00508FDWDSC, 2020 WL 90663 (W.D.N.C. Jan. 7, 2020) ...............................21

*Speed Trac Techs. v. Estes Express Lines, Inc.*,
   567 F. Supp. 2d 799 (M.D.N.C. 2008) ..................................................................................21

*Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*,
   No. 1:19CV486, 2020 WL 2086188 (M.D.N.C. Apr. 30, 2020)........................................23, 28

*Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*,
   791 F.3d 436 (4th Cir. 2015) ................................................................................................20

*Wells Fargo Bank, N.A. v. Highland Constr. Mgmt. Servs., L.P.*,
   807 F. App'x 246 n. 2 (4th Cir. 2020) ...................................................................................17

**<u>Rules</u>**

28 U.S.C. § 1332...............................................................................................................................3

28 U.S.C. § 1404(a) ...............................................................................................................2, 17, 20

## INTRODUCTION

In this diversity action, Plaintiff Ian McLaughlin ("Plaintiff" or "Mr. McLaughlin") asserts that, in 2022, Defendant Lily Chin ("Defendant" or "Ms. Chin")—with whom he had consensual, sexual experiences while both were undergraduates at Tulane University ("Tulane")—became angry after she learned he had sex with another student and launched a campaign to defame, humiliate, harass and punish him. The Amended Complaint filed by Plaintiff on November 9, 2023 (ECF No. 23) (the "Amended Complaint") alleges that, *inter alia*, beginning in February 2022 Defendant spread false and defamatory sexual assault accusations against Plaintiff to fellow Tulane students, Plaintiff's fraternity, on social media, in a Title IX report and subsequent investigation and in Louisiana civil court. Defendant acted in concert with Tulane Student Sue Roe to defame Plaintiff and inflict maximum emotional, economic and reputational harm on Plaintiff, with the intention of destroying Plaintiff's future and career prospects such that her false accusations were permanently associated with his name.

On January 5, 2023, the Court denied Plaintiff's *ex parte* motion to proceed anonymously in this action on the ground that this action is entirely distinguishable from cases in which universities are sued for mishandling the investigation of Title IX allegations. After Plaintiff appealed the Court's order Defendant appeared—using her own name—in this action and for purposes of opposing the appeal.

On ██████████████████████████████████ in which the Court granted him pseudonym protection. By mid-May 2023, Defendant was aware of the lawsuit and pseudonym order and elected to proceed in her strategy to oppose Plaintiff's pseudonym appeal on the ground that this defamation action is readily distinguishable from Title IX cases brought against universities. On September 19, 2023, at oral argument, Defendant moved forward with this argument. In October 2023, the Fourth Circuit adopted Defendant's position, finding that this case

is a garden variety defamation action that is distinguishable from university cases. Plaintiff's appeal was denied and Plaintiff was required to proceed in his own name.

After Plaintiff filed the Amended Complaint, Defendant suddenly sought to transfer this action to the Eastern District of Louisiana and to later have it ███████████████████ ██████████████████. This position is clearly inconsistent with Defendant's position to date, which sought to distinguish the ████████ and maintain them on separate tracks so that the pseudonym would be lost. Defendant's prior arguments that this case does not implicate Tulane's Title IX proceeding suggested a belief that ████████████████████ ███████████████████████████.

After learning that Plaintiff had obtained the right to proceed pseudonymously ██████ ████████ Defendant could have withdrawn her arguments that this action does not overlap with any review of Tulane's Title IX proceeding. However, she chose not to. For this reason, ***judicial estoppel bars this Motion***. Each of the required circumstances for application of that doctrine is present here.

Moreover, even if Defendant is not judicially estopped from seeking a transfer of this action to the Eastern District of Louisiana, transfer under 28 U.S.C. § 1404(a) is unwarranted because: 1) Plaintiff's choice of this District should be given deference; 2) this District is a more practical forum for this litigation; 3) the majority of witnesses live in New York (according to Defendant); and 4) a transfer cannot be said to be in the "interest of justice" because it would effectively ██████ ███████████████████████.

For these reasons, and those stated below, the Court should deny Defendant's Motion.

## RELEVANT BACKGROUND

### I.    Procedural History

On December 8, 2022, Plaintiff, using the pseudonym "John Doe," filed this action against Defendant referencing her as "Jane Doe," asserting state law claims, basing subject matter jurisdiction of this Court on diversity pursuant to the terms of 28 U.S.C. § 1332. ECF No. 1. Concurrent therewith, Plaintiff filed an *ex parte* motion, with a supporting memorandum of law, for leave to proceed under a pseudonym. ECF Nos. 5-6. In his supporting brief, Plaintiff cited 13 federal cases in which courts permitted plaintiffs to proceed anonymously in actions naming universities as defendants. ECF No. 6.

On January 5, 2023, the Court issued an order denying Plaintiff's *ex parte* motion and ordered that Plaintiff either (1) file an amended complaint in his real name; or (2) file a notice of dismissal. ECF No. 8 (the "Pseudonym Order"). In the Pseudonym Order, the Court applied the five factors set forth in *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Declaration of Andrew T. Miltenberg, dated January 17, 2024 ("Miltenberg Decl."), Ex. A, Pseudonym Order, at 2. The Court also considered its "independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Id.* at 2-3 In the Pseudonym Order, the Court addressed the numerous university cases Plaintiff cited in support of his motion, holding that Plaintiff was wrong to argue that the university cases were similar to this action—a defamation case between private individuals. *Id.* at 7. The Court further held that "[a]lthough courts sometimes allow those accused of sexual assault to sue schools or universities pseudonymously when attacking the findings of a university Title IX investigation, the considerations in those cases do not apply here." *Id.* at 7. It explained, "unlike in those cases,

Plaintiff is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation[,]" and that "Tulane is not a defendant." *Id.*

Plaintiff appealed the Pseudonym Order, and the Court stayed the portion of the Order which required Plaintiff to proceed in his own name pending the outcome of the appeal. *See* ECF Nos. 9-12, 14. On February 24, 2023, Defendant's counsel filed a Notice of Appearance and obtained an extension of time for responding to the Complaint until after Plaintiff's appeal was decided. *See* ECF No. 20.

On the same day, Defendant's counsel filed Notices of Appearance in the Fourth Circuit which identified Defendant by name. *See* Dkt. ##13, 15 in *John Doe v. Jane Doe*, Appeal No. 23-1058 (4th Cir.) (the "Appeal Dkt."). On March 29, 2023, as Defendant-Appellee, Defendant filed a response brief in Plaintiff's appeal, arguing that the Court had "properly concluded that Mr. Doe was not entitled to the rare dispensation of being allowed to litigate under a pseudonym." Miltenberg Decl., Ex. B, Appellee Resp. Br., at 12. Central to Defendant's opposition was the argument that Plaintiff "is not challenging the university disciplinary process in this case—he did not sue Tulane[.]" *See id.* at 21. Defendant opposed Plaintiff's appeal from the Pseudonym Order on the ground that Plaintiff's reliance on cases in which plaintiffs sued universities to "challenge the university disciplinary process and sought injunctive relief to expunge [their] disciplinary record[s]" was unfounded because Plaintiff's action was "not an extension of a confidential university disciplinary proceeding" but rather "an effort to recover money damages from Ms. Chin for statements she made[.]" *Id.* at 22.

On May 16, 2023, Plaintiff's counsel filed a notice in the Fourth Circuit that Plaintiff was granted pseudonym protection in his action against Tulane (the "Tulane Order"). Appeal Dkt. #40.

This submission informed Defendant's counsel that Plaintiff was proceeding by pseudonym in █ ████████████████████.

    On September 19, 2023, the Fourth Circuit held oral argument on Plaintiff's appeal. Defendant's counsel reiterated the distinction between this action and university cases, repeatedly referring to this case as a defamation action, which is an inherently public tort, as opposed to a case in which a university has been sued.[1]

    On October 26, 2023, the Fourth Circuit denied Plaintiff's appeal, holding that the Court (1) "did not abuse its discretion because it did not rely on incorrect factual or legal premises," in denying Plaintiff's motion for use of a pseudonym, and (2) "conducted a thorough, case specific analysis when it exercised its discretion." Miltenberg Decl., Ex. C, Opinion, at 19-20. The Fourth Circuit rejected Plaintiff's "central argument on appeal[,]" namely that the case "center[s] around a confidential Title IX proceeding" and is not a "garden variety defamation case[.]" *Id.* at 21. The Circuit agreed with this Court's determination that critical to the denial of Plaintiff's pseudonym motion was that (1) the cases Plaintiff relied on were distinguishable because they involved claims against universities challenging the findings of Title IX investigations; (2) the case Plaintiff filed in the district court omitted a challenge to Tulane's actions vis-à-vis Plaintiff including its Title IX investigation; and (3) Plaintiff "is only suing a private individual for defamation and he only seeks declaratory relief and money damages against Appellee." *Id.* at 21. The Circuit explained, "[t]his case is no different than a garden variety defamation case, and it does not present the exceptional circumstances necessary for Appellant to proceed by pseudonym." *Id.* at 21-22.

    The Circuit's Opinion and Judgment in the appeal were docketed in the district court on October 26, 2023. ECF Nos. 21-22. Plaintiff filed an Amended Complaint on November 9, 2023

---

[1] *See* https://www.ca4.uscourts.gov/OAarchive/mp3/23-1058-20230919.mp3 (audio transcript of oral argument on appeal, September 19, 2023) (counsel for Defendant makes the arguments at 30:36-37:39).

using his name, and that of Defendant, in the caption of the action and the entire pleading. Miltenberg Decl., Ex. D, Am. Compl., (ECF No. 23). The Amended Complaint asserts claims for: 1) defamation (*Id.* ¶¶ 92-109); 2) abuse of process (*Id.* ¶¶ 110-123); 3) tortious interference with contract (*Id.* ¶¶ 124-135); 4) intentional infliction of emotional distress (*Id.* ¶¶ 136-146); and 5) civil conspiracy (*Id.* ¶¶ 147-153). Plaintiff seeks a declaration that Defendant defamed Plaintiff and an award of damages against Defendant, including compensatory and punitive damages. *See id.* Prayer for Relief.

On December 15, 2023, Defendant filed a partial motion to dismiss, seeking to dismiss Plaintiff's claims for (1) abuse of process, (2) tortious interference with contract, and (3) civil conspiracy. ECF Nos. 27-28. Defendant also filed the instant motion, seeking to have the venue for the action transferred to the Eastern District of Louisiana. ECF Nos. 29-33.

## II.    **The Parties' States of Residence**

Plaintiff is a resident of South Carolina. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 6, 45. At the time the action was filed, Defendant was a resident of North Carolina. *Id.* ¶ 9. *See* ECF Nos. 1, 29-2.

In Defendant's declaration in support of her motion to transfer, she states that she currently "resides" in the state of Colorado, but does not state when she became a resident of that state. *See* ECF No. 29-2, ¶¶ 1, 6. She went to high school in North Carolina and periodically "returned home" to North Carolina while attending Tulane. *Id.* ¶ 5. Defendant graduated from Tulane in May 2023, about five months after this action was filed. *Id.* ¶ 6. After graduation she returned home to North Carolina. *Id.* A FedEx addressed to Defendant, containing the Complaint and service waivers in this action, were accepted at the Defendant's North Carolina residence on January 30, 2023. Miltenberg Decl., ¶ 7, Ex. E.

### III.    <u>Potential Witnesses In This Lawsuit</u>

The Amended Complaint identifies two Tulane administrators to whom Defendant made or potentially made false and defamatory statements about Plaintiff: 1) Christopher Zacharda and 2) Title IX investigator Jacqueline Barber. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 46, 48, 50. Dr. Zacharda resides in Chicago. ECF No. 29-1, Woodley Aff. ¶ 7; Miltenberg Decl., ¶ 8. One witness identified in the Affidavit of Erica Woodley, Avery Pardee, ████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ ECF No. 29-1, ¶ 7. Defendant has not specified what material information can be provided by Ms. Pardee. ECF No. 29-1. Nor has Defendant specified what material information can be provided by Ms. Woodley, Ms. Cofrancesco, Ms. Broussard or Dr. Porter. *Id.* All that is stated by Ms. Woodley is that the persons identified in her affidavit had "knowledge of" Ms. Chin's Title IX complaint. ECF No. 29-1, ¶ 7. Ms. Woodley, herself, only says that she "became familiar" with Ms. Chin in 2022. There is no evidence that any person identified by Ms. Woodley would refuse to testify at a trial in North Carolina. Defendant identified two former classmates who live, or may live, in Louisiana. ECF No. 29-2, Chin Aff., ¶¶ 10-12.

Defendant has identified eight (8) potential non-party witnesses that live in New York, ***including Sue Roe***. ECF No. 29-2, Chin Aff. ¶¶ 8-9. Two of her former classmates live in Colorado. *Id.* ¶ 11. Defendant asserts that "at least some of the students identified" in her Title IX report and "some of the Tulane administrators" identified in the Woodley Affidavit will be "potential witnesses." *Id.* ¶ 15. There is no evidence that any witnesses identified by Defendant would refuse to testify at a trial held in North Carolina.

IV.    **The Amended Complaint's Allegations**

A. **Plaintiff's Background**

Plaintiff enrolled in Tulane in mid-2018 and commenced his studies in Finance, Management and Psychology in August of that year, with the intention of pursuing an M.B.A. upon his expected graduation in 2022. Miltenberg Decl., Ex. D, Am. Compl. ¶ 11. Plaintiff was an exemplary student and member of the community during his time at Tulane. *See id.* ¶ 12. He served as Co-President of Tulane's section of a national service organization for two years and served as the treasurer of the Food Recovery Network, which assists individuals at homeless shelters. *Id.* On track to graduate with *cum laude* honors, Plaintiff was a Merit Scholarship recipient and a tutor in Tulane's tutoring center. *Id.*

When Plaintiff enrolled in Tulane, he understood that Tulane was offering him a fair and equitable educational experience in which he would be protected from actions by other students deemed "Prohibited Conduct" under the Tulane University Code of Student Conduct (the "Code"). *Id.* ¶ 13. Under the Code the following are listed as "Prohibited Conduct": (1) the "[f]urnishing [of] false information to the University or to a University official", and (2) "harassment or intimidation." *Id.*

B. **Plaintiff's Relationship With Sue Roe**

Plaintiff met Sue Roe in September 2019, just over two years prior to Plaintiff meeting Defendant. *Id.* ¶¶ 14, 19. Plaintiff and Sue Roe engaged in a casual sexual relationship from September 2019 to December 2019, and later continued to engage in consensual sexual activity with each other on an occasional basis during the period January 2020 through August 2021. *Id.* ¶¶ 14-18. Ms. Roe's statements to Plaintiff, statements to others that Plaintiff later learned about, and actions when she was in Plaintiff's presence, indicated that she was interested in a serious relationship with Plaintiff, even though Plaintiff had informed her that he did not have any such

interest. *Id.* ¶ 14. After Plaintiff told Ms. Roe that he did not want to date her, Ms. Roe began telling people that she "hated" Plaintiff. *Id.* ¶ 15.

On one occasion in August 2021, Ms. Roe explained to Plaintiff that she was engaged in a sexual relationship with a different man, a man who had started "dating" another woman. *Id.* ¶16. On that occasion, at night and at Ms. Roe's home, Plaintiff and Sue Roe engaged in consensual sex. *Id.* After the sex, Plaintiff made a comment to the effect of "we may regret that later," which caused Ms. Roe to cry. *Id.* ¶ 17. Plaintiff immediately apologized for the comment, explaining that it was not meant to be interpreted as anything against Sue Roe. *Id.* Plaintiff tried to smooth over the situation and suggested that the two discuss the matter in the morning. *Id.* He then went to sleep. *Id.* Sue Roe was still upset and, while Plaintiff was asleep in her bed, she woke up one of her housemates. *Id.* ¶ 18. The housemate went into Sue Roe's room and asked Plaintiff to leave. *Id.* After being slow to respond to the request because he was still asleep, Plaintiff eventually woke up and left Sue Roe's home, texting Ms. Roe to tell her that he had left, to suggest that she lock the door, and to wish her "good night." *Id.* Plaintiff engaged in no further sexual encounters with Sue Roe. *Id.* ¶¶ 14-18.

Nearly six months later, on February 11, 2022, Ms. Roe submitted a Title IX report to Tulane, naming Plaintiff as a respondent. *Id.* ¶ 47. Ms. Roe submitted her report on the same day that Defendant submitted a Title IX report against Plaintiff. *Id.*

### C. Plaintiff's Encounters with the Defendant

Plaintiff and Defendant met in or around September 2021 through the dating app Tinder. *Id.* ¶ 19. They exchanged phone numbers at a concert in November 2021, but they did not speak or meet after that. *Id.* On January 27, 2022, Plaintiff and Defendant ran into each other at a bar near the Tulane campus. *Id.* ¶ 20. Defendant went home with Plaintiff that night, where the two went to sleep; Defendant left in the morning. *Id.* Plaintiff and Defendant met each other on two

occasions shortly thereafter: (1) on January 29, when they attended Plaintiff's fraternity "date party"; and (2) on February 3, a short time after midnight on Plaintiff's birthday, February 2. On January 29, after returning back to Plaintiff's room from the party, they spent a few hours trying to engage in consensual intercourse, napping and then actually engaging in consensual sexual intercourse. *Id.* ¶ 25. Thereafter, around 9 p.m. that evening, Plaintiff walked Defendant home engaging in friendly conversation; Defendant gave Plaintiff a tour of the house she was living in, alluded to Plaintiff returning to her house in the near future, and kissed Plaintiff goodbye. *Id.* Plaintiff returned home. *Id.*

On February 2, 2022, the two exchanged texts, and around midnight, Plaintiff texted Defendant to ask if she wanted to get together. *Id.* ¶ 27. She replied that she did. *Id.* Plaintiff met Defendant outside of her house, and the two walked to Plaintiff's house, where, in his bedroom, they engaged in consensual, sexual intercourse. *Id.* ¶ 28 Plaintiff wore a condom during the encounter and Plaintiff went to sleep immediately after. *Id.* The morning of February 3, after the two kissed, Plaintiff walked Defendant home, engaging in friendly conversation. *Id.* ¶ 30. When they arrived at Defendant's home, they kissed and Defendant wished Plaintiff a happy birthday. Plaintiff returned home. *Id. Id.*

Plaintiff observed strange behavior by Defendant. During the "date party" on January 29, Defendant told Plaintiff that a fellow party attendee, "K.S.," had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. *Id.* ¶ 43. At one point during the "date party," the two walked by Sue Roe. *Id.* Shortly after, Defendant asked Plaintiff, "Is there anyone you're avoiding here?" *Id.* ¶ 24. Later, when the two were in bed at Plaintiff's home, Plaintiff was unable to engage in intercourse; in response, Defendant told Plaintiff that it was alright, that she was too drunk to have sex anyway. *Id.* ¶ 25. Plaintiff found

this statement strange since he observed that Defendant had only had two drinks over the course of a five-hour period. *Id.*

Further, after informing Tulane student friends of his that he had invited Defendant to the "date party," he learned that Defendant reportedly made a complaint to Tulane about her ex-boyfriend's violation of COVID-19 guidelines shortly after he ended his relationship with Defendant. *Id.* ¶ 21. This resulted in Defendant's ex-boyfriend being banned from campus. *Id.*

### D. <u>Defendant's Retaliatory Conduct</u>

The night following the second sexual encounter between the parties, February 3, 2022, Plaintiff, out at a bar with friends, ran into a woman on whom he had a crush. *Id.* ¶ 31. Plaintiff and his "crush" spoke for over an hour, after which they went to Plaintiff's house and engaged in consensual sexual activity. *Id.* Defendant saw Plaintiff conversing with the woman at the bar. *Id.* ¶¶ 31, 68, 82-86. Defendant's close friend and roommate told the Tulane investigator that Defendant changed her account of her consensual sexual encounter with Plaintiff to a sexual misconduct narrative only after seeing him out with another woman. *Id.* ¶ 85.

On February 4, 2022, Defendant stated to one of Plaintiff's friends, T.R., that Plaintiff had "engaged in nonconsensual sexual activity." *Id.* ¶ 32. Three days later, on February 7, a friend of Plaintiff's informed him that negative rumors about him were spreading, and alerted him to an Instagram post by a close female friend of Sue Roe's stating that "Being friends with a sexual assaulter means you are part of the problem[,]" and indicating that she was referring to Plaintiff. *Id.* ¶ 33. As well, another friend alerted him to a post **by Defendant** on Instagram stating that "Being drunk is not an excuse for Sexual Assault." *Id.* ¶ 34. Additionally, another Tulane student told Plaintiff that she had heard from three different individuals that Plaintiff had assaulted a Tulane student. *Id.* ¶ 35.

Unbeknownst to Plaintiff at the time, on February 6, 2022, Defendant reported her false accusations against him to Tulane's Case Management and Victim Support Services. *Id.* ¶¶ 45-46.

On the evening of February 8, 2022, Defendant texted Plaintiff, falsely claiming that Plaintiff had engaged in inappropriate sexual behavior. *Id.* ¶ 37. Her text contained the statement, "You are… a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim." *Id.* Plaintiff was shocked by the text as he knew that Defendant's allegations of nonconsensual conduct were false. *Id.* ¶ 38. On February 9, the president of Plaintiff's fraternity told Plaintiff that Defendant had called him claiming that Plaintiff had assaulted her and telling him that she was "going to the school" with her accusations. *Id.* ¶ 39. Plaintiff also learned from friends that Defendant was approaching Plaintiff's female friends and asking them to spread her accusations of sexual misconduct "like wildfire." *Id.* ¶ 40. Defendant texted a screenshot of her message to Plaintiff to other Tulane students, identifying Plaintiff as "rapist." *Id.* ¶ 43. The false accusations against Plaintiff were widely disseminated, reaching students studying in Spain. *Id.* ¶¶ 35-36.

On February 10, 2022, Plaintiff's fraternity president sent a message to the fraternity chat group spreading Defendant's false allegations. *Id.* ¶ 44. The president refused to change or delete his message spreading the false information. *Id.*

On February 11, 2022, Defendant and Sue Roe simultaneously submitted Title IX/Sexual Misconduct Reports against Plaintiff. *Id.* ¶ 47.

When speaking with Tulane's Title IX investigator, Defendant acknowledged speaking to Plaintiff's fraternity president, resulting in Plaintiff getting kicked out of his fraternity. *Id.* ¶ 51. Defendant also bragged to friends that Plaintiff would be banned from campus. *Id.* ¶ 54. On February 18, 2022, Tulane imposed an indefinite campus ban on Plaintiff. *Id.*

Defendant complained to the Title IX investigator that Plaintiff "slept with so many girls," and expressed her desire to have Plaintiff expelled. *Id.* ¶ 53. Defendant further stated that she wanted her sexual misconduct claim to be "attached to [Plaintiff's] name." *Id.* Defendant also asked at least one of Plaintiff's friends about Plaintiff's work plans and expressed her desire that Plaintiff lose "a nice comfy little job that he had all lined up by mommy and daddy," and. *Id.* ¶ 86.

On March 12, 2022, Defendant posted a Tik Tok about Plaintiff—immediately after he started contacting witness to gather information for his defense in the Title IX investigation. *Id.* ¶ 76.

**E. Plaintiff Returned Home Due to Threats to His Safety**

On February 8, 2022, Plaintiff's friends called his parents and told them it was not safe for Plaintiff to remain on the Tulane campus. *Id.* ¶ 39. On February 10, 2022, Plaintiff's mother flew to Louisiana to bring Plaintiff home. *Id.* ¶ 45. Due to the mental anguish and heightened anxiety Plaintiff was experiencing as a result of the false accusations, Plaintiff returned home to South Carolina. On February 11, 2022, Plaintiff withdrew from Tulane for the semester. *Id.*

**F. Defendant's Petition for a Temporary Restraining Order**

On March 16, 2022, Defendant filed a Petition for Protection From Abuse, resulting in the immediate issuance of a Temporary Restraining Order ("TRO"), in Louisiana civil court. *Id.* ¶ 87; Miltenberg Decl., Ex. F. The TRO barred Plaintiff from contacting Defendant through third parties and from entering the Tulane campus. Am. Compl. ¶ 87; Miltenberg Decl., Ex. F, TRO, at p. 3. Defendant grounded her Petition in a conversation that Plaintiff had with a witness in the Title IX investigation who voluntarily spoke to Plaintiff by phone. Miltenberg Decl., Ex. D, Am. Compl. ¶ 88; Miltenberg Decl., Ex. F, Petition, at p. 2. She also cited Plaintiff's phone calls to his own friends to discuss the Title IX investigation. *Id.* The Petition falsely alleged that Plaintiff had been harassing, intimidating, and stalking Defendant – when in fact Plaintiff had neither contacted

13

Defendant nor had attempted any such contact since he had first learned of her accusations through mutual friends. Ex. D, Am. Compl. ¶ 87; Ex. F, Petition, at pp. 2-3. Defendant knew that her TRO application was baseless, but filed it in order to prevent Plaintiff from defending himself in the Title IX investigation and to bolster her Title IX report. Ex. D, Am. Compl. ¶ 88. She also pursued the application for the purpose of pursuing a personal vendetta against Plaintiff and to further defame and retaliate against him. *Id.* ¶¶ 111-116. Defendant knew that Tulane would view the TRO as evidence against Plaintiff. *Id.* ¶ 89. Defendant's Petition expressly referenced the Tulane Title IX proceeding. Miltenberg Decl., Ex. F, Petition, at p. 3 ("I have an open Title IX case with Tulane University that is currently being summarized by the investigator.") Though Defendant asserted that Plaintiff "stalked, harmed/threatened to harm" her acquaintances, she also indicated that Plaintiff had no history of violence towards others. Miltenberg Decl., Ex. F, Info. for Service of Process.

Defendant failed to appear at the hearing held on her TRO application. Miltenberg Decl., Ex. D, Am. Compl. ¶ 89. Notably, Plaintiff, who had returned to New Orleans from his home in South Carolina to attend the hearing, saw Defendant at the airport in New Orleans shortly after he had left the hearing. *Id.*

### G. Defendant and Sue Roe's Coordinated Action Against Plaintiff

On January 28, 2022, N.B. and Defendant had a conversation about Sue Roe's negative opinion of Plaintiff. *Id.* ¶ 56. N.B. stated that Defendant expressed a desire to learn more about Ms. Roe's experience with Plaintiff. *Id.* ¶ 57. There is evidence that Defendant and Ms. Roe connected on Instagram on or around January 28, 2022, prior to Defendant's sexual encounters with Plaintiff. *Id.* ¶¶ 21-31, 60-67. On January 29, Defendant asked Plaintiff a cryptic question after seeing Ms. Roe at a party. *Id.* ¶¶ 23-24. Defendant's text to Plaintiff on February 8, 2022 referenced Plaintiff's purported "previous victim." *See id.* ¶ 37.

14

On February 11, 2022, Defendant and Ms. Roe simultaneously submitted false Title IX/Sexual Misconduct reports claiming that Plaintiff had engaged in nonconsensual sexual activities with them. *Id.* ¶ 47. Their false allegations were similar. *Id.* Plaintiff believes that Defendant and Ms. Roe scheduled their interviews to be within one hour of each other on February 16, 2022. *Id.* ¶ 50. Defendant's false statements to the Title IX investigator closely mirrored Ms. Roe's false statements. *Id.* ¶ 51. Defendant told the Title IX investigator that she was aware of Ms. Roe's "situation" but would let Ms. Roe "tell you her story." *Id.*

During the Title IX investigation, Defendant claimed that mutual friends connected her with Ms. Roe on February 8, 2022 and that she learned about Roe's allegations against Plaintiff after she reported her own. *Id.* ¶ 58. When Plaintiff challenged the evidence that Defendant provided to the Title IX investigator concerning the timing of her connection with Ms. Roe, Defendant failed to verify the evidence, instead criticizing Plaintiff's "Self-validated analysis [that] fails to consider any other point of view than Plaintiff's – a white male college student." *Id.* ¶ 59. There is significant evidence—including the contradictory statements of their friends—that Defendant and Sue Roe made false reports to the Title IX investigator about when they first connected in order to cover up their coordinated efforts to defame and injure Plaintiff. *Id.* ¶¶ 55-67.

**H.  <u>Plaintiff Was Substantially Injured By Defendant's Misconduct</u>**

On May 8, 2022, Plaintiff was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate. *Id.* ¶ 90. Defendant strategically exploited and manipulated Tulane's Title IX process to pursue a false report of sexual misconduct, colluded and conspired with Sue Roe to defame and emotionally and financially injure Plaintiff, and deprived Plaintiff of the benefit he was to receive from his contract with Tulane under the Code. *Id.* ¶¶ 91, 148.

Defendant exploited Tulane's Title IX procedures to "harm Plaintiff's reputation, destroy Plaintiff's relationship with his friends and fraternity, and harm his academic career and future career plans." *Id.* ¶ 91. By such action, Defendant deprived Plaintiff of the benefit he was to have received from his relationship with Tulane under the Code. *Id.*

## <u>ARGUMENT</u>

### **DEFENDANT'S MOTION TO TRANSFER SHOULD BE DENIED**

This case should not be transferred to the Eastern District of Louisiana. The backdrop of Defendant's motion ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████.[2] ████████████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████████████. In contrast, the present action concerns Defendant's false and defamatory statements about Plaintiff, and her coordinated efforts with Sue Roe to defame and injure Plaintiff such that their false accusations would be permanently associated with Plaintiff's name. *See generally* Miltenberg Decl., Ex. D, Am. Compl.

If her Motion is granted, Defendant intends to make a motion to ████████████████

██████████████████████████████████████████████████████████████████████████

██████████ Defendant's Motion, █████████████████████████████████████████████

█████ contradict the position that Defendant took in opposing Plaintiff's pseudonym appeal in the Fourth Circuit—that this defamation action between private parties, which does not name Tulane as a defendant and does not implicate Plaintiff's Title IX proceeding is factually distinct from cases in which universities are sued for Title IX violations. Defendant took this position after

---

[2] ███████████████████████████████████████████████████████████████████████

[3] Plaintiff in no way concedes that a motion to consolidate will be granted if this case is transferred.

learning that Plaintiff was granted pseudonym status in the Tulane Action. Inherent in Defendant's position was that she did not intend to seek ███████████████████████████ ██████████████████████. Defendant's position was adopted by the Fourth Circuit, which denied Plaintiff's appeal. For these reasons, judicial estoppel bars Defendant's Motion.

Even if Defendant's Motion were not barred, transfer is unwarranted under 28 U.S.C. § 1404(a), because Defendant has not demonstrated that the relevant factors support a transfer: 1) Plaintiff's choice of venue—Defendant's place of residence—is accorded significant deference; 2) Louisiana is not a more convenient forum; and 3) and the interest of justice will not be served by destroying Plaintiff's court-ordered pseudonym status in the Tulane action.

### A.  <u>Defendant's Motion Is Barred By the Doctrine of Judicial Estoppel</u>

The doctrine of judicial estoppel bars Defendant's motion because Defendant's request to transfer this case is inconsistent with the position she has taken before the Fourth Circuit. *See* discussion *supra*, Relevant Background, at Pt. I. The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from engaging in "intentional self-contradiction" as a means of gaining an unfair advantage in litigation by pursuing a theory that is incompatible with its prior position. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749–751 (2001). Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 749 (citation omitted); *Wells Fargo Bank, N.A. v. Highland Constr. Mgmt. Servs., L.P.*, 807 F. App'x 246, 250 n. 2 (4th Cir. 2020). "Judicial estoppel applies when: (1) the party to be estopped ... advanc[es] an assertion that is inconsistent with a position taken during previous litigation; (2) the position [is] one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Oudeh v. Goshen Med. Ctr., Inc.*, No. 5:22-CV-193-D, 2022 WL 18028281, at \*6 (E.D.N.C. Dec.

29, 2022) (Dever, J.) (citation omitted), *aff'd*, No. 23-1207, 2023 WL 6058484 (4th Cir. Sept. 18, 2023). Notwithstanding the use of the terms "previous litigation" and "first proceeding" in this language, judicial estoppel also applies to positions taken by a party in an earlier phase of a single proceeding that are inconsistent with a position it takes during a later phase thereof. *See Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000); *Fellores v. Winter*, No. CIV.A. 2:06CV551, 2007 WL 473727, at *2 (E.D. Va. Feb. 8, 2007) (judicial estoppel barred transfer of action to another venue). All four factors are met here and, accordingly, Defendant's motion to transfer should be denied.

 ***First***, Defendant's position for purposes of the present Motion—that this action arises out of the same set of operative facts as the Tulane action ███████████████████████ ███████████████████████—is clearly inconsistent with her position in the Fourth Circuit. *See* Moving Br. at 1-2, 7, 11, 15-16.[4] On appeal, Defendant asserted that this action—a defamation case against a private person—was distinct from a Title IX action against a university because Plaintiff "did not sue his university, and he is not challenging the result of the…disciplinary proceeding" in this action. Miltenberg Decl., Ex. B, Appellee Resp. Br. at 13. Defendant also asserted that "the individual facts of this case" concern her "false statements to Tulane students, investigators, and others." *Id.* at 13, 41. Defendant further asserted that a Title IX action against a university involves the plaintiff's challenge to the "university's administration of its confidential disciplinary process," and could serve as a "final 'appeal' of the university's actions," a consideration that "do[es] not apply here." *Id.* at 45-46. At oral argument, after learning that Plaintiff had been granted pseudonym status in the Tulane action, Defendant continued to distinguish   this   action   from   a   university   case.   *See* https://www.ca4.uscourts.gov/OAarchive/mp3/23-1058-20230919.mp3 (audio transcript of oral

---

[4] Notably, Defendant's brief does not address ██████████████████████████████████ ███████████████████████████ *See* Miltenberg Decl., Ex. G.

argument at 30:36-37:39). Implicit in Defendant's position on appeal is that this action is **not** related to an action against Tulane such that Defendant could, or would, ███████████

███████████  *See, e.g.*, *Martineau v. Weir*, 934 F.3d 385, 397 (4th Cir. 2019) (on remand district court should consider "implicit" position taken by plaintiff in a bankruptcy when deciding whether judicial estoppel is warranted).

*Second*, Defendant's position is grounded in factual distinctions between the cases: the ███████████████████████████████████████ against Plaintiff versus Defendant's false statements about Plaintiff to Tulane students, on social media and to specific Tulane administrators.

*Third*, the Fourth Circuit adopted Defendant's position on appeal, rejecting any similarity between this action and cases brought against universities and finding "[t]his case is no different than a garden variety defamation case." Miltenberg Decl., Ex. B, Oct. 26, 2023 Opinion, 16-18, 21-22.

*Fourth*, there is evidence that Defendant acted intentionally. Defendant had notice of the Tulane action as early as May 16, 2023—over four months prior to oral argument on the pseudonym appeal. Appeal Dkt. #40. It is difficult to fathom that Defendant would not have determined during the four months between mid-May 2023 and oral argument before the Fourth Circuit in mid-September whether she would seek ███████████████████████████████

█████████████████ Any mention of a possible ███████████████████ during oral argument would have risked the possibility that the Fourth Circuit would apply the university cases Plaintiff highlighted and that Defendant argued were distinguishable. That Defendant waited to mention ███████████████████████████████ suggests that Defendant

changed her position to gain a strategic advantage— 

This is a case which warrants the application of the doctrine of judicial estoppel. Defendant's current position that this action and the Tulane action are ████████████ ████████████████████ as adopted by the Fourth Circuit—that the cases are factually distinct. In addition, ██████████████████████████

### B. Defendant Has Not Met Her Burden of Demonstrating That A Transfer Is Warranted

Assuming *arguendo* that Defendant is not estopped from making this Motion, the Court must nevertheless deny it as Defendant has failed to meet her burden of showing that a transfer under 28 U.S.C. § 1404(a) is proper. Defendant failed to demonstrate how, the following factors, assessed together, justify a transfer from a venue properly selected by Plaintiff: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

### 1. Plaintiff's Choice of this Venue Should Be Accorded Substantial Weight

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Id.* at 444 (holding that the district court did not abuse its discretion in refusing to transfer venue) (citation omitted). When Plaintiff filed this action Chin was enrolled at Tulane but a resident of North Carolina, the state to which she returned after graduating in May 2023. ECF No. 1, ¶ 9; ECF No. 29-2, Chin Decl. ¶¶ 5-6; Miltenberg Decl. ¶ 7,

Ex. E (Defendant served in Cary North Carolina). Defendant has been represented by North Carolina counsel since February 2023. ECF No. 15, Notice of Appearance.

Here, Plaintiff's choice of forum is also entitled to deference because he could not have obtained personal jurisdiction over Defendant in his home jurisdiction of South Carolina. *See Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, No. 319CV00508FDWDSC, 2020 WL 90663, at *3 (W.D.N.C. Jan. 7, 2020) (foreign plaintiff's choice of venue still entitled to deference when the plaintiff cannot file suit in its home jurisdiction "due to problems obtaining personal jurisdiction over a defendant").

Defendant's argument that because Plaintiff "filed in a foreign forum and his claims bear no relation to this forum . . . his choice of forum warrants little deference" is unavailing. *See* Moving Br. at 11. *Speed Trac Techs. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008), which is cited in support of this argument, is inapposite. In *Speed Trac*, the plaintiff corporation was domiciled within the Western District of North Carolina, but filed in the Middle District and **the defendant corporation was domiciled outside the Middle District of North Carolina**. In contrast, Defendant was a resident of this District at the time this action was filed.

Accordingly, Plaintiff's choice of this District as the venue for this action is "entitled to substantial weight" in the Court's adjudication of this transfer motion.

### 2. The Factors of Party Convenience, Witness Convenience and Access Militate Strongly Against the Proposed Transfer.

Neither Plaintiff nor Defendant live in this District. Plaintiff resides in South Carolina. Defendant's state of residence was in North Carolina until after she graduated from Tulane in May 2023. ECF No. 29-2, Chin Decl., ¶¶ 4-6. At some, unspecified point in time Defendant moved to Colorado. *Id.* ¶ 6. However, her parents maintain a home in this District. *Id.* ¶ 6; Miltenberg Decl.,

Ex. E. Based on these facts, Defendant will not be inconvenienced by a trial of this case in North Carolina.[5]

An analysis of the convenience and accessibility of this District with respect to potential non-party witnesses, compared to that of the Eastern District of Louisiana, yields similar results. In the Pseudonym Order denying Plaintiff's motion to proceed anonymously in this action, the Court found that, in this action, "plaintiff is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation." Miltenberg Decl., Ex. A, at 7. Defendant took the same position in Plaintiff's unsuccessful appeal from that Order. *See* discussion *supra* at Point A. With this in mind, the non-party witnesses likely to be deposed and called in connection with Plaintiff's claims here include persons to whom Defendant published false statements about Plaintiff and with whom she conspired, including (a) Sue Roe, who lives in New York; (b) other Tulane students identified by their initials in the Amended Complaint, seven of whom live in New York; (c) Jacqueline Barber, who resides in Louisiana; and (d) Chris Zacharda who lives in Chicago. *See* Relevant Background, Pt. III. Plaintiff and Defendant will have to travel to different jurisdictions to take the depositions of all of these witnesses. Moreover, Defendant has provided no evidence that out of state witnesses would prefer to travel to Louisiana as opposed to North Carolina—which is closer to Chicago and New York—to testify at trial. Nor has any Tulane administrator identified by Ms. Woodley submitted an affidavit stating they will not testify in North Carolina. Defendant has also failed to demonstrate the materiality of the testimony that may be given by the former Tulane students and Tulane administrators identified

---

[5] While Defendant asserts that Plaintiff will be "inconvenienced" by trying the case in this forum, he has never made such an assertion. *See* Moving Br. at 14. In addition, the cases relied on by Defendant regarding inconvenience to the parties are inapposite. In *Hubbard v. Eitan Group N. America*, 2023 WL 2959991, at *7 (E.D.N.C. Apr. 14, 2023), the court lacked personal jurisdiction over the defendants, all the defendants resided in the Central District of California to which the case was transferred, and all of defendants' documents were maintained in California. In *In re Willingham Patent Litig.*, 322 F. Supp. 1019, 1020 (M.D.P.L. 1971), the cases that were transferred in a multi-district patent litigation were "virtually identical."

in Defendant's declaration and the Woodley Affidavit, stating merely that "at least some" of them will be "potential witnesses." ECF No. 29-2, ¶ 15. *See Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*, No. 5:20-CV-46-M, 2020 WL 4913280, at *6 (E.D.N.C. Aug. 20, 2020) (party seeking transfer needs to demonstrate that witnesses are willing to travel to foreign jurisdiction and the materiality of their proposed testimony); *Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*, No. 1:19CV486, 2020 WL 2086188, at *19 (M.D.N.C. Apr. 30, 2020) (motion to transfer denied where defendants did not offer any specific example of a witness who was unwilling to travel to North Carolina).

***Plainly, the factors of convenience and accessibility weigh against transfer***. Defendant's analysis yields a different result because, jumping the gun, she conceptually has consolidated this action with the Tulane action. *See* Moving Br. at 13-14. Yet she makes no showing that the testimony of each of the Tulane administrators identified in the Woodley Affidavit (other than Zacharda and Barber who are named in the Amended Complaint) can provide relevant testimony in this action. For example, Avery Pardee—who is not referenced in the Amended Complaint—

███████████████████████████████████████████████████████

████████████████████████████. Judicial estoppel once again bars Defendant from arguing that witnesses like Pardee should be considered in the transfer analysis. Defendant benefitted from the Fourth Circuit's determination, based on its acceptance of her arguments, that this case does not implicate a review of Tulane's Title IX proceeding. Any argument she now offers that current and former Tulane "employees and affiliates" who have knowledge about Tulane's Title IX proceeding against Plaintiff – but no ***firsthand*** knowledge of Defendant's statements to Tulane that are the subject of this action—should be considered by the Court in evaluating convenience and access is clearly inconsistent with her previous position.

23

### 3. The Interest of Justice Will Not Be Served By Transferring This Action

Although many factors may be considered by the Court in assessing whether the "interest of justice" would be served by Defendant's proposed § 1404(a) transfer, Plaintiff submits that one factor should predominate the Court's assessment – that a transfer, ███████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████

    **a. The** ████████████████████████████████████ ████████████████

████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████

    **b. Louisiana's Relationship to this Action Is Strong But Not Sufficiently So To Overcome Other Factors Weighing Against the Transfer.**

Plaintiff acknowledges that his live interactions with Defendant and Sue Roe took place in Louisiana. Louisiana's primary interest with respect to this action relates to the fact that certain underlying events took place at Tulane, a prominent university within the state. ███████████ ████████████████████████████████████████████████ ████████████████████████████████ Louisiana's interest in the resolution of private disputes between the parties, ██████████████████████████ .

Defendant's reliance on choice-of-law issues, and Plaintiff's claim of abuse of process in this action, to argue that Louisiana's interest in being the forum for this action "is much greater [than that of] North Carolina" is misplaced. *See* Moving Br. at 16-17. Plaintiff's abuse of process claim focuses on Defendant's use of a temporary restraining order to prevent him from questioning witnesses and as evidence in the Title IX action; it does not turn on legal issues or procedures that are particular to Louisiana. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 87-88, 111-123.

Moreover, Plaintiff disputes Defendant's contention that all of the claims in this action "will be decided under Louisiana law regardless of where they are tried." *Id.* at 16. Defendant suggests that this Court must apply Louisiana law to all of Plaintiff's claims without first determining whether a conflict of law exists between that law, and North Carolina law, respecting those claims. The suggestion is inaccurate. Where no conflict of law exists concerning a specific legal issue or claim, this Court may apply North Carolina law to promote efficient litigation. *See, e.g., Info. Control Sys., Inc. v. Avesta Techs., Inc.*, No. 1:99CV217-T, 2000 WL 1409862, at *3 (W.D.N.C. Sept. 6, 2000).[6]

Plaintiff recognizes that Louisiana law differs substantially from that of North Carolina with respect to Plaintiff's claim for tortious interference with contract.[7] The parties do not dispute that, under Louisiana law, a tortious interference claim can only be asserted against a corporate officer. Plaintiff is clearly not an officer of Tulane. In the event that the Court determines that Louisiana law applies to Plaintiff's tortious interference claim, the Court would not need extensive experience to apply such law, as the claim would be dismissed.

---

[6] This issue is further addressed in Plaintiff's opposition to Defendant's motion to dismiss.
[7] Plaintiff's opposition to Defendant's motion to dismiss addresses the application of South Carolina law to his tortious interference claim.

25

Defendant has failed to make any showing that Louisiana law differs from North Carolina law with respect to any of Plaintiff's four remaining claims. *See* Moving Br. at 16-19. In contrast, Plaintiff has demonstrated in his opposition to Defendant's motion to dismiss that this Court can adjudicate Plaintiff's claims for abuse of process and civil conspiracy under North Carolina law because it is identical to Louisiana law with respect to those two torts.[8]

### c. A Comparison of Docket Conditions Favors Denial of the Proposed Transfer

Defendant argues that the docket conditions of the Eastern District of Louisiana are substantially better-suited to handle an additional case than those of this District. *See* Moving Br. at 19-20. She contends that this District had "far more filings per judge" during the period from April 1, 2022 and March 31, 2023 than did the Eastern District of Louisiana.[9]

***Other relevant metrics indicate that the Eastern District of Louisiana is currently experiencing far more docket congestion than this District***. For example, the median time from filing to disposition for civil cases in this District for the year ending on June 30, 2023 is 9.9 months. *See* Miltenberg Decl., Ex. H. (U.S. District Court – Judicial Caseload Profile for E.D. North Carolina).[10] In comparison, this figure for the Eastern District of Louisiana is ***68.9 months***. Miltenberg Decl., Ex. I, (U.S. District Court – Judicial Caseload Profile for E.D. Louisiana).[11] The percentage of civil cases in this District that were still pending three years after having been filed, for the year ending on June 30, 2023, is 6.3%. *See* Miltenberg Decl., Ex. H. The same metric for the Eastern District of Louisiana is ***72.6%***. *See* Miltenberg Decl., Ex. I. The difference in these

---

[8] Defendant did not move to dismiss Plaintiff's claims for defamation and intentional infliction of emotional distress.
[9] For this data, Defendant cites to Federal Judicial Caseload Statistics, Table X-1A, U.S. District Courts—Weighted and Unweighted Filings Per Authorized Judgeship During the 12-Month Period Ending March 31, 2023, available at https://www.uscourts.gov/statistics/table/x-1a/federal-judicial-caseload-statistics/2023/03/31. *See* Moving Br. at 20.
[10] Available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last viewed Jan. 12, 2024).
[11] Available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last viewed Jan. 12, 2024).

statistics may be explained in part by the fact that the Eastern District of Louisiana has more vacant judgeships than this District. Whereas the "Vacant Judgeship Months" during the year ending on June 30, 2023 for Eastern District of Louisiana numbered 17.9, this District experienced 0.0 such months during the same year. Compare Miltenberg Decl., Ex. H *with* Ex. I.

Defendant makes much of the fact that this District has exclusive jurisdiction and venue over cases relating to *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023). *See* Moving Br., at 20 (citing the Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804(b) and the Joint Status Report in the case). However, as the Court is no doubt aware, the cases filed under that Act are quite different from complex civil litigations proceeding on different legal theories. Moreover, there exist streamlined procedures for such cases to be settled. The differences between standard civil actions filed in the District from cases filed here relating to the *Camp Lejeune Water Litig.* matter undoubtedly explain, in part, the dramatic differences in the "filing to disposition" and "3 years old" statistics referenced above. Individual *Camp Lejeune* cases are far less complex, and are much more quickly resolved through settlement, than are standard civil actions filed in this District.

### d. The Preference for Efficiency and Consistency Militate Toward a Transfer █████

Plaintiff recognizes that some efficiencies would be achieved by the transfer ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

Plaintiff disputes Defendant's contention that "the resolution of Mr. McLaughlin's defamation claim against Ms. Chin rises and falls along the same lines as his Title IX case against Tulane." Moving Br., at 21. The Tulane Action does not turn ████████████████

27

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Additionally, Defendant has moved to dismiss the only claim in this action that concerns Plaintiff's contract with Tulane, the tortious interference claim, and Plaintiff concedes that if Louisiana law applies to that claim it must be dismissed. Accordingly, ██████████████████

███████████████████████████████████████████████████

██████████████████████████████████, should not be accorded significant weight in the Court's decision concerning transfer of venue.

Although Defendant has argued that efficiency would be served by the proposed transfer, (*See* Moving Br., at 15-16), it is not clear how such efficiency would be achieved ████████

███████████████████ Defendant is apparently concerned with third party witnesses being required to sit for deposition twice. *See id.* at 16. However, an assessment of this concern can only be measured accurately once (and if) Defendant provides the Court with information concerning the willingness of the non-party witness or witnesses residing outside Louisiana and North Carolina to attend deposition in either Louisiana or North Carolina or both. *Cf. NextLOGiK, Inc.,* 2020 WL 4913280, at *6; *Rhino Svcs.*, 2020 WL 2086188, at *19.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Defendant's motion, along with such other and further relief as the Court deems just and proper.

Dated: January 17, 2024

Respectfully Submitted,

By:  \_\_\_/s/ *Andrew T. Miltenberg*\_\_\_\_\_

28

Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com
sbernstein@nmllplaw.com

By: /s/ *Robert C. Ekstrand*
Robert C. Ekstrand, Esq.
EKSTRAND AND EKSTRAND, LLP
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

*Attorneys for Plaintiff Ian McLaughlin*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*