UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IAN MCLAUGHLIN**                          **CIVIL ACTION**

**VERSUS**                                   **NO. 24-825**

**LILY CHIN**                                **SECTION: "P" (3)**

ORDER AND REASONS

Before the Court is Defendant Lily Chin's Partial Motion to Dismiss for Failure to State a Claim.[1] Defendant Chin moves the Court to dismiss, in part, the amended complaint filed by Plaintiff Ian McLaughlin, to the extent Plaintiff attempts to plead claims for abuse of process, tortious interference with contract, and civil conspiracy. While Plaintiff originally opposed the motion in full,[2] he later filed a motion to withdraw the portion of his opposition related to the dismissal of his claim for tortious interference with contract, agreeing that the claim is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] For the following reasons, the Court grants Plaintiff's motion to withdraw his opposition to the portion of Defendant Chin's motion seeking to dismiss his claim for tortious interference with contract (R. Doc. 82), and the Court grants in part and denies in part Defendant Chin's partial motion to dismiss (R. Doc. 27).

I.    **BACKGROUND[4]**

Plaintiff was a student at Tulane University between August 2018 and May 2022. Plaintiff alleges he and Defendant Chin, who was also a student at Tulane at the time, engaged in multiple consensual sexual encounters between January 29, 2022 and February 2, 2022. According to Plaintiff, on February 3, 2022, Defendant Chin witnessed Plaintiff talking to another woman, A.H.,

---

[1] R. Doc. 27.
[2] R. Doc. 41.
[3] R. Doc. 82.
[4] The information in this section comes from the allegations in Plaintiff's Amended Complaint. *See* R. Doc. 23.

at a bar, and Defendant Chin heard that Plaintiff and A.H. went home together from the bar. Plaintiff alleges that the next day, Defendant Chin began to disseminate false allegations about Plaintiff engaging in nonconsensual sexual activity. This included spreading rumors to Plaintiff's friends and other students at Tulane, posting on social media, reporting what Plaintiff contends were her false claims of sexual misconduct to Tulane's Case Management and Victim Support Services, as well as filing a Title IX/Sexual Misconduct report with Tulane based on false allegations of sexual assault by Plaintiff. Plaintiff also alleges that Defendant Chin filed a Petition for Protection from Abuse in Louisiana state court, based on false allegations of harassment, intimidation, and stalking, to bolster her Title IX claim against him. Plaintiff contends Defendant Chin took these actions to defame, humiliate, harass, and punish Plaintiff.

Plaintiff further alleges that Defendant Chin and another Tulane student ("Sue Roe")— who also filed a Title IX/Sexual Misconduct report against Plaintiff on the same day as Defendant Chin—conspired with one another "to target Plaintiff in furtherance of their self-interests, in retaliation for Plaintiff's refusal to enter a committed relationship with either [Defendant Chin] or Sue Roe, and in an effort to destroy Plaintiff's academic career and future career goals." Plaintiff was expelled from Tulane on May 8, 2022, following a finding by the university that he was responsible for the charge of sexual assault.

Plaintiff's Amended Complaint asserts five causes of action against Defendant Chin: (1) defamation, (2) abuse of process, (3) tortious interference with contract, (4) intentional infliction of emotional distress, and (5) civil conspiracy. Defendant Chin moves the Court to dismiss Plaintiff's claims for abuse of process, tortious interference with contract, and civil conspiracy pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will address each challenged claim, in turn, below.

## II.    LEGAL STANDARD

When presented with a motion to dismiss under Rule 12(b)(6), the Court must assess whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]  Although the Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff,[7] the Court is not bound to accept as true legal conclusions couched as factual allegations.[8]

## III.    LAW AND ANALYSIS

### A.  Abuse of Process

As an initial matter, the parties dispute whether Louisiana law or North Carolina law governs Plaintiff's abuse of process claim.  Federal district courts exercising diversity jurisdiction must apply the choice-of-law provisions of the forum state to determine which state's substantive laws apply.[9]  At the time the parties briefed this issue, this case was pending in the Western Division of the United States District Court for the Eastern District of North Carolina, and the parties conducted their choice-of-law analyses using North Carolina's choice-of-law provisions. The case was subsequently transferred to this District Court.  While the parties have not provided supplemental briefing regarding which state's substantive law governs Plaintiff's claim applying Louisiana's choice-of law provisions, when there is no conflict between the laws of the relevant

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[6] *Id.* at 678.
[7] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).
[8] *Iqbal*, 556 U.S. at 678.
[9] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

states on the issues raised, courts simply apply the law of the forum state.[10]  Here, no conflict exists because the elements of an abuse of process claim are the same under Louisiana and North Carolina law.[11]  Accordingly, to resolve Defendant's motion, the Court will assess whether Plaintiff has plausibly stated a claim for abuse of process under Louisiana law.

"An abuse of process occurs when the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to obtain an unjustifiable end or an object which is was not the purpose of the particular process employed to effect."[12]  "At issue in such actions is the intent to use a legal process for an improper reason."[13]  Thus, if the process is "used to redress a legal wrong, the person who invoked the legal process cannot be said to have committed any tort, even if his motive was vicious or vindictive."[14]  But, when the person who invoked the legal process did so with the intent to "'attain some collateral objective, outside the scope of the operation of the process employed,' a tort arises."[15]  The elements of an abuse of process claim are: (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding.[16]

---

[10] *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).

[11] *Compare Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (citing *Stark v. Eunice Superette, Inc.*, 457 So. 2d 291 (La. App. 3 Cir. 1984)) ("The essential elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose; and (2) a wilful act in the use of the process not in the regular prosecution of the proceeding."), *with Barnette v. Woody*, 242 N.C. 424, 431 (1955) ("[T]he only essential elements for abuse of process are: First, the existence of ulterior purpose, and second, an act in the use of process not proper in the regular prosecution of the proceeding.").

[12] *Delcambre v. Mancuso*, 268 So. 3d 325, 331 (La. App. 3 Cir. 4/10/19) (quoting *Hebert v. Louisiana Licensed Pro. Vocational Rehab. Couns.*, 4 So. 3d 1002, 1009 (La. App. 3 Cir. 3/4/09), *writ denied*, 9 So. 3d 144 (La. 5/22/09)) (cleaned up).

[13] *Delcambre*, 268 So. 3d at 331 (quoting *Goldstein v. Serio*, 496 So. 2d 412, 415 (La. App. 4 Cir. 1986), *writ denied,* 501 So. 2d 208 (La. 1987)).

[14] *Hebert*, 4 So. 3d at 1009.

[15] *Id.*

[16] *Duboue*, 909 F.2d at 132.

Plaintiff asserts two theories of abuse of process in his Amended Complaint.[17]  The first is based on Defendant Chin's alleged institution of a civil action against Plaintiff in Louisiana state court for the issuance of a temporary restraining order for illegitimate purposes.  And the second theory is based on Defendant Chin's alleged use of Tulane's Title IX process for illegitimate purposes.  Plaintiff concedes his second theory is not viable because Tulane's Title IX investigation is not a "legal process."[18]  Accordingly, to the extent Plaintiff's claim for abuse of process is based on Defendant Chin's use of Tulane's Title IX process, the claim is dismissed with prejudice.

Turning now to Plaintiff's first theory, the Court finds Plaintiff's allegations are sufficient to state a claim for abuse of process that is plausible on its face.  Plaintiff's Amended Complaint contains the following allegations:

> 87.  On March 16, 2022, Ms. Chin filed a Petition for Protection from Abuse, also known as a Temporary Restraining Order (TRO), in Louisiana civil court. In her petition, Ms. Chin requested that Plaintiff be barred from contacting her through third parties and from stepping foot on Tulane's campus. The TRO falsely alleged that Plaintiff had been harassing, intimidating, and stalking Ms. Chin, despite the fact that Plaintiff had had no contact with Ms. Chin since he first heard of her false claims through mutual friends. In fact, Plaintiff did not even respond to Ms. Chin's February 8, 2022 text message, the last correspondence between the parties.

> 88.  In her TRO, Ms. Chin cited instances of Plaintiff calling their "mutual friends and interrogating her." However, the one mutual friend Plaintiff had contacted, T.R., informed Barber that Plaintiff had called her, but made no mention of harassment or interrogation. In fact, T.R. voluntarily submitted evidence of her agreeing to speak on the phone with Plaintiff. Ms. Chin also claimed Plaintiff harassed and stalked her by calling two other mutual friends to gather evidence for this investigation. Ms. Chin knew that Plaintiff's phone calls to his own friends, to discuss the ongoing Tulane investigation, did not constitute or include any harassing behavior, but Ms. Chin nonetheless utilized and abused the civil court process as a way to bolster her claims and restrict Plaintiff from contacting relevant witnesses in the Tulane investigation. Furthermore, Ms. Chin recognized that if she

---

[17] R. Doc. 23 ¶¶ 110–23.
[18] *See* R. Doc. 41 at 13 n.4.

had a restraining order against Plaintiff, Tulane would view the TRO as evidence of Plaintiff's alleged wrongdoing and Ms. Chin's alleged fear and trauma.

89.  In order to get the TRO dismissed, Plaintiff flew to New Orleans from South Carolina on March 24, 2022. However, Ms. Chin did not even attend the court hearing. Thus, the TRO was summarily dismissed in her absence. After the hearing Plaintiff and his mother saw Ms. Chin at the airport. It was clear that Ms. Chin's false allegations of harassment and stalking were not made in earnest but rather with malicious intent in order to serve her own self interest in the Tulane investigation.

90.  On May 8, 2022, Plaintiff was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate.

.    .    .    .

111.  Defendant strategically utilized Louisiana's civil court system, filing a Petition for Protection from Abuse against Plaintiff, for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish Plaintiff and to strengthen Defendant's Title IX claim against Plaintiff.

112.  Defendant pursued the Petition for Protection from Abuse with an ulterior purpose, and one for which the Louisiana civil court system was not intended.

113.  Defendant acted knowingly and willfully when she pursued the Petition for Protection from Abuse, knowing the allegations precipitating the petition were false.

.    .    .    .

122.  As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.[19]

Based on the foregoing allegations, the Court concludes Plaintiff has clearly alleged that

Defendant Chin instituted the Louisiana state court action and obtained a TRO against Plaintiff,

not because Defendant needed protection from harassment, intimidation, and stalking, but, instead,

---

[19] R. Doc. 23 ¶¶ 87–90, 111-13, 122.

for the ulterior, improper purpose of bolstering her Title IX claim against Plaintiff, restricting Plaintiff from contacting witnesses in the Title IX investigation, and to further harass, defame, retaliate, and punish Plaintiff. Plaintiff has also clearly alleged that Defendant made false allegations in her Petition for Protection from Abuse. And it was based on these allegedly false allegations—which Defendant affirmed, under oath, to be true[20]—that the state court issued the TRO against Plaintiff *ex parte*.[21] Plaintiff has, therefore, plausibly alleged a claim for abuse of process based on Defendant Chin's use of the Louisiana civil court system.[22] As such, this claim is not subject to dismissal pursuant to Rule 12(b)(6).

### B. Tortious Interference with Contract

Defendant Chin next seeks dismissal of Plaintiff's tortious interference with contract claim, arguing that the claim is governed by Louisiana law, which has not adopted the fully expanded common law doctrine of interference with contract.[23] Defendant Chin asserts that under Louisiana law, a tortious interference with contract claim is only viable in cases involving a corporate officer who intentionally and unjustifiably interfered with a contract between the officer's employer and a third person.[24] Here, Plaintiff alleges that Defendant Chin interfered with Plaintiff's contract with Tulane by providing the university with false information, which induced Tulane to breach its contract with Plaintiff by depriving Plaintiff of a fair and equitable grievance process,[25] and

---

[20] R. Doc. 39-1 at 7.
[21] R. Doc. 39-1 at 13.
[22] *See, e.g., Eicke v. Eicke*, 517 So. 2d 1067, 1072 (La. Ct. App. 1987) (finding mother who instituted proceedings to terminate grandparents' visitation liable for abuse of process because the evidence showed that the mother instituted the proceedings to specifically prevent visitation at Christmas rather than to seek a resolution of the issue raised in the petition, and the mother "improperly misled the trial court into issuing an ex parte order through the use of verified pleadings which were not supported by the evidence").
[23] R. Doc. 28 at 11–13.
[24] R. Doc. 28 at 13 (citing *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 547 (5th Cir. 1999)).
[25] R. Doc. 23 ¶ 130.

which further induced Tulane to cease performance of its contract with Plaintiff and to dismiss Plaintiff from the university.[26]  Defendant Chin argues Plaintiff has failed to state a claim for tortious interference with contract under Louisiana law because Plaintiff has not—and cannot—allege that Defendant Chin is a corporate officer of Tulane.

Plaintiff originally opposed dismissal of his tortious interference with contract claim, arguing that, applying North Carolina's choice-of-law principles, South Carolina law governed his claim and that he had plausibly alleged a tortious interference with contract claim under South Carolina law, which is not limited in the same manner as Louisiana law.[27]  After the case was transferred to this District, however, Plaintiff filed a motion to withdraw the portion of his opposition related to the dismissal of this claim.[28]  Plaintiff recognizes that this Court must apply Louisiana's choice-of-law provisions, which results in Louisiana law governing his tortious interference with contract claim.[29] Thus, because Louisiana law governs his claim and because Defendant Chin is not a corporate officer of Tulane, Plaintiff concedes his tortious interference with contract claim is subject to dismissal for failure to state a claim upon which relief can be granted.[30]  Accordingly, Plaintiff's motion to withdraw his opposition to the dismissal of his tortious interference with contract claim is granted, and his claim for tortious interference with contract is dismissed with prejudice.

### C.  Civil Conspiracy

Turning now to Plaintiff's civil conspiracy claim, the parties once again dispute whether North Carolina or Louisiana law governs this claim.  Like with Plaintiff's abuse of process claim,

---

[26] R. Doc. 23 ¶ 132.
[27] R. Doc. 41 at 22–24.
[28] R. Doc. 82.
[29] R. Doc. 82-1 at 2.
[30] R. Doc. 82-1 at 2–3.

however, the Court concludes no conflict of law exists between North Carolina and Louisiana law

on this issue.  Indeed, under the law of both states, a civil conspiracy claim operates as a mode of

assigning liability for damages resulting from an underlying wrongful or unlawful act committed

by one or more co-conspirators pursuant to the formed conspiracy.[31]  The elements for imposing

such liability are the same under Louisiana and North Carolina law.[32]  Accordingly, this Court will

apply the law of the forum state—Louisiana—to determine whether Plaintiff has plausibly alleged

a civil conspiracy.[33]

Louisiana Civil Code article 2324 provides, "[h]e who conspires with another to commit

an intentional or willful act is answerable, in solido, with that person, for the damage caused by

such act."[34]  "The actionable element in an article 2324 claim is not the conspiracy itself, but rather

the tort which the conspirators agreed to perpetrate and which they actually commit in whole or

---

[31] *Compare Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023) ("As to [Plaintiff's] civil-conspiracy claim, we are mindful that such a cause of action 'is not itself an actionable tort.' . . . Operationally, civil conspiracy assigns liability for an underlying unlawful act to a person who acted in concert with the direct tortfeasor."), *with Fox v. Fox*, 283 N.C. App. 336, 347, 873 S.E.2d 653, 662 (2022) ("'[T]here is not a separate civil action for civil conspiracy in North Carolina.' . . . [C]onspiracy is a mode of liability rather than a cause of action.").

[32] *Compare Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023) ("To impose [liability for civil conspiracy], a plaintiff must prove the following elements: '(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result.'"), *with Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) ("The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme."), *and Fox v. Fox*, 283 N.C. App. 336, 346, 873 S.E.2d 653, 662 (2022) ("A civil action for conspiracy is an action for damages resulting from acts committed by one of more of the conspirators pursuant to the formed conspiracy.").

[33] *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("'[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary,' and we simply apply the law of the forum state.").

[34] LA. CIV. CODE art. 2324(A).  This is consistent with North Carolina law, which holds all conspirators "jointly and severally liable for the act of any one of them done in furtherance of the agreement."  *BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 300, 826 S.E.2d 746, 762 (2019); *see also Touchard v. Williams*, 617 So. 2d 885, 889 (La. 1993) ("The civilian concept of *in solido* liability in tort is synonymous with the common law phrase 'joint and several' liability.").

part."[35]  Thus, to recover under this theory of liability, a plaintiff must prove the following elements: "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result."[36]

In paragraph 148 of the 153-paragraph Amended Complaint, Plaintiff alleges Defendant Chin and Sue Roe "acted in concert with the common purpose to defame and injure Plaintiff emotionally, reputationally and economically by engaging in the acts outlined above, including but not limited to the false reporting to Tulane University, Plaintiff's fraternity, and other individuals that Plaintiff had sexually assaulted and sexually harassed Ms. Chin and Sue Roe."[37] Plaintiff further alleges that "[i]t was foreseeable that the actions taken by Defendant and Sue Roe would result in Plaintiff being injured and were taken by Defendant and Sue Roe for that express purpose."[38]  And Plaintiff contends that, as a result of Defendant Chin and Sue Rue's actions, he has suffered "tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages."[39]

Defendant Chin argues Plaintiff has not plausibly alleged a civil conspiracy because he has not alleged that Defendant Chin entered into an agreement with Sue Roe to commit a wrongful act.[40]  More specifically, Defendant Chin contends Plaintiff has asserted a legal theory of "conspiracy to defame" but that Plaintiff does not allege facts supporting the existence of an

---

[35] *Silver v. Nelson*, 610 F. Supp. 505, 516 (E.D. La. 1985); *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002).
[36] *Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023).
[37] R. Doc. 23 ¶ 148.
[38] R. Doc. 23 ¶ 149.
[39] R. Doc. 23 ¶ 150.
[40] R. Doc. 28 at 16.

agreement to defame him.[41]    Defendant Chin refers to certain allegations in the Amended Complaint where Plaintiff alleges that Defendant and Sue Roe "acted in concert," "conspired," or collud[ed]" with one another with the common purpose to defame and injure Plaintiff; and Defendant Chin argues these allegations are speculative and conclusory and thus insufficient to plausibly allege there was an agreement between Sue Roe and Defendant Chin to support Plaintiff's civil conspiracy theory.[42]

In opposition, Plaintiff disagrees that the Amended Complaint fails to plausibly allege a claim for civil conspiracy.    First, Plaintiff argues Defendant Chin has conceded that Plaintiff plausibly alleged the underlying torts of defamation and intentional infliction of emotional distress because those causes of action are not challenged in Defendant Chin's motion.    Plaintiff points out that Defendant's attack on Plaintiff's civil conspiracy claim is based solely on whether Plaintiff plausibly alleged an agreement between Defendant and Sue Roe "to defame" Plaintiff.[43]    In response to that attack, Plaintiff recites numerous allegations from his Amended Complaint, which he contends are sufficient to plausibly allege an agreement between Defendant Chin and Sue Roe to defame and cause harm to Plaintiff.[44]    Plaintiff further argues that Defendant Chin attempts to impose a heightened pleading standard on Plaintiff by requiring him to plead direct evidence of an agreement despite the fact that a civil conspiracy may be proven by circumstantial evidence.[45]

---

[41] R. Doc. 28 at 16.

[42] R. Doc. 28 at 17 (citing R. Doc. 23 ¶¶ 1–2, 91, 148, 151).

[43] In his Opposition, Plaintiff notes that Defendant Chin's characterization of his civil conspiracy claim as being limited to a conspiracy to defame him is incorrect.  R. Doc. 41 at 18 n.7.  Plaintiff contends he has alleged that the conspiracy consisted of additional unlawful or tortious conduct, including *inter alia* the intent to injure him emotionally.  *Id.*  Defendant Chin does not respond to this assertion.  Because Defendant Chin's challenge is limited to the alleged conspiracy to defame, the Court's analysis is likewise limited to this theory.  The Court makes no determination at this time as to whether Plaintiff has plausibly alleged an agreement between Sue Roe and Defendant Chin to commit any other illegal or tortious act.

[44] R. Doc. 41 at 18–19 (citing R. Doc. 23 ¶¶ 21-31, 37, 47, 50–51, 55–67).

[45] R. Doc. 41 at 20 (*citing Payne v. Stanley*, 316 So. 3d 104, 113 (La. App. 2 Cir. 3/3/21), *writ denied,* 313 So. 3d 445 (La. 5/25/21)).

And Plaintiff reiterates that at the motion to dismiss stage, Plaintiff satisfies his burden so long as he has alleged facts sufficient to give rise to the inference that Defendant Chin and Sue Roe had an agreement to defame Plaintiff.[46]

Considering Plaintiff's Amended Complaint in its entirety, accepting all factual allegations as true, and drawing all reasonable plausible inferences from the complaint in favor of Plaintiff—as the Court must at this stage[47]— the Court concludes Plaintiff has plausibly alleged, via circumstantial evidence, that Defendant Chin and Sue Roe had an agreement to defame Plaintiff.

Plaintiff alleges that he had separate, consensual sexual encounters with Sue Roe and Defendant Chin while enrolled at Tulane.[48]  He alleges both women wanted to retaliate against him out of jealousy and because he refused to enter into a committed relationship with either of them.[49]  He further alleges that one day after Defendant Chin witnessed Plaintiff leaving the bar with another woman, Defendant Chin began spreading rumors that Plaintiff had engaged in nonconsensual sexual activity.[50]  A few days later, one of Sue Roe's best friends, A.S., and Defendant Chin each posted on their Instagram accounts at the same time with messages about sexual assault, with A.S.'s post containing an indication that she was referring to Plaintiff as a sexual assaulter.[51]  And a few days after that, Sue Roe and Defendant Chin simultaneously submitted Title IX/Sexual Misconduct reports to Tulane, naming Plaintiff as the respondent.[52]  In

---

[46] R. Doc. 41 at 20.
[47] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 264 (5th Cir. 2009).
[48] R. Doc. 23 ¶¶ 14–31.
[49] R. Doc. 23 ¶¶ 1, 14–15, 86.
[50] R. Doc. 23 ¶¶ 31–32.
[51] R. Doc. 23 ¶¶ 33–34.
[52] R. Doc. 23 ¶ 47.

both reports, the women describe very similar behavior on the part of Plaintiff.[53]  Plaintiff alleges the claims are unequivocally false.[54]

Plaintiff further alleges that Defendant Chin and Sue Roe scheduled their investigation interviews to be within one hour of each other.[55]  Plaintiff alleges both women made false claims about their experiences with Plaintiff and that their false claims closely mirrored one another.[56]  Plaintiff further alleges that during Defendant Chin's interview, Defendant Chin told the investigator she was aware of Plaintiff's "previous situation" with Sue Roe and that she would let Sue Roe tell the investigator her story.[57]  Plaintiff also alleges that, a few days before the interview, Defendant Chin texted Plaintiff, calling him a "repeat offender" and telling him that she would not let him "manipulate or invalidate [her] assault, like [he] did to [his] previous victim."[58]  In addition, Plaintiff alleges Defendant Chin and Sue Roe attempted to conceal their conspiracy by providing false information to the Tulane investigator about when they first connected with one another.[59]

The foregoing allegations, together with the other facts alleged in the Amended Complaint, allow the Court to draw the plausible inference that Defendant Chin and Sue Roe had an agreement to defame Plaintiff.[60]  Accordingly, Defendant Chin's challenge to Plaintiff's civil conspiracy claim fails, and this claim is not subject to dismissal.

## IV.    CONCLUSION

For the foregoing reasons,

---

[53] R. Doc. 23 ¶ 47.
[54] R. Doc. 23 ¶ 47.
[55] R. Doc. 23 ¶ 50.
[56] R. Doc. 23 ¶¶ 50–51.
[57] R. Doc. 23 ¶ 51.
[58] R. Doc. 23 ¶ 37.
[59] R. Doc. 23 ¶¶ 55–67.
[60] *See Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982) ("This requirement must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence.").

**IT IS ORDERED** that Plaintiff's Motion to Withdraw His Opposition to the Portion of Defendant's Rule 12(b)(6) Motion Seeking to Dismiss Plaintiff's Claim for Tortious Interference with Contract (R. Doc. 82) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Chin's Partial Motion to Dismiss for Failure to State a Claim (R. Doc. 27) is **GRANTED IN PART** and **DENIED IN PART**.  This motion is denied insofar as it seeks dismissal of (1) Plaintiff's abuse of process claim based on Defendant's use of the Louisiana civil court system and (2) Plaintiff's civil conspiracy claim. This motion is granted, however, insofar as it seeks dismissal of (1) Plaintiff's abuse of process claim based on Defendant's use of the Tulane Title IX process and (2) Plaintiff's tortious interference with contract claim.

Accordingly, **IT IS FURTHER ORDERED** that (1) Plaintiff's abuse of process claim based on Defendant's use of the Tulane Title IX process and (2) Plaintiff's tortious interference with contract claim are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 17th day of March 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

14