**THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-200**

> Original Filed at Docket No. 1,
> Sealed by Court Order

```
----------------------------------------------------------------x
JOHN DOE,                                      |
                                               |
                          Plaintiff,           |
                                               |        COMPLAINT
              -against -                        |
                                               |        JURY TRIAL DEMANDED
JANE DOE,                                       |
                                               |
                          Defendant.           |
----------------------------------------------------------------x
```

Plaintiff John Doe[1], (hereinafter referred to as "Plaintiff' or "John Doe"), by his attorneys Nesenoff & Miltenberg, LLP and Ekstrand & Ekstrand, LLP, as and for his Complaint, respectfully alleges as follows:

## THE NATURE OF THIS ACTION

1.    This case arises out of the actions taken by Defendant Jane Doe[2], a student at Tulane University ("Tulane") during the incidents described herein, to defame, humiliate, harass, and punish Plaintiff John Doe, also a student at Tulane during the incidents described herein, after Plaintiff and Jane Doe engaged in a consensual sexual encounter. Thereafter, Jane Doe and another student (hereinafter "Sue Roe") conspired to target John Doe in furtherance of their self-interests, in retaliation for John Doe's refusal to enter into a committed relationship with either Jane Doe or Sue Roe, and in an effort to destroy John Doe's academic career and future career goals.

---

[1] Plaintiff is filing a motion to proceed by pseudonym together with this pleading.

[2] "Jane Doe" is a pseudonym.  Consistent with Plaintiff's motion to proceed by pseudonym, all students shall be identified herein by pseudonym as well.

1

2.      John Doe and Jane Doe "matched" on a dating app, but did not have any direct communication at that time.  They did meet in person several weeks later at a music concert, at which point they also exchanged contact information.  They did not have any further contact with each other until running into each other several month later, at which point the two spent the night together.  No sexual activity of any sort occurred. In the following several days, John Doe and Jane Doe engaged in consensual sexual intercourse on two occasions. Upon information and belief, after seeing John Doe with another woman, Jane Doe was in touch with Sue Roe, colluding to defame, harass, and interfere with John Doe's education by filing fabricated complaints with Tulane's Title IX office.

3.      Defendant Jane Doe strategically utilized and manipulated Tulane's Title IX investigation process to further a malicious vendetta against John Doe. Despite Jane Doe's inconsistent and varying accounts of the events, witness statements disproving Jane Doe's allegations, and significant exculpatory evidence, Tulane ultimately found John Doe responsible for nonconsensual sexual activity with Jane Doe and imposed a sanction of expulsion.

4.      John Doe has been greatly damaged by Defendant's actions, including physical, psychological, emotional and reputational damages. He has also suffered, and will continue to suffer, economic injuries, the loss of educational and career opportunities, and loss of future potential earnings as a result of the expulsion, corresponding disciplinary mark on his academic record. The threat of further spread of false allegations that John Doe is a perpetrator of sexual assault is ever-present.

5.      John Doe therefore brings this action to obtain relief from Defendant Jane Doe based on various state law claims.

2

6.　　Plaintiff is a natural person, citizen of the United States and resident of the County of Charleston, State of South Carolina. During the events described herein, Plaintiff was a student at Tulane University in Louisiana.

7.　　Upon information and belief, Defendant Jane Doe is a resident of the County of Wake, State of North Carolina. During the events described herein, Jane Doe was a student at Tulane University.

## JURISDICTION AND VENUE

8.　　This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.　　This Court has personal jurisdiction over Defendant Jane Doe because Jane Doe is a resident of North Carolina.

10.　　Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because per 28 U.S.C. § 1391(b)(3) this is an action that may not be brought in any other district and the Court has personal jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

*John Doe Attends Tulane University*

11.　　John Doe Plaintiff was accepted to and enrolled in Tulane University ("Tulane" or the "University") in May 2018. He commenced his studies at Tulane in August 2018, focusing on Finance, Management and Psychology. John Doe intended to pursue a Masters of Business Analytics at Tulane University, upon his expected graduation in 2022.

3

12.    During his time at the University, John Doe became heavily involved in the Tulane community, engaging in social and philanthropic activities. He was the Co-President of Tulane's section of a national service organization for two consecutive years. He was the treasurer of the Food Recovery Network, a club that packages remaining food from the dining hall to send to local homeless shelters. He was one of 34 Tulane seniors selected by faculty and prior members to join Omicron Delta Kappa, an organization founded in 1834 for the purpose of making the Tulane community more equitable, inclusive, and academically rigorous. John Doe was also chosen by the Business School Associate Dean to be a Tulane Business Summer Minor Ambassador, promoting Tulane's summer business program. Additionally, John Doe was a member of the business fraternity Alpha Kappa Psi, a tutor in the tutoring center, a Merit Scholarship recipient, and involved in Tulane's club baseball league and social fraternity Zeta Beta Tau (ZBT). John Doe was on track to graduate *cum laude*.

13.    In applying to Tulane, John Doe reviewed a copy of the Tulane University Code of Student Conduct (the "Code"), which was accessible to all current Tulane students, prospective students, and the public.  The Code included a list of prohibited actions that "violate Tulane University standards of conduct and will result in conduct action." ("Prohibited Conduct"). The list of Prohibited Conduct included "Furnishing false information to the University or to a University official," as well as "Harassment or intimidation." John Doe enrolled in Tulane with the understanding that he would be afforded a fair and equitable educational experience, free from the Code's expressly Prohibited Conduct.

*John Doe's Relationship With Sue Roe*

14.     John Doe and Sue Roe met in September of 2019. The two engaged in a casual sexual relationship from September 2019 to December 2019. Upon information and belief, towards the end of the Fall 2019 semester, Sue Roe wanted a more committed relationship with John Doe. John Doe heard from his friends M.G. and M.V. that Sue Roe had expressed an interest in officially dating John Doe. Sue Roe invited John Doe on a walk, during which John Doe told Sue Roe he was not interested in dating. Sue Roe told John Doe that she was similarly okay with remaining uncommitted and casual, in contrast to what Sue Roe had told John Doe's friends. John Doe and Sue Roe had a few sexual encounters following that conversation, but eventually stopped seeing each other. John Doe was seeing other women during that time and seldom reached out to Sue Roe.

15.     In January 2020, John Doe and Sue Roe returned to campus and did not interact much. John Doe felt tension between him and Sue Roe whenever he said "hello" to Sue Roe. Shortly thereafter, John Doe and Sue Roe each attended the same party, during which Sue Roe began to cry. In the following two semesters, John Doe and Sue Roe had very few interactions. However, Sue Roe made her negative feelings toward John Doe known to others. When John Doe's name was brought up in Sue Roe's presence, Sue Roe went out of her way to explicitly say she "hated" John Doe. In Spring 2021, John Doe and Sue Roe had a consensual sexual encounter. After that encounter, they did not interact further until August 2021.

16.     On August 22, 2021, John Doe and Sue Roe were downtown on Bourbon St. celebrating a mutual friend's birthday. Sue Roe came up to John Doe at the bar and asked him to buy her a drink, which she would later pay him back for through Venmo. John Doe and Sue Roe ended up spending time together at the party and leaving the bar together. On the ride back to

campus, John Doe and Sue Roe talked about their past relationship. Sue Roe apologized for being harsh towards John Doe following the conclusion of their relationship. Sue Roe further expressed the complicated emotions she was feeling. She explained that that evening, she had learned that a guy she was in a sexual relationship with, B.H., had started "dating" a different woman. When their Lyft ride approached Sue Roe's home, John Doe asked if he should have the car drop Sue Roe off, but Sue Roe told Doe he should come inside with her. The two went upstairs and engaged in consensual sex.

17.    Soon after, the two were talking in bed when John Doe made a comment to the effect of "we may regret that later" which, upon information and belief, Sue Roe interpreted to mean John Doe regretted having sex with her that evening. What John Doe meant by the comment was that they may regret complicating their friendship. However, Sue Roe sat up and began to cry. John Doe immediately apologized for his comment, explaining that what he said was not meant to be interpreted as anything against Sue Roe. John Doe felt that the complicated emotions Sue Roe mentioned earlier had resurfaced and suggested discussing the matter in the morning. John Doe went to sleep.

18.    Upon information and belief, while John Doe was asleep, Sue Roe was still upset over the comments John Doe made and wanted John Doe out of her bed. Sue Roe proceeded to wake up a housemate, D.E., who asked John Doe to leave. As John Doe was asleep, he was slow to respond to D.E.'s entrance into Sue Roe's room or comprehend why she was asking him to leave. According to D.E., John Doe "wasn't moving at first" when D.E. asked John Doe to leave. John Doe eventually got out of Sue Roe's bed and went home, texting Sue Roe that he left and to lock the door and wishing Roe a "good night."

6

***John Doe Meets Jane Doe***

19.     On or about September 2021, John Doe and Jane Doe "matched" on Tinder. They did not communicate each other or meet in person until they ran into each other at concert on November 20, 2021. At the concert, John Doe and Jane Doe spoke briefly and exchanged phone numbers. Thereafter, the parties did not see or communicate with each other for more than two months.

20.     On January 27, 2022, John Doe and Jane Doe accidentally ran into each other at a bar near Tulane's campus. After talking at the bar for some time, they left together and went to John Doe's house, where they fell asleep but did not engage in sexual intercourse. In the morning, they kissed for several minutes before Jane Doe stated "You're not going to be able to just fuck me like these other Tulane girls," to which John Doe responded "That's perfectly fine with me." Soon thereafter, John Doe and Jane Doe said goodbye, and Jane Doe left.

21.     On January 28, 2022, John Doe invited Jane Doe to his fraternity's upcoming date party and Jane Doe accepted. After asking Jane Doe to the date party, John Doe hung out with his friends M.V. and K.R. Upon learning that John Doe invited Jane Doe to be his date, K.R. warned John Doe to be careful because of information she had heard about Jane Doe.  K.R. had previously had a sexual relationship with H.W., who had recently been banned from campus for violating COVID-19 guidelines for a birthday party he threw. K.R. explained that H.W. had just ended his relationship with Jane Doe and started a relationship with K.R. right before being reported to the University for violating COVID-19 guidelines. H.W. and others involved in the situation had deduced that Jane Doe was the one who reported him, presumably out of spite for breaking up with her.

22.    On January 29, 2022, John Doe and Jane Doe attended John Doe's fraternity date party, held at the Fair Grounds Race Course in New Orleans. John Doe picked Jane Doe up in the late morning and brought her back to his house. After approximately an hour of hanging out with John Doe's friends, John Doe and Jane Doe went to John Doe's fraternity house, where he introduced Jane Doe as his date. Along with others attending the party, John Doe and Jane Doe boarded busses that transported the entire group to the Race Course.

23.    While walking through the crowded field level of the Race Course, John Doe and Jane Doe passed Sue Roe. Soon after, John Doe had a brief conversation with a member of another fraternity, "K.S." who exchanged hellos with Jane Doe. When K.S. left, Jane Doe told John Doe that K.S. had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. John Doe expressed sympathy for what Jane Doe had allegedly experienced.

24.    Soon after sharing her story, Jane Doe asked John Doe "Is there anyone you're avoiding here?" John Doe didn't think much of that question at the time and responded "Yeah, the girl I probably would've asked had I not asked you." He was referring to a fellow student, D.K. Jane Doe and John Doe then found seats in the press box and talked about a range of topics, including family and friends. John Doe mentioned that his birthday was the following Wednesday and Jane Doe asked to take multiple photos with John Doe before they left the party. In total, the two spent four hours at the racetrack. John Doe and Jane Doe each consumed approximately two alcoholic drinks during those four hours, and John Doe also had one sip of a friend's flask that contained alcohol. Toward the end of the day, at approximately 5:30pm, John Doe and Jane Doe decided to take an Uber back from the racetrack. John Doe asked Jane Doe if she would like him

to add a stop for her so that she could return home. Jane Doe declined, indicating that she preferred to return to John Doe's house together.

25.     Once they were at John Doe's house, they attempted to have sexual intercourse, but did not because John Doe was unable to get an erection. After trying to have sex, Jane Doe said it was alright because she was too drunk anyway. John Doe responded that it wasn't because he was drunk and that he actually was pretty sober. He found it odd that Jane Doe said she was drunk since he had been with her all day and they only had approximately two drinks each over the course of five hours. However, he chalked it up to her trying to be kind about his inability to perform sexually.  At that point, they decided simply to take a nap and slept for almost two hours. When John Doe awoke, Jane Doe was already awake. They began kissing and engaged in consensual sexual intercourse, during which Jane Doe was an active and enthusiastic participant. Afterward, the two got dressed and John Doe walked Jane Doe back to her house at approximately 9:00pm. On the walk home, she talked about a silent disco party that her house hosted the night before, and they engaged in other friendly conversation. When they got to Jane Doe's house, she gave John Doe a tour of the house and alluded to his returning again in the near future. Jane Doe gave John Doe a kiss goodbye, and John Doe walked back to his house.

*The February 2, 2022 Encounter*

26.     In the early afternoon of February 2, 2022, Jane Doe texted John Doe to wish him a happy birthday and  the two exchanged friendly text messages for much of the afternoon. That evening, John Doe went to two bars, with friends, to celebrate his birthday. At approximately 9:00pm, John Doe and his friends left the second bar and went to a friend's house to prepare for a

9

scheduled fraternity event. John Doe and Jane Doe continued to exchange text messages, including a text from Jane Doe saying "we can celebrate later."

27.    Near the end of the fraternity event, at approximately 12:00am, John Doe texted Jane Doe to see if she wanted to hang out.  She responded "yes." John Doe took a Lyft to Jane Doe's house intending to pick up Jane Doe and walk back to his house.

28.    When John Doe arrived at Jane Doe's house, she came outside and they walked together to his house. During their walk, they discussed the social events they each attended. At John Doe's house, they went to his bedroom and engaged in consensual sexual intercourse. John Doe wore a condom during the encounter and both went to sleep almost immediately after.

29.    John Doe and Jane Doe awoke the next morning to the sound of Jane Doe's alarm, which she had set on her phone. After engaging in several minutes of mutual kissing, Jane Doe said she had to go to work. John Doe offered to walk her home, an offer she initially rejected, but John Doe said it was the right thing to do.  Jane Doe smiled at this sentiment. As they dressed, John Doe made a joking comment to the effect of "I'm happy I did better this time" in reference to his inability to engage in sexual intercourse during their previous encounter. Again, Jane Doe smiled in response.

30.    As they walked to Jane Doe's house, they talked in an easy and friendly manner. Jane Doe spoke about attending Montessori as a child when they passed a local Montessori school. At Jane Doe's house, they kissed goodbye and Jane Doe again wished John Doe a happy birthday. John Doe returned home.

31.    The following night, February 3rd, John Doe went to a bar with a few friends, where he ran into a woman, "A.H", on whom he had a crush. He offered to buy her a drink and they

started talking in the middle of the bar, a conversation lasting more than an hour.  John Doe and A.H then left the bar together, returned to John Doe's house, and engaged in consensual sexual activity. Upon information and belief, Jane Doe saw John Doe talking to A.H. at the bar and heard that he and A.H. went home together.

***Jane Doe Spreads Defamatory Information about John Doe to Friends and Classmates***

32.    Upon information and belief, on February 4th, a day after seeing John Doe with A.H., Jane Doe reported to one of John Doe's friends, T.R., that John Doe engaged in nonconsensual sexual activity. Upon information and belief, this was Jane Doe's first instance of alleging such misconduct.

33.    Upon information and belief, by February 6th, false rumors had begun spreading around school alleging that John Doe had sexually assaulted a female student. On February 7th, John Doe's friend "T.G." informed John Doe that people were talking about him in a negative way and that a fellow student, "A.S.," one of Sue Roe's best friends, had posted on her Instagram story a message to the effect of "Being friends with a sexual assaulter means you are part of the problem" with an indication that she was referring to John Doe.  John Doe did not know what he was accused of doing and received no concrete information of the specific claims circulating about him.

34.    Another of John Doe's friends, M.K., showed him an Instagram post from Jane Doe that stated "Being drunk is not an excuse for Sexual Assault," which was posted at the same time and seemingly in conjunction with A.S.'s post. That night, fellow classmate, S.B., drove John Doe home from class. During the drive, she warned John Doe that Jane Doe was "crazy."

35.    John Doe then heard from another fellow student, A.T., that she was told by three different people that John Doe had assaulted a Tulane student. One of the students who shared this

11

information with A.T. was abroad in Spain and had heard it from friends in a different Tulane fraternity.

36.     John Doe was shocked that this false information had made its way to students studying abroad, even prior to John Doe himself hearing about it. John Doe was unaware of the specifics of the false allegations and did not even know to whom the allegations pertained.

37.     On the evening of February 8th, John Doe received a text message from Jane Doe, falsely claiming John Doe engaged in sexually inappropriate behavior:

> After we had consensual sex on your birthday, I told you that I was tired and wanted to sleep. At first you said that was fine but then 10 minutes later you asked me to have sex again to which I responded no, that I was tired and didn't want to. You continued to ask me to have sex with you multiple times, each time with me saying no and asking you to go to sleep. I woke up to the sound of you jerking off and the feeling of you taking the blanket off my naked sleeping body and touching and squeezing it as you pleased. Even though I was paralyzed with fear and half asleep, I mumbled that I was cold and tried to pull the blanket back onto me. You then pulled the blanket off of me again and continued to pleasure yourself and touch me. You took advantage of my body in my most vulnerable state, and had no regard for how violating your actions were to me. You are a predator and a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim. It blows my mind that you were able to manipulate people around you into staying friends with you but this time you will be held fully accountable or the trauma that you actions caused. You will be known for the disgusting coward you truly are. You need serious help, and honestly I don't care if you ever get it, but I do know that you will never have the opportunity to violate someone ever again.

38.     The text message shocked and scared John Doe. He recalled their two sexual encounters, which had occurred in the previous several days and knew he had not committed any of the acts that Jane Doe was claiming.

39.     The following day, John Doe met with multiple friends to discuss the rapidly spreading false claims about him. Two of his friends called John Doe's parents to tell them it was not safe for him to be on the Tulane campus and that someone should come get him and bring him

12

home to his parents' house. That evening, the president of John Doe's fraternity informed John Doe that Jane Doe had called him, claiming that John Doe assaulted her and that she was "going to the school."

40.     That day, John Doe learned from two of his male friends that Jane Doe had approached a group of John Doe's female friends to share her false allegations of assault. Jane Doe specifically asked one of his friends, T.R., to help "spread this news like wildfire."

41.     A point of confusion for John Doe was that Jane Doe's text referenced a prior sexual experience with another woman. John Doe assumed, without knowing, that the woman to whom Jane Doe referred was Sue Roe. After last having consensual sex with Sue Roe, John Doe assumed he was asked to leave because of the comments he made that upset Sue Roe. When John Doe later reached out to Sue Roe by text message, Sue Roe responded and claimed she had D.E. ask John Doe to leave because he woke her up to try to get her to have sex again. John Doe knew that Sue Roe's text to him described events that simply never occurred, but he felt this may have been Sue Roe's way of excusing her active participation in the sexual encounter and pacifying her own feelings of guilt and regret. John Doe did not resist her characterization so as to preserve Sue Roe's feelings.

42.     In hindsight, Jane Doe's statement that John Doe was a repeat offender, coupled with Jane Doe's odd comment at the race track about whether there was anyone there that John Doe was avoiding, made John Doe suspect the two had been communicating all along.

43.     As early as February 7th, several of John Doe's friends stopped responding to his texts and calls. On February 8th, hours after receiving Jane Doe's text message, John Doe learned that a friend had seen the text message Jane Doe sent John Doe. In fact, John Doe's friend had

been provided with a screenshot of the text from yet another friend. It became clear that this false narrative was spreading rapidly among fellow Tulane Students. Upon information and belief, the screenshot of Jane Doe's text message to John Doe included the contact name she had inputted for John Doe's number. The contact name was "rapist," and therefore anyone who received the screenshot saw John Doe referred to as a rapist by Jane Doe.

44.    On February 10, 2022, John Doe was kicked out of his fraternity group chat. The fraternity president then sent a message referencing the claims against John Doe to the group chat, which John Doe learned from a friend who had taken a screenshot of the message. John Doe called the fraternity president, asking him to change or delete the defamatory message, which he refused to do.

45.    John Doe's mother flew to Louisiana that same day, February 10th, to support her son and help him gather his items so he could return home to a safe environment. Due to the mental anguish and heightened anxiety John Doe was experiencing as a result of the false accusations, John Doe withdrew from the University for the semester, as he had already completed enough credits the prior semester to graduate. When John Doe withdrew on February 11, 2022, he was unaware that a Title IX report had been filed or that an investigation had commenced.

***Jane Doe Reports False Claims Against John Doe with Tulane's Title IX Office***

46.    Jane Doe reported her false claims to the University Case Management and Victim Support Services (CMVSS) on February 6, 2022, three days after John Doe had had sex with someone else. Jane Doe falsely claimed to a Student Affairs Professional at the University that she had woken up to a man "beating off on [her]."

47. On February 11, 2022, Jane Doe and Sue Roe simultaneously submitted Title IX / Sexual Misconduct reports naming John Doe as the respondent. Both reported having consensual sex with John Doe, falling asleep, and waking up to him engaging in sexual activity. Sue Roe claimed that John Doe vaginally penetrated her with his fingers and masturbated as she got dressed. Jane Doe claimed that John Doe masturbated while touching her buttocks with his hands and penis. Both claims were unequivocally false.

48. On February 16, 2022, John Doe received a letter from Christopher Zacharda, Tulane's Director of Student Conduct, informing him that the Office of Student Conduct had received information that he may have violated the Tulane University Code of Conduct and had therefore been charged with Sexual Assault (the "OSC Notice"). The OSC Notice also included a link to Tulane's "Investigation Procedural Protections" (the Investigation Protections"). The OSC Notice informed the recipient "Please also be reminded that the Student Code of Conduct prohibits making false statements and/or knowingly providing false information in the course of a Tulane grievance process, including an investigation and hearing pursuant to the Student Code of Conduct." The Investigation Protections further provided "The investigation is designed to provide a fair and reliable gathering of the facts by a trained and impartial investigator, who will determine consequences, if any." (Emphasis added.)

49. Upon information and belief, Jane Doe received a similar letter from Zacharda with the same link to the Investigation Protections. Upon information and belief, Jane Doe was aware of the University's Investigation Protections and that these protections were afforded to John Doe.

50. Upon information and belief, Jane Doe and Sue Roe scheduled their investigation Interviews to be within one hour of each other. On February 16, 2022, Jane Doe was interviewed

15

by University investigator Jacqueline Barber. During her interview, Jane Doe made numerous false defamatory statements about John Doe, including claims that John Doe persisted in convincing Jane Doe to have sex with him again after their admittedly consensual sexual intercourse. Jane Doe's false claims included:

    a. "I must have drifted asleep because I woke up to him. I could feel him jerking off."

    b. "And I can feel him jerking off. And I was half asleep. So, I was like, what the hell is going on. But it wasn't until I felt him pull[sic] a blanket off of me, off of my body, I was naked and I was asleep because we had sex and I was just naked, I don't know. I felt him put a blanket off of me. And I felt him scoot closer to me to jerk off onto me, onto my body."

    c. "I then have felt him start to touch me and squeezing me mostly my legs and my butt."

    d. "And then, I felt him pull the blanket back again off of me and continue to do it."

    e. "And even though I had explicitly not given consent, he had no regard for that. And because I was asleep, just like did that."

    f. "…as I was leaving, he pulled me in and kissed me."

    g. "He kept waking me up. He would physically move my shoulder to try and wake me up and be like, 'Wait, do you want to have sex?' And try

    h. "And then, he shifted towards me to make his penis touch me. And then, he started to grab my body to help him I guess…. My thighs and my butt."

    i. "….consent was explicitly not given and it was just taken. And it was unwanted action, specifically a sexual action that I explicitly did not give consent for."

51.     Jane Doe's false statements to Barber closely mirrored false statements given to Barber by Sue Roe. In Sue Roe's narrative, she similarly made false claims that, after consensual sex, John Doe had woken Sue Roe up and made multiple requests for sexual activity. Sue Roe's narrative also included false claims that John Doe masturbated in her presence without consent. Jane Doe modeled her testimony after Sue Roe's narrative, which, upon information and belief, Sue Roe communicated to Jane Doe. In fact, in her interview with Barber, Jane Doe states that John Doe's friends "were aware about the previous situation with [Sue Roe]. But [Sue Roe], obviously, will[sic] tell you her story."

52.     In her interview with Barber, Jane Doe also acknowledged that she was aware of the damage her false claims had done to John Doe's life thus far, stating that she spoke with the president of John Doe's fraternity who "let [John Doe] know that he was banned from all events and the house, and no longer affiliated with [the fraternity]."

53.     Jane Doe made further false defamatory statements to Barber about John Doe, stating "And that's part of the thing that pisses me off the most is that he was able to manipulate and gaslight all of their mutual friends into thinking that it was like a normal, just weird thing, was something he was working on, not a sexual assault, which is like what it is." Jane Doe also read to Barber the text she had sent to John Doe on February 8th, communicating false and defamatory information about John Doe. She also complained hearing from friends that that John Doe allegedly "slept with so many girls," expressing negative opinions on John Doe's sexual history. She concluded her interview with Barber expressing her desire to destroy John Doe's academic career and reputation, stating "I want him to be expelled" and "I also want [Jane Doe's sexual misconduct claims] to be attached to his name."

17

54.     On February 18, 2022, two days after Jane Doe's interview with Barber, John Doe received a letter from Zacharda informing him that "as a result of the information [the Office of Student Conduct] had received" interim measures were being applied and John Doe was banned from being on campus, effective immediately. John Doe was barred from participating in University-sponsored or recognized events or activities. The term of the ban was indefinite. In texts submitted to Barber during the investigation, Jane Doe seemingly brags that "[John Doe] will most likely be banned from campus if my report identifies him as an imminent threat."

### Jane Doe Reported a False Timeline to Conceal Her Conspiracy with Sue Roe

55.     During her interview with Jane Doe, Barber inquired how Jane Doe and Sue Roe had connected. Jane Doe stated that she had spoken to someone about her claims against John Doe on February 5th. The individual who Jane Doe was speaking to responded by referencing Sue Roe's allegations. Jane Doe expressed shock upon hearing this when stating, "…[the other girl] was like, 'Oh, I did hear something weird with him like jerking off with another girl' and I was like 'What? What do you mean?'"

56.     Jane Doe's claim of ignorance to Sue Roe's allegations on February 5th contradicts what Jane Doe's friend, N.B. reported to Barber. According to N.B., on or about January 28th N.B "warned" Jane Doe about John Doe prior to the event at the racetrack via Facetime and referenced Sue Roe's negative opinion of John Doe "I've heard bad things about this guy."

57.     N.B. later verified that Jane Doe expressed a desire to find out the specifics of what happened between John Doe and Sue Roe. This desire to learn more about John Doe and Sue Roe's experiences further explained Jane Doe's odd question at the racetrack event, during which she

18

asked John Doe "Is there anyone that you're avoiding here?" in the hopes that she would gain information from John Doe about Sue Roe's opinion of him.

58.    Jane Doe claimed in her interview with Barber that she was connected to Sue Roe through those mutual friends on or about February 8, 2022. In fact, N.B. submitted to Barber purported "evidence" showing a text where N.B. requested to connect with Sue Roe on Jane Doe's behalf. Sue Roe submitted similar purported "evidence" of her text message conversation with N.B. regarding Jane Doe. Upon information and belief, both Jane Doe and Sue Roe staged the introductory text messages in anticipation of filing false claims against John Doe.

59.    John Doe communicated to Barber that it was suspicious that N.B. selectively included dates and times on some, but not all, of the texts submitted for investigation. John Doe further detailed the suspiciousness of Jane Doe and Sue Roe never providing direct correspondence between the two, but rather communications through a third party. Jane Doe was given the opportunity to confirm the timestamps of the texts and submit verification of her first correspondence with Sue Roe. Rather than confirming their alleged timeline, Jane Doe responded by calling John Doe's suspicions "Self-validated analysis [that] fails to consider any other point of view than John Doe's - a white male college student."

60.    In fact, Jane Doe and Sue Roe connected on Instagram long before John Doe's February 2nd sexual encounter with Jane Doe. Instagram allows for both "public" accounts and "private" accounts. Any Instagram account can view information/data posted on a public account, including pictures posted, stories posted, who follows the public account, and who the public account follows. The only mechanism that a public account has to prevent a user from viewing their information is to "block" them, meaning that the Instagram account will no longer appear for

19

the user. In contrast, private accounts allow the account holder to limit who has access to their data. Therefore, an Instagram user must "request" to follow a private account and the private account must "accept" the follow request. Once this process is completed the "requester" can see the information on the account that they requested to see. Private accounts can also remove people from their followers list, restricting someone who previously had access to the account from viewing anything once they are "removed."

61.    Instagram also allows for Direct Messages (DM), which are messages sent from one account to another account through Instagram messaging software. A private account must allow another person access to their data in order for that other person to send a direct message. Furthermore, it is customary and common practice to "follow back" another account, particularly when the Instagram user know the holder (person) of the account that followed that user and when that user followed the account holder first.

62.    At all times relevant herein, Jane Doe's Instagram account was a public Instagram account, and thus any account, unless blocked by Jane Doe, could view a list of her followers, a list of people she follows, all her posts, and her Instagram stories. The list of an Instagram user's followers is chronological. At the top of the list are the most recent followers, and at the bottom of the list are the user's first followers. Therefore, Jane Doe's followers list served as a timeline of who followed Jane Doe on Instagram, providing a chronological order of the people Jane Doe interacted with (hereinafter "Chronological List").

63.    First on the Chronological List was T.R., who John Doe witnessed Jane Doe meeting on January 29, 2022 at the pregame prior to the event at the racetrack. Jane Doe asked T.R. to take a picture together on the party bus from Tulane's campus to the racetrack. Jane Doe

20

told T.R. that she would "DM" the picture to her. In order to do this, T.R. would have had to accept Jane Doe's follow request. Upon information and belief, after T.R. accepted Jane Doe's follow request, Jane Doe followed T.R. back.

64.     There were nine accounts in between T.R.'s account and fellow classmate L.A.'s account on the Chronological List. Upon information and belief, none of those accounts are owned by people Jane Doe interacted with over the weekend January 29, 2022.

65.     The next relevant account followed on the Chronological List was L.A. who was at the "Silent Disco" party with Jane Doe on January 28, 2022.  L.A. posted evidence of her attendance on Instagram and Jane Doe posted evidence of her own attendance on Tik Tok. Both posts showed the same neon banner in the living room of the house hosting the party. Next on the Chronological List was Sue Roe, and thereafter the next Tulane students on the Chronological List were several of John Doe's friends to whom John Doe had introduced Jane Doe at the racetrack on January 29, 2022.

66.     Although Jane Doe and Sue Roe claimed to Barber that they first connected on February 8, 2022, after the alleged incident on February 2, 2022, even providing "confirmation" through their texts with N.B., Jane Doe's own Chronological List shows that Jane Doe and Sue Roe connected on Instagram at least a week prior to that date.

67.     Upon information and belief, Jane Doe and Sue Roe began communicating on or about January 28, 2022, rather than the false date they provided to Barber., Jane Doe and Sue Roe not only made false statements to Barber in support of their narrative, but also provided falsified evidence specifically created to support that narrative.

*Jane Doe Provides False Information and Submits Doctored Evidence to Tulane Investigator*

21

68.     Jane Doe testified to Barber that she did not know with whom John Doe had had sex after his encounter with Jane Doe. However, text messages submitted to Barber by witnesses indicated otherwise. In texts from February 9, 2022, submitted by Jane Doe's friend K.R., Jane Doe asked "Have you heard anything from the girl that [John Doe] got with on Thursday?" and proceeded to inform K.R. of the woman's name.

69.     Jane Doe also pressured witnesses to align their testimonies with Jane Doe's. Jane Doe shared confidential documents containing information about the investigation with witnesses prior to their interviews. Jane Doe even showed one witness her complaint, saying "This is my statement to the school. So I want you to know, this is how I wrote it, this is how I want it to be told…if there's close friends or people, just make them aware this is what happened."

70.     Jane Doe also deleted all the text messages between her and John Doe from her phone after she reported John Doe to Tulane's Sexual Aggression Peer Hotline and Education (SAPHE) on February 6, 2022, and in advance of her interview with Barber.

71.     Some of the texts Jane Doe deleted, which John Doe later provided to Barber, confirmed that Jane Doe had materially lied during her interview with Barber. In her interview, Jane Doe claimed, multiple times, that the first time she ever had sex with John Doe was on February 2, 2022. This was false, as Jane Doe and John Doe had had sex on January 29, 2022. This was proven false by text messages between Jane Doe and John Doe on January 30, 2022 and confirmed by N.B.'s testimony who said, "This was not the first time they had had sex" when referencing the February 2nd consensual encounter. Jane Doe lied about the January 29th consensual sexual encounter to create the narrative that it was "fucked up" when John Doe walked her home on February 3, 2022, as though they had not had relations prior to the alleged encounter

22

on February 2, 2022. There was nothing abnormal about John Doe walking her home again the morning after their February 2, 2022 encounter, as it was a normal and usual course of action in the context of their sexual relationship.

72.    Upon information and belief, Jane Doe deleted these text messages because they would disprove aspects of her false narrative.  She claimed to Barber, however, that she had deleted the text messages because she did not want to look at them.

73.    While at the racetrack with John Doe on January 29, 2022, Jane Doe asked John Doe to take a picture of her by the track. He agreed and she later posted it on her Instagram account. Jane Doe eventually removed the photograph from Instagram, but only after she had been interviewed by Barber and asked to provide evidence and witnesses. Upon information and belief, Jane Doe removed the photograph once it became clear that it could be collected as relevant evidence in the investigation, attempting to retroactively align her social media accounts with her fabricated assault.

74.    In a broader pattern of fabrication, John Doe soon learned that much of the personal information Jane Doe had shared with him was false. For instance, she had told him she had transferred from North Carolina State University, but John Doe then noticed that an entirely different school was listed on Jane Doe's LinkedIn page.

75.    Jane Doe also told Barber that on the morning after the alleged assault, she was "trying to slip out without waking him or anything, but I remember he woke up." Jane Doe had actually texted John Doe the night before – the night of their sexual encounter – informing him that she would need to leave early, stating "I just have to leave at like 8:15" and then proceeded to

23

set an alarm around 8:00am that woke both of them up. However, as Jane Doe had deleted all of her text messages, it was John Doe's record of text messages that indicated the inconsistency.

76.     Jane Doe utilized social media to defame John Doe. On March 12, 2022, Jane Doe posted a Tik Tok video of herself singing along with a song, with the words "Knowing consent can't be given while someone's sleeping" appearing onscreen. As Jane Doe had already spread her false claims about John Doe to countless friends of both parties, friends of Jane Doe and John Doe understood the implication of the Tik Tok video to mean John Doe engaged in non-consensual sexual activity with Jane Doe while she was asleep. This video was posted immediately after John Doe began contacting witnesses to gather information regarding the false allegations Jane Doe was making and, upon information and belief, was a tactic to get John Doe to stop.

***Jane Doe's Allegations Are Contradictory***

77.     John Doe was sleeping during the time in which Jane Doe alleges non-consensual sexual activity took place and thus did not do what Jane Doe alleges.

78.     On three separate instances, Jane Doe expressed her belief that John Doe was aware of committing the alleged acts of sexual misconduct:

> i.  A mutual friend of Jane Doe and John Doe, B.M., sent Jane Doe a text message on February 9, 2022 informing her that John Doe denied knowing anything about the events Jane Doe had described in her text to John Doe. Jane Doe's response to that denial was "Wow, I can't believe he denied the situation."
>
> ii. When asked during the investigation by Barber "What gives you that impression[,] that certainty that he knows? That you didn't want him to do

24

that?" Jane Doe answered "Because I explicitly said no many times." Based on her statement to Barber and her text message to B.M, Jane Doe claimed that John Doe knew that he had committed the alleged conduct.

iii.  Jane Doe elaborated to Barber at a different point in the interview "what made me think that he knew that I knew something was wrong is that he seemed to not want me out of his sight" on the morning of February 3rd. Jane Doe was presumably referring to John Doe's offer to walk her home.

79.  Yet, on two instances revealed in the investigation, Jane Doe acknowledged John Doe would have no way of knowing the events in the allegation transpired:

i.  In text messages from February 8, 2022, submitted to Barber by witness K.R., Jane Doe asked K.R. "Do you know if [John Doe] knows?" in reference to the allegations she was making.

ii.  Jane Doe's text message of allegations to John Doe on February 7, 2022 operates under the presupposition that John Doe did not know what he did. In that text message, Jane Doe gave John Doe a false play-by-play of their night together, feeding him her false narrative for the first time.

*Jane Doe Attempts to Cover Up Motives for Defaming and Harassing John Doe*

80.  Upon information and belief, Jane Doe was motivated by jealousy to make false statements about John Doe to Tulane investigator Barber, fellow Tulane students, Louisiana civil court, and numerous people who were friends with John Doe.

81.  Jane Doe transferred from another school during the Covid-19 pandemic and did not have many friends when she met John Doe. Jane Doe sent text messages to John Doe indicating

25

she was grateful that he introduced her to his friends: "I appreciate you introducing me to your friends it's hard to find nice girl friends here that aren't crazy bitches." Jane Doe followed many of John Doe's friends on Instagram after the racetrack event he took her to. She clearly did not want to lose the friends she had made through John Doe, but knew that if she and John Doe did not continue to see each other, his friends would likely stop socializing with her.

82.     Text messages submitted to Barber by fellow student, T.R., showed Jane Doe expressing to T.R. that she had feelings for John Doe. However, on February 3, 2022, a day after her second and final sexual encounter with John Doe, Jane Doe saw John Doe out with another woman, and learned that he had gone home with the woman.

83.     Jane Doe did not make any allegations of non-consensual sexual conduct the day after her sexual encounter with John Doe. In fact, both friends with whom she spoke the next day testified that Jane Doe characterized the sexual encounter as consensual and normal.

84.     In her interview with Barber, Jane Doe's friend N.B. said "And from what she told me the next morning they had consensual sex and she was comfortable with the situation."

85.     Jane Doe's close friend and roommate, E.M., told Barber that she had asked Jane Doe about the sexual encounter the very next day. Jane Doe responded that it was "fine." It was two days later – after Jane Doe learned that John Doe had had sex with another woman – that Jane Doe told E.M. "this really weird thing happened" and proceeded to spin the false narrative claiming John Doe had repeatedly asked if she wanted to have sex and then masturbated next to her. In her interview, E.M. testified to Barber that Jane Doe changed her story only after seeing John Doe out with another woman.

26

86.     After learning that John Doe had sex with another woman shortly after his sexual encounter with Jane Doe, and realizing that John Doe did not have reciprocal feelings for her, Jane Doe became outraged. She set out to destroy John Doe's reputation, education, and career. In her interview with Barber, Jane Doe stated "He would have this nice little comfy job that he had all lined up by mommy and daddy" and "I want him to be expelled. And now, that he's been an idiot and withdrawn, then he literally can't reenroll or transfer, or graduate." In text messages to friend K.R. on February 9, 2022, Jane Doe specifically inquired as to John Doe's postgraduate work plans, asking whether K.R. knew whether John Doe intended to work for a particular company after graduating.

***Jane Doe Files for a Temporary Restraining Order, Provides Court with False Information***

87.     On March 16, 2022, Jane Doe filed a Petition for Protection From Abuse, also known as a Temporary Restraining Order (TRO), in Louisiana civil court. In her petition, Jane Doe requested that John Doe be barred from contacting her through third parties and from stepping foot on Tulane's campus. The TRO falsely alleged that John Doe had been harassing, intimidating, and stalking Jane Doe, despite the fact that John Doe had had no contact with Jane Doe since he first heard of her false claims through mutual friends. In fact, John Doe did not even respond to Jane Doe's February 8, 2022 text message, the last correspondence between the parties.

88.     In her TRO, Jane Doe cited instances of John Doe calling their "mutual friends and interrogating her." However, the one mutual friend John Doe had contacted, T.R., informed Barber that John Doe had called her, but made no mention of harassment or interrogation. In fact, T.R. voluntarily submitted evidence of her agreeing to speak on the phone with John Doe. Jane Doe also claimed John Doe harassed and stalked her by calling two other mutual friends to gather

27

evidence for this investigation. Jane Doe knew that John Doe's phone calls to his own friends, to discuss the ongoing Tulane investigation, did not constitute or include any harassing behavior, but Jane Doe nonetheless utilized and abused the civil court process as a way to bolster her claims and restrict John Doe from contacting relevant witnesses in the Tulane investigation. Furthermore, Jane Doe recognized that if she had a restraining order against John Doe, Tulane would view the TRO as evidence of John Doe's alleged wrongdoing and Jane Doe's alleged fear and trauma.

89.    In order to get the TRO dismissed, John Doe flew to New Orleans from South Carolina on March 24, 2022. However, Jane Doe did not even attend the court hearing. Thus, the TRO was summarily dismissed in her absence. After the hearing John Doe and his mother saw Jane Doe at the airport. It was clear that Jane Doe's false allegations of harassment and stalking were not made in earnest but rather with malicious intent in order to serve her own self interest in the Tulane investigation.

90.    On May 8, 2022, John Doe was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate.

91.    Jane Doe filed a false report of sexual misconduct, colluded and conspiring with Sue Roe, and maliciously defamed, harassed and retaliated against John Doe by pursuing a false complaint with Tulane's Office of Student Conduct. Jane Doe strategically exploited and manipulated Tulane's Title IX process to pursue a false report against John Doe and to harm John Doe's reputation, destroy John Doe's relationship with his friends and fraternity, and harm his academic career and future career plans. In doing so, Jane Doe deprived John Doe of the benefit he was to receive from his contract with Tulane under the Code, which had promised John Doe an

28

educational environment free from false information furnished to the University or to a University official, as well as an educational experience free from harassment or intimidation.

## AS AND FOR A FIRST CAUSE OF ACTION
### Defamation

92. Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

93. Defendant made false and defamatory statements about John Doe to administrators at Tulane University, to the president of John Doe's fraternity, to John Doe's friends, to the Louisiana civil court, as well as to numerous fellow students.

94. Defendant's statements were made with actual malice and reckless disregard for the truth.

95. Defendant's statements during the Title IX proceedings were defamatory and are not protected by "privilege" because Defendant made those statements knowing they were false.

96. Defendant made non-privileged defamatory false statements that were culpably published and that were damaging.

97. Defendant's statements were intended to, and did, expose Plaintiff to public contempt, aversion, disgrace, induce an evil opinion in the minds of right-thinking persons.

98. The specific statements accusing Plaintiff of engaging in non-consensual sexual conduct are factual: the language used and the context in which the language appeared made clear that Defendant was factually accusing Plaintiff of engaging in sexual assault and sexual harassment.

Case 5:22-cv-00500-BO    Document 1    Filed 12/08/22    Page 29 of 39

99.    Defendant falsely accused Plaintiff of sexual misconduct, defaming his name and reputation by knowingly pursuing a false complaint of misconduct with Tulane's Office of Student Conduct.

100.    Defendant knowingly pursued a false report of sexual misconduct against John Doe, fabricating and publishing a series of events that never occurred and contained a multitude of vile acts, including non-consensual touching, nonconsensual masturbation, stalking, and harassment.

101.    Defendant published this false allegation to numerous people when she pursued a false claim of sexual misconduct with the University, as well as in communications – written and verbal – to friends, acquaintances, and classmates.

102.    Publication of this false and defamatory statement is also actionable because it has resulted in special harm, in the form of economic losses, including but not limited to Plaintiff's tuition, academic career, impending college degree, future career aspirations, and the lifelong business and social relationships that would have been developed through his association with fellow Tulane students and membership in the fraternity.

103.    Publication of this false and defamatory statement is actionable per se as it concerned a crime of moral turpitude; namely, sexual assault.

104.    The aforesaid statement was defamatory because it imputed conduct which injuriously affected John Doe's reputation and/or degraded him in society and/or brought him into public contempt while causing emotional and psychological damages.

105.    There was never a criminal investigation of Defendant's claims because there was no factual information to support her claims.

30

106.    Defendant cannot rely on the Tulane University Office of Student Conduct decision as a defense to Plaintiff's defamation claim because the testimony upon which the decision is based was based on the same false and defamatory statements that John Doe engaged in acts of sexual misconduct, as well as false testimony, falsified evidence, and fraudulent conduct.

107.    Based on the foregoing, Defendant is liable to Plaintiff for defamation.

108.    As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential  damages.

109.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and  disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION
### Abuse of Process

110.    Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

111.    Defendant strategically utilized Louisiana's civil court system, filing a Petition for Protection from Abuse against John Doe, for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish John Doe and to strengthen Defendant's Title IX claim against John Doe.

112.    Defendant pursued the Petition for Protection from Abuse with an ulterior purpose, and one for which the Louisiana civil court system was not intended.

113.    Defendant acted knowingly and willfully when she pursued the Petition for Protection from Abuse, knowing the allegations precipitating the petition were false.

114.    The use of Louisiana's civil court process for the purpose of seeking revenge or pursuing a personal vendetta against another individual was improper.

115.    Defendant's primary motive in proceeding with the Louisiana civil court system process was to defame, harass and punish John Doe, despite her knowledge that the allegation of misconduct was false.

116.    Defendant strategically utilized Tulane's Title IX process for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish John Doe.

117.    Defendant pursued the investigation through Tulane's Title IX process with an ulterior purpose, and one for which neither Tulane's OSC process nor Title IX was intended.

118.    Defendant acted knowingly and willfully when she pursued the investigative process, knowing the charge precipitating the process was false.

119.    The use of Tulane's Title IX process for the purpose of seeking revenge or pursuing a personal vendetta against another individual was improper.

120.    Defendant's primary motive in proceeding with Tulane's Title IX process was to defame, harass and punish John Doe, despite her knowledge that the allegation of misconduct was false.

121.    Based on the foregoing, Defendant is liable to Plaintiff for abuse of process.

122.    As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, damage to reputation, loss of educational and

32

career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

123.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION
### Tortious Interference with Contract

124.    Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

125.    As described above, Plaintiff entered into a valid contract with Tulane University.

126.    Defendant was indisputably aware of the contract between Plaintiff and Tulane University, as she herself was provided with Tulane's Code of Conduct as well as a the OSC Notice with a link to Tulane's "Investigation Procedural Protections."

127.    Defendant was aware that the Student Code of Conduct "prohibits making false statements and/or knowingly providing false information in the course of a Tulane grievance process, including an investigation and hearing pursuant to the Student Code of Conduct."

128.    Defendant was aware that the Code of Conduct prohibits "[f]urnishing false information to the University or to a University official," as well as "Harassment or intimidation."

129.    Defendant was aware that in entering into an agreement with the University, John Doe was conferred contractual rights against Tulane University.

130.    Defendant intentionally, maliciously, and without justification, induced Tulane University not to perform the contract, depriving John Doe of a fair and equitable grievance process.

33

131.    As a direct and proximate result, John Doe was immediately banned from campus upon Defendant's filing of false claims, and John Doe was dismissed from the University at the conclusion of the misconduct investigation, due to Defendant's malicious actions.

132.    Defendant intentionally, maliciously, and without justification, induced Tulane University to cease performance of its contract with Plaintiff and dismiss him from the University.

133.    Defendant's action resulted in actual damage to Plaintiff; namely, the loss of his tuition payment, college degree, as well as future career prospects.

134.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

135.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

136.    Plaintiff John Doe repeats and realleges each and every allegation hereinabove as though fully set forth herein.

137.    Defendant intentionally inflicted severe emotional distress upon Plaintiff when she knowingly and willfully pursued a false complaint of sexual misconduct against John Doe.

138.     Defendant intentionally inflicted severe emotional distress upon Plaintiff when she participated in the investigation of a complaint of sexual misconduct against Plaintiff conducted

by Tulane's OSC, knowing such a serious charge could result in a sanction of dismissal from the University, in addition to severe emotional damage.

139. Defendant was substantially certain such distress would result from her conduct, as Defendant utilized Tulane's Title IX process for the very purpose of harassing and retaliating against John Doe.

140. Defendant was certain such distress would result from this conduct as Plaintiff was ultimately expelled from the University.

141. Defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

142. Defendant's actions directly caused severe emotional distress to Plaintiff, including but not limited to post-traumatic stress disorder, as her false reporting of a charge of sexual assault against Plaintiff ultimately led to his dismissal from University, removal from his fraternity, damage to his name and reputation, ostracism from his peers, and severe emotional damage.

143. The distress suffered by Plaintiff as a result of Defendant's actions was so severe that no reasonable person should be expected to endure it.

144. Based on the foregoing, Defendant is liable to Plaintiff for intentional infliction of emotional distress.

145. As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

35

146.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Civil Conspiracy

147.    Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

148.    Defendant and Sue Roe acted in concert with the common purpose to defame and injure John Doe emotionally, reputationally and economically by engaging in the acts outlined above, including but not limited to the false reporting to Tulane University, John Doe's fraternity, and other individuals that John Doe had sexually assaulted and sexually harassed Jane Doe and Sue Roe.

149.    It was foreseeable that the actions undertaken by Defendant and Sue Roe would result in John Doe being injured and were undertaken by Defendant and Sue Roe for that express purpose.

150.    John Doe has suffered as a direct and proximate result of the above conduct, tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages actions.

151.    John Doe suffered and incurred Special Damages, which were foreseeable and were exacerbated and magnified as a result of the Defendant's conspiracy to defame.

152.    John Doe's injuries were exacerbated and magnified because the defamatory statements were disseminated through electronic communication and published on the Internet.

36

153.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff John Doe demands judgment against Defendant Doe as follows:

i.      on the first cause of action, a declaration that Defendant Jane Doe defamed John Doe and an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

ii.     on the second cause of action for abuse of process, a judgment awarding John Doe an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

iii.    on the third cause of action for tortious interference with contract, a judgment awarding John Doe an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

iv.        on the fourth cause of action for intentional infliction of emotional distress, a judgment awarding John Doe an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

v.        on the fifth cause of action for civil conspiracy, a judgment awarding John Doe damages including but not limited to special damages; and

vi.        awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

John Doe herein demands a trial by jury of all triable issues in the present matter.

Dated: New York, New York
      December 8, 2022

**Respectfully submitted,**

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff*

**By:** /s/ *Andrew Miltenberg*
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
*Pro Hac Vice Application forthcoming*

-and-

38

**EKSTRAND AND EKSTRAND, LLP**

**By:** /s/  *Robert Ekstrand*
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

39

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOHN DOE

**(b)** County of Residence of First Listed Plaintiff   Charleston, SC
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Andrew T. Miltenberg, Esq.          Robert C. Ekstrand, Esq.
363 Seventh Avenue, Fifth Floor     110 Swift Ave, Second Fl.
New York, New York 10001            Durham, NC 27705
Tel (212) 736-4500                  Tel (919) 452-4647

## DEFENDANTS

JANE DOE

County of Residence of First Listed Defendant   Wake County, NC
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [x] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332 (diversity)

Brief description of cause:
Defamation

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
12/8/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Robert C. Ekstrand, NC Bar No. 26673 (Local Civil Rule 83.1(d) Counsel for Plaintiff) and Andrew T. Miltenberg, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

JOHN DOE

*Plaintiff(s)*

v.

JANE DOE

*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.  5:22-cv-500

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  JANE DOE

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: 

Andrew T. Miltenberg, Esq.          Robert C. Ekstrand, Esq.
NESENOFF & MILTENBERG, LLP          EKSTRAND & EKSTRAND LLP
363 Seventh Avenue, Fifth Floor     110 Swift Avenue, Second Floor
New York, New York 10001            Durham, North Carolina 27705
Tel (212) 736-4500                  Tel (919) 452-4647

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  5:22-cv-500

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

AO 458 (Rev. 06/09)  Appearance of Counsel

# UNITED STATES DISTRICT COURT
## for the
Eastern District of North Carolina

| | | Original Filed at Docket No. 2, |
| --- | --- | --- |
| | | Sealed by Court Order |

<table>
<tr><td>JOHN DOE</td><td>)</td><td></td></tr>
<tr><td><em>Plaintiff</em></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Case No.    22-cv-500</td></tr>
<tr><td>JANE DOE</td><td>)</td><td></td></tr>
<tr><td><em>Defendant</em></td><td>)</td><td></td></tr>
</table>

**APPEARANCE OF COUNSEL**

To:    The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

the plaintiff, John Doe.                                                        .

Date:    12/08/2022

/s/ Robert C. Ekstrand
*Attorney's signature*

Robert C. Ekstrand, NC Bar No 26673
*Printed name and bar number*

EKSTRAND & EKSTRAND LLP
110 Swift Avenue, Second Floor
Durham, NC 27705
*Address*

rce@ninthstreetlaw.com
*E-mail address*

(919) 452-4647
*Telephone number*

(919) 214-3014
*FAX number*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-500

| | | |
|---|---|---|
| **JOHN DOE** | ) | |
| | ) | ┌─ Original Filed at Docket No. 3, |
| **Plaintiff,** | ) | Sealed by Court Order ─┐ |
| | ) | |
| **v.** | ) | **NOTICE OF SPECIAL APPEARANCE** |
| | ) | |
| **JANE DOE** | ) | |
| | ) | |
| **Defendant.** | ) | |

┌─────────────────────────────────┐
│ **Original Filed at Docket No. 3,** │
│ **Sealed by Court Order** │
└─────────────────────────────────┘

Please take notice that the undersigned Andrew Miltenberg, Esq. hereby enters a notice of special appearance as counsel for John Doe in the above-captioned matter, in association with Local Civil Rule 83.1(d) counsel, Robert Ekstrand, Esq.  I certify that I will submit any document to Local Civil Rule 83.1(d) counsel for review prior to filing the document with the court.

/s/ *Andrew Miltenberg*
Andrew Miltenberg, Esq.
Nesenoff & Miltenberg, LLP
363 Seventh Ave, 5th Floor
New York, NY 10001
(212) 736-4500
amiltenberg@nmllplaw.com
NY Bar. No. AM7006
**Attorney for Plaintiff**

/s/ Robert Ekstrand
Robert Ekstrand
Ekstrand & Ekstrand, LLP
110 Swift Avenue
Durham, NC 27705
Tel. (919) 416-4590
Fax. (919) 214-3014
rce@ninthstreetlaw.com
N.C. Bar. No. 26673
**Local Civil Rule 83.1(d) Counsel for Plaintiff**

Original Filed at Docket No. 4,
Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Case No.  5:22-cv-500-BO

JOHN DOE,                                             )
                                                              )
            Plaintiff(s),                                )
      v.                                                     )
                                                              )
JANE DOE,                                             )
                                                              )
            Defendant(s).                             )

**DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION AND ATTRIBUTED CITIZENSHIP**

Pursuant to Fed. R. Civ. P. 7.1 and Local Civil Rule 7.3, or Fed. R. Crim. P. 12.4 and Local Criminal Rule 12.3,

JOHN DOE                        who is  the plaintiff                ,
(name of party/intervenor)            (plaintiff/defendant/other:_____)

makes the following disclosure:

1.  Is the party/intervenor a publicly held corporation or other publicly held entity?

    YES  ◯                          NO  ◉

2.   Does the party/intervenor have any parent corporations?

    YES  ◯                          NO  ◉

If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% of more of the stock of the party/intervenor owned by a publicly held corporation or other publicly held entity?

    YES  ◯                          NO  ◉

If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Civil Rule 7.3 or Local Criminal 12.3)?

YES ○        NO ◉

5. Is the party/intervenor a trade association?

YES ○        NO ◉

If yes, identify all members of the association, their parent corporations, and any publicly held companies that own 10% or more of a member's stock:

6. If the case arises out of a bankruptcy proceeding, identify any trustee and the members of any creditor's committee:

7. In a case based on diversity jurisdiction, the following is a list of every individual or entity whose citizenship is attributed to the party/intervenor:

John Doe
_____
(Name of individual/entity)

South Carolina
_____
(State of citizenship)

Jane Doe
_____
(Name of individual/entity)

North Carolina
_____
(State of citizenship)

_____
(Name of individual/entity)

_____
(State of citizenship)

_____
(Name of individual/entity)

_____
(State of citizenship)

_____
(Name of individual/entity)

_____
(State of citizenship)

_____
(Name of individual/entity)

_____
(State of citizenship)

If there are additional individuals or entities who citizenship is attributed to the party/intervenor, please provide their names and states of citizenship on a separate piece of paper.

Signature: /s/ Robert C. Ekstrand _____

Date: _____ December 8, 2022 _____

2

# THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### No. 5:22-cv-500-BO

-------------------------------------------------------------x

JOHN DOE,

                        **Plaintiff,**

          -v-

JANE DOE,

                    **Defendant.**

-------------------------------------------------------------x

| |
|---|
| Original Filed at Docket No. 5, |
| Sealed by Court Order |

## PLAINTIFF'S MOTION FOR
## LEAVE TO PROCEED UNDER PSEUDONYM

Plaintiff John Doe moves the Court for leave to proceed under pseudonym. In support of this motion Plaintiff will file contemporaneously a memorandum of law which is incorporated herein.

Respectfully submitted on this 8th day of December, 2022.

                   **NESENOFF & MILTENBERG, LLP**
                   *Attorneys for Plaintiff*

                   **By:** /s/ *Andrew Miltenberg*
                   Andrew T. Miltenberg, Esq.
                   363 Seventh Avenue, Fifth Floor
                   New York, New York 10001
                   (212) 736-4500
                   amiltenberg@nmllplaw.com
                   *Pro Hac Vice Application forthcoming*

                   -and-

**EKSTRAND AND EKSTRAND, LLP**

**By:** /s/  *Robert Ekstrand*

Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on this 8th day of December, 2022, I filed the foregoing using the CM/ECF system, which will provide notice to all counsel of record and will serve the same with the complaint and summons in this action.

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff*

**By:** /s/ *Andrew Miltenberg*
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com

**EKSTRAND AND EKSTRAND, LLP**

**By:** /s/ *Robert Ekstrand*
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

**THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-500-BO**

|  |
|---|
| **JOHN DOE,** |
| *Plaintiff,* |
| v. |
| **JANE DOE.** |
| *Defendants.* |

**[PROPOSED] ORDER**

This matter is before the court on the Plaintiff's Motion for Leave to Proceed Under a Pseudonym (ECF No. 5). For the reasons set out in the Motion and supporting memorandum of law and for other good cause shown, the Motion will be GRANTED.

THEREFORE, it is hereby ORDERED that the parties shall proceed in this action by referring to one another's pseudonym in the manner set out in the Motion.

SO ORDERED this _____ day of December 2022.

_____
[]
United States District Court Judge

Original Filed at Docket No. 6,
Sealed by Court Order

**THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-500-BO**

-----------------------------------------------------------------x
JOHN DOE,                                    |

              **Plaintiff,**        |

          -against -          |

JANE DOE,                                   |

             **Defendant.**      |
-----------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR
<u>LEAVE TO PROCEED UNDER PSEUDONYM</u>**

Plaintiff John Doe (hereinafter referred to as "Plaintiff" or "John Doe"), by and through

his attorneys, Nesenoff & Miltenberg, LLP and Ekstrand & Ekstrand, LLP, hereby seeks an Order

granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff.

Defendant Jane Doe[1], a resident of North Carolina and student at Tulane University ("Tulane"),

communicated false claims about John Doe to third parties to defame, humiliate, harass, and punish

Plaintiff John Doe, also a student at Tulane during the incidents described herein, after Plaintiff

and Jane Doe engaged in a consensual sexual encounter.

Thereafter, Jane Doe and another student (hereinafter "Sue Roe") conspired to target John

Doe in furtherance of their self-interests, in retaliation for John Doe's refusal to enter into a

committed relationship with either Jane Doe or Sue Roe, and in an effort to destroy John Doe's

academic career and future career goals. Defendant Jane Doe strategically utilized and manipulated

---

[1] "Jane Doe" is a pseudonym. Consistent with Plaintiff's motion to proceed by pseudonym, all
students shall be identified herein by pseudonym as well.

Tulane's Title IX investigation process to further a malicious vendetta against John Doe. Despite Jane Doe's inconsistent and varying accounts of the events, witness statements disproving Jane Doe's allegations, and significant exculpatory evidence, Tulane ultimately found John Doe responsible for nonconsensual sexual activity with Jane Doe and imposed a sanction of expulsion.

Plaintiff is seeking damages that resulted from Jane Doe's actions. John Doe has suffered physical, psychological, emotional and reputational damages.  He has also suffered, and will continue to suffer, economic injuries, the loss of educational and career opportunities, and loss of future potential earnings as a result of the expulsion, corresponding disciplinary mark on his academic record. The threat of further spread of false allegations that John Doe is a perpetrator of sexual assault is ever-present.

In light of the highly sensitive and personal nature of the allegations in the Complaint, mainly involving claims of sexual misconduct, Plaintiff is justifiably concerned about the potential irreparable harm, not only to his reputation, but also to his livelihood, in that this information, if revealed, will prevent him from continuing his education and obtaining gainful employment. Plaintiff should be allowed the opportunity to clear his name without further sullying his reputation by allowing public access to his identity, or the identity of his accusers.  Accordingly, Plaintiff respectfully moves for leave to proceed under the pseudonym "John Doe" and to identify Defendant "Jane Doe" and fellow accuser "Sue Roe" in this action.

## STATEMENT OF FACTS

The statement of facts pertinent to this motion is provided in the simultaneously filed Complaint, which together detail the highly sensitive nature of the matter involving false and insupportable accusations of sexual misconduct. These sensitive facts, it is respectfully submitted, satisfy the legal criteria for filing and proceeding under a pseudonym.

2

## <u>ARGUMENT</u>

While the Federal Rules of Civil Procedure require that the complaint "include the names of all the parties," and that an action be prosecuted "in the name of the real party in interest," the decision whether to allow a plaintiff to proceed anonymously is within the discretion of the trial court. Fed. R. Civ. P. 10(a), 17(a)(1); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). The Fourth Circuit has recognized that in "appropriate circumstances anonymity may, as a matter of discretion, be permitted. This simply recognizes that privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this rare dispensation. A necessary corollary is that there is a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted." *James v. Jacobson*, 6 F.3d at 238.

Thus, many courts, including those in the Fourth Circuit, have held under similar circumstances that a party may proceed anonymously. *Painter v. Doe*, 2016 WL 3766466, at \*6 (W.D.N.C. July 13, 2016) (stating that allegations of sexual misconduct are sufficiently sensitive and personal to support proceeding under a pseudonym); *Doe v. Virginia Polytechnic Inst. & State Univ.,* 2022 WL 972629 (W.D. Va. Mar. 29, 2022); *Doe v. Virginia Polytechnic Inst. & State Univ.*, 2018 WL 5929647 (W.D. Va. Nov. 13, 2018); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592-94 (E.D. Va. 2016) (allowing plaintiff accused of sexual assault to proceed under pseudonym); *Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016) (allowing the alleged perpetrator and victim of sexual assault to proceed under fictitious names; *Doe v. Univ. of Denver,* 2018 WL 1304530 (D. Colo. Mar. 13, 2018); *Doe v. Brown Univ.*, 210 F. Supp. 3d 310 (D.R.I. 2016)*; Doe v. Columbia Univ.,* 831 F.3d 46 (2d Cir. 2016); *Doe v. Univ. of the South,* 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016); *Doe v. Salisbury Univ.,* 2015 WL 3478134 (D. Md. 2015); *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th

Cir. 2017); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing Does I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir. 2000)).

This is so because "[t]he crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously. If a plaintiff is granted leave to proceed under a pseudonym, the public is not denied its right to attend the proceedings or inspect the court's opinions and orders on the underlying constitutional issue." *Doe v. Virginia Polytechnic Inst. & State Univ.,* 2018 WL 5929647, at *2 (W.D. Va. Nov. 13, 2018) (internal citations omitted).

The Fourth Circuit set out a non-exhaustive five-part test to consider when a plaintiff requests to proceed under a pseudonym. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). The factors to be considered are: (1) whether the requesting party seeks to preserve his privacy in a sensitive and highly personal matter; (2) whether there is a risk of retaliatory physical or mental harm to a party or other non-party due to the identification; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) whether there is a risk of unfairness to the opposing party in granting the motion. *Id.* (citations omitted).

I.      **Allegations of Sexual Assault Are a Highly Personal and Sensitive Matter**

The underlying facts in this case relate mainly to allegations against the Plaintiff of sexual misconduct communicated to third parties, including classmates and Tulane's Title IX office, by

4

two female students.  Ultimately, John Doe was erroneously found responsible and expelled from Tulane.  John Doe seeks to minimize the harm of Jane Doe's claims that he engaged in any sexual misconduct, and to prevent further harm.  Requiring John Doe to proceed under his real name, or disclose the names of his accusers, would cause the precise harm that he seeks to avoid and presumably his accusers would also choose to avoid.

In light of the nature of this case, private and intimate details regarding the lives of John Doe and Jane Doe will be at issue.  Moreover, the reason for bringing the lawsuit is to restore John Doe's good name.  If John Doe is required to disclose his identity in this litigation, the harm would already be done. John Doe's name will forever be publicly associated with allegations of gender-based misconduct, specifically, sexual misconduct.  For these reasons, courts have routinely found that in cases involving allegations of this nature, the parties should be allowed to proceed under pseudonym.  *See Doe v. Virginia Polytechnic Inst. & State Univ.,* 2020 WL 1287960 at *3 (W.D. Va. Mar. 18, 2020 (allegations of sexual assault involve sensitive and highly personal facts that can invite harassment and ridicule, and weighs heavily in favor of allowing a plaintiff to proceed by pseudonym); *George Mason Univ.*, 179 F. Supp. 3d at 592-94; *Painter v. Doe*, 2016 WL 3766466, at *6.

Since the interests at play here are of a highly sensitive nature, this factor weighs heavily in favor of anonymity. John Doe is seeking in this litigation to have his good name restored.  If his name is public, then he can never be made whole because this sensitive and prejudicial information will be published in the public arena and the damage will have been done.

## II.     The Identification of John Doe Poses Potential Retaliatory Physical and Mental Harm

The second factor likewise weighs in John Doe's favor.  If his identity is disclosed, John Doe could be targeted for retaliatory physical or mental harm based solely on the accusation of sexual misconduct.  *George Mason Univ.*, 179 F. Supp. 3d at 593.

Under the current social climate, there is no doubt that accusations of sexual misconduct are sufficient to tarnish a reputation.  It does not matter that the accused has not been convicted of a crime.  In this instance, Jane Doe spread false and highly damning claims of a sexual nature about John Doe to classmates, friends, and Tulane's administration, and even if this Court finds that Jane Doe conspired with Sue Roe to defame John Doe, that does not change the damage done if his request for anonymity is denied.  Having to live with this public reputation would be detrimental to Doe's physical and mental health.

Moreover, it would be harmful to publicize the names of the female accusers as it would subject them to "unwanted scrutiny, harassment and ridicule."  See *Virginia Polytechnic Inst. & State Univ.*, 2022 WL 972629 at *2.  Therefore, this factor also weighs in favor of anonymity.

## III.     John Doe, Jane Doe, and Sue Roe Are All Young Adults

John Doe was in college at the time of the alleged misconduct.  The female students were also college students at the time of the alleged misconduct.  While they are young adults, some courts have stated that being over eighteen years old should not be held against a college student seeking anonymity. *Yacovelli v. Moeser*, 2004 U.S. Dist. LEXIS 9152, *24 (M.D.N.C. May 20, 2004).  While this factor does not weigh towards providing anonymity, it does not weigh against it either.

### IV.    The Lawsuit Is Against Both Government and Private Parties

When a plaintiff challenges the government, courts are more likely to allow him or her to proceed under a pseudonym than in cases involving private parties, since actions against private individuals may harm their reputations. *Yacovelli,* 2004 U.S. Dist. LEXIS 9152, *8; *Painter*, 2016 WL 3766466, at *6; *Virginia Polytechnic Inst. & State Univ.,* 2022 WL 972629 at *3 (Courts are more likely to permit a plaintiff to proceed under a pseudonym in actions against the government because government entities typically do not involve injury to reputation). Here, the Defendant is a private person, but John Doe requests to maintain Defendant's anonymity as well for the reasons explained above.

The only information that the public needs regarding John Doe and Jane Doe is that they were all students at Tulane. There is no public interest in learning the identities of John Doe or Jane Doe through this litigation; it is sufficient that the underlying facts and legal claims are public. Therefore, this factor is neutral, at worst, and at best, favors proceeding under a pseudonym.

### V.    There Is No Risk of Unfairness to Defendant

Allowing John Doe to proceed under a pseudonym will not inhibit the Defendant from defending herself against the allegations raised by John Doe in this suit. Jane Doe is well aware of John Doe's identity, as Jane Doe was party to the investigation process conducted by Tulane, during which his identity was disclosed. Therefore, permitting John Doe to remain anonymous will not result in any prejudice to Defendant. This factor also weighs against revealing John Doe's identity to the public.

## CONCLUSION

The Court should allow John Doe, Jane Doe, and Sue Roe to proceed anonymously because of the highly sensitive and private nature of the issues before the Court, and the lack of prejudice to Defendant Jane Doe.   Therefore, John Doe requests that he be allowed to proceed pseudonymously for the duration of this litigation.

Dated: New York, New York
       December 8, 2022

                              **Respectfully submitted,**

                              **NESENOFF & MILTENBERG, LLP**
                              *Attorneys for Plaintiff*

                              **By:**  /s/ *Andrew Miltenberg*
                              Andrew T. Miltenberg, Esq.
                              363 Seventh Avenue, Fifth Floor
                              New York, New York 10001
                              Tel (212) 736-4500
                              amiltenberg@nmllplaw.com

                              -and-

                              **EKSTRAND AND EKSTRAND, LLP**

                              **By:** /s/  *Robert Ekstrand*
                              Robert C. Ekstrand, Esq.
                              N.C. Bar No. 26673
                              110 Swift Avenue, 2nd Floor
                              Durham, North Carolina 27705
                              Tel. (919) 416-4590
                              rce@ninthstreetlaw.com
                              Local Civil Rule 83.1(d) Counsel for Plaintiff

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2022, I filed the foregoing brief using the court's

CM/ECF system, which will provide notice to all counsel of record, and, further that I will serve

all defendants with the foregoing brief along with the complaint and summons.


NESENOFF & MILTENBERG, LLP
Attorneys for Plaintiff

By:   /s/ Andrew Miltenberg
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com

EKSTRAND AND EKSTRAND, LLP

By: /s/   Robert Ekstrand
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

9

Original Filed at Docket No. 7,
Sealed by Court Order

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### ELECTRONIC FILING ATTORNEY REGISTRATION FORM

This form is used to register for an account on the Eastern District of North Carolina Electronic Filing System. Registered attorneys will have the ability to electronically submit documents and to view the electronic docket sheets and documents. By registering, attorneys agree to receive electronic notice of filings as well as agree to file all documents electronically through the system, pursuant to Fed. R. Civ. P. 5(b), 5(d), and 77(d), and Fed. R. Crim. P. 49(a)-(b). The following information is required for registration:

First Name: Andrew                    Middle Initial: T

Last Name: Miltenberg                 If appropriate check one:  Senior ☐  Junior ☐  II ☐  III ☐

N.C. Bar ID Number: AM7006            OR State that issued license: Eastern District of New York

List all states to which you are admitted to practice and any corresponding bar number: U.S. Supreme Court 309724,

Northern District of New York 517014, Southern District of New York, AM 7006

Are you currently a member in good standing of the Eastern District of North Carolina bar?  Yes ☐  No ☑

If no, are you:  ☑  Appearing as out of state counsel pursuant to LR 83.1 and LR 57.1 EDNC

☐  Appearing in the Eastern District pursuant to a Court Order

Firm Name: Nesenoff & Miltenberg, LLP

Address: 363 Seventh Ave, 5th Floor

City: New York              State: New York          Zip Code: 10001

Voice Telephone Number: 212-736-4500        Fax Number: 212-736-2260

Internet E-Mail Address: amiltenberg@nmllplaw.com

**Attorneys seeking to file documents electronically must be allowed to practice in the United States District Court for the Eastern District of North Carolina pursuant to Local Civil Rule 83.1 and Local Criminal Rule 57.1 EDNC.**

In which U.S. District Court(s) are you a member in good standing?: Colorado, Illinois, New York, Michigan

Have you had CM/ECF training? Where?: No.

**By submitting this registration form, the undersigned agrees to abide by all the Court rules, orders, policies, and procedures governing the use of the electronic filing system. The undersigned also agrees to receive notice of filings pursuant to Fed. R. Civ. P. 5(b) and 77(d) and Fed. R. Crim. P. 49(a)-(d) via the Court's electronic filing system. The undersigned agrees to file all documents electronically pursuant to Fed. R. Civ. P. 5(d) and Fed. R. Crim. P. 49(b). Pursuant to Fed. R. Civ. P. 5(d) and Fed. R. Crim. P. 49(b), a filing made through an attorney's electronic filing account and authorized by that attorney, together with that attorney's name on a signature block, constitutes the signature of the attorney. The combination of user ID and password will serve as the attorney's authorization for filing. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised by an unauthorized user.**

_____        12/8/2022
Signature of Registrant *  Andrew T. Miltenberg, Esq.    Date

*Must be registrant's original, wet-ink signature and cannot be a scan, photocopy, or electronic signature

Submit completed Registration Form to:

| MAILING ADDRESS | STREET ADDRESS (OVERNIGHT DELIVERY) |
|---|---|
| Clerk of Court | Clerk of Court |
| United States District Court | United States District Court |
| Attn: ECF Attorney Registration | Attn: ECF Attorney Registration |
| Post Office Box 25670 | 310 New Bern Avenue, Suite 174 |
| Raleigh, NC 27611 | Raleigh, NC 27601 |

Updated August 2022

Original Filed at Docket No. 8,
Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-500-D-BM

JOHN DOE,                          )
        Plaintiff,          )
                            )
        v.                  )          **ORDER**
                            )
JANE DOE,                          )
                            )
        Defendant.          )

On December 8, 2022, "John Doe" ("plaintiff") filed a complaint against "Jane Doe" ("defendant") alleging defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy [D.E. 1]. On the same day, plaintiff moved ex parte for leave to proceed under a pseudonym [D.E. 5] and filed a memorandum in support [D.E. 6]. As explained below, the court denies plaintiff's motion to proceed under a pseudonym.

I.

Plaintiff argues that the "highly sensitive and personal nature of the allegations" require use of pseudonyms to protect the parties' privacy. See [D.E. 6] 2. The complaint uses pseudonyms for both plaintiff and defendant. See Compl. [D.E. 1]. Plaintiff, however, only requests "permission to file a Complaint . . . as a pseudonymous Plaintiff." [D.E. 6] 1; see [D.E. 5] 2 ("Plaintiff respectfully moves for leave to proceed under the pseudonym 'John Doe.'").

Essentially, plaintiff's complaint concerns defendant's alleged "false claims" of sexual assault made to Tulane University ("Tulane") and unidentified third parties in order to "defame, humiliate, harass, and punish Plaintiff John Doe." See Compl. at 1. Plaintiff also identifies another student, using the pseudonym "Sue Roe," who allegedly conspired with the defendant to defame

plaintiff and misuse Tulane's Title IX investigation process to "further a malicious vendetta against John Doe." See [D.E. 6] 1–2. Outside of John Doe, Jane Doe, and Sue Roe, the complaint identifies almost every other individual with initials. See, e.g., Compl. at ¶ 16 (identifying Sue Roe's paramour as "B.H."); ¶ 18 (identifying Sue Roe's housemate as "D.E."); ¶ 21 (identifying John Doe's friends as "M.V." and "K.R."); ¶ 23 (identifying a member of another fraternity as "K.S."). The only individuals identified by name are Tulane staff members. See, e.g., Compl. at ¶ 48 (Christopher Zacharda, Director of Student Conduct); ¶ 50 (Jaqueline Barber, University Investigator).

A civil complaint generally must set forth the "name[s] [of] all the parties." Fed. R. Civ. P. 10(a). "[I]n exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." Doe v. Pub. Citizen, 749 F.3d 246, 273 (4th Cir. 2014); Doe v. Lees-McRae Coll., No. 1:20-CV-00105-MR, 2021 WL 2673050, at *6 (W.D.N.C. June 29, 2021) (unpublished). The court considers five factors in deciding whether to allow a party to proceed pseudonymously including: (1) the justification asserted by the requesting party and whether it is to "preserve privacy in a matter of sensitive and highly personal nature" or "merely to avoid the annoyance and criticism that may attend any litigation"; (2) "risk of retaliatory physical or mental harm" because of identification; (3) the age of the party; (4) "whether the action is against a governmental or private party"; and, (5) "the risk of unfairness to the opposing party[.]" Pub. Citizen, 749 F.3d at 273 (quotation omitted); see James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993). Additionally, because the use of pseudonyms in litigation undermines the public's right of access to judicial proceedings, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against

2

the public's interest in openness and any prejudice that anonymity would pose to the opposing party." Pub. Citizen, 749 F.3d at 274.

As for the first factor, the court asks whether the moving party is requesting to use a pseudonym "merely to avoid the annoyance and criticism that may attend any litigation" or "to preserve privacy in a matter of sensitive and highly personal nature[.]" James, 6 F.3d at 238. Plaintiff argues that the sexual assault allegations leading to his expulsion from Tulane involve "private and intimate details regarding the lives of John Doe and Jane Doe." [D.E. 6] 5. Numerous district courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault. See, e.g., Doe v. Va. Polytechnic Inst. & State Univ., No. 7:21-CV-378, 2022 WL 972629, at *2 (W.D. Va. Mar. 30, 2022) (unpublished); Doe v. Rector & Visitors of George Mason Univ., 179 F. Supp. 3d 583, 592–94 (E.D. Va. 2016); Painter v. Doe, No. 3:15-CV-369-MOC, 2016 WL 3766466, at *6 (W.D.N.C. July 13, 2016) (unpublished); Doe v. Alger, 317 F.R.D. 37, 40 (W.D. Va. 2016). Therefore, the court finds that plaintiff desires to proceed pseudonymously in order to preserve his privacy in a matter that is sensitive and highly personal.

The second factor concerns potential physical retaliation and mental harm the plaintiff could experience if the court were to deny his motion. Plaintiff claims that "under the current social climate" accusations of sexual assault can "tarnish a reputation." [D.E. 6] 6. Even though plaintiff's motion seeks only to have the court permit him to proceed pseudonymously, plaintiff also argues that revealing the names of defendant Jane Doe and Susan Roe could subject them to harm. See id.

The court recognizes the inflammatory nature of sexual misconduct, "the mere accusation of which, if disclosed, can invite harassment and ridicule." George Mason Univ., 179 F. Supp. 3d at 593. Plaintiff, however, has failed to produce "evidence to support more than a mere 'general

3

fear' of retaliation or mere embarrassment." Student A v. Liberty Univ., Inc., No. 6:20-cv-00023, 2022 WL 1423617, at *13 (W.D. Va. May 5, 2022); see Doe v. N.C. Cent. Univ., No. 1:98CV01095, 1999 WL 1939248, at *5 (M.D.N.C. Apr. 15, 1999) ("Plaintiff's fears of embarrassment and shame are insufficient in the circumstances of this case to outweigh the risk of unfairness to Defendant . . . ."). Additionally, there do not appear to be any aggravating factors beyond the subject matter of the sexual assault allegation. For example, plaintiff fails to allege in the complaint that these allegations were widely circulated or evoked passionate scrutiny in the media. Cf. George Mason, 179 F. Supp. 3d at 593; Alger, 317 F.R.D. at 40. Moreover, although the court recognizes plaintiff's concerns about the potential harm to Jane Doe and Sue Roe, that consideration does not affect whether the court should allow plaintiff to pursue this action pseudonymously. Therefore, this factor is neutral in the analysis.

As for the third factor, plaintiff concedes that all parties are adults, and therefore are not minors entitled to special protection based on age. See [D.E. 6] 6; A.T.P. v. MTR Hotels, LLC, No. 6:21-cv-647, 2021 WL 5772826, at *2 (D.S.C. Mar. 12, 2021) (unpublished). Nonetheless, plaintiff argues that "college students may still possess the immaturity of adolescence" and that the third factor does not weigh against allowing him to proceed pseudonymously. See Yacovelli v. Moeser, No. 1:02CV596, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004) (unpublished). However, when plaintiff filed this complaint, plaintiff was beyond the typical age of a college student and would have already graduated from Tulane if not for his expulsion. See Compl. ¶ 11 (noting that plaintiff had expected to graduate from college in 2022). Thus, this factor weighs against permitting plaintiff to proceed pseudonymously.

As for the fourth factor, the court considers whether the action is against a private individual or against a government. Plaintiff notes that "[w]hen a plaintiff challenges the government, courts

4

are more likely to allow him or her to proceed under a pseudonym." [D.E. 6] 7; see Va. Polytechnic Inst. & State Univ., 2022 WL 972629, at *3. Plaintiff then argues that his lawsuit is, in part, against "the government." It is not. The complaint lists only Jane Doe as defendant. The proposed summons lists only Jane Doe. See [D.E. 1-1]. Plaintiff's case is not against the government.

When a plaintiff accuses an individual of wrongdoing, "[b]asic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names." S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir. 1979); see Va. Polytechnic Inst. & State Univ., 2022 WL 972629, at *3; Doe v. Pittsylvania Cnty., Va., 844 F. Supp. 2d 724, 730 (W.D. Va. 2012); A.B.C. v. XYZ Corp., 282 N.J. Super. 494, 501, 505, 660 A.2d 1202, 1204 (App. Div. 1995). Basic fairness counsels against allowing plaintiff to proceed pseudonymously in this case. It would be fundamentally unfair for plaintiff to be able to "clear his name" and wield a potential judgement against Jane Doe to his advantage but hide under a shield of anonymity if unsuccessful. Therefore, this factor weighs significantly against allowing plaintiff to proceed pseudonymously.

As for the fifth factor, the court considers potential prejudice or unfairness to defendant. Admittedly, this factor is more difficult to assess because plaintiff filed the motion ex parte and the defendant has not had the opportunity to express potential prejudice she may face if the court permits plaintiff to proceed pseudonymously. Plaintiff argues that there is no risk of prejudice because "Jane Doe is well aware of John Doe's identity[.]" [D.E. 6] 7.

Given the nature of the allegations in the complaint, including Tulane's administrative proceedings in which John Doe and Jane Doe participated, Jane Doe is aware of plaintiff's identity. See Alger, 317 F.R.D. at 41. However, there are other sources of significant unfairness or risk of prejudice against Jane Doe. This risk stems not only from plaintiff's use of pseudonyms for himself,

5

but also from plaintiff's abundant use of pseudonyms and initials throughout the complaint. For example, the complaint references a "Sue Roe" who is inextricably tied to plaintiff's claims and is the alleged co-conspirator underlying plaintiff's civil conspiracy claim. See Compl. ¶ 148. Moreover, plaintiff uses initials for all key witnesses appearing in the complaint. See, e.g., id. at ¶¶ 16, 18, 21, 23. This pervasive anonymity could lead to difficulty and confusion for Jane Doe during discovery. See Doe v. Trs. of Ind. Univ., 577 F. Supp. 3d 896, 907 (S.D. Ind. 2022). Therefore, this factor weighs against allowing plaintiff to proceed pseudonymously.

Finally, "the court returns to the Fourth Circuit's broad admonition that the court must balance Doe's stated interest in anonymity against the public's interest in openness." Va. Polytechnic Inst. & State Univ., 2022 WL 972629, at *4; see Pub. Citizen, 749 F.3d at 274. A district court has "an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." Pub. Citizen, 749 F.3d at 274. Such extraordinary circumstances are not present here.

Although plaintiff argues that there is no public interest in the public learning his identity or the identities of others, plaintiff fails to address the risk that pseudonymous lawsuits have in eroding public access to proceedings. See [D.E. 6] 7. "[M]utual pseudonymity, while providing more protection to the parties' privacy and reputations, also undermines public access" to the proceedings. Eugene Volokh, The Law of Pseudonymous Litigation, 73 HASTINGS L.J. 1353, 1383 (2022). Indeed, if courts were to allow mutual pseudonymity in sexual assault-related libel or slander suits, then "whole areas of the law could become difficult for the media and the public to monitor, outside the constrained accounts of the facts offered up by judges and lawyers." Id.

6

Plaintiff cites numerous cases for the proposition that courts "have held under similar circumstances that a party may proceed anonymously." [D.E. 6] 3. Plaintiff is wrong. The cited cases do not involve a private individual plaintiff proceeding pseudonymously and suing a private individual defendant also named under a pseudonym. Moreover, plaintiff has failed to cite a case in which a plaintiff in a defamation or libel action was allowed to proceed pseudonymously against an alleged victim of sexual assault. See Roe v. Does 1-11, No. 20-CV-3788-MKB, 2020 WL 6152174, at *6 (E.D.N.Y. Oct. 14, 2020) (unpublished) ("The Court finds it highly persuasive that Plaintiff fails to and is unable to cite a single case in which a plaintiff, suing for defamation and alleging he was falsely accused of sexual assault, was allowed to proceed anonymously against the victim of the purported assault.").

Although courts sometimes allow those accused of sexual assault to sue schools or universities pseudonymously when attacking the findings of a university Title IX investigation, the considerations in those cases do not apply here. See, e.g., Doe v. Univ. of S.C., No. 3:18-cv-00161-TLW, 2018 WL 1215045, at *1 n.1 (D.S.C. Feb. 12, 2018), report & recommendation adopted, 2018 WL 1182508 (D.S.C. Mar. 6, 2018) (unpublished); Alger, 317 F.R.D. at 42; Doe v. Va. Polytechnic Inst. & State Univ., No. 7:18-cv-170, 2018 WL 5929647, at *3–4 (W.D. Va. Nov. 13, 2018). Unlike in those cases, plaintiff is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation. In fact, Tulane is not a defendant.

Ultimately, the James factors and concerns about the openness of proceedings weigh strongly against permitting plaintiff to proceed pseudonymously in this action. Therefore, the court denies plaintiffs' motion. Because Rule 10(a) requires plaintiff to proceed using his real name, plaintiff must file an amended complaint using his real name in order to proceed in this action. The court

**7**

does not express an opinion about whether plaintiff's amended complaint should use a pseudonym for the defendant. As mentioned, plaintiff's motion asked only to permit him to proceed pseudonymously. See [D.E. 5].

## II.

In sum, the court DENIES plaintiff's motion to proceed under a pseudonym [D.E. 5]. Plaintiff may file an amended complaint using his real name by January 30, 2023. Alternatively, by January 30, 2023, plaintiff may file a Rule 41 notice of dismissal. If plaintiff fails to take either of these actions by January 30, 2023, the clerk SHALL close the case without further order of the court.

SO ORDERED. This 5 day of January, 2023.

JAMES C. DEVER III
United States District Judge

Original Filed at Docket No. 9,
Sealed by Court Order

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | : | |
| | : | **Civil Action No: 5:22-CV-500-D-BM** |
| **Plaintiff,** | : | |
| | : | |
| -against- | : | |
| | : | |
| **JANE DOE,** | : | |
| | : | |
| **Defendant.** | : | |

**NOTICE OF APPEAL TO THE
U.S. COURT OF APPEALS FOR THE FOURTH CIRCUIT**

Notice is hereby given that Plaintiff John Doe, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the January 5, 2023, Electronic Order (ECF No. 8) denying Plaintiff John Doe's Motion to Proceed Under Pseudonym. Plaintiff files this Notice for Interlocutory Appeal pursuant to 28 U.S.C.A. § 1292 and the collateral order doctrine. *James v. Jacobson*, 6 F.3d 233, 236 (4th Cir. 1993).

By this interlocutory appeal, Plaintiff respectfully requests that the order of January 5, 2023, be reversed and Plaintiff's Motion to Proceed Under Pseudonym be granted.

Respectfully submitted on this 14th day of January 2023 by

**EKSTRAND AND EKSTRAND, LLP**
**By:** */s/ Robert C. Ekstrand*
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

**NESENOFF & MILTENBERG, LLP**
**By:** */s/ Andrew T. Milternberg*
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com

**Counsel for Plaintiff**

Page **2** of **3**

## <u>CERTIFICATE OF SERVICE</u>

   This document was served electronically upon all counsel of record by filing through the court's CM/ECF System on January 15, 2023. A copy of this Notice will be served with the summons and complaint upon the Defendant.

<div align="right">

<u>*/s/ Robert Ekstrand*</u>
Robert Ekstrand, Esq.

</div>

## APPEAL TRANSMITTAL SHEET (non-death penalty)

| | | |
|---|---|---|
| **Transmittal to 4CCA of notice of appeal filed:** _01/15/23_<br><br>✓ First NOA in Case<br><br>___ Subsequent NOA-same party<br><br>___ Subsequent NOA-new party<br><br>___ Subsequent NOA-cross appeal<br><br>___ Paper ROA   ___ Paper Supp.<br><br>Vols: _____<br><br>Other: _____ | **District:**<br> Eastern District of North Carolina<br>**Division:**<br> Western<br>**Caption:**<br><br>Doe v. Doe | **District Case No.:**<br> 5:22-CV-500-D<br>**4CCA No(s). for any prior NOA:**<br><br>**4CCA Case Manager:**<br><br>Original Filed at Docket No. 10, Sealed by Court Order |

**Exceptional Circumstances:** ___ Bail  ✓ Interlocutory  ___ Recalcitrant Witness  ___ Other _____

| | |
|---|---|
| **Confinement**-Criminal Case:<br><br>___ Death row-use DP Transmittal<br>___ Recalcitrant witness<br>___ In custody<br>___ On bond<br>___ On probation<br>**Defendant Address**-Criminal Case: | **Fee Status:**<br><br>___ No fee required (USA appeal)   ✓ Appeal fees paid in full   ___ Fee not paid<br>**Criminal Cases:**<br>___ District court granted & did not revoke CJA status (continues on appeal)<br>___ District court granted CJA & later revoked status (must pay fee or apply to 4CCA)<br>___ District court never granted CJA status (must pay fee or apply to 4CCA)<br>**Civil, Habeas & 2255 Cases:**<br>___ Court granted & did not revoke IFP status (continues on appeal)<br>___ Court granted IFP & later revoked status (must pay fee or apply to 4CCA)<br>✓ Court never granted IFP status (must pay fee or apply to 4CCA) |

| | |
|---|---|
| **District Judge:**<br> James C. Dever, III | **PLRA Cases:**<br>___ Proceeded PLRA in district court, no 3-strike determination (must apply to 4CCA)<br>___ Proceeded PLRA in district court, determined to be 3-striker (must apply to 4CCA) |
| **Court Reporter** (list all):<br><br><br><br><br><br>**Coordinator:** Shelia Foell | **Sealed Status** (check all that apply):<br>✓ Portions of record under seal<br>____ Entire record under seal<br>____ Party names under seal<br>____ Docket under seal |

| **Record Status for Pro Se Appeals** (check any applicable): | **Record Status for Counseled Appeals** (check any applicable): |
|---|---|
| ___ Assembled electronic record transmitted | ✓ Assembled electronic record available if requested |
| ___ Additional sealed record emailed to 4cca-filing | ___ Additional sealed record available if requested |
| ___ Paper record or supplement shipped to 4CCA | ___ Paper record or supplement available if requested |
| ___ No in-court hearings held | ✓ No in-court hearings held |
| ___ In-court hearings held – all transcript on file | ___ In-court hearings held – all transcript on file |
| ___ In-court hearings held – all transcript not on file | ___ In-court hearings held – all transcript not on file |
| ___ Other: | ___ Other: |

Deputy Clerk: Shelia Foell _____   Phone: 252-830-2330 _____   Date: 01/17/23 _____

01/2012

Case 2:24-cv-00825-DJP-EJD   Document 192   Filed 06/12/26   Page 73 of 1935

FILED:  January 18, 2023

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

| Original Filed at Docket No. 11, |
| Sealed by Court Order |

No. 23-1058
(5:22-cv-00500-D-BM)

_____

JOHN DOE

      Plaintiff - Appellant

v.

JANE DOE

      Defendant - Appellee

_____

This case has been opened on appeal.

| | |
|---|---|
| Originating Court | United States District Court for the Eastern District of North Carolina at Raleigh |
| Originating Case Number | 5:22-cv-00500-D-BM |
| Date notice of appeal filed in originating court: | 01/15/2023 |
| Appellant | John Doe |
| Appellate Case Number | 23-1058 |
| Case Manager | Emily Borneisen 804-916-2704 |

**NESENOFF &
MILTENBERG**LLP

New York | Boston | Palo Alto

Ira S. Nesenoff
Andrew T. Miltenberg
————————————
Stuart Bernstein
Tara J. Davis

Barbara H. Trapasso
Gabrielle M. Vinci
Regina M. Federico
Amy Zamir
Suzanne Dooley
Kristen Mohr

Philip A. Byler
Diana R. Warshow
Kara L. Gorycki
Susan E. Stark
Janine L. Peress
*Senior Litigation Counsel*

Rebecca C. Nunberg
*Counsel*

Marybeth Sydor
*Title IX Consultant*

ATTORNEYS AT LAW
_____

**nmllplaw.com**

January 19, 2023

**VIA ELECTRONIC FILING**
Hon. James C. Dever III
United States District Court
Eastern District of North Carolina
United States Courthouse
310 New Bern Avenue
Raleigh, NC 27601

> | Original Filed at Docket No. 12, |
> | Sealed by Court Order |

> **Re:** ***John Doe v. Jane Doe***
> **Civil Action No. 5:22-CV-500-D-BM**
> **United States District Court for the**
> **Eastern District of North Carolina, Western Division**

Dear Judge Dever,

We write on behalf of Plaintiff John Doe ("Plaintiff" or "Doe") to respectfully request the Court to stay prior deadlines pending the Fourth Circuit Court of Appeals decision on Plaintiff's appeal. On January 5, 2023, this Court entered an order denying Plaintiff's motion to proceed by pseudonym and requiring Plaintiff to file an amended complaint under his legal name by January 30, 2023 (ECF No. 8). On January 15, 2023, Plaintiff filed a Notice of Appeal with this Court (ECF No. 9).

In light of Plaintiff's pending interlocutory appeal, Plaintiff respectfully requests that this Court stay its prior order requiring Plaintiff to file an amended complaint under his legal name, until the Court of Appeals rules on Plaintiff's appeal.

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400



Thank you for your consideration and attention to this matter.

> **Respectfully submitted,**
>
> **NESENOFF & MILTENBERG, LLP**
> **By:** _/s/ Andrew T. Milternberg_
> **Andrew T. Miltenberg, Esq.**
> **363 Seventh Avenue, Fifth Floor**
> **New York, New York 10001**
> **(212) 736-4500**
> **amiltenberg@nmllplaw.com**
> _Pro Hac Vice Application forthcoming_
>
>
> **EKSTRAND AND EKSTRAND, LLP**
> **By:** _/s/ Robert Ekstrand_
> **Robert C. Ekstrand, Esq.**
> **N.C. Bar No. 26673**
> **110 Swift Avenue, 2nd Floor**
> **Durham, North Carolina 27705**
> **Tel. (919) 416-4590**
> **rce@ninthstreetlaw.com**
> **Local Civil Rule 83.1(d) Counsel for Plaintiff**

cc: Counsel of Record, via ECF

Original Filed at Docket No. 13,
Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

JOHN DOE,

        Plaintiff,

v.

JANE DOE,

        Defendant.

5:22-CV-500-D-BM

ORDER

This matter is before the court on the Plaintiff's motion (ECF No. 12) to stay the Order (ECF No. 8) requiring the Plaintiff to file an amended complaint under his legal name by January 30, 2023, pending the Fourth Circuit Court of Appeals decision on Plaintiff's appeal (ECF No. 9) seeking review of that order. For the reasons set out in the motion and other good cause shown, the motion will be allowed.

THEREFORE, it is hereby ORDERED that the portion of the Order (ECF No. 8) requiring Plaintiff to file an amended complaint under his legal name shall be STAYED until the Court of Appeals rules on Plaintiff's appeal.

SO ORDERED on this _____ day of January, 2023.

_____
Hon. James C. Dever III
United States District Judge

1

<u>CERTIFICATE OF SERVICE</u>

This proposed order was filed and served electronically upon all counsel of record by filing through the court's CM/ECF System on January 20, 2023. A copy of this Notice will be served with the summons and complaint upon the Defendant.

<u>*/s/ Robert C. Ekstrand*</u>
Robert C. Ekstrand, Esq.
NC Bar No. 26673
110 Swift Avenue, 2FL
Durham, NC 27705
Direct: (919) 452-4647
rce@ninthstreetlaw.com

2

| Original Filed at Docket No. 14, |
| Sealed by Court Order |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| JOHN DOE, | |
|---|---|
| Plaintiff, | |
| v. | 5:22-CV-500-D-BM |
| JANE DOE, | |
| Defendant. | |

## ORDER

This matter is before the court on the Plaintiff's motion (ECF No. 12) to stay

the Order (ECF No. 8) requiring the Plaintiff to file an amended complaint under his

legal name by January 30, 2023, pending the Fourth Circuit Court of Appeals decision

on Plaintiff's appeal (ECF No. 9) seeking review of that order. For the reasons set out

in the motion and other good cause shown, the motion will be allowed.

THEREFORE, it is hereby ORDERED that the portion of the Order (ECF

No. 8) requiring Plaintiff to file an amended complaint under his legal name shall be

STAYED until the Court of Appeals rules on Plaintiff's appeal.

SO ORDERED on this __24__ day of January, 2023.

Hon. James C. Dever III
United States District Judge

1

Original Filed at Docket No. 15,
Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

JOHN DOE,

      Plaintiff,

v.

JANE DOE,

      Defendant.

**NOTICE OF APPEARANCE**

Please take notice that Defendant Jane Doe, named as "Jane Doe," will be represented in this action by Kelly Margolis Dagger of the law firm of Ellis & Winters LLP.

This the 24th day of February, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

Original Filed at Docket No. 16,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Case No. 5:22-cv-00500-D-BM

JOHN DOE                                        )
                                                )
          Plaintiff(s),                         )
     v.                                         )
JANE DOE                                        )
                                                )
          Defendant(s).                         )

**DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION AND ATTRIBUTED CITIZENSHIP**

Pursuant to Fed. R. Civ. P. 7.1 and Local Civil Rule 7.3, or Fed. R. Crim. P. 12.4 and Local Criminal Rule 12.3,

Jane Doe    ("Jane Doe")    who is defendant                ,
(name of party/intervenor)        (plaintiff/defendant/other:_____)

makes the following disclosure:

1.  Is the party/intervenor a publicly held corporation or other publicly held entity?

    YES  ◯                    NO  ◉

2.   Does the party/intervenor have any parent corporations?

    YES  ◯                    NO  ◉

If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% of more of the stock of the party/intervenor owned by a publicly held corporation or other publicly held entity?

    YES  ◯                    NO  ◉

If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Civil Rule 7.3 or Local Criminal 12.3)?

    YES ◯          NO ◉

5.  Is the party/intervenor a trade association?

    YES ◯          NO ◉

If yes, identify all members of the association, their parent corporations, and any publicly held companies that own 10% or more of a member's stock:

6.  If the case arises out of a bankruptcy proceeding, identify any trustee and the members of any creditor's committee:
    N/A

7.  In a case based on diversity jurisdiction, the following is a list of every individual or entity whose citizenship is attributed to the party/intervenor:

Jane Doe

_____                     North Carolina
(Name of individual/entity)                          _____
                                                     (State of citizenship)

_____                     _____
(Name of individual/entity)                          (State of citizenship)

_____                     _____
(Name of individual/entity)                          (State of citizenship)

_____                     _____
(Name of individual/entity)                          (State of citizenship)

_____                     _____
(Name of individual/entity)                          (State of citizenship)

_____                     _____
(Name of individual/entity)                          (State of citizenship)

If there are additional individuals or entities who citizenship is attributed to the party/intervenor, please provide their names and states of citizenship on a separate piece of paper.

Signature: /s/ Kelly Margolis Dagger

Date:    2/24/2023

2

Original Filed at Docket No. 17,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>    v.<br><br>JANE DOE,<br><br>        Defendant. | **NOTICE OF APPEARANCE** |

Please take notice that Defendant Jane Doe, named as "Jane Doe," will be represented in this action by James M. Weiss of the law firm of Ellis & Winters LLP.

This the 24th day of February, 2023.

ELLIS & WINTERS LLP

/s/ James M. Weiss
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of North Carolina ▼

| | |
|---|---|
| **Original Filed at Docket No. 18,** | |
| **Sealed by Court Order** | |

John Doe
*Plaintiff*
v.
Jane Doe
*Defendant*

)
)
)
)
)

Civil Action No. 5:22-cv-00500-D-BM

### WAIVER OF THE SERVICE OF SUMMONS

To:  Robert Ekstrand, counsel for Plaintiff John Doe
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____01/26/2023_____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: ____2/24/2023____

_____
Jane Doe
*Printed name of party waiving service of summons*

/s/ Kelly Margolis Dagger
*Signature of the attorney or unrepresented party*

Kelly Margolis Dagger
*Printed name*
ELLIS & WINTERS LLP
PO Box 33550
Raleigh, NC 27636
*Address*

kelly.dagger@elliswinters.com
*E-mail address*

919-573-1292
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

Original Filed at Docket No. 19,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>v.<br><br>JANE DOE,<br><br>      Defendant. | **DEFENDANT'S MOTION TO EXTEND DEADLINE TO RESPOND TO COMPLAINT** |

Defendant Jane Doe named as "Jane Doe," pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, hereby moves the Court for an order extending her deadline to respond to the complaint until the later of fourteen days after the Court lifts its order granting Plaintiff John Doe's motion to stay (D.E. 14), or fourteen days after Mr. Doe files an amended complaint as directed in the Court's order denying Mr. Doe's motion for leave to proceed under a pseudonym (D.E. 8). In support of her motion, Jane Doe states as follows:

1.      Plaintiff John Doe filed his complaint (D.E. 1) on December 8, 2022, and filed that same day an *ex parte* motion for leave to proceed under a pseudonym (D.E. 5).

2.      On January 5, 2023, the Court denied Mr. Doe's motion for leave to proceed under a pseudonym, and ordered Mr. Doe to file an amended complaint using his real name or a voluntary dismissal by January 30, 2023.  (D.E. 8).

3.    On January 15, 2023, Mr. Doe filed a notice of appeal from the order denying leave to proceed by pseudonym (D.E. 9), and on January 19, 2023, Mr. Doe moved to stay the Court's order requiring him to file an amended complaint (D.E. 12).

4.    On January 24, 2023, the Court granted Mr. Doe's motion to stay, ordering that the portion of its order requiring Mr. Doe to file an amended complaint shall be stayed until the United States Court of Appeals for the Fourth Circuit rules on Mr. Doe's appeal.  (D.E. 14).

5.    Jane Doe executed a waiver of service on January 26, 2023, making her responsive pleading or other response to the complaint due on March 27, 2023. (D.E. 18).

6.    Mr. Doe's appeal remains pending before the Fourth Circuit Court of Appeals.

7.    There is good cause to extend the deadline for Jane Doe to respond to the complaint until after the appeal is decided.  It would not serve judicial economy for Jane Doe to answer or otherwise respond to Mr. Doe's existing complaint while Mr. Doe's appeal is still pending, when this Court has ordered Mr. Doe to either amend or dismiss his existing complaint.  If the Fourth Circuit affirms this Court's exercise of its discretion to deny Mr. Doe's motion to proceed by pseudonym, Mr. Doe will be required to file an amended complaint or dismissal.  If Mr. Doe

2

chooses to file a dismissal, no response to the complaint will be required; if he files an amended complaint, Jane Doe will have to file an answer or otherwise respond to any amended complaint with fourteen days.  *See* Fed. R. Civ. P. 15(a)(3).

8.      If Mr. Doe had either dismissed or amended his complaint by January 30, 2023, as this Court ordered, Jane Doe would not have had to respond to the existing complaint.  She would have been required to respond only if Mr. Doe amended his complaint, and then only to the amended complaint, because it would have been the operative complaint at the time of her response deadline.  Extending the deadline for Jane Doe to respond to the complaint until after the Fourth Circuit rules on Mr. Doe's appeal will give effect to this Court's order, if that order is affirmed, by ensuring that Jane Doe is required to respond only if Mr. Doe files an amended complaint, and then only to the amended complaint.  To give effect to this Court's order denying the motion for leave to proceed by pseudonym while also accounting for the Court's stay of that order pending appeal, Jane Doe respectfully requests that the Court extend her deadline to respond to the Complaint until the later of fourteen days after the Court lifts its order granting Mr. Doe's motion to stay (D.E. 14), or fourteen days after Mr. Doe files an amended complaint as directed in the Court's order denying Mr. Doe's motion for leave to proceed under a pseudonym (D.E. 8).

3

9.     Jane Doe does not seek this relief for the purpose of delay, but rather to save the parties' and the Court's resources during the pendency of Mr. Doe's appeal.

10.     On the morning on March 22, 2023, counsel for Jane Doe informed counsel for Mr. Doe of Jane Doe intent to file this motion and requested Mr. Doe's position.  As of the time of filing this motion, Jane Doe counsel has not received a response and is unable to state Mr. Doe's position on the relief sought.

For the reasons stated above, Defendant Jane Doe respectfully requests that the Court extend her deadline to respond to the complaint until the later of fourteen days after the Court lifts its order granting Mr. Doe's motion to stay (D.E. 14), or fourteen days after Mr. Doe files an amended complaint.

This the 23rd day of March, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

JOHN DOE,

  Plaintiff,

  v.

JANE DOE,

  Defendant.

**ORDER GRANTING
DEFENDANT'S MOTION FOR
EXTENSION OF TIME TO
RESPOND TO COMPLAINT**

This matter is before the Court on Defendant Jane Doe's motion (D.E. 19) to extend her deadline to respond to the complaint.  For the reasons set out in the motion and other good cause shown, the motion will be allowed.

THEREFORE, it is hereby ORDERED that the deadline for Defendant to respond to the complaint shall be extended until the later of fourteen days after the Court lifts its order granting Plaintiff John Doe's motion to stay (D.E. 14), or fourteen days after Mr. Doe files an amended complaint as directed in the Court's order denying Mr. Doe's motion for leave to proceed under a pseudonym (D.E. 8).

SO ORDERED on this _____ day of March, 2023.

_____
JAMES C. DEVER III
United States District Judge

Original Filed at Docket No. 20,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

JOHN DOE,

        Plaintiff,

v.

JANE DOE,

        Defendant.

**ORDER GRANTING
DEFENDANT'S MOTION FOR
EXTENSION OF TIME TO
RESPOND TO COMPLAINT**

This matter is before the Court on Defendant Jane Doe's motion (D.E. 19) to extend her deadline to respond to the complaint. For the reasons set out in the motion and other good cause shown, the motion will be allowed.

THEREFORE, it is hereby ORDERED that the deadline for Defendant to respond to the complaint shall be extended until the later of fourteen days after the Court lifts its order granting Plaintiff John Doe's motion to stay (D.E. 14), or fourteen days after Mr. Doe files an amended complaint as directed in the Court's order denying Mr. Doe's motion for leave to proceed under a pseudonym (D.E. 8).

SO ORDERED on this **27** day of March, 2023.

JAMES C. DEVER III
United States District Judge

| Original Filed at Docket No. 21, |
| Sealed by Court Order |

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1058**

———————

JOHN DOE,

        Plaintiff – Appellant,

    v.

JANE DOE,

        Defendant – Appellee.

------------------------------

FIRST AMENDMENT COALITION; PROFESSOR EUGENE VOLOKH,

        Amici Supporting Appellee.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge. (5:22-cv-00500-D-BM)

———————

Argued:  September 19, 2023                  Decided:  October 26, 2023

———————

Before AGEE, WYNN, and THACKER, Circuit Judges.

———————

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Judge Agee and Judge Wynn joined.

———————

**ARGUED:**  Kara L. Gorycki, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant.  Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Andrew T. Miltenberg, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant.  James M. Weiss, ELLIS & WINTERS LLP, Raleigh,

Case 2:24-cv-00825-DJP-EJD    Document 192    Filed 06/12/26    Page 91 of 1935

North Carolina, for Appellee.   Eugene Volokh, First Amendment Amicus Brief Clinic, UCLA SCHOOL OF LAW, Los Angeles, California, for Amici Curiae.

_____

Case 5:22-cv-00500-D-BM   Document 21   Filed 10/26/23   Page 2 of 22

Case 2:24-cv-00825-DJP-EJD    Document 192    Filed 06/12/26    Page 92 of 1935

THACKER, Circuit Judge:

John Doe ("Appellant") filed this civil action alleging claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy against Jane Doe ("Appellee") after Appellee accused Appellant of sexual assault. When Appellant filed his complaint, he also filed an ex parte motion to proceed using the pseudonym "John Doe," rather than his real name. The district court denied the motion. Because we conclude that the district court did not abuse its discretion in doing so, we affirm.

I.

Appellant began his undergraduate studies at Tulane University in August 2018 and was on track to graduate in May 2022 prior to the events giving rise to this lawsuit.[1] Appellant had an ongoing but not steady, "uncommitted, casual relationship" with a woman he calls "Sue Roe" in Fall 2019, and at various points in Spring and Summer 2021. J.A. 8.[2] In August 2021, Appellant and Sue Roe left a bar together, went to Sue Roe's house, and engaged in what Appellant alleges was consensual sex. Afterward, Appellant told Sue Roe that they "may regret that later," which made her cry. *Id.* at 9. After apologizing, Appellant went to sleep but was awakened at some point later by Sue Roe's housemate, who asked him to leave.

---

[1] We recount the facts here as Appellant alleged them in his Complaint.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

Case 5:22-cv-00500-D-BM    Document 21    Filed 10/26/23    Page 3 of 22

In September 2021, Appellant "matched" on Tinder with Appellee. Several months later, Appellant invited Appellee to his fraternity party, which they attended on January 29, 2022. Appellee then texted Appellant on February 2, 2022, to wish him a happy birthday. Around midnight that night, Appellant asked Appellee if she "wanted to hang out," to which she responded that she did. J.A. 13. The two went to Appellant's house to have consensual sex, and Appellant walked Appellee home the next morning. On the night of February 3, Appellant went to a bar with his friends and met up with a woman he identifies as "A.H." *Id.* Appellant and A.H. left the bar together and "[u]pon information and belief, [Appellee] saw [Appellant] talking to A.H. at the bar and heard that he and A.H. went home together." *Id.* at 14.

Appellant alleges that after Appellee learned he went home with another woman on February 3, Appellee set off on a campaign to disseminate false allegations against him. Appellant alleges that on February 4, Appellee told one of Appellant's friends that Appellant had "engaged in nonconsensual sexual activity" with her. J.A. 14. "[B]y February 6th, false rumors had begun spreading around school alleging that [Appellant] sexually assaulted a female student" and Appellant had been told about the rumors and social media posts[3] by several people. *Id.* at 14–15. On the evening of February 8, Appellant received a text message from Appellee accusing him of sexually assaulting her and calling him "a predator and repeat offender." *Id.* at 15.

---

[3] Appellant does not allege that any post actually identified him but says there was "an indication" in one post that it was referring to him. J.A. 14.

4

The following day, Appellant discussed the allegedly false claims with multiple friends, and two of his friends called Appellant's "parents to tell them it was not safe for [Appellant] to be on the Tulane campus." J.A. 15. On February 10, Appellant's mother flew to Tulane to help Appellant pack and take him home. Appellant withdrew from Tulane on February 11, 2022.

Although Appellant was unaware at the time, Appellee had filed a report against Appellant with Tulane's Case Management and Victim Support Services[4] office on February 6, 2022. And on February 11, the day Appellant withdrew from Tulane, both Appellee and Sue Roe filed formal Title IX/Sexual Misconduct reports against Appellant. "Both reported having consensual sex with [Appellant], falling asleep, and waking up to him engaging in sexual activity." J.A. 18. Tulane investigated the reports and interviewed both Appellee and Sue Roe. Appellant alleges that Appellee's statement to Tulane investigators was false, defamatory, and contradicted by other evidence, and that Appellee conspired with Sue Roe and submitted false evidence in the course of the investigation. Tulane found Appellant responsible for sexual misconduct and expelled him from the university on May 8, 2022.

---

[4] The Case Management and Victim Support Services office offers support to Tulane students on a range of academic and non-academic issues, including medical needs, drug or alcohol abuse, and behavioral health concerns. The office also provides support to Tulane students who have been victims of crimes such as sexual assault, intimate partner violence, stalking, and hazing. Tulane University, *Case Management and Victim Support Services*, https://cmvss.tulane.edu/; https://perma.cc/KB2D-GGRJ (last visited Oct. 25, 2023).

On December 8, 2022, Appellant filed this civil action against Appellee[5] in the United States District Court for the Eastern District of North Carolina.  In the Complaint, Appellant alleges claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy.  Appellant seeks relief in the form of a "declaration that [Appellee] defamed [Appellant]" as well as compensatory and punitive damages on each claim.  J.A. 40–41.

On the same day he filed his Complaint, Appellant filed an ex parte motion for leave to proceed using a pseudonym along with a supporting memorandum.  In his motion, Appellant asked only "for leave to proceed under pseudonym," S.J.A. 1,[6] and his supporting memorandum reacknowledged that he sought "an Order granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff."  J.A. 43. Therefore, while Appellant's supporting memorandum noted that Jane Doe and Sue Roe were pseudonyms and that "all students shall be identified herein by pseudonym as well," *id.*, the district court construed the motion *only* as one to allow Appellant to use a pseudonym for himself -- not as a motion for leave to use pseudonyms for Jane Doe, Sue Roe, or anyone else. After considering the applicable factors as set out by this court, the district court denied Appellant's motion.

Appellant timely noted this appeal.

---

[5] The Complaint identifies Appellee only as "Jane Doe" and does not reveal her legal name or other identifying characteristics.

[6] Citations to the "S.J.A." refer to the Supplemental Joint Appendix filed by the parties in this appeal.

## II.

"The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Therefore, we review the district court's decision only for abuse of discretion.

We have described three ways a district court can abuse its discretion in considering motions to proceed by pseudonym. First, a district court abuses its discretion when it acts with "a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *James*, 6 F.3d at 239 (citation omitted). Second, a district court abuses its discretion when it fails to "adequately [] take into account judicially recognized factors constraining its exercise" of discretion. *Id.* (citation omitted). And finally, a district court abuses its discretion when its reasoning "is flawed by erroneous factual or legal premises." *Id.* (citation omitted).

## III.

Pursuant to Federal Rule of Civil Procedure 10(a), a civil complaint "must name all the parties." The rule recognizes "the general presumption of openness of judicial proceedings," which has a basis both in common law and in the First Amendment. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014). We have explained that "[p]seudonymous litigation undermines the public's right of access to judicial proceedings" because "[t]he public has an interest in knowing the names of litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Public Citizen*, 749 F.3d at 274 (internal citations omitted).

7

Nevertheless, district courts may, in their discretion, allow pseudonymous litigation because "privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this *rare* dispensation." *James*, 6 F.3d at 238 (emphasis supplied). To warrant this relief, the circumstances must be "exceptional." *Pub. Citizen*, 749 F.3d at 273.

In *James*, we set out five nonexhaustive factors for district courts to consider when deciding motions to proceed by pseudonym:

> (1) "[W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature";
>
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties";
>
> (3) "the ages of the persons whose privacy interests are sought to be protected";
>
> (4) "whether the action is against a governmental or private party"; and,
>
> (5) "relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously."

6 F.3d at 238. We have also clarified that "a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Pub. Citizen*, 749 F.3d at 274.

Appellant's memorandum in support of his motion briefly addressed each of the *James* factors, and the district court considered each of Appellant's arguments in its order

8

denying the motion. Nevertheless, Appellant argues the district court abused its discretion by (1) determining that the *James* factors weighed against anonymity, (2) failing to consider irreparable harm to his reputation, and (3) failing to balance Appellant's privacy interest in anonymity against the public's interest in open judicial proceedings. We address each argument, beginning with the *James* factors.

## IV.

## A.

The first *James* factor is "[w]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). In his motion, Appellant argued that the underlying facts in the case relate to allegations of sexual assault and, "in light of the nature of this case, private and intimate details regarding the lives of John Doe and Jane Doe will be at issue." J.A. 47. He also noted that, in bringing this lawsuit, he "seeks to minimize the harm of Jane Doe's claims," "prevent further harm," and "clear [his] good name." *Id.* Therefore, he argued, "the interests at play here are of a highly sensitive nature" such that this factor should weigh heavily in favor of granting his motion. *Id.* He also argued that he should be allowed to proceed by pseudonym because "[i]f [he] is required to disclose his identity in this litigation, the harm would already be done. [Appellant's] name will forever be publicly associated with allegations of . . . sexual misconduct." *Id.*

The district court accepted Appellant's arguments on this factor and determined that Appellant desired to proceed by pseudonym "in order to preserve his privacy in a matter

9

Case 2:24-cv-00825-DJP-EJD    Document 192    Filed 06/12/26    Page 99 of 1935

that is highly sensitive and highly personal," J.A. 57, rather than "merely to avoid the annoyance and criticism that may attend litigation," *James*, 6 F.3d at 238.  In doing so, the district court explained that "[n]umerous district courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault." J.A. 57.  The district court cited several cases where plaintiffs were allowed to proceed by pseudonym when they were suing their universities, or officials at their universities, for due process violations resulting from Title IX investigations.  *See, e.g.*, *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-378, 2022 WL 972629, at *2 (W.D. Va. Mar. 30, 2022); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592–94 (E.D. Va. 2016); *Painter v. Doe*, No. 3:15-cv-369, 2016 WL 3766466, at *6 (W.D.N.C. July 13, 2016); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016).  Therefore, the district court held that the first factor favored allowing Appellant to proceed by pseudonym.

On appeal, Appellant agrees that the district court's determination on this factor was correct.  But he takes issue with the fact that the district court made no express determination as to the weight of this finding.  But we have only required that district courts *consider* the *James* factors, and we have not prescribed any particular weight to any individual factor.  Rather, we have entrusted district courts to consider each case individually to discern which factors should -- in their discretion -- weigh most heavily.  *See James*, 6 F.3d at 242–43.  The district court considered this factor, and we find no abuse of discretion in its failure to note the particular weight it attributed to it.

Case 5:22-cv-00500-D-BM   Document 21   Filed 10/26/23   Page 10 of 22

B.

As to the second factor -- risk of harm -- Appellant argued to the district court that "if his identity is disclosed, [he] *could be* targeted for retaliatory physical or mental harm based solely on the accusation of sexual misconduct." J.A. 48 (emphasis supplied). He pointed to "the current social climate," as well as the fact that Appellee "spread false and highly damning claims . . . to classmates, friends, and Tulane's administration." *Id.* Thus, he argued that even a finding that Appellee did in fact defame him would not "change the damage done if his request for anonymity is denied" because he will have "to live with this public reputation" which "would be detrimental to [his] physical and mental health." *Id.* Appellant also argued, without further discussion, that "it would be harmful to publicize the names of the female accusers as it would subject them to unwanted scrutiny, harassment, and ridicule." *Id.* (quoting *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *2).

In its opinion, the district court recognized that due to "the inflammatory nature of sexual misconduct, the mere accusation . . . if disclosed, can invite harassment and ridicule." J.A. 57 (internal quotation marks omitted) (citation omitted). But the district court determined that Appellant failed "to produce 'evidence to support more than a mere general fear of retaliation or mere embarrassment.'" *Id.* (quoting *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022) (internal quotation marks omitted)). And the district court noted that there did not appear to be any "aggravating factors" such as media exposure that would endanger Appellant if his identity was known. J.A. 58. Finally, the district court explained that while Appellant expressed "concern[] about the

11

potential harm to Jane Doe and Sue Roe" if *their* identities were revealed, "that consideration does not affect whether the court should allow *plaintiff* to pursue this action pseudonymously." *Id.* (emphasis supplied). Therefore, the court determined that this factor was neutral in its analysis.

On appeal, Appellant argues that his case "is distinguishable from the garden-variety defamation case because it centers around false and defamatory statements made within the context of a Title IX disciplinary proceeding and [Appellee's] use of that proceeding to exact revenge against [Appellant]." Appellant's Opening Br. 28. And again, Appellant points to various courts allowing plaintiffs to proceed by pseudonym when they are suing their universities to challenge Title IX proceedings in order to argue that he has a valid privacy interest. Appellant argues it was error for the district court to find this factor to be neutral, rather than in his favor, because it added an "evidence requirement" that required him to produce evidence of more than a general fear or of aggravating factors, and it did not consider the risk to Appellee and Sue Roe.

We begin with Appellant's argument that the district court relied on an erroneous legal premise -- the additional "evidence requirement" -- and his argument that its conclusion that he had failed to supply evidence "was grounded in [an] erroneous factual premise" because the Complaint "alleges that [Appellant] had already experienced retaliation." Appellant's Opening Br. at 30–31.

The district court was required to consider "whether identification poses a risk of retaliatory physical or mental harm." *James*, 6 F.3d at 238. We do not find that the district court abused its discretion in looking for evidence of a risk beyond Appellant's bare

assertion that he *could be* targeted for retaliation if his name were public. Other courts have done the same. *See e.g.*, *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (finding evidence of a risk of harm where the plaintiff had demonstrated that there was press coverage of his case in a "relatively small community"); *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022) (explaining that the plaintiffs "argued and provided evidence to support more than a mere 'general fear' of retaliation"); *Freedom From Religion Foundation, Inc. v. Cherry Creek Sch. Dist. #5*, No. 07-cv-02126-MSK, 2009 WL 2176624, at *6 (D. Col. July 22, 2009) (explaining that "the unsubstantiated potential for an adverse public reaction" was insufficient where the plaintiffs had "not presented any evidence that reflects disapproval . . . or suggests they would be the target of actual threats, harassment or retaliation"); *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) ("fears of embarrassment or vague, unsubstantiated fears of retaliatory actions . . . do not permit a plaintiff to proceed under a pseudonym"); *Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215, 217 (E.D. Tex. 1997) (denying use of pseudonym where the record contained no "other factors" or "threats of violence" to support the plaintiff's argument that "it has happened before, therefore it *might* happen here").

In other words, district courts routinely look for "aggravating factors" or "evidence" as a means to determine whether a risk of harm truly exists. Because we cannot see how a district court could properly weigh this factor based on nothing more than a bare assertion of risk, we find no abuse of discretion in the district court's decision to look for additional evidence or aggravating factors to corroborate Appellant's claim.

13

As for Appellant's arguments that the district court relied on an "erroneous factual premise" in determining he had not provided sufficient evidence of a risk of harm, Appellant points to facts he alleged in the Complaint that show he had already experienced retaliation. He argues on appeal that the Title IX investigation itself was retaliation; "the further spread of false allegations . . . is ever present"; students "across Tulane's campus," including students studying abroad, had heard the rumors; and his friends had told his parents it was not safe for him at Tulane, so his mom flew there to take him home.[7] Appellant's Opening Br. at 31. Appellant also argues on appeal that his Complaint made clear that he had "already suffered emotional distress, reputational harm, loss of educational and career opportunities and psychological damages." *Id.*

Critically, though, Appellant did not present any of these arguments to the district court in his motion or supporting memorandum. Instead, he argued only that "[i]f his identity is disclosed, [he] *could be* targeted for retaliatory physical or mental harm" and that "having to live with this public reputation would be detrimental to [his] physical and mental health." J.A. 48 (emphasis suppled). The district court correctly noted that Appellant did not provide any evidence to support these fears, and these bald allegations are not sufficient.

---

[7] While Appellant's Complaint does allege that his friends thought he was not safe at Tulane, he made no attempt in his motion or in this appeal to explain why revealing his name in this lawsuit would put him at risk. Indeed, it seems that Appellant believes his identity is already well known in connection with these allegations on the Tulane campus. Moreover, Appellant has included so many details about his identity in his Complaint that, arguably, he could be readily identified in any event, especially by those in the Tulane community.

14

Finally, Appellant argues that the district court's determination that the second factor was neutral was based on an erroneous legal premise. Specifically, Appellant argues that the district court erred when it held that the risk to Appellee and Sue Roe if *their* identities were disclosed was irrelevant to its determination of whether *Appellant* should be allowed to use a pseudonym. Appellant argues that the risk to Appellee and Sue Roe was not irrelevant because district courts are expressly instructed to consider the risk to third parties, and he argues that he requested pseudonymity for Appellee and Sue Roe in his motion in order to protect them.

Appellant's arguments fail here too. While Appellant did use pseudonyms for Appellee and Sue Roe and suggested that they be identified by those names consistent with the Complaint, he repeatedly only asked for leave to proceed as a pseudonymous plaintiff. While courts are permitted to consider the risk to third parties if the *party seeking* anonymity is identified, Appellant did not argue that Appellee and Sue Roe were at risk if *his* identity was public. Rather he argued that "it would be harmful to publicize the names of the female accusers. . . ." J.A. 48. The district court was correct -- that consideration is not at issue and is irrelevant to whether Appellant should be allowed to use a pseudonym. It is also worth noting that Appellee does not seek anonymity herself. To the contrary, Appellee has identified herself using her real name in public court filings in both the district court and this court.[8]

Thus, the district court did not abuse its discretion in considering "risk of harm."

---

[8] Nevertheless, for purposes of this appeal, we have not identified Appellee by name.

15

C.

The district court determined that the third factor, age, weighed against Appellant because "all parties are adults, and therefore not minors entitled to special protection based on age." J.A. 58.  Although Appellant had argued in his motion that this factor should be neutral because "some courts have stated that being over eighteen years old should not be held against a college student," *id.* at 48, he does not challenge the district court's holding on appeal.

D.

For the fourth factor, whether the action is against a governmental or private party, Appellant recognized in his motion that he was suing a private party and that courts are less likely to allow anonymity in that scenario because "actions against private individuals may harm their reputation."  J.A. 49.  Nevertheless, Appellant argued he should be permitted to use a pseudonym because Appellee's identity could be protected and "the only information the public needs . . . is that they were all students at Tulane." *Id.*  In Appellant's view, "this factor is neutral, at worst." *Id.*

The district court, however, disagreed and determined that the fourth factor "weighs significantly against allowing [Appellant] to proceed pseudonymously" because he is suing only a private individual. J.A. 59.  "When a plaintiff accuses an individual of wrongdoing, '[b]asic fairness dictates that those among the defendants' accusers who wish to participate in this suit . . . must do so under their real names.'" *Id.* (quoting *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)).  The district court was also particularly concerned that "[i]t would be fundamentally unfair for

16

[Appellant] to be able to 'clear his name' and wield a potential [judgment] against [Appellee] but hide under a shield of anonymity if unsuccessful." J.A. 59.

On appeal, Appellant argues that this factor "does not carry significant weight." Appellant's Opening Br. at 33. Appellant points to several Title IX cases to claim that district courts have allowed plaintiffs to use pseudonyms "in cases involving private parties" even if they held that this factor weighed against anonymity. *Id.* (*citing Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-cv-170, 2018 WL 5929647, at \*3–4 (W.D. Va. Nov. 13, 2018); *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-cv-00249, 2020 WL 1287960, at \*4–5 (W.D. Va. Mar. 18, 2020); *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at \*2; *B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689, at \*26 (E.D. Va. Mar. 10, 2020)).

Not so. Significantly, these cases all differ from the case at hand because the plaintiffs in them were suing *both* public universities *and* private individuals, and, in many instances, the individuals were sued in their official capacities. Even still, the courts in these cases all found that the fourth factor was neutral or weighed against allowing anonymity because of the inclusion of private parties -- the more private parties (sued in their individual capacities), the more likely the courts were to find that the factor weighed against the plaintiff. Thus, the district court's determination here that this factor weighs significantly against allowing anonymity when Appellant is *only* suing a single individual is in line with all of the relevant precedent, despite Appellant's argument to the contrary.

In any event, Appellant does not challenge the district court's holding that this factor weighs against pseudonymity -- rather, he only takes issue with the fact that the court said

it "weighs *significantly* against" anonymity.  Appellant claims that this determination

"appears to be grounded in a general disapproval of party anonymity in cases where private

parties are involved, rather than consideration of the relevant case law and the specific

circumstances of [Appellant's] case."  Appellant's Opening Br. at 36.  Appellant cites only

to *James* and does not elaborate on this argument further.

In *James*, this court was concerned that the district judge acted by "general rule"

rather than "a true exercise of discretion."  6 F.3d at 239.  The record in *James* indicated

that the judge had "a flat rule of general application based upon [a] strongly felt personal

predilection" that "no party or witness may testify at trial except under his or her true

name."  *Id.* at 240.  And the district court in that case had failed to conduct a "particularized

assessment of the equities involved."  *Id.* at 239.  No such facts exist here.  The district

court below thoroughly considered all the factors and the arguments made by Appellant

and determined -- consistent with the weight of authority -- that suing only a private

individual weighs against anonymity.  We do not find any abuse of discretion in that

conclusion.

E.

Finally, as to the fifth *James* factor, the district court was required to consider the

risk of unfairness to Appellee if it allowed Appellant to proceed anonymously.  Appellant's

motion argued only that there was no risk of unfairness to Appellee because she "is well

aware of [Appellant's] identity, as [Appellee] was party to the investigation process

conducted by Tulane, during which his identity was disclosed."  J.A. 49.  The district court

accepted this point, but it explained that "there are other sources of significant unfairness

18

or risk of prejudice against [Appellee]." *Id.* at 59. "This risk stems not only from [Appellant's] use of pseudonym for himself, but also from [his] use of pseudonyms and initials throughout the complaint." *Id.* at 59–60. The district court was concerned that "this pervasive anonymity could lead to difficulty and confusion for [Appellee] during discovery," so it held that this factor weighed against allowing Appellant to proceed by pseudonym. *Id.* at 60.

On appeal, Appellant argues that the district court's concern about difficulty and confusion in discovery was an "erroneous factual premise" because Appellant "did not represent to the District Court that he was unwilling to conduct discovery using [] real names . . . which could easily be dealt with through a protective order." Appellant's Opening Br. at 36–37. And he argues that all individuals identified in the Complaint are known to Appellee.

Once again, however, Appellant never made either of these arguments to the district court. Appellant's motion failed to recognize that there could be any risk of unfairness in discovery -- he did not make any argument that anonymity could be dealt with in discovery or at trial, nor did he argue that the others in the complaint were known to Appellee. But the district court, knowing that it would need to manage the entire case if it granted Appellant's motion, rightly noted its concerns in its order.

F.

Considering the district court's entire analysis of the *James* factors, we conclude that the district court did not abuse its discretion because it did not rely on incorrect factual or legal premises, nor did it give any indication that it was acting by general rule. Instead,

19

the district court conducted a thorough, case specific analysis when it exercised its discretion.

<div align="center">V.</div>

Next, Appellant argues that the district court abused its discretion because it "failed to consider a significant factor in cases brought by persons falsely accused of sexual assault—the irreparable harm that [Appellant's] reputation would suffer if his identity is disclosed in an action through which he is seeking to clear his name." Appellant's Opening Br. at 25. Appellant bases his argument on the idea that the *James* factors are not exhaustive, and he points to other cases where courts have considered irreparable harm, such as in *Doe v. Alger* where the plaintiff specifically "argue[d] that there is another factor relevant to this case that weighs in favor of anonymity—irreparable harm to his name." 317 F.R.D. 37, 42 (W.D. Va. Mar. 31, 2016). But here, Appellant made no argument about his reputation apart from the *James* factors, so there was no reason for the district court to consider it separately.

<div align="center">VI.</div>

Appellant also argues that the district court "failed to balance [Appellant's] interest in anonymity against the public's interest in open judicial proceedings" as required by *Public Citizen*. Appellant's Opening Br. at 39 (citing *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014)). On the contrary, the district court dedicated the last two pages of its order "return[ing] to the Fourth Circuit's broad admonition that [it] must balance [Appellant's] stated interest in anonymity against the public's interest in openness." J.A. 60–62.

<div align="center">20</div>

In its order, the district court held that extraordinary circumstances that would warrant pseudonymity are not present here. It recognized that Appellant had argued "there is no public interest in the public learning his identity or the identities of others," but noted that Appellant had "fail[ed] to address the risk that pseudonymous lawsuits have in eroding public access to proceedings." J.A. 60. Appellant similarly argues on appeal that the crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously. We have held just the opposite: "Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants and disclosing the parties' identities furthers openness of judicial proceedings." *Pub. Citizen*, 749 F.3d at 273 (internal citations omitted).

Appellant's central argument on appeal is that his case "center[s] around a confidential Title IX proceeding" so it is different than "the garden variety defamation case" and overcomes any public interest in disclosure of his identity. Appellant's Opening Br. at 40. We disagree. As the district court explained, Title IX challenges have "considerations . . . [that] do not apply here." J.A. 61. Specifically, in those cases, "those accused of sexual assault" were "su[ing] schools or universities pseudonymously when attacking the findings of a university Title IX investigation." *Id.* "Unlike those cases, [Appellant] is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation." *Id.* Instead, Appellant is suing only a private individual for defamation, and he seeks only declaratory relief and money damages against Appellee. This case is no different than a garden variety

21

defamation case, and it does not present the exceptional circumstances necessary for Appellant to proceed by pseudonym.

Finally, we fail to see how Appellant can clear his name through this lawsuit without identifying himself. If Appellant were successful in proving defamation, his use of a pseudonym would prevent him from having an order that publicly "clears" him. It is apparent that Appellant wants to have his cake and eat it too. Appellant wants the option to hide behind a shield of anonymity in the event he is unsuccessful in proving his claim, but he would surely identify himself if he were to prove his claims.

The district court considered each of Appellant's arguments, and it carefully balanced Appellant's stated interests against the public's interest in the openness of judicial proceedings as required by *Public Citizen*. It did not abuse its discretion in doing so.

## VII.

The district court did not abuse its discretion when it denied Appellant's motion to proceed as a pseudonymous plaintiff.

*AFFIRMED*

Case 2:24-cv-00825-DJP-EJD    Document 192    Filed 06/12/26    Page 112 of 1935

| Original Filed at Docket No. 22, |
| Sealed by Court Order |

FILED: October 26, 2023

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 23-1058
(5:22-cv-00500-D-BM)

_____

JOHN DOE

       Plaintiff - Appellant

v.

JANE DOE

       Defendant - Appellee

------------------------------

FIRST AMENDMENT COALITION; PROFESSOR EUGENE VOLOKH

       Amici Supporting Appellee

_____

J U D G M E N T

_____

In accordance with the decision of this court, the judgment of the district court is affirmed.

This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

/s/ NWAMAKA ANOWI, CLERK

Original Filed at Docket No. 23,

Sealed by Court Order

THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-500

```
----------------------------------------------------------x
John Doe                                    |
                                            |
                          Plaintiff,        |         FIRST AMENDED COMPLAINT
                                            |
             -against -                     |         JURY TRIAL DEMANDED
                                            |
Jane Doe                                    |
                                            |
                          Defendant.        |
---------------------------------------------------------x
```

Plaintiff John Doe       (hereinafter referred to as "Plaintiff"), by his attorneys Nesenoff

& Miltenberg, LLP and Ekstrand & Ekstrand, LLP, as and for his Complaint, respectfully alleges

as follows:

**THE NATURE OF THIS ACTION**

1.        This case arises out of the actions taken by Defendant Jane Doe (hereinafter

referred to as "Jane Doe or "Defendant Jane Doe a student at Tulane University ("Tulane") during

the incidents described herein, to defame, humiliate, harass, and punish Plaintiff, also a student at

Tulane during the incidents described herein, after Plaintiff and Jane Doe engaged in a consensual

sexual encounter. Thereafter, Jane Doe and another student (hereinafter "Sue Roe")[1] conspired to

target Plaintiff in furtherance of their self-interests, in retaliation for Plaintiff's refusal to enter into

a committed relationship with either Jane Doe or Sue Roe, and in an effort to destroy Plaintiff's

academic career and future career goals.

---

[1] Plaintiff has idenitifed Tulane students who are not parties to this lawsuit by pseudonym in order to protect their privacy.

2.        Plaintiff and Jane Doe "matched" on a dating app, but did not have any direct communication at that time. They did meet in person several weeks later at a music concert, at which point they also exchanged contact information. They did not have any further contact with each other until running into each other several month later, at which point the two spent the night together. No sexual activity of any sort occurred. In the following several days, Plaintiff and Jane Doe

engaged in consensual sexual intercourse on two occasions. Upon information and belief, after seeing Plaintiff with another woman, Jane Doe was in touch with Sue Roe, colluding to defame, harass, and interfere with Plaintiff's education by filing fabricated complaints with Tulane's Title IX office.

3.        Defendant Jane Doe strategically utilized and manipulated Tulane's Title IX investigation process to further a malicious vendetta against Plaintiff. Despite Jane Doe inconsistent and varying accounts of the events, witness statements disproving Jane Doe allegations, and significant exculpatory evidence, Tulane ultimately found Plaintiff responsible for nonconsensual sexual activity with Jane Doe and imposed a sanction of expulsion.

4.        Plaintiff has been greatly damaged by Defendant's actions, including physical, psychological, emotional and reputational damages. He has also suffered, and will continue to suffer, economic injuries, the loss of educational and career opportunities, and loss of future potential earnings as a result of the expulsion, corresponding disciplinary mark on his academic record. The threat of further spread of false allegations that Plaintiff is a perpetrator of sexual assault is ever-present.

5.        Plaintiff therefore brings this action to obtain relief from Defendant Jane Doe based on various state law claims.

6.        Plaintiff is a natural person, citizen of the United States and resident of the County

of Charleston, State of South Carolina. During the events described herein, Plaintiff was a student

at Tulane University in Louisiana.

7.        Upon information and belief, Defendant Jane Doe is a resident of the County of

Wake, State of North Carolina. During the events described herein, Jane Doe was a student at

Tulane University.

## JURISDICTION AND VENUE

8.        This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a

civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between citizens of different States.

9.        This Court has personal jurisdiction over Defendant because Jane Doe is a resident

of North Carolina.

10.        Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391

because per 28 U.S.C. § 1391(b)(3) this is an action that may not be brought in any other district

and the Court has personal jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

*Plaintiff Attends Tulane University*

11.        Plaintiff was accepted to and enrolled in Tulane University ("Tulane" or the

"University") in May 2018. He commenced his studies at Tulane in August 2018, focusing on

Finance, Management and Psychology. Plaintiff intended to pursue a Masters of Business

Analytics at Tulane University, upon his expected graduation in 2022.

12.        During his time at the University, Plaintiff became heavily involved in the Tulane

community, engaging in social and philanthropic activities. He was the Co-President of Tulane's

section of a national service organization for two consecutive years. He was the treasurer of the Food Recovery Network, a club that packages remaining food from the dining hall to send to local homeless shelters. He was one of 34 Tulane seniors selected by faculty and prior members to join Omicron Delta Kappa, an organization founded in 1834 for the purpose of making the Tulane community more equitable, inclusive, and academically rigorous. Plaintiff was also chosen by the Business School Associate Dean to be a Tulane Business Summer Minor Ambassador, promoting Tulane's summer business program. Additionally, Plaintiff was a member of the business fraternity Alpha Kappa Psi, a tutor in the tutoring center, a Merit Scholarship recipient, and involved in Tulane's club baseball league and social fraternity Zeta Beta Tau (ZBT). Plaintiff was on track to graduate cum laude.

13.    In applying to Tulane, Plaintiff reviewed a copy of the Tulane University Code of Student Conduct (the "Code"), which was accessible to all current Tulane students, prospective students, and the public. The Code included a list of prohibited actions that "violate Tulane University standards of conduct and will result in conduct action." ("Prohibited Conduct"). The list of Prohibited Conduct included "Furnishing false information to the University or to a University official," as well as "Harassment or intimidation." Plaintiff enrolled in Tulane with the understanding that he would be afforded a fair and equitable educational experience, free from the Code's expressly Prohibited Conduct.

***Plaintiff's Relationship With Sue Roe***

14.    Plaintiff and Sue Roe met in September of 2019. The two engaged in a casual sexual relationship from September 2019 to December 2019. Upon information and belief, towards the end of the Fall 2019 semester, Sue Roe wanted a more committed relationship with Plaintiff. Plaintiff heard from his friends M.G. and M.V. that Sue Roe had expressed an interest in officially

dating Plaintiff. Sue Roe invited Plaintiff on a walk, during which Plaintiff told Sue Roe he was not interested in dating. Sue Roe told Plaintiff that she was similarly okay with remaining uncommitted and casual, in contrast to what Sue Roe had told Plaintiff's friends. Plaintiff and Sue Roe had a few sexual encounters following that conversation, but eventually stopped seeing each other. Plaintiff was seeing other women during that time and seldom reached out to Sue Roe.

15.     In January 2020, Plaintiff and Sue Roe returned to campus and did not interact much. Plaintiff felt tension between him and Sue Roe whenever he said "hello" to Sue Roe. Shortly thereafter, Plaintiff and Sue Roe each attended the same party, during which Sue Roe began to cry. In the following two semesters, Plaintiff and Sue Roe had very few interactions. However, Sue Roe made her negative feelings toward Plaintiff known to others. When Plaintiff's name was brought up in Sue Roe's presence, Sue Roe went out of her way to explicitly say she "hated" Plaintiff. In Spring 2021, Plaintiff and Sue Roe had a consensual sexual encounter. After that encounter, they did not interact further until August 2021.

16.     On August 22, 2021, Plaintiff and Sue Roe were downtown on Bourbon St. celebrating a mutual friend's birthday. Sue Roe came up to Plaintiff at the bar and asked him to buy her a drink, which she would later pay him back for through Venmo. Plaintiff and Sue Roe ended up spending time together at the party and leaving the bar together. On the ride back to campus, Plaintiff and Sue Roe talked about their past relationship. Sue Roe apologized for being harsh towards Plaintiff following the conclusion of their relationship. Sue Roe further expressed the complicated emotions she was feeling. She explained that that evening, she had learned that a guy she was in a sexual relationship with, B.H., had started "dating" a different woman. When their Lyft ride approached Sue Roe's home, Plaintiff asked if he should have the car drop Sue Roe

off, but Sue Roe told Plaintiff he should come inside with her. The two went upstairs and engaged in consensual sex.

17.     Soon after, the two were talking in bed when Plaintiff made a comment to the effect of "we may regret that later" which, upon information and belief, Sue Roe interpreted to mean Plaintiff regretted having sex with her that evening. What Plaintiff meant by the comment was that they may regret complicating their friendship. However, Sue Roe sat up and began to cry. Plaintiff immediately apologized for his comment, explaining that what he said was not meant to be interpreted as anything against Sue Roe. Plaintiff felt that the complicated emotions Sue Roe mentioned earlier had resurfaced and suggested discussing the matter in the morning. Plaintiff went to sleep.

18.     Upon information and belief, while Plaintiff was asleep, Sue Roe was still upset over the comments Plaintiff made and wanted Plaintiff out of her bed. Sue Roe proceeded to wake up a housemate, D.E., who asked Plaintiff to leave. As Plaintiff was asleep, he was slow to respond to D.E.'s entrance into Sue Roe's room or comprehend why she was asking him to leave. According to D.E., Plaintiff "wasn't moving at first" when D.E. asked Plaintiff to leave. Plaintiff eventually got out of Sue Roe's bed and went home, texting Sue Roe that he left and to lock the door and wishing Roe a "good night."

*Plaintiff Meets* Jane Doe

19.     On or about September 2021, Plaintiff and Jane Doe "matched" on Tinder. They did not communicate each other or meet in person until they ran into each other at concert on November 20, 2021. At the concert, Plaintiff and Jane Doe spoke briefly and exchanged phone numbers. Thereafter, the parties did not see or communicate with each other for more than two months.

20.        On January 27, 2022, Plaintiff and Jane Doe accidentally ran into each other at a bar near Tulane's campus. After talking at the bar for some time, they left together and went to Plaintiff's house, where they fell asleep but did not engage in sexual intercourse. In the morning, they kissed for several minutes before Jane Doe stated "You're not going to be able to just fuck me like these other Tulane girls," to which Plaintiff responded "That's perfectly fine with me." Soon thereafter, Plaintiff and Jane Doe said goodbye, and Jane Doe left.

21.        On January 28, 2022, Plaintiff invited Jane Doe to his fraternity's upcoming date party and Jane Doe accepted. After asking Jane Doe to the date party, Plaintiff hung out with his friends M.V. and K.R. Upon learning that Plaintiff invited Jane Doe to be his date, K.R. warned Plaintiff to be careful because of information she had heard about Jane Doe K.R. had previously had a sexual relationship with H.W., who had recently been banned from campus for violating COVID-19 guidelines for a birthday party he threw. K.R. explained that H.W. had just ended his relationship with Jane Doe and started a relationship with K.R. right before being reported to the University for violating COVID-19 guidelines. H.W. and others involved in the situation had deduced that Jane Doe was the one who reported him, presumably out of spite for breaking up with her.

22.        On January 29, 2022, Plaintiff and Jane Doe attended Plaintiff's fraternity date party, held at the Fair Grounds Race Course in New Orleans. Plaintiff picked Jane Doe up in the late morning and brought her back to his house. After approximately an hour of hanging out with Plaintiff's friends, Plaintiff and Jane Doe went to Plaintiff's fraternity house, where he introduced Jane Doe as his date. Along with others attending the party, Plaintiff and Jane Doe boarded busses that transported the entire group to the Race Course.

23.        While walking through the crowded field level of the Race Course, Plaintiff and Jane Doe passed Sue Roe. Soon after, Plaintiff had a brief conversation with a member of another fraternity, "K.S." who exchanged hellos with Jane Doe When K.S. left, Jane Doe told Plaintiff that K.S. had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. Plaintiff expressed sympathy for what Jane Doe had allegedly experienced.

24.        Soon after sharing her story, Jane Doe asked Plaintiff "Is there anyone you're avoiding here?" Plaintiff didn't think much of that question at the time and responded "Yeah, the girl I probably would've asked had I not asked you." He was referring to a fellow student, D.K. Jane Doe and Plaintiff then found seats in the press box and talked about a range of topics, including family and friends. Plaintiff mentioned that his birthday was the following Wednesday and Jane Doe asked to take multiple photos with Plaintiff before they left the party. In total, the two spent four hours at the racetrack. Plaintiff and Jane Doe each consumed approximately two alcoholic drinks during those four hours, and Plaintiff also had one sip of a friend's flask that contained alcohol. Toward the end of the day, at approximately 5:30pm, Plaintiff and Jane Doe decided to take an Uber back from the racetrack. Plaintiff asked Jane Doe if she would like him to add a stop for her so that she could return home. Jane Doe declined, indicating that she preferred to return to Plaintiff's house together.

25.        Once they were at Plaintiff's house, they attempted to have sexual intercourse, but did not because Plaintiff was unable to get an erection. After trying to have sex, Jane Doe said it was alright because she was too drunk anyway. Plaintiff responded that it wasn't because he was drunk and that he actually was pretty sober. He found it odd that Jane Doe said she was drunk since he had been with her all day and they only had approximately two drinks each over the course of five hours. However, he chalked it up to her trying to be kind about his inability to perform

sexually. At that point, they decided simply to take a nap and slept for almost two hours. When Plaintiff awoke, Jane Doe was already awake. They began kissing and engaged in consensual sexual intercourse, during which Jane Doe was an active and enthusiastic participant. Afterward, the two got dressed and Plaintiff walked Jane Doe back to her house at approximately 9:00pm. On the walk home, she talked about a silent disco party that her house hosted the night before, and they engaged in other friendly conversation. When they got to Jane Doe house, she gave Plaintiff a tour of the house and alluded to his returning again in the near future. Jane Doe gave Plaintiff a kiss goodbye, and Plaintiff walked back to his house.

### The February 2, 2022 Encounter

26.     In the early afternoon of February 2, 2022, Jane Doe texted Plaintiff to wish him a happy birthday and the two exchanged friendly text messages for much of the afternoon. That evening, Plaintiff went to two bars, with friends, to celebrate his birthday. At approximately 9:00pm, Plaintiff and his friends left the second bar and went to a friend's house to prepare for a scheduled fraternity event. Plaintiff and Jane Doe continued to exchange text messages, including a text from Jane Doe saying "we can celebrate later."

27.     Near the end of the fraternity event, at approximately 12:00am, Plaintiff texted Jane Doe to see if she wanted to hang out. She responded "yes." Plaintiff took a Lyft to Jane Doe house intending to pick up Jane Doe and walk back to his house.

28.     When Plaintiff arrived at Jane Doe house, she came outside and they walked together to his house. During their walk, they discussed the social events they each attended. At Plaintiff's house, they went to his bedroom and engaged in consensual sexual intercourse. Plaintiff wore a condom during the encounter and both went to sleep almost immediately after.

29.    Plaintiff and Jane Doe awoke the next morning to the sound of Jane Doe alarm, which she had set on her phone. After engaging in several minutes of mutual kissing, Jane Doe said she had to go to work. Plaintiff offered to walk her home, an offer she initially rejected, but Plaintiff said it was the right thing to do. Jane Doe smiled at this sentiment. As they dressed, Plaintiff made a joking comment to the effect of "I'm happy I did better this time" in reference to his inability to engage in sexual intercourse during their previous encounter. Again, Jane Doe smiled in response.

30.    As they walked to Jane Doe house, they talked in an easy and friendly manner. Jane Doe spoke about attending Montessori as a child when they passed a local Montessori school. At Jane Doe house, they kissed goodbye and Jane Doe again wished Plaintiff a happy birthday. Plaintiff returned home.

31.    The following night, February 3rd, Plaintiff went to a bar with a few friends, where he ran into a woman, "A.H", on whom he had a crush. He offered to buy her a drink and they started talking in the middle of the bar, a conversation lasting more than an hour. Plaintiff and A.H then left the bar together, returned to Plaintiff's house, and engaged in consensual sexual activity. Upon information and belief, Jane Doe saw Plaintiff talking to A.H. at the bar and heard that he and A.H. went home together.

### Jane Doe *Spreads Defamatory Information about Plaintiff to Friends and Classmates*

32.    Upon information and belief, on February 4th, a day after seeing Plaintiff with A.H., Jane Doe reported to one of Plaintiff's friends, T.R., that Plaintiff engaged in nonconsensual sexual activity. Upon information and belief, this was Jane Doe first instance of alleging such misconduct.

33.     Upon information and belief, by February 6th, false rumors had begun spreading around school alleging that Plaintiff had sexually assaulted a female student. On February 7th, Plaintiff's friend "T.G." informed Plaintiff that people were talking about him in a negative way and that a fellow student, "A.S.," one of Sue Roe's best friends, had posted on her Instagram story a message to the effect of "Being friends with a sexual assaulter means you are part of the problem" with an indication that she was referring to Plaintiff. Plaintiff did not know what he was accused of doing and received no concrete information of the specific claims circulating about him.

34.     Another of Plaintiff's friends, M.K., showed him an Instagram post from Jane Doe that stated "Being drunk is not an excuse for Sexual Assault," which was posted at the same time and seemingly in conjunction with A.S.'s post. That night, fellow classmate, S.B., drove Plaintiff home from class. During the drive, she warned Plaintiff that Jane Doe was "crazy."

35.     Plaintiff then heard from another fellow student, A.T., that she was told by three different people that Plaintiff had assaulted a Tulane student. One of the students who shared this information with A.T. was abroad in Spain and had heard it from friends in a different Tulane fraternity.

36.     Plaintiff was shocked that this false information had made its way to students studying abroad, even prior to Plaintiff himself hearing about it. Plaintiff was unaware of the specifics of the false allegations and did not even know to whom the allegations pertained.

37.     On the evening of February 8th, Plaintiff received a text message from Jane Doe falsely claiming Plaintiff engaged in sexually inappropriate behavior:

> After we had consensual sex on your birthday, I told you that I was tired and wanted to sleep. At first you said that was fine but then 10 minutes later you asked me to have sex again to which I responded no, that I was tired and didn't want to. You continued to ask me to have sex with you multiple times, each time with me saying no and asking you to go to sleep. I woke up to the sound of you jerking off and the feeling of you taking the blanket off my naked sleeping body and touching and

squeezing it as you pleased. Even though I was paralyzed with fear and half asleep, I mumbled that I was cold and tried to pull the blanket back onto me. You then pulled the blanket off of me again and continued to pleasure yourself and touch me. You took advantage of my body in my most vulnerable state, and had no regard for how violating your actions were to me. You are a predator and a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim. It blows my mind that you were able to manipulate people around you into staying friends with you but this time you will be held fully accountable or the trauma that you actions caused. You will be known for the disgusting coward you truly are. You need serious help, and honestly I don't care if you ever get it, but I do know that you will never have the opportunity to violate someone ever again.

38.    The text message shocked and scared Plaintiff. He recalled their two sexual encounters, which had occurred in the previous several days and knew he had not committed any of the acts that Jane Doe was claiming.

39.    The following day, Plaintiff met with multiple friends to discuss the rapidly spreading false claims about him. Two of his friends called Plaintiff's parents to tell them it was not safe for him to be on the Tulane campus and that someone should come get him and bring him home to his parents' house. That evening, the president of Plaintiff's fraternity informed Plaintiff that Jane Doe had called him, claiming that Plaintiff assaulted her and that she was "going to the school."

40.    That day, Plaintiff learned from two of his male friends that Jane Doe had approached a group of Plaintiff 's female friends to share her false allegations of assault. Jane Doe specifically asked one of his friends, T.R., to help "spread this news like wildfire."

41.    A point of confusion for Plaintiff was that Jane Doe text referenced a prior sexual experience with another woman. Plaintiff assumed, without knowing, that the woman to whom Jane Doe referred was Sue Roe. After last having consensual sex with Sue Roe, Plaintiff assumed he was asked to leave because of the comments he made that upset Sue Roe. When Plaintiff later reached out to Sue Roe by text message, Sue Roe responded and claimed she had D.E. ask Plaintiff

to leave because he woke her up to try to get her to have sex again. Plaintiff knew that Sue Roe's text to him described events that simply never occurred, but he felt this may have been Sue Roe's way of excusing her active participation in the sexual encounter and pacifying her own feelings of guilt and regret. Plaintiff did not resist her characterization so as to preserve Sue Roe's feelings.

42.    In hindsight, Jane Doe statement that Plaintiff was a repeat offender, coupled with Jane Doe odd comment at the race track about whether there was anyone there that Plaintiff was avoiding, made Plaintiff suspect the two had been communicating all along.

43.    As early as February 7th, several of Plaintiff's friends stopped responding to his texts and calls. On February 8th, hours after receiving Jane Doe text message, Plaintiff learned that a friend had seen the text message Jane Doe sent Plaintiff. In fact, Plaintiff's friend had been provided with a screenshot of the text from yet another friend. It became clear that this false narrative was spreading rapidly among fellow Tulane Students. Upon information and belief, the screenshot of Jane Doe text message to Plaintiff included the contact name she had inputted for Plaintiff's number. The contact name was "rapist," and therefore anyone who received the screenshot saw Plaintiff referred to as a rapist by Jane Doe

44.    On February 10, 2022, Plaintiff was kicked out of his fraternity group chat. The fraternity president then sent a message referencing the claims against Plaintiff to the group chat, which Plaintiff learned from a friend who had taken a screenshot of the message. Plaintiff called the fraternity president, asking him to change or delete the defamatory message, which he refused to do.

45.    Plaintiff's mother flew to Louisiana that same day, February 10th, to support her son and help him gather his items so he could return home to a safe environment. Due to the mental anguish and heightened anxiety Plaintiff was experiencing as a result of the false accusations,

Plaintiff withdrew from the University for the semester, as he had already completed enough credits the prior semester to graduate. When Plaintiff withdrew on February 11, 2022, he was unaware that a Title IX report had been filed or that an investigation had commenced.

### Jane Doe *Reports False Claims Against Plaintiff with Tulane's Title IX Office*

46.     Jane Doe reported her false claims to the University Case Management and Victim Support Services (CMVSS) on February 6, 2022, three days after Plaintiff had had sex with someone else. Jane Doe falsely claimed to a Student Affairs Professional at the University that she had woken up to a man "beating off on [her]."

47.     On February 11, 2022, Jane Doe and Sue Roe simultaneously submitted Title IX / Sexual Misconduct reports naming Plaintiff as the respondent. Both reported having consensual sex with Plaintiff, falling asleep, and waking up to him engaging in sexual activity. Sue Roe claimed that Plaintiff vaginally penetrated her with his fingers and masturbated as she got dressed. Jane Doe claimed that Plaintiff masturbated while touching her buttocks with his hands and penis. Both claims were unequivocally false.

48.     On February 16, 2022, Plaintiff received a letter from Christopher Zacharda, Tulane's Director of Student Conduct, informing him that the Office of Student Conduct had received information that he may have violated the Tulane University Code of Conduct and had therefore been charged with Sexual Assault (the "OSC Notice"). The OSC Notice also included a link to Tulane's "Investigation Procedural Protections" (the Investigation Protections"). The OSC Notice informed the recipient "Please also be reminded that the Student Code of Conduct prohibits making false statements and/or knowingly providing false information in the course of a Tulane grievance process, including an investigation and hearing pursuant to the Student Code of Conduct." The Investigation Protections further provided "The investigation is designed to provide

a fair and reliable gathering of the facts by a trained and impartial investigator, who will determine consequences, if any." (Emphasis added.)

49.     Upon information and belief, Jane Doe received a similar letter from Zacharda with the same link to the Investigation Protections. Upon information and belief, Jane Doe was aware of the University's Investigation Protections and that these protections were afforded to Plaintiff.

50.     Upon information and belief, Jane Doe and Sue Roe scheduled their investigation Interviews to be within one hour of each other. On February 16, 2022, Jane Doe was interviewed by University investigator Jacqueline Barber. During her interview, Jane Doe made numerous false defamatory statements about Plaintiff, including claims that Plaintiff persisted in convincing Jane Doe to have sex with him again after their admittedly consensual sexual intercourse. Jane Doe false claims included:

a.     "I must have drifted asleep because I woke up to him. I could feel him jerking off."

b.     "And I can feel him jerking off. And I was half asleep. So, I was like, what the hell is going on. But it wasn't until I felt him pull[sic] a blanket off of me, off of my body, I was naked and I was asleep because we had sex and I was just naked, I don't know. I felt him put a blanket off of me. And I felt him scoot closer to me to jerk off onto me, onto my body."

c.     "I then have felt him start to touch me and squeezing me mostly my legs and my butt."

d.     "And then, I felt him pull the blanket back again off of me and continue to do it."

e.     "And even though I had explicitly not given consent, he had no regard for that. And because I was asleep, just like did that."

f. "…as I was leaving, he pulled me in and kissed me."

g. "He kept waking me up. He would physically move my shoulder to try and wake me up and be like, 'Wait, do you want to have sex?' And try

h. "And then, he shifted towards me to make his penis touch me. And then, he started to grab my body to help him I guess…. My thighs and my butt."

i. "….consent was explicitly not given and it was just taken. And it was unwanted action, specifically a sexual action that I explicitly did not give consent for."

51.     Jane Doe false statements to Barber closely mirrored false statements given to Barber by Sue Roe. In Sue Roe's narrative, she similarly made false claims that, after consensual sex, Plaintiff had woken Sue Roe up and made multiple requests for sexual activity. Sue Roe's narrative also included false claims that Plaintiff masturbated in her presence without consent. <sup>Jane Doe</sup>

 modeled her testimony after Sue Roe's narrative, which, upon information and belief, Sue Roe communicated to Jane Doe In fact, in her interview with Barber, Jane Doe states that Plaintiff's friends "were aware about the previous situation with [Sue Roe]. But [Sue Roe], obviously, will[sic] tell you her story."

52.     In her interview with Barber, Jane Doe also acknowledged that she was aware of the damage her false claims had done to Plaintiff's life thus far, stating that she spoke with the president of Plaintiff's fraternity who "let [Plaintiff] know that he was banned from all events and the house, and no longer affiliated with [the fraternity]."

53.     Jane Doe made further false defamatory statements to Barber about Plaintiff, stating "And that's part of the thing that pisses me off the most is that he was able to manipulate and gaslight all of their mutual friends into thinking that it was like a normal, just weird thing, was something he was working on, not a sexual assault, which is like what it is." Jane Doe also read to

Barber the text she had sent to Plaintiff on February 8th, communicating false and defamatory information about Plaintiff. She also complained hearing from friends that that Plaintiff allegedly "slept with so many girls," expressing negative opinions on Plaintiff's sexual history. She concluded her interview with Barber expressing her desire to destroy Plaintiff's academic career and reputation, stating "I want him to be expelled" and "I also want [Jane Doe sexual misconduct claims] to be attached to his name."

54.    On February 18, 2022, two days after Jane Doe interview with Barber, Plaintiff received a letter from Zacharda informing him that "as a result of the information [the Office of Student Conduct] had received" interim measures were being applied and Plaintiff was banned from being on campus, effective immediately. Plaintiff was barred from participating in University-sponsored or recognized events or activities. The term of the ban was indefinite. In texts submitted to Barber during the investigation, Jane Doe seemingly brags that "[Plaintiff] will most likely be banned from campus if my report identifies him as an imminent threat."

Jane Doe *Reported a False Timeline to Conceal Her Conspiracy with Sue Roe*

55.    During her interview with Jane Doe Barber inquired how Jane Doe and Sue Roe had connected. Jane Doe stated that she had spoken to someone about her claims against Plaintiff on February 5th. The individual who Jane Doe was speaking to responded by referencing Sue Roe's allegations. Jane Doe expressed shock upon hearing this when stating, "…[the other girl] was like, 'Oh, I did hear something weird with him like jerking off with another girl' and I was like 'What? What do you mean?'"

56.    Jane Doe claim of ignorance to Sue Roe's allegations on February 5th contradicts what Jane Doe friend, N.B. reported to Barber. According to N.B., on or about January 28th N.B

"warned" Jane Doe about Plaintiff prior to the event at the racetrack via Facetime and referenced Sue Roe's negative opinion of Plaintiff "I've heard bad things about this guy."

57. N.B. later verified that Jane Doe expressed a desire to find out the specifics of what happened between Plaintiff and Sue Roe. This desire to learn more about Plaintiff and Sue Roe's experiences further explained Jane Doe odd question at the racetrack event, during which she asked Plaintiff "Is there anyone that you're avoiding here?" in the hopes that she would gain information from Plaintiff about Sue Roe's opinion of him.

58. Jane Doe claimed in her interview with Barber that she was connected to Sue Roe through those mutual friends on or about February 8, 2022. In fact, N.B. submitted to Barber purported "evidence" showing a text where N.B. requested to connect with Sue Roe on Jane Doe behalf. Sue Roe submitted similar purported "evidence" of her text message conversation with N.B. regarding Jane Doe Upon information and belief, both Jane Doe and Sue Roe staged the introductory text messages in anticipation of filing false claims against Plaintiff.

59. Plaintiff communicated to Barber that it was suspicious that N.B. selectively included dates and times on some, but not all, of the texts submitted for investigation. Plaintiff further detailed the suspiciousness of Jane Doe and Sue Roe never providing direct correspondence between the two, but rather communications through a third party. Jane Doe was given the opportunity to confirm the timestamps of the texts and submit verification of her first correspondence with Sue Roe. Rather than confirming their alleged timeline, Jane Doe responded by calling Plaintiff's suspicions "Self-validated analysis [that] fails to consider any other point of view than Plaintiff's - a white male college student."

60. In fact, Jane Doe and Sue Roe connected on Instagram long before Plaintiff's February 2nd sexual encounter with Jane Doe Instagram allows for both "public" accounts and

"private" accounts. Any Instagram account can view information/data posted on a public account, including pictures posted, stories posted, who follows the public account, and who the public account follows. The only mechanism that a public account has to prevent a user from viewing their information is to "block" them, meaning that the Instagram account will no longer appear for the user. In contrast, private accounts allow the account holder to limit who has access to their data. Therefore, an Instagram user must "request" to follow a private account and the private account must "accept" the follow request. Once this process is completed the "requester" can see the information on the account that they requested to see. Private accounts can also remove people from their followers list, restricting someone who previously had access to the account from viewing anything once they are "removed."

61.    Instagram also allows for Direct Messages (DM), which are messages sent from one account to another account through Instagram messaging software. A private account must allow another person access to their data in order for that other person to send a direct message. Furthermore, it is customary and common practice to "follow back" another account, particularly when the Instagram user know the holder (person) of the account that followed that user and when that user followed the account holder first.

62.    At all times relevant herein, Jane Doe Instagram account was a public Instagram account, and thus any account, unless blocked by Jane Doe could view a list of her followers, a list of people she follows, all her posts, and her Instagram stories. The list of an Instagram user's followers is chronological. At the top of the list are the most recent followers, and at the bottom of the list are the user's first followers. Therefore, Jane Doe followers list served as a timeline of who followed Jane Doe on Instagram, providing a chronological order of the people Jane Doe interacted with (hereinafter "Chronological List").

63.     First on the Chronological List was T.R., who Plaintiff witnessed Jane Doe meeting on January 29, 2022 at the pregame prior to the event at the racetrack. Jane Doe asked T.R. to take a picture together on the party bus from Tulane's campus to the racetrack. Jane Doe told T.R. that she would "DM" the picture to her. In order to do this, T.R. would have had to accept Jane Doe follow request. Upon information and belief, after T.R. accepted Jane Doe follow request, Jane Doe followed T.R. back.

64.     There were nine accounts in between T.R.'s account and fellow classmate L.A.'s account on the Chronological List. Upon information and belief, none of those accounts are owned by people Jane Doe interacted with over the weekend January 29, 2022.

65.     The next relevant account followed on the Chronological List was L.A. who was at the "Silent Disco" party with Jane Doe on January 28, 2022. L.A. posted evidence of her attendance on Instagram and Jane Doe posted evidence of her own attendance on Tik Tok. Both posts showed the same neon banner in the living room of the house hosting the party. Next on the Chronological List was Sue Roe, and thereafter the next Tulane students on the Chronological List were several of Plaintiff's friends to whom Plaintiff had introduced Jane Doe at the racetrack on January 29, 2022.

66.     Although Jane Doe and Sue Roe claimed to Barber that they first connected on February 8, 2022, after the alleged incident on February 2, 2022, even providing "confirmation" through their texts with N.B., Jane Doe own Chronological List shows that Jane Doe and Sue Roe connected on Instagram at least a week prior to that date.

67.     Upon information and belief, Jane Doe and Sue Roe began communicating on or about January 28, 2022, rather than the false date they provided to Barber., Jane Doe and Sue Roe

not only made false statements to Barber in support of their narrative, but also provided falsified evidence specifically created to support that narrative.

**Jane Doe** *Provides False Information and Submits Doctored Evidence to Tulane Investigator*

68.      Jane Doe testified to Barber that she did not know with whom Plaintiff had had sex after his encounter with Jane Doe However, text messages submitted to Barber by witnesses indicated otherwise. In texts from February 9, 2022, submitted by Jane Doe friend K.R., Jane Doe asked "Have you heard anything from the girl that [Plaintiff] got with on Thursday?" and proceeded to inform K.R. of the woman's name.

69.      Jane Doe also pressured witnesses to align their testimonies with Jane Doe shared confidential documents containing information about the investigation with witnesses prior to their interviews. Jane Doe even showed one witness her complaint, saying "This is my statement to the school. So I want you to know, this is how I wrote it, this is how I want it to be told…if there's close friends or people, just make them aware this is what happened."

70.      Jane Doe also deleted all the text messages between her and Plaintiff from her phone after she reported Plaintiff to Tulane's Sexual Aggression Peer Hotline and Education (SAPHE) on February 6, 2022, and in advance of her interview with Barber.

71.      Some of the texts Jane Doe deleted, which Plaintiff later provided to Barber, confirmed that Jane Doe had materially lied during her interview with Barber. In her interview, Jane Doe claimed, multiple times, that the first time she ever had sex with Plaintiff was on February 2, 2022. This was false, as Jane Doe and Plaintiff had had sex on January 29, 2022. This was proven false by text messages between Jane Doe and Plaintiff on January 30, 2022 and confirmed by N.B.'s testimony who said, "This was not the first time they had had sex" when referencing the February 2nd consensual encounter. Jane Doe lied about the January 29th consensual sexual

encounter to create the narrative that it was "fucked up" when Plaintiff walked her home on February 3, 2022, as though they had not had relations prior to the alleged encounter on February 2, 2022. There was nothing abnormal about Plaintiff walking her home again the morning after their February 2, 2022 encounter, as it was a normal and usual course of action in the context of their sexual relationship.

72.    Upon information and belief, Jane Doe deleted these text messages because they would disprove aspects of her false narrative. She claimed to Barber, however, that she had deleted the text messages because she did not want to look at them.

73.    While at the racetrack with Plaintiff on January 29, 2022, Jane Doe asked Plaintiff to take a picture of her by the track. He agreed and she later posted it on her Instagram account. Jane Doe eventually removed the photograph from Instagram, but only after she had been interviewed by Barber and asked to provide evidence and witnesses. Upon information and belief, Jane Doe removed the photograph once it became clear that it could be collected as relevant evidence in the investigation, attempting to retroactively align her social media accounts with her fabricated assault.

74.    In a broader pattern of fabrication, Plaintiff soon learned that much of the personal information Jane Doe had shared with him was false. For instance, she had told him she had transferred from North Carolina State University, but Plaintiff then noticed that an entirely different school was listed on Jane Doe LinkedIn page.

75.    Jane Doe also told Barber that on the morning after the alleged assault, she was "trying to slip out without waking him or anything, but I remember he woke up." Jane Doe had actually texted Plaintiff the night before – the night of their sexual encounter – informing him that she would need to leave early, stating "I just have to leave at like 8:15" and then proceeded to set

an alarm around 8:00am that woke both of them up. However, as Jane Doe had deleted all of her text messages, it was Plaintiff's record of text messages that indicated the inconsistency.

76.    Jane Doe utilized social media to defame Plaintiff. On March 12, 2022, Jane Doe posted a Tik Tok video of herself singing along with a song, with the words "Knowing consent can't be given while someone's sleeping" appearing onscreen. As Jane Doe had already spread her false claims about Plaintiff to countless friends of both parties, friends of Jane Doe and Plaintiff understood the implication of the Tik Tok video to mean Plaintiff engaged in non-consensual sexual activity with Jane Doe while she was asleep. This video was posted immediately after Plaintiff began contacting witnesses to gather information regarding the false allegations Jane Doe was making and, upon information and belief, was a tactic to get Plaintiff to stop.

Jane Doe *Allegations Are Contradictory*

77.    Plaintiff was sleeping during the time in which Jane Doe alleges non-consensual sexual activity took place and thus did not do what Jane Doe alleges.

78.    On three separate instances, Jane Doe expressed her belief that Plaintiff was aware of committing the alleged acts of sexual misconduct:

> i.  A mutual friend of Jane Doe and Plaintiff, B.M., sent Jane Doe a text message on February 9, 2022 informing her that Plaintiff denied knowing anything about the events Jane Doe had described in her text to Plaintiff. Jane Doe response to that denial was "Wow, I can't believe he denied the situation."

> ii.  When asked during the investigation by Barber "What gives you that impression[,] that certainty that he knows? That you didn't want him to do that?" Jane Doe answered "Because I explicitly said no many times." Based on

her statement to Barber and her text message to B.M, Jane Doe claimed that

Plaintiff knew that he had committed the alleged conduct.

iii. Jane Doe elaborated to Barber at a different point in the interview "what

made me think that he knew that I knew something was wrong is that he seemed

to not want me out of his sight" on the morning of February 3rd. Jane Doe was

presumably referring to Plaintiff's offer to walk her home.

79.     Yet, on two instances revealed in the investigation, Jane Doe acknowledged

Plaintiff would have no way of knowing the events in the allegation transpired:

i.   In text messages from February 8, 2022, submitted to Barber by witness

K.R., Jane Doe asked K.R. "Do you know if [Plaintiff] knows?" in reference to

the allegations she was making.

ii.  Jane Doe text message of allegations to Plaintiff on February 7, 2022

operates under the presupposition that Plaintiff did not know what he did. In

that text message, Jane Doe gave Plaintiff a false play-by-play of their night

together, feeding him her false narrative for the first time.

Jane Doe *Attempts to Cover Up Motives for Defaming and Harassing Plaintiff*

80.     Upon information and belief, Jane Doe was motivated by jealousy to make false

statements about Plaintiff to Tulane investigator Barber, fellow Tulane students, Louisiana civil

court, and numerous people who were friends with Plaintiff.

81.     Jane Doe transferred from another school during the Covid-19 pandemic and did

not have many friends when she met Plaintiff. Jane Doe sent text messages to Plaintiff indicating

she was grateful that he introduced her to his friends: "I appreciate you introducing me to your

friends it's hard to find nice girl friends here that aren't crazy bitches." Jane Doe followed many of Plaintiff's friends on Instagram after the racetrack event he took her to. She clearly did not want to lose the friends she had made through Plaintiff, but knew that if she and Plaintiff did not continue to see each other, his friends would likely stop socializing with her.

82.     Text messages submitted to Barber by fellow student, T.R., showed Jane Doe expressing to T.R. that she had feelings for Plaintiff. However, on February 3, 2022, a day after her second and final sexual encounter with Plaintiff, Jane Doe saw Plaintiff out with another woman, and learned that he had gone home with the woman.

83.     Jane Doe did not make any allegations of non-consensual sexual conduct the day after her sexual encounter with Plaintiff. In fact, both friends with whom she spoke the next day testified that Jane Doe characterized the sexual encounter as consensual and normal.

84.     In her interview with Barber, Jane Doe friend N.B. said "And from what she told me the next morning they had consensual sex and she was comfortable with the situation."

85.     Jane Doe close friend and roommate, E.M., told Barber that she had asked Jane Doe about the sexual encounter the very next day. Jane Doe responded that it was "fine." It was two days later – after Jane Doe learned that Plaintiff had had sex with another woman – that Jane Doe told E.M. "this really weird thing happened" and proceeded to spin the false narrative claiming Plaintiff had repeatedly asked if she wanted to have sex and then masturbated next to her. In her interview, E.M. testified to Barber that Jane Doe changed her story only after seeing Plaintiff out with another woman.

86.     After learning that Plaintiff had sex with another woman shortly after his sexual encounter with Jane Doe and realizing that Plaintiff did not have reciprocal feelings for her, Jane Doe became outraged. She set out to destroy Plaintiff's reputation, education, and career. In her

interview with Barber, Jane Doe stated "He would have this nice little comfy job that he had all lined up by mommy and daddy" and "I want him to be expelled. And now, that he's been an idiot and withdrawn, then he literally can't reenroll or transfer, or graduate." In text messages to friend K.R. on February 9, 2022, Jane Doe specifically inquired as to Plaintiff's postgraduate work plans, asking whether K.R. knew whether Plaintiff intended to work for a particular company after graduating.

### Jane Doe *Files for a Temporary Restraining Order, Provides Court with False Information*

87.     On March 16, 2022, Jane Doe filed a Petition for Protection From Abuse, also known as a Temporary Restraining Order (TRO), in Louisiana civil court. In her petition, Jane Doe requested that Plaintiff be barred from contacting her through third parties and from stepping foot on Tulane's campus. The TRO falsely alleged that Plaintiff had been harassing, intimidating, and stalking Jane Doe despite the fact that Plaintiff had had no contact with Jane Doe since he first heard of her false claims through mutual friends. In fact, Plaintiff did not even respond to Jane Doe February 8, 2022 text message, the last correspondence between the parties.

88.     In her TRO, Jane Doe cited instances of Plaintiff calling their "mutual friends and interrogating her." However, the one mutual friend Plaintiff had contacted, T.R., informed Barber that Plaintiff had called her, but made no mention of harassment or interrogation. In fact, T.R. voluntarily submitted evidence of her agreeing to speak on the phone with Plaintiff. Jane Doe also claimed Plaintiff harassed and stalked her by calling two other mutual friends to gather evidence for this investigation. Jane Doe knew that Plaintiff's phone calls to his own friends, to discuss the ongoing Tulane investigation, did not constitute or include any harassing behavior, but Jane Doe nonetheless utilized and abused the civil court process as a way to bolster her claims and restrict Plaintiff from contacting relevant witnesses in the Tulane investigation. Furthermore, Jane Doe

recognized that if she had a restraining order against Plaintiff, Tulane would view the TRO as evidence of Plaintiff's alleged wrongdoing and Jane Doe alleged fear and trauma.

89.    In order to get the TRO dismissed, Plaintiff flew to New Orleans from South Carolina on March 24, 2022. However, Jane Doe did not even attend the court hearing. Thus, the TRO was summarily dismissed in her absence. After the hearing Plaintiff and his mother saw Jane Doe at the airport. It was clear that Jane Doe false allegations of harassment and stalking were not made in earnest but rather with malicious intent in order to serve her own self interest in the Tulane investigation.

90.    On May 8, 2022, Plaintiff was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate.

91.    Jane Doe filed a false report of sexual misconduct, colluded and conspiring with Sue Roe, and maliciously defamed, harassed and retaliated against Plaintiff by pursuing a false complaint with Tulane's Office of Student Conduct. Jane Doe strategically exploited and manipulated Tulane's Title IX process to pursue a false report against Plaintiff and to harm Plaintiff's reputation, destroy Plaintiff's relationship with his friends and fraternity, and harm his academic career and future career plans. In doing so, Jane Doe deprived Plaintiff of the benefit he was to receive from his contract with Tulane under the Code, which had promised Plaintiff an educational environment free from false information furnished to the University or to a University official, as well as an educational experience free from harassment or intimidation.

## AS AND FOR A FIRST CAUSE OF ACTION
### Defamation

92.    Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

93.     Defendant made false and defamatory statements about Plaintiff to administrators at Tulane University, to the president of Plaintiff's fraternity, to Plaintiff's friends, to the Louisiana civil court, as well as to numerous fellow students.

94.     Defendant's statements were made with actual malice and reckless disregard for the truth.

95.     Defendant's statements during the Title IX proceedings were defamatory and are not protected by "privilege" because Defendant made those statements knowing they were false.

96.     Defendant made non-privileged defamatory false statements that were culpably published and that were damaging.

97.     Defendant's statements were intended to, and did, expose Plaintiff to public contempt, aversion, disgrace, induce an evil opinion in the minds of right-thinking persons.

98.     The specific statements accusing Plaintiff of engaging in nonconsensual sexual conduct are factual: the language used and the context in which the language appeared made clear that Defendant was factually accusing Plaintiff of engaging in sexual assault and sexual harassment.

99.     Defendant falsely accused Plaintiff of sexual misconduct, defaming his name and reputation by knowingly pursuing a false complaint of misconduct with Tulane's Office of Student Conduct.

100.    Defendant knowingly pursued a false report of sexual misconduct against Plaintiff, fabricating and publishing a series of events that never occurred and contained a multitude of vile acts, including non-consensual touching, nonconsensual masturbation, stalking, and harassment.

101.    Defendant published this false allegation to numerous people when she pursued a false claim of sexual misconduct with the University, as well as in communications – written and verbal – to friends, acquaintances, and classmates.

102.    Publication of this false and defamatory statement is also actionable because it has resulted in special harm, in the form of economic losses, including but not limited to Plaintiff's tuition, academic career, impending college degree, future career aspirations, and the lifelong business and social relationships that would have been developed through his association with fellow Tulane students and membership in the fraternity.

103.    Publication of this false and defamatory statement is actionable per se as it concerned a crime of moral turpitude; namely, sexual assault.

104.    The aforesaid statement was defamatory because it imputed conduct which injuriously affected Plaintiff's reputation and/or degraded him in society and/or brought him into public contempt while causing emotional and psychological damages.

105.    There was never a criminal investigation of Defendant's claims because there was no factual information to support her claims.

106.    Defendant cannot rely on the Tulane University Office of Student Conduct decision as a defense to Plaintiff's defamation claim because the testimony upon which the decision is based was based on the same false and defamatory statements that Plaintiff engaged in acts of sexual misconduct, as well as false testimony, falsified evidence, and fraudulent conduct.

107.    Based on the foregoing, Defendant is liable to Plaintiff for defamation.

108.    As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, damage to reputation, loss of educational and

career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

109.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION
### Abuse of Process

110.    Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

111.    Defendant strategically utilized Louisiana's civil court system, filing a Petition for Protection from Abuse against Plaintiff, for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish Plaintiff and to strengthen Defendant's Title IX claim against Plaintiff.

112.    Defendant pursued the Petition for Protection from Abuse with an ulterior purpose, and one for which the Louisiana civil court system was not intended.

113.    Defendant acted knowingly and willfully when she pursued the Petition for Protection from Abuse, knowing the allegations precipitating the petition were false.

114.    The use of Louisiana's civil court process for the purpose of seeking revenge or pursuing a personal vendetta against another individual was improper.

115.    Defendant's primary motive in proceeding with the Louisiana civil court system process was to defame, harass and punish Plaintiff, despite her knowledge that the allegation of misconduct was false.

116.    Defendant strategically utilized Tulane's Title IX process for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish Plaintiff.

117.    Defendant pursued the investigation through Tulane's Title IX process with an ulterior purpose, and one for which neither Tulane's OSC process nor Title IX was intended.

118.    Defendant acted knowingly and willfully when she pursued the investigative process, knowing the charge precipitating the process was false.

119.    The use of Tulane's Title IX process for the purpose of seeking revenge or pursuing a personal vendetta against another individual was improper.

120.    Defendant's primary motive in proceeding with Tulane's Title IX process was to defame, harass and punish Plaintiff, despite her knowledge that the allegation of misconduct was false.

121.    Based on the foregoing, Defendant is liable to Plaintiff for abuse of process.

122.    As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

123.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

### AS AND FOR A THIRD CAUSE OF ACTION
### Tortious Interference with Contract

124.    Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

125.    As described above, Plaintiff entered into a valid contract with Tulane University.

126.    Defendant was indisputably aware of the contract between Plaintiff and Tulane University, as she herself was provided with Tulane's Code of Conduct as well as a the OSC Notice with a link to Tulane's "Investigation Procedural Protections."

127.     Defendant was aware that the Student Code of Conduct "prohibits making false statements and/or knowingly providing false information in the course of a Tulane grievance process, including an investigation and hearing pursuant to the Student Code of Conduct."

128.     Defendant was aware that the Code of Conduct prohibits "[f]urnishing false information to the University or to a University official," as well as "Harassment or intimidation."

129.     Defendant was aware that in entering into an agreement with the University, Plaintiff was conferred contractual rights against Tulane University.

130.     Defendant intentionally, maliciously, and without justification, induced Tulane University not to perform the contract, depriving Plaintiff of a fair and equitable grievance process.

131.     As a direct and proximate result, Plaintiff was immediately banned from campus upon Defendant's filing of false claims, and Plaintiff was dismissed from the University at the conclusion of the misconduct investigation, due to Defendant's malicious actions.

132.     Defendant intentionally, maliciously, and without justification, induced Tulane University to cease performance of its contract with Plaintiff and dismiss him from the University.

133.     Defendant's action resulted in actual damage to Plaintiff; namely, the loss of his tuition payment, college degree, as well as future career prospects.

134.     As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

135.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

### AS AND FOR A FOURTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**

136.    Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

137.    Defendant intentionally inflicted severe emotional distress upon Plaintiff when she knowingly and willfully pursued a false complaint of sexual misconduct against Plaintiff.

138.    Defendant intentionally inflicted severe emotional distress upon Plaintiff when she participated in the investigation of a complaint of sexual misconduct against Plaintiff conducted by Tulane's OSC, knowing such a serious charge could result in a sanction of dismissal from the University, in addition to severe emotional damage.

139.    Defendant was substantially certain such distress would result from her conduct, as Defendant utilized Tulane's Title IX process for the very purpose of harassing and retaliating against Plaintiff.

140.    Defendant was certain such distress would result from this conduct as Plaintiff was ultimately expelled from the University.

141.    Defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

142.    Defendant's actions directly caused severe emotional distress to Plaintiff, including but not limited to post-traumatic stress disorder, as her false reporting of a charge of sexual assault against Plaintiff ultimately led to his dismissal from University, removal from his fraternity, damage to his name and reputation, ostracism from his peers, and severe emotional damage.

143.    The distress suffered by Plaintiff as a result of Defendant's actions was so severe that no reasonable person should be expected to endure it.

144.    Based on the foregoing, Defendant is liable to Plaintiff for intentional infliction of emotional distress.

145.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

146.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Civil Conspiracy

147.    Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

148.    Defendant and Sue Roe acted in concert with the common purpose to defame and injure Plaintiff emotionally, reputationally and economically by engaging in the acts outlined above, including but not limited to the false reporting to Tulane University, Plaintiff's fraternity, and other individuals that Plaintiff had sexually assaulted and sexually harassed Jane Doe and Sue Roe.

149.    It was foreseeable that the actions undertaken by Defendant and Sue Roe would result in Plaintiff being injured and were undertaken by Defendant and Sue Roe for that express purpose.

150.    Plaintiff has suffered as a direct and proximate result of the above conduct, tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages actions.

151.    Plaintiff suffered and incurred Special Damages, which were foreseeable and were exacerbated and magnified as a result of the Defendant's conspiracy to defame.

152.    Plaintiff's injuries were exacerbated and magnified because the defamatory statements were disseminated through electronic communication and published on the Internet.

153.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff demands judgment against Defendant Jane Doe as follows:

i.    on the first cause of action, a declaration that Defendant Jane Doe defamed Plaintiff and an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

ii.    on the second cause of action for abuse of process, a judgment awarding Plaintiff an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

iii.     on the third cause of action for tortious interference with contract, a judgment awarding Plaintiff an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

iv.     on the fourth cause of action for intentional infliction of emotional distress, a judgment awarding Plaintiff an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

v.     on the fifth cause of action for civil conspiracy, a judgment awarding Plaintiff damages including but not limited to special damages; and

vi.     awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

Dated:  New York, New York
        November 9, 2023

**Respectfully submitted,**

**NESENOFF & MILTENBERG, LLP**

**Attorneys for Plaintiff**

**By:** */s/ Andrew Miltenberg*
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor New York, New
York 10001 (212) 736-4500
amiltenberg@nmllplaw.com
*Pro Hac Vice Application forthcoming*


-and-


**EKSTRAND AND EKSTRAND, LLP**

**By:** */s/ Robert Ekstrand*
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

Original Filed at Docket No. 24,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe <br><br> Defendant. | DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT AND FOR EXTENSION FOR PLAINTIFF TO RESPOND TO ANY MOTION TO DISMISS |

Defendant Jane Doe by and through her counsel, moves the Court pursuant to pursuant to Rule 6(b) of the Federal Rules of Civil Procedure for an extension of time to answer or otherwise respond to the amended complaint filed by John Doe in this matter to and including December 15, 2023, and for an extension of time for John Doe to respond to any motion to dismiss to and including January 17, 2024. In support of this motion, Jane Doe shows the Court the following:

1.    John Doe filed his original complaint as "John Doe" on December 12, 2022. (DE 1). After this Court denied John Doe motion to proceed by pseudonym, John Doe appealed to the United States Court of Appeals for the Fourth Circuit. (DE 8, 9). The Fourth Circuit affirmed and remanded for further proceedings. (DE 22). John Doe then filed an amended complaint in his real name on November 9, 2023. (DE 23).

2.    The time within which Jane Doe may answer or otherwise respond to the amended complaint has not yet expired.

3.    Due to the timing of the filing of the amended complaint, Jane Doe deadline to respond to the complaint now falls the day after Thanksgiving.  To allow adequate time for Jane Doe to consult with counsel, discuss the case background, and prepare the response to the amended complaint after the holiday, Jane Doe reasonably requires a 21-day extension of the time within which she may answer or otherwise respond to the amended complaint, to and including December 15, 2023.  Further, to the extent that Jane Doe moves to dismiss the amended complaint, John Doe will require additional time to respond to such motion due to his and his counsel's schedules in December and early January and a personal family matter; therefore, the parties agree that John Doe response deadline should be extended to and including January 17, 2024.

4.    Undersigned counsel for Jane Doe advised counsel for John Doe of the intent to file this motion, and John Doe does not oppose the extension sought by this motion.

5.    This motion is made in good faith and not for purposes of delay.  The extension sought by this motion will not unduly delay the proceedings in this case.

WHEREFORE, Defendant Jane Doe respectfully requests that the Court grant this motion and extend the time within which Jane Doe may answer or

2

otherwise respond to the amended complaint to and including December 15, 2023;

and further extend the time within which John Doe     may respond to any

motion to dismiss to and including January 17, 2024.

This the 16th day of November, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | ORDER GRANTING DEFENDANT'S MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT AND FOR EXTENSION FOR PLAINTIFF TO RESPOND TO ANY MOTION TO DISMISS |

This matter comes before the Court on the unopposed motion of Defendant Jane Doe for an extension of time to answer or otherwise respond to the amended complaint and for an extension of Plaintiff John Doe time to respond to any motion to dismiss. For good cause shown, the motion is GRANTED. The deadline to answer or otherwise respond to the amended complaint is hereby extended to and including December 15, 2023. If Jane Doe files a motion to dismiss, John Doe response deadline is extended to and including January 17, 2024.

IT IS SO ORDERED.

This the ___ day of November, 2023.

_____
JAMES C. DEVER III
United States District Judge

> Original Filed at Docket No. 25,
>
> Sealed by Court Order

FILED: November 17, 2023

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 23-1058
(5:22-cv-00500-D-BM)

———————————

JOHN DOE

      Plaintiff - Appellant

v.

JANE DOE

      Defendant - Appellee

------------------------------

FIRST AMENDMENT COALITION; PROFESSOR EUGENE VOLOKH

      Amici Supporting Appellee

———————————

M A N D A T E

———————————

The judgment of this court, entered October 26, 2023, takes effect today.

This constitutes the formal mandate of this court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

*/s/Nwamaka Anowi, Clerk*

Original Filed at Docket No. 26,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe , | |
| Plaintiff, | **NOTICE OF APPEARANCE** |
| v. | |
| Jane Doe, | |
| Defendant. | |

Please take notice that Defendant Jane Doe will be represented in this

action by Chelsea Pieroni of the law firm of Ellis & Winters LLP.

This the 15th day of December, 2023.

ELLIS & WINTERS LLP

/s/ Chelsea Pieroni
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

Original Filed at Docket No. 27,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe , <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe, <br><br> Defendant. | DEFENDANT Jane Doe  PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM <br><br> Rule 12(b)(6) |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Jane Doe

hereby moves to dismiss John Doe        amended complaint, in part, for failure to state a

claim upon which relief can be granted, to the extent that John Doe      attempts to plead

claims for abuse of process, tortious interference with contract, and civil conspiracy.  In support

of this motion, Jane Doe relies on her accompanying brief.

This the 15th day of December, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

Original Filed at Docket No. 28,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

John Doe

        Plaintiff,

   v.

Jane Doe

        Defendant.

DEFENDANT Jane Doe BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## INTRODUCTION

John Doe brings this case against Jane Doe because she reported to their Tulane University classmates and Tulane's Title IX office that John Doe sexually assaulted her. Tulane investigated Jane Doe report and another student's allegations of sexual assault against John Doe found John Doe responsible for sexual assault, and determined that he should be expelled from school. John Doe alleges that Jane Doe report was false and asserts claims for defamation, abuse of process, tortious interference with his contract with Tulane, intentional infliction of emotional distress, and civil conspiracy. John Doe alleged injuries occurred in Louisiana—he alleges that his reputation at Tulane was damaged and that he lost his tuition, college degree, and other opportunities—so his claims are governed by Louisiana law. As shown below, John Doe cannot state claims for abuse of process, tortious interference with contract, or civil conspiracy under Louisiana law, and Jane Doe is entitled to dismissal of those claims.

## STATEMENT OF ALLEGED FACTS

*Sexual assault allegations against* John Doe

In February 2022, Jane Doe then a student at Tulane University in Louisiana, reported to other students that John Doe then a Tulane senior, had sexually assaulted her. *See* Am. Compl. ¶¶ 32-36 (DE 23). After Jane Doe told one of John Doe friends about the assault, John Doe began to hear rumors about the assault from multiple Tulane students. *See id.* Jane Doe confronted John Doe about the assault in a text message, where she recounted him touching her and masturbating on her without her consent. *Id.* ¶ 37. Jane Doe said in the message, "You are a predator and a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim." *Id.* John Doe assumed that Jane Doe was calling him a repeat offender because of an incident he had with another female Tulane student, whom he identified as "Sue Roe." *See id.* ¶ 41.

John Doe met with multiple friends about Jane Doe allegations, and the president of John Doe fraternity learned of the allegations. *Id.* ¶ 39. John Doe friends called his parents to say that it was not safe for John Doe to remain on Tulane's campus. *Id.* John Doe continued to discuss and hear about the sexual assault allegations on campus. *See id.* ¶ 40. Several of his friends stopped responding to his text messages and calls as Jane Doe allegations were "spreading rapidly among fellow Tulane Students." *Id.* ¶ 43. Days later, John Doe was kicked out of his fraternity's group chat and he learned that the sexual assault allegations were circulating in the group chat after he was removed. *Id.* ¶ 44.

Several days after first hearing of Jane Doe allegations, and "[d]ue to the mental anguish and heightened anxiety" he was experiencing, John Doe withdrew from Tulane

2

for the semester, "as he had already completed enough credits the prior semester to graduate." *Id.* ¶ 45.

*University disciplinary process and restraining order*

Jane Doe and her classmate, Sue Roe, each reported to Tulane that John Doe sexually assaulted them. *Id.* ¶¶ 46-47. Tulane investigated the reports through its Title IX office, receiving information from multiple Tulane students. *See id.* ¶¶ 48-85.

On March 16, 2022, while Tulane's investigation was ongoing, Jane Doe filed a petition for protection from abuse in Louisiana civil court seeking to restrain John Doe from contacting her through third parties and from entering Tulane's campus. *Id.* ¶ 87. Jane Doe alleged in the petition for restraining order that John Doe had been harassing, intimidating, and stalking her. *Id.* According to John Doe Jane Doe filed the petition to "bolster her claims and restrict [John Doe from contacting relevant witnesses in the Tulane investigation" and she acted "with malicious intent in order to serve her own self interest in the Tulane investigation." *Id.* ¶¶ 88-89. John Doe appeared in Louisiana civil court at a hearing on the petition to seek dismissal of the restraining order. *Id.* ¶ 89. The matter was dismissed because Jane Doe did not appear. *Id.*

On May 8, 2022, Tulane found that John Doe was responsible for sexual assault and determined that he should be dismissed from the university. *Id.* ¶ 90.

John Doe *complaint*

On December 8, 2022, John Doe brought this action against Jane Doe alleging that Jane Doe sexual assault allegations were false, and asserting claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy. Compl. ¶¶ 92-153 (DE 1). John Doe did not use his real name in his

3

complaint.  *See id. passim.*  After this Court denied his motion for leave to proceed by

pseudonym, John Doe      appealed to the United States Court of Appeals for the Fourth

Circuit.  (DE 8, 9).  The Fourth Circuit affirmed this Court's decision.  (DE 22).

John Doe      filed an amended complaint using his real name and continuing to assert the

same claims against Jane Doe  *See* Am. Compl. ¶¶ 92-153 (DE 23).

John Doe      alleges that he enrolled at Tulane in August 2018, that he studied

finance, management, and psychology, and that he intended to attend business school at Tulane

after graduation.  *Id.* ¶ 11.  He further alleges that he was "heavily involved in the Tulane

community" and recited a list of his personal accomplishments and activities at Tulane.  *Id.* ¶ 12.

According to John Doe      when he applied to Tulane, he reviewed a copy of the

Tulane University Code of Student Conduct (the "Code"), and he understood that the Code

prohibited furnishing false information to the university.  *Id.* ¶ 13.  He thus enrolled at Tulane

"with the understanding that he would be afforded a fair and equitable educational experience,

free from the Code's expressly Prohibited Conduct."  *Id.*

John Doe      alleges that, during his time at Tulane, he had consensual sexual

relationships with Sue Roe and later with Jane Doe  *See id.* ¶¶ 14-29.  He describes having a

"casual sexual relationship" with Ms. Roe starting in the fall of 2019.  *Id.* ¶ 14.  John Doe

alleges that after he learned that Ms. Roe was interested in a "more committed relationship," he

told her he was not interested, and he began seeing other women.  *Id.*  After late 2019,

John Doe      alleges that Ms. Roe made her negative feelings toward him clear.  *Id.* ¶ 15.

Despite these negative feelings, John Doe      alleges that he had a consensual sexual

encounter with Ms. Roe in the spring of 2021, and another encounter with her in August 2021.

*Id.* ¶¶ 15-16.  John Doe      alleges that Ms. Roe cried after they had sex in August 2021, and

4

Ms. Roe's housemate asked John Doe to leave. *Id.* ¶¶ 17-18. John Doe describes this encounter with Ms. Roe as consensual. *Id.* ¶ 16. However, he acknowledges that he reached out to Ms. Roe by text message afterward, and that Ms. Roe responded that she had her housemate ask John Doe to leave because he woke Ms. Roe up to try to get her to have sex again. *Id.* ¶ 41. John Doe "felt this may have been Sue Roe's way of excusing her active participation in the sexual encounter and pacifying her own feelings of guilt and regret." *Id.* He "did not resist her characterization so as to preserve Sue Roe's feelings." *Id.*

John Doe alleges that he "matched" with Jane Doe on Tinder in September 2021, and they met that November. *Id.* ¶ 19. He alleges that he did not see Jane Doe again until January 2022, when they kissed after talking at a bar near Tulane's campus. *Id.* ¶¶ 19-20. John Doe alleges that he invited Jane Doe to an upcoming fraternity party in New Orleans, that they attended the party together, where John Doe introduced Jane Doe to his friends, and that they had consensual sex. *Id.* ¶¶ 21-25. He further alleges that he and Jane Doe had consensual sex on a second occasion, on February 2, 2022, and that he walked her home the next morning. *Id.* ¶¶ 26-30.

The next night, on February 3, John Doe had sex with another woman, whom he identified as A.H. *Id.* ¶ 31. John Doe alleges, on information and belief, that Jane Doe saw him with A.H. and heard that he and A.H. "went home together." *Id.* John Doe alleges that Jane Doe first reported that he sexually assaulted her on February 4, when Jane Doe told John Doe friend, T.R., about the incident. *Id.* ¶ 32. John Doe alleges that "[a]fter learning that [John Doe had sex with another woman shortly after his sexual encounter with Jane Doe and realizing that [John Doe did not have reciprocal feelings

5

for her, Jane Doe became outraged." *Id.* ¶ 86.  According to John Doe  Jane Doe was so jealous that "[s]he set out to destroy [John Doe  reputation, education, and career." *Id.*

John Doe  alleges that Jane Doe "manipulated Tulane's Title IX investigation process to further a malicious vendetta against" him.  *Id.* ¶ 3.  John Doe  surmises that Jane Doe and Ms. Roe were driven by jealousy of his other romantic partners and anger over John Doe  "refusal to enter into a committed relationship" with either of them.  *Id.* ¶¶ 1, 80, 86.

John Doe  acknowledges that Tulane found that he was responsible for sexual assault and that he should be dismissed from the university.  *Id.* ¶ 90.  However, he blames this consequence on Jane Doe  *See id.* ¶ 91.

In his defamation claim, John Doe  alleges that Jane Doe made false statements about him sexually assaulting her "to administrators at Tulane University, to the president of [John Doe  fraternity, to [his] friends, to the Louisiana civil court, as well as to numerous fellow students."  *Id.* ¶ 93.  He further alleges that, as a result of these purportedly false statements, he suffered harm, including the loss of his "tuition, academic career, impending college degree, future career aspirations, and the lifelong business and social relationships that would have been developed through his association with fellow Tulane students and membership in the fraternity."  *Id.* ¶ 102.

John Doe  next alleges in his abuse of process claim that Jane Doe "strategically utilized" the Louisiana civil court system and Tulane's Title IX process to hurt John Doe  *Id.* ¶¶ 111, 116.  He alleges that Jane Doe filed a petition for a restraining order to harass, defame, retaliate against, and punish him, and to strengthen her Title IX claim.  *Id.* ¶ 111. Further, he alleges that she pursued the Title IX process at Tulane to defame, harass, and punish

6

him.  *Id.* ¶ 120.  John Doe      alleges that he suffered various harms, including loss of educational opportunities and damage to his reputation.  *Id.* ¶ 122.

In his claim for tortious interference with contract, John Doe      alleges that Jane Doe was aware that he had a contract with Tulane and that she intentionally and maliciously induced Tulane not to perform the contract, depriving John Doe      of a fair and equitable grievance process.  *Id.* ¶¶ 125-130.  As a result of Jane Doe alleged actions, John Doe      alleges that he suffered harm when he was banned from campus and dismissed from the university, and Tulane ceased performance of its contract with him, causing the loss of his tuition, college degree, and harm to his career prospects.  *Id.* ¶¶ 131-133.

John Doe      further alleges that Jane Doe intentionally inflicted severe emotional distress on him when she reported that he sexually assaulted her and participated in Tulane's Title IX investigation, knowing that it could cause John Doe      to be expelled from Tulane. *Id.* ¶¶ 137-141.  According to John Doe      Jane Doe actions caused him to suffer "severe emotional distress" because her report led to his dismissal from Tulane, removal from his fraternity, damage and his name and reputation, and ostracism from his peers, among other things.  *Id.* ¶ 142.

Finally, John Doe      alleges that Jane Doe was liable for civil conspiracy because she and Sue Roe "acted in concert with the common purpose to defame and injure" him.  *Id.* ¶ 148.  John Doe      alleges that his injuries "were exacerbated and magnified as a result of" this "conspiracy to defame."  *Id.* ¶ 151.

## LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency."  *Asby v. Medtronic*, -- F. Supp. 3d --, 2023 WL 3551041, at *1 (E.D.N.C. 2023)

7

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-63 (2007); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).  To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (quotation omitted); *see Twombly*, 550 U.S. at 570; *Giarratano*, 521 F.3d at 302.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]."  *Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted).  A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments."  *Giarratano*, 521 F.3d at 302 (quotation omitted).  To survive a motion to dismiss, a plaintiff's factual allegations must "nudge" the plaintiff's claims, *Twombly*, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility," *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

**I.**    John Doe           **FAILS TO STATE A CLAIM FOR ABUSE OF PROCESS UNDER LOUISIANA LAW BECAUSE HE DOES NOT ALLEGE THAT** Jane Doe **MISUSED LEGAL PROCESS TO OBTAIN AN IMPROPER RESULT.**

John Doe          allegations that Jane Doe had an ulterior motive in pursuing the Title IX process and seeking a restraining order against him are insufficient to state a claim for abuse of process.  As demonstrated below, John Doe       claim fails because he does not allege that Jane Doe misused legal process already issued to obtain an improper result.

**A.    Louisiana Law Controls** John Doe          **Abuse of Process Claim.**

This Court applies North Carolina choice of law rules in this diversity case.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  John Doe        claims sound in tort,

8

Am. Compl. ¶¶ 92-153, and "North Carolina uses the law of the situs test to determine the choice of law for tort claims." *Waterford I at Cary Park Condo. Homeowners Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, -- F. Supp. 3d --, 2023 WL 2959868, at *4 (E.D.N.C. 2023) (citing *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988)). "[T]he state where the injury occurred is considered the situs of the claim." *Boudreau*, 322 N.C. at 335, 368 S.E.2d at 854. "The court must scrutinize the allegations in the complaint to determine 'where the plaintiff has actually suffered harm.'" *Waterford*, 2023 WL 2959868, at *4 (quoting *Harco Nat'l Ins. Co. v. Grant Thornton, LLP*, 206 N.C. App. 687, 697, 698 S.E.2d 719, 726 (2010)).

John Doe     allegations reveal that his alleged injuries occurred in Louisiana. In his abuse of process claim, John Doe    alleges that Jane Doe "strategically utilized" the Louisiana civil court system and the Tulane Title IX process with the intent to hurt John Doe    Am. Compl. ¶¶ 111, 116. Both processes occurred in Louisiana. *See id.* Therefore, John Doe    alleged injury occurred in Louisiana, and Louisiana law applies. *See Coker v. Norwich Com. Grp., Inc.*, No. CV 3:20-03071-MGL, 2021 WL 4037472, at *4 (D.S.C. Sept. 3, 2021) (applying South Carolina lex loci rule to conclude that abuse of process claim arising from proceeding before Texas agency was governed by Texas law).

**B.    John Doe    Fails to State a Claim for Abuse of Process Under Louisiana Law.**

"The essential elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose; and (2) a wilful act in the use of the process not in the regular prosecution of the proceeding." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990). "The precise inquiry involves the misuse of a process already legally issued whereby a party attempts to obtain some result not proper under law." *Id.* "The tort of abuse of process involves the malicious use of a legal process *after* the process has been instituted." *Id.* (emphasis in

9

original).  The fact that a defendant had an ulterior motive in initiating legal process is insufficient; the plaintiff also must show an irregularity in the proceedings.  *See Mini-Togs, Inc. v. Young*, 354 So. 2d 1389, 1391 (La. Ct. App. 1978); *accord Waguespack, Seago & Carmichael, PLC v. Lincoln*, 768 So. 2d 287, 291 (La. Ct. App. 2000).  "Therefore, if the process is used to redress a legal wrong, the person who invoked the legal process cannot be said to have committed any tort, regardless of whether his motive was vicious or vindictive; on the other hand, when the person who invoked the legal process seeks by the use of such process to attain some collateral objective, outside the scope of the operation of the process employed, a tort arises."  *Foster v. Bias*, 358 So. 3d 520, 536 (La. Ct. App. 2022).  "Finally, the acts alleged to constitute the abuse or perversion of the process must result in damage."  *Id.*

John Doe     asserts two theories of abuse of process—that Jane Doe used Louisiana's civil court system to file a petition for protection from abuse for an illegitimate objective, and that she used Tulane's Title IX process for an illegitimate objective.  Am. Compl. ¶¶ 111, 116.  Even assuming that a Title IX investigation at a private university involves the initiation of legal process, both theories fail because John Doe    does not allege any irregularity in Jane Doe use of process.  Although John Doe    contends that Jane Doe had an ulterior motive in seeking a restraining order against him in civil court, *id.* ¶¶ 111-115, he pleads no facts suggesting that Jane Doe then misused legal process already issued to obtain some collateral result, *see id.* ¶¶ 112-115.  Likewise, John Doe    alleges that Jane Doe had an ulterior motive for participating in the Title IX process—"to defame, harass and punish" John Doe     *Id.* ¶ 120.  But he does not allege that she used the Title IX process to obtain some result outside the scope of that process.  *See id.* ¶¶ 111-122.

10

John Doe        allegations that Jane Doe had a wrongful motive are insufficient. *See Waguespack*, 768 So. 2d at 291 ("Regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice." (quotations and italics omitted)).  Because he does not allege that Jane Doe somehow misused legal process already issued, John Doe        fails to state a claim for abuse of process under Louisiana law. *See Foster*, 358 So. 3d at 536-37 (concluding that plaintiff did not state claim for abuse of process where he did not allege irregularity in use of process); *Delcambre v. Mancuso*, 268 So. 3d 325, 332-33 (La. Ct. App. 2019) (concluding that plaintiff could not prove abuse of process claim where there was no evidence of irregularity in process, making allegedly improper motive immaterial).

**II.    John Doe        CANNOT STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT UNDER LOUISIANA LAW BECAUSE Jane Doe IS NOT A CORPORATE OFFICER.**

Louisiana law, which controls John Doe        tortious interference claim, only recognizes tortious interference with contract in one factual scenario—where a corporate officer interferes with a contract between the corporation and a third party.  John Doe        cannot state a claim against Jane Doe for tortious interference with his contract with Tulane because Jane Doe is not a corporate officer.

**A.    John Doe        Tortious Interference Claim Is Governed by Louisiana Law.**

As shown above, John Doe        claims are governed by the law of the state where his alleged injuries occurred. *See supra* pp. 8-9.  Any injuries from Jane Doe alleged interference with John Doe        contract with Tulane occurred in Louisiana, where Tulane is located. *See* Am. Compl. ¶¶ 6, 125-134.  John Doe        alleges that he was "a student at Tulane during the incidents described" in the complaint and that he planned to graduate and then attend

11

business school at Tulane.  *Id.* ¶¶ 1, 11.  John Doe    alleges that Jane Doe was aware of his

contract with Tulane, that she made false statements to prevent Tulane from performing its

contract with John Doe    and that as a result, John Doe    was banned from campus

and dismissed from the university, causing him to lose his tuition payment and college degree

and harming his career prospects.  *Id.* ¶¶ 125-134.[1]  Because Tulane allegedly ceased

performance of a contract with John Doe    in Louisiana, *id.* ¶ 132, John Doe

alleged injury occurred in Louisiana, and Louisiana law applies.  *See, e.g.*, *Lloyd v. Carnation*

*Co.*, 61 N.C. App. 381, 388, 301 S.E.2d 414, 419 (1983) (applying lex loci test to conclude that

Virginia law governed claim that defendant unlawfully interfered with plaintiff's contract

causing other contracting party to cease performance in Virginia); *Soma Tech., Inc. v.*

*Dalamagas*, No. 16 CVS 11100, 2017 WL 2056904, at *9 (N.C. Bus. Ct. May 11, 2017)

(concluding that where defendants' alleged tortious interference caused company to stop doing

business with plaintiff in India, "under the lex loci test, the law of India applies to Plaintiff's

tortious interference claims"); *see also EKG Sec., Inc. v. Tailormade Protective Servs., LLC*, No.

No. 3:21-CV-00599-RJC-DCK, 2022 WL 4477713, at *3 (W.D.N.C. Sept. 26, 2022)

(concluding that North Carolina law applied where defendant's alleged interference occurred in

North Carolina); *Cobra Cap., LLC v. RF Nitro Commc'ns, Inc.*, 266 F. Supp. 2d 432, 437

(M.D.N.C. 2003) (same).

**B.    John Doe    Fails to State a Claim for Tortious Interference with Contract Because Jane Doe Is Not a Corporate Officer.**

"Pursuant to Louisiana law, a limited cause of action for tortious interference with a

contract exists."  *Boudreaux v. OS Rest. Servs., LLC*, 58 F. Supp. 3d 634, 637 (E.D. La. 2014).

---

[1] John Doe    sued Tulane in the Eastern District of Louisiana alleging that Tulane breached its contract with him.  *See Doe v. The Administrators of the Tulane Educ. Fund*, No. 2:23-cv-01348-DJP-KWR (E.D. La.)

12

This limited cause of action was first recognized by the Supreme Court of Louisiana in *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989).  In *9 to 5*, the court made clear that it was not adopting "the fully expanded common law doctrine of interference with contract"; rather, the court recognized "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." *Id.* at 234. "Numerous cases in [the Fifth Circuit] and various Louisiana courts of appeal since *9 to 5* have uniformly recognized the narrowness of Louisiana's tortious interference action." *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 457 (5th Cir. 1999).  Therefore, to state a claim for tortious interference with contract under Louisiana law, a plaintiff must allege that a corporate officer intentionally and unjustifiably interfered with a contract between the officer's corporate employer and the plaintiff.  *See id.*; *see also M&D Mineral Consultants, LLC v. Wenting Li*, No. 12-cv-2082, 2013 WL 883689, at \*3 (W.D. La. Mar. 7, 2013) (listing elements of tortious interference claim).

John Doe     allegations that Jane Doe interfered with his contract with Tulane do not fit within the narrow confines of a tortious interference claim under Louisiana law.  *See* Am. Compl. ¶¶ 125-134.  John Doe     does not—and could not—allege that Jane Doe is a corporate officer of Tulane.  *See id. passim*.  Rather, he alleges that Jane Doe was a Tulane student at the time of the events giving rise to this case.  *Id.* ¶ 7.  Because Jane Doe is not a corporate officer, she cannot be sued for tortious interference with contract, and John Doe     claim is properly dismissed.  *See Egorov*, 183 F.3d at 457 (concluding that claim was properly rejected at summary judgment "because appellants' allegations do not fall within the narrow parameters of Louisiana's tortious interference cause of action"); *CFP New Orleans, LLC v. Orleans Parish Jud. Dist. Ct. Bldg. Comm'n*, No. 16-cv-15475, 2017 WL

13

3917108, at *12-13 (E.D. La. Sept. 7, 2017) (dismissing tortious interference claim where defendant was not a corporate officer); *Boudreaux*, 58 F. Supp. 3d at 638 (dismissing tortious interference claim because "the Louisiana Supreme Court has recognized a cause of action for intentional interference with contractual relations only 'against a corporate officer,'" and defendants were not corporate officers); *Pure Air Daigle, LLC v. Stagg*, No. 6:16-CV-01322, 2017 WL 4020981, at *4 (W.D. La. Sept. 6, 2017) (dismissing tortious interference claims brought against companies and employees because claim could only be brought against corporate officers); *M&D Mineral Consultants*, 2013 WL 883689, at *4 (dismissing claim for tortious interference brought against manager of limited liability company because, despite similarity between manager and corporate officer, claim "does not fall within the ambit of the narrowly drawn delictual action recognized in *9 to 5*"); *City of Alexandria v. Cleco Corp.*, 735 F. Supp. 2d 448, 463 (W.D. La. 2010) (dismissing tortious interference claim against mayor and city attorney because "cause of action for tortious interference with contract is limited, in Louisiana, to circumstances involving officers of private corporations").

III.  John Doe           **FAILS TO STATE A CLAIM FOR CONSPIRACY TO DEFAME UNDER LOUISIANA LAW BECAUSE HE DOES NOT PLAUSIBLY ALLEGE THAT** Jane Doe **AND SUE ROE ENTERED AN AGREEMENT.**

Jane Doe is entitled to dismissal of John Doe         civil conspiracy claim because he failed to plausibly allege an essential element of conspiracy—that Jane Doe and her purported co-conspirator Sue Roe *agreed* to defame John Doe        As shown below, John Doe conclusory allegations of conspiracy are insufficient to state a claim.

A.  **Louisiana Law Applies to** John Doe          **Claim for Conspiracy to Defame.**

Like John Doe         other claims, his civil conspiracy claim is governed by Louisiana law because his alleged injury occurred in Louisiana. *See supra* pp. 8-9.  John Doe

14

alleges a "conspiracy to defame."  Am. Compl. ¶ 151.  Jane Doe and Sue Roe made the allegedly

defamatory statements to the Tulane community.  *See id.* ¶ 80 (alleging that Jane Doe made false

statements to "Tulane investigator Barber, fellow Tulane students, Louisiana civil court, and

numerous people who were friends with" John Doe  who was then a student at Tulane),

¶ 93 (alleging that Jane Doe made false statements to "administrators at Tulane University, to the

president of Plaintiff's fraternity, to Plaintiff's friends, to the Louisiana civil court, as well as to

numerous fellow students"), ¶ 148 (alleging that Jane Doe and Ms. Roe reported sexual assault

allegations to Tulane University and John Doe  fraternity).  John Doe  alleges that

he suffered injuries at Tulane as a result of the purported defamation—his friends stopped

responding to his texts and calls, the sexual assault allegations were "spreading rapidly among

fellow Tulane Students," John Doe  was kicked out of his fraternity group chat, and he

experienced so much anguish and anxiety that he left campus.  *Id.* ¶¶ 43-45.[2]  Because

John Doe  alleged injuries from the conspiracy to defame occurred in Louisiana,

Louisiana law applies.  *See, e.g.*, *Verona v. U.S. Bancorp*, No. 7:09-cv-057-BR, 2011 WL

1252935, at *10 n.6 (E.D.N.C. Mar. 29, 2011) (recognizing that, despite lack of North Carolina

case directly on point, "general rule for defamation claims is the place of harm is the place of

publication"); *see also Wells v. Liddy*, 186 F.3d 505, 521-22 (4th Cir. 1999) (noting that "[i]n

defamation actions, the place of the harm has traditionally been considered to be the place where

---

[2] Consistent with these allegations about John Doe  reputation being injured at Tulane, John Doe  argued to the Fourth Circuit that Jane Doe made the statements alleged to have caused his harm "to a specific audience—predominantly Tulane administrators, students and Jane Doe Instagram and TikTok followers."  Reply Br. 20-21, *Doe v. Doe*, No. 23-1058 (4th Cir. April 19, 2023). John Doe  noted that he did not allege that Jane Doe identified him by name on Instagram or TikTok.  *Id.* 21.  He identified the group of people "who know about [Jane Doe allegations against him" as "including his friends, former classmates and Tulane's administrators."  *Id.* 22.

15

the defamatory statement was published," and concluding, under Maryland lex loci rule, that

Virginia law applied defamation claim arising from speech given at university in Virginia).

        **B.**     John Doe     **Fails to State a Claim for Civil Conspiracy Under Louisiana Law Because He Did Not Plausibly Allege an Agreement.**

Louisiana law provides that "[h]e who conspires with another person to commit an

intentional or willful act is answerable, in solido, with that person, for the damage caused by

such act." La. Civ. Code Art. 2324(A). Under Louisiana law, conspiracy "is not itself an

actionable tort." *Doe v. McKesson*, 71 F.4th 278, 287 (5th Cir. 2023) (quotation omitted).

Therefore, John Doe    "cannot state a stand-alone claim for conspiracy." *Landry v.

PosiGen, Inc.*, No. CV 17-8444, 2018 WL 806227, at *9 (E.D. La. Feb. 8, 2018) (dismissing

claim for civil conspiracy). "Operationally, civil conspiracy assigns liability for an underlying

unlawful act to a person who acted in concert with the direct tortfeasor. To impose such liability,

a plaintiff must prove the following elements: (1) an agreement existed with one or more persons

to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in

plaintiff's injury; and (4) there was an agreement as to the intended outcome or result."

*McKesson*, 71 F.4th at 287 (quotation omitted). To survive a motion to dismiss, John Doe

was required to plausibly allege facts that would be sufficient to establish the elements of

conspiracy. *See Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 269 (4th Cir. 2022) ("A

plaintiff must plausibly allege facts that, if proven, would be sufficient to establish each element

of the claim.").

John Doe    civil conspiracy claim is properly dismissed because he does not

plausibly allege that Jane Doe entered an agreement with Sue Roe to commit a wrongful act.

Specifically, he asserts a legal theory of conspiracy to defame, Am. Compl. ¶¶ 148, 151, but he

does not allege facts supporting the existence of an agreement to defame him. John Doe

16

only allegations of an agreement or conspiracy are speculative or conclusory—he alleges that Jane Doe and Sue Roe "acted in concert with the common purpose to defame and injure" John Doe "emotionally, reputationally and economically."  Am. Compl. ¶ 148; *see id.* ¶ 91 ("Jane Doe filed a false report of sexual misconduct, colluded and conspiring with Sue Roe . . . ."), ¶ 151 (referring to "conspiracy to defame").  He alleges, "[u]pon information and belief," that after Jane Doe purportedly saw him with another woman, "Jane Doe was in touch with Sue Roe, colluding to defame, harass, and interfere with [John Doe education by filing fabricated complaints with Tulane's Title IX office."  *Id.* ¶ 2.  John Doe asserts that Jane Doe and Sue Roe "conspired to target [John Doe in furtherance of their self-interests, in retaliation for Plaintiff's refusal to enter into a committed relationship with either Jane Doe or Sue Roe, and in an effort to destroy Plaintiff's academic career and future career goals."  *Id.* ¶ 1.

Using the words "collude" and "conspire" is insufficient.  *See Zuniga v. Masse Contracting, Inc.*, 290 F. Supp. 3d 581, 587 (E.D. La. 2017) ("Plaintiffs' allegations that Defendants 'formed a conspiracy' or 'conspired' are conclusory.").  John Doe assertion that there was a conspiracy is a legal conclusion not entitled to the assumption of truth.  *See Twombly*, 550 U.S. at 555; *see also K&F Rest. Holdings, Ltd. v. Rouse*, No. CV 16-293-JWD-EWD, 2018 WL 3553422, at *13 (M.D. La. July 24, 2018) (rejecting conclusory allegations of civil conspiracy), *aff'd on other grounds*, 798 F. App'x 808 (5th Cir. 2020).  John Doe must plead facts that make an agreement between Jane Doe and Ms. Roe plausible, not merely possible.  *See Twombly*, 550 U.S. at 557.  John Doe mere suspicion that Jane Doe and Ms. Roe "had been communicating all along," Am. Compl. ¶ 42, does not make his claim

17

plausible.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

Because John Doe      alleges no facts tending to show that Jane Doe agreed with Ms. Roe to work together to defame him, he cannot state a claim under a civil conspiracy theory. *See McKesson*, 71 F.4th at 287 (affirming dismissal of civil conspiracy claim where plaintiff did not allege facts tending to show agreement with another to commit specific tort underlying conspiracy claim); *Ellis v. Pinckley*, No. 5:22-cv-00345, 2023 WL 4417255, at *8 (W.D. La. May 25, 2023) (dismissing civil conspiracy claim because complaint did not "contain sufficient factual allegations to plausibly allege that [defendant] conspired to commit any unlawful act"); *Riggs v. DXP Enters., Inc.*, No. 6:18-CV-00729, 2018 WL 3967746, at *5 (W.D. La. Aug. 2, 2018) (concluding that plaintiff failed to state claim for conspiracy to defame where plaintiff did not plead facts regarding agreement among defendants), *report and recommendation adopted*, No. 6:18-CV-00729, 2018 WL 3967741 (W.D. La. Aug. 17, 2018).

## CONCLUSION

For the reasons stated above, Defendant Jane Doe respectfully requests that the Court grant this motion and dismiss John Doe      claims for abuse of process, tortious interference with contract, and civil conspiracy.

18

This the 15th day of December, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

19

Original Filed at Docket No. 29,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe <br><br> Defendant. | DEFENDANT Jane Doe   MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) |

Defendant Jane Doe pursuant to 28 U.S.C. § 1404(a), hereby moves the Court for an order transferring this case to the United States District Court for the Eastern District of Louisiana. Jane Doe consulted with counsel for John Doe about Jane Doe intent to file this motion, and John Doe opposes this motion.

In support of her motion, Jane Doe relies on her accompanying brief and the following exhibits:

1.     Affidavit of Erica Woodley (Exhibit 1)

2.     Declaration of Jane Doe (Exhibit 2)

3.     *Doe* Complaint (Exhibit 3) (separately filed under seal)

4.     Subpoena to Jane Doe (Exhibit 4) (separately filed under seal)

5.     Eastern District of Louisiana Website Excerpt (Exhibit 5)

6.     Eastern District of North Carolina Website Excerpt (Exhibit 6)

7.     Federal Judicial Caseload Statistics, Table X-1A (Exhibit 7)

8.     Joint Status Report, *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023) (Exhibit 8)

This the 15th day of December, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

2

# EXHIBIT 1

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

Before me, the undersigned Notary Public, in and for the State and Parish aforesaid, came

**ERICA WOODLEY**

a person of the full age of majority, who did depose and state that:

1.      I am, and have been since 2018, Tulane University's Dean of Students & Associate Vice-President of Student Affairs, Student Resources & Support Services.  I have worked in Tulane University's Division of Student Affairs in various capacities since 2006.

2.      As Tulane University's Dean of Students & Associate Vice-President of Student Affairs, Student Resources & Support Services, my responsibilities include serving as the Deputy Title IX Coordinator for Students and overseeing all operational aspects of Student Resources & Support Services, including the Office of Student Conduct, Office of Case Management and Victim Support Services, and the Goldman Center for Student Accessibility.

3.      I became familiar with Jane Doe, in 2022, when Tulane University investigated allegations of misconduct set forth in a report filed by Jane Doe.

4.      In my role as Tulane University's Dean of Students & Associate Vice-President of Student Affairs, Student Resources & Support Services, I am personally familiar with Tulane University's policies and procedures regarding student conduct investigations, including the investigation into Jane Doe report.

5.      As of the date of Jane Doe report, all students identified in her report were enrolled as undergraduate students at Tulane University, a private institution of higher education located at 6823 St. Charles Avenue, New Orleans, Louisiana; all students identified also maintained local physical addresses in New Orleans, Louisiana.

Page 1 of 3

#5149933v1

6.    Jane Does report was investigated from Tulane's campus in New Orleans, Louisiana by then-Tulane University Student Conduct Investigator Jacqueline Barber (the "Investigation"). As part of the Investigation, Ms. Barber met with approximately thirteen witnesses in her office on Tulane's campus to obtain their statements. From her office on Tulane's campus, Ms. Barber also conducted Zoom and/or telephone interviews with an additional five witnesses, collected and reviewed evidence, and drafted an Investigative Report setting forth her findings and conclusions.

7.    In addition to Ms. Barber and myself, other members of the Tulane University Division of Student Affairs and/or Tulane University affiliates also had knowledge of the complaint made by Jane Doe, the complaints subsequently made against Jane Doe, the Investigation into Jane Doe.

s complaint, the ultimate findings of the Investigation, the sanction assigned as a result of the Investigation, and/or the appeal of the Investigation outcome, including (1) Dr. Christopher Zacharda, then-Director of Tulane's Office of Student Conduct; (2) Julia Broussard, Associate Director of Tulane's Title IX Office; (3) Dr. Dusty Porter, Tulane University Vice President, Student Affairs; (4) Alison Cofrancesco, Director of the Office of Case Management and Victim Support Services; and (5) Avery Pardee, a Tulane University affiliate.

8.    Of the seven current and former Tulane University employees / affiliates identified in Paragraph 11, six continue to reside in the New Orleans area: (1) Ms. Barber (who is no longer a Tulane employee), (2) Ms. Broussard, (3) Dr. Porter, (4) Ms. Cofrancesco, (5) Ms. Pardee, and (6) myself.

9.    Tulane University ordinarily maintains conduct records for seven years.


Further deponent sayeth not.

#5149933v1

New Orleans, Louisiana, this 14th day of December, 2023.

ERICA WOODLEY

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 14 DAY OF
DECEMBER, 2023.

NOTARY PUBLIC

**Rosalie M. Haug**
**Notary Public**
**Bar No. 37720 - Notary No. 152602**
**State of Louisiana**
**Commission Issued For Life**

Page 3 of 3

#5149933v1

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | DECLARATION OF Jane Doe |

declarant, says as follows:

1.      I currently live in the state of Colorado.

2.      I am over the age of 18 and am competent and qualified to testify as to the matters stated herein.  I have personal knowledge of the facts stated herein.

3.      I am the defendant in the above-captioned case.

4.      I was a student at Tulane University when this case was filed on December 8, 2022, and I lived in New Orleans, Louisiana at that time.

5.      I went to high school in North Carolina and returned home to my parents' house in North Carolina periodically while I was a student at Tulane.

6.      I graduated from Tulane in May 2023, briefly returned home to North Carolina, and have since moved to Colorado, where I currently reside.

7.      I have reviewed the amended complaint filed on or about November 9, 2023.  The amended complaint refers to twenty (20) different people by their initials and one individual by pseudonym (Sue Roe).

8.      I believe that Sue Roe, first named in paragraph 1 of the Amended Complaint, refers to one of my former Tulane classmates who now lives in New York.

9. I believe that the following initials refer to former Tulane classmates of mine who also live in New York: M.G. (first named in paragraph 14 of the Amended Complaint), M.V. (first named in paragraph 14 of the Amended Complaint), B.H. (first named in paragraph 14 of the Amended Complaint), K.R. (first named in paragraph 21 of the Amended Complaint), H.W. (first named in paragraph 21 of the Amended Complaint), A.H. (first named in paragraph 31 of the Amended Complaint), and E.M. (first named in paragraph 85 of the Amended Complaint).

10. I believe that the initials D.E. (first named in paragraph 18 of the Amended Complaint) refer to a former Tulane classmate of mine who now lives in Louisiana or Maryland.

11. I believe that the initials T.R. (first named in paragraph 32 of the Amended Complaint and N.B. (first named in paragraph 56 of the Amended Complaint) refer to former Tulane classmates of mine who now live in Colorado.

12. I believe that the initials A.S. (first named in paragraph 33 of the Amended Complaint) refer to a former Tulane classmate of mine who now lives in Louisiana.

13. I am unaware of the current residences of the individuals who are referred to in the complaint as K.S., D.K., T.G., M.K., S.B., A.T., L.A., or B.M.

14. John Doe sent me a subpoena for documents associated with the case he filed against Tulane. Exhibit 4 to the Motion to Transfer is a true and correct copy of the subpoena John Doe served on me.

15. I believe that potential witnesses in my case will include at least some of the Tulane students I identified in my report to Tulane's Title IX office and some of the Tulane administrators identified in the affidavit of Erica Woodley.

2

DocuSign Envelope ID: 9926A1A7-3AB6-48D5-A750-97D7FBAC1160

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 15, 2023.

# Jane Doe

_____
Jane Doe

3

# EXHIBIT 3

# FILED UNDER SEAL

# EXHIBIT 4

# FILED UNDER SEAL

# EXHIBIT 5

Case 2:24-cv-00825-DJP-EJD   Document 193   Filed 06/12/26   Page 189 of 1935

# Judges' Information

The United States District Court for the Eastern District of Louisiana has twelve authorized active judgeships with three senior judges and four magistrate judges.   The active judges and senior judges are appointed to the district bench by the President of the United States, and confirmed by the United States Senate, under Article III of the Constitution of the United States.  The Article III judges exercise what Article III calls "the judicial power of the United States."

Magistrate judges are selected by the district judges upon recommendation by a Merit Selection Panel. They are then appointed to serve for a period of eight years after which they may request consideration for reappointment. Magistrate judges carry out various responsibilities in accordance with Civil Local Rule 73 and Criminal Local Rule 5.

To learn more about the judges who have served on the United States District Court for the Eastern District of Louisiana, visit the court's history page.

Case 5:22-cv-00500-D-BM   Document 29-5   Filed 12/15/23   Page 2 of 3

# District Judges

| Section | Judge | Courtroom | Chambers | Phone |
|---------|-------|-----------|----------|-------|
| A | Jay C. Zainey | C467 | C455 | (504) 589-7590 |
| B | Ivan L.R. Lemelle | C501 | C525 | (504) 589-7555 |
| D | Wendy B. Vitter | C352 | C368 | (504) 589-7570 |
| E | Susie Morgan | C316 | C322 | (504) 589-7535 |
| G | Nannette Jolivette Brown | C227 | C205 | (504) 589-7505 |
| H | Jane Triche Milazzo | C224 | C206 | (504) 589-7585 |
| I | Lance M. Africk | C427 | C405 | (504) 589-7605 |
| J | Carl J. Barbier | C268 | C256 | (504) 589-7525 |
| L | Eldon E. Fallon | C468 | C456 | (504) 589-7545 |
| M | Barry W. Ashe | C351 | C367 | (504) 589-7560 |
| P | Darrel James Papillion | C551 | C555 | (504) 589-7540 |
| R | Sarah S. Vance | C279 | C255 | (504) 589-7595 |
| S | Mary Ann Vial Lemmon | C414 | C406 | (504) 589-7565 |
| T | Greg G. Guidry | C552 | C556 | (504) 589-7515 |

# EXHIBIT 6



**VISITOR INFORMATION**: Mobile devices and weapons are not permitted in the courthouse. Please bring a photo ID.

- Accessibility Accommodations
- Camp Lejuene Water Litigation
- County List
- Court Schedule
- Court Reporter
- Employment
- Feedback
- Forms
- Judges ▾
- Latest News
- Media
- POWER Act
- Privacy Policy
- Record Request
- Rules/Standing Orders ▾
- Self Representation
- Site Map
- Your Employee Rights and
How to Report Wrongful Conduct

**JUDGES**

The federal judges serving within the Eastern District of North Carolina consist of:

**Chief United States District Judge**
Determined by statute from among the district judges to discharge an important leadership role in court management.

**United States District Judges**
Appointed by the President of the United States upon confirmation by the United States Senate, in accordance with Article III of the United States Constitution, to lifetime service on the district court bench.

**United States Magistrate Judges**
Appointed pursuant to 28 U.S.C. § 631 by the district court judges in the district to serve for a term of eight years, if full-time, or four years, if part-time, which term may be renewed by the court subject to satisfaction of certain criteria. Authority and Duties of Magistrate Judges.

### Chief United States District Judge

| name | location |
| --- | --- |
| Chief United States District Judge Richard E. Myers II | Wilmington, NC |

### United States District Judges

| name | location |
| --- | --- |
| United States District Judge Terrence W. Boyle | Elizabeth City, NC |
| United States District Judge Louise W. Flanagan | New Bern, NC |
| United States District Judge James C. Dever III | Raleigh, NC |
| Senior United States District Judge W. Earl Britt (Currently inactive and not taking cases.) | |
| Senior United States District Judge Malcolm J. Howard (Currently inactive and not taking cases.) | |

## United States Magistrate Judges

| name | location |
| --- | --- |
| United States Magistrate Judge Robert B. Jones, Jr. | Wilmington, NC |
| United States Magistrate Judge Robert T. Numbers, II | Raleigh, NC |
| United States Magistrate Judge Brian S. Meyers | Raleigh, NC |
| United States Magistrate Judge Kimberly A. Swank | Greenville, NC |
| United States Magistrate Judge James E. Gates | Raleigh, NC |

# EXHIBIT 7

**Table X-1A.**
**U.S. District Courts—Weighted and Unweighted Filings per Authorized Judgeship**
**During the 12-Month Period Ending March 31, 2023**

| District | Judgeships | Unweighted Filings per Judgeship | | | | Weighted Filings per Judgeship | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Total | Civil | Criminal | Supervision Hearings | Total | Civil | Criminal | Supervision Hearings |
| Total | 673 | 542 | 401 | 102 | 39.3 | 491 | 369 | 118 | 3.8 |
| DC | 15 | 295 | 257 | 30 | 8.3 | 276 | 230 | 45 | 0.8 |
| ME | 3 | 231 | 163 | 43 | 25.7 | 205 | 135 | 67 | 2.2 |
| MA | 13 | 265 | 213 | 34 | 18.8 | 276 | 217 | 57 | 1.6 |
| NH | 3 | 279 | 218 | 38 | 23.0 | 242 | 179 | 62 | 2.0 |
| RI | 3 | 192 | 147 | 34 | 11.0 | 194 | 142 | 51 | 1.1 |
| PR | 7 | 290 | 92 | 147 | 50.6 | 310 | 83 | 223 | 4.3 |
| CT | 8 | 267 | 199 | 36 | 31.8 | 255 | 193 | 59 | 2.8 |
| NY,N | 5 | 443 | 304 | 102 | 37.0 | 388 | 277 | 108 | 3.1 |
| NY,E | 15 | 641 | 572 | 47 | 22.1 | 577 | 492 | 82 | 2.0 |
| NY,S | 28 | 456 | 396 | 32 | 28.2 | 541 | 485 | 53 | 3.1 |
| NY,W | 4 | 588 | 399 | 102 | 87.3 | 484 | 329 | 148 | 7.0 |
| VT | 2 | 278 | 108 | 106 | 64.5 | 253 | 99 | 148 | 5.6 |
| DE | 4 | 429 | 396 | 28 | 4.5 | 741 | 704 | 37 | 0.6 |
| NJ | 17 | 495 | 439 | 44 | 12.3 | 478 | 407 | 70 | 1.0 |
| PA,E | 22 | 270 | 240 | 21 | 8.5 | 271 | 238 | 32 | 0.7 |
| PA,M | 6 | 453 | 358 | 77 | 18.3 | 418 | 310 | 105 | 2.2 |
| PA,W | 10 | 296 | 241 | 41 | 14.5 | 302 | 236 | 64 | 2.5 |
| MD | 10 | 551 | 347 | 183 | 20.8 | 379 | 303 | 74 | 1.8 |
| NC,E | 4 | 977 | 596 | 305 | 76.5 | 763 | 512 | 243 | 7.5 |
| NC,M | 4 | 454 | 291 | 94 | 69.5 | 374 | 226 | 140 | 7.1 |
| NC,W | 5 | 364 | 226 | 82 | 56.4 | 327 | 203 | 118 | 5.6 |
| SC | 10 | 560 | 471 | 55 | 34.6 | 461 | 374 | 83 | 3.6 |
| VA,E | 11 | 414 | 271 | 104 | 38.7 | 350 | 242 | 104 | 3.6 |
| VA,W | 4 | 377 | 298 | 49 | 29.8 | 312 | 239 | 69 | 3.8 |
| WV,N | 3 | 432 | 258 | 121 | 52.7 | 389 | 193 | 191 | 4.5 |
| WV,S | 5 | 223 | 150 | 52 | 20.6 | 200 | 121 | 77 | 2.0 |
| LA,E | 12 | 465 | 433 | 27 | 5.5 | 543 | 503 | 39 | 0.5 |
| LA,M | 3 | 438 | 379 | 41 | 18.0 | 459 | 396 | 60 | 2.5 |
| LA,W | 7 | 873 | 821 | 40 | 11.9 | 1,047 | 988 | 58 | 1.4 |
| MS,N | 3 | 326 | 242 | 68 | 15.7 | 360 | 257 | 101 | 2.3 |
| MS,S | 6 | 327 | 239 | 67 | 20.8 | 313 | 217 | 92 | 3.4 |

| | | | | | | | | | |
|------|------|------|-----|-----|-------|-----|-----|-----|------|
| TX,N | 12 | 574 | 418 | 117 | 39.5 | 557 | 388 | 166 | 3.6 |
| TX,E | 8 | 535 | 388 | 146 | 0.8 | 684 | 453 | 231 | 0.1 |
| TX,S | 19 | 782 | 328 | 363 | 91.0 | 601 | 313 | 279 | 9.1 |
| TX,W | 13 | 1,069 | 355 | 619 | 95.7 | 848 | 423 | 417 | 8.2 |
| KY,E | 5.5 | 305 | 193 | 80 | 31.8 | 282 | 158 | 121 | 3.1 |
| KY,W | 4.5 | 424 | 261 | 137 | 25.8 | 353 | 231 | 120 | 2.5 |
| MI,E | 15 | 272 | 207 | 44 | 20.6 | 265 | 199 | 64 | 1.9 |
| MI,W | 4 | 455 | 363 | 60 | 32.5 | 424 | 336 | 86 | 2.6 |
| OH,N | 11 | 367 | 229 | 79 | 59.3 | 319 | 197 | 117 | 5.3 |
| OH,S | 8 | 708 | 603 | 73 | 32.0 | 588 | 477 | 106 | 5.2 |
| TN,E | 5 | 346 | 192 | 130 | 23.8 | 386 | 190 | 194 | 1.9 |
| TN,M | 4 | 450 | 319 | 94 | 36.8 | 461 | 314 | 143 | 3.6 |
| TN,W | 5 | 376 | 221 | 91 | 63.4 | 345 | 204 | 135 | 6.6 |
| IL,N | 22 | 391 | 357 | 23 | 10.0 | 401 | 364 | 36 | 1.0 |
| IL,C | 4 | 440 | 327 | 65 | 48.0 | 356 | 256 | 94 | 5.0 |
| IL,S | 4 | 972 | 881 | 58 | 33.3 | 724 | 635 | 86 | 3.3 |
| IN,N | 5 | 476 | 410 | 49 | 16.6 | 420 | 346 | 72 | 2.1 |
| IN,S | 5 | 745 | 675 | 63 | 6.6 | 642 | 542 | 99 | 0.7 |
| WI,E | 5 | 411 | 315 | 64 | 31.2 | 371 | 269 | 100 | 2.6 |
| WI,W | 2 | 482 | 386 | 66 | 30.5 | 450 | 342 | 105 | 2.9 |
| AR,E | 5 | 530 | 382 | 112 | 35.0 | 472 | 301 | 167 | 3.3 |
| AR,W | 3 | 388 | 287 | 82 | 19.7 | 351 | 227 | 123 | 1.8 |
| IA,N | 2 | 461 | 185 | 160 | 116.0 | 402 | 157 | 230 | 15.6 |
| IA,S | 3 | 390 | 178 | 136 | 77.0 | 362 | 149 | 204 | 9.7 |
| MN | 7 | 589 | 459 | 71 | 60.0 | 496 | 364 | 127 | 4.9 |
| MO,E | 8 | 388 | 205 | 122 | 60.9 | 376 | 194 | 175 | 6.6 |
| MO,W | 6 | 432 | 271 | 109 | 52.5 | 398 | 229 | 164 | 4.5 |
| NE | 3 | 461 | 237 | 171 | 53.3 | 459 | 208 | 246 | 4.5 |
| ND | 2 | 387 | 116 | 196 | 76.0 | 407 | 100 | 298 | 8.1 |
| SD | 3 | 432 | 106 | 194 | 131.0 | 427 | 102 | 311 | 14.7 |
| AK | 3 | 195 | 148 | 47 | - | 217 | 149 | 68 | 0.0 |
| AZ | 13 | 754 | 235 | 404 | 115.5 | 504 | 202 | 293 | 9.3 |
| CA,N | 14 | 646 | 571 | 24 | 51.4 | 579 | 537 | 37 | 4.1 |
| CA,E | 6 | 769 | 653 | 68 | 48.2 | 682 | 572 | 105 | 5.2 |
| CA,C | 28 | 543 | 483 | 35 | 25.4 | 555 | 500 | 53 | 2.1 |
| CA,S | 13 | 544 | 171 | 258 | 114.3 | 463 | 171 | 282 | 9.2 |
| HI | 4 | 209 | 144 | 38 | 27.5 | 214 | 154 | 58 | 2.5 |
| ID | 2 | 481 | 256 | 154 | 71.0 | 458 | 241 | 211 | 5.7 |
| MT | 3 | 385 | 189 | 118 | 78.0 | 375 | 176 | 188 | 11.0 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| NV | 7 | 443 | 365 | 45 | 33.0 | 412 | 353 | 56 | 3.1 |
| OR | 6 | 479 | 323 | 82 | 73.7 | 423 | 290 | 127 | 5.9 |
| WA,E | 4 | 434 | 180 | 85 | 169.5 | 280 | 140 | 126 | 14.3 |
| WA,W | 7 | 527 | 417 | 72 | 37.0 | 459 | 391 | 64 | 4.0 |
| CO | 7 | 557 | 472 | 60 | 24.6 | 571 | 481 | 88 | 2.1 |
| KS | 6 | 318 | 205 | 73 | 39.8 | 290 | 187 | 99 | 3.7 |
| NM | 7 | 524 | 143 | 267 | 113.7 | 348 | 136 | 203 | 9.3 |
| OK,N | 3.5 | 361 | 158 | 159 | 44.6 | 369 | 134 | 231 | 3.9 |
| OK,E | 1.5 | 421 | 269 | 119 | 33.3 | 436 | 224 | 208 | 4.3 |
| OK,W | 6 | 342 | 185 | 129 | 28.7 | 319 | 175 | 140 | 3.6 |
| UT | 5 | 437 | 204 | 162 | 70.0 | 430 | 199 | 226 | 5.8 |
| WY | 3 | 196 | 83 | 57 | 56.0 | 174 | 87 | 82 | 4.7 |
| AL,N | 8 | 304 | 206 | 65 | 32.4 | 291 | 197 | 89 | 4.5 |
| AL,M | 3 | 349 | 248 | 88 | 12.3 | 367 | 236 | 130 | 1.9 |
| AL,S | 3 | 354 | 162 | 104 | 87.7 | 330 | 160 | 160 | 9.7 |
| FL,N | 4 | 7,198 | 7,071 | 93 | 34.3 | 5,060 | 4,972 | 84 | 4.4 |
| FL,M | 15 | 651 | 550 | 74 | 27.1 | 603 | 496 | 104 | 2.6 |
| FL,S | 18 | 1,189 | 1,066 | 91 | 31.7 | 1,035 | 898 | 133 | 4.2 |
| GA,N | 11 | 612 | 541 | 50 | 21.1 | 548 | 472 | 74 | 2.5 |
| GA,M | 4 | 428 | 284 | 127 | 17.8 | 395 | 232 | 160 | 2.1 |
| GA,S | 3 | 541 | 319 | 168 | 53.3 | 488 | 262 | 221 | 5.6 |

Note: Case weights are based on the 2015 district court case weighting study conducted by the Federal Judicial Center.  Data for the territorial courts are not included. This table excludes civil cases arising by reopening, remand, or transfer to the district by the order of the Judicial Panel on Multidistrict Litigation. This table includes defendants in all criminal cases filed as felonies or Class A misdemeanors, but includes only those defendants in criminal cases filed as petty offenses that were assigned to district judges rather than magistrate judges. Remands and reopens for criminal defendants are excluded. This table includes trials conducted by district and appellate judges only; all trials conducted by magistrate judges are excluded. Sentencing hearings are excluded. Due to rounding, subtotals may not equal totals.

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:23-cv-897

IN RE:                              )

CAMP LEJEUNE WATER LITIGATION   )       **JOINT STATUS REPORT**

This Document Relates To:          )
ALL CASES                    )

Plaintiffs' Lead and Co-Lead Counsel ("Plaintiffs"), together with the Defendant United States of America ("Defendant" or the "United States") (collectively, the "Parties"), jointly file this Joint Status Report pursuant to Case Management Order No. 2, where the Court ordered the Parties to submit a joint status report five days before any status conference. (D.E. 23). The matters required to be addressed prior to each status conference are set forth below:

**(1) An update on the number and status of CLJA actions filed in the Eastern District of North Carolina**

From February 11, 2023 to November 27, 2023, 1433 CLJA complaints have been filed in this district. Fourteen cases have been dismissed; eleven of those were voluntary dismissals and the three others were pro se cases. The cases are divided as follows: Judge Dever – 357 cases; Judge Myers – 370 cases; Judge Boyle – 343 cases; and Judge Flanagan –363 cases.

**(2) An update on the number and status of administrative claims with the Department of Navy**

There are approximately 131,697 administrative claims on file with the Navy. The Navy is setting up a database that it says will significantly expedite efforts and will allow it to intake claims, organize claims, and analyze claims for purposes of making decisions on claims. The Navy has entered a Memorandum of Understanding with the Veterans Administration (VA) that will allow the Navy to gain access to the VA database to obtain information to evaluate claims. The Navy

1

intends to continue communications with Plaintiffs' counsel to coordinate procedures for obtaining information to evaluate claims. While the Navy has not yet shown progress on this front, a call with counsel from a firm representing a substantial number of claimants is scheduled for November 30, 2023.

**(3) An update on stipulations entered into between the Parties since the last status conference**

The parties have not proposed or entered any stipulations since the last status conference. The United States will be proposing stipulations based on its Answer to Plaintiffs' Master Complaint, filed on November 20, 2023. [D.E. 50] Plaintiffs are also evaluating which additional stipulations to propose in light of that Answer.

**(4) A summary of the discovery conducted since the last status conference**

The Parties have agreed to file separate summaries of the discovery conducted since the last status conference. The Parties' respective summaries appear below:

**Plaintiffs' Position:**

*Document Production*

Plaintiffs' First Set of Requests for Production was served on September 30, 2023 (the "First Requests").[1] On October 29, 2023, Defendant's Response to the First Requests was served (the "Response to First Requests"). Defendant produced certain documents in response to Plaintiffs' First Requests on October 31, November 6, November 17, November 20 and November 21, 2023. Additionally, Defendant produced certain privilege logs on November 1, 2023.

---

[1] For purposes of correcting a few typographical errors, Plaintiffs served a Corrected First Set of Requests for Production on October 4, 2023. The corrections were non-substantive, and the Parties agreed that the deadline for Defendant's responses would be calculated based upon the service date of the initial discovery requests.

Unfortunately, Defendant's document production in response to the First Requests is far from complete. For instance, Defendant has not produced all documents in response to at least the following individually numbered requests within the First Requests: Request Nos. 2, 11, 13, 15, 16, and 17. In addition to the foregoing, substantial categories of electronically stored information ("ESI") will be produced by Defendant only after the parties complete a meet-and-confer conference.

Defendant has failed to indicate that it will produce all documents and ESI responsive to the First Requests within a reasonable time. In fact, Defendant has projected that the production of responsive documents and ESI may not occur until "the completion of fact discovery." Plaintiffs contend that this projection that documents and ESI will be produced at some indefinite time before "the completion of fact discovery" fails to comply with the Federal Rules of Civil Procedure. It prejudices Plaintiffs' efforts to select individual plaintiffs for the Discovery Pool and prepare cases for trial. In fact, at the most recent Status Conference on November 21, 2023, Plaintiffs provided the Court with case law establishing that Defendant's refusal to provide a concrete document-production timeline fails to comply with Fed. R. Civ. P. 34(b)(2)(B). *See NOA, LLC v. Khoury*, No. 5:14-CV-114, 2018 U.S. Dist. LEXIS 112108, at *17 (E.D.N.C. Aug. 23, 2016).

Plaintiffs are concerned that Defendant has declined to produce a new, unpublished Agency for Toxic Substances and Disease Registry ("ATSDR") report related to cancer rates on Camp Lejeune, which was referenced in a recent article published by Reuters on November 10, 2023, and which Defendant has acknowledged.[2] If this study is not produced promptly, Plaintiffs will

---

[2] M.B. Pell, *Unpublished Study Finds Elevated Cancer Rates at US Military Base*, Reuters, *available at* https://www.reuters.com/world/us/unpublished-study-finds-elevated-cancer-rates-us-military-base-2023-11-10 (accessed on November 27, 2023).

Case 2:23-cv-00897-RM   Document 60-8   Filed 11/28/23   Page 4 of 13

likely initiate the protocol for discovery disputes established by the Court on November 21, 2023. [D.E. 55]

In addition to the above-discussed First Requests, Plaintiffs have issued the following additional document production requests: (a) Plaintiffs' Second Set of Requests for Production was served on October 29, 2023, and Defendant's response is due on November 28, 2023; (b) Plaintiffs' Third Set of Requests for Production was served on November 3, 2023, and Defendant's response is due on December 4, 2023; (c) Plaintiffs' Fourth Set of Requests for Production was served on November 24, 2023, and Defendant's response is due on December 27, 2023; and (d) Plaintiffs' Fifth Request for Production was served on November 28, 2023, and Defendant's response is due on December 28, 2023.

*Status of ESI*

On November 21, 2023, the Court entered a Stipulated Order Establishing Protocol for Document Collection and Production (Case Management Order No. 8), which included an ESI Protocol. [D.E. 52] Pursuant that that Order, the parties exchanged lists of proposed ESI custodians and search terms on November 27, 2023, and the parties scheduled a meeting concerning the production of ESI for December 4, 2023. After ESI custodians and search terms are identified, the parties agree that Defendant will be producing ESI in response to several of Plaintiffs' discovery requests, including the First Requests.

*Notices of Rule 30(b)(6) Depositions*

Under Fed. R. Civ. P. 30(b)(6), Plaintiffs have noticed the following depositions of the United States' agencies: (1) United States Marine Corp for November 30, 2023; (2) Agency for Toxic Substances and Disease Registry for December 5, 2023; and (3) Department of Veterans Affairs for December 6, 2023.

4

Defendant has objected to certain examination topics identified by Plaintiffs. However, Plaintiffs fully complied with the Stipulated Rule 30 Deposition Protocol (Case Management Order No. 3) approved by this Court on October 23, 2023. [D.E. 28] In that protocol, the parties agreed as follows:

> No Party shall serve a notice of deposition until after the scheduling of the deposition has been discussed during the weekly call and the parties have reached agreement, or exhausted reasonable efforts to reach agreement, o the location, date and time for the deposition.

[D.E. 28, at ¶ 3.b.]

As required, Plaintiffs and Defendant agreed to the dates, times and locations for these depositions. Furthermore, Plaintiffs actually *exceeded* the requirements of the Stipulated Rule 30 Deposition Protocol by providing draft deposition notices with examination topics on October 20 and October 27, 2023. Defendant claims, however, that Plaintiffs' final notices of deposition contain deposition topics which are different from the draft notices. Nothing in the Stipulated Rule 30 Deposition Protocol or Fed. R. Civ. P. 20(b)(6) required that the parties agree to all examination topics prior to service of a deposition notice, furthermore, the topics in the final notices of deposition are substantially similar to the drafts provided to Defendant on October 20 and October 27, 2023. In any event, the parties held a meet-and-confer on November 28, 2023. During that meet-and-confer, Plaintiffs agreed that to the extent Defendant's witness-designee is not able to address topics which were not agreed to in advance, that designee can simply testify that he/she does not possess responsive knowledge, and the parties can address the subject in a subsequent deposition or bring the matter to the Court's attention for resolution.

*Plaintiff Records*

In the present Status Report, Defendant argues that Plaintiffs have failed to provide sufficient information (*i.e.*, Social Security Numbers, dates of birth and releases) to enable

Case 2:23-cv-00809-BM   Document 609-8 Filed 11/28/23 Page 5 of 13

Defendant to produce individual plaintiff medical and service records. Defendant's argument is premature, inaccurate, and should be disregarded.

As an initial matter, the records requested are contained in *databases* of individuals tied to Camp Lejeune. It is these general *databases* that the Plaintiffs have sought through their requests for production. This is in keeping with Case Management Order No. 2, in which this Court authorized Plaintiffs to begin *generalized discovery* on September 26, 2023. [D.E. 23, at p. 8]. Plaintiffs have not sought individualized records from Defendant. Indeed, to do so would be premature since the parties have not yet selected which individual plaintiffs will proceed to discovery and trial. Rather, Defendant appears to conflate individual plaintiff-specific discovery with general discovery the Plaintiffs have sought through their requests which, as this Court has previously observed, is protected under a Stipulated Protective Order and thus, the Plaintiffs contend, do not require *individualized* authorizations. Therefore, Defendant's argument is both flawed and premature.

In the present Status Report, Defendant also argues that Plaintiffs have failed to provide releases permitting the production of plaintiff-specific health information. Such releases should be unnecessary because the Court previously entered a Stipulated Protective Order that covers precisely the type of information for which Defendant argues the government needs these releases. [D.E. 36] Defendant, therefore, is fully authorized and required to produce generalized datasets which happen to contain information about specific plaintiffs.

**United States' Position:**

*Plaintiff Records*

The United States has sought to work with Plaintiffs to collect individual plaintiff medical and service records, but have been unable to collect records for many plaintiffs, including many in

6

the Track 1 Disease pool, without the necessary identifying information, including date of birth and social security number, as well as necessary releases. Without dates of birth and social security number for individual plaintiffs, the United States is unable to retrieve an individual plaintiff's military service and VA records.

Furthermore, despite the Stipulated Order for Document Collection providing that Plaintiffs will complete and return to the Government any forms or releases necessary to collect information, Plaintiffs have not agreed to provide a HIPPA release needed for the United States to collect records from private health providers.

*Requests for Production*

As of the date of this Joint Statement, Plaintiffs have served the United States with five sets of document requests: (1) Plaintiffs' First Request for Production was served on September 28, 2023; (2) Plaintiffs' Second Request for Production was served on October 29, 2023; and (3) Plaintiffs Third Request for Production was served on November 3, 2023 (4) Plaintiffs' Fourth Request for Production was served on November 24, 2023; (5) Plaintiffs' Fifth Request for Production was served on November 28, 2023. Collectively, Plaintiffs have served the United States with 39 document requests seeking electronic and hardcopy information and documents, including historical documents, from multiple federal government agencies spanning several decades in time, beginning August 1, 1953.

The United States has made enormous efforts to respond in good faith and produce documents and information in a timely manner responsive to Plaintiffs' Requests. The United States served its written Responses and Objections to Plaintiffs' First Requests for Production on October 30, 2023 and began producing documents shortly thereafter. The United States will serve

Case 2:23-cv-00897-RM Document 60-8 Filed 11/28/23 Page 7 of 13

its written Responses and Objections to Plaintiffs' Second Requests for Production on November 29, 2023.

To date, the United States has produced numerous documents in response to Plaintiffs' Corrected First Request for Production and directed Plaintiffs to several public repositories of documents with information relevant to this litigation. As of Tuesday, November 28, the United States has produced 5,449 documents consisting of 43,160 pages to Plaintiffs. In addition to these productions, the United States has provided Plaintiffs with an additional 10 documents consisting of 2,196 pages of publicly available records and reports, in addition to 8,787 files accessible via the supplied URL's.

The United States has also produced several databases used by the Agency for Toxic Substances Disease Registry to perform its studies. In addition to the documents already produced, the United States continues its efforts to collect and produce responsive documents and information. These efforts include working with the relevant agencies to gain access to historic documents, some of which are contained in inactive and/or decommissioned historic legacy systems.

The parties are scheduled to meet and confer on December 4, 2023, regarding custodians and search terms for the collection and production on electronically stored information that would be responsive to Plaintiffs' document requests. The parties have exchanged lists of government custodians for negotiation. In particular, Plaintiffs proposed a list of over 60 custodians from ATSDR, some of whom do not appear to be current or former ATSDR employees.

*Requests for Depositions*

In addition to the five sets of document requests request for production of documents, the Plaintiffs sent three draft notices seeking 30(b)(6) depositions from three separate federal agencies:

8

the Agency for Toxic Substances and Disease Registry (ATSDR) on October 31, 2023; ( the United States Marine Corps (USMC) on October 27 2023; and the Department of Veterans Affairs (VA) also on October 27, 2023. Additionally, on November 20, 2023, Plaintiffs indicated an intent to take a 30(b)(6) deposition of the National Archives and Records Administration. Since receiving the notices, the United States has been coordinating with the agencies to identify appropriate agency witnesses and their availability. The United States has expressed concern about the topics identified in the 30(b)(6) notices and the appropriateness of the topics for the organizations identified. Nevertheless, the USMC, VA, and ATSDR have identified possible 30(b)(6) witnesses and coordinated with the witnesses on their availability for deposition. Depositions were scheduled for November 30 (USMC), December 5 (ATSDR), and December 6 (VA).

The parties held meet and confers about the aforementioned document requests and 30(b)(6) notices on November 1, 2023, and November 2, 2023, and the United States sent follow-up correspondence on November 9, 2023, and November 13, 2023, again raising concerns about the topics, requesting clarification, and offering to meet and confer. The United States followed-up again on November 17, 2023, providing dates for the requested 30(b)(6) depositions based on its understanding of the topics from prior discussions and proposed modified topics to reflect the United States' concerns about the original proposed topics. In response to the United States' November 17 letter proposing modified topics and dates for the 30(b)(6) depositions, on November 21, 2023, Plaintiffs confirmed dates for the modified 30(b)(6) depositions offered by the United States, and the United States confirmed the same on November 22, 2023. However, when the United States received the final 30(b)(6) notices of deposition on November 24, 2023, the notices included topics not previously identified and retained topics that the United States has explained were not within the knowledge of the agency identified. For that reason, the parties met and

9

conferred on November 28, 2023 and agreed to go forward with the depositions with the understanding that the witness would not be speaking on behalf of the agency with respect to topics not agreed to in advance.

**(5) Update on individual and global settlement efforts:**

As of November 27, 2023, the Department of Justice (DOJ) has determined that sixteen (16) cases in litigation meet the EO criteria for settlement through documentary verification. The case breakdown by injury includes: 5 Kidney Cancer, 4 Bladder Cancer, 3 non-Hodgkin's Lymphoma, 2 Kidney Disease, 1 Leukemia, 1 Multiple Myeloma. Of the 16 offers, two (2) offers were rejected by plaintiffs, six (6) offers have expired, and the other eight (8) offers remain pending.

Further, the Department of the Navy sent sixty-two (62) administrative claims to DOJ for settlement approval pursuant to the EO. Forty-four (44) are pending review with the DOJ. Of the remaining eighteen (18) administrative claims, DOJ determined that thirteen (13) claimants met the criteria of the EO in reliance on the information provided by the Navy, and offers were made for those claims. Of the 13 offers, four (4) offers were accepted, one (1) offer was rejected, and the other eight (8) claims remain pending.

For the four accepted offers, payments have been made in all four cases, totaling one million dollars. One case alleging Parkinson's Disease resulted in a $250,000 payment. One case of non-Hodgkin's Lymphoma resulted in a $300,000 settlement. Two cases of Leukemia resulted in payments of $300,000 and $150,000.

The parties have had several preliminary discussions regarding the possibility of a global resolution of claims that remain in the administrative and legal processes.  The Parties continue to

negotiate a resolution questionnaire and resolution roadmap. The parties most recently discussed these matters on November 17, 2023.

**(6) Any other issues that the parties wish to raise with the Court**

Plaintiffs' Leadership anticipates that by the time of the next Status Conference, Defendant will have formally rejected Plaintiffs' request that Defendant produce the latest, still-unpublished ATSDR study related to the water on Camp Lejeune. Defendant has indicated that the government intends to assert that the study is privileged. If this happens, Plaintiffs will likely file a motion to compel and might ask the Court for an expedited briefing schedule, given the importance to this litigation of any ATSDR study relating to Camp Lejeune.

DATED this 28th day of November 2023.

Respectfully submitted,

/s/ *J. Edward Bell, III*
J. Edward Bell, III (admitted *pro hac vice*)
Bell Legal Group, LLC
219 Ridge St.
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@belllegalgroup.com
*Lead Counsel for Plaintiffs*

/s/ *Zina Bash*
Zina Bash (admitted *pro hac vice*)
Keller Postman LLC
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: 956-345-9462
zina.bash@kellerpostman.com
*Co-Lead Counsel for Plaintiffs
and Government Liaison*

/s/ *Robin Greenwald*
Robin L. Greenwald (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Torts Litigation Section

/s/ *Adam Bain*
ADAM BAIN
Senior Trial Counsel, Torts Branch
Environmental Torts Litigation Section
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail:  adam.bain@usdoj.gov
Telephone: (202) 616-4209

LACRESHA A. JOHNSON
HAROON ANWAR

11

Telephone: 212-558-5802
rgreenwald@weitzlux.com
*Co-Lead Counsel for Plaintiffs*

/s/ Elizabeth Cabraser
Elizabeth Cabraser (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, CA 94111
Phone (415) 956-1000
ecabraser@lchb.com
*Co-Lead Counsel for Plaintiffs*

/s/ W. Michael Dowling
W. Michael Dowling (NC Bar No. 42790)
The Dowling Firm PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
mike@dowlingfirm.com
*Co-Lead Counsel for Plaintiffs*

/s/ James A. Roberts, III
James A. Roberts, III (N.C. Bar No.: 10495)
Lewis & Roberts, PLLC
3700 Glenwood Avenue, Suite 410
P. O. Box 17529
Raleigh, NC 27619-7529
Telephone: (919) 981-0191
Fax: (919) 981-0199
jar@lewis-roberts.com
*Co-Lead Counsel for Plaintiffs*

/s/ Mona Lisa Wallace
Mona Lisa Wallace (N.C. Bar No.: 009021)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel: 704-633-5244
*Co-Lead Counsel for Plaintiffs*

DANIEL C. EAGLES
NATHAN J. BU
Trial Attorneys, Torts Branch
Environmental Torts Litigation Section
*Counsel for Defendant United States of America*

12

Original Filed at Docket No. 30,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe | FILED UNDER SEAL |
| Plaintiff, | |
| v. | DEFENDANT Jane Doe  NOTICE OF FILING SEALED EXHIBITS TO MOTION TO TRANSFER VENUE |
| Jane Doe | |
| Defendant. | |

Defendant Jane Doe hereby files the attached proposed sealed exhibits to her motion to

transfer venue (DE 29):

1.      Complaint, *Doe v. Adm'rs of Tulane Educ. Fund*, No. 2:23-cv-01348 (E.D. La. Apr. 24, 2023) (Exhibit 3)

2.      Subpoena to Jane Doe *Doe v. Adm'rs of Tulane Educ. Fund*, No. 2:23-cv-01348 (E.D. La. Sept. 8, 2023) (Exhibit 4)

This the 15th day of December, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

# EXHIBIT 3

# FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

_____

JOHN DOE,[1]

      **Plaintiff,**

    **v.**

THE ADMINISTRATORS OF
THE TULANE EDUCATIONAL
FUND d/b/a TULANE UNIVERSITY,

      **Defendant.**

_____

Civil Action No. _____

JUDGE:

MAGISTRATE:

## COMPLAINT AND JURY DEMAND

Plaintiff John Doe[1] ("Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP and Marcelle Robertson Mestayer LLC, as and for his Complaint against Defendant, the Administrators of the Tulane Educational Fund d/b/a Tulane University ("the University" or "Tulane"), alleges as follows:

## THE NATURE OF THE ACTION

1.      This case arises out of the actions and omissions of Defendant Administrators of the Tulane Educational Fund, d/b/a Tulane University ("Tulane" or the "University"), and its agents and/or employees, in connection with biased and flawed disciplinary proceedings against Plaintiff, a former student at Tulane, and the sanctions Tulane wrongfully imposed on Plaintiff as a result of those biased and flawed proceedings.

---

[1] Plaintiff is filing a motion to proceed by pseudonym together with this pleading.

1

2.      In February 2022, Tulane students Sue Roe and Jane Doe[2] with whom Plaintiff had prior, consensual sexual relationships, filed false sexual misconduct reports against Plaintiff.

3.      Sue Roe and Jane Doe spent many hours together prior to filing their reports and each complainant had motive to fabricate allegations against Plaintiff, stemming from each woman's desire to have more than a casual relationship with Plaintiff. Jane Doe was described by a friend as seeking "revenge" against Plaintiff and changing her account of their sexual encounter after she learned that Plaintiff went home with another female student after his last encounter with Jane Doe.

4.      Jane Doe engaged in a false and defamatory smear campaign against Plaintiff, which resulted in threats to his physical safety, causing him to leave Tulane.

5.      Tulane, which had faced recent protests by female students for failing to adequately respond to male sexual predators on campus, and implemented policies and procedures grounded in the presumption that male students are toxic, aggressive, sexual predators, sprang to action to pursue an investigation against Plaintiff—even before he was informed that complaints had been filed against him.

6.      Tulane's conduct process against Plaintiff was flawed and biased from the start, as the Roe and Doe complaints were consolidated, in violation of Tulane's Code of Student Conduct, and assigned to a single investigator.

7.      Tulane also banned Plaintiff from campus and university-sponsored events and activities, without any basis for doing so and without following any policy or procedure then in effect.

---

[2] "Sue Roe" and "Jane Doe" are pseudonyms. Plaintiff will refer to other Tulane students involved in his disciplinary proceedings by their initials in order to protect their privacy and prevent the identification of Plaintiff, Sue Roe or Jane Doe. The persons identified by pseudonym and initial in this Complaint are known to Tulane.

2

8.      Tulane further promised Plaintiff a live hearing, as required by its Title IX policy and the federal Title IX regulations but then elected to investigate the Roe and Doe complaints under the process set forth in the Code of Student Conduct for complaints outside of Title IX, which employed a single investigator model. Under the Code, the investigator determined responsibility and sanctions.

9.      Tulane engaged in a sloppy, flawed, and biased investigation in which it selectively applied provisions of its Title IX Policy and the Title IX regulations in order to benefit the female complainants, while repeatedly denying Plaintiff rights afforded under the same.

10.      Tulane's investigator explained away inconsistencies, misrepresentations and omissions in the complainants' statements, fully crediting their accounts and the female witnesses' statements, while failing to credit Plaintiff's account *or any statements made by male witnesses*. This exemplified the investigator's failure to weigh the evidence, or properly apply the preponderance of the evidence standard required by Tulane's Code of Student Conduct.

11.      Improper, punitive inferences were drawn against Plaintiff, and the administrators involved in his student conduct process operated under a presumption of guilt, even though the objective evidence supported Plaintiff's assertions in his submissions to the investigator.

12.      By employing a gender-based presumption of Plaintiff's guilt and biased proceedings consistently favoring and affirming female students regardless of the objective evidence, Tulane engaged in anti-male discriminatory bias in violation of Title IX of the Education Amendments of 1972.

13.      Further, by violating its own policies and procedures, and depriving Plaintiff of a fair and impartial disciplinary process, Tulane breached its contract with Plaintiff, as stated in its

3

publications to Plaintiff, acted in bad faith and issued a disciplinary sanction of expulsion that was arbitrary and capricious.

14.     Accordingly, Plaintiff brings this action to obtain damages and injunctive relief for violations of Title IX and breach of contract.

## THE PARTIES

15.     Plaintiff is a natural person and a resident of South Carolina. During the events described herein, Plaintiff was enrolled as a full-time, tuition-paying undergraduate student at Tulane.

16.     Defendant The Administrators of the Tulane Educational Fund is a partially federally funded, non-profit educational corporation with a principal place of business at 6823 Saint Charles Avenue, New Orleans, Louisiana.

## JURISDICTION AND VENUE

17.     This Court has federal question, diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1367, because respectively: (i) the federal law claim arises under the constitution and statutes of the United States; (ii) Plaintiff is a citizen of South Carolina and Defendant is a citizen of Louisiana and the amount in controversy exceeds $75,000; and (iii) the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

18.     This Court has personal jurisdiction over Tulane on the ground that it is conducting business within the State of Louisiana.

19.     Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and the University's principal place of business is in this district.

4

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I. Plaintiff's Background

20. Plaintiff was accepted to, and enrolled at, Tulane in May 2018. He matriculated at Tulane in August 2018. Upon his expected graduation in May 2022, Plaintiff intended to pursue a Masters of Business Analytics at Tulane.

21. During his time at Tulane, Plaintiff was heavily involved in the campus community and engaged in social and philanthropic activities. Plaintiff was a member of a fraternity and led a national service organization for two years. Plaintiff received several honors and awards and was on track to graduate *cum laude*.

22. Plaintiff's plans were derailed on May 6, 2022 when, after subjecting Plaintiff to a flawed and gender-biased student conduct process, Tulane expelled Plaintiff and permanently marked his academic transcript.

### II. Tulane Vows to Stop Sexual Violence and Targets Male Students as Sexual Predators

23. Prior to Tulane's wrongful expulsion of Plaintiff, the University had engaged in a years-long campaign to end sexual violence on campus, which was implemented from the top down and touched all aspects of campus life, including Tulane's student conduct policies and practices.

24. Tulane's campaign, including Title IX educational programs and presentations, was grounded in the theory that most men possess stereotypically aggressive, harmful personality traits (*i.e.* "toxic masculinity") that cause them to rape women.

25. Tulane's Title IX educational programs and presentations did not include similar programming for women which concerned female stereotypes and their impact on relationships and sexual behaviors.

5

26. Tulane's administrators, including the President, the University's Title IX office and Office of Student Conduct, operated under the assumption that Tulane's "rape culture" needed to be eradicated.

27. "Rape culture" is a term coined in the 1970s that is generally understood to describe the concept that society blames female victims of sexual assault and normalizes male sexual violence.

28. On January 11, 2016, Tulane's President, Michael A. Fitts ("Fitts"), announced to the campus that Tulane had hired Meredith Smith ("Smith") as the University's first full time Title IX Coordinator, to "address gender issues and sexual assault."

29. Smith – a published author and speaker on topics related to sexual violence against college women (who, according to her social media pages, wrote a book chapter in 2017 titled, *Addressing and Preventing Violence Against Women on College Campuses*)–oversaw the University's Title IX programming and policies.

30. Smith was responsible for overseeing Tulane's prevention of, and response to, alleged sexual harassment and violence. Over time, her efforts earned her a promotion to the position of Assistant Provost for Title IX and Clery Compliance.

31. Tulane's "Title IX at Tulane" Facebook page described Smith as helping to "create a support centered reporting process" leading to "the creation of policies and procedures to protect victims in our community."[3]

32. In April 2016, it was announced that Tulane's Undergraduate Student Government tripled its budget for Tulane's "Sexual Aggression Peer Hotline" ("SAPHE"), which is defined as "dedicated to supporting survivors of sexual violence and addressing rape culture at Tulane"

---

[3] https://m.facebook.com/titleixtulane/photos/a.37554310947919/146482944388208/?type=3.

6

and a group "working to dismantle rape culture on campus through workshops, events, and outreach." https://campushealth.tulane.edu/departments/student-organizations/saphe.

33.     In Summer 2016, Tulane assigned "Asking For It: The Alarming Rise of Rape Culture – and What We Can Do About It" by author and activist Kate Harding, as the reading project for all incoming students. The theme for the reading project was "Power."

34.     The rape culture narrative, and Ms. Harding's book, emphasize that those who report sexual violence *must* be supported and believed.

35.     On August 7, 2016, Tulane held a webinar for faculty, students and alumni about how to discuss Harding's book and rape culture. The webinar discussed the perpetuation of rape culture, including the idea that education around sexual assault should be about "how women can avoid rape, ***not how men can not rape***" and that people often have trouble "othering" rapists, as if they could not be "our brothers." The webinar included a slide showing silhouettes of male figures. The webinar is still available on Tulane's Campus Health YouTube channel. https://www.youtube.com/watch?v=JQX2IN-nFmQ (last visited on March 2, 2023).

36.     The webinar further discussed that rape culture is perpetuated by the media because "when rape is reported in the media the urge to remain balanced creates biases against women." As part of a discussion about police and university bias against sexual assault victims, one speaker urged viewers to simply believe that rape allegations are true. *See id.*

37.     In 2016, Harding also visited the Tulane campus to speak about rape culture and her book.

38.     On September 19, 2016, Smith gave a presentation concerning the University's Title IX disciplinary process which focused on the fact that 1 in 5 women will be sexually assaulted by the time they finish college, and remarked, "This is why we don't ignore what's

7

going on our college campuses." Campus Health, Investigation 101, "Shifting the Paradigm," https://www.youtube.com/watch?v=_-Y8had-FDw.

39.     Smith's presentation did not mention that, in 2014, the authors of the study from which the 1 in 5 statistic originated published an article in *Time* magazine called "Setting the Record Straight on '1 in 5'" in which they stated "the 1-in-5 statistic is *not* a nationally representative estimate of the prevalence of sexual assault." https://time.com/3633903/campus-rape-1-in-5-sexual-assault-setting-record-straight/ (last visited on March 2, 2023).

40.     Smith's presentation described the University's Title IX process as sexual assault victims standing up and saying "you hurt me and you should be **held accountable** for that." "Shifting the Paradigm," at https://www.youtube.com/watch?v=_-Y8had-FDw.

41.     In September 2017, student advocates from SAPHE, and other Tulane representatives, attended the "A Call to Men" conference to learn about toxic masculinity. *See* https://taylor.tulane.edu/2017/09/call-men-next-generation-manhood/.

42.     In January 2018, Tulane published the results of a campus climate survey and announced a "Wave of Change" campaign to end sexual violence on Tulane's campus which President Fitts described as a "movement that will lead to real change" noting that "[f]ollowing years of work to acknowledge the problem of sexual violence in higher education" "[a]s a nation, we are in the midst of a cultural watershed."

43.     On January 30, 2018, President Fitts and Smith held a sexual assault town hall meeting to discuss the results of the campus climate survey. At the meeting, President Fitts said "[f]undamentally this is about ***changing rape culture***." (emphasis added) *See* Hullabaloo, "Students press administration over release of sexual assault town hall results," Jan. 31, 2018,

8

*available at* https://tulanehullabaloo.com/?s=Title+IX+and+intrinsic+bias (last visited on March 2, 2023).

44. In or around mid-2018, Tulane replaced Wave of Change with the "All In" campaign. As part of "All In," Tulane published a three-phase Sexual Violence Prevention Plan. The first point set forth in Phase I (Academic Year 2018-2019) was "focusing on ***men's*** education and engagement within the Greek system." *See* All In Initiatives, at https://allin.tulane.edu/prevention/prevention-plan (emphasis added).

45. Phase II (Academic Year 2019-2020) included a men's mentoring program. *Id.*

46. Tulane's Summer 2018 reading project for incoming first year students addressed sexual assault, and included a companion presentation during New Student Orientation that discussed the "intersection between sports culture, toxic masculinity and feminism." https://news.tulane.edu/news/reading-project-opens-dialogue-about-relationships-sexual-assault.

47. In a letter to the campus published on October 26, 2018, President Fitts' ***first point*** about responding to sexual violence on campus was that Tulane "greatly increased [its] funding and focus on sexual assault prevention, care and response efforts. This includes hiring additional staff, such as an assistant director for fraternity life to promote men's education and engagement within the Greek system." *See* "We Are Taking Action," *available at* https://president.tulane.edu/view-from-gibson/we-are-taking-action.

48. A 2018-2019 "Initiatives Update" report for All In, issued by the Division of Student Affairs and Campus Health, noted the success of "Masculinity, Health and Social Justice: Featuring the Men's Story Project," in which participants learned how "traditional notions of masculinity can be harmful to people of all genders" and "new activities to do with students to

generate conversation about masculinity and traditional gender roles." All-In 2018-2019 Report, *available at* https://allin.tulane.edu/2018-2019-Report.

49.     The 2018-2019 report further described an "Educational Initiative" called the MENtality Project pilot workshop series in which men were asked to change their definitions of masculinity, challenge traditional gender roles and intervene in "potentially harmful" situations involving sexual violence. All-In 2018-2019 Report, *available at* https://allin.tulane.edu/2018-2019-Report.

50.     According to the 2018-2019 report, the objectives of the MENtality program included:

    a.     reducing male attitudes that support physical and sexual violence;

    b.     increasing men's understanding of how gender and other factors influence power; and

    c.     increasing men's awareness about the existence of power in gender roles and how this is reflected in relationships, sex and hook-ups. *Id.*

51.     The MENtality program further aimed "to eliminate sexual violence through peer discussion and peer influence beyond the program" and "expand its reach over the coming years. *Id.*

52.     In February 2019, Tulane's All-In newsletter to the campus contained an article which discussed toxic masculinity and that challenging "harmful aspects of traditional masculinity can play a role in reducing rates of sexual and gender violence" because "toxic masculinity is linked to the perpetration of violence against women in heterosexual relationships." *See* https://allin.tulane.edu/newsletter-february-2019 (last visited on March 1, 2023).

53.     In September 2019, Tulane's All-In newsletter announced that SAPHE had become part of the Campus Health Department.

54. According to Tulane's Director of Public Health Initiatives and Assessment, the MENtality project was "focused on prevention methods as a sexual violence initiative." An October 2019 article in Tulane's student newspaper stated that the MENtality project was the "first step in the creation of a new wave of male-centered programming" including Tulane hiring a "Mens Engagement Coordinator" to help with research and outreach. *See* "MENtality Project Promotes Healthy Masculinity," Hullabaloo, October 2, 2019, *available at* https://tulanehullabaloo.com/49498/news/mentality-project-promotes-healthy-masculinity/.

55. According to the MENtality Project web page, the program was initially designed to target male students who belonged to fraternities and to expand from there as an ongoing campaign with no end date. FAQs, *available at* https://campushealth.tulane.edu/departments/well/focus-areas/sexual-violence-prevention/mentality-project.

56. Noted on the Mentality Project website under "Healthy Masculinity 101" is that "men perpetrate the overwhelming majority of violent crimes." *Available at* https://campushealth.tulane.edu/departments/well/focus-areas/sexual-violence-prevention/mentality-project.

57. Under a heading called "The Man Box," Tulane's MENtality web page states:

> The man box refers to a box full of definitions of masculinity that can box men in and limit what they can and cannot do or feel. The way we are socialized to think about gender is that there is a right way and a wrong way to be a male or a female. No one is to blame –we've all been taught this. The box can negatively impact boys and men by forcing them to always be on guard and ready to "prove" their masculinity and manhood. The box also teaches boys that one way to have power is to taunt others for being feminine. These messages lay the foundation for patriarchy and sexism, as they create associations between femininity and inferiority.

*See* https://campushealth.tulane.edu/departments/well/focus-areas/sexual-violence-prevention/mentality-project.

58. According to Tulane, the "Man Box" includes "No emotions (except anger)," "Dominating," "Powerful," "Women are objects," and "Women are property." "Manbox Rules" include "Always be in control." *Id.*

59. Tulane's "The Well For Health Promotion" website listed "men's engagement" under Sexual Violence Prevention. *See* https://campushealth.tulane.edu/departments/well.

60. On or about October 12, 2020, the MENtality Project held a webinar with Julia Broussard ("Broussard") who was in charge of Title IX programming, working under Smith. The topic of discussion was described as how the Title IX office's work "intersects with healthy masculinity and violence prevention." *See* https://www.youtube.com/watch?v=RmgkOdYTImY (last visited on March 2, 2023).

61. During the webinar, Broussard described herself as raised by feminist parents and a person who viewed gender equality issues *through a feminist lens*.

62. Before working at Tulane, Broussard worked primarily with women and children at a domestic violence/rape crisis center.

63. Per Broussard, men who embrace more "stereotypical" gender roles are more likely to commit acts of intimate partner violence and sexual violence.

64. Broussard also stated that *being a white, cisgender man "carries privilege"* and that men should speak up *when* their *male friends say things to "promote rape culture."*

65. At the time she made these statements, Broussard was responsible for developing Title IX training materials and communications for the Tulane community.

66. In July 2021, Smith left Tulane.

67.     Broussard replaced Smith as Tulane's Interim Assistant Provost for Title IX and held that position until July 1, 2022.

68.     Broussard worked with the Office of Student Conduct and oversaw the investigation of the fabricated sexual assault allegations against Plaintiff.

69.     On February 15, 2021, Dr. Chris Zacharda ("Zacharda"), Director of Student Conduct, was interviewed for the MENtality project to discuss "his experiences with masculinity and how it has played a role in his personal and professional life." https://www.youtube.com/watch?v=yBechLk9s6E. Zacharda made the following statements during the interview:

a.  "This probably isn't anything earth shattering, but, the kinds of cases that male students are involved or students that identify as male or cis male, they tend to be cases related to violence, aggression, anger – those are the cases that rise to the serious level of the office of student conduct for myself or my two investigators." *Id.*

b.  "One of the things that we have to do is understand the context. Not just what behavior happened, but there's very often why a behavior happened. Understanding that context, especially in the realm of masculinity, may help the educational process *or in my case help the investigator figure out why did the student make the choices they did, that in this case he did*…was that because they were influenced by a hypermasculine or toxic masculinity culture that they've learned from family members or older brothers." *Id.* (emphasis added).

c.  "Making sure that when I am working with male students or male-identified students, I can understand the greater context that may have included issues of masculinity, issues of culture, as they are influencing the decisions that they are making so that the student and I can create a better path forward. In order for us to figure out what's next, we have to figure out how we got here and I think that where we really start to look at and explore how have issues of masculinity have impacted those choices." *Id.*

70.     According to Zacharda's statements, Tulane's Office of Student Conduct and its investigators have a gender-biased view about male students who are involved in the disciplinary

13

process. In addition, the investigators may consider stereotypes about masculinity when investigating or deciding student conduct cases.

71. On January 20, 2022, Zacharda attended a Clery Act training which discussed "Myths and Facts About Acquaintance Sexual Assault" and focused on male perpetrators. A handout from the training includes the following statements:

a. ***"MYTH: Women lie about being raped to protect their reputations, or to get revenge on a guy."***

b. "MYTH: Once a male is aroused or excited, he has to have sex. He will not be able to stop himself."

   "FACT: There is a difference between not wanting to stop and not being physically able; people are physically capable of controlling their sexual actions."

c. ***"FACT: Most rapes are carefully planned by the rapist. A rapist will rape again and again, usually in the same town (or within the same college or university) and in the same way."***

72. On March 30, 2022, members of Tulane's Title IX office participated in a webinar "Using Technology to Engage Boys and Men In Sexual Assault Prevention," which focused on targeted education for male students. The webinar focused on men as perpetrators of sexual assault. https://tulane.app.box.com/v/titleixtraining/file/965995624197.

## III.   <u>Students Protest Tulane's Perceived Failure to Expel Male Student "Rapists"</u>

73. Tulane's Summer 2021 reading project for sophomores was to read *Know My Name* by Chanel Miller, a memoir about the author's personal experience with sexual assault.

74. In Fall 2021, Tulane's undergraduate population was 7,780. 61% of those undergraduate students were women and 39% of those undergraduate students were men.

14

75.     In September 2021, there was a backlash against Tulane administrators for "glossing over campus rape culture" via the assignment of *Know My Name* without a trigger warning.

76.     An opinion piece in the student newspaper about the reading project criticized Tulane for failing to take an aggressive stance against those accused of sexual misconduct in order to hold them accountable, referencing the impact on female students. "Tulane's Summer Reading Choice Glosses Over Campus Rape Culture," Tulane Hullabaloo, at https://tulanehullabaloo.com/57222/views/opinion-tulanes-summer-reading-choice-glosses-over-campus-rape-culture/.

77.     In October 2021, Tulane's student newspaper reported on "@boysbeware.tulane," an Instagram account in which female and nonbinary students could anonymously post "stories about sexual abuse" and "warn one another about assaulters." "@boysebeware.tulane Illuminates Deep Rooted Sexual Abuse Culture," Tulane Hullabaloo, https://tulanehullabaloo.com/57720/views/opinion-boysbeware-tulane-illuminates-deep-rooted-sexual-abuse-culture/ (last visited on March 2, 2023).

78.     The article dismissed concerns about false accusations as "built upon patriarchal principles" and criticized Tulane as failing to protect female students from sexual assault. *Id.*

79.     The article justified the creation of the Instagram account as necessary in the wake of the 2020 Title IX Regulations, which "prioritize the rights of a sexual abuser over those of their victim and are disgustingly disrespectful to victims of sexual abuse." *Id.*

80.     The article further noted "Without a complete overhaul of the way that administrators both listen to survivors and punish assailants, the frequency with which women experience sexual assault will never change." *Id.*

15

81. The "@boysbeware.tulane" Instagram account was deleted in November 2021. "Expel Rapists: Survivors Testify to Sexual Violence At Tulane," Tulane Hullabaloo, https://tulanehullabaloo.com/58213/news/sexual-violence/ (last visited on March 2, 2023).

82. Immediately thereafter, a group called "Vigilante Justice" published an unverified list of men who were alleged sexual assault assailants. The list was subsequently taken down. *Id.*

83. Shortly thereafter, more than 500 students, predominantly female, staged an "Expel Rapists" protest. The group planned to put together a list of demands to hold "perpetrators and the university accountable." *Id.*

84. Broussard responded to the protest, stating that she "hopes survivors will be able to find other outlets to share their stories that are healing and empowering after the loss of @boysbeware.tulane" and she hopes "this presents an opportunity for … the offices involved in Tulane's response to sexual misconduct to receive feedback from students about those policies, processes, and resources." *Id.*

85. On December 7, 2021, Tulane administrators held an "hours-long" listening session with sexual assault survivors. Among the topics addressed was Tulane's failure to "hold the repeatedly accused accountable." "USG Sexual Assault Meeting Posed Difficult Questions For Administrators," Tulane Hullabaloo, https://tulanehullabaloo.com/58474/news/usg-sexual-assault-meeting-posed-difficult-questions-for-administrators/ (last visited on March 2, 2023).

86. On February 1, 2022, Tulane held a town hall to discuss the University's efforts to combat sexual aggression and violence on campus. Broussard, was a panelist at the event. "Amidst Climate Survey, USG Sexual Violence Committee Holds Town Hall, Tulane Hullabaloo," https://tulanehullabaloo.com/59060/news/amidst-climate-survey-usg-sexual-violence-committee-holds-town-hall/ (last visited on March 2, 2023).

87.     President Fitts spoke at the Town Hall, stating that survivors are "heard, ***believed*** and valued." *Id.* (emphasis added). Fitts referenced Tulane's campus wide sexual misconduct climate survey that was released on January 28, 2022, noting the survey would allow Tulane to "know better and do better." *Id.*

88.     These events, and the resulting pressure on Tulane to aggressively discipline male students accused of sexual misconduct immediately preceded the filing of false sexual misconduct allegations against Plaintiff.

## IV.     The Office for Civil Rights Pressures Universities to Aggressively Pursue Sexual Misconduct Complaints

89.     On April 4, 2011, the Department of Education's Office for Civil Rights ("OCR") issued a guidance letter to colleges and universities in receipt of federal funding, which became widely known as the "April 2011 Dear Colleague Letter" (the "DCL").

90.     The DCL advised recipients that sexual violence constitutes sexual harassment within the meaning of Title IX of the Education Amendments of 1972 and its regulations and directed schools to "take immediate action to eliminate the harassment, prevent its recurrence and address its effects." DCL at 4.

91.     Despite its purported purpose as a mere guidance letter, the Department of Education treated the DCL as a binding regulation and pressured colleges and universities to aggressively pursue investigations of sexual assault on campus.

92.     The DCL, while not completely ignoring due process concerns, suggested that schools should focus more on victim advocacy and "minimize the burden on the complainant."

93.     On April 29, 2014, OCR issued additional directives to colleges and universities in the form of a guidance document titled *Questions and Answers on Title IX and Sexual Violence* (the "2014 Q&A"), which was aimed at addressing campus sexual misconduct policies and

17

advised schools to adopt a "trauma-informed" approach, advising, for example, that hearings should be "conducted in a manner that does not inflict additional trauma on the complainant." 2014 Q&A, at 31, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

94.     In addition, the 2014 Q&A continued OCR's quest to hamper students' ability to defend themselves by reducing or eliminating the ability to expose credibility flaws in the allegations made against them. *Id.* at 25-31.

95.     In the same month that the OCR issued its April 2014 Q&A on Title IX, the White House issued a report titled *Not Alone*, which included a warning that if the OCR finds a school in violation of Title IX, the "school risks losing federal funds." *See* White House Task Force to Protect Students from Sexual Assault, *Not Alone* (Apr. 2014), *available at* https://obamawhitehouse.archives.gov/sites/default/files/docs/report_0.pdf.   The report further advised that the Department of Justice ("DOJ") shared authority with OCR for enforcing Title IX, and could therefore initiate investigation, compliance review, and/or litigation against schools suspected of violating Title IX.

96.     In 2014, then-Assistant Secretary of Education Catherine Lhamon visited Tulane for a "campus convening." https://allin.tulane.edu/newsletter-september-2019.

97.     In June 2014, Lhamon testified before the United States Senate, warning that if the OCR could not secure voluntary compliance with the DCL from a college or university, it could elect to initiate an administrative action to terminate federal funds or refer the case to the Department of Justice.  *See* Testimony of Catherine E. Lhamon, Assistant Secretary Office For Civil   Rights,   U.S.   Department   Of   Education   (June   26,   2014), https://www2.ed.gov/about/offices/list/ocr/correspondence/testimony/20140626-sexual-violence.pdf.

98. The DCL and OCR put considerable pressure on universities to treat those accused of sexual misconduct—especially men—with a presumption of guilt. The Chronicle of Higher Education noted that "Colleges face increasing pressure from survivors and the federal government to improve the campus climate." *Presumed Guilty: College men accused of rape say the scales are tipped against them,* Chronicle of Higher Education, September 1, 2014.

## V. The OCR Rescinds the Dear Colleague Letter and Adopts Enhanced Due Process Protections

99. On September 22, 2017, the OCR formally rescinded the DCL and the 2014 Q&A, and put in place interim guidance (the "2017 Q&A") while the OCR reviewed and revised its practices regarding the adjudication of complaints of sexual misconduct on college campuses. *See* Dep't of Ed., Dear Colleague Letter (Sept. 22, 2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf. *See also* Dep't of Ed., *Q&A on Campus Sexual Misconduct* (Sept. 2017), https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf.

100. In rescinding the 2011 DCL, the OCR noted that it had placed "improper pressure upon universities to adopt procedures that do not afford fundamental fairness," and "lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and *are in no way required by Title IX law or regulation*." Dep't of Ed., Dear Colleague Letter (Sept. 22, 2017), available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf. (citations omitted) (emphasis added).

101. As former Secretary of Education Betsy Devos noted, the rescission of the DCL was largely motivated by "[t]he truth . . . that the system established by the prior administration has failed too many students," specifically because "[t]he notion that a school must diminish due

process rights to better serve the 'victim' only creates more victims." Press Release, Secretary DeVos Prepared Remarks on Title IX Enforcement (Sept. 7, 2017).

104. On November 16, 2018, the Department of Education released proposed Title IX regulations, subject to "notice-and-comment rulemaking." *Secretary DeVos: Proposed Title IX Rule Provides Clarity for Schools, Support for Survivors, and Due Process Rights for All* (Nov. 16, 2018, 9:41 a.m.) https://content.govdelivery.com/accounts/USED/bulletins/21bcf5b.

105. In the interest of being seen as protecting, supporting and believing female students, Tulane *openly opposed and resisted* the new guidance and proposed changes to the Title IX regulations that were intended to restore due process to campus proceedings and remedy the pervasive problem of universities railroading accused men.

106. Despite the different direction that OCR was taking to provide equal procedural protections to accuser and accused, Tulane continued to utilize victim-centered practices and policies, holding on, as a matter of ideological commitment, to what is a gender-biased enforcement of Title IX.

107. Not only are Tulane's practices victim-centered, they are premised on the theory that men rape women and that the majority of male students exhibit masculine traits that are toxic and harmful to women and others.

108. In February 2019, Tulane's magazine, "The Crescent," published the article "Restoring Power to the Accused: How Title IX Policy Changes May Affect Tulane Students." https://tulanemagazine.com/restoring-power-to-the-accused-how-title-ix-policy-changes-may-effect-tulane-students/ (last visited on March 2, 2023).

109. In the article, Smith spoke out against heightened due process protections for the accused, such as the right to cross examine complainants, noting "I absolutely believe this will

20

have a negative impact on reporting … because reporting students don't want to be cross-examined by attorneys…. We are trying to gather information, not put students on trial." *Id.* Smith's focus on reporting, *i.e.* survivors, completely ignored the severity of the ramifications of a lack of due processed for the accused.

110.    On May 6, 2020, the United States Department of Education released Title IX Regulations, which carried the force and effect of law as of August 14, 2020. "US Department of Education     Releases     Final     Title     IX     Rule," *available     at* https://www2.ed.gov/about/offices/list/ocr/newsroom.html.

111.    The Title IX Regulations provided respondents specific procedural rights, including without limitation: (i) a presumption of innocence until a finding of responsibility is made at the conclusion of the process; (ii) the right to review evidence directly related to the allegations with at least ten (10) days to review and respond; (iii) the right to review an investigative report that fairly summarizes relevant evidence and a minimum of ten (10) days in which to respond to the investigative report; (iv) an assurance that Title IX personnel are free from conflicts of interest or bias; and (v) the right to a live hearing in which each party's advisor may ask the other party and any witnesses all relevant questions, including those challenging credibility, with such cross-examination to be conducted directly, orally, and in real time. (*See* "Summary of Major Provisions of the Department of Education's Title IX Final Rule," available at https://www2.ed.gov/about/offices/list/ocr/docs/titleix-summary.pdf) .

112.    In October 2020, Smith gave a presentation called "Shift Your Paradigm" at the "Action Collaborative on Preventing Sexual Harassment in Higher Education: 2020 Summit." https://vimeo.com/showcase/7711364/video/471561929.    Smith's    presentation    concerned "Centering Survivors in Reporting Policies." *Id.*

21

113. During the presentation, Smith discussed the new Title IX regulations and Tulane's efforts to counter their "deleterious effects." Smith described the regulations as harmful to survivors. *Id.*

114. Smith further noted that Title IX, "the law addressing systemic gender quality in education" was "diluted and reduced" by the new regulations such that it has "become clear that progress is no longer going to be externally motivated by the government. It's going to have to come from us." Smith noted that administrators should choose to "put what's right before we ask the question of will we get in trouble." *Id.*

115. Despite being obligated to create a disciplinary system that affords accused students substantial due process rights in cases alleging sexual misconduct as defined by the Title IX regulations, Tulane chose to do "what's right" by splitting the process so that certain sexual assault complaints were adjudicated pursuant to the Code of Student Conduct and others were adjudicated pursuant to the "Federal Regulation Sexual Harassment Policy." *See* https://allin.tulane.edu/content/federal-title-ix-regulations-and-updates.

116. Charging the Office of Student Conduct with the investigation and adjudication of sexual assault complaints was a clear effort by Tulane to ensure that male students accused of sexual misconduct were held "accountable" in a process that afforded few real due process protections to the accused, including being denied the right to a live hearing and the right to cross examine the accuser.

117. In fact, Tulane's conduct process for students accused of sexual assault under the Code of Student Conduct follows a single investigator model, in which the investigator conducts the investigation, determines responsibility and determines the sanctions. 2021-2022 Code of

Student Conduct, Pt. VI.E. This model *is prohibited* by the Title IX Regulations. 34 CFR § 106.45(b)(7).

118.    Students and organizations accused of minor policy violations are afforded a hearing where they can put on live testimony. 2021-2022 Code of Student Conduct, Pt. VI.C-D.

119.    By splitting the process, Tulane knowingly and deliberately deprives students, such as Plaintiff, procedural rights and protections that are already in place and mandated for similar cases, for the apparent sole purpose of making it easier for Tulane to skip from accusation to guilt and sanctions.

120.    Tulane could have chosen to create a process with heightened due process protections for the adjudication of all sexual assault complaints. Instead, upon information and belief, Tulane pushed the majority of complaints through the student conduct process rather than the Title IX process.

121.    For example, a student newspaper article reported that from July 1, 2020 to June 30, 2021, thirty sexual misconduct cases underwent student conduct "hearings" while only nine were "formally resolved." *See* https://tulanehullabaloo.com/58213/news/sexual-violence/.

122.    Data collected by the Title IX Office for July 1, 2021 to June 30, 2022 showed that of the 331 cases reported, about half occurred off campus and less than one third occurred on campus. Broussard found it "interesting … that we see more of these taking place off campus rather than on campus." "Shifting the Paradigm shows sexual misconduct data," Tulane Hullabaloo     https://tulanehullabaloo.com/61524/news/shifting-the-paradigm-shows-sexual-misconduct-data/ (last visited on March 2, 2023).

VI.    **Tulane's "Survivor"-Centered Student Conduct Process and Policy**

123.    In January 2020, the National Association of Student Personnel Administrators

("NASPA"), which has 15,000 members representing more than 1500 educational institutions, issued a study, *"Expanding the Frame: Institutional Responses to Students Accused of Sexual Misconduct."* (available at https://www.naspa.org/report/expanding-the-frame-institutional-responses-to-students-accused-of-sexual-misconduct). The study, which was intended to refute "the common narrative that institutions are not concerned with responding parties' rights in sexual misconduct cases," essentially found the opposite—that *widespread institutional bias against the accused* starts at the very inception of a complaint, prior to any investigation or adjudication. *Id.*

124.    In a process governed by the enforcement of Title IX gender equality, and in which the overwhelming majority of accused students are male, the survey reported that only 5% of schools have even one full-time employee to assist accused students; 85% have no budget dedicated specifically to providing services for accused students; and for accused students "no established best practices currently exist, and most institutions are only just developing these programs, identifying what specific services are needed, and exploring what is equitable or equal." *Id.*

125.    While alleged victims have entire departments of advocates funded by the institution dedicated to their needs, only 13% of colleges and universities have a staff member reach out "directly to responding parties about support services available." The study suggests that accused students are left to defend themselves "due to perceived pushback from members of the campus community who disagree with providing respondent services." *Id.*

126.    Upon information and belief, Tulane was a member of NASPA at the time the study was conducted. Tulane's staff, including the investigator in Plaintiff's conduct process, have taken Title IX trainings through NASPA.

127.    Like the majority of institutions in the NASPA study, Tulane has an entire

24

department of advocates dedicated to assisting alleged victims, and a twenty-four-hour hotline dedicated to "supporting survivors of sexual violence and addressing rape culture at Tulane." *See* Sexual Aggression Peer Hotline and Education (SAPHE), https://campushealth.tulane.edu/departments/student-organizations/saphe (last visited on March 1, 2023); Case Management and Victim Support Services ("CMVSS"), https://cmvss.tulane.edu/.

128.    While  the "Respondent Support" section of Tulane's website directs those accused of sexual misconduct to the CMVSS website, there is no link to resources for the accused on the CMVSS site. "Respondent Support," https://allin.tulane.edu/respondent-support (last visited on March 1, 2023). In contrast, the CMVSS website contains a "Victim Support" section with numerous links. *See* https://cmvss.tulane.edu/. The "Respondent Support" section is directed at friends of the accused as opposed to offering support directly to the accused.

129.    Tulane provides "Information on Sexual Misconduct" to students which states, "Reporting an assault is a deeply personal choice that ***only a survivor can make***, but the Office of Student Conduct is one way of regaining some control, ***holding the perpetrator accountable*** for his or her actions, and taking a stand on your own and the community's behalf." *See* https://conduct.tulane.edu/students/information-victims (last visited on March 1, 2023) (emphasis added). This presumes that the accused is guilty.

130.    While Tulane refers to "his or her" when describing the "perpetrator," in practice, Tulane administrators operated under the assumption that men rape women and that their sexual aggression is caused by toxic masculinity.

131.    According to a Fall 2021 Title IX training for appeal panel members, the purpose of the Office of Student Conduct is to "cultivate personal growth and social responsibility by guiding students to understand the impact of their behavior and choices."

https://tulane.app.box.com/v/titleixtraining/file/940604213768. This is yet more evidence that

Tulane's student conduct process begins with a presumption of guilt—including sexual assault

complaints handled by the Office of Student Conduct.

132.    Tulane provides FAQs to students, which offer insight about how students who

face the risk of suspension or expulsion should engage with the conduct process:

> The University's conduct system is designed to educate students and ensure the safety of the entire community. In preparation for your hearing, we suggest that you reflect on this incident keeping these goals in mind. In our experience, students who can demonstrate that they have engaged in this reflection and have learned from the incident often fare better in the conduct process.

https://conduct.tulane.edu/students/frequently-asked-questions-students.

133.    This presumes that the accused are guilty and pose a threat to community safety

and, if they do not seek to be educated, or admit their guilt, the conduct process will be difficult

for them. It further states that students facing severe sanctions will be afforded a hearing.

134.    In the FAQ's, Tulane advises that the parties tasked with determining sanctions

consider whether the respondent has "demonstrated that you have learned from the incident or

*accepted responsibility* for your behavior." *Id.* (emphasis added).

135.    This encourages and incentivizes innocent respondents  to *take responsibility for*

*acts that they did not commit* in the hope of receiving a lesser sanction.

136.    Tulane's Fall 2021 training for appellate board members further states that a

decisionmaker can consider a student's "attitude" and "ability to demonstrate learning" when

determining sanctions. https://tulane.app.box.com/v/titleixtraining/file/940604213768.

137.    Tulane's survivor-centered approach, which presumes the guilt of the accused, is

reflected in an April 1, 2020, "Title IX at Tulane" Facebook Watch presentation that Zacharda

26

participated in with Smith, in which they discussed the Office of Student Conduct's approach to sexual misconduct complaints.[4]

138.   Zacharda, who determined the path for the conduct process against Plaintiff, is responsible for initiating the student conduct process in consultation with the Assistant Provost for Title IX compliance when a report is received that a student has been sexually assaulted. *Id.*

139.   Zacharda's comments during the presentation revealed his bias and inherent unfairness in the student conduct process, in which the accused are presumed guilty and in need of education and behavioral changes about their presumed misconduct. *Id.*

140.   Zacharda noted that, throughout the conduct process, the complainant is in control of the steps that are taken, including whether the complaint is resolved through alternative dispute resolution ("ADR") or goes to a formal conduct process. *Id.*

141.   Within the ADR context, Zacharda said that he and the complainant together draft "talking points" to educate the respondent and Zacharda and the respondent create an action plan for the respondent to remedy the behavior. *Id.*

142.   Zacharda simulated potential conversations with the respondent, "Maybe the respondent was like 'I had no idea I was engaging in this behavior'" or "Maybe this isn't who [the respondent] normally [is], but this is who you are or at least were under the influence of drugs or alcohol." Zacharda exclusively articulates scenarios wherein the respondent is culpable for the alleged incidents in question. Not once throughout the duration of the interview does Zacharda acknowledge that false or inaccurate complaints may be filed. *Id.*

143.   Zacharda further discussed the role of impact statements and their significance to the investigator when determining sanctions after a finding of responsibility. Zacharda noted

---

[4] https://m.facebook.com/titleixtulane/videos/its-wednesday-spotlight-and-were-having-a-chat-with-our-director-of-student-cond/219059192512870/?__so__=permalink&__rv__=related_videos&locale=zh_CN

27

that the complainant has the opportunity to tell the investigator how the case should be resolved and how the respondent should be held accountable. Smith had to remind Zacharda that respondents can also submit impact statements. *Id.*

144.    When discussing sanctions, Zacharda said the sanctions need to "match what is going to have the ***most*** impact for the individual being accused, or the respondent." *Id.* (emphasis added). He made no mention of any consideration of the impact the sanction would have on the respondent's educational opportunities or life. *Id.*

145.    Tulane's FAQs about the student conduct process reflect Tulane's nonchalant attitude about the ramifications that a finding of responsibility can have on a student's life, stating "Take a moment to breathe! Having a disciplinary record does not necessarily mean that you won't get into a graduate program of your choice."

146.    With respect to getting into graduate schools, the website states "most schools review an applicant's conduct record for serious incidents or patterns of behavior." It continues "If you have been involved in a serious incident or have multiple conduct offenses… [i]t is likely to help your application if you can demonstrate that you learned from the experience and took steps to address any underlying problems that caused you to engage in the conduct at issue." https://conduct.tulane.edu/students/frequently-asked-questions-students.

## VII.    Plaintiff's Interactions With Sue Roe

147.    Plaintiff and Sue Roe met in September of 2019.

148.    The two engaged in a casual sexual relationship from September 2019 to December 2019.

149.    Towards the end of the Fall 2019 semester, Sue Roe wanted a more committed relationship with Plaintiff. John heard from his friends M.G. and M.V. that Sue Roe had

28

expressed an interest in officially dating Plaintiff.

150.    Sue Roe invited Plaintiff on a walk, during which Plaintiff told Sue Roe he was not interested in dating. Sue Roe told Plaintiff that she was similarly okay with remaining uncommitted and casual, in contrast to what Sue Roe had told Plaintiff's friends.

151.    Plaintiff and Sue Roe had a few sexual encounters following that conversation, but eventually stopped seeing each other. Plaintiff was seeing other women during that time and seldom reached out to Sue Roe.

152.    In January 2020, Plaintiff and Sue Roe returned to campus and did not interact much. Plaintiff felt tension between him and Sue Roe whenever he said "hello" to her. Shortly thereafter, Plaintiff and Sue Roe each attended the same party, during which Sue Roe began to cry.

153.    In the following two semesters, Plaintiff and Sue Roe had very few interactions. However, Sue Roe made her negative feelings toward Plaintiff known to others.

154.    When Plaintiff's name was brought up in Sue Roe's presence, Sue Roe went out of her way to explicitly say she "hated" Plaintiff.

155.    In Spring 2021, Plaintiff and Sue Roe had a consensual sexual encounter. After that encounter, they did not interact further until August 2021.

156.    On August 22, 2021, Plaintiff and Sue Roe were downtown on Bourbon St. celebrating a mutual friend's birthday. Sue Roe came up to Plaintiff at the bar and asked him to buy her a drink, which she would later pay him back for through Venmo. Plaintiff and Sue Roe ended up spending time together at the party and leaving the bar together.

157.    On the ride back to campus, Plaintiff and Sue Roe talked about their past relationship. Sue Roe apologized for being harsh towards Plaintiff following the conclusion of

their relationship. Sue Roe further expressed the complicated emotions she was feeling. She explained that that evening, she had learned that a guy she was in a sexual relationship with, B.H., had started "dating" a different woman.

158. When their Lyft ride approached Sue Roe's home, Plaintiff asked if he should have the car drop Sue Roe off, but Sue Roe invited Plaintiff into her home. The two went upstairs and engaged in consensual sex.

159. Soon after, the two were talking in bed when Plaintiff made a comment to the effect of "we may regret that later" which, upon information and belief, Sue Roe interpreted to mean Plaintiff regretted having sex with her that evening. What Plaintiff meant by the comment was that they may regret complicating their friendship. However, Sue Roe sat up and began to cry.

160. Plaintiff immediately apologized for his comment, explaining that what he said was not meant to be interpreted as anything against Sue Roe. Plaintiff felt that the complicated emotions Sue Roe mentioned earlier had resurfaced and suggested discussing the matter in the morning. Plaintiff then went to sleep.

161. While Plaintiff was asleep, Sue Roe was apparently still upset over Plaintiff's comments and proceeded to wake up a housemate, D.E., who asked Plaintiff to leave. As Plaintiff was asleep, he was slow to respond to D.E.'s entrance into Sue Roe's room or comprehend why she was asking him to leave.

162. According to D.E., Plaintiff "wasn't moving at first" when D.E. asked Plaintiff to leave. Plaintiff eventually got out of Sue Roe's bed and went home, texting Sue Roe that he left and to lock the door and wishing Roe a "good night."

## VIII.    Plaintiff's Interactions With Jane Doe

163.    On or about September 2021, Plaintiff and Jane Doe "matched" on Tinder. They did not communicate each other or meet in person until they ran into each other at concert on November 20, 2021.

164.    At the concert, Plaintiff and Jane Doe spoke briefly and exchanged phone numbers. Thereafter, they did not see or communicate with each other for more than two months.

165.    On January 27, 2022, Plaintiff and Jane Doe accidentally ran into each other at a bar near Tulane's campus. After talking at the bar for some time, they left together and went to Plaintiff's house, where they fell asleep but did not engage in sexual intercourse.

166.    In the morning, they kissed for several minutes before Jane Doe stated "You're not going to be able to just fuck me like these other Tulane girls," to which Plaintiff responded "That's perfectly fine with me." Soon thereafter, Plaintiff and Jane Doe said goodbye, and Jane Doe left.

167.    On January 28, 2022, Plaintiff invited Jane Doe to his fraternity's upcoming date party and Jane Doe accepted.

168.    After asking Jane Doe to the date party, Plaintiff hung out with his friends M.V. and K.R. Upon learning that Plaintiff invited Jane Doe to be his date, K.R. warned Plaintiff to be careful because of information she had heard about Jane Doe.

169.    K.R. had previously had a sexual relationship with H.W., who had recently been banned from campus for violating COVID-19 guidelines for a birthday party he threw. K.R. explained that H.W. had just ended his relationship with Jane Doe and started a relationship with K.R. right before being reported to the University for violating COVID-19 guidelines. H.W. and others involved in the situation had deduced that Jane Doe was the one who reported him,

31

presumably out of spite for breaking up with her.

170.     On January 29, 2022, Plaintiff and Jane Doe attended Plaintiff's fraternity date party. Plaintiff picked Jane Doe up in the late morning and brought her back to his house. After approximately an hour of hanging out with Plaintiff's friends, Plaintiff and Jane Doe went to Plaintiff's fraternity house, where he introduced Jane Doe as his date. Along with others attending the party, Plaintiff and Jane Doe boarded busses that transported the entire group to the Race Course.

171.     While walking through the crowded field level of the Race Course, Plaintiff and Jane Doe passed Sue Roe.

172.     Soon after, Plaintiff had a brief conversation with a member of another fraternity, "K.S." who exchanged hellos with Jane Doe. When K.S. left, Jane Doe told Plaintiff that K.S. had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. Plaintiff expressed sympathy for what Jane Doe had allegedly experienced.

173.     Soon after sharing her story, Jane Doe asked Plaintiff "Is there anyone you're avoiding here?" Plaintiff didn't think much of that question at the time and responded "Yeah, the girl I probably would've asked had I not asked you."

174.     He was referring to a fellow student, D.K. Jane Doe and Plaintiff then found seats in the press box and talked about a range of topics, including family and friends. Plaintiff mentioned that his birthday was the following Wednesday and Jane Doe asked to take multiple photos with Plaintiff before they left the party.

175.     In total, the two spent four hours at the racetrack. Plaintiff and Jane Doe each consumed approximately two alcoholic drinks during those four hours, and Plaintiff also had one sip of a friend's flask that contained alcohol.

176. Toward the end of the day, at approximately 5:30pm, Plaintiff and Jane Doe decided to take an Uber back from the racetrack. Plaintiff asked Jane Doe if she would like him to add a stop for her so that she could return home. Jane Doe declined, indicating that she preferred to return to Plaintiff's house together.

177. Once they were at Plaintiff's house, they attempted to have sexual intercourse, but did not because Plaintiff was unable to get an erection. After trying to have sex, Jane Doe said it was alright because she was too drunk anyway. Plaintiff responded that it wasn't because he was drunk and that he actually was pretty sober.

178. He found it odd that Jane Doe said she was drunk since he had been with her all day and they only had approximately two drinks each over the course of five hours. However, he chalked it up to her trying to be kind about his inability to perform sexually. At that point, they decided simply to take a nap and slept for almost two hours.

179. When Plaintiff awoke, Jane Doe was already awake. They began kissing and engaged in consensual sexual intercourse, during which Jane Doe was an active and enthusiastic participant. Afterward, the two got dressed and Plaintiff walked Jane Doe back to her house at approximately 9:00pm.

180. On the walk home, she talked about a silent disco party that her house hosted the night before, and they engaged in other friendly conversation. When they got to Jane Doe's house, she gave Plaintiff a tour of the house and alluded to his returning again in the near future. Jane Doe gave Plaintiff a kiss goodbye, and Plaintiff walked back to his house.

181. In the early afternoon of February 2, 2022, Jane Doe texted Plaintiff to wish him a happy birthday and the two exchanged friendly text messages for much of the afternoon. That evening, Plaintiff went to two bars, with friends, to celebrate his birthday. At approximately

33

9:00pm, Plaintiff and his friends left the second bar and went to a friend's house to prepare for a scheduled fraternity event. Plaintiff and Jane Doe continued to exchange text messages, including a text from Jane Doe saying "we can celebrate later."

182.    Near the end of the fraternity event, at approximately 12:00 a.m., Plaintiff texted Jane Doe to see if she wanted to hang out. She responded "yes." Plaintiff took a Lyft to Jane Doe's house, intending to pick up Jane Doe and walk back to his house.

183.    When Plaintiff arrived at Jane Doe's house, she came outside and they walked together to his house. During their walk, they discussed the social events they each attended.

184.    At Plaintiff's house, they went to his bedroom and engaged in consensual sexual intercourse. Plaintiff wore a condom during the encounter and both went to sleep almost immediately after.

185.    Plaintiff and Jane Doe awoke the next morning to the sound of Jane Doe's alarm, which she had set on her phone. After engaging in several minutes of mutual kissing, Jane Doe said she had to go to work. Plaintiff offered to walk her home, an offer she initially rejected, but Plaintiff said it was the right thing to do. Jane Doe smiled at this sentiment.

186.    As they dressed, Plaintiff made a joking comment to the effect of "I'm happy I did better this time" in reference to his inability to engage in sexual intercourse during their previous encounter. Again, Jane Doe smiled in response. As they walked to Jane Doe's house, they talked in an easy and friendly manner.

187.    Jane Doe spoke about attending Montessori as a child when they passed a local Montessori school. At Jane Doe's house, they kissed goodbye and Jane Doe again wished Plaintiff a happy birthday. Plaintiff returned home.

188.    The following night, February 3rd, Plaintiff went to a bar with a few friends,

where he ran into a woman, "A.H", on whom he had a crush. He offered to buy her a drink and they started talking in the middle of the bar, a conversation lasting more than an hour. Plaintiff and A.H then left the bar together, returned to Plaintiff's house, and engaged in consensual sexual activity.

189. Upon information and belief, Jane Doe saw Plaintiff talking to A.H. at the bar and heard that he and A.H. went home together.

## IX. Jane Doe's Smear Campaign Against Plaintiff

190. On February 4th, a day after seeing Plaintiff with A.H., Jane Doe reported to one of Plaintiff's friends, "T.R.," that Plaintiff engaged in nonconsensual sexual activity with her. Upon information and belief, this was Jane Doe's first instance of alleging such misconduct.

191. By February 6th, false rumors had begun spreading around school alleging that Plaintiff had sexually assaulted a female student.

192. On February 7th, Plaintiff's friend "T.G." told Plaintiff that people were talking about him in a negative way and that a fellow student, "A.S.," one of Sue Roe's best friends, had posted on her Instagram story a message to the effect of "Being friends with a sexual assaulter means you are part of the problem" with an indication that she was referring to Plaintiff.

193. Plaintiff did not know what he was accused of doing and received no concrete information concerning the specific claims circulating about him.

194. Plaintiff's friend, M.K., then showed him an Instagram post from Jane Doe that stated "Being drunk is not an excuse for Sexual Assault," which was posted at the same time and seemingly in conjunction with A.S.'s post.

195. That night, fellow classmate, "S.B.," drove Plaintiff home from class. During the drive, she warned Plaintiff that Jane Doe was "crazy."

196.    Plaintiff then heard from another fellow student, "A.T.," that she was told by three different people that Plaintiff had assaulted a Tulane student. One of the students who shared this information with A.T. was abroad in Spain and had heard it from friends in a different Tulane fraternity.

197.    Plaintiff was shocked that this false information had made its way to students studying abroad, even prior to Plaintiff himself hearing about it. Plaintiff was unaware of the specifics of the false allegations and did not even know to whom the allegations pertained.

198.    On the evening of February 8th, Plaintiff received a text message from Jane Doe, falsely claiming Plaintiff engaged in sexually inappropriate behavior:

> After we had consensual sex on your birthday, I told you that I was tired and wanted to sleep. At first you said that was fine but then 10 minutes later you asked me to have sex again to which I responded no, that I was tired and didn't want to. You continued to ask me to have sex with you multiple times, each time with me saying no and asking you to go to sleep. I woke up to the sound of you jerking off and the feeling of you taking the blanket off my naked sleeping body and touching and squeezing it as you pleased. Even though I was paralyzed with fear and half asleep, I mumbled that I was cold and tried to pull the blanket back onto me. You then pulled the blanket off of me again and continued to pleasure yourself and touch me. You took advantage of my body in my most vulnerable state, and had no regard for how violating your actions were to me. You are a predator and a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim. It blows my mind that you were able to manipulate people around you into staying friends with you but this time you will be held fully accountable or the trauma that you actions caused. You will be known for the disgusting coward you truly are. You need serious help, and honestly I don't care if you ever get it, but I do know that you will never have the opportunity to violate someone ever again.

199.    The text message shocked and scared Plaintiff. He recalled their two sexual encounters, which had occurred in the previous several days and knew he had not committed any of the acts that Jane Doe was claiming.

200.    The following day, Plaintiff met with multiple friends to discuss the rapidly spreading false claims about him. Two of his friends called Plaintiff's parents to tell them it was

36

not safe for him to be on the Tulane campus and that someone should come get him and bring him home to his parents' house.

201.     That evening, the president of Plaintiff's fraternity informed Plaintiff that Jane Doe had called him.

202.     That day, Plaintiff learned from two of his male friends that Jane Doe had approached a group of Plaintiff's female friends to share her false allegations of assault. Jane Doe specifically asked one of his friends, T.R., to help "spread this news like wildfire."

203.     A point of confusion for Plaintiff was that Jane Doe's text referenced a prior sexual experience with another woman. Plaintiff assumed, without knowing, that the woman to whom Jane Doe referred was Sue Roe.

204.     After last having consensual sex with Sue Roe, Plaintiff assumed he was asked to leave because of the comments he made that upset Sue Roe. When Plaintiff later reached out to Sue Roe by text message, Sue Roe responded and claimed she had D.E. ask Plaintiff to leave because he woke her up to try to get her to have sex again.

205.     Plaintiff knew that Sue Roe's text to him described events that simply never occurred, but he felt this may have been Sue Roe's way of excusing her active participation in the sexual encounter and pacifying her own feelings of guilt and regret. Plaintiff did not resist her characterization so as to preserve Sue Roe's feelings.

206.     In hindsight, Jane Doe's statement that Plaintiff was a repeat offender, coupled with Jane Doe's odd comment at the race track about whether there was anyone there that Plaintiff was avoiding, made Plaintiff suspect that Sue Roe and Jane Doe had been communicating all along.

207.     As early as February 7th, several of Plaintiff's friends stopped responding to his

texts and calls.

208.     On February 8th, hours after receiving Jane Doe's text message, Plaintiff learned that a friend had seen the text message Jane Doe sent Plaintiff. In fact, Plaintiff's friend had been provided with a screenshot of the text from yet another friend.

209.     It became clear that Jane Doe's false narrative was spreading rapidly among fellow Tulane Students.

210.     Upon information and belief, the screenshot of Jane Doe's text message to Plaintiff included the contact name she had inputted for Plaintiff's number. The contact name was "rapist," and therefore anyone who received the screenshot saw Plaintiff referred to as a rapist by Jane Doe.

211.     On February 10, 2022, Plaintiff was kicked out of his fraternity group chat. The fraternity president then sent a message referencing the claims against Plaintiff to the group chat, which Plaintiff learned from a friend who had taken a screenshot of the message. Plaintiff called the fraternity president, asking him to change or delete the defamatory message, which he refused to do.

212.     Plaintiff's mother flew to Louisiana that same day, February 10th, to support her son and help him gather his items so he could return home to a safe environment.

213.     Due to the mental anguish and heightened anxiety Plaintiff was experiencing as a result of the false accusations, Plaintiff withdrew from the University for the semester, as he had already completed enough credits the prior semester to graduate.

38

X.      **Tulane Initiates A Student Conduct Process Against Plaintiff**

    A.      **Tulane Commences A Biased, Consolidated Investigation Without Plaintiff's Knowledge**

214.    On February 16, 2022, Plaintiff received a "Notice of Procedural Review Meeting" from Zacharda, which identified a single case number and notified Plaintiff that "on or around September, 2021 and or around Sunday, February 6, 2022 you engaged in non-consensual sexual contact with two different female students at off-campus locations."

215.    Plaintiff was not provided with copies of the complaints, any reports or evidence prior to the Procedural Review Meeting.

216.    The Notice further stated "Based on the received information, you have been charged with Sexual Assault."

217.    Plaintiff was "charged" prior to speaking with anyone about the substance of the complaints or being asked to respond to same.

218.    The use of the word "charged" likened the conduct process to a criminal process even though Tulane applies a "preponderance of the evidence" standard in its student conduct cases. *See* 2021-2022 Code of Student Conduct, at p. 14.

219.    Per the Notice, Zacharda scheduled the Procedural Review Meeting for February 17, 2022 via Zoom. The purpose of the Procedural Review Meeting was "not an opportunity for [Plaintiff] to present [his] case" but only "a time to ask questions about the student conduct process and [his] rights."

220.    The Notice stated that a purpose of the Procedural Review Meeting was to notify Plaintiff of the "selected conduct staff…and determine if you have reason to believe they cannot be impartial."

221.    Unbeknownst to Plaintiff, *prior to* his Procedural Review Meeting:

<div align="center">39</div>

a. On February 11, 2022, Zacharda conducted a *joint* Procedural Review with Jane Doe and Sue Roe;

b. Without Plaintiff's knowledge or giving him the opportunity to object, Zacharda—in consultation with Broussard—combined the investigation of Jane Doe's and Sue Roe's *unrelated* complaints, concerning alleged incidents that occurred months apart, so that they would be investigated by one person;

c. On February 11, 2022, Zacharda assigned Jacqueline Barber ("Barber") as the sole investigator of the two, separate complaints;

d. Zacharda permitted Barber to commence her investigation before Plaintiff had an opportunity to object to her appointment as the investigator in his case;

e. Zacharda permitted Barber interview Jane Doe and Sue Roe, which took place consecutively on February 15, 2022, *before* Plaintiff was notified that an investigation was taking place or Barber's identity was disclosed to him.

222. Per Tulane's training materials from Fall 2021, the investigator takes statements from the complainant and respondent *after* the Procedural Review meeting takes place.

https://tulane.app.box.com/v/titleixtraining/file/940604213768.

223. The Title IX Regulations permit the consolidation of formal complaints only where the "allegations arise out of the *same* set of facts or circumstances." 34 CFR § 105.45(b)(4) (emphasis added).

224. OCR defines the "same set of facts or circumstances" as when "multiple complainants' allegations are so intertwined that their allegations *directly relate to all the parties*." 85 Fed. Reg. 30436 (May 19, 2020) (emphasis added).

225. The Roe and Doe complaints did not meet the requirements for consolidation under the Title IX Regulations.

226. Tulane's 2021-2022 Code of Student Conduct states that evidence of a party's "character or reputation with respect to other sexual activity *is not relevant* and *will not be* considered as evidence." Tulane Code of Conduct 2021-2022, at p. 13 (emphasis added).

227. The Code of Student Conduct further states that "a party's prior or subsequent

40

sexual activity is typically not relevant and will only be considered as evidence under limited circumstances." *Id.*

228.    One such circumstance is in the case of "pattern evidence" defined as "[e]vidence of an occurrence or occurrences of sexual or other relevant behavior so distinctive or so closely resembling a version of the facts so as to tend to prove a material fact." *Id.*

229.    The Roe and Doe complaints did not meet the definition of pattern evidence under the Code of Student Conduct and Zacharda should not have directed a joint investigation.

230.    In the April 1, 2020 Facebook Watch program he participated in with Smith, Zacharda exhibited a fundamental misunderstanding of pattern evidence, describing a pattern as "several same or similar reports" or a "history of cases" against a respondent. This does not meet the definition set forth in the Code of Student Conduct.

231.    Though Zacharda had already consolidated the Roe and Doe complaints and appointed Barber as investigator, he misrepresented to Plaintiff via email "[a]fter our meeting today, I ultimately determine if the case is going forward or not. If it is, then you receive a notice of investigation and charges with the names of all parties involved."

232.    Similarly, during Plaintiff's Procedural Review Meeting, Zacharda told Plaintiff that the case "*will be* assigned" to Barber. At no point did Zacharda disclose that Plaintiff was already under investigation.

233.    On February 18, 2022, Zacharda sent a Notice of Investigation to Plaintiff that stated that Tulane "will be conducting" an investigation.

234.    The Notice of Investigation also stated that Barber was "assigned to this matter" and "if you have a concern that the investigator is potentially biased or has a conflict of interest, you must raise this issue with me prior to your scheduled interview."

41

235.    Zacharda misrepresented the state of the conduct process to Plaintiff, and deprived Plaintiff the opportunity to object to Barber as an investigator, because—unbeknownst to Plaintiff at the time—Zacharda had already determined that the case should go forward on a *single track*, with a single investigator and allowed Barber to interview the complainants *prior to* Zacharda's meeting with Plaintiff.

236.    Zacharda also prejudiced the entire disciplinary process against Plaintiff by combining the Sue Roe and Jane Doe complaints into a single investigation, handled by a single investigator as opposed to directing the separate investigation of each complaint.

237.    Zacharda violated the Title IX Regulations, Tulane's Code of Student Conduct and Tulane's Title IX Policy by appointing a single investigator to the Roe and Doe complaints.

238.    On March 1, 2022, Plaintiff's advisor notified Zacharda that (i) the consolidation of the Roe and Doe complaints violated the Title IX Regulations and the Code of Student Conduct; and (ii) requested that Barber be replaced by two independent investigators to separately investigate each complaint.

239.    On March 7, 2022, Zacharda denied Plaintiff's request.

240.    Zacharda stated that the Title IX regulations did not apply to Plaintiff's case, yet cited Tulane's Title IX Policy as the basis for his decision to consolidate the Roe and Doe complaints as "arising out of the same facts or circumstances."

241.    Zacharda cherrypicked various Code provisions as opposed to following one, uniform process. Upon information and belief, he did this to benefit the female complainants over Plaintiff as a male respondent. Zacharda's bias is evidenced by his prior public statements, reflecting his presumption that male students accused of serious conduct violations are guilty, and the recent pressure that Tulane administrators were under as a result of female student protests to

<div align="center">42</div>

expel "rapists" and repeat offenders.

242.    Zacharda's decision significantly increased the chances of an incorrect and biased outcome against Plaintiff because one complaint could be used to bolster the allegations of the other, even if there was no evidence to support the allegations or any finding of responsibility with respect thereto.

243.    The decision to conduct one investigation into the Roe and Doe complaints also biased the investigator, Barber, because she was provided with the details of two unrelated complaints against Plaintiff at the start of her investigation.

### B. The False Allegations Against Plaintiff

244.    During the course of the conduct process against him, Plaintiff learned that Jane Doe reported her false allegations to the SAPHE hotline on February 6, 2022, three days after Plaintiff had sex with someone other than Jane Doe.

245.    On February 6, 2022, CMVSS filed a report which referred to Jane Doe as a "victim" of sexual assault. Three days after Plaintiff had had sex with someone else, Jane Doe falsely claimed that she had woken up to a man "beating off on [her]."

246.    On February 11, 2022, Jane Doe and Sue Roe simultaneously submitted Title IX /Sexual Misconduct reports naming Plaintiff as the respondent.

247.    Sue Roe claimed that Plaintiff vaginally penetrated her with his fingers and masturbated as she got dressed.

248.    Jane Doe claimed that Plaintiff masturbated while touching her buttocks with his hands and penis.

249.    Both claims were unequivocally false.

### C. Plaintiff Is Promised and Then Denied the Due Process Protections of Title IX

43

250.	Tulane's 2021-2022 Code of Student Conduct states "This Code of Student Conduct is meant to be in compliance with local, state and federal regulations, including 2020 Title IX requirements." *Id.* at p. 5.

251.	The Notice of Procedural Review Meeting that Zacharda sent to Plaintiff stated that "[f]or allegations of ***Title IX violations***, you are permitted to have an advisor of your choice, including an attorney." (emphasis added).

252.	Prior to the Procedural Review Meeting, Plaintiff submitted an advisor form to the Office of Student Conduct which named an attorney as his advisor.

253.	The Notice of Procedural Review also provided Plaintiff with a link to "Investigation Procedural Protections" which included information about the ***right to a live hearing in Title IX cases*** and the right to appeal "***Title IX related allegations***" on the grounds of investigator or decisionmaker bias.

254.	During the Procedural Review Meeting, Zacharda told Plaintiff that Barber, was a "trained ***Title IX*** investigator."

255.	On February 18, 2022, Zacharda sent Plaintiff a "Notice of Investigation and Charges," which identified Sue Roe and Jane Doe.

256.	The Notice of Investigation stated that Tulane would be conducting a "prompt, thorough and impartial investigation" of the allegations against Plaintiff "pursuant to the procedures detailed in the Student Code of Conduct" noting "Tulane's grievance process is compliant with applicable federal and state law, including the 2020 Title IX Regulations."

257.	The Notice did not specify that Tulane was applying the "Major Matters" provision of the Code of Student Conduct rather than the Title IX Policy.

258.	The grievance process for sexual assault complaints under Tulane's Code of

Student Conduct for "Major Matters" followed a single investigator model that is prohibited in cases that fall under the Title IX Regulations, in which Barber was responsible for i) investigating Roe and Doe complaints; ii) determining responsibility with respect thereto; *and* iii) deciding any sanctions.

259. The Notice of Investigation "charged" Plaintiff with two counts of "Sexual Assault" and one count of "Lewd/Obscene Conduct."

260. The Notice did not break out each "charge" by complainant or provide details about the specific conduct that was the basis for each charge.

261. The Notice stated that "[t]he burden is on Tulane to gather evidence, investigate the allegations, summarize all relevant evidence in a final investigation report, and *hold a hearing at which a final determination is made* subject to appeal." (emphasis added). This statement summarized the procedures applicable under the Title IX Regulations and Tulane's Title IX Policy.

262. After receiving the Notice of Procedural Review Meeting and Notice of Investigation, it was Plaintiff's understanding that his grievance process would follow the procedures set forth in the Title IX Regulations, that Tulane's Title IX Policy applied and, consequently, he would be afforded a live hearing with the right to cross examine Sue Roe and Jane Doe.

263. On Monday, March 7, 2022, and only in response to objections raised by Plaintiff's advisor, Zacharda informed Plaintiff by email that "the 2020 Title IX regulations do not apply. Universities have been allowed to create a separate investigation and adjudication process for off campus matters, like this one."

264. However, even though Zacharda's March 7 email stated that the Title IX

45

Regulations did not apply, he stated "if you want to come on campus to participate in person in the investigation *or hearing* process, we can help make arrangements for you to do so." (emphasis added).

265. Plaintiff was not given the opportunity to object to Tulane's decision not to follow the Title IX Policy, even though said Policy gave him the right to do so.

266. Tulane's Title IX Policy clearly states that the Title IX Coordinator is required to conduct a gatekeeping evaluation of reports of "potential sexual discrimination, harassment or violence" and determine whether such reports should be resolved in accordance with the Title IX Policy or "dismissed." 2021-2022 Code of Student Conduct, Appendix A, Pt. VII.

267. If the Title IX Coordinator dismisses a complaint from the Title IX process, both complainant *and respondent* have a right to appeal the decision, within one week of receiving notice of the decision. Pt. VIII.

268. Plaintiff was not notified that Broussard was conducting a gatekeeping evaluation of Sue Roe's and Jane Doe's complaints pursuant to the Title IX Policy, nor did he receive notice of any dismissal or right to appeal Broussard's decision.

## D. Tulane Imposes "Campus Ban" In Violation Of Its Policy

269. Tulane's Code of Student Conduct contains a list of "Responses and Consequences," including "Emergency Measures." *Id.* at p. 31-32. Per the Code, "Emergency measures are temporary actions taken by the University to ensure equal access to its educational programs and activities to foster a more stable and safer environment during the process of reporting, investigation, and/ or adjudication." *Id.* at 31.

270. According to the Code of Student Conduct, in cases in which sexual assault is alleged, the Title IX Coordinator is responsible for imposing "reasonable and appropriate

46

emergency measures when necessary to protect the safety of the parties or witnesses involved."

*Id.* The Title IX Coordinator imposes these emergency measures in accordance with the

"Emergency Removal" procedure set forth in the Title IX policy.

271.    Per Tulane's Title IX Policy:

An Emergency Removal requires that the University undertake an individualized safety and risk analysis and then determine if a removal is warranted due to an ***immediate threat*** to the physical health or safety of any student or other individual arising from the allegations of Sexual Harassment. This analysis will be conducted by the University's Behavioral Intervention Team with a final determination regarding removal made by a deputy Title IX Coordinator. The Respondent will be notified in writing as to the determination and reasoning for the removal decision. *Id.* at p. 51 (emphasis added).

272.    Tulane's Behavioral Intervention Team is housed within CMVSS, which primarily

provides Title IX complainants with assistance. The Team's purpose is to track "'red flags' over

time, detecting patterns, trends and disturbances in individual or group behavior." *See*

https://cmvss.tulane.edu/behavioral-intervention.

273.    On February 18, 2022, before Plaintiff responded to the allegations against him,

or submitted any evidence with respect thereto, Zacharda sent Plaintiff a letter which imposed a

"campus ban" on Plaintiff. The campus ban barred Plaintiff from being on campus and from

participating in "University-sponsored or recognized events or activities."

274.    The letter also stated that Plaintiff could "submit information that you believe

would lead the University to amend the terms of this ***interim suspension*** letter, you may submit

that information in writing…within 24 hours of this letter date." (emphasis added).

275.    In essence, only two days after he learned of the Roe and Doe complaints and on

the same day he received the Notice of Investigation against him, Zacharda gave Plaintiff 24 hours

to make a case as to why he should not be banned from campus.

276.    Tulane violated the Code of Student Conduct when imposing the campus ban

47

because it did not follow the procedures set forth in the Code for cases alleging sexual misconduct. *Id.* at pp. 31, 51.

277.    Zacharda's letter made no reference to Broussard's evaluation under the Title IX Policy, contained no reasoning for the decision to impose the campus ban, nor informed Plaintiff of his right to appeal the decision. *Id.* at p. 51.

278.    The campus ban was excessive and improper because there was no evidence that Plaintiff posed an "immediate threat" to any student.

279.    The Behavioral Intervention Unit would have had no "red flags" to track with respect to Plaintiff because he had no disciplinary record and no prior Title IX reports.

280.    The only "pattern" at issue was Zacharda's biased, mischaracterization of the unsubstantiated, jointly reported allegations of Sue Roe and Jane Doe which he improperly combined into a single investigation.

281.    Plaintiff had already withdrawn from Tulane at the time the campus ban was imposed, but, as a result of the ban, he was prohibited from participating in various clubs and charitable organizations with which he had been involved for the duration of his time at Tulane. He also lost a job that he had on campus.

282.    To the extent that Zacharda determined that a campus ban was necessary, the decision was, upon information and belief, biased towards Plaintiff as a male student because Zacharda has expressed the view that male students engage in violent or aggressive behavior due to the influences of toxic masculinity and Zacharda was trained that it's a "myth" that women lie about being raped.

283.    To the extent Broussard was involved in the decision to impose the campus ban as required by the Code of Student Conduct, Broussard had previously expressed bias towards male

48

students, in that she views gender equity through a "feminist lens," believes that men who embrace "stereotypical" gender roles are more likely to commit acts of sexual violence and, in Fall 2021, made statements that were supportive of the female students who accused male students of sexual misconduct on the @boysbeware Tulane account.

### E. Tulane Conducts A Flawed And Biased Investigation

284. The Code of Student Conduct requires that "major matters" be handled by a "trained and impartial" investigator. 2021-2022 Code of Student Conduct, Pt. VI. E.

285. Barber, a graduate of Tulane's School of Law and practicing attorney, lacked the necessary experience and training to act as an investigator in Plaintiff's case.

286. According to her LinkedIn profile, Barber worked for Tulane as a "Student Conduct Investigator" for only seven months prior to her improper joint investigation of the sexual assault allegations against Plaintiff.

287. Prior to working at Tulane, Barber was a tax attorney.

288. Barber's litigation history in Westlaw characterizes her work as primarily involving contract law.

289. Prior to investigating Plaintiff's case, Barber took a Title IX investigator training which discussed sexual assault using gender stereotypes. NASPA Track 3 Title IX Investigator Materials, Fall 2021, at https://tulane.app.box.com/v/titleixtraining/file/878489229467 (last visited on March 3, 2023).

290. Barber's training materials included the faulty statistic that 1 in 5 college women experience sexual assault. *Id.* at p. 14, "Prevalence Data".

291. Barber's training further stated that "A study showed that 63.3 percent of men at one university who self-reported acts qualifying as rape or attempted rape admitted to committing

49

repeat rapes." Barber Training, at p. 14, "Prevalence Data." This suggests that most male college students are serial rapists.

292. Barber's training also states that "Seven out of ten rapes are committed to someone known to the victim; for most women victimized by attempted or completed rape, the perpetrator was a boyfriend [or] ex-boyfriend." Barber Training, at p. 14, "Prevalence Data." This focuses on women as victims and men as perpetrators.

293. In discussing credibility determinations, Barber's training notes "Pay attention to inconsistencies but note that in cases of trauma inconsistencies can occur. Inconsistencies may not determine credibility or lack thereof." This gives investigators permission to ignore inconsistencies in statements made by accusers at the expense of the accused.

294. Immediately prior to investigating the allegations against Plaintiff, Barber took a training on the "Neurobiology of Sexual Assault" which addressed the "brain-based experiences, behaviors, and memory characteristics" of victims of sexual assault. https://tulane.app.box.com/v/titleixtraining/file/837212297347.

295. Barber took no similar training concerning the behaviors or memory characteristics of those accused of sexual assault, but did take an "accountability" training which, upon information and belief, concerned respondents in student conduct proceedings. https://tulane.app.box.com/v/titleixtraining/file/837212297347.

### 1. Barber Presumed Plaintiff's Guilt

296. Tulane's Code of Student Conduct states in relation to "Major Matters:"

> *The mere fact that a situation is being referred for investigation does not indicate any determination of any transgression of any kind. The investigation process is exactly that-a neutral and fair investigation with no presumptions of wrongdoing.*

*Id.*, at Pt. VI. A., at p. 8 (alteration in original).

50

297.    The manner in which Barber conducted the investigation interviews demonstrates that she was biased in favor of Jane Doe and Sue Roe and presumed that Plaintiff engaged in misconduct.

### a.    The Complainant Interviews

298.    Before Plaintiff was even aware that Roe and Doe had made complaints against him, and before a formal investigation of their allegations was commenced, Barber interviewed Roe and Doe.

299.    Barber interviewed Jane Doe and Sue Roe consecutively, with an hour in between interviews, leaving open the possibility that the two would speak about the substance of Jane Doe's interview.

300.    Barber interviewed Jane Doe first, on February 16, 2022.

301.    Prior to beginning the recording of Doe's interview, Barber and Doe had an off the record conversation about Plaintiff.

302.    Barber's questioning of Doe was far from impartial, as she often agreed with Jane Doe that Plaintiff had engaged in various behaviors:

   a.    When Jane Doe (who had not accused Plaintiff of "rape") said that "raping while drunk is a crime" Barber responded, "this line of questioning has nothing to do with excusing behavior. I've seen situations where it really does make a difference [in] explaining **what happened**." (emphasis added).

   b.    "You described the next morning in a way that makes me think that you believe he knows **what he did** and that it was wrong." (emphasis added). Barber followed up with an example of "one way" Plaintiff "might have known" he did something wrong.

   c.    Barber told Doe the specific types of witnesses she would be interested in speaking with.

   d.    Barber asked Doe why she thought Plaintiff's conduct fell within the definition of sexual assault under the Code of Student Conduct.

51

e.  Barber told Doe that it was "great" that, unlike Sue Roe, what happened to Jane Doe was not ignored by their peers.

f.  Barber asked Jane Doe, "[i]s there anything else that I might not know to ask?"

g.  When Doe made unsupported allegations against Plaintiff, and said that her narrative needs to be shared to "protect" other, unnamed people, Barber responded "Yeah, that makes sense."

h.  After Doe said that she wanted her allegations to be "attached to [Plaintiff's] name" so he would not be able to go on to "his nice little comfy job that he had all lined up by mommy and daddy," Barber asked "Is there anything else that gives you the impression that this is a long-term pattern of behavior that I haven't heard about?"

i.  Barber asked Jane Doe for her suggestions on how to further investigate Plaintiff.

303.  Barber also failed to ask follow up questions about important facts relayed by Jane Doe:

a.  According to Jane Doe, she was friends with Sue Roe's former roommate, "N.B." Barber did not ask questions about how long Doe had been friends with N.B. or whether Jane Doe had socialized or interacted with Roe prior to the time in which they filed reports against Plaintiff.

b.  Jane Doe asserted that she "heard from random people that, apparently, [Plaintiff] knew that it was wrong what he did." Barber did not ask Jane Doe to identify who made such statements.

c.  Jane Doe disclosed that she deleted her text messages with Plaintiff, except one in which she accused him of sexual misconduct. Barber asked no questions about this, simply taking Doe's word that they were deleted because she did not want to look at them.

d.  Jane Doe said she realized that Plaintiff had done something wrong after talking with her friend about Sue Roe. Barber asked no questions about what was discussed.

e.  Jane Doe said she spent hours with Roe and her friend "unpacking" what had happened. Barber did not ask her to specify what was discussed during that time or how long Jane Doe and Sue Roe spent together discussing their cases prior to making complaints to Tulane.

304. The questions that were—and were not—asked of Jane Doe evidence Barber's bias from the start of the conduct process and her investigation of the allegations under a presumption of guilt and belief that Jane Doe was telling the truth.

305. Barber interviewed Sue Roe On February 16, 2022, after she interviewed Jane Doe.

306. Barber's questioning of Roe was far from impartial. Barber posed the following "question" to Roe, planting the idea that Plaintiff was in a "blackout" during their sexual encounter, when Barber had not yet spoken to Plaintiff:

> Can you tell me about the evening before you guys went back to your place? Specifically, I'm interested in *his* level of intoxication…I don't ask because being drunk excuses sexual assault, but it does give context and sometimes explains bizarre behavior. And also people's ability to recall things after the fact, sometimes respondents say, "Well, I don't remember that," but if I know that they were blackout drunk then that makes a little bit of a difference. Did you all have drinks? (emphasis added)

307. Barber's "question" also presumed that Plaintiff had engaged in some form of misconduct.

308. Barber failed to ask follow up questions when Sue Roe reported that Jane Doe came over to her house to discuss their allegations against Plaintiff. Barber did not ask when or for how long Jane Doe was there, or what was discussed.

309. Barber asked Sue Roe and Jane Doe how they were feeling and what had been the most difficult part of their experiences. She did not ask Plaintiff similar questions.

310. Prior to receiving any evidence or statements from Plaintiff, Barber told Plaintiff that Sue Roe and Jane Doe were "done with" the interviewing process.

### b. **The Witness Interviews**

311. Barber had off the record conversations with witnesses before she started recording their interviews. For example, when she spoke with witness "N.B.," a mutual friend of Sue Roe and Jane Doe, Barber and N.B. spoke about Sue Roe before they started recording.

312. When interviewing Jane Doe's roommate, "E.M.," Barber assured her that her questions were "not like a cross-examination or something."

313. At numerous points in E.M.'s interview, Barber failed to ask follow up questions when E.M. made general statements about *Sue Roe's* case and evidence that Jane Doe provided to E.M. prior to her interview.

314. For example, E.M. said that she read a text message exchange between Sue Roe and Plaintiff. Barber asked no questions about this.

315. Barber asked E.M. to interpret how Jane Doe's allegations fell under the definitions of sexual misconduct set forth in the Code of Student Conduct.

316. Barber did not ask male witnesses, including Plaintiff, for their views on whether the alleged conduct fell within the definitions in the Code of Student Conduct.

317. Plaintiff informed Barber that a male witness he identified, "H.W," had been banned from campus after breaking up with Jane Doe because, after H.W. subsequently failed to invite Jane to his birthday party, Jane Doe filed a complaint against him for COVID violations related to that party. Barber failed to ask H.W. about this incident during his interview.

318. Plaintiff informed Barber that female student, A.S., coordinated with Jane Doe to post defamatory messages about Plaintiff on Instagram. Barber did not ask A.S. about this issue.

## 2. **Jane Doe Coached Witnesses And Disclosed Confidential Documents**

319. During the investigation, it was clear to Barber that Jane Doe shared confidential documents with witnesses ahead of their interviews and coached them regarding what happened and what they should say in both the Jane Doe and Sue Roe cases.

320. H.W. told Barber that Jane Doe showed him a copy of her "actual statement to the school" and told him "This is my statement to the school. So I want you to know, this is how I want it to be told…if there's close friends or people, make them aware this is what happened."

321. In an interview with "K.R.," Barber asked for her "uncoached" answers.

322. K.R. submitted text messages to Barber with a narrative indicating that she had been coached, as she referenced the "second assault."

323. Text messages provided to Barber by K.R. show that before K.R. and witness T.R. were interviewed, Jane Doe sent them:

    a. copies of her Title IX report

    b. email messages with Zacharda

    c. a copy of *Plaintiff's* confidential Notice of Investigation. Notably the copy of the Notice that Plaintiff received did not include a "cc" line indicating that Doe had received a copy

324. Jane Doe also sent her Title IX report to witness N.B.

325. Jane Doe showed E.M. text messages between Plaintiff and Sue Roe prior to E.M.'s interview.

326. Nearly every witness heard Jane Doe's version of events, with respect to her complaint *and* Sue Roe's, before he or she was interviewed.

327. E.M. noted in her interview with Barber that Jane Doe was out to get "revenge" on Plaintiff and started "going through … social repercussions" by spreading her version of what happened to Plaintiff's friend group and roommates, among other people.

328. One witness informed Barber that she "spoke to" Jane Doe before supplementing her witness statement. A number of Roe's and Doe's friends amended their witness statements to fit Roe's and Doe's narrative of the timeline in which they connected.

329. Barber made no effort to determine how greatly the witnesses named by Jane Doe and Sue Roe were influenced by the numerous discussions they had and documents they were shown prior to their interviews or prior to supplementing their statements.

### 3. The Biased Initial Investigation Report

330. On March 31, 2022—before Plaintiff had submitted any statements or evidence—Barber circulated a draft investigation report to the Plaintiff and the complainants for review.

331. The draft report was reviewed by Broussard and Zacharda before it was distributed.

#### a. Inclusion of Prejudicial Information About Baseless TRO

332. The draft "investigative timeline" noted that on March 16, 2022, Jane Doe "filed a petition for protection from abuse in Orleans Parish District Court."

333. Barber included this entry in her report even though she knew that Plaintiff was no longer in Louisiana, had been banned from campus and had no contact with Jane Doe.

334. Jane Doe's petition, seeking a temporary restraining order ("TRO"), was premised on Jane Doe's allegation that Plaintiff was calling their mutual friends and "interrogating" them. In reality, Plaintiff was speaking with witnesses who volunteered to speak with him and gathering evidence for his case.

56

335. Tulane sponsored Jane Doe's false and groundless petition by assisting her with preparing and filing the paperwork and providing Jane Doe with an advocate—who had no personal knowledge—to serve as a witness.

336. In contrast, Plaintiff was offered no assistance in defending against the false petition. Instead, Barber listed it as evidence in her report.

337. On March 22, 2022, T.R., who was a mutual friend of Plaintiff and Jane Doe and a witness in the case, told Barber that she had spoken with Plaintiff voluntarily by phone and he had asked her questions related to the investigation.

338. Barber was, therefore, aware that Jane Doe's petition was baseless and included it in the investigation to bolster Jane Doe's case.

339. Barber also took no action in response to Jane Doe's clear strategy of trying to prevent Plaintiff from gathering evidence about the case.

340. Barber omitted from the report that Jane Doe's petition *was dismissed* on March 24, 2022.

341. According to the Code of Student Conduct, Barber could have excluded all information concerning Jane Doe's baseless TRO from the report, because it was "irrelevant, immaterial [and] more prejudicial than probative." 2021-2022 Code of Student Conduct, Pt. VI. E. Barber's failure to omit this information from the report is indicative of her bias against Plaintiff as the male accused.

342. Barber's failure to exclude the information about Jane Doe's TRO from the report is further evidence that Barber was acting under a presumption of guilt when conducting the investigation as opposed to being impartial, as promised in the Code of Student Conduct. *Id.*

343.    Barber's failure to question Jane Doe's motives after her filing of a TRO based on false allegations of harassment is indicative of bias in the investigation.

**b.   Barber Finds "Undisputed" Facts Before Gathering Plaintiff's Evidence**

344.    Per the Code of Student Conduct:

*At the conclusion of the investigation*, the investigator will prepare a written report that summarizes the information gathered, *synthesizes the areas of agreement and disagreement among or between individuals*…with any supporting information or accounts, and includes an investigative finding regarding whether any rule has been violated. However, before the report is finalized, necessary individuals or organizations will be given the opportunity to review a draft of the investigation report. *Id.* at p. 14 (emphasis added).

345.    On March 31, 2022, before the conclusion of the investigation, and before Plaintiff submitted any statements, responded to Barber's written questions or provided evidence, Barber circulated the initial investigation report.

346.    The initial report detailed 39 "undisputed" material facts, as opposed to simply outlining areas of "agreement and disagreement." This indicates that Barber improperly followed the investigation report procedure set forth in Tulane's Title IX Policy, which Tulane elected not to apply in Plaintiff's case. Code of Student Conduct, "Title IX Grievance Procedures," at pp. 17, 57. The Code of Student Conduct required that the investigator merely outline areas of "agreement and disagreement" between the parties. *Id.*

347.    In the report, Barber fully credited Sue Roe's and Jane Doe's allegations against Plaintiff as "undisputed." The report did not even note that Barber anticipated that changes would be made after she gathered evidence from Plaintiff.

348.    Prior to Barber's issuance of the initial investigation report, Plaintiff notified Zacharda that he would not sit for an in-person interview because he was being deprived the right

to a live, Title IX hearing as he had been promised and Tulane had refused to bifurcate the two complaints against him.

349.     Plaintiff agreed to respond to written questions in order to participate in the investigation. Barber sent the written questions to Plaintiff on March 10, 2022, without any due date. Plaintiff told Barber that he intended to respond to the questions and provide evidence.

350.     Barber's draft report shows that, at the time she issued the draft investigation report, Plaintiff's responses to her written questions were pending. Barber was further aware that Jane Doe had filed for a TRO against Plaintiff during the same time period in which Plaintiff was working on collecting evidence and providing responses to Barber's questions.

351.     While the Code of Student Conduct permits Tulane to proceed with an investigation absent the participation of the respondent, it does not allow the investigator to draw conclusions against the party simply because they did not provide information to the investigator. *See* 2021-2022 Code of Student Conduct, Pt. VI. E. This is precisely what Barber did when crediting the complainants' accounts as undisputed, material facts.

352.     Notably, the Code of Student Conduct gives Tulane 180 days to conclude investigations and it was, accordingly, unnecessary for Barber to rush the investigation, particularly since Plaintiff was not attending classes or permitted on campus. *Id.*

353.     Barber's statements of "undisputed" fact show that she drew improper and incorrect conclusions about the Roe and Doe complaints from the inception of the investigation, without giving Plaintiff an opportunity to be heard, and penalized him for his perceived lack of participation.

59

354.     Even without Plaintiff's evidence, Barber's findings of "undisputed fact" with respect to Sue Roe's allegations were flawed because the evidence Barber had prior to March 31 showed *inter alia*:

a.  Sue Roe gave different accounts of what happened to: i) Plaintiff via text message; ii) K.W.; iii) roommate D.E.; and iv) Jane Doe. None of the accounts referenced the alleged digital penetration.

b.  Barber credited purported photographic evidence submitted by Sue Roe as "undisputed" even though, as Barber herself noted, the evidence in the photos could have resulted from Roe and Plaintiff having consensual sexual intercourse prior to the alleged incident. Roe further stated in her interview that she "assumed" that the evidence was a result of the alleged attempted digital penetration as opposed to her consensual sex with Plaintiff.

c.  Barber credited the purported photographic evidence submitted by Sue Roe even though it did not have a timestamp or date stamp.

d.  Barber cited D.E.'s statement regarding the photographic evidence. D.E. told Barber that she did not know how she came to learn about the photos and she was not even sure that she had seen them, suggesting that she had either been coached or learned about them immediately prior to Roe and Doe making their Title IX complaints. Whatever the case, D.E.'s statement lacked credibility and should not have been cited in support of an "undisputed" fact.

e.  Barber's stated "facts" about the details of Roe's alleged sexual assault were attributed in part to statements made by D.E., but the "facts" do not appear in D.E.'s transcript. D.E. did not corroborate the specific details of the alleged assault.

f.  Barber stated that it was undisputed that Roe relayed details of the incident to "A.S." the next morning. The text message in question—and pasted into the draft report— does not reference the alleged digital penetration that was at issue in Roe's case and contains statements that contradict Roe's allegations.

355.     Barber's findings of "undisputed fact" with respect to Jane Doe's allegations were also flawed because *inter alia*:

a.  Barber relied on the statements of witnesses that she knew Jane Doe had coached prior to their interviews as support for the "undisputed" facts.

b.  Barber ignored inconsistencies in Jane Doe's account of what had occurred. For example, Jane Doe stated that the room was dark but then said Plaintiff was deriving pleasure from looking at her body.

c.  Barber ignored the statements by Jane Doe's friend and roommate, N.B. and E.M., that on the morning after the alleged incident Jane Doe said she had a consensual encounter with Plaintiff.

d.  Barber ignored evidence that Jane Doe suddenly alleged that her encounter with Plaintiff involved nonconsensual activity after she learned that Plaintiff slept with another woman on the day after Jane Doe and Plaintiff were together.

e.  Barber made no reference to the undisputed fact that Jane Doe was out for "revenge" against Plaintiff and engaged in a campaign against Plaintiff to ensure there were "social repercussions" for him, that she said she wanted Plaintiff's name to be attached to her accusations and went so far as to ask a witness where Plaintiff intended to work after graduation. Jane Doe also told a friend that her Title IX complaint was designed to get Plaintiff banned from campus.

f.  Barber did not include the undisputed fact that Jane Doe filed for a TRO against Plaintiff, that the allegations were unsubstantiated, and the TRO was dismissed.

g.  Barber did not include the undisputed fact that Jane Doe deleted all of her text messages with Plaintiff except the message that (falsely) accused him of sexual misconduct.

**4.  Barber Permits Jane Doe to Review and Comment On Evidence Relating to Sue Roe's Case**

356.  Though the Code of Student Conduct permitted Barber to redact the investigation report presented to each complainant so that each complainant received information pertaining only to her case, Barber elected not to do so. 2021-2022 Code of Student Conduct, Pt. VI.E, at p. 14.

357.  Instead, each complainant was permitted to review and comment on the other's case as part of responding to the initial investigation report.

358.  Jane Doe submitted extensive comments (nearly five out of six pages) about *Sue Roe's* case and evidence, even though she had *no personal knowledge* about what occurred. Barber appended the comments as evidence to her final report. They should have been excluded as irrelevant and prejudicial.

359.     Jane Doe's comments were, for the most part, a character assassination of Plaintiff rather than an effort to provide legitimate comments to the draft investigation report.

**5.   The Evidence Cast Doubt On the Credibility of the Complainants and Witnesses**

360.     Evidence gathered by Barber during her investigation showed that there were a number of misstatements and inconsistencies in Sue Roe's and Jane Doe's accounts to Barber, apart from the fact that they spent hours together coordinating the details of their stories prior to making Title IX complaints.

a.   **Sue Roe and Jane Doe Connected On Or Around January 28, 2022**

361.     The evidence showed that Jane Doe and Sue Roe knew each other before Jane Doe first went on a date with Plaintiff.

362.     Jane Doe and Sue Roe each told Barber that they first connected with each other on February 8, 2022, after Jane Doe's February 2nd sexual encounter with Plaintiff.

363.     Jane Doe reported to Barber that she first learned who Sue Roe was on February 5, 2022, when her friend, N.B., mentioned Sue Roe in a conversation about Plaintiff.

364.     The evidence gathered during the investigation showed that Sue Roe and Jane Doe knew each other as early as January 28, 2022, before Jane Doe first went out with Plaintiff to the racetrack date party.

365.     But N.B. reported to Barber that, on or about January 28th, N.B "warned" Jane Doe about Plaintiff prior to the racetrack event and referenced Sue Roe's negative opinion of Plaintiff "I've heard bad things about this guy."

366.     N.B. verified that, at that time, Jane Doe expressed a desire to find out the specifics of what happened between Plaintiff and Sue Roe. This desire to learn more about Plaintiff and Sue Roe's experiences further explained Jane Doe's odd question at the racetrack

event, during which she asked Plaintiff "Is there anyone that you're avoiding here?" in the hopes that she would gain information from Plaintiff about Sue Roe's opinion of him.

367. Neither Jane Doe nor Sue Roe provided evidence of text messages or other forms of messaging between them, which Plaintiff pointed out to Barber as suspicious.

368. The messages submitted by Jane Doe's friend "N.B." were incomplete and a number of her messages with Jane Doe lacked time stamps.

369. Jane Doe was given the opportunity to confirm the timestamps of the texts and submit verification of her first correspondence with Sue Roe.

370. Rather than confirming their alleged timeline, Jane Doe responded by calling Plaintiff's suspicions "Self-validated analysis [that] fails to consider any other point of view than Plaintiff's – a white male college student."

371. Plaintiff also provided Barber with evidence demonstrating that Jane Doe and Sue Roe connected via Instagram well before Plaintiff's February 2, 2022 sexual encounter with Jane Doe and well before the February 8 date that Sue Roe and Jane Doe provided to Barber.

### b. Jane Doe Knew About Plaintiff's Subsequent Sexual Encounter

372. When interviewed, Jane Doe told Barber that she did not know with whom Plaintiff had sex on the day after his encounter with Jane Doe.

373. However, text messages submitted to Barber by witnesses indicated otherwise. In texts from February 9, 2022, submitted by Jane Doe's friend K.R., Jane Doe asked "Have you heard anything from the girl that [Plaintiff] got with on Thursday?" Jane Doe proceeded to identify the woman to K.R. by name.

374. Immediately after her sexual encounter with Plaintiff, Jane Doe told her friends

that she was comfortable with the situation and that it was "fine."

375.    After seeing Plaintiff with the other woman on the night of February 3, 2022, Jane Doe began accusing Plaintiff of sexual misconduct.

### c.    Jane Doe Misrepresented The Nature of Her Relationship With Plaintiff

376.    Jane Doe deleted all the text messages between her and Plaintiff from her phone after she reported Plaintiff to the SAPHE hotline and in advance of her interview with Barber.

377.    Some of the texts Jane Doe deleted, which Plaintiff later provided to Barber, confirmed that Jane Doe had materially lied during her interview with Barber.

378.    In her interview, Jane Doe claimed, multiple times, that the first time she ever had sex with Plaintiff was on February 2, 2022. This was false, as Jane Doe and Plaintiff also had sex on January 29, 2022.

379.    This was proven false by text messages between Jane Doe and Plaintiff on January 30, 2022 and confirmed by N.B.'s testimony who said, "This was not the first time they had had sex" when referencing the February 2nd consensual encounter.

380.    Jane Doe lied about the January 29th consensual sexual encounter to create the narrative that it was "fucked up" when Plaintiff walked her home on February 3, 2022, as though they had not had relations prior to the alleged encounter on February 2, 2022.

381.    There was nothing abnormal about Plaintiff walking her home again the morning after their February 2, 2022 encounter, as it was a normal and usual course of action in the context of their sexual relationship.

382.     Jane Doe also told Barber that on the morning after the alleged assault, she was "trying to slip out without waking him or anything, but I remember he woke up." Jane Doe had

actually texted Plaintiff the night before – the night of their sexual encounter – informing him that she would need to leave early, stating "I just have to leave at like 8:15" and then proceeded to set an alarm for around 8:00am that woke both of them up. However, as Jane Doe had deleted all of her text messages, it was Plaintiff's record of text messages that showed the inconsistency.

### d. Sue Roe Made Several Inconsistent Statements

383. Sue Roe alleged that Plaintiff digitally penetrated or touched her vaginal area three times, beginning when she was asleep and after she woke up and said no. Plaintiff denied that this happened.

384. While Sue Roe told Barber that she told her housemates "Step by step what had happened," no contemporaneous text messages and no witnesses mentioned that Sue Roe told them about the alleged digital penetration. None could confirm this detail.

385. Sue Roe's contemporaneous text message to Plaintiff stated that she "woke up to [him] trying to get [her] to have sex with [him]," which is very different than what Sue Roe alleged occurred in her Title IX report.

386. Sue Roe also left out significant context when providing her account of what happened to Barber, including that—as Plaintiff had reported to Barber—Roe became upset with Plaintiff and was crying after the two had consensual sex because Plaintiff stated he might regret it later and Sue Roe had been upset about another person she was seeing rejecting her. Sue Roe's friend A.S. produced contemporaneous text messages with Roe in which Roe told her friend these precise details.

XI.     **Barber's Flawed and Biased Findings and Sanction**

387.    Barber was designated as the sole investigator, decisionmaker and arbiter of the sanctions that were imposed on Plaintiff because Tulane took Plaintiff's case out of the Title IX process.

388.    Despite the removal of Plaintiff's case from the Title IX process, like Zacharda (or perhaps at his or Broussard's direction), Barber cherrypicked Tulane's Title IX procedures so that the conduct process against Plaintiff was more beneficial to the complainants.

389.    Sue Roe and Jane Doe were afforded the protections of the Title IX Regulations but Plaintiff was not.

390.    In accordance with Tulane's Title IX Policy, Barber employed Tulane's Title IX process when drafting the Final Investigation Report, laying out "material" facts that were "undisputed."

391.    Barber also applied the Title IX Regulations to exclude relevant evidence related to the complainants' prior relationships.

392.    In the case of Sue Roe, Plaintiff and other witnesses provided evidence (which Roe failed to mention) that, on the night of her sexual encounter with Plaintiff, Roe was upset over having been rejected by another Tulane student she had been having a sexual relationship with and had been interested in dating.

393.    This relationship was a point of discussion between Plaintiff and Roe prior to engaging in consensual, sexual intercourse on the night in question and, in combination with Plaintiff's statement about potentially regretting having sex with Roe, caused Roe to cry after she and Plaintiff had sex.

394.    Roe admitted this in a text message produced by her friend.

66

395.     Plaintiff pointed to Roe's emotional state as grounds for her decision to have her roommate wake him up and ask him to leave.

396.     Tulane's Code of Student Conduct allowed Barber to consider a party's "prior sexual history with other parties" to prove "intent" or "motive." *Id.* at p. 14.

397.     Barber rejected the evidence concerning Sue Roe's motives, stating that she could not consider it under "current guidance," referring to the Title IX Regulations. *Id.*

398.     Barber further mischaracterized the evidence as relating to Roe's "disclosure that she had sexual intercourse with a mutual contact prior to" her sexual encounter with Plaintiff when the evidence at issue concerned a) Roe's emotional state and motives at the time she engaged in consensual sex with Plaintiff and immediately thereafter; and b) her failure to disclose to Barber that she was upset after she admittedly engaged in consensual sex with Plaintiff and promptly texted her friend afterwards about being upset about her relationship with the other male student.

399.     Plaintiff provided evidence that Jane Doe engaged in a pattern of making sexual assault and conduct allegations against other men. The Code of Student Conduct allows the investigator to consider pattern evidence and evidence concerning a party's prior sexual history with other parties to prove a material fact or to prove motive. Code of Student Conduct, at p. 14.

400.     Barber disregarded the pattern evidence concerning Jane Doe, improperly applying the Title IX Policy to benefit Jane Doe and discounting Jane Doe's pattern of "casually making sexual assault allegations" as character evidence that could not be considered. Code of Student Conduct, Appendix A, at p. 57.

401.     Barber's findings referenced the fact that Plaintiff "declined to engage in an interview." The Code of Student Conduct does not permit the investigator to draw any inferences

against a student who declines to participate in the student conduct process. *Id.* at pp. 8, 12. On the contrary. "no inference of transgression should be inferred from the manner in which individuals choose to frame their situations to an investigator." *Id.* at 8.

402.   The Title IX Policy, which Barber relied on when beneficial to the complainants, states that no adverse inference may be drawn in reaching a determination regarding responsibility based solely on the individual's absence from the hearing (or their refusal to be cross examined). Code of Student Conduct, at p. 59.

403.   Plaintiff participated in the conduct process by providing written statements and evidence, and written answers to Barber's questions.

404.   Barber made credibility determinations, which were not permitted in the investigation of Major Matters, as set forth in the Code of Student Conduct. *Id.* at pp. 8, 14.

405.   Once again, Barber improperly applied the Title IX Policy rather than Code of Student Conduct. The Title IX Policy permitted the investigator to make credibility determinations in the investigation report, before it was handed off to a separate adjudicator for the live hearing. *Id.* at pp. 17, 57. Here, there was no live hearing.

406.   Barber resolved all credibility issues in favor of the female complainants and against Plaintiff.

407.   Barber found that Roe was credible because her investigation interview was "materially consistent with her written incident report." Barber did not address that a) Roe waited nearly six months to come forward; b) that her contemporaneous statements to friends did not include allegations of digital penetration; or c) that Roe and Jane Doe spent hours together before they lodged Title IX complaints against Plaintiff and gave interviews to Barber.

408. Barber found that Plaintiff lacked credibility because his written narrative of events contained "nothing about waking up [Roe] or engaging in additional sexual activity during the night at issue." Plaintiff denied that such activity occurred.

409. Barber also found that Plaintiff's written denial of Roe's allegations "did not allow" for Roe's version of events.

410. Barber credited Roe and the accounts of all her female witnesses, even though a) none of her witnesses could confirm that Roe said Plaintiff engaged in, or attempted to engage in, nonconsensual digital penetration; b) several learned about Roe's allegations secondhand; and c) many, if not all, of the witnesses were coached by Jane Doe prior to their interviews.

411. In contrast, Barber did not credit male witnesses who corroborated statements made by Plaintiff. Her findings cited *no male witness's statement*.

412. Barber found that Plaintiff was "blacked out" during his encounter with Roe. Notably she did not find that Roe was intoxicated.

413. Despite her erroneous finding that Plaintiff was "blacked out," Barber did not question whether Plaintiff was capable of giving consent when he and Roe had sexual intercourse. There was no finding that Roe was intoxicated.

414. Barber credited text messages in which Plaintiff expressed confusion over rumors that Roe was unhappy about their sexual encounter as evidence that Plaintiff was intoxicated, even though Sue Roe said that Plaintiff showed no visible signs of intoxication when the two went home together.

415. Barber read meaning into Plaintiff's text exchanges with female witness, M.V., that was not stated in the messages themselves in order to find that Plaintiff was not credible.

416.    Barber found that Jane Doe's interview was consistent with her written incident report, ignoring the evidence that Jane Doe and Sue Roe had coordinated their reports and spent hours together discussing Plaintiff.

417.    Barber acknowledged that there were discrepancies between Jane Doe's account of what happened with Plaintiff and her "outcry witnesses" but still credited Jane Doe's account as truthful. In doing so, Barber ignored that a) Jane Doe's witnesses noted that Jane Doe was seeking revenge against Plaintiff; b) Jane Doe herself expressed wanting her allegations to be permanently attached to Plaintiff's name; and c) text messages contradicted Jane Doe's assertion that she did not know who Plaintiff slept with on the night after their sexual encounter.

418.    Barber further acknowledged evidence that Jane Doe misrepresented her prior sexual relationship with Plaintiff, falsely asserting that the night of the alleged incident was the first time they had had consensual sex. Barber found that this was not "a large enough deviation to call into question [Jane Doe's] overall credibility."

419.    In contrast, Barber pointed to no inconsistencies in statements Plaintiff made about his sexual encounters with Jane Doe, or his denial of her allegations of nonconsensual sexual contact.

420.    Instead, Barber once again speculated that Plaintiff was too intoxicated to remember events, even though there was no evidence to support this conclusion.

421.    Similar to Roe, Barber did not question whether, if he was intoxicated, Plaintiff was able to affirmatively consent to intercourse with Jane Doe, who reported being sober when she and Plaintiff engaged in consensual sexual intercourse.

70

422. Because Plaintiff asserted that he did not engage in any sexual activity with Jane Doe after they had consensual sex, Barber found that "there was a gap in information" which called "into question whether [Plaintiff's] narrative was complete."

423. Rather than weighing the evidence, Barber simply credited Jane Doe's account of what happened and interpreted evidence in the light most favorable to Jane Doe—which was not permitted under the Code of Student Conduct or the Title IX Policy.

424. Barber found that Plaintiff presented evidence which demonstrated that Sue Roe and Jane Doe misrepresented when they first connected with each other. This supported Plaintiff's assertion that Jane Doe knew Sue Roe prior to going on her first date with Plaintiff at the racetrack and contradicted the complainants' narrative that they came together after Jane Doe's last sexual encounter with Plaintiff. Barber dismissed this evidence as irrelevant and having no impact on their credibility.

425. Barber found that each complainant's account was "more likely than not truthful and objectively accurate." This is not the standard that applies in student conduct cases, which requires a finding that it is more likely than not that "a rule transgression has occurred." Code of Student Conduct, at p. 14.

426. The subjective account of each complainant was also not "objectively" accurate, particularly since the evidence revealed inconsistencies and misstatements with respect to each complainant's account.

427. Though there was no preponderance of evidence that Plaintiff engaged in the alleged sexual misconduct with respect to either complainant, Barber found Plaintiff responsible for "Sexual Contact" and "Sexual Assault." She did not specify which finding applied to which complainant.

428.    Barber's subsequent Notice of Outcome to Plaintiff also failed to specify which finding pertained to which allegation or complainant.

429.    Barber determined that Plaintiff should be expelled.

430.    On May 6, 2022, Plaintiff was expelled, permanently banned from Tulane's campus and his academic transcript was permanently marked with a "notation of expulsion."

431.    Barber's report confirmed Plaintiff's fear that Zacharda's original consolidation of the jointly reported, coordinated complaints of Jane Doe and Sue Roe into one investigation would bias Barber and cause her to bolster one complaint by relying on the other. As stated in Barber's final report:

> While [Plaintiff's] conduct history contains no prior instances of serious misconduct, this investigation has revealed not one but two instances of sexual assault under similar circumstances.

432.    In determining that Plaintiff should be expelled, Barber considered the parties' "impact statements," assuming that Plaintiff's statement—which was submitted *prior to* Barber's findings as part of Plaintiff's defense against allegations he vehemently denied—would take responsibility for the conduct in question. Barber stated the following:

a.   "In his impact statement, [Plaintiff] describes the impact this investigation has had on him and his family without any discussion of self-improvement or acknowledgment of any missteps."

b.   "Without any acknowledgment of misconduct from [Plaintiff], I have no information about whether he would further engage in [preventive work] in order to safely return to the community."

433.    Barber ignored nearly the entirety of Plaintiff's impact statement, which laid out the various ways in which he had taken care of, been supportive of, and maintained healthy friendships with female students at Tulane and how he, and those friendships, were impacted by the false allegations against him.

434. Barber further ignored that the Code of Student Conduct does not express that a respondent's impact statement must discuss accountability—the Code contains no requirements for impact statements at all. *Id.* at p. 15.

435. In contrast, Barber focused on the complainants' emotions and the sanctions which they wished Plaintiff to receive, as reflected in their impact statements.

436. Barber's statements about Plaintiff's reflected Tulane's general approach towards male students accused of conduct violations, that each male accused was presumed to be responsible for the alleged conduct from the time a complaint was received and needed to take responsibility, even if he denied the allegations. *See* Paragraphs 118-132. *See* Code of Conduct, at p. 15.

437. Upon information and belief, Barber conferred with Zacharda and Broussard in reaching her findings that Plaintiff was responsible and determining sanctions, as the Code of Student Conduct permits the investigator to do so. Code of Student Conduct, at p. 14.

## XII. Plaintiff's Appeal Is Denied

438. Although Zacharda and Barber each relied on Tulane's Title IX Policy when beneficial to the complainants, Plaintiff was denied the right to appeal Barber's decision on the grounds of bias or a conflict of interest under the same policy. Code of Student Conduct, at p. 20.

439. Instead, Plaintiff's appeal was limited to procedural error "so substantial that it denied [Plaintiff] the right to a fair hearing;" new and significant evidence; or a disproportionate sanction.

440. On May 20, 2022, Plaintiff submitted a thirty-five-page appeal outlining the overwhelming number of procedural errors made by Zacharda and Barber which denied him the right to a fair hearing.

73

441.   Per the process set forth in the Code of Student Conduct, Zacharda and Broussard reviewed the appeal. *Id.* at 20.

442.   The appeal was also reviewed by an unidentified appeal panel, comprised of three members. *Id.* at p. 19. The Code did not identify the role or responsibilities of any appellate chair.

443.   Per the Code of Student Conduct, the appeal panel presumes that the "decisions were made reasonably and appropriately, unless there is compelling information to the contrary." *Id.* at 20.

444.   Per the Code of Student Conduct, the "appellate panel will transmit via email a written decision generally within ten (10) business days from the date of the submission of all appeal documents." *Id.* at 20.

445.   On June 21, 2022, Avery Pardee, "Acting Appellate Chair," sent Plaintiff a "Notice of Appeal Outcome," which was determined to be "without merit."

446.   Per the Notice, if Plaintiff's appeal was reviewed by a hearing panel, as required by the Code of Student Conduct, the panel only spent one day reviewing Plaintiff's submission and the underlying record.

447.   The ambiguously worded Notice did not make clear who decided the appeal, nor did it provide reasons why the appeal was found to be without merit.

### XIII.   Tulane's Biased Mishandling of Plaintiff's Complaints

448.   On April 11, 2022, Plaintiff submitted a complaint against Jane Doe for retaliation, harassment and witness intimidation, based on Jane Doe's filing of the baseless Petition for Protection From Abuse (or TRO) in state court and its subsequent dismissal, and Jane Doe's subsequent, defamatory social media campaign against Plaintiff.

449.     At the time that Plaintiff submitted his complaint, Tulane was in possession of evidence that demonstrated that *Plaintiff's* complaint was valid and that Jane Doe had asserted false allegations of stalking and intimidation through third parties as a means of bolstering her allegations against Plaintiff in the conduct proceeding against him and to prevent him from speaking with witnesses with information relevant to his defense.

450.     Plaintiff also provided evidence to Tulane that Jane Doe had spread false and defamatory information about Plaintiff via social media and caused two witnesses in the Title IX investigation to cease contact with Plaintiff.

451.     Tulane failed to follow the Code of Student Conduct and Title IX Policy when addressing Plaintiff's complaint.

452.     The Code of Student Conduct prohibited "[f]urnishing false information to the University or to a University official." 2021-2022 Code of Student Conduct, at p. 22.

453.     The Code of Student Conduct also prohibited "[a]cts of retaliation, intimidation, coercion against any person … who is engaged in activity under this Code of Conduct." *Id.* at p. 23.

454.     The Code of Student Conduct also expressly prohibited "harassment in [Tulane's] … educational programs or activities on the basis of ... sex." *Id.* at p. 23.

455.     The Code of Student Conduct further prohibited "harassment, intimidation or cyberbullying." *Id.*

456.     Plaintiff's complaint clearly alleged that Jane Doe engaged in the above-stated misconduct in violation of the Code.

457.     On April 14, 2022, after reviewing Sue Roe's and Jane Doe's initial Title IX reports to Tulane, and the evidence and witness interview statements made available to him as

75

part of Tulane's investigation into the Roe and Doe complaints, Plaintiff filed a complaint against Sue Roe, Jane Doe and their mutual friend, and witness, N.B.

458. Plaintiff's complaint stated that Roe, Doe and N.B. violated the Code of Student Conduct by "furnishing false information to the University or a University official" and "coercion against any person … who is engaged in activity under this Code of Conduct, such as … acting as a witness or otherwise participating in the investigation process and Title IX process." Code of Student Conduct, at p. 23.

459. The complaint was grounded in collusion between Roe, Doe and N.B. to bring false sexual misconduct complaints against Plaintiff, misrepresentations that they made in written statements and to Barber about the timeline in which Roe and Doe first connected with each other, omission of material information from their statements to Barber and coaching witnesses to make specific statements to Barber, including by showing them confidential documents relating to the conduct proceedings against Plaintiff.

460. Tulane failed to follow either the Code of Student Conduct or the Title IX Policy with respect to Plaintiff's complaints.

461. According to the Code of Student Conduct "Tulane University will promptly and equitably respond to all reports of discrimination and harassment in order to eliminate prohibited conduct, prevent its recurrence, and address its effects on an individual or the community." *Id.* at p. 35.

462. According to the Code of Student Conduct, "*Investigations* take place when major transgressions of Tulane University rules may have occurred, which may include matters involving Title IX issues, discrimination against a protected class, and/or matters that may result in expulsion, [or] suspension." *Id.* at p. 7 (emphasis in original).

76

463. According to the Code of Student Conduct, even "Minor Matters" go through some form of conduct process. *Id.* at p. 8.

464. Under the Title IX Policy, matters involving "unwelcome conduct determined by a reasonable person to be so severe, pervasive and objectively offensive that it denies a person equal access to Tulane's educational program or activity," must be investigated through the Title IX grievance process. *Id.* at p. 41.

465. Under the Title IX Policy, Tulane is required to provide complainants who make a report of sexual harassment under the Title IX Policy with information about making a Formal Complaint. *Id.* at 51.

466. After Plaintiff filed his complaints, the allegations of which fell within the definition of sexual harassment under the Title IX Policy, no one contacted him about filing a Formal Complaint.

467. Tulane provided Plaintiff with no information or resources regarding either of his complaints against Jane Doe.

468. On the contrary, Plaintiff had to repeatedly ask Zacharda about the status of the complaints.

469. On April 21, 2022, in response to an inquiry from Plaintiff, Zacharda stated that an "independent review" was being conducted by Broussard, "Associate General Counsel" and the "Dean of Students."

470. On April 26, 2022, Plaintiff emailed Broussard and Tulane's Associate General Counsel, to provide information about his complaints, including the inequity with which he was being treated as compared to Jane Doe and Sue Roe.

471. On the same day, the Associate General Counsel informed Plaintiff that he was not involved in Plaintiff's "pending student conduct matter."

472. Broussard failed to inform Plaintiff of the outcome of her Title IX review, as required by the Title IX Policy. 2021-2022 Code of Student Conduct, at pp. 52-53. Per the Title IX Policy, the "Title IX Coordinator…will provide written notice of the determination as to scope and jurisdiction to the Complainant or Reporting Party, refer that individual to the appropriate resources…and provide reasonably available supportive measures." *Id.* at 53.

473. On May 3, 2022, Zacharda notified Plaintiff that "the review of your complaints against [Jane Doe] and [Sue Roe] for retaliation, false information and collusion has now been completed." Zacharda made no distinction between the two, separate complaints.

474. Even though each of Plaintiff's complaints concerned multiple, serious violations of the Code of Student Conduct, sex discrimination and sexual or gender-based harassment that were supported by substantial evidence, Zacharda informed Plaintiff that the complaints fell "outside of our Title IX and major matters processes."

475. Zacharda next informed Plaintiff that he could not "share the details of the outcome" with Plaintiff, though there was nothing expressly written in the Code of Student Conduct which prohibited the sharing of such information.

476. In contrast, Jane Doe and Sue Roe were provided with copies of each notice given to Plaintiff, unredacted copies of each report Barber issued and were notified of the outcome and sanctions imposed on Plaintiff.

477. Zacharda further notified Plaintiff that "to the extent [Plaintiff's] complaints related directly to the sexual misconduct charges against [him], that information was provided to"

78

Barber "for their consideration in regards to the sexual misconduct charges" against him. Zacharda did not specify what information was shared with Barber.

478. Zacharda made no reference to Plaintiff's complaint against witness N.B.

479. On May 5, 2022, Plaintiff requested redacted documentation concerning the outcome of his complaints against Jane Doe and Sue Roe.

480. On May 9, 2022, Plaintiff asked Zacharda what criteria Tulane used to determine whether a complaint concerned a "major matter" or "minor matter" under the Code of Student Conduct.

481. On May 10, 2022, Zacharda responded to Plaintiff, limiting "major matters" to those involving "sexual assault or intimate partner violence." The Code of Student Conduct contained a much broader definition of the types of complaints or reports that were "major matters," including discrimination against a protected class and "matters involving Title IX issues," suggesting that the Tulane administrators deliberately narrowed their interpretation of "major matters" so that they would not have to investigate Plaintiff's complaints against Sue Roe, Jane Doe or N.B.

482. Zacharda refused to provide Plaintiff with any information concerning the outcome of his complaints, whether in redacted form or otherwise. With respect to Tulane's justification of the disclosure of the outcome of complaints against Plaintiff to Sue Roe and Jane Doe, Zacharda relied on the Title IX Regulations, which he had repeatedly asserted did not apply to Plaintiff's disciplinary proceeding. This is yet another example of Tulane's selective use of its policies and procedures to benefit females.

483. Given the number of misrepresentations Zacharda made to Plaintiff about how his conduct process was handled, and Zacharda's and Broussard's bias against male students, it is

79

Plaintiff's belief that Tulane took no action regarding his complaints because they did not want to upset Jane Doe or Sue Roe and because, at all times, they operated under the presumption that Plaintiff, a male, had engaged in wrongdoing while the women should be believed.

484.	Barber's findings against Plaintiff in her investigation of the Sue Roe and Jane Doe complaints *confirmed* the basis of Plaintiff's April 14, 2022 complaint, as Barber acknowledged that a) Plaintiff provided evidence that contradicted the timeline presented by Roe and Doe as to when they first met; b) Roe failed to disclose facts about her emotional state after having consensual sex with Plaintiff; c) there were discrepancies between Jane Doe's account of what happened and the accounts of her "outcry" witnesses; and d) other witness interviews "could establish that [Jane Doe] gave inaccurate accounts of other facts, including how many times she and [Plaintiff] had sex prior to the incident" and that "[Jane Doe] lied about being invited to [Plaintiff's] birthday."

485.	When conducting witness interviews, Barber also referenced the fact that at least one witness had been coached.

486.	Despite the substantial evidence supporting Plaintiff's April 14th complaint, Tulane took no action. In the investigation of Sue Roe's and Jane Doe's complaints against Plaintiff, Barber dismissed the evidence as irrelevant, found Plaintiff responsible for sexual assault and decided that he should be expelled.

487.	On May 12, 2022, after his first two complaints went nowhere, Plaintiff filed a Title IX/Sexual Misconduct report against Sue Roe and Jane Doe through Tulane's online reporting system, alleging sexual harassment under Title IX.

488.	Tulane took no action regarding the complaint, and Zacharda informed Plaintiff that it fell outside the scope of the Title IX Regulations.

## XIV.  Plaintiff's Damages

489.    As a direct and proximate result of Tulane's discrimination against Plaintiff on the basis of sex, myriad violations of its own policies and procedures and arbitrary and capricious conduct, Plaintiff's wrongful expulsion is now a permanent part of Plaintiff's education records.

490.    Plaintiff will be obligated to disclose this finding and consent to the release of his education and disciplinary records to future educational institutions and certain employers, substantially limiting his ability to gain acceptance to a high caliber (or any) graduate school or law school or obtain lucrative employment in his chosen field.

491.    Tulane's affirmance of Sue Roe's and Jane Doe's false allegations paints Plaintiff as a sexual predator, wiping out a lifetime of hard work towards his reputation, education and future career.

492.    Due to Tulane's biased and unlawful conduct, Plaintiff was subjected to an investigation that was fundamentally unfair, wherein he was presumed guilty as a male accused and Sue Roe and Jane Doe were presumed credible as female accusers. The entire process was tainted against Plaintiff in direct contravention of Tulane's stated policies and promises to students.

493.    Tulane further discriminated against Plaintiff as a male complainant by failing to follow its own policy and procedures in order to benefit Jane Doe, Sue Roe and N.B. as female respondents.

## COUNT I
### Violation of Title IX of the Education Amendments of 1972

494.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

81

495. Title IX of the Education Amendments of 1972 provides, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

496. Title IX of the Education Amendments of 1972 applies to all private educational institutions that receive federal funding, including Defendant Tulane.

497. Tulane receives federal funding, including in the form of federal student loans given to students, and is thus subject to the provisions of Title IX.

498. Title IX is enforceable through a private right of action. *See Overdam v. Texas A&M Univ.*, 43 F.4th 522, 527 (5th Cir. 2022) (applying *Purdue* and *Yusef* to ask overarching question of whether the alleged facts raise plausible inference that university discriminated against the plaintiff on basis of sex); *Doe v. Texas Christian Univ.*, No. 4:22-cv-00297, 2022 WL 17631668, at * 2 (N.D. Tex. Dec. 13, 2022) (In accordance with *Overdam* Title IX claim need not fit within precise theoretical framework in order to be actionable).

499. In the context of university disciplinary proceedings, sex discrimination in violation of Title IX may be evidenced by (i) myriad procedural flaws and violations of a university's own policies, including the consolidation of complaints, and (ii) statements by key university officials tending to show the influence of gender as a possible motivating factor in a disciplinary decision. *Texas Christian Univ.*, 2022 WL 17631668, at ** 2-3. *See also Doe v. Texas Christian Univ.*, 601 F. Supp. 3d 78, 86-93 (N.D. Tex. 2022).

500. The manner in which a university responds to pressure from the student body to take a more aggressive stance against male students accused of sexual misconduct can also give

rise to an inference of gender bias. *See Norris v. Univ. of Colo., Boulder*, 362 F. Supp. 3d. 1013-1015 (D. Colo. 2019).

501. Beginning in 2016 and continuing through February 2022, when Plaintiff was falsely accused of sexual misconduct, Tulane implemented campus wide trainings, policies and procedures which were aimed at eradicating "rape culture," and protecting female students from male students, whom the University categorized as sexual predators.

502. Immediately prior to Plaintiff's student conduct proceedings, female students started an Instagram account which "outed" male students as sexual predators and, when the site was taken down, hundreds of students, predominantly female, waged a protest in which they demanded that Tulane expel male "rapists" and repeat offenders. At the time, Tulane's undergraduate population was 61% female.

503. Tulane further implemented training programs to eradicate sexual violence on campus by putting an end to "toxic masculinity." Men's education and engagement was the primary focus of Tulane's response to sexual violence on campus.

504. Tulane adopted policies and procedures grounded in the idea that male students who adhered to more traditional views of masculinity had the propensity to harm women, display aggressive behavior and commit acts of sexual violence.

505. The administrators involved in Plaintiff's student conduct process fully embraced this view of toxic and aggressive male behavior.

506. Tulane's student conduct process is centered around "survivors" and puts the accused in the position of taking responsibility for acts they did not commit in order to fare better in the conduct process.

83

507.     Tulane has no respondent-specific services for students accused of sexual misconduct.

508.     Tulane rejected application of the Title IX Regulations, which offered enhanced due process protections for the accused, in all cases of alleged sexual misconduct and, instead, upon information and belief, pushed the majority of its sexual assault cases involving male respondents into the standard student conduct process, which employs a single investigator model that is prohibited under the Title IX Regulations.

509.     Tulane does not publish data concerning the gender makeup of the students that are subject to discipline for violations of the University's Code of Student Conduct and Title IX Policy. Given Tulane's adoption of policies and practices that center around male students as sexual predators, it is Plaintiff's belief that students who identify as female and are accused of sexual misconduct are not subject to the same disciplinary process as male students accused of sexual misconduct and, if they are, the female accused receive less severe sanctions.

510.     Broussard, the Title IX Coordinator that oversaw Plaintiff's student conduct process, advised Barber with respect to the investigation of the Sue Roe and Jane Doe complaints, and reviewed Barber's investigation report expressed the following gender-biased views:

    a.   Broussard viewed gender equality through a feminist lens.

    b.   Men who embrace more "stereotypical" gender roles are more likely to commit acts of sexual violence.

    c.   Being a white, cisgender man "carries privilege."

    d.   She hoped that "survivors" would find "other outlets to share their stories that are healing and empowering after the loss of @boysbewaretulane."

511.     Zacharda, who oversaw Plaintiff's conduct process with Broussard, made determinations about interim measures and the manner in which the investigation would proceed,

84

and advised Barber in regard to the investigation, findings and sanction against Plaintiff, expressed the following views:

a. Male or "cis male" students tend be involved in serious conduct cases involving "violence, aggression, [and] anger."

b. Male students accused of misconduct are responsible for the conduct of which they are accused and the investigator should view the context of the behavior "in the realm of masculinity" and whether the student was "influenced by hypermasculine or toxic masculinity culture."

c. When he is working with male students, Zacharda looks at how issues of masculinity have impacted their choices and decisions.

d. Sanctions need to match what will have the most impact for the individual being accused.

512.   Shortly before Plaintiff's conduct proceeding, Zacharda received training on "Myths and Facts about Acquaintance Sexual Assault" which employed male and female stereotypes, used examples in which men are rapists, and described rapists on college campuses as repeat offenders. The training further stated that it is a "myth" that "women lie about being raped to … get revenge on a guy."

513.   Prior to her investigation of the Sue Roe and Jane Doe complaints, Barber participated in Title IX investigator training which:

a.  discussed sexual assault using gender stereotypes;

b. relied on faulty statistics concerning the number of college women who experience sexual assault;

c. suggested, based on "Prevalence Data," that most male college students are serial rapists;

d. advised that inconsistencies in statements of sexual assault victims should not be used to determine credibility due to trauma.

514.     Immediately prior to investigating the allegations against Plaintiff, Barber participated in a training course which addressed the "brain-based experiences, behaviors and memory characteristics of sexual assault."

515.     Gender bias can be inferred from the following procedural flaws in the conduct process that led to Plaintiff's wrongful expulsion from Tulane:

a. Prior to holding a Procedural Review meeting with Plaintiff, Zacharda conducted a joint Procedural Review meeting with Sue Roe and Jane Doe.

b. Zacharda misrepresented to Plaintiff that no investigation had been commenced, even though he, in consultation with Broussard, had already consolidated the Roe and Doe complaints and Barber had interviewed the complainants.

c. The complaints did not meet the requirements for consolidation under Tulane's Title IX Policy or the Code of Student Conduct.

d. Zacharda purposefully misrepresented and withheld information to deprive Plaintiff of a fair opportunity to object to Barber's role as investigator because he did not disclose to Plaintiff that the complaints against him had been consolidated and assigned to a single investigator.

e. Zacharda relied on the Title IX Policy as the basis for consolidating the complaints, which was favorable to the complainants, then he, in consultation with Broussard, denied Plaintiff the right to a live hearing under the Title IX Policy.

f. Zacharda provided Plaintiff with several notices and resource materials that referred to a live hearing, then denied that Plaintiff was entitled to a hearing because the Title IX Policy and Title IX Regulations did not apply.

g. Broussard was required to conduct a review of the Sue Roe and Jane Doe complaints and determine whether they should go through the Title IX grievance process. She was further required to give Plaintiff written notice of her determination. She did not provide Plaintiff with this required information.

h. Before anyone spoke with Plaintiff about the Roe and Doe allegations, he was banned from campus and participation in Tulane-sponsored events and activities, even though there was no evidence that he posed an immediate threat and he had no student conduct record.

i. In imposing the campus ban, Zacharda, and potentially Broussard, followed no specific, written policy.

86

516.    Gender bias can also be inferred from the way Barber investigated the complaints against Plaintiff:

    a.  Barber's questioning of the complainants evidenced her presumption that Plaintiff was guilty.

    b.  Barber failed to ask critical follow up questions about important facts relayed by each complainant, including that the complainants had spent hours together discussing Plaintiff prior to filing their complaints.

    c.  Barber likewise failed to ask critical follow up questions of the witnesses that she interviewed.

    d.  Barber suggested facts to the complainants about Plaintiff's behavior, such as his level of intoxication.

    e.  Barber asked several female witnesses how they believed Plaintiff's conduct fit within the definitions of sexual misconduct in the Code of Student Conduct. Male witnesses were not asked whether they believed the alleged conduct violated the Code.

    f.  Barber elected not to ask a male witness about an incident in which Jane Doe accused him of a conduct violation, leading to a temporary suspension, after he broke up with her and did not invite Jane Doe to his birthday party.

    g.  Barber ignored that nearly every witness was coached by Jane Doe prior to giving his or her statement or before supplementing his or her statement.

    h.  Prior to Plaintiff's submission of evidence, Barber issued an initial investigation report which credited the complainants' accounts of what happened as "undisputed."

    i.  The "undisputed" facts posited by Barber were readily disputed by the evidence cited in her report.

    j.  Even though the Title IX Policy was inapplicable to Plaintiff's student conduct proceeding, Barber selectively applied the Title IX Policy and Title IX Regulations when it would benefit Sue Roe and Jane Doe.

    k.  Barber included Jane Doe's dismissed TRO in her initial and final investigation reports to bolster Jane Doe's complaint, even though Barber knew the TRO was meritless.

l. Barber drew incorrect and improper conclusions about the Sue Roe and Jane Doe complaints from the inception of the investigation, without giving Plaintiff an opportunity to be heard, and penalized him for his perceived lack of participation.

m. Barber elected not to redact the copies of her investigation report that were provided to Sue Roe and Jane Doe and permitted Jane Doe to submit extensive comments about Jane Doe's allegations as "evidence," even though Jane Doe had no personal knowledge about Roe's interactions with Plaintiff.

517. Gender bias can also be inferred from Barber's findings and conclusions in determining that Plaintiff was responsible for sexual assault:

a. Barber applied the purportedly *inapplicable* Title IX Policy to conclude that she could not consider key evidence related to the complainants' prior relationships, patterns of behavior and emotional state.

b. Barber excused each complainants' failure to disclose crucial facts about their interactions with Plaintiff as irrelevant.

c. Barber penalized Plaintiff for declining to engage in an in-person interview, made improper credibility determinations and resolved all credibility issues in the complainants' favor.

d. Barber credited the statements of all the female witnesses, despite the fact that they had been coached, and did not credit the statements of the male witnesses.

e. Barber dismissed inconsistencies, misrepresentations and omissions in the complainants' statements as irrelevant.

f. Barber speculated that Plaintiff was intoxicated during his encounters with Jane Doe and Sue Roe which accounted for "gaps" in his statements. There were no gaps in Plaintiff's statements—Plaintiff denied the conduct that was alleged and Barber took issue with that.

g. Rather than weighing all the evidence, Barber simply credited the women's accounts.

h. Barber did not apply the preponderance of the evidence standard.

i. Barber criticized Plaintiff for not taking responsibility for the alleged misconduct in his impact statement, which he was required to submit during the investigation. In contrast, she focused on the emotions expressed in the complainants' statements.

518.    Additional evidence of gender bias is found in Tulane's mishandling of the complaints that Plaintiff filed against Jane Doe, Sue Roe and N.B.:

a.    Broussard failed to inform Plaintiff of the outcome of any Title IX review that she conducted or give him instructions on how to file a Formal Complaint.

b.    Tulane selectively applied its Code of Student Conduct and the Title IX Regulations to benefit the female respondents.

c.    Tulane declined to investigate Plaintiff's complaints as "major matters," by employing an overly narrow definition than the definition set forth in the Code of Student Conduct.

d.    Zacharda misrepresented to Plaintiff that Tulane's Associate General Counsel was reviewing Plaintiff's complaints.

e.    Zacharda selectively shared the evidence supporting Plaintiff's complaints with Barber for use in her investigation of the Roe and Doe complaints against Plaintiff.

f.    Tulane ignored the substantial evidence supporting his claims of retaliation and collusion and, upon information and belief, took no action—formal or informal— against Jane Doe or Sue Roe. Tulane would not share the outcome of his complaints with Plaintiff, even in redacted form.

g.    Tulane operated under the presumption that Plaintiff engaged in wrongdoing and that the complainants were to be believed, even though Barber's findings in the investigation of the Sue Roe and Jane Doe complaints against Plaintiff confirmed the basis of Plaintiff's April 14, 2022 complaint.

519.     Based on the foregoing, Plaintiff was subjected to a biased, prejudiced and unfair process in violation of Title IX designed to find him, the male, responsible for sexual misconduct and punished severely for it.

520.     As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

521.     As a result of Tulane's violation of Title IX, which resulted in an erroneous and unduly severe and unwarranted sanction which continues to injure Plaintiff's reputation and right to continue his education and future employment, an injunction should issue directing Tulane to (i) reverse the outcome and findings regarding Sue Roe and Jane Doe; (ii) expunge Plaintiff's disciplinary record; (iii) remove the notation of expulsion from Plaintiff's transcript; (iv) remove any record of the investigation, findings and sanction from Plaintiff's education records and any other records kept at the University, including but not limited to public safety records, records kept by the development office, and any other departments maintaining such records; and (v) destroy any records concerning the complaints.

522.     As a result of the foregoing, Plaintiff is also entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT II
### State Law-Breach of Contract

523.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1-493, above as if fully set forth herein.

90

524.    Under Louisiana law, the basic legal relation between a student and a private university is contractual in nature and the publications given to the student are part of the terms of that contract. *See I.F. v. Administrators of the Tulane Educ. Fund*, 131 So. 3d 491, 498 (2013).

525.    The disciplinary decisions of a private university may be reviewed for arbitrary and capricious action because the power of private institutions is not absolute and they may not cavalierly disregard or ignore the due process safeguards set forth in their own policies. *See I.F.*, 131 So. 3d at 499. A private university's failure to adhere to its own binding procedures can make a resulting decision arbitrary and capricious. *Id.*

526.    The following is a non-exhaustive list of the ways in which Tulane violated Plaintiff's contractual right to due process by failing to follow its own binding procedures with respect to the Sue Roe and Jane Doe complaints against Plaintiff:

    a.  Tulane either did not conduct, or failed to provide Plaintiff with the requisite notice that it did conduct, a gatekeeping of Sue Roe's and Jane Doe's complaints under the Title IX Policy. 2021-2022 Code of Student Conduct, Appendix A, Pt. VII.

    b.  Tulane did not inform Plaintiff of the outcome of the gatekeeping evaluation or give him a chance to appeal the determination. *Id.* Pt. VIII.

    c.  Tulane informed Plaintiff in his Notice of Procedural Review Meeting, Notice of Investigation, a document called "Investigation Procedural Protections" and via statements made to Plaintiff by Zacharda that Plaintiff had the right to a live hearing.

    d.  Zacharda subsequently informed Plaintiff that the Title IX Policy did not apply and Plaintiff would not have a live hearing with a right of cross examination, as provided for in the Title IX Policy.

    e.  Tulane deprived Plaintiff of his right to object to Barber as investigator at, or after, Plaintiff's Procedural Review meeting because Zacharda misrepresented to Plaintiff that the investigation had not yet been commenced. *See* Notice of Procedural Review.

    f.  Tulane violated the Code of Student Conduct and the Title IX Policy when Zacharda consolidated the Sue Roe and Jane Doe complaints for investigation by Barber. 2021-2022 Code of Student Conduct, at pp. 13, 51.

g.  Tulane violated the Code of Student Conduct when imposing a campus ban on Plaintiff and when notifying Plaintiff of same. *Id.* at p. 31, 51.

h.  Tulane investigated the Sue Roe and Jane Doe complaints under a presumption of guilt, denying Plaintiff "a neutral and fair investigation with no presumptions of wrongdoing." *Id.* at pp. 8.

i.  Tulane failed to provide "a fair and reliable gathering of the facts by a trained and impartial investigator." *Id.* at p. 12.

j.  Tulane drew an "inference of transgression" against Plaintiff based on his election to submit a written statement and respond to written questions after he was denied the right to a live hearing. *Id.* at pp. 8, 12.

k.  Tulane issued a one-sided, biased initial investigation report, without Plaintiff's statements or evidence, prior to the conclusion of the investigation which did not comply with the format required by the Code of Student Conduct. *Id.* at p. 14.

l.  Tulane applied the Title IX Policy as opposed to the requisite Code of Student Conduct when it was beneficial to complainants in the investigation and when determining responsibility. *Id.* at pp. 14, 17, 57.

m.  Tulane applied the Title IX Regulations rather than the Code of Student Conduct to exclude consideration of relevant evidence and benefit the complainants. *Id.* at p. 14.

n.  Tulane did not apply the preponderance of the evidence standard set forth in the Code of Student Conduct when determining that Plaintiff was responsible for sexual assault. *Id.* at 10, 14.

o.  Tulane failed to follow its written procedures when reviewing and determining the outcome of Plaintiff's appeal. *Id.* at p. 19.

527.  The following is a non-exhaustive list of the ways in which Tulane violated Plaintiff's contractual right to due process by failing to follow its own binding procedures with respect to the April 11, April 14, 2022 and May 12, 2022 complaints filed by Plaintiff against Jane Doe, Sue Roe and N.B.:

a.  Tulane failed to promptly and equitably respond to Plaintiff's "reports of discrimination and harassment." Code of Student Conduct, p. 35.

92

    b.   Tulane failed to open an investigation of the complaints as "major matters." *Id.* at

         p. 7.

    c.   Tulane adopted an overly narrow view of "major matter" to avoid taking action

         against Sue Roe, Jane Doe and N.B. *Id.* at 7.

    d.   Tulane failed to effect any process under the "minor matter" provisions of the

         Code of Student Conduct. *Id.* at p. 8.

    e.   Tulane failed to provide Plaintiff with information about making a Formal

         Complaint. *Id.* at 51.

    f.   Tulane failed to provide Plaintiff with information concerning available resources

         to students who file complaints. *Id.* at 31, 48-50, 53.

    g.   Tulane failed to conduct a Title IX review or, if such review was conducted, failed

         to inform Plaintiff of the determination in writing. *Id.* at 53.

    h.   Tulane took no action with respect to Plaintiff's May 12, 2022 complaint. *Id.* at

         pp. 7-18, 35, 51-53.

528.    Tulane acted in bad faith, thereby breaching the covenant of good faith and fair dealing implied in its contract with Plaintiff, by materially deviating from its conduct process, following unwritten rules and applying inapplicable policies, to Plaintiff's detriment and in conformity with Tulane's policy of aggressively pursuing discipline against male students accused of sexual misconduct.

529.    Tulane's findings of responsibility and decision to expel Plaintiff were arbitrary and capricious because Tulane failed to follow its own binding procedures, substantially and materially deviated from its procedures such that it was difficult for Plaintiff to discern precisely

which procedures were being applied to his student conduct process, and Tulane's decisions were made in disregard of the evidence or the proper weight thereof.

530. Tulane's failure to act with respect to Plaintiff's complaints against Sue Roe, Jane Doe and N.B. was also arbitrary and capricious because Tulane failed to follow its own binding procedures, substantially and materially deviated from its procedures in order to benefit Sue Roe, Jane Doe and N.B. as female respondents and disregarded the substantial weight of evidence that supported Plaintiff's allegations.

531. As a proximate and foreseeable consequence of the foregoing breaches, Plaintiff was wrongly found responsible for sexual assault and severely sanctioned, and thus sustained damages, including, but not limited to, emotional distress, loss of future educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

532. Thus, Plaintiff is entitled to damages in an amount to be determined at trial, plus pre- and post-judgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing Tulane to: (i) reverse the outcome and findings regarding Sue Roe and Jane Doe; (ii) expunge Plaintiff's disciplinary record; (iii) remove the notation of expulsion from Plaintiff's transcript; (iv) remove any record of the investigation, findings and sanction from Plaintiff's education records and any other records kept at the University, including but not limited to public safety records, records kept by the development office, and any other departments maintaining such records; and (v) destroy any records concerning the complaints.

<div align="center">

**PRAYER FOR RELIEF**

</div>

**WHEREFORE**, for the foregoing reasons, Plaintiff demands judgment against Defendant as follows:

(i) On the first count for Violation of Title IX of the Education Amendments of 1972, a judgment against Tulane awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing Tulane to: (i) reverse the outcome and findings regarding Sue Roe and Jane Doe; (ii) expunge Plaintiff's disciplinary record; (iii) remove the notation of expulsion from Plaintiff's transcript; (iv) remove any record of the investigation, findings and sanction from Plaintiff's education records and any other records kept at the University, including but not limited to public safety records, records kept by the development office, and any other departments maintaining such records; and (v) destroy any records concerning the complaints;

(ii) On the second cause of action for Breach of Contract, a judgment against Tulane awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, as well as injunctive relief directing Tulane to: (i) reverse the outcome and findings regarding Sue Roe and Jane Doe; (ii) expunge Plaintiff's disciplinary record; (iii) remove the notation of expulsion from Plaintiff's transcript; (iv) remove any record of the investigation, findings and sanction from Plaintiff's education records and any other records kept at the University, including but not limited to public safety records, records kept by the development office, and any other departments maintaining such records; and (v) destroy any records concerning the complaints; and

(iii) Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Dated:    April 24, 2023

Respectfully submitted,

/s/ Alex T. Robertson
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar. No. 37230)
**Marcelle Robertson Mestayer LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax:    (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com
*Local Counsel for Plaintiff*

95

*- And -*

/s/ Andrew T. Miltenberg
Andrew T. Miltenberg (*pro hac vice* admission pending)
Kara L. Gorycki (*pro hac vice* admission pending)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500 (telephone)
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com
*Attorneys for Plaintiff*


**SERVICE TO BE ACCOMPLISHED BY WAIVER**

96

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JOHN DOE | The Administrators of the Tulane Educational Fund d/b/a Tulane University |

**(b)** County of Residence of First Listed Plaintiff   Charleston County, SC
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Orleans Parish, LA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Marcelle Robertson Mestayer LLC, 650 Poydras St., Ste. 2720, New Orleans, LA 70130

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [x] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681 et. seq

Brief description of cause:
Former Tulane University student wrongfully expelled following flawed disciplinary proceedings

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ TBD at trial

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
April 24, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# EXHIBIT 4

# FILED UNDER SEAL

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Louisiana

| | | |
|---|---|---|
| DOE | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   23-CV-1348 |
| THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND d/b/a TULANE UNIVERSITY | ) ) ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                        Jane Doe

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

SEE ATTACHED EXHIBIT A

| Place:   Ekstrand & Ekstrand LLP   110 Swift Avenue, Durham NC 27705 | Date and Time:   10/09/2023 3:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      09/08/2023

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Kara L. Gorycki |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      John Doe
_____ , who issues or requests this subpoena, are:

Kara Gorycki, Nesenoff & Miltenberg, LLP, 363 Seventh Ave., 5th Floor, New York, New York 10001, kgorycki@nmllplaw.com, 212-736-4500

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  23-CV-1348

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1.      "You" or "Your" means Jane Doe

2.      "Plaintiff" means John Doe, whose real identity is known to You.

3.      "Tulane" means Tulane University and all of its administrators, faculty, staff, employees, officers, directors, partners, corporate parent, subsidiaries or affiliates, agents, consultants and attorneys.

4.      "Document" or "documents" include, but are not limited to, "electronically stored information" as described in FRCP 34, "e-mail" and other forms of electronic documents, communications and data compilations, as well as any and all written, taped, recorded or graphic matter however produced or reproduced (together with attachments and annotations thereto or thereon), agreements, contracts, tapes, recordings or other forms of mechanical reproduction, reports, studies, summaries, memoranda, calendar or diary entries, written notes, articles, interviews, working papers, minutes, agendas, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, films, videotapes, and any other documents in your possession, custody or control, regardless of where located.

5.      "Communication" means the transmittal of information by any means, and shall mean and be deemed to refer to any writing or oral conversation, including, but not limited to, telephone conversations, conversations in meetings, letters, memoranda, notes, e-mails, text messages, messaging applications on cell phone or computer, voicemails, telegraphic and telex communications.

6.      "Concerning" means concerning, mentioning, discussing, relating to, describing, reflecting, constituting and/or evidencing.

1

7.      The words "all," "every," "any," "each," "one or more," and "including," shall include each other whenever possible to expand, not restrict, the scope of the request. The word "including" shall not be used to limit any general category or description that precedes it.

8.      The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the request.

9.      Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

10.     You shall comply with FRCP 45(e) by producing the requested documents as they are kept in the usual course or shall label and organize them to correspond with the categories in these requests.

11.     If any document was, but is no longer, in Your possession or control, state whether the document: (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) is otherwise disposed of, and in each instance explain the circumstances of such disposition, and state the approximate date thereof.

12.     If You object or fail to respond to any of the following requests, state specifically the reason for the objection or failure to respond and produce documents responsive to that part of the request to which no objection is made.

13.     If any privilege or immunity is asserted with respect to any document requested herein, expressly state which privilege and provide sufficient information about the nature of the withheld documents and communications in the manner set forth in FRCP 45(e)(2).

14.     If there are no responsive documents to these requests, or any portion of these requests, state that fact in writing.

2

15.    If any responsive documents are being withheld on the basis of an objection, state that fact in writing.

16.    Unless otherwise specified, the relevant time period for each request is September 1, 2021 through the present.

## REQUESTS

1.  All communications between You and Tulane concerning Plaintiff.

2.  Between January 1, 2021 and June 30, 2022, all communications between You and Sue Roe .

3.  All communications between You and Sue Roe concerning Plaintiff.

4.  Between January 1, 2022 and April 1, 2022, all communications between You and Noa Bangart.

5.  All communications between You and any other person concerning Plaintiff, including Katie Waters, Noa Banghart and Taylor Rappeport.

6.  Between January 1, 2022 through the present, all communications between You and any other person concerning the Tulane student conduct proceedings against Plaintiff.

7.  All documents that You received from Tulane concerning the student conduct proceedings against Plaintiff.

8.  All documents and communications that You provided to Tulane as part of the student conduct proceedings against Plaintiff.

9.  All documents and communications that You received from Tulane concerning Plaintiff's complaints against You.

10. All documents and communications that You provided to Tulane concerning Plaintiff's complaints against You.

11. All documents and communications concerning the petition that you filed against Plaintiff in Louisiana civil court seeking a temporary restraining order.

12. All communications between You and any other person concerning Plaintiff's complaints against You, Sue Roe and Noa Banghart.

3

13. All communications between You and Tulane concerning Harrison White.

14. Between August 1, 2018 through June 1, 2023, all communications with Tulane or any other college or university you attended concerning any report or complaint You made against any other person alleging a violation of any university policy.

15. A download of your Instagram data for the time period beginning on August 1, 2021 through the present. Data can be downloaded at: https://help.instagram.com/181231772500920

16. A copy of Your cell phone call log history from January 1, 2022 to July 1, 2022.

Original Filed at Docket No. 31,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | FILED UNDER SEAL<br><br>DEFENDANT Jane Doe  BRIEF IN IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) |

## INTRODUCTION

John Doe    a resident of South Carolina, sued Jane Doe alleging that she defamed him when she claimed that he sexually assaulted her while they were both students at Tulane University.  John Doe    alleges that Jane Doe reported the assault to Tulane and to numerous other people on campus.

There is no indication that any witnesses to these events currently reside in the Eastern District of North Carolina or that any relevant events took place here.  Instead, the relevant events alleged in John Doe    amended complaint occurred in the Eastern District of Louisiana and many witnesses are Louisiana residents.

Several months after filing this case, John Doe    sued Tulane in the United States District Court for the Eastern District of Louisiana, alleging that Tulane's disciplinary process was biased and flawed when Tulane found him responsible for sexually assaulting Jane Doe and another Tulane student.

These two cases arise out of the same set of operative facts.  Leaving the two cases in separate courts will lead to significant inefficiencies.  Witnesses will have to be deposed multiple times.  Documents that are in Tulane's possession will have to be obtained by subpoena here,

and by document requests there.  Indeed, John Doe    has already served a subpoena on

Jane Doe  in the Tulane case.  Both parties will incur increased legal costs and risk inconsistent

verdicts if the cases proceed in separate venues.

John Doe    has asserted five state law claims against Jane Doe claims that will be

governed by the Louisiana Civil Code, not North Carolina common law, and thus claims that

courts in Louisiana are more familiar with handling.  And John Doe    asserts a claim for

abuse of process of the Louisiana civil courts—a claim that Louisiana has an interest in

adjudicating.

Thus, for the convenience of the parties and witnesses, and in the interest of justice,

Jane Doe respectfully requests that the Court transfer this case to the Eastern District of

Louisiana.

## STATEMENT OF RELEVANT FACTS

*Sexual assault allegations against* John Doe

This case arises out of John Doe    February 2022 sexual assault of Jane Doe  *See*

Am. Compl. ¶ 32 (DE 23).  John Doe    alleges that he did not sexually assault Jane Doe

and that Jane Doe statements to the contrary are defamatory.  *See, e.g., id.* ¶¶ 33-43, 46, 93-96.

After Jane Doe told one of John Doe    friends about the assault, John Doe

began to hear rumors about the assault from multiple Tulane students.  *See id.* ¶¶ 32-36.

Jane Doe confronted John Doe    about the assault in a text message, where she recounted

him touching her and masturbating on her without her consent and called him a "repeat

offender."  *Id.* ¶ 37.  John Doe    assumed that Jane Doe was calling him a repeat offender

because of an incident he had with another female Tulane student, whom he identified as "Sue

Roe."  *See id.* ¶ 41.

2

John Doe met with multiple friends about Jane Doe allegations, and the president of John Doe fraternity learned of the allegations. *Id.* ¶ 39. John Doe friends called his parents to say that it was not safe for John Doe to remain on Tulane's campus. *Id.* John Doe continued to discuss and hear about the sexual assault allegations on campus. *See id.* ¶ 40. Several of his friends stopped responding to his text messages and calls as Jane Doe allegations were "spreading rapidly among fellow Tulane Students." *Id.* ¶ 43. Days later, John Doe was kicked out of his fraternity's group chat and he learned that the sexual assault allegations were circulating in the group chat after he was removed. *Id.* ¶ 44. Several days after first hearing of Jane Doe allegations, and "[d]ue to the mental anguish and heightened anxiety" he was experiencing, John Doe withdrew from Tulane for the semester, "as he had already completed enough credits the prior semester to graduate." *Id.* ¶ 45.

*Tulane investigation and Louisiana petition for restraining order*

John Doe alleges that after the assault, Jane Doe "strategically utilized and manipulated Tulane's Title IX investigation process to further a malicious vendetta against [him]." *Id.* ¶ 3. Both Jane Doe and Sue Roe reported that John Doe sexually assaulted them, resulting in an investigation by Tulane. *Id.* ¶¶ 47-48; Affidavit of Erica Woodley ¶¶ 3-4 (DE 29-1). All student witnesses identified in Jane Doe report to Tulane were undergraduate students at the university living in New Orleans, Louisiana. Woodley Aff. ¶ 5. Tulane investigator Jacqueline Barber interviewed the witnesses, meeting with thirteen witnesses in her office on Tulane's campus and interviewing five more through remote means. *Id.* ¶ 6. Multiple other Tulane administrators were involved in the investigation and disciplinary process. *Id.* ¶ 7.

While Tulane's investigation was ongoing, Jane Doe filed a petition for protection from abuse in Louisiana civil court seeking to restrain John Doe from contacting her through

third parties and from entering Tulane's campus.  Am. Compl. ¶ 87.  Jane Doe alleged in the petition for restraining order that John Doe had been harassing, intimidating, and stalking her.  *Id.*  John Doe alleges that Jane Doe filed the petition to "bolster her claims and restrict [John Doe from contacting relevant witnesses in the Tulane investigation."  *Id.* ¶ 88.  John Doe appeared in Louisiana civil court at a hearing to seek dismissal of the restraining order.  *Id.* ¶ 89.  The matter was dismissed because Jane Doe did not appear.  *Id.* John Doe alleges that Jane Doe allegations of harassment in Louisiana court were made "with malicious intent in order to serve her own self interest in the Tulane investigation."  *Id.*

At the conclusion of Tulane's investigation, John Doe was found responsible for sexual assault and Tulane determined that he should be expelled from the university.  *Id.* ¶ 90.

John Doe *complaint against* Jane Doe

John Doe filed this action against Jane Doe when she was still a student at Tulane living in New Orleans.  Declaration of Jane Doe ¶ 4 (DE 29-2).  John Doe alleges that he and Jane Doe were students at Tulane during the events described in his complaint.  Am. Compl. ¶¶ 6-7.  He alleges that he was "heavily involved in the Tulane community" and that he intended to attend business school at Tulane after graduation.  *Id.* ¶¶ 11-12.

According to John Doe when he applied to Tulane, he reviewed a copy of the Tulane University Code of Student Conduct (the "Code"), and he understood that the Code prohibited furnishing false information to the university.  *Id.* ¶ 13.  He thus enrolled at Tulane "with the understanding that he would be afforded a fair and equitable educational experience, free from the Code's expressly Prohibited Conduct."  *Id.*

John Doe asserts five claims that, as shown below, arise under Louisiana state law: (1) defamation, (2) abuse of process, (3) tortious interference with contract, (4) intentional

infliction of emotional distress, and (5) civil conspiracy.  *See id.* ¶¶ 92-153.  John Doe alleges that Jane Doe made "false and defamatory statements about [him] to administrators at Tulane University, to the president of [John Doe fraternity, to [his] friends, to the Louisiana civil court, as well as to numerous fellow students."  *Id.* ¶ 93.  He further alleges that as a result of these purportedly false statements, he suffered harm, including the loss of his "tuition, academic career, impending college degree, future career aspirations, and the lifelong business and social relationships that would have been developed through his association with fellow Tulane students and membership in the fraternity."  *Id.* ¶ 102.  He alleges that Jane Doe abused the process of a Louisiana civil court in seeking a restraining order and abused Tulane's Title IX process.  *Id.* ¶¶ 111, 116.  John Doe alleges that Jane Doe was aware that he had a contract with Tulane and that she intentionally and maliciously induced Tulane not to perform the contract, depriving John Doe of a fair and equitable grievance process and causing him to be banned from campus and dismissed from the university.  *Id.* ¶¶ 125-133.  He alleges that Jane Doe intentionally inflicted severe emotional distress on him by reporting the sexual assault and participating in Tulane's investigation, causing him to be dismissed from Tulane and to suffer damage to his reputation and ostracism from his peers.  *Id.* ¶¶ 137-142.  Finally, he alleges that Jane Doe conspired with Sue Roe to defame him.  *Id.* ¶ 148.

*Lawsuit against Tulane*

After suing Jane Doe John Doe filed a separate lawsuit against Tulane in federal court in Louisiana, where he alleges that Jane Doe "engaged in a false and defamatory smear campaign against [him], which resulted in threats to his physical safety, causing him to leave Tulane."  Compl. ¶ 4, *Doe v. Adm'rs of Tulane Educ. Fund*, No. 2:23-cv-01348 (E.D. La. Apr.

24, 2023) (DE 30-1) [hereinafter *Doe* Compl.].[1]  He claims that when Jane Doe and Sue Roe reported that he sexually assaulted them, Tulane engaged in "biased and flawed disciplinary proceedings against Plaintiff" and wrongfully imposed sanctions on him as a result of those biased and flawed proceedings.  *Id.* ¶ 1.  He asserts two claims against Tulane, one under Title IX and one for breach of contract.  *Id.* ¶¶ 494-532.

Jane Doe *partial motion to dismiss*

Jane Doe has filed a partial motion to dismiss this case, asserting that the claims are governed by Louisiana law and that John Doe fails to state a claim for abuse of process, tortious interference with contract, or civil conspiracy under Louisiana law.  (DE 27, 28).  Certain of Jane Doe arguments depend on unique aspects of Louisiana law; for example, she contends that John Doe fails to state a claim for tortious interference with contract because Louisiana law does not recognize a tortious interference claim outside the corporate officer context.  (DE 28 at 11-14).

## ARGUMENT

**TRANSFER TO THE EASTERN DISTRICT OF LOUISIANA IS APPROPRIATE UNDER 28 U.S.C. § 1404(a).**

Pursuant to 28 U.S.C. § 1404(a), this Court may transfer this case to any other district where it may have been brought "for the convenience of parties and witnesses, in the interest of justice."  This statute gives discretion to the district courts to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."

---

[1] The Louisiana federal court allowed the case to be filed under a pseudonym, so John Doe complaint there refers to him as John Doe and Jane Doe as Jane Doe.  *See Doe* Compl. at 1-2 (DE 30-1).  Many allegations in the Tulane case are substantively identical to the allegations in this case.  *E.g.*, *compare Doe* Compl. ¶¶ 163-213 (DE 30-1) *with* Am. Compl. ¶¶ 19-45 (DE 23).

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The "policy underlying the statute is to 'prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Willingham v. Univ. of N.C.*, No. 5:14-CV-432-BO, 2014 WL 6606578, *1 (E.D.N.C. Nov. 19, 2014) (citing *Van Dusen*, 376 U.S. at 616).

First, the party seeking transfer must show that personal jurisdiction and venue would have been proper in the transferee forum.  *See Szulik v. TAG V.I., Inc.*, 858 F. Supp. 2d 532, 547 (E.D.N.C. 2012).  This requirement is met here since Jane Doe would be subject to personal jurisdiction in Louisiana, and venue would be proper because the relevant events occurred in Louisiana.

Second, the court weighs a variety of factors, including "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).  But the ultimate decision as to whether transfer is appropriate "is not reached by cataloguing the weighted result of each factor, but rather is within the 'art of judging.'" *Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*, No. 5:20-CV-46-M, 2020 WL 4913280, *5 (E.D.N.C. Aug. 20, 2020) (citation omitted).

These factors weigh in favor of transfer here as the relevant events occurred in Louisiana, the applicable law is that of Louisiana, many witnesses reside in Louisiana, and Louisiana federal courts are less congested.  Absent transfer, the parties will engage in duplicative discovery and force witnesses to testify multiple times about the same operative events.  That could also create a risk of inconsistent rulings in the two cases.

The only factor favoring John Doe is deference to his choice of forum.  But because his causes of action bear no relation to this forum and he is not a resident of the forum, this deference is diminished, and does not outweigh the other factors.  *See Bannister v. Wal-Mart Stores East, L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) (courts apply less weight to this factor when plaintiffs are non-residents of the forum state).

### A.      This Case Could Have Been Brought in the Eastern District of Louisiana.

The first inquiry—whether the case could have been brought in the transferee district—requires courts to independently find that personal jurisdiction and venue would be proper in the proposed transferee district if the plaintiff had originally filed there.  *Szulik*, 858 F. Supp. 2d at 547-48 (citing *Hoffman v. Blaski*, 363 U.S. 335, 340-44 (1960)).

Jane Doe would have been subject to specific personal jurisdiction in Louisiana under the facts alleged in the amended complaint.  "Personal jurisdiction over a non-resident defendant is determined by the state's long-arm statute and the due process clause."  *In re Am. River Transp. Co.*, 533 F. Supp. 3d 355, 361 (E.D. La. 2021) (citing *ICEE Distrib. Inc. v. J&J Snack Foods*, 325 F.3d 586, 591 (5th Cir. 2003)).  "Because Louisiana's long-arm statute extends to the limits of the due process clause of the Fourteenth Amendment, the inquiry is whether subjecting a defendant to personal jurisdiction in Louisiana would offend due process."  *Id.* (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 335 (5th Cir. 1999)).  The Fifth Circuit applies a three-step analysis to determine specific personal jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether [she] purposely directed [her] activities toward the forum state or purposefully availed [herself] of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or result from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and

<div align="center">8</div>

reasonable." *Id.* at 361-62 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

Here, John Doe alleges that Jane Doe made "false and defamatory statements about [John Doe to administrators at Tulane University, to the president of [his] fraternity, to [his] friends, to the Louisiana civil court, as well as to numerous fellow students." Am. Compl. ¶ 93. This allegation meets the first and second prongs necessary to establish specific personal jurisdiction: Jane Doe was living in New Orleans and attending Tulane University at all relevant times, *id.* ¶ 7, and John Doe alleges that she committed torts in Louisiana, *see, e.g.*, *id.* ¶¶ 7, 32-91. Jane Doe thus had minimum contacts with Louisiana, and John Doe claims arise from those contacts. *See, e.g.*, *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625-28 (5th Cir. 1999) (concluding that plaintiffs made adequate showing of specific personal jurisdiction where plaintiffs alleged that defendants committed torts in Louisiana and claims arose from defendants' contacts with Louisiana).

And Jane Doe was living in Louisiana when this case was filed, Jane Doe Decl. ¶ 4, such that Louisiana courts exercising jurisdiction over her would not offend the traditional notions of fair play or substantial justice. *See Benson v. Rosenthal*, 116 F. Supp. 3d 702, 713 (E.D. La. 2015) (finding jurisdiction did not offend traditional notions of fair play when defendant traveled to Louisiana on several occasions). Indeed, John Doe alleges that Jane Doe herself sought to avail herself of the protection of Louisiana courts when she filed a petition for protection from abuse against him. Am. Compl. ¶ 87. Louisiana courts could have exercised personal jurisdiction over Jane Doe if John Doe had filed this suit there.

The United States District Court for the Eastern District of Louisiana would have had subject matter jurisdiction. There is complete diversity between the parties and John Doe

alleges an amount in controversy exceeding $75,000. *See id.* ¶¶ 6-8; 28 U.S.C. § 1332 (the district courts shall have original jurisdiction in diversity cases).

Venue would also have been proper in the Eastern District of Louisiana, because a "substantial part of the events or omissions giving rise to the claim" occurred in the district. *See* 28 U.S.C. § 1391(b)(2). Tulane is in New Orleans, Louisiana. Woodley Aff. ¶ 5; *see* Am. Compl. ¶ 6. Orleans Parish is within the Eastern District of Louisiana. *See* 28 U.S.C. § 98(a). John Doe alleges that "during the events described" in his complaint, he was a student at Tulane and Jane Doe was a student at Tulane. Am. Compl. ¶¶ 6-7. Jane Doe reported the sexual assault to Tulane students and administrators, *see id.* ¶ 93, Tulane's investigation occurred in New Orleans, Woodley Aff. ¶¶ 5-6, and the Tulane civil court proceedings occurred in New Orleans, Am. Compl. ¶ 89.

Thus, this case could have been filed in the Eastern District of Louisiana.

**B.    The Factors Considered in a Transfer Motion Weigh in Favor of Transfer.**

Courts within the Fourth Circuit consider four factors when deciding whether to transfer venue: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Plumbers & Pipefitters*, 791 F.3d at 444. "In balancing these factors, a district court[] has substantial discretion to decide whether to transfer venue." *People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, No. 5:16-CV-268-D, 2016 WL 11795311, *2 (E.D.N.C. Nov. 16, 2016) (citing *Stewart*, 487 U.S. at 29; *Brock v. Entre Comput. Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991); and *Jenkins v. Albuquerque Lonestar Freightliner, LLC*, 464 F. Supp. 2d 491, 493 (E.D.N.C. 2006)).

John Doe choice of this forum is entitled to less deference because he is not a North Carolina resident and none of the operative events in the amended complaint occurred in

10

North Carolina.  There are no apparent witnesses who reside in this district, and multiple witnesses who reside in the Eastern District of Louisiana.  Neither party is a resident of North Carolina.

The interests of justice weigh in favor of transfer.  There is already a related case pending in the Eastern District of Louisiana, and transfer would permit consolidation of those cases for discovery, promoting judicial economy.  Louisiana courts have an interest in adjudicating cases involving Louisiana law and abuse-of-process claims involving Louisiana courts.  There are fewer cases per judge in the Eastern District of Louisiana and cases thus move faster towards trial in that district than they do here.  Finally, there is a risk of inconsistent rulings if the cases proceed in different venues, as there are overlapping issues between the two cases.

All in all, the § 1404(a) factors weigh in favor of transfer.

1.  John Doe   choice of forum receives little deference because he does not reside in North Carolina and all of the events alleged in the amended complaint occurred in Louisiana.

While the plaintiff's choice of forum generally receives some deference, that deference is "proportionate to the relationship between the forum and the cause of action." *Bannister*, 843 F. Supp. 2d at 615.  Thus, the plaintiff's choice of forum receives less weight when the plaintiff chooses a foreign forum or the cause of action "bears little or no relation to the chosen forum." *Speed Trac Techs. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008). Here, both are true—John Doe   filed in a foreign forum and his claims bear no relation to this forum.  Therefore, his choice of forum warrants little deference.

In *Speed Trac*, the plaintiff was at least a resident of North Carolina, but it filed suit in Forsyth County (the Middle District) when its principal office was in Charlotte (the Western District).  *Id.*  The causes of action in *Speed Trac* also bore no relationship to the Middle District

11

of North Carolina; the key operative events occurred in Charlotte and Richmond, Virginia. *Id.* Because of these facts, the court found that plaintiff's choice of forum was "accorded diminished weight." *Id.* at 804; *see also Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) (transferring case when "North Carolina [bore] little relation to the parties' dispute").

Jane Doe is now a resident of Colorado,[2] and John Doe is a resident of South Carolina. Jane Doe Decl. ¶¶ 1, 6; Am. Compl. ¶ 6. Neither party lives in this district. In addition, in his allegations in the amended complaint, John Doe does not mention a single event that occurred in North Carolina. *See* Am. Compl. *passim.* The only time North Carolina is mentioned in the amended complaint is the allegation, upon information and belief, that Jane Doe is a resident of Wake County, North Carolina, *id.* ¶¶ 7, 9, and the allegation that Jane Doe told John Doe she had transferred to Tulane from North Carolina State University, *id.* ¶ 74. All of the underlying events alleged in the amended complaint occurred in Louisiana. *See supra* pp. 2-5.

For these reasons, John Doe choice of forum is entitled to diminished weight. *See Speed Trac*, 567 F. Supp. 2d at 804.

> 2. <u>The amended complaint does not disclose any witnesses who live in North Carolina but does identify multiple witnesses who are Louisiana residents.</u>

There are no witnesses identified in the amended complaint who reside in the Eastern District of North Carolina. Jane Doe lives in Colorado, Jane Doe Decl. ¶¶ 1, 6, and John Doe lives in South Carolina, Am. Compl. ¶ 6.

At the time Jane Doe reported to Tulane that John Doe sexually assaulted her, all the students identified in that report were enrolled as undergraduates at Tulane and maintained

---

[2] Jane Doe is originally from North Carolina, and her parents still reside here. Jane Doe Decl. ¶ 5.

local physical addresses in New Orleans, Louisiana.  Woodley Aff. ¶ 5.  Tulane assigned

Jacqueline Barber to investigate Jane Doe complaint from Tulane's campus in New Orleans.

*Id.* ¶ 6.  Ms. Barber interviewed thirteen witnesses in her office and conducted telephone or

Zoom interviews with an additional five witnesses.  *Id.*

In addition to Ms. Barber and Ms. Woodley, five other current and former Tulane

employees and affiliates had knowledge of Jane Doe complaint, the investigation, the ultimate

finding, and the sanction imposed on John Doe

(1)  Dr. Christopher Zacharda, the then-director of Tulane's Office of Student Conduct;

(2)  Julia Broussard, Associate Director of Tulane's Title IX Office;

(3)  Dr. Dusty Porter, Tulane University Vice President, Student Affairs;

(4)  Alison Cofrancesco, Director of the Office of Case Management and Victim Support Services; and

(5)  Avery Pardee, a Tulane University affiliate

*Id.* ¶ 7.  All of these witnesses, with the exception of Dr. Zacharda, continue to reside in the New

Orleans area.  *Id.* ¶ 8.  Two of these individuals, Christopher Zacharda and Ms. Barber, are

identified by name in the amended complaint.  *See* Am. Compl. ¶¶ 48, 50.  Several others are

referred to by titles rather than names.  *See id.* ¶¶ 46, 70 (a "Student Affairs Professional" and a

"SAPHE Professional").

In addition to these witnesses, John Doe himself identifies twenty additional

individuals by initials in the complaint.  Jane Doe does not recognize all of those initials, but she

is aware of the whereabouts of some of the people she believes John Doe identified by

their initials.  *See* Jane Doe Decl. ¶¶ 7-13.  At least one individual still lives in Louisiana, and a

second possibly lives in Louisiana.  *Id.* ¶¶ 10, 12.  None are North Carolina residents.  *Id.*

13

Jane Doe is not aware of the whereabouts of eight of these individuals, but since they are all identified as Tulane students, some may remain Louisiana residents. *See id.* ¶ 13.

Witness convenience weighs strongly in favor of transfer where John Doe identifies no witnesses who live in North Carolina, but numerous witnesses are Louisiana residents. *See Hubbard v. Eitan Grp. N. Am.*, -- F. Supp. 3d --, 2023 WL 2959991, *7 (E.D.N.C. Apr. 14, 2023) (transferring case to California where all defendants' witnesses were located in California or Israel); *United States v. Mims Mgmt. Grp., LLC*, No. 5:14-CV-907-RJ, 2019 WL 13140459, *1 (E.D.N.C. May 1, 2019) (transferring False Claims Act case to Alabama where the "Relators, Defendants, and witnesses all live in Alabama").

        3.    <u>The convenience of the parties favors transfer as neither party lives in North Carolina and</u> John Doe <u>is already litigating a case in Louisiana about the same operative facts.</u>

The third factor, the convenience of the parties, also weighs in favor of transfer. Neither party currently lives in North Carolina. John Doe alleges that he is a resident of Charleston, South Carolina. Am. Compl. ¶ 6. Jane Doe moved to Colorado following her graduation from Tulane in May 2023. <sup>Jane Doe</sup> Decl. ¶ 6.

Litigating this case in North Carolina will be inconvenient for both parties. While litigating the case in Louisiana will also be inconvenient for Jane Doe John Doe is already litigating a case in the Eastern District of Louisiana against Tulane arising out of the same events as this case. (DE 30-1). John Doe cannot complain about the inconvenience of transfer when he has chosen to file a related case in the same district where Jane Doe seeks to transfer this case. *See, e.g., In re Willingham Patent*, 322 F. Supp. 1019, 1020 (J.P.M.L. 1971) (finding that transfer would cause no inconvenience because substantially all parties were before transferee court in related cases).

This factor favors transfer.  *See Hubbard*, 2023 WL 2959991 at *7 (transferring case when the plaintiff moved to North Carolina after relevant events but the other parties were not North Carolina residents).

> 4.    <u>The interest of justice strongly favors transfer as there is a pending related case in the Eastern District of Louisiana, Louisiana has an interest in deciding cases involving its law and courts, and litigating in two separate venues creates a risk of inconsistent verdicts.</u>

The final factor, the "interest of justice," encompasses public interest factors aimed at "systemic integrity and fairness."  *Stewart*, 487 U.S. at 30.  These public interest factors include "the relative congestion of the transferee and transferor courts, the particular interest a forum may have in deciding a case, and the preference for judicial efficiency and consistency."  *PETA, Inc.*, 2016 WL 11795311 at *3.  The interest of justice weighs strongly in favor of transfer.

> a.    *There is a pending related action in the Eastern District of Louisiana.*

There is a pending related action in Louisiana between John Doe    and Tulane.  *See supra* pp. 5-6.  In that case, John Doe    alleges that Tulane wrongfully imposed sanctions on him and conducted a biased and flawed disciplinary proceeding arising out of the complaints Jane Doe and Sue Roe made after John Doe    sexually assaulted them.  *See Doe* Compl. ¶¶ 1-4 (including allegation that "Jane Doe engaged in a false and defamatory smear campaign against Plaintiff").

Given the similarity of the two cases, discovery between the two cases is likely to overlap significantly.  *See* Jane Doe Decl. ¶ 15.  Jane Doe has already received a subpoena from John Doe    in the Tulane case, and that subpoena seeks discovery pertaining to the same facts that give rise to this case.  *See id.* ¶ 14; Subpoena to Jane Doe (DE 30-2).  Transfer is in the interest of justice because it will permit Jane Doe to ask the transferee court to consolidate the

15

two cases for discovery, saving valuable resources of the parties and the judiciary.  *See* Fed. R. Civ. P. 42(a).  This factor overlaps with the convenience of witnesses in that transfer could result in numerous third-party witnesses only sitting for deposition once, rather than twice.

A district court in this Circuit transferred a case under similar circumstances.  *See Noetic Specialty Ins. Co. v. N.C. Mut. Wholesale Drug Co.*, 453 F. Supp. 3d 842 (E.D. Va. 2020) (transferring case to Middle District of North Carolina when defendant was already engaged in litigation there).  Other district courts have transferred cases when judicial economy would be promoted because of pending cases in the transferee forum.  *See AVCO Corp. v. Marvel-Schebler Aircraft Carburetors, LLC*, No. 10-cv-2026, 2011 WL 484186, *3 (M.D. Penn. Feb. 7, 2011) (transferring case to Middle District of North Carolina to provide safeguard against conflicting resolutions of same issue and save parties and court system expense of twice litigating same issue); *Chruby v. Global Tel*Link Corp.*, 119 F. Supp. 3d 399, 403 (E.D. Va. 2015) (transferring case to Western District of Arkansas where several other cases were pending involving "same parties, the same underlying facts, and in some instances the same counsel" and encouraging consolidation and coordination with those cases).[3]

> b.  *Louisiana has a particular interest in having a Louisiana court decide this case as it involves Louisiana's unique law and an allegation of abuse of Louisiana courts.*

The local interest in this case is much greater in Louisiana than North Carolina.  All of the operative events alleged in the amended complaint occurred in Louisiana.  *See supra* pp. 2-6. The claims John Doe brings will be decided under Louisiana law regardless of where they are tried.  *See Waterford I at Cary Park Condo. Homeowners Ass'n v. Nationwide Prop. & Cas.*

---

[3] Relevant to this point, John Doe is represented by the same counsel at Nesenoff & Miltenberg, LLP in Louisiana as he is here.  *See Doe* Compl. at 96.

*Ins. Co.*, -- F. Supp. 3d --, 2023 WL 2959868, *4 (E.D.N.C. 2023) ("North Carolina law uses the law of the situs test to determine choice of law for tort claims"). John Doe allegations show that his alleged injuries occurred in Louisiana. John Doe alleges that he was "a student at Tulane during the incidents described" in the complaint and that he planned to graduate and then attend business school at Tulane. Am. Compl. ¶¶ 1, 11. Jane Doe and Sue Roe made the allegedly defamatory statements to the Tulane community. *See id.* ¶ 80 (alleging that Jane Doe made false statements to "Tulane investigator Barber, fellow Tulane students, Louisiana civil court, and numerous people who were friends with" John Doe who was then a student at Tulane), ¶ 93 (alleging that Jane Doe made false statements to "administrators at Tulane University, to the president of Plaintiff's fraternity, to Plaintiff's friends, to the Louisiana civil court, as well as to numerous fellow students"), ¶ 148 (alleging that Jane Doe and Ms. Roe reported sexual assault allegations to Tulane University and John Doe fraternity). John Doe alleges that he suffered injuries at Tulane as a result of the purported defamation—his friends stopped responding to his texts and calls, the sexual assault allegations were "spreading rapidly among fellow Tulane Students," John Doe was kicked out of his fraternity group chat, and he experienced so much anguish and anxiety that he left campus. *Id.* ¶¶ 43-45.[4] John Doe alleges that Jane Doe prevented Tulane from performing its contract with John Doe and that as a result, John Doe was banned

---

[4] Consistent with these allegations about John Doe reputation being injured at Tulane, John Doe argued to the Fourth Circuit that Jane Doe made the statements alleged to have caused his harm "to a specific audience—predominantly Tulane administrators, students and Jane Doe Instagram and TikTok followers." Reply Br. 20-21, *Doe v. Doe*, No. 23-1058 (4th Cir. April 19, 2023). John Doe noted that he did not allege that Jane Doe identified him by name on Instagram or TikTok. *Id.* 21. He identified the group of people "who know about [Jane Doe allegations against him" as "including his friends, former classmates and Tulane's administrators." *Id.* 22.

from campus and dismissed from the university, causing him to lose his tuition payment and college degree and harming his career prospects. *Id.* ¶¶ 125-134. He further alleges that Jane Doe abused the process of Louisiana civil courts and Tulane's Title IX process. *See id.* ¶¶ 111, 116. Because all of these alleged injuries occurred in Louisiana, Louisiana law will govern. *See, e.g.*, *EKG Sec., Inc. v. Tailormade Protective Servs., LLC*, No. 3:21-CV-00599-RJC-DCK, 2022 WL 4477713, at *3 (W.D.N.C. Sept. 26, 2022) (concluding that North Carolina law applied where defendant's alleged interference with contract occurred in North Carolina); *Coker v. Norwich Com. Grp., Inc.*, No. CV 3:20-03071-MGL, 2021 WL 4037472, at *4 (D.S.C. Sept. 3, 2021) (applying South Carolina lex loci rule to conclude that abuse of process claim arising from proceeding before Texas agency was governed by Texas law); *Verona v. U.S. Bancorp*, No. 7:09-cv-057-BR, 2011 WL 1252935, at *10 n.6 (E.D.N.C. Mar. 29, 2011) (recognizing that, despite lack of North Carolina case directly on point, "general rule for defamation claims is the place of harm is the place of publication"); *see also Wells v. Liddy*, 186 F.3d 505, 521-22 (4th Cir. 1999) (noting that "[i]n defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published," and concluding, under Maryland lex loci rule, that Virginia law applied defamation claim arising from speech given at university in Virginia).

Further, one of John Doe claims is for abuse of process. Am. Compl. ¶¶ 110-123. This claim refers to Jane Doe petition for protection that she filed in Louisiana state court. *Id.* ¶ 87. Louisiana has a greater interest than North Carolina in adjudicating claims involving allegations of abuse of the process of Louisiana courts. *See, e.g.*, *Marietta Area Healthcare, Inc. v. King*, No. 2:20-cv-00639, 2021 WL 606869, at *3-4 (S.D. W. Va. Feb. 16,

18

2021) (transferring case that included claim for abuse of process to district where the allegedly false and abusive claims were originally filed).

And while federal courts regularly apply the laws of other states than the one in which they sit, this case presents a slightly different tenor because the state law claims at issue here will be governed by Louisiana's Civil Code, and not the common law. As just one example, Jane Doe has moved to dismiss John Doe claim for tortious interference with contract because under the Louisiana Civil Code, such a claim is far more limited than it is under the common law. (*See* DE 28 at 12-14). The difference between Louisiana's Civil Code and the common law weighs in favor of transferring this case to a federal court in Louisiana. *See Ecoproduct Sols. LP v. MMR Constructors, Inc.*, No. H-06-3671, 2007 WL 4414039, *5 (S.D. Tex. Dec. 14, 2007) (noting that Louisiana federal courts are "expert in Louisiana law, which often varies considerably from that of common law states" and concluding that "this factor very much supports transfer to the Middle District of Louisiana").

The interest of Louisiana courts in adjudicating this case thus weighs strongly in favor of transfer.

> c.    *Docket conditions favor transfer as the Eastern District of Louisiana has three times as many Article III judges and a less congested docket per judge than the Eastern District of North Carolina.*

Docket conditions also favor transfer because this Court has more pending cases per judge than the Eastern District of Louisiana. *See Szulik*, 858 F. Supp. 2d at 549 (concluding that docket conditions favored transfer where transferee court had fewer cases per judge).

The Eastern District of Louisiana currently has twelve active district judges and three active district judges on senior status. *See* Eastern District of Louisiana Website Excerpt (DE

19

29-5).  By contrast, this district has only four active district judges and no active district judges on senior status.  *See* Eastern District of North Carolina Website Excerpt (DE 29-6).

Not surprisingly, this discrepancy in the number of judgeships results in far more filings per judge here than in the Eastern District of Louisiana.  In this district, there were 977 unweighted and 763 weighted filings per judgeship in the most recently reported year, compared to 465 unweighted and 543 weighted filings per judgeship in the Eastern District of Louisiana.  *See* Federal Judicial Caseload Statistics, Table X-1A, *U.S. District Courts—Weighted and Unweighted Filings Per Authorized Judgeship During the 12-Month Period Ending March 31, 2023*, https://www.uscourts.gov/statistics/table/x-1a/federal-judicial-caseload-statistics/2023/03/31 (last visited Dec. 14, 2023) (DE 29-7).  And these data are for the twelve-month period ending March 31, 2023.  Under the Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804(b), the Eastern District of North Carolina has exclusive jurisdiction and venue over cases brought pursuant to that act.  According to a recently filed joint status report, there were 1,433 cases brought under that act between February 11, 2023, and November 27, 2023, resulting in each of the four judges in this district being assigned between 343 and 370 new cases.  *See* Joint Status Report, *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023), available at https://ecf.nced.uscourts.gov/doc1/13119289206 (last visited Dec. 15, 2023) (DE 29-8).  The Camp Lejeune Justice Act is likely to continue to contribute to this Court's already heavy caseload.

This Court's extraordinary and growing caseload weighs heavily in favor of transfer.  *See Szulik*, 858 F. Supp. 2d at 549.

> d.   *Preference for judicial efficiency and consistency warrants transfer as there is a risk of inconsistent rulings if the cases proceed in different venues.*

There is a significant risk of inconsistent rulings if this case and John Doe case against Tulane are litigated in separate forums, and this factor also weighs in favor of transfer. *See Noetic*, 453 F. Supp. 3d at 847-48.

The court in *Noetic* recognized this risk of inconsistent rulings when two courts are interpreting similar issues. *See id.* In *Noetic*, there were two separate cases to determine available insurance coverage for underlying opioid cases; the transferor court found there was a greater risk of inconsistent applications of North Carolina law if the cases were litigated in different states. *Id.*

Here, the resolution of John Doe defamation claim against Jane Doe rises and falls along the same lines as his Title IX case against Tulane. John Doe alleges numerous flaws in the Title IX investigation in his complaint against Tulane, *Doe* Compl. ¶¶ 515-516, and titles one section of his complaint here "Jane Doe Provides False Information and Submits Doctored Evidence to Tulane Investigator," Am. Compl. at 21. There is a risk that one court might find that Jane Doe did not provide false information to Tulane and the other might find that she did. As another example, John Doe alleges in this case that Jane Doe induced Tulane to breach its contract with John Doe *id.* ¶¶ 125-134, and he alleges in the Tulane case that Tulane breached its contract with him, *Doe* Compl. ¶¶ 524-532. Litigating those two claims separately risks a finding in one court that there was no breach of contract, and a finding in another court that there was.

21

And as stated above, there will be significant opportunities for judicial economy if the case is transferred for the potential consolidation of discovery with the Tulane action.  *See* Fed. R. Civ. P. 42(a).

<p style="text-align:center">*        *        *</p>

Overall, the public interest factors weigh significantly in favor of transfer.  Neither party is a resident of North Carolina.  All of the operative events discussed in the amended complaint occurred in Louisiana.  No third-party witnesses live in North Carolina; numerous third-party witnesses live in Louisiana.  This case will be decided under Louisiana law, which is unique among the fifty states.  This case involves an allegation that Jane Doe abused the process of Louisiana courts.  Finally, John Doe is already litigating a case in the Eastern District of Louisiana that arises out of the same set of operative facts.  Transfer is in the interest of justice, and Jane Doe respectfully requests that this Court transfer this case to the Eastern District of Louisiana.

## CONCLUSION

For the reasons stated above, Defendant Jane Doe respectfully requests that the Court grant her motion and transfer this case to the United States District Court for the Eastern District of Louisiana.

<p style="text-align:center">22</p>

This the 15th day of December, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

23

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

John Doe            ,

        Plaintiff,

   v.

Jane Doe,

        Defendant.

| | |
|---|---|
| **Original Filed at Docket No. 32,** **Sealed by Court Order** | |

DEFENDANT Jane Doe'S NOTICE
OF FILING PROPOSED SEALED
DOCUMENTS

Pursuant to Local Civil Rule 79.2 and CM/ECF Policy Manual § V.G.1(e), Defendant Jane Doe hereby gives notice that she has provisionally filed under seal Exhibits 3 and 4 to her motion to transfer (DE 30-1, -2) and her brief in support of motion to transfer (DE 31).  Although Jane Doe does not contend that these documents should be sealed, she understands that John Doe may contend that public disclosure of the documents in the context of this case would link him to another case filed under a pseudonym. Jane Doe has therefore filed the documents provisionally under seal in an abundance of caution to allow John Doe the opportunity to request that the documents remain sealed.

Pursuant to CM/ECF Policy Manual § V.G.1(e), if John Doe desires that the documents remain sealed, he must file a motion to seal, supporting memorandum, and proposed order within seven days after service of this notice.

This the 15th day of December, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

Original Filed at Docket No. 33,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

John Doe              ,

          Plaintiff,

   v.

Jane Doe

          Defendant.

[PROPOSED] ORDER GRANTING
DEFENDANT Jane Doe MOTION
TO TRANSFER VENUE PURSUANT
TO 28 U.S.C. § 1404(a)

This matter comes before the Court on the motion of Defendant Jane Doe pursuant to 28 U.S.C. § 1404(a), for an order transferring this case to the United States District Court for the Eastern District of Louisiana. [D.E. 29]. Having reviewed the motion and other matters of record, the Court, in its discretion, finds that the motion should be GRANTED. The Court finds that personal jurisdiction exists and that venue would have been proper in the Eastern District of Louisiana. Further, considering the weight accorded to the plaintiff's choice of venue, witness convenience and access, convenience of the parties, and the interest of justice, the Court finds that the balance of these factors favors transfer. *See Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Therefore, the motion to transfer is GRANTED and this case shall be transferred to the United States District Court for the Eastern District of Louisiana.

SO ORDERED, this the ___ day of _____, 2024.

_____
JAMES C. DEVER III
United States District Judge

Original Filed at Docket No. 34,

Sealed by Court Order

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

John Doe                              )
                                      )
      Plaintiff,            )
                                      )
    v.                      )   Case No. 5:22-CV-00500-D-BM
                                      )
Jane Doe                              )   PLAINTIFF'S UNOPPOSED
                                      )   MOTION FOR EXTENSION OF
      Defendant.            )   TIME TO RESPOND TO
                                      )   DEFENDANT'S MOTION TO
                                      )   TRANSFER VENUE

      Plaintiff John Doe ("Plaintiff"), by and through his counsel, moves the Court pursuant to Rule 6(b) of the Federal Rules of Civil Procedure and Local Rule 6.1 for an extension of time to oppose Defendant Jane Doe motion to transfer venue (ECF No. 29), up to and including January 17, 2024. In support of the Motion, Plaintiff shows the Court the following:

      1.      On November 17, 2023, the Clerk of the Court entered a Text Order which granted Defendant an extension of time to respond to the Amended Complaint, until December 15, 2023, and Plaintiff an extension of time to respond to any motion to dismiss, up to and including January 17, 2024.

      2.      After the Order was entered, counsel for the parties conferred about Defendant's motion to transfer. On November 30, 2023, Plaintiff's counsel informed Defendant's counsel that Plaintiff would oppose the motion to transfer and would need the same extension of time, up to and including January 17, 2024, to oppose the motion for the reasons set forth in Defendant's November 16, 2023 motion to for an extension (ECF No. 24)—Plaintiff's counsel had a personal family matter to attend to in early January and Plaintiff's counsel's schedules in December and

1

early January necessitated additional time to respond to Defendant's motion. Defendant's counsel had no objection to aligning the briefing schedules for the motion to dismiss and motion to transfer.

3.      Plaintiff's counsel mistakenly interpreted the November 17, 2023 text order as inclusive of <u>any</u> response to the Amended Complaint, including the motion to transfer. For this reason, no subsequent extension request was filed with the Court. Under the Local Rules the deadline for filing Plaintiff's opposition to the motion to transfer was January 5, 2024.

4.      On January 12, 2024, Defendant's counsel, Kelly Dagger, kindly alerted Plaintiff's counsel that she received a call from the Court about Defendant's pending motions and that she informed the Court about the November 17, 2023 Order extending Plaintiff's time to respond to the motion to dismiss. Ms. Dagger reiterated that Defendant has no objection to Plaintiff filing his opposition to the motion to transfer on January 17, 2024.

5.      On January 13, 2024, Plaintiff's counsel advised counsel for Defendant of the intent to file this motion and Defendant does not oppose this motion.

6.      This motion is made in good faith and not for purposes of delay. The extension sought by this motion will not unduly delay the proceedings in this case.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion and permit Plaintiff to respond to Defendant's motion to transfer to and including January 17, 2024.

This the 13th day of January 2024.

Respectfully Submitted,

**NESENOFF & MILTENBERG, LLP**

**By: */s/ Andrew T. Miltenberg***
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor

New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**

**By: */s/ Robert Ekstrand***
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| John Doe | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | PLAINTIFF'S MOTION FOR |
| v. | ) | EXTENSION OF |
| | ) | TIME TO RESPOND TO |
| Jane Doe | ) | DEFENDANT'S MOTION TO |
| | ) | TRANSFER VENUE |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on the unopposed motion of Plaintiff John Doe for an extension of time to respond to Defendant Jane Doe motion to transfer venue. For good cause shown, the motion is GRANTED. The deadline for Plaintiff to respond to Defendant's motion to transfer is hereby extended to and including January 17, 2024.

IT IS SO ORDERED.

This is the __ day of January, 2024.

_____
JAMES C. DEVER III
United States District Judge

Original Filed at Docket No. 35,
Sealed by Court Order

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| John Doe | ) |
|    Plaintiff, | ) |
| | ) |
|   v. | )  Case No. 5:22-CV-00500-D-BM |
| | ) |
| Jane Doe | ) |
| | ) |
|    Defendant. | ) |
| | ) |

### DECLARATION OF ANDREW T. MILTENBERG IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

ANDREW T. MILTENBERG hereby declares, subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am a partner of Nesenoff & Miltenberg, LLP, counsel for Plaintiff John Doe ("Plaintiff").

2. I submit this declaration in support of Plaintiff's opposition to Defendant's Motion to Transfer Venue.

3. Attached hereto as Exhibit A is a true and correct copy of the Court's January 5, 2023 order denying Plaintiff's motion to proceed by pseudonym (ECF No. 6).

4. Attached hereto as Exhibit B is a true and correct copy of the Appellee's Response Brief that Defendant Jane Doe filed in opposition to Plaintiff's appeal of the Court's January 5, 2023 Order.

5. Attached hereto as Exhibit C is a true and correct copy of the Fourth Circuit's October 26, 2023 opinion denying Plaintiff's appeal of the Court's January 5, 2023 Order.

1

6.      Attached hereto as Exhibit D is a true and correct copy of the Amended Complaint filed in this action.

7.      Attached hereto as Exhibit E is a true and correct copy of proof of delivery of a FedEx package addressed to Jane Doe at her residence in North Carolina. The package contained the Complaint filed in this action and service waivers.

8.      Tulane University's counsel has informed me that Dr. Christopher Zacharda is no longer employed by the University and works in Chicago, Illinois.

9.      Attached hereto as Exhibit F are true and correct copies of Jane Doe *v.* John Doe 2022-2059, Petition From Protection From Abuse, Information For Service of Process, and Order of Protection/Temporary Restraining Order.

10.     Attached hereto as Exhibit G is a true and correct copy of the pseudonym order entered in Plaintiff's action against Tulane University.

11.     Attached hereto as Exhibit H is a true and correct copy of an excerpt from the Judicial Case Load profiles for the United States District Courts. The excerpt reflects the Judicial Caseload Profile for the United States District Court for the Eastern District of North Carolina. The full report is available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf.

12.     Attached hereto as Exhibit I is a true and correct copy of an excerpt from the Judicial Case Load profiles for the United States District Courts. The excerpt reflects the Judicial Caseload Profile for the United States District Court for the Eastern District of Louisiana. The full report is available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf.

2

13.     Attached hereto as Exhibit J is a redacted copy of ECF No. 31, Defendant's memorandum of law in support of her motion to transfer venue. Defendant filed the memorandum of law under seal and it is a subject of Plaintiff's motion for leave to file under seal that is being filed concurrently herewith. Exhibit J, the redacted copy of the memorandum, will be filed publicly.

Executed on the 17th day of January 2024.

/s/ *Andrew T. Miltenberg*
Andrew T. Miltenberg

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

4

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-500-D-BM

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JANE DOE, | ) | |
| | ) | |
| Defendant. | ) | |

On December 8, 2022, "John Doe" ("plaintiff") filed a complaint against "Jane Doe" ("defendant") alleging defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy [D.E. 1]. On the same day, plaintiff moved ex parte for leave to proceed under a pseudonym [D.E. 5] and filed a memorandum in support [D.E. 6]. As explained below, the court denies plaintiff's motion to proceed under a pseudonym.

I.

Plaintiff argues that the "highly sensitive and personal nature of the allegations" require use of pseudonyms to protect the parties' privacy. See [D.E. 6] 2. The complaint uses pseudonyms for both plaintiff and defendant. See Compl. [D.E. 1]. Plaintiff, however, only requests "permission to file a Complaint . . . as a pseudonymous Plaintiff." [D.E. 6] 1; see [D.E. 5] 2 ("Plaintiff respectfully moves for leave to proceed under the pseudonym 'John Doe.'").

Essentially, plaintiff's complaint concerns defendant's alleged "false claims" of sexual assault made to Tulane University ("Tulane") and unidentified third parties in order to "defame, humiliate, harass, and punish Plaintiff John Doe." See Compl. at 1. Plaintiff also identifies another student, using the pseudonym "Sue Roe," who allegedly conspired with the defendant to defame

Case 5:22-cv-00500-D-BM  Document 83-1  Filed 01/05/24  Page 2 of 9

plaintiff and misuse Tulane's Title IX investigation process to "further a malicious vendetta against John Doe." See [D.E. 6] 1–2. Outside of John Doe, Jane Doe, and Sue Roe, the complaint identifies almost every other individual with initials. See, e.g., Compl. at ¶ 16 (identifying Sue Roe's paramour as "B.H."); ¶ 18 (identifying Sue Roe's housemate as "D.E."); ¶ 21 (identifying John Doe's friends as "M.V." and "K.R."); ¶ 23 (identifying a member of another fraternity as "K.S."). The only individuals identified by name are Tulane staff members. See, e.g., Compl. at ¶ 48 (Christopher Zacharda, Director of Student Conduct); ¶ 50 (Jaqueline Barber, University Investigator).

A civil complaint generally must set forth the "name[s] [of] all the parties." Fed. R. Civ. P. 10(a). "[I]n exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." Doe v. Pub. Citizen, 749 F.3d 246, 273 (4th Cir. 2014); Doe v. Lees-McRae Coll., No. 1:20-CV-00105-MR, 2021 WL 2673050, at *6 (W.D.N.C. June 29, 2021) (unpublished). The court considers five factors in deciding whether to allow a party to proceed pseudonymously including: (1) the justification asserted by the requesting party and whether it is to "preserve privacy in a matter of sensitive and highly personal nature" or "merely to avoid the annoyance and criticism that may attend any litigation"; (2) "risk of retaliatory physical or mental harm" because of identification; (3) the age of the party; (4) "whether the action is against a governmental or private party"; and, (5) "the risk of unfairness to the opposing party[.]" Pub. Citizen, 749 F.3d at 273 (quotation omitted); see James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993). Additionally, because the use of pseudonyms in litigation undermines the public's right of access to judicial proceedings, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against

2

the public's interest in openness and any prejudice that anonymity would pose to the opposing party." Pub. Citizen, 749 F.3d at 274.

As for the first factor, the court asks whether the moving party is requesting to use a pseudonym "merely to avoid the annoyance and criticism that may attend any litigation" or "to preserve privacy in a matter of sensitive and highly personal nature[.]" James, 6 F.3d at 238. Plaintiff argues that the sexual assault allegations leading to his expulsion from Tulane involve "private and intimate details regarding the lives of John Doe and Jane Doe." [D.E. 6] 5. Numerous district courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault. See, e.g., Doe v. Va. Polytechnic Inst. & State Univ., No. 7:21-CV-378, 2022 WL 972629, at *2 (W.D. Va. Mar. 30, 2022) (unpublished); Doe v. Rector & Visitors of George Mason Univ., 179 F. Supp. 3d 583, 592–94 (E.D. Va. 2016); Painter v. Doe, No. 3:15-CV-369-MOC, 2016 WL 3766466, at *6 (W.D.N.C. July 13, 2016) (unpublished); Doe v. Alger, 317 F.R.D. 37, 40 (W.D. Va. 2016). Therefore, the court finds that plaintiff desires to proceed pseudonymously in order to preserve his privacy in a matter that is sensitive and highly personal.

The second factor concerns potential physical retaliation and mental harm the plaintiff could experience if the court were to deny his motion. Plaintiff claims that "under the current social climate" accusations of sexual assault can "tarnish a reputation." [D.E. 6] 6. Even though plaintiff's motion seeks only to have the court permit him to proceed pseudonymously, plaintiff also argues that revealing the names of defendant Jane Doe and Susan Roe could subject them to harm. See id.

The court recognizes the inflammatory nature of sexual misconduct, "the mere accusation of which, if disclosed, can invite harassment and ridicule." George Mason Univ., 179 F. Supp. 3d at 593. Plaintiff, however, has failed to produce "evidence to support more than a mere 'general

3

fear' of retaliation or mere embarrassment." Student A v. Liberty Univ., Inc., No. 6:20-cv-00023, 2022 WL 1423617, at *13 (W.D. Va. May 5, 2022); see Doe v. N.C. Cent. Univ., No. 1:98CV01095, 1999 WL 1939248, at *5 (M.D.N.C. Apr. 15, 1999) ("Plaintiff's fears of embarrassment and shame are insufficient in the circumstances of this case to outweigh the risk of unfairness to Defendant . . . ."). Additionally, there do not appear to be any aggravating factors beyond the subject matter of the sexual assault allegation. For example, plaintiff fails to allege in the complaint that these allegations were widely circulated or evoked passionate scrutiny in the media. Cf. George Mason, 179 F. Supp. 3d at 593; Alger, 317 F.R.D. at 40. Moreover, although the court recognizes plaintiff's concerns about the potential harm to Jane Doe and Sue Roe, that consideration does not affect whether the court should allow plaintiff to pursue this action pseudonymously. Therefore, this factor is neutral in the analysis.

As for the third factor, plaintiff concedes that all parties are adults, and therefore are not minors entitled to special protection based on age. See [D.E. 6] 6; A.T.P. v. MTR Hotels, LLC, No. 6:21-cv-647, 2021 WL 5772826, at *2 (D.S.C. Mar. 12, 2021) (unpublished). Nonetheless, plaintiff argues that "college students may still possess the immaturity of adolescence" and that the third factor does not weigh against allowing him to proceed pseudonymously. See Yacovelli v. Moeser, No. 1:02CV596, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004) (unpublished). However, when plaintiff filed this complaint, plaintiff was beyond the typical age of a college student and would have already graduated from Tulane if not for his expulsion. See Compl. ¶ 11 (noting that plaintiff had expected to graduate from college in 2022). Thus, this factor weighs against permitting plaintiff to proceed pseudonymously.

As for the fourth factor, the court considers whether the action is against a private individual or against a government. Plaintiff notes that "[w]hen a plaintiff challenges the government, courts

4

are more likely to allow him or her to proceed under a pseudonym." [D.E. 6] 7; see Va. Polytechnic Inst. & State Univ., 2022 WL 972629, at *3. Plaintiff then argues that his lawsuit is, in part, against "the government." It is not. The complaint lists only Jane Doe as defendant. The proposed summons lists only Jane Doe. See [D.E. 1-1]. Plaintiff's case is not against the government.

When a plaintiff accuses an individual of wrongdoing, "[b]asic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names." S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir. 1979); see Va. Polytechnic Inst. & State Univ., 2022 WL 972629, at *3; Doe v. Pittsylvania Cnty., Va., 844 F. Supp. 2d 724, 730 (W.D. Va. 2012); A.B.C. v. XYZ Corp., 282 N.J. Super. 494, 501, 505, 660 A.2d 1202, 1204 (App. Div. 1995). Basic fairness counsels against allowing plaintiff to proceed pseudonymously in this case. It would be fundamentally unfair for plaintiff to be able to "clear his name" and wield a potential judgement against Jane Doe to his advantage but hide under a shield of anonymity if unsuccessful. Therefore, this factor weighs significantly against allowing plaintiff to proceed pseudonymously.

As for the fifth factor, the court considers potential prejudice or unfairness to defendant. Admittedly, this factor is more difficult to assess because plaintiff filed the motion ex parte and the defendant has not had the opportunity to express potential prejudice she may face if the court permits plaintiff to proceed pseudonymously. Plaintiff argues that there is no risk of prejudice because "Jane Doe is well aware of John Doe's identity[.]" [D.E. 6] 7.

Given the nature of the allegations in the complaint, including Tulane's administrative proceedings in which John Doe and Jane Doe participated, Jane Doe is aware of plaintiff's identity. See Alger, 317 F.R.D. at 41. However, there are other sources of significant unfairness or risk of prejudice against Jane Doe. This risk stems not only from plaintiff's use of pseudonyms for himself,

5

but also from plaintiff's abundant use of pseudonyms and initials throughout the complaint. For example, the complaint references a "Sue Roe" who is inextricably tied to plaintiff's claims and is the alleged co-conspirator underlying plaintiff's civil conspiracy claim. See Compl. ¶ 148. Moreover, plaintiff uses initials for all key witnesses appearing in the complaint. See, e.g., id. at ¶¶ 16, 18, 21, 23. This pervasive anonymity could lead to difficulty and confusion for Jane Doe during discovery. See Doe v. Trs. of Ind. Univ., 577 F. Supp. 3d 896, 907 (S.D. Ind. 2022). Therefore, this factor weighs against allowing plaintiff to proceed pseudonymously.

Finally, "the court returns to the Fourth Circuit's broad admonition that the court must balance Doe's stated interest in anonymity against the public's interest in openness." Va. Polytechnic Inst. & State Univ., 2022 WL 972629, at *4; see Pub. Citizen, 749 F.3d at 274. A district court has "an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." Pub. Citizen, 749 F.3d at 274. Such extraordinary circumstances are not present here.

Although plaintiff argues that there is no public interest in the public learning his identity or the identities of others, plaintiff fails to address the risk that pseudonymous lawsuits have in eroding public access to proceedings. See [D.E. 6] 7. "[M]utual pseudonymity, while providing more protection to the parties' privacy and reputations, also undermines public access" to the proceedings. Eugene Volokh, The Law of Pseudonymous Litigation, 73 HASTINGS L.J. 1353, 1383 (2022). Indeed, if courts were to allow mutual pseudonymity in sexual assault-related libel or slander suits, then "whole areas of the law could become difficult for the media and the public to monitor, outside the constrained accounts of the facts offered up by judges and lawyers." Id.

6

Plaintiff cites numerous cases for the proposition that courts "have held under similar circumstances that a party may proceed anonymously." [D.E. 6] 3. Plaintiff is wrong. The cited cases do not involve a private individual plaintiff proceeding pseudonymously and suing a private individual defendant also named under a pseudonym. Moreover, plaintiff has failed to cite a case in which a plaintiff in a defamation or libel action was allowed to proceed pseudonymously against an alleged victim of sexual assault. See Roe v. Does 1-11, No. 20-CV-3788-MKB, 2020 WL 6152174, at *6 (E.D.N.Y. Oct. 14, 2020) (unpublished) ("The Court finds it highly persuasive that Plaintiff fails to and is unable to cite a single case in which a plaintiff, suing for defamation and alleging he was falsely accused of sexual assault, was allowed to proceed anonymously against the victim of the purported assault.").

Although courts sometimes allow those accused of sexual assault to sue schools or universities pseudonymously when attacking the findings of a university Title IX investigation, the considerations in those cases do not apply here. See, e.g., Doe v. Univ. of S.C., No. 3:18-cv-00161-TLW, 2018 WL 1215045, at *1 n.1 (D.S.C. Feb. 12, 2018), report & recommendation adopted, 2018 WL 1182508 (D.S.C. Mar. 6, 2018) (unpublished); Alger, 317 F.R.D. at 42; Doe v. Va. Polytechnic Inst. & State Univ., No. 7:18-cv-170, 2018 WL 5929647, at *3–4 (W.D. Va. Nov. 13, 2018). Unlike in those cases, plaintiff is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation. In fact, Tulane is not a defendant.

Ultimately, the James factors and concerns about the openness of proceedings weigh strongly against permitting plaintiff to proceed pseudonymously in this action. Therefore, the court denies plaintiffs' motion. Because Rule 10(a) requires plaintiff to proceed using his real name, plaintiff must file an amended complaint using his real name in order to proceed in this action. The court

7

does not express an opinion about whether plaintiff's amended complaint should use a pseudonym for the defendant. As mentioned, plaintiff's motion asked only to permit him to proceed pseudonymously. See [D.E. 5].

## II.

In sum, the court DENIES plaintiff's motion to proceed under a pseudonym [D.E. 5]. Plaintiff may file an amended complaint using his real name by January 30, 2023. Alternatively, by January 30, 2023, plaintiff may file a Rule 41 notice of dismissal. If plaintiff fails to take either of these actions by January 30, 2023, the clerk SHALL close the case without further order of the court.

SO ORDERED. This ⟋ day of January, 2023.

JAMES C. DEVER III
United States District Judge

8

# EXHIBIT B

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
Record No. 23-1058

JOHN DOE,

Plaintiff-Appellant,

v.

JANE DOE,

Defendant-Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH
_____

DEFENDANT-APPELLEE'S RESPONSE BRIEF
_____

Kelly Margolis Dagger
James M. Weiss
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000

*Counsel for Defendant-Appellee*
Jane Doe *("Jane Doe")*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No.  23-1058          Caption:  John Doe v. Jane Doe

Pursuant to FRAP 26.1 and Local Rule 26.1,

Jane Doe  named as "Jane Doe"
(name of party/amicus)

who is      Defendant-Appellee     , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                   ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC                          - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Kelly Margolis Dagger      Date: 3/29/2023

Counsel for: Jane Doe named as "Jane Doe"

- 2 -

Case 2:24-cv-00825-DJP-EJD    Document 192    Filed 06/12/26    Page 365 of 1935

TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ........................................................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....1

STATEMENT OF THE ISSUE.....................................................................................2

     WHETHER THE DISTRICT COURT PROPERLY EXERCISED ITS
     DISCRETION TO DENY MR. DOE'S MOTION FOR LEAVE TO
     PROCEED UNDER PSEUDONYM.

STATEMENT OF THE CASE.......................................................................................2

SUMMARY OF THE ARGUMENT ..........................................................................12

ARGUMENT ...............................................................................................................14

     THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION
     TO DENY MR. DOE'S MOTION FOR LEAVE TO PROCEED
     UNDER PSEUDONYM...........................................................................................14

          *Standard of Review*..............................................................................14

          *Discussion* ............................................................................................15

          A.    The District Court Exercised Appropriate Discretion in
               Balancing the James Factors..................................................17

              1.    Mr. Doe does not challenge the district court's finding
                   that he sought to preserve privacy in a sensitive and
                   highly personal matter, and the district court properly
                   concluded that cases supporting that finding did not
                   otherwise support Mr. Doe's argument..........................17

Case 5:22-cv-00500-D-BM    Document 35-2    Filed 01/17/24    Page 5 of 67

2.    The district court exercised appropriate discretion in assessing whether identification would pose a risk of retaliatory physical or mental harm and finding that this factor was neutral ...................................................... 19

    a.    The district court considered Mr. Doe's concerns about reputational harm ........................ 19

    b.    The university Title IX process and the Title IX anti-retaliation regulation do not support Mr. Doe's request to proceed by pseudonym ............. 21

    c.    The district court did not commit legal or factual error by finding that Mr. Doe had not produced evidence of more than a general fear of retaliation or embarrassment ............................... 23

    d.    The district court did not rule that a party seeking to proceed by pseudonym must establish "aggravating factors." ........................... 26

    e.    The district court did not abuse its discretion by determining that the alleged risk of harm to others did not support Mr. Doe's request to proceed by pseudonym ........................................ 27

3.    Mr. Doe does not challenge the district court's finding that the age of the parties weighed against anonymity .................................................................... 31

4.    The district court correctly rejected Mr. Doe's assertion that his case was against both the government and a private party and exercised appropriate discretion to find that the fourth *James* factor weighed against anonymity ....................... 32

5.     The district court correctly found that there was a risk of prejudice to Jane Doe and exercised appropriate discretion to find that this factor weighed against anonymity ................................................................ 37

B.     The District Court Properly Balanced Mr. Doe's Stated Interest in Anonymity Against the Public's Interest in Openness ................................................................... 43

1.     The district court correctly determined that the extraordinary circumstances warranting anonymity in cases against universities do not apply to Mr. Doe's defamation case against an individual ............................. 43

2.     The district court correctly found that Mr. Doe failed to address the risk of eroding public access to court proceedings .................................................... 49

3.     The district court did not err by discussing "mutual pseudonymity" and the impact of pseudonymity on the media ......................................................... 50

C.     Mr. Doe's Voluntary Inclusion of Personally Identifying Details in the Complaint Supports the District Court's Decision to Deny His Request to Proceed by Pseudonym ....... 51

CONCLUSION ............................................................................................. 53

CERTIFICATE OF COMPLIANCE ................................................................... 55

CERTIFICATE OF SERVICE ........................................................................... 56

iii

## TABLE OF AUTHORITIES

Cases                                                                                                          Page

*A.B. v. C.D.*, No. 2:17-CV-5840-DRH-AYS,
    2018 WL 1935999 (E.D.N.Y. Apr. 24, 2018) ......................................... 43-44

*A.B.C. v. XYZ Corp.*, 660 A.2d 1199 (N.J. Super. Ct. App. Div. 1995) ...... 33, 34, 35

*B.R. v. F.C.S.B.*, No. 1:19-CV-00917-RDA-TCB,
    2020 WL 12435689 (E.D. Va. Mar. 10, 2020) ....................................... 36, 37

*B.R. v. F.C.S.B.*, 17 F.4th 485 (4th Cir. 2021) ...................................... 36, 42

*Bryant v. Core Contents Restoration, LLC*,
    No. 7:20-CV-00040-M, 2021 WL 1207719 (E.D.N.C. Mar. 30, 2021) ....... 29

*Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC*,
    305 F.3d 253 (4th Cir. 2002) ..................................................... 1-2

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ................................. 1

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ......................................... 14

*Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*,
    33 F.3d 390 (4th Cir. 1994) ..................................................... 25-26

*DTH Media Corp v. Folt*, 374 N.C. 292, 841 S.E.2d 251 (2020) ........................... 22

*Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016) ...................................... 26, 44, 45, 46

*Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) .......................................... 41

*Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015) ................................ 40

*Doe v. Delta Airlines, Inc.*, 672 F. App'x 48 (2d Cir. 2016) ................................ 40

*Doe v. Merten*, 219 F.R.D. 387 (E.D. Va. 2004) ....................................... 33

Case 2:24-cv-00825-DJP-EJD    Document 192    Filed 06/12/26    Page 369 of 1935

*Doe v. Moreland*, No. CV 18-800 (TJK),
    2019 WL 2336435 (D.D.C. Feb. 21, 2019)..............................................43, 48

*Doe v. Pittsylvania County*, 844 F. Supp. 2d 724 (W.D. Va. 2012)......18, 33, 34, 35

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ............................................*passim*

*Doe v. Rector & Visitors of George Mason Univ.*,
    179 F. Supp. 3d 583 (E.D. Va. 2016)..........................................22, 26, 44, 45

*Doe v. Rose*, No. CV-15-07503-MWF-JCX,
    2016 WL 9150620 (C.D. Cal. Sept. 22, 2016)......................................... 39-40

*Doe v. Trs. of Ind. Univ.*, 577 F. Supp. 3d 896 (S.D. Ind. 2022)..................39, 51, 53

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-CV-170,
    2018 WL 5929647 (W.D. Va. Nov. 13, 2018)................ 21-22, 35, 36, 44, 50

*Doe v. Va. Polytechnic Inst. & State Univ.*,
    400 F. Supp. 3d 479 (W.D. Va. 2019)..........................................................45

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249,
    2020 WL 1287960 (W.D. Va. Mar. 18, 2020) ...........................21, 35, 36, 44

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249,
    2020 WL 1309461 (W.D. Va. Mar. 19, 2020) ..............................................45

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-CV-378,
    2022 WL 972629 (W.D. Va. Mar. 30, 2022) ............ 21, 33, 35-36, 44, 45, 46

*Feldstein v. Nash Cmty. Health Servs., Inc.*,
    51 F. Supp. 2d 673 (E.D.N.C. 1999) ...........................................................18

*Hill v. Carvana, LLC*, No. 1-22-CV-37, 2022 WL 1625020
    (M.D.N.C. May 23, 2022) ............................................................................26

*Infernal Tech., LLC v. Epic Games, Inc.*, 339 F.R.D. 226 (E.D.N.C. 2021)...........29

*In re Sealed Case*, 971 F.3d 324 (D.C. Cir. 2020)..........................................15, 38

Case 5:22-cv-00500-D-BM    Document 35-2    Filed 01/17/24    Page 9 of 67

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ........................................... *in passim*

*Menaker v. C.D.*, No. 2:17-CV-5840-DRH-AYS, 2018 WL 5776533
    (E.D.N.Y. Nov. 1, 2018)..............................................................................44

*Mondragon v. Scott Farms, Inc.*,
    No. 5:17-CV-00356-FL, 2019 WL 489117 (E.D.N.C. Feb. 7, 2019)...........29

*Raymond U v. Duke Univ.*, 91 N.C. App. 171, 371 S.E.2d 701 (1988) ............ 47-48

*Richard S. v. Sebelius*, No. CA 3:12-007-TMC,
    2012 WL 1909344 (D.S.C. May 25, 2012) ............................................ 23-24

*Roanoke River Basin Ass'n v. Hudson*, 940 F.2d 58 (4th Cir. 1991) ................ 20-21

*Robinson v. Warden, Md. House of Corr.*, 455 F.2d 1172 (4th Cir. 1972) .............18

*Roe v. Does 1-11*, No. 20-cv-3788- MKB-SJB,
    2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020) ................................... 43, 46-47

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
    599 F.2d 707 (5th Cir. 1979) ...........................................................33, 34, 35

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) ........................51

*Sloas v. CSX Transp. Inc.*, 616 F.3d 380 (4th Cir. 2010) .......................................52

*Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901 (W.D. Va. 2022) .................23

*United States v. Al-Hamdi*, 356 F.3d 564 (4th Cir. 2004) ......................................31

*United States v. Atkins*, No. 97-4807, 1998 WL 153397
    (4th Cir. Apr. 3, 1998) ...............................................................................47

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ......................................26

*United States v. Washington*, 743 F.3d 938 (4th Cir. 2014)...................................20

*Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645
    (4th Cir. 2017) ................................................................................. 14-15

<u>Statutes, Regulations, and Rules</u>

28 U.S.C. § 1291 .................................................................................................1, 2

28 U.S.C. § 1332 ....................................................................................................1

20 U.S.C. 1232g ................................................................................................22, 23

34 C.F.R. § 99.31 .............................................................................................22, 23

34 C.F.R. § 99.39 .............................................................................................22, 23

34 C.F.R. § 106.71 ...........................................................................................22, 23

Fed. R. App. P. 4 ....................................................................................................1

Fed. R. App. P. 28 ................................................................................................31

Fed. R. Civ. P. 10 .................................................................................................15

Fed. R. Evid. 405 .................................................................................................48

E.D.N.C. Civ. R. 7.1(b)(1) ..................................................................................29

<u>Other Authority</u>

*Merriuam-Webster.com*,
    https://www.merrriam-webster.com/dictionary/ .........................................48

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

Plaintiff-Appellant John Doe filed a civil action in the United States District Court for the Eastern District of North Carolina asserting state law claims against Defendant-Appellee Jane Doe whom Mr. Doe named as "Jane Doe." JA1, JA4. The district court had subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* JA6.

On January 5, 2023, the district court denied Mr. Doe's *ex parte* motion for leave to proceed under pseudonym, and ordered that Mr. Doe either (1) file an amended complaint in his real name; or (2) file a notice of dismissal. JA62. Mr. Doe timely filed a notice of appeal from the district court's order on January 15, 2023. JA52; *see* Fed. R. App. P. 4(a)(1)(A). The district court then stayed its order pending the appeal. *See* JA3.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 because the district court's order denying Mr. Doe's motion to proceed under pseudonym is an appealable collateral order. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (construing § 1291 to permit appeal of certain collateral orders); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (concluding that order denying motion to proceed anonymously was immediately appealable collateral order); *see also Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC*,

305 F.3d 253, 255 (4th Cir. 2002) (recognizing that when collateral order test is

satisfied, jurisdiction arises under § 1291).

## STATEMENT OF THE ISSUE

WHETHER THE DISTRICT COURT PROPERLY EXERCISED ITS
DISCRETION TO DENY MR. DOE'S MOTION FOR LEAVE TO PROCEED
UNDER PSEUDONYM.

## STATEMENT OF THE CASE

*Sexual assault allegations against John Doe*

In February 2022, Jane Doe a student at Tulane University, reported to

other students that John Doe, then a Tulane senior, had sexually assaulted her.  *See*

JA14-15.  After Jane Doe told one of Mr. Doe's friends about the assault, Mr. Doe

began to hear rumors from multiple students that he had sexually assaulted

someone.  JA14-15.  Jane Doe confronted Mr. Doe about the assault in a text

message, where she said that Mr. Doe was a "repeat offender." JA15.  Mr. Doe met

with multiple friends about Jane Doe allegations, and the president of Mr. Doe's

fraternity learned of the allegations.  JA15-16.  Days after first hearing of Jane Doe

allegations, and "[d]ue to the mental anguish and heightened anxiety" he

was experiencing, Mr. Doe withdrew from Tulane, "as he had already completed

enough credits the prior semester to graduate."  JA17; *see* JA14-17.

2

*Tulane University disciplinary process*

After Mr. Doe withdrew from Tulane, he learned that, on February 6, 2022, Jane Doe and a classmate each had reported to the university that Mr. Doe sexually assaulted them. *See* JA17-18. Tulane investigated the reports through its Title IX office. *See* JA17-31. On May 8, 2022, Tulane found that Mr. Doe was responsible for sexual assault and determined that he should be dismissed from the university. *See* JA5, JA31.

*John Doe's complaint*

On December 8, 2022, Mr. Doe sued Jane Doe in the United States District Court for the Eastern District of North Carolina, alleging that Jane Doe sexual assault allegations were false, and asserting claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy. JA32-40. Mr. Doe did not use his real name in his complaint. *See* JA4-42. He identified Jane Doe as "Jane Doe," and the other classmate he was found to have sexually assaulted as "Sue Roe." JA4. Mr. Doe referred to eighteen potential witnesses by their first and last initials. *See* JA8-11, JA13-16, JA21-25, JA27-30.

Mr. Doe alleged that he was from South Carolina, that he was accepted to Tulane in May 2018, that he enrolled in August 2018, that he studied finance, management, and psychology, and that he intended to attend business school after

graduation. JA6. He further alleged that he was "heavily involved in the Tulane

community" and recited a list of his personal accomplishments and activities:

> He was the Co-President of Tulane's section of a national service
> organization for two consecutive years. He was the treasurer of the
> Food Recovery Network, a club that packages remaining food from
> the dining hall to send to local homeless shelters. He was one of 34
> Tulane seniors selected by faculty and prior members to join Omicron
> Delta Kappa, an organization founded in 1834 for the purpose of
> making the Tulane community more equitable, inclusive, and
> academically rigorous. John Doe was also chosen by the Business
> School Associate Dean to be a Tulane Business Summer Minor
> Ambassador, promoting Tulane's summer business program.
> Additionally, John Doe was a member of the business fraternity Alpha
> Kappa Psi, a tutor in the tutoring center, a Merit Scholarship recipient,
> and involved in Tulane's club baseball league and social fraternity
> Zeta Beta Tau (ZBT). John Doe was on track to graduate *cum laude*.

JA7.

Mr. Doe alleged that he had consensual sexual relationships with Ms. Roe

and later with Jane Doe *See* JA8-12. He described having a "casual sexual

relationship" with Ms. Roe starting in the fall of 2019. JA8. Mr. Doe alleged that

after he learned that Ms. Roe was interested in a "more committed relationship," he

told her he was not interested, and he began seeing other women. JA8. After late

2019, Mr. Doe alleged that Ms. Roe made her negative feelings toward him clear.

JA8. Despite these negative feelings, Mr. Doe alleged that he had a consensual

sexual encounter with Ms. Roe in the spring of 2021, and another encounter with

her in August 2021. JA8-9. Mr. Doe alleged that Ms. Roe cried after they had sex

in August 2021, and Ms. Roe's housemate asked Mr. Doe to leave their home. JA9. Mr. Doe described this encounter with Ms. Roe as consensual. JA9.

Mr. Doe alleged that he "matched" with Jane Doe on Tinder in September 2021, and they met that November. JA10. He alleged that he did not see Jane Doe again until January 2022, when they kissed after talking at a bar. JA10. Mr. Doe alleged that he invited Jane Doe to an upcoming fraternity party, that they attended the party together, where Mr. Doe introduced Jane Doe to his friends, and that they had consensual sex. JA10-12. He further alleged that he and Jane Doe had consensual sex on a second occasion, on February 2, 2022, and that he walked her home the next morning. JA12-13.

According to Mr. Doe, Jane Doe did not immediately report that he had sexually assaulted her. *See* JA14. The next night, on February 3, Mr. Doe had sex with another woman, A.H. JA13-14. Mr. Doe alleged, on information and belief, that Jane Doe saw him with A.H. and heard that he and A.H. "went home together." JA14.

Mr. Doe contrasted his social life with Jane Doe alleging that Jane Doe "transferred from another school during the Covid-19 pandemic and did not have many friends when she met John Doe." JA28. Mr. Doe alleged that Jane Doe was "grateful that he introduced her to his friends," but that she "knew that if she and

5

John Doe did not continue to see each other, his friends would likely stop socializing with her." JA29.

Mr. Doe alleged that Jane Doe first reported that he sexually assaulted her on February 4, when Jane Doe told Mr. Doe's friend, T.R., about the incident. JA14. Mr. Doe alleged that "[a]fter learning that John Doe had sex with another woman shortly after his sexual encounter with Jane Doe, and realizing that John Doe did not have reciprocal feelings for her, Jane Doe became outraged." JA30. According to Mr. Doe, Jane Doe was so jealous that "[s]he set out to destroy John Doe's reputation, education, and career." JA30.

Mr. Doe began to hear rumors that he had sexually assaulted another student. JA15-16. On February 8, Mr. Doe received a text message from Jane Doe in which she recounted him touching her and masturbating on her without her consent. JA15. Jane Doe said in the message, "You are a predator and a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim." JA15. Although Mr. Doe described his sexual encounter with Sue Roe almost six months earlier as consensual, Mr. Doe acknowledged that he assumed that the "previous victim" Jane Doe referred to was Sue Roe. JA16.

Jane Doe and Ms. Roe reported to Tulane that Mr. Doe had sexually assaulted them. JA17-18. Mr. Doe alleged that Jane Doe "manipulated Tulane's Title IX investigation process to further a malicious vendetta against" him. JA5.

Mr. Doe surmised that Jane Doe and Ms. Roe were driven by jealousy of his other romantic partners and anger over Mr. Doe's "refusal to enter into a committed relationship" with either of them.  JA4, JA8-14, JA28.

Jane Doe also filed a petition for restraining order against Mr. Doe in Louisiana civil court; Mr. Doe alleged that the matter was dismissed when Jane Doe did not show up for court.  JA30-31.

Mr. Doe acknowledged that Tulane found that he was responsible for sexual assault and that he should be dismissed from the university.  JA31.  According to Mr. Doe, Jane Doe made false statements about him sexually assaulting her to Tulane's investigator, other Tulane students, a Louisiana court, and "numerous people who were friends with John Doe."  JA28; *see* JA27.  Mr. Doe alleged that he suffered various damages, including "the loss of his tuition payment, college degree, as well as future career prospects," JA37, emotional distress, reputational harm, and psychological damages, JA38; *see* JA33.

Jane Doe is the only defendant.  *See* JA1, JA4.  Mr. Doe seeks to recover from Jane Doe compensatory and punitive damages, attorneys' fees, and costs. JA40-41.

*John Doe's motion to proceed under pseudonym*

With his complaint, Mr. Doe filed an *ex parte* motion stating, "Plaintiff John Doe moves the Court for leave to proceed under pseudonym." SA1. Mr. Doe submitted a proposed order granting his motion and providing "that the parties shall proceed in this action by referring to one another's pseudonym in the manner set out in the Motion." SA4. In the first sentence of his supporting brief, Mr. Doe explained that he was seeking an order "granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff." JA43. Later in the brief, Mr. Doe said that he was moving "for leave to proceed under the pseudonym 'John Doe' and to identify Defendant 'Jane Doe' and fellow accuser 'Sue Roe' in this action." JA44.

Mr. Doe cited *James*, 6 F.3d at 238, where this Court recognized factors that may be relevant to a pseudonym request: (1) whether the matter is sensitive; (2) whether there is a risk of retaliatory harm; (3) the ages of the parties; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party. *See* JA46. Mr. Doe argued that the facts of the case were sensitive, and that if he had to disclose his name, he could "never be made whole because this sensitive and prejudicial information will be published in the public arena and the damage will have been done." JA47. Mr. Doe further argued that he could be targeted for retaliatory physical or mental harm. JA48.

8

Mr. Doe conceded that the parties were adults.  JA48.  Mr. Doe asserted in a

heading that "the lawsuit is against both government and private parties."  JA49

(capitalization omitted).  Finally, he argued that there was no risk of unfairness to

Jane Doe if Mr. Doe remained anonymous.  JA49.

In the conclusion of his brief, Mr. Doe asserted that "[t]he Court should

allow John Doe, Jane Doe, and Sue Roe to proceed anonymously because of the

highly sensitive and private nature of the issues before the Court, and the lack of

prejudice to Defendant Jane Doe."  JA50.  Mr. Doe concluded by repeating the

relief he requested through his motion:  "Therefore, John Doe requests that he be

allowed to proceed pseudonymously for the duration of this litigation."  JA50.

Jane Doe having not yet been given notice of the lawsuit, did not respond to

Mr. Doe's motion.  *See* JA1-3.[1]

*Order denying motion to proceed under pseudonym*

On January 5, 2023, the district court, United States District Judge James C.

Dever III presiding, denied Mr. Doe's motion to proceed under pseudonym.  JA2;

*see* JA55-62.

The court recognized that a civil complaint generally must contain the names

of all parties, but that, in exceptional circumstances, the court could allow the use

---

[1] Mr. Doe sent Jane Doe a notice of lawsuit and request to waive service of summons on January 26, 2023, and Jane Doe waived service on February 24.  *See* Waiver, *Doe v. Doe*, No. 5:22-cv-00500-D-BM (E.D.N.C. Mar. 3, 2023).

9

of a pseudonym. JA56. The court recited the factors from *James* and noted its

"'independent obligation to ensure that extraordinary circumstances support such a

request [to proceed by pseudonym] by balancing the party's stated interest in

anonymity against the public's interest in openness and any prejudice that

anonymity would pose to the opposing party.'" JA56-57 (quoting *Doe v. Pub.

Citizen*, 749 F.3d 246, 274 (4th Cir. 2014)).

As to the first *James* factor, the district court found that the matter was

"sensitive and highly personal." JA57. The court found the second factor

neutral—it recognized that allegations of sexual misconduct can be inflammatory,

but found that Mr. Doe failed to produce evidence of more than a general fear of

retaliation or embarrassment. JA57-58. The court found that the third factor

weighed against Mr. Doe's request because the parties were adults. JA58. On the

fourth factor, the court recognized that courts are more likely to allow a plaintiff

suing the government to use a pseudonym, but the court rejected Mr. Doe's

argument that his lawsuit was, in part, against the government. *See* JA59. The

court found that the fourth factor weighed "significantly against" Mr. Doe's

request, because it would be "fundamentally unfair for plaintiff to be able to 'clear

his name' and wield a potential judgment against Jane Doe to his advantage but

hide under a shield of anonymity if unsuccessful." JA59. The court found that the

fifth factor also weighed against Mr. Doe's request, because the "pervasive

anonymity" throughout the complaint "could lead to difficulty and confusion for Jane Doe during discovery." JA60.

Weighing Mr. Doe's interest against the public interest, the court found no extraordinary circumstances to support Mr. Doe's motion. JA60. The district court concluded that the cases Mr. Doe cited in his brief did not support his argument that "courts 'have held under similar circumstances that a party may proceeding anonymously.'" JA61 (quoting Mr. Doe's district court brief). The district court noted that Mr. Doe "failed to cite a case in which a plaintiff in a defamation or libel action was allowed to proceed pseudonymously against an alleged victim of sexual assault." JA61. Further, although the district court acknowledged instances where a plaintiff was permitted to proceed pseudonymously in litigation attacking the findings of a university Title IX investigation, the court distinguished Mr. Doe's case because Mr. Doe was "not challenging his expulsion from Tulane" or arguing that Tulane violated his rights during the Title IX investigation, and had not named Tulane as a defendant. JA61.

Weighing all these factors, the district court denied Mr. Doe's motion. JA61. The court ordered Mr. Doe to file a complaint using his real name, or alternatively, to file a notice of dismissal. JA61-62. The court expressed no opinion about whether, if Mr. Doe filed an amended complaint, he should use a

11

pseudonym for Jane Doe because the court found that "plaintiff's motion asked only to permit him to proceed pseudonymously." JA62.

*John Doe's appeal*

On January 15, 2023, Mr. Doe filed a notice of appeal from the district court's order denying his motion to proceed under pseudonym. JA52.

## SUMMARY OF THE ARGUMENT

Mr. Doe contends that he brought this case to "clear his name" after two different women accused him of sexual assault, and after his university found that he was responsible for the assaults and should be expelled. *See* JA44. Despite claiming that he wants to clear his name, Mr. Doe seeks to hide his name from public view by litigating this case behind the shield of a pseudonym.

The district court properly concluded that Mr. Doe was not entitled to the rare dispensation of being allowed to litigate under a pseudonym. Mr. Doe cannot show that the district court abused its discretion in considering the relevant factors and weighing Mr. Doe's asserted privacy interest against the public's interest in access to court proceedings, including the public's interest in the identities of litigants.

Mr. Doe fails in his efforts to liken his case to the cases where district courts have allowed students accused of sexual misconduct to proceed by pseudonym. Unlike the plaintiffs in all those cases, Mr. Doe did not sue his university, and he is

12

not challenging the result of the university disciplinary proceeding. He does not

seek to expunge his disciplinary record through this litigation. Mr. Doe, again

unlike the plaintiffs in the cases he cites, sued an individual who accused him of

sexual assault, alleging defamation and other claims. Mr. Doe, unlike those other

plaintiffs, seeks money damages for injuries of a public nature—Jane Doe

publication of allegedly false statements about Mr. Doe's sexual misconduct to

Tulane students, investigators, and others, causing damage to Mr. Doe's reputation.

The district court properly found that the individual facts of this case, including the

claims Mr. Doe is making, the identity of the defendant, the fundamental

unfairness to Jane Doe if Mr. Doe remains anonymous, and the public interest,

taken together, make pseudonym protection inappropriate.

In addition, Mr. Doe chose to make detailed allegations about his personal

and educational accomplishments and activities in a publicly filed complaint.

While he withheld his own name, Mr. Doe identified by name multiple

organizations to which he belonged, leadership roles he held, and activities in

which he participated, JA7, thus inviting public identification through the

combination of details he provided. Mr. Doe cannot allege these identifying

details about himself to show the public that he has an excellent reputation that was

damaged by purportedly false allegations of sexual assault, and, at the same time,

refuse to disclose to the public his own name.

13

Jane Doe respectfully requests that this Court affirm the district court's order

denying Mr. Doe's motion to proceed under a pseudonym.

## ARGUMENT

THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION TO
DENY MR. DOE'S MOTION FOR LEAVE TO PROCEED UNDER
PSEUDONYM.

*Standard of Review*

This Court "review[s] a district court's pseudonymity decision under an

abuse-of-discretion standard." *Pub. Citizen*, 749 F.3d at 273; *accord James*, 6 F.3d

at 239. A district court abuses its discretion if it fails or refuses to exercise

discretion at all, "deciding instead as if by general rule, or even arbitrarily, as if

neither by rule nor discretion." *James*, 6 F.3d at 239. A district court also abuses

its discretion if it fails "adequately to take into account judicially recognized

factors constraining its exercise." *Id.* "Finally, discretion may be abused by an

exercise that is flawed by erroneous factual or legal premises." *Id.*

"When an appellate court reviews a district court's factual findings, the

abuse-of-discretion and clearly erroneous standards are indistinguishable: A court

of appeals would be justified in concluding that a district court had abused its

discretion in making a factual finding only if the finding were clearly erroneous."

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990) (cited in *James*, 6

F.3d at 239). An error is clear only when this Court has the "definite and firm

14

conviction that the district court was mistaken." *Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 654 (4th Cir. 2017) (quotation omitted).

*Discussion*

The Federal Rules of Civil Procedure require a plaintiff to "name all the parties" in the title of the complaint. Fed. R. Civ. P. 10(a); *see Pub. Citizen*, 749 F.3d at 273 ("The Federal Rules of Civil Procedure require that the identities of the parties to a case be disclosed."). "This Court has recognized that in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." *Pub. Citizen*, 749 F.3d at 273. Allowing use of a pseudonym in litigation is a "rare dispensation." *See James*, 6 F.3d at 238. The burden is on the party seeking to proceed by pseudonym to establish that exceptional circumstances justify use of a pseudonym. *See Pub. Citizen*, 749 F.3d at 275 (concluding that district court erred by allowing plaintiff to proceed by pseudonym because plaintiff "failed to identify any exceptional circumstances that justify the use of a pseudonym"); *see also In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) ("The moving party bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name.").

15

This Court identified in *James* five nonexclusive factors that may be relevant to the consideration of a request to proceed anonymously:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, [5] relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James*, 6 F.3d at 238; *see Pub. Citizen*, 749 F.3d at 273 (describing factors as "nonexclusive"). In addition, because pseudonymous litigation undermines public access to judicial proceedings, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Pub. Citizen*, 749 F.3d at 274.

As shown below, the district court properly considered each of the *James* factors, and balanced Mr. Doe's interests against the public's interest and the prejudice to Jane Doe in exercising its discretion to deny Mr. Doe's request to proceed by pseudonym. Mr. Doe contends that the district court overlooked an "additional consideration" outside the *James* factors—the risk of reputational harm

16

if Mr. Doe is required to use his real name. Appellant's Br. 16; *see id.* 17, 25-27.[2]

To the contrary, and as further shown below, the district court expressly considered

Mr. Doe's concern about his reputation in the court's assessment of the *James*

factors and the public interest. *See* JA57, JA60. Because Mr. Doe failed to

establish "exceptional circumstances" justifying anonymity, the district court

properly exercised its discretion to deny Mr. Doe's request to proceed under a

pseudonym. *See Pub. Citizen*, 749 F.3d at 273.

    A.    The District Court Exercised Appropriate Discretion in Balancing the *James* Factors.

        1.    Mr. Doe does not challenge the district court's finding that he sought to preserve privacy in a sensitive and highly personal matter, and the district court properly concluded that cases supporting that finding did not otherwise support Mr. Doe's argument.

On the first *James* factor, the district court found that Mr. Doe sought to

"proceed pseudonymously in order to preserve his privacy in a matter that is

sensitive and highly personal." JA57. This finding is consistent with Mr. Doe's

argument below, JA46-47, and Mr. Doe does not challenge the district court's

finding on appeal, *see* Appellant's Br. 27-28.

    Instead, Mr. Doe contends that, where the district court relied on cases to

support its analysis of the sensitive and personal nature of this case, the district

---

[2] Jane Doe cites Mr. Doe's opening brief (Dkt. No. 18) as "Appellant's Br." All pinpoint citations are to the internal pagination of the brief, not to the CM/ECF pagination.

court erred by concluding that those same cases involved considerations that do not apply here and that Mr. Doe's reliance on those cases was therefore "wrong." *Id.* (citing JA61); *see id.* 13. But courts regularly discuss cases that support a party's arguments to some extent but fall short of supporting the result that the party seeks. *E.g.*, *Robinson v. Warden, Md. House of Corr.,* 455 F.2d 1172, 1175 (4th Cir. 1972) (noting that "certain principles stated in these cases [cited by petitioner] and dicta they contain support [petitioner's] argument in part, but they do not establish that the increased sentence he received violated the guarantee against double jeopardy"); *Feldstein v. Nash Cmty. Health Servs., Inc.*, 51 F. Supp. 2d 673, 682-83 (E.D.N.C. 1999) (discussing case that was similar in some respects, and thus instructive, but not dispositive because it was "distinguishable on a crucial point"). As shown below, the district court was correct to distinguish the cases Mr. Doe cited—the plaintiffs in those cases sought injunctive relief from the results of a university disciplinary proceeding, while Mr. Doe seeks compensatory and punitive damages for defamation and other torts against a defendant he claims publicly accused him of sexual assault. *See infra* pp. 43-49.

The district court's finding on the first *James* factor does not control the outcome. *See, e.g.*, *Doe v. Pittsylvania County*, 844 F. Supp. 2d 724, 729, 746 (W.D. Va. 2012) (finding that first *James* factor weighed in favor of anonymity, but denying request to proceed by pseudonym upon consideration of all relevant

18

factors).  Because the district court found that other factors, and the public interest, weighed against Mr. Doe's request to proceed by pseudonym, the district court properly exercised its discretion to deny the request.  *See infra* pp. 19-51.

> 2.    The district court exercised appropriate discretion in assessing whether identification would pose a risk of retaliatory physical or mental harm and finding that this factor was neutral.

The district court properly found that the second *James* factor, the risk of retaliatory physical or mental harm to Mr. Doe or innocent non-parties, was neutral.  JA57-58.  Mr. Doe argues to this Court that the second *James* factor weighs in favor of anonymity, *see* Appellant's Br. 28, but he cannot show that the district court abused in discretion in finding otherwise.  The district court considered the facts Mr. Doe presented, including his concern that his reputation would suffer if he was not allowed to proceed by pseudonym.  JA57; *see* Appellant's Br. 25-27.  As shown below, and contrary to Mr. Doe's argument, the district court did not rely on erroneous factual or legal premises in its analysis of the risk of retaliation.  *See* Appellant's Br. 28-33.

> a.    The district court considered Mr. Doe's concerns about reputational harm.

Mr. Doe ignores the plain text of the district court's order, JA57, to argue on appeal that the district court "failed to consider" the risk of reputational harm.  *See* Appellant's Br. 17, 25.

19

Before the district court, Mr. Doe argued, including in his discussion of the second *James* factor, that he was concerned that accusations of sexual misconduct would damage his reputation, and that living with that reputation would damage his health. JA44, JA48.

The district court addressed this concern and even quoted from Mr. Doe's brief: "Plaintiff claims that 'under the current social climate' accusations of sexual assault can 'tarnish a reputation.'" JA57; *see* JA48. The district court recognized the "inflammatory nature of sexual misconduct," and the harm that can result from accusations of sexual misconduct. *See* JA57. While the district court did not agree with Mr. Doe that the second *James* factor weighed in his favor, the district court considered the reputational concern Mr. Doe articulated. JA57-58; *see* JA48.

This Court has rejected efforts to show an abuse of discretion where the district court or other decisionmaker considered a factor relevant to its analysis but did not then reach the conclusion that one party advocated as to that factor. *See, e.g.*, *United States v. Washington*, 743 F.3d 938, 944 (4th Cir. 2014) (rejecting argument that district court abused discretion by failing to consider advisory guidelines range in presentence report, where record showed that district court considered advisory guidelines range); *Roanoke River Basin Ass'n v. Hudson*, 940 F.2d 58, 65 (4th Cir. 1991) (rejecting argument that agency acted arbitrarily by failing to consider particular factor where record demonstrated that agency did

20

consider that factor). Likewise, here, where the district court did consider the reputational harm that Mr. Doe alleged would occur, *see* JA57, Mr. Doe cannot show an abuse of discretion.

           b.       The university Title IX process and the Title IX anti-retaliation regulation do not support Mr. Doe's request to proceed by pseudonym.

Mr. Doe cannot rely on the Title IX disciplinary process and regulations promulgated under Title IX to show that the district court erred in its assessment of the risk of retaliatory physical or mental harm. *See* Appellant's Br. 15, 28. While Mr. Doe tries to characterize his case as being "center[ed]" on what happened in the Title IX process, *id.* 28, Mr. Doe is not challenging the university disciplinary process in this case—he did not sue Tulane. *See* JA61. Mr. Doe claims that he was injured by statements that Jane Doe made outside the Title IX process, as well as within the process, and he alleges that he withdrew from Tulane because of Jane Doe allegations before he was even aware of a Title IX report. *See* JA14-17.

Mr. Doe's reliance on cases against university defendants is misplaced. *See* Appellant's Br. 29 (citing *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-CV-378, 2022 WL 972629 (W.D. Va. Mar. 30, 2022) [hereinafter *Virginia Tech III*]; *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1287960 (W.D. Va. Mar. 18, 2020) [hereinafter *Virginia Tech II*]; *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-CV-170, 2018 WL 5929647 (W.D. Va.

Nov. 13, 2018) [hereinafter *Virginia Tech I*]; *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016)). In each of those cases, the plaintiff challenged the university disciplinary process and sought injunctive relief to expunge his disciplinary record. *See infra* pp. 45-46. Unlike those cases, Mr. Doe's case is not an extension of a confidential university disciplinary proceeding; it is an effort to recover money damages from Jane Doe for statements she made both outside and within the Title IX process. *See* JA46.

Mr. Doe argues for the first time on appeal that "[f]ederal law recognizes that participants in Title IX proceedings can become targets of retaliation and, for this reason, requires that the identity of 'any individual who has been reported to be the perpetrator of sex discrimination' be kept confidential." Appellants' Br. 28 (quoting 34 C.F.R. § 106.71); *see* JA43-51. But Mr. Doe is more than someone who was *reported* to be the perpetrator of sex discrimination; he was found responsible for sexual assault and dismissed from Tulane. JA31.

Federal law permits universities to disclose the names of students found responsible for committing a crime of violence or non-forcible sex offense in violation of the university's policies. *See* 20 U.S.C. § 1232g(b)(6) & 34 C.F.R. §§ 99.31(a)(14)(i), 99.39; *see also DTH Media Corp v. Folt*, 374 N.C. 292, 303, 841 S.E.2d 251, 259 (2020) (recognizing that institution has discretion to disclose foregoing information). The confidentiality regulation Mr. Doe cites contains an

22

express exception for disclosures "permitted by the FERPA statute, 20 U.S.C.

1232g, or FERPA regulations, 34 CFR part 99[.]" 34 C.F.R. § 106.71(a). Because

Mr. Doe was found responsible for sexual assault in violation of university policy,

FERPA and its regulations permit Tulane to disclose his name. *See* 20 U.S.C.

§ 1232g(b)(6) & 34 C.F.R. §§ 99.31(a)(14)(i), 99.39. The confidentiality

requirement in 34 C.F.R. § 106.71(a) does not apply.

> c.    The district court did not commit legal or factual error by finding that Mr. Doe had not produced evidence of more than a general fear of retaliation or embarrassment.

Contrary to Mr. Doe's argument, the district court did not erroneously "read

an evidence requirement into the second *James* factor." *See* Appellant's Br. 29.

Mr. Doe conflates the district court's consideration of whether there was evidence

of retaliatory harm with the imposition of an "evidence requirement." *See id.*

District courts weighing the *James* factors and the public interest in access to court

proceedings regularly consider whether the party seeking to proceed by

pseudonym has presented evidence that the party will suffer retaliatory harm—

other than embarrassment—if required to litigate in the party's own name. *See,*

*e.g.*, *Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022)

(finding that retaliation factor weighed in favor of pseudonymity where plaintiffs

"provided evidence to support more than a mere 'general fear' of retaliation or

mere embarrassment"); *Richard S. v. Sebelius*, No. CA 3:12-007-TMC, 2012 WL

23

1909344, at \*2 (D.S.C. May 25, 2012) (finding, in denying motion to proceed by pseudonym, that "there is no evidence of any retaliation"). The district court did not err by following the same practice and comparing Mr. Doe's case to cases where the party seeking to proceed by pseudonym presented evidence of retaliatory harm. *See* JA57-58.

Further, the district court did not err, let alone commit clear error, by finding that Mr. Doe did not produce evidence of more than a general fear of retaliation or embarrassment. JA57-58; *see* Appellant's Br. 30-31. In his three-paragraph argument below on the retaliation factor, Mr. Doe relied on the nature of [Jane Doe] accusations, asserting that if his identity was disclosed, he "could be targeted for retaliatory physical or mental harm based solely on the accusation of sexual misconduct," and that living with those accusations "would be detrimental to [Mr.] Doe's physical and mental health." JA48. Mr. Doe did not offer any evidence or allegations that he had received threats of retaliation because of his lawsuit; he did not identify any person who might retaliate against him; and he did not specify what kind of "physical or mental harm" he might suffer. JA48. Rather, Mr. Doe asserted a risk to his "public reputation." JA48. Mr. Doe offered no evidence, and he did not cite any allegations in his complaint, in support of his argument on the risk of retaliation. *See* JA48. Therefore, the district court's

24

finding that Mr. Doe failed to produce evidence to support more than a general fear of retaliation or embarrassment was not erroneous.  *See* JA57-58.

On appeal, Mr. Doe argues that the district court "did not consider John Doe's assertion that being falsely branded as a sexual predator would cause him physical and mental harm."  Appellant's Br. 13.  To the contrary, the district court did consider this risk of reputational harm.  *Supra* pp. 19-21.

Mr. Doe also argues that the district court should have relied on his "allegations that, as a result of Jane Doe's false accusations, John Doe has *already* been the target of retaliatory physical and mental harm."  Appellant's Br. 14 (emphasis added); *see id.* 30-31 (citing allegations about harm Mr. Doe has suffered).  To the extent that Mr. Doe contends that the district court was required to peruse his complaint to construct a scenario where Mr. Doe could be exposed to retaliatory harm, *see id.* 13-14, 30-31, he misapprehends the district court's responsibility.  Mr. Doe did not argue to the district court that it should find a risk of retaliation based on the allegations he now cites; in his retaliation argument below, Mr. Doe did not cite his complaint.  *See* JA48.  The district court was not required to search the record to find support for Mr. Doe's argument; that burden rested on Mr. Doe.  *See, e.g.*, *Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994) (concluding that district court "would have remained well within its discretion in refusing to ferret out the facts that counsel

25

had not bothered to excavate"); *Hill v. Carvana, LLC*, No. 1-22-CV-37, 2022 WL
1625020, at \*5 (M.D.N.C. May 23, 2022) ("Courts are neutral arbiters, not
advocates, and courts are not required to scour the record for evidence." (citation
omitted)); *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)
(recognizing that parties represented by counsel "are responsible for advancing the
facts and argument entitling them to relief" (quotation omitted)).

> d. The district court did not rule that a party seeking to
> proceed by pseudonym must establish "aggravating
> factors."

The district court did not rely on the "erroneous legal premise that
'aggravating factors' are required in order to favor pseudonymity." *See*
Appellant's Br. 31 (quoting JA58); *see also id.* 17. Mr. Doe conflates the district
court's observation that other cases involved "aggravating factors" with the district
court imposing a requirement that Mr. Doe demonstrate "aggravating factors." *See*
*id.* 31-32. In analyzing Mr. Doe's argument on the risk of retaliation, the district
court explained that "there do not appear to be any aggravating factors beyond the
subject matter of the sexual assault allegation," contrasting the case with two
others Mr. Doe cited where there was evidence of significant media attention.
JA58 (citing *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016), and *George Mason*,
179 F. Supp. 3d at 593). By taking the care to analyze and distinguish the cases

Mr. Doe cited, the district court did not suggest that a party could only show a risk of retaliation if the party demonstrated "aggravating factors." *See* JA58.

> e.  The district court did not abuse its discretion by determining that the alleged risk of harm to others did not support Mr. Doe's request to proceed by pseudonym.

Finally, the district court did not rely on an erroneous legal premise by determining, in its analysis of the second *James* factor, that Mr. Doe's reference to potential harm to Jane Doe and Sue Roe did not support his request to proceed by pseudonym. *See* Appellant's Br. 32-33 (citing JA58). The district court recognized Mr. Doe's asserted concern that "it would be harmful to publicize the names of the female accusers as it would subject them to unwanted scrutiny, harassment and ridicule." JA48 (quotation omitted); *see* JA57. The district court properly determined that harm resulting from publicizing Jane Doe and Sue Roe's names did not affect its decision on Mr. Doe's request to proceed by pseudonym. *See* JA58.

While harm to others may, in some circumstances, support the requesting party's desire to use of a pseudonym, *see* Appellant's Br. 32, Mr. Doe did not attempt to tie the alleged harm to Jane Doe and Sue Roe to his request to use a pseudonym, *see* JA48. Rather, he argued below that it would be harmful to publicize Jane Doe and Sue Roe's names; he did not argue that publicizing his own name would risk harm to Jane Doe or Sue Roe. *See* JA48.

Mr. Doe's argument that he "moved for pseudonym protection for himself, Jane Doe and Sue Roe," Appellant's Br. 32, is inconsistent with the motion he presented to the district court, *see* SA1. Mr. Doe said in his motion only that "Plaintiff John Doe moves the Court for leave to proceed under pseudonym," and that he would file a supporting brief. SA1. In a proposed order attached to the motion, Mr. Doe invited the court to order "that the parties shall proceed in this action by referring to one another's pseudonym in the manner set out in the Motion," SA4; in the motion, Mr. Doe "set out" a pseudonym only for himself, SA1. Mr. Doe confirmed in the first sentence of his supporting brief that he was "seek[ing] an Order granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff." JA43. Mr. Doe cites the concluding paragraph of his district court brief, *see* Appellant's Br. 32-33 (citing JA50), where he wrote that the district court "should allow John Doe, Jane Doe, and Sue Roe to proceed anonymously," JA50. However, in the next sentence, he reiterated a request for relief consistent with what he requested in his motion: "Therefore, John Doe requests that he be allowed to proceed pseudonymously for the duration of this litigation." JA50.

The district court properly relied on Mr. Doe's motion to find that Mr. Doe "asked only to permit him to proceed pseudonymously," and not Jane Doe or anyone else. JA62 (citing district court docket entry 5, Mr. Doe's motion for leave

28

to proceed under pseudonym).  Under the district court's local rules, Mr. Doe, as the movant, was required to state "precisely the relief requested" in his motion. *See* E.D.N.C. Civ. R. 7.1(b)(1) ("All motions shall be concise and shall state precisely the relief requested."); *see also Infernal Tech., LLC v. Epic Games, Inc.*, 339 F.R.D. 226, 229 n.2 (E.D.N.C. 2021) (noting that to receive relief, "[u]nder the court's Local Civil Rules, [movant] would have had to explicitly ask for this relief in its motion").  Absent a motion with a specific request that Jane Doe or others be prohibited from using their own names or required to use pseudonyms, and a memorandum supporting that request, the district court correctly found that Mr. Doe did not seek relief other than to proceed by pseudonym himself.  JA61-62; *see, e.g.*, *Bryant v. Core Contents Restoration, LLC*, No. 7:20-CV-00040-M, 2021 WL 1207719, at *9 n.9 (E.D.N.C. Mar. 30, 2021) (citing local rules including Rule 7.1(b)(1) and declining to relief not specifically raised by motion); *Mondragon v. Scott Farms, Inc.*, No. 5:17-CV-00356-FL, 2019 WL 489117, at *12 (E.D.N.C. Feb. 7, 2019) (same).[3]

---

[3] Mr. Doe's motion to stay pending appeal confirms that the relief he sought below was to withhold his own name.  Mr. Doe sought and obtained a stay of the portion of the district court's order "requiring Plaintiff to file an amended complaint under his legal name."  JA3; *see* Order, *Doe*, No. 5:22-cv-00500-D-BM (E.D.N.C. Jan. 24, 2023).  Mr. Doe did not purport to seek a stay of any other part of the order. JA2-3 (motion to "stay the court's order [ECF No. 8] requiring Plaintiff to file an amended complaint under his legal name" (italics omitted)); *see* Mot. to Stay, *Doe*, No. 5:22-cv-00500-D-BM (E.D.N.C. Jan. 19, 2023).

Allowing Mr. Doe to proceed under a pseudonym will not protect Jane Doe or Sue Roe, and Mr. Doe is not seeking to protect them. *See* Appellant's Br. 32-33. To the contrary, as the litigation of this case will reveal, Mr. Doe sexually assaulted Jane Doe and, when she was brave enough to truthfully report the assault and cooperate in the university's Title IX process, Mr. Doe retaliated by suing her. Jane Doe rejects the accusation in Mr. Doe's brief that her "voluntary self-identification for purposes of this appeal seems to be a continuation of her vengeful campaign to destroy John Doe's reputation" or an effort to "out John Doe through the public disclosure of *her* identity." *See id.* 33 n.3 (emphasis added). Neither Mr. Doe nor Jane Doe has sought or obtained permission from the district court for Jane Doe to identify herself by a pseudonym. *See supra* pp. 28-29. Before Jane Doe counsel entered an appearance in this appeal (Dkt. No. 13, 15), Mr. Doe appealed the denial of *his* motion to proceed under a pseudonym, JA52, acknowledged that the district court did not decide whether Jane Doe could proceed by pseudonym (Dkt. No. 5 at 2), and described the issue on appeal as, "Did the District Court err in denying Plaintiff-Appellant John Doe's motion to proceed by pseudonym in the underlying action?" (*id.* at 3). Jane Doe therefore identified herself by name on the appearance and disclosure forms that call for the name of the party filing them. (*See* Dkt. Nos. 13, 14, 15).[4]

---

[4] Jane Doe followed the same practice in her district court filings.

30

> 3. Mr. Doe does not challenge the district court's finding that the age of the parties weighed against anonymity.

The district court properly determined that the third *James* factor, the age of the parties, weighed against anonymity where Mr. Doe conceded that all parties are adults. JA58. Mr. Doe argued below that this factor did not weigh against anonymity because the parties were college students at the time of the events alleged in the complaint. *See* JA48. The district court rejected this argument, finding that "when plaintiff filed this complaint, plaintiff was beyond the typical age of a college student and would have already graduated from Tulane if not for his expulsion." JA58.

Mr. Doe does not argue in his brief to this Court that the district court erred by determining that the third *James* factor weighed against anonymity. *See* Appellant's Br. *passim*. Therefore, Mr. Doe abandoned any challenge to the district court's finding that the third factor weighed against Mr. Doe's request to proceed under a pseudonym. *See United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned."); *see also* Fed. R. App. P. 28(a), (a)(8)(A) (requiring opening brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

31

> 4.  The district court correctly rejected Mr. Doe's assertion that his case was against both the government and a private party and exercised appropriate discretion to find that the fourth *James* factor weighed against anonymity.

Recognizing that courts are more inclined to allow pseudonym protection to a plaintiff suing the government, the district court properly determined that the fourth *James* factor weighed significantly against anonymity where Mr. Doe sought money damages from a private individual. JA58-59. The district court rejected Mr. Doe's argument below that his case was against both the government and a private party. JA59; *see* JA49. Mr. Doe offered no basis for this argument in the district court, JA49, and he does not argue on appeal that the district court was wrong to reject it, *see* Appellant's Br. *passim*.

Mr. Doe also does not appear to challenge on appeal the district court's determination that this factor weighed *against* allowing him to proceed by pseudonym. *See id.* 33-36. Rather, Mr. Doe argues that the district court erred by giving the fourth *James* factor significant weight, and that this alleged error shows that the district court denied Mr. Doe's motion because of "general disapproval of party anonymity in cases where private parties are involved, rather than consideration of relevant case law and the specific circumstances of John Doe's case." *Id.* 36. The district court's careful and thorough discussion of Mr. Doe's case in comparison to other cases belies Mr. Doe's argument. *See* JA55-62.

32

Courts are less likely to allow pseudonymous litigation "'when the plaintiff sues a private individual than when the action is against a governmental entity seeking to have a law or regulation declared invalid.'" *Pittsylvania County*, 844 F. Supp. 2d at 730 (quoting *Doe v. Merten*, 219 F.R.D. 387, 394 (E.D. Va. 2004)). As the district court explained in *Pittsylvania County*, the fourth *James* factor may weigh against anonymity when the defendant is a private party because "[a]ctions against the government do no harm to its reputation, whereas suits filed against private parties may damage their good names and result in economic harm." *Id.* The district court properly considered *Pittsylvania County* and other cases to determine that, because Mr. Doe only sued a private individual for money damages, the fourth *James* factor weighed against anonymity. JA59 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *Pittsylvania County*, 844 F. Supp. 2d at 730; *Virginia Tech III*, 2022 WL 972629, at \*3; *A.B.C. v. XYZ Corp.*, 660 A.2d 1199 (N.J. Super. Ct. App. Div. 1995)). The district court correctly determined that, on the facts of this case, where Mr. Doe sues only a private individual and seeks money damages for her alleged wrongdoing, it would be "'fundamentally unfair' for plaintiff to be able to 'clear his name' and wield a potential judgment against Jane Doe to his advantage but hide under the shield of anonymity if unsuccessful." JA59.

33

In finding that allowing Mr. Doe to proceed by pseudonym would be unfair, JA59, the district court did not "overlook[ ] that John Doe sought pseudonym protection for Jane Doe for the duration of the litigation," Appellant's Br. 15; *see id.* 35. Mr. Doe did not move for leave for Jane Doe to proceed under a pseudonym. *See supra* pp. 28-29. Even if he had, allowing Jane Doe to proceed by pseudonym would not diminish the district court's concern about unfairness. If both parties were identified by pseudonyms, and Mr. Doe won a judgment, he could wield the judgment to his advantage by forcing Jane Doe to pay him money; if he lost the case, he could "hide under the shield of anonymity," and not face the risk that the public would view the outcome in Jane Doe favor as validation of her sexual assault allegations. *See* JA59. Mr. Doe cannot identify any error in the district court's finding of fundamental unfairness to Jane Doe *see* Appellant's Br. 34-35, and that finding supports the district court's decision to assign significant weight to the fourth *James* factor, *see* JA59.

Mr. Doe criticizes the district court's citation to *Pittsylvania County*, *Southern Methodist*, and *A.B.C.* because those cases did not involve sexual assault allegations. *See* Appellant's Br. 34-35.[5] But the district court cited all three cases in its analysis of the fourth *James* factor—whether the case was brought against the

---

[5] Although *A.B.C.* did not involve a university sexual misconduct incident, it did involve a sex crime—the plaintiff alleged that he was fired after he committed the crime of indecent exposure while he was supposed to be attending a business seminar. 660 A.2d at 1200.

34

government or a private party.  JA59.  The fourth *James* factor does not address the subject matter of the case; it concerns the identity of the defendant.  *See James*, 6 F.3d at 238.  The district court cited *Pittsylvania County*, *Southern Methodist*, and *A.B.C.* only after the district court found, on the first *James* factor, that with respect to the subject matter of the case, Mr. Doe was seeking to protect sensitive and personal matters.  *See* JA57.

The *Virginia Tech* cases do not support Mr. Doe's argument that the district court erroneously relied on a general prohibition of anonymity in cases against private defendants to deny Mr. Doe's request to proceed by pseudonym.  *See* Appellant's Br. 21-22, 33-34.  In the *Virginia Tech* cases, the courts allowed plaintiffs challenging their public university's disciplinary process and seeking to expunge their disciplinary records, in litigation against the university and its employees, to proceed by pseudonym, even though the fourth *James* factor did not weigh in favor of the respective plaintiffs' requests.  2022 WL 972629, at *1, *4; 2020 WL 1287960, at *1-2, *5; 2018 WL 5929647, at *1, *4.  The *Virginia Tech* courts considered other factors that supported the plaintiffs' requests to proceed by pseudonym.  *See* 2022 WL 972629, at *2-4; 2020 WL 1287960, at *3-5; 2018 WL 5929647, at *3-4.  In each of those cases, the district court found that at least three other *James* factors supported the pseudonymity request, and that the plaintiffs' privacy interests outweighed the public interest.  *See* 2022 WL 972629, at *2-4

35

(finding that fourth factor was neutral where plaintiff sued public university and individuals in their official capacities, but first, second, and fifth *James* factors weighed in favor of anonymity); 2020 WL 1287960, at *3-5 (finding that fourth factor weighed against anonymity because defendants included government and private parties, but all other factors weighed in favor of anonymity); 2018 WL 5929647, at *3-4 (finding that fourth factor weighed against anonymity because defendants included government and private parties, but first, second, and fifth *James* factors weighed in favor of anonymity).

Like each of the *Virginia Tech* courts, *supra* pp. 35-36, the district court in this case considered all the *James* factors and the public interest; the district court did not decide the motion on the basis of the fourth *James* factor alone. *See* JA57-60. After considering other factors, the district court found that only the first *James* factor favored anonymity, *see* JA57-60, and that Mr. Doe failed to overcome the public interest in openness, JA60-61. For the reasons demonstrated above and below with respect to each factor, the district court correctly decided that the balance of those factors weighed against anonymity. JA61.

The district court's decision to have the parties use initials in *B.R. v. F.C.S.B.*, No. 1:19-CV-00917-RDA-TCB, 2020 WL 12435689, at *26 (E.D. Va. Mar. 10, 2020), *aff'd on other grounds*, 17 F.4th 485 (4th Cir. 2021), likewise fails to support Mr. Doe's argument. *See* Appellant's Br. 36 (citing *B.R.*, 2020 WL

36

12435689, at *26). In that case, the court found that the fourth *James* factor

weighed against the use of a pseudonym because the majority of the defendants

were private parties. *B.R.*, 2020 WL 12435689, at *26. However, the court found

it appropriate to allow the use of initials for both the plaintiff and the defendants

because the claims were so "*highly* sensitive and of an *immensely* personal nature,"

where the plaintiff alleged that, as a twelve-year-old middle school student, she

was "repeatedly 'raped, tortured, extorted and sexually assaulted'" by her

classmates, two of whom she named as defendants. *Id.* at *25 (emphasis in *B.R.*).

While Mr. Doe asserts that he faces the "same wide-ranging ramifications" at issue

in *B.R.*, Appellant's Br. 25, Mr. Doe offers no basis for this Court to analogize his

case to litigation over the repeated rape and torture of a child.

> 5. The district court correctly found that there was a risk of prejudice to Jane Doe and exercised appropriate discretion to find that this factor weighed against anonymity.

On the final *James* factor, the district court found that, although Jane Doe

was aware of Mr. Doe's identity, allowing Mr. Doe to litigate under a pseudonym

created a risk of prejudice to Jane Doe including "difficulty and confusion" during

the discovery process. JA59-60. The district court properly exercised its

discretion to determine that this factor weighed against allowing Mr. Doe to

proceed pseudonymously. JA60.

37

Mr. Doe cannot show that the district court relied on the "erroneous factual premise that 'pervasive anonymity' in the Complaint could lead to difficulty and confusion for Jane Doe during discovery.'" *See* Appellant's Br. 36-37.  Mr. Doe's complaint supports a finding of "pervasive anonymity"—Mr. Doe referred to himself, Jane Doe and the other student Mr. Doe was found to have sexually assaulted by pseudonyms, and he identified at least eighteen other people by their initials.  *See* JA8-11, JA13-16, JA21-25, JA27-30.

Mr. Doe's argument that he "did not represent to the District Court that he was unwilling to conduct discovery using the real names of Sue Roe and other persons identified in the Complaint" is unavailing.  *See* Appellant's Br. 37.  Mr. Doe argues for the first time on appeal that anonymity issues in discovery "could easily be dealt with through a protective order" and that his allegations in the complaint show that all individuals identified by their initials are personally known to Jane Doe  *See id.*  Mr. Doe had the burden to support his request to proceed under a pseudonym, *see Sealed Case*, 971 F.3d at 326, and he offered no argument about how the district court could manage discovery to avoid prejudice to Jane Doe

defense, *see* JA49.  Instead, Mr. Doe argued only that there would be no prejudice to Jane Doe because she was aware of Mr. Doe's identity, and that this factor thus weighed "against revealing John Doe's identity to the public."  JA49.

38

As the district court correctly recognized, anonymity can create prejudice even when the defendant knows the identity of the plaintiff. *See* JA59-60; *see also Doe v. Trs. of Ind. Univ.*, 577 F. Supp. 3d 896, 907 (S.D. Ind. 2022) [hereinafter *Indiana University*] (rejecting plaintiff's argument that because defendants were aware of plaintiff's identity, defendants would not be prejudiced by plaintiff's use of pseudonym). Because Mr. Doe did not give Jane Doe notice of his complaint and pseudonym motion until three weeks after the district court denied the motion, *supra* p. 9, Jane Doe had no opportunity to offer evidence of the extent of the prejudice she would suffer in the case preparation and discovery process, for example, in trying to investigate the case, interview witnesses, and take discovery from non-parties—whom Jane Doe cannot assume will agree to be bound by a protective order—without revealing Mr. Doe's identity. *See Indiana University*, 577 F. Supp. 3d at 907 (recognizing as valid defendants' concerns about taking third-party discovery if plaintiff was anonymous).

Allowing Mr. Doe to proceed by pseudonym also would prejudice Jane Doe at trial. Courts have recognized that, when a party claiming that injury through public revelation of information is allowed to use a pseudonym at trial, jurors may be led to believe that the use of the pseudonym validates that the plaintiff did indeed suffer the claimed harm. *See id.*; *Doe v. Rose*, No. CV-15-07503-MWF-JCX, 2016 WL 9150620, at *3 (C.D. Cal. Sept. 22, 2016) ("Many courts have

39

expressed the concern that allowing a plaintiff to proceed under a pseudonym at trial would communicate a subliminal comment on the harm the alleged encounter with the defendant has caused the plaintiff." (quotation omitted)).  Permitting Mr. Doe to use a pseudonym to protect his reputation when he is seeking reputational damages, JA40-41, JA44, would suggest to the jury that the district court agrees with Mr. Doe's allegations of reputational harm.  In addition, allowing Mr. Doe to proceed under a fictitious name at trial will hamper the jury's truth-seeking function by dampening the impact of cross-examination.  *See Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015) ("A witness who proceeds under her own name and is subject to potentially rigorous cross-examination may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account."), *aff'd*, 672 F. App'x 48 (2d Cir. 2016) (summary order).

This case is unlike *James*, where the Court considered the risk of prejudice attendant to use of a pseudonym at trial but recognized concessions that the plaintiffs made to avoid prejudice to the defendant.  6 F.3d at 241-42.  In *James*, the plaintiff spouses sued a physician who artificially inseminated one of the spouses with his own sperm without her consent.  *Id.* at 235, 241.  The plaintiffs sought leave to use pseudonyms at trial, based in part on a proffer of expert evidence showing that it would be harmful to the plaintiffs' pre-adolescent children to learn at their young age that the defendant was their biological parent.  *Id.* at

40

241.  The district court denied the motion; on appeal, this Court concluded that the district court improperly applied a general rule that "party-anonymity at trial is simply not permissible," and remanded for the district court to make a particularized assessment of the facts.  *Id.* at 239, 242-43.  This Court recognized that the *James* plaintiffs made a key concession to avoid prejudice to the defendant from their use of pseudonyms—the plaintiffs stipulated that "they would not claim as items of damage any emotional distress caused them either by shame from public revelation of their victimization or by their awareness of the hurt experienced by the children."  *Id.* at 241.  The *James* Court noted that if the district court had not applied a general rule, but had instead balanced the individual factors, the district court could properly have concluded that this limitation on the plaintiffs' claims and damages, coupled with other measures, could avoid prejudice to the defendant from the plaintiffs' use of pseudonyms.  *Id.* at 242.

Mr. Doe, in contrast to the plaintiffs in *James*, is seeking to recover for emotional distress and reputational harm that he claims he suffered because of Jane Doe public revelation that Mr. Doe sexually assaulted her.  *See* JA5, JA32-34, JA37-38.  Allowing Mr. Doe to litigate this case under a pseudonym would suggest that his allegations of emotional distress and reputational harm are true and would thus prejudice Jane Doe in her defense of this case.  *See Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014).

Contrary to Mr. Doe's argument, Jane Doe is not "attempting to align this case with those cases in which the accused seek to proceed by pseudonym against the named accused." *See* Appellant's Br. 41.  Although Mr. Doe did not move for leave to require Jane Doe to proceed under a pseudonym, *supra* pp. 28-29, Mr. Doe did not use Jane Doe name in his complaint, JA4-42.  As shown above, Jane Doe would be prejudiced in the defense of her case, including in the investigation, discovery, and trial processes, by Mr. Doe's use of a pseudonym.  *Supra* pp. 39-41. Even if Jane Doe were identified by a pseudonym, she would still face prejudice in attempting to interview witnesses and take discovery from non-parties without being permitted to use *Mr. Doe's* name.  *Supra* p. 39.  It is Mr. Doe, not Jane Doe who claims reputational damages; allowing Mr. Doe to use a pseudonym at trial, regardless of how Jane Doe was identified at trial, would suggest to the jury that Mr. Doe's allegations of reputational harm are valid.  *Supra* pp. 39-41.

   B.    The District Court Properly Balanced Mr. Doe's Stated Interest in
         Anonymity Against the Public's Interest in Opennesss.

As required by this Court's precedent, the district court also balanced Mr. Doe's interest in proceeding by pseudonym against the public interest in open proceedings.  JA60-61; *see Pub. Citizen*, 749 F.3d at 274; *accord B.R.*, 17 F.4th at 496.  As shown below, the record contradicts Mr. Doe's assertion that "[t]he District Court failed to balance John Doe's interest in anonymity against the public's interest in open judicial proceedings."  *See* Appellant's Br. 39.  The

42

district court properly balanced Mr. Doe's interest against the public interest and found that Mr. Doe failed to establish the extraordinary circumstances necessary to warrant anonymity.  *See* JA60 (citing *Pub. Citizen*, 749 F.3d at 274).

        1.      The district court correctly determined that the extraordinary circumstances warranting anonymity in cases against universities do not apply to Mr. Doe's defamation case against an individual.

    Mr. Doe concedes, as he must, that the district court was correct to find that Mr. Doe cited no case in which a plaintiff in a defamation lawsuit was allowed to proceed pseudonymously against an alleged victim of sexual assault.  Appellant's Br. 40; *see* JA61.  Multiple courts have recognized the lack of authority for pseudonymity in defamation cases.  *See, e.g.*, *Roe v. Does 1-11*, No. 20-cv-3788-MKB-SJB, 2020 WL 6152174, at *6 (E.D.N.Y. Oct. 14, 2020) ("The Court finds it highly persuasive that Plaintiff fails to and is unable to cite a single case in which a plaintiff, suing for defamation and alleging he was falsely accused of sexual assault, was allowed to proceed anonymously against the victim of the purported assault."); *Doe v. Moreland*, No. CV 18-800 (TJK), 2019 WL 2336435, at *2 (D.D.C. Feb. 21, 2019) ("Certainly, neither party has directed the Court to any case in this Circuit in which a plaintiff asserting a defamation or false light claim has been permitted to pursue such a claim while using a pseudonym."); *see also A.B. v. C.D.*, No. 2:17-CV-5840-DRH-AYS, 2018 WL 1935999, at *3 (E.D.N.Y. Apr. 24,

2018)[6] (denying plaintiff's request to proceed by pseudonym, but allowing

defendant to proceed by pseudonym, where plaintiff alleged defamation claim

arising from defendant's report of sexual misconduct).  This lack of authority

makes sense.  A defamation case against a private individual is unlike a tort,

contract, or constitutional claim against an institution challenging the institution's

administration of its disciplinary process, the outcome of that process, or the

attendant sanction.  *See* JA61.  Comparing Mr. Doe's case to the *Virginia Tech*,

*George Mason*, and *Alger* cases illustrates why this distinction matters to the

outcome of Mr. Doe's pseudonym motion.

Unlike Mr. Doe, the *Virginia Tech*, *George Mason*, and *Alger* plaintiffs each

sued their public university and its employees; those plaintiffs did not sue the

individuals who accused them of sexual assault.  *Virginia Tech III*, 2022 WL

972629, at *1, *3; *Virginia Tech II*, 2020 WL 1287960, at *1-2; *Virginia Tech I*,

2018 WL 5929647, at *1; *George Mason*, 179 F. Supp. 3d at 585, 587-88; *Alger*,

317 F.R.D. at 38.  Unlike Mr. Doe, the *Virginia Tech*, *George Mason*, and *Alger*

plaintiffs did not plead defamation claims.  *Virginia Tech III*, 2022 WL 972629, at

*1; *Virginia Tech II*, 2020 WL 1287960, at *1-2; *Virginia Tech I*, 2018 WL

5929647, at *1; *George Mason*, 179 F. Supp. 3d at 587-88; *Alger*, 317 F.R.D. at

---

[6] The opinion in *Menaker v. C.D.*, No. 2:17-CV-5840-DRH-AYS, 2018 WL 5776533, at *1 (E.D.N.Y. Nov. 1, 2018), provides the relevant factual background for the denial of the pseudonym motion in *A.B.*, 2018 WL 1935999, at *3.

38.  And unlike Mr. Doe, each of the *Virginia Tech*, *George Mason*, and *Alger* plaintiffs sought injunctive relief to expunge their respective disciplinary records. *Virginia Tech III*, 2022 WL 972629, at *4; *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1309461, at *4 (W.D. Va. Mar. 19, 2020) (opinion entered in *Virginia Tech II*); *Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 488 (W.D. Va. 2019) (recognizing that plaintiffs, including plaintiff in *Virginia Tech I*, were "seeking to expunge and clear their academic records"); *George Mason*, 179 F. Supp. 3d at 587-88; *Alger*, 317 F.R.D. at 38.

Therefore, the circumstances of Mr. Doe's case do not, as he contends, "track" the circumstances in the *Virginia Tech* cases, *see* Appellant's Br. 23, nor is Mr. Doe "strikingly similar to the plaintiff in" *George Mason*, *id.* 25.  The distinctions between Mr. Doe's case and the *Virginia Tech*, *George Mason*, and *Alger* cases warrant a different result on pseudonymity for two related reasons. First, when a student challenges the university's administration of its confidential disciplinary process, a lawsuit may serve as a final "appeal" of the university's actions.  As the court in *George Mason* observed, "[i]t makes little sense" to breach the confidentiality that would otherwise cover a university's Title IX proceedings "because *the university* erred and left the accused with no redress other than a resort to federal litigation."  179 F. Supp. 3d at 593 (emphasis in *George Mason*).  Second, when a student found responsible for a disciplinary

45

violation sues the university and/or its officials for injunctive relief to expunge the student's disciplinary record, disclosure of the student's identity would "greatly undermine any relief to which he may be entitled." *Virginia Tech III*, 2022 WL 972629, at *4. Refusing to allow a student to proceed anonymously in such a case would prevent the student from being made whole even if the court ordered expungement, because "the cat would have already been let out of the bag." *See Alger*, 317 F.R.D. at 42.

These considerations do not apply here. While Mr. Doe contends that if he is "forced to proceed under his real name, he will suffer the very harm that he is trying to prevent through his lawsuit," Appellant's Br. 17, Mr. Doe is only seeking damages, not injunctive relief that would or could prohibit others from learning about Jane Doe sexual assault allegations, JA40-41. The district court recognized that, unlike in the cases Mr. Doe cited, Mr. Doe "is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation. In fact, Tulane is not a defendant." JA61. Mr. Doe seeks no relief from Tulane, JA61; instead, he seeks money damages from a private individual who has no authority over Tulane's disciplinary process. Cases where students have sought to expunge their disciplinary records by suing their universities—not the individuals who accused them of sexual assault—do not support Mr. Doe's request to remain anonymous in this defamation case. *See Roe*,

46

2020 WL 6152174, at *5 n.3 (noting that cases "brought against colleges and universities, not victims of assault" can "provide little guidance" when plaintiff seeks anonymity in defamation case). The district court correctly recognized that Mr. Doe was "wrong" to argue that courts have allowed plaintiffs under similar circumstances to proceed anonymously. JA61.

Mr. Doe's request to proceed by pseudonym is inconsistent with the relief he seeks in this case: "compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, *damages to reputation*, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects." *See* JA40 (emphasis added). Public perception is inherent in the concept of reputation—reputation is a person's "place in public esteem or regard," or her "good name." *See Reputation*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/reputation (last visited Mar. 28, 2023). Proving reputational damages, which Mr. Doe repeatedly seeks in his complaint, JA5, JA34-35, JA37-40, will thus invite inquiry into Mr. Doe's character and conduct, how others perceived him before Jane Doe reported the sexual assault, and how others perceive him now. *See, e.g.*, *United States v. Atkins*, No. 97-4807, 1998 WL 153397, at *2 (4th Cir. Apr. 3, 1998) (per curiam) (recognizing use of character evidence in defamation actions); *Raymond U v. Duke*

47

*Univ.*, 91 N.C. App. 171, 184, 371 S.E.2d 701, 710 (1988) (noting that character evidence "is relevant and admissible in defamation actions"); *see also* Fed. R. Evid. 405(b) (allowing evidence of specific instances of conduct to prove character when character is "an essential element of a charge, claim, or defense").

By arguing that he wants to "clear his name," Appellant's Br. 25, Mr. Doe further underscores why the public interest in knowing the parties' identities must prevail in his case, *Pub. Citizen*, 749 F.3d at 273. Mr. Doe cannot "clear his name" without using it. *See Moreland*, 2019 WL 2336435, at *2 n.1 ("While Plaintiff repeatedly insists that this lawsuit is an effort to 'clear his already tarnished name,' the Court is hard-pressed to understand how he may do so while proceeding under a pseudonym." (citation omitted)). A damages award against Jane Doe would not expunge the university disciplinary finding and sanction, and it could not "clear" any name other than "John Doe" if Mr. Doe proceeds by pseudonym. In contrast to the cases where plaintiffs seek to "clear" their names by expunging their disciplinary records, *see supra* pp. 45-46, Mr. Doe cannot overcome the public interest in knowing the identity of the parties in his action for money damages, *see Pub. Citizen*, 749 F.3d at 273.

48

2.    The district court correctly found that Mr. Doe failed to address the risk of eroding public access to court proceedings.

The district court did not err by finding that Mr. Doe "fail[ed] to address the risk that pseudonymous lawsuits have in eroding public access to proceedings." JA60; *see* Appellant's Br. 39. Mr. Doe argued to the district court that "[t]here is no public interest in learning the identities of John Doe or Jane Doe through this litigation." JA49. Mr. Doe's argument is contrary to this Court's precedent—this Court explicitly recognized in *Public Citizen* that "[t]he public has an interest in knowing the names of the litigants, and disclosing the parties' identities furthers openness of judicial proceedings." 749 F.3d at 273 (citation omitted). The district court acted within its discretion by rejecting an argument that is inconsistent with binding precedent. *See* JA60.

Mr. Doe recites part of his district court brief in an effort to show that he made an argument about the public interest that the district court failed to address. *See* Appellant's Br. 39 (citing JA46). According to Mr. Doe, he expressly argued that "the crucial interests served by open judicial proceedings are not compromised by allowing party to proceed anonymously. If a plaintiff is granted leave to proceed under a pseudonym, the public is not denied its right to attend the proceedings or inspect the court's opinions and orders on the underlying constitutional issue." *Id.* The excerpted portion of Mr. Doe's district court brief is a quote from one of the *Virginia Tech* cases in Mr. Doe's recitation of the general

49

legal standards applicable to his pseudonym motion.  *See* JA46 (quoting *Virginia Tech I*, 2018 WL 5929647, at *2).  Mr. Doe could not expect the district court to construe his quotation from *Virginia Tech I* as an argument worthy of specific mention—the quotation appears inapposite on its face because it refers to the public having the ability to "inspect the court's opinions and orders on the underlying constitutional issue," JA46, and Mr. Doe has not raised a "constitutional issue" in this money damages action against another private citizen.

> 3.    The district court did not err by discussing "mutual pseudonymity" and the impact of pseudonymity on the media.

As shown above, the district court properly construed Mr. Doe's motion to be only what Mr. Doe said it was—a request for Mr. Doe to proceed by pseudonym.  *See supra* pp. 28-29.  The district court's discussion of "principles concerning mutual pseudonymity" was not an abuse of discretion.  *See* Appellant's Br. 40.  Although Mr. Doe did not seek leave for Jane Doe to use a pseudonym, Mr. Doe filed a complaint where he referred to himself and the only defendant by pseudonyms.  *See* JA4-42.

The district court did not abuse its discretion by recognizing how mutual pseudonymity would make it difficult for the media and the public to monitor litigation.  *See* JA60.  While this case has not "evoked passionate scrutiny in the media," JA58, Mr. Doe cites no authority to suggest that the lack of media

50

attention diminishes the public's interest, recognized in *Public Citizen*, 749 F.3d at 273, in knowing the identities of the parties.  *See* Appellant's Br. 40.

\*     \*     \*

As shown above, and in the district court's methodical analysis of the application of the *James* factors to this case and its independent assessment of the public's interest, the district court appropriately exercised its discretion to deny Mr. Doe's motion to proceed by pseudonym.  *See* JA61.  The district court's order is properly affirmed.

C.     Mr. Doe's Voluntary Inclusion of Personally Identifying Details in the Complaint Supports the District Court's Decision to Deny His Request to Proceed by Pseudonym.

Because this Court considers the *James* factors nonexclusive, courts may consider other factors in assessing a request to proceed by pseudonym.  *Pub. Citizen*, 749 F.3d at 273.  As relevant here, courts have considered the movant's efforts (or lack thereof) to keep his identity confidential.  *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008); *Indiana University*, 577 F. Supp. 3d at 908.  In addition to the factors the district court discussed in its order, Mr. Doe's decision to allege identifying details about himself supports the district court's denial of Mr. Doe's pseudonym motion.  *See* JA7.[7]

---

[7] Although Jane Doe did not have the opportunity to make arguments in opposition to Mr. Doe's motion below, "[a]n appellee may defend, and this Court may affirm,

51

While withholding his name, Mr. Doe chose to allege other identifying information.  He disclosed his birthday as February 2, JA12, and alleged the dates when he was accepted, enrolled, and expected to graduate from Tulane.  JA6.  Mr. Doe alleged that he was a South Carolina resident, JA6, and suggested that he returned to South Carolina after he withdrew from Tulane, *see* JA31.  He alleged what his major was, that he was on track to graduate with honors, and what graduate program he expected to attend.  JA6-7.  He alleged the dates and locations of events he attended.  JA8, JA11.  Mr. Doe detailed his activities and accomplishments, including his leadership positions in two organizations (one named and one described by function), his membership in three named Greek organizations, his service as a business school ambassador and academic tutor, and his participation on the club baseball team.  JA7; *see supra* p. 4.

Mr. Doe's detailed allegations about himself undermine his request to litigate this case anonymously.  Mr. Doe's allegations about his activities and accomplishments appear calculated to show the public a positive reputation that Jane Doe purportedly damaged.  *See* JA7.  By making those allegations but seeking pseudonym protection, Mr. Doe attempts to benefit from his reputation without risking embarrassment.  *See supra* pp. 33-34.  At the same time, Mr. Doe risks public identification by anyone willing to take the time to research the

the district court's judgment on any basis supported by the record." *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 388 n.5 (4th Cir. 2010).

52

specific biographical information he pleaded. *See, e.g.*, *Indiana University*, 577 F. Supp. 3d at 908 (noting that where plaintiff effectively revealed his identity by alleging "that he was elected President of the Pi Lambda Phi fraternity for the 2020-2021 schoolyear," that disclosure weighed against his anonymity request). Mr. Doe's intentional inclusion of identifying information about himself in his anonymous complaint provides an additional ground for the Court to conclude that the district court properly denied Mr. Doe's pseudonym motion. *See id.*

## CONCLUSION

For the reasons stated above, Defendant-Appellee Jane Doe respectfully requests that this Court affirm the decision of the district court denying Plaintiff-Appellant John Doe's motion for leave to proceed by pseudonym.

This the 29th day of March, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant-Appellee* Jane Doe

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

A.      This brief complies with the type-volume limitation of Fed. R. App. P.
        32(a)(7)(B) because:

        this brief contains 12,928 words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(f).


B.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
        because:

        this brief has been prepared in a proportionally spaced typeface using
        14 Point Times New Roman in Microsoft Word.

This the 29th day of March, 2023.

                              ELLIS & WINTERS LLP

                              /s/ Kelly Margolis Dagger
                              Kelly Margolis Dagger

                              *Counsel for Defendant-Appellee* Jane Doe

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the clerk

of court using the CM/ECF system which will send notice of the filing to counsel

for Plaintiff-Appellant addressed as follows:

Kara Gorycki, Esq.
kgorycki@nmllplaw.com

This the 29th day of March, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger

*Counsel for Defendant-Appellee* Jane Doe

56

# EXHIBIT C

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1058**

───────────────

JOHN DOE,

               Plaintiff – Appellant,

     v.

JANE DOE,

               Defendant – Appellee.

------------------------------

FIRST AMENDMENT COALITION; PROFESSOR EUGENE VOLOKH,

               Amici Supporting Appellee.

───────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge. (5:22-cv-00500-D-BM)

───────────────

Argued:  September 19, 2023               Decided:  October 26, 2023

───────────────

Before AGEE, WYNN, and THACKER, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Judge Agee and Judge Wynn joined.

───────────────

**ARGUED:**  Kara L. Gorycki, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant.  Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Andrew T. Miltenberg, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant.  James M. Weiss, ELLIS & WINTERS LLP, Raleigh,

North Carolina, for Appellee.  Eugene Volokh, First Amendment Amicus Brief Clinic, UCLA SCHOOL OF LAW, Los Angeles, California, for Amici Curiae.

———————

THACKER, Circuit Judge:

John Doe ("Appellant") filed this civil action alleging claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy against Jane Doe ("Appellee") after Appellee accused Appellant of sexual assault. When Appellant filed his complaint, he also filed an ex parte motion to proceed using the pseudonym "John Doe," rather than his real name. The district court denied the motion. Because we conclude that the district court did not abuse its discretion in doing so, we affirm.

I.

Appellant began his undergraduate studies at Tulane University in August 2018 and was on track to graduate in May 2022 prior to the events giving rise to this lawsuit.[1] Appellant had an ongoing but not steady, "uncommitted, casual relationship" with a woman he calls "Sue Roe" in Fall 2019, and at various points in Spring and Summer 2021. J.A. 8.[2]  In August 2021, Appellant and Sue Roe left a bar together, went to Sue Roe's house, and engaged in what Appellant alleges was consensual sex.  Afterward, Appellant told Sue Roe that they "may regret that later," which made her cry.  *Id.* at 9.  After apologizing, Appellant went to sleep but was awakened at some point later by Sue Roe's housemate, who asked him to leave.

---

[1] We recount the facts here as Appellant alleged them in his Complaint.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

In September 2021, Appellant "matched" on Tinder with Appellee. Several months later, Appellant invited Appellee to his fraternity party, which they attended on January 29, 2022. Appellee then texted Appellant on February 2, 2022, to wish him a happy birthday. Around midnight that night, Appellant asked Appellee if she "wanted to hang out," to which she responded that she did. J.A. 13. The two went to Appellant's house to have consensual sex, and Appellant walked Appellee home the next morning. On the night of February 3, Appellant went to a bar with his friends and met up with a woman he identifies as "A.H." *Id.* Appellant and A.H. left the bar together and "[u]pon information and belief, [Appellee] saw [Appellant] talking to A.H. at the bar and heard that he and A.H. went home together." *Id.* at 14.

Appellant alleges that after Appellee learned he went home with another woman on February 3, Appellee set off on a campaign to disseminate false allegations against him. Appellant alleges that on February 4, Appellee told one of Appellant's friends that Appellant had "engaged in nonconsensual sexual activity" with her. J.A. 14. "[B]y February 6th, false rumors had begun spreading around school alleging that [Appellant] sexually assaulted a female student" and Appellant had been told about the rumors and social media posts[3] by several people. *Id.* at 14–15. On the evening of February 8, Appellant received a text message from Appellee accusing him of sexually assaulting her and calling him "a predator and repeat offender." *Id.* at 15.

---

[3] Appellant does not allege that any post actually identified him but says there was "an indication" in one post that it was referring to him. J.A. 14.

4

The following day, Appellant discussed the allegedly false claims with multiple friends, and two of his friends called Appellant's "parents to tell them it was not safe for [Appellant] to be on the Tulane campus." J.A. 15. On February 10, Appellant's mother flew to Tulane to help Appellant pack and take him home. Appellant withdrew from Tulane on February 11, 2022.

Although Appellant was unaware at the time, Appellee had filed a report against Appellant with Tulane's Case Management and Victim Support Services[4] office on February 6, 2022. And on February 11, the day Appellant withdrew from Tulane, both Appellee and Sue Roe filed formal Title IX/Sexual Misconduct reports against Appellant. "Both reported having consensual sex with [Appellant], falling asleep, and waking up to him engaging in sexual activity." J.A. 18. Tulane investigated the reports and interviewed both Appellee and Sue Roe. Appellant alleges that Appellee's statement to Tulane investigators was false, defamatory, and contradicted by other evidence, and that Appellee conspired with Sue Roe and submitted false evidence in the course of the investigation. Tulane found Appellant responsible for sexual misconduct and expelled him from the university on May 8, 2022.

---

[4] The Case Management and Victim Support Services office offers support to Tulane students on a range of academic and non-academic issues, including medical needs, drug or alcohol abuse, and behavioral health concerns. The office also provides support to Tulane students who have been victims of crimes such as sexual assault, intimate partner violence, stalking, and hazing. Tulane University, *Case Management and Victim Support Services*, https://cmvss.tulane.edu/; https://perma.cc/KB2D-GGRJ (last visited Oct. 25, 2023).

On December 8, 2022, Appellant filed this civil action against Appellee[5] in the United States District Court for the Eastern District of North Carolina. In the Complaint, Appellant alleges claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy. Appellant seeks relief in the form of a "declaration that [Appellee] defamed [Appellant]" as well as compensatory and punitive damages on each claim. J.A. 40–41.

On the same day he filed his Complaint, Appellant filed an ex parte motion for leave to proceed using a pseudonym along with a supporting memorandum. In his motion, Appellant asked only "for leave to proceed under pseudonym," S.J.A. 1,[6] and his supporting memorandum reacknowledged that he sought "an Order granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff." J.A. 43. Therefore, while Appellant's supporting memorandum noted that Jane Doe and Sue Roe were pseudonyms and that "all students shall be identified herein by pseudonym as well," *id.*, the district court construed the motion *only* as one to allow Appellant to use a pseudonym for himself -- not as a motion for leave to use pseudonyms for Jane Doe, Sue Roe, or anyone else. After considering the applicable factors as set out by this court, the district court denied Appellant's motion.

Appellant timely noted this appeal.

---

[5] The Complaint identifies Appellee only as "Jane Doe" and does not reveal her legal name or other identifying characteristics.

[6] Citations to the "S.J.A." refer to the Supplemental Joint Appendix filed by the parties in this appeal.

6

## II.

"The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Therefore, we review the district court's decision only for abuse of discretion.

We have described three ways a district court can abuse its discretion in considering motions to proceed by pseudonym. First, a district court abuses its discretion when it acts with "a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *James*, 6 F.3d at 239 (citation omitted). Second, a district court abuses its discretion when it fails to "adequately [] take into account judicially recognized factors constraining its exercise" of discretion. *Id.* (citation omitted). And finally, a district court abuses its discretion when its reasoning "is flawed by erroneous factual or legal premises." *Id.* (citation omitted).

## III.

Pursuant to Federal Rule of Civil Procedure 10(a), a civil complaint "must name all the parties." The rule recognizes "the general presumption of openness of judicial proceedings," which has a basis both in common law and in the First Amendment. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014). We have explained that "[p]seudonymous litigation undermines the public's right of access to judicial proceedings" because "[t]he public has an interest in knowing the names of litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Public Citizen*, 749 F.3d at 274 (internal citations omitted).

7

Nevertheless, district courts may, in their discretion, allow pseudonymous litigation because "privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this *rare* dispensation." *James*, 6 F.3d at 238 (emphasis supplied). To warrant this relief, the circumstances must be "exceptional." *Pub. Citizen*, 749 F.3d at 273.

In *James*, we set out five nonexhaustive factors for district courts to consider when deciding motions to proceed by pseudonym:

> (1) "[W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature";
>
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties";
>
> (3) "the ages of the persons whose privacy interests are sought to be protected";
>
> (4) "whether the action is against a governmental or private party"; and,
>
> (5) "relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously."

6 F.3d at 238. We have also clarified that "a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Pub. Citizen*, 749 F.3d at 274.

Appellant's memorandum in support of his motion briefly addressed each of the *James* factors, and the district court considered each of Appellant's arguments in its order

8

Case 2:24-cv-00825-DJP-EJD    Document 192    Filed 06/12/26    Page 437 of 1935

denying the motion. Nevertheless, Appellant argues the district court abused its discretion by (1) determining that the *James* factors weighed against anonymity, (2) failing to consider irreparable harm to his reputation, and (3) failing to balance Appellant's privacy interest in anonymity against the public's interest in open judicial proceedings. We address each argument, beginning with the *James* factors.

<div align="center">IV.</div>

<div align="center">A.</div>

The first *James* factor is "[w]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). In his motion, Appellant argued that the underlying facts in the case relate to allegations of sexual assault and, "in light of the nature of this case, private and intimate details regarding the lives of John Doe and Jane Doe will be at issue." J.A. 47. He also noted that, in bringing this lawsuit, he "seeks to minimize the harm of Jane Doe's claims," "prevent further harm," and "clear [his] good name." *Id.* Therefore, he argued, "the interests at play here are of a highly sensitive nature" such that this factor should weigh heavily in favor of granting his motion. *Id.* He also argued that he should be allowed to proceed by pseudonym because "[i]f [he] is required to disclose his identity in this litigation, the harm would already be done. [Appellant's] name will forever be publicly associated with allegations of . . . sexual misconduct." *Id.*

The district court accepted Appellant's arguments on this factor and determined that Appellant desired to proceed by pseudonym "in order to preserve his privacy in a matter

<div align="center">9</div>

that is highly sensitive and highly personal," J.A. 57, rather than "merely to avoid the annoyance and criticism that may attend litigation," *James*, 6 F.3d at 238. In doing so, the district court explained that "[n]umerous district courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault." J.A. 57. The district court cited several cases where plaintiffs were allowed to proceed by pseudonym when they were suing their universities, or officials at their universities, for due process violations resulting from Title IX investigations. *See, e.g.*, *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-378, 2022 WL 972629, at *2 (W.D. Va. Mar. 30, 2022); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592–94 (E.D. Va. 2016); *Painter v. Doe*, No. 3:15-cv-369, 2016 WL 3766466, at *6 (W.D.N.C. July 13, 2016); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016). Therefore, the district court held that the first factor favored allowing Appellant to proceed by pseudonym.

On appeal, Appellant agrees that the district court's determination on this factor was correct. But he takes issue with the fact that the district court made no express determination as to the weight of this finding. But we have only required that district courts *consider* the *James* factors, and we have not prescribed any particular weight to any individual factor. Rather, we have entrusted district courts to consider each case individually to discern which factors should -- in their discretion -- weigh most heavily. *See James*, 6 F.3d at 242–43. The district court considered this factor, and we find no abuse of discretion in its failure to note the particular weight it attributed to it.

B.

As to the second factor -- risk of harm -- Appellant argued to the district court that "if his identity is disclosed, [he] *could be* targeted for retaliatory physical or mental harm based solely on the accusation of sexual misconduct." J.A. 48 (emphasis supplied). He pointed to "the current social climate," as well as the fact that Appellee "spread false and highly damning claims . . . to classmates, friends, and Tulane's administration." *Id.* Thus, he argued that even a finding that Appellee did in fact defame him would not "change the damage done if his request for anonymity is denied" because he will have "to live with this public reputation" which "would be detrimental to [his] physical and mental health." *Id.* Appellant also argued, without further discussion, that "it would be harmful to publicize the names of the female accusers as it would subject them to unwanted scrutiny, harassment, and ridicule." *Id.* (quoting *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *2).

In its opinion, the district court recognized that due to "the inflammatory nature of sexual misconduct, the mere accusation . . . if disclosed, can invite harassment and ridicule." J.A. 57 (internal quotation marks omitted) (citation omitted). But the district court determined that Appellant failed "to produce 'evidence to support more than a mere general fear of retaliation or mere embarrassment.'" *Id.* (quoting *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022) (internal quotation marks omitted)). And the district court noted that there did not appear to be any "aggravating factors" such as media exposure that would endanger Appellant if his identity was known. J.A. 58. Finally, the district court explained that while Appellant expressed "concern[] about the

11

potential harm to Jane Doe and Sue Roe" if *their* identities were revealed, "that consideration does not affect whether the court should allow *plaintiff* to pursue this action pseudonymously." *Id.* (emphasis supplied). Therefore, the court determined that this factor was neutral in its analysis.

On appeal, Appellant argues that his case "is distinguishable from the garden-variety defamation case because it centers around false and defamatory statements made within the context of a Title IX disciplinary proceeding and [Appellee's] use of that proceeding to exact revenge against [Appellant]." Appellant's Opening Br. 28. And again, Appellant points to various courts allowing plaintiffs to proceed by pseudonym when they are suing their universities to challenge Title IX proceedings in order to argue that he has a valid privacy interest. Appellant argues it was error for the district court to find this factor to be neutral, rather than in his favor, because it added an "evidence requirement" that required him to produce evidence of more than a general fear or of aggravating factors, and it did not consider the risk to Appellee and Sue Roe.

We begin with Appellant's argument that the district court relied on an erroneous legal premise -- the additional "evidence requirement" -- and his argument that its conclusion that he had failed to supply evidence "was grounded in [an] erroneous factual premise" because the Complaint "alleges that [Appellant] had already experienced retaliation." Appellant's Opening Br. at 30–31.

The district court was required to consider "whether identification poses a risk of retaliatory physical or mental harm." *James*, 6 F.3d at 238. We do not find that the district court abused its discretion in looking for evidence of a risk beyond Appellant's bare

assertion that he *could be* targeted for retaliation if his name were public. Other courts have

done the same.   *See e.g.*, *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (finding

evidence of a risk of harm where the plaintiff had demonstrated that there was press

coverage of his case in a "relatively small community"); *Student A. v. Liberty Univ., Inc.*,

602 F. Supp. 3d 901, 920 (W.D. Va. 2022) (explaining that the plaintiffs "argued and

provided evidence to support more than a mere 'general fear' of retaliation"); *Freedom*

*From Religion Foundation, Inc. v. Cherry Creek Sch. Dist. #5*, No. 07-cv-02126-MSK,

2009 WL 2176624, at *6 (D. Col. July 22, 2009) (explaining that "the unsubstantiated

potential for an adverse public reaction" was insufficient where the plaintiffs had "not

presented any evidence that reflects disapproval . . . or suggests they would be the target

of actual threats, harassment or retaliation"); *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C.

2005) ("fears of embarrassment or vague, unsubstantiated fears of retaliatory actions . . .

do not permit a plaintiff to proceed under a pseudonym"); *Doe v. Beaumont Indep. Sch.*

*Dist.*, 172 F.R.D. 215, 217 (E.D. Tex. 1997) (denying use of pseudonym where the record

contained no "other factors" or "threats of violence" to support the plaintiff's argument

that "it has happened before, therefore it *might* happen here").

In other words, district courts routinely look for "aggravating factors" or "evidence"

as a means to determine whether a risk of harm truly exists.  Because we cannot see how a

district court could properly weigh this factor based on nothing more than a bare assertion

of risk, we find no abuse of discretion in the district court's decision to look for additional

evidence or aggravating factors to corroborate Appellant's claim.

As for Appellant's arguments that the district court relied on an "erroneous factual premise" in determining he had not provided sufficient evidence of a risk of harm, Appellant points to facts he alleged in the Complaint that show he had already experienced retaliation. He argues on appeal that the Title IX investigation itself was retaliation; "the further spread of false allegations . . . is ever present"; students "across Tulane's campus," including students studying abroad, had heard the rumors; and his friends had told his parents it was not safe for him at Tulane, so his mom flew there to take him home.[7] Appellant's Opening Br. at 31. Appellant also argues on appeal that his Complaint made clear that he had "already suffered emotional distress, reputational harm, loss of educational and career opportunities and psychological damages." *Id.*

Critically, though, Appellant did not present any of these arguments to the district court in his motion or supporting memorandum. Instead, he argued only that "[i]f his identity is disclosed, [he] *could be* targeted for retaliatory physical or mental harm" and that "having to live with this public reputation would be detrimental to [his] physical and mental health." J.A. 48 (emphasis suppled). The district court correctly noted that Appellant did not provide any evidence to support these fears, and these bald allegations are not sufficient.

---

[7] While Appellant's Complaint does allege that his friends thought he was not safe at Tulane, he made no attempt in his motion or in this appeal to explain why revealing his name in this lawsuit would put him at risk. Indeed, it seems that Appellant believes his identity is already well known in connection with these allegations on the Tulane campus. Moreover, Appellant has included so many details about his identity in his Complaint that, arguably, he could be readily identified in any event, especially by those in the Tulane community.

14

Finally, Appellant argues that the district court's determination that the second factor was neutral was based on an erroneous legal premise. Specifically, Appellant argues that the district court erred when it held that the risk to Appellee and Sue Roe if *their* identities were disclosed was irrelevant to its determination of whether *Appellant* should be allowed to use a pseudonym. Appellant argues that the risk to Appellee and Sue Roe was not irrelevant because district courts are expressly instructed to consider the risk to third parties, and he argues that he requested pseudonymity for Appellee and Sue Roe in his motion in order to protect them.

Appellant's arguments fail here too. While Appellant did use pseudonyms for Appellee and Sue Roe and suggested that they be identified by those names consistent with the Complaint, he repeatedly only asked for leave to proceed as a pseudonymous plaintiff. While courts are permitted to consider the risk to third parties if the *party seeking* anonymity is identified, Appellant did not argue that Appellee and Sue Roe were at risk if *his* identity was public. Rather he argued that "it would be harmful to publicize the names of the female accusers. . . ." J.A. 48. The district court was correct -- that consideration is not at issue and is irrelevant to whether Appellant should be allowed to use a pseudonym. It is also worth noting that Appellee does not seek anonymity herself. To the contrary, Appellee has identified herself using her real name in public court filings in both the district court and this court.[8]

Thus, the district court did not abuse its discretion in considering "risk of harm."

---

[8] Nevertheless, for purposes of this appeal, we have not identified Appellee by name.

C.

The district court determined that the third factor, age, weighed against Appellant because "all parties are adults, and therefore not minors entitled to special protection based on age." J.A. 58. Although Appellant had argued in his motion that this factor should be neutral because "some courts have stated that being over eighteen years old should not be held against a college student," *id.* at 48, he does not challenge the district court's holding on appeal.

D.

For the fourth factor, whether the action is against a governmental or private party, Appellant recognized in his motion that he was suing a private party and that courts are less likely to allow anonymity in that scenario because "actions against private individuals may harm their reputation." J.A. 49. Nevertheless, Appellant argued he should be permitted to use a pseudonym because Appellee's identity could be protected and "the only information the public needs . . . is that they were all students at Tulane." *Id.* In Appellant's view, "this factor is neutral, at worst." *Id.*

The district court, however, disagreed and determined that the fourth factor "weighs significantly against allowing [Appellant] to proceed pseudonymously" because he is suing only a private individual. J.A. 59. "When a plaintiff accuses an individual of wrongdoing, '[b]asic fairness dictates that those among the defendants' accusers who wish to participate in this suit . . . must do so under their real names.'" *Id.* (quoting *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). The district court was also particularly concerned that "[i]t would be fundamentally unfair for

16

[Appellant] to be able to 'clear his name' and wield a potential [judgment] against [Appellee] but hide under a shield of anonymity if unsuccessful." J.A. 59.

On appeal, Appellant argues that this factor "does not carry significant weight." Appellant's Opening Br. at 33. Appellant points to several Title IX cases to claim that district courts have allowed plaintiffs to use pseudonyms "in cases involving private parties" even if they held that this factor weighed against anonymity. *Id.* (*citing Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-cv-170, 2018 WL 5929647, at *3–4 (W.D. Va. Nov. 13, 2018); *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-cv-00249, 2020 WL 1287960, at *4–5 (W.D. Va. Mar. 18, 2020); *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *2; *B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689, at *26 (E.D. Va. Mar. 10, 2020)).

Not so. Significantly, these cases all differ from the case at hand because the plaintiffs in them were suing *both* public universities *and* private individuals, and, in many instances, the individuals were sued in their official capacities. Even still, the courts in these cases all found that the fourth factor was neutral or weighed against allowing anonymity because of the inclusion of private parties -- the more private parties (sued in their individual capacities), the more likely the courts were to find that the factor weighed against the plaintiff. Thus, the district court's determination here that this factor weighs significantly against allowing anonymity when Appellant is *only* suing a single individual is in line with all of the relevant precedent, despite Appellant's argument to the contrary.

In any event, Appellant does not challenge the district court's holding that this factor weighs against pseudonymity -- rather, he only takes issue with the fact that the court said

it "weighs *significantly* against" anonymity.  Appellant claims that this determination "appears to be grounded in a general disapproval of party anonymity in cases where private parties are involved, rather than consideration of the relevant case law and the specific circumstances of [Appellant's] case."  Appellant's Opening Br. at 36.  Appellant cites only to *James* and does not elaborate on this argument further.

In *James*, this court was concerned that the district judge acted by "general rule" rather than "a true exercise of discretion."  6 F.3d at 239.  The record in *James* indicated that the judge had "a flat rule of general application based upon [a] strongly felt personal predilection" that "no party or witness may testify at trial except under his or her true name."  *Id.* at 240.  And the district court in that case had failed to conduct a "particularized assessment of the equities involved."  *Id.* at 239.  No such facts exist here.  The district court below thoroughly considered all the factors and the arguments made by Appellant and determined -- consistent with the weight of authority -- that suing only a private individual weighs against anonymity.  We do not find any abuse of discretion in that conclusion.

### E.

Finally, as to the fifth *James* factor, the district court was required to consider the risk of unfairness to Appellee if it allowed Appellant to proceed anonymously.  Appellant's motion argued only that there was no risk of unfairness to Appellee because she "is well aware of [Appellant's] identity, as [Appellee] was party to the investigation process conducted by Tulane, during which his identity was disclosed."  J.A. 49.  The district court accepted this point, but it explained that "there are other sources of significant unfairness

18

or risk of prejudice against [Appellee]." *Id.* at 59. "This risk stems not only from [Appellant's] use of pseudonym for himself, but also from [his] use of pseudonyms and initials throughout the complaint." *Id.* at 59–60. The district court was concerned that "this pervasive anonymity could lead to difficulty and confusion for [Appellee] during discovery," so it held that this factor weighed against allowing Appellant to proceed by pseudonym. *Id.* at 60.

On appeal, Appellant argues that the district court's concern about difficulty and confusion in discovery was an "erroneous factual premise" because Appellant "did not represent to the District Court that he was unwilling to conduct discovery using [] real names . . . which could easily be dealt with through a protective order." Appellant's Opening Br. at 36–37. And he argues that all individuals identified in the Complaint are known to Appellee.

Once again, however, Appellant never made either of these arguments to the district court. Appellant's motion failed to recognize that there could be any risk of unfairness in discovery -- he did not make any argument that anonymity could be dealt with in discovery or at trial, nor did he argue that the others in the complaint were known to Appellee. But the district court, knowing that it would need to manage the entire case if it granted Appellant's motion, rightly noted its concerns in its order.

## F.

Considering the district court's entire analysis of the *James* factors, we conclude that the district court did not abuse its discretion because it did not rely on incorrect factual or legal premises, nor did it give any indication that it was acting by general rule. Instead,

19

the district court conducted a thorough, case specific analysis when it exercised its discretion.

## V.

Next, Appellant argues that the district court abused its discretion because it "failed to consider a significant factor in cases brought by persons falsely accused of sexual assault—the irreparable harm that [Appellant's] reputation would suffer if his identity is disclosed in an action through which he is seeking to clear his name." Appellant's Opening Br. at 25. Appellant bases his argument on the idea that the *James* factors are not exhaustive, and he points to other cases where courts have considered irreparable harm, such as in *Doe v. Alger* where the plaintiff specifically "argue[d] that there is another factor relevant to this case that weighs in favor of anonymity—irreparable harm to his name." 317 F.R.D. 37, 42 (W.D. Va. Mar. 31, 2016). But here, Appellant made no argument about his reputation apart from the *James* factors, so there was no reason for the district court to consider it separately.

## VI.

Appellant also argues that the district court "failed to balance [Appellant's] interest in anonymity against the public's interest in open judicial proceedings" as required by *Public Citizen*. Appellant's Opening Br. at 39 (citing *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014)). On the contrary, the district court dedicated the last two pages of its order "return[ing] to the Fourth Circuit's broad admonition that [it] must balance [Appellant's] stated interest in anonymity against the public's interest in openness." J.A. 60–62.

20

In its order, the district court held that extraordinary circumstances that would warrant pseudonymity are not present here. It recognized that Appellant had argued "there is no public interest in the public learning his identity or the identities of others," but noted that Appellant had "fail[ed] to address the risk that pseudonymous lawsuits have in eroding public access to proceedings." J.A. 60. Appellant similarly argues on appeal that the crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously. We have held just the opposite: "Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants and disclosing the parties' identities furthers openness of judicial proceedings." *Pub. Citizen*, 749 F.3d at 273 (internal citations omitted).

Appellant's central argument on appeal is that his case "center[s] around a confidential Title IX proceeding" so it is different than "the garden variety defamation case" and overcomes any public interest in disclosure of his identity. Appellant's Opening Br. at 40. We disagree. As the district court explained, Title IX challenges have "considerations . . . [that] do not apply here." J.A. 61. Specifically, in those cases, "those accused of sexual assault" were "su[ing] schools or universities pseudonymously when attacking the findings of a university Title IX investigation." *Id.* "Unlike those cases, [Appellant] is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation." *Id.* Instead, Appellant is suing only a private individual for defamation, and he seeks only declaratory relief and money damages against Appellee. This case is no different than a garden variety

defamation case, and it does not present the exceptional circumstances necessary for Appellant to proceed by pseudonym.

Finally, we fail to see how Appellant can clear his name through this lawsuit without identifying himself. If Appellant were successful in proving defamation, his use of a pseudonym would prevent him from having an order that publicly "clears" him. It is apparent that Appellant wants to have his cake and eat it too. Appellant wants the option to hide behind a shield of anonymity in the event he is unsuccessful in proving his claim, but he would surely identify himself if he were to prove his claims.

The district court considered each of Appellant's arguments, and it carefully balanced Appellant's stated interests against the public's interest in the openness of judicial proceedings as required by *Public Citizen*. It did not abuse its discretion in doing so.

## VII.

The district court did not abuse its discretion when it denied Appellant's motion to proceed as a pseudonymous plaintiff.

*AFFIRMED*

# EXHIBIT D

THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-500

------------------------------------------------------------x
John Doe                                    |
                                            |
                    Plaintiff,              |
                                            |        FIRST AMENDED COMPLAINT
        -against -                          |
                                            |        JURY TRIAL DEMANDED
Jane Doe                                    |
                                            |
                    Defendant.              |
------------------------------------------------------------x

Plaintiff John Doe (hereinafter referred to as "Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP and Ekstrand & Ekstrand, LLP, as and for his Complaint, respectfully alleges as follows:

**THE NATURE OF THIS ACTION**

1.      This case arises out of the actions taken by Defendant Jane Doe (hereinafter referred to as "Jane Doe or "Defendant Jane Doe a student at Tulane University ("Tulane") during the incidents described herein, to defame, humiliate, harass, and punish Plaintiff, also a student at Tulane during the incidents described herein, after Plaintiff and Jane Doe engaged in a consensual sexual encounter. Thereafter, Jane Doe and another student (hereinafter "Sue Roe")[1] conspired to target Plaintiff in furtherance of their self-interests, in retaliation for Plaintiff's refusal to enter into a committed relationship with either Jane Doe or Sue Roe, and in an effort to destroy Plaintiff's academic career and future career goals.

---

[1] Plaintiff has idenitifed Tulane students who are not parties to this lawsuit by pseudonym in order to protect their privacy.

2.      Plaintiff and Jane Doe "matched" on a dating app, but did not have any direct communication at that time. They did meet in person several weeks later at a music concert, at which point they also exchanged contact information. They did not have any further contact with each other until running into each other several month later, at which point the two spent the night together. No sexual activity of any sort occurred. In the following several days, Plaintiff and Jane Doe engaged in consensual sexual intercourse on two occasions. Upon information and belief, after seeing Plaintiff with another woman, Jane Doe was in touch with Sue Roe, colluding to defame, harass, and interfere with Plaintiff's education by filing fabricated complaints with Tulane's Title IX office.

3.      Defendant Jane Doe strategically utilized and manipulated Tulane's Title IX investigation process to further a malicious vendetta against Plaintiff. Despite Jane Doe inconsistent and varying accounts of the events, witness statements disproving Jane Doe allegations, and significant exculpatory evidence, Tulane ultimately found Plaintiff responsible for nonconsensual sexual activity with Jane Doe and imposed a sanction of expulsion.

4.      Plaintiff has been greatly damaged by Defendant's actions, including physical, psychological, emotional and reputational damages. He has also suffered, and will continue to suffer, economic injuries, the loss of educational and career opportunities, and loss of future potential earnings as a result of the expulsion, corresponding disciplinary mark on his academic record. The threat of further spread of false allegations that Plaintiff is a perpetrator of sexual assault is ever-present.

5.      Plaintiff therefore brings this action to obtain relief from Defendant Jane Doe based on various state law claims.

6.      Plaintiff is a natural person, citizen of the United States and resident of the County of Charleston, State of South Carolina. During the events described herein, Plaintiff was a student at Tulane University in Louisiana.

7.      Upon information and belief, Defendant Jane Doe is a resident of the County of Wake, State of North Carolina. During the events described herein, Jane Doe was a student at Tulane University.

## JURISDICTION AND VENUE

8.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.      This Court has personal jurisdiction over Defendant because Jane Doe is a resident of North Carolina.

10.     Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because per 28 U.S.C. § 1391(b)(3) this is an action that may not be brought in any other district and the Court has personal jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

*Plaintiff Attends Tulane University*

11.     Plaintiff was accepted to and enrolled in Tulane University ("Tulane" or the "University") in May 2018. He commenced his studies at Tulane in August 2018, focusing on Finance, Management and Psychology. Plaintiff intended to pursue a Masters of Business Analytics at Tulane University, upon his expected graduation in 2022.

12.     During his time at the University, Plaintiff became heavily involved in the Tulane community, engaging in social and philanthropic activities. He was the Co-President of Tulane's

section of a national service organization for two consecutive years. He was the treasurer of the Food Recovery Network, a club that packages remaining food from the dining hall to send to local homeless shelters. He was one of 34 Tulane seniors selected by faculty and prior members to join Omicron Delta Kappa, an organization founded in 1834 for the purpose of making the Tulane community more equitable, inclusive, and academically rigorous. Plaintiff was also chosen by the Business School Associate Dean to be a Tulane Business Summer Minor Ambassador, promoting Tulane's summer business program. Additionally, Plaintiff was a member of the business fraternity Alpha Kappa Psi, a tutor in the tutoring center, a Merit Scholarship recipient, and involved in Tulane's club baseball league and social fraternity Zeta Beta Tau (ZBT). Plaintiff was on track to graduate cum laude.

13.     In applying to Tulane, Plaintiff reviewed a copy of the Tulane University Code of Student Conduct (the "Code"), which was accessible to all current Tulane students, prospective students, and the public. The Code included a list of prohibited actions that "violate Tulane University standards of conduct and will result in conduct action." ("Prohibited Conduct"). The list of Prohibited Conduct included "Furnishing false information to the University or to a University official," as well as "Harassment or intimidation." Plaintiff enrolled in Tulane with the understanding that he would be afforded a fair and equitable educational experience, free from the Code's expressly Prohibited Conduct.

***Plaintiff's Relationship With Sue Roe***

14.     Plaintiff and Sue Roe met in September of 2019. The two engaged in a casual sexual relationship from September 2019 to December 2019. Upon information and belief, towards the end of the Fall 2019 semester, Sue Roe wanted a more committed relationship with Plaintiff. Plaintiff heard from his friends M.G. and M.V. that Sue Roe had expressed an interest in officially

dating Plaintiff. Sue Roe invited Plaintiff on a walk, during which Plaintiff told Sue Roe he was not interested in dating. Sue Roe told Plaintiff that she was similarly okay with remaining uncommitted and casual, in contrast to what Sue Roe had told Plaintiff's friends. Plaintiff and Sue Roe had a few sexual encounters following that conversation, but eventually stopped seeing each other. Plaintiff was seeing other women during that time and seldom reached out to Sue Roe.

15.     In January 2020, Plaintiff and Sue Roe returned to campus and did not interact much. Plaintiff felt tension between him and Sue Roe whenever he said "hello" to Sue Roe. Shortly thereafter, Plaintiff and Sue Roe each attended the same party, during which Sue Roe began to cry. In the following two semesters, Plaintiff and Sue Roe had very few interactions. However, Sue Roe made her negative feelings toward Plaintiff known to others. When Plaintiff's name was brought up in Sue Roe's presence, Sue Roe went out of her way to explicitly say she "hated" Plaintiff. In Spring 2021, Plaintiff and Sue Roe had a consensual sexual encounter. After that encounter, they did not interact further until August 2021.

16.     On August 22, 2021, Plaintiff and Sue Roe were downtown on Bourbon St. celebrating a mutual friend's birthday. Sue Roe came up to Plaintiff at the bar and asked him to buy her a drink, which she would later pay him back for through Venmo. Plaintiff and Sue Roe ended up spending time together at the party and leaving the bar together. On the ride back to campus, Plaintiff and Sue Roe talked about their past relationship. Sue Roe apologized for being harsh towards Plaintiff following the conclusion of their relationship. Sue Roe further expressed the complicated emotions she was feeling. She explained that that evening, she had learned that a guy she was in a sexual relationship with, B.H., had started "dating" a different woman. When their Lyft ride approached Sue Roe's home, Plaintiff asked if he should have the car drop Sue Roe

off, but Sue Roe told Plaintiff he should come inside with her. The two went upstairs and engaged in consensual sex.

17.    Soon after, the two were talking in bed when Plaintiff made a comment to the effect of "we may regret that later" which, upon information and belief, Sue Roe interpreted to mean Plaintiff regretted having sex with her that evening. What Plaintiff meant by the comment was that they may regret complicating their friendship. However, Sue Roe sat up and began to cry. Plaintiff immediately apologized for his comment, explaining that what he said was not meant to be interpreted as anything against Sue Roe. Plaintiff felt that the complicated emotions Sue Roe mentioned earlier had resurfaced and suggested discussing the matter in the morning. Plaintiff went to sleep.

18.    Upon information and belief, while Plaintiff was asleep, Sue Roe was still upset over the comments Plaintiff made and wanted Plaintiff out of her bed. Sue Roe proceeded to wake up a housemate, D.E., who asked Plaintiff to leave. As Plaintiff was asleep, he was slow to respond to D.E.'s entrance into Sue Roe's room or comprehend why she was asking him to leave. According to D.E., Plaintiff "wasn't moving at first" when D.E. asked Plaintiff to leave. Plaintiff eventually got out of Sue Roe's bed and went home, texting Sue Roe that he left and to lock the door and wishing Roe a "good night."

*Plaintiff Meets* Jane Doe

19.    On or about September 2021, Plaintiff and Jane Doe "matched" on Tinder. They did not communicate each other or meet in person until they ran into each other at concert on November 20, 2021. At the concert, Plaintiff and Jane Doe spoke briefly and exchanged phone numbers. Thereafter, the parties did not see or communicate with each other for more than two months.

20.        On January 27, 2022, Plaintiff and Jane Doe accidentally ran into each other at a bar near Tulane's campus. After talking at the bar for some time, they left together and went to Plaintiff's house, where they fell asleep but did not engage in sexual intercourse. In the morning, they kissed for several minutes before Jane Doe stated "You're not going to be able to just fuck me like these other Tulane girls," to which Plaintiff responded "That's perfectly fine with me." Soon thereafter, Plaintiff and Jane Doe said goodbye, and Jane Doe left.

21.        On January 28, 2022, Plaintiff invited Jane Doe to his fraternity's upcoming date party and Jane Doe accepted. After asking Jane Doe to the date party, Plaintiff hung out with his friends M.V. and K.R. Upon learning that Plaintiff invited Jane Doe to be his date, K.R. warned Plaintiff to be careful because of information she had heard about Jane Doe K.R. had previously had a sexual relationship with H.W., who had recently been banned from campus for violating COVID-19 guidelines for a birthday party he threw. K.R. explained that H.W. had just ended his relationship with Jane Doe and started a relationship with K.R. right before being reported to the University for violating COVID-19 guidelines. H.W. and others involved in the situation had deduced that Jane Doe was the one who reported him, presumably out of spite for breaking up with her.

22.        On January 29, 2022, Plaintiff and Jane Doe attended Plaintiff's fraternity date party, held at the Fair Grounds Race Course in New Orleans. Plaintiff picked Jane Doe up in the late morning and brought her back to his house. After approximately an hour of hanging out with Plaintiff's friends, Plaintiff and Jane Doe went to Plaintiff's fraternity house, where he introduced Jane Doe as his date. Along with others attending the party, Plaintiff and Jane Doe boarded busses that transported the entire group to the Race Course.

23.    While walking through the crowded field level of the Race Course, Plaintiff and Jane Doe passed Sue Roe. Soon after, Plaintiff had a brief conversation with a member of another fraternity, "K.S." who exchanged hellos with Jane Doe When K.S. left, Jane Doe told Plaintiff that K.S. had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. Plaintiff expressed sympathy for what Jane Doe had allegedly experienced.

24.    Soon after sharing her story, Jane Doe asked Plaintiff "Is there anyone you're avoiding here?" Plaintiff didn't think much of that question at the time and responded "Yeah, the girl I probably would've asked had I not asked you." He was referring to a fellow student, D.K. Jane Doe and Plaintiff then found seats in the press box and talked about a range of topics, including family and friends. Plaintiff mentioned that his birthday was the following Wednesday and Jane Doe asked to take multiple photos with Plaintiff before they left the party. In total, the two spent four hours at the racetrack. Plaintiff and Jane Doe each consumed approximately two alcoholic drinks during those four hours, and Plaintiff also had one sip of a friend's flask that contained alcohol. Toward the end of the day, at approximately 5:30pm, Plaintiff and Jane Doe decided to take an Uber back from the racetrack. Plaintiff asked Jane Doe if she would like him to add a stop for her so that she could return home. Jane Doe declined, indicating that she preferred to return to Plaintiff's house together.

25.    Once they were at Plaintiff's house, they attempted to have sexual intercourse, but did not because Plaintiff was unable to get an erection. After trying to have sex, Jane Doe said it was alright because she was too drunk anyway. Plaintiff responded that it wasn't because he was drunk and that he actually was pretty sober. He found it odd that Jane Doe said she was drunk since he had been with her all day and they only had approximately two drinks each over the course of five hours. However, he chalked it up to her trying to be kind about his inability to perform

sexually. At that point, they decided simply to take a nap and slept for almost two hours. When Plaintiff awoke, Jane Doe was already awake. They began kissing and engaged in consensual sexual intercourse, during which Jane Doe was an active and enthusiastic participant. Afterward, the two got dressed and Plaintiff walked Jane Doe back to her house at approximately 9:00pm. On the walk home, she talked about a silent disco party that her house hosted the night before, and they engaged in other friendly conversation. When they got to Jane Doe house, she gave Plaintiff a tour of the house and alluded to his returning again in the near future. Jane Doe gave Plaintiff a kiss goodbye, and Plaintiff walked back to his house.

### The February 2, 2022 Encounter

26.    In the early afternoon of February 2, 2022, Jane Doe texted Plaintiff to wish him a happy birthday and the two exchanged friendly text messages for much of the afternoon. That evening, Plaintiff went to two bars, with friends, to celebrate his birthday. At approximately 9:00pm, Plaintiff and his friends left the second bar and went to a friend's house to prepare for a scheduled fraternity event. Plaintiff and Jane Doe continued to exchange text messages, including a text from Jane Doe saying "we can celebrate later."

27.    Near the end of the fraternity event, at approximately 12:00am, Plaintiff texted Jane Doe to see if she wanted to hang out. She responded "yes." Plaintiff took a Lyft to Jane Doe house intending to pick up Jane Doe and walk back to his house.

28.    When Plaintiff arrived at Jane Doe house, she came outside and they walked together to his house. During their walk, they discussed the social events they each attended. At Plaintiff's house, they went to his bedroom and engaged in consensual sexual intercourse. Plaintiff wore a condom during the encounter and both went to sleep almost immediately after.

29.    Plaintiff and Jane Doe awoke the next morning to the sound of Jane Doe alarm, which she had set on her phone. After engaging in several minutes of mutual kissing, Jane Doe said she had to go to work. Plaintiff offered to walk her home, an offer she initially rejected, but Plaintiff said it was the right thing to do. Jane Doe smiled at this sentiment. As they dressed, Plaintiff made a joking comment to the effect of "I'm happy I did better this time" in reference to his inability to engage in sexual intercourse during their previous encounter. Again, Jane Doe smiled in response.

30.    As they walked to Jane Doe house, they talked in an easy and friendly manner. Jane Doe spoke about attending Montessori as a child when they passed a local Montessori school. At Jane Doe house, they kissed goodbye and Jane Doe again wished Plaintiff a happy birthday. Plaintiff returned home.

31.    The following night, February 3rd, Plaintiff went to a bar with a few friends, where he ran into a woman, "A.H", on whom he had a crush. He offered to buy her a drink and they started talking in the middle of the bar, a conversation lasting more than an hour. Plaintiff and A.H then left the bar together, returned to Plaintiff's house, and engaged in consensual sexual activity. Upon information and belief, Jane Doe saw Plaintiff talking to A.H. at the bar and heard that he and A.H. went home together.

### Jane Doe *Spreads Defamatory Information about Plaintiff to Friends and Classmates*

32.    Upon information and belief, on February 4th, a day after seeing Plaintiff with A.H., Jane Doe reported to one of Plaintiff's friends, T.R., that Plaintiff engaged in nonconsensual sexual activity. Upon information and belief, this was Jane Doe first instance of alleging such misconduct.

33.      Upon information and belief, by February 6th, false rumors had begun spreading around school alleging that Plaintiff had sexually assaulted a female student. On February 7th, Plaintiff's friend "T.G." informed Plaintiff that people were talking about him in a negative way and that a fellow student, "A.S.," one of Sue Roe's best friends, had posted on her Instagram story a message to the effect of "Being friends with a sexual assaulter means you are part of the problem" with an indication that she was referring to Plaintiff. Plaintiff did not know what he was accused of doing and received no concrete information of the specific claims circulating about him.

34.      Another of Plaintiff's friends, M.K., showed him an Instagram post from Jane Doe that stated "Being drunk is not an excuse for Sexual Assault," which was posted at the same time and seemingly in conjunction with A.S.'s post. That night, fellow classmate, S.B., drove Plaintiff home from class. During the drive, she warned Plaintiff that Jane Doe was "crazy."

35.      Plaintiff then heard from another fellow student, A.T., that she was told by three different people that Plaintiff had assaulted a Tulane student. One of the students who shared this information with A.T. was abroad in Spain and had heard it from friends in a different Tulane fraternity.

36.      Plaintiff was shocked that this false information had made its way to students studying abroad, even prior to Plaintiff himself hearing about it. Plaintiff was unaware of the specifics of the false allegations and did not even know to whom the allegations pertained.

37.      On the evening of February 8th, Plaintiff received a text message from Jane Doe falsely claiming Plaintiff engaged in sexually inappropriate behavior:

> After we had consensual sex on your birthday, I told you that I was tired and wanted to sleep. At first you said that was fine but then 10 minutes later you asked me to have sex again to which I responded no, that I was tired and didn't want to. You continued to ask me to have sex with you multiple times, each time with me saying no and asking you to go to sleep. I woke up to the sound of you jerking off and the feeling of you taking the blanket off my naked sleeping body and touching and

squeezing it as you pleased. Even though I was paralyzed with fear and half asleep, I mumbled that I was cold and tried to pull the blanket back onto me. You then pulled the blanket off of me again and continued to pleasure yourself and touch me. You took advantage of my body in my most vulnerable state, and had no regard for how violating your actions were to me. You are a predator and a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim. It blows my mind that you were able to manipulate people around you into staying friends with you but this time you will be held fully accountable or the trauma that you actions caused. You will be known for the disgusting coward you truly are. You need serious help, and honestly I don't care if you ever get it, but I do know that you will never have the opportunity to violate someone ever again.

38.     The text message shocked and scared Plaintiff. He recalled their two sexual encounters, which had occurred in the previous several days and knew he had not committed any of the acts that Jane Doe was claiming.

39.     The following day, Plaintiff met with multiple friends to discuss the rapidly spreading false claims about him. Two of his friends called Plaintiff's parents to tell them it was not safe for him to be on the Tulane campus and that someone should come get him and bring him home to his parents' house. That evening, the president of Plaintiff's fraternity informed Plaintiff that Jane Doe had called him, claiming that Plaintiff assaulted her and that she was "going to the school."

40.     That day, Plaintiff learned from two of his male friends that Jane Doe had approached a group of Plaintiff's female friends to share her false allegations of assault. Jane Doe specifically asked one of his friends, T.R., to help "spread this news like wildfire."

41.     A point of confusion for Plaintiff was that Jane Doe text referenced a prior sexual experience with another woman. Plaintiff assumed, without knowing, that the woman to whom Jane Doe referred was Sue Roe. After last having consensual sex with Sue Roe, Plaintiff assumed he was asked to leave because of the comments he made that upset Sue Roe. When Plaintiff later reached out to Sue Roe by text message, Sue Roe responded and claimed she had D.E. ask Plaintiff

to leave because he woke her up to try to get her to have sex again. Plaintiff knew that Sue Roe's text to him described events that simply never occurred, but he felt this may have been Sue Roe's way of excusing her active participation in the sexual encounter and pacifying her own feelings of guilt and regret. Plaintiff did not resist her characterization so as to preserve Sue Roe's feelings.

42.     In hindsight, Jane Doe statement that Plaintiff was a repeat offender, coupled with Jane Doe odd comment at the race track about whether there was anyone there that Plaintiff was avoiding, made Plaintiff suspect the two had been communicating all along.

43.     As early as February 7th, several of Plaintiff's friends stopped responding to his texts and calls. On February 8th, hours after receiving Jane Doe text message, Plaintiff learned that a friend had seen the text message Jane Doe sent Plaintiff. In fact, Plaintiff's friend had been provided with a screenshot of the text from yet another friend. It became clear that this false narrative was spreading rapidly among fellow Tulane Students. Upon information and belief, the screenshot of Jane Doe text message to Plaintiff included the contact name she had inputted for Plaintiff's number. The contact name was "rapist," and therefore anyone who received the screenshot saw Plaintiff referred to as a rapist by Jane Doe

44.     On February 10, 2022, Plaintiff was kicked out of his fraternity group chat. The fraternity president then sent a message referencing the claims against Plaintiff to the group chat, which Plaintiff learned from a friend who had taken a screenshot of the message. Plaintiff called the fraternity president, asking him to change or delete the defamatory message, which he refused to do.

45.     Plaintiff's mother flew to Louisiana that same day, February 10th, to support her son and help him gather his items so he could return home to a safe environment. Due to the mental anguish and heightened anxiety Plaintiff was experiencing as a result of the false accusations,

Plaintiff withdrew from the University for the semester, as he had already completed enough credits the prior semester to graduate. When Plaintiff withdrew on February 11, 2022, he was unaware that a Title IX report had been filed or that an investigation had commenced.

### Jane Doe *Reports False Claims Against Plaintiff with Tulane's Title IX Office*

46.    Jane Doe reported her false claims to the University Case Management and Victim Support Services (CMVSS) on February 6, 2022, three days after Plaintiff had had sex with someone else. Jane Doe falsely claimed to a Student Affairs Professional at the University that she had woken up to a man "beating off on [her]."

47.    On February 11, 2022, Jane Doe and Sue Roe simultaneously submitted Title IX / Sexual Misconduct reports naming Plaintiff as the respondent. Both reported having consensual sex with Plaintiff, falling asleep, and waking up to him engaging in sexual activity. Sue Roe claimed that Plaintiff vaginally penetrated her with his fingers and masturbated as she got dressed. Jane Doe claimed that Plaintiff masturbated while touching her buttocks with his hands and penis. Both claims were unequivocally false.

48.    On February 16, 2022, Plaintiff received a letter from Christopher Zacharda, Tulane's Director of Student Conduct, informing him that the Office of Student Conduct had received information that he may have violated the Tulane University Code of Conduct and had therefore been charged with Sexual Assault (the "OSC Notice"). The OSC Notice also included a link to Tulane's "Investigation Procedural Protections" (the Investigation Protections"). The OSC Notice informed the recipient "Please also be reminded that the Student Code of Conduct prohibits making false statements and/or knowingly providing false information in the course of a Tulane grievance process, including an investigation and hearing pursuant to the Student Code of Conduct." The Investigation Protections further provided "The investigation is designed to provide

a fair and reliable gathering of the facts by a trained and impartial investigator, who will determine consequences, if any." (Emphasis added.)

49.     Upon information and belief, Jane Doe received a similar letter from Zacharda with the same link to the Investigation Protections. Upon information and belief, Jane Doe was aware of the University's Investigation Protections and that these protections were afforded to Plaintiff.

50.     Upon information and belief, Jane Doe and Sue Roe scheduled their investigation Interviews to be within one hour of each other. On February 16, 2022, Jane Doe was interviewed by University investigator Jacqueline Barber. During her interview, Jane Doe made numerous false defamatory statements about Plaintiff, including claims that Plaintiff persisted in convincing Jane Doe to have sex with him again after their admittedly consensual sexual intercourse. Jane Doe false claims included:

a.   "I must have drifted asleep because I woke up to him. I could feel him jerking off."

b.   "And I can feel him jerking off. And I was half asleep. So, I was like, what the hell is going on. But it wasn't until I felt him pull[sic] a blanket off of me, off of my body, I was naked and I was asleep because we had sex and I was just naked, I don't know. I felt him put a blanket off of me. And I felt him scoot closer to me to jerk off onto me, onto my body."

c.   "I then have felt him start to touch me and squeezing me mostly my legs and my butt."

d.   "And then, I felt him pull the blanket back again off of me and continue to do it."

e.   "And even though I had explicitly not given consent, he had no regard for that. And because I was asleep, just like did that."

f.    "…as I was leaving, he pulled me in and kissed me."

g.    "He kept waking me up. He would physically move my shoulder to try and wake me up and be like, 'Wait, do you want to have sex?' And try

h.    "And then, he shifted towards me to make his penis touch me. And then, he started to grab my body to help him I guess…. My thighs and my butt."

i.    "….consent was explicitly not given and it was just taken. And it was unwanted action, specifically a sexual action that I explicitly did not give consent for."

51.    Jane Doe false statements to Barber closely mirrored false statements given to Barber by Sue Roe. In Sue Roe's narrative, she similarly made false claims that, after consensual sex, Plaintiff had woken Sue Roe up and made multiple requests for sexual activity. Sue Roe's narrative also included false claims that Plaintiff masturbated in her presence without consent. Jane Doe modeled her testimony after Sue Roe's narrative, which, upon information and belief, Sue Roe communicated to Jane Doe In fact, in her interview with Barber, Jane Doe states that Plaintiff's friends "were aware about the previous situation with [Sue Roe]. But [Sue Roe], obviously, will[sic] tell you her story."

52.    In her interview with Barber, Jane Doe also acknowledged that she was aware of the damage her false claims had done to Plaintiff's life thus far, stating that she spoke with the president of Plaintiff's fraternity who "let [Plaintiff] know that he was banned from all events and the house, and no longer affiliated with [the fraternity]."

53.    Jane Doe made further false defamatory statements to Barber about Plaintiff, stating "And that's part of the thing that pisses me off the most is that he was able to manipulate and gaslight all of their mutual friends into thinking that it was like a normal, just weird thing, was something he was working on, not a sexual assault, which is like what it is." Jane Doe also read to

Barber the text she had sent to Plaintiff on February 8th, communicating false and defamatory information about Plaintiff. She also complained hearing from friends that that Plaintiff allegedly "slept with so many girls," expressing negative opinions on Plaintiff's sexual history. She concluded her interview with Barber expressing her desire to destroy Plaintiff's academic career and reputation, stating "I want him to be expelled" and "I also want [Jane Doe sexual misconduct claims] to be attached to his name."

54.     On February 18, 2022, two days after Jane Doe interview with Barber, Plaintiff received a letter from Zacharda informing him that "as a result of the information [the Office of Student Conduct] had received" interim measures were being applied and Plaintiff was banned from being on campus, effective immediately. Plaintiff was barred from participating in University-sponsored or recognized events or activities. The term of the ban was indefinite. In texts submitted to Barber during the investigation, Jane Doe seemingly brags that "[Plaintiff] will most likely be banned from campus if my report identifies him as an imminent threat."

### Jane Doe *Reported a False Timeline to Conceal Her Conspiracy with Sue Roe*

55.     During her interview with Jane Doe Barber inquired how Jane Doe and Sue Roe had connected. Jane Doe stated that she had spoken to someone about her claims against Plaintiff on February 5th. The individual who Jane Doe was speaking to responded by referencing Sue Roe's allegations. Jane Doe expressed shock upon hearing this when stating, "…[the other girl] was like, 'Oh, I did hear something weird with him like jerking off with another girl' and I was like 'What? What do you mean?'"

56.     Jane Doe claim of ignorance to Sue Roe's allegations on February 5th contradicts what Jane Doe friend, N.B. reported to Barber. According to N.B., on or about January 28th N.B

"warned" Jane Doe about Plaintiff prior to the event at the racetrack via Facetime and referenced Sue Roe's negative opinion of Plaintiff "I've heard bad things about this guy."

57.    N.B. later verified that Jane Doe expressed a desire to find out the specifics of what happened between Plaintiff and Sue Roe. This desire to learn more about Plaintiff and Sue Roe's experiences further explained Jane Doe odd question at the racetrack event, during which she asked Plaintiff "Is there anyone that you're avoiding here?" in the hopes that she would gain information from Plaintiff about Sue Roe's opinion of him.

58.    Jane Doe claimed in her interview with Barber that she was connected to Sue Roe through those mutual friends on or about February 8, 2022. In fact, N.B. submitted to Barber purported "evidence" showing a text where N.B. requested to connect with Sue Roe on Jane Doe behalf. Sue Roe submitted similar purported "evidence" of her text message conversation with N.B. regarding Jane Doe Upon information and belief, both Jane Doe and Sue Roe staged the introductory text messages in anticipation of filing false claims against Plaintiff.

59.    Plaintiff communicated to Barber that it was suspicious that N.B. selectively included dates and times on some, but not all, of the texts submitted for investigation. Plaintiff further detailed the suspiciousness of Jane Doe and Sue Roe never providing direct correspondence between the two, but rather communications through a third party. Jane Doe was given the opportunity to confirm the timestamps of the texts and submit verification of her first correspondence with Sue Roe. Rather than confirming their alleged timeline, Jane Doe responded by calling Plaintiff's suspicions "Self-validated analysis [that] fails to consider any other point of view than Plaintiff's - a white male college student."

60.    In fact, Jane Doe and Sue Roe connected on Instagram long before Plaintiff's February 2nd sexual encounter with Jane Doe Instagram allows for both "public" accounts and

"private" accounts. Any Instagram account can view information/data posted on a public account, including pictures posted, stories posted, who follows the public account, and who the public account follows. The only mechanism that a public account has to prevent a user from viewing their information is to "block" them, meaning that the Instagram account will no longer appear for the user. In contrast, private accounts allow the account holder to limit who has access to their data. Therefore, an Instagram user must "request" to follow a private account and the private account must "accept" the follow request. Once this process is completed the "requester" can see the information on the account that they requested to see. Private accounts can also remove people from their followers list, restricting someone who previously had access to the account from viewing anything once they are "removed."

61.    Instagram also allows for Direct Messages (DM), which are messages sent from one account to another account through Instagram messaging software. A private account must allow another person access to their data in order for that other person to send a direct message. Furthermore, it is customary and common practice to "follow back" another account, particularly when the Instagram user know the holder (person) of the account that followed that user and when that user followed the account holder first.

62.    At all times relevant herein, Jane Doe Instagram account was a public Instagram account, and thus any account, unless blocked by Jane Doe could view a list of her followers, a list of people she follows, all her posts, and her Instagram stories. The list of an Instagram user's followers is chronological. At the top of the list are the most recent followers, and at the bottom of the list are the user's first followers. Therefore, Jane Doe followers list served as a timeline of who followed Jane Doe on Instagram, providing a chronological order of the people Jane Doe interacted with (hereinafter "Chronological List").

63.     First on the Chronological List was T.R., who Plaintiff witnessed Jane Doe meeting on January 29, 2022 at the pregame prior to the event at the racetrack. Jane Doe asked T.R. to take a picture together on the party bus from Tulane's campus to the racetrack. Jane Doe told T.R. that she would "DM" the picture to her. In order to do this, T.R. would have had to accept Jane Doe follow request. Upon information and belief, after T.R. accepted Jane Doe follow request, Jane Doe followed T.R. back.

64.     There were nine accounts in between T.R.'s account and fellow classmate L.A.'s account on the Chronological List. Upon information and belief, none of those accounts are owned by people Jane Doe interacted with over the weekend January 29, 2022.

65.     The next relevant account followed on the Chronological List was L.A. who was at the "Silent Disco" party with Jane Doe on January 28, 2022. L.A. posted evidence of her attendance on Instagram and Jane Doe posted evidence of her own attendance on Tik Tok. Both posts showed the same neon banner in the living room of the house hosting the party. Next on the Chronological List was Sue Roe, and thereafter the next Tulane students on the Chronological List were several of Plaintiff's friends to whom Plaintiff had introduced Jane Doe at the racetrack on January 29, 2022.

66.     Although Jane Doe and Sue Roe claimed to Barber that they first connected on February 8, 2022, after the alleged incident on February 2, 2022, even providing "confirmation" through their texts with N.B., Jane Doe own Chronological List shows that Jane Doe and Sue Roe connected on Instagram at least a week prior to that date.

67.     Upon information and belief, Jane Doe and Sue Roe began communicating on or about January 28, 2022, rather than the false date they provided to Barber., Jane Doe and Sue Roe

not only made false statements to Barber in support of their narrative, but also provided falsified evidence specifically created to support that narrative.

Jane Doe *Provides False Information and Submits Doctored Evidence to Tulane Investigator*

68.     Jane Doe testified to Barber that she did not know with whom Plaintiff had had sex after his encounter with Jane Doe However, text messages submitted to Barber by witnesses indicated otherwise. In texts from February 9, 2022, submitted by Jane Doe friend K.R., Jane Doe asked "Have you heard anything from the girl that [Plaintiff] got with on Thursday?" and proceeded to inform K.R. of the woman's name.

69.     Jane Doe also pressured witnesses to align their testimonies with Jane Doe shared confidential documents containing information about the investigation with witnesses prior to their interviews. Jane Doe even showed one witness her complaint, saying "This is my statement to the school. So I want you to know, this is how I wrote it, this is how I want it to be told…if there's close friends or people, just make them aware this is what happened."

70.     Jane Doe also deleted all the text messages between her and Plaintiff from her phone after she reported Plaintiff to Tulane's Sexual Aggression Peer Hotline and Education (SAPHE) on February 6, 2022, and in advance of her interview with Barber.

71.     Some of the texts Jane Doe deleted, which Plaintiff later provided to Barber, confirmed that Jane Doe had materially lied during her interview with Barber. In her interview, Jane Doe claimed, multiple times, that the first time she ever had sex with Plaintiff was on February 2, 2022. This was false, as Jane Doe and Plaintiff had had sex on January 29, 2022. This was proven false by text messages between Jane Doe and Plaintiff on January 30, 2022 and confirmed by N.B.'s testimony who said, "This was not the first time they had had sex" when referencing the February 2nd consensual encounter. Jane Doe lied about the January 29th consensual sexual

encounter to create the narrative that it was "fucked up" when Plaintiff walked her home on February 3, 2022, as though they had not had relations prior to the alleged encounter on February 2, 2022. There was nothing abnormal about Plaintiff walking her home again the morning after their February 2, 2022 encounter, as it was a normal and usual course of action in the context of their sexual relationship.

72.     Upon information and belief, Jane Doe deleted these text messages because they would disprove aspects of her false narrative. She claimed to Barber, however, that she had deleted the text messages because she did not want to look at them.

73.     While at the racetrack with Plaintiff on January 29, 2022, Jane Doe asked Plaintiff to take a picture of her by the track. He agreed and she later posted it on her Instagram account. Jane Doe eventually removed the photograph from Instagram, but only after she had been interviewed by Barber and asked to provide evidence and witnesses. Upon information and belief, Jane Doe removed the photograph once it became clear that it could be collected as relevant evidence in the investigation, attempting to retroactively align her social media accounts with her fabricated assault.

74.     In a broader pattern of fabrication, Plaintiff soon learned that much of the personal information Jane Doe had shared with him was false. For instance, she had told him she had transferred from North Carolina State University, but Plaintiff then noticed that an entirely different school was listed on Jane Doe LinkedIn page.

75.     Jane Doe also told Barber that on the morning after the alleged assault, she was "trying to slip out without waking him or anything, but I remember he woke up." Jane Doe had actually texted Plaintiff the night before – the night of their sexual encounter – informing him that she would need to leave early, stating "I just have to leave at like 8:15" and then proceeded to set

an alarm around 8:00am that woke both of them up. However, as Jane Doe had deleted all of her text messages, it was Plaintiff's record of text messages that indicated the inconsistency.

76.       Jane Doe utilized social media to defame Plaintiff. On March 12, 2022, Jane Doe posted a Tik Tok video of herself singing along with a song, with the words "Knowing consent can't be given while someone's sleeping" appearing onscreen. As Jane Doe had already spread her false claims about Plaintiff to countless friends of both parties, friends of Jane Doe and Plaintiff understood the implication of the Tik Tok video to mean Plaintiff engaged in non-consensual sexual activity with Jane Doe while she was asleep. This video was posted immediately after Plaintiff began contacting witnesses to gather information regarding the false allegations Jane Doe was making and, upon information and belief, was a tactic to get Plaintiff to stop.

## Jane Doe *Allegations Are Contradictory*

77.       Plaintiff was sleeping during the time in which Jane Doe alleges non-consensual sexual activity took place and thus did not do what Jane Doe alleges.

78.       On three separate instances, Jane Doe expressed her belief that Plaintiff was aware of committing the alleged acts of sexual misconduct:

> i.   A mutual friend of Jane Doe and Plaintiff, B.M., sent Jane Doe a text message on February 9, 2022 informing her that Plaintiff denied knowing anything about the events Jane Doe had described in her text to Plaintiff. Jane Doe response to that denial was "Wow, I can't believe he denied the situation."

> ii.  When asked during the investigation by Barber "What gives you that impression[,] that certainty that he knows? That you didn't want him to do that?" Jane Doe answered "Because I explicitly said no many times." Based on

her statement to Barber and her text message to B.M, <sup>Jane Doe</sup> claimed that Plaintiff knew that he had committed the alleged conduct.

iii. <sup>Jane Doe</sup> elaborated to Barber at a different point in the interview "what made me think that he knew that I knew something was wrong is that he seemed to not want me out of his sight" on the morning of February 3rd. <sup>Jane Doe</sup> was presumably referring to Plaintiff's offer to walk her home.

79.    Yet, on two instances revealed in the investigation, <sup>Jane Doe</sup> acknowledged Plaintiff would have no way of knowing the events in the allegation transpired:

i.  In text messages from February 8, 2022, submitted to Barber by witness K.R., <sup>Jane Doe</sup> asked K.R. "Do you know if [Plaintiff] knows?" in reference to the allegations she was making.

ii.  <sup>Jane Doe</sup> text message of allegations to Plaintiff on February 7, 2022 operates under the presupposition that Plaintiff did not know what he did. In that text message, <sup>Jane Doe</sup> gave Plaintiff a false play-by-play of their night together, feeding him her false narrative for the first time.

*<sup>Jane Doe</sup> Attempts to Cover Up Motives for Defaming and Harassing Plaintiff*

80.    Upon information and belief, <sup>Jane Doe</sup> was motivated by jealousy to make false statements about Plaintiff to Tulane investigator Barber, fellow Tulane students, Louisiana civil court, and numerous people who were friends with Plaintiff.

81.    <sup>Jane Doe</sup> transferred from another school during the Covid-19 pandemic and did not have many friends when she met Plaintiff. <sup>Jane Doe</sup> sent text messages to Plaintiff indicating she was grateful that he introduced her to his friends: "I appreciate you introducing me to your

friends it's hard to find nice girl friends here that aren't crazy bitches." Jane Doe followed many of Plaintiff's friends on Instagram after the racetrack event he took her to. She clearly did not want to lose the friends she had made through Plaintiff, but knew that if she and Plaintiff did not continue to see each other, his friends would likely stop socializing with her.

82.    Text messages submitted to Barber by fellow student, T.R., showed Jane Doe expressing to T.R. that she had feelings for Plaintiff. However, on February 3, 2022, a day after her second and final sexual encounter with Plaintiff, Jane Doe saw Plaintiff out with another woman, and learned that he had gone home with the woman.

83.    Jane Doe did not make any allegations of non-consensual sexual conduct the day after her sexual encounter with Plaintiff. In fact, both friends with whom she spoke the next day testified that Jane Doe characterized the sexual encounter as consensual and normal.

84.    In her interview with Barber, Jane Doe friend N.B. said "And from what she told me the next morning they had consensual sex and she was comfortable with the situation."

85.    Jane Doe close friend and roommate, E.M., told Barber that she had asked Jane Doe about the sexual encounter the very next day. Jane Doe responded that it was "fine." It was two days later – after Jane Doe learned that Plaintiff had had sex with another woman – that Jane Doe told E.M. "this really weird thing happened" and proceeded to spin the false narrative claiming Plaintiff had repeatedly asked if she wanted to have sex and then masturbated next to her. In her interview, E.M. testified to Barber that Jane Doe changed her story only after seeing Plaintiff out with another woman.

86.    After learning that Plaintiff had sex with another woman shortly after his sexual encounter with Jane Doe and realizing that Plaintiff did not have reciprocal feelings for her, Jane Doe became outraged. She set out to destroy Plaintiff's reputation, education, and career. In her

interview with Barber, Jane Doe stated "He would have this nice little comfy job that he had all lined up by mommy and daddy" and "I want him to be expelled. And now, that he's been an idiot and withdrawn, then he literally can't reenroll or transfer, or graduate." In text messages to friend K.R. on February 9, 2022, Jane Doe specifically inquired as to Plaintiff's postgraduate work plans, asking whether K.R. knew whether Plaintiff intended to work for a particular company after graduating.

Jane Doe *Files for a Temporary Restraining Order, Provides Court with False Information*

87.        On March 16, 2022, Jane Doe filed a Petition for Protection From Abuse, also known as a Temporary Restraining Order (TRO), in Louisiana civil court. In her petition, Jane Doe requested that Plaintiff be barred from contacting her through third parties and from stepping foot on Tulane's campus. The TRO falsely alleged that Plaintiff had been harassing, intimidating, and stalking Jane Doe despite the fact that Plaintiff had had no contact with Jane Doe since he first heard of her false claims through mutual friends. In fact, Plaintiff did not even respond to Jane Doe

February 8, 2022 text message, the last correspondence between the parties.

88.        In her TRO, Jane Doe cited instances of Plaintiff calling their "mutual friends and interrogating her." However, the one mutual friend Plaintiff had contacted, T.R., informed Barber that Plaintiff had called her, but made no mention of harassment or interrogation. In fact, T.R. voluntarily submitted evidence of her agreeing to speak on the phone with Plaintiff. Jane Doe also claimed Plaintiff harassed and stalked her by calling two other mutual friends to gather evidence for this investigation. Jane Doe knew that Plaintiff's phone calls to his own friends, to discuss the ongoing Tulane investigation, did not constitute or include any harassing behavior, but Jane Doe nonetheless utilized and abused the civil court process as a way to bolster her claims and restrict Plaintiff from contacting relevant witnesses in the Tulane investigation. Furthermore, Jane Doe

recognized that if she had a restraining order against Plaintiff, Tulane would view the TRO as evidence of Plaintiff's alleged wrongdoing and Jane Doe alleged fear and trauma.

89.      In order to get the TRO dismissed, Plaintiff flew to New Orleans from South Carolina on March 24, 2022. However, Jane Doe did not even attend the court hearing. Thus, the TRO was summarily dismissed in her absence. After the hearing Plaintiff and his mother saw Jane Doe at the airport. It was clear that Jane Doe false allegations of harassment and stalking were not made in earnest but rather with malicious intent in order to serve her own self interest in the Tulane investigation.

90.      On May 8, 2022, Plaintiff was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate.

91.      Jane Doe filed a false report of sexual misconduct, colluded and conspiring with Sue Roe, and maliciously defamed, harassed and retaliated against Plaintiff by pursuing a false complaint with Tulane's Office of Student Conduct. Jane Doe strategically exploited and manipulated Tulane's Title IX process to pursue a false report against Plaintiff and to harm Plaintiff's reputation, destroy Plaintiff's relationship with his friends and fraternity, and harm his academic career and future career plans. In doing so, Jane Doe deprived Plaintiff of the benefit he was to receive from his contract with Tulane under the Code, which had promised Plaintiff an educational environment free from false information furnished to the University or to a University official, as well as an educational experience free from harassment or intimidation.

## AS AND FOR A FIRST CAUSE OF ACTION
### Defamation

92.      Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

93.     Defendant made false and defamatory statements about Plaintiff to administrators at Tulane University, to the president of Plaintiff's fraternity, to Plaintiff's friends, to the Louisiana civil court, as well as to numerous fellow students.

94.     Defendant's statements were made with actual malice and reckless disregard for the truth.

95.     Defendant's statements during the Title IX proceedings were defamatory and are not protected by "privilege" because Defendant made those statements knowing they were false.

96.     Defendant made non-privileged defamatory false statements that were culpably published and that were damaging.

97.     Defendant's statements were intended to, and did, expose Plaintiff to public contempt, aversion, disgrace, induce an evil opinion in the minds of right-thinking persons.

98.     The specific statements accusing Plaintiff of engaging in nonconsensual sexual conduct are factual: the language used and the context in which the language appeared made clear that Defendant was factually accusing Plaintiff of engaging in sexual assault and sexual harassment.

99.     Defendant falsely accused Plaintiff of sexual misconduct, defaming his name and reputation by knowingly pursuing a false complaint of misconduct with Tulane's Office of Student Conduct.

100.     Defendant knowingly pursued a false report of sexual misconduct against Plaintiff, fabricating and publishing a series of events that never occurred and contained a multitude of vile acts, including non-consensual touching, nonconsensual masturbation, stalking, and harassment.

101.    Defendant published this false allegation to numerous people when she pursued a false claim of sexual misconduct with the University, as well as in communications – written and verbal – to friends, acquaintances, and classmates.

102.    Publication of this false and defamatory statement is also actionable because it has resulted in special harm, in the form of economic losses, including but not limited to Plaintiff's tuition, academic career, impending college degree, future career aspirations, and the lifelong business and social relationships that would have been developed through his association with fellow Tulane students and membership in the fraternity.

103.    Publication of this false and defamatory statement is actionable per se as it concerned a crime of moral turpitude; namely, sexual assault.

104.    The aforesaid statement was defamatory because it imputed conduct which injuriously affected Plaintiff's reputation and/or degraded him in society and/or brought him into public contempt while causing emotional and psychological damages.

105.    There was never a criminal investigation of Defendant's claims because there was no factual information to support her claims.

106.    Defendant cannot rely on the Tulane University Office of Student Conduct decision as a defense to Plaintiff's defamation claim because the testimony upon which the decision is based was based on the same false and defamatory statements that Plaintiff engaged in acts of sexual misconduct, as well as false testimony, falsified evidence, and fraudulent conduct.

107.    Based on the foregoing, Defendant is liable to Plaintiff for defamation.

108.    As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, damage to reputation, loss of educational and

career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

109.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION
### Abuse of Process

110.    Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

111.    Defendant strategically utilized Louisiana's civil court system, filing a Petition for Protection from Abuse against Plaintiff, for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish Plaintiff and to strengthen Defendant's Title IX claim against Plaintiff.

112.    Defendant pursued the Petition for Protection from Abuse with an ulterior purpose, and one for which the Louisiana civil court system was not intended.

113.    Defendant acted knowingly and willfully when she pursued the Petition for Protection from Abuse, knowing the allegations precipitating the petition were false.

114.    The use of Louisiana's civil court process for the purpose of seeking revenge or pursuing a personal vendetta against another individual was improper.

115.    Defendant's primary motive in proceeding with the Louisiana civil court system process was to defame, harass and punish Plaintiff, despite her knowledge that the allegation of misconduct was false.

116.    Defendant strategically utilized Tulane's Title IX process for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish Plaintiff.

117. Defendant pursued the investigation through Tulane's Title IX process with an ulterior purpose, and one for which neither Tulane's OSC process nor Title IX was intended.

118. Defendant acted knowingly and willfully when she pursued the investigative process, knowing the charge precipitating the process was false.

119. The use of Tulane's Title IX process for the purpose of seeking revenge or pursuing a personal vendetta against another individual was improper.

120. Defendant's primary motive in proceeding with Tulane's Title IX process was to defame, harass and punish Plaintiff, despite her knowledge that the allegation of misconduct was false.

121. Based on the foregoing, Defendant is liable to Plaintiff for abuse of process.

122. As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

123. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION
### Tortious Interference with Contract

124. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

125. As described above, Plaintiff entered into a valid contract with Tulane University.

126. Defendant was indisputably aware of the contract between Plaintiff and Tulane University, as she herself was provided with Tulane's Code of Conduct as well as a the OSC Notice with a link to Tulane's "Investigation Procedural Protections."

127. Defendant was aware that the Student Code of Conduct "prohibits making false statements and/or knowingly providing false information in the course of a Tulane grievance process, including an investigation and hearing pursuant to the Student Code of Conduct."

128. Defendant was aware that the Code of Conduct prohibits "[f]urnishing false information to the University or to a University official," as well as "Harassment or intimidation."

129. Defendant was aware that in entering into an agreement with the University, Plaintiff was conferred contractual rights against Tulane University.

130. Defendant intentionally, maliciously, and without justification, induced Tulane University not to perform the contract, depriving Plaintiff of a fair and equitable grievance process.

131. As a direct and proximate result, Plaintiff was immediately banned from campus upon Defendant's filing of false claims, and Plaintiff was dismissed from the University at the conclusion of the misconduct investigation, due to Defendant's malicious actions.

132. Defendant intentionally, maliciously, and without justification, induced Tulane University to cease performance of its contract with Plaintiff and dismiss him from the University.

133. Defendant's action resulted in actual damage to Plaintiff; namely, the loss of his tuition payment, college degree, as well as future career prospects.

134. As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

135. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A FOURTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**

136.     Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

137.     Defendant intentionally inflicted severe emotional distress upon Plaintiff when she knowingly and willfully pursued a false complaint of sexual misconduct against Plaintiff.

138.     Defendant intentionally inflicted severe emotional distress upon Plaintiff when she participated in the investigation of a complaint of sexual misconduct against Plaintiff conducted by Tulane's OSC, knowing such a serious charge could result in a sanction of dismissal from the University, in addition to severe emotional damage.

139.     Defendant was substantially certain such distress would result from her conduct, as Defendant utilized Tulane's Title IX process for the very purpose of harassing and retaliating against Plaintiff.

140.     Defendant was certain such distress would result from this conduct as Plaintiff was ultimately expelled from the University.

141.     Defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

142.     Defendant's actions directly caused severe emotional distress to Plaintiff, including but not limited to post-traumatic stress disorder, as her false reporting of a charge of sexual assault against Plaintiff ultimately led to his dismissal from University, removal from his fraternity, damage to his name and reputation, ostracism from his peers, and severe emotional damage.

143.     The distress suffered by Plaintiff as a result of Defendant's actions was so severe that no reasonable person should be expected to endure it.

144.     Based on the foregoing, Defendant is liable to Plaintiff for intentional infliction of emotional distress.

145.     As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

146.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Civil Conspiracy

147.     Plaintiff repeats and realleges each and every allegation hereinabove as though fully set forth herein.

148.     Defendant and Sue Roe acted in concert with the common purpose to defame and injure Plaintiff emotionally, reputationally and economically by engaging in the acts outlined above, including but not limited to the false reporting to Tulane University, Plaintiff's fraternity, and other individuals that Plaintiff had sexually assaulted and sexually harassed Jane Doe and Sue Roe.

149.     It was foreseeable that the actions undertaken by Defendant and Sue Roe would result in Plaintiff being injured and were undertaken by Defendant and Sue Roe for that express purpose.

150.     Plaintiff has suffered as a direct and proximate result of the above conduct, tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages actions.

151.     Plaintiff suffered and incurred Special Damages, which were foreseeable and were exacerbated and magnified as a result of the Defendant's conspiracy to defame.

152.     Plaintiff's injuries were exacerbated and magnified because the defamatory statements were disseminated through electronic communication and published on the Internet.

153.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff demands judgment against Defendant [Jane Doe] as follows:

i.     on the first cause of action, a declaration that Defendant [Jane Doe] defamed Plaintiff and an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

ii.     on the second cause of action for abuse of process, a judgment awarding Plaintiff an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

iii.    on the third cause of action for tortious interference with contract, a judgment awarding Plaintiff an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

iv.    on the fourth cause of action for intentional infliction of emotional distress, a judgment awarding Plaintiff an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

v.    on the fifth cause of action for civil conspiracy, a judgment awarding Plaintiff damages including but not limited to special damages; and

vi.    awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

Dated: New York, New York
        November 9, 2023

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**

**Attorneys for Plaintiff**

**By:** */s/ Andrew Miltenberg*
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor New York, New York 10001 (212) 736-4500
amiltenberg@nmllplaw.com
*Pro Hac Vice Application forthcoming*


-and-


**EKSTRAND AND EKSTRAND, LLP**

**By:** */s/ Robert Ekstrand*
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
Local Civil Rule 83.1(d) Counsel for Plaintiff

# EXHIBIT E



January 15, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 771136963060

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Residence |
| **Signed for by:** | M.MCMINN | **Delivery Location:** | 4016 OVERCUP OAK LN |
| **Service type:** | FedEx Priority Overnight | | |
| **Special Handling:** | Deliver Weekday;<br>Residential Delivery;<br>Adult Signature Required | | CARY, NC, 27519 |
| | | **Delivery date:** | Jan 30, 2023 11:50 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 771136963060 | **Ship Date:** | Jan 26, 2023 |
| | | **Weight:** | 1.0 LB/0.45 KG |

**Recipient:**
Jane Doe
4016 Overcup Oak Lane
CARY, NC, US, 27519

**Shipper:**
Andrew T. Miltenberg, Esq., Nesenoff & Mltenberg, LLP
363 Seventh Avenue, 5th Floor
New York, NY, US, 10001



Thank you for choosing FedEx.

# EXHIBIT G

FILED UNDER SEAL

Pseudonym Order

# EXHIBIT H

## U.S. District Court — Judicial Caseload Profile

**NORTH CAROLINA EASTERN**

| | | | 12-Month Periods Ending | | | | | | Numerical Standing Within | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Jun 30 2018 | Jun 30 2019 | Jun 30 2020 | Jun 30 2021 | Jun 30 2022 | Jun 30 2023 | U.S. | Circuit |
| **Overall Caseload Statistics** | | Filings [1] | 2,770 | 3,016 | 3,197 | 2,884 | 2,528 | 3,801 | | |
| | | Terminations | 2,643 | 2,895 | 2,885 | 2,601 | 2,960 | 2,952 | | |
| | | Pending | 3,121 | 3,230 | 3,494 | 3,783 | 3,382 | 3,929 | | |
| | | Percent Change in Total Filings Current Year Over Earlier Year | 37.2 | 26.0 | 18.9 | 31.8 | 50.4 | | 4 | 1 |
| | | Number of Judgeships | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | | Vacant Judgeship Months [2] | 12.0 | 12.0 | 5.1 | 0.0 | 0.0 | 0.0 | | |
| **Actions per Judgeship** | **Filings** | Total | 693 | 754 | 799 | 721 | 632 | 950 | 5 | 1 |
| | | Civil | 417 | 440 | 491 | 442 | 393 | 699 | 6 | 1 |
| | | Criminal Felony | 204 | 240 | 246 | 230 | 164 | 164 | 9 | 1 |
| | | Supervised Release Hearings | 71 | 75 | 63 | 50 | 76 | 87 | 9 | 1 |
| | Pending Cases [2] | | 780 | 808 | 874 | 946 | 846 | 982 | 11 | 1 |
| | Weighted Filings [2] | | 613 | 695 | 694 | 688 | 562 | 859 | 4 | 1 |
| | Terminations | | 661 | 724 | 721 | 650 | 740 | 738 | 11 | 1 |
| | Trials Completed | | 38 | 39 | 30 | 35 | 42 | 41 | 7 | 1 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 9.2 | 9.4 | 10.7 | 12.7 | 15.4 | 16.0 | 59 | 6 |
| | | Civil [2] | 10.3 | 9.9 | 8.7 | 10.0 | 11.6 | 9.9 | 51 | 6 |
| | From Filing to Trial [2] (Civil Only) | | 40.6 | 37.2 | 51.3 | 47.6 | - | 31.2 | 19 | 3 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | | 92 4.3 | 394 19.4 | 301 14.2 | 347 14.9 | 398 18.6 | 175 6.3 | 25 | 4 |
| | Average Number of Felony Defendants Filed per Case | | 1.3 | 1.3 | 1.2 | 1.2 | 1.4 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 36.3 | 37.3 | 35.0 | 39.7 | 43.8 | 38.2 | | |
| | | Percent Not Selected or Challenged | 26.0 | 24.9 | 29.9 | 24.8 | 35.0 | 24.5 | | |

| 2023 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2,796 | 175 | 19 | 844 | 11 | 18 | 50 | 118 | 1,150 | 39 | 240 | - | 132 |
| Criminal [1] | 649 | 1 | 296 | 15 | 195 | 50 | 22 | 22 | - | 11 | 8 | 6 | 23 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

# EXHIBIT I

## U.S. District Court — Judicial Caseload Profile

| LOUISIANA EASTERN | | | 12-Month Periods Ending | | | | | | Numerical Standing Within | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Jun 30 2018 | Jun 30 2019 | Jun 30 2020 | Jun 30 2021 | Jun 30 2022 | Jun 30 2023 | U.S. | Circuit |
| **Overall Caseload Statistics** | Filings [1] | | 17,891 | 19,230 | 5,089 | 2,681 | 3,089 | 5,788 | | |
| | Terminations | | 5,623 | 7,862 | 15,858 | 16,941 | 7,095 | 10,084 | | |
| | Pending | | 38,479 | 49,809 | 39,039 | 24,799 | 20,784 | 16,488 | | |
| | Percent Change in Total Filings Current Year Over Earlier Year | | -67.6 | -69.9 | 13.7 | 115.9 | 87.4 | | 2 | 1 |
| | Number of Judgeships | | 12 | 12 | 12 | 12 | 12 | 12 | | |
| | Vacant Judgeship Months [2] | | 25.7 | 24.4 | 0.0 | 0.0 | 5.1 | 17.9 | | |
| **Actions per Judgeship** | Filings | Total | 1,491 | 1,603 | 424 | 223 | 257 | 482 | 36 | 6 |
| | | Civil | 1,454 | 1,567 | 398 | 199 | 223 | 450 | 21 | 3 |
| | | Criminal Felony | 27 | 26 | 20 | 21 | 29 | 28 | 89 | 9 |
| | | Supervised Release Hearings | 11 | 9 | 6 | 4 | 5 | 5 | 91 | 8 |
| | Pending Cases [2] | | 3,207 | 4,151 | 3,253 | 2,067 | 1,732 | 1,374 | 7 | 1 |
| | Weighted Filings [2] | | 1,258 | 1,279 | 346 | 207 | 264 | 550 | 20 | 6 |
| | Terminations | | 469 | 655 | 1,322 | 1,412 | 591 | 840 | 6 | 2 |
| | Trials Completed | | 8 | 7 | 7 | 5 | 7 | 6 | 92 | 9 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 16.2 | 12.4 | 13.6 | 19.7 | 22.3 | 15.6 | 55 | 8 |
| | | Civil [2] | 4.5 | 11.0 | 22.9 | 26.4 | 69.3 | 68.9 | 94 | 9 |
| | From Filing to Trial [2] (Civil Only) | | 17.5 | 21.3 | 17.7 | 22.2 | 31.7 | 25.9 | 9 | 3 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | | 3,393 8.9 | 13,161 26.7 | 13,526 35.0 | 17,339 71.4 | 16,324 80.6 | 11,587 72.6 | 93 | 9 |
| | Average Number of Felony Defendants Filed per Case | | 1.5 | 1.3 | 1.5 | 1.7 | 1.3 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 38.7 | 50.1 | 46.7 | 40.3 | 49.5 | 12.0 | | |
| | | Percent Not Selected or Challenged | 42.0 | 47.7 | 45.8 | 46.0 | 45.7 | 44.4 | | |

| 2023 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 5,398 | 30 | 319 | 275 | 2 | 29 | 58 | 3,540 | 731 | 25 | 223 | 4 | 162 |
| Criminal [1] | 330 | 5 | 89 | 20 | 118 | 35 | 20 | 6 | - | 16 | 1 | 6 | 14 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe | FILED UNDER SEAL |
| Plaintiff, | DEFENDANT Jane Doe BRIEF IN IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) |
| v. | |
| Jane Doe | |
| Defendant. | |

## INTRODUCTION

John Doe a resident of South Carolina, sued Jane Doe alleging that she defamed him when she claimed that he sexually assaulted her while they were both students at Tulane University. John Doe alleges that Jane Doe reported the assault to Tulane and to numerous other people on campus.

There is no indication that any witnesses to these events currently reside in the Eastern District of North Carolina or that any relevant events took place here. Instead, the relevant events alleged in John Doe amended complaint occurred in the Eastern District of Louisiana and many witnesses are Louisiana residents.

██████████████████████████████

████████████████████████ , alleging that Tulane's disciplinary process was biased and flawed when Tulane found him responsible for sexually assaulting Jane Doe and another Tulane student.

These two cases arise out of the same set of operative facts. Leaving the two cases in separate courts will lead to significant inefficiencies. Witnesses will have to be deposed multiple times. Documents that are in Tulane's possession will have to be obtained by subpoena here,

and by document requests there.  Indeed, John Doe    has already served a subpoena on Jane Doe in the Tulane case.  Both parties will incur increased legal costs and risk inconsistent verdicts if the cases proceed in separate venues.

John Doe    has asserted five state law claims against Jane Doe claims that will be governed by the Louisiana Civil Code, not North Carolina common law, and thus claims that courts in Louisiana are more familiar with handling.  And John Doe    asserts a claim for abuse of process of the Louisiana civil courts—a claim that Louisiana has an interest in adjudicating.

Thus, for the convenience of the parties and witnesses, and in the interest of justice, Jane Doe respectfully requests that the Court transfer this case to the Eastern District of Louisiana.

## STATEMENT OF RELEVANT FACTS

*Sexual assault allegations against* John Doe

This case arises out of John Doe    February 2022 sexual assault of Jane Doe  *See* Am. Compl. ¶ 32 (DE 23). John Doe    alleges that he did not sexually assault Jane Doe and that Jane Doe statements to the contrary are defamatory.  *See, e.g., id.* ¶¶ 33-43, 46, 93-96.

After Jane Doe told one of John Doe    friends about the assault, John Doe began to hear rumors about the assault from multiple Tulane students.  *See id.* ¶¶ 32-36. Jane Doe confronted John Doe    about the assault in a text message, where she recounted him touching her and masturbating on her without her consent and called him a "repeat offender." *Id.* ¶ 37. John Doe    assumed that Jane Doe was calling him a repeat offender because of an incident he had with another female Tulane student, whom he identified as "Sue Roe." *See id.* ¶ 41.

2

John Doe met with multiple friends about Jane Doe allegations, and the president of John Doe fraternity learned of the allegations. *Id.* ¶ 39. John Doe friends called his parents to say that it was not safe for John Doe to remain on Tulane's campus. *Id.* John Doe continued to discuss and hear about the sexual assault allegations on campus. *See id.* ¶ 40. Several of his friends stopped responding to his text messages and calls as Jane Doe allegations were "spreading rapidly among fellow Tulane Students." *Id.* ¶ 43. Days later, John Doe was kicked out of his fraternity's group chat and he learned that the sexual assault allegations were circulating in the group chat after he was removed. *Id.* ¶ 44. Several days after first hearing of Jane Doe allegations, and "[d]ue to the mental anguish and heightened anxiety" he was experiencing, John Doe withdrew from Tulane for the semester, "as he had already completed enough credits the prior semester to graduate." *Id.* ¶ 45.

*Tulane investigation and Louisiana petition for restraining order*

John Doe alleges that after the assault, Jane Doe "strategically utilized and manipulated Tulane's Title IX investigation process to further a malicious vendetta against [him]." *Id.* ¶ 3. Both Jane Doe and Sue Roe reported that John Doe sexually assaulted them, resulting in an investigation by Tulane. *Id.* ¶¶ 47-48; Affidavit of Erica Woodley ¶¶ 3-4 (DE 29-1). All student witnesses identified in Jane Doe report to Tulane were undergraduate students at the university living in New Orleans, Louisiana. Woodley Aff. ¶ 5. Tulane investigator Jacqueline Barber interviewed the witnesses, meeting with thirteen witnesses in her office on Tulane's campus and interviewing five more through remote means. *Id.* ¶ 6. Multiple other Tulane administrators were involved in the investigation and disciplinary process. *Id.* ¶ 7.

While Tulane's investigation was ongoing, Jane Doe filed a petition for protection from abuse in Louisiana civil court seeking to restrain John Doe from contacting her through

3

third parties and from entering Tulane's campus.  Am. Compl. ¶ 87.  Jane Doe alleged in the petition for restraining order that John Doe had been harassing, intimidating, and stalking her.  *Id.*  John Doe alleges that Jane Doe filed the petition to "bolster her claims and restrict [John Doe from contacting relevant witnesses in the Tulane investigation."  *Id.* ¶ 88.  John Doe appeared in Louisiana civil court at a hearing to seek dismissal of the restraining order.  *Id.* ¶ 89.  The matter was dismissed because Jane Doe did not appear.  *Id.* John Doe alleges that Jane Doe allegations of harassment in Louisiana court were made "with malicious intent in order to serve her own self interest in the Tulane investigation."  *Id.*

At the conclusion of Tulane's investigation, John Doe was found responsible for sexual assault and Tulane determined that he should be expelled from the university.  *Id.* ¶ 90.

John Doe *complaint against* Jane Doe

John Doe filed this action against Jane Doe when she was still a student at Tulane living in New Orleans.  Declaration of Jane Doe ¶ 4 (DE 29-2).  John Doe alleges that he and Jane Doe were students at Tulane during the events described in his complaint.  Am. Compl. ¶¶ 6-7.  He alleges that he was "heavily involved in the Tulane community" and that he intended to attend business school at Tulane after graduation.  *Id.* ¶¶ 11-12.

According to John Doe when he applied to Tulane, he reviewed a copy of the Tulane University Code of Student Conduct (the "Code"), and he understood that the Code prohibited furnishing false information to the university.  *Id.* ¶ 13.  He thus enrolled at Tulane "with the understanding that he would be afforded a fair and equitable educational experience, free from the Code's expressly Prohibited Conduct."  *Id.*

John Doe asserts five claims that, as shown below, arise under Louisiana state law: (1) defamation, (2) abuse of process, (3) tortious interference with contract, (4) intentional

infliction of emotional distress, and (5) civil conspiracy.  *See id.* ¶¶ 92-153.  John Doe alleges that Jane Doe made "false and defamatory statements about [him] to administrators at Tulane University, to the president of [John Doe         fraternity, to [his] friends, to the Louisiana civil court, as well as to numerous fellow students."  *Id.* ¶ 93.  He further alleges that as a result of these purportedly false statements, he suffered harm, including the loss of his "tuition, academic career, impending college degree, future career aspirations, and the lifelong business and social relationships that would have been developed through his association with fellow Tulane students and membership in the fraternity."  *Id.* ¶ 102.  He alleges that Jane Doe abused the process of a Louisiana civil court in seeking a restraining order and abused Tulane's Title IX process.  *Id.* ¶¶ 111, 116.  John Doe     alleges that Jane Doe was aware that he had a contract with Tulane and that she intentionally and maliciously induced Tulane not to perform the contract, depriving John Doe     of a fair and equitable grievance process and causing him to be banned from campus and dismissed from the university.  *Id.* ¶¶ 125-133.  He alleges that Jane Doe intentionally inflicted severe emotional distress on him by reporting the sexual assault and participating in Tulane's investigation, causing him to be dismissed from Tulane and to suffer damage to his reputation and ostracism from his peers.  *Id.* ¶¶ 137-142.  Finally, he alleges that Jane Doe conspired with Sue Roe to defame him.  *Id.* ¶ 148.

5



*Jane Doe* partial motion to dismiss

Jane Doe has filed a partial motion to dismiss this case, asserting that the claims are governed by Louisiana law and that John Doe fails to state a claim for abuse of process, tortious interference with contract, or civil conspiracy under Louisiana law.  (DE 27, 28).  Certain of Jane Doe arguments depend on unique aspects of Louisiana law; for example, she contends that John Doe fails to state a claim for tortious interference with contract because Louisiana law does not recognize a tortious interference claim outside the corporate officer context.  (DE 28 at 11-14).

<div align="center">**ARGUMENT**</div>

**TRANSFER TO THE EASTERN DISTRICT OF LOUISIANA IS APPROPRIATE UNDER 28 U.S.C. § 1404(a).**

Pursuant to 28 U.S.C. § 1404(a), this Court may transfer this case to any other district where it may have been brought "for the convenience of parties and witnesses, in the interest of justice."  This statute gives discretion to the district courts to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."

---

[1] The Louisiana federal court allowed the case to be filed under a pseudonym, ▆▆▆ . *See Doe* Compl. at 1-2 (DE 30-1).  Many allegations in the Tulane case are substantively identical to the allegations in this case.  *E.g.*, *compare Doe* Compl. ¶¶ 163-213 (DE 30-1) *with* Am. Compl. ¶¶ 19-45 (DE 23).

<div align="center">6</div>

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The "policy underlying the statute is to 'prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Willingham v. Univ. of N.C.*, No. 5:14-CV-432-BO, 2014 WL 6606578, *1 (E.D.N.C. Nov. 19, 2014) (citing *Van Dusen*, 376 U.S. at 616).

First, the party seeking transfer must show that personal jurisdiction and venue would have been proper in the transferee forum.  *See Szulik v. TAG V.I., Inc.*, 858 F. Supp. 2d 532, 547 (E.D.N.C. 2012).  This requirement is met here since Jane Doe would be subject to personal jurisdiction in Louisiana, and venue would be proper because the relevant events occurred in Louisiana.

Second, the court weighs a variety of factors, including "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).  But the ultimate decision as to whether transfer is appropriate "is not reached by cataloguing the weighted result of each factor, but rather is within the 'art of judging.'" *Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*, No. 5:20-CV-46-M, 2020 WL 4913280, *5 (E.D.N.C. Aug. 20, 2020) (citation omitted).

These factors weigh in favor of transfer here as the relevant events occurred in Louisiana, the applicable law is that of Louisiana, many witnesses reside in Louisiana, and Louisiana federal courts are less congested.  Absent transfer, the parties will engage in duplicative discovery and force witnesses to testify multiple times about the same operative events.  That could also create a risk of inconsistent rulings in the two cases.

The only factor favoring John Doe is deference to his choice of forum. But because his causes of action bear no relation to this forum and he is not a resident of the forum, this deference is diminished, and does not outweigh the other factors. *See Bannister v. Wal-Mart Stores East, L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) (courts apply less weight to this factor when plaintiffs are non-residents of the forum state).

## A.    This Case Could Have Been Brought in the Eastern District of Louisiana.

The first inquiry—whether the case could have been brought in the transferee district— requires courts to independently find that personal jurisdiction and venue would be proper in the proposed transferee district if the plaintiff had originally filed there. *Szulik*, 858 F. Supp. 2d at 547-48 (citing *Hoffman v. Blaski*, 363 U.S. 335, 340-44 (1960)).

Jane Doe would have been subject to specific personal jurisdiction in Louisiana under the facts alleged in the amended complaint. "Personal jurisdiction over a non-resident defendant is determined by the state's long-arm statute and the due process clause." *In re Am. River Transp. Co.*, 533 F. Supp. 3d 355, 361 (E.D. La. 2021) (citing *ICEE Distrib. Inc. v. J&J Snack Foods*, 325 F.3d 586, 591 (5th Cir. 2003)). "Because Louisiana's long-arm statute extends to the limits of the due process clause of the Fourteenth Amendment, the inquiry is whether subjecting a defendant to personal jurisdiction in Louisiana would offend due process." *Id.* (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 335 (5th Cir. 1999)). The Fifth Circuit applies a three-step analysis to determine specific personal jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether [she] purposely directed [her] activities toward the forum state or purposefully availed [herself] of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or result from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and

8

reasonable." *Id.* at 361-62 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

Here, John Doe alleges that Jane Doe made "false and defamatory statements about [John Doe to administrators at Tulane University, to the president of [his] fraternity, to [his] friends, to the Louisiana civil court, as well as to numerous fellow students." Am. Compl. ¶ 93. This allegation meets the first and second prongs necessary to establish specific personal jurisdiction: Jane Doe was living in New Orleans and attending Tulane University at all relevant times, *id.* ¶ 7, and John Doe alleges that she committed torts in Louisiana, *see, e.g.*, *id.* ¶¶ 7, 32-91. Jane Doe thus had minimum contacts with Louisiana, and John Doe claims arise from those contacts. *See, e.g.*, *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625-28 (5th Cir. 1999) (concluding that plaintiffs made adequate showing of specific personal jurisdiction where plaintiffs alleged that defendants committed torts in Louisiana and claims arose from defendants' contacts with Louisiana).

And Jane Doe was living in Louisiana when this case was filed, Jane Doe Decl. ¶ 4, such that Louisiana courts exercising jurisdiction over her would not offend the traditional notions of fair play or substantial justice. *See Benson v. Rosenthal*, 116 F. Supp. 3d 702, 713 (E.D. La. 2015) (finding jurisdiction did not offend traditional notions of fair play when defendant traveled to Louisiana on several occasions). Indeed, John Doe alleges that Jane Doe herself sought to avail herself of the protection of Louisiana courts when she filed a petition for protection from abuse against him. Am. Compl. ¶ 87. Louisiana courts could have exercised personal jurisdiction over Jane Doe if John Doe had filed this suit there.

The United States District Court for the Eastern District of Louisiana would have had subject matter jurisdiction. There is complete diversity between the parties and John Doe

alleges an amount in controversy exceeding $75,000. *See id.* ¶¶ 6-8; 28 U.S.C. § 1332 (the district courts shall have original jurisdiction in diversity cases).

Venue would also have been proper in the Eastern District of Louisiana, because a "substantial part of the events or omissions giving rise to the claim" occurred in the district. *See* 28 U.S.C. § 1391(b)(2). Tulane is in New Orleans, Louisiana. Woodley Aff. ¶ 5; *see* Am. Compl. ¶ 6. Orleans Parish is within the Eastern District of Louisiana. *See* 28 U.S.C. § 98(a). John Doe alleges that "during the events described" in his complaint, he was a student at Tulane and Jane Doe was a student at Tulane. Am. Compl. ¶¶ 6-7. Jane Doe reported the sexual assault to Tulane students and administrators, *see id.* ¶ 93, Tulane's investigation occurred in New Orleans, Woodley Aff. ¶¶ 5-6, and the Tulane civil court proceedings occurred in New Orleans, Am. Compl. ¶ 89.

Thus, this case could have been filed in the Eastern District of Louisiana.

**B.      The Factors Considered in a Transfer Motion Weigh in Favor of Transfer.**

Courts within the Fourth Circuit consider four factors when deciding whether to transfer venue: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Plumbers & Pipefitters*, 791 F.3d at 444. "In balancing these factors, a district court[] has substantial discretion to decide whether to transfer venue." *People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, No. 5:16-CV-268-D, 2016 WL 11795311, *2 (E.D.N.C. Nov. 16, 2016) (citing *Stewart*, 487 U.S. at 29; *Brock v. Entre Comput. Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991); and *Jenkins v. Albuquerque Lonestar Freightliner, LLC*, 464 F. Supp. 2d 491, 493 (E.D.N.C. 2006)).

John Doe choice of this forum is entitled to less deference because he is not a North Carolina resident and none of the operative events in the amended complaint occurred in

10

North Carolina.  There are no apparent witnesses who reside in this district, and multiple witnesses who reside in the Eastern District of Louisiana.  Neither party is a resident of North Carolina.

The interests of justice weigh in favor of transfer.  ███████████████████ █████████████████████████████████████████████████████████████ ██████████████████████████.  Louisiana courts have an interest in adjudicating cases involving Louisiana law and abuse-of-process claims involving Louisiana courts.  There are fewer cases per judge in the Eastern District of Louisiana and cases thus move faster towards trial in that district than they do here.  Finally, there is a risk of inconsistent rulings if the cases proceed in different venues, as there are overlapping issues between the two cases.

All in all, the § 1404(a) factors weigh in favor of transfer.



1.   John Doe   choice of forum receives little deference because he does not reside in North Carolina and all of the events alleged in the amended complaint occurred in Louisiana.

While the plaintiff's choice of forum generally receives some deference, that deference is "proportionate to the relationship between the forum and the cause of action." *Bannister*, 843 F. Supp. 2d at 615.  Thus, the plaintiff's choice of forum receives less weight when the plaintiff chooses a foreign forum or the cause of action "bears little or no relation to the chosen forum." *Speed Trac Techs. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008). Here, both are true—John Doe   filed in a foreign forum and his claims bear no relation to this forum.  Therefore, his choice of forum warrants little deference.

In *Speed Trac*, the plaintiff was at least a resident of North Carolina, but it filed suit in Forsyth County (the Middle District) when its principal office was in Charlotte (the Western District). *Id.*  The causes of action in *Speed Trac* also bore no relationship to the Middle District

11

of North Carolina; the key operative events occurred in Charlotte and Richmond, Virginia. *Id.* Because of these facts, the court found that plaintiff's choice of forum was "accorded diminished weight." *Id.* at 804; *see also Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) (transferring case when "North Carolina [bore] little relation to the parties' dispute").

Jane Doe is now a resident of Colorado,[2] and John Doe is a resident of South Carolina. Jane Doe Decl. ¶¶ 1, 6; Am. Compl. ¶ 6. Neither party lives in this district. In addition, in his allegations in the amended complaint, John Doe does not mention a single event that occurred in North Carolina. *See* Am. Compl. *passim*. The only time North Carolina is mentioned in the amended complaint is the allegation, upon information and belief, that Jane Doe is a resident of Wake County, North Carolina, *id.* ¶¶ 7, 9, and the allegation that Jane Doe told John Doe she had transferred to Tulane from North Carolina State University, *id.* ¶ 74. All of the underlying events alleged in the amended complaint occurred in Louisiana. *See supra* pp. 2-5.

For these reasons, John Doe choice of forum is entitled to diminished weight. *See Speed Trac*, 567 F. Supp. 2d at 804.

        2.    <u>The amended complaint does not disclose any witnesses who live in North Carolina but does identify multiple witnesses who are Louisiana residents.</u>

There are no witnesses identified in the amended complaint who reside in the Eastern District of North Carolina. Jane Doe lives in Colorado, Jane Doe Decl. ¶¶ 1, 6, and John Doe lives in South Carolina, Am. Compl. ¶ 6.

At the time Jane Doe reported to Tulane that John Doe sexually assaulted her, all the students identified in that report were enrolled as undergraduates at Tulane and maintained

---

[2] Jane Doe is originally from North Carolina, and her parents still reside here. Jane Doe Decl. ¶ 5.

12

local physical addresses in New Orleans, Louisiana.  Woodley Aff. ¶ 5.  Tulane assigned

Jacqueline Barber to investigate Jane Doe complaint from Tulane's campus in New Orleans.

*Id.* ¶ 6.  Ms. Barber interviewed thirteen witnesses in her office and conducted telephone or

Zoom interviews with an additional five witnesses.  *Id.*

In addition to Ms. Barber and Ms. Woodley, five other current and former Tulane

employees and affiliates had knowledge of Jane Doe complaint, the investigation, the ultimate

finding, and the sanction imposed on John Doe

(1)  Dr. Christopher Zacharda, the then-director of Tulane's Office of Student Conduct;

(2)  Julia Broussard, Associate Director of Tulane's Title IX Office;

(3)  Dr. Dusty Porter, Tulane University Vice President, Student Affairs;

(4)  Alison Cofrancesco, Director of the Office of Case Management and Victim Support
Services; and

(5)  Avery Pardee, a Tulane University affiliate

*Id.* ¶ 7.  All of these witnesses, with the exception of Dr. Zacharda, continue to reside in the New

Orleans area.  *Id.* ¶ 8.  Two of these individuals, Christopher Zacharda and Ms. Barber, are

identified by name in the amended complaint.  *See* Am. Compl. ¶¶ 48, 50.  Several others are

referred to by titles rather than names.  *See id.* ¶¶ 46, 70 (a "Student Affairs Professional" and a

"SAPHE Professional").

In addition to these witnesses, John Doe himself identifies twenty additional

individuals by initials in the complaint.  Jane Doe does not recognize all of those initials, but she

is aware of the whereabouts of some of the people she believes John Doe identified by

their initials.  *See* Jane Doe Decl. ¶¶ 7-13.  At least one individual still lives in Louisiana, and a

second possibly lives in Louisiana.  *Id.* ¶¶ 10, 12.  None are North Carolina residents.  *Id.*

Case 5:22-cv-00050-DBM-DB   Document 83-10   Filed 12/15/24   Page 14 of 23

Jane Doe is not aware of the whereabouts of eight of these individuals, but since they are all identified as Tulane students, some may remain Louisiana residents. *See id.* ¶ 13.

Witness convenience weighs strongly in favor of transfer where John Doe identifies no witnesses who live in North Carolina, but numerous witnesses are Louisiana residents. *See Hubbard v. Eitan Grp. N. Am.*, -- F. Supp. 3d --, 2023 WL 2959991, *7 (E.D.N.C. Apr. 14, 2023) (transferring case to California where all defendants' witnesses were located in California or Israel); *United States v. Mims Mgmt. Grp., LLC*, No. 5:14-CV-907-RJ, 2019 WL 13140459, *1 (E.D.N.C. May 1, 2019) (transferring False Claims Act case to Alabama where the "Relators, Defendants, and witnesses all live in Alabama").

3.    <u>The convenience of the parties favors transfer as neither party lives in North Carolina and</u> ███████████████████ ████████████████████████

The third factor, the convenience of the parties, also weighs in favor of transfer.  Neither party currently lives in North Carolina.  John Doe     alleges that he is a resident of Charleston, South Carolina.  Am. Compl. ¶ 6.  Jane Doe moved to Colorado following her graduation from Tulane in May 2023.  ^Jane Doe Decl. ¶ 6.

Litigating this case in North Carolina will be inconvenient for both parties.  ███ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████ (DE 30-1).  ████████████████████████ ██████████████████████████████████████████████████████ ████████████.  *See, e.g.*, *In re Willingham Patent*, 322 F. Supp. 1019, 1020 (J.P.M.L. 1971) (finding that transfer would cause no inconvenience because substantially all parties were before transferee court in related cases).

14

This factor favors transfer.  *See Hubbard*, 2023 WL 2959991 at *7 (transferring case when the plaintiff moved to North Carolina after relevant events but the other parties were not North Carolina residents).

    4.    <u>The interest of justice strongly favors transfer ████████████████ ████████████████████████████████ has an interest in deciding cases involving its law and courts, and litigating in two separate venues creates a risk of inconsistent verdicts.</u>

The final factor, the "interest of justice," encompasses public interest factors aimed at "systemic integrity and fairness."  *Stewart*, 487 U.S. at 30.  These public interest factors include "the relative congestion of the transferee and transferor courts, the particular interest a forum may have in deciding a case, and the preference for judicial efficiency and consistency."  *PETA, Inc.*, 2016 WL 11795311 at *3.  The interest of justice weighs strongly in favor of transfer.

    a.    ██████████████████████████████ ████████ .

█████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████

Given the similarity of the two cases, discovery between the two cases is likely to overlap significantly.  *See* <sup>Jane Doe</sup> Decl. ¶ 15.  Jane Doe has already received a subpoena from John Doe in the Tulane case, and that subpoena seeks discovery pertaining to the same facts that give rise to this case.  *See id.* ¶ 14; Subpoena to Jane Doe (DE 30-2).  Transfer is in the interest of justice because it will permit Jane Doe to ask the transferee court to consolidate the

15

two cases for discovery, saving valuable resources of the parties and the judiciary. *See* Fed. R. Civ. P. 42(a). This factor overlaps with the convenience of witnesses in that transfer could result in numerous third-party witnesses only sitting for deposition once, rather than twice.

A district court in this Circuit transferred a case under similar circumstances. *See Noetic Specialty Ins. Co. v. N.C. Mut. Wholesale Drug Co.*, 453 F. Supp. 3d 842 (E.D. Va. 2020) (transferring case to Middle District of North Carolina when ███████████████████ ████████ Other district courts have transferred cases when judicial economy would be promoted because of pending cases in the transferee forum. *See AVCO Corp. v. Marvel-Schebler Aircraft Carburetors, LLC*, No. 10-cv-2026, 2011 WL 484186, *3 (M.D. Penn. Feb. 7, 2011) (transferring case to Middle District of North Carolina to provide safeguard against conflicting resolutions of same issue and save parties and court system expense of twice litigating same issue); *Chruby v. Global Tel\*Link Corp.*, 119 F. Supp. 3d 399, 403 (E.D. Va. 2015) (transferring case to Western District of Arkansas where ██████████████████████ ████████████████████████████████████ ████████████████████████.[3]

> b.    *Louisiana has a particular interest in having a Louisiana court decide this case as it involves Louisiana's unique law and an allegation of abuse of Louisiana courts.*

The local interest in this case is much greater in Louisiana than North Carolina. All of the operative events alleged in the amended complaint occurred in Louisiana. *See supra* pp. 2-6. The claims John Doe      brings will be decided under Louisiana law regardless of where they are tried. *See Waterford I at Cary Park Condo. Homeowners Ass'n v. Nationwide Prop. & Cas.*

---

[3] ████████████████████████████████████████████████ ███████████████████████████████

*Ins. Co.*, -- F. Supp. 3d --, 2023 WL 2959868, *4 (E.D.N.C. 2023) ("North Carolina law uses the law of the situs test to determine choice of law for tort claims"). John Doe allegations show that his alleged injuries occurred in Louisiana. John Doe alleges that he was "a student at Tulane during the incidents described" in the complaint and that he planned to graduate and then attend business school at Tulane. Am. Compl. ¶¶ 1, 11. Jane Doe and Sue Roe made the allegedly defamatory statements to the Tulane community. *See id.* ¶ 80 (alleging that Jane Doe made false statements to "Tulane investigator Barber, fellow Tulane students, Louisiana civil court, and numerous people who were friends with" John Doe who was then a student at Tulane), ¶ 93 (alleging that Jane Doe made false statements to "administrators at Tulane University, to the president of Plaintiff's fraternity, to Plaintiff's friends, to the Louisiana civil court, as well as to numerous fellow students"), ¶ 148 (alleging that Jane Doe and Ms. Roe reported sexual assault allegations to Tulane University and John Doe fraternity). John Doe alleges that he suffered injuries at Tulane as a result of the purported defamation—his friends stopped responding to his texts and calls, the sexual assault allegations were "spreading rapidly among fellow Tulane Students," John Doe was kicked out of his fraternity group chat, and he experienced so much anguish and anxiety that he left campus. *Id.* ¶¶ 43-45.[4] John Doe alleges that Jane Doe prevented Tulane from performing its contract with John Doe and that as a result, John Doe was banned

---

[4] Consistent with these allegations about John Doe reputation being injured at Tulane, John Doe argued to the Fourth Circuit that Jane Doe made the statements alleged to have caused his harm "to a specific audience—predominantly Tulane administrators, students and Jane Doe Instagram and TikTok followers." Reply Br. 20-21, *Doe v. Doe*, No. 23-1058 (4th Cir. April 19, 2023). John Doe noted that he did not allege that Jane Doe identified him by name on Instagram or TikTok. *Id.* 21. He identified the group of people "who know about [Jane Doe allegations against him" as "including his friends, former classmates and Tulane's administrators." *Id.* 22.

17

from campus and dismissed from the university, causing him to lose his tuition payment and college degree and harming his career prospects.  *Id.* ¶¶ 125-134.  He further alleges that Jane Doe abused the process of Louisiana civil courts and Tulane's Title IX process.  *See id.* ¶¶ 111, 116.  Because all of these alleged injuries occurred in Louisiana, Louisiana law will govern.  *See, e.g.*, *EKG Sec., Inc. v. Tailormade Protective Servs., LLC*, No. 3:21-CV-00599-RJC-DCK, 2022 WL 4477713, at *3 (W.D.N.C. Sept. 26, 2022) (concluding that North Carolina law applied where defendant's alleged interference with contract occurred in North Carolina); *Coker v. Norwich Com. Grp., Inc.*, No. CV 3:20-03071-MGL, 2021 WL 4037472, at *4 (D.S.C. Sept. 3, 2021) (applying South Carolina lex loci rule to conclude that abuse of process claim arising from proceeding before Texas agency was governed by Texas law); *Verona v. U.S. Bancorp*, No. 7:09-cv-057-BR, 2011 WL 1252935, at *10 n.6 (E.D.N.C. Mar. 29, 2011) (recognizing that, despite lack of North Carolina case directly on point, "general rule for defamation claims is the place of harm is the place of publication"); *see also Wells v. Liddy*, 186 F.3d 505, 521-22 (4th Cir. 1999) (noting that "[i]n defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published," and concluding, under Maryland lex loci rule, that Virginia law applied defamation claim arising from speech given at university in Virginia).

Further, one of John Doe claims is for abuse of process.  Am. Compl. ¶¶ 110-123.  This claim refers to Jane Doe petition for protection that she filed in Louisiana state court.  *Id.* ¶ 87.  Louisiana has a greater interest than North Carolina in adjudicating claims involving allegations of abuse of the process of Louisiana courts.  *See, e.g.*, *Marietta Area Healthcare, Inc. v. King*, No. 2:20-cv-00639, 2021 WL 606869, at *3-4 (S.D. W. Va. Feb. 16,

18

2021) (transferring case that included claim for abuse of process to district where the allegedly false and abusive claims were originally filed).

And while federal courts regularly apply the laws of other states than the one in which they sit, this case presents a slightly different tenor because the state law claims at issue here will be governed by Louisiana's Civil Code, and not the common law. As just one example, Jane Doe has moved to dismiss John Doe claim for tortious interference with contract because under the Louisiana Civil Code, such a claim is far more limited than it is under the common law. (*See* DE 28 at 12-14). The difference between Louisiana's Civil Code and the common law weighs in favor of transferring this case to a federal court in Louisiana. *See Ecoproduct Sols. LP v. MMR Constructors, Inc.*, No. H-06-3671, 2007 WL 4414039, *5 (S.D. Tex. Dec. 14, 2007) (noting that Louisiana federal courts are "expert in Louisiana law, which often varies considerably from that of common law states" and concluding that "this factor very much supports transfer to the Middle District of Louisiana").

The interest of Louisiana courts in adjudicating this case thus weighs strongly in favor of transfer.

> c.    *Docket conditions favor transfer as the Eastern District of Louisiana has three times as many Article III judges and a less congested docket per judge than the Eastern District of North Carolina.*

Docket conditions also favor transfer because this Court has more pending cases per judge than the Eastern District of Louisiana. *See Szulik*, 858 F. Supp. 2d at 549 (concluding that docket conditions favored transfer where transferee court had fewer cases per judge).

The Eastern District of Louisiana currently has twelve active district judges and three active district judges on senior status. *See* Eastern District of Louisiana Website Excerpt (DE

29-5).  By contrast, this district has only four active district judges and no active district judges on senior status.  *See* Eastern District of North Carolina Website Excerpt (DE 29-6).

Not surprisingly, this discrepancy in the number of judgeships results in far more filings per judge here than in the Eastern District of Louisiana.  In this district, there were 977 unweighted and 763 weighted filings per judgeship in the most recently reported year, compared to 465 unweighted and 543 weighted filings per judgeship in the Eastern District of Louisiana.  *See* Federal Judicial Caseload Statistics, Table X-1A, *U.S. District Courts—Weighted and Unweighted Filings Per Authorized Judgeship During the 12-Month Period Ending March 31, 2023*, https://www.uscourts.gov/statistics/table/x-1a/federal-judicial-caseload-statistics/2023/03/31 (last visited Dec. 14, 2023) (DE 29-7).  And these data are for the twelve-month period ending March 31, 2023.  Under the Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804(b), the Eastern District of North Carolina has exclusive jurisdiction and venue over cases brought pursuant to that act.  According to a recently filed joint status report, there were 1,433 cases brought under that act between February 11, 2023, and November 27, 2023, resulting in each of the four judges in this district being assigned between 343 and 370 new cases.  *See* Joint Status Report, *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023), available at https://ecf.nced.uscourts.gov/doc1/13119289206 (last visited Dec. 15, 2023) (DE 29-8).  The Camp Lejeune Justice Act is likely to continue to contribute to this Court's already heavy caseload.

This Court's extraordinary and growing caseload weighs heavily in favor of transfer.  *See Szulik*, 858 F. Supp. 2d at 549.

20

          d.        *Preference for judicial efficiency and consistency warrants transfer as there is a risk of inconsistent rulings if the cases proceed in different venues.*

There is a significant risk of inconsistent rulings if this case and John Doe ███ ████████████████████████████ and this factor also weighs in favor of transfer. *See Noetic*, 453 F. Supp. 3d at 847-48.

The court in *Noetic* recognized this risk of inconsistent rulings when two courts are interpreting similar issues. *See id.* In *Noetic*, there were two separate cases to determine available insurance coverage for underlying opioid cases; the transferor court found there was a greater risk of inconsistent applications of North Carolina law if the █████████████ ████████ *Id.*

Here, the resolution of John Doe defamation claim against Jane Doe rises and falls along the same lines as his Title IX case against Tulane. John Doe alleges numerous flaws in the Title IX investigation in his complaint against Tulane, *Doe* Compl. ¶¶ 515-516, and titles one section of his complaint here "Jane Doe Provides False Information and Submits Doctored Evidence to Tulane Investigator," Am. Compl. at 21. ████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

███████████████

21

And as stated above, there will be significant opportunities for judicial economy if the case is transferred for the potential consolidation of discovery with the Tulane action.  *See* Fed. R. Civ. P. 42(a).

\*    \*    \*

Overall, the public interest factors weigh significantly in favor of transfer.  Neither party is a resident of North Carolina.  All of the operative events discussed in the amended complaint occurred in Louisiana.  No third-party witnesses live in North Carolina; numerous third-party witnesses live in Louisiana.  This case will be decided under Louisiana law, which is unique among the fifty states.  This case involves an allegation that Jane Doe abused the process of Louisiana courts.  ███████████████████████████████████████████████████ ███████████████████████████████████.  Transfer is in the interest of justice, and Jane Doe respectfully requests that this Court transfer this case to the Eastern District of Louisiana.

## CONCLUSION

For the reasons stated above, Defendant Jane Doe respectfully requests that the Court grant her motion and transfer this case to the United States District Court for the Eastern District of Louisiana.

22

This the 15th day of December, 2023.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

23

Original Filed at Docket No. 36,

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| John Doe          ,<br><br>                    Plaintiff,<br><br>          v.<br><br>Jane Doe<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)   Case No. 5:22-CV-00500-D-BM<br>)<br>)<br>)<br>)<br>) |

Plaintiff John Doe      herby files the attach proposed sealed exhibits to his opposition to Defendant Jane Doe motion to transfer Venue (Dkt #35):

1. Exhibit F - true and correct copies of Jane Doe *v.* John Doe, 2022-2059, Petition From Protection From Abuse, Information For Service of Process, and Order of Protection/Temporary Restraining Order.

2. Exhibit G - true and correct copy of the pseudonym order entered in Plaintiff's action against Tulane University

This the 17th day of January, 2024

**NESENOFF & MILTENBERG, LLP**

By:    /s/ Andrew Miltenberg
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

# EXHIBIT G

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOHN DOE**                                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 23-1348**

**THE ADMINISTRATORS OF THE**                      **SECTION: D (4)**
**TULANE EDUCATIONAL FUND**

### ORDER and REASONS

Before the Court is an *Ex Parte* Motion to Proceed Under Pseudonym, filed by plaintiff, John Doe.[1] Defendant has not yet appeared and has not filed a response to the Motion.

After careful consideration of the Plaintiff's Motion, Supporting Memorandum, and the applicable law, the Motion is **GRANTED in part and DENIED in part.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from alleged "biased and flawed disciplinary proceedings" against plaintiff, John Doe, by the Administrators of the Tulane Educational Fund ("Tulane"), in response to allegations of sexual misconduct.[2] Plaintiff alleges that he withdrew from Tulane as a result of the allegations,[3] that Tulane subsequently banned him from campus and from participating in university-sponsored events while conducting an investigation of nonconsensual sexual contact,[4] and that Tulane

---

[1] R. Doc. 3.
[2] R. Doc. 1 at ¶¶ 1-2, 6, & 9.
[3] *Id*. at ¶¶ 4 & 281.
[4] *Id*. at ¶¶ 7 & 273.

1

expelled him following the investigation.[5]  Plaintiff claims that the investigation and

disciplinary actions by Tulane were wrongful.[6]

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 10(a), a complaint "must name all the parties," including

the plaintiff.  The Fifth Circuit has held that, "Public access to this information is

more than a customary procedural formality; First Amendment guarantees are

implicated when a court decides to restrict public scrutiny of judicial proceedings."[7]

Nonetheless, a party may proceed anonymously or under a pseudonym in certain

circumstances.  In the Fifth Circuit, a request to litigate under a pseudonym "requires

a balancing of considerations calling for maintenance of a party's privacy against the

customary and constitutionally-embedded presumption of openness in judicial

proceedings."[8]  The Fifth Circuit has further cautioned that there is "no hard and fast

formula for ascertaining whether a party may sue anonymously."[9]

The Fifth Circuit has identified three factors that a district court should

consider when determining whether a party can proceed anonymously: (1) whether

the plaintiff is "suing to challenge governmental activity;" (2) whether the suit

compels the plaintiff "to disclose information 'of the utmost intimacy;'" and (3)

whether the suit compels the plaintiff to admit an "intention to engage in illegal

---

[5] *Id*. at ¶¶ 2-13 & 190-191, 196, 198, & 214.

[6] *Id*. at ¶¶ 214-243, 278, 284-488.

[7] *Doe v. Stegall*, 653 F.2d 185, 185 (5th Cir. Unit A 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 2829 & n.17, 65 L.Ed.2d 973 (1980)).

[8] *Stegall*, 653 F.2d at 186.

[9] *Id*.

conduct, thereby risking criminal prosecution."[10]  According to the Fifth Circuit, these three factors "deserve considerable weight in the balance pitting privacy concerns against he presumption of openness of judicial proceedings."[11]

## III.  ANALYSIS

In the instant Motion, Plaintiff makes the following five requests:

1. Allow Plaintiff to proceed by the pseudonym "John Doe" in this action;
2. Require the use of the pseudonym "John Doe" in public filings and require the redaction of Plaintiff's name and identifying information from public filings;
3. Prohibit Tulane from publicly identifying Plaintiff in connection with this litigation;
4. Require the complainants in the underlying disciplinary proceedings to be identified as "Sue Roe" and "Jane Doe" in public filings and require the redaction of their names from public filings; and
5. Permit the parties to identify nonparties to the action who were Tulane University students at the time of the events alleged in the Complaint to be identified by their initials in public filings and redact their full names from public filings.[12]

Applying the *Stegall* factors here, the Court finds that Plaintiff's interest in proceeding anonymously outweighs the public interest in open proceedings with respect to himself, Sue Roe, and Jane Doe.  This suit arises from claims related to Plaintiff's sexual conduct with Sue Roe and Jane Doe, and will require the disclosure of private, intimate details concerning their sexual interactions.  Thus, this case will require Plaintiff to disclose information regarding himself, Sue Roe, and Jane Doe that is of the "utmost intimacy."[13]  As to Sue Roe and Jane Doe, their right to privacy

---

[10] *Id*. at 185 (citing *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)).
[11] *Stegall*, 653 F.2d at 186.
[12] R. Doc. 3.
[13] *Stegall*, 653 F.2d at 186.

regarding the events described in the Complaint also outweigh the public's right to know their identity.[14]

Additionally, in cases like this, where male students have sued universities for flawed and deficient disciplinary proceedings concerning allegations of sexual misconduct, courts in this Circuit have repeatedly allowed plaintiffs to proceed under a pseudonym.[15] The Court further finds that Tulane will not be prejudiced by allowing Plaintiff, Jane Doe, and Sue Roe to proceed pseudonymously, as Plaintiffs assert that Tulane knows the identities of Plaintiff, Jane Doe, Sue Roe, and the non-party Tulane students identified by their initials in the Complaint and will be able to conduct this litigation without impediment.[16] The Court finds, however, that Plaintiff has not shown a sufficient basis at this point in time to require the non-party students to be referenced by their initials.[17] As such, that request is denied.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym,[18] is **GRANTED in part and DENIED in part.** The Motion is **GRANTED** to the extent that Plaintiff seeks to proceed by the pseudonym "John Doe," and Plaintiff shall be referred as "John Doe"

---

[14] *Doe v. Univ. of Mississippi*, Civ. A. No. 3:21-cv-201-DPJ-FKB, 2021 WL 6752261, at *2 (S.D. Miss. Apr. 14, 2021) (Ball, M.J.) (quotation and quotation marks omitted); *Doe v. Louisiana State Univ.*, Civ. A. No. 20-379-BAJ-SDJ, 2020 WL 6493768, at *2 (M.D. La. June 30, 2019) (Johnson, M.J.);

[15] *Doe v. Louisiana State Univ.*, Civ. A. No. 20-379-BAJ-SDJ, 2020 WL 6493768 at *2; *See*, R. Doc. 8 in *Doe v. The Administrators of the Tulane Educational Fund*, Civ. A. No. 19-11403 (E.D. La. July 2, 2019) (Vance, J.) (citing authority); R. Doc. 7 in *Doe v. Tulane University et al.*, Civ. A. No. 17-12081 (E.D. La. Nov. 17, 2017) (Feldman, J.).

[16] R. Doc. 3-1 at p. 2. *See, Doe v. Louisiana State Univ.*, Civ. A. No. 20-379-BAJ-SDJ, 2020 WL 6493768 at *2 (citation omitted).

[17] *See, Doe v. Univ. of Mississippi*, Civ. A. No. 3:21-cv-201-DPJ-FKB, 2021 WL 6752261 at *2.

[18] R. Doc. 3.

in public filings, Plaintiff's name and identifying information shall be redacted from public filings, Tulane is prohibited from publicly identifying Plaintiff in connection with this litigation, the complainants in the underlying disciplinary proceedings shall be identified as "Sue Roe" and "Jane Doe" in public filings, and the names of Sue Roe and Jane Doe shall be redacted from public filings. The Motion is otherwise **DENIED.**

New Orleans, Louisiana, April 26, 2023.

WENDY B. VITTER
**United States District Judge**

Original Filed at Docket No. 37,

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**NESENOFF & MILTENBERG, LLP**
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

RELEVANT BACKGROUND ...................................................................................................... 3

    I.    Procedural History ............................................................................................................ 3

    II.   The Parties' States of Residence................................................................................... 6

    III.  Potential Witnesses In This Lawsuit.............................................................................. 7

    IV.  The Amended Complaint's Allegations.......................................................................... 8

       A. Plaintiff's Background ............................................................................................... 8

      B.  Plaintiff's Relationship With Sue Roe ........................................................................ 8

      C.  Plaintiff's Encounters with the Defendant ................................................................ 9

      D.  Defendant's Retaliatory Conduct ............................................................................ 11

      E.  Plaintiff Returned Home Due to Threats to His Safety............................................. 13

      F.  Defendant's Petition for a Temporary Restraining Order ....................................... 13

      G.  Defendant and Sue Roe's Coordinated Action Against Plaintiff.............................. 14

      H.  Plaintiff Was Substantially Injured By Defendant's Misconduct ................................ 15

ARGUMENT ................................................................................................................................ 16

      A.  Defendant's Motion Is Barred By the Doctrine of Judicial Estoppel............................. 17

      B.  Defendant Has Not Met Her Burden of Demonstrating That A Transfer Is Warranted . 20

         1.  Plaintiff's Choice of this Venue Should Be Accorded Substantial Weight ............. 20

         2.  The Factors of Party Convenience, Witness Convenience and Access Militate Strongly Against the Proposed Transfer. ............................................................... 21

         3.  The Interest of Justice Will Not Be Served By Transferring This Action ................ 24

            a.  The ███████████████████████████████ ██████████ ................................................................................................ 24

            b.  Louisiana's Relationship to this Action Is Strong But Not Sufficiently So To Overcome Other Factors Weighing Against the Transfer. .................................. 24

            c.  A Comparison of Docket Conditions Favors Denial of the Proposed Transfer ... 26

            d.  The Preference for Efficiency and Consistency Militate Toward a Transfer ██ ███████████████████████████ ................................................................ 27

CONCLUSION............................................................................................................................. 28

i

## TABLE OF AUTHORITIES

Cases

*Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*,
No. 5:20-CV-46-M, 2020 WL 4913280 (E.D.N.C. Aug. 20, 2020)...................................23, 28

*Fellores v. Winter*,
No. CIV.A. 2:06CV551, 2007 WL 473727 (E.D. Va. Feb. 8, 2007) .......................................18

*Hubbard v. Eitan Group N. America*,
2023 WL 2959991 (E.D.N.C. Apr. 14, 2023)..........................................................................22

*In re Camp Lejeune Water Litig.*,
No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023).............................................................................27

*In re Willingham Patent Litig.*,
322 F. Supp. 1019 (M.D.P.L. 1971) ........................................................................................22

*Info. Control Sys., Inc. v. Avesta Techs., Inc.*,
No. 1:99CV217-T, 2000 WL 1409862 (W.D.N.C. Sept. 6, 2000)...........................................25

*James v. Jacobson*,
6 F.3d 233 (4th Cir. 1993) .......................................................................................................3

*Martineau v. Weir*,
934 F.3d 385 (4th Cir. 2019) ..................................................................................................19

*New Hampshire v. Maine*,
532 U.S. 742 (2001)................................................................................................................17

*Oudeh v. Goshen Med. Ctr., Inc.*,
No. 5:22-CV-193-D, 2022 WL 18028281 (E.D.N.C. Dec. 29, 2022).....................................18

*Pegram v. Herdrich*,
530 U.S. 211 n. 8 (2000)..........................................................................................................18

*Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*,
No. 319CV00508FDWDSC, 2020 WL 90663 (W.D.N.C. Jan. 7, 2020)................................21

*Speed Trac Techs. v. Estes Express Lines, Inc.*,
567 F. Supp. 2d 799 (M.D.N.C. 2008) ....................................................................................21

*Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*,
No. 1:19CV486, 2020 WL 2086188 (M.D.N.C. Apr. 30, 2020)........................................23, 28

*Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*,
791 F.3d 436 (4th Cir. 2015) ...................................................................................................20

*Wells Fargo Bank, N.A. v. Highland Constr. Mgmt. Servs., L.P.*,
807 F. App'x 246 n. 2 (4th Cir. 2020) ......................................................................................17

## Rules

28 U.S.C. § 1332.............................................................................................................................3
28 U.S.C. § 1404(a) .............................................................................................................2, 17, 20

**INTRODUCTION**

In this diversity action, Plaintiff John Doe    ("Plaintiff" or "John Doe    asserts that, in 2022, Defendant Jane Doe ("Defendant" or "Jane Doe with whom he had consensual, sexual experiences while both were undergraduates at Tulane University ("Tulane")—became angry after she learned he had sex with another student and launched a campaign to defame, humiliate, harass and punish him. The Amended Complaint filed by Plaintiff on November 9, 2023 (ECF No. 23) (the "Amended Complaint") alleges that, *inter alia*, beginning in February 2022 Defendant spread false and defamatory sexual assault accusations against Plaintiff to fellow Tulane students, Plaintiff's fraternity, on social media, in a Title IX report and subsequent investigation and in Louisiana civil court. Defendant acted in concert with Tulane Student Sue Roe to defame Plaintiff and inflict maximum emotional, economic and reputational harm on Plaintiff, with the intention of destroying Plaintiff's future and career prospects such that her false accusations were permanently associated with his name.

On January 5, 2023, the Court denied Plaintiff's *ex parte* motion to proceed anonymously in this action on the ground that this action is entirely distinguishable from cases in which universities are sued for mishandling the investigation of Title IX allegations. After Plaintiff appealed the Court's order Defendant appeared—using her own name—in this action and for purposes of opposing the appeal.

On ███████████████████████████████ in which the Court granted him pseudonym protection. By mid-May 2023, Defendant was aware of the lawsuit and pseudonym order and elected to proceed in her strategy to oppose Plaintiff's pseudonym appeal on the ground that this defamation action is readily distinguishable from Title IX cases brought against universities. On September 19, 2023, at oral argument, Defendant moved forward with this argument. In October 2023, the Fourth Circuit adopted Defendant's position, finding that this case

1

is a garden variety defamation action that is distinguishable from university cases. Plaintiff's appeal was denied and Plaintiff was required to proceed in his own name.

After Plaintiff filed the Amended Complaint, Defendant suddenly sought to transfer this action to the Eastern District of Louisiana and to later have it ███████████████████ ███████████████████. This position is clearly inconsistent with Defendant's position to date, which sought to distinguish the ██████ and maintain them on separate tracks so that the pseudonym would be lost. Defendant's prior arguments that this case does not implicate Tulane's Title IX proceeding suggested a belief that ███████████████████ ████████████████████████████.

After learning that Plaintiff had obtained the right to proceed pseudonymously ██████ ██████ Defendant could have withdrawn her arguments that this action does not overlap with any review of Tulane's Title IX proceeding. However, she chose not to. For this reason, *judicial estoppel bars this Motion*. Each of the required circumstances for application of that doctrine is present here.

Moreover, even if Defendant is not judicially estopped from seeking a transfer of this action to the Eastern District of Louisiana, transfer under 28 U.S.C. § 1404(a) is unwarranted because: 1) Plaintiff's choice of this District should be given deference; 2) this District is a more practical forum for this litigation; 3) the majority of witnesses live in New York (according to Defendant); and 4) a transfer cannot be said to be in the "interest of justice" because it would effectively ██████ ████████████████████.

For these reasons, and those stated below, the Court should deny Defendant's Motion.

2

## RELEVANT BACKGROUND

### I.    Procedural History

On December 8, 2022, Plaintiff, using the pseudonym "John Doe," filed this action against Defendant referencing her as "Jane Doe," asserting state law claims, basing subject matter jurisdiction of this Court on diversity pursuant to the terms of 28 U.S.C. § 1332. ECF No. 1. Concurrent therewith, Plaintiff filed an *ex parte* motion, with a supporting memorandum of law, for leave to proceed under a pseudonym. ECF Nos. 5-6. In his supporting brief, Plaintiff cited 13 federal cases in which courts permitted plaintiffs to proceed anonymously in actions naming universities as defendants. ECF No. 6.

On January 5, 2023, the Court issued an order denying Plaintiff's *ex parte* motion and ordered that Plaintiff either (1) file an amended complaint in his real name; or (2) file a notice of dismissal. ECF No. 8 (the "Pseudonym Order"). In the Pseudonym Order, the Court applied the five factors set forth in *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Declaration of Andrew T. Miltenberg, dated January 17, 2024 ("Miltenberg Decl."), Ex. A, Pseudonym Order, at 2. The Court also considered its "independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Id.* at 2-3 In the Pseudonym Order, the Court addressed the numerous university cases Plaintiff cited in support of his motion, holding that Plaintiff was wrong to argue that the university cases were similar to this action—a defamation case between private individuals. *Id.* at 7. The Court further held that "[a]lthough courts sometimes allow those accused of sexual assault to sue schools or universities pseudonymously when attacking the findings of a university Title IX investigation, the considerations in those cases do not apply here." *Id.* at 7. It explained, "unlike in those cases,

3

Plaintiff is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation[,]" and that "Tulane is not a defendant." *Id.*

Plaintiff appealed the Pseudonym Order, and the Court stayed the portion of the Order which required Plaintiff to proceed in his own name pending the outcome of the appeal. *See* ECF Nos. 9-12, 14. On February 24, 2023, Defendant's counsel filed a Notice of Appearance and obtained an extension of time for responding to the Complaint until after Plaintiff's appeal was decided. *See* ECF No. 20.

On the same day, Defendant's counsel filed Notices of Appearance in the Fourth Circuit which identified Defendant by name. *See* Dkt. ##13, 15 in *John Doe v. Jane Doe*, Appeal No. 23-1058 (4th Cir.) (the "Appeal Dkt."). On March 29, 2023, as Defendant-Appellee, Defendant filed a response brief in Plaintiff's appeal, arguing that the Court had "properly concluded that Mr. Doe was not entitled to the rare dispensation of being allowed to litigate under a pseudonym." Miltenberg Decl., Ex. B, Appellee Resp. Br., at 12. Central to Defendant's opposition was the argument that Plaintiff "is not challenging the university disciplinary process in this case—he did not sue Tulane[.]" *See id.* at 21. Defendant opposed Plaintiff's appeal from the Pseudonym Order on the ground that Plaintiff's reliance on cases in which plaintiffs sued universities to "challenge the university disciplinary process and sought injunctive relief to expunge [their] disciplinary record[s]" was unfounded because Plaintiff's action was "not an extension of a confidential university disciplinary proceeding" but rather "an effort to recover money damages from Jane Doe for statements she made[.]" *Id.* at 22.

On May 16, 2023, Plaintiff's counsel filed a notice in the Fourth Circuit that Plaintiff was granted pseudonym protection in his action against Tulane (the "Tulane Order"). Appeal Dkt. #40.

This submission informed Defendant's counsel that Plaintiff was proceeding by pseudonym in ███ ████████████ .

On September 19, 2023, the Fourth Circuit held oral argument on Plaintiff's appeal. Defendant's counsel reiterated the distinction between this action and university cases, repeatedly referring to this case as a defamation action, which is an inherently public tort, as opposed to a case in which a university has been sued.[1]

On October 26, 2023, the Fourth Circuit denied Plaintiff's appeal, holding that the Court (1) "did not abuse its discretion because it did not rely on incorrect factual or legal premises," in denying Plaintiff's motion for use of a pseudonym, and (2) "conducted a thorough, case specific analysis when it exercised its discretion." Miltenberg Decl., Ex. C, Opinion, at 19-20. The Fourth Circuit rejected Plaintiff's "central argument on appeal[,]" namely that the case "center[s] around a confidential Title IX proceeding" and is not a "garden variety defamation case[.]" *Id.* at 21. The Circuit agreed with this Court's determination that critical to the denial of Plaintiff's pseudonym motion was that (1) the cases Plaintiff relied on were distinguishable because they involved claims against universities challenging the findings of Title IX investigations; (2) the case Plaintiff filed in the district court omitted a challenge to Tulane's actions vis-à-vis Plaintiff including its Title IX investigation; and (3) Plaintiff "is only suing a private individual for defamation and he only seeks declaratory relief and money damages against Appellee." *Id.* at 21. The Circuit explained, "[t]his case is no different than a garden variety defamation case, and it does not present the exceptional circumstances necessary for Appellant to proceed by pseudonym." *Id.* at 21-22.

The Circuit's Opinion and Judgment in the appeal were docketed in the district court on October 26, 2023. ECF Nos. 21-22. Plaintiff filed an Amended Complaint on November 9, 2023

---

[1] *See* https://www.ca4.uscourts.gov/OAarchive/mp3/23-1058-20230919.mp3 (audio transcript of oral argument on appeal, September 19, 2023) (counsel for Defendant makes the arguments at 30:36-37:39).

using his name, and that of Defendant, in the caption of the action and the entire pleading. Miltenberg Decl., Ex. D, Am. Compl., (ECF No. 23). The Amended Complaint asserts claims for: 1) defamation (*Id.* ¶¶ 92-109); 2) abuse of process (*Id.* ¶¶ 110-123); 3) tortious interference with contract (*Id.* ¶¶ 124-135); 4) intentional infliction of emotional distress (*Id.* ¶¶ 136-146); and 5) civil conspiracy (*Id.* ¶¶ 147-153). Plaintiff seeks a declaration that Defendant defamed Plaintiff and an award of damages against Defendant, including compensatory and punitive damages. *See id.* Prayer for Relief.

On December 15, 2023, Defendant filed a partial motion to dismiss, seeking to dismiss Plaintiff's claims for (1) abuse of process, (2) tortious interference with contract, and (3) civil conspiracy. ECF Nos. 27-28. Defendant also filed the instant motion, seeking to have the venue for the action transferred to the Eastern District of Louisiana. ECF Nos. 29-33.

## II.    **The Parties' States of Residence**

Plaintiff is a resident of South Carolina. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 6, 45. At the time the action was filed, Defendant was a resident of North Carolina. *Id.* ¶ 9. *See* ECF Nos. 1, 29-2.

In Defendant's declaration in support of her motion to transfer, she states that she currently "resides" in the state of Colorado, but does not state when she became a resident of that state. *See* ECF No. 29-2, ¶¶ 1, 6. She went to high school in North Carolina and periodically "returned home" to North Carolina while attending Tulane. *Id.* ¶ 5. Defendant graduated from Tulane in May 2023, about five months after this action was filed. *Id.* ¶ 6. After graduation she returned home to North Carolina. *Id.* A FedEx addressed to Defendant, containing the Complaint and service waivers in this action, were accepted at the Defendant's North Carolina residence on January 30, 2023. Miltenberg Decl., ¶ 7, Ex. E.

<div align="center">6</div>

### III.    **Potential Witnesses In This Lawsuit**

The Amended Complaint identifies two Tulane administrators to whom Defendant made or potentially made false and defamatory statements about Plaintiff: 1) Christopher Zacharda and 2) Title IX investigator Jacqueline Barber. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 46, 48, 50. Dr. Zacharda resides in Chicago. ECF No. 29-1, Woodley Aff. ¶ 7; Miltenberg Decl., ¶ 8. One witness identified in the Affidavit of Erica Woodley, Avery Pardee, ███████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████ ECF No. 29-1, ¶ 7. Defendant has not specified what material information can be provided by Ms. Pardee. ECF No. 29-1. Nor has Defendant specified what material information can be provided by Ms. Woodley, Ms. Cofrancesco, Ms. Broussard or Dr. Porter. *Id.* All that is stated by Ms. Woodley is that the persons identified in her affidavit had "knowledge of" Jane Doe Title IX complaint. ECF No. 29-1, ¶ 7. Ms. Woodley, herself, only says that she "became familiar" with Jane Doe in 2022. There is no evidence that any person identified by Ms. Woodley would refuse to testify at a trial in North Carolina. Defendant identified two former classmates who live, or may live, in Louisiana. ECF No. 29-2, Jane Doe Aff., ¶¶ 10-12.

Defendant has identified eight (8) potential non-party witnesses that live in New York, *including Sue Roe*. ECF No. 29-2, Jane Doe Aff. ¶¶ 8-9. Two of her former classmates live in Colorado. *Id.* ¶ 11. Defendant asserts that "at least some of the students identified" in her Title IX report and "some of the Tulane administrators" identified in the Woodley Affidavit will be "potential witnesses." *Id.* ¶ 15. There is no evidence that any witnesses identified by Defendant would refuse to testify at a trial held in North Carolina.

7

IV.    **The Amended Complaint's Allegations**

A.    **Plaintiff's Background**

Plaintiff enrolled in Tulane in mid-2018 and commenced his studies in Finance, Management and Psychology in August of that year, with the intention of pursuing an M.B.A. upon his expected graduation in 2022. Miltenberg Decl., Ex. D, Am. Compl. ¶ 11. Plaintiff was an exemplary student and member of the community during his time at Tulane. *See id.* ¶ 12. He served as Co-President of Tulane's section of a national service organization for two years and served as the treasurer of the Food Recovery Network, which assists individuals at homeless shelters. *Id.* On track to graduate with *cum laude* honors, Plaintiff was a Merit Scholarship recipient and a tutor in Tulane's tutoring center. *Id.*

When Plaintiff enrolled in Tulane, he understood that Tulane was offering him a fair and equitable educational experience in which he would be protected from actions by other students deemed "Prohibited Conduct" under the Tulane University Code of Student Conduct (the "Code"). *Id.* ¶ 13. Under the Code the following are listed as "Prohibited Conduct": (1) the "[f]urnishing [of] false information to the University or to a University official", and (2) "harassment or intimidation." *Id.*

B.    **Plaintiff's Relationship With Sue Roe**

Plaintiff met Sue Roe in September 2019, just over two years prior to Plaintiff meeting Defendant. *Id.* ¶¶ 14, 19. Plaintiff and Sue Roe engaged in a casual sexual relationship from September 2019 to December 2019, and later continued to engage in consensual sexual activity with each other on an occasional basis during the period January 2020 through August 2021. *Id.* ¶¶ 14-18. Ms. Roe's statements to Plaintiff, statements to others that Plaintiff later learned about, and actions when she was in Plaintiff's presence, indicated that she was interested in a serious relationship with Plaintiff, even though Plaintiff had informed her that he did not have any such

8

interest. *Id.* ¶ 14. After Plaintiff told Ms. Roe that he did not want to date her, Ms. Roe began telling people that she "hated" Plaintiff. *Id.* ¶ 15.

On one occasion in August 2021, Ms. Roe explained to Plaintiff that she was engaged in a sexual relationship with a different man, a man who had started "dating" another woman. *Id.* ¶16. On that occasion, at night and at Ms. Roe's home, Plaintiff and Sue Roe engaged in consensual sex. *Id.* After the sex, Plaintiff made a comment to the effect of "we may regret that later," which caused Ms. Roe to cry. *Id.* ¶ 17. Plaintiff immediately apologized for the comment, explaining that it was not meant to be interpreted as anything against Sue Roe. *Id.* Plaintiff tried to smooth over the situation and suggested that the two discuss the matter in the morning. *Id.* He then went to sleep. *Id.* Sue Roe was still upset and, while Plaintiff was asleep in her bed, she woke up one of her housemates. *Id.* ¶ 18. The housemate went into Sue Roe's room and asked Plaintiff to leave. *Id.* After being slow to respond to the request because he was still asleep, Plaintiff eventually woke up and left Sue Roe's home, texting Ms. Roe to tell her that he had left, to suggest that she lock the door, and to wish her "good night." *Id.* Plaintiff engaged in no further sexual encounters with Sue Roe. *Id.* ¶¶ 14-18.

Nearly six months later, on February 11, 2022, Ms. Roe submitted a Title IX report to Tulane, naming Plaintiff as a respondent. *Id.* ¶ 47. Ms. Roe submitted her report on the same day that Defendant submitted a Title IX report against Plaintiff. *Id.*

### C. **Plaintiff's Encounters with the Defendant**

Plaintiff and Defendant met in or around September 2021 through the dating app Tinder. *Id.* ¶ 19. They exchanged phone numbers at a concert in November 2021, but they did not speak or meet after that. *Id.* On January 27, 2022, Plaintiff and Defendant ran into each other at a bar near the Tulane campus. *Id.* ¶ 20. Defendant went home with Plaintiff that night, where the two went to sleep; Defendant left in the morning. *Id.* Plaintiff and Defendant met each other on two

occasions shortly thereafter: (1) on January 29, when they attended Plaintiff's fraternity "date party"; and (2) on February 3, a short time after midnight on Plaintiff's birthday, February 2. On January 29, after returning back to Plaintiff's room from the party, they spent a few hours trying to engage in consensual intercourse, napping and then actually engaging in consensual sexual intercourse. *Id.* ¶ 25. Thereafter, around 9 p.m. that evening, Plaintiff walked Defendant home engaging in friendly conversation; Defendant gave Plaintiff a tour of the house she was living in, alluded to Plaintiff returning to her house in the near future, and kissed Plaintiff goodbye. *Id.* Plaintiff returned home. *Id.*

On February 2, 2022, the two exchanged texts, and around midnight, Plaintiff texted Defendant to ask if she wanted to get together. *Id.* ¶ 27. She replied that she did. *Id.* Plaintiff met Defendant outside of her house, and the two walked to Plaintiff's house, where, in his bedroom, they engaged in consensual, sexual intercourse. *Id.* ¶ 28 Plaintiff wore a condom during the encounter and Plaintiff went to sleep immediately after. *Id.* The morning of February 3, after the two kissed, Plaintiff walked Defendant home, engaging in friendly conversation. *Id.* ¶ 30. When they arrived at Defendant's home, they kissed and Defendant wished Plaintiff a happy birthday. Plaintiff returned home. *Id. Id.*

Plaintiff observed strange behavior by Defendant. During the "date party" on January 29, Defendant told Plaintiff that a fellow party attendee, "K.S.," had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. *Id.* ¶ 43. At one point during the "date party," the two walked by Sue Roe. *Id.* Shortly after, Defendant asked Plaintiff, "Is there anyone you're avoiding here?" *Id.* ¶ 24. Later, when the two were in bed at Plaintiff's home, Plaintiff was unable to engage in intercourse; in response, Defendant told Plaintiff that it was alright, that she was too drunk to have sex anyway. *Id.* ¶ 25. Plaintiff found

10

this statement strange since he observed that Defendant had only had two drinks over the course of a five-hour period. *Id.*

Further, after informing Tulane student friends of his that he had invited Defendant to the "date party," he learned that Defendant reportedly made a complaint to Tulane about her ex-boyfriend's violation of COVID-19 guidelines shortly after he ended his relationship with Defendant. *Id.* ¶ 21. This resulted in Defendant's ex-boyfriend being banned from campus. *Id.*

### D. Defendant's Retaliatory Conduct

The night following the second sexual encounter between the parties, February 3, 2022, Plaintiff, out at a bar with friends, ran into a woman on whom he had a crush. *Id.* ¶ 31. Plaintiff and his "crush" spoke for over an hour, after which they went to Plaintiff's house and engaged in consensual sexual activity. *Id.* Defendant saw Plaintiff conversing with the woman at the bar. *Id.* ¶¶ 31, 68, 82-86. Defendant's close friend and roommate told the Tulane investigator that Defendant changed her account of her consensual sexual encounter with Plaintiff to a sexual misconduct narrative only after seeing him out with another woman. *Id.* ¶ 85.

On February 4, 2022, Defendant stated to one of Plaintiff's friends, T.R., that Plaintiff had "engaged in nonconsensual sexual activity." *Id.* ¶ 32. Three days later, on February 7, a friend of Plaintiff's informed him that negative rumors about him were spreading, and alerted him to an Instagram post by a close female friend of Sue Roe's stating that "Being friends with a sexual assaulter means you are part of the problem[,]" and indicating that she was referring to Plaintiff. *Id.* ¶ 33. As well, another friend alerted him to a post *by Defendant* on Instagram stating that "Being drunk is not an excuse for Sexual Assault." *Id.* ¶ 34. Additionally, another Tulane student told Plaintiff that she had heard from three different individuals that Plaintiff had assaulted a Tulane student. *Id.* ¶ 35.

11

Unbeknownst to Plaintiff at the time, on February 6, 2022, Defendant reported her false accusations against him to Tulane's Case Management and Victim Support Services. *Id.* ¶¶ 45-46.

On the evening of February 8, 2022, Defendant texted Plaintiff, falsely claiming that Plaintiff had engaged in inappropriate sexual behavior. *Id.* ¶ 37. Her text contained the statement, "You are… a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim." *Id.* Plaintiff was shocked by the text as he knew that Defendant's allegations of nonconsensual conduct were false. *Id.* ¶ 38. On February 9, the president of Plaintiff's fraternity told Plaintiff that Defendant had called him claiming that Plaintiff had assaulted her and telling him that she was "going to the school" with her accusations. *Id.* ¶ 39. Plaintiff also learned from friends that Defendant was approaching Plaintiff's female friends and asking them to spread her accusations of sexual misconduct "like wildfire." *Id.* ¶ 40. Defendant texted a screenshot of her message to Plaintiff to other Tulane students, identifying Plaintiff as "rapist." *Id.* ¶ 43. The false accusations against Plaintiff were widely disseminated, reaching students studying in Spain. *Id.* ¶¶ 35-36.

On February 10, 2022, Plaintiff's fraternity president sent a message to the fraternity chat group spreading Defendant's false allegations. *Id.* ¶ 44. The president refused to change or delete his message spreading the false information. *Id.*

On February 11, 2022, Defendant and Sue Roe simultaneously submitted Title IX/Sexual Misconduct Reports against Plaintiff. *Id.* ¶ 47.

When speaking with Tulane's Title IX investigator, Defendant acknowledged speaking to Plaintiff's fraternity president, resulting in Plaintiff getting kicked out of his fraternity. *Id.* ¶ 51. Defendant also bragged to friends that Plaintiff would be banned from campus. *Id.* ¶ 54. On February 18, 2022, Tulane imposed an indefinite campus ban on Plaintiff. *Id.*

Defendant complained to the Title IX investigator that Plaintiff "slept with so many girls," and expressed her desire to have Plaintiff expelled. *Id.* ¶ 53. Defendant further stated that she wanted her sexual misconduct claim to be "attached to [Plaintiff's] name." *Id.* Defendant also asked at least one of Plaintiff's friends about Plaintiff's work plans and expressed her desire that Plaintiff lose "a nice comfy little job that he had all lined up by mommy and daddy," and. *Id.* ¶ 86.

On March 12, 2022, Defendant posted a Tik Tok about Plaintiff—immediately after he started contacting witness to gather information for his defense in the Title IX investigation. *Id.* ¶ 76.

### E. **Plaintiff Returned Home Due to Threats to His Safety**

On February 8, 2022, Plaintiff's friends called his parents and told them it was not safe for Plaintiff to remain on the Tulane campus. *Id.* ¶ 39. On February 10, 2022, Plaintiff's mother flew to Louisiana to bring Plaintiff home. *Id.* ¶ 45. Due to the mental anguish and heightened anxiety Plaintiff was experiencing as a result of the false accusations, Plaintiff returned home to South Carolina. On February 11, 2022, Plaintiff withdrew from Tulane for the semester. *Id.*

### F. **Defendant's Petition for a Temporary Restraining Order**

On March 16, 2022, Defendant filed a Petition for Protection From Abuse, resulting in the immediate issuance of a Temporary Restraining Order ("TRO"), in Louisiana civil court. *Id.* ¶ 87; Miltenberg Decl., Ex. F. The TRO barred Plaintiff from contacting Defendant through third parties and from entering the Tulane campus. Am. Compl. ¶ 87; Miltenberg Decl., Ex. F, TRO, at p. 3. Defendant grounded her Petition in a conversation that Plaintiff had with a witness in the Title IX investigation who voluntarily spoke to Plaintiff by phone. Miltenberg Decl., Ex. D, Am. Compl. ¶ 88; Miltenberg Decl., Ex. F, Petition, at p. 2. She also cited Plaintiff's phone calls to his own friends to discuss the Title IX investigation. *Id.* The Petition falsely alleged that Plaintiff had been harassing, intimidating, and stalking Defendant – when in fact Plaintiff had neither contacted

13

Defendant nor had attempted any such contact since he had first learned of her accusations through mutual friends. Ex. D, Am. Compl. ¶ 87; Ex. F, Petition, at pp. 2-3. Defendant knew that her TRO application was baseless, but filed it in order to prevent Plaintiff from defending himself in the Title IX investigation and to bolster her Title IX report. Ex. D, Am. Compl. ¶ 88. She also pursued the application for the purpose of pursuing a personal vendetta against Plaintiff and to further defame and retaliate against him. *Id.* ¶¶ 111-116. Defendant knew that Tulane would view the TRO as evidence against Plaintiff. *Id.* ¶ 89. Defendant's Petition expressly referenced the Tulane Title IX proceeding. Miltenberg Decl., Ex. F, Petition, at p. 3 ("I have an open Title IX case with Tulane University that is currently being summarized by the investigator.") Though Defendant asserted that Plaintiff "stalked, harmed/threatened to harm" her acquaintances, she also indicated that Plaintiff had no history of violence towards others. Miltenberg Decl., Ex. F, Info. for Service of Process.

Defendant failed to appear at the hearing held on her TRO application. Miltenberg Decl., Ex. D, Am. Compl. ¶ 89. Notably, Plaintiff, who had returned to New Orleans from his home in South Carolina to attend the hearing, saw Defendant at the airport in New Orleans shortly after he had left the hearing. *Id.*

### G. Defendant and Sue Roe's Coordinated Action Against Plaintiff

On January 28, 2022, N.B. and Defendant had a conversation about Sue Roe's negative opinion of Plaintiff. *Id.* ¶ 56. N.B. stated that Defendant expressed a desire to learn more about Ms. Roe's experience with Plaintiff. *Id.* ¶ 57. There is evidence that Defendant and Ms. Roe connected on Instagram on or around January 28, 2022, prior to Defendant's sexual encounters with Plaintiff. *Id.* ¶¶ 21-31, 60-67. On January 29, Defendant asked Plaintiff a cryptic question after seeing Ms. Roe at a party. *Id.* ¶¶ 23-24. Defendant's text to Plaintiff on February 8, 2022 referenced Plaintiff's purported "previous victim." *See id.* ¶ 37.

14

On February 11, 2022, Defendant and Ms. Roe simultaneously submitted false Title IX/Sexual Misconduct reports claiming that Plaintiff had engaged in nonconsensual sexual activities with them. *Id.* ¶ 47. Their false allegations were similar. *Id.* Plaintiff believes that Defendant and Ms. Roe scheduled their interviews to be within one hour of each other on February 16, 2022. *Id.* ¶ 50. Defendant's false statements to the Title IX investigator closely mirrored Ms. Roe's false statements. *Id.* ¶ 51. Defendant told the Title IX investigator that she was aware of Ms. Roe's "situation" but would let Ms. Roe "tell you her story." *Id.*

During the Title IX investigation, Defendant claimed that mutual friends connected her with Ms. Roe on February 8, 2022 and that she learned about Roe's allegations against Plaintiff after she reported her own. *Id.* ¶ 58. When Plaintiff challenged the evidence that Defendant provided to the Title IX investigator concerning the timing of her connection with Ms. Roe, Defendant failed to verify the evidence, instead criticizing Plaintiff's "Self-validated analysis [that] fails to consider any other point of view than Plaintiff's – a white male college student." *Id.* ¶ 59. There is significant evidence—including the contradictory statements of their friends—that Defendant and Sue Roe made false reports to the Title IX investigator about when they first connected in order to cover up their coordinated efforts to defame and injure Plaintiff. *Id.* ¶¶ 55-67.

## H. __Plaintiff Was Substantially Injured By Defendant's Misconduct__

On May 8, 2022, Plaintiff was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate. *Id.* ¶ 90. Defendant strategically exploited and manipulated Tulane's Title IX process to pursue a false report of sexual misconduct, colluded and conspired with Sue Roe to defame and emotionally and financially injure Plaintiff, and deprived Plaintiff of the benefit he was to receive from his contract with Tulane under the Code. *Id.* ¶¶ 91, 148.

Defendant exploited Tulane's Title IX procedures to "harm Plaintiff's reputation, destroy Plaintiff's relationship with his friends and fraternity, and harm his academic career and future career plans." *Id.* ¶ 91. By such action, Defendant deprived Plaintiff of the benefit he was to have received from his relationship with Tulane under the Code. *Id.*

## ARGUMENT

### DEFENDANT'S MOTION TO TRANSFER SHOULD BE DENIED

This case should not be transferred to the Eastern District of Louisiana. The backdrop of Defendant's motion . In contrast, the present action concerns Defendant's false and defamatory statements about Plaintiff, and her coordinated efforts with Sue Roe to defame and injure Plaintiff such that their false accusations would be permanently associated with Plaintiff's name. *See generally* Miltenberg Decl., Ex. D, Am. Compl.

If her Motion is granted, Defendant intends to make a motion to ███████ ██████████████ Defendant's Motion, ████████████ ████ contradict the position that Defendant took in opposing Plaintiff's pseudonym appeal in the Fourth Circuit—that this defamation action between private parties, which does not name Tulane as a defendant and does not implicate Plaintiff's Title IX proceeding is factually distinct from cases in which universities are sued for Title IX violations. Defendant took this position after

---

[2] ████████████████████████████████████████████

[3] Plaintiff in no way concedes that a motion to consolidate will be granted if this case is transferred.

learning that Plaintiff was granted pseudonym status in the Tulane Action. Inherent in Defendant's position was that she did not intend to seek ███████████████████████ ███████████████████████. Defendant's position was adopted by the Fourth Circuit, which denied Plaintiff's appeal. For these reasons, judicial estoppel bars Defendant's Motion.

Even if Defendant's Motion were not barred, transfer is unwarranted under 28 U.S.C. § 1404(a), because Defendant has not demonstrated that the relevant factors support a transfer: 1) Plaintiff's choice of venue—Defendant's place of residence—is accorded significant deference; 2) Louisiana is not a more convenient forum; and 3) and the interest of justice will not be served by destroying Plaintiff's court-ordered pseudonym status in the Tulane action.

## A. Defendant's Motion Is Barred By the Doctrine of Judicial Estoppel

The doctrine of judicial estoppel bars Defendant's motion because Defendant's request to transfer this case is inconsistent with the position she has taken before the Fourth Circuit. *See* discussion *supra*, Relevant Background, at Pt. I. The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from engaging in "intentional self-contradiction" as a means of gaining an unfair advantage in litigation by pursuing a theory that is incompatible with its prior position. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749–751 (2001). Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 749 (citation omitted); *Wells Fargo Bank, N.A. v. Highland Constr. Mgmt. Servs., L.P.*, 807 F. App'x 246, 250 n. 2 (4th Cir. 2020). "Judicial estoppel applies when: (1) the party to be estopped ... advanc[es] an assertion that is inconsistent with a position taken during previous litigation; (2) the position [is] one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Oudeh v. Goshen Med. Ctr., Inc.*, No. 5:22-CV-193-D, 2022 WL 18028281, at *6 (E.D.N.C. Dec.

17

29, 2022) (Dever, J.) (citation omitted), *aff'd*, No. 23-1207, 2023 WL 6058484 (4th Cir. Sept. 18, 2023). Notwithstanding the use of the terms "previous litigation" and "first proceeding" in this language, judicial estoppel also applies to positions taken by a party in an earlier phase of a single proceeding that are inconsistent with a position it takes during a later phase thereof. *See Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000); *Fellores v. Winter*, No. CIV.A. 2:06CV551, 2007 WL 473727, at *2 (E.D. Va. Feb. 8, 2007) (judicial estoppel barred transfer of action to another venue). All four factors are met here and, accordingly, Defendant's motion to transfer should be denied.

   ***First***, Defendant's position for purposes of the present Motion—that this action arises out of the same set of operative facts as the Tulane action ███████████████████ ███████████████████—is clearly inconsistent with her position in the Fourth Circuit. *See* Moving Br. at 1-2, 7, 11, 15-16.[4] On appeal, Defendant asserted that this action—a defamation case against a private person—was distinct from a Title IX action against a university because Plaintiff "did not sue his university, and he is not challenging the result of the…disciplinary proceeding" in this action. Miltenberg Decl., Ex. B, Appellee Resp. Br. at 13. Defendant also asserted that "the individual facts of this case" concern her "false statements to Tulane students, investigators, and others." *Id.* at 13, 41. Defendant further asserted that a Title IX action against a university involves the plaintiff's challenge to the "university's administration of its confidential disciplinary process," and could serve as a "final 'appeal' of the university's actions," a consideration that "do[es] not apply here." *Id.* at 45-46. At oral argument, after learning that Plaintiff had been granted pseudonym status in the Tulane action, Defendant continued to distinguish    this    action    from    a    university    case.    *See* https://www.ca4.uscourts.gov/OAarchive/mp3/23-1058-20230919.mp3 (audio transcript of oral

---

[4] Notably, Defendant's brief does not address ███████████████████ *See* Miltenberg Decl., Ex. G.

argument at 30:36-37:39). Implicit in Defendant's position on appeal is that this action is ***not*** related to an action against Tulane such that Defendant could, or would, ██████████████ ████████████████████████ *See, e.g.*, *Martineau v. Weir*, 934 F.3d 385, 397 (4th Cir. 2019) (on remand district court should consider "implicit" position taken by plaintiff in a bankruptcy when deciding whether judicial estoppel is warranted).

***Second***, Defendant's position is grounded in factual distinctions between the cases: the ████████████████████████████████████████████████████████████████ against Plaintiff versus Defendant's false statements about Plaintiff to Tulane students, on social media and to specific Tulane administrators.

***Third***, the Fourth Circuit adopted Defendant's position on appeal, rejecting any similarity between this action and cases brought against universities and finding "[t]his case is no different than a garden variety defamation case." Miltenberg Decl., Ex. B, Oct. 26, 2023 Opinion, 16-18, 21-22.

***Fourth***, there is evidence that Defendant acted intentionally. Defendant had notice of the Tulane action as early as May 16, 2023—over four months prior to oral argument on the pseudonym appeal. Appeal Dkt. #40. It is difficult to fathom that Defendant would not have determined during the four months between mid-May 2023 and oral argument before the Fourth Circuit in mid-September whether she would seek ████████████████████████████ ███████████████ Any mention of a possible ██████████████████ during oral argument would have risked the possibility that the Fourth Circuit would apply the university cases Plaintiff highlighted and that Defendant argued were distinguishable. That Defendant waited to mention ████████████████████████████ suggests that Defendant

19

changed her position to gain a strategic advantage—█████████████████████████

████████████████████████████████████████████.

This is a case which warrants the application of the doctrine of judicial estoppel.

Defendant's current position that this action and the Tulane action are ████████████

███████████████████████ as adopted by the Fourth Circuit—that the cases are

factually distinct. In addition, █████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████.

## B. Defendant Has Not Met Her Burden of Demonstrating That A Transfer Is Warranted

Assuming *arguendo* that Defendant is not estopped from making this Motion, the Court

must nevertheless deny it as Defendant has failed to meet her burden of showing that a transfer

under 28 U.S.C. § 1404(a) is proper. Defendant failed to demonstrate how, the following factors,

assessed together, justify a transfer from a venue properly selected by Plaintiff: "(1) the weight

accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of

the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension

Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

### 1. Plaintiff's Choice of this Venue Should Be Accorded Substantial Weight

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in

determining whether transfer is appropriate.'" *Id.* at 444 (holding that the district court did not

abuse its discretion in refusing to transfer venue) (citation omitted). When Plaintiff filed this action

Jane Doe was enrolled at Tulane but a resident of North Carolina, the state to which she returned after

graduating in May 2023. ECF No. 1, ¶ 9; ECF No. 29-2, Jane Doe Decl. ¶¶ 5-6; Miltenberg Decl. ¶ 7,

20

Ex. E (Defendant served in Cary North Carolina). Defendant has been represented by North Carolina counsel since February 2023. ECF No. 15, Notice of Appearance.

Here, Plaintiff's choice of forum is also entitled to deference because he could not have obtained personal jurisdiction over Defendant in his home jurisdiction of South Carolina. *See Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, No. 319CV00508FDWDSC, 2020 WL 90663, at \*3 (W.D.N.C. Jan. 7, 2020) (foreign plaintiff's choice of venue still entitled to deference when the plaintiff cannot file suit in its home jurisdiction "due to problems obtaining personal jurisdiction over a defendant").

Defendant's argument that because Plaintiff "filed in a foreign forum and his claims bear no relation to this forum . . . his choice of forum warrants little deference" is unavailing. *See* Moving Br. at 11. *Speed Trac Techs. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008), which is cited in support of this argument, is inapposite. In *Speed Trac*, the plaintiff corporation was domiciled within the Western District of North Carolina, but filed in the Middle District and ***the defendant corporation was domiciled outside the Middle District of North Carolina***. In contrast, Defendant was a resident of this District at the time this action was filed.

Accordingly, Plaintiff's choice of this District as the venue for this action is "entitled to substantial weight" in the Court's adjudication of this transfer motion.

> **2. The Factors of Party Convenience, Witness Convenience and Access Militate Strongly Against the Proposed Transfer.**

Neither Plaintiff nor Defendant live in this District. Plaintiff resides in South Carolina. Defendant's state of residence was in North Carolina until after she graduated from Tulane in May 2023. ECF No. 29-2, [Jane Doe] Decl., ¶¶ 4-6. At some, unspecified point in time Defendant moved to Colorado. *Id.* ¶ 6. However, her parents maintain a home in this District. *Id.* ¶ 6; Miltenberg Decl.,

Ex. E. Based on these facts, Defendant will not be inconvenienced by a trial of this case in North Carolina.[5]

An analysis of the convenience and accessibility of this District with respect to potential non-party witnesses, compared to that of the Eastern District of Louisiana, yields similar results. In the Pseudonym Order denying Plaintiff's motion to proceed anonymously in this action, the Court found that, in this action, "plaintiff is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation." Miltenberg Decl., Ex. A, at 7. Defendant took the same position in Plaintiff's unsuccessful appeal from that Order. *See* discussion *supra* at Point A. With this in mind, the non-party witnesses likely to be deposed and called in connection with Plaintiff's claims here include persons to whom Defendant published false statements about Plaintiff and with whom she conspired, including (a) Sue Roe, who lives in New York; (b) other Tulane students identified by their initials in the Amended Complaint, seven of whom live in New York; (c) Jacqueline Barber, who resides in Louisiana; and (d) Chris Zacharda who lives in Chicago. *See* Relevant Background, Pt. III. Plaintiff and Defendant will have to travel to different jurisdictions to take the depositions of all of these witnesses. Moreover, Defendant has provided no evidence that out of state witnesses would prefer to travel to Louisiana as opposed to North Carolina—which is closer to Chicago and New York—to testify at trial. Nor has any Tulane administrator identified by Ms. Woodley submitted an affidavit stating they will not testify in North Carolina. Defendant has also failed to demonstrate the materiality of the testimony that may be given by the former Tulane students and Tulane administrators identified

---

[5] While Defendant asserts that Plaintiff will be "inconvenienced" by trying the case in this forum, he has never made such an assertion. *See* Moving Br. at 14. In addition, the cases relied on by Defendant regarding inconvenience to the parties are inapposite. In *Hubbard v. Eitan Group N. America*, 2023 WL 2959991, at *7 (E.D.N.C. Apr. 14, 2023), the court lacked personal jurisdiction over the defendants, all the defendants resided in the Central District of California to which the case was transferred, and all of defendants' documents were maintained in California. In *In re Willingham Patent Litig.*, 322 F. Supp. 1019, 1020 (M.D.P.L. 1971), the cases that were transferred in a multi-district patent litigation were "virtually identical."

22

in Defendant's declaration and the Woodley Affidavit, stating merely that "at least some" of them will be "potential witnesses." ECF No. 29-2, ¶ 15. *See Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*, No. 5:20-CV-46-M, 2020 WL 4913280, at *6 (E.D.N.C. Aug. 20, 2020) (party seeking transfer needs to demonstrate that witnesses are willing to travel to foreign jurisdiction and the materiality of their proposed testimony); *Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*, No. 1:19CV486, 2020 WL 2086188, at *19 (M.D.N.C. Apr. 30, 2020) (motion to transfer denied where defendants did not offer any specific example of a witness who was unwilling to travel to North Carolina).

*Plainly, the factors of convenience and accessibility weigh against transfer*. Defendant's analysis yields a different result because, jumping the gun, she conceptually has consolidated this action with the Tulane action. *See* Moving Br. at 13-14. Yet she makes no showing that the testimony of each of the Tulane administrators identified in the Woodley Affidavit (other than Zacharda and Barber who are named in the Amended Complaint) can provide relevant testimony in this action. For example, Avery Pardee—who is not referenced in the Amended Complaint—

███████████████████████████████████████████████████████████

████████████████████████████████. Judicial estoppel once again bars Defendant from arguing that witnesses like Pardee should be considered in the transfer analysis. Defendant benefitted from the Fourth Circuit's determination, based on its acceptance of her arguments, that this case does not implicate a review of Tulane's Title IX proceeding. Any argument she now offers that current and former Tulane "employees and affiliates" who have knowledge about Tulane's Title IX proceeding against Plaintiff – but no **firsthand** knowledge of Defendant's statements to Tulane that are the subject of this action—should be considered by the Court in evaluating convenience and access is clearly inconsistent with her previous position.

23

### 3.   The Interest of Justice Will Not Be Served By Transferring This Action

Although many factors may be considered by the Court in assessing whether the "interest of justice" would be served by Defendant's proposed § 1404(a) transfer, Plaintiff submits that one factor should predominate the Court's assessment – that a transfer, ██████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

a.   The ████████████████████████████████████████████████████
   ████████████

   ██████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████████

   ██████████████████████████████████████████

b.   **Louisiana's Relationship to this Action Is Strong But Not Sufficiently So To Overcome Other Factors Weighing Against the Transfer.**

Plaintiff acknowledges that his live interactions with Defendant and Sue Roe took place in Louisiana. Louisiana's primary interest with respect to this action relates to the fact that certain underlying events took place at Tulane, a prominent university within the state. ██████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Louisiana's interest in the resolution of private disputes between the parties, ██████████████████████████████████████ .

24

Defendant's reliance on choice-of-law issues, and Plaintiff's claim of abuse of process in this action, to argue that Louisiana's interest in being the forum for this action "is much greater [than that of] North Carolina" is misplaced. *See* Moving Br. at 16-17. Plaintiff's abuse of process claim focuses on Defendant's use of a temporary restraining order to prevent him from questioning witnesses and as evidence in the Title IX action; it does not turn on legal issues or procedures that are particular to Louisiana. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 87-88, 111-123.

Moreover, Plaintiff disputes Defendant's contention that all of the claims in this action "will be decided under Louisiana law regardless of where they are tried." *Id.* at 16. Defendant suggests that this Court must apply Louisiana law to all of Plaintiff's claims without first determining whether a conflict of law exists between that law, and North Carolina law, respecting those claims. The suggestion is inaccurate. Where no conflict of law exists concerning a specific legal issue or claim, this Court may apply North Carolina law to promote efficient litigation. *See, e.g., Info. Control Sys., Inc. v. Avesta Techs., Inc.*, No. 1:99CV217-T, 2000 WL 1409862, at *3 (W.D.N.C. Sept. 6, 2000).[6]

Plaintiff recognizes that Louisiana law differs substantially from that of North Carolina with respect to Plaintiff's claim for tortious interference with contract.[7] The parties do not dispute that, under Louisiana law, a tortious interference claim can only be asserted against a corporate officer. Plaintiff is clearly not an officer of Tulane. In the event that the Court determines that Louisiana law applies to Plaintiff's tortious interference claim, the Court would not need extensive experience to apply such law, as the claim would be dismissed.

---

[6] This issue is further addressed in Plaintiff's opposition to Defendant's motion to dismiss.

[7] Plaintiff's opposition to Defendant's motion to dismiss addresses the application of South Carolina law to his tortious interference claim.

Defendant has failed to make any showing that Louisiana law differs from North Carolina law with respect to any of Plaintiff's four remaining claims. *See* Moving Br. at 16-19. In contrast, Plaintiff has demonstrated in his opposition to Defendant's motion to dismiss that this Court can adjudicate Plaintiff's claims for abuse of process and civil conspiracy under North Carolina law because it is identical to Louisiana law with respect to those two torts.[8]

### c.   A Comparison of Docket Conditions Favors Denial of the Proposed Transfer

Defendant argues that the docket conditions of the Eastern District of Louisiana are substantially better-suited to handle an additional case than those of this District. *See* Moving Br. at 19-20. She contends that this District had "far more filings per judge" during the period from April 1, 2022 and March 31, 2023 than did the Eastern District of Louisiana.[9]

***Other relevant metrics indicate that the Eastern District of Louisiana is currently experiencing far more docket congestion than this District***. For example, the median time from filing to disposition for civil cases in this District for the year ending on June 30, 2023 is 9.9 months. *See* Miltenberg Decl., Ex. H. (U.S. District Court – Judicial Caseload Profile for E.D. North Carolina).[10] In comparison, this figure for the Eastern District of Louisiana is ***68.9 months***. Miltenberg Decl., Ex. I, (U.S. District Court – Judicial Caseload Profile for E.D. Louisiana).[11] The percentage of civil cases in this District that were still pending three years after having been filed, for the year ending on June 30, 2023, is 6.3%. *See* Miltenberg Decl., Ex. H. The same metric for the Eastern District of Louisiana is ***72.6%***. *See* Miltenberg Decl., Ex. I. The difference in these

---

[8] Defendant did not move to dismiss Plaintiff's claims for defamation and intentional infliction of emotional distress.
[9] For this data, Defendant cites to Federal Judicial Caseload Statistics, Table X-1A, U.S. District Courts—Weighted and Unweighted Filings Per Authorized Judgeship During the 12-Month Period Ending March 31, 2023, available at https://www.uscourts.gov/statistics/table/x-1a/federal-judicial-caseload-statistics/2023/03/31. *See* Moving Br. at 20.
[10] Available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last viewed Jan. 12, 2024).
[11] Available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last viewed Jan. 12, 2024).

26

statistics may be explained in part by the fact that the Eastern District of Louisiana has more vacant judgeships than this District. Whereas the "Vacant Judgeship Months" during the year ending on June 30, 2023 for Eastern District of Louisiana numbered 17.9, this District experienced 0.0 such months during the same year. Compare Miltenberg Decl., Ex. H *with* Ex. I.

Defendant makes much of the fact that this District has exclusive jurisdiction and venue over cases relating to *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023). *See* Moving Br., at 20 (citing the Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804(b) and the Joint Status Report in the case). However, as the Court is no doubt aware, the cases filed under that Act are quite different from complex civil litigations proceeding on different legal theories. Moreover, there exist streamlined procedures for such cases to be settled. The differences between standard civil actions filed in the District from cases filed here relating to the *Camp Lejeune Water Litig.* matter undoubtedly explain, in part, the dramatic differences in the "filing to disposition" and "3 years old" statistics referenced above. Individual *Camp Lejeune* cases are far less complex, and are much more quickly resolved through settlement, than are standard civil actions filed in this District.

### d.  The Preference for Efficiency and Consistency Militate Toward a Transfer ███ ███████████  ████████

Plaintiff recognizes that some efficiencies would be achieved by the transfer ███

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

Plaintiff disputes Defendant's contention that "the resolution of John Doe defamation claim against Jane Doe rises and falls along the same lines as his Title IX case against Tulane." Moving Br., at 21. The Tulane Action does not turn ██████████████████

27

Additionally, Defendant has moved to dismiss the only claim in this action that concerns Plaintiff's contract with Tulane, the tortious interference claim, and Plaintiff concedes that if Louisiana law applies to that claim it must be dismissed. Accordingly, ███████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████, should not be accorded significant weight in the Court's decision concerning transfer of venue.

Although Defendant has argued that efficiency would be served by the proposed transfer, (*See* Moving Br., at 15-16), it is not clear how such efficiency would be achieved █████ ██████████████████ Defendant is apparently concerned with third party witnesses being required to sit for deposition twice. *See id.* at 16. However, an assessment of this concern can only be measured accurately once (and if) Defendant provides the Court with information concerning the willingness of the non-party witness or witnesses residing outside Louisiana and North Carolina to attend deposition in either Louisiana or North Carolina or both. *Cf. NextLOGiK, Inc.,* 2020 WL 4913280, at *6; *Rhino Svcs.*, 2020 WL 2086188, at *19.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion, along with such other and further relief as the Court deems just and proper.

Dated: January 17, 2024

Respectfully Submitted,

By:    /s/ *Andrew T. Miltenberg*

28

Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com
sbernstein@nmllplaw.com

By: /s/ *Robert C. Ekstrand*
Robert C. Ekstrand, Esq.
EKSTRAND AND EKSTRAND, LLP
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

*Attorneys for Plaintiff* John Doe

29

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

Original Filed at Docket No. 38,

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**NESENOFF & MILTENBERG, LLP**
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

RELEVANT BACKGROUND ......................................................................................... 3

   I.    Procedural History ................................................................................................ 3

   II.   The Parties' States of Residence ........................................................................ 6

   III.  Potential Witnesses In This Lawsuit ................................................................. 7

   IV.  The Amended Complaint's Allegations .............................................................. 8

      A. Plaintiff's Background ....................................................................................... 8

      B. Plaintiff's Relationship With Sue Roe ............................................................. 8

      C. Plaintiff's Encounters with the Defendant ...................................................... 9

      D. Defendant's Retaliatory Conduct ................................................................... 11

      E. Plaintiff Returned Home Due to Threats to His Safety .................................. 13

      F. Defendant's Petition for a Temporary Restraining Order .............................. 13

      G. Defendant and Sue Roe's Coordinated Action Against Plaintiff .................... 14

      H. Plaintiff Was Substantially Injured By Defendant's Misconduct .................. 15

ARGUMENT ..................................................................................................................... 16

      A. Defendant's Motion Is Barred By the Doctrine of Judicial Estoppel .............. 17

      B. Defendant Has Not Met Her Burden of Demonstrating That A Transfer Is Warranted . 20

         1. Plaintiff's Choice of this Venue Should Be Accorded Substantial Weight ............. 20

         2. The Factors of Party Convenience, Witness Convenience and Access Militate Strongly Against the Proposed Transfer. ................................................. 21

         3. The Interest of Justice Will Not Be Served By Transferring This Action ................ 24

            a. The Likely Exposure of Plaintiff's Identity Would Be Unjust Under the Circumstances. ........................................................................................... 24

            b. Louisiana's Relationship to this Action Is Strong But Not Sufficiently So To Overcome Other Factors Weighing Against the Transfer. ................................. 24

            c. A Comparison of Docket Conditions Favors Denial of the Proposed Transfer ... 26

            d. The Preference for Efficiency and Consistency Militate Toward a Transfer But Do Not Overcome the Fundamental Unfairness of Exposing Plaintiff's Identity in the Tulane Action. ................................................................................. 27

CONCLUSION ................................................................................................................. 28

i

## TABLE OF AUTHORITIES

**Cases**

*Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*,
   No. 5:20-CV-46-M, 2020 WL 4913280 (E.D.N.C. Aug. 20, 2020)...................................... 23, 28

*Fellores v. Winter*,
   No. CIV.A. 2:06CV551, 2007 WL 473727 (E.D. Va. Feb. 8, 2007) ........................................ 18

*Hubbard v. Eitan Group N. America*,
   2023 WL 2959991 (E.D.N.C. Apr. 14, 2023).......................................................................... 22

*In re Camp Lejeune Water Litig.*,
   No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023)............................................................................ 27

*In re Willingham Patent Litig.*,
   322 F. Supp. 1019 (M.D.P.L. 1971) ...................................................................................... 22

*Info. Control Sys., Inc. v. Avesta Techs., Inc.*,
   No. 1:99CV217-T, 2000 WL 1409862 (W.D.N.C. Sept. 6, 2000)........................................... 25

*James v. Jacobson*,
   6 F.3d 233 (4th Cir. 1993) ..................................................................................................... 3

*Martineau v. Weir*,
   934 F.3d 385 (4th Cir. 2019) ................................................................................................ 19

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)............................................................................................................. 17

*Oudeh v. Goshen Med. Ctr., Inc.*,
   No. 5:22-CV-193-D, 2022 WL 18028281 (E.D.N.C. Dec. 29, 2022)...................................... 18

*Pegram v. Herdrich*,
   530 U.S. 211 n. 8 (2000)....................................................................................................... 18

*Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*,
   No. 319CV00508FDWDSC, 2020 WL 90663 (W.D.N.C. Jan. 7, 2020) ................................ 21

*Speed Trac Techs. v. Estes Express Lines, Inc.*,
   567 F. Supp. 2d 799 (M.D.N.C. 2008) .................................................................................. 21

*Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*,
   No. 1:19CV486, 2020 WL 2086188 (M.D.N.C. Apr. 30, 2020)........................................ 23, 28

*Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*,
   791 F.3d 436 (4th Cir. 2015) ................................................................................................ 20

*Wells Fargo Bank, N.A. v. Highland Constr. Mgmt. Servs., L.P.*,
   807 F. App'x 246 n. 2 (4th Cir. 2020) ................................................................................... 17

**Rules**

28 U.S.C. § 1332................................................................................................................... 3
28 U.S.C. § 1404(a) ...................................................................................................... 2, 17, 20

**INTRODUCTION**

In this diversity action, Plaintiff John Doe    ("Plaintiff" or "John Doe    asserts that, in 2022, Defendant Jane Doe ("Defendant" or "Jane Doe with whom he had consensual, sexual experiences while both were undergraduates at Tulane University ("Tulane")—became angry after she learned he had sex with another student and launched a campaign to defame, humiliate, harass and punish him. The Amended Complaint filed by Plaintiff on November 9, 2023 (ECF No. 23) (the "Amended Complaint") alleges that, *inter alia*, beginning in February 2022 Defendant spread false and defamatory sexual assault accusations against Plaintiff to fellow Tulane students, Plaintiff's fraternity, on social media, in a Title IX report and subsequent investigation and in Louisiana civil court. Defendant acted in concert with Tulane Student Sue Roe to defame Plaintiff and inflict maximum emotional, economic and reputational harm on Plaintiff, with the intention of destroying Plaintiff's future and career prospects such that her false accusations were permanently associated with his name.

On January 5, 2023, the Court denied Plaintiff's *ex parte* motion to proceed anonymously in this action on the ground that this action is entirely distinguishable from cases in which universities are sued for mishandling the investigation of Title IX allegations. After Plaintiff appealed the Court's order Defendant appeared—using her own name—in this action and for purposes of opposing the appeal.

On April 24, 2023, Plaintiff filed a Title IX lawsuit against Tulane in which the Court granted him pseudonym protection. By mid-May 2023, Defendant was aware of the lawsuit and pseudonym order and elected to proceed in her strategy to oppose Plaintiff's pseudonym appeal on the ground that this defamation action is readily distinguishable from Title IX cases brought against universities. On September 19, 2023, at oral argument, Defendant moved forward with this argument. In October 2023, the Fourth Circuit adopted Defendant's position, finding that this case

1

is a garden variety defamation action that is distinguishable from university cases. Plaintiff's appeal was denied and Plaintiff was required to proceed in his own name.

After Plaintiff filed the Amended Complaint, Defendant suddenly sought to transfer this action to the Eastern District of Louisiana and to later have it consolidated—for some or all purposes—with the Tulane action. This position is clearly inconsistent with Defendant's position to date, which sought to distinguish the two actions and maintain them on separate tracks so that the pseudonym would be lost. Defendant's prior arguments that this case does not implicate Tulane's Title IX proceeding suggested a belief that consolidation of any lawsuit concerning the Title IX proceeding would be unwarranted if not improper.

After learning that Plaintiff had obtained the right to proceed pseudonymously in the Tulane case, Defendant could have withdrawn her arguments that this action does not overlap with any review of Tulane's Title IX proceeding. However, she chose not to. For this reason, ***judicial estoppel bars this Motion***. Each of the required circumstances for application of that doctrine is present here.

Moreover, even if Defendant is not judicially estopped from seeking a transfer of this action to the Eastern District of Louisiana, transfer under 28 U.S.C. § 1404(a) is unwarranted because: 1) Plaintiff's choice of this District should be given deference; 2) this District is a more practical forum for this litigation; 3) the majority of witnesses live in New York (according to Defendant); and 4) a transfer cannot be said to be in the "interest of justice" because it would effectively nullify the pseudonym order in the Tulane action.

For these reasons, and those stated below, the Court should deny Defendant's Motion.

## RELEVANT BACKGROUND

### I.       Procedural History

On December 8, 2022, Plaintiff, using the pseudonym "John Doe," filed this action against Defendant referencing her as "Jane Doe," asserting state law claims, basing subject matter jurisdiction of this Court on diversity pursuant to the terms of 28 U.S.C. § 1332. ECF No. 1. Concurrent therewith, Plaintiff filed an *ex parte* motion, with a supporting memorandum of law, for leave to proceed under a pseudonym. ECF Nos. 5-6. In his supporting brief, Plaintiff cited 13 federal cases in which courts permitted plaintiffs to proceed anonymously in actions naming universities as defendants. ECF No. 6.

On January 5, 2023, the Court issued an order denying Plaintiff's *ex parte* motion and ordered that Plaintiff either (1) file an amended complaint in his real name; or (2) file a notice of dismissal. ECF No. 8 (the "Pseudonym Order"). In the Pseudonym Order, the Court applied the five factors set forth in *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Declaration of Andrew T. Miltenberg, dated January 17, 2024 ("Miltenberg Decl."), Ex. A, Pseudonym Order, at 2. The Court also considered its "independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Id.* at 2-3 In the Pseudonym Order, the Court addressed the numerous university cases Plaintiff cited in support of his motion, holding that Plaintiff was wrong to argue that the university cases were similar to this action—a defamation case between private individuals. *Id.* at 7. The Court further held that "[a]lthough courts sometimes allow those accused of sexual assault to sue schools or universities pseudonymously when attacking the findings of a university Title IX investigation, the considerations in those cases do not apply here." *Id.* at 7. It explained, "unlike in those cases,

3

Plaintiff is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation[,]" and that "Tulane is not a defendant." *Id.*

Plaintiff appealed the Pseudonym Order, and the Court stayed the portion of the Order which required Plaintiff to proceed in his own name pending the outcome of the appeal. *See* ECF Nos. 9-12, 14. On February 24, 2023, Defendant's counsel filed a Notice of Appearance and obtained an extension of time for responding to the Complaint until after Plaintiff's appeal was decided. *See* ECF No. 20.

On the same day, Defendant's counsel filed Notices of Appearance in the Fourth Circuit which identified Defendant by name. *See* Dkt. ##13, 15 in *John Doe v. Jane Doe*, Appeal No. 23-1058 (4th Cir.) (the "Appeal Dkt."). On March 29, 2023, as Defendant-Appellee, Defendant filed a response brief in Plaintiff's appeal, arguing that the Court had "properly concluded that Mr. Doe was not entitled to the rare dispensation of being allowed to litigate under a pseudonym." Miltenberg Decl., Ex. B, Appellee Resp. Br., at 12. Central to Defendant's opposition was the argument that Plaintiff "is not challenging the university disciplinary process in this case—he did not sue Tulane[.]" *See id.* at 21. Defendant opposed Plaintiff's appeal from the Pseudonym Order on the ground that Plaintiff's reliance on cases in which plaintiffs sued universities to "challenge the university disciplinary process and sought injunctive relief to expunge [their] disciplinary record[s]" was unfounded because Plaintiff's action was "not an extension of a confidential university disciplinary proceeding" but rather "an effort to recover money damages from Jane Doe for statements she made[.]" *Id.* at 22.

On May 16, 2023, Plaintiff's counsel filed a notice in the Fourth Circuit that Plaintiff was granted pseudonym protection in his action against Tulane (the "Tulane Order"). Appeal Dkt. #40.

4

This submission informed Defendant's counsel that Plaintiff was proceeding by pseudonym in the Eastern District of Louisiana.

On September 19, 2023, the Fourth Circuit held oral argument on Plaintiff's appeal. Defendant's counsel reiterated the distinction between this action and university cases, repeatedly referring to this case as a defamation action, which is an inherently public tort, as opposed to a case in which a university has been sued.[1]

On October 26, 2023, the Fourth Circuit denied Plaintiff's appeal, holding that the Court (1) "did not abuse its discretion because it did not rely on incorrect factual or legal premises," in denying Plaintiff's motion for use of a pseudonym, and (2) "conducted a thorough, case specific analysis when it exercised its discretion." Miltenberg Decl., Ex. C, Opinion, at 19-20. The Fourth Circuit rejected Plaintiff's "central argument on appeal[,]" namely that the case "center[s] around a confidential Title IX proceeding" and is not a "garden variety defamation case[.]" *Id.* at 21. The Circuit agreed with this Court's determination that critical to the denial of Plaintiff's pseudonym motion was that (1) the cases Plaintiff relied on were distinguishable because they involved claims against universities challenging the findings of Title IX investigations; (2) the case Plaintiff filed in the district court omitted a challenge to Tulane's actions vis-à-vis Plaintiff including its Title IX investigation; and (3) Plaintiff "is only suing a private individual for defamation and he only seeks declaratory relief and money damages against Appellee." *Id.* at 21. The Circuit explained, "[t]his case is no different than a garden variety defamation case, and it does not present the exceptional circumstances necessary for Appellant to proceed by pseudonym." *Id.* at 21-22.

The Circuit's Opinion and Judgment in the appeal were docketed in the district court on October 26, 2023. ECF Nos. 21-22. Plaintiff filed an Amended Complaint on November 9, 2023

---

[1] *See* https://www.ca4.uscourts.gov/OAarchive/mp3/23-1058-20230919.mp3 (audio transcript of oral argument on appeal, September 19, 2023) (counsel for Defendant makes the arguments at 30:36-37:39).

using his name, and that of Defendant, in the caption of the action and the entire pleading. Miltenberg Decl., Ex. D, Am. Compl., (ECF No. 23). The Amended Complaint asserts claims for: 1) defamation (*Id.* ¶¶ 92-109); 2) abuse of process (*Id.* ¶¶ 110-123); 3) tortious interference with contract (*Id.* ¶¶ 124-135); 4) intentional infliction of emotional distress (*Id.* ¶¶ 136-146); and 5) civil conspiracy (*Id.* ¶¶ 147-153). Plaintiff seeks a declaration that Defendant defamed Plaintiff and an award of damages against Defendant, including compensatory and punitive damages. *See id.* Prayer for Relief.

On December 15, 2023, Defendant filed a partial motion to dismiss, seeking to dismiss Plaintiff's claims for (1) abuse of process, (2) tortious interference with contract, and (3) civil conspiracy. ECF Nos. 27-28. Defendant also filed the instant motion, seeking to have the venue for the action transferred to the Eastern District of Louisiana. ECF Nos. 29-33.

## II.    The Parties' States of Residence

Plaintiff is a resident of South Carolina. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 6, 45. At the time the action was filed, Defendant was a resident of North Carolina. *Id.* ¶ 9. *See* ECF Nos. 1, 29-2.

In Defendant's declaration in support of her motion to transfer, she states that she currently "resides" in the state of Colorado, but does not state when she became a resident of that state. *See* ECF No. 29-2, ¶¶ 1, 6. She went to high school in North Carolina and periodically "returned home" to North Carolina while attending Tulane. *Id.* ¶ 5. Defendant graduated from Tulane in May 2023, about five months after this action was filed. *Id.* ¶ 6. After graduation she returned home to North Carolina. *Id.* A FedEx addressed to Defendant, containing the Complaint and service waivers in this action, were accepted at the Defendant's North Carolina residence on January 30, 2023. Miltenberg Decl., ¶ 7, Ex. E.

### III.    Potential Witnesses In This Lawsuit

The Amended Complaint identifies two Tulane administrators to whom Defendant made or potentially made false and defamatory statements about Plaintiff: 1) Christopher Zacharda and 2) Title IX investigator Jacqueline Barber. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 46, 48, 50. Dr. Zacharda resides in Chicago. ECF No. 29-1, Woodley Aff. ¶ 7; Miltenberg Decl., ¶ 8. One witness identified in the Affidavit of Erica Woodley, Avery Pardee, reviewed Plaintiff's appeal, and could only determine whether a substantial procedural error was made by Tulane during the investigation. ECF No. 30-1, Tulane Compl. ¶¶ 438-447; ECF No. 29-1, ¶ 7. Defendant has not specified what material information can be provided by Ms. Pardee. ECF No. 29-1. Nor has Defendant specified what material information can be provided by Ms. Woodley, Ms. Cofrancesco, Ms. Broussard or Dr. Porter. *Id.* All that is stated by Ms. Woodley is that the persons identified in her affidavit had "knowledge of" Jane Doe Title IX complaint. ECF No. 29-1, ¶ 7. Ms. Woodley, herself, only says that she "became familiar" with Jane Doe in 2022. There is no evidence that any person identified by Ms. Woodley would refuse to testify at a trial in North Carolina. Defendant identified two former classmates who live, or may live, in Louisiana. ECF No. 29-2, Jane Doe Aff., ¶¶ 10-12.

Defendant has identified eight (8) potential non-party witnesses that live in New York, ***including Sue Roe***. ECF No. 29-2, Jane Doe Aff. ¶¶ 8-9. Two of her former classmates live in Colorado. *Id.* ¶ 11. Defendant asserts that "at least some of the students identified" in her Title IX report and "some of the Tulane administrators" identified in the Woodley Affidavit will be "potential witnesses." *Id.* ¶ 15. There is no evidence that any witnesses identified by Defendant would refuse to testify at a trial held in North Carolina.

IV.    **The Amended Complaint's Allegations**

A.    **Plaintiff's Background**

Plaintiff enrolled in Tulane in mid-2018 and commenced his studies in Finance, Management and Psychology in August of that year, with the intention of pursuing an M.B.A. upon his expected graduation in 2022. Miltenberg Decl., Ex. D, Am. Compl. ¶ 11. Plaintiff was an exemplary student and member of the community during his time at Tulane. *See id.* ¶ 12. He served as Co-President of Tulane's section of a national service organization for two years and served as the treasurer of the Food Recovery Network, which assists individuals at homeless shelters. *Id.* On track to graduate with *cum laude* honors, Plaintiff was a Merit Scholarship recipient and a tutor in Tulane's tutoring center. *Id.*

When Plaintiff enrolled in Tulane, he understood that Tulane was offering him a fair and equitable educational experience in which he would be protected from actions by other students deemed "Prohibited Conduct" under the Tulane University Code of Student Conduct (the "Code"). *Id.* ¶ 13. Under the Code the following are listed as "Prohibited Conduct": (1) the "[f]urnishing [of] false information to the University or to a University official", and (2) "harassment or intimidation." *Id.*

B.    **Plaintiff's Relationship With Sue Roe**

Plaintiff met Sue Roe in September 2019, just over two years prior to Plaintiff meeting Defendant. *Id.* ¶¶ 14, 19. Plaintiff and Sue Roe engaged in a casual sexual relationship from September 2019 to December 2019, and later continued to engage in consensual sexual activity with each other on an occasional basis during the period January 2020 through August 2021. *Id.* ¶¶ 14-18. Ms. Roe's statements to Plaintiff, statements to others that Plaintiff later learned about, and actions when she was in Plaintiff's presence, indicated that she was interested in a serious relationship with Plaintiff, even though Plaintiff had informed her that he did not have any such

8

interest. *Id.* ¶ 14. After Plaintiff told Ms. Roe that he did not want to date her, Ms. Roe began telling people that she "hated" Plaintiff. *Id.* ¶ 15.

On one occasion in August 2021, Ms. Roe explained to Plaintiff that she was engaged in a sexual relationship with a different man, a man who had started "dating" another woman. *Id.* ¶16. On that occasion, at night and at Ms. Roe's home, Plaintiff and Sue Roe engaged in consensual sex. *Id.* After the sex, Plaintiff made a comment to the effect of "we may regret that later," which caused Ms. Roe to cry. *Id.* ¶ 17. Plaintiff immediately apologized for the comment, explaining that it was not meant to be interpreted as anything against Sue Roe. *Id.* Plaintiff tried to smooth over the situation and suggested that the two discuss the matter in the morning. *Id.* He then went to sleep. *Id.* Sue Roe was still upset and, while Plaintiff was asleep in her bed, she woke up one of her housemates. *Id.* ¶ 18. The housemate went into Sue Roe's room and asked Plaintiff to leave. *Id.* After being slow to respond to the request because he was still asleep, Plaintiff eventually woke up and left Sue Roe's home, texting Ms. Roe to tell her that he had left, to suggest that she lock the door, and to wish her "good night." *Id.* Plaintiff engaged in no further sexual encounters with Sue Roe. *Id.* ¶¶ 14-18.

Nearly six months later, on February 11, 2022, Ms. Roe submitted a Title IX report to Tulane, naming Plaintiff as a respondent. *Id.* ¶ 47. Ms. Roe submitted her report on the same day that Defendant submitted a Title IX report against Plaintiff. *Id.*

C. **Plaintiff's Encounters with the Defendant**

Plaintiff and Defendant met in or around September 2021 through the dating app Tinder. *Id.* ¶ 19. They exchanged phone numbers at a concert in November 2021, but they did not speak or meet after that. *Id.* On January 27, 2022, Plaintiff and Defendant ran into each other at a bar near the Tulane campus. *Id.* ¶ 20. Defendant went home with Plaintiff that night, where the two went to sleep; Defendant left in the morning. *Id.* Plaintiff and Defendant met each other on two

occasions shortly thereafter: (1) on January 29, when they attended Plaintiff's fraternity "date party"; and (2) on February 3, a short time after midnight on Plaintiff's birthday, February 2. On January 29, after returning back to Plaintiff's room from the party, they spent a few hours trying to engage in consensual intercourse, napping and then actually engaging in consensual sexual intercourse. *Id.* ¶ 25. Thereafter, around 9 p.m. that evening, Plaintiff walked Defendant home engaging in friendly conversation; Defendant gave Plaintiff a tour of the house she was living in, alluded to Plaintiff returning to her house in the near future, and kissed Plaintiff goodbye. *Id.* Plaintiff returned home. *Id.*

On February 2, 2022, the two exchanged texts, and around midnight, Plaintiff texted Defendant to ask if she wanted to get together. *Id.* ¶ 27. She replied that she did. *Id.* Plaintiff met Defendant outside of her house, and the two walked to Plaintiff's house, where, in his bedroom, they engaged in consensual, sexual intercourse. *Id.* ¶ 28 Plaintiff wore a condom during the encounter and Plaintiff went to sleep immediately after. *Id.* The morning of February 3, after the two kissed, Plaintiff walked Defendant home, engaging in friendly conversation. *Id.* ¶ 30. When they arrived at Defendant's home, they kissed and Defendant wished Plaintiff a happy birthday. Plaintiff returned home. *Id. Id.*

Plaintiff observed strange behavior by Defendant. During the "date party" on January 29, Defendant told Plaintiff that a fellow party attendee, "K.S.," had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. *Id.* ¶ 43. At one point during the "date party," the two walked by Sue Roe. *Id.* Shortly after, Defendant asked Plaintiff, "Is there anyone you're avoiding here?" *Id.* ¶ 24. Later, when the two were in bed at Plaintiff's home, Plaintiff was unable to engage in intercourse; in response, Defendant told Plaintiff that it was alright, that she was too drunk to have sex anyway. *Id.* ¶ 25. Plaintiff found

10

this statement strange since he observed that Defendant had only had two drinks over the course of a five-hour period. *Id.*

Further, after informing Tulane student friends of his that he had invited Defendant to the "date party," he learned that Defendant reportedly made a complaint to Tulane about her ex-boyfriend's violation of COVID-19 guidelines shortly after he ended his relationship with Defendant. *Id.* ¶ 21. This resulted in Defendant's ex-boyfriend being banned from campus. *Id.*

### D. Defendant's Retaliatory Conduct

The night following the second sexual encounter between the parties, February 3, 2022, Plaintiff, out at a bar with friends, ran into a woman on whom he had a crush. *Id.* ¶ 31. Plaintiff and his "crush" spoke for over an hour, after which they went to Plaintiff's house and engaged in consensual sexual activity. *Id.* Defendant saw Plaintiff conversing with the woman at the bar. *Id.* ¶¶ 31, 68, 82-86. Defendant's close friend and roommate told the Tulane investigator that Defendant changed her account of her consensual sexual encounter with Plaintiff to a sexual misconduct narrative only after seeing him out with another woman. *Id.* ¶ 85.

On February 4, 2022, Defendant stated to one of Plaintiff's friends, T.R., that Plaintiff had "engaged in nonconsensual sexual activity." *Id.* ¶ 32. Three days later, on February 7, a friend of Plaintiff's informed him that negative rumors about him were spreading, and alerted him to an Instagram post by a close female friend of Sue Roe's stating that "Being friends with a sexual assaulter means you are part of the problem[,]" and indicating that she was referring to Plaintiff. *Id.* ¶ 33. As well, another friend alerted him to a post **by Defendant** on Instagram stating that "Being drunk is not an excuse for Sexual Assault." *Id.* ¶ 34. Additionally, another Tulane student told Plaintiff that she had heard from three different individuals that Plaintiff had assaulted a Tulane student. *Id.* ¶ 35.

11

Unbeknownst to Plaintiff at the time, on February 6, 2022, Defendant reported her false accusations against him to Tulane's Case Management and Victim Support Services. *Id.* ¶¶ 45-46.

On the evening of February 8, 2022, Defendant texted Plaintiff, falsely claiming that Plaintiff had engaged in inappropriate sexual behavior. *Id.* ¶ 37. Her text contained the statement, "You are… a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim." *Id.* Plaintiff was shocked by the text as he knew that Defendant's allegations of nonconsensual conduct were false. *Id.* ¶ 38. On February 9, the president of Plaintiff's fraternity told Plaintiff that Defendant had called him claiming that Plaintiff had assaulted her and telling him that she was "going to the school" with her accusations. *Id.* ¶ 39. Plaintiff also learned from friends that Defendant was approaching Plaintiff's female friends and asking them to spread her accusations of sexual misconduct "like wildfire." *Id.* ¶ 40. Defendant texted a screenshot of her message to Plaintiff to other Tulane students, identifying Plaintiff as "rapist." *Id.* ¶ 43. The false accusations against Plaintiff were widely disseminated, reaching students studying in Spain. *Id.* ¶¶ 35-36.

On February 10, 2022, Plaintiff's fraternity president sent a message to the fraternity chat group spreading Defendant's false allegations. *Id.* ¶ 44. The president refused to change or delete his message spreading the false information. *Id.*

On February 11, 2022, Defendant and Sue Roe simultaneously submitted Title IX/Sexual Misconduct Reports against Plaintiff. *Id.* ¶ 47.

When speaking with Tulane's Title IX investigator, Defendant acknowledged speaking to Plaintiff's fraternity president, resulting in Plaintiff getting kicked out of his fraternity. *Id.* ¶ 51. Defendant also bragged to friends that Plaintiff would be banned from campus. *Id.* ¶ 54. On February 18, 2022, Tulane imposed an indefinite campus ban on Plaintiff. *Id.*

12

Defendant complained to the Title IX investigator that Plaintiff "slept with so many girls," and expressed her desire to have Plaintiff expelled. *Id.* ¶ 53. Defendant further stated that she wanted her sexual misconduct claim to be "attached to [Plaintiff's] name." *Id.* Defendant also asked at least one of Plaintiff's friends about Plaintiff's work plans and expressed her desire that Plaintiff lose "a nice comfy little job that he had all lined up by mommy and daddy," and. *Id.* ¶ 86.

On March 12, 2022, Defendant posted a Tik Tok about Plaintiff—immediately after he started contacting witness to gather information for his defense in the Title IX investigation. *Id.* ¶ 76.

### E.  Plaintiff Returned Home Due to Threats to His Safety

On February 8, 2022, Plaintiff's friends called his parents and told them it was not safe for Plaintiff to remain on the Tulane campus. *Id.* ¶ 39. On February 10, 2022, Plaintiff's mother flew to Louisiana to bring Plaintiff home. *Id.* ¶ 45. Due to the mental anguish and heightened anxiety Plaintiff was experiencing as a result of the false accusations, Plaintiff returned home to South Carolina. On February 11, 2022, Plaintiff withdrew from Tulane for the semester. *Id.*

### F.  Defendant's Petition for a Temporary Restraining Order

On March 16, 2022, Defendant filed a Petition for Protection From Abuse, resulting in the immediate issuance of a Temporary Restraining Order ("TRO"), in Louisiana civil court. *Id.* ¶ 87; Miltenberg Decl., Ex. F. The TRO barred Plaintiff from contacting Defendant through third parties and from entering the Tulane campus. Am. Compl. ¶ 87; Miltenberg Decl., Ex. F, TRO, at p. 3. Defendant grounded her Petition in a conversation that Plaintiff had with a witness in the Title IX investigation who voluntarily spoke to Plaintiff by phone. Miltenberg Decl., Ex. D, Am. Compl. ¶ 88; Miltenberg Decl., Ex. F, Petition, at p. 2. She also cited Plaintiff's phone calls to his own friends to discuss the Title IX investigation. *Id.* The Petition falsely alleged that Plaintiff had been harassing, intimidating, and stalking Defendant – when in fact Plaintiff had neither contacted

13

Defendant nor had attempted any such contact since he had first learned of her accusations through mutual friends. Ex. D, Am. Compl. ¶ 87; Ex. F, Petition, at pp. 2-3. Defendant knew that her TRO application was baseless, but filed it in order to prevent Plaintiff from defending himself in the Title IX investigation and to bolster her Title IX report. Ex. D, Am. Compl. ¶ 88. She also pursued the application for the purpose of pursuing a personal vendetta against Plaintiff and to further defame and retaliate against him. *Id.* ¶¶ 111-116. Defendant knew that Tulane would view the TRO as evidence against Plaintiff. *Id.* ¶ 89. Defendant's Petition expressly referenced the Tulane Title IX proceeding. Miltenberg Decl., Ex. F, Petition, at p. 3 ("I have an open Title IX case with Tulane University that is currently being summarized by the investigator.") Though Defendant asserted that Plaintiff "stalked, harmed/threatened to harm" her acquaintances, she also indicated that Plaintiff had no history of violence towards others. Miltenberg Decl., Ex. F, Info. for Service of Process.

Defendant failed to appear at the hearing held on her TRO application. Miltenberg Decl., Ex. D, Am. Compl. ¶ 89. Notably, Plaintiff, who had returned to New Orleans from his home in South Carolina to attend the hearing, saw Defendant at the airport in New Orleans shortly after he had left the hearing. *Id.*

### G. Defendant and Sue Roe's Coordinated Action Against Plaintiff

On January 28, 2022, N.B. and Defendant had a conversation about Sue Roe's negative opinion of Plaintiff. *Id.* ¶ 56. N.B. stated that Defendant expressed a desire to learn more about Ms. Roe's experience with Plaintiff. *Id.* ¶ 57. There is evidence that Defendant and Ms. Roe connected on Instagram on or around January 28, 2022, prior to Defendant's sexual encounters with Plaintiff. *Id.* ¶¶ 21-31, 60-67. On January 29, Defendant asked Plaintiff a cryptic question after seeing Ms. Roe at a party. *Id.* ¶¶ 23-24. Defendant's text to Plaintiff on February 8, 2022 referenced Plaintiff's purported "previous victim." *See id.* ¶ 37.

14

On February 11, 2022, Defendant and Ms. Roe simultaneously submitted false Title IX/Sexual Misconduct reports claiming that Plaintiff had engaged in nonconsensual sexual activities with them. *Id.* ¶ 47. Their false allegations were similar. *Id.* Plaintiff believes that Defendant and Ms. Roe scheduled their interviews to be within one hour of each other on February 16, 2022. *Id.* ¶ 50. Defendant's false statements to the Title IX investigator closely mirrored Ms. Roe's false statements. *Id.* ¶ 51. Defendant told the Title IX investigator that she was aware of Ms. Roe's "situation" but would let Ms. Roe "tell you her story." *Id.*

During the Title IX investigation, Defendant claimed that mutual friends connected her with Ms. Roe on February 8, 2022 and that she learned about Roe's allegations against Plaintiff after she reported her own. *Id.* ¶ 58. When Plaintiff challenged the evidence that Defendant provided to the Title IX investigator concerning the timing of her connection with Ms. Roe, Defendant failed to verify the evidence, instead criticizing Plaintiff's "Self-validated analysis [that] fails to consider any other point of view than Plaintiff's – a white male college student." *Id.* ¶ 59. There is significant evidence—including the contradictory statements of their friends—that Defendant and Sue Roe made false reports to the Title IX investigator about when they first connected in order to cover up their coordinated efforts to defame and injure Plaintiff. *Id.* ¶¶ 55-67.

## H. __Plaintiff Was Substantially Injured By Defendant's Misconduct__

On May 8, 2022, Plaintiff was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate. *Id.* ¶ 90. Defendant strategically exploited and manipulated Tulane's Title IX process to pursue a false report of sexual misconduct, colluded and conspired with Sue Roe to defame and emotionally and financially injure Plaintiff, and deprived Plaintiff of the benefit he was to receive from his contract with Tulane under the Code. *Id.* ¶¶ 91, 148.

15

Defendant exploited Tulane's Title IX procedures to "harm Plaintiff's reputation, destroy Plaintiff's relationship with his friends and fraternity, and harm his academic career and future career plans." *Id.* ¶ 91. By such action, Defendant deprived Plaintiff of the benefit he was to have received from his relationship with Tulane under the Code. *Id.*

## ARGUMENT

### DEFENDANT'S MOTION TO TRANSFER SHOULD BE DENIED

This case should not be transferred to the Eastern District of Louisiana. The backdrop of Defendant's motion is the Tulane action, which asserts claims for sex discrimination in violation of Title IX of the Education Amendments of 1972 and breach of contract, and seeks injunctive relief. ECF No. 30-1 (under seal), at 1-14; 81-90, 94-95.[2] The relief sought by Plaintiff in the Tulane action includes, *inter alia*, a reversal of the outcome of Tulane's Title IX proceeding against Plaintiff and the expungement of Plaintiff's education records. *Id.* at 94-95. In contrast, the present action concerns Defendant's false and defamatory statements about Plaintiff, and her coordinated efforts with Sue Roe to defame and injure Plaintiff such that their false accusations would be permanently associated with Plaintiff's name. *See generally* Miltenberg Decl., Ex. D, Am. Compl.

If her Motion is granted, Defendant intends to make a motion to consolidate[3] this action with the Tulane Action, which would destroy Plaintiff's court-ordered pseudonym status in the Tulane Action. Defendant's Motion, and her intended consolidation strategy in the event of a transfer, contradict the position that Defendant took in opposing Plaintiff's pseudonym appeal in the Fourth Circuit—that this defamation action between private parties, which does not name Tulane as a defendant and does not implicate Plaintiff's Title IX proceeding is factually distinct from cases in which universities are sued for Title IX violations. Defendant took this position after

---

[2] Plaintiff filed the Tulane Action on April 24, 2023, several months after he filed this action. *See* ECF No. 30-1.
[3] Plaintiff in no way concedes that a motion to consolidate will be granted if this case is transferred.

learning that Plaintiff was granted pseudonym status in the Tulane Action. Inherent in Defendant's position was that she did not intend to seek consolidation of this action with Plaintiff's pseudonymous action against Tulane. Defendant's position was adopted by the Fourth Circuit, which denied Plaintiff's appeal. For these reasons, judicial estoppel bars Defendant's Motion.

Even if Defendant's Motion were not barred, transfer is unwarranted under 28 U.S.C. § 1404(a), because Defendant has not demonstrated that the relevant factors support a transfer: 1) Plaintiff's choice of venue—Defendant's place of residence—is accorded significant deference; 2) Louisiana is not a more convenient forum; and 3) and the interest of justice will not be served by destroying Plaintiff's court-ordered pseudonym status in the Tulane action.

### A. Defendant's Motion Is Barred By the Doctrine of Judicial Estoppel

The doctrine of judicial estoppel bars Defendant's motion because Defendant's request to transfer this case is inconsistent with the position she has taken before the Fourth Circuit. *See* discussion *supra*, Relevant Background, at Pt. I. The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from engaging in "intentional self-contradiction" as a means of gaining an unfair advantage in litigation by pursuing a theory that is incompatible with its prior position. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749–751 (2001). Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 749 (citation omitted); *Wells Fargo Bank, N.A. v. Highland Constr. Mgmt. Servs., L.P.*, 807 F. App'x 246, 250 n. 2 (4th Cir. 2020). "Judicial estoppel applies when: (1) the party to be estopped ... advanc[es] an assertion that is inconsistent with a position taken during previous litigation; (2) the position [is] one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Oudeh v. Goshen Med. Ctr., Inc.*, No. 5:22-CV-193-D, 2022 WL 18028281, at *6 (E.D.N.C. Dec.

17

29, 2022) (Dever, J.) (citation omitted), *aff'd*, No. 23-1207, 2023 WL 6058484 (4th Cir. Sept. 18, 2023). Notwithstanding the use of the terms "previous litigation" and "first proceeding" in this language, judicial estoppel also applies to positions taken by a party in an earlier phase of a single proceeding that are inconsistent with a position it takes during a later phase thereof. *See Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000); *Fellores v. Winter*, No. CIV.A. 2:06CV551, 2007 WL 473727, at *2 (E.D. Va. Feb. 8, 2007) (judicial estoppel barred transfer of action to another venue). All four factors are met here and, accordingly, Defendant's motion to transfer should be denied.

*First*, Defendant's position for purposes of the present Motion—that this action arises out of the same set of operative facts as the Tulane action such that it should be transferred and consolidated with the Tulane action—is clearly inconsistent with her position in the Fourth Circuit. *See* Moving Br. at 1-2, 7, 11, 15-16.[4] On appeal, Defendant asserted that this action—a defamation case against a private person—was distinct from a Title IX action against a university because Plaintiff "did not sue his university, and he is not challenging the result of the…disciplinary proceeding" in this action. Miltenberg Decl., Ex. B, Appellee Resp. Br. at 13. Defendant also asserted that "the individual facts of this case" concern her "false statements to Tulane students, investigators, and others." *Id.* at 13, 41. Defendant further asserted that a Title IX action against a university involves the plaintiff's challenge to the "university's administration of its confidential disciplinary process," and could serve as a "final 'appeal' of the university's actions," a consideration that "do[es] not apply here." *Id.* at 45-46. At oral argument, after learning that Plaintiff had been granted pseudonym status in the Tulane action, Defendant continued to distinguish this action from a university case. *See* https://www.ca4.uscourts.gov/OAarchive/mp3/23-1058-20230919.mp3 (audio transcript of oral

---

[4] Notably, Defendant's brief does not address how consolidation can be accomplished without violating the Pseudonym Order entered in the Tulane Action. *See* Miltenberg Decl., Ex. G.

18

argument at 30:36-37:39). Implicit in Defendant's position on appeal is that this action is ***not*** related to an action against Tulane such that Defendant could, or would, seek transfer and consolidation of the two actions. *See, e.g.*, *Martineau v. Weir*, 934 F.3d 385, 397 (4th Cir. 2019) (on remand district court should consider "implicit" position taken by plaintiff in a bankruptcy when deciding whether judicial estoppel is warranted).

***Second***, Defendant's position is grounded in factual distinctions between the cases: the identities of the parties and the manner in which Tulane conducted the Title IX proceeding against Plaintiff versus Defendant's false statements about Plaintiff to Tulane students, on social media and to specific Tulane administrators.

***Third***, the Fourth Circuit adopted Defendant's position on appeal, rejecting any similarity between this action and cases brought against universities and finding "[t]his case is no different than a garden variety defamation case." Miltenberg Decl., Ex. B, Oct. 26, 2023 Opinion, 16-18, 21-22.

***Fourth***, there is evidence that Defendant acted intentionally. Defendant had notice of the Tulane action as early as May 16, 2023—over four months prior to oral argument on the pseudonym appeal. Appeal Dkt. #40. It is difficult to fathom that Defendant would not have determined during the four months between mid-May 2023 and oral argument before the Fourth Circuit in mid-September whether she would seek to transfer this action and have it consolidated with the Tulane action. Any mention of a possible consolidation of the two actions during oral argument would have risked the possibility that the Fourth Circuit would apply the university cases Plaintiff highlighted and that Defendant argued were distinguishable. That Defendant waited to mention transferring the case until after Plaintiff lost his pseudonym suggests that Defendant

19

changed her position to gain a strategic advantage—attempting to consolidate this case with the Tulane action will destroy Plaintiff's court-ordered anonymity in that case.

This is a case which warrants the application of the doctrine of judicial estoppel. Defendant's current position that this action and the Tulane action are related cases that should be consolidated clearly contradicts her position as adopted by the Fourth Circuit—that the cases are factually distinct. In addition, Plaintiff has obtained the right to protect his privacy in an action in another venue, Defendant argued against Plaintiff securing that right in this action, and Defendant's planned course of action following a transfer of venue will necessarily deprive Plaintiff of that right.

## B. Defendant Has Not Met Her Burden of Demonstrating That A Transfer Is Warranted

Assuming *arguendo* that Defendant is not estopped from making this Motion, the Court must nevertheless deny it as Defendant has failed to meet her burden of showing that a transfer under 28 U.S.C. § 1404(a) is proper. Defendant failed to demonstrate how, the following factors, assessed together, justify a transfer from a venue properly selected by Plaintiff: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

### 1. Plaintiff's Choice of this Venue Should Be Accorded Substantial Weight

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Id.* at 444 (holding that the district court did not abuse its discretion in refusing to transfer venue) (citation omitted). When Plaintiff filed this action Jane Doe was enrolled at Tulane but a resident of North Carolina, the state to which she returned after graduating in May 2023. ECF No. 1, ¶ 9; ECF No. 29-2, Jane Doe Decl. ¶¶ 5-6; Miltenberg Decl. ¶ 7,

20

Ex. E (Defendant served in Cary North Carolina). Defendant has been represented by North Carolina counsel since February 2023. ECF No. 15, Notice of Appearance.

Here, Plaintiff's choice of forum is also entitled to deference because he could not have obtained personal jurisdiction over Defendant in his home jurisdiction of South Carolina. *See Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, No. 319CV00508FDWDSC, 2020 WL 90663, at *3 (W.D.N.C. Jan. 7, 2020) (foreign plaintiff's choice of venue still entitled to deference when the plaintiff cannot file suit in its home jurisdiction "due to problems obtaining personal jurisdiction over a defendant").

Defendant's argument that because Plaintiff "filed in a foreign forum and his claims bear no relation to this forum . . . his choice of forum warrants little deference" is unavailing. *See* Moving Br. at 11. *Speed Trac Techs. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008), which is cited in support of this argument, is inapposite. In *Speed Trac*, the plaintiff corporation was domiciled within the Western District of North Carolina, but filed in the Middle District and ***the defendant corporation was domiciled outside the Middle District of North Carolina***. In contrast, Defendant was a resident of this District at the time this action was filed.

Accordingly, Plaintiff's choice of this District as the venue for this action is "entitled to substantial weight" in the Court's adjudication of this transfer motion.

### 2. The Factors of Party Convenience, Witness Convenience and Access Militate Strongly Against the Proposed Transfer.

Neither Plaintiff nor Defendant live in this District. Plaintiff resides in South Carolina. Defendant's state of residence was in North Carolina until after she graduated from Tulane in May 2023. ECF No. 29-2, [Jane Doe] Decl., ¶¶ 4-6. At some, unspecified point in time Defendant moved to Colorado. *Id.* ¶ 6. However, her parents maintain a home in this District. *Id.* ¶ 6; Miltenberg Decl.,

Ex. E. Based on these facts, Defendant will not be inconvenienced by a trial of this case in North

Carolina.[5]

An analysis of the convenience and accessibility of this District with respect to potential

non-party witnesses, compared to that of the Eastern District of Louisiana, yields similar results.

In the Pseudonym Order denying Plaintiff's motion to proceed anonymously in this action, the

Court found that, in this action, "plaintiff is not challenging his expulsion from Tulane or arguing

that Tulane violated Title IX or due process during the sexual assault investigation." Miltenberg

Decl., Ex. A, at 7. Defendant took the same position in Plaintiff's unsuccessful appeal from that

Order. *See* discussion *supra* at Point A. With this in mind, the non-party witnesses likely to be

deposed and called in connection with Plaintiff's claims here include persons to whom Defendant

published false statements about Plaintiff and with whom she conspired, including (a) Sue Roe,

who lives in New York; (b) other Tulane students identified by their initials in the Amended

Complaint, seven of whom live in New York; (c) Jacqueline Barber, who resides in Louisiana; and

(d) Chris Zacharda who lives in Chicago. *See* Relevant Background, Pt. III. Plaintiff and Defendant

will have to travel to different jurisdictions to take the depositions of all of these witnesses.

Moreover, Defendant has provided no evidence that out of state witnesses would prefer to travel

to Louisiana as opposed to North Carolina—which is closer to Chicago and New York—to testify

at trial. Nor has any Tulane administrator identified by Ms. Woodley submitted an affidavit stating

they will not testify in North Carolina. Defendant has also failed to demonstrate the materiality of

the testimony that may be given by the former Tulane students and Tulane administrators identified

---

[5] While Defendant asserts that Plaintiff will be "inconvenienced" by trying the case in this forum, he has never made such an assertion. *See* Moving Br. at 14. In addition, the cases relied on by Defendant regarding inconvenience to the parties are inapposite. In *Hubbard v. Eitan Group N. America*, 2023 WL 2959991, at *7 (E.D.N.C. Apr. 14, 2023), the court lacked personal jurisdiction over the defendants, all the defendants resided in the Central District of California to which the case was transferred, and all of defendants' documents were maintained in California. In *In re Willingham Patent Litig.*, 322 F. Supp. 1019, 1020 (M.D.P.L. 1971), the cases that were transferred in a multi-district patent litigation were "virtually identical."

in Defendant's declaration and the Woodley Affidavit, stating merely that "at least some" of them will be "potential witnesses." ECF No. 29-2, ¶ 15. *See Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*, No. 5:20-CV-46-M, 2020 WL 4913280, at *6 (E.D.N.C. Aug. 20, 2020) (party seeking transfer needs to demonstrate that witnesses are willing to travel to foreign jurisdiction and the materiality of their proposed testimony); *Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*, No. 1:19CV486, 2020 WL 2086188, at *19 (M.D.N.C. Apr. 30, 2020) (motion to transfer denied where defendants did not offer any specific example of a witness who was unwilling to travel to North Carolina).

*Plainly, the factors of convenience and accessibility weigh against transfer*. Defendant's analysis yields a different result because, jumping the gun, she conceptually has consolidated this action with the Tulane action. *See* Moving Br. at 13-14. Yet she makes no showing that the testimony of each of the Tulane administrators identified in the Woodley Affidavit (other than Zacharda and Barber who are named in the Amended Complaint) can provide relevant testimony in this action. For example, Avery Pardee—who is not referenced in the Amended Complaint— determined Plaintiff's appeal of the Title IX sanction, which is not a subject of this action. *See* ECF No. 30-1, Tulane Compl. ¶¶ 438-445. Judicial estoppel once again bars Defendant from arguing that witnesses like Pardee should be considered in the transfer analysis. Defendant benefitted from the Fourth Circuit's determination, based on its acceptance of her arguments, that this case does not implicate a review of Tulane's Title IX proceeding. Any argument she now offers that current and former Tulane "employees and affiliates" who have knowledge about Tulane's Title IX proceeding against Plaintiff – but no *firsthand* knowledge of Defendant's statements to Tulane that are the subject of this action—should be considered by the Court in evaluating convenience and access is clearly inconsistent with her previous position.

23

### 3.   The Interest of Justice Will Not Be Served By Transferring This Action

Although many factors may be considered by the Court in assessing whether the "interest of justice" would be served by Defendant's proposed § 1404(a) transfer, Plaintiff submits that one factor should predominate the Court's assessment – that a transfer, particularly in conjunction with any consolidation of this action with the Tulane action, will result in exposing Plaintiff's identity in the latter, effectively voiding the pseudonym order in the Tulane Action.

**a.   The Likely Exposure of Plaintiff's Identity Would Be Unjust Under the Circumstances.**

The disclosure of Plaintiff's identity in the Tulane action would be particularly unjust as the Court relied on the limited nature of this action to reject Plaintiff's *ex parte* motion to proceed pseudonymously – as did Defendant opposing Plaintiff's pseudonym appeal before the Fourth Circuit. Defendant had an opportunity to refrain from opposing Plaintiff's appeal at oral argument, or, at the very least, from taking the position that this case is wholly separate from any review or extension of any Title IX proceeding. She chose to argue that this case is factually distinct from university Title IX cases. It would be unjust to allow Defendant to benefit from failing to disclose, or act upon, her intention to seek a transfer and a consolidation of the two cases.

**b.   Louisiana's Relationship to this Action Is Strong But Not Sufficiently So To Overcome Other Factors Weighing Against the Transfer.**

Plaintiff acknowledges that his live interactions with Defendant and Sue Roe took place in Louisiana. Louisiana's primary interest with respect to this action relates to the fact that certain underlying events took place at Tulane, a prominent university within the state. That the Tulane action is being litigated in Louisiana means that a court in will have an opportunity to weigh in on how future Title IX proceedings at Tulane will be conducted. Louisiana's interest in the resolution of private disputes between the parties, outside of the Title IX proceeding, is not as strong.

24

Defendant's reliance on choice-of-law issues, and Plaintiff's claim of abuse of process in this action, to argue that Louisiana's interest in being the forum for this action "is much greater [than that of] North Carolina" is misplaced. *See* Moving Br. at 16-17. Plaintiff's abuse of process claim focuses on Defendant's use of a temporary restraining order to prevent him from questioning witnesses and as evidence in the Title IX action; it does not turn on legal issues or procedures that are particular to Louisiana. Miltenberg Decl., Ex. D, Am. Compl. ¶¶ 87-88, 111-123.

Moreover, Plaintiff disputes Defendant's contention that all of the claims in this action "will be decided under Louisiana law regardless of where they are tried." *Id.* at 16. Defendant suggests that this Court must apply Louisiana law to all of Plaintiff's claims without first determining whether a conflict of law exists between that law, and North Carolina law, respecting those claims. The suggestion is inaccurate. Where no conflict of law exists concerning a specific legal issue or claim, this Court may apply North Carolina law to promote efficient litigation. *See, e.g., Info. Control Sys., Inc. v. Avesta Techs., Inc.*, No. 1:99CV217-T, 2000 WL 1409862, at *3 (W.D.N.C. Sept. 6, 2000).[6]

Plaintiff recognizes that Louisiana law differs substantially from that of North Carolina with respect to Plaintiff's claim for tortious interference with contract.[7] The parties do not dispute that, under Louisiana law, a tortious interference claim can only be asserted against a corporate officer. Plaintiff is clearly not an officer of Tulane. In the event that the Court determines that Louisiana law applies to Plaintiff's tortious interference claim, the Court would not need extensive experience to apply such law, as the claim would be dismissed.

---

[6] This issue is further addressed in Plaintiff's opposition to Defendant's motion to dismiss.
[7] Plaintiff's opposition to Defendant's motion to dismiss addresses the application of South Carolina law to his tortious interference claim.

25

Defendant has failed to make any showing that Louisiana law differs from North Carolina law with respect to any of Plaintiff's four remaining claims. *See* Moving Br. at 16-19. In contrast, Plaintiff has demonstrated in his opposition to Defendant's motion to dismiss that this Court can adjudicate Plaintiff's claims for abuse of process and civil conspiracy under North Carolina law because it is identical to Louisiana law with respect to those two torts.[8]

### c.  A Comparison of Docket Conditions Favors Denial of the Proposed Transfer

Defendant argues that the docket conditions of the Eastern District of Louisiana are substantially better-suited to handle an additional case than those of this District. *See* Moving Br. at 19-20. She contends that this District had "far more filings per judge" during the period from April 1, 2022 and March 31, 2023 than did the Eastern District of Louisiana.[9]

***Other relevant metrics indicate that the Eastern District of Louisiana is currently experiencing far more docket congestion than this District***. For example, the median time from filing to disposition for civil cases in this District for the year ending on June 30, 2023 is 9.9 months. *See* Miltenberg Decl., Ex. H. (U.S. District Court – Judicial Caseload Profile for E.D. North Carolina).[10] In comparison, this figure for the Eastern District of Louisiana is ***68.9 months***. Miltenberg Decl., Ex. I, (U.S. District Court – Judicial Caseload Profile for E.D. Louisiana).[11] The percentage of civil cases in this District that were still pending three years after having been filed, for the year ending on June 30, 2023, is 6.3%. *See* Miltenberg Decl., Ex. H. The same metric for the Eastern District of Louisiana is ***72.6%***. *See* Miltenberg Decl., Ex. I. The difference in these

---

[8] Defendant did not move to dismiss Plaintiff's claims for defamation and intentional infliction of emotional distress.
[9] For this data, Defendant cites to Federal Judicial Caseload Statistics, Table X-1A, U.S. District Courts—Weighted and Unweighted Filings Per Authorized Judgeship During the 12-Month Period Ending March 31, 2023, available at https://www.uscourts.gov/statistics/table/x-1a/federal-judicial-caseload-statistics/2023/03/31. *See* Moving Br. at 20.
[10] Available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last viewed Jan. 12, 2024).
[11] Available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last viewed Jan. 12, 2024).

statistics may be explained in part by the fact that the Eastern District of Louisiana has more vacant judgeships than this District. Whereas the "Vacant Judgeship Months" during the year ending on June 30, 2023 for Eastern District of Louisiana numbered 17.9, this District experienced 0.0 such months during the same year. Compare Miltenberg Decl., Ex. H *with* Ex. I.

Defendant makes much of the fact that this District has exclusive jurisdiction and venue over cases relating to *In re Camp Lejeune Water Litig.*, No. 7:23-cv-897 (E.D.N.C. Nov. 28, 2023). *See* Moving Br., at 20 (citing the Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804(b) and the Joint Status Report in the case). However, as the Court is no doubt aware, the cases filed under that Act are quite different from complex civil litigations proceeding on different legal theories. Moreover, there exist streamlined procedures for such cases to be settled. The differences between standard civil actions filed in the District from cases filed here relating to the *Camp Lejeune Water Litig.* matter undoubtedly explain, in part, the dramatic differences in the "filing to disposition" and "3 years old" statistics referenced above. Individual *Camp Lejeune* cases are far less complex, and are much more quickly resolved through settlement, than are standard civil actions filed in this District.

### d. The Preference for Efficiency and Consistency Militate Toward a Transfer But Do Not Overcome the Fundamental Unfairness of Exposing Plaintiff's Identity in the Tulane Action.

Plaintiff recognizes that some efficiencies would be achieved by the transfer and consolidation sought by Defendant. However, if the two actions are not consolidated, and are presided over by different judges in the Eastern District of Louisiana, there would be no assurance that rulings issued in the two matters would be consistent.

Plaintiff disputes Defendant's contention that "the resolution of John Doe defamation claim against Jane Doe rises and falls along the same lines as his Title IX case against Tulane." Moving Br., at 21. The Tulane Action does not turn entirely on the truthfulness of

27

Defendant's statements to Tulane in connection with Tulane's Title IX proceeding. It also raises issues about the conduct of Tulane and Tulane employees not raised in this action. For example, the complaint filed in the Tulane action identifies 9 "procedural flaws in the conduct process that led to Plaintiff's wrongful expulsion from Tulane." ECF No. 30-1, Tulane Compl., ¶ 515 (at 86.)

Additionally, Defendant has moved to dismiss the only claim in this action that concerns Plaintiff's contract with Tulane, the tortious interference claim, and Plaintiff concedes that if Louisiana law applies to that claim it must be dismissed. Accordingly, any concern about contradictory rulings concerning whether Tulane breached its contract with Plaintiff issuing in the absence of consolidation, (*See* Moving Br., at 21), should not be accorded significant weight in the Court's decision concerning transfer of venue.

Although Defendant has argued that efficiency would be served by the proposed transfer, (*See* Moving Br., at 15-16), it is not clear how such efficiency would be achieved without consolidation of the two cases. Defendant is apparently concerned with third party witnesses being required to sit for deposition twice. *See id.* at 16. However, an assessment of this concern can only be measured accurately once (and if) Defendant provides the Court with information concerning the willingness of the non-party witness or witnesses residing outside Louisiana and North Carolina to attend deposition in either Louisiana or North Carolina or both. *Cf. NextLOGiK, Inc.,* 2020 WL 4913280, at *6; *Rhino Svcs.*, 2020 WL 2086188, at *19.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion, along with such other and further relief as the Court deems just and proper.

Dated: January 17, 2024

Respectfully Submitted,

By:   /s/ *Andrew T. Miltenberg*

28

Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com
sbernstein@nmllplaw.com

By: /s/ *Robert C. Ekstrand*
Robert C. Ekstrand, Esq.
EKSTRAND AND EKSTRAND, LLP
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

*Attorneys for Plaintiff* John Doe

29

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

30

Original Filed at Docket No. 39,

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| John Doe          , ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:22-CV-00500-D-BM |
| ) | |
| Jane Doe ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DECLARATION OF ANDREW MILTENBERG IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL RULE 12(b) MOTION

ANDREW T. MILTENBERG hereby declares, subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am a partner of Nesenoff & Miltenberg, LLP, counsel for Plaintiff John Doe ("Plaintiff").

2. I submit this declaration in support of Plaintiff's opposition to Defendant's Partial Motion To Dismiss For Failure To State A Claim.

3. Attached hereto as Exhibit 1 are true and correct copies of Jane Doe *v.* John Doe, 2022-2059, Petition From Protection From Abuse, Information For Service of Process, and Order of Protection/Temporary Restraining Order.

Executed on the 17th day of January 2024.

/s/ *Andrew T. Miltenberg*
Andrew T. Miltenberg

Original Filed at Docket No. 40;

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| John Doe          , | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:22-CV-00500-D-BM |
| | ) |
| Jane Doe, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff John Doe       herby files the attach proposed sealed exhibit to his opposition to Defendant Jane Doe partial rule 12(b) motion (Dkt #39):

1.  Exhibit 1 - are true and correct copies of Jane Doe *v.* John Doe, 2022-2059, Petition From Protection From Abuse, Information For Service of Process, and Order of Protection/Temporary Restraining Order.

This the 17th day of January, 2024

**NESENOFF & MILTENBERG, LLP**

By:   /s/ Andrew Miltenberg
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

Original Filed at Docket No. 41,

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**NESENOFF & MILTENBERG, LLP**
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 3

    A.    Plaintiff's Background ....................................................................................................... 3

    B.    Plaintiff's Relationship With Sue Roe.............................................................................. 3

    C.    Plaintiff's Encounters with the Defendant....................................................................... 5

    D.    Defendant's Retaliatory Conduct...................................................................................... 6

    E.    Plaintiff Returned Home Due to Threats to His Safety ..................................................... 8

    F.    Defendant's Petition for a Temporary Restraining Order.................................................. 9

    G.    Defendant and Sue Roe's Coordinated Action Against Plaintiff..................................... 10

    H.    Plaintiff Was Substantially Injured By Defendant's Misconduct.................................... 11

ARGUMENT................................................................................................................................ 11

    I.    The Amended Complaint States A Claim for Abuse of Process .................................. 12

    II.    Plaintiff Has Plausibly Alleged A Civil Conspiracy Claim........................................... 17

    III.  Plaintiff Has Plausibly Alleged A Claim for Tortious Interference With Contract Under South Carolina Law ................................................................................................... 22

CONCLUSION............................................................................................................................. 24

i

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................... 2, 12, 20

*Barnette v. Woody*,
242 N.C. at 424, 88 S.E.223 (1955).................................................................. 13, 14

*Bell Atl. Corp. v Twombly*,
550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007)........................................... 2, 20

*Bennett v. Bennett*,
No. 18 CVS 48, 2019 WL 1262472 (N.C. Super. Mar. 15, 2019) ........................................... 20

*Boudreau v. Baughman*,
322 N.C. 331, 368 S.E.2d 849 (1988).................................................................. 22

*Buck v. Buck*,
239 N.C. App. 466, 770 S.E.2d 389 (2015)................................................................... 15

*Burton v. Dixon*,
259 N.C. 473, 131 S.E.2d 27 (1963).................................................................. 18

*Chidnese v. Chidnese,*
210 N.C.App. 299, 708 S.E.2d at 725 (2011)............................................................ 14

*Delcambre v. Mancuso*,
268 So. 3d 325 (La. Ct. App. 2019)................................................................ 15, 16

*Doe v. McKesson*,
71 F.4th 278 (5th Cir. 2023) .................................................................... 17, 18, 21

*Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*,
372 S.C. 470, 642 S.E.2d 726 (2007) ..................................................................... 24

*Ellis v. Pinckley*,
No. 5:22-cv-00345, 2023 WL 4417255 (W.D. La. May 25, 2023)........................................ 21

*Erickson v. Pardus*,
551 U.S. 89 (2007)........................................................................................ 12

*Foster v. Bias*,
358 So. 3d 520 (La. Ct. App. 2022)................................................................ 15, 16

*Fox v. City of Greensboro*,
279 N.C. App. 301, 866 S.E.2d 270 (2022)............................................................ 15

*Fox v. Fox*,
283 N.C. App. 336, 873 S.E.2d 653 (2022)............................................................ 17

*Gentile v. City of Solon*,
No. 1:12CV1657, 2013 WL 123621 (N.D. Ohio Jan. 9, 2013)............................................... 15

*Godfredson v. JBC Legal Grp., P.C.*,
387 F. Supp. 2d 543 (E.D.N.C. 2005)................................................................ 20

*Hafner v. Brown*,
983 F.2d 570 (4th Cir. 1992) ............................................................................ 20

*Harco Nat'l Ins. Co. v. Grant Thornton*, LLP,
206 N.C. App. 687,  698 S.E.2d 719 (2010)................................................................ 22

*Houck v. Substitute Tr. Servs., Inc.*,
791 F.3d 473 (4th Cir. 2015) ...................................................................... 12, 22

*Info. Control Sys., Inc. v. Avesta Techs., Inc.*,
  No. 1:99CV217-T, 2000 WL 1409862 (W.D.N.C. Sept. 6, 2000) ............................... 12, 13, 17
*K&F Rest. Holdings, Ltd. v. Rouse*,
  No. CV 16-293-JWD- EWD, 2018 WL 3553422 (M.D. La. July 24, 2018) ........................... 21
*Kasparov, PTE LTD v. Zacherl*,
  No. 5:22-CV-503-D, 2023 WL 4752376 (E.D.N.C. July 25, 2023) ........................................ 18
*L.P. v. Wake Cty. Bd. of Ed..*,
  No. 5:20-CV-481-BO, 2022 WL 2813038 (E.D.N.C. July 18, 2022) .................................... 20
*Magnolia Island Plantation, LLC v. Lucky Fam., LLC*,
  No. CV 18-1526, 2020 WL 6827793 (W.D. La. Nov. 20, 2020) ............................................ 13
*McCarter v. Univ. of N. Carolina at Chapel Hill*,
  No. 1:20-CV-1050, 2021 WL 4482983 (M.D.N.C. Sept. 30, 2021) ...................................... 20
*Parker v. Homestead Studio Suites Hotel*,
  No. 5:05–cv–69–BR, 2005 WL 3968291 (E.D.N.C. May 13, 2005) ..................................... 14
*Payne v. Stanley*,
  316 So. 3d 104 (La. Ct. App. 2021) ..................................................................................... 20
*Pinewood Homes, Inc. v. Harris,*
  184 N.C.App. 597, 646 S.E.2d 826 (2007) ........................................................................... 15
*Riggs v. DXP Enters., Inc.*,
  No. 6:18-CV-00729, 2018 WL 3967746 (W.D. La. Aug. 2, 2018) ....................................... 21
*Scott v. City of Durham*,
  No. 1:20-CV-558, 2021 WL 3856168 (M.D.N.C. Aug. 27, 2021) ........................................ 13
*Strickland v. Hedrick*,
  194 N.C. App. 1, 669 S.E.2d 61 (2008) ................................................................................ 18
*Synovus Bank v. Coleman*,
  887 F. Supp. 2d 659 (W.D.N.C. 2012) ................................................................................. 23
*Volvo Constr. Equip. N. Am, Inc. v. CLM Equip. Co.*,
  386 F.3d 581 (4th Cir. 2004) ........................................................................................... 11, 22
*Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*,
  No. 5:22-CV-470-D, 2023 WL 2959868 (E.D.N.C. Apr. 14, 2023) ..................................... 22
*White v. City of Greensboro*,
  408 F. Supp. 3d 677 (M.D.N.C. 2019) ................................................................................. 20
*Witthohn v. Fed. Ins. Co.*,
  164 F. App'x 395 (4th Cir. 2006) ......................................................................................... 14
*Zuniga v. Masse Contracting, Inc.*,
  290 F. Supp. 3d 581 (E.D. La. 2017) .................................................................................... 20

iii

**INTRODUCTION**

In this diversity action, Plaintiff John Doe ("Plaintiff" or "John Doe" asserts that, in 2022, Defendant Jane Doe ("Defendant")—with whom he had consensual, sexual experiences while both were undergraduates at Tulane University ("Tulane")—became angry after she learned he had sex with another student and launched a campaign to defame, humiliate, harass and punish him. As alleged in the Amended Complaint (ECF No. 23), Defendant took a number of actions against Plaintiff, including falsely accusing him of sexual misconduct in a Title IX report she submitted to Tulane in concert with another female student, Sue Roe, in February 2022 and filing a petition for a temporary restraining order ("TRO") against Plaintiff in Louisiana civil court. Defendant—who did not show up for the TRO hearing—filed the petition in order to restrict Plaintiff's contact with witnesses in the Title IX investigation, impede his defense in the investigation and to use the petition as "evidence" to bolster her accusations against Plaintiff. Defendant also conspired with Sue Roe to defame and injure Plaintiff by *inter alia* filing Title IX reports at Tulane.

Defendant now moves to dismiss three of five claims alleged in the Amended Complaint pursuant to Rule 12(b)(6) of the Federal rules of Civile Procedure: (1) abuse of process; (2) civil conspiracy; and (3) tortious interference with contract.[1] Defendant argues that each of these claims is "governed by" Louisiana law, but fails to identify any conflict between Louisiana and North Carolina law with respect to Plaintiff's abuse of process and conspiracy claims. Accordingly, the Court is free to apply North Carolina when evaluating these claims.

Under both North Carolina and Louisiana law, Plaintiff states plausible claims for abuse of process and for civil conspiracy. Defendant seeks dismissal of the abuse of process claim – which

---

[1] Defendant does not seek dismissal of Plaintiff's claims for defamation and intentional infliction of emotional distress.

1

is based on Defendant's Louisiana state court proceeding and the TRO entered against Plaintiff therein – because she both initiated the civil action and sought the TRO on a single form at the same time. She appears to argue that due to this fact, her request for a TRO – which Plaintiff claims was motivated by collateral goals relating to the Title IX investigation and not by Defendant's concern for her safety – cannot represent a "misuse" of legal process *after it was issued*. This contention is unavailing, as (1) there is no legal authority to support it, and (2) requests for injunctive relief in civil proceedings for collateral purposes routinely form the bases for abuse of process claims, at least in North Carolian.

Moreover, under both North Carolina and Louisiana law, Plaintiff's factual allegations giving rise to an inference of an agreement between Defendant and Sue Roe are sufficient to allege a civil conspiracy, including the coordination of Defendant's and Sue Roe's statements in the Title IX investigation and attempts to cover up the timeline in which they came to know each other, which happened before Plaintiff's interactions with Defendant. Despite Defendant's suggestion to the contrary, the "plausibility" pleading standards that apply to federal court litigation under the *Iqbal* and *Bell Atl. Corp. v Twombly,* 550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007) decisions do not require specific allegations of an agreement for a conspiracy claim to withstand dismissal under Fed. R. Civ. P. 12(b)(6).

Plaintiff concedes that there is a conflict of law concerning his tortious interference claim, but challenges Defendant's assertion that Louisiana law should be applied to this claim. Defendant's reliance on Louisiana's extremely restrictive interpretation of tortious interference with contract is misplaced. Under North Carolina's choice-of-law principles, the Court should adjudicate the motion to dismiss the tortious interference claim under South Carolina law, where

Plaintiff resides. The Amended Complaint undoubtedly states a claim for tortious interference under South Carolina law.

For these reasons, and those stated below, the Court should deny Defendant's Motion.

<div align="center">

**STATEMENT OF FACTS[2]**
</div>

Plaintiff is a resident of South Carolina. Am. Compl. ¶¶ 6, 45. At the time the action was filed Defendant was a resident of North Carolina. Am. Compl. ¶ 9. *See* ECF Nos. 1, 29-2.

### A.  Plaintiff's Background

Plaintiff enrolled in Tulane in mid-2018 and commenced his studies in Finance, Management and Psychology in August of that year, with the intention of pursuing an M.B.A. upon his expected graduation in 2022. Am. Compl. ¶ 11. Plaintiff was an exemplary student and member of the community during his time at Tulane. *See id.* ¶ 12. He served as Co-President of Tulane's section of a national service organization for two years and served as the treasurer of the Food Recovery Network, which assists individuals at homeless shelters. *Id.* On track to graduate with *cum laude* honors, Plaintiff was a Merit Scholarship recipient and a tutor in Tulane's tutoring center. *Id.*

When Plaintiff enrolled in Tulane, he understood that Tulane was offering him a fair and equitable educational experience in which he would be protected from actions by other students deemed "Prohibited Conduct" under the Tulane University Code of Student Conduct (the "Code"). *Id.* ¶ 13. Under the Code the following are listed as "Prohibited Conduct": (1) the "[f]urnishing [of] false information to the University or to a University official", and (2) "harassment or intimidation." *Id.*

### B.  Plaintiff's Relationship With Sue Roe

---

[2] Unless otherwise specified, the facts set forth herein are alleged in the Amended Complaint.

<div align="center">3</div>

Plaintiff met Sue Roe in September 2019, just over two years prior to Plaintiff meeting Defendant. *Id.* ¶¶ 14, 19. Plaintiff and Sue Roe engaged in a casual sexual relationship from September 2019 to December 2019, and later continued to engage in consensual sexual activity with each other on an occasional basis during the period January 2020 through August 2021. *Id.* ¶¶ 14-18. Ms. Roe's statements to Plaintiff, statements to others that Plaintiff later learned about, and actions when she was in Plaintiff's presence, indicated that she was interested in a serious relationship with Plaintiff, even though Plaintiff had informed her that he did not have any such interest. *Id.* ¶ 14. After Plaintiff told Ms. Roe that he did not want to date her, Ms. Roe began telling people that she "hated" Plaintiff. *Id.* ¶ 15.

On one occasion in August 2021, Ms. Roe explained to Plaintiff that she was engaged in a sexual relationship with a different man, a man who had started "dating" another woman. *Id.* ¶16. On that occasion, at night and at Ms. Roe's home, Plaintiff and Sue Roe engaged in consensual sex. *Id.* After the sex, Plaintiff made a comment to the effect of "we may regret that later," which caused Ms. Roe to cry. *Id.* ¶ 17. Plaintiff immediately apologized for the comment, explaining that it was not meant to be interpreted as anything against Sue Roe. *Id.* Plaintiff tried to smooth over the situation and suggested that the two discuss the matter in the morning. *Id.* He then went to sleep. *Id.* Sue Roe was still upset and, while Plaintiff was asleep in her bed, she woke up one of her housemates. *Id.* ¶ 18. The housemate went into Sue Roe's room and asked Plaintiff to leave. *Id.* After being slow to respond to the request because he was still asleep, Plaintiff eventually woke up and left Sue Roe's home, texting Ms. Roe to tell her that he had left, to suggest that she lock the door, and to wish her "good night." *Id.* Plaintiff engaged in no further sexual encounters with Sue Roe. *Id.* ¶¶ 14-18.

Nearly six months later, on February 11, 2022, Ms. Roe submitted a Title IX report to Tulane, naming Plaintiff as a respondent. *Id.* ¶ 47. Ms. Roe submitted her report on the same day that Defendant submitted a Title IX report against Plaintiff. *Id.*

### C. Plaintiff's Encounters with the Defendant

Plaintiff and Defendant met in or around September 2021 through the dating app Tinder. *Id.* ¶ 19. They exchanged phone numbers at a concert in November 2021, but they did not speak or meet after that. *Id.* On January 27, 2022, Plaintiff and Defendant ran into each other at a bar near the Tulane campus. *Id.* ¶ 20. Defendant went home with Plaintiff that night, where the two went to sleep; Defendant left in the morning. *Id.* Plaintiff and Defendant met each other on two occasions shortly thereafter: (1) on January 29, when they attended Plaintiff's fraternity "date party"; and (2) on February 3, a short time after midnight on Plaintiff's birthday, February 2. On January 29, after returning back to Plaintiff's room from the party, they spent a few hours trying to engage in consensual intercourse, napping and then actually engaging in consensual sexual intercourse. *Id.* ¶ 25. Thereafter, around 9 p.m. that evening, Plaintiff walked Defendant home engaging in friendly conversation; Defendant gave Plaintiff a tour of the house she was living in, alluded to Plaintiff returning to her house in the near future, and kissed Plaintiff goodbye. *Id.* Plaintiff returned home. *Id.*

On February 2, 2022, the two exchanged texts, and around midnight, Plaintiff texted Defendant to ask if she wanted to get together. *Id.* ¶ 27. She replied that she did. *Id.* Plaintiff met Defendant outside of her house, and the two walked to Plaintiff's house, where, in his bedroom, they engaged in consensual, sexual intercourse. *Id.* ¶ 28 Plaintiff wore a condom during the encounter and Plaintiff went to sleep immediately after. *Id.* The morning of February 3, after the two kissed, Plaintiff walked Defendant home, engaging in friendly conversation. *Id.* ¶ 30. When

5

they arrived at Defendant's home, they kissed and Defendant wished Plaintiff a happy birthday. Plaintiff returned home. *Id. Id.*

Plaintiff observed strange behavior by Defendant. During the "date party" on January 29, Defendant told Plaintiff that a fellow party attendee, "K.S.," had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. *Id.* ¶ 43. At one point during the "date party," the two walked by Sue Roe. *Id.* Shortly after, Defendant asked Plaintiff, "Is there anyone you're avoiding here?" *Id.* ¶ 24. Later, when the two were in bed at Plaintiff's home, Plaintiff was unable to engage in intercourse; in response, Defendant told Plaintiff that it was alright, that she was too drunk to have sex anyway. *Id.* ¶ 25. Plaintiff found this statement strange since he observed that Defendant had only had two drinks over the course of a five-hour period. *Id.*

Further, after informing Tulane student friends of his that he had invited Defendant to the "date party," he learned that Defendant reportedly made a complaint to Tulane about her ex-boyfriend's violation of COVID-19 guidelines shortly after he ended his relationship with Defendant. *Id.* ¶ 21. This resulted in Defendant's ex-boyfriend being banned from campus. *Id.*

## D. Defendant's Retaliatory Conduct

The night following the second sexual encounter between the parties, February 3, 2022, Plaintiff, out at a bar with friends, ran into a woman on whom he had a crush. *Id.* ¶ 31. Plaintiff and his "crush" spoke for over an hour, after which they went to Plaintiff's house and engaged in consensual sexual activity. *Id.* Defendant saw Plaintiff conversing with the woman at the bar. *Id.* ¶¶ 31, 68, 82-86. Defendant's close friend and roommate told the Tulane investigator that Defendant changed her account of her consensual sexual encounter with Plaintiff to a sexual misconduct narrative only after seeing him out with another woman. *Id.* ¶ 85.

6

On February 4, 2022, Defendant stated to one of Plaintiff's friends, T.R., that Plaintiff had "engaged in nonconsensual sexual activity." *Id.* ¶ 32. Three days later, on February 7, a friend of Plaintiff's informed him that negative rumors about him were spreading, and alerted him to an Instagram post by a close female friend of Sue Roe's stating that "Being friends with a sexual assaulter means you are part of the problem[,]" and indicating that she was referring to Plaintiff. *Id.* ¶ 33. As well, another friend alerted him to a post **by Defendant** on Instagram stating that "Being drunk is not an excuse for Sexual Assault." *Id.* ¶ 34. Additionally, another Tulane student told Plaintiff that she had heard from three different individuals that Plaintiff had assaulted a Tulane student. *Id.* ¶ 35.

Unbeknownst to Plaintiff at the time, on February 6, 2022, Defendant reported her false accusations against him to Tulane's Case Management and Victim Support Services. *Id.* ¶¶ 45-46.

On the evening of February 8, 2022, Defendant texted Plaintiff, falsely claiming that Plaintiff had engaged in inappropriate sexual behavior. *Id.* ¶ 37. Her text contained the statement, "You are… a repeat offender, and will not manipulate or invalidate my assault, like you did to your previous victim." *Id.* Plaintiff was shocked by the text as he knew that Defendant's allegations of nonconsensual conduct were false. *Id.* ¶ 38. On February 9, the president of Plaintiff's fraternity told Plaintiff that Defendant had called him claiming that Plaintiff had assaulted her and telling him that she was "going to the school" with her accusations. *Id.* ¶ 39. Plaintiff also learned from friends that Defendant was approaching Plaintiff's female friends and asking them to spread her accusations of sexual misconduct "like wildfire." *Id.* ¶ 40. Defendant texted a screenshot of her message to Plaintiff to other Tulane students, identifying Plaintiff as "rapist." *Id.* ¶ 43. The false accusations against Plaintiff were widely disseminated, reaching students studying in Spain. *Id.* ¶¶ 35-36.

On February 10, 2022, Plaintiff's fraternity president sent a message to the fraternity chat group spreading Defendant's false allegations. *Id.* ¶ 44. The president refused to change or delete his message spreading the false information. *Id.*

On February 11, 2022, Defendant and Sue Roe simultaneously submitted Title IX/Sexual Misconduct Reports against Plaintiff. *Id.* ¶ 47.

When speaking with Tulane's Title IX investigator, Defendant acknowledged speaking to Plaintiff's fraternity president, resulting in Plaintiff getting kicked out of his fraternity. *Id.* ¶ 51. Defendant also bragged to friends that Plaintiff would be banned from campus. *Id.* ¶ 54. On February 18, 2022, Tulane imposed an indefinite campus ban on Plaintiff. *Id.*

Defendant complained to the Title IX investigator that Plaintiff "slept with so many girls," and expressed her desire to have Plaintiff expelled. *Id.* ¶ 53. Defendant further stated that she wanted her sexual misconduct claim to be "attached to [Plaintiff's] name." *Id.* Defendant also asked at least one of Plaintiff's friends about Plaintiff's work plans and expressed her desire that Plaintiff lose "a nice comfy little job that he had all lined up by mommy and daddy," and. *Id.* ¶ 86.

On March 12, 2022, Defendant posted a Tik Tok about Plaintiff—immediately after he started contacting witness to gather information for his defense in the Title IX investigation. *Id.* ¶ 76.

### E.  <u>Plaintiff Returned Home Due to Threats to His Safety</u>

On February 8, 2022, Plaintiff's friends called his parents and told them it was not safe for Plaintiff to remain on the Tulane campus. *Id.* ¶ 39. On February 10, 2022, Plaintiff's mother flew to Louisiana to bring Plaintiff home. *Id.* ¶ 45. Due to the mental anguish and heightened anxiety Plaintiff was experiencing as a result of the false accusations, Plaintiff returned home to South Carolina. On February 11, 2022, Plaintiff withdrew from Tulane for the semester. *Id.*

8

### F. **Defendant's Petition for a Temporary Restraining Order**

On March 16, 2022, Defendant filed a Petition for Protection From Abuse, resulting in the immediate issuance of a Temporary Restraining Order ("TRO"), in Louisiana civil court. *Id.* ¶ 87; Declaration of Andrew T. Miltenberg, dated January 17, 2024, ("Miltenberg Decl."), Ex. 1. The TRO barred Plaintiff from contacting Defendant through third parties and from entering the Tulane campus. Am. Compl. ¶ 87; Miltenberg Decl., Ex. 1, TRO, at p. 3. Defendant grounded her Petition in a conversation that Plaintiff had with a witness in the Title IX investigation who voluntarily spoke to Plaintiff by phone. Am. Compl. ¶ 88; Miltenberg Decl., Ex. 1, Petition, at p. 2. She also cited Plaintiff's phone calls to his own friends to discuss the Title IX investigation. *Id.* The Petition falsely alleged that Plaintiff had been harassing, intimidating, and stalking Defendant – when in fact Plaintiff had neither contacted Defendant nor had attempted any such contact since he had first learned of her accusations through mutual friends. Am. Compl. ¶ 87; Miltenberg Decl., Ex. 1, Petition, at pp. 2-3. Defendant knew that her TRO application was baseless, but filed it in order to prevent Plaintiff from defending himself in the Title IX investigation and to bolster her Title IX report. Am. Compl. ¶ 88. She also pursued the application for the purpose of pursuing a personal vendetta against Plaintiff and to further defame and retaliate against him. *Id.* ¶¶ 111-116. Defendant knew that Tulane would view the TRO as evidence against Plaintiff. *Id.* ¶ 89. Defendant's Petition expressly referenced the Tulane Title IX proceeding. Miltenberg Decl., Ex. 1, Petition, at p. 3 ("I have an open Title IX case with Tulane University that is currently being summarized by the investigator.") Though Defendant asserted that Plaintiff "stalked, harmed/threatened to harm" her acquaintances, she also indicated that Plaintiff had no history of violence towards others. Miltenberg Decl., Ex. 1, Info. for Service of Process.

9

Defendant failed to appear at the hearing held on her TRO application. *Id.* ¶ 89. Notably, Plaintiff, who had returned to New Orleans from his home in South Carolina to attend the hearing, saw Defendant at the airport in New Orleans shortly after he had left the hearing. *Id.*

## G.  Defendant and Sue Roe's Coordinated Action Against Plaintiff

On January 28, 2022, N.B. and Defendant had a conversation about Sue Roe's negative opinion of Plaintiff. *Id.* ¶ 56. N.B. stated that Defendant expressed a desire to learn more about Ms. Roe's experience with Plaintiff. *Id.* ¶ 57. There is evidence that Defendant and Ms. Roe connected on Instagram on or around January 28, 2022, prior to Defendant's sexual encounters with Plaintiff. *Id.* ¶¶ 21-31, 60-67. On January 29, Defendant asked Plaintiff a cryptic question after seeing Ms. Roe at a party. *Id.* ¶¶ 23-24. Defendant's text to Plaintiff on February 8, 2022 referenced Plaintiff's purported "previous victim." *See id.* ¶ 37.

On February 11, 2022, Defendant and Ms. Roe simultaneously submitted false Title IX/Sexual Misconduct reports claiming that Plaintiff had engaged in nonconsensual sexual activities with them. *Id.* ¶ 47. Their false allegations were similar. *Id.* Plaintiff believes that Defendant and Ms. Roe scheduled their interviews to be within one hour of each other on February 16, 2022. *Id.* ¶ 50. Defendant's false statements to the Title IX investigator closely mirrored Ms. Roe's false statements. *Id.* ¶ 51. Defendant told the Title IX investigator that she was aware of Ms. Roe's "situation" but would let Ms. Roe "tell you her story." *Id.*

During the Title IX investigation, Defendant claimed that mutual friends connected her with Ms. Roe on February 8, 2022 and that she learned about Roe's allegations against Plaintiff after she reported her own. *Id.* ¶ 58. When Plaintiff challenged the evidence that Defendant provided to the Title IX investigator concerning the timing of her connection with Ms. Roe, Defendant failed to verify the evidence, instead criticizing Plaintiff's "Self-validated analysis

10

[that] fails to consider any other point of view than Plaintiff's – a white male college student." *Id.* ¶ 59. There is significant evidence—including the contradictory statements of their friends—that Defendant and Sue Roe made false reports to the Title IX investigator about when they first connected in order to cover up their coordinated efforts to defame and injure Plaintiff. *Id.* ¶¶ 55-67.

### H.  Plaintiff Was Substantially Injured By Defendant's Misconduct

On May 8, 2022, Plaintiff was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate. *Id.* ¶ 90. Defendant strategically exploited and manipulated Tulane's Title IX process to pursue a false report of sexual misconduct, colluded and conspired with Sue Roe to defame and emotionally and financially injure Plaintiff, and deprived Plaintiff of the benefit he was to receive from his contract with Tulane under the Code. *Id.* ¶¶ 91, 148.

Defendant exploited Tulane's Title IX procedures to "harm Plaintiff's reputation, destroy Plaintiff's relationship with his friends and fraternity, and harm his academic career and future career plans." *Id.* ¶ 91. By such action, Defendant deprived Plaintiff of the benefit he was to have received from his relationship with Tulane under the Code. *Id.*

### ARGUMENT

### THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS

Defendant incorrectly contends that the Court should apply Louisiana law to each of the three of the claims she seeks to have dismissed. North Carolina courts apply ***North Carolina law*** where no conflict exists between North Carolina law and the law of another state with respect to a particular claim. *See, e.g., Volvo Constr. Equip. N. Am, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599–600 (4th Cir. 2004) ("A federal court exercising diversity jurisdiction is obliged to apply  the

substantive law of the state in which it sits, including the state's choice-of-law rules.");[3] *Info. Control Sys., Inc. v. Avesta Techs., Inc.*, No. 1:99CV217-T, 2000 WL 1409862, at *3 (W.D.N.C. Sept. 6, 2000) (where "substance of New York and North Carolina contract law [wa]s identical, there [wa]s no need to determine what law to apply because no conflict exists"). Defendant failed to identify any conflict of law relevant to Plaintiff's abuse of process or conspiracy claims. Moreover, under North Carolina choice of law principles, South Carolina law – and not Louisiana law – should apply to Plaintiff's claim for tortious interference with contract.

When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A motion to dismiss should be denied when the complaint contains facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A claim is plausible if its "factual allegations [are] enough to raise a right to relief above the speculative level." *Id.* A complaint needs only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. It need not have "detailed factual allegations," just something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As fully set forth below, the Amended Complaint plausibly alleges claims for abuse of process, civil conspiracy and tortious interference with contract, warranting the denial of Defendant's motion to dismiss in its entirety.

## I.      The Amended Complaint States A Claim for Abuse of Process

Plaintiff has adequately alleged a claim for abuse of process because he has alleged that (1) Defendant initiated legal process against him in Louisiana civil court, and (2) in connection therewith, improperly utilized the mechanism of obtaining injunctive relief to achieve objectives

---

[3] Defendant concedes that the Court has diversity jurisdiction in this action and that it must apply North Carolina's choice-of-law rules. Moving Br. at 8, 11, 14.

collateral to the Louisiana action Defendant commenced. This is true both under North Carolina law, which the Court should apply in determining the sufficiency of Plaintiff's allegations, or under Louisiana law, which Defendant has asked the Court to apply instead.

Where no conflict of law exists concerning a specific legal issue or claim, this Court may apply North Carolina law to promote efficient litigation. *See Info. Control Sys., Inc.* 2000 WL 1409862, at *3. With respect to Plaintiff's abuse of process claim, North Carolina and Louisiana law are identical. Under the law of both states, the required elements for the tort are (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. *Compare Magnolia Island Plantation, LLC v. Lucky Fam., LLC*, No. CV 18-1526, 2020 WL 6827793, at *12–13 (W.D. La. Nov. 20, 2020) *with Scott v. City of Durham*, No. 1:20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021). Plaintiff has plausibly alleged an abuse of process claim under North Carolina law. *Barnette v. Woody*, 242 N.C. at 431, 88 S.E.2d at 227–28; *Scott*, 2021 WL 3856168, at *2.

As to Defendant's Petition and TRO in Louisiana civil court, Plaintiff sufficiently alleges both elements of an abuse of process claim as set forth in *Barnette*.[4]

***First***, Plaintiff alleges that Defendant had an ulterior motive in filing the Petition for Protection from Abuse in Louisiana civil court in March 2022 – to obtain certain advantages in the Title IX investigation she had initiated against Plaintiff the previous month, and as a form of revenge against Plaintiff. *See* Amend. Compl. ¶¶ 87-89, 111-120. Plaintiff alleges that "[t]he TRO falsely alleged that Plaintiff had been harassing, intimidating, and stalking Jane Doe despite the fact that Plaintiff had had no contact with Jane Doe since he first heard of her false claims through

---

[4] Plaintiff is not pursuing a claim for abuse of process on the theory that Defendant used Tulane's Title IX process for an illegitimate objective because Plaintiff concedes that the Title IX investigation is not a legal process. *See* Moving Br. at 10; Am. Compl. ¶¶ 116-120.

13

mutual friends." *Id.* ¶ 87. The friends Jane Doe identified in the TRO were also friends with Plaintiff. *Id.* ¶ 88.

**Second**, Plaintiff alleges that Defendant's use of the TRO was "not proper in the regular prosecution of the proceeding." *Barnette*, 242 N.C. at 431, 88 S.E.2d at 227–28. Defendant also misused legal process already issued. *See* Moving Br. at 11. When filling out the Petition, Jane Doe not only initiated legal process, but immediately enjoined Plaintiff from engaging in certain activities through the issuance of an *ex parte* TRO. Miltenberg Decl., Ex. 1, at pp. 1, 4-5.[5] The TRO remained in place until Plaintiff could "show cause" why it should not be converted into a permanent protective order. *Id.*

Defendant used the TRO as a means of preventing Plaintiff from interviewing witnesses in the Title IX investigation. Am. Compl. ¶ 88. She also used the TRO to "bolster her claims" against Plaintiff in the Title IX investigation through which he was expelled. *Id.* ¶¶ 88, 90. Defendant's improper use of the TRO is exemplified by her failure to follow through on the process once she achieved her goals–she failed to attend the hearing on the protective order. *Id.* ¶ 89.

North Carolina courts routinely find the seeking of injunctive relief in a proceeding for purposes that relate to matters outside the proceeding as misuse of already issued legal process forming the basis for successful abuse of process claims, and such determinations are routinely upheld by the state's appeals courts. *See, e.g., Chidnese v. Chidnese,* 210 N.C.App. 299, 313-14, 708 S.E.2d at 725, 735-36 (2011) (concluding that obtaining an *ex parte* temporary restraining order and filing a motion stating that party had violated the TRO, where there was no basis for

---

[5] *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."); *Parker v. Homestead Studio Suites Hotel*, No. 5:05–cv–69–BR, 2005 WL 3968291, at *1 (E.D.N.C. May 13, 2005) ("[T]he district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment").

14

either action, constituted abuse of process); *Pinewood Homes, Inc. v. Harris,* 184 N.C.App. 597, 603, 646 S.E.2d 826, 831 (2007) (concluding that plaintiff stated a claim for abuse of process where plaintiff alleged that defendant sought an injunction to coerce the plaintiffs to pay a judgment for which they were not responsible). Such rulings have been based on requests for protective orders relating to the threat of domestic violence. *See, e.g., Buck v. Buck*, 239 N.C. App. 466, 770 S.E.2d 389 (2015).

In *Buck*, the Court of Appeals affirmed a lower court's denial of a defendant's motions for a directed verdict and for judgment notwithstanding the verdict (JNOV) respecting a jury verdict for the plaintiff on an abuse of process claim based in part on defendant's having obtained a "temporary DVPO" – a "domestic violence protective order" under NCGS § 50B. 2015 WL 680267 at *4-*5. Its ruling turned on the fact that there existed "more than a scintilla of evidence that defendant misused legal process with an ulterior motive to achieve a collateral purpose not within the normal scope of the process used." *Id.* at *5 (citation and internal quotation omitted).[6]

To the extent Defendant contends that an abuse of process claim cannot be based upon the filing of a Petition for Protection from Abuse because Louisiana's Petition form allows a petitioner to both initiate a proceeding and seek injunctive relief in a single document, she has failed to cite any authority supporting the contention.[7] Neither *Foster* nor *Delcambre* offer any such holding.

---

[6] *Cf. Gentile v. City of Solon*, No. 1:12CV1657, 2013 WL 123621, at *5 (N.D. Ohio Jan. 9, 2013) (applying Ohio law, finding that allegation that the defendant's obtaining "a protective order derivative of [a] domestic violence action" involving the defendant and the plaintiff (defendant's former husband) to "gain[ ] sole possession of the marital residence" established the "second element" of plaintiff's abuse of process claim – that a legal proceeding "had been perverted to attempt to accomplish an ulterior purpose for which it was not designed" – for pleading purposes) (citation and internal quotation omitted).

[7] Plaintiff submits that references to a requirement of misuse of *"legal process **already issued**"* in Defendant's Motion, and in caselaw she has cited, are intended to emphasize that the mere filing and service of a document in court initiating a proceeding (i.e., the commencement of "legal process") with an ulterior purpose is an insufficient basis for an abuse of process claim. *See, e.g., Fox v. City of Greensboro*, 2021-NCCOA-489, ¶ 83, 279 N.C. App. 301, 327, 866 S.E.2d 270, 291 (the second required element of abuse of process "is satisfied [only] when the plaintiff alleges that ***once the prior proceeding was initiated***, the defendant committed some willful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter.") (emphasis added). Here, Plaintiff's claim is not focused on the initiation of the Louisiana proceeding by Defendant; rather, it attacks the TRO

15

Moreover, Defendant's reliance on these cases is misplaced as they are both distinguishable from the case at bar. *See* Moving Br. at 11.

In *Foster v. Bias*, 358 So. 3d 520, 536 (La. Ct. App. 2022), the court held that "[t]he tort of abuse of process involves the misuse of a process whereby a party attempts to obtain a result that is not proper under the law." 358 So. 3d at 535. It further explained, "an abuse of process occurs when the actor employs a legal process in a manner that although technically correct, is for a wrongful and malicious purpose to obtain an unjustifiable end or an object that it was not the purpose of the particular process employed to effect." *Id.* at 536. Relying on these principles, the court affirmed the dismissal of an abuse of process claim grounded in the filing by a bankruptcy petitioner of a False Claims Act suit without informing the bankruptcy court overseeing his petition of such filing. *Id.* at 537. It held that the claim for abuse of process did "not allege that [the defendant had] misused the FCA suit to attain some collateral objective outside the scope of the operation of the process employed." *Id.* The court further noted that the plaintiff had not alleged any actual damages caused by defendant's failure to inform the bankruptcy court about the separate action. *Id. See also Delcambre v. Mancuso*, 268 So. 3d 325, 327-28, 332-33 (La. Ct. App. 2019)(allegations that a Parish sheriff and a detective in the sheriff's office investigated and sought an arrest warrant for, and caused the arrest of one of the plaintiffs, and issued a press release about the investigation and arrest with ulterior motives, where the charges against that plaintiff were dropped by the District Attorney's office, failed to state a claim for abuse of process because the two were simply following procedures). Neither *Foster* nor *Delcambre* dictate the result here, as

---

Defendant obtained against him improperly, and any request by her to upgrade the TRO into a full-blown protective order. The Amended Complaint alleges that she initiated the proceeding and sought immediate issuance of the TRO to gain an advantage in the Title IX investigation, not simply to protect herself, the purpose for which the Petition for Protection from Abuse was designed.

16

Defendant's actions involved misuse of a court procedure within a proceeding, a request for a TRO and for a protective order, and did not involve legitimate law enforcement activity.

Under the above-cited caselaw, the Amended Complaint has adequately stated a claim for abuse of process against Defendant in regard to the Louisiana civil court proceeding and Defendant's motion to dismiss this claim should be denied.

## II.       Plaintiff Has Plausibly Alleged A Civil Conspiracy Claim

Defendant's Motion omits any reference to a conflict of state law concerning the civil conspiracy claim set forth in the Amended Complaint; it simply argues that the claim "is governed by Louisiana law because his alleged injury occurred in Louisiana." Moving Br. at 14. Where no conflict of law exists concerning a specific legal issue or claim, this Court may apply North Carolina law to promote efficient litigation. *See, e.g., Info. Control Sys., Inc.* 2000 WL 1409862, at *3. Here, North Carolina and Louisiana law concerning the elements of a conspiracy claim are identical.

Under both North Carolina and Louisiana law, civil conspiracy does not constitute a 'stand alone' cause of action but rather a "mode of liability … derivative of other claims against a party[.]" *Fox v. Fox*, 2022-NCCOA-334, ¶ 27, 283 N.C. App. 336, 347, 873 S.E.2d 653, 662, *review denied*, 880 S.E.2d 694 (N.C. 2022), *and review dismissed*, 880 S.E.2d 698 (N.C. 2022); *Doe v. McKesson*, 71 F.4th 278, 287 (5th Cir. 2023) (applying Louisiana law) (civil conspiracy is "not itself an actionable tort" and "[o]perationally . . . assigns liability for an underlying unlawful act to a person who acted in concert with the direct tortfeasor").

Under North Carolina law, "the elements of a civil conspiracy are: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant

to a common scheme." *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (quotation omitted); *Kasparov, PTE LTD v. Zacherl*, No. 5:22-CV-503-D, 2023 WL 4752376, at *14 (E.D.N.C. July 25, 2023). Moreover, the acts at which the conspiracy aims must actually have been committed. *See, e.g.,* ==*Fox,* 236 N.C. App. at 346, 873 S.E.2d at 662== ("A civil action for conspiracy is an action for damages resulting from acts committed by one or more of the conspirators pursuant to the formed conspiracy, rather than the conspiracy itself.") (quoting *Burton v. Dixon*, 259 N.C. 473, 476, 131 S.E.2d 27, 30 (1963)). Under Louisiana law, to succeed on a civil conspiracy claim, a plaintiff must establish the following elements: "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result." *McKesson*, 71 F.4th at 287. The Court may therefore apply North Carolina law to adjudicate Defendant's motion to dismiss the civil conspiracy claim.

Whether assessed under North Carolina or Louisiana law, the Amended Complaint states a claim for civil conspiracy. Defendant concedes that Plaintiff plausibly alleged the torts of defamation and intentional infliction of emotional because they are not the subject of her Motion. *See* Am. Compl. ¶¶ 92-109, 136-146. Defendant attacks Plaintiff's conspiracy claim on the sole ground that Plaintiff failed to plausibly allege an agreement between Defendant and Sue Roe "to defame" Plaintiff. *See* Moving Br. at 14-18.[8]

Plaintiff has plausibly alleged an agreement between Defendant and Sue Roe to file false and defamatory Title IX reports with Tulane in order to inflict maximum harm to Plaintiff. On January 28, 2022, N.B. and Defendant had a conversation about Sue Roe's negative opinion of

---

[8] Notably, Plaintiff's civil conspiracy claim is not limited to defamation. It can be applied to any unlawful or tortious conduct that is established in this lawsuit. Plaintiff has alleged that Defendant and Sue Roe acted in concert with the common purpose to defame Plaintiff and *inter alia* injure him emotionally. Am. Compl. ¶¶ 33, 37, 42, 47, 50-51, 55-67, 91, 148.

18

Plaintiff. *Id.* ¶ 56. N.B. stated that Defendant expressed a desire to learn more about Ms. Roe's experience with Plaintiff. *Id.* ¶ 57. There is evidence that Defendant and Ms. Roe connected on Instagram on or around January 28, 2022, prior to Defendant's sexual encounters with Plaintiff. *Id.* ¶¶ 21-31, 60-67. In addition, Defendant asked Plaintiff a cryptic question after seeing Ms. Roe at a party. *Id.* ¶¶ 23-24. Defendant's text to Plaintiff on February 8, 2022 referenced Plaintiff's purported "previous victim." *See id.* ¶ 37.

On February 11, 2022, Defendant and Ms. Roe simultaneously submitted false Title IX/Sexual Misconduct reports claiming that Plaintiff had engaged in nonconsensual sexual activities with them. *Id.* ¶ 47. Their false allegations were similar. *Id.* Plaintiff believes that Defendant and Ms. Roe scheduled their interviews to be within one hour of each other on February 16, 2022. *Id.* ¶ 50. Defendant's false statements to the Title IX investigator closely mirrored Ms. Roe's false statements. *Id.* ¶ 51. Defendant told the Title IX investigator that she was aware of Ms. Roe's "situation" but would let Ms. Roe "tell you her story." *Id.*

During the Title IX investigation, Defendant claimed that mutual friends connected her with Ms. Roe on February 8, 2022. *Id.* ¶ 58. When Plaintiff challenged the evidence that Defendant provided to the Title IX investigator concerning the timing of her connection with Ms. Roe, Defendant failed to verify the evidence, instead criticizing Plaintiff's "Self-validated analysis [that] fails to consider any other point of view than Plaintiff's – a white male college student." *Id.* ¶ 59. There is significant evidence that Defendant and Ms. Roe reported a false timeline to the Title IX investigator to cover up their coordinated efforts to defame and cause harm to Plaintiff. *Id.* ¶¶ 55-67.

In light of these allegations, Defendant is simply incorrect that Plaintiff's conspiracy claim was pled in conclusory fashion. *See* Moving Br. at 17. Defendant appears to impose a heightened

19

pleading requirement on Plaintiff—requiring him to plead direct evidence of an agreement. However, it is well settled under North Carolina—and Louisiana—law that a conspiracy may be pled and proven using circumstantial evidence. *See, e.g., L.P. v. Wake Cty. Bd. of Ed..,* No. 5:20-CV-481-BO, 2022 WL 2813038, at *10 (E.D.N.C. July 18, 2022) ("Plaintiffs are 'not required to provide direct evidence of the agreement between conspirators. Circumstantial evidence may provide adequate proof of the existence of such a conspiracy.'") (quoting *Hafner v. Brown*, 983 F.2d 570, 576-77 (4th Cir. 1992)); *Payne v. Stanley*, 316 So. 3d 104, 113 (La. Ct. App. 2021) ("A conspiracy may be proved by circumstantial evidence.") (citation and internal quotation omitted). As a recent Middle District of North Carolina decision explains, "[a]t the motion to dismiss stage," a plaintiff "is not required to allege specific facts to support the existence of an agreement between the [d]efendants." *White v. City of Greensboro*, 408 F. Supp. 3d 677, 715 (M.D.N.C. 2019), *vacated in part (on other grounds)*, 586 F. Supp. 3d 466 (M.D.N.C. 2022) (quoting *Godfredson v. JBC Legal Grp., P.C.*, 387 F. Supp. 2d 543, 549 (E.D.N.C. 2005)) (internal quotations omitted). *See also McCarter v. Univ. of N. Carolina at Chapel Hill*, No. 1:20-CV-1050, 2021 WL 4482983, at **21–22 (M.D.N.C. Sept. 30, 2021) (plaintiff satisfied *Iqbal/Twombly* by alleging a number of facts that gave rise to inference of an agreement between professors not to publish plaintiff's work); *Bennett v. Bennett*, No. 18 CVS 48, 2019 WL 1262472, at *11 (N.C. Super. Mar. 15, 2019) (unpublished) (denying motion to dismiss civil conspiracy claim where pleading identified several communications between three defendants "that tend[ed] to support the existence of [ ] an agreement" to perform unlawful acts).

Moreover, each of the Louisiana cases cited by Defendant in support of her contention that Plaintiff's conspiracy is insufficiently alleged is distinguishable from the case at bar. *Zuniga v. Masse Contracting, Inc.*, 290 F. Supp. 3d 581 (E.D. La. 2017), involved a claim of conspiracy

20

under 42 U.S.C. § 1985(3), which is subject to a pleading-with-specificity requirement. *See id.* In each of the remaining cases, the pleading in question included legal conclusions concerning the existence of a conspiracy but provided no facts to indicate that the parties to the alleged conspiracy had made any agreement; the court dismissed the conspiracy claim accordingly. For example, in *Doe v. McKesson*, 71 F.4th 278, 287 (5th Cir. 2023), the claim alleging a conspiracy to strike plaintiff police officer between the defendant and an unknown Black Lives Matter protester was based entirely on the allegation that the defendant had agreed with the protesters generally "to protest in front of [a] police station and attempt to block a public highway." *Id.* at 282. In *Riggs v. DXP Enters., Inc.*, No. 6:18-CV-00729, 2018 WL 3967746, at *5 (W.D. La. Aug. 2, 2018), the court found that "no facts were alleged regarding any agreement among the defendants [and] there [wa]s no allegation that the defendants agreed to defame the plaintiff or to interfere with her ability to be hired by another company." *See also Ellis v. Pinckley*, No. 5:22-cv-00345, 2023 WL 4417255, at *8 (W.D. La. May 25, 2023) (a review of the Second Amended Complaint (Dkt. #41) and Third Amended Complaint (Dkt. #57) in the action demonstrates that the sole allegation supporting the existence of a conspiracy among defendants was a statement that a large number of defendants "conspired with each other."); *K&F Rest. Holdings, Ltd. v. Rouse*, No. CV 16-293-JWD- EWD, 2018 WL 3553422, at *13 (M.D. La. July 24, 2018) (dismissing a claim of a civil conspiracy among the defendants "to exclude and group boycott the plaintiffs from highly desirable [real estate] developments" where (1) the only the "specific allegations" supporting the existence of an agreement between certain defendants were that they had entered into lease agreements concerning highly desirable developments containing legal restrictive covenants that restricted Plaintiff and (2) the remaining allegations involved phone calls discussing plaintiffs' products as being substandard.), *aff'd on other grounds*, 798 F. App'x 808 (5th Cir. 2020).

21

The Amended Complaint contains factual allegations that are sufficient to raise Plaintiff's right to relief under a civil conspiracy theory involving Defendant and Sue Roe "above the speculative level." *Houck*, 791 F.3d at 484. Accordingly, Plaintiff has stated a claim for civil conspiracy that is "plausible on its face." *Id.* Defendant's motion to dismiss the conspiracy claim should, accordingly, be denied.

### III.    Plaintiff Has Plausibly Alleged A Claim for Tortious Interference With Contract Under South Carolina Law

Plaintiff has plausibly alleged that Defendant tortiously interfered with Plaintiff's contract with Tulane under South Carolina law. Defendant's sole basis for seeking dismissal of the tortious interference claim is that under Louisiana law, such a claim can only be brought against a corporate officer who is alleged to have interfered with a contract between the corporation of which she is an officer and a third party, and here Defendant is not an officer of Tulane. Moving Br. at 11-13. Under North Carolina conflict of law principles the law of South Carolina, where Plaintiff lives and lived during the relevant time period, applies to the claim, Defendant's argument is unavailing.

Under North Carolina's choice-of-law rules, South Carolina law should be applied to Plaintiff's tortious interference claim. "A federal court exercising diversity jurisdiction applies the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Constr. Equip.*, 386 F.3d at 599-600. "North Carolina uses the law of the situs test to determine the choice of law for tort claims." *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, No. 5:22-CV-470-D, 2023 WL 2959868, at *4 (E.D.N.C. Apr. 14, 2023) (citing *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988)); *Harco Nat'l Ins. Co. v. Grant Thornton*, LLP, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010)). "[T]he state where the injury occurred is considered the situs of the claim." *Boudreau*, 322 N.C. at 335, 368 S.E.2d at 854; *see Harco*, 206 N.C. App. at 692, 698 S.E.2d at 722. "In cases involving

financial injuries, courts have considered the injury to be sustained where the economic loss was felt." *Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 669 (W.D.N.C. 2012) (quotation omitted).

The Amended Complaint alleges that Plaintiff is a resident of South Carolina. Am. Compl. ¶ 6. Plaintiff returned home to South Carolina on February 10, 2022, when he left Tulane to reduce the mental anguish and heightened anxiety he experienced due to Defendant's false accusations against him. *Id.* ¶¶ 45; 89. Plaintiff has alleged that he suffered economic, reputational and emotional harm from the false accusations in the Title IX report that Defendant filed with Tulane's Office of Student Conduct, interfering with Plaintiff's contractual relationship with the University, *in South Carolina*. Plaintiff was in South Carolina when the Office of Student Conduct issued its February 18, 2022 letter banning Plaintiff from the campus and commencing "interim measures" in response to Defendant's allegations. *Id.* ¶¶ 54, 131. The most significant damages Plaintiff alleges that he has sustained – "emotional distress, damage to reputation, loss of educational and career opportunities [and] loss of future earning capacity" – have been felt by him in South Carolina, not in Louisiana, where he was ***not*** living during the Title IX investigation, when the campus ban was imposed and when he was expelled from Tulane. Am. Compl. ¶¶ 45, 54, 90. The damages that continue to impact Plaintiff's future will not be felt in Louisiana, where Plaintiff no longer studies or intends to work and live. Under the allegations of the Amended Complaint, Plaintiff is sustaining ongoing damages in South Carolina.

Accordingly, following *Waterford I* and the caselaw cited therein, the Court should assess Defendant's motion to dismiss Plaintiff's tortious interference claim under South Carolina law, not Louisiana law as asserted by Defendant.

Under South Carolina law, the elements of a tortious interference with contractual relations claim are: "1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement

23

of its breach; 4) the absence of justification; and 5) resulting damages." *Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007). ***Defendant concedes that Plaintiff has alleged each of these elements except for the absence of justification.*** Her Motion states:

> John Doe  alleges that Jane Doe was aware of his contract with Tulane, that she made false statements to prevent Tulane from performing its contract with John Doe  and that as a result, John Doe  was banned from campus and dismissed from the university, causing him to lose his tuition payment and college degree and harming his career prospects.

Moving Br. at 12 (citing Amend. Compl. ¶¶ 125-134). Absence of justification is alleged in paragraph 132 of the Amended Complaint. *See id.* ¶ 132 ("Defendant intentionally, maliciously, and without justification, induced Tulane University to cease performance of its contract with Plaintiff and dismiss him from the University.") As further alleged in the Complaint, Defendant's actions were not justified because Defendant made false statements in her Title IX report and to the Title IX investigator, destroyed evidence relevant to the investigation, coordinated with Sue Roe to make misstatements about when they first connected, pressured witnesses and manipulated evidence in order to get Plaintiff banned from campus and expelled. Am. Compl. ¶¶ 46-86.

Plaintiff has therefore stated a claim against Defendant for tortious interference with contract and Defendant's motion to dismiss this claim should be denied.

### CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Dismiss in its entirety.

Dated:   New York, New York
         January 17, 2024

Respectfully Submitted,

By:   /s/ *Andrew T. Miltenberg*
      Andrew T. Miltenberg
      NESENOFF & MILTENBERG, LLP
      363 Seventh Avenue, Fifth Floor
      New York, New York 10001

24

(212) 736-4500
kgorycki@nmllplaw.com
sbernstein@nmllplaw.com


By: /s/ *Robert C. Ekstrand*
Robert C. Ekstrand, Esq.
EKSTRAND AND EKSTRAND, LLP
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705
Tel. (919) 416-4590
rce@ninthstreetlaw.com

*Local Civil Rule 83.1(d) Counsel for Plaintiff*


*Attorneys for Plaintiff* John Doe


25

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

26

Original Filed at Docket No. 42,

Sealed by Court Order

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S MOTION FOR LEAVE TO FILE UNDER SEAL

Pursuant to Local Rule 79.2 of the U.S. District Court for the Eastern District of North Carolina Plaintiff John Doe ("Plaintiff") hereby respectively moves the Court for leave to file under seal unredacted versions of the following documents related to the motion to transfer venue under 28 U.S.C. § 1404(a) of Defendant Jane Doe ("Defendant") and to Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6):

1. Defendant's Memorandum of Law in Support of her Motion to Transfer under 28 U.S.C. § 1404(a) (the "Motion to Transfer") (ECF No. 31)

2. Exhibit 3 to Defendant's Motion to Transfer (ECF No. 30-1).

3. Exhibit 4 to Defendant's Motion to Transfer (ECF No. 30-2).

4. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

5. Exhibit F to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024--Petition For Protection From Abuse and related documents.

6. Exhibit G to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024— Pseudonym Order.

7. Exhibit 1 to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Partial Rule 12(b)(6) Motion, dated January 17, 2024-- Petition For Protection From Abuse and related documents..

This Motion is based upon this notice of Motion and the Memorandum of Law in Support of this Motion and a Proposed Order granting this Motion filed concurrently herewith.

Dated:  January 17, 2024

Respectfully Submitted,

By: /s/ *Andrew T. Miltenberg*
     Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

By: /s/ Robert C. Ekstrand
     Robert C. Ekstrand
EKSTRAND AND EKSTRAND, LLP
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2024, a true and correct copy of the foregoing was served

by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

**CERTIFICATE OF SERVICE**

I hereby certify that on January ___, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Kara L. Gorycki*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | [PROPOSED] ORDER |
| | ) | GRANTING PLAINTIFF'S MOTION |
| Defendant. | ) | FOR LEAVE TO FILE UNDER SEAL |
| | ) | |

A party may file a motion to seal with this Court pursuant to the requirements of Local 79.2. Local Rule 79.2 references Section V.G. of the Electronic Case Filing Administrative Policies and Procedures Manual ("Policy Manual"). That section of the Policy Manual requires that all motions to seal be accompanied by a supporting memorandum that specifies the following:

(i)      the exact document or item, or portions thereof, for which filing under seal is requested;

(ii)      How such request to seal overcomes the common law or the First Amendment presumption to access;

(iii)      The specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access;

(iv)      The reasons why alternatives to sealing are inadequate; and

(v)      Whether there is consent to the motion.

*See* Section V.G., CM/ECF Policy Manual. The Policy Manual also requires that any proposed order accompanying a motion to seal set forth the findings required under Section V.G.

The materials that Plaintiff seeks to file under seal are the following:

1. Defendant's Memorandum of Law in Support of her Motion to Transfer under 28 U.S.C. § 1404(a) (the "Motion to Transfer") (ECF No. 31)

1

2. Exhibit 3 to Defendant's Motion to Transfer (ECF No. 30-1).

3. Exhibit 4 to Defendant's Motion to Transfer (ECF No. 30-2).

4. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

5. Exhibit F to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024--Petition For Protection From Abuse and related documents.

6. Exhibit G to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024— Pseudonym Order.

7. Exhibit 1 to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Partial Rule 12(b)(6) Motion, dated January 17, 2024-- Petition For Protection From Abuse and related documents.

An order was issued in an action filed by Plaintiff in a federal district court in another District (the "Second Action") permitting Plaintiff to proceed in that action under a pseudonym. Plaintiff contends that these materials and documents, if filed publicly on the Court's docket, would reveal his identity in the Second Action.

A court considering a motion to maintain documents under seal must first determine the nature of the information and the public's right to access. *See, e.g., Stone v. University of Maryland Medical Systems Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). The common law presumption in favor of access attaches to all judicial records and documents; by contrast, First Amendment protection is limited to certain judicial records and documents, for example those attached to a dispositive motion. *Id.*

The presumption of access under the common law is not absolute and its scope is a matter left to the discretion of the district court. *See, e.g., Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Any presumption of access under the common law " 'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.' " *Washington Post*, 386 F.3d at 575 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988)). The party seeking the sealing of materials is only required to demonstrate the necessity and propriety of sealing the documents at issue; the court, in its discretion, may seal such documents if it deems such sealing appropriate. *Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 680 (E.D.N.C. 2003).

Here, the only information sought to be sealed *in connection with a dispositive motion* – Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) – is Plaintiff's telephone number, listed on a petition Defendant filed in Louisiana state civil court seeking a temporary restraining order against Plaintiff. The Court finds that there is no legitimate public need for access to Plaintiff's telephone number as the Court's docket provides contact information for Plaintiff's counsel.

The remaining materials Plaintiff seeks to file under seal concern Defendant's Motion to Transfer. As this motion is not dispositive, the common law right of access applies to an analysis of these materials.

Upon review of the Sealing Motion, and in evaluating the balance of interests in public access, the Court, at this time, has not been presented with any legitimate public need for access to the materials at issue. The most significant document included in the materials at issue is the

3

complaint filed in the Second Action, which is available to the public on the docket for another federal district court. The public's interest in the subpoena Plaintiff has served on Defendant in the Second Action is minimal. Plaintiff has filed redacted copies of Defendant's memorandum of law and his memorandum of law concerning the motion to transfer. The redacted portions concern the Second Action and the public filing of the information contained therein could risk the identification of Plaintiff in the Second Action.

The Court finds that balanced against the minimal impact sealing would have on public access to information, Plaintiff's interest in protecting his anonymity in the Second Action is urgent and compelling. The Second Action will involve the disclosure of private, intimate details concerning sexual interactions between Plaintiff and other individuals. *See, e.g., Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593-594 (E.D. Va. 2016) ("what justifies the use of pseudonym here is plaintiff's status as an accused perpetrator of sexual misconduct … he should not have his name forever associated in the public mind with an accusation that carries a significant social stigma"); *Doe v. Univ. of St. Thomas*, No, 16-cv-1127, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("forcing Mr. Doe to proceed under his true name would guarantee a permanent label as a sexual offender, discoverable with a simple Google search"). Moreover, because Plaintiff is challenging a university's Title IX proceeding based on sexual misconduct in the Second Action, Plaintiff faces "potential retaliatory and emotional harm" if his association with that case is exposed. *See, e.g., Doe v. Grinnell College*, No. 4:17-cv-079, 2017 WL 11646145, at *3 (S.D. Iowa July 10, 2017) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)).

In cases such as the Second Action, where students seek to expunge findings of sexual misconduct from their university records, requiring them to proceed against the universities in

4

their own name would risk causing them the very harm they are seeking to remedy. *See e.g.,* *Doe v. Virginia Polytechnic Inst.*, No. 7:21-CV-378, 2022 WL 972629, at *3-4 (W.D. Va. Mar. 30, 2022) ("Doe is seeking injunctive relief to expunge the allegations of sexual misconduct from his record. If his identity in this lawsuit is disclosed, it will greatly undermine any relief to which he may be entitled."); *Doe v. Univ. of Mississippi*, 2018 WL 1703013, at *2 (Apr. 6, 2018); *Grinnell College*, 2017 WL 11646145, at *3; *Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016).

Further supporting the issuance of an order granting of Plaintiff's Sealing Motion are the principles of comity and courtesy between different federal district courts, which militate against the "modifying or invalidating rulings from other [federal district] courts." *Owlet Baby Care, Inc. v. Masimo Corp.*, No. 2:21-MC-00096-TS-JCB, 2021 WL 1753537, at *3 (D. Utah May 4, 2021); *see also Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 1:19CV1193, 2021 WL 7162555, at *3 (M.D.N.C. Mar. 29, 2021) (quoting *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2021 WL 425889, at *1 (D.S.C. Feb. 5, 2021)); *see also, e.g.*, *Santiago v. Honeywell Int'l, Inc.*, No. 16-CIV-25359, 2017 WL 3610599, at *2 (S.D. Fla. Apr. 6, 2017) (denying a motion to modify a protective order issued by another court); *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991). "Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity [and] courtesy[.]" *Tucker*, 191 F.R.D. at 499.

Here, the materials that Plaintiff requests be filed under seal, if made accessible to the public on this Court's docket, will reveal Plaintiff as the individual who filed the Second Action.

The effect of denying the Sealing Motion would be to nullify an order issued by the federal district court in which the Second Action is pending.

The Court finds that all of these factors supporting Plaintiff's Sealing Motion outweigh the public's minimal need or interest in accessing the materials Plaintiff seeks to be filed under seal. Moreover, in an Order dated January 5, 2023 (Dkt. #8), the Court denied Plaintiff's request to proceed in this action pseudonymously, and the Fourth Circuit has affirmed that ruling (Dkt. #21-22). Accordingly, there are no alternative methods to sealing of preventing the exposure of Plaintiff's identity as the plaintiff in the Second Action in the event the materials Plaintiff seeks to file under seal are filed publicly on this Court's docket.

Based upon the foregoing, it is **ORDERED** that the following materials shall be filed under seal with this Court in accordance with Local Rule 79.2:

1. Defendant's Memorandum of Law in Support of her Motion to Transfer under 28 U.S.C. § 1404(a) (the "Motion to Transfer") (ECF No. 31)

2. Exhibit 3 to Defendant's Motion to Transfer (ECF No. 30-1).

3. Exhibit 4 to Defendant's Motion to Transfer (ECF No. 30-2).

4. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

5. Exhibit F to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024--Petition For Protection From Abuse and related documents.

6. Exhibit G to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024— Pseudonym Order.

7. Exhibit 1 to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Partial Rule 12(b)(6) Motion, dated January 17, 2024-- Petition For Protection From Abuse and related documents.

**SO ORDERED** this _____ day of _____, 2024.

_____

JAMES C. DEVER III
United States  District Judge

7

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

8

Original Filed at Docket No. 43,

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL OR IN REDACTED FORM**

**NESENOFF & MILTENBERG, LLP**
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

## INTRODUCTION

Plaintiff John Doe ("Plaintiff") respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Leave to File Under Seal. Plaintiff seeks to file, or maintain, the following documents under seal:

1. **ECF No 30-1 (Exhibit 3 to Defendant's Motion to Transfer)**: This is a complaint filed by Plaintiff in an action against Tulane University in which he has been granted pseudonym protection (the "Second Action"). Plaintiff requests that this document remain under seal so that Plaintiff's identity cannot be linked to the pending litigation.

2. **ECF No. 30-2 (Exhibit 4 to Defendant's Motion to Transfer)**: This is a subpoena served in the Second Action. Plaintiff requests that this document remain under seal so that Plaintiff's identity cannot be linked to the Second Action.

3. **ECF No. 31 (Memorandum of Law in Support of Defendant's Motion to Transfer)**: Defendant filed her brief in support of her motion to transfer under seal. Plaintiff requests that it remain under seal as the references in the brief to the Second Action could link this action to that litigation. A redacted version of the brief has been publicly filed as **Exhibit J** to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024. Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024.

4. **Petition For Protection From Abuse**: Plaintiff has redacted his phone number from the Petition for Protection From Abuse and related documents filed as **Exhibit 1** to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Partial Rule 12(b)(6) Motion, dated January 17, 2024. This document is also **Exhibit F** to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024.

5. **Pseudonym Order in Second Action:** Plaintiff requests that this Order remain under seal so that Plaintiff's identity is not linked to the Second Action. This document is **Exhibit G** to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024.

6. **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)**: Plaintiff has filed a redacted copy of this memorandum of law in the public file and requests that it be filed under seal.

The above-described documents will be referenced herein as the "Sealed Documents."

## ARGUMENT

### THE COURT SHOULD GRANT PLAINTIFF'S SEALING MOTION

Plaintiff files this Sealing Motion to preserve his ability to proceed under pseudonym in the Second Action pursuant to an order of the federal district judge presiding over that action.

This Court has the authority to seal materials contained in the record. *See, e.g., Stone v. University of Maryland Medical Systems Corp.*, 855 F.2d 178 (4th Cir. 1988). In accordance with *Stone* and the requirements of Local Rule 79.2, a party seeking to have a document under seal must comply with Section V.G. of the CM/ECF Policy Manual. Section V.G. provides that the party seeking the sealing of docketed materials must submit a supporting memorandum that specifies:

(i)     the exact document or item, or portions thereof, for which filing under seal is requested;

(ii)    How such request to seal overcomes the common law or the First Amendment presumption to access;

(iii)   The specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access;

(iv)    The reasons why alternatives to sealing are inadequate; and

(v)     Whether there is consent to the motion.

*See S*ection V.G., CM/ECF Policy Manual.

Plaintiff addresses each of these criteria below.

### A.  Defendant Has Not Consented to this Sealing Motion

Defendant does not consent to the filing of the Sealed Documents under seal, except Defendant does consent to the redaction of Plaintiff's phone number from Exhibit 1 to the Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Partial Rule 12(b)(6) Motion, dated January 17, 2024 and Exhibit F to the Declaration of Andrew T.

2

Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue, dated January 17, 2024.

**B. The Documents (or Portions Thereof) Plaintiff Seeks To File Under Seal**

The Sealed Documents are described above.

**C. This Request to Seal Overcomes Any Presumption to Public Access to the Materials at Issue; The Specific Qualities of the Material At Issue Favor Sealing in the Context of a Balancing of Plaintiff's Interests and Harm and the Public's Interest and Harm.**

*1. Applicable Standards*

A court considering a motion to maintain documents under seal must first determine the nature of the information and the public's right to access. *Stone,* 855 F.2d at 180. The common law presumption in favor of access attaches to all judicial records and documents; by contrast, First Amendment protection is limited to certain judicial records and documents, for example those attached to a dispositive motion. *Id.* There is no First Amendment right of access where the documents sought to be sealed are not submitted in support of or opposition to any motion seeking dispositive relief. *See, e.g., Covington v. Semones*, No. 7:06cv00614, 2007 WL 1170644, at *2 (W.D. Va. April 17, 2017) ("In this instance, as the exhibits at issue were filed in connection with a non-dispositive motion, it is clear there is no First Amendment right of access."); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2008 WL 2019648, at *1 (E.D.N.C. May 8, 2008) (right of access at issue arose under the common law where documents to be sealed did not pertain to dispositive relief).

The court must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000)

3

(citations omitted).

2. *Application to Materials Plaintiff Seeks To File Under Seal in This Action*

a.  Materials Relating to a Dispositive Motion: Plaintiff's Telephone Number

Here, the only information sought to be sealed in connection with a dispositive motion – Defendant's partial motion to dismiss three of Plaintiff's claims –is Plaintiff's telephone number, listed on a petition Defendant filed in Louisiana state civil court seeking a temporary restraining order against Plaintiff. Plaintiff submits that the public does not have any right or need to such information as the docket provides the public with contact information for his counsel.

b.  Materials Relating to a Non-Dispositive Motion, the Motion to Transfer

As to the materials concerning Defendant's non-dispositive Motion to Transfer, and to this Sealing Motion, the common law right of access applies.

The presumption of access under the common law is not absolute and its scope is a matter left to the discretion of the district court. *See, e.g., Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir.  2004); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Any presumption of access under the common law "'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" *Washington Post*, 386 F.3d at 575 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988)).

The party seeking the sealing of materials is only required to demonstrate the necessity and propriety of sealing the documents at issue; the court, in its discretion, may seal such documents if it deems such sealing appropriate. *See, e.g., Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 680 (E.D.N.C. 2003).

The Court may consider several factors to make this determination: "whether the [material is] sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021) (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984); citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–608 (1978)).

Plaintiff submits that to the extent the materials he seeks to file under seal would reveal his identity in the Second Action, it may be sought for improper purposes, including to harass, punish or intimidate him. Plaintiff further submits that the most significant document included in the materials at issue is the complaint filed in the Second Action, *which is available to the public* and identifies Plaintiff by pseudonym. The public's interest in the subpoena Plaintiff has served on Defendant in the Second Action is minimal. Plaintiff intends to seek discovery in this action and to utilize relevant documents produced by Defendant herein in motions and at trial in a manner that will provide the public access to them. The redactions to the memoranda of law summarize the complaint in the Second Action or provide information through which Plaintiff could be identified in that Action.

Balanced against the minimal impact sealing would have on public access to information, ***Plaintiff's interest in protecting his anonymity in the Second Action is both urgent and compelling***. The Second Action involves Plaintiff's sexual conduct. It will involve the disclosure of private, intimate details concerning sexual interactions. *See, e.g., Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593-594 (E.D. Va. 2016) ("what justifies the use of pseudonym here is plaintiff's status as an accused perpetrator of sexual misconduct … he should

5

not have his name forever associated in the public mind with an accusation that carries a significant social stigma"); *Doe v. Univ. of St. Thomas*, No, 16-cv-1127, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("forcing Mr. Doe to proceed under his true name would guarantee a permanent label as a sexual offender, discoverable with a simple Google search"). Moreover, because he is challenging a university's Title IX proceeding based on sexual misconduct in the Second Action, Plaintiff faces "potential retaliatory and emotional harm" if his association with that case is exposed. *See, e.g., Doe v. Grinnell College*, No. 4:17-cv-079, 2017 WL 11646145, at *3 (S.D. Iowa July 10, 2017) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)).

In cases such as the Second Action, where students seek to expunge findings of sexual misconduct from their university records, requiring them to proceed against the universities in their own name would risk causing them the very harm they are seeking to remedy. *See e.g., Doe v. Virginia Polytechnic Inst.*, No. 7:21-CV-378, 2022 WL 972629, at *3-4 (W.D. Va. Mar. 30, 2022) ("Doe is seeking injunctive relief to expunge the allegations of sexual misconduct from his record. If his identity in this lawsuit is disclosed, it will greatly undermine any relief to which he may be entitled."); *Doe v. Univ. of Mississippi*, 2018 WL 1703013, at *2 (Apr. 6, 2018); *Grinnell College*, 2017 WL 11646145, at *3; *Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016).

***An additional factor should also be considered here: This Court's determination concerning sealing will have a direct impact on the effectiveness of a sister court's protective order*** – the order issued by the judge presiding over the Second Action permitting Plaintiff to proceed therein pseudonymously. The materials that Plaintiff requests be sealed – if made accessible to the public on this Court's docket – will reveal Plaintiff as the plaintiff in the Second

6

Action. The effect of this would be to nullify the District Court's order.

"[D]istrict courts have relied upon considerations of comity to avoid modifying or invalidating rulings from other courts." *Owlet Baby Care, Inc. v. Masimo Corp.*, No. 2:21-MC-00096-TS-JCB, 2021 WL 1753537, at *3 (D. Utah May 4, 2021). A denial of this Sealing Motion would not *expressly* modify the anonymity order issued in the Second Action. Nevertheless, the reasoning employed by federal courts in cases in which they are asked by parties to modify protective orders issued **in other cases** is highly relevant here: "Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity, courtesy, and, where a federal court is asked to take such action with regard to a previously issued state court protective order, federalism." *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000). "When the production of discovery documents would violate a protective order entered in a separate litigation, '[p]rinciples of comity and respect for preexisting judicial orders generally compel the parties to return to the court that issued the existing protective order for any modifications.' " *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 1:19CV1193, 2021 WL 7162555, at *3 (M.D.N.C. Mar. 29, 2021) (quoting *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2021 WL 425889, at *1 (D.S.C. Feb. 5, 2021)); *see also, e.g.*, *Santiago v. Honeywell Int'l, Inc.*, No. 16-CIV-25359, 2017 WL 3610599, at *2 (S.D. Fla. Apr. 6, 2017) (denying a motion to modify a protective order issued by another court); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) (refusing "as a matter of comity" to order production of documents covered by a protective order issued by another court).

These factors supporting Plaintiff's request for sealing far outweigh the public's minimal

7

need or interest in accessing the materials Plaintiff seeks to be filed under seal.

**D.  Necessity of Sealing, Inadequacy of Alternatives**

The Court has previously rejected Plaintiff's request to proceed pseudonymously and the Fourth Circuit affirmed that ruling. Accordingly, there are no alternatives of which undersigned counsel is aware that will prevent the exposure of Plaintiff's identity as plaintiff in the Second Action in the event the materials at issue in this Motion are filed on this Court's docket publicly.

<div align="center">

**<u>CONCLUSION</u>**

</div>

For the foregoing reasons, the Court should grant Plaintiff's Sealing Motion and signed Plaintiff's Proposed Order to Seal filed concurrently herewith.

Dated:    January 17, 2024

Respectfully Submitted,

By: /s/ *Andrew T. Miltenberg*
     Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

By: /s/ Robert C. Ekstrand
     Robert C. Ekstrand
EKSTRAND AND EKSTRAND, LLP
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

<div align="center">

8

</div>

9

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

10

Original Filed at Docket No. 44,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. **5:22-cv-500**

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | **NOTICE OF SPECIAL APPEARANCE** |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| | ) | |

Please take notice that the undersigned Kara L. Gorycki, Esq. hereby enters a notice of special appearance as attorney for John Doe in the above-captioned matter, in association with Local Civil Rule 83.1(d) attorney, Robert C. Ekstrand.

I certify that I will submit any document to Local Civil Rule 83.1(d) attorney for review prior to filing the document with the court.

*/s/ Kara Gorycki*

Kara L. Gorycki
**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500
kgorycki@nmllplaw.com
NY Bar. No. 4140992
Attorney for Plaintiff

*/s/ Robert Ekstrand*

Robert C. Ekstrand
**EKSTRAND AND EKSTRAND, LLP**
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705

919-416-4590
rce@ninthstreetlaw.com
NC Bar. No. 26673
Local Civil Rule 83.1(d) Attorney for Plaintiff

2

Original Filed at Docket No. 45,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe<br><br>        Plaintiff,<br><br>    v.<br><br>Jane Doe<br><br><br>        Defendant. | DEFENDANT Jane Doe   BRIEF IN OPPOSITION TO MOTION TO SEAL |

## INTRODUCTION

Plaintiff John Doe      asks the Court to seal a variety of filings to prevent him from being identified as the plaintiff in his case against Tulane University, where the district court allowed him to proceed under a pseudonym.  The information John Doe      seeks to seal is publicly available.  He asks the Court to seal his complaint and a subpoena from the Tulane case, the pseudonym order in that case, and unredacted versions of the parties' briefs with information that John Doe      says would connect this case to the Tulane case.  John Doe      cannot meet the burden to justify sealing these documents, where John Doe      own public filings already identify him as the plaintiff in the Tulane case.  Therefore, the motion to seal is properly denied, except as to the redaction of John Doe      phone number.

## STATEMENT OF RELEVANT FACTS

On December 8, 2022, John Doe      brought this action against Jane Doe alleging that Jane Doe falsely accused him of sexual assault while the two were students at Tulane University, and asserting claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy.  Compl. ¶¶ 92-153 (DE 1). John Doe      did not use his real name in his complaint.  *See id. passim.*  This Court

denied John Doe         motion for leave to proceed by pseudonym, and he appealed to the

United States Court of Appeals for the Fourth Circuit.  (DE 8, 9).

      After the parties briefed the appeal, John Doe      filed a notice of supplemental

authority in the Fourth Circuit.  *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16,

2023) (Exhibit 1) (DE 46-1) (filed provisionally under seal).  In the notice, John Doe

then calling himself "Mr. Doe," identified himself as the plaintiff in another case, and he

provided the party names, case number, federal district court, and name of the judge assigned to

that case.  *See id.*  John Doe      also attached to the notice an order entered in the other case

allowing him to proceed by pseudonym.  *See id.*  John Doe      did not ask the Fourth Circuit

to seal this supplemental authority.  *See* Docket *passim*, *Doe v. Doe*, No. 23-1058 (4th Cir.).

      The Fourth Circuit affirmed this Court's decision and remanded for further proceedings.

(DE 22).  John Doe      filed an amended complaint using his real name and thus revealing

that the "John Doe" in this case is John Doe       *See* Am. Compl. ¶¶ 92-153 (DE 23).

      On December 15, 2023, Jane Doe moved to transfer this case to the Eastern District of

Louisiana, and to dismiss the complaint in part for failure to state a claim upon which relief can

be granted.  (DE 27, 29).  Several hours before filing Jane Doe motion to transfer and

supporting documents, counsel for Jane Doe emailed counsel for John Doe      to advise that

Jane Doe would file, as attachments to her motion to transfer, the complaint and subpoena from

the Tulane case.  Declaration of Kelly Margolis Dagger ¶ 3 (attached as Exhibit 2) (DE 45-2);

12/15/2023 Email from J. Weiss to K. Gorycki (attached as Exhibit 3) (DE 45-3).  Jane Doe

counsel asked whether John Doe      wanted Jane Doe to file those documents under seal.

12/15/2023 Email from J. Weiss to K. Gorycki (DE 45-3).  When John Doe       counsel had

not responded after several hours, Jane Doe filed the complaint and subpoena from the Tulane

2

case (DE 30-1, -2), and her brief in support of motion to transfer (DE 31), provisionally under seal, not wanting to jeopardize John Doe ability to file a motion to seal if his counsel had not had time to review and respond to the email.  Dagger Decl. ¶ 3 (DE 45-2).

Immediately after filing the provisionally sealed documents on December 15, 2023, Jane Doe filed a notice of filing.  (DE 32).  Jane Doe indicated in the notice that she did not contend that the documents should be sealed, but she understood that John Doe might contend that the documents would link him to another case where he was identified by a pseudonym.  (*Id.*).  Jane Doe gave notice that, pursuant to CM/ECF Policy Manual § V.G.1(e), John Doe had seven days to move to seal the documents if he so desired.  (*Id.*).

On January 17, 2024, John Doe counsel asked Jane Doe counsel for Jane Doe position on a motion to seal the provisionally sealed documents from December 15, 2023, the order of the other district court allowing John Doe to proceed by pseudonym, to redact references from John Doe brief that "could lead a member of the public to link this case to" the Tulane case, and to redact John Doe phone number from an exhibit. Dagger Decl. ¶ 4 (DE 45-2); 1/17/2024 Email from K. Gorycki to K. Dagger (attached as Exhibit 4) (DE 45-4).  Jane Doe counsel responded that Jane Doe consented to redaction of the phone number, and otherwise opposed the motion to seal.  Dagger Decl. ¶ 4 (DE 45-2); 1/17/2024 Email from K. Dagger to K. Gorycki (DE 45-4).

John Doe then filed a proposed sealed brief in opposition to the motion to transfer (DE 38), a redacted public version of the same brief (DE 37), and two proposed sealed exhibits, Exhibit F and Exhibit G (DE 36-1, -2).  In a publicly filed declaration, John Doe counsel described Exhibit G as "a true and correct copy of the pseudonym order entered in Plaintiff's action against Tulane University."  Miltenberg Decl. ¶ 10 (DE 35).

3

In the public version of his brief in opposition to the motion to transfer, John Doe redacted some material, but disclosed that he is pursuing an action against Tulane. (*See* DE 37 at 7 (referring to John Doe "action against Tulane"); *id.* at 20-23, 26, 30 (referring eight times to either "the Tulane action" or "the Tulane Action")).[1]  In the same publicly filed brief, John Doe cited and described the notice of supplemental authority he filed with the Fourth Circuit when he appealed this Court's order denying leave to proceed by pseudonym:

> On May 16, 2023, Plaintiff's counsel filed a notice in the Fourth Circuit that Plaintiff was granted pseudonym protection in his action against Tulane (the "Tulane Order").  Appeal Dkt. #40.

(*Id.* at 7).  John Doe also identified the appeal docket he was referring to:  "*John Doe v. Jane Doe*, Appeal No. 23-1058 (4th Cir.) (the 'Appeal Dkt.')."  (*Id.*).

John Doe asks the Court to seal the unredacted version of his brief in opposition to motion to transfer, Jane Doe brief in support of motion to transfer, the complaint and subpoena from John Doe action against Tulane (DE 30-1, -2), the pseudonym order (DE 36-2), and the unredacted version of a petition for restraining order from Louisiana state court (DE 36-1).  (DE 43 at 2).  For the reasons set forth below, the motion to seal is properly denied except as to the unredacted petition for restraining order.

<u>**ARGUMENT**</u>

I.    John Doe    CANNOT SHOW THAT COUNTERVAILING INTERESTS HEAVILY OUTWEIGH THE PUBLIC INTEREST IN ACCESS TO JUDICIAL RECORDS.

"The common law presumes a right of the public to inspect and copy all judicial records and documents."  *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)

---

[1] Jane Doe refers to the CM/ECF pagination when citing a docket entry with a pinpoint citation.

(quotation omitted).[2]  The presumption of public access "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).  "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.*  "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *In re Knight Publ'g Co.*, 743 F.3d 231, 235 (4th Cir. 1984)).  This case does not involve any historical event, but the remaining factors and the presumption of public access warrant denying the motion to seal.

    A.    Jane Doe Does Not Seek the Records for an Improper Purpose.

Contrary to John Doe suggestion, Jane Doe does not seek the records for any improper purpose.  (*See* DE 43 at 5).  Jane Doe does not seek to "harass, punish or intimidate" John Doe (*id.*); rather, she is defending a lawsuit that John Doe brought because Jane Doe reported that he sexually assaulted her.  Jane Doe efforts to ensure that John Doe had an opportunity to ask the Court to consider sealing the documents at issue belie any inference that she is acting for an improper purpose.  *See supra* pp. 2-3.  Although Jane Doe is not bound by the pseudonym order in the Tulane case where she is not a party (*see* DE 36-2), and no court order prohibited Jane Doe from publicly referencing another public court

---

[2] The Fourth Circuit has not decided whether the First Amendment right of access applies to a motion to transfer, but another court "assume[d] without deciding that only the common law protection applies . . . ." *Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*, No. 5:20-cv-46-M, 2020 WL 2543787, at \*2 (E.D.N.C. May 19, 2020).  Because John Doe cannot overcome the common law presumption of access, he could not overcome the First Amendment presumption if it applied.

docket or other public court filings, Jane Doe solicited John Doe position on sealing and filed the documents provisionally under seal when she could not immediately obtain his position. *See supra* pp. 2-3.

      B.    John Doe Prior Public Disclosure of Information Linking This Case to the Tulane Case Warrants Denial of His Motion to Seal.

John Doe cannot show that his interest in protecting his anonymity in the Tulane action is "urgent and compelling," or that the Court's determination on his motion to seal "will have a direct impact on the effectiveness" of the pseudonym order in the Tulane case. (DE 43 at 6-7). The filing of documents from the Tulane case with this Court is not to blame for compromising John Doe anonymity in the Tulane case. Rather, John Doe chose to link the two cases in a public court filing when he thought that link supported his argument in the Fourth Circuit. *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (DE 46-1). He cannot now attempt to conceal that link because he lost his appeal and elected to use his real name in this case instead of dismissing it.

      Courts regularly decline to seal information that is already available to the public. *See, e.g.*, *Gonzalez v. Jaddou*, 7:18-CV-135-BO, 2021 WL 3686931, at *3 (E.D.N.C. Aug. 18, 2021) (recognizing that public availability of information movant sought to seal weighed in favor of public access); *United States v. Hroub*, No. 5:20-CR-00250-M-2, 2020 WL 3805168, at *3 (E.D.N.C. July 7, 2020) (denying motion to seal information that was already publicly available); *Griffis v. Duke Energy Progress*, No. 5:19-CV-00119-FL, 2020 WL 8970785, at *2 (E.D.N.C. Mar. 11, 2020) ("Given that the information in the documents is already publicly available there is no reason to place them under seal."); *United States v. Thomas*, No. 4:08-CR-00020-BR, 2019 WL 3137561, at *1 (E.D.N.C. July 15, 2019) (declining to seal documents subject to First Amendment right of access where information was already known to some and "[s]ealing the

subject documents now will not change what is already public knowledge"); *Covington v. Herbel*, No. 5:09-CT-3176-D, 2011 WL 2269407, at *3 (E.D.N.C. June 7, 2011) (denying motion to seal where information at issue was available in unsealed filings); *United States v. Griffith*, No. 5:04-CR-347-2F, 2006 WL 8442701, at *2-3 (E.D.N.C. Aug. 2, 2006) (denying motion to seal upon finding that public already had access to information movant sought to seal). For example, when a party seeks to seal a document that it has also filed publicly on the court docket, courts have denied motions to seal. *See Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2018 WL 287664, at *2 (E.D.N.C. Jan. 3, 2018) (denying motion to seal deposition transcript that was also publicly filed); *Capitol Comm'n, Inc. v. Capitol Ministries*, No. 5:11-CV-00214-BO, 2013 WL 5369421, at *1 (E.D.N.C. Sept. 24, 2013) (denying motion to seal document where unsealed version was already in the record); *see also Johnson v. City of Fayetteville*, No. 5:12-CV-456-F, 2014 WL 7151147, at *13 (E.D.N.C. Dec. 11, 2014) (concluding that where "the documents will now appear on the public docket, there appears to be little reason to keep another version sealed on the docket").

John Doe publicly filed the pseudonym order he now seeks to seal on the Fourth Circuit docket in this case, ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (DE 46-1), and he referred to that public filing by docket number in his public brief in opposition to the motion to transfer (DE 37 at 7). John Doe public filing in the Fourth Circuit contains all the information needed to locate another document he seeks to seal—the complaint he filed in the Tulane action. *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (DE 46-1). Because the public can already determine from John Doe own public filings in this case that John Doe is the plaintiff in the Tulane action, John Doe cannot carry his burden to show that sealing information linking the two cases is warranted.

<div align="center">7</div>

In addition to John Doe express identification of his other case in a Fourth Circuit filing, his filings with this Court contain more than enough information to link the two cases. John Doe made clear in his public filings with this Court that he is the plaintiff in a case against Tulane where he has been permitted to use a pseudonym, that the case against Tulane arises under Title IX, and that he was expelled from Tulane on May 8, 2022, as a result of Tulane's Title IX investigation. (*See* DE 43 at 2 (referring, in public filing, to "complaint filed by Plaintiff in an action against Tulane University in which he has been granted pseudonym protection"); DE 37 at 30 (quoting, in public filing, Jane Doe reference in sealed filing to "his Title IX case against Tulane"); Am. Compl. ¶¶ 46-48, 90 (alleging that he was expelled after Title IX investigation)).  A PACER search of all cases filed against Tulane University between January 1, 2022, and January 1, 2024, produces only a single case with a pseudonymous plaintiff, demonstrating the ease with which John Doe case against Tulane can be identified.  *See* Dagger Decl. ¶ 5 (DE 45-2); 1/22/2024 PACER Case Locator Search Result (Exhibit 5) (DE 46-2) (filed provisionally under seal).

Because of John Doe own public disclosures, a member of the public can readily determine that John Doe is the pseudonymous plaintiff in his case against Tulane.  *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (DE 46-1).  John Doe has not kept the details needed to link the two cases private, and he cannot show that his alleged interest in privacy outweighs the public's right of access.  *See supra* pp. 6-7 (citing cases).

C.    John Doe    Motion to Seal Is Untimely to the Extent That He Seeks to Seal Jane Doe December 15, 2023 Filings.

The local rules prohibit sealed filing absent a motion seeking leave to file under seal in accordance with Section V.G of the CM/ECF Policy Manual, unless otherwise permitted in Section V.G.  *See* Local Civil Rule 79.2(a), (b)(1).  According to CM/ECF Policy Manual, when

a party seeks to file material designated confidential by another party, the filing party must provisionally file the material under seal and provide notice to the party who desires to maintain the information under seal. *See* CM/ECF Policy Manual § V.G.1(e). Then, "[w]ithin 7 days after service of such notice, the party or entity desiring that the material be maintained under seal must file a motion to seal, supporting memorandum and proposed order in accordance with Section V.G.1 of the Policy Manual." *Id.* § V.G.1(e)(ii).

Jane Doe filed her provisionally sealed brief in support of motion to transfer (DE 31), and the provisionally sealed exhibits to her motion to transfer (DE 30-1, -2), on December 15, 2023, and gave notice of such sealed filings on the same date (DE 32). John Doe moved to seal the documents more than one month later, on January 17, 2024. (DE 42). Because the motion to seal is untimely as to the brief in support of motion to transfer and provisionally sealed exhibits to the motion to transfer, it is properly denied for that additional reason. *See generally Hanson v. Owens*, No. 5:14-CT-3078-D, 2015 WL 13214282, at *2 (E.D.N.C. Oct. 16, 2015) (Jones, Mag. J.) (denying motion "as untimely and for failure to comply with the Local Rules").

II.    Jane Doe CONSENTS TO THE REDACTION OF John Doe PHONE NUMBER AND THE SEALING OF THE UNREDACTED PETITION FOR RESTRAINING ORDER BECAUSE THE REDACTED INFORMATION IS NOT A JUDICIAL RECORD.

"[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." *In re U.S. for an Order Pursuant to 18 U.S.C. § 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). Documents filed but not considered by a court are not judicial records, and no presumption of public access attaches. *See In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2017 WL 5178038, at *14 (E.D.N.C. Nov. 8, 2017) (concluding that, because court had not considered expert report, "it is not a judicial record, and the public is not entitled to access"). A party seeking to seal information that is not a

9

judicial record need not overcome the presumption of public access.  *See United States v. Moussaoui*, 65 F. App'x 881, 889 (4th Cir. 2003) (recognizing that balancing test would be conducted only as to documents subject to right of public access).

Jane Doe consents to the redaction of John Doe phone number, and the sealing of the unredacted version of the petition for restraining order, because the Court can properly find that the redacted information is not a judicial record.  Jane Doe questions whether John Doe could overcome the presumption of public access, if it applied, because Jane Doe counsel was able to locate the unredacted petition in public Louisiana court documents.  *See* Dagger Decl. ¶ 6 (DE 45-2).  Further, John Doe counsel concedes that the petition was publicly filed.  *See* 1/17/2024 Email from K. Gorycki to K. Dagger (DE 45-4).  Although the petition is publicly available, John Doe phone number is immaterial and need not be considered in the resolution of any dispute in this action.  The unredacted version of the petition can be sealed without the showing required for the other documents, because the redacted information is not a judicial record.  *See Senderra Rx Partners, LLC v. Blue Cross Blue Shield of N.C.*, No. 1:18-CV-871, 2019 WL 9633640, at *3 (M.D.N.C. July 26, 2019) (sealing unredacted version of document where court did not consider redacted portions and thus "the redacted information is not a judicial record").

## CONCLUSION

For the reasons stated above, Defendant Jane Doe respectfully requests that the Court deny Plaintiff John Doe motion to seal, except to the extent that he seeks to seal the unredacted version of Jane Doe petition for restraining order (DE 36-1).

10

This the 22nd day of January, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

11

# EXHIBIT 1

# Placeholder

(filed provisionally under seal at DE 46-1)

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe | |
| Plaintiff, | |
| v. | DECLARATION OF KELLY MARGOLIS DAGGER |
| Jane Doe | |
| Defendant. | |

Pursuant to 28 U.S.C. § 1746, I, Kelly Margolis Dagger, declare the following:

1.     My name is Kelly Margolis Dagger.  I am over twenty-one years of age and competent to testify in all other respects.  I have personal knowledge of the matters set forth in this declaration.

2.     I am counsel of record for Defendant Jane Doe in the above-captioned action.

3.     On December 15, 2023, I was copied on an email from my law partner, Jamie Weiss, to John Doe counsel, Kara Gorycki.  Exhibit 3 to Defendant's Brief in Opposition to Motion to Seal is a true and correct copy of that email.  When we did not receive a response to Mr. Weiss's email by approximately 6:00 p.m., we decided to file Jane Doe brief in support of motion to transfer, the complaint John Doe filed in the Tulane case, and a subpoena served in the Tulane case, provisionally under seal so as not to jeopardize John Doe ability to file a motion to seal.

4.     On January 17, 2024, I received an email from Ms. Gorycki.  On the same date, I responded to the email.  Exhibit 4 to Defendant's Brief in Opposition to Motion to Seal is a true and correct copy of that email chain, except that I redacted Ms. Gorycki's reference to the caption in the case John Doe filed against Tulane.

5.      On January 22, 2024, I used the PACER Case Locator website to search for all cases with a party named "Tulane University" filed between January 1, 2022, and January 1, 2024.  Exhibit 5 to Defendant's Brief in Opposition to Motion to Seal is a true and correct copy of the result of that search.  Although the search result is publicly available, I am filing it provisionally under seal because it contains the docket number and case caption for John Doe    case against Tulane, and I understand that John Doe    seeks to have that information sealed in other filings in this case.

6.      I was able to find and download an unredacted copy of the Petition for Protection from Abuse (DE 36-1) on the Orleans Parish Civil Clerk of Court website.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 22nd day of January, 2024.


_____

Kelly Margolis Dagger

2

# EXHIBIT 3

## Kelly Dagger

| | |
|---|---|
| **From:** | Jamie Weiss |
| **Sent:** | Friday, December 15, 2023 1:33 PM |
| **To:** | Kara Gorycki; Kelly Dagger |
| **Cc:** | Andrew T. Miltenberg; rce@ninthstreetlaw.com |
| **Subject:** | RE: John Doe v. Jane Doe - Motion to Transfer |

Kara:

We plan to file the complaint in the Doe v. Tulane case along with the subpoena you served on our client as attachments to our motion to transfer today. In an abundance of caution, we wanted to ask whether you wanted us to file those under seal.

Please let us know your position by 5pm.

Best,

Jamie

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Thursday, November 30, 2023 12:08 PM
**To:** Kelly Dagger <Kelly.Dagger@elliswinters.com>
**Cc:** Andrew T. Miltenberg <AMiltenberg@nmllplaw.com>; rce@ninthstreetlaw.com; Jamie Weiss <Jamie.Weiss@elliswinters.com>
**Subject:** John Doe v. Jane Doe - Motion to Transfer

**External: from kgorycki@nmllplaw.com**

---

Kelly,

We have discussed the proposed motion to transfer with our client and he intends to oppose it.
Please be advised that this motion was not specifically raised as an issue at the time you requested an extension of time for Jane Doe to respond to the Amended Complaint. The same scheduling issues stand on our end and we will not be able to file an opposition to the motion to transfer until January 17.
As we discussed on our call, we would agree to hold Jane Doe time to answer the Amended Complaint in abeyance until the motion to transfer is decided.

Sincerely,
Kara



NESENOFF & MILTENBERG LLP
New York | Boston | Palo Alto

**Kara Gorycki, Senior Litigation Counsel**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**Kara Gorycki, Senior Litigation Counsel**

# EXHIBIT 4

**Kelly Dagger**

| | |
|---|---|
| **From:** | Kelly Dagger |
| **Sent:** | Wednesday, January 17, 2024 5:12 PM |
| **To:** | 'Kara Gorycki'; Jamie Weiss |
| **Cc:** | Bob Ekstrand |
| **Subject:** | RE: John Doe - Motion to Seal |

Kara,
Jane Doe consents to the redaction of John Doe phone number.  Otherwise, Jane Doe opposes the motion to seal as you have outlined it in your email.
Thanks for asking.
Kelly

Kelly Margolis Dagger | Attorney
kelly.dagger@elliswinters.com
Direct: (919) 573-1292  Cell: (919) 619-4758
Main: (919) 865-7000   Fax: (919) 865-7010

ELLIS | WINTERS

ELLIS & WINTERS LLP
4131 Parklake Avenue, Suite 400 | Raleigh, NC 27612
P.O. Box 33550 | Raleigh, NC 27636
www.elliswinters.com

**CONFIDENTIALITY NOTICE: This electronic mail message contains confidential information intended only for the person(s) named. Any use, distribution, copying, or disclosure by another person is strictly prohibited.**

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Wednesday, January 17, 2024 4:44 PM
**To:** Kelly Dagger <Kelly.Dagger@elliswinters.com>; Jamie Weiss <Jamie.Weiss@elliswinters.com>
**Cc:** Bob Ekstrand <rce@ninthstreetlaw.com>
**Subject:** John Doe - Motion to Seal

 External email

Kelly,
We are filing a motion to seal the Tulane Complaint, the subpoena (ECF No. 30-1, 30-2). We are going to file a redacted version of the memorandum of law – see attached with yellow highlighting.
We are also moving to seal the pseudonym order in ██████████████ and we are filing a redacted copy of our brief which redacts references to the Tulane action or statements which could lead a member of the public to link this case to the Tulane action. Finally we are filing a copy of the Petition For Protection From Abuse with John Doe phone number redacted. We understand that it was publicly filed but would like to keep his cell number off the docket.

Let me know if you do or do not consent to the motion. Apologies for the short notice, we are filing shortly. I just saw in the ECF Manual that the sealing motion should reference consent.

Thanks,
Kara



**Kara Gorycki, Senior Litigation Counsel**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500    •    212.736.2260 fax

Vcard    •    nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

# EXHIBIT 5

# Placeholder

(filed provisionally under seal at DE 46-2)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

|  |  |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | [PROPOSED] ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SEAL |

This matter comes before the Court on the motion of Plaintiff John Doe to seal the following documents:  (1) his complaint filed against Tulane University in another case [D.E. 30-1]; (2) a subpoena from the Tulane case [D.E. 30-2]; (3) Defendant Jane Doe unredacted brief in support of motion to transfer [D.E. 31]; (4) John Doe unredacted brief in opposition to motion to transfer [D.E. 38]; (5) an unredacted copy of a Petition for Protection from Abuse and related documents filed in Louisiana state court [D.E. 36-1 & D.E. 40-1]; and (6) the order allowing John Doe to proceed by pseudonym in his case against Tulane [D.E. 36-2]. Defendant Jane Doe opposes the motion, except that she consents to the sealing of the unredacted Petition for Protection from Abuse and related redaction of John Doe phone number from the public court record.

Having considered the motion and other matters of record, the Court finds that it should be GRANTED IN PART and DENIED IN PART.

The Court finds that John Doe phone number is not a judicial record because the Court will not rely on the phone number, and therefore no presumption of public access applies. The Court, in its discretion, grants the motion to seal the unredacted Petition for Protection from Abuse [D.E. 36-1 & D.E. 40-1].

As to all other documents, there is a presumption of public access and the Court assumes, without deciding, that only the common law presumption of public access applies. Having balanced the relevant factors, including whether the records are sought for an improper purpose and whether the public already has access to the information, the Court finds that

John Doe      has not met the burden to overcome the presumption of public access. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). Therefore, the motion to seal is DENIED as to all other documents [D.E. 30-1, 30-2, 31, 36-2, 38], and the Clerk of Court shall unseal those documents.

SO ORDERED, this the ___ day of _____, 2024.


_____
JAMES C. DEVER III
United States District Judge

2

Original Filed at Docket No. 46,
Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | INDEX OF PROVISIONALLY SEALED EXHIBITS TO DEFENDANT Jane Doe RESPONSE IN OPPOSITION TO MOTION TO SEAL |

Defendant Jane Doe hereby files the following exhibits to her response in opposition to motion to seal (DE 45) provisionally under seal:

1.    ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (Exhibit 1)

2.    PACER Case Locator Search Result (Exhibit 5)

This the 22nd day of January, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

# EXHIBIT 1

# FILED UNDER SEAL



**NESENOFF & MILTENBERG** LLP

New York | Boston | Palo Alto

ATTORNEYS AT LAW

**nmllplaw.com**

Ira S. Nesenoff
Andrew T. Miltenberg
_____

Stuart Bernstein
Tara J. Davis
Gabrielle M. Vinci

Barbara H. Trapasso
Adrienne D. Levy
Regina M. Federico
Ben Goldstein
Amy Zamir
Kristen Mohr
Helen Setton

Philip A. Byler
Kara L. Gorycki
Susan E. Stark
*Senior Litigation Counsel*

Marybeth Sydor
*Title IX Consultant*

May 16, 2023

**VIA ECF**
The Hon. Patricia S. Connor, Clerk of the Court
U.S. Court of Appeals for the Fourth Circuit
1100 E. Main Street, Suite 501
Richmond, VA 23219

Re: *John Doe v. Jane Doe*, No. 23-1058

Dear Ms. Connor:

Plaintiff-Appellant John Doe ("Mr. Doe") submits this letter pursuant to Federal Rule of Appellate Procedure 28(j) and Local Rule 28(e) to advise the Court of new authority issued after briefing in the above-captioned case. Annexed hereto as Exhibit 1 is a true and correct copy of an order entered by the Honorable Wendy B. Vitter in the matter of *John Doe v. The Administrators of the Tulane Educational Fund*, No. 23-1348 (E.D. La. Apr. 26, 2023), which granted Mr. Doe's motion to proceed by pseudonym in litigation against Tulane University, ordered that the complainants in the underlying disciplinary proceedings be identified as "Sue Roe" and "Jane Doe" in public filings and prohibits Tulane University from publicly identifying Mr. Doe in connection with the litigation.

Judge Vitter's Order is pertinent and significant because it responds to that portion of the District Court's order below which states that Mr. Doe's case is dissimilar from university cases because he "is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX … during the sexual assault investigation." JA61. Defendant-Respondent also posed arguments in her response brief that were grounded in Mr. Doe's reliance on university Title IX cases in seeking pseudonym protection and the failure to sue Tulane. Resp. Br. 21-22, 46. *See also* App. Br. 21-25; App. Reply Br. 7-9.

Judge Vitter found that Mr. Doe's "interest in proceeding anonymously outweighs the public interest in open proceedings" because the "suit arises from claims related to [Mr. Doe's] sexual conduct with Sue Roe and Jane Doe, and will require the disclosure of … information that

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400



is of the 'utmost intimacy.'" Ex. 1, Order, at 3. While Judge Vitter considered that courts routinely grant pseudonym protection to plaintiffs in cases concerning university discipline, this was not the primary ground for granting Mr. Doe's pseudonym motion. Ex. 1, at 3-4.

<div style="text-align:center">Respectfully Submitted,</div>

_/s/ Kara L. Gorycki_
Kara L. Gorycki

cc: Counsel of Record

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400

# Exhibit 1

<div align="center">

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

</div>

**JOHN DOE**                                          **CIVIL ACTION**

**VERSUS**                                            **NO. 23-1348**

**THE ADMINISTRATORS OF THE**                         **SECTION: D (4)**
**TULANE EDUCATIONAL FUND**

<div align="center">

<u>ORDER  and REASONS</u>

</div>

Before the Court is an *Ex Parte* Motion to Proceed Under Pseudonym, filed by plaintiff, John Doe.[1]  Defendant has not yet appeared and has not filed a response to the Motion.

After careful consideration of the Plaintiff's Motion, Supporting Memorandum, and the applicable law, the Motion is **GRANTED in part and DENIED in part.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from alleged "biased and flawed disciplinary proceedings" against plaintiff, John Doe, by the Administrators of the Tulane Educational Fund ("Tulane"), in response to allegations of sexual misconduct.[2]  Plaintiff alleges that he withdrew from Tulane as a result of the allegations,[3] that Tulane subsequently banned him from campus and from participating in university-sponsored events while conducting an investigation of nonconsensual sexual contact,[4] and that Tulane

---

[1] R. Doc. 3.
[2] R. Doc. 1 at ¶¶ 1-2, 6, & 9.
[3] *Id.* at ¶¶ 4 & 281.
[4] *Id.* at ¶¶ 7 & 273.

<div align="center">1</div>

expelled him following the investigation.[5]  Plaintiff claims that the investigation and

disciplinary actions by Tulane were wrongful.[6]

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 10(a), a complaint "must name all the parties," including

the plaintiff.  The Fifth Circuit has held that, "Public access to this information is

more than a customary procedural formality; First Amendment guarantees are

implicated when a court decides to restrict public scrutiny of judicial proceedings."[7]

Nonetheless, a party may proceed anonymously or under a pseudonym in certain

circumstances.  In the Fifth Circuit, a request to litigate under a pseudonym "requires

a balancing of considerations calling for maintenance of a party's privacy against the

customary and constitutionally-embedded presumption of openness in judicial

proceedings."[8]  The Fifth Circuit has further cautioned that there is "no hard and fast

formula for ascertaining whether a party may sue anonymously."[9]

The Fifth Circuit has identified three factors that a district court should

consider when determining whether a party can proceed anonymously: (1) whether

the plaintiff is "suing to challenge governmental activity;" (2) whether the suit

compels the plaintiff "to disclose information 'of the utmost intimacy;'" and (3)

whether the suit compels the plaintiff to admit an "intention to engage in illegal

---

[5] *Id.* at ¶¶ 2-13 & 190-191, 196, 198, & 214.

[6] *Id.* at ¶¶ 214-243, 278, 284-488.

[7] *Doe v. Stegall*, 653 F.2d 185, 185 (5th Cir. Unit A 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 2829 & n.17, 65 L.Ed.2d 973 (1980)).

[8] *Stegall*, 653 F.2d at 186.

[9] *Id.*

conduct, thereby risking criminal prosecution."[10]  According to the Fifth Circuit, these three factors "deserve considerable weight in the balance pitting privacy concerns against he presumption of openness of judicial proceedings."[11]

### III.  ANALYSIS

In the instant Motion, Plaintiff makes the following five requests:

1. Allow Plaintiff to proceed by the pseudonym "John Doe" in this action;
2. Require the use of the pseudonym "John Doe" in public filings and require the redaction of Plaintiff's name and identifying information from public filings;
3. Prohibit Tulane from publicly identifying Plaintiff in connection with this litigation;
4. Require the complainants in the underlying disciplinary proceedings to be identified as "Sue Roe" and "Jane Doe" in public filings and require the redaction of their names from public filings; and
5. Permit the parties to identify nonparties to the action who were Tulane University students at the time of the events alleged in the Complaint to be identified by their initials in public filings and redact their full names from public filings.[12]

Applying the *Stegall* factors here, the Court finds that Plaintiff's interest in proceeding anonymously outweighs the public interest in open proceedings with respect to himself, Sue Roe, and Jane Doe.  This suit arises from claims related to Plaintiff's sexual conduct with Sue Roe and Jane Doe, and will require the disclosure of private, intimate details concerning their sexual interactions.  Thus, this case will require Plaintiff to disclose information regarding himself, Sue Roe, and Jane Doe that is of the "utmost intimacy."[13]  As to Sue Roe and Jane Doe, their right to privacy

---

[10] *Id.* at 185 (citing *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)).
[11] *Stegall*, 653 F.2d at 186.
[12] R. Doc. 3.
[13] *Stegall*, 653 F.2d at 186.

regarding the events described in the Complaint also outweigh the public's right to know their identity.[14]

Additionally, in cases like this, where male students have sued universities for flawed and deficient disciplinary proceedings concerning allegations of sexual misconduct, courts in this Circuit have repeatedly allowed plaintiffs to proceed under a pseudonym.[15] The Court further finds that Tulane will not be prejudiced by allowing Plaintiff, Jane Doe, and Sue Roe to proceed pseudonymously, as Plaintiffs assert that Tulane knows the identities of Plaintiff, Jane Doe, Sue Roe, and the non-party Tulane students identified by their initials in the Complaint and will be able to conduct this litigation without impediment.[16] The Court finds, however, that Plaintiff has not shown a sufficient basis at this point in time to require the non-party students to be referenced by their initials.[17] As such, that request is denied.

## IV.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym,[18] is **GRANTED in part and DENIED in part.** The Motion is **GRANTED** to the extent that Plaintiff seeks to proceed by the pseudonym "John Doe," and Plaintiff shall be referred as "John Doe"

---

[14] *Doe v. Univ. of Mississippi*, Civ. A. No. 3:21-cv-201-DPJ-FKB, 2021 WL 6752261, at *2 (S.D. Miss. Apr. 14, 2021) (Ball, M.J.) (quotation and quotation marks omitted); *Doe v. Louisiana State Univ.*, Civ. A. No. 20-379-BAJ-SDJ, 2020 WL 6493768, at *2 (M.D. La. June 30, 2019) (Johnson, M.J.);

[15] *Doe v. Louisiana State Univ.*, Civ. A. No. 20-379-BAJ-SDJ, 2020 WL 6493768 at *2; *See*, R. Doc. 8 in *Doe v. The Administrators of the Tulane Educational Fund*, Civ. A. No. 19-11403 (E.D. La. July 2, 2019) (Vance, J.) (citing authority); R. Doc. 7 in *Doe v. Tulane University et al.*, Civ. A. No. 17-12081 (E.D. La. Nov. 17, 2017) (Feldman, J.).

[16] R. Doc. 3-1 at p. 2. *See, Doe v. Louisiana State Univ.*, Civ. A. No. 20-379-BAJ-SDJ, 2020 WL 6493768 at *2 (citation omitted).

[17] *See, Doe v. Univ. of Mississippi*, Civ. A. No. 3:21-cv-201-DPJ-FKB, 2021 WL 6752261 at *2.

[18] R. Doc. 3.

in public filings, Plaintiff's name and identifying information shall be redacted from public filings, Tulane is prohibited from publicly identifying Plaintiff in connection with this litigation, the complainants in the underlying disciplinary proceedings shall be identified as "Sue Roe" and "Jane Doe" in public filings, and the names of Sue Roe and Jane Doe shall be redacted from public filings.    The Motion is otherwise **DENIED.**

New Orleans, Louisiana, April 26, 2023.

**WENDY B. VITTER**
**United States District Judge**

# EXHIBIT 5

# FILED UNDER SEAL

An official website of the United States government.    Here's how you know. ⌄

Log in to PACER Systems →



Party Search Results

**Search Criteria:** Party Search; Date Filed From (On or After): [01/01/2022]; Date Filed To (On or Before): [01/01/2024]; Last Name: [Tulane University]
**Result Count:** 10 (1 page)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Tulane University | 0:2022misc08003 | Ralph Johnson, et al v. NCAA, et al | U.S. Court Of Appeals, Third Circuit | 01/07/2022 | 02/03/2022 |
| Tulane University | 0:2022cv01223 | Ralph Johnson, et al v. The National Collegiate Athletic Association, et al | U.S. Court Of Appeals, Third Circuit | 02/08/2022 | |
| Tulane University (dft) | 2:2022cv01748 | Thimes v. Administrators of Tulane Educational Fund | Louisiana Eastern District Court | 06/13/2022 | 11/02/2022 |
| Tulane University (dft) | 2:2022cv00260 | Blanchard v. Administrators of the Tulane Educational Fund | Louisiana Eastern District Court | 02/04/2022 | 07/27/2023 |
| Tulane University (dft) | 2:2023cv01348 | Doe v. The Administrators of the Tulane Educational Fund | Louisiana Eastern District Court | 04/24/2023 | |
| Tulane University (dft) | 2:2023cv02288 | Goodman v. Tulane University of Louisiana et al | Louisiana Eastern District Court | 06/29/2023 | |
| Tulane University (dft) | 2:2022ap01056 | Perkins, Chapter 7 Trustee and Tulane University | New Jersey Bankruptcy Court | 02/09/2022 | 09/28/2022 |
| Tulane University Hospital & Clinic (dft) | 2:2022cv00037 | Jenkins v. VA Medical Center et al | Louisiana Eastern District Court | 01/09/2022 | 05/12/2022 |
| Tulane University of Louisiana (dft) | 2:2023cv02288 | Goodman v. Tulane University of Louisiana et al | Louisiana Eastern District Court | 06/29/2023 | |
| Tulane University Police Department Employees (dft) | 2:2022cv00066 | Grant v. Administrators of Tulane Educational Fund et al | Louisiana Eastern District Court | 01/12/2022 | |

| **PACER Service Center** | 01/22/2024 18:36:02 |
|---|---|
| **User** | kdagg0001 |
| **Client Code** | |
| **Description** | All Court Types Party Search |
| | All Courts; Name Tulane University; All Courts; Date Filed 01/01/2022 to 01/01/2024; Page: 1 |
| **Billable Pages** | 1 ($0.10) |

PACER FAQ                    Privacy & Security                    Contact Us

This site is maintained by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary.

**PACER Service Center**
(800) 676-6856
pacer@psc.uscourts.gov

Original Filed at Docket No. 47,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

John Doe                    ,

        Plaintiff,

  v.

Jane Doe,

        Defendant.

DEFENDANT Jane Doe  NOTICE
OF FILING PROPOSED SEALED
DOCUMENTS

Pursuant to Local Civil Rule 79.2 and CM/ECF Policy Manual § V.G.1(e), Defendant

Jane Doe hereby gives notice that she has provisionally filed under seal the following exhibits to

her response in opposition to motion to seal:

1.     ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (Exhibit 1) (DE 46-1)

2.     PACER Case Locator Search Result (Exhibit 5) (DE 46-2)

Although these documents are publicly available and Jane Doe does not contend that

these documents should be sealed, she understands that John Doe may contend that public

disclosure of the documents in the context of this case would link him to another case filed under

a pseudonym. Jane Doe has therefore filed the documents provisionally under seal in an

abundance of caution to allow John Doe the opportunity to request that the documents

remain sealed.

Pursuant to CM/ECF Policy Manual § V.G.1(e), if John Doe desires that the

documents remain sealed, he must file a motion to seal, supporting memorandum, and proposed

order within seven days after service of this notice.

This the 22nd day of January, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

2

Original Filed at Docket No. 48,
Sealed by Court Order

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S MOTION FOR LEAVE TO FILE ECF NOS. 46-1 AND 46-2 UNDER SEAL

Pursuant to Local Rule 79.2 of the U.S. District Court for the Eastern District of North Carolina Plaintiff John Doe ("Plaintiff") hereby respectively moves the Court for leave to file under seal unredacted versions of the following documents related to Defendant Jane Doe ("Defendant") opposition to Defendant's motion for leave to file documents under seal dated January 17, 2024 (the "Jan. 17 Motion to Seal"):

1. ECF No. 46-1, Exhibit 1 to the Declaration of Kelly Margolis Dagger in Support of Defendant's Opposition to the Jan. 17 Motion to Seal (ECF No. 46, the "Dagger Declaration")

2. ECF No. 46-2, Exhibit 5 to the Dagger Declaration

This Motion is based upon this notice of Motion and the Memorandum of Law in Support of this Motion and a Proposed Order granting this Motion filed concurrently herewith.

Dated:  January 29, 2024

Respectfully Submitted,

By: /s/ *Andrew T. Miltenberg*
Andrew T. Miltenberg

State Bar No. 2399582
Kara L. Gorycki
State Bar No. 4140992
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com
*Attorneys for Plaintiff*


By: /s/ Robert C. Ekstrand
    Robert C. Ekstrand
EKSTRAND AND EKSTRAND, LLP
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

## CERTIFICATE OF SERVICE

I hereby certify that on January __, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Kara L. Gorycki*

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE ECF NOS. 46-1 AND 46-2 UNDER SEAL**

**NESENOFF & MILTENBERG, LLP**
Andrew T. Miltenberg, Esq.
State Bar No. 2399582
Kara L. Gorycki
State Bar No. 4140992
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com

*Attorneys for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

## INTRODUCTION

Plaintiff John Doe    ("Plaintiff") respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Leave to File Under Seal. Plaintiff seeks to file, or maintain, under seal **ECF Nos. 46-1 and 46-2**, which are, respectively, Exhibits 1 and 5 to the Declaration of Kelly Margolis Dagger in Support of Defendant's Opposition to Plaintiff's *January 17, 2024* Motion to Seal (ECF No. 46, the "Dagger Declaration") (collectively, the "Sealed Documents").

## ARGUMENT

### THE COURT SHOULD GRANT PLAINTIFF'S MOTION TO SEAL

Plaintiff files this Motion to Seal (the "Motion") to preserve his ability to proceed under pseudonym in a separate action he has filed in a different federal district court (the "Second Action") pursuant to an order of the federal district judge presiding over that action.

This Court has the authority to seal materials contained in the record. *See, e.g., Stone v. University of Maryland Medical Systems Corp.*, 855 F.2d 178 (4th Cir. 1988). In accordance with *Stone* and the requirements of Local Rule 79.2, a party seeking to have a document under seal must comply with Section V.G. of the CM/ECF Policy Manual. Section V.G. provides that the party seeking the sealing of docketed materials must submit a supporting memorandum that specifies:

(i)    the exact document or item, or portions thereof, for which filing under seal is requested;

(ii)   How such request to seal overcomes the common law or the First Amendment presumption to access;

(iii)  The specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access;

(iv)   The reasons why alternatives to sealing are inadequate; and

(v)    Whether there is consent to the motion.

*See* Section V.G., CM/ECF Policy Manual.

Plaintiff addresses each of these criteria below.

## A. Defendant Has Not Consented to this Motion

Defendant does not consent to the filing of the Sealed Documents under seal.

## B. The Documents (or Portions Thereof) Plaintiff Seeks To File Under Seal

1. **ECF No. 46-1 (Exhibit 1 to the Dagger Declaration)**: This is a letter filed by counsel for Plaintiff in the appeal Plaintiff took from this Court's January 5, 2023 order denying Plaintiff permission to proceed anonymously in this action (ECF No. 8). The letter advised the Fourth Circuit of an order issued by the federal district court judge presiding over the Second Action granting Plaintiff the right to proceed in that action under pseudonym, and attached a copy of said order. Both the letter from counsel and the order identify the case name and number of the Second Action. If filed publicly in connection with this action, any person viewing the case docket in this action will be able to readily identify Plaintiff in the Second Action.

2. **ECF No. 46-2 (Exhibit 5 to the Dagger Declaration)**: This is a printed result list from a query seeking all actions filed against Tulane University ("Tulane") in 2022 and 2023 pending in the federal district court in which the Second Action was filed. All of the actions that appear on the list are identified by case number and name. The only action on the result list with a plaintiff employing a pseudonym is the Second Action. The Sealed Document, viewed in connection with the Dagger Declaration, Defendant's Opposition to the Motion to Seal, and filed on the docket in this case will expose Plaintiff's identity in the Second Action.

## C. This Request to Seal Overcomes Any Presumption to Public Access to the Materials at Issue; The Specific Qualities of the Material At Issue Favor Sealing in the Context of a Balancing of Plaintiff's Interests and Harm and the Public's Interest and Harm.

### 1. *Applicable Standards*

A court considering a motion to maintain documents under seal must first determine the

nature of the information and the public's right to access. *Stone,* 855 F.2d at 180. The common law presumption in favor of access attaches to all judicial records and documents; by contrast, First Amendment protection is limited to certain judicial records and documents, for example those attached to a dispositive motion. *Id.* There is no First Amendment right of access where the documents sought to be sealed are not submitted in support of or opposition to any motion seeking dispositive relief. *See, e.g., Covington v. Semones*, No. 7:06cv00614, 2007 WL 1170644, at *2 (W.D. Va. April 17, 2017) ("In this instance, as the exhibits at issue were filed in connection with a non-dispositive motion, it is clear there is no First Amendment right of access."); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2008 WL 2019648, at *1 (E.D.N.C. May 8, 2008) (right of access at issue arose under the common law where documents to be sealed did not pertain to dispositive relief).

The court must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (citations omitted).

2. *Application to the Sealed Documents*

The Sealed Documents are exhibits to Defendant's Opposition to Plaintiff's Motion to Seal dated January 17, 2024 (ECF Nos. 42-43). That motion is not dispositive. Therefore the Sealed Documents are not subject to the presumption of public access under the First Amendment, but only that under the common law.

The presumption of access under the common law is not absolute and its scope is a matter left to the discretion of the district court. *See, e.g., Va. Dep't of State Police v. Washington*

*Post*, 386 F.3d 567, 575 (4th Cir. 2004); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Any presumption of access under the common law "'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" *Washington Post*, 386 F.3d at 575 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988)).

The party seeking the sealing of materials is only required to demonstrate the necessity and propriety of sealing the documents at issue; the court, in its discretion, may seal such documents if it deems such sealing appropriate. *See, e.g., Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 680 (E.D.N.C. 2003).

The Court may consider several factors to make this determination: "whether the [material is] sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021) (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984); citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–608 (1978)).

Plaintiff submits that to the extent the documents he seeks to file under seal would reveal his identity in the Second Action, it may be sought for improper purposes, including to harass, punish or intimidate him. The public has minimal interest in access to the order issued in the Second Action granting Plaintiff the right to proceed therein anonymously ***because that order is available to the public on the ECF system for the district court in which the Second Action is pending***. And the public's interest in the results of a Pacer query that any member of the public

4

could conduct on their own is minimal if not nonexistent. Because the Sealed Documents contain information already accessible to the public, they would only be of interest to a member of the public who is seeking to obtain the identity of the plaintiff in the Second Action. It is unclear whether under applicable caselaw the interest of members of the public in circumventing the order of a federal district court permitting a party to proceed anonymously in an action is even cognizable.[1]

In any event, balanced against the minimal impact the sealing requested here would have on public access to information, ***Plaintiff's interest in protecting his anonymity in the Second Action is both urgent and compelling***. The Second Action involves Plaintiff's sexual conduct. It will involve the disclosure of private, intimate details concerning sexual interactions. *See, e.g., Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593-594 (E.D. Va. 2016) ("what justifies the use of pseudonym here is plaintiff's status as an accused perpetrator of sexual misconduct … he should not have his name forever associated in the public mind with an accusation that carries a significant social stigma"); *Doe v. Univ. of St. Thomas*, No, 16-cv-1127, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("forcing Mr. Doe to proceed under his true name would guarantee a permanent label as a sexual offender, discoverable with a simple Google search"). Moreover, because he is challenging a university's Title IX proceeding based on sexual misconduct in the Second Action, Plaintiff faces "potential retaliatory and emotional harm" if his association with that case is exposed. *See, e.g., Doe v. Grinnell College*, No. 4:17-cv-079, 2017 WL 11646145, at *3 (S.D. Iowa July 10, 2017) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)).

In cases such as the Second Action, where students seek to expunge findings of sexual

---

[1] Undersigned counsel has not found any federal caselaw addressing this question.

misconduct from their university records, requiring them to proceed against the universities in their own name would risk causing them the very harm they are seeking to remedy. *See e.g., Doe v. Virginia Polytechnic Inst.*, No. 7:21-CV-378, 2022 WL 972629, at *3-4 (W.D. Va. Mar. 30, 2022) ("Doe is seeking injunctive relief to expunge the allegations of sexual misconduct from his record. If his identity in this lawsuit is disclosed, it will greatly undermine any relief to which he may be entitled."); *Doe v. Univ. of Mississippi*, 2018 WL 1703013, at *2 (Apr. 6, 2018); *Grinnell College*, 2017 WL 11646145, at *3; *Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016).

***An additional factor should also be considered here: This Court's determination concerning sealing will have a direct impact on the effectiveness of a sister court's protective order*** – the order issued by the judge presiding over the Second Action permitting Plaintiff to proceed therein pseudonymously. If made accessible to the public on this Court's docket, the Sealed Documents will reveal Plaintiff as the plaintiff in the Second Action. The effect of this would be to nullify the anonymity order issued by the judge presiding over the Second Action to protect Plaintiff from harm.

"[D]istrict courts have relied upon considerations of comity to avoid modifying or invalidating rulings from other courts." *Owlet Baby Care, Inc. v. Masimo Corp.*, No. 2:21-MC-00096-TS-JCB, 2021 WL 1753537, at *3 (D. Utah May 4, 2021). A denial of this Motion would not *expressly* modify the anonymity order issued in the Second Action. Nevertheless, the reasoning employed by federal courts in cases in which they are asked by parties to modify ***protective orders issued in other cases*** is highly relevant here: "Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by

6

principles of comity, courtesy, and, where a federal court is asked to take such action with regard to a previously issued state court protective order, federalism." *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000). "When the production of discovery documents would violate a protective order entered in a separate litigation, '[p]rinciples of comity and respect for preexisting judicial orders generally compel the parties to return to the court that issued the existing protective order for any modifications.' " *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 1:19CV1193, 2021 WL 7162555, at *3 (M.D.N.C. Mar. 29, 2021) (quoting *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2021 WL 425889, at *1 (D.S.C. Feb. 5, 2021)); *see also, e.g.*, *Santiago v. Honeywell Int'l, Inc.*, No. 16-CIV-25359, 2017 WL 3610599, at *2 (S.D. Fla. Apr. 6, 2017) (denying a motion to modify a protective order issued by another court); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) (refusing "as a matter of comity" to order production of documents covered by a protective order issued by another court).

These factors supporting Plaintiff's request for sealing far outweigh the public's minimal need or interest in accessing the Sealed Documents.

### D.    Necessity of Sealing, Inadequacy of Alternatives

The Court has previously rejected Plaintiff's request to proceed pseudonymously and the Fourth Circuit affirmed that ruling. Accordingly, there are no alternatives of which undersigned counsel is aware that will prevent the exposure of Plaintiff's identity as the plaintiff in the Second Action in the event the Sealed Documents are filed publicly on this Court's ECF system.

7

**CONCLUSION**

For the foregoing reasons, the Court should grant this Motion and signed Plaintiff's Proposed Order to Seal filed concurrently herewith.

Dated:    January 29, 2024

Respectfully Submitted,

By: /s/ *Andrew T. Miltenberg*
      Andrew T. Miltenberg
State Bar No. 2399582
Kara L. Gorycki
State Bar No. 4140992
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com
*Attorney for Plaintiff*


By: /s/ Robert C. Ekstrand
      Robert C. Ekstrand
EKSTRAND AND EKSTRAND, LLP
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | [PROPOSED] ORDER |
| | ) | GRANTING PLAINTIFF'S MOTION |
| Defendant. | ) | FOR LEAVE TO FILE ECF NOS. 46-1 |
| | ) | AND 46-2 UNDER SEAL |

A party may file a motion to seal with this Court pursuant to the requirements of Local Rule 79.2. Local Rule 79.2 references Section V.G. of the Electronic Case Filing Administrative Policies and Procedures Manual ("Policy Manual"). That section of the Policy Manual requires that all motions to seal be accompanied by a supporting memorandum that specifies the following:

(i) the exact document or item, or portions thereof, for which filing under seal is requested;

(ii) How such request to seal overcomes the common law or the First Amendment presumption to access;

(iii) The specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access;

(iv) The reasons why alternatives to sealing are inadequate; and

(v) Whether there is consent to the motion.

*See* Section V.G., CM/ECF Policy Manual. The Policy Manual also requires that any proposed order accompanying a motion to seal set forth the findings required under Section V.G.

On January 29, 2024, Plaintiff filed a motion for leave to file under seal the following two documents (the "Motion"):

1

1. **ECF No. 46-1**, Exhibit 1 to the Declaration of Kelly Margolis Dagger in Support of Defendant's Opposition to the Plaintiff's January 17, 2024 Motion to Seal (ECF No. 46, the "Dagger Declaration")

2. **ECF No. 46-2**, Exhibit 5 to the Dagger Declaration (collectively with ECF No. 46-1, the **"Sealed Documents"**)

An order was issued in an action filed by Plaintiff in a federal district court in another District (the "Second Action") permitting Plaintiff to proceed in that action under a pseudonym. The two Sealed Documents provide information about the Second Action. Plaintiff contends that if filed publicly on this Court's ECF system they would reveal his identity in the Second Action.

A court considering a motion to maintain documents under seal must first determine the nature of the information and the public's right to access. *See, e.g., Stone v. University of Maryland Medical Systems Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). The common law presumption in favor of access attaches to all judicial records and documents; by contrast, First Amendment protection is limited to certain judicial records and documents, for example those attached to a dispositive motion. *Id.*

The presumption of access under the common law is not absolute and its scope is a matter left to the discretion of the district court. *See, e.g., Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Any presumption of access under the common law " 'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" *Washington Post*, 386 F.3d at 575 (quoting *Rushford v. New*

*Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988)). The party seeking the sealing of materials is only required to demonstrate the necessity and propriety of sealing the documents at issue; the court, in its discretion, may seal such documents if it deems such sealing appropriate. *Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 680 (E.D.N.C. 2003).

Here, the two documents for which sealing is sought were not filed in connection with any dispositive motion. Accordingly, the common law right of access applies to the Court's determination whether to grant the Motion.

Upon review of the Motion, and in evaluating the balance of interests in public access, the Court, at this time, has not been presented with any legitimate public need for access to the materials at issue. The public has minimal interest in access to the order issued in the Second Action granting Plaintiff the right to proceed therein anonymously included in ECF No. 46-1. The order is available to the public on the ECF system for the district court in which the Second Action is pending. ECF No. 46-2, which is Exhibit 5 to the Dagger Declaration, is a printed result list from a query seeking pending actions filed against Tulane University ("Tulane") in 2022 and 2023. The interest of the public in the results of a Pacer query that any member of the public could conduct on their own to identify the Second Action is minimal if not nonexistent.

The Court finds that, balanced against the minimal impact sealing would have on public access to information, Plaintiff's interest in protecting his anonymity in the Second Action by filing the Sealed Documents under seal is urgent and compelling. The Second Action will involve the disclosure of private, intimate details concerning sexual interactions between Plaintiff and other individuals. *See, e.g., Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593-594 (E.D. Va. 2016) ("what justifies the use of pseudonym here is plaintiff's status as an accused perpetrator of sexual misconduct … he should not have his name

3

forever associated in the public mind with an accusation that carries a significant social stigma"); *Doe v. Univ. of St. Thomas*, No, 16-cv-1127, 2016 WL 9307609, at \*2 (D. Minn. May 25, 2016) ("forcing Mr. Doe to proceed under his true name would guarantee a permanent label as a sexual offender, discoverable with a simple Google search"). Moreover, because Plaintiff is challenging a university's Title IX proceeding based on sexual misconduct in the Second Action, Plaintiff faces "potential retaliatory and emotional harm" if his association with that case is exposed. *See, e.g., Doe v. Grinnell College*, No. 4:17-cv-079, 2017 WL 11646145, at \*3 (S.D. Iowa July 10, 2017) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)).

In cases such as the Second Action, where students seek to expunge findings of sexual misconduct from their university records, requiring them to proceed against the universities in their own name would risk causing them the very harm they are seeking to remedy. *See e.g., Doe v. Virginia Polytechnic Inst.*, No. 7:21-CV-378, 2022 WL 972629, at \*3-4 (W.D. Va. Mar. 30, 2022) ("Doe is seeking injunctive relief to expunge the allegations of sexual misconduct from his record. If his identity in this lawsuit is disclosed, it will greatly undermine any relief to which he may be entitled."); *Doe v. Univ. of Mississippi*, 2018 WL 1703013, at \*2 (Apr. 6, 2018); *Grinnell College*, 2017 WL 11646145, at \*3; *Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016).

Further supporting the issuance of an order granting of Plaintiff's Sealing Motion are the principles of comity and courtesy between different federal district courts, which militate against the "modifying or invalidating rulings from other [federal district] courts." *Owlet Baby Care, Inc. v. Masimo Corp.*, No. 2:21-MC-00096-TS-JCB, 2021 WL 1753537, at \*3 (D. Utah May 4, 2021); *see also Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 1:19CV1193, 2021

WL 7162555, at *3 (M.D.N.C. Mar. 29, 2021) (quoting *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2021 WL 425889, at *1 (D.S.C. Feb. 5, 2021)); *see also, e.g.*, *Santiago v. Honeywell Int'l, Inc.*, No. 16-CIV-25359, 2017 WL 3610599, at *2 (S.D. Fla. Apr. 6, 2017) (denying a motion to modify a protective order issued by another court); *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991). "Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity [and] courtesy[.]" *Tucker*, 191 F.R.D. at 499.

Here, the Sealed Documents, if made accessible to the public on this Court's docket, will reveal Plaintiff as the individual who filed the Second Action. The effect of denying the Sealing Motion would be to nullify an order issued by the federal district court in which the Second Action is pending designed to protect Plaintiff from harm.

The Court finds that all of these factors supporting Plaintiff's Sealing Motion outweigh the public's minimal need or interest in accessing the materials Plaintiff seeks to be filed under seal. Moreover, in an Order dated January 5, 2023 (ECF No. 8), the Court denied Plaintiff's request to proceed in this action pseudonymously, and the Fourth Circuit has affirmed that ruling (ECF Nos. 21-22). Accordingly, there are no alternative methods to sealing to prevent the exposure of Plaintiff's identity as the plaintiff in the Second Action in the event the Sealed Documents are filed publicly on this Court's ECF system.

Based upon the foregoing, it is **ORDERED** that **ECF Nos. 46-1 and 46-2 filed in this action** shall be filed under seal with this Court in accordance with Local Rule 79.2,

**SO ORDERED** this _____ day of _____, 2024.

_____
JAMES C. DEVER III
United States  District Judge

6

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Andrew T. Miltenberg*

7

Original Filed at Docket No. 49,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe <br><br> Defendant. | DEFENDANT Jane Doe REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |

Jane Doe showed in her moving brief that John Doe claims are governed by Louisiana law—he asserts tort claims, and his allegations show that his claimed injuries occurred in Louisiana. In his response, John Doe argues that this Court should apply North Carolina law to his abuse of process and civil conspiracy claims and South Carolina law to his tortious interference claim. He says this is the case because there are no conflicts between North Carolina and Louisiana law on the former, and he was injured in South Carolina on the latter.

The first argument ignores black letter North Carolina choice-of-law principles. And the second ignores what John Doe pleaded in his amended complaint about his tortious interference claim. Choice-of-law principles dictate that Louisiana law applies to all three claims. As Jane Doe showed, the allegations in the amended complaint fail to state a claim for any of the three under Louisiana law. Indeed, John Doe concedes that he fails to state a claim for tortious interference with contract under Louisiana law if it applies.

Jane Doe respectfully requests that the Court dismiss the claims for abuse of process, tortious interference with contract, and civil conspiracy.

## ARGUMENT

**I.    John Doe            CLAIMS ARE GOVERNED BY LOUISIANA LAW**

North Carolina's "law of the situs test," also known as lex loci delicti, controls the choice of law for tort claims.  (DE 28 at 9).  The situs is where the alleged injury occurred; John Doe        complaint reveals that his alleged injuries occurred in Louisiana, and thus Louisiana law applies.  (*Id.* at 9, 11-12, 14-16).  Contrary to John Doe          arguments, North Carolina law does not apply to his abuse of process and civil conspiracy claims, and South Carolina law does not apply to his tortious interference claim.

**A.    John Doe         Abuse of Process and Civil Conspiracy Claims Are Governed by Louisiana Law Because He Alleges the Injuries That Give Rise to These Tort Claims Occurred in Louisiana.**

North Carolina law does not support John Doe        assertion that "North Carolina courts apply North Carolina law where no conflict exists between North Carolina law and the law of another state with respect to a particular claim."  (DE 41 at 15-16).[1]  John Doe reliance on *Information Control Systems, Inc. v. Avesta Technologies, Inc.*, No. 1:99CV217-T, 2000 WL 1409862 (W.D.N.C. Sept. 6, 2000), for this principle is misplaced.  (DE 41 at 16). That case addressed a motion to dismiss a counterclaim for breach of a contract with a New York choice-of-law provision.  2000 WL 1409862, at *3.  The parties were already litigating tort claims under North Carolina law.  *Id.*  The court found that since the substance of New York and North Carolina contract law was identical, there was no need to determine what law applied.  *Id.*

But this is not the default, as John Doe       suggests, nor does *Information Control* say anything about choice-of-law for tort claims.  *See id.*  The law in North Carolina is that when the injury giving rise to a tort claim occurs in another state, "the law of that state governs resolution

---

[1] Pinpoint citations to John Doe      brief are to the CM/ECF pagination.

2

of the substantive issues in the controversy." *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). Jane Doe showed in her moving brief (DE 28 at 9, 14-16), John Doe does not dispute (DE 41 at 16-26), that his alleged injuries from his abuse of process and civil conspiracy claims occurred in Louisiana.

For John Doe abuse of process claim, he alleges that Jane Doe "strategically utilized Louisiana's civil court system . . . for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish Plaintiff and to strengthen [Jane Doe Title IX claim against Plaintiff." Am. Compl. ¶ 111 (DE 23). He alleges that Jane Doe also "strategically utilized Tulane's Title IX process for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish Plaintiff." *Id.* ¶ 116.[2] John Doe also alleges that he flew to New Orleans "to get the TRO dismissed." *Id.* ¶ 89. Thus, John Doe alleged injury occurred in Louisiana, and Louisiana law applies. *See Coker v. Norwich Com. Grp., Inc.*, No. CV 3:20-03071-MGL, 2021 WL 4037472, at *4 (D.S.C. Sept. 3, 2021) (applying South Carolina lex loci rule to conclude that abuse of process claim arising from proceeding before Texas agency was governed by Texas law).

For his civil conspiracy claim, John Doe alleges that Jane Doe and Sue Roe conspired to defame him, Am. Compl. ¶ 151, and he specifically cites the alleged "false reporting to Tulane University, Plaintiff's fraternity, and other individuals that Plaintiff had sexually assaulted and sexually harassed Jane Doe and Sue Roe," *id.* ¶ 148. John Doe

---

[2] John Doe now concedes that, despite what he alleged, the Title IX process cannot give rise to an abuse of process claim because it was not a legal process. (DE 41 at 17 n.4). But John Doe cannot avoid his own allegations about his alleged injuries; "the court must scrutinize the allegations in the complaint to determine 'where the plaintiff has actually suffered harm.'" *Waterford I at Cary Park Condo. Homeowners Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, -- F. Supp. 3d ---, 2023 WL 2959868, at *4 (E.D.N.C. 2023) (citation omitted).

alleges that his reputation was injured *at Tulane*, and that he suffered other injuries *at Tulane* from this purported conspiracy.  (*See* DE 28 at 15; DE 23 ¶¶ 43-45).  Therefore, Louisiana law applies.  *See, e.g., Verona v. U.S. Bancorp*, No. 7:09-cv-057-BR, 2011 WL 1252935, at \*10 n. 6 (E.D.N.C. Mar. 29, 2011) (recognizing that, despite lack of North Carolina case law directly on point, the "general rule for defamation claims is the place of harm is the place of publication.").[3]

### B.     John Doe        Tortious Interference Claim Is Governed by Louisiana Law Because His Alleged Injuries Occurred in Louisiana.

John Doe      cannot avoid dismissal of his tortious interference claim by arguing that South Carolina law applies because, according to his brief, he was in South Carolina when he was banned from campus and eventually expelled from Tulane.  (DE 41 at 27).  As Jane Doe showed in her moving brief (DE 28 at 12), under North Carolina choice-of-law principles, damages arising out of a tortious interference with contract claim are suffered where the contract was to be performed.  *See Lloyd v. Carnation Co.*, 61 N.C. App. 381, 388, 301 S.E.2d 414, 419 (1983) (applying lex loci test to conclude that Virginia law governed when defendant unlawfully interfered with plaintiff's contract causing other party to cease performance in Virginia).

John Doe      alleges that the contract at issue was his educational contract with Tulane, and that Jane Doe interfered with that contract, inducing Tulane to cease performance of its contract and dismiss John Doe      from the university.  Am. Compl. ¶¶ 125, 132. John Doe     alleges that "Jane Doe deprived [him] of the benefit he was to receive from his contract with Tulane . . . which had promised [him] an educational environment free from false

---

[3] John Doe        counsel expanded on the location of injury in her Fourth Circuit argument, saying that the alleged defamation "occurred within a smaller community, that being Tulane University, the administrators, [and] the confidential Title IX proceedings."  Oral Arg. at 2:20-2:30, *Doe v. Doe*, No. 23-1058 (4th Cir. Sept. 19, 2023), available at https://www.ca4.uscourts.gov/OAarchive/mp3/23-1058-20230919.mp3 (last visited January 30, 2024).

information furnished to the University or to a University official, as well as an educational experience free from harassment or intimidation." *Id.* ¶ 91. That educational environment was in Louisiana, and the educational experience John Doe claims he was denied was in Louisiana. *See id.* ¶¶ 6, 91. The alleged contract thus called for Tulane's performance in Louisiana, where John Doe planned to finish his undergraduate education, remain on campus, participate in his fraternity and other university activities, graduate, and then attend business school. *See id.* ¶¶ 1, 11, 54, 91. Thus, Louisiana law applies to John Doe tortious interference claim. *See Lloyd*, 61 N.C. App. at 388, 301 S.E.2d at 419.

John Doe argues otherwise, asserting that because he elected to leave New Orleans for South Carolina in February 2022, prior to Tulane's ban or expulsion, he suffered his economic injuries in South Carolina. (DE 41 at 12, 26-27). He relies primarily on *Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 669 (W.D.N.C. 2012), for the proposition that "[i]n cases involving financial injuries, courts have considered the injury to be sustained where the economic loss was felt." (DE 41 at 26-27). *Synovus Bank* does not support John Doe argument.

*Synovus Bank* did not analyze the choice-of-law issue as to a tortious interference claim separately; instead, its analysis was for all the tort claims in the case. 887 F. Supp. 2d at 668-70 (concluding that North Carolina law would apply to defendant's tort claims). The defendant in *Synovus Bank* was a South Carolina resident who asserted tort claims against a bank, alleging he was fraudulently induced into investing in real estate in North Carolina. *Id.* at 665, 673. Much like John Doe he argued that his financial injuries occurred at his place of residence in South Carolina. *Id.* at 668. The court disagreed. *See id.* at 669. Instead, the court found that the

5

defendant's pecuniary injuries were "clearly suffered in North Carolina" as the real estate at issue was located there and the purchase transaction was completed there.  *Id.*

Here, even if John Doe returned home to South Carolina before he was expelled by Tulane, his losses were suffered in Louisiana, as that is where he lost educational opportunities, where a disciplinary mark was placed on his academic record, where he lost his tuition payment, and where the contract he alleges Jane Doe interfered with was entered into and would have been performed.  *See* Am. Compl. ¶¶ 4, 133-134 (alleging various damages associated with his tortious interference claim); *see also United Dominion Indus., Inc. v. Overhead Door Corp.*, 762 F. Supp. 126, 129-30 (W.D.N.C. 1991) (applying Texas substantive law to claim of unfair and deceptive trade practices, despite plaintiff's argument that the situs of the "pocketbook" was paramount, because closing of sale occurred in Texas); *3A Composites USA, Inc. v. United Indus., Inc.*, No. 5:14-CV-5147, 2015 WL 5437119, at *4 (W.D. Ark. Sept. 15, 2015) (citing *Synovus Bank* and concluding, under North Carolina's choice of law rules, that the lex loci delicti was Arkansas, "where the actual misappropriation and use of the trade secret occur[red,]" as opposed to North Carolina, where plaintiff maintained its principal place of business)[4]; *see generally Gen. Assurance of Am., Inc. v. Overby-Seawell Co.*, 533 F. App'x 200, 206 (4th Cir. 2013) (per curiam) ("We will not apply the law of a state in which only the effect of the wrongful act, such as economic impact, is felt.");[5] *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 697, 698 S.E.2d 719, 726 (2010) ("[A] significant number of cases

---

[4] The *Synovus Bank* case was transferred from the Western District of North Carolina, so the transferor district's choice-of-law rules applied.  *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004).

[5] *General Assurance* was decided using Virginia's choice-of-law rules, but Virginia also uses the lex loci test that North Carolina uses.  *See All Am. Ins. Co. v. James River Petroleum*, 542 F. Supp. 3d 410, 411 n. 3 (E.D. Va. 2021).

6

exist where a plaintiff has clearly suffered its pecuniary loss in a particular state, irrespective of that plaintiff's residence or principal place of business.  In those cases, the lex loci test requires application of the law of the state where the plaintiff has actually suffered harm.").  Therefore, Louisiana law applies.  (*See* DE 28 at 11-12).

**II.    John Doe        FAILS TO STATE A CLAIM FOR ABUSE OF PROCESS UNDER LOUISIANA LAW.**

John Doe        now concedes that he cannot recover in an abuse of process action relating to Tulane's Title IX proceedings, as those do not involve the initiation of legal process. (DE 41 at 17 n.4) ("Plaintiff is not pursuing a claim for abuse of process on the theory that Defendant used Tulane's Title IX process for an illegitimate objective because Plaintiff concedes that the Title IX investigation is not a legal process.").

As to his claim arising out of the process in Louisiana state court, John Doe correctly identifies the elements of an abuse of process claim under Louisiana law: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding."  *Foster v. Bias*, 358 So.3d 520, 536 (La. Ct. App. 2022). But he neglects to note that in order to state a claim, a plaintiff "must allege irregularity in the process itself."  *Id.* (citing *Delcambre v. Mancuso*, 268 So.3d 325, 331 (La. Ct. App. 2019)).  As *Foster* explains, "[t]he tort involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law; at issue in such actions is the intent to use a legal process for an improper reason."  *Id.* at 536 (citing *Goldstein v. Serio*, 496 So.2d 412, 415 (La. Ct. App. 1986); *see also Mini-Togs, Inc. v. Young*, 354 So.2d 1389, 1391 (La. Ct. App. 1978) (dismissing abuse of process claim when plaintiffs failed to allege irregularity in the process even though they may have alleged ulterior motives).  *Mini-Togs* also cited an earlier case, *Gonsouland v. Rosomano*, 176 F. 481 (5th Cir. 1910), that the *Mini-Togs* court said alleged

7

a "true abuse of process"—when a defendant in a suit for rent seized property that was legally exempt.  *See Mini-Togs*, 354 So.2d at 1391.

Here, John Doe    alleges that Jane Doe obtained a restraining order that prevented him from interviewing witnesses, and to "bolster her claims" in the Title IX proceeding.  (DE 41 at 18 (citing Am. Compl. ¶¶ 88, 90)).  But the object of Jane Doe restraining order was to prevent John Doe    from harassing her, stalking her, or intimidating her friends.  *See* Petition for Protection from Abuse & Order of Protection at 11-12 (DE 40-1).[6]  The restraining order had the effect of precluding John Doe    from contacting Jane Doe or her friends.  *Id.*[7] This was the regular use of process.

As Louisiana courts explain, "regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice."  *Waguespack, Seago & Carmichael, PLC v. Lincoln*, 768 So.2d 287, 292 (La. Ct. App. 2000) (quoting *Mini-Togs*, 354 So.2d at 1390).  Therefore, John Doe    fails to state a claim for abuse of process under Louisiana law.

## III.   John Doe        FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY UNDER LOUISIANA LAW.

Jane Doe showed (DE 28 at 16), and John Doe    concedes, that civil conspiracy is not a stand-alone claim for relief (DE 41 at 21 ("Under both North Carolina and Louisiana law, civil conspiracy does not constitute a 'stand alone' cause of action but rather a 'mode of liability . . . derivative of other claims against a party[.]")).

---

[6] The petition and order are properly considered because they are explicitly referred to in the complaint.  Am. Compl. ¶ 87; *see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

[7] Pinpoint citations to this filing are to the CM/ECF pagination.

As Jane Doe also showed in her moving brief, John Doe civil conspiracy claim fails because his allegations of an agreement to defame him between Jane Doe and Sue Roe are speculative and conclusory.  (DE 28 at 17).  John Doe contends in response that he has plausibly alleged an agreement between Jane Doe and Sue Roe to defame him (DE 41 at 22-26), but the allegations he cites do not rise to the level of plausibility required.  *See Zuniga v. Masse Contracting, Inc.*, 290 F. Supp. 3d 581, 587 (E.D. La. 2017) ("Plaintiffs' allegations that Defendants 'formed a conspiracy' or 'conspired' are conclusory.").

John Doe argues that the following allegations raise his conclusion that there was an agreement above the conclusory and speculative level:

- Jane Doe and Sue Roe connected on Instagram before the assault;

- Jane Doe referenced a "previous victim" when she texted John Doe days after he sexually assaulted her;

- Jane Doe and Sue Roe submitted their Title IX reports on the same day and the allegations about John Doe conduct were similar;

- John Doe "believes" that Jane Doe and Sue Roe were interviewed by the Title IX investigator within an hour of each other; and

- Jane Doe and Sue Roe reported a "false timeline" to the Title IX investigator about when they met.

(DE 41 at 22-23).  Accepting the truth of these allegations, they are too speculative to support the conclusion that Jane Doe and Sue Roe formed an agreement to commit an illegal or tortious act. *See Doe v. McKesson*, 71 F.4th 278, 287 (5th Cir. 2023) (reciting elements of civil conspiracy under Louisiana law).  Therefore, the conspiracy claim is properly dismissed.  (DE 28 at 16-18).

## IV.   John Doe CONCEDES THAT HE FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT UNDER LOUISIANA LAW.

In his response to Jane Doe motion to transfer venue, John Doe concedes that he cannot state a claim for tortious interference under Louisiana law.  (DE 37 at 28 ("In the event

9

that the Court determines that Louisiana law applies to Plaintiff's tortious interference claim, the

Court would not need extensive experience to apply [Louisiana] law, as the claim would be

dismissed.")).[8]  Since Louisiana law applies to John Doe        claim, *supra* pp. 4-6, he cannot

state a claim for tortious interference and Jane Doe is entitled to dismissal of that claim (DE 28

at 12-14).

This the 31st day of January, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

---

[8] Pinpoint citations to this response are to the CM/ECF pagination.

10

Original Filed at Docket No. 50,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe <br><br> Defendant. | DEFENDANT Jane Doe REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) |

Multiple factors support transfer to the district where all the underlying events occurred, including (1) the convenience of witnesses, none of whom reside here, (2) the opportunity for consolidation with a related case, and (3) Louisiana's interest in the case. John Doe fear that transfer will expose that he is John Doe in a case against Tulane does not outweigh these factors. John Doe already linked this case with the Tulane case in the public record and refiled this case under his real name. Judicial estoppel does not preclude transfer, as Jane Doe has not taken inconsistent positions. Convenience and the interests of justice support transfer.

**ARGUMENT**

**I.    JUDICIAL ESTOPPEL DOES NOT APPLY BECAUSE Jane Doe HAS NOT TAKEN INCONSISTENT POSITIONS.**

The Fourth Circuit "has identified four elements that must be met before a court may apply judicial estoppel: (1) the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the position sought to be estopped must be one of fact rather than law or legal theory; (3) the prior inconsistent position must have been accepted by the court; and (4) the party sought to be estopped must have intentionally misled the court to gain unfair advantage." *Minnieland Priv. Day Sch., Inc. v. Applied*

*Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 458 (4th Cir. 2017). John Doe judicial estoppel argument fails because he cannot establish any of these elements.

A.    Jane Doe **Did Not Take Inconsistent Positions of Fact.**

John Doe    argument as to the first two elements fails because Jane Doe did not take inconsistent positions, and her position on the distinctions between a defamation case and a Title IX case against a university was a legal one. *See id.* Jane Doe argued, and the Fourth Circuit agreed, that for purposes of pseudonymity, a defamation case against an individual was different from a Title IX case against a university seeking injunctive relief. *See Doe v. Doe*, 85 F.4th 206, 215, 217 (4th Cir. 2023); Resp. Br. 43-47, *Doe v. Doe*, No. 23-1058 (4th Cir. Mar. 29, 2023) (DE 35-2). Jane Doe argues in support of her motion to transfer that the Tulane case and this case arise from the same facts. (DE 31 at 1). One position Jane Doe took was on the facts (the cases arise out of the same facts); the other was a position on the law (the cases involve distinct claims). These positions are consistent and accurate comparisons of the two cases.

John Doe    sued Jane Doe for money damages for defamation and other torts. Am. Compl. ¶¶ 92-153 (DE 23). He sued Tulane for violation of Title IX and breach of contract. *Doe* Compl. ¶¶ 494-532 (DE 30-1). The complaints contain different legal theories and requests for relief, warranting different treatment with respect to pseudonymity, *see Doe*, 85 F.4th at 215, 217, but the cases arise out of the same facts, as evidenced by numerous identical allegations across the two complaints. *Compare* Am. Compl. ¶¶ 14-45 *with Doe* Compl. ¶¶ 147-213.

Jane Doe did not argue to the Fourth Circuit, as John Doe    now contends, that "this case does not implicate Tulane's Title IX proceeding," that "this action does not overlap with any review of Tulane's Title IX proceeding," or that this case is not "related to an action against

2

Tulane." (DE 38 at 5, 22).[1]  To the contrary, Jane Doe acknowledged in her Fourth Circuit brief that John Doe alleged that Jane Doe "manipulated Tulane's Title IX investigation process" and that he claimed to have been damaged by statements Jane Doe made both within and outside Tulane's Title IX process.  Resp. Br. 6, 21, *Doe*, No. 23-1058 (DE 35-2).

In the cases John Doe cites (DE 38 at 20-21), courts applied judicial estoppel because a party attempted to directly contradict its prior position.  *See Oudeh v. Goshen Med. Ctr., Inc.*, No. 5:22-CV-193-D, 2022 WL 18028281, at *6 (E.D.N.C. Dec. 29, 2022) (plaintiffs were estopped from arguing that they had an interest in a promissory note, when they admitted they did not have such an interest in prior proceeding); *Fellores v. Winter*, No. 2:06-cv-551, 2007 WL 473727, at *2 (E.D. Va. Feb. 8, 2007) (plaintiff was estopped from seeking transfer away from Eastern District of Virginia when he had previously stipulated to transfer).  Judicial estoppel does not apply where, as here, Jane Doe did not take inconsistent positions, let alone inconsistent positions on the facts.  *See Minnieland*, 867 F.3d at 458.

**B.    John Doe Cannot Establish Judicial Reliance or Intent to Mislead or Gain an Unfair Advantage.**

Because Jane Doe did not take inconsistent positions, John Doe cannot satisfy the third and fourth elements necessary to invoke judicial estoppel.  *See id.* at 458-59.

Jane Doe rejects the accusation that she "acted intentionally" by not telling the Fourth Circuit that she might seek transfer.  (*See* DE 38 at 22).  When this Court ordered that John Doe either dismiss his case or file a complaint in his real name (DE 8 at 8), he appealed.  The proceedings were stayed (DE 14, 20), and Jane Doe was not required to say how she would proceed if John Doe filed an amended complaint after his appeal.

---

[1] Pinpoint citations to John Doe brief are to the CM/ECF pagination.

3

Jane Doe will gain no unfair advantage from transfer. John Doe argument that

transfer (and possible consolidation) will destroy his anonymity in the Tulane case is misplaced.

(*See* DE 38 at 22-23).  Transferring this case will not impact John Doe use of a

pseudonym in another case.  While consolidation is not before this Court, John Doe also

cannot show that consolidation will necessarily destroy anonymity.  If the cases are consolidated

for pretrial hearings and discovery, John Doe can still argue that separate trials are

necessary to avoid prejudice.  *See* Fed. R. Civ. P. 42(b).[2]

Regardless, John Doe will not be able to blame consolidation for compromising

his anonymity. John Doe chose to bring this case against Jane Doe despite the lack of

authority for using a pseudonym.  (*See* DE 8 at 7). John Doe then chose to persist in this

case and disclose his real name.  (*See* DE 23).  And John Doe also publicly filed a

document in the Fourth Circuit that linked this case with the Tulane case.  *See* ECF No. 40, *Doe*,

No. 23-1058 (DE 46-1).

**II.    Jane Doe ESTABLISHED THAT TRANSFER TO THE EASTERN DISTRICT OF LOUISIANA IS WARRANTED.**

**A.    John Doe Does Not Dispute That This Case Could Have Been Brought in The Eastern District of Louisiana.**

Jane Doe showed (DE 31 at 8-10), and John Doe does not dispute (DE 38 *passim*),

that this case could have been brought in the Eastern District of Louisiana.

**B.    The Relevant Factors Weigh in Favor of Transfer.**

1.    John Doe choice of forum is entitled to diminished weight.

Courts afford a plaintiff's choice of forum less weight when the plaintiff is a non-resident

---

[2] Jane Doe does not concede that John Doe would be right.  The pseudonym order does not address trial.  (DE 36-2).  Even when anonymity is warranted before trial, use of pseudonyms at trial may be inappropriate. *See Doe v. Cabrera*, 307 F.R.D. 1, 10 nn. 15, 16 (D.D.C. 2014).

and the plaintiff's claims bear no relation to the forum.  (DE 31 at 11-12).  John Doe    does

not live here (DE 38 at 24), and he says that the "events described" in his complaint occurred

while he and Jane Doe were students in Louisiana.  Am. Compl. ¶¶ 6-7.  Therefore, he cannot

show that his choice of forum should be accorded substantial weight.  (*See* DE 38 at 23-24).

John Doe    cannot distinguish *Speed Trac Technologies, Inc. v. Estes Express Lines,*

*Inc.,* 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008) (cited in DE 31 at 11-12).  Contrary to

John Doe    argument (DE 38 at 21), *Speed Trac* does not say that the plaintiff's chosen

forum receives less weight when the *defendant* does not reside there; it says that the plaintiff's

choice of forum receives less weight when: "(1) the plaintiff chooses a foreign forum, or (2) the

cause of action bears little or no relation to the chosen forum."  *Speed Trac*, 567 F. Supp. 2d at

803; *accord NOA, LLC v. Atl. Clothing, LLC*, No. 5:14-CV-100-FL, 2014 WL 3667230, at *8

(E.D.N.C. July 22, 2014).  Both of these circumstances pertain here.

John Doe    does not engage with *Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674

(M.D.N.C. 2004) (cited in DE 31 at 12), which explained that the deference given to the

plaintiff's choice of forum is "proportionate to the relation between the forum and the cause of

action."  323 F. Supp. 2d at 674; *accord Boyd v. Koch Foods*, No. 5:10-CV-349-D, 2011 WL

2413844, at *2 (E.D.N.C. June 10, 2011) (weight given to plaintiff's choice "is lessened when

the conduct giving rise to the complaint did not occur in the forum").  Here, that relation is

limited, and any deference to John Doe    choice is diminished by the fact that "the subject

matter of the lawsuit is connected to the proposed transferee forum."  *Blackhawk Consulting,*

*LLC v. Fed. Nat'l Mortg. Ass'n*, 975 F. Supp. 2d 57, 61 (D.D.C. 2013) (quotation omitted).

Jane Doe mother signed for a package in Cary (DE 35-5 at 2) while Jane Doe was at

Tulane, Jane Doe Decl. ¶¶ 4-6 (DE 29-2).  Jane Doe retained North Carolina counsel to defend a case

filed here (DE 15, 17), but the location of counsel is irrelevant, *see In re Horseshoe Ent.*, 337

F.3d 429, 434 (5th Cir. 2003).  The only connection between this case and this district is that

Jane Doe was domiciled here at the time of filing, and that connection warrants little weight.  *See*

*Pan Am. Bank of Miami v. Gully*, 220 F. Supp. 405, 407 (W.D. Pa. 1963) (giving little weight to

fact that "the defendant was or is a Pennsylvania citizen, that the plaintiff chose this forum for

suit, and that both parties are represented by local counsel").

John Doe cannot show that his choice of forum should receive significant

deference because he could not have sued Jane Doe in South Carolina.  (DE 38 at 24 (citing

*Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, No. 3:19-cv-00508-FDW-DSC, 2020 WL

90663, *3 (W.D.N.C. Jan. 7, 2020))).  Although the *Sauer Brands* court recited that a plaintiff's

choice of forum could still receive deference if the plaintiff faced jurisdictional problems in the

plaintiff's home state, the plaintiff there alleged that the underlying events occurred in the

district, the plaintiff had substantial operations there, and all parties were forum residents.  2020

WL 90663, at *3. John Doe could not sue Jane Doe in South Carolina, but he faced no

hurdle to filing in Louisiana, where all the events in this case occurred.  (DE 31 at 8-10).

> 2.    <u>Taken together, the factors of party and witness convenience militate
> strongly in favor of transfer.</u>

The parties agree that neither party lives in this district.  (DE 31 at 14; DE 38 at 24).

John Doe contends that it will not be inconvenient for him to litigate this case in North

Carolina, but he also does not argue that Louisiana would be an inconvenient forum.  (*See* DE 38

at 24-25).  The convenience of the parties still favors transfer because John Doe is already

litigating a related case against Tulane in the transferee district.  (*See* DE 31 at 14).

The most important factor, witness convenience, strongly favors transfer.  *See Boyd*, 2011

WL 2413844, at *3. John Doe has not identified any witnesses in North Carolina.  (DE

<div align="center">6</div>

38 *passim*).  Jane Doe identified multiple potential witnesses in Louisiana, including up to two former Tulane students and six Tulane administrators.  Jane Doe Decl. ¶¶ 10, 12, 15; *see* Woodley Aff. ¶¶ 7-8 (DE 29-1).  John Doe submitted no evidence to refute this showing.  (DE 38 *passim*).  John Doe complaint is replete with allegations about Jane Doe Title IX complaint and the resulting investigation, on which Jane Doe contends Louisiana residents have relevant information.  *See* Am. Compl. ¶¶ 2, 3, 45, 47, 91, 95, 111, 116, 117, 119, 120, 139. Further, John Doe is silent (DE 38 at 24-26) as to the location or identity of the witnesses whom Jane Doe could not identify from their initials, Jane Doe Decl. ¶ 13.  John Doe cannot rely on his silence as to where the witnesses live to avoid transfer.

John Doe argument that Jane Doe was required to show that witnesses would rather travel to Louisiana than North Carolina for trial is unavailing.  (DE 38 at 25-26). Witnesses residing in or around New Orleans can be compelled to appear for trial in the Eastern District of Louisiana, located in New Orleans.  *See* Fed. R. Civ. P. 45(c)(1)(A); 28 U.S.C § 98(a). There is no evidence that any non-party witness could be compelled to testify at trial here.

The cases John Doe cites do not support his argument that Jane Doe was required to demonstrate that witnesses not compellable to testify here would not choose to travel here. (*See* DE 38 at 25-26 (citing *Accreditation Comm'n for Health Care, Inc. v. NextLOGIK, Inc.*, No. 5:20-CV-46-M, 2020 WL 4913280, at \*6 (E.D.N.C. Aug. 20, 2020) (rejecting "barebone assertion that Defendant has non-party witnesses in Maryland"); *Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*, No. 1:19CV486, 2020 WL 2086188, at \*19 (M.D.N.C. Apr. 30, 2020) (noting that defendant had burden to demonstrate "whether *its* witnesses are willing to travel to a foreign jurisdiction")).  These cases suggest that courts may consider whether a corporate entity has demonstrated that its employees will not travel to a foreign jurisdiction.  The cases do not

7

require Jane Doe to contact more than two dozen witnesses not under her control—many identified only by initials[3]—and ask whether they are willing to travel. Jane Doe identified the witnesses she could, and their locations to the best of her ability. *See* Jane Doe Decl. ¶¶ 9-13.

With zero non-party witnesses in this district, and multiple witnesses in Louisiana, witness convenience strongly favors transfer. *See Boyd*, 2011 WL 2413844, at *3.

3.    Transfer will serve the interests of justice.

*a.*    John Doe *cannot show that transfer will jeopardize his asserted interest in maintaining anonymity in the Tulane case.*

Transfer would not expose that John Doe is the plaintiff in the Tulane case. *See supra* pp. 3-4. John Doe identity is already public because he chose to pursue this case, and he is already linked to the Tulane case because of his own public filing. *See supra* p. 4. To the extent that he has any remaining interest in anonymity in the Tulane case, John Doe cannot show that his interest should "predominate." (*See* DE 38 at 27).

*b.*    John Doe *concedes that Louisiana has a strong relationship to this action.*

John Doe concedes that Louisiana has a "strong" relationship to this case, that the underlying events occurred in Louisiana, and that his claim for abuse of process involves a Louisiana court. (*Id.*). These concessions support transfer. (*See* DE 31 at 16-19).

John Doe cannot diminish Louisiana's relationship to this case by arguing that this Court can apply North Carolina law to his claims unless Jane Doe identifies a specific conflict between North Carolina and Louisiana law on a specific claim. (DE 38 at 28). That is not the law. "North Carolina uses the law of the situs test[,]" and the Court must "scrutinize the

---

[3] The Court recognized that "this pervasive anonymity could lead to difficulty and confusion for Jane Doe during discovery." (DE 8 at 6).

allegations in the complaint to determine 'where the plaintiff has actually suffered harm.'"

*Waterford I at Cary Park Condo. Homeowners Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, -- F.

Supp. 3d --, 2023 WL 2959868, at *4 (E.D.N.C. 2023) (quotation omitted).  *Information Control*

*Systems, Inc. v. Avesta Technologies, Inc.*, No. 1:99CV217-T, 2000 WL 1409862 (W.D.N.C.

Sept. 6, 2000), does not support John Doe      argument that North Carolina law applies.

(DE 38 at 28).  There, in addressing a contract with a New York choice-of-law provision, the

court found that the substance of New York and North Carolina contract law was identical, and

"there [was] no need to determine what law to apply because no conflict exist[ed]."  *Info.*

*Control*, 2000 WL 1409862, at *3.  *Information Control* did not and could not alter the

established rule that the law of the state where injury occurred applies to tort claims.  *See*

*Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988).

As Jane Doe showed in her moving brief (DE 31 at 16-18) and in her briefs in support of

her motion to dismiss (DE 28 at 8-9, 11-12, 14-16; DE 49 at 2-7), Louisiana law applies.

Louisiana's interest in this case favors transfer.  (*See* DE 31 at 16-19).

       c.     *Docket conditions favor transfer.*

The Eastern District of Louisiana has three times as many active district judges and fewer

recent filings per judgeship than this district.  (DE 31 at 19-20).  John Doe      says that the

median time from filing to disposition of a civil case is 9.9 months here but 68.9 months in the

Eastern District of Louisiana, making that court comparatively more congested.  (DE 38 at 29).[4]

---

[4] The most current data show that the Eastern District of Louisiana's median time from filing to disposition in civil cases is 24.2 months for the year ending September 30, 2023, and was 69.4 months for the year ending September 30, 2022.  Federal Court Management Statistics, *U.S. District Courts—Profiles—During the 12-Month Periods Ending September 30, 2018 Through 2023*, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1 (last visited January 30, 2024) (DE 51-1).

9

The time-to-disposition metric depends on cases *ending*, so resolving old cases can skew this metric.  For example, 1,200 cases filed in 2015 and 2016 were dismissed on October 25, 2021, adding 1,200 five- to six-year-old cases to the civil cases disposed in the year ending September 30, 2022.  *See* Dismissal, *In re: Xarelto Prods. Liab. Litig.*, MDL No. 2592, No. 2:14-md-02592-EEF-MBN (E.D. La. Oct. 25, 2021) (DE 51-2).  The termination of old cases does not forecast future congestion.  The-filings-per judgeship metric is the better indicator of future congestion and shows that docket conditions favor transfer.  (DE 31 at 19-20).

> d.      The opportunity for consolidation favors transfer.

John Doe      admits that some efficiencies can be achieved by transfer (and consolidation).  (DE 38 at 30).  John Doe      posits, however, that absent consolidation, there is no assurance that rulings would be consistent.  (*Id.*).  But the parties could promote consistency and efficiency by joining in a motion to consolidate and invoking local rules regarding the efficient assignment of related cases.  *See* E.D. La. Local Civil Rules 3.1 & 3.2.

John Doe      says that efficiency cannot be evaluated until Jane Doe provides this Court with information as to whether third-party witnesses are willing to attend depositions in Louisiana or North Carolina.  (DE 38 at 31).  But whether the witnesses are willing to travel is not the point.  There are at least twenty-seven people in addition to the parties identified as potential witnesses either in the complaint or in Ms. Woodley's affidavit.  (DE 31 at 13).  Having these witnesses sit for deposition once would conserve the parties' and the witnesses' resources.

## CONCLUSION

For the reasons stated above and in her moving brief, Jane Doe respectfully requests that the Court transfer this matter to the United States District Court for the Eastern District of Louisiana.

This the 31st day of January, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

11

Original Filed at Docket No. 51,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe | |
| Plaintiff, | NOTICE OF FILING EXHIBITS TO PROVISIONALLY SEALED REPLY IN SUPPORT OF MOTION TO TRANSFER |
| v. | |
| Jane Doe | |
| Defendant. | |

Defendant Jane Doe hereby files the following public exhibits to her provisionally sealed

reply brief in support of her motion to transfer:

- Federal Court Management Statistics, *U.S. District Courts—Profiles—During the 12-Month Periods Ending September 30, 2018 Through 2023* (Exhibit 9) (DE 51-1)

- Dismissal, *In re: Xarelto Prods. Liab. Litig.*, MDL No. 2592, No. 2:14-md-02592-EEF-MBN (E.D. La. Oct. 25, 2021) (Exhibit 10) (DE 51-2)

This the 31st day of January, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

# EXHIBIT 9

## U.S. District Court — Judicial Caseload Profile

**NORTH CAROLINA EASTERN**

| | | | 12-Month Periods Ending | | | | | | Numerical Standing Within | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Sep 30 2018 | Sep 30 2019 | Sep 30 2020 | Sep 30 2021 | Sep 30 2022 | Sep 30 2023 | U.S. | Circuit |
| **Overall Caseload Statistics** | | Filings [1] | 2,792 | 3,168 | 3,108 | 2,825 | 2,532 | 3,995 | | |
| | | Terminations | 2,623 | 3,115 | 2,590 | 2,889 | 2,792 | 2,965 | | |
| | | Pending | 3,115 | 3,103 | 3,618 | 3,579 | 3,338 | 4,063 | | |
| | | Percent Change in Total Filings Current Year Over Earlier Year | 43.1 | 26.1 | 28.5 | 41.4 | 57.8 | | 8 | 1 |
| | | Number of Judgeships | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | | Vacant Judgeship Months [2] | 12.0 | 12.0 | 2.1 | 0.0 | 0.0 | 0.0 | | |
| **Actions per Judgeship** | **Filings** | Total | 698 | 792 | 777 | 706 | 633 | 999 | 6 | 1 |
| | | Civil | 428 | 461 | 472 | 430 | 408 | 741 | 6 | 1 |
| | | Criminal Felony | 204 | 252 | 253 | 208 | 157 | 172 | 8 | 1 |
| | | Supervised Release Hearings | 66 | 80 | 52 | 68 | 68 | 86 | 10 | 1 |
| | Pending Cases [2] | | 779 | 776 | 905 | 895 | 835 | 1,016 | 11 | 2 |
| | Weighted Filings [2] | | 626 | 715 | 705 | 652 | 565 | 923 | 4 | 1 |
| | Terminations | | 656 | 779 | 648 | 722 | 698 | 741 | 8 | 1 |
| | Trials Completed | | 38 | 39 | 27 | 43 | 40 | 38 | 7 | 1 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 9.2 | 9.7 | 11.1 | 13.6 | 15.4 | 15.3 | 54 | 7 |
| | | Civil [2] | 10.1 | 9.4 | 8.8 | 10.5 | 11.6 | 9.0 | 47 | 4 |
| | From Filing to Trial [2] (Civil Only) | | 38.4 | 38.6 | - | 59.7 | 40.6 | 31.6 | 22 | 2 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | | 98 4.6 | 259 13.5 | 307 14.2 | 355 16.0 | 430 20.4 | 174 6.0 | 24 | 4 |
| | Average Number of Felony Defendants Filed per Case | | 1.2 | 1.3 | 1.2 | 1.2 | 1.4 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 38.1 | 32.6 | 43.0 | 40.5 | 41.4 | 36.9 | | |
| | | Percent Not Selected or Challenged | 24.3 | 26.1 | 35.9 | 25.6 | 30.5 | 26.7 | | |

| 2023 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2,963 | 175 | 17 | 798 | 10 | 24 | 44 | 122 | 1,315 | 76 | 241 | 1 | 140 |
| Criminal [1] | 681 | - | 306 | 18 | 201 | 62 | 21 | 20 | - | 11 | 7 | 8 | 27 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

## U.S. District Court — Judicial Caseload Profile

**LOUISIANA EASTERN**

| | | | 12-Month Periods Ending | | | | | | | Numerical Standing Within | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Sep 30 2018 | Sep 30 2019 | Sep 30 2020 | Sep 30 2021 | Sep 30 2022 | Sep 30 2023 | | U.S. | Circuit |
| **Overall Caseload Statistics** | | Filings [1] | 17,091 | 18,087 | 4,283 | 2,498 | 4,101 | 7,655 | | | |
| | | Terminations | 6,777 | 10,008 | 17,236 | 12,105 | 9,392 | 7,322 | | | |
| | | Pending | 38,976 | 46,738 | 32,974 | 23,378 | 18,079 | 18,406 | | | |
| | | Percent Change in Total Filings Current Year Over Earlier Year | -55.2 | -57.7 | 78.7 | 206.4 | 86.7 | | | 5 | 2 |
| | | Number of Judgeships | 12 | 12 | 12 | 12 | 12 | 12 | | | |
| | | Vacant Judgeship Months [2] | 27.6 | 16.0 | 0.0 | 0.0 | 8.1 | 16.9 | | | |
| **Actions per Judgeship** | **Filings** | Total | 1,424 | 1,507 | 357 | 208 | 342 | 638 | | 22 | 5 |
| | | Civil | 1,387 | 1,470 | 334 | 183 | 304 | 607 | | 14 | 2 |
| | | Criminal Felony | 28 | 28 | 19 | 21 | 32 | 27 | | 90 | 9 |
| | | Supervised Release Hearings | 10 | 10 | 5 | 5 | 6 | 4 | | 91 | 8 |
| | Pending Cases [2] | | 3,248 | 3,895 | 2,748 | 1,948 | 1,507 | 1,534 | | 6 | 1 |
| | Weighted Filings [2] | | 1,219 | 1,200 | 299 | 193 | 371 | 745 | | 7 | 2 |
| | Terminations | | 565 | 834 | 1,436 | 1,009 | 783 | 610 | | 16 | 5 |
| | Trials Completed | | 7 | 8 | 6 | 5 | 7 | 6 | | 91 | 9 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 13.5 | 12.7 | 13.8 | 22.1 | 21.0 | 15.5 | | 57 | 8 |
| | | Civil [2] | 7.8 | 10.3 | 36.0 | 24.9 | 69.4 | 24.2 | | 93 | 9 |
| | From Filing to Trial [2] (Civil Only) | | 17.5 | 22.3 | 14.8 | 23.1 | 32.2 | 25.9 | | 12 | 4 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | | 3,984 10.3 | 13,008 28.1 | 11,902 36.6 | 16,713 73.1 | 13,428 76.7 | 11,251 63.0 | | 93 | 9 |
| | Average Number of Felony Defendants Filed per Case | | 1.5 | 1.3 | 1.6 | 1.5 | 1.3 | 1.3 | | | |
| | Jurors | Avg. Present for Jury Selection | 40.0 | 51.9 | 40.8 | 61.8 | 52.1 | 9.6 | | | |
| | | Percent Not Selected or Challenged | 43.5 | 50.3 | 40.7 | 58.8 | 45.0 | 41.4 | | | |

| 2023 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 7,282 | 31 | 261 | 254 | 1 | 36 | 52 | 5,419 | 793 | 23 | 243 | 4 | 165 |
| Criminal [1] | 322 | 6 | 77 | 19 | 113 | 46 | 14 | 10 | - | 22 | 1 | 6 | 8 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

# EXHIBIT 10

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: XARELTO (RIVAROXABAN)  :
PRODUCTS LIABILITY LITIGATION  :    **MDL No. 2592**
     :
     :    **SECTION L**
**THIS DOCUMENT RELATES TO:**  :
     :
*Cases Listed in Exhibit A*  :    **JUDGE ELDON E. FALLON**
     :    **MAGISTRATE JUDGE NORTH**
     :

Plaintiffs on the attached Exhibit A filed a lawsuit regarding the medication Xarelto®, which is currently pending in this MDL No. 2592, *In re: Xarelto (Rivaroxaban) Products Liability Litigation*. These Plaintiffs have enrolled in the Xarelto settlement program, and all parties have consented to dismissal of their cases with prejudice.

Accordingly, pursuant to the consent of the parties, it is hereby **ORDERED** that the cases of the Plaintiffs listed in Exhibit A are **DISMISSED WITH PREJUDICE**, with each party to bear its own fees and costs.

Pursuant to Pretrial Order No. 11B, Plaintiffs' counsel or pro se Plaintiffs will be responsible for payment of any unpaid filing fees.

New Orleans, Louisiana, on this 22nd day of October, 2021.

                                        **United States District Judge**

**EXHIBIT A**

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 1 | 2:15-cv-05618 | Mesi, Angelo V. | Mesi, Angelo V. | 4416 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 2 | 2:15-cv-05620 | Austin, Mark K. | Austin, Mark K. | 4230 | Williams Hart Boundas Easterby, LLP |
| 3 | 2:15-cv-05621 | Rutherford, Russell D. | Rutherford, Russell D. | 5033 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 4 | 2:15-cv-05623 | Annesser, James | Annesser, James | 1421 | Wagstaff & Cartmell, LLP |
| 5 | 2:15-cv-05624 | Billman, Frank H. | Billman, Frank H. | 4231 | Williams Hart Boundas Easterby, LLP |
| 6 | 2:15-cv-05625 | Ryerson, Lois E. | Ryerson, Jack E. | 4712 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 7 | 2:15-cv-05626 | Williams, Thomas | Williams, Thomas | 3835 | Dr. Shezad Malik Law Firm PC |
| 8 | 2:15-cv-05627 | Severns, Gary M. | Severns, Gary M. | 4466 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 9 | 2:15-cv-05628 | Crater, John P. | Crater, John P. | 4232 | Williams Hart Boundas Easterby, LLP |
| 10 | 2:15-cv-05630 | Soeder, Clarence L. | Soeder, Clarence L. | 4293 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 11 | 2:15-cv-05631 | Horton, Virgie | Horton, Virgie | 1809 | Wagstaff & Cartmell, LLP |
| 12 | 2:15-cv-05632 | Stacey, Marjorie L. | Stacey, Marjorie L. | 4481 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 13 | 2:15-cv-05633 | Pettit, Deborah | Davis, Paul W., Sr. | 4233 | Williams Hart Boundas Easterby, LLP |
| 14 | 2:15-cv-05634 | Wesley, Patrick J. | Wesley, Patrick J. | 4546 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 15 | 2:15-cv-05635 | Batiste, Betty | Batiste, Betty | 1764 | Wagstaff & Cartmell, LLP |
| 16 | 2:15-cv-05640 | Fathera, Burlyn June | Fathera, Burlyn June | 4235 | Williams Hart Boundas Easterby, LLP |
| 17 | 2:15-cv-05641 | Fish, John W. | Fish, John W. | 4236 | Williams Hart Boundas Easterby, LLP |
| 18 | 2:15-cv-05642 | Youngblood, Allen | Jackson, Morgan E., Jr. | 4237 | Williams Hart Boundas Easterby, LLP |
| 19 | 2:15-cv-05643 | Jackson, Ralph L. | Jackson, Ralph L. | 4238 | Williams Hart Boundas Easterby, LLP |
| 20 | 2:15-cv-05644 | Krapf, Judith A. | Krapf, Judith A. | 4239 | Williams Hart Boundas Easterby, LLP |
| 21 | 2:15-cv-05646 | McCusker, Dolores C. | McCusker, Dolores C. | 4242 | Williams Hart Boundas Easterby, LLP |
| 22 | 2:15-cv-05647 | Warner, Janice | Mack, Dollie | 4240 | Williams Hart Boundas Easterby, LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 23 | 2:15-cv-05649 | Maguire, Patricia J. | Maguire, Patricia J. | 4241 | Williams Hart Boundas Easterby, LLP |
| 24 | 2:15-cv-05650 | Moore, Charlisa E. | Moore, Charlisa E. | 4243 | Williams Hart Boundas Easterby, LLP |
| 25 | 2:15-cv-05651 | Moss, Linda B. | Moss, Linda B. | 4244 | Williams Hart Boundas Easterby, LLP |
| 26 | 2:15-cv-05652 | Perkins, Karen S. | Perkins, William D. | 4245 | Williams Hart Boundas Easterby, LLP |
| 27 | 2:15-cv-05653 | Place, Arlene Cormier | Place, Arlene Cormier | 4246 | Williams Hart Boundas Easterby, LLP |
| 28 | 2:15-cv-05654 | Redding, Patricia A. | Redding, Patricia A. | 4247 | Williams Hart Boundas Easterby, LLP |
| 29 | 2:15-cv-05655 | Hunter, Xann Roberts | Roberts, Sharon L. | 4248 | Williams Hart Boundas Easterby, LLP |
| 30 | 2:15-cv-05656 | Snyder, Paul G. | Snyder, Paul G. | 4249 | Williams Hart Boundas Easterby, LLP |
| 31 | 2:15-cv-05657 | Wilson, Theodore | Wilson, Theodore | 4250 | Williams Hart Boundas Easterby, LLP |
| 32 | 2:15-cv-05662 | Garrett, June | Garrett, June | 1431 | Wagstaff & Cartmell, LLP |
| 33 | 2:15-cv-05663 | Hazelwood, Letha | Hazelwood, Letha | 1537 | Wagstaff & Cartmell, LLP |
| 34 | 2:15-cv-05665 | Johnson, Floyzell, Sr. | Johnson, Floyzell, Sr. | 1910 | Wagstaff & Cartmell, LLP |
| 35 | 2:15-cv-05667 | McClarren, Donald | McClarren, Donald | 2307 | Wagstaff & Cartmell, LLP |
| 36 | 2:15-cv-05668 | Timmons, Joyce | Timmons, Joyce | 2602 | Wagstaff & Cartmell, LLP |
| 37 | 2:15-cv-05670 | Wickersham, Jurine | Wickersham, Robert | 2617 | Wagstaff & Cartmell, LLP |
| 38 | 2:15-cv-05671 | Wiltz, James | Wiltz, James | 2475 | Wagstaff & Cartmell, LLP |
| 39 | 2:15-cv-05673 | Mitchell, Dana | Mitchell, Dana | 4061 | Engstrom, Lipscomb & Lack |
| 40 | 2:15-cv-05674 | Noa, Robert Irving | Noa, Robert Irving | 5139 | Thornton Law Firm LLP |
| 41 | 2:15-cv-05684 | McEntire, Judith | McEntire, Judith | 2406 | Allen & Nolte, PLLC |
| 42 | 2:15-cv-05686 | Spraungel, Mary Anne | Spraungel, Harland | 2431 | Allen & Nolte, PLLC |
| 43 | 2:15-cv-05693 | Cramer, Richard | Cramer, Richard | 4710 | Weitz & Luxenberg, PC |
| 44 | 2:15-cv-05695 | Cross, Charles | Cross, Charles | 4510 | Weitz & Luxenberg, PC |
| 45 | 2:15-cv-05696 | Miller, Patricia Ann | Lowery, Helen | 4842 | Weitz & Luxenberg, PC |
| 46 | 2:15-cv-05697 | McKenzie, Tameka | McKenzie, Tameka | 5078 | Weitz & Luxenberg, PC |
| 47 | 2:15-cv-05698 | Perdue, Gregory | Perdue, Gregory | 5082 | Weitz & Luxenberg, PC |
| 48 | 2:15-cv-05699 | Smith, Kertina | Smith, Kertina | 5090 | Weitz & Luxenberg, PC |
| 49 | 2:15-cv-05700 | Davison, Kay | Veld, Genevieve | 5075 | Weitz & Luxenberg, PC |
| 50 | 2:15-cv-05701 | Wielepski, Alfred | Wielepski, Alfred | 5174 | Weitz & Luxenberg, PC |
| 51 | 2:15-cv-05705 | Rush, Shartra L. | Gordon, Eligah | 5223 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 52 | 2:15-cv-05713 | Cambron, John, Sr. | Cambron, John, Sr. | 5042 | Seeger Weiss LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 53 | 2:15-cv-05719 | Daulton, Dennis | Daulton, Dennis | 5043 | Seeger Weiss LLP |
| 54 | 2:15-cv-05723 | Davis, Clarence | Davis, Clarence | 5044 | Seeger Weiss LLP |
| 55 | 2:15-cv-05724 | Hickey, Susanne | Hickey, Susanne | 5167 | Seeger Weiss LLP |
| 56 | 2:15-cv-05726 | Kellum, Michael | Kellum, MIchael | 5045 | Seeger Weiss LLP |
| 57 | 2:15-cv-05730 | Mullins, Harold | Mullins, Harold | 5131 | Seeger Weiss LLP |
| 58 | 2:15-cv-05734 | Nigro, Eleanor | Nigro, Eleanor | 5046 | Seeger Weiss LLP |
| 59 | 2:15-cv-05743 | Speck, Shelby | Speck, Shelby | 5005 | Forman Law Offices, PA |
| 60 | 2:15-cv-05745 | Worthington, Christopher | Worthington, Jacqulyn | 5178 | Forman Law Offices, PA |
| 61 | 2:15-cv-05778 | Mugrage, Phyllis | Mugrage, Donald | 5029 | Chaffin Luhana LLP |
| 62 | 2:15-cv-05784 | Jackson, Samuel | Jackson, Samuel | 4311 | Goza & Honnold, LLC |
| 63 | 2:15-cv-05795 | Lawson, Bernice | Lawson, Bernice | 4389 | Goza & Honnold, LLC |
| 64 | 2:15-cv-05798 | Neer, Claud | Neer, Claud | 2077 | Wagstaff & Cartmell, LLP |
| 65 | 2:15-cv-05800 | Hampton, Durwin | Hampton, Durwin | 2102 | Wagstaff & Cartmell, LLP |
| 66 | 2:15-cv-05804 | Martins, Clement | Martins, Clement | 4392 | Goza & Honnold, LLC |
| 67 | 2:15-cv-05806 | Mayberry, Martha | Mayberry, Martha | 4394 | Goza & Honnold, LLC |
| 68 | 2:15-cv-05808 | Morgan, Ellis | Morgan, Ellis | 4397 | Goza & Honnold, LLC |
| 69 | 2:15-cv-05836 | Carlson, Evan | Carlson, Evan | 6491 | Johnson Law Group |
| 70 | 2:15-cv-05837 | Ho, Denise | Ho, Denise | 4868 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 71 | 2:15-cv-05838 | Clements, James | Clements, Marilyn | 4863 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 72 | 2:15-cv-05839 | Hogge, Dorothy | Hogge, Harvey | 7629 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 73 | 2:15-cv-05842 | Ray, Betty J. | Ray, Betty J. | 4947 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 74 | 2:15-cv-05851 | Holub, Virgil | Holub, Virgil | 5222 | Johnson Law Group |
| 75 | 2:15-cv-05854 | Mitchell, Emma Jane | Mitchell, Emma Jane | 5408 | Johnson Law Group |
| 76 | 2:15-cv-05855 | Chartier, Jeffrey A. | Chartier, Patricia A. | 5371 | Stark & Stark |
| 77 | 2:15-cv-05859 | Brown, Edith | Brown, Edith | 5055 | Watts Guerra LLP |
| 78 | 2:15-cv-05861 | Roche, James | Roche, James | 5160 | Brown and Crouppen, PC |
| 79 | 2:15-cv-05863 | Collins, Joseph | Collins, Joseph | 5062 | Watts Guerra LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 80 | 2:15-cv-05865 | Cuttler, Frank | Cuttler, Frank | 5066 | Watts Guerra LLP |
| 81 | 2:15-cv-05866 | Webb, Jane | Webb, Jane | 5171 | Brown and Crouppen, PC |
| 82 | 2:15-cv-05867 | Deaton, Abigail | Boudoin, Louella | 5061 | Watts Guerra LLP |
| 83 | 2:15-cv-05868 | Ingham, Mary | Baraboo, Brian | 5057 | Watts Guerra LLP |
| 84 | 2:15-cv-05869 | Breasett, Thomas | Breasett, Thomas | 4159 | The Maher Law Firm |
| 85 | 2:15-cv-05870 | Neal, Pamela | Neal, Pamela | 5063 | Watts Guerra LLP |
| 86 | 2:15-cv-05871 | Romano, Alex | Romano, Alex | 5056 | Watts Guerra LLP |
| 87 | 2:15-cv-05872 | Scheulen, Terry | Scheulen, Terry | 5065 | Watts Guerra LLP |
| 88 | 2:15-cv-05873 | Byrd, Jack | Byrd, Jack | 4160 | The Maher Law Firm |
| 89 | 2:15-cv-05875 | Casto, Billy | Casto, Billy | 4161 | The Maher Law Firm |
| 90 | 2:15-cv-05876 | Faulkner, Kenneth | Faulkner, Kenneth | 4162 | The Maher Law Firm |
| 91 | 2:15-cv-05877 | Humphrey, James | Humphrey, James | 4163 | The Maher Law Firm |
| 92 | 2:15-cv-05878 | Huntley, Harry | Huntley, Harry | 4164 | The Maher Law Firm |
| 93 | 2:15-cv-05879 | Jones, Kenneth | Jones, Kenneth | 4165 | The Maher Law Firm |
| 94 | 2:15-cv-05880 | Keller, Randy | Keller, Randy | 4166 | The Maher Law Firm |
| 95 | 2:15-cv-05881 | Lake, Darrin | Lake, Darrin | 4167 | The Maher Law Firm |
| 96 | 2:15-cv-05882 | McNeil, Earl | McNeil, Earl | 4168 | The Maher Law Firm |
| 97 | 2:15-cv-05883 | Messina, Joyce | Messina, Joyce | 4169 | The Maher Law Firm |
| 98 | 2:15-cv-05884 | Moorer, Alfred | Moorer, Alfred | 4170 | The Maher Law Firm |
| 99 | 2:15-cv-05886 | O'Neal, Bessie | O'Neal, Bessie | 4172 | The Maher Law Firm |
| 100 | 2:15-cv-05887 | Patterson, Jeannie | Patterson, Jeannie | 4173 | The Maher Law Firm |
| 101 | 2:15-cv-05888 | Tenenbaum, Wayne | Tenenbaum, Wayne | 4174 | The Maher Law Firm |
| 102 | 2:15-cv-05889 | Bridges, Deborah | Bridges, Richard | 4410 | Flint Law Firm, LLC |
| 103 | 2:15-cv-05891 | Fisher, Joanne | Fisher, Joanne | 4412 | Flint Law Firm, LLC |
| 104 | 2:15-cv-05892 | Hemenway, David, Jr. | Hemenway, David | 4415 | Flint Law Firm, LLC |
| 105 | 2:15-cv-05893 | Lay, Brenda | Lay, Bennie | 4420 | Flint Law Firm, LLC |
| 106 | 2:15-cv-05894 | Jones, Stacey Lewis | Lewis, George | 4424 | Flint Law Firm, LLC |
| 107 | 2:15-cv-05898 | Mullins, Nora | Mullins, Nora | 5373 | Stark & Stark |
| 108 | 2:15-cv-05899 | Berry, Joan | Berry, Joan | 4438 | Sommerman & Quesada, LLP |
| 109 | 2:15-cv-05900 | Roush, Randall V. | Roush, Randall V. | 4658 | Stark & Stark |
| 110 | 2:15-cv-05901 | Dwyer, Melissa | Dwyer, Ella | 5253 | Sommerman & Quesada, LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 111 | 2:15-cv-05902 | Goodz, Lori | Goodz, Lori | 5294 | Sommerman & Quesada, LLP |
| 112 | 2:15-cv-05903 | Gouldman, Beverly | Gouldman, Beverly | 5154 | Sommerman & Quesada, LLP |
| 113 | 2:15-cv-05904 | Kresanek, James | Kresanek, James | 4531 | Allen & Nolte, PLLC |
| 114 | 2:15-cv-05905 | May, Thomas | May, Thomas | 5079 | Sommerman & Quesada, LLP |
| 115 | 2:15-cv-05907 | Rust, Robert | Rust, Robert | 5243 | Sommerman & Quesada, LLP |
| 116 | 2:15-cv-05908 | Tuller, Paul M. | Tuller, Paul M. | 5305 | Stark & Stark |
| 117 | 2:15-cv-05910 | Lawrence, Denise | Lawrence, Denise | 2947 | Allen & Nolte, PLLC |
| 118 | 2:15-cv-05911 | Vincent, Virginia | Vincent, Virginia | 5277 | Sommerman & Quesada, LLP |
| 119 | 2:15-cv-05914 | Short, Pamela | Burris, Geneva | 4529 | Allen & Nolte, PLLC |
| 120 | 2:15-cv-05915 | Wachowicz, Denise | Wachowicz, Denise | 2948 | Allen & Nolte, PLLC |
| 121 | 2:15-cv-05916 | Yockachonis, Barbara | Yockachonis, Barbara | 4545 | Allen & Nolte, PLLC |
| 122 | 2:15-cv-05917 | Hawkins, Connie E. | Hawkins, Stanley | 4530 | Allen & Nolte, PLLC |
| 123 | 2:15-cv-05926 | Rosa, Valerie | Rosa, Victor | 5410 | Johnson Law Group |
| 124 | 2:15-cv-05935 | Farinelli, John | Farinelli, John | 4226 | Burke Harvey, LLC; Crumley Roberts |
| 125 | 2:15-cv-05938 | Hyland, Scott | Hyland, Scott | 6854 | Burke Harvey, LLC; Crumley Roberts |
| 126 | 2:15-cv-05942 | Thornton, Janis | Thornton, Janis | 4810 | Burke Harvey, LLC; Crumley Roberts |
| 127 | 2:15-cv-05956 | Widdison, James H. | Widdison, James H. | 5372 | Lowe Law Group; Flint Law Firm, LLC |
| 128 | 2:15-cv-05957 | Duncan, Kenneth | Duncan, Kenneth | 5385 | Lowe Law Group; Flint Law Firm, LLC |
| 129 | 2:15-cv-05969 | Flanigan, Ivy | Flanigan, Ivy | 6475 | Aylstock, Witkin, Kreis & Overholtz PLLC |
| 130 | 2:15-cv-05972 | Terbay, Bertha | Terbay, Bertha | 6510 | Aylstock, Witkin, Kreis & Overholtz PLLC |
| 131 | 2:15-cv-05973 | Trail, Doris | Trail, Doris | 6471 | Aylstock, Witkin, Kreis & Overholtz PLLC |
| 132 | 2:15-cv-06000 | Bell, Patricia Ann | Bell, Patricia Ann | 5332 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 133 | 2:15-cv-06001 | Beverly, Robert, Jr. | Beverly, Robert, Jr. | 5333 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 134 | 2:15-cv-06002 | Brown, Mary | Brown, Mary | 5334 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 135 | 2:15-cv-06003 | Browning, Barry | Browning, Barry | 5335 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 136 | 2:15-cv-06004 | Burns, Mary Jane | Burns, Paul E. | 5336 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 137 | 2:15-cv-06005 | Butler, Wilbur | Butler, Wilbur | 5337 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 138 | 2:15-cv-06006 | Cooper, Marion | Cooper, Marion | 5338 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 139 | 2:15-cv-06008 | Drumm, Dorothy | Drumm, Dorothy | 5339 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 140 | 2:15-cv-06009 | Folley, Ella Mae | Folley, Ella Mae | 5340 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 141 | 2:15-cv-06010 | Green, Angel | Green, Angel | 5341 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 142 | 2:15-cv-06011 | Grosse, Mary | Grosse, Mary | 5342 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 143 | 2:15-cv-06012 | Harmon, Robert | Harmon, Robert | 5343 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 144 | 2:15-cv-06013 | Harvey, Russell J. | Harvey, Russell J. | 5344 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 145 | 2:15-cv-06015 | Hendricks, Marsha | Hendricks, Marsha | 5345 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 146 | 2:15-cv-06019 | Goodner, William | Goodner, William | 5190 | Matthews & Associates |
| 147 | 2:15-cv-06020 | James, Clarence, Jr. | James, Clarence, Jr. | 4614 | Matthews & Associates |
| 148 | 2:15-cv-06022 | Henry, Carolyn | Henry, Carolyn | 5346 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 149 | 2:15-cv-06025 | Horn, Roger | Horn, Roger | 5347 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 150 | 2:15-cv-06027 | Houchin, Jeffrey | Houchin, Jeffrey | 5348 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 151 | 2:15-cv-06028 | White-Sellers, Yolanda | White, Shirley | 5002 | Matthews & Associates |
| 152 | 2:15-cv-06029 | Isbell, Anna | Isbell, Anna | 5349 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 153 | 2:15-cv-06030 | Ladue, Aaron | Ladue, Aaron | 5350 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 154 | 2:15-cv-06031 | Lerma, Christina | Lema, Christina | 5351 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 155 | 2:15-cv-06032 | McDaniel, Vivian | McDaniel, Vivian | 5352 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 156 | 2:15-cv-06035 | Moses, Walter | Moses, Walter | 5353 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 157 | 2:15-cv-06038 | Fox, Elise | Fox, Elise | 6544 | Slater, Slater Schulman, LLP; Douglas & London, PC |
| 158 | 2:15-cv-06042 | Zuspann, Viva J. | Zuspann, Norman D. | 6543 | Slater, Slater Schulman, LLP; Douglas & London, PC |
| 159 | 2:15-cv-06043 | Reid, Alvin H. | Reid, Alvin H. | 5356 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 160 | 2:15-cv-06044 | Rothrock, Charles | Rothrock, Charles | 5357 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 161 | 2:15-cv-06045 | Russell, William J. | Russell, William J. | 5358 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 162 | 2:15-cv-06046 | Salo, Jessica | Salo, Jessica | 5359 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 163 | 2:15-cv-06047 | Fitzgerald, Gerald | Fitzgerald, Gerald | 6649 | The Frankowski Firm, LLC |
| 164 | 2:15-cv-06048 | Tate, Lonnie | Tate, Lonnie | 5360 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 165 | 2:15-cv-06050 | Richter, Marie | Richter, Marie | 6541 | Slater, Slater Schulman, LLP; Douglas & London, PC |
| 166 | 2:15-cv-06051 | Ward, Anna Mae | Ward, Anna Mae | 5361 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 167 | 2:15-cv-06052 | Whinery, Ronald | Whinery, Ronald | 5362 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 168 | 2:15-cv-06053 | Houston, Christella J. | Houston, Christella J. | 2468 | Douglas & London, PC; Salim-Beasley, LLC |
| 169 | 2:15-cv-06054 | Cordier, Donald | Cordier, Donald | 3621 | Meyerkord & Meyerkord, LLC |
| 170 | 2:15-cv-06055 | Willis, Donald | Willis, Donald | 5363 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 171 | 2:15-cv-06056 | Woodbury, Wanda G. | Woodbury, Wanda G. | 4398 | Douglas & London, PC; Salim-Beasley, LLC |
| 172 | 2:15-cv-06058 | Yell, Chester | Yell, Chester | 5364 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 173 | 2:15-cv-06061 | West, Elizabeth | Geisenheyner, Robert | 3627 | Meyerkord & Meyerkord, LLC |
| 174 | 2:15-cv-06063 | Hibbard, Annette | Hibbard, Kay | 3812 | Meyerkord & Meyerkord, LLC |
| 175 | 2:15-cv-06064 | Young, Ricci | Young, Ricci | 5365 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 176 | 2:15-cv-06065 | Van Buren, Debra | Van Buren, Jeffrey | 4196 | Meyerkord & Meyerkord, LLC |
| 177 | 2:15-cv-06067 | Clayton, Doris | Clayton, Alvin | 5423 | Ferrer, Poirot & Wansbrough |
| 178 | 2:15-cv-06069 | Gurley, Gerald | Gurley, Gerald | 5421 | Ferrer, Poirot & Wansbrough |
| 179 | 2:15-cv-06071 | Nelson, William | Nelson, William | 5354 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 180 | 2:15-cv-06072 | Bass, David | Bass, David | 3850 | John Jewell Pace, APLC |
| 181 | 2:15-cv-06074 | Glasman, Betty | Glasman, Larry | 4593 | John Jewell Pace, APLC |
| 182 | 2:15-cv-06075 | Shelton, Rosie | Shelton, Rosie | 5418 | Ferrer, Poirot & Wansbrough |
| 183 | 2:15-cv-06076 | Jacobs, Lanita | Jacobs, Lanita | 4861 | John Jewell Pace, APLC |
| 184 | 2:15-cv-06077 | Kessler, Penny | Kessler, Penny | 4253 | John Jewell Pace, APLC |
| 185 | 2:15-cv-06078 | Merritt, Richard | Merritt, Eric | 4119 | John Jewell Pace, APLC |
| 186 | 2:15-cv-06080 | Mitchell, Susan | Mitchell, Dennis | 4143 | John Jewell Pace, APLC |
| 187 | 2:15-cv-06081 | Ramsey, Yolanda | Ramsey, Yolanda | 4450 | John Jewell Pace, APLC |
| 188 | 2:15-cv-06082 | Scott, Mark | Scott, Judith | 4304 | John Jewell Pace, APLC |
| 189 | 2:15-cv-06083 | Austin Trust Company | Wentsch, George | 4072 | John Jewell Pace, APLC |
| 190 | 2:15-cv-06086 | Marshall, Dorothy | Marshall, Dorothy | 5274 | The Lanier Law Firm |
| 191 | 2:15-cv-06088 | Allen, Tilda | Allen, Tilda | 5307 | Sommerman & Quesada, LLP |
| 192 | 2:15-cv-06090 | Bowles, Kimberly | Bowles, John | 5233 | Sommerman & Quesada, LLP |
| 193 | 2:15-cv-06092 | McKinney, Pat | McKinney, Pat | 5289 | The Lanier Law Firm |
| 194 | 2:15-cv-06094 | Camarota, Samuel | Camarota, Samuel | 5250 | Sommerman & Quesada, LLP |
| 195 | 2:15-cv-06095 | Dupak, Katherine | Talpas, John J. | 5292 | The Lanier Law Firm |
| 196 | 2:15-cv-06097 | Zauke, Walter | Zauke, Walter | 5311 | The Lanier Law Firm |
| 197 | 2:15-cv-06098 | McCaskill, Susan | Cleghorn, Helen | 5281 | Sommerman & Quesada, LLP |
| 198 | 2:15-cv-06099 | Dace, Glen | Dace, Delores | 6483 | Potts Law Firm, LLP; Burnett Law Firm |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 199 | 2:15-cv-06100 | Fruit, David | Fruit, David | 4402 | Sommerman & Quesada, LLP |
| 200 | 2:15-cv-06101 | Rawlins, Nancy | Rawlins, Nancy | 6719 | Douglas & London, PC |
| 201 | 2:15-cv-06103 | Davis, Anna | Davis, Anna | 16253 | Douglas & London, PC |
| 202 | 2:15-cv-06105 | Roakes, Ellis | Roakes, Barbara Jean | 6736 | Douglas & London, PC |
| 203 | 2:15-cv-06106 | Dupuy, Cleveland | Dupuy, Curtis | 6485 | Potts Law Firm, LLP; Burnett Law Firm |
| 204 | 2:15-cv-06107 | Lange, Laura | Lange, Laura | 6718 | Douglas & London, PC |
| 205 | 2:15-cv-06108 | King, Gary | King, Gary | 6672 | Andrus Wagstaff, PC |
| 206 | 2:15-cv-06110 | Elliott, Sheila | Elliott, Sheila | 6488 | Potts Law Firm, LLP; Burnett Law Firm |
| 207 | 2:15-cv-06112 | Glover, Karen | Glover, Karen | 6489 | Potts Law Firm, LLP; Burnett Law Firm |
| 208 | 2:15-cv-06114 | Sebring, Janice | Sebring, Janice | 6806 | Andrus Wagstaff, PC |
| 209 | 2:15-cv-06115 | Kassulke, Adam | Kassulke, Adam | 5267 | Sommerman & Quesada, LLP |
| 210 | 2:15-cv-06116 | Johnson, Richard | Johnson, Richard | 6492 | Potts Law Firm, LLP; Burnett Law Firm |
| 211 | 2:15-cv-06117 | Werntz, Greg | Kridler, Katherine | 4419 | Sommerman & Quesada, LLP |
| 212 | 2:15-cv-06119 | Jordan, Gloria | Jordan, Gloria | 6646 | Potts Law Firm, LLP; Burnett Law Firm |
| 213 | 2:15-cv-06120 | Davis, Lois | Moorefield, Mary | 5317 | Sommerman & Quesada, LLP |
| 214 | 2:15-cv-06122 | Lane, Ethel Jean | Lane, Ethel Jean | 6493 | Potts Law Firm, LLP; Burnett Law Firm |
| 215 | 2:15-cv-06125 | Lewis, Dorothy Belinda | Lewis, Dorothy Belinda | 6495 | Potts Law Firm, LLP; Burnett Law Firm |
| 216 | 2:15-cv-06132 | Taggard, Frank | Taggard, Frank | 5276 | Sommerman & Quesada, LLP |
| 217 | 2:15-cv-06133 | Colvin, Jack | Colvin, Jack | 6768 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 218 | 2:15-cv-06134 | Creekmur, William | Creekmur, William | 6808 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 219 | 2:15-cv-06135 | Bell, Wayne | Bell, Wayne | 4963 | Murphy Law Firm |
| 220 | 2:15-cv-06136 | Ebersole, Charles | Ebersole, Charles | 6820 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 221 | 2:15-cv-06139 | Burton, Dawn A. | White, Leonard | 4425 | Sommerman & Quesada, LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 222 | 2:15-cv-06140 | Gay, Mary Ann | Gay, Mary Ann | 6821 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 223 | 2:15-cv-06143 | Mendez, Alfredo S. | Mendez, Alfredo S. | 5383 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 224 | 2:15-cv-06146 | Nichols, Dennis | Nichols, Vickie | 6838 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 225 | 2:15-cv-06147 | Bowman, Danny | Bowman, Danny | 4965 | Murphy Law Firm |
| 226 | 2:15-cv-06150 | Rife, Orley | Rife, Orley | 6477 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 227 | 2:15-cv-06151 | Solomon, Steven | Solomon, Benjamin | 6833 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 228 | 2:15-cv-06152 | Cole, Susan | Cole, Grady | 4966 | Murphy Law Firm |
| 229 | 2:15-cv-06153 | Sumski, Marilyn L. | Sumski, Marilyn L. | 8016 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 230 | 2:15-cv-06154 | Deock, Doreen | Deock, Dorothea | 4967 | Murphy Law Firm |
| 231 | 2:15-cv-06155 | Ellis, Francis | Ellis, Robert | 4968 | Murphy Law Firm |
| 232 | 2:15-cv-06157 | Falco, Lucy | Falco, Lucy | 4969 | Murphy Law Firm |
| 233 | 2:15-cv-06162 | Green, Walter | Green, Walter | 4970 | Stern Law, PLLC |
| 234 | 2:15-cv-06163 | Gutis, Joy | Guertin, M. Evelyn | 4971 | Murphy Law Firm |
| 235 | 2:15-cv-06164 | Ballard, Peggy | Helms, Mamie | 4972 | Murphy Law Firm |
| 236 | 2:15-cv-06165 | Jackson, Kimberly | Jackson, Kimberly | 4973 | Murphy Law Firm |
| 237 | 2:15-cv-06166 | Jackson, Selina | Jackson, Selina | 4974 | Murphy Law Firm |
| 238 | 2:15-cv-06170 | Mast, Adlai | Mast, Adlai | 4976 | Murphy Law Firm |
| 239 | 2:15-cv-06171 | Copeland, Direan Smith | Matthews, Wilma | 4977 | Murphy Law Firm |
| 240 | 2:15-cv-06174 | Harshbarger, David | McMurray, Noreen | 4978 | Murphy Law Firm |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 241 | 2:15-cv-06175 | Reynolds, Patricia | Reynolds, Patricia | 4979 | Murphy Law Firm |
| 242 | 2:15-cv-06176 | Schell, Louis | Schell, Louis | 4980 | Murphy Law Firm |
| 243 | 2:15-cv-06177 | McCray, Veola | McCray, Veola | 6650 | Potts Law Firm, LLP; Burnett Law Firm |
| 244 | 2:15-cv-06178 | Schroff, William | Schroff, William | 4981 | Murphy Law Firm |
| 245 | 2:15-cv-06179 | Senders, Terry | Senders, Terry | 4982 | Murphy Law Firm |
| 246 | 2:15-cv-06180 | Presley, Eugene | Presley, Eugene | 6498 | Potts Law Firm, LLP; Burnett Law Firm |
| 247 | 2:15-cv-06181 | Shaw, Cynthia | Shaw, Cynthia | 4983 | Murphy Law Firm |
| 248 | 2:15-cv-06182 | Skinner, Richard | Skinner, Richard | 4984 | Murphy Law Firm |
| 249 | 2:15-cv-06185 | Nitinthorn, Denise | White, Lucy | 4986 | Murphy Law Firm |
| 250 | 2:15-cv-06187 | White, Robin | White, Robin | 4987 | Murphy Law Firm |
| 251 | 2:15-cv-06188 | Wilburn, Melvin | Wilburn, Becky | 4988 | Murphy Law Firm |
| 252 | 2:15-cv-06192 | Barnett, Carroll | Barnett, Helen | 4115 | Sarangi Law, LLC |
| 253 | 2:15-cv-06196 | Grogan, Pamela | Blackwell, Dewitt | 4201 | Sarangi Law, LLC |
| 254 | 2:15-cv-06197 | Brown, Eunice | Brown, Eunice | 5213 | Sarangi Law, LLC |
| 255 | 2:15-cv-06213 | Emberton, Lovell | Emberton, Wendell | 4839 | Sarangi Law, LLC |
| 256 | 2:15-cv-06214 | Migliaro, Tia | Migliaro, Richard | 4114 | Sarangi Law, LLC |
| 257 | 2:15-cv-06215 | Perry, Agnes | Perry, Agnes | 4093 | Sarangi Law, LLC |
| 258 | 2:15-cv-06221 | Halawi, Haissam | Halawi, Haissam | 5375 | Baron & Budd, PC |
| 259 | 2:15-cv-06237 | Rhodes, Evelyn | Rhodes, Evelyn | 6499 | Potts Law Firm, LLP; Burnett Law Firm |
| 260 | 2:15-cv-06238 | Riggleman, Christopher | Riggleman, Christopher | 6500 | Potts Law Firm, LLP; Burnett Law Firm |
| 261 | 2:15-cv-06241 | Sconyers, Sheila | Sconyers, Sheila | 6652 | Potts Law Firm, LLP; Burnett Law Firm |
| 262 | 2:15-cv-06242 | Underwood, Sandra | Underwood, James | 5413 | Baron & Budd, PC |
| 263 | 2:15-cv-06243 | Flenniken, Judy | Sexton, Mattie | 6662 | Potts Law Firm, LLP; Burnett Law Firm |
| 264 | 2:15-cv-06246 | Shaffner, Sandra | Shaffner, Sandra | 6667 | Potts Law Firm, LLP; Burnett Law Firm |
| 265 | 2:15-cv-06247 | Taliaferro, Jerome | Taliaferro, Jerome | 6668 | Potts Law Firm, LLP; Burnett Law Firm |
| 266 | 2:15-cv-06248 | Tessler, Jerome | Tessler, Jerome | 6689 | Potts Law Firm, LLP; Burnett Law Firm |
| 267 | 2:15-cv-06249 | Tyler, Shelley | Tyler, Shelley | 6691 | Potts Law Firm, LLP; Burnett Law Firm |
| 268 | 2:15-cv-06250 | Williams, Lawrence P., Jr. | Williams, Lawrence P., Jr. | 6711 | Potts Law Firm, LLP; Burnett Law Firm |
| 269 | 2:15-cv-06251 | Winkles, Lauren | Winkles, Lauren | 6702 | Potts Law Firm, LLP; Burnett Law Firm |
| 270 | 2:15-cv-06252 | Woodie, Edward J. | Woodie, Edward J. | 6714 | Potts Law Firm, LLP; Burnett Law Firm |
| 271 | 2:15-cv-06254 | Ratcliff, Alvin | Ratcliff, Alvin | 4998 | Ferrer, Poirot & Wansbrough |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 272 | 2:15-cv-06256 | Wilson, Betty | Wilson, Betty | 6440 | Zimmerman Reed, PLLP |
| 273 | 2:15-cv-06257 | Valenti, Josephine | Valenti, Josephine | 5405 | Baron & Budd, PC |
| 274 | 2:15-cv-06262 | O'Rourke, Cynthia | Johnston, Carl | 4676 | Grant & Eisenhofer PA |
| 275 | 2:15-cv-06279 | Brett, John | Brett, John | 5206 | Fears Nachawati, PLLC |
| 276 | 2:15-cv-06283 | Cunningham, Joe | Cunningham, Joe | 5207 | Fears Nachawati, PLLC |
| 277 | 2:15-cv-06285 | Davis, Penny | Davis, Penny | 5208 | Fears Nachawati, PLLC |
| 278 | 2:15-cv-06287 | Boyles, Ernest Lee | Boyles, Ernest Lee | 4215 | Motley Rice LLC |
| 279 | 2:15-cv-06288 | Goldstein, Marvin L. | Goldstein, Marvin L. | 6739 | Motley Rice LLC |
| 280 | 2:15-cv-06289 | Hancock, Thomas J. | Hancock, Thomas J. | 4308 | Motley Rice LLC |
| 281 | 2:15-cv-06290 | McGurk, Kathleen | McGurk, Kathleen | 6685 | Motley Rice LLC |
| 282 | 2:15-cv-06291 | Williams, James F. | Williams, James F. | 2578 | Motley Rice LLC |
| 283 | 2:15-cv-06292 | Mark, Robin | Mark, Robin | 5209 | Fears Nachawati, PLLC |
| 284 | 2:15-cv-06293 | Norman, Robert | Norman, Robert | 5210 | Fears Nachawati, PLLC |
| 285 | 2:15-cv-06295 | Romero, Jerry | Romero, Jerry | 5211 | Fears Nachawati, PLLC |
| 286 | 2:15-cv-06311 | Kortendick, Shirley | Kortendick, Jerome | 5298 | Sommerman & Quesada, LLP |
| 287 | 2:15-cv-06312 | Townsend, Byron | Townsend, Byron | 5299 | Sommerman & Quesada, LLP |
| 288 | 2:15-cv-06313 | Woolridge, Arthur | Woolridge, Arthur | 5285 | Sommerman & Quesada, LLP |
| 289 | 2:15-cv-06314 | Haugh, Charles | Haugh, Wilma | 5135 | Sommerman & Quesada, LLP |
| 290 | 2:15-cv-06316 | Katus, Harold | Katus, Harold | 5268 | Sommerman & Quesada, LLP |
| 291 | 2:15-cv-06317 | Koester, Joan | Koester, Joan | 5176 | Sommerman & Quesada, LLP |
| 292 | 2:15-cv-06325 | Gassway, Gretchen | Williams, Michael | 5048 | Childers, Schlueter & Smith, LLC |
| 293 | 2:15-cv-06343 | West, John A | West, Carleton | 6788 | Miller Weisbrod, LLP |
| 294 | 2:15-cv-06349 | Jennings, Sharon | Jennings, Richard | 6728 | Ferrer, Poirot & Wansbrough |
| 295 | 2:15-cv-06350 | Bumgarner, Charles | Bumgarner, Charles | 7271 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 296 | 2:15-cv-06351 | Coulter, Kenneth R. | Coulter, Kenneth R. | 13857 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm; Milstein Jackson Fairchild & Wade, LLP |
| 297 | 2:15-cv-06353 | Clark, Gail | Clark, Gail | 5376 | Weitz & Luxenberg, PC |
| 298 | 2:15-cv-06355 | Goldman, David | Goldman, David | 6476 | Weitz & Luxenberg, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 299 | 2:15-cv-06356 | Goodwill, Mulvina | Goodwill, Mulvina | 6878 | Weitz & Luxenberg, PC |
| 300 | 2:15-cv-06358 | Twyman, Ursula Denise | Heard, Larry | 6535 | Weitz & Luxenberg, PC |
| 301 | 2:15-cv-06360 | Kendrick, IvaLanelle | Kendrick, IvaLanelle | 6438 | Weitz & Luxenberg, PC |
| 302 | 2:15-cv-06363 | Kajfez, Michael | Kajfez, Michael | 6530 | Weitz & Luxenberg, PC |
| 303 | 2:15-cv-06378 | Waldroupe, Kathy | Waldroupe, Kathy | 6813 | Ferrer, Poirot & Wansbrough |
| 304 | 2:15-cv-06384 | Wright, Stephen | Wright, Morris | 6860 | Ferrer, Poirot & Wansbrough |
| 305 | 2:15-cv-06390 | Byrne, Anne | Byrne, Robert | 5150 | Simon Greenstone Panatier Bartlett, PC |
| 306 | 2:15-cv-06393 | Sansom, Tammy | Sansom, Tammy | 5152 | Simon Greenstone Panatier Bartlett, PC |
| 307 | 2:15-cv-06396 | Mcelyea, Belinda | Stewart, Genevieve | 5148 | Simon Greenstone Panatier Bartlett, PC |
| 308 | 2:15-cv-06399 | Showers, Pamela | Voras, Larry | 5144 | Simon Greenstone Panatier Bartlett, PC |
| 309 | 2:15-cv-06400 | Wolfe, Leslie | Wolfe, Leslie | 5146 | Simon Greenstone Panatier Bartlett, PC |
| 310 | 2:15-cv-06401 | Reed, Keith | Reed, Keith | 6966 | Herman Gerel, LLP; Herman, Herman & Katz, LLC |
| 311 | 2:15-cv-06432 | Barber, Ted | Barber, Ted | 5054 | Varadi, Hair & Checki LLC; Favret & Lea |
| 312 | 2:15-cv-06433 | Detwiler, Jerry | Detwiler, Jerry | 5030 | Varadi, Hair & Checki LLC; Favret & Lea |
| 313 | 2:15-cv-06434 | Hamm, Tammy | Hamm, Tammy | 6647 | Varadi, Hair & Checki LLC; Favret & Lea |
| 314 | 2:15-cv-06435 | Steinat, Carol | Steinat, Carol | 6730 | Varadi, Hair & Checki LLC; Favret & Lea |
| 315 | 2:15-cv-06436 | Stern, Louis | Stern, Louis | 6777 | Varadi, Hair & Checki LLC; Favret & Lea |
| 316 | 2:15-cv-06438 | Collins, Jason | Collins, Charlie T. | 6509 | Martin & Jones, PLLC |
| 317 | 2:15-cv-06442 | Farmer, Donna | McCarthy, Mildred | 4884 | Martin & Jones, PLLC |
| 318 | 2:15-cv-06443 | Ringgold, Kathleen | Ringgold, Kathleen | 5162 | Martin & Jones, PLLC |
| 319 | 2:15-cv-06444 | Simpson, Beverly | Simpson, Beverly | 5010 | Martin & Jones, PLLC |
| 320 | 2:15-cv-06445 | Whitfield, Florene | Whitfield, Florene | 5052 | Martin & Jones, PLLC |
| 321 | 2:15-cv-06447 | Alston, Martha | Alston, Martha | 4207 | Hilliard Munoz Gonzales LLP |
| 322 | 2:15-cv-06449 | Altadonna, Denise Marie | Altadonna, Denise Marie | 5039 | Hilliard Munoz Gonzales LLP |
| 323 | 2:15-cv-06459 | Stansell, Robert, Jr. | Stansell, Robert Jr. | 6778 | Douglas & London, PC |
| 324 | 2:15-cv-06460 | Baker, Lou Virna | Baker, Lou Virna | 5093 | Hilliard Munoz Gonzales LLP |
| 325 | 2:15-cv-06461 | Barrineau, Alice | Barrineau, Alice | 4843 | Hilliard Munoz Gonzales LLP |
| 326 | 2:15-cv-06462 | Fielder, Mary | Fielder, Mary | 4955 | Matthews & Associates |
| 327 | 2:15-cv-06463 | Pate, Sherry | Pate, Sherry | 5015 | Matthews & Associates |
| 328 | 2:15-cv-06464 | Beasley, Dorothy Mae | Beasley, Dorothy Mae | 5100 | Hilliard Munoz Gonzales LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 329 | 2:15-cv-06468 | Colby, Wayne G. | Beaulieu, Normand J. | 4852 | Hilliard Munoz Gonzales LLP |
| 330 | 2:15-cv-06471 | Butler, Anna | Braden, James R. | 4903 | Hilliard Munoz Gonzales LLP |
| 331 | 2:15-cv-06472 | Breckenridge, Charles George, III | Breckenridge, Charles George, III | 5120 | Hilliard Munoz Gonzales LLP |
| 332 | 2:15-cv-06473 | Brill, Terrence | Brill, Terrence | 5134 | Hilliard Munoz Gonzales LLP |
| 333 | 2:15-cv-06475 | Britt, David M. | Britt, David M. | 5140 | Hilliard Munoz Gonzales LLP |
| 334 | 2:15-cv-06480 | Probasco, Tom | Probasco, Janet Louise | 8880 | Matthews & Associates |
| 335 | 2:15-cv-06483 | Alex, Trudy | Alex, Sherman Lee | 5109 | Matthews & Associates |
| 336 | 2:15-cv-06484 | Jones, Linda | Moore, John | 14624 | Matthews & Associates |
| 337 | 2:15-cv-06488 | Coggeshell, Paul E. | Coggeshell, Paul E. | 4145 | Hilliard Munoz Gonzales LLP |
| 338 | 2:15-cv-06491 | Cokley, Royzetta Louise | Cokley, Royzetta Louise | 4948 | Hilliard Munoz Gonzales LLP |
| 339 | 2:15-cv-06493 | Collante, Ramon | Collante, Ramon | 5169 | Hilliard Munoz Gonzales LLP |
| 340 | 2:15-cv-06500 | Robertson, Susan | Cooper, Margaret K. | 5085 | Hilliard Munoz Gonzales LLP |
| 341 | 2:15-cv-06503 | Durham, Nellie Gene | Durham, Nellie Gene | 4227 | Hilliard Munoz Gonzales LLP |
| 342 | 2:15-cv-06508 | Tuttle, Pauline | Tuttle, Pauline | 2389 | Allen & Nolte, PLLC |
| 343 | 2:15-cv-06519 | Elder, Phillip | Elder, Kim Phillip | 5173 | Hilliard Munoz Gonzales LLP |
| 344 | 2:15-cv-06520 | Evans, Phyllis Jane | Evans, Phyllis Jane | 2302 | Hilliard Munoz Gonzales LLP |
| 345 | 2:15-cv-06521 | Fale, Sabina | Fale, Sabina | 5215 | Hilliard Munoz Gonzales LLP |
| 346 | 2:15-cv-06523 | Flowers, Diane P. | Flowers, Diane P. | 5227 | Hilliard Munoz Gonzales LLP |
| 347 | 2:15-cv-06526 | Gerstung, Elizabeth Margaret | Gerstung, Elizabeth Margaret | 5246 | Hilliard Munoz Gonzales LLP |
| 348 | 2:15-cv-06528 | Gilbert, Margaret Ann | Gilbert, Margaret Ann | 6748 | Hilliard Munoz Gonzales LLP |
| 349 | 2:15-cv-06531 | Greenhaw, Terry Kay | Greenhaw, Terry Kay | 5248 | Hilliard Munoz Gonzales LLP |
| 350 | 2:15-cv-06532 | Haas, Michael Lee | Haas, Michael Lee | 5262 | Hilliard Munoz Gonzales LLP |
| 351 | 2:15-cv-06535 | Hardy, Gloria Jean | Hardy, Gloria Jean | 4298 | Hilliard Munoz Gonzales LLP |
| 352 | 2:15-cv-06540 | Heller, Avrom | Heller, Avrom | 5286 | Hilliard Munoz Gonzales LLP |
| 353 | 2:15-cv-06546 | Friend, Terri | Elms, Virginia | 1617 | Wagstaff & Cartmell, LLP |
| 354 | 2:15-cv-06547 | Wright, James R. | Wright, Ellen Irene | 1770 | Wagstaff & Cartmell, LLP |
| 355 | 2:15-cv-06549 | Trice, G. H. | Trice, G. H. | 2187 | Wagstaff & Cartmell, LLP |
| 356 | 2:15-cv-06551 | Cook, William | Cook, William | 5295 | Wagstaff & Cartmell, LLP |
| 357 | 2:15-cv-06552 | Hollingsworth, Thomas | Hollingsworth, Thomas | 5204 | Chaffin Luhana LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 358 | 2:15-cv-06553 | Paulus, John | Paulus, John | 5182 | Chaffin Luhana LLP |
| 359 | 2:15-cv-06558 | Downey, Stacey | Downey, Stacey | 4942 | Gray & White |
| 360 | 2:15-cv-06562 | Hall, Tiffany | Hall, Tiffany | 5290 | Gray & White |
| 361 | 2:15-cv-06563 | Harlan, Charles | Harlan, Charles | 3600 | Gray & White |
| 362 | 2:15-cv-06564 | Murrill, Elaine | Murrill, Elaine | 5035 | Ross Feller Casey, LLP; Douglas & London, PC |
| 363 | 2:15-cv-06566 | Hill, Kristie | Hill, Kristie | 5084 | Gray & White |
| 364 | 2:15-cv-06567 | Peters, Karen | Peters, Karen | 5119 | Ross Feller Casey, LLP |
| 365 | 2:15-cv-06569 | Jackson, Lucy | Jackson, Glen | 1618 | Gray & White |
| 366 | 2:15-cv-06571 | Harris, David | Harris, David | 5017 | Ross Feller Casey, LLP; Douglas & London, PC |
| 367 | 2:15-cv-06573 | Thacker, Ed | Little, Eula | 5129 | Gray & White |
| 368 | 2:15-cv-06574 | Stack, Jack | Stack, Karen | 1733 | Gray & White |
| 369 | 2:15-cv-06575 | Thacker, Debbie | Thacker, Debbie | 3070 | Gray & White |
| 370 | 2:15-cv-06576 | Thompson, Nancy | Thompson, Nancy | 3071 | Gray & White |
| 371 | 2:15-cv-06577 | Miller, Douglas | Miller, Douglas | 5081 | Ross Feller Casey, LLP; Douglas & London, PC |
| 372 | 2:15-cv-06578 | Whalen, Maggie | Whalen, Rose | 3601 | Gray & White |
| 373 | 2:15-cv-06579 | Womack, William | Womack, Zondra | 5008 | Gray & White |
| 374 | 2:15-cv-06580 | Levine, Leonard | Levine, Leonard | 5370 | Ross Feller Casey, LLP; Douglas & London, PC |
| 375 | 2:15-cv-06582 | Williams, Katie | Williams, Katie | 5226 | Ross Feller Casey, LLP; Douglas & London, PC |
| 376 | 2:15-cv-06583 | Turner, Donald | Turner, Donald | 6675 | Ross Feller Casey, LLP; Douglas & London, PC |
| 377 | 2:15-cv-06585 | Allen, Inca | Johnson, Shirley | 5106 | Ross Feller Casey, LLP; Douglas & London, PC |
| 378 | 2:15-cv-06586 | Peirce, Susan | Peirce, Susan | 5094 | Ross Feller Casey, LLP; Douglas & London, PC |
| 379 | 2:15-cv-06587 | Davis, Larry | Davis, Larry | 5107 | Ross Feller Casey, LLP; Douglas & London, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 380 | 2:15-cv-06604 | Hogue, Gary David | Hogue, Gary David | 4423 | Hilliard Munoz Gonzales LLP |
| 381 | 2:15-cv-06605 | Hopkins, Robert E. | Hopkins, Robert E. | 5402 | Hilliard Munoz Gonzales LLP |
| 382 | 2:15-cv-06606 | Krug, Brenda K. | Howard, Calvin Lee | 5022 | Hilliard Munoz Gonzales LLP |
| 383 | 2:15-cv-06607 | Huffman, William Conway | Huffman, William Conway | 5407 | Hilliard Munoz Gonzales LLP |
| 384 | 2:15-cv-06609 | Jagielski, Henry | Jagielski, Henry | 5419 | Hilliard Munoz Gonzales LLP |
| 385 | 2:15-cv-06610 | Jones, Roger Eugene | Jones, Roger Eugene | 5426 | Hilliard Munoz Gonzales LLP |
| 386 | 2:15-cv-06612 | Keezer, Cecelia A. | Keezer, Cecelia A. | 6432 | Hilliard Munoz Gonzales LLP |
| 387 | 2:15-cv-06613 | Clark, Frances | Kelly, Jewel | 5031 | Hilliard Munoz Gonzales LLP |
| 388 | 2:15-cv-06616 | Krueger, Edwin | Krueger, Carolyn | 6434 | Hilliard Munoz Gonzales LLP |
| 389 | 2:15-cv-06617 | Kuhlmann, George P. | Kuhlmann, George P. | 4426 | Hilliard Munoz Gonzales LLP |
| 390 | 2:15-cv-06618 | McDonald, Vickie | Legrand, Piper G. | 6435 | Hilliard Munoz Gonzales LLP |
| 391 | 2:15-cv-06619 | Hemphill, Carolyn D. | Lewis, Shirley | 6436 | Hilliard Munoz Gonzales LLP |
| 392 | 2:15-cv-06621 | Gaines, Patricia | Gaines, Patricia | 6909 | Law Offices of Peter G. Angelos, PC |
| 393 | 2:15-cv-06622 | Love, Glenn Ray | Love, Glenn Ray | 4482 | Hilliard Munoz Gonzales LLP |
| 394 | 2:15-cv-06623 | Levin, Patricia | Levin, Patricia | 6721 | Law Offices of Peter G. Angelos, PC |
| 395 | 2:15-cv-06626 | Roberts, Mary | Roberts, Mary | 6754 | Law Offices of Peter G. Angelos, PC |
| 396 | 2:15-cv-06630 | Poston, Phyllis | Rottman, Betty | 6765 | Law Offices of Peter G. Angelos, PC |
| 397 | 2:15-cv-06633 | Loyal, Patricia Wells | Loyal, Patricia Wells | 5414 | Hilliard Munoz Gonzales LLP |
| 398 | 2:15-cv-06636 | Lynds, Kathleen Ann | Lynds, Kathleen Ann | 4513 | Hilliard Munoz Gonzales LLP |
| 399 | 2:15-cv-06639 | Mahan, William Thomas | Mahan, William Thomas | 5406 | Hilliard Munoz Gonzales LLP |
| 400 | 2:15-cv-06641 | Mayberry, Joseph Ennis | Mayberry, Joseph Ennis | 5400 | Hilliard Munoz Gonzales LLP |
| 401 | 2:15-cv-06648 | Mcnair, Dana | Mcnair, Joe | 4551 | Hilliard Munoz Gonzales LLP |
| 402 | 2:15-cv-06659 | Helgeson, Ronald, Sr. | Helgeson, Ronald, Sr. | 6859 | Ventura Law |
| 403 | 2:15-cv-06660 | Blackford, Gayala A. | Blackford, Gayala A. | 6644 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 404 | 2:15-cv-06662 | Bousquet, Roland W. | Bousquet, Roland W. | 6895 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 405 | 2:15-cv-06663 | Culbertson, Patricia | Culbertson, Richard E. | 6957 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 406 | 2:15-cv-06664 | Clarke, Chantal S. | Dvorak, Carol Grace | 6977 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 407 | 2:15-cv-06665 | Foreman, Susan A. | Foreman, Stephen Wayne | 7003 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 408 | 2:15-cv-06666 | Wright, Erma Jean | Meadows, Pamela | 5007 | Hilliard Munoz Gonzales LLP |
| 409 | 2:15-cv-06669 | Garrison, Dorothy L. | Garrison, Dorothy L. | 6841 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 410 | 2:15-cv-06670 | Gay, Tommie Ruth Deese | Gay, Tommie Ruth Deese | 6823 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 411 | 2:15-cv-06671 | Millich, George | Millich, George | 5374 | Hilliard Munoz Gonzales LLP |
| 412 | 2:15-cv-06672 | Hart, Stephen O., Jr. | Hart, Stephen O., Sr. | 6955 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 413 | 2:15-cv-06674 | Lathey, Stanley D. | Lathey, Stanley D. | 6521 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 414 | 2:15-cv-06675 | Lamkin, Joseph V. | Lamkin, Carl L. | 6732 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 415 | 2:15-cv-06676 | Laughter, James F., Jr. | Laughter, Shirley A. | 6538 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 416 | 2:15-cv-06677 | Mayer, Pamela R. | Mayer, Jacob F. | 6890 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 417 | 2:15-cv-06678 | McCready, Sandra S. | McCready, Sandra S. | 6764 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 418 | 2:15-cv-06679 | Mealue, Loretta M. | Mealue, Loretta M. | 6661 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 419 | 2:15-cv-06681 | Miller, Richard L. | Miller, Richard L. | 6836 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 420 | 2:15-cv-06684 | Morera, Cardidad E. | Morera, Caridad E. | 5369 | Hilliard Munoz Gonzales LLP |
| 421 | 2:15-cv-06687 | Ohriner, Neil | Ohriner, Neil | 6814 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 422 | 2:15-cv-06688 | Reeves, Richard S. | Reeves, Richard S. | 6698 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 423 | 2:15-cv-06689 | Shanabarger, Virginia | Shanabarger, Virginia | 6930 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 424 | 2:15-cv-06690 | Thomason, Ronald L. | Thomason, Ronald L. | 6928 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 425 | 2:15-cv-06691 | Williams, Susan Jane | Williams, Susan Jane | 6671 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 426 | 2:15-cv-06692 | Wood, Mary Evelyn | Wood, Edgar Leroy | 6508 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 427 | 2:15-cv-06696 | Moret, Joshua | Moret, Joshua | 5367 | Hilliard Munoz Gonzales LLP |
| 428 | 2:15-cv-06697 | Moss, Patrick C. | Moss, Betty Waiters | 4588 | Hilliard Munoz Gonzales LLP |
| 429 | 2:15-cv-06698 | Murillo, Ramona | Murillo, Ramona | 5319 | Hilliard Munoz Gonzales LLP |
| 430 | 2:15-cv-06699 | Myers, Tracy Dawn | Myers, Tracy Dawn | 5318 | Hilliard Munoz Gonzales LLP |
| 431 | 2:15-cv-06700 | Myrick, Dorthey | Myrick, William | 5254 | Hilliard Munoz Gonzales LLP |
| 432 | 2:15-cv-06705 | Carter, Frances | Newton, Evelyn F. | 4602 | Hilliard Munoz Gonzales LLP |
| 433 | 2:15-cv-06706 | Woskoski, Karin | Oden, Ivan Joe | 4678 | Hilliard Munoz Gonzales LLP |
| 434 | 2:15-cv-06708 | Owens, Eddie, Jr. | Owens, Eddie, Jr. | 5293 | Hilliard Munoz Gonzales LLP |
| 435 | 2:15-cv-06709 | Petree, Alpha | Petree, Alpha | 4996 | Hilliard Munoz Gonzales LLP |
| 436 | 2:15-cv-06713 | Ramirez, Lorenzo | Ramirez, Lorenzo | 5291 | Hilliard Munoz Gonzales LLP |
| 437 | 2:15-cv-06716 | Redfern, Barbara Jean | Redfern, Barbara Jean | 5287 | Hilliard Munoz Gonzales LLP |
| 438 | 2:15-cv-06740 | Scott, Veronica | Scott, Veronica | 7061 | Baron & Budd, PC |
| 439 | 2:15-cv-06741 | Rippy, Ruth Novella | Rippy, Ruth Novella | 5282 | Hilliard Munoz Gonzales LLP |
| 440 | 2:15-cv-06743 | Coy, Shelly | Roddenberry, Eugene | 4640 | Hilliard Munoz Gonzales LLP |
| 441 | 2:15-cv-06745 | Rose, Donald | Rose, Cynthia Ann | 4609 | Hilliard Munoz Gonzales LLP |
| 442 | 2:15-cv-06746 | Sanfratello, Francesca | Sanfratello, Francesca | 5273 | Hilliard Munoz Gonzales LLP |
| 443 | 2:15-cv-06748 | Carter, Hayward | Carter, Hayward | 6763 | Brown and Crouppen, PC |
| 444 | 2:15-cv-06749 | Saul, Barbara Lucas | Saul, Barbara Lucas | 5270 | Hilliard Munoz Gonzales LLP |
| 445 | 2:15-cv-06750 | Schildkraut, Ruth L. | Schildkraut, Ruth L. | 4600 | Hilliard Munoz Gonzales LLP |
| 446 | 2:15-cv-06752 | Cawley, Jeannie | Cawley, Jeannie | 6722 | Brown and Crouppen, PC |
| 447 | 2:15-cv-06755 | Chatman, Arthur | Chatman, Arthur | 6894 | Brown and Crouppen, PC |
| 448 | 2:15-cv-06757 | Conrad, Alberta | Conrad, Alberta | 6870 | Brown and Crouppen, PC |
| 449 | 2:15-cv-06759 | Shepherd, Ronald | Shepherd, Robert, Sr. | 5259 | Hilliard Munoz Gonzales LLP |
| 450 | 2:15-cv-06760 | Crigger, Laura | Crigger, Laura | 6750 | Brown and Crouppen, PC |
| 451 | 2:15-cv-06762 | Easter, Tracy | Easter, Tracy | 6673 | Brown and Crouppen, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 452 | 2:15-cv-06764 | Solomon, Charles | Solomon, Charles | 3721 | Hilliard Munoz Gonzales LLP |
| 453 | 2:15-cv-06767 | Barnes, Margiree | Barnes, Margiree | 6444 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 454 | 2:15-cv-06768 | Swafford, Karen | Swafford, Karen | 5157 | Hilliard Munoz Gonzales LLP |
| 455 | 2:15-cv-06769 | Blankenship, John H. | Blankenship, John H. | 6445 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 456 | 2:15-cv-06772 | Thomas, Norm | Thomas, Edith Sterling Frazar | 4594 | Hilliard Munoz Gonzales LLP |
| 457 | 2:15-cv-06774 | Edwards, Della | Edwards, Shirley | 5011 | Brown and Crouppen, PC |
| 458 | 2:15-cv-06775 | Bolick, Virginia | Bolick, Virginia | 6446 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 459 | 2:15-cv-06776 | Tousley, Shelia L. | Tousley, Shelia L. | 4945 | Hilliard Munoz Gonzales LLP |
| 460 | 2:15-cv-06778 | Davis, Craig | Davis, Bettye J. | 6447 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 461 | 2:15-cv-06779 | Dunn, Loretta | Dunn, Loretta | 6448 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 462 | 2:15-cv-06780 | Land, Jim | Land, Jim | 6874 | Brown and Crouppen, PC |
| 463 | 2:15-cv-06782 | Manchion-Thomas, Pamela | Manchion-Thomas, Pamela | 6837 | Brown and Crouppen, PC |
| 464 | 2:15-cv-06784 | Ells, Angela | Ells, Angela | 6449 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 465 | 2:15-cv-06785 | McMillian, Roena | McMillian, Roena | 6744 | Brown and Crouppen, PC |
| 466 | 2:15-cv-06786 | Giller, Anna | Giller, Anna | 6450 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 467 | 2:15-cv-06787 | Walker, James Owen | Walker, James Owen | 4837 | Hilliard Munoz Gonzales LLP |
| 468 | 2:15-cv-06788 | Guin, Charlotte | Guin, Charlotte | 6451 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 469 | 2:15-cv-06789 | Mohon, Patricia | Mohon, Patricia | 6882 | Brown and Crouppen, PC |
| 470 | 2:15-cv-06791 | Rossfeld, Cheryl | Rossfeld, Cheryl | 6731 | Brown and Crouppen, PC |
| 471 | 2:15-cv-06792 | Hines-Ferrell, Janet | Hines-Ferrell, Janet | 6453 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 472 | 2:15-cv-06793 | Jackson, Gladeen | Jackson, Gladeen | 6454 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 473 | 2:15-cv-06794 | Sandy, Jeffery | Sandy, Jeffery | 6978 | Brown and Crouppen, PC |
| 474 | 2:15-cv-06795 | Serna, Ruben | Serna, Ruben | 6959 | Brown and Crouppen, PC |
| 475 | 2:15-cv-06797 | Lambert, Larry G. | Lambert, Larry G. | 6455 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 476 | 2:15-cv-06798 | Wehrkamp, Nancy | Wehrkamp, Floyd | 6981 | Brown and Crouppen, PC |
| 477 | 2:15-cv-06800 | Williamson, Carole | Williamson, Carole | 6786 | Brown and Crouppen, PC |
| 478 | 2:15-cv-06801 | Lucero, Mary | Lucero, Mary | 6520 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 479 | 2:15-cv-06804 | Eldredge, Roger | Eldredge, Roger | 5059 | Flint Law Firm, LLC |
| 480 | 2:15-cv-06805 | Maidhoff, Ruth | Maidhoff, Ruth | 6456 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 481 | 2:15-cv-06807 | Elmore, Donovan, Jr. | Elmore, Donovan, Sr. | 5071 | Flint Law Firm, LLC |
| 482 | 2:15-cv-06808 | Payne, Ernest | Payne, John | 5076 | Flint Law Firm, LLC |
| 483 | 2:15-cv-06810 | Bishop, Jeanette | Robertson, Linda | 5080 | Flint Law Firm, LLC |
| 484 | 2:15-cv-06811 | Urseth, William | Urseth, William | 5091 | Flint Law Firm, LLC |
| 485 | 2:15-cv-06815 | Walker, Michelle | Walker, Michelle | 5105 | Hilliard Munoz Gonzales LLP |
| 486 | 2:15-cv-06818 | McGill, Shelly | McGill, Shelly | 6457 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 487 | 2:15-cv-06819 | Coble, Edna | Coble, Edna | 6864 | Burke Harvey, LLC; Crumley Roberts |
| 488 | 2:15-cv-06821 | Mittendorff, Jack | Mittendorff, Jack | 6507 | Burke Harvey, LLC; Crumley Roberts |
| 489 | 2:15-cv-06822 | Murphy, Bobbie | Murphy, Edith | 6458 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 490 | 2:15-cv-06824 | Williams, Carrie | Williams, Carrie | 5095 | Hilliard Munoz Gonzales LLP |
| 491 | 2:15-cv-06827 | Patton, Johnny L. | Patton, Johnny L. | 6459 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 492 | 2:15-cv-06828 | Williams, Mildred Lamb | Williams, Mildred Lamb | 4541 | Hilliard Munoz Gonzales LLP |
| 493 | 2:15-cv-06829 | Pugh, Ronald | Pugh, Ronald | 6460 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 494 | 2:15-cv-06831 | Ramirez, Aida | Ramirez, Aida | 6461 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 495 | 2:15-cv-06834 | Reed, Lonnie | Reed, Lonnie | 6462 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 496 | 2:15-cv-06835 | Wimberley, Jerry Ray | Wimberley, Jerry Ray | 5040 | Hilliard Munoz Gonzales LLP |
| 497 | 2:15-cv-06836 | Schulz, Ronald | Schulz, Ronald | 6463 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 498 | 2:15-cv-06851 | Flores, Fernando | Flores, Roberta | 6886 | Ferrer, Poirot & Wansbrough |
| 499 | 2:15-cv-06853 | Underhill, Donald | Underhill, Donald | 7122 | Ferrer, Poirot & Wansbrough |
| 500 | 2:15-cv-06855 | Shaw, William K., II | Shaw, William K., II | 6464 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 501 | 2:15-cv-06856 | White, Ben F. | White, Ben F. | 6465 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 502 | 2:15-cv-06858 | Williams, Clifton | Williams, Clifton | 6466 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 503 | 2:15-cv-06859 | Wilson, Ernest | Wilson, Ernest | 6467 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 504 | 2:15-cv-06862 | Golay, Phillip, III | Golay, Phillip, III | 6733 | Weitz & Luxenberg, PC |
| 505 | 2:15-cv-06864 | Kostecka, Patricia | Kostecka, Patricia | 6843 | Weitz & Luxenberg, PC |
| 506 | 2:15-cv-06865 | Kaufman, Deanna | Kaufman, Deanna | 6927 | Weitz & Luxenberg, PC |
| 507 | 2:15-cv-06866 | Zink, Norman | Zink, Norman | 6868 | Weitz & Luxenberg, PC |
| 508 | 2:15-cv-06867 | Shields, David | Shields, David | 10309 | Sizemore Law FIrm |
| 509 | 2:15-cv-06868 | Lawhorne, Ronald | Lawhorne, Ronald | 10310 | Sizemore Law FIrm |
| 510 | 2:15-cv-06879 | Dew, Murrel | Dew, Murrel | 7063 | Seeger Weiss LLP |
| 511 | 2:15-cv-06880 | Durham, Betty | Durham, Betty | 7048 | Seeger Weiss LLP |
| 512 | 2:15-cv-06886 | Jurcak, Charles | Jurcak, Charles | 7070 | Seeger Weiss LLP |
| 513 | 2:15-cv-06887 | Lemalle, Bridget | Lemalle, Bridget | 7050 | Seeger Weiss LLP |
| 514 | 2:15-cv-06888 | Ludwig, Judy | Ludwig, Judy | 7068 | Seeger Weiss LLP |
| 515 | 2:15-cv-06890 | Tipton, Judy | Tipton, Judy | 7098 | Seeger Weiss LLP |
| 516 | 2:15-cv-06891 | Wildhaber, Robert | Wildhaber, Robert | 7065 | Seeger Weiss LLP |
| 517 | 2:15-cv-06892 | Wizar, Richard | Wizar, Richard | 7067 | Seeger Weiss LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 518 | 2:15-cv-06897 | Guilbeau, Melinda | Guilbeau, Melinda | 2847 | Allen & Nolte, PLLC |
| 519 | 2:15-cv-06898 | Manning, Robert | Manning, Robert | 5242 | Allen & Nolte, PLLC |
| 520 | 2:15-cv-06900 | Noble, Jimmie | Noble, Jeanette | 5020 | Allen & Nolte, PLLC |
| 521 | 2:15-cv-06902 | Norton, Helen | Norton, Helen | 5021 | Allen & Nolte, PLLC |
| 522 | 2:15-cv-06904 | Shaw, Jennifer C. | Shaw, Jennifer C. | 5024 | Allen & Nolte, PLLC |
| 523 | 2:15-cv-06907 | Grace, Jeanne M. | Grace, Jeanne M. | 7666 | Jones Ward PLC |
| 524 | 2:15-cv-06913 | Holley, Glenda K. | Holley, Robert | 6885 | Elkus & Sisson, PC;<br>Aylstock, Witkin, Kreis & Overholtz PLLC |
| 525 | 2:15-cv-06914 | Parker, Carrie | Parker, Carrier | 7840 | Jones Ward PLC |
| 526 | 2:15-cv-06916 | Keesee, A.R. | Keesee, A.R. | 7022 | Elkus & Sisson, PC;<br>Aylstock, Witkin, Kreis & Overholtz PLLC |
| 527 | 2:15-cv-06917 | Lambrecht, Cindy | Lambrecht, Joel A. | 6832 | Elkus & Sisson, PC;<br>Aylstock, Witkin, Kreis & Overholtz PLLC |
| 528 | 2:15-cv-06918 | Larson, Alford | Larson, Alford | 7074 | Elkus & Sisson, PC;<br>Aylstock, Witkin, Kreis & Overholtz PLLC |
| 529 | 2:15-cv-06922 | Ullom, Caccie | Ullom, Caccie | 7041 | Elkus & Sisson, PC;<br>Aylstock, Witkin, Kreis & Overholtz PLLC |
| 530 | 2:15-cv-06923 | Van Dongen, Charlene | Van Dongen, Charlene | 7049 | Elkus & Sisson, PC;<br>Aylstock, Witkin, Kreis & Overholtz PLLC |
| 531 | 2:15-cv-06927 | Day, Richard | Day, Richard | 2906 | Jones Ward PLC |
| 532 | 2:15-cv-06928 | King, Helen | King, Helen | 2908 | Jones Ward PLC |
| 533 | 2:15-cv-06929 | McClellan, Twanni | McClellan, Twanni | 2910 | Jones Ward PLC |
| 534 | 2:15-cv-06931 | Jannol, Ellen | Jannol, Daniel | 7485 | Robinson Calcagnie, Inc. |
| 535 | 2:15-cv-06933 | Jett, Randy | Jett, Randy | 7269 | Robinson Calcagnie, Inc. |
| 536 | 2:15-cv-06935 | Katz, Earl | Katz, Earl | 7494 | Robinson Calcagnie, Inc. |
| 537 | 2:15-cv-06936 | Travis, Richard | Travis, Richard | 7502 | Robinson Calcagnie, Inc. |
| 538 | 2:15-cv-06943 | Morocco, Vincent | Morocco, Vincent | 2907 | Jones Ward PLC |
| 539 | 2:15-cv-06951 | Rinard, Dorothy | Rinard, Dorothy | 2903 | Jones Ward PLC |
| 540 | 2:15-cv-06952 | Moore, James H. | Moore, James H. | 2913 | Jones Ward PLC |
| 541 | 2:15-cv-06958 | Crew, Eddie | Crew, Ida Joyce | 5263 | Beasley, Allen, Crow, Methvin,<br>Portis & Miles, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 542 | 2:15-cv-06970 | Flick, Janice | Flick, Janice | 5027 | Kennedy Hodges, LLP |
| 543 | 2:15-cv-06971 | Batie, Johnnie Randell | Batie, Johnnie Randell | 7043 | Tautfest Bond PLLC |
| 544 | 2:15-cv-06991 | Blount, Shirley | Mozell, Minnie | 3585 | Dugan Law Firm, PLC |
| 545 | 2:15-cv-06992 | Ferguson, Joan | Ferguson, Joan | 3759 | Dugan Law Firm, PLC |
| 546 | 2:15-cv-06995 | Gist, William | Gist, William | 3714 | Dugan Law Firm, PLC |
| 547 | 2:15-cv-06996 | Heckler, Linda | Heckler, James | 3694 | Dugan Law Firm, PLC |
| 548 | 2:15-cv-07000 | Hanson, Clare | Hanson, Ralph | 3667 | Dugan Law Firm, PLC |
| 549 | 2:15-cv-07001 | Lewis, Kimberly | Lewis, Kimberly | 3739 | Dugan Law Firm, PLC |
| 550 | 2:15-cv-07002 | Morel, Martha | Morel, Martha | 3737 | Dugan Law Firm, PLC |
| 551 | 2:15-cv-07003 | Schwartz, Melvin | Schwartz, Melvin | 3753 | Dugan Law Firm, PLC |
| 552 | 2:15-cv-07004 | Stephenson, Betsy | Stephenson, Lynn | 3725 | Dugan Law Firm, PLC |
| 553 | 2:15-cv-07006 | Pirami, Reno | Pirami, Reno | 7145 | Meyers & Flowers, LLC |
| 554 | 2:15-cv-07007 | Russo, Robert | Russo, Robert | 7194 | Meyers & Flowers, LLC |
| 555 | 2:15-cv-07008 | Slutsky, Jerome | Slutsky, Jerome | 8488 | Levin Simes Abrams LLP |
| 556 | 2:15-cv-07009 | Strass, Thomas | Strass, Thomas | 7649 | Meyers & Flowers, LLC |
| 557 | 2:15-cv-07010 | Testa, Gloria | Testa, Gloria | 7455 | Meyers & Flowers, LLC |
| 558 | 2:15-cv-07016 | Maestas, Helen | Maestas, Helen | 6429 | Andre' P. LaPlace; Cunard Law Firm |
| 559 | 2:15-cv-07020 | McCall, Yolanda | McCall, Beatrice | 6526 | Andre' P. LaPlace; Cunard Law Firm |
| 560 | 2:15-cv-07022 | Cluver, Walmar | Culver, Walmar | 7602 | Fears Nachawati, PLLC |
| 561 | 2:15-cv-07023 | Dworkin, Joann | Dworkin, Joann | 7143 | Fears Nachawati, PLLC |
| 562 | 2:15-cv-07025 | Gibbons, Emanul | Gibbons, Emanul | 7150 | Fears Nachawati, PLLC |
| 563 | 2:15-cv-07028 | Guess, Ann | Guess, Ann | 7296 | Fears Nachawati, PLLC |
| 564 | 2:15-cv-07029 | Fairley, Kimberly | Fairley, Kimberly | 6523 | Kirkendall Dwyer LLP |
| 565 | 2:15-cv-07031 | Marshall, Cortesa | Marshall, Cortesa | 6519 | Kirkendall Dwyer LLP |
| 566 | 2:15-cv-07032 | Hodges, James L. | Hodges, William B. | 7021 | Zeccola & Selinger, LLC |
| 567 | 2:15-cv-07033 | Meglitsch, Beverly | Meglitsch, Beverly | 6502 | Kirkendall Dwyer LLP |
| 568 | 2:15-cv-07034 | Helfenstein, Otto | Helfenstein, Marlys | 7620 | Fears Nachawati, PLLC |
| 569 | 2:15-cv-07035 | Mosley, Betty | Mosley, Betty | 6487 | Kirkendall Dwyer LLP |
| 570 | 2:15-cv-07036 | Kadel, Harold J. | Kadel, Harold J. | 6940 | Zeccola & Selinger, LLC |
| 571 | 2:15-cv-07037 | Middleton, Beverly | Middleton, Perry | 7614 | Andre' P. LaPlace; Cunard Law Firm |
| 572 | 2:15-cv-07038 | Riley, James | Riley, James | 6512 | Kirkendall Dwyer LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 573 | 2:15-cv-07039 | Carrasco, Matthew | Carrasco, Matthew | 7550 | Douglas & London, PC |
| 574 | 2:15-cv-07040 | Leal, Rodolfo | Leal, Rodolfo | 7458 | Fears Nachawati, PLLC |
| 575 | 2:15-cv-07041 | Khalaf, Hikmat A. | Khalaf, Hikmat A. | 7058 | Zeccola & Selinger, LLC |
| 576 | 2:15-cv-07043 | Rotary, Alma | Rotary, Alma | 6518 | Kirkendall Dwyer LLP |
| 577 | 2:15-cv-07044 | Montigne, Richard | Montigne, Richard | 6770 | Andre' P. LaPlace; Cunard Law Firm |
| 578 | 2:15-cv-07045 | Ellis, Phyllis | Ellis, William | 6799 | Douglas & London, PC |
| 579 | 2:15-cv-07047 | Shaver, Thomas | Shaver, Thomas | 6517 | Kirkendall Dwyer LLP |
| 580 | 2:15-cv-07048 | Escamilla, Alfredo | Escamilla, Alfredo | 6892 | Douglas & London, PC |
| 581 | 2:15-cv-07049 | Jenkins, Alyice | Jenkins, Alyice | 6807 | Douglas & London, PC |
| 582 | 2:15-cv-07051 | Smith, Deborah | Smith, Roger | 6486 | Kirkendall Dwyer LLP |
| 583 | 2:15-cv-07052 | Presley, Willie | Presley, Willie | 6835 | Douglas & London, PC |
| 584 | 2:15-cv-07053 | Plunkett, Dale M. | Plunkett, Dale M. | 7201 | Zeccola & Selinger, LLC |
| 585 | 2:15-cv-07054 | Recio, Paula | Recio, Paula | 6812 | Douglas & London, PC |
| 586 | 2:15-cv-07055 | Stockdale, Spencer | Stockdale, Spencer | 6506 | Martin & Jones, PLLC |
| 587 | 2:15-cv-07056 | Rodgers, Brenda | Rodgers, Brenda | 6855 | Andre' P. LaPlace; Cunard Law Firm |
| 588 | 2:15-cv-07057 | Reyes, Salvador | Reyes, Salvador | 6824 | Douglas & London, PC |
| 589 | 2:15-cv-07058 | Schmidt, Franklin | Schmidt, Franklin | 6872 | Douglas & London, PC |
| 590 | 2:15-cv-07059 | Potter, Steven R. | Potter, Steven R. | 7088 | Zeccola & Selinger, LLC |
| 591 | 2:15-cv-07060 | Viens, Henry | Viens, Henry | 7636 | Douglas & London, PC |
| 592 | 2:15-cv-07061 | Springer, Patricia | Springer, Richard | 6643 | The Whitehead Law Firm, LLC |
| 593 | 2:15-cv-07064 | Sturtevant, John | Sturtevant, Patricia | 6664 | Andre' P. LaPlace; Cunard Law Firm |
| 594 | 2:15-cv-07065 | Holden, Monty | Holden, Monty | 6902 | Watts Guerra LLP |
| 595 | 2:15-cv-07066 | Reynolds, Laurice R. | Reynolds, Laurice R. | 7224 | Zeccola & Selinger, LLC |
| 596 | 2:15-cv-07067 | Vickery, David | Vickery, David | 7077 | Andre' P. LaPlace; Cunard Law Firm |
| 597 | 2:15-cv-07068 | Wood, John | Wood, John | 6501 | Kirkendall Dwyer LLP |
| 598 | 2:15-cv-07069 | Johnson, Thomas | Johnson, Brenda | 6905 | Watts Guerra LLP |
| 599 | 2:15-cv-07070 | Rossi, Francis E. | Rossi, Francis E. | 7255 | Zeccola & Selinger, LLC |
| 600 | 2:15-cv-07071 | Justice, James | Justice, Laura | 6900 | Watts Guerra LLP |
| 601 | 2:15-cv-07072 | Marlatt, Julie | Marlatt, Julie | 7265 | Fears Nachawati, PLLC |
| 602 | 2:15-cv-07073 | Joy, Edward | Joy, Edward | 6904 | Watts Guerra LLP |
| 603 | 2:15-cv-07075 | Magda, Teodor | Magda, Teodor | 6896 | Watts Guerra LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 604 | 2:15-cv-07076 | Stanton, Sharleen | Stanton, Sharleen | 7511 | Fears Nachawati, PLLC |
| 605 | 2:15-cv-07077 | Millwood, Donna | Millwood, Phillip | 6898 | Watts Guerra LLP |
| 606 | 2:15-cv-07078 | Morris, Paulette | Parks, Edgar | 6897 | Watts Guerra LLP |
| 607 | 2:15-cv-07079 | Pfeil, Mark | Pfeil, Mark | 6899 | Watts Guerra LLP |
| 608 | 2:15-cv-07081 | Slagley, Shirley | Duncan, Jeannie | 6903 | Watts Guerra LLP |
| 609 | 2:15-cv-07088 | Hall, Nancy | Hall, Nancy | 4629 | Kennedy Hodges, LLP |
| 610 | 2:15-cv-07090 | Hannah, Carol | Hannah, Carol | 4649 | Kennedy Hodges, LLP |
| 611 | 2:15-cv-07091 | Hodgkins, Pamela | Hodgkins, Pamela | 4608 | Kennedy Hodges, LLP |
| 612 | 2:15-cv-07092 | Howard, Robert | Howard, Robert | 5393 | Kennedy Hodges, LLP |
| 613 | 2:15-cv-07093 | Garder, James | Garder, James | 5026 | Kennedy Hodges, LLP |
| 614 | 2:15-cv-07094 | Napier, Abbie | Napier, Abbie | 4633 | Kennedy Hodges, LLP |
| 615 | 2:15-cv-07095 | Pearson, Tammie | Pearson, Tammie | 4828 | Kennedy Hodges, LLP |
| 616 | 2:15-cv-07096 | Ruffa, Elaine | Ruffa, Elaine | 4641 | Kennedy Hodges, LLP |
| 617 | 2:15-cv-07098 | Smith, Murphy | Smith, Murphy | 4642 | Kennedy Hodges, LLP |
| 618 | 2:15-cv-07099 | White, David | White, David | 4637 | Kennedy Hodges, LLP |
| 619 | 2:15-cv-07107 | Boaze, Ernest | Boaze, Ernest | 6480 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 620 | 2:15-cv-07109 | Claunch, Max | Claunch, Max | 7717 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 621 | 2:15-cv-07112 | Harbison, Louis | Harbison, Louis | 7737 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 622 | 2:15-cv-07113 | Haynes, Gerald | Haynes, Gerald | 7211 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 623 | 2:15-cv-07114 | Humphreys, David | Humphreys, David | 7741 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 624 | 2:15-cv-07115 | Keith, Welton | Keith, Welton | 6482 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 625 | 2:15-cv-07116 | Martin, Kathy | Martin, Kathy | 6709 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 626 | 2:15-cv-07117 | Moore, Marleena | Moore, Marleena | 7719 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 627 | 2:15-cv-07118 | Simmons, Jason | Simmons, Jason | 7743 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 628 | 2:15-cv-07121 | Smith, Glenda | Smith, Glenda | 7687 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 629 | 2:15-cv-07122 | Tatum, James | Tatum, Janie | 6670 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 630 | 2:15-cv-07125 | Tucker, Kevin | Tucker, Marcella | 7758 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 631 | 2:15-cv-07127 | Wess, Sammy | Wess, Sammy | 6669 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 632 | 2:16-cv-00005 | Childers, Ronda | Eldridge, Marvin | 6901 | Watts Guerra LLP |
| 633 | 2:16-cv-00046 | Mack, Clyde | Mack, Clyde | 6783 | The Lanier Law Firm |
| 634 | 2:16-cv-00048 | Pearson, Larry | Pearson, Larry | 6848 | The Lanier Law Firm |
| 635 | 2:16-cv-00050 | Ginn, Angela | Ginn, Angela | 6743 | The Lanier Law Firm |
| 636 | 2:16-cv-00052 | Casanova, Diana | Casanova, Diana | 7054 | Goza & Honnold, LLC |
| 637 | 2:16-cv-00053 | Smith, Ruby | Smith, Ruby | 15663 | The Lanier Law Firm |
| 638 | 2:16-cv-00056 | Alia, Nancy | Galterio, Nancy | 6867 | Goza & Honnold, LLC |
| 639 | 2:16-cv-00057 | Sexton, Beverly | Sexton, Beverly | 6780 | The Lanier Law Firm |
| 640 | 2:16-cv-00060 | Snyder, Guy | Snyder, Guy | 6851 | The Lanier Law Firm |
| 641 | 2:16-cv-00062 | Griffin, Kenneth | Griffin, Kenneth | 6891 | Goza & Honnold, LLC |
| 642 | 2:16-cv-00065 | Bishop, Thomas | Bishop, Thomas | 6478 | The Michael Brady Lynch Firm |
| 643 | 2:16-cv-00069 | Laplante, Cecilia | Laplante, Cecilia | 7015 | Goza & Honnold, LLC |
| 644 | 2:16-cv-00070 | Jurgensmeier, Eunice | Jurgensmeier, Eunice | 13442 | The Michael Brady Lynch Firm |
| 645 | 2:16-cv-00072 | MacGregor, Davis | MacGregor, David | 6484 | The Michael Brady Lynch Firm |
| 646 | 2:16-cv-00073 | McDurmon, Richard | McDurmon, Richard | 6696 | The Michael Brady Lynch Firm |
| 647 | 2:16-cv-00074 | McMeans, James | McMeans, Susie | 6929 | Goza & Honnold, LLC |
| 648 | 2:16-cv-00075 | Sackllah, Essa | Sackllah, Essa | 13440 | The Michael Brady Lynch Firm |
| 649 | 2:16-cv-00076 | Grove, Patricia | Grove, Thomas | 5322 | Simon Greenstone Panatier Bartlett, PC |
| 650 | 2:16-cv-00077 | Schuette, Patricia | Schuette, Patricia | 13441 | The Michael Brady Lynch Firm |
| 651 | 2:16-cv-00078 | Tobias, Hiram | Tobias, Jurelene | 7001 | Goza & Honnold, LLC |
| 652 | 2:16-cv-00079 | Smith, Elizabeth | Smith, Elizabeth | 8648 | The Michael Brady Lynch Firm |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 653 | 2:16-cv-00080 | Wilson, Delores | Wilson, John | 6660 | The Michael Brady Lynch Firm |
| 654 | 2:16-cv-00081 | Ring, Rosalee | Ring, Clayton | 6849 | The Lanier Law Firm |
| 655 | 2:16-cv-00082 | Prince, Kevin | Prince, Kevin | 6753 | The Lanier Law Firm |
| 656 | 2:16-cv-00083 | Bland, Arthur | Bland, Arthur | 6839 | The Lanier Law Firm |
| 657 | 2:16-cv-00086 | Pierce, Betty | Pierce, Betty | 8768 | The Lanier Law Firm |
| 658 | 2:16-cv-00087 | Rothenberger, Peter | Rothenberger, Peter | 6746 | The Lanier Law Firm |
| 659 | 2:16-cv-00088 | Bell, Janice H. | Huckaby, Christine | 5324 | Simon Greenstone Panatier Bartlett, PC |
| 660 | 2:16-cv-00090 | Pilgrim, Joyce | Pilgrim, Joyce | 6789 | The Lanier Law Firm |
| 661 | 2:16-cv-00091 | Payne, Bonita | Payne, Bonita | 15664 | The Lanier Law Firm |
| 662 | 2:16-cv-00093 | Kincaid, Fae | Kincaid, Ralph | 5327 | Simon Greenstone Panatier Bartlett, PC |
| 663 | 2:16-cv-00094 | Coe, Carla | Coe, Carla | 6845 | The Lanier Law Firm |
| 664 | 2:16-cv-00096 | Lancaster, Patricia | Lancaster, Patricia | 5328 | Simon Greenstone Panatier Bartlett, PC |
| 665 | 2:16-cv-00098 | Whitaker, Warren | Whitaker, Warren | 5330 | Simon Greenstone Panatier Bartlett, PC |
| 666 | 2:16-cv-00099 | Fischer, Saul | Fischer, Saul | 7486 | Goza & Honnold, LLC |
| 667 | 2:16-cv-00101 | Kirk, Nancy | Kirk, Nancy | 7466 | Goza & Honnold, LLC |
| 668 | 2:16-cv-00103 | Snipe, William | Snipe, William | 6850 | The Lanier Law Firm |
| 669 | 2:16-cv-00104 | Huey, James | Huey, James | 6639 | The Driscoll Firm, PC |
| 670 | 2:16-cv-00105 | Lindsey, Jimmie | Lindsey, Jimmie | 6640 | The Driscoll Firm, PC |
| 671 | 2:16-cv-00109 | Brutus, Sinclair | Brutus, Sinclair | 8599 | The Driscoll Firm, PC |
| 672 | 2:16-cv-00110 | Millsberg, Donald | Millsberg, Donald | 6589 | The Driscoll Firm, PC |
| 673 | 2:16-cv-00112 | Acuna, Fawn | Acuna, Fawn | 6601 | The Driscoll Firm, PC |
| 674 | 2:16-cv-00115 | Hunt, Teresa | Redding, Carolyn | 3494 | The Driscoll Firm, PC |
| 675 | 2:16-cv-00116 | Johnson, Sherrie | Johnson, Sherrie | 3419 | The Driscoll Firm, PC |
| 676 | 2:16-cv-00117 | Casasanto, Margaret A. | Casasanto, Margaret C. | 6550 | The Driscoll Firm, PC |
| 677 | 2:16-cv-00118 | Quarrels, Pamela | Quarrels, Pamela | 7479 | Goza & Honnold, LLC |
| 678 | 2:16-cv-00119 | Wells, Tammy | Wells, Tammy | 7475 | Goza & Honnold, LLC |
| 679 | 2:16-cv-00121 | Bowden, Evelyn Faye | Bates, Beatrice | 7951 | Wormington & Bollinger |
| 680 | 2:16-cv-00124 | Blau, Terry | Blau, Terry | 8352 | Ross Feller Casey, LLP; Douglas & London, PC |
| 681 | 2:16-cv-00125 | Bazzi, Soulafa | Bazzi, Fawzi | 7609 | Wormington & Bollinger |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 682 | 2:16-cv-00126 | Smyser, Betty | Smyser, Betty | 7911 | Ross Feller Casey, LLP; Douglas & London, PC |
| 683 | 2:16-cv-00127 | Eastman, George | Eastman, George | 7736 | Ross Feller Casey, LLP; Douglas & London, PC |
| 684 | 2:16-cv-00128 | Cumbest, Lyman | Cumbest, Lyman | 7908 | Wormington & Bollinger |
| 685 | 2:16-cv-00129 | Dickerson, Patricia | Dickerson, Patricia | 8024 | Wormington & Bollinger |
| 686 | 2:16-cv-00130 | Csoka, Louis | Csoka, Louis | 7834 | Ross Feller Casey, LLP; Douglas & London, PC |
| 687 | 2:16-cv-00131 | Dorgan, David | Dorgan, David | 7950 | Wormington & Bollinger |
| 688 | 2:16-cv-00132 | Dunn, Bobby Ray | Dunn, Bobby Ray | 7923 | Wormington & Bollinger |
| 689 | 2:16-cv-00133 | Garrison, Georgetta | Garrison, Georgetta | 7935 | Wormington & Bollinger |
| 690 | 2:16-cv-00137 | Foyil, Diane | Henry, Larry | 7999 | Wormington & Bollinger |
| 691 | 2:16-cv-00138 | Kampen, Dolores | Kampen, Edward | 7981 | Wormington & Bollinger |
| 692 | 2:16-cv-00139 | Radcliff, Pamela | Mackey, Ronald | 7922 | Wormington & Bollinger |
| 693 | 2:16-cv-00141 | Jackson, Cassandra | Jackson, Emma | 6803 | The Lanier Law Firm |
| 694 | 2:16-cv-00142 | Padgett, John | Padgett, Brenda | 7956 | Wormington & Bollinger |
| 695 | 2:16-cv-00145 | Schabot, Christine | Schabot, Robert | 7978 | Wormington & Bollinger |
| 696 | 2:16-cv-00146 | Kilpatrick, Mack | Stevens, Linda | 7979 | Wormington & Bollinger |
| 697 | 2:16-cv-00147 | Rogers, Robert | Rogers, Robert | 6798 | The Lanier Law Firm |
| 698 | 2:16-cv-00148 | Coriell, Betsy | Coriell, Betsy | 7523 | Stark & Stark |
| 699 | 2:16-cv-00149 | Renner, Rosa Rene | Sweet, Rosa | 7971 | Wormington & Bollinger |
| 700 | 2:16-cv-00150 | Watkins, Tammy | Watkins, Gary | 7988 | Wormington & Bollinger |
| 701 | 2:16-cv-00151 | Andreatta, Dennis | Andreatta, Dennis | 7857 | Ross Feller Casey, LLP; Douglas & London, PC |
| 702 | 2:16-cv-00153 | Graham, Patricia | Graham, Patricia | 7290 | Stark & Stark |
| 703 | 2:16-cv-00154 | Colombo, Lina | Colombo, Lina | 6846 | The Lanier Law Firm |
| 704 | 2:16-cv-00155 | Rogers, Janice | Jackson, Rose | 7217 | Stark & Stark |
| 705 | 2:16-cv-00156 | McCann, Roy | McCann, Roy | 6663 | Ross Feller Casey, LLP; Douglas & London, PC |
| 706 | 2:16-cv-00157 | Johnson, John | Johnson, John | 7589 | Stark & Stark |
| 707 | 2:16-cv-00158 | Miller, Ronald | Miller, Ronald | 6742 | The Lanier Law Firm |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 708 | 2:16-cv-00159 | Trusty, Patty | Minix, Lorine | 7141 | Stark & Stark |
| 709 | 2:16-cv-00160 | Moe, Elaine | Moe, Elaine | 7124 | Ross Feller Casey, LLP; Douglas & London, PC |
| 710 | 2:16-cv-00161 | Smith, Jewel | Smith, Jewel | 7547 | Ross Feller Casey, LLP; Douglas & London, PC |
| 711 | 2:16-cv-00162 | Nunez, Julia | Nunez, Julia | 7439 | Stark & Stark |
| 712 | 2:16-cv-00163 | Dudley, Doris | Dudley, Doris | 7856 | Ross Feller Casey, LLP; Douglas & London, PC |
| 713 | 2:16-cv-00164 | Smith, Delia | Simpson, Mildred | 7250 | Stark & Stark |
| 714 | 2:16-cv-00165 | Starek, Linda | Starek, Linda | 7611 | Stark & Stark |
| 715 | 2:16-cv-00166 | Sagona, Thelma | Sagona, Thelma | 8301 | Ross Feller Casey, LLP; Douglas & London, PC |
| 716 | 2:16-cv-00168 | Thomas, Donald | Thomas, Donald | 7139 | Stark & Stark |
| 717 | 2:16-cv-00171 | Foust, Addie | Foust, Addie | 6755 | The Lanier Law Firm |
| 718 | 2:16-cv-00174 | Collins, Patricia | Collins, Patricia | 7944 | Wormington & Bollinger |
| 719 | 2:16-cv-00175 | Smith, John | Smith, Reta | 6805 | The Lanier Law Firm |
| 720 | 2:16-cv-00176 | Yando, Harvey | Yando, Harvey | 7504 | Lowe Law Group; Flint Law Firm, LLC |
| 721 | 2:16-cv-00177 | Vandiver, Clara | Vandiver, Clara | 6791 | The Lanier Law Firm |
| 722 | 2:16-cv-00178 | Whitesell, James | Whitesell, James | 6802 | The Lanier Law Firm |
| 723 | 2:16-cv-00179 | Henry, Frederick | Henry, Frederick | 6760 | The Lanier Law Firm |
| 724 | 2:16-cv-00180 | Cassel, Kim | Cassel, Franklin D. | 7536 | Lowe Law Group; Flint Law Firm, LLC |
| 725 | 2:16-cv-00181 | Palmer, Irene | Palmer, Irene | 7012 | Lowe Law Group; Flint Law Firm, LLC |
| 726 | 2:16-cv-00183 | Branstetter, Wanda | Branstetter, Wanda | 6842 | The Lanier Law Firm |
| 727 | 2:16-cv-00186 | Thompson, Fost | Thompson, Fost | 6759 | The Lanier Law Firm |
| 728 | 2:16-cv-00188 | Keefe, James | Keefe, James | 6785 | The Lanier Law Firm |
| 729 | 2:16-cv-00190 | Burns, Vanessa | Burns, Vanessa | 6844 | The Lanier Law Firm |
| 730 | 2:16-cv-00193 | Day, Lonnie | Day, Lonnie | 7592 | Weitz & Luxenberg, PC |
| 731 | 2:16-cv-00195 | Decocq, Lewis | Decocq, Lewis | 7184 | Weitz & Luxenberg, PC |
| 732 | 2:16-cv-00196 | Howell, Gary | Howell, Gary | 7219 | Weitz & Luxenberg, PC |
| 733 | 2:16-cv-00197 | Jackson, Larry | Jackson, Larry | 7263 | Weitz & Luxenberg, PC |
| 734 | 2:16-cv-00198 | Lecroy, Ethel | Lecroy, Ethel | 7463 | Weitz & Luxenberg, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 735 | 2:16-cv-00199 | Maclin, Dorothy | Maclin, Dorothy | 7127 | Weitz & Luxenberg, PC |
| 736 | 2:16-cv-00200 | Marglin, Phyllis | Marglin, Phyllis | 7442 | Weitz & Luxenberg, PC |
| 737 | 2:16-cv-00204 | McBrayer, John | McBrayer, John | 7555 | Weitz & Luxenberg, PC |
| 738 | 2:16-cv-00205 | Mitchem, Mark | Mitchem, Mark | 7440 | Weitz & Luxenberg, PC |
| 739 | 2:16-cv-00206 | Owens, Melinda | Owens, Melinda | 7253 | Weitz & Luxenberg, PC |
| 740 | 2:16-cv-00207 | Pace, Winston | Pace, Winston | 7045 | Weitz & Luxenberg, PC |
| 741 | 2:16-cv-00208 | Perry, Glenda | Perry, Glenda | 7601 | Weitz & Luxenberg, PC |
| 742 | 2:16-cv-00210 | Rutt, Curtis | Rutt, Curtis | 7099 | Weitz & Luxenberg, PC |
| 743 | 2:16-cv-00212 | Scales, Karen | Scales, Karen | 7321 | Weitz & Luxenberg, PC |
| 744 | 2:16-cv-00213 | Stiltner, Michael | Stiltner, Michael | 7237 | Weitz & Luxenberg, PC |
| 745 | 2:16-cv-00214 | Thompson, Gregg | Thompson, Gregg | 7302 | Weitz & Luxenberg, PC |
| 746 | 2:16-cv-00215 | Wolfe, George | Wolfe, George | 7304 | Weitz & Luxenberg, PC |
| 747 | 2:16-cv-00217 | Mathews, Jamie | Mathews, Jamie | 6953 | Franklin D. Azar & Associates, PC |
| 748 | 2:16-cv-00219 | Williamson, Craig | Williamson, Craig | 6972 | Franklin D. Azar & Associates, PC |
| 749 | 2:16-cv-00232 | Gilbert, Dennis | Gilbert, Dennis | 2471 | Douglas & London, PC; Salim-Beasley, LLC |
| 750 | 2:16-cv-00234 | Rhoades, Barbara | Jarratt, Elizabeth | 4454 | Douglas & London, PC; Salim-Beasley, LLC |
| 751 | 2:16-cv-00236 | Novaria, Rosella | Novaria, Rosella | 2623 | Douglas & London, PC; Salim-Beasley, LLC |
| 752 | 2:16-cv-00238 | Robinette, Jerry | Robinette, Jerry | 2473 | Douglas & London, PC; Salim-Beasley, LLC |
| 753 | 2:16-cv-00239 | Cook, Karen | Rosenstein, Harriet | 4442 | Douglas & London, PC; Salim-Beasley, LLC |
| 754 | 2:16-cv-00243 | Tucker, Lavern M. | Tucker, Lavern M. | 1922 | Douglas & London, PC; Salim-Beasley, LLC |
| 755 | 2:16-cv-00244 | Tucker, Walter | Tucker, Walter | 4440 | Douglas & London, PC; Salim-Beasley, LLC |
| 756 | 2:16-cv-00245 | West, Jimmie | West, Jimmie | 2478 | Douglas & London, PC; Salim-Beasley, LLC |
| 757 | 2:16-cv-00246 | Ward-Wright, Juli | Ward-Wright, Juli | 2482 | Douglas & London, PC; Salim-Beasley, LLC |
| 758 | 2:16-cv-00247 | Tysinger, Lawrence H., Jr. | Tysinger, Lawrence H., Jr. | 7429 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 759 | 2:16-cv-00248 | Millard, Virginia | Millard, William Calvin | 7301 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 760 | 2:16-cv-00249 | Ogden, Deborah | Ogden, Billy Wayne | 7163 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 761 | 2:16-cv-00250 | Campbell, Willson R. | Campbell, Willson R. | 7157 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 762 | 2:16-cv-00251 | Lightly, Robert S. | Lightly, Robert S. | 7275 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 763 | 2:16-cv-00253 | Lauer, Dawn A. | Lauer, Dawn A. | 7435 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 764 | 2:16-cv-00258 | Blotzer, Theresa L. | Blotzer, Thereesa L. | 7109 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 765 | 2:16-cv-00259 | Reidt, Anna L. | Reidt, Anna L. | 5424 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 766 | 2:16-cv-00261 | Kelly, Beatrice G. | Kelly, Jerome J., Sr. | 7130 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 767 | 2:16-cv-00263 | Harmon, Delois | Harmon, Delois | 7125 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 768 | 2:16-cv-00271 | Burns, Joyce | Burns, Joyce | 6655 | Slater, Slater Schulman, LLP; Douglas & London, PC |
| 769 | 2:16-cv-00291 | Kennedy, Karla Ann | Kennedy, Karla Ann | 7181 | Motley Rice LLC |
| 770 | 2:16-cv-00292 | Kotalik, Frances M. | Kotalik, Frances M. | 7655 | Motley Rice LLC |
| 771 | 2:16-cv-00293 | McElvaney, Doyle Bert | McElvaney, Doyle Bert | 4444 | Motley Rice LLC |
| 772 | 2:16-cv-00294 | Price, Nancy A. | Price, Nancy A. | 7216 | Motley Rice LLC |
| 773 | 2:16-cv-00296 | Portenier, Warren Robert | Portenier, Warren Robert | 7541 | Tautfest Bond PLLC |
| 774 | 2:16-cv-00307 | Kelly, Robert W. | Kelly, Robert W. | 7168 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 775 | 2:16-cv-00309 | Pedrys, Janice A. | Pedrys, Janice A. | 7169 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 776 | 2:16-cv-00311 | Scott, Edward | Scott, Edward | 7170 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 777 | 2:16-cv-00313 | Smith, Isabella | Smith, Willard | 7171 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 778 | 2:16-cv-00316 | Walker, James D. | Walker, James D. | 7172 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 779 | 2:16-cv-00317 | Weathers, Trudie | Weathers, Trudie | 7173 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 780 | 2:16-cv-00318 | Wilson, Steven G. | Wilson, Steven G. | 7174 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 781 | 2:16-cv-00324 | Flammia, Michael D. | Flammia, Michael D. | 7519 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 782 | 2:16-cv-00325 | Spencer, Thomas E., Sr. | Spencer, Nancy K. | 7520 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 783 | 2:16-cv-00328 | Domino, Salome | Domino, Salome | 2845 | Allen & Nolte, PLLC |
| 784 | 2:16-cv-00329 | Gavin, Shelita | Gavin, Shelita | 16364 | Allen & Nolte, PLLC |
| 785 | 2:16-cv-00330 | Hartsock, Christopher | Hartsock, Christopher | 7640 | Allen & Nolte, PLLC |
| 786 | 2:16-cv-00334 | Maran, Jeffrey | Maran, Jeffrey | 2687 | Allen & Nolte, PLLC |
| 787 | 2:16-cv-00337 | McKinnie, Milas | McKinnie, Milas | 7671 | Allen & Nolte, PLLC |
| 788 | 2:16-cv-00339 | Taff, Vickie | Taff, Richard | 7694 | Allen & Nolte, PLLC |
| 789 | 2:16-cv-00344 | Hardwicke, Lawrence | Hardwicke, Lawrence | 7612 | Brown and Crouppen, PC |
| 790 | 2:16-cv-00346 | Birdsall, Deborah | Healy, Barbara | 7633 | Brown and Crouppen, PC |
| 791 | 2:16-cv-00347 | Jones, Alesa | Jones, Alesa | 6889 | Brown and Crouppen, PC |
| 792 | 2:16-cv-00356 | Turman, Jane | Turman, Jane | 8021 | Degaris Law Group, LLC |
| 793 | 2:16-cv-00365 | Kopke, Nicole | Kopke, Nicole | 6790 | Nemeroff Law Firm |
| 794 | 2:16-cv-00376 | Eason, Tom | Eason, Tom | 6910 | Freedland Harwin Valori, PL |
| 795 | 2:16-cv-00380 | Haberern, Martin | Haberern, Martin | 6912 | Freedland Harwin Valori, PL |
| 796 | 2:16-cv-00382 | Marsh, Bernadine | Marsh, Richard, Sr. | 6913 | Freedland Harwin Valori, PL |
| 797 | 2:16-cv-00384 | Riecken, George | Riecken, George | 6914 | Freedland Harwin Valori, PL |
| 798 | 2:16-cv-00386 | Sneider, Richard | Sneider, Richard | 6915 | Freedland Harwin Valori, PL |
| 799 | 2:16-cv-00387 | Vance, Leslie | Vance, Leslie | 6916 | Freedland Harwin Valori, PL |
| 800 | 2:16-cv-00389 | Hamilton, James | Hamilton, James | 7976 | Smith Stag, LLC |
| 801 | 2:16-cv-00391 | Hunter, Alfonzio | Hunter, Alfonzio | 7299 | Burke Harvey, LLC |
| 802 | 2:16-cv-00392 | Salmon, Urbano | Salmon, Urbano | 7619 | Burke Harvey, LLC |
| 803 | 2:16-cv-00394 | Stanley, Robbie | Stanley, Robbie | 7672 | Burke Harvey, LLC |
| 804 | 2:16-cv-00395 | Staples, Derrick | Staples, Jacqueline | 7664 | Burke Harvey, LLC |
| 805 | 2:16-cv-00396 | Woods, Michael | Woods, Michael | 7284 | Burke Harvey, LLC |
| 806 | 2:16-cv-00397 | Stamper, Edith | Stamper, Edith | 8018 | Ferrer, Poirot & Wansbrough |
| 807 | 2:16-cv-00399 | Cook-Stillday, Mary Ellen | Stillday, Paul R. | 10129 | Verhine & Verhine, PLLC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 808 | 2:16-cv-00400 | Strickland, Jan | Nosser, Catherine B. | 8055 | Verhine & Verhine, PLLC |
| 809 | 2:16-cv-00403 | Jacobs, Margie R. | Jacobs, Margie R. | 8019 | Verhine & Verhine, PLLC |
| 810 | 2:16-cv-00405 | Lee, Diane | Lee, Diane | 8105 | Verhine & Verhine, PLLC |
| 811 | 2:16-cv-00407 | Harkins, Bonnie | Harkins, Bonnie | 7998 | Ferrer, Poirot & Wansbrough |
| 812 | 2:16-cv-00408 | Trent, Richard Dana | Trent, Richard Dana | 5187 | Hilliard Munoz Gonzales LLP |
| 813 | 2:16-cv-00409 | Andrews, Daisy | Mays, Jeannette | 8078 | Ferrer, Poirot & Wansbrough |
| 814 | 2:16-cv-00411 | McCoy, Wandaline | McCoy, Wandaline | 8004 | Ferrer, Poirot & Wansbrough |
| 815 | 2:16-cv-00412 | Nichols, Thomas | Nichols, Thomas | 8002 | Ferrer, Poirot & Wansbrough |
| 816 | 2:16-cv-00413 | Pistilli, Francesco | Pistilli, Francesco | 8005 | Ferrer, Poirot & Wansbrough |
| 817 | 2:16-cv-00414 | Hedrick, Walter William, Sr. | Hedrick, Walter William, Sr. | 5037 | Hilliard Munoz Gonzales LLP |
| 818 | 2:16-cv-00418 | Hudgens, Garland | Hudgens, Garland | 8100 | Hilliard Munoz Gonzales LLP |
| 819 | 2:16-cv-00419 | Fanning, Anna A. | Fanning, Anna A. | 8068 | Hilliard Munoz Gonzales LLP |
| 820 | 2:16-cv-00421 | Apollonio, Angelo | Apollonio, Angelo | 5086 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 821 | 2:16-cv-00422 | Bacci, Patriica | Bacci, Leroy O. | 6665 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 822 | 2:16-cv-00424 | Coolidge, James G. | Coolidge, James G. | 6679 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 823 | 2:16-cv-00460 | Floyd, Mary | Floyd, Mary | 8109 | Bernstein Liebhard LLP |
| 824 | 2:16-cv-00461 | Hensarling, Wilma | Hensarling, Doyle | 7668 | Bernstein Liebhard LLP |
| 825 | 2:16-cv-00462 | Gamblin, William D. | Gamblin, William D. | 5117 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 826 | 2:16-cv-00464 | Jacobson, Richard L. | Jacobson, Richard L. | 4959 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 827 | 2:16-cv-00465 | Larson, Janet F. | Larson, Janet F. | 4090 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 828 | 2:16-cv-00466 | Williams, Reuben | Williams, Mary | 8391 | Bernstein Liebhard LLP |
| 829 | 2:16-cv-00468 | Leineke, Dee A. | Leineke, Dee A. | 6989 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 830 | 2:16-cv-00470 | Lewis, Patricia L. | Lewis, Patricia L. | 4808 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 831 | 2:16-cv-00471 | Marsh, Michael W. | Marsh, Michael W. | 4409 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 832 | 2:16-cv-00472 | Miller, Michelle L. | Miller, Michelle L. | 4080 | Brady Law Group |
| 833 | 2:16-cv-00477 | Prendergast, Robert W. | Prendergast, Robert W. | 4091 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 834 | 2:16-cv-00478 | Spearmon, Helen | Spearmon, Helen | 4665 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 835 | 2:16-cv-00479 | Summers, Peter | Summers, Peter | 4456 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 836 | 2:16-cv-00482 | Fortier, Francis H. | Fortier, Francis H. | 6694 | Brady Law Group; Aylstock, Witkin, Kreis & Overholtz PLLC |
| 837 | 2:16-cv-00490 | Nelson, Rita | Nelson, Rita | 7827 | Allen & Nolte, PLLC |
| 838 | 2:16-cv-00494 | Strickler, Robert | Strickler, Robert | 2260 | Allen & Nolte, PLLC |
| 839 | 2:16-cv-00504 | Raes, Thomas | Raes, Thomas | 2430 | Allen & Nolte, PLLC |
| 840 | 2:16-cv-00505 | Snyder, Julius | Snyder, Maria | 2161 | Allen & Nolte, PLLC |
| 841 | 2:16-cv-00527 | Figursky, Sarah | Figursky, Sarah | 6818 | Chaffin Luhana LLP |
| 842 | 2:16-cv-00529 | Kinsey, Louise | Kinsey, William | 7591 | Chaffin Luhana LLP |
| 843 | 2:16-cv-00547 | Cox, A.B. | Cox, A.B. | 7459 | Murray Law Firm |
| 844 | 2:16-cv-00562 | Johnson, Curtis, Jr. | Johnson, Curtis, Jr. | 7590 | Murray Law Firm |
| 845 | 2:16-cv-00564 | McWhorter, Lonnie D. | McWhorter, Lonnie D. | 7580 | Murray Law Firm |
| 846 | 2:16-cv-00565 | Pinkham, Muriel N. | Pinkham, Muriel N. | 7488 | Murray Law Firm |
| 847 | 2:16-cv-00571 | Austin, Delmar | Austin, Delmar | 6687 | Simmons Hanly Conroy |
| 848 | 2:16-cv-00573 | Fleischer, Eva Bluestein | Fleischer, Eva Bluestein | 7215 | Simmons Hanly Conroy |
| 849 | 2:16-cv-00574 | Brooks, Corey | Brooks, Amber | 7599 | Simmons Hanly Conroy |
| 850 | 2:16-cv-00575 | Brown, Samantha | Brown, Samantha | 4694 | Simmons Hanly Conroy |
| 851 | 2:16-cv-00577 | Carder, Paula | Carder, Paula | 7246 | Simmons Hanly Conroy |
| 852 | 2:16-cv-00578 | Coleman-Richardson, Toye | Coleman-Richardson, Toye | 7709 | Simmons Hanly Conroy |
| 853 | 2:16-cv-00579 | Conrad, Charles | Conrad, Charles | 4697 | Simmons Hanly Conroy |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|-----|-----------|----------------|--------------|-------|----------------|
| 854 | 2:16-cv-00581 | Craig, Donald | Craig, Donald | 7006 | Simmons Hanly Conroy |
| 855 | 2:16-cv-00582 | Dale, Charlott | Dale, Charlott | 7678 | Simmons Hanly Conroy |
| 856 | 2:16-cv-00583 | Davis, Marie | Davis, Marie | 7538 | Simmons Hanly Conroy |
| 857 | 2:16-cv-00584 | Denison, William | Denison, William | 6682 | Simmons Hanly Conroy |
| 858 | 2:16-cv-00586 | Edmond, Beverly | Edmond, Beverly | 5138 | Simmons Hanly Conroy |
| 859 | 2:16-cv-00588 | Emmons, Mary | Emmons, Mary | 7804 | Simmons Hanly Conroy |
| 860 | 2:16-cv-00590 | Evans, Harry | Evans, Harry | 9849 | Simmons Hanly Conroy |
| 861 | 2:16-cv-00591 | Fanning, Romaine | Fanning, Romaine | 5124 | Simmons Hanly Conroy |
| 862 | 2:16-cv-00593 | Franklin, Deborah | Franklin, Deborah | 7618 | Simmons Hanly Conroy |
| 863 | 2:16-cv-00594 | Gardner, Peter | Gardner, Peter | 5123 | Simmons Hanly Conroy |
| 864 | 2:16-cv-00595 | Garrett, Jeanne | Garrett, Byron | 6683 | Simmons Hanly Conroy |
| 865 | 2:16-cv-00598 | Hathaway, Rae Jean | Hathaway, Rae Jean | 4949 | Simmons Hanly Conroy |
| 866 | 2:16-cv-00601 | Ioannou, Fraziska | Ioannou, Franziska | 4703 | Simmons Hanly Conroy |
| 867 | 2:16-cv-00602 | Jacobus, Antoinette | Jacobus, Antoinette | 5126 | Simmons Hanly Conroy |
| 868 | 2:16-cv-00603 | Wright, Jennifer | Johansen, Marie | 7955 | Simmons Hanly Conroy |
| 869 | 2:16-cv-00604 | Jones, Benjamin | Jones, Eula | 4950 | Simmons Hanly Conroy |
| 870 | 2:16-cv-00606 | Kampas, Anita | Kampas, Anita | 4708 | Simmons Hanly Conroy |
| 871 | 2:16-cv-00607 | Kaplan, Robert | Kaplan, Robert | 6853 | Simmons Hanly Conroy |
| 872 | 2:16-cv-00609 | Kinion, Roy | Kinion, Vianna | 7089 | Simmons Hanly Conroy |
| 873 | 2:16-cv-00610 | Knippel, Ruediger | Knippel, Ruediger | 4692 | Simmons Hanly Conroy |
| 874 | 2:16-cv-00611 | Koveck, William | Koveck, Tasia | 7825 | Simmons Hanly Conroy |
| 875 | 2:16-cv-00612 | Krodel, Thomas | Krodel, Thomas | 4691 | Simmons Hanly Conroy |
| 876 | 2:16-cv-00613 | Larinan, Howard | Larinan, Cynthia | 7090 | Simmons Hanly Conroy |
| 877 | 2:16-cv-00614 | Licianga, Erika | Licianga, Erika | 7600 | Simmons Hanly Conroy |
| 878 | 2:16-cv-00615 | Liggett, Judith | Liggett, Robert | 4951 | Simmons Hanly Conroy |
| 879 | 2:16-cv-00617 | Marr, Cora | Marr, Cora | 7824 | Simmons Hanly Conroy |
| 880 | 2:16-cv-00619 | Mayo, Helen | Mayo, Helen | 4700 | Simmons Hanly Conroy |
| 881 | 2:16-cv-00620 | Mazza, Mark | Mazza, Mark | 7198 | Simmons Hanly Conroy |
| 882 | 2:16-cv-00621 | McCarver-Arnold, Pamela | McCarver-Arnold, Pamela | 7677 | Simmons Hanly Conroy |
| 883 | 2:16-cv-00622 | Naghavi, Mundonna | Naghavi, Mundonna | 6680 | Simmons Hanly Conroy |
| 884 | 2:16-cv-00624 | O'Brien, Connor | O'Brien, Robert | 4690 | Simmons Hanly Conroy |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 885 | 2:16-cv-00625 | Oldfield, Patsy | Oldfield, Lester | 4701 | Simmons Hanly Conroy |
| 886 | 2:16-cv-00626 | Rios, Gerardo | Rios, Gerardo | 4687 | Simmons Hanly Conroy |
| 887 | 2:16-cv-00629 | Sanfilippo, Laurie | Sanfilippo, Charles | 4695 | Simmons Hanly Conroy |
| 888 | 2:16-cv-00630 | Sanglay, Rogelia | Sanglay, Rolando | 4699 | Simmons Hanly Conroy |
| 889 | 2:16-cv-00631 | Seal, Patricia | Seal, Edward | 6970 | Simmons Hanly Conroy |
| 890 | 2:16-cv-00632 | Sellards, Danny | Sellards, Danny | 4698 | Simmons Hanly Conroy |
| 891 | 2:16-cv-00633 | Simpson, April | Simpson, April | 6962 | Simmons Hanly Conroy |
| 892 | 2:16-cv-00635 | Schwartz, Tonya | Smith, John | 7091 | Simmons Hanly Conroy |
| 893 | 2:16-cv-00636 | Smith, Sandra | Smith, Sandra | 6684 | Simmons Hanly Conroy |
| 894 | 2:16-cv-00637 | Spector, Renee | Spector, Renee | 7533 | Simmons Hanly Conroy |
| 895 | 2:16-cv-00638 | Staggs, Donna | Staggs, Donna | 4952 | Simmons Hanly Conroy |
| 896 | 2:16-cv-00639 | Steger, Cora | Steger, Cora | 9839 | Simmons Hanly Conroy |
| 897 | 2:16-cv-00640 | Stephens, James | Stephens, James | 5127 | Simmons Hanly Conroy |
| 898 | 2:16-cv-00641 | Stonebraker, Sylvia | Stonebraker, Sylvia | 4688 | Simmons Hanly Conroy |
| 899 | 2:16-cv-00642 | Sunnarborg, Earl | Sunnarborg, Earl | 6681 | Simmons Hanly Conroy |
| 900 | 2:16-cv-00643 | Thomas, Robert | Thomas, Robert | 7893 | Simmons Hanly Conroy |
| 901 | 2:16-cv-00644 | Tunick, Edward | Tunick, Edward | 5217 | Simmons Hanly Conroy |
| 902 | 2:16-cv-00645 | Vetere, Nicholas | Vetere, Nicholas | 4702 | Simmons Hanly Conroy |
| 903 | 2:16-cv-00648 | Wilbanks, Shawn | Wilbanks, Shawn | 4696 | Simmons Hanly Conroy |
| 904 | 2:16-cv-00652 | Jackson-Cox, Gerri | Cox, Reuben | 7300 | Dowd & Dowd, PC |
| 905 | 2:16-cv-00654 | Killingsworth, Philip | Killingsworth, Joe, Sr. | 9903 | Dowd & Dowd, PC |
| 906 | 2:16-cv-00658 | Dietrich, Pamela | Dietrich, Pamela | 7829 | Sanders Law Firm, LLC |
| 907 | 2:16-cv-00659 | Jacobson, Brent | Jacobson, Thomas | 8478 | Sanders Law Firm, LLC |
| 908 | 2:16-cv-00660 | Jones, Clara | Jones, Clara | 7314 | Sanders Law Firm, LLC |
| 909 | 2:16-cv-00661 | Kalakay, Christopher | Kalakay, Joseph | 9081 | Sanders Law Firm, LLC |
| 910 | 2:16-cv-00662 | Sharkey, Margaret | Sharkey, Adis M. | 7315 | Dowd & Dowd, PC |
| 911 | 2:16-cv-00663 | Spaller, Mary | Spaller, Mary | 9304 | Sanders Law Firm, LLC |
| 912 | 2:16-cv-00665 | Westmoreland, Eva | Saulsbery, Betty | 7029 | Dowd & Dowd, PC |
| 913 | 2:16-cv-00666 | Stoyle, Henry | Stoyle, Henry | 7787 | Sanders Law Firm, LLC |
| 914 | 2:16-cv-00669 | Wise, Yvonne | Wise, Yvonne | 7258 | Sanders Law Firm, LLC |
| 915 | 2:16-cv-00677 | Arndt, Stacy | Paliouras, Maria | 6986 | Johnson Law Group |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 916 | 2:16-cv-00680 | Asby, Howard | Asby, Howard | 6528 | Johnson Law Group |
| 917 | 2:16-cv-00681 | Bennett, Harriet J. | Bennett, Harriet J. | 7320 | Johnson Law Group |
| 918 | 2:16-cv-00682 | Bimson, James D. | Bimson, James D. | 6645 | Johnson Law Group |
| 919 | 2:16-cv-00690 | Webster, James | Webster, James | 7035 | Douglas & London, PC |
| 920 | 2:16-cv-00692 | Turner, Marcha | Turner, Grace | 7033 | Douglas & London, PC |
| 921 | 2:16-cv-00693 | Stevens, Annette | Stevens, Annette | 7027 | Douglas & London, PC |
| 922 | 2:16-cv-00694 | Range, Mamie | Range, Mamie | 7019 | Douglas & London, PC |
| 923 | 2:16-cv-00695 | McGee, Elisa | McGee, Elisa | 7776 | Douglas & London, PC |
| 924 | 2:16-cv-00696 | Mattingley, Joyce | Mattingley, Joyce | 7010 | Douglas & London, PC |
| 925 | 2:16-cv-00697 | Major, Paul | Major, Paul | 7004 | Douglas & London, PC |
| 926 | 2:16-cv-00698 | Fowler, Charlene | Fowler, Dennie | 7059 | Douglas & London, PC |
| 927 | 2:16-cv-00699 | Westlock, Billie | Lively, Hilda Jean | 7294 | Douglas & London, PC |
| 928 | 2:16-cv-00700 | Garst, Steven | Garst, Steven | 7042 | Douglas & London, PC |
| 929 | 2:16-cv-00701 | Felts, Jerry | Felts, Jerry | 6988 | Douglas & London, PC |
| 930 | 2:16-cv-00702 | Cook, Glenda | Cook, Glenda | 7175 | Douglas & London, PC |
| 931 | 2:16-cv-00703 | Bristow, Barbara | Bristow, Barbara | 6980 | Douglas & London, PC |
| 932 | 2:16-cv-00705 | Vann, Daniel | Vann, Daniel | 7692 | Douglas & London, PC |
| 933 | 2:16-cv-00714 | Brodecky, Gary | Brodecky, Gary | 6830 | Johnson Law Group |
| 934 | 2:16-cv-00718 | Chambers, Margaret, Romaine | Chambers, Margaret Romaine | 7297 | Johnson Law Group |
| 935 | 2:16-cv-00719 | Charles, Kashavia Shantajia | Charles, Kashavia Shantajia | 7838 | Johnson Law Group |
| 936 | 2:16-cv-00720 | Clark, Diana | Clark, Diana | 7705 | Johnson Law Group |
| 937 | 2:16-cv-00725 | Clouser, Timothy | Clouser, Timothy | 6887 | Johnson Law Group |
| 938 | 2:16-cv-00726 | Dake, Anita | Dake, Anita | 7026 | Johnson Law Group |
| 939 | 2:16-cv-00734 | Brennen, Cheryl | Brennen, Dennis | 7507 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 940 | 2:16-cv-00735 | Brinkley, Linda | Shoe, Ruth | 7634 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 941 | 2:16-cv-00737 | Brunett, Karen | Brunett, Hilon J., Sr. | 13853 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 942 | 2:16-cv-00738 | Eberle, Sigmund | Eberle, Sigmund | 13858 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 943 | 2:16-cv-00739 | Gregg, Eddie | Gregg, Eddie | 7495 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 944 | 2:16-cv-00740 | Jesse, Vernon | Jesse, Vernon | 7769 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 945 | 2:16-cv-00741 | Johnston, Juanita | Johnston, Juanita | 7322 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 946 | 2:16-cv-00742 | Kiehl, Ann | Kiehl, Ann | 8683 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 947 | 2:16-cv-00745 | Kight, Danny | Kight, Danny | 7188 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 948 | 2:16-cv-00746 | Jones, Betty | Jones, Betty | 7318 | The Lanier Law Firm |
| 949 | 2:16-cv-00747 | Kilgo, Janice | Michael, Lillian | 13908 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 950 | 2:16-cv-00748 | Clarke, Joan | Lang, James | 4476 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 951 | 2:16-cv-00750 | Longtin, Richard | Longtin, Richard | 8653 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 952 | 2:16-cv-00753 | Parkerson, Joe J., Sr. | Parkerson, Dora | 7428 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 953 | 2:16-cv-00754 | Dove, Dewey A. | Dove, Dewey A. | 7537 | Johnson Law Group |
| 954 | 2:16-cv-00755 | Estrella, Kimberly S. | Estrella, Kimberly S. | 7081 | Johnson Law Group |
| 955 | 2:16-cv-00756 | Finch, George Michael | Finch, George Michael | 7309 | Johnson Law Group |
| 956 | 2:16-cv-00757 | Gibson, Paul J. | Gibson, Paul J. | 7303 | Johnson Law Group |
| 957 | 2:16-cv-00758 | Price, Joseph | Price, Joseph | 9724 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 958 | 2:16-cv-00759 | Rayborn, Chris | Rayborn, Chris | 8649 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 959 | 2:16-cv-00760 | Giles, David | Giles, Barbara | 7610 | Johnson Law Group |
| 960 | 2:16-cv-00763 | Hargrove, Carla | Davis, Jane Brodie | 7057 | Johnson Law Group |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 961 | 2:16-cv-00766 | Gaines, Ridgeway | Gaines, Ridgeway | 7646 | Johnson Law Group |
| 962 | 2:16-cv-00767 | Harlan, Gary | Harlan, Gary | 7623 | Johnson Law Group |
| 963 | 2:16-cv-00768 | Gardner, James B. | Gardner, James B. | 7218 | Johnson Law Group |
| 964 | 2:16-cv-00769 | Shannon, Mary | Shannon, Mary | 7501 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 965 | 2:16-cv-00771 | Harris, Doris Shirley | Harris, Doris Shirley | 6784 | Johnson Law Group |
| 966 | 2:16-cv-00772 | Tucci, Anthony | Tucci, Anthony | 7433 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 967 | 2:16-cv-00774 | Willson, Darrel | Willson, Darrel | 2453 | Peiffer Wolf Carr & Kane; The Michael Brady Lynch Firm |
| 968 | 2:16-cv-00786 | Morton, Walter | Morton, Walter | 2421 | Allen & Nolte, PLLC |
| 969 | 2:16-cv-00787 | Kramer, John | Kramer, John | 7103 | Allen & Nolte, PLLC |
| 970 | 2:16-cv-00796 | Henderson, Bryan A. | Henderson, Bryan A. | 7848 | Johnson Law Group |
| 971 | 2:16-cv-00797 | Keane, Anna | Keane, John M. | 7715 | Johnson Law Group |
| 972 | 2:16-cv-00798 | Hill, Cherri | Hill, Cherri | 6801 | Johnson Law Group |
| 973 | 2:16-cv-00799 | Kozlowski, Walter | Kozlowski, Amelia | 7749 | Johnson Law Group |
| 974 | 2:16-cv-00800 | Hilton, Daisey L. | Hilton, Daisey L. | 6817 | Johnson Law Group |
| 975 | 2:16-cv-00801 | Lambert, Sharon | Lambert, Eric Leon | 7850 | Johnson Law Group |
| 976 | 2:16-cv-00802 | Holbrook, Judith | Holbrook, Judith | 7149 | Johnson Law Group |
| 977 | 2:16-cv-00803 | Macchia, Judith | Macchia, Judith | 6921 | Johnson Law Group |
| 978 | 2:16-cv-00826 | Johnson, Sandra Lucille | Johnson, Sandra Lucille | 6920 | Brown, Faucher, Peraldo, & Benson, PLLC |
| 979 | 2:16-cv-00827 | Lytle-Hall, Tammy Kaye | Lytle-Hall, Tammy Kaye | 7270 | Brown, Faucher, Peraldo, & Benson, PLLC |
| 980 | 2:16-cv-00828 | Johnson, Gabrielle | Johnson, Ernest M. | 7701 | Johnson Law Group |
| 981 | 2:16-cv-00829 | Lynch, Josephine C. | Lynch, Josephine C. | 6884 | Johnson Law Group |
| 982 | 2:16-cv-00830 | Holmes, Lou Ann | Durette, Oleta M. | 7656 | Johnson Law Group |
| 983 | 2:16-cv-00831 | Kaples, Peter Edward | Kaples, Peter Edward | 7723 | Johnson Law Group |
| 984 | 2:16-cv-00832 | Martin, Elmer T. | Martin, Elmer T. | 6950 | Johnson Law Group |
| 985 | 2:16-cv-00833 | Martin, Linda K. | Martin, Robert | 6926 | Johnson Law Group |
| 986 | 2:16-cv-00834 | Miller, Sandra L. | Miller, Sandra L. | 7577 | Johnson Law Group |
| 987 | 2:16-cv-00836 | Miskovic, Demitrije | Miskovic, Demitrije | 6883 | Johnson Law Group |
| 988 | 2:16-cv-00839 | McCullah, Penny | McCullah, Penny | 6976 | Johnson Law Group |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 989 | 2:16-cv-00840 | Morley, Frank | Morley, Frank | 6958 | Johnson Law Group |
| 990 | 2:16-cv-00841 | McKenzie, Michae | McKenzie, Michae | 7846 | Johnson Law Group |
| 991 | 2:16-cv-00842 | Pascoe, AnnMarie | Pascoe, AnnMarie | 7503 | Johnson Law Group |
| 992 | 2:16-cv-00851 | Charles, Roy | Charles, Roy | 8328 | Ferrer, Poirot & Wansbrough |
| 993 | 2:16-cv-00852 | Courtier, Emily | Courtier, Emily | 8425 | Ferrer, Poirot & Wansbrough |
| 994 | 2:16-cv-00853 | McLain, Pamela G. | McLain, Pamela G. | 6827 | Johnson Law Group |
| 995 | 2:16-cv-00855 | Mehelich, Jacob | Mehelich, Helen, Holly | 7193 | Johnson Law Group |
| 996 | 2:16-cv-00856 | Hilgedieck, David | Hilgedieck, David | 8370 | Ferrer, Poirot & Wansbrough |
| 997 | 2:16-cv-00857 | Pendry, Harry | Pendry, Harry | 7651 | Johnson Law Group |
| 998 | 2:16-cv-00858 | Hill, Sarah | Hill, Sarah | 8463 | Ferrer, Poirot & Wansbrough |
| 999 | 2:16-cv-00859 | Heron, Aretha | Pulliam, Ella May | 7658 | Johnson Law Group |
| 1000 | 2:16-cv-00860 | Meyer, Sandra | Bongo, Jennie | 8471 | Ferrer, Poirot & Wansbrough |
| 1001 | 2:16-cv-00861 | Ward, Gwen | Ward, Gwen | 8427 | Ferrer, Poirot & Wansbrough |
| 1002 | 2:16-cv-00862 | Mickler, Bryant | Mickler, Bryant | 7500 | Johnson Law Group |
| 1003 | 2:16-cv-00863 | Pulou, Tui | Maae, Merita | 7714 | Johnson Law Group |
| 1004 | 2:16-cv-00864 | Pursley, Patricia | Pursley, Patricia | 6990 | Johnson Law Group |
| 1005 | 2:16-cv-00865 | Clark, Diane | Clark, Diane | 7204 | Ferrer, Poirot & Wansbrough; Padberg, Corrigan & Appelbaum |
| 1006 | 2:16-cv-00868 | Witcher, Henry | Witcher, Henry | 7206 | Ferrer, Poirot & Wansbrough; Padberg, Corrigan & Appelbaum |
| 1007 | 2:16-cv-00869 | Priest, Kim | Priest, Kim | 7534 | Johnson Law Group |
| 1008 | 2:16-cv-00870 | Lassiter, Anthony | Lassiter, Anthony | 7120 | Ferrer, Poirot & Wansbrough; Padberg, Corrigan & Appelbaum |
| 1009 | 2:16-cv-00871 | Groce, Ethelena | Groce, Ethelena | 7200 | Ferrer, Poirot & Wansbrough; Padberg, Corrigan & Appelbaum |
| 1010 | 2:16-cv-00874 | Davis, Claudette | Davis, David | 7087 | Ferrer, Poirot & Wansbrough; Padberg, Corrigan & Appelbaum |
| 1011 | 2:16-cv-00875 | Shimley, Judy | Shimley, Judy | 7032 | Johnson Law Group |
| 1012 | 2:16-cv-00879 | Rhodes, Sharon LaRue | Rhodes, Sharon LaRue | 7844 | Johnson Law Group |
| 1013 | 2:16-cv-00880 | Sluder, Yvonne | Sluder, Yvonne | 7662 | Johnson Law Group |
| 1014 | 2:16-cv-00881 | Smith, James S. | Jones, Leila | 6829 | Johnson Law Group |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 1015 | 2:16-cv-00882 | Ringler, Dale W. | Ringler, Dale W. | 6999 | Johnson Law Group |
| 1016 | 2:16-cv-00888 | Sturgeon, Constance J. | Sturgeon, Constance J. | 7075 | Johnson Law Group |
| 1017 | 2:16-cv-00889 | Rogan, Louise | Rogan, Louise | 7292 | Johnson Law Group |
| 1018 | 2:16-cv-00890 | Romero, Layal | Diab, Ibtissam | 7457 | Johnson Law Group |
| 1019 | 2:16-cv-00891 | Schield, Judine | Schield, Judine | 6740 | Johnson Law Group |
| 1020 | 2:16-cv-00899 | Liebow, Franette | Ventura, Joyce | 7225 | Ferrer, Poirot & Wansbrough |
| 1021 | 2:16-cv-00900 | Cuthbertson, George | Cuthbertson, George | 7096 | Martin & Jones, PLLC |
| 1022 | 2:16-cv-00903 | Plaster, Marsha | Plaster, Robert | 7288 | Martin & Jones, PLLC |
| 1023 | 2:16-cv-00904 | Sergent, Theodore | Sergent, Theodore | 7020 | Johnson Law Group |
| 1024 | 2:16-cv-00905 | Sullivan, Robert | Sullivan, Robert | 7818 | Johnson Law Group |
| 1025 | 2:16-cv-00907 | Thompson, Timothy | Thompson, Timothy | 7085 | Johnson Law Group |
| 1026 | 2:16-cv-00908 | Alejandro, Pablo | Alejandro, Pablo | 7272 | Kirkendall Dwyer LLP |
| 1027 | 2:16-cv-00909 | Whyel, Betty | Whyel, Betty | 6775 | Johnson Law Group |
| 1028 | 2:16-cv-00911 | Wood, Joseph | Wood, Joseph | 6715 | Johnson Law Group |
| 1029 | 2:16-cv-00912 | Acrey, Michael | Acrey, Michael | 7644 | Kirkendall Dwyer LLP |
| 1030 | 2:16-cv-00914 | Woods, Ronald | Woods, Laura Phyllis | 7108 | Johnson Law Group |
| 1031 | 2:16-cv-00916 | Clarke, Matthew | Clarke, Matthew | 7248 | Law Offices of Charles H. Johnson, PA |
| 1032 | 2:16-cv-00917 | Demond, Celia | Demond, Celia | 8153 | Law Offices of Charles H. Johnson, PA |
| 1033 | 2:16-cv-00919 | Flansburg, June L. | Flansburg, June L. | 7222 | Law Offices of Charles H. Johnson, PA |
| 1034 | 2:16-cv-00930 | Bailey, John | Bailey, John | 7437 | Kirkendall Dwyer LLP |
| 1035 | 2:16-cv-00932 | Barnwell, Brandye | Barnwell, Brandye | 7291 | Kirkendall Dwyer LLP |
| 1036 | 2:16-cv-00933 | Christensen, Sandra | Christensen, Sandra | 7243 | Kirkendall Dwyer LLP |
| 1037 | 2:16-cv-00936 | Curry, William | Curry, William | 7244 | Kirkendall Dwyer LLP |
| 1038 | 2:16-cv-00941 | Pietila, Joan | Pietila, Joan | 7233 | Law Offices of Baird A. Brown, PC |
| 1039 | 2:16-cv-00944 | Jackson, Marvin | Jackson, Johnnie Mae | 8481 | Law Offices of Baird A. Brown, PC |
| 1040 | 2:16-cv-00945 | James, Louis | James, Louis | 8097 | Law Offices of Baird A. Brown, PC |
| 1041 | 2:16-cv-00946 | Niese, Paula | Niese, Henry | 9108 | The Moody Law Firm, Inc. |
| 1042 | 2:16-cv-00947 | Priestley, Tom | Priestley, Tom | 7862 | The Moody Law Firm, Inc. |
| 1043 | 2:16-cv-00957 | Haney, James | Haney, Octavia | 7735 | Goza & Honnold, LLC |
| 1044 | 2:16-cv-00960 | Hayden, Robert | Hayden, Robert | 7782 | Goza & Honnold, LLC |
| 1045 | 2:16-cv-00962 | Bensley, Alan | Bensley, Alan | 7706 | Weitz & Luxenberg, PC |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 1046 | 2:16-cv-00963 | Brett, Joseph | Brett, Joseph | 7867 | Weitz & Luxenberg, PC |
| 1047 | 2:16-cv-00964 | Brown, Carl | Brown, Carl | 7712 | Weitz & Luxenberg, PC |
| 1048 | 2:16-cv-00965 | Campbell, Susie | Campbell, Susie | 7734 | Weitz & Luxenberg, PC |
| 1049 | 2:16-cv-00966 | Dick, Susie | Dick, Susie | 7713 | Weitz & Luxenberg, PC |
| 1050 | 2:16-cv-00967 | Floros, Marie | Floros, Marie | 7934 | Weitz & Luxenberg, PC |
| 1051 | 2:16-cv-00968 | Gordon, Demetrice | Gordon, Demetrice | 7833 | Weitz & Luxenberg, PC |
| 1052 | 2:16-cv-00969 | Humiston, Lori | Humiston, Lori | 7933 | Weitz & Luxenberg, PC |
| 1053 | 2:16-cv-00970 | Lee, Arnold | Lee, Arnold | 7808 | Weitz & Luxenberg, PC |
| 1054 | 2:16-cv-00971 | Parker, Rebecca | Parker, Rebecca | 7932 | Weitz & Luxenberg, PC |
| 1055 | 2:16-cv-00973 | Thompson, Joy | Thompson, Joy | 7811 | Weitz & Luxenberg, PC |
| 1056 | 2:16-cv-00975 | Williams, Carolyn | Williams, Carolyn | 8025 | Weitz & Luxenberg, PC |
| 1057 | 2:16-cv-00976 | Winslett, Mary | Winslett, Mary | 8392 | Weitz & Luxenberg, PC |
| 1058 | 2:16-cv-00978 | Faass, Connie | Faass, Connie | 7228 | Kirkendall Dwyer LLP |
| 1059 | 2:16-cv-00979 | Fuller, Alta | Fuller, Alta | 8023 | Kirkendall Dwyer LLP |
| 1060 | 2:16-cv-00981 | Griffith, Gail | Griffith, Gail | 7230 | Kirkendall Dwyer LLP |
| 1061 | 2:16-cv-00982 | Harris, Thomas | Harris, Thomas | 7473 | Kirkendall Dwyer LLP |
| 1062 | 2:16-cv-00984 | Hegner, Howard | Hegner, Howard | 7753 | Goza & Honnold, LLC |
| 1063 | 2:16-cv-00986 | Headrick, Leona | Headrick, Leona | 7513 | Kirkendall Dwyer LLP |
| 1064 | 2:16-cv-00987 | Howell, Kenneth | Howell, Kenneth | 7447 | Kirkendall Dwyer LLP |
| 1065 | 2:16-cv-00988 | Hodge, Chalina | Hodge, Chalina | 7809 | Goza & Honnold, LLC |
| 1066 | 2:16-cv-00989 | Hunley, Robert | Hunley, Robert | 7570 | Kirkendall Dwyer LLP |
| 1067 | 2:16-cv-00991 | Dacunto, Vincent | Dacunto, Vincent | 7849 | Peiffer Wolf Carr & Kane |
| 1068 | 2:16-cv-00992 | Hatter, Cynthia | Daniels, Hardenia | 16280 | Peiffer Wolf Carr & Kane |
| 1069 | 2:16-cv-00994 | Manolakas, Alexander | Manolakas, Alexander | 7931 | Peiffer Wolf Carr & Kane |
| 1070 | 2:16-cv-00995 | Nondahl, Patricia | Nondahl, Patricia | 7906 | Peiffer Wolf Carr & Kane |
| 1071 | 2:16-cv-00997 | Ponder, Dorothy | Ponder, Hubert | 7942 | Peiffer Wolf Carr & Kane |
| 1072 | 2:16-cv-00998 | Bing, Shirley | Bing, Shirley | 6557 | The Driscoll Firm, PC |
| 1073 | 2:16-cv-00999 | Mitchell, Karen | Mitchell, Karen | 7499 | Kirkendall Dwyer LLP |
| 1074 | 2:16-cv-01000 | Smith, Shirley | Smith, Shirley | 7962 | Peiffer Wolf Carr & Kane |
| 1075 | 2:16-cv-01001 | Downs, John | Downs, John | 7111 | The Driscoll Firm, PC |
| 1076 | 2:16-cv-01002 | Watson, Carl | Watson, Carl | 7877 | Peiffer Wolf Carr & Kane |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 1077 | 2:16-cv-01004 | Williams, Carolyn | Williams, Carolyn | 13585 | Peiffer Wolf Carr & Kane |
| 1078 | 2:16-cv-01005 | Zachary, William | Zachary, William | 13741 | Peiffer Wolf Carr & Kane |
| 1079 | 2:16-cv-01009 | Hinson, Jesse | Hinson, Jesse | 3402 | The Driscoll Firm, PC |
| 1080 | 2:16-cv-01010 | Kranz, Mary | Kranz, Mary | 3433 | The Driscoll Firm, PC |
| 1081 | 2:16-cv-01011 | McCravey, Mike | McCravey, Mike | 3453 | The Driscoll Firm, PC |
| 1082 | 2:16-cv-01012 | Mead, Rodney | Mead, Rodney | 7113 | The Driscoll Firm, PC |
| 1083 | 2:16-cv-01013 | Rogers, Reginold, Jr. | Rogers, Virginia | 7114 | The Driscoll Firm, PC |
| 1084 | 2:16-cv-01015 | Shirley, William | Shirley, William | 3520 | The Driscoll Firm, PC |
| 1085 | 2:16-cv-01016 | Stanfill, Jack | Stanfill, Jack | 3534 | The Driscoll Firm, PC |
| 1086 | 2:16-cv-01018 | White, Steven | White, Steven | 3569 | The Driscoll Firm, PC |
| 1087 | 2:16-cv-01019 | Moore, Douglas | Moore, Douglas | 7477 | Kirkendall Dwyer LLP |
| 1088 | 2:16-cv-01020 | Woodard, Sandra | Turner, Velma | 4136 | The Driscoll Firm, PC |
| 1089 | 2:16-cv-01023 | Murphy, Tammy | Murphy, Tammy | 7451 | Kirkendall Dwyer LLP |
| 1090 | 2:16-cv-01024 | Parks, William | Parks, William | 7235 | Kirkendall Dwyer LLP |
| 1091 | 2:16-cv-01026 | Pearce, Leonard | Pearce, Leonard | 7509 | Kirkendall Dwyer LLP |
| 1092 | 2:16-cv-01027 | Peavy, Sarah | Peavy, Sarah | 7242 | Kirkendall Dwyer LLP |
| 1093 | 2:16-cv-01029 | Phillips, Addie | Phillips, Addie | 7645 | Kirkendall Dwyer LLP |
| 1094 | 2:16-cv-01030 | Soliday, Debbie | Moldovan, Kenneth | 7837 | Goza & Honnold, LLC |
| 1095 | 2:16-cv-01032 | Ponds, Cacielie | Ponds, Frank | 8072 | Kirkendall Dwyer LLP |
| 1096 | 2:16-cv-01034 | Rakocy, Robert | Rakocy, Robert | 7865 | Goza & Honnold, LLC |
| 1097 | 2:16-cv-01036 | Radivonyk, Joseph | Radivonyk, Joseph | 8116 | Kirkendall Dwyer LLP |
| 1098 | 2:16-cv-01037 | Rodriguez, Maria | Rodriguez, Maria | 7876 | Goza & Honnold, LLC |
| 1099 | 2:16-cv-01038 | Shepperd, James | Shepperd, James | 7515 | Kirkendall Dwyer LLP |
| 1100 | 2:16-cv-01041 | Turner, Gathel | Turner, Gathel | 7607 | Kirkendall Dwyer LLP |
| 1101 | 2:16-cv-01042 | Valdez, Melissa | Valdez, Melissa | 8071 | Kirkendall Dwyer LLP |
| 1102 | 2:16-cv-01043 | Rohs, Wanda | Rohs, Wanda | 7881 | Goza & Honnold, LLC |
| 1103 | 2:16-cv-01044 | Wages, Nellie | Wages, Nellie | 7516 | Kirkendall Dwyer LLP |
| 1104 | 2:16-cv-01045 | Wallace, Annie | Wallace, Annie | 7266 | Kirkendall Dwyer LLP |
| 1105 | 2:16-cv-01048 | Satterwhite, Jamie | Satterwhite, Jamie | 7791 | Goza & Honnold, LLC |
| 1106 | 2:16-cv-01049 | Sanders, Patricia | Wing, Madonna | 7952 | Kirkendall Dwyer LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 1107 | 2:16-cv-01061 | Sellers, Martha W. | Roberts, Johnnie Sue | 8080 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 1108 | 2:16-cv-01065 | Turton, Larry | Cody, Martha | 8081 | Beasley, Allen, Crow, Methvin, Portis & Miles, PC |
| 1109 | 2:16-cv-01084 | Aponte, Josefina | Aponte, Josefina | 7691 | The Potts Law Firm, LLP |
| 1110 | 2:16-cv-01085 | Haile, Mulugetta | Araya, Habte | 7693 | The Potts Law Firm, LLP |
| 1111 | 2:16-cv-01087 | Azzopardi, Anthony | Azzopardi, Anthony | 7695 | The Potts Law Firm, LLP |
| 1112 | 2:16-cv-01088 | Barthelmeh, Terry | Barthelmeh, Terry | 7699 | The Potts Law Firm, LLP |
| 1113 | 2:16-cv-01089 | Brown, Willie | Brown, Willie | 7710 | The Potts Law Firm, LLP |
| 1114 | 2:16-cv-01093 | Cicchese, Shirley | Brink, Marion | 7704 | The Potts Law Firm, LLP |
| 1115 | 2:16-cv-01094 | Wilburn, Shirley | Wilburn, Shirley | 8884 | Bernstein Liebhard LLP |
| 1116 | 2:16-cv-01095 | Edwards, Lee | Edwards, Lee | 7772 | The Potts Law Firm, LLP |
| 1117 | 2:16-cv-01097 | Gannon, Frances | Gannon, Frances | 7878 | The Potts Law Firm, LLP |
| 1118 | 2:16-cv-01099 | Gordon, Margaret | Lane, Georgia | 7626 | The Potts Law Firm, LLP |
| 1119 | 2:16-cv-01100 | Meyers, Donald G. | McCoy, Patricia L. | 7803 | The Potts Law Firm, LLP |
| 1120 | 2:16-cv-01101 | McGowan, Judy | McGowan, Judy | 7814 | The Potts Law Firm, LLP |
| 1121 | 2:16-cv-01103 | Rapp, Susan | Rapp, Susan | 7879 | The Potts Law Firm, LLP |
| 1122 | 2:16-cv-01104 | Pike, Margaret M. | Pike, Margaret M. | 9671 | The Dilorenzo Law Firm, LLC |
| 1123 | 2:16-cv-01108 | Reagan, Ruth | Reagan, Ruth | 7895 | The Potts Law Firm, LLP |
| 1124 | 2:16-cv-01110 | Schweitzer, Shirley | Schweitzer, Shirley | 7904 | The Potts Law Firm, LLP |
| 1125 | 2:16-cv-01113 | Smith, John W. | Smith, John W. | 7907 | The Potts Law Firm, LLP |
| 1126 | 2:16-cv-01114 | Strohmeyer, Pamela | Strohmeyer, Pamela | 7914 | The Potts Law Firm, LLP |
| 1127 | 2:16-cv-01115 | Catrett, Christine | Catrett, Christine | 7285 | Grant & Eisenhofer PA |
| 1128 | 2:16-cv-01118 | Wooten, Arthur | Wooten, Arthur | 7959 | The Potts Law Firm, LLP |
| 1129 | 2:16-cv-01119 | Young, Tiffany | Young, Tiffany | 7968 | The Potts Law Firm, LLP |
| 1130 | 2:16-cv-01120 | Zimmerman, Margie | Zimmerman, Bennie Frank | 7992 | The Potts Law Firm, LLP |
| 1131 | 2:16-cv-01138 | McMillian, Jacqueline | McMillian, Jacqueline | 7256 | Grant & Eisenhofer PA |
| 1132 | 2:16-cv-01139 | Ballard, Ruth | Williams, Ozella | 7264 | Grant & Eisenhofer PA |
| 1133 | 2:16-cv-01141 | Diamon, William | Diamon, William | 8470 | Farris, Riley & Pitt, LLP |
| 1134 | 2:16-cv-01144 | Sledge, Teresa | Sledge, Teresa | 10327 | Farris, Riley & Pitt, LLP |
| 1135 | 2:16-cv-01145 | Comeaux, Donald | Comeaux, Donald | 8362 | Farris, Riley & Pitt, LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 1136 | 2:16-cv-01159 | Flowers, Willie D. | Flowers, Willie D. | 7892 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1137 | 2:16-cv-01163 | Oviatt, John P. | Oviatt, John P. | 7945 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1138 | 2:16-cv-01164 | Sanchez, Melissa R. | Sanchez, Melissa R. | 7910 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1139 | 2:16-cv-01173 | Alsup, Jack M. | Alsup, Jack M. | 4006 | Sweeney Merrigan Law |
| 1140 | 2:16-cv-01176 | Blevins, Tammy | Gove, Ellen | 8491 | Miller Weisbrod, LLP |
| 1141 | 2:16-cv-01178 | Burgess, Thomas | Burgess, Thomas | 3240 | Capretz & Associates |
| 1142 | 2:16-cv-01179 | Gass, Roberta | Gass, Paul | 3609 | Capretz & Associates |
| 1143 | 2:16-cv-01180 | Mosson, Mary | Mosson, Mary | 3242 | Capretz & Associates |
| 1144 | 2:16-cv-01183 | Johnson, Stalina | Johnson, Stalina | 4405 | Capretz & Associates |
| 1145 | 2:16-cv-01184 | Smith, Sherrie | Smith, Darlene | 5036 | Capretz & Associates |
| 1146 | 2:16-cv-01196 | Watkins, Cynthia L. | Urig, Carol | 8492 | Miller Weisbrod, LLP |
| 1147 | 2:16-cv-01204 | Boston, Ann M. | Boston, Ann M. | 8035 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1148 | 2:16-cv-01205 | Bush, Ronald P. | Bush, Ronald P. | 7784 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1149 | 2:16-cv-01206 | Clemons, Panella F. | Clemons, Panella F. | 7929 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1150 | 2:16-cv-01207 | Copeland, Joan | Copeland, Joan | 8144 | Grant & Eisenhofer PA |
| 1151 | 2:16-cv-01208 | DeVane, Robert N. | DeVane, Robert N. | 7839 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1152 | 2:16-cv-01209 | Estepp, Kyoko H. | Estepp, Kyoko H. | 7858 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1153 | 2:16-cv-01211 | Jones, Wanda Rankins | Jones, Curtis L. | 8121 | Grant & Eisenhofer PA |
| 1154 | 2:16-cv-01212 | Jennings, Gary E. | Jennings, Gary E. | 7698 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1155 | 2:16-cv-01215 | Jones, Pamela C. | Jones, Pamela C. | 8082 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 1156 | 2:16-cv-01218 | Kendle, Flora S. | Kendle, Flora S. | 8085 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1157 | 2:16-cv-01219 | Lorig, Helen T. | Lorig, Helen T. | 7675 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1158 | 2:16-cv-01220 | McCarty, James B. | McCarty, James B. | 7863 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1159 | 2:16-cv-01223 | Nickerson, Wilfred C. | Nickerson, Wilfred C. | 7990 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1160 | 2:16-cv-01224 | Pinkelman, Barbara J. | Harris, George L. | 7727 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1161 | 2:16-cv-01225 | See, Allen G. | See, Allen G. | 7969 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1162 | 2:16-cv-01226 | Tillman, Dartha A. | Tillman, Dartha A. | 7870 | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. |
| 1163 | 2:16-cv-01234 | Burdine, James S. | Burdine, James S. | 4096 | Sweeney Merrigan Law |
| 1164 | 2:16-cv-01235 | Cole, Norma | Cole, Norma | 3182 | Sweeney Merrigan Law |
| 1165 | 2:16-cv-01236 | Donato, Carolyn P. | Donato, Carolyn P. | 5314 | Sweeney Merrigan Law |
| 1166 | 2:16-cv-01237 | Foxworth, Virginia S. | Foxworth, Virginia S. | 4030 | Sweeney Merrigan Law |
| 1167 | 2:16-cv-01239 | Heiler, May | Heiler, May | 3740 | Sweeney Merrigan Law |
| 1168 | 2:16-cv-01240 | Herrin, Danny | Herrin, Geraldine | 3265 | Sweeney Merrigan Law |
| 1169 | 2:16-cv-01241 | Jones-Weitzel, Patricia | Jones-Weitzel, Patricia | 3162 | Sweeney Merrigan Law |
| 1170 | 2:16-cv-01242 | Loftin, Donald R. | Loftin, Donald R. | 3277 | Sweeney Merrigan Law |
| 1171 | 2:16-cv-01243 | Martinez, Ronnie A. | Martinez, Ronnie A. | 3755 | Sweeney Merrigan Law |
| 1172 | 2:16-cv-01244 | McClure, Joanne | McClure, Joanne | 4612 | Sweeney Merrigan Law |
| 1173 | 2:16-cv-01245 | Moore, Joyce L. | Moore, Joyce L. | 3063 | Sweeney Merrigan Law |
| 1174 | 2:16-cv-01246 | Slotwinski, Alexander T. | Slotwinski, Alexander T. | 3659 | Sweeney Merrigan Law |
| 1175 | 2:16-cv-01247 | Syrus, Roy | Syrus, Roy | 3805 | Sweeney Merrigan Law |
| 1176 | 2:16-cv-01248 | Williams, Ruth | Williams, Ruth | 4401 | Sweeney Merrigan Law |
| 1177 | 2:16-cv-01249 | Woods, Barbara | Woods, Barbara | 3792 | Sweeney Merrigan Law |
| 1178 | 2:16-cv-01273 | Shaw, Lisa | Shaw, Lisa | 7261 | Kirkendall Dwyer LLP |
| 1179 | 2:16-cv-01274 | Keitt, Sally | Keitt, Sally | 7430 | Kirkendall Dwyer LLP |

| Row | Docket No. | Plaintiff Name | Xarelto User | BG ID | Plaintiff Firm |
|---|---|---|---|---|---|
| 1180 | 2:16-cv-01275 | Demartini, Elido | Demartini, Elido | 7594 | Kirkendall Dwyer LLP |
| 1181 | 2:16-cv-01295 | Escobar, Anel | Escobar, Anel | 12776 | Bernheim Dolinsky Kelley, LLC |
| 1182 | 2:16-cv-01296 | Gilbert, Lisa | Gilbert, Lisa | 8066 | Bernheim Dolinsky Kelley, LLC |
| 1183 | 2:16-cv-01297 | Malone, David | Malone, David | 7882 | Bernheim Dolinsky Kelley, LLC |
| 1184 | 2:16-cv-01298 | Paul, Cecilia | Paul, Cecilia | 12751 | Bernheim Dolinsky Kelley, LLC |
| 1185 | 2:16-cv-01300 | Smith, Bernadette | Smith, Bernadette | 7918 | Bernheim Dolinsky Kelley, LLC |
| 1186 | 2:16-cv-01301 | Rice, Bernard | Rice, Bernard | 7941 | Bernheim Dolinsky Kelley, LLC |
| 1187 | 2:16-cv-01316 | Richard, Amy | Richard, Denis | 8042 | Freedland Harwin Valori, PL |
| 1188 | 2:16-cv-01318 | Rumpke, William | Rumpke, William | 8020 | Freedland Harwin Valori, PL |
| 1189 | 2:16-cv-01319 | Goforth, Marie | Steeley, Jack | 8034 | Freedland Harwin Valori, PL |
| 1190 | 2:16-cv-01331 | Griffin, Mark | Griffin, Mark | 10143 | Meyers & Flowers, LLC |
| 1191 | 2:16-cv-01332 | Farquhar, Julie | Farquhar, Julie | 8357 | Meyers & Flowers, LLC |
| 1192 | 2:16-cv-01333 | Rearic, Donna | Rearic, Donna | 8353 | Meyers & Flowers, LLC |
| 1193 | 2:16-cv-01338 | Bortel, Geneva | Bortel, Geneva | 7595 | Kirkendall Dwyer LLP |
| 1194 | 2:16-cv-01341 | Forth, Dorothy | Forth, Dorothy | 8857 | Whitfield Bryson & Mason LLP |
| 1195 | 2:16-cv-01343 | Hamilton, Linda | Hamilton, Linda | 8929 | Whitfield Bryson & Mason LLP |
| 1196 | 2:16-cv-01344 | Jones, Jennie | Jones, Jennie | 8920 | Whitfield Bryson & Mason LLP |
| 1197 | 2:16-cv-01345 | Swedun, John | Swedun, John | 8914 | Whitfield Bryson & Mason LLP |
| 1198 | 2:16-cv-01346 | White, Mary | White, Mary | 9046 | Whitfield Bryson & Mason LLP |
| 1199 | 2:16-cv-01348 | Dudley, Tammy | Manning, Joshua | 9055 | Whitfield Bryson & Mason LLP |
| 1200 | 2:16-cv-01352 | Ellis, Carol | Ellis, Carol | 7596 | Kirkendall Dwyer LLP |

Original Filed at Docket No. 52,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

John Doe

        Plaintiff,

  v.

Jane Doe

        Defendant.

DEFENDANT Jane Doe NOTICE OF FILING PROPOSED SEALED REPLY BRIEF

Pursuant to Local Civil Rule 79.2 and CM/ECF Policy Manual § V.G.1(e), Defendant Jane Doe hereby gives notice that she has provisionally filed under seal her reply brief in support of her motion to transfer (DE 50).

Although Jane Doe does not contend that the reply brief should be sealed, she understands that John Doe may contend that some of the content of the brief would link him to another case filed under a pseudonym. Jane Doe has therefore filed the brief provisionally under seal in an abundance of caution to allow John Doe the opportunity to request that the brief remain sealed.

Pursuant to CM/ECF Policy Manual § V.G.1(e), if John Doe desires that the reply brief remain sealed, he must file a motion to seal, supporting memorandum, and proposed order within seven days after service of this notice.

This the 31st day of January, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

2

Original Filed at Docket No. 53,
Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | DEFENDANT Jane Doe<br>BRIEF IN OPPOSITION TO SECOND<br>MOTION TO SEAL |

## INTRODUCTION

Plaintiff John Doe asks the Court to seal two publicly available documents Jane Doe filed with her response in opposition to John Doe 's motion to seal other publicly available information. John Doe again contends that unsealing these documents would identify him as the pseudonymous plaintiff in his case against Tulane. But one of the two documents John Doe seeks to seal is already publicly docketed in the Fourth Circuit in this case, because John Doe filed it there. Because John Doe own public filings already identify him as the plaintiff in the Tulane case, his motion to seal is properly denied.

## STATEMENT OF RELEVANT FACTS

On December 8, 2022, John Doe brought this action against Jane Doe alleging that Jane Doe falsely accused him of sexual assault while the two were students at Tulane University, and asserting claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy. Compl. ¶¶ 92-153 (DE 1). John Doe did not use his real name in his complaint. *See id. passim.* This Court denied John Doe motion for leave to proceed by pseudonym, and he appealed to the United States Court of Appeals for the Fourth Circuit. (DE 8, 9).

After the parties briefed the appeal, John Doe filed a notice of supplemental authority in the Fourth Circuit. *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (DE 46-1). In the notice, John Doe then calling himself "Mr. Doe," identified himself as the plaintiff in another case, and he provided the party names, case number, federal district court, and name of the judge assigned to that case. *See id.* John Doe also attached to the notice an order entered in the other case allowing him to proceed by pseudonym. *See id.* John Doe did not ask the Fourth Circuit to seal this supplemental authority. *See* Docket *passim*, *Doe v. Doe*, No. 23-1058 (4th Cir.).

The Fourth Circuit affirmed this Court's decision and remanded for further proceedings. (DE 22). John Doe filed an amended complaint using his real name and thus revealing that the "John Doe" in this case is John Doe *See* Am. Compl. ¶¶ 92-153 (DE 23). On December 15, 2023, Jane Doe moved to transfer this case to the Eastern District of Louisiana, and to dismiss the complaint in part for failure to state a claim upon which relief can be granted. (DE 27, 29). The parties filed various provisionally sealed documents in support of and in opposition to the motion to transfer. (DE 30, 31, 36, 38).

In the public version of his brief in opposition to the motion to transfer, John Doe redacted some material, but disclosed that he is pursuing an action against Tulane. (*See* DE 37 at 7 (referring to John Doe "action against Tulane"); *id.* at 20-23, 26, 30 (referring eight times to either "the Tulane action" or "the Tulane Action")).[1] In the same publicly filed brief, John Doe cited and described the notice of supplemental authority he filed with the Fourth Circuit when he appealed this Court's order denying leave to proceed by pseudonym:

---

[1] Jane Doe refers to the CM/ECF pagination when citing a docket entry with a pinpoint citation.

On May 16, 2023, Plaintiff's counsel filed a notice in the Fourth Circuit that Plaintiff was granted pseudonym protection in his action against Tulane (the "Tulane Order"). Appeal Dkt. #40.

(*Id.* at 7). John Doe also identified the appeal docket he was referring to: "*John Doe v. Jane Doe*, Appeal No. 23-1058 (4th Cir.) (the 'Appeal Dkt.')." (*Id.*).

John Doe moved to seal the provisionally sealed documents, arguing that sealing was necessary to avoid linking this case to another case he brought against Tulane under a pseudonym. (DE 42, 43). Jane Doe opposed sealing, arguing that John Doe had already publicly linked this case to his case against Tulane, such that he could not meet the burden to maintain under seal filings linking the two cases. (DE 45). With her response in opposition to motion to seal, Jane Doe filed two supporting documents: (1) a copy of John Doe notice of supplemental authority described above (DE 46-1); and (2) a printout of PACER search results (DE 46-2). John Doe asks the Court to seal those documents. (DE 48). As shown below, he cannot meet the burden to justify sealing these documents when he has already publicly linked this case to the Tulane case.

## **ARGUMENT**

John Doe CANNOT SHOW THAT COUNTERVAILING INTERESTS HEAVILY OUTWEIGH THE PUBLIC INTEREST IN ACCESS TO JUDICIAL RECORDS.

"The common law presumes a right of the public to inspect and copy all judicial records and documents." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quotation omitted); *see Universal Underwriters Ins. Co. v. Lallier*, 7:17-CV-30-D, 2019 WL 1085180, at *1 (E.D.N.C. Mar. 6, 2019) (Gates, Mag. J.) (applying common law presumption to documents filed with non-dispositive motion). The presumption of public access "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "The party seeking to overcome the

3

presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.* "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *In re Knight Publ'g Co.*, 743 F.3d 231, 235 (4th Cir. 1984)). This case does not involve any historical event, but the remaining factors and the presumption of public access warrant denying the motion to seal.

A.     Jane Doe Does Not Seek the Records for an Improper Purpose.

Contrary to John Doe suggestion, Jane Doe does not seek the records for any improper purpose. (*See* DE 48-1 at 5). Jane Doe does not seek to "harass, punish or intimidate" John Doe (*id.*); rather, she is defending a lawsuit that John Doe brought because Jane Doe reported that he sexually assaulted her. Jane Doe efforts to ensure that John Doe had an opportunity to ask the Court to consider sealing the documents at issue belie any inference that she is acting for an improper purpose. (*See* DE 45 at 3, 5-6).

B.     John Doe Prior Public Disclosure of Information Linking This Case to the Tulane Case—Including His Public Filing of One of the Documents He Seeks to Seal—Warrants Denial of His Motion to Seal.

John Doe cannot show that his interest in protecting his anonymity in the Tulane action is "urgent and compelling," or that the Court's determination on his motion to seal "will have a direct impact on the effectiveness" of the pseudonym order in the Tulane case. (DE 48-1 at 6-7). The notice of supplemental authority John Doe asks the Court to seal is available on the public Fourth Circuit docket in this case, where John Doe publicly filed it. *See*

*supra* p. 2.  In a public filing in this Court, John Doe     expressly cited that public notice of

supplemental authority by docket entry number.  (DE 37 at 7).  Therefore, sealing the same

notice of supplemental authority on the district court docket will not protect John Doe

identity as the plaintiff in the Tulane case.  And because John Doe     has already publicly

linked this case to the Tulane case, avoiding such a link cannot provide a basis to seal the

PACER search results.  Those results show how readily a member of the public can determine

which case is John Doe       pseudonymous action against Tulane.  (DE 45 at 8; DE 46-2).

Courts regularly decline to seal information that is already available to the public.  *See,*

*e.g.*, *Gonzalez v. Jaddou*, 7:18-CV-135-BO, 2021 WL 3686931, at \*3 (E.D.N.C. Aug. 18, 2021)

(recognizing that public availability of information movant sought to seal weighed in favor of

public access); *United States v. Hroub*, No. 5:20-CR-00250-M-2, 2020 WL 3805168, at \*3

(E.D.N.C. July 7, 2020) (denying motion to seal information that was already publicly available);

*Griffis v. Duke Energy Progress*, No. 5:19-CV-00119-FL, 2020 WL 8970785, at \*2 (E.D.N.C.

Mar. 11, 2020) ("Given that the information in the documents is already publicly available there

is no reason to place them under seal."); *United States v. Thomas*, No. 4:08-CR-00020-BR, 2019

WL 3137561, at \*1 (E.D.N.C. July 15, 2019) (declining to seal documents subject to First

Amendment right of access where information was already known to some and "[s]ealing the

subject documents now will not change what is already public knowledge"); *Covington v.*

*Herbel*, No. 5:09-CT-3176-D, 2011 WL 2269407, at \*3 (E.D.N.C. June 7, 2011) (denying

motion to seal where information at issue was available in unsealed filings); *United States v.*

*Griffith*, No. 5:04-CR-347-2F, 2006 WL 8442701, at \*2-3 (E.D.N.C. Aug. 2, 2006) (denying

motion to seal upon finding that public already had access to information movant sought to seal).

For example, when a party seeks to seal a document that it has also filed publicly on the court

docket, courts have denied motions to seal. *See Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2018 WL 287664, at *2 (E.D.N.C. Jan. 3, 2018) (denying motion to seal deposition transcript that was also publicly filed); *Capitol Comm'n, Inc. v. Capitol Ministries*, No. 5:11-CV-00214-BO, 2013 WL 5369421, at *1 (E.D.N.C. Sept. 24, 2013) (denying motion to seal document where unsealed version was already in the record); *see also Johnson v. City of Fayetteville*, No. 5:12-CV-456-F, 2014 WL 7151147, at *13 (E.D.N.C. Dec. 11, 2014) (concluding that where "the documents will now appear on the public docket, there appears to be little reason to keep another version sealed on the docket").

Because of John Doe own public filings, a member of the public can readily determine that John Doe is the pseudonymous plaintiff in his case against Tulane. *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (DE 46-1). John Doe has not kept the details needed to link the two cases private, and he cannot show that his alleged interest in privacy outweighs the public's right of access. *See supra* pp. 5-6 (citing cases).

## CONCLUSION

For the reasons stated above, Defendant Jane Doe respectfully requests that the Court deny Plaintiff John Doe motion to seal (DE 48).

6

This the 1st day of February, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

John Doe

        Plaintiff,

    v.

Jane Doe

        Defendant.

[PROPOSED] ORDER DENYING
PLAINTIFF'S MOTION TO SEAL

This matter comes before the Court on the motion [D.E. 48] of Plaintiff John Doe to seal the following documents: (1) his notice of supplemental authority filed with the Fourth Circuit in this case, ECF No. 40, *Doe v.* Doe, No. 23-1058 (4th Cir. May 16, 2023) [D.E. 46-1]; and (2) PACER search results showing cases filed against Tulane University between January 1, 2022, and January 1, 2024 [D.E. 46-2]. Defendant Jane Doe opposes the motion. Having considered the motion and other matters of record, the Court finds that it should DENIED.

Having balanced the relevant factors, including whether the records are sought for an improper purpose and whether the public already has access to the information, the Court finds that John Doe has not met the burden to overcome the presumption of public access to judicial records. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). Therefore, the motion to seal is DENIED, and the Clerk of Court shall unseal the documents filed at D.E. 46, including D.E. 46-1 and D.E. 46-2.

SO ORDERED, this the ___ day of _____, 2024.

                        _____
                        JAMES C. DEVER III
                        United States District Judge

Original Filed at Docket No. 54,

Sealed by Court Order

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-CV-00500-D-BM |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE DEFENDANT** Jane Doe **REPLY BRIEF IN SUPPORT OF HER MOTION TO TRANSFER VENUE (ECF NO. 50) UNDER SEAL AND IN REDACTED FORM**

Pursuant to Local Rule 79.2 of the U.S. District Court for the Eastern District of North Carolina Plaintiff John Doe ("Plaintiff") hereby respectively moves the Court for leave to file under seal an unredacted version of Defendant Jane Doe Reply Brief in Support of her Motion to Transfer Venue (ECF No. 50) (the "Defendant's Reply Brief").

This Motion is based upon this Motion and the Memorandum of Law in Support of the Motion and a Proposed Order granting this Motion filed concurrently herewith.

Dated:  February 7, 2024

Respectfully Submitted,

By: /s/ *Andrew T. Miltenberg*
Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582

*Attorney for Plaintiff*

By: /s/ Robert C. Ekstrand
     Robert C. Ekstrand
EKSTRAND AND EKSTRAND, LLP
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Robert C. Ekstrand*

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

| | |
|---|---|
| John Doe<br><br>        Plaintiff,<br><br>    v.<br><br>Jane Doe<br><br>        Defendant. | DEFENDANT Jane Doe  REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) |

Multiple factors support transfer to the district where all the underlying events occurred, including (1) the convenience of witnesses, none of whom reside here, (2) the opportunity for consolidation with a related case, and (3) ████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████ Judicial estoppel does not preclude transfer, as Jane Doe has not taken inconsistent positions.  Convenience and the interests of justice support transfer.

**ARGUMENT**

I.    **JUDICIAL ESTOPPEL DOES NOT APPLY BECAUSE** Jane Doe **HAS NOT TAKEN INCONSISTENT POSITIONS.**

The Fourth Circuit "has identified four elements that must be met before a court may apply judicial estoppel: (1) the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the position sought to be estopped must be one of fact rather than law or legal theory; (3) the prior inconsistent position must have been accepted by the court; and (4) the party sought to be estopped must have intentionally misled the court to gain unfair advantage." *Minnieland Priv. Day Sch., Inc. v. Applied*

*Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 458 (4th Cir. 2017). John Doe judicial estoppel argument fails because he cannot establish any of these elements.

### A. Jane Doe **Did Not Take Inconsistent Positions of Fact.**

John Doe argument as to the first two elements fails because Jane Doe did not take inconsistent positions, and her position on the distinctions between a defamation case and a Title IX case against a university was a legal one. *See id.* Jane Doe argued, and the Fourth Circuit agreed, that for purposes of pseudonymity, a defamation case against an individual was different from a Title IX case against a university seeking injunctive relief. *See Doe v. Doe*, 85 F.4th 206, 215, 217 (4th Cir. 2023); Resp. Br. 43-47, *Doe v. Doe*, No. 23-1058 (4th Cir. Mar. 29, 2023) (DE 35-2). Jane Doe argues in support of her motion to transfer that ███████████ ██████████████████ (DE 31 at 1). One position Jane Doe took was on the facts (the cases arise out of the same facts); the other was a position on the law (the cases involve distinct claims). These positions are consistent and accurate comparisons of the two cases.

John Doe sued Jane Doe for money damages for defamation and other torts. Am. Compl. ¶¶ 92-153 (DE 23). He sued Tulane for violation of Title IX and breach of contract. *Doe* Compl. ¶¶ 494-532 (DE 30-1). The complaints contain different legal theories and requests for relief, warranting different treatment with respect to pseudonymity, *see Doe*, 85 F.4th at 215, 217, but the cases arise out of the same facts, as evidenced by numerous identical allegations across the two complaints. *Compare* Am. Compl. ¶¶ 14-45 *with Doe* Compl. ¶¶ 147-213.

Jane Doe did not argue to the Fourth Circuit, as John Doe now contends, that "this case does not implicate Tulane's Title IX proceeding," that "this action does not overlap with any review of Tulane's Title IX proceeding," or that this case is not "related to an action against

2

Tulane." (DE 38 at 5, 22).[1]  To the contrary, Jane Doe acknowledged in her Fourth Circuit brief that John Doe alleged that Jane Doe "manipulated Tulane's Title IX investigation process" and that he claimed to have been damaged by statements Jane Doe made both within and outside Tulane's Title IX process.  Resp. Br. 6, 21, *Doe*, No. 23-1058 (DE 35-2).

In the cases John Doe cites (DE 38 at 20-21), courts applied judicial estoppel because a party attempted to directly contradict its prior position.  *See Oudeh v. Goshen Med. Ctr., Inc.*, No. 5:22-CV-193-D, 2022 WL 18028281, at *6 (E.D.N.C. Dec. 29, 2022) (plaintiffs were estopped from arguing that they had an interest in a promissory note, when they admitted they did not have such an interest in prior proceeding); *Fellores v. Winter*, No. 2:06-cv-551, 2007 WL 473727, at *2 (E.D. Va. Feb. 8, 2007) (plaintiff was estopped from seeking transfer away from Eastern District of Virginia when he had previously stipulated to transfer).  Judicial estoppel does not apply where, as here, Jane Doe did not take inconsistent positions, let alone inconsistent positions on the facts.  *See Minnieland*, 867 F.3d at 458.

**B.    John Doe Cannot Establish Judicial Reliance or Intent to Mislead or Gain an Unfair Advantage.**

Because Jane Doe did not take inconsistent positions, John Doe cannot satisfy the third and fourth elements necessary to invoke judicial estoppel.  *See id.* at 458-59.

Jane Doe rejects the accusation that she "acted intentionally" by not telling the Fourth Circuit that she might seek transfer.  (*See* DE 38 at 22).  When this Court ordered that John Doe either dismiss his case or file a complaint in his real name (DE 8 at 8), he appealed.  The proceedings were stayed (DE 14, 20), and Jane Doe was not required to say how she would proceed if John Doe filed an amended complaint after his appeal.

---

[1] Pinpoint citations to John Doe brief are to the CM/ECF pagination.

3

Jane Doe will gain no unfair advantage from transfer. John Doe argument that

███████████████████████████████████████████████████ misplaced.

(*See* DE 38 at 22-23). Transferring this case will not impact John Doe use of a

pseudonym in another case. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ *See* Fed. R. Civ. P. 42(b).[2]

████████████████████████████████████████████

████████. John Doe chose to bring this case against Jane Doe despite the lack of

authority for using a pseudonym. (*See* DE 8 at 7). John Doe then chose to persist in this

case and disclose his real name. (*See* DE 23). ████████████████████████

██████████████████████████████████████████████████████,

██████████████████

**II.    Jane Doe ESTABLISHED THAT TRANSFER TO ████████████████
         ████████████ IS WARRANTED.**

**A.    John Doe    Does Not Dispute That This Case Could Have Been
        Brought in ████████████████████████.**

Jane Doe showed (DE 31 at 8-10), and John Doe does not dispute (DE 38 *passim*),

that this case could have been brought in ████████████████████████.

**B.    The Relevant Factors Weigh in Favor of Transfer.**

1.    John Doe choice of forum is entitled to diminished weight.

Courts afford a plaintiff's choice of forum less weight when the plaintiff is a non-resident

---

[2] Jane Doe does not concede that John Doe would be right. The pseudonym order does not address trial. (DE 36-2). Even when anonymity is warranted before trial, use of pseudonyms at trial may be inappropriate. *See Doe v. Cabrera*, 307 F.R.D. 1, 10 nn. 15, 16 (D.D.C. 2014).

4

and the plaintiff's claims bear no relation to the forum.  (DE 31 at 11-12).  John Doe      does

not live here (DE 38 at 24), and he says that the "events described" in his complaint occurred

while he and Jane Doe were students in Louisiana.  Am. Compl. ¶¶ 6-7.  Therefore, he cannot

show that his choice of forum should be accorded substantial weight.  (*See* DE 38 at 23-24).

      John Doe      cannot distinguish *Speed Trac Technologies, Inc. v. Estes Express Lines,*

*Inc.,* 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008) (cited in DE 31 at 11-12).  Contrary to

John Doe      argument (DE 38 at 21), *Speed Trac* does not say that the plaintiff's chosen

forum receives less weight when the *defendant* does not reside there; it says that the plaintiff's

choice of forum receives less weight when: "(1) the plaintiff chooses a foreign forum, or (2) the

cause of action bears little or no relation to the chosen forum."  *Speed Trac*, 567 F. Supp. 2d at

803; *accord NOA, LLC v. Atl. Clothing, LLC*, No. 5:14-CV-100-FL, 2014 WL 3667230, at *8

(E.D.N.C. July 22, 2014).  Both of these circumstances pertain here.

      John Doe      does not engage with *Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674

(M.D.N.C. 2004) (cited in DE 31 at 12), which explained that the deference given to the

plaintiff's choice of forum is "proportionate to the relation between the forum and the cause of

action."  323 F. Supp. 2d at 674; *accord Boyd v. Koch Foods*, No. 5:10-CV-349-D, 2011 WL

2413844, at *2 (E.D.N.C. June 10, 2011) (weight given to plaintiff's choice "is lessened when

the conduct giving rise to the complaint did not occur in the forum").  Here, that relation is

limited, and any deference to John Doe      choice is diminished by the fact that "the subject

matter of the lawsuit is connected to the proposed transferee forum."  *Blackhawk Consulting,*

*LLC v. Fed. Nat'l Mortg. Ass'n*, 975 F. Supp. 2d 57, 61 (D.D.C. 2013) (quotation omitted).

      Jane Doe mother signed for a package in Cary (DE 35-5 at 2) while Jane Doe was at

Tulane, Jane Doe Decl. ¶¶ 4-6 (DE 29-2).  Jane Doe retained North Carolina counsel to defend a case

<div align="center">5</div>

filed here (DE 15, 17), but the location of counsel is irrelevant, *see In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003).  The only connection between this case and this district is that Jane Doe was domiciled here at the time of filing, and that connection warrants little weight.  *See Pan Am. Bank of Miami v. Gully*, 220 F. Supp. 405, 407 (W.D. Pa. 1963) (giving little weight to fact that "the defendant was or is a Pennsylvania citizen, that the plaintiff chose this forum for suit, and that both parties are represented by local counsel").

John Doe    cannot show that his choice of forum should receive significant deference because he could not have sued Jane Doe in South Carolina.  (DE 38 at 24 (citing *Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, No. 3:19-cv-00508-FDW-DSC, 2020 WL 90663, \*3 (W.D.N.C. Jan. 7, 2020))).  Although the *Sauer Brands* court recited that a plaintiff's choice of forum could still receive deference if the plaintiff faced jurisdictional problems in the plaintiff's home state, the plaintiff there alleged that the underlying events occurred in the district, the plaintiff had substantial operations there, and all parties were forum residents.  2020 WL 90663, at \*3.  John Doe    could not sue Jane Doe in South Carolina, but he faced no hurdle to filing in Louisiana, where all the events in this case occurred.  (DE 31 at 8-10).

        2.    <u>Taken together, the factors of party and witness convenience militate strongly in favor of transfer.</u>

The parties agree that neither party lives in this district.  (DE 31 at 14; DE 38 at 24).

John Doe    contends that it will not be inconvenient for him to litigate this case in North Carolina, ██████████████████████████████████████ (*See* DE 38 at 24-25).  The convenience of the parties still favors transfer because ████████████ ████████████████████████ (*See* DE 31 at 14).

The most important factor, witness convenience, strongly favors transfer.  *See Boyd*, 2011 WL 2413844, at \*3.  John Doe    has not identified any witnesses in North Carolina.  (DE

38 *passim*).  Jane Doe identified multiple potential witnesses in Louisiana, including up to two

former Tulane students and six Tulane administrators. <sup>Jane Doe</sup> Decl. ¶¶ 10, 12, 15; *see* Woodley

Aff. ¶¶ 7-8 (DE 29-1).  John Doe    submitted no evidence to refute this showing.  (DE 38

*passim*).  John Doe    complaint is replete with allegations about Jane Doe Title IX

complaint and the resulting investigation, on which Jane Doe contends Louisiana residents have

relevant information.  *See* Am. Compl. ¶¶ 2, 3, 45, 47, 91, 95, 111, 116, 117, 119, 120, 139.

Further, John Doe    is silent (DE 38 at 24-26) as to the location or identity of the witnesses

whom Jane Doe could not identify from their initials, <sup>Jane Doe</sup> Decl. ¶ 13.  John Doe    cannot

rely on his silence as to where the witnesses live to avoid transfer.

John Doe    argument that Jane Doe was required to show that witnesses would

rather travel to Louisiana than North Carolina for trial is unavailing.  (DE 38 at 25-26).

███████████████████████████████████████████

██████████████████████████ .  *See* Fed. R. Civ. P. 45(c)(1)(A); 28 U.S.C § 98(a).

There is no evidence that any non-party witness could be compelled to testify at trial here.

The cases John Doe    cites do not support his argument that Jane Doe was required

to demonstrate that witnesses not compellable to testify here would not choose to travel here.

(*See* DE 38 at 25-26 (citing *Accreditation Comm'n for Health Care, Inc. v. NextLOGIK, Inc.*,

No. 5:20-CV-46-M, 2020 WL 4913280, at *6 (E.D.N.C. Aug. 20, 2020) (rejecting "barebone

assertion that Defendant has non-party witnesses in Maryland"); *Triangle Grading & Paving,

Inc. v. Rhino Servs., LLC*, No. 1:19CV486, 2020 WL 2086188, at *19 (M.D.N.C. Apr. 30, 2020)

(noting that defendant had burden to demonstrate "whether *its* witnesses are willing to travel to a

foreign jurisdiction")).  These cases suggest that courts may consider whether a corporate entity

has demonstrated that its employees will not travel to a foreign jurisdiction.  The cases do not

7

require Jane Doe to contact more than two dozen witnesses not under her control—many

identified only by initials[3]—and ask whether they are willing to travel. Jane Doe identified the

witnesses she could, and their locations to the best of her ability. *See* Jane Doe Decl. ¶¶ 9-13.

With zero non-party witnesses in this district, and multiple witnesses in Louisiana,

witness convenience strongly favors transfer. *See Boyd*, 2011 WL 2413844, at *3.

3.      Transfer will serve the interests of justice.

a.      John Doe          *cannot show that transfer will jeopardize his asserted interest in maintaining anonymity in the Tulane case.*

Transfer would not expose that John Doe is the plaintiff in the Tulane case. *See*

*supra* pp. 3-4. ███████████████████████████████████████████████

███████████████████████████████████████████████ *See supra* p. 4. To

the extent that he has any remaining interest in anonymity in the Tulane case, John Doe

cannot show that his interest should "predominate." (*See* DE 38 at 27).

b.      John Doe          *concedes that Louisiana has a strong relationship to this action.*

John Doe concedes that Louisiana has a "strong" relationship to this case, that the

underlying events occurred in Louisiana, and that his claim for abuse of process involves a

Louisiana court. (*Id.*). These concessions support transfer. (*See* DE 31 at 16-19).

John Doe cannot diminish Louisiana's relationship to this case by arguing that this

Court can apply North Carolina law to his claims unless Jane Doe identifies a specific conflict

between North Carolina and Louisiana law on a specific claim. (DE 38 at 28). That is not the

law. "North Carolina uses the law of the situs test[,]" and the Court must "scrutinize the

---

[3] The Court recognized that "this pervasive anonymity could lead to difficulty and confusion for Jane Doe during discovery." (DE 8 at 6).

8

allegations in the complaint to determine 'where the plaintiff has actually suffered harm.'"

*Waterford I at Cary Park Condo. Homeowners Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, -- F.

Supp. 3d --, 2023 WL 2959868, at *4 (E.D.N.C. 2023) (quotation omitted).  *Information Control*

*Systems, Inc. v. Avesta Technologies, Inc.*, No. 1:99CV217-T, 2000 WL 1409862 (W.D.N.C.

Sept. 6, 2000), does not support John Doe        argument that North Carolina law applies.

(DE 38 at 28).  There, in addressing a contract with a New York choice-of-law provision, the

court found that the substance of New York and North Carolina contract law was identical, and

"there [was] no need to determine what law to apply because no conflict exist[ed]."  *Info.*

*Control*, 2000 WL 1409862, at *3.  *Information Control* did not and could not alter the

established rule that the law of the state where injury occurred applies to tort claims.  *See*

*Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988).

        As Jane Doe showed in her moving brief (DE 31 at 16-18) and in her briefs in support of

her motion to dismiss (DE 28 at 8-9, 11-12, 14-16; DE 49 at 2-7), Louisiana law applies.

Louisiana's interest in this case favors transfer.  (*See* DE 31 at 16-19).

                    c.        *Docket conditions favor transfer.*

        The Eastern District of Louisiana has three times as many active district judges and fewer

recent filings per judgeship than this district.  (DE 31 at 19-20).  John Doe        says that the

median time from filing to disposition of a civil case is 9.9 months here but 68.9 months in the

Eastern District of Louisiana, making that court comparatively more congested.  (DE 38 at 29).[4]

---

[4] The most current data show that the Eastern District of Louisiana's median time from filing to
disposition in civil cases is 24.2 months for the year ending September 30, 2023, and was 69.4
months for the year ending September 30, 2022.  Federal Court Management Statistics, *U.S.
District Courts—Profiles—During the 12-Month Periods Ending September 30, 2018 Through
2023*, https://www.uscourts.gov/statistics/table/na/federal-court-management-
statistics/2023/09/30-1 (last visited January 30, 2024) (DE 51-1).

The time-to-disposition metric depends on cases *ending*, so resolving old cases can skew this metric.  For example, 1,200 cases filed in 2015 and 2016 were dismissed on October 25, 2021, adding 1,200 five- to six-year-old cases to the civil cases disposed in the year ending September 30, 2022.  *See* Dismissal, *In re: Xarelto Prods. Liab. Litig.*, MDL No. 2592, No. 2:14-md-02592-EEF-MBN (E.D. La. Oct. 25, 2021) (DE 51-2).  The termination of old cases does not forecast future congestion.  The-filings-per judgeship metric is the better indicator of future congestion and shows that docket conditions favor transfer.  (DE 31 at 19-20).

        *d.*    ███████████████████████████

    John Doe   admits that some efficiencies can be achieved by transfer ███

███████  (DE 38 at 30). John Doe   posits, however, ███████████████    there is no assurance that rulings would be consistent.  (*Id.*).  But the parties could promote consistency and efficiency ████████████████████████████████

████████████████████   *See* E.D. La. Local Civil Rules 3.1 & 3.2.

    John Doe   says that efficiency cannot be evaluated until Jane Doe provides this Court with information as to whether third-party witnesses are willing to attend depositions in

██████████████  (DE 38 at 31).  But whether the witnesses are willing to travel is not the point.  There are at least twenty-seven people in addition to the parties identified as potential witnesses either in the complaint or in Ms. Woodley's affidavit.  (DE 31 at 13).  Having these witnesses sit for deposition once would conserve the parties' and the witnesses' resources.

## CONCLUSION

    For the reasons stated above and in her moving brief, Jane Doe respectfully requests that the Court transfer this matter to the United States District Court for the Eastern District of Louisiana.

<div align="center">10</div>

This the 31st day of January, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**
Case No. 5:22-CV-00500-D-BM

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff, | ) | [PROPOSED] ORDER |
| | ) | GRANTING PLAINTIFF'S MOTION |
| v. | ) | FOR LEAVE TO FILE DEFENDANT |
| | ) | Jane Doe    REPLY BRIEF IN |
| Jane Doe | ) | SUPPORT OF HER MOTION TO |
| | ) | TRANSFER VENUE (ECF NO. 50) |
| Defendant. | ) | UNDER SEAL AND IN REDACTED |
| | ) | FORM |

A party may file a motion to seal with this Court pursuant to the requirements of Local 79.2. Local Rule 79.2 references Section V.G. of the Electronic Case Filing Administrative Policies and Procedures Manual ("Policy Manual"). That section of the Policy Manual requires that all motions to seal be accompanied by a supporting memorandum that specifies the following:

(i)    the exact document or item, or portions thereof, for which filing under seal is requested;

(ii)   How such request to seal overcomes the common law or the First Amendment presumption to access;

(iii)  The specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access;

(iv)   The reasons why alternatives to sealing are inadequate; and

(v)    Whether there is consent to the motion.

*See* Section V.G., CM/ECF Policy Manual. The Policy Manual also requires that any proposed order accompanying a motion to seal set forth the findings required under Section V.G.

On January 29, 2024, Plaintiff filed a motion for leave to file under seal and in redacted form **ECF No. 50**, which is Defendant Jane Doe    Reply Brief in Support of her Motion to Transfer Venue (the "Defendant's Reply Brief") (the "Motion").

1

An order was issued in an action filed by Plaintiff in a federal district court in another District (the "Second Action") permitting Plaintiff to proceed in that action under a pseudonym. Defendant's Reply Brief contains portions that would provide information about the Second Action. Plaintiff contends that if filed publicly on this Court's ECF system such portions would reveal his identity in the Second Action.

A court considering a motion to maintain documents under seal must first determine the nature of the information and the public's right to access. *See, e.g., Stone v. University of Maryland Medical Systems Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). The common law presumption in favor of access attaches to all judicial records and documents; by contrast, First Amendment protection is limited to certain judicial records and documents, for example those attached to a dispositive motion. *Id.*

The presumption of access under the common law is not absolute and its scope is a matter left to the discretion of the district court. *See, e.g., Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Any presumption of access under the common law " 'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.' " *Washington Post*, 386 F.3d at 575 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988)). The party seeking the sealing of materials is only required to demonstrate the necessity and propriety of sealing the documents at issue; the court, in its discretion, may seal such documents if it deems such sealing appropriate. *Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 680 (E.D.N.C. 2003).

Here, Defendant's Reply Brief was filed in connection with Defendant's motion to

2

transfer venue, a non-dispositive motion. Accordingly, the common law right of access applies to the Court's determination of whether to grant the Motion.

Upon review of the Motion, and in evaluating the balance of interests in public access, the Court, at this time, has not been presented with any legitimate public need for access to the proposed redacted portions of Defendant's Reply Brief. The public has minimal interest in access to the fact that it is Plaintiff and not another Tulane student that filed the Second Action.

The Court finds that balanced against the minimal impact sealing would have on public access to information, Plaintiff's interest in protecting his anonymity in the Second Action by filing an unredacted version of Defendant's Reply Brief under seal is urgent and compelling. The Second Action will involve the disclosure of private, intimate details concerning sexual interactions between Plaintiff and other individuals. *See, e.g., Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593-594 (E.D. Va. 2016) ("what justifies the use of pseudonym here is plaintiff's status as an accused perpetrator of sexual misconduct … he should not have his name forever associated in the public mind with an accusation that carries a significant social stigma"); *Doe v. Univ. of St. Thomas*, No, 16-cv-1127, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("forcing Mr. Doe to proceed under his true name would guarantee a permanent label as a sexual offender, discoverable with a simple Google search"). Moreover, because Plaintiff is challenging a university's Title IX proceeding based on sexual misconduct in the Second Action, Plaintiff faces "potential retaliatory and emotional harm" if his association with that case is exposed. *See, e.g., Doe v. Grinnell College*, No. 4:17-cv-079, 2017 WL 11646145, at *3 (S.D. Iowa July 10, 2017) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)).

In cases such as the Second Action, where students seek to expunge findings of sexual

misconduct from their university records, requiring them to proceed against the universities in their own name would risk causing them the very harm they are seeking to remedy. *See e.g., Doe v. Virginia Polytechnic Inst.*, No. 7:21-CV-378, 2022 WL 972629, at *3-4 (W.D. Va. Mar. 30, 2022) ("Doe is seeking injunctive relief to expunge the allegations of sexual misconduct from his record. If his identity in this lawsuit is disclosed, it will greatly undermine any relief to which he may be entitled."); *Doe v. Univ. of Mississippi*, 2018 WL 1703013, at *2 (Apr. 6, 2018); *Grinnell College*, 2017 WL 11646145, at *3; *Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016).

Further supporting the issuance of an order granting of this Motion are the principles of comity and courtesy between different federal district courts, which militate against the "modifying or invalidating rulings from other [federal district] courts." *Owlet Baby Care, Inc. v. Masimo Corp.*, No. 2:21-MC-00096-TS-JCB, 2021 WL 1753537, at *3 (D. Utah May 4, 2021); *see also Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 1:19CV1193, 2021 WL 7162555, at *3 (M.D.N.C. Mar. 29, 2021) (quoting *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2021 WL 425889, at *1 (D.S.C. Feb. 5, 2021)); *see also, e.g.*, *Santiago v. Honeywell Int'l, Inc.*, No. 16-CIV-25359, 2017 WL 3610599, at *2 (S.D. Fla. Apr. 6, 2017) (denying a motion to modify a protective order issued by another court); *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991). "Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity [and] courtesy[.]" *Tucker*, 191 F.R.D. at 499.

Here, the proposed redacted portions of Defendant's Reply Brief, if made accessible to

the public on this Court's docket, will reveal Plaintiff as the individual who filed the Second Action. The effect of denying the Motion would be to nullify an order issued by the federal district court in which the Second Action is pending designed to protect Plaintiff from harm.

The Court finds that all of these factors supporting this Motion outweigh the public's minimal need or interest in accessing the unredacted version of Defendant's Reply Brief that Plaintiff seeks leave to file under seal. Moreover, in an Order dated January 5, 2023 (ECF No. 8), the Court denied Plaintiff's request to proceed in this action pseudonymously, and the Fourth Circuit has affirmed that ruling (ECF Nos. 21-22). Accordingly, there are no alternative methods to sealing to prevent the exposure of Plaintiff's identity as the plaintiff in the Second Action in the event the proposed redacted portions of Defendant's Reply Brief are filed publicly on this Court's ECF system.

Based upon the foregoing, and for other good cause shown, it is **ORDERED** that **ECF No. 50 filed in this action** shall be filed under seal with this Court in accordance with Local Rule 79.2.

**SO ORDERED** this _____ day of _____, 2024.

_____
JAMES C. DEVER III
United States  District Judge

5

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, a true and correct copy of the foregoing was served via the court's CM/ECF system on all counsel of record.

/s/ *Robert C. Ekstrand*

6

Original Filed at Docket No. 55,

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| John Doe ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:22-CV-00500-D-BM |
| ) | |
| Jane Doe ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE DEFENDANT** Jane Doe **REPLY BRIEF IN SUPPORT OF HER MOTION TO TRANSFER VENUE (ECF NO. 50) UNDER SEAL AND IN REDACTED FORM**

**NESENOFF & MILTENBERG, LLP**
Andrew T. Miltenberg, Esq.
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*

**EKSTRAND AND EKSTRAND, LLP**
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

## INTRODUCTION

Plaintiff John Doe ("Plaintiff") respectfully submits this Memorandum of Law in Support of Plaintiff's motion for leave to file Defendant Jane Doe Reply Brief in Support of her Motion to Transfer Venue (the "Defendant's Reply Brief") (ECF No. 50) under seal and in redacted form.

## ARGUMENT

### THE COURT SHOULD GRANT PLAINTIFF'S MOTION TO SEAL ECF NO. 50

Plaintiff files this Motion for Leave to File Under Seal and in Redacted Form (the "Motion") to preserve his ability to proceed under pseudonym in a separate but related action he has filed in a different federal district court (the "Second Action") pursuant to an order of the federal district judge presiding over that action.

This Court has the authority to seal materials contained in the record. *See, e.g., Stone v. University of Maryland Medical Systems Corp.*, 855 F.2d 178 (4th Cir. 1988). In accordance with *Stone* and the requirements of Local Rule 79.2, a party seeking to have a document under seal must comply with Section V.G. of the CM/ECF Policy Manual. Section V.G. provides that the party seeking the sealing of docketed materials must submit a supporting memorandum that specifies:

(i)     the exact document or item, or portions thereof, for which filing under seal is requested;

(ii)    How such request to seal overcomes the common law or the First Amendment presumption to access;

(iii)    The specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access;

(iv)    The reasons why alternatives to sealing are inadequate; and

(v)    Whether there is consent to the motion.

*See S*ection V.G., CM/ECF Policy Manual.

Plaintiff addresses each of these criteria below.

**A. Defendant Has Not Consented to this Motion**

Defendant does not consent to the filing of the Defendant's Reply Brief under seal.

**B. The Documents (or Portions Thereof) Plaintiff Seeks To File Under Seal: ECF No. 50**

ECF No. 50 is Defendant Jane Doe    Reply Brief in Support of her Motion to Transfer Venue ("Defendant's Reply Brief"). Defendant filed this brief under seal. Plaintiff requests that it remain under seal as the references in the brief to the Second Action could link this action to that litigation. A redacted version of the brief has been filed with this motion. The portions redacted from Defendant's Reply Brief reveal Plaintiff's identity in a separate action against Tulane University in which he has been granted pseudonym protection (the "Second Action").

**C. This Request to Seal Overcomes Any Presumption to Public Access to the Materials at Issue; The Specific Qualities of the Material At Issue Favor Sealing in the Context of a Balancing of Plaintiff's Interests and Harm and the Public's Interest and Harm.**

*1. Applicable Standards*

A court considering a motion to maintain documents under seal must first determine the nature of the information and the public's right to access. *Stone,* 855 F.2d at 180. The common law presumption in favor of access attaches to all judicial records and documents; by contrast, First Amendment protection is limited to certain judicial records and documents, for example those attached to a dispositive motion. *Id.* There is no First Amendment right of access where the documents sought to be sealed are not submitted in support of or opposition to any motion seeking dispositive relief. *See, e.g., Covington v. Semones*, No. 7:06cv00614, 2007 WL 1170644, at *2 (W.D. Va. April 17, 2017) ("In this instance, as the exhibits at issue were filed in connection with a non-dispositive motion, it is clear there is no First Amendment right of access."); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2008 WL 2019648, at *1 (E.D.N.C. May

3

8, 2008) (right of access at issue arose under the common law where documents to be sealed did not pertain to dispositive relief).

The court must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (citations omitted).

2. *Application to the Sealed Document*

Defendants' Reply Brief is a filing related to a non-dispositive motion. Therefore it is not subject to the presumption of public access under the First Amendment, but only that under the common law.

The presumption of access under the common law is not absolute and its scope is a matter left to the discretion of the district court. *See, e.g., Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir.  2004); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Any presumption of access under the common law "'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" *Washington Post*, 386 F.3d at 575 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988)).

The party seeking the sealing of materials is only required to demonstrate the necessity and propriety of sealing the documents at issue; the court, in its discretion, may seal such documents if it deems such sealing appropriate. *See, e.g., Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 680 (E.D.N.C. 2003).

4

The Court may consider several factors to make this determination: "whether the [material is] sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021) (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984); citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–608 (1978)).

Plaintiff submits that to the extent the proposed redacted portions of Defendant's Reply Brief would reveal Plaintiff's identity in the Second Action, they may be sought for improper purposes, including to harass, punish or intimidate him in that they could cause third parties who discover his identity could seek to harass, punish or intimidate. The public has minimal interest in access to the fact that it is Plaintiff and not another Tulane student that filed the Second Action. Even if the public had substantial interest in access to Plaintiff's identity in the Second Action, *it is unclear whether under applicable caselaw the interest of members of the public in circumventing the order of a federal district court permitting a party to proceed anonymously in an action is even cognizable*.[1]

In any event, balanced against the minimal impact the sealing requested here would have on public access to information, ***Plaintiff's interest in protecting his anonymity in the Second Action is both urgent and compelling***. The Second Action involves Plaintiff's sexual conduct. It will involve the disclosure of private, intimate details concerning sexual interactions. *See, e.g., Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593-594 (E.D. Va. 2016) ("what justifies the use of pseudonym here is plaintiff's status as an accused perpetrator of sexual

---

[1] Undersigned counsel has not found any federal caselaw addressing this question.

misconduct … he should not have his name forever associated in the public mind with an accusation that carries a significant social stigma"); *Doe v. Univ. of St. Thomas*, No, 16-cv-1127, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("forcing Mr. Doe to proceed under his true name would guarantee a permanent label as a sexual offender, discoverable with a simple Google search"). Moreover, because he is challenging a university's Title IX proceeding based on sexual misconduct in the Second Action, Plaintiff faces "potential retaliatory and emotional harm" if his association with that case is exposed. *See, e.g., Doe v. Grinnell College*, No. 4:17-cv-079, 2017 WL 11646145, at *3 (S.D. Iowa July 10, 2017) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)).

In cases such as the Second Action, where students seek to expunge findings of sexual misconduct from their university records, requiring them to proceed against the universities in their own name would risk causing them the very harm they are seeking to remedy. *See e.g., Doe v. Virginia Polytechnic Inst.*, No. 7:21-CV-378, 2022 WL 972629, at *3-4 (W.D. Va. Mar. 30, 2022) ("Doe is seeking injunctive relief to expunge the allegations of sexual misconduct from his record. If his identity in this lawsuit is disclosed, it will greatly undermine any relief to which he may be entitled."); *Doe v. Univ. of Mississippi*, 2018 WL 1703013, at *2 (Apr. 6, 2018); *Grinnell College*, 2017 WL 11646145, at *3; *Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016).

***An additional factor should also be considered here: This Court's determination concerning sealing will have a direct impact on the effectiveness of a sister court's protective order*** – the order issued by the judge presiding over the Second Action permitting Plaintiff to proceed therein pseudonymously. If made accessible to the public on this Court's docket, the proposed redacted portions of Defendant's Reply Brief will reveal Plaintiff as the plaintiff in the

6

Second Action. The effect of this would be to nullify the anonymity order issued by the judge presiding over the Second Action to protect Plaintiff from harm.

"[D]istrict courts have relied upon considerations of comity to avoid modifying or invalidating rulings from other courts." *Owlet Baby Care, Inc. v. Masimo Corp.*, No. 2:21-MC-00096-TS-JCB, 2021 WL 1753537, at *3 (D. Utah May 4, 2021). A denial of this Motion would not *expressly* modify the anonymity order issued in the Second Action. Nevertheless, the reasoning employed by federal courts in cases in which they are asked by parties to modify **protective orders issued in other cases** is highly relevant here: "Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity, courtesy, and, where a federal court is asked to take such action with regard to a previously issued state court protective order, federalism." *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000). "When the production of discovery documents would violate a protective order entered in a separate litigation, '[p]rinciples of comity and respect for preexisting judicial orders generally compel the parties to return to the court that issued the existing protective order for any modifications.' " *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 1:19CV1193, 2021 WL 7162555, at *3 (M.D.N.C. Mar. 29, 2021) (quoting *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2021 WL 425889, at *1 (D.S.C. Feb. 5, 2021)); *see also, e.g.*, *Santiago v. Honeywell Int'l, Inc.*, No. 16-CIV-25359, 2017 WL 3610599, at *2 (S.D. Fla. Apr. 6, 2017) (denying a motion to modify a protective order issued by another court); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) (refusing "as a matter of comity" to order production of documents covered by a protective order issued by another court).

These factors supporting this Motion far outweigh the public's minimal need or interest in accessing the proposed redacted portions of Defendant's Reply Brief.

**D.    Necessity of Sealing, Inadequacy of Alternatives**

The Court has previously rejected Plaintiff's request to proceed pseudonymously and the Fourth Circuit affirmed that ruling. Accordingly, there are no alternatives of which undersigned counsel is aware that will prevent the exposure of Plaintiff's identity as the plaintiff in the Second Action in the event the are filed publicly on this Court's ECF system.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant this Motion and signed Plaintiff's Proposed Order to Filed ECF No. 50 in Redacted Form filed concurrently herewith.

Dated:    February 7, 2024

Respectfully Submitted,


By: /s/ *Andrew T. Miltenberg*
     Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue
Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
State Bar No. 2399582
*Attorney for Plaintiff*


By: /s/ Robert C. Ekstrand
     Robert C. Ekstrand
EKSTRAND AND EKSTRAND, LLP
Robert C. Ekstrand, Esq.
N.C. Bar No. 26673
110 Swift Avenue, 2nd Floor Durham, North
Carolina 27705 Tel. (919) 416-4590
rce@ninthstreetlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

8

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Robert C. Ekstrand*

9

Original Filed at Docket No. 56,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-CV-00500-D-BM

John Doe

            Plaintiff,

    v.

Jane Doe

            Defendant.

DEFENDANT Jane Doe
BRIEF IN OPPOSITION TO THIRD
MOTION TO SEAL

## INTRODUCTION

Plaintiff John Doe    asks the Court to seal Jane Doe reply brief in support of her motion to transfer venue because it contains otherwise public information that John Doe contends would identify him as the pseudonymous plaintiff in his case against Tulane.  Because John Doe    own public filings already identify him as the plaintiff in the Tulane case, his motion to seal is properly denied.

## STATEMENT OF RELEVANT FACTS

On December 8, 2022, John Doe    brought this action against Jane Doe alleging that Jane Doe falsely accused him of sexual assault while the two were students at Tulane University, and asserting claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy.  Compl. ¶¶ 92-153 (DE 1). John Doe    did not use his real name in his complaint.  *See id. passim.*  This Court denied John Doe    motion for leave to proceed by pseudonym, and he appealed to the United States Court of Appeals for the Fourth Circuit.  (DE 8, 9).

After the parties briefed the appeal, John Doe    filed a notice of supplemental authority in the Fourth Circuit.  *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16,

2023) (DE 46-1).  In the notice, John Doe    then calling himself "Mr. Doe," identified himself as the plaintiff in another case, and he provided the party names, case number, federal district court, and name of the judge assigned to that case.  *See id.*  John Doe    also attached to the notice an order entered in the other case allowing him to proceed by pseudonym.  *See id.* John Doe    did not ask the Fourth Circuit to seal this supplemental authority.  *See* Docket *passim*, *Doe v. Doe*, No. 23-1058 (4th Cir.).

The Fourth Circuit affirmed this Court's decision and remanded for further proceedings. (DE 22).  John Doe    filed an amended complaint using his real name and thus revealing that the "John Doe" in this case is John Doe    *See* Am. Compl. ¶¶ 92-153 (DE 23). On December 15, 2023, Jane Doe moved to transfer this case to the Eastern District of Louisiana, and to dismiss the complaint in part for failure to state a claim upon which relief can be granted.  (DE 27, 29).  The parties filed various provisionally sealed documents in support of and in opposition to the motion to transfer.  (DE 30, 31, 36, 38).

In the public version of his brief in opposition to the motion to transfer, John Doe redacted some material, but disclosed that he is pursuing an action against Tulane.  (*See* DE 37 at 7 (referring to John Doe    "action against Tulane"); *id.* at 20-23, 26, 30 (referring eight times to either "the Tulane action" or "the Tulane Action")).[1]  In the same publicly filed brief, John Doe    cited and described the notice of supplemental authority he filed with the Fourth Circuit when he appealed this Court's order denying leave to proceed by pseudonym:

> On May 16, 2023, Plaintiff's counsel filed a notice in the Fourth Circuit that Plaintiff was granted pseudonym protection in his action against Tulane (the "Tulane Order").  Appeal Dkt. #40.

---

[1] Jane Doe refers to the CM/ECF pagination when citing a docket entry with a pinpoint citation.

(*Id.* at 7).  John Doe    also identified the appeal docket he was referring to:  "*John Doe v. Jane Doe*, Appeal No. 23-1058 (4th Cir.) (the 'Appeal Dkt.')."  (*Id.*).

John Doe    moved to seal the provisionally sealed documents associated with the motion to transfer, arguing that sealing was necessary to avoid linking this case to another case he brought against Tulane under a pseudonym.  (DE 42, 43).  Jane Doe opposed sealing, arguing that John Doe    had already publicly linked this case to his case against Tulane, such that he could not meet the burden to maintain under seal filings linking the two cases.  (DE 45).

Jane Doe filed her reply brief in support of her motion to transfer provisionally under seal to allow John Doe    the opportunity to move to seal the reply brief for the same reason as the other provisionally sealed filings.  (*See* DE 50).  John Doe    moved to seal the reply brief.  (DE 54).  As shown below, he cannot meet the burden to justify sealing Jane Doe  reply brief when he has already publicly linked this case to the Tulane case.

## ARGUMENT

### John Doe    CANNOT SHOW THAT COUNTERVAILING INTERESTS HEAVILY OUTWEIGH THE PUBLIC INTEREST IN ACCESS TO JUDICIAL RECORDS.

"The common law presumes a right of the public to inspect and copy all judicial records and documents."  *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quotation omitted); *see Universal Underwriters Ins. Co. v. Lallier*, 7:17-CV-30-D, 2019 WL 1085180, at *1 (E.D.N.C. Mar. 6, 2019) (Gates, Mag. J.) (applying common law presumption to documents filed with non-dispositive motion).  The presumption of public access "can be rebutted if countervailing interests heavily outweigh the public interests in access."  *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).  "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption."  *Id.*  "Some of the factors to be weighed in the common law balancing test

3

'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *In re Knight Publ'g Co.*, 743 F.3d 231, 235 (4th Cir. 1984)).  This case does not involve any historical event, but the remaining factors and the presumption of public access warrant denying the motion to seal.

    A.     Jane Doe Does Not Seek the Records for an Improper Purpose.

Contrary to John Doe suggestion, Jane Doe does not seek the records for any improper purpose.  (*See* DE 55 at 5).  Jane Doe does not seek to "harass, punish or intimidate" John Doe (*id.*); rather, she is defending a lawsuit that John Doe brought because Jane Doe reported that he sexually assaulted her.  Jane Doe efforts to ensure that John Doe had an opportunity to ask the Court to consider sealing the documents at issue belie any inference that she is acting for an improper purpose.  (*See* DE 45 at 3, 5-6).

    B.     John Doe Prior Public Disclosure of Information Linking This Case to the Tulane Case—Including His Public Filing of One of the Documents He Seeks to Seal—Warrants Denial of His Motion to Seal.

John Doe cannot show that his interest in protecting his anonymity in the Tulane action is "urgent and compelling," or that the Court's determination on his motion to seal "will have a direct impact on the effectiveness" of the pseudonym order in the Tulane case.  (DE 55 at 6-7).  John Doe notice of supplemental authority identifying him as the plaintiff in the Tulane case is available on the public Fourth Circuit docket in this case.  *See supra* pp. 1-2.  In a public filing in this Court, John Doe expressly cited that public notice of supplemental authority by docket entry number.  (DE 37 at 7).  Sealing Jane Doe reply brief in support of her

4

motion to transfer will not protect John Doe       identity as the plaintiff in the Tulane case

because John Doe    has already disclosed the information necessary for the public to

ascertain that he is the plaintiff in that case.

Courts regularly decline to seal information that is already available to the public.  *See,
e.g.*, *Gonzalez v. Jaddou*, 7:18-CV-135-BO, 2021 WL 3686931, at *3 (E.D.N.C. Aug. 18, 2021)
(recognizing that public availability of information movant sought to seal weighed in favor of
public access); *United States v. Hroub*, No. 5:20-CR-00250-M-2, 2020 WL 3805168, at *3
(E.D.N.C. July 7, 2020) (denying motion to seal information that was already publicly available);
*Griffis v. Duke Energy Progress*, No. 5:19-CV-00119-FL, 2020 WL 8970785, at *2 (E.D.N.C.
Mar. 11, 2020) ("Given that the information in the documents is already publicly available there
is no reason to place them under seal."); *United States v. Thomas*, No. 4:08-CR-00020-BR, 2019
WL 3137561, at *1 (E.D.N.C. July 15, 2019) (declining to seal documents subject to First
Amendment right of access where information was already known to some and "[s]ealing the
subject documents now will not change what is already public knowledge"); *Covington v.
Herbel*, No. 5:09-CT-3176-D, 2011 WL 2269407, at *3 (E.D.N.C. June 7, 2011) (denying
motion to seal where information at issue was available in unsealed filings); *United States v.
Griffith*, No. 5:04-CR-347-2F, 2006 WL 8442701, at *2-3 (E.D.N.C. Aug. 2, 2006) (denying
motion to seal upon finding that public already had access to information movant sought to seal).
For example, when a party seeks to seal a document that it has also filed publicly on the court
docket, courts have denied motions to seal.  *See Eshelman v. Puma Biotechnology, Inc.*, No.
7:16-CV-18-D, 2018 WL 287664, at *2 (E.D.N.C. Jan. 3, 2018) (denying motion to seal
deposition transcript that was also publicly filed); *Capitol Comm'n, Inc. v. Capitol Ministries*,
No. 5:11-CV-00214-BO, 2013 WL 5369421, at *1 (E.D.N.C. Sept. 24, 2013) (denying motion to

seal document where unsealed version was already in the record); *see also Johnson v. City of Fayetteville*, No. 5:12-CV-456-F, 2014 WL 7151147, at \*13 (E.D.N.C. Dec. 11, 2014) (concluding that where "the documents will now appear on the public docket, there appears to be little reason to keep another version sealed on the docket").

Because of John Doe own public filings, a member of the public can readily determine that John Doe is the pseudonymous plaintiff in his case against Tulane. *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (DE 46-1). John Doe has not kept the details needed to link the two cases private, and he cannot show that his alleged interest in privacy outweighs the public's right of access. *See supra* pp. 5-6 (citing cases).

## CONCLUSION

For the reasons stated above, Defendant Jane Doe respectfully requests that the Court deny Plaintiff John Doe motion to seal (DE 54).

6

This the 9th  day of February, 2024.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
kelly.dagger@elliswinters.com
James M. Weiss
N.C. State Bar No. 42386
jamie.weiss@elliswinters.com
Chelsea Pieroni
N.C. State Bar No. 59816
chelsea.pieroni@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Counsel for Defendant* Jane Doe

7

Original Filed at Docket No. 57,

Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-500-D

████████            )
                    )
                    )
            Plaintiff,   )
                    )
    v.              )          ORDER
                    )
████  ,             )
                    )
                    )
            Defendant.   )

On January 17, January 29, and February 7, 2024, plaintiff filed motions to seal [D.E. 42, 48, 54]. Pursuant to 28 U.S.C. § 636(b)(1)(A), the court refers the motions to seal [D.E. 42, 48, 54] to Magistrate Judge Meyers for prompt disposition. See 28 U.S.C. § 636(b)(1)(A).

SO ORDERED. This _1_ day of March, 2024.

JAMES C. DEVER III
United States District Judge

Original Filed at Docket No. 58,
Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-500-D

███████                          )
                                 )
         Plaintiff,              )
                                 )
    v.                           )          **ORDER**
                                 )
███████                          )
                                 )
         Defendant.             )

On December 8, 2022, ███████ ("███████ or "plaintiff") filed a complaint against ███████ ("███ or "defendant") alleging defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy [D.E. 1]. On December 8, 2022, ███████ also filed an ex parte motion for leave to proceed under the pseudonym ███████ [D.E. 5] and filed a memorandum in support [D.E. 6]. On January 5, 2023, the court denied ███████ motion for leave to proceed pseudonymously [D.E. 8]. On January 15, 2023, ███████ appealed [D.E. 9]. On October 26, 2023, the United States Court of Appeals for the Fourth Circuit affirmed this court's judgment [D.E. 21]. See Doe v. Doe, 85 F.4th 206, 208 (4th Cir. 2023).

On November 9, 2023, ███████ filed an amended complaint against ███ alleging defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy [D.E. 23]. On December 15, 2023, ███ moved to dismiss ███████ abuse of process, tortious interference with contract, and civil conspiracy claims [D.E. 27] and filed a memorandum in support [D.E. 28]. On December 15, 2023, ███ also moved to transfer the case to the United States District Court for the Eastern District of Louisiana [D.E.

29] and filed exhibits [D.E. 29-1 to 29-8, 30] and a memorandum in support [D.E. 31]. On January 17, 2024, ███████ responded in opposition to ██████ motions [D.E. 37, 41] and filed exhibits in support [D.E. 35, 36, 38, 39]. On January 31, 2024, ████ replied [D.E. 49, 50]. As explained below, the court grants ██████ motion to transfer and leaves ██████ motion to dismiss pending for the United States District Court for the Eastern District of Louisiana to resolve.

I.

In May 2018, ███████ enrolled at Tulane University ("Tulane"). See Am. Compl. [D.E. 23] ¶ 11. In August 2018, ███████ matriculated at Tulane. See id. ███████ "enrolled in Tulane with the understanding that he would be afforded a fair and equitable educational experience," free from conduct Tulane prohibited in its Code of Student Conduct. Id. at ¶ 13. ████ attended Tulane with ████████ See id. at ¶ 7.

In September 2019, ███████ met Sue Roe ("Roe"). See id. at ¶ 14. From September 2019 to December 2019, ███████ and Roe maintained a "casual sexual relationship." Id. By the end of Tulane's fall 2019 semester, ███████ and Roe "eventually stopped seeing each other," and ███████ "seldom reached out to" Roe. Id.

In January 2020, ███████ and Roe returned to campus but did not often interact with each other. See id. at ¶ 15. ███████ alleges he "felt tension between him and" Roe whenever he saw her, and once, Roe began to cry during a party ███████ also attended. Id. Roe told others about her negative feelings towards ███████ and would "explicitly say she 'hated'" ███████ Id. In spring 2021, ███████ and Roe had a consensual sexual encounter. See id. The pair did not interact with each other again until August 2021. See id.

On August 22, 2021, ███████ and Roe each attended a mutual friend's birthday party. See id. at ¶ 16. ███████ bought Roe a drink, and the pair "ended up spending time together at

2

the party and leaving the bar together." Id. The pair discussed their past relationship, returned to Roe's home, and engaged in consensual sex. See id. Afterwards, ████████ told Roe they "may regret that later," which caused Roe to cry. Id. at ¶ 17. ████████ went to sleep, but Roe asked a housemate to wake ████████ up and ask him to leave. See id. at ¶¶ 17–18. ████████ eventually complied and left Roe's residence. See id. at ¶ 18.

In September 2021, ████████ and ████ "matched" on Tinder. See id. at ¶ 19. On November 20, 2021, ████████ and ████ met and exchanged phone numbers. See id. On January 27, 2022, ████████ and ████ ran into each other at a bar and went to ████████ house. See id. at ¶ 20. The pair "did not engage in sexual intercourse," and ████ left the next morning. Id. Between January 29, 2022, and February 2, 2022, ████████ and ████ met multiple times and engaged in consensual sex. See id. at ¶¶ 21–30.

On February 3, 2022, ████████ went to a bar with some friends and "ran into a woman, 'A.H.', on whom he had a crush." Id. at ¶ 31. ████████ and A.H. eventually left the bar, went to ████████ house, and engaged in consensual sex. See id. ████████ alleges that "████ saw ████████ talking to A.H. at the bar and heard that he and A.H. went home together." Id.

Beginning on February 4, 2022, ████████ alleges ████ began a campaign to disseminate false allegations about him. See id. at ¶ 32. On February 4, 2022, ████ told one of ████████ friends, T.R., that ████████ "engaged in nonconsensual activity." Id. By February 6, 2022, "false rumors had begun spreading around" Tulane that ████████ sexually assaulted a female student. Id. at ¶ 33. Other Tulane students told ████████ about the rumors and social media posts. See id. at ¶¶ 33–35. ████████ later learned that on February 6, 2022, ████ reported her allegations against ████████ to Tulane's University Case Management and Victim Support Services. See id. at ¶ 46. On February 8, 2022, ████████ received a text message from ████

3

in which she accused ▮▮▮▮▮ of sexually assaulting her and called ▮▮▮▮▮ a "predator and a repeat offender." Id. at ¶ 37.

On February 10, 2022, ▮▮▮▮▮ fraternity kicked him out of its group chat. See id. at ¶ 44. On February 11, 2022, ▮▮▮▮▮ withdrew from Tulane. See id. at ¶ 45. On February 11, 2022, Roe and ▮▮▮ "simultaneously submitted Title IX / Sexual Misconduct reports [to Tulane] naming ▮▮▮▮▮ as the respondent." Id. at ¶ 47. Roe and ▮▮▮ both "reported having consensual sex with ▮▮▮▮▮ falling asleep, and waking up to him engaging in sexual activity." Id. On February 16, 2022, Tulane's Director of Student Conduct, Christopher Zacharda ("Zacharda"), told ▮▮▮▮▮ that the Office of Student Conduct received information that ▮▮▮▮▮ may have violated the Tulane University Code of Conduct and charged ▮▮▮▮▮ with sexual assault. See id. at ¶ 48. The Office of Student Conduct told ▮▮▮▮▮ and ▮▮▮ that it would begin investigating ▮▮▮▮▮ allegations and reminded them that the Student Code of Conduct "prohibits making false statements and/or knowingly providing false information" during the investigation. Id. at ¶¶ 48–49.

On February 16, 2022, Jacqueline Barber ("Barber") interviewed ▮▮▮ and Roe. See id. at ¶¶ 50–51. ▮▮▮▮▮ alleges that during ▮▮▮▮▮ interview, ▮▮▮ made numerous false statements to Barber. See id. at ¶¶ 50–53, 55–67. ▮▮▮▮▮ also alleges ▮▮▮ doctored evidence that she gave to Barber. See id. at ¶¶ 68–76. On February 18, 2022, Zacharda told ▮▮▮▮▮ he was banned from Tulane's campus, effective immediately. See id. at ¶ 54.

On March 16, 2022, ▮▮▮ filed for a temporary restraining order ("TRO") against ▮▮▮▮▮ in Louisiana civil court. See id. at ¶ 87. ▮▮▮▮▮ alleges ▮▮▮ supported her TRO motion with false allegations. See id. at ¶¶ 87–88. On March 24, 2022, ▮▮▮▮▮ flew to New Orleans to seek dismissal of the TRO. See id. at ¶ 89. ▮▮▮ did not attend the court hearing, and

4

the court dismissed ███████ motion for a TRO. See id. On May 8, 2022, Tulane found ███████ "responsible of the charge of sexual assault" and dismissed ███████ from the University less than one month before his scheduled graduation. Id. at ¶ 90. On April 24, 2023, ███████ sued Tulane in the United States District Court for the Eastern District of Louisiana for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, and breach of contract. See [D.E. 30-1]. That lawsuit remains pending.

## II.

## A.

███████ argues judicial estoppel bars ███████ from seeking transfer. See [D.E. 38] 20–23. ███████ disagrees. See [D.E. 50] 1–4.

Judicial estoppel "precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996) (quotation omitted). The doctrine prevents "a party from playing fast and loose with the courts, and . . . protect[s] the essential integrity of the judicial process." Id. (quotation omitted); see John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28–29 (4th Cir. 1995); Oudeh v. Goshen Med. Ctr., Inc., No. 5:22-CV-193, 2022 WL 18028281, at *6 (E.D.N.C. Dec. 29, 2022) (unpublished). Judicial estoppel applies when:

> (1) the party to be estopped . . . advanc[es] an assertion that is inconsistent with a position taken during previous litigation; (2) the position [is] one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.

Folio v. City of Clarksburg, 134 F.3d 1211, 1217–18 (4th Cir. 1998); see Lowery, 92 F.3d at 224; Oudeh, 2022 WL 18028281, at *6; Cannon v. Wal-Mart Assocs., Inc., No. 5:19-CV-373, 2021 WL 4164075, at *8 (E.D.N.C. Sept. 10, 2021) (unpublished). Judicial estoppel also applies when

5

a party prevails in one phase of a case on an assertion and then relies on a contradictory assertion to prevail in another phase of the same case. See Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000).

As for the first two elements, ███████ contends that ████ present position "that this action arises out of the same set of operative facts" as ████████ Title IX case in the Eastern District of Louisiana conflicts "with her position in the Fourth Circuit." [D.E. 38] 21. ███████ argues that when he appealed this court's denial of his motion to proceed pseudonymously, ████ factually distinguished this case from ████████ Title IX case by citing the different parties involved and ████████ different claims. See id. at 21–22; see also Doe, 85 F.4th at 217 (rejecting ████████ "central argument on appeal . . . that his case centers around a confidential Title IX proceeding so it is different than the garden variety defamation case" (cleaned up)). ████████ contends that ████ implicitly argued on appeal "that this action is not related to an action against Tulane such that ████ could, or would, seek transfer and consolidation of the two actions." [D.E. 38] 22 (emphasis in original). ████ responds that "her position on the distinctions between a defamation case and a Title IX case against a university was a legal" position, not a factual assertion. [D.E. 50] 2.

████████ argument may be relevant if ████ seeks to consolidate the two actions in the Eastern District of Louisiana. Cf. [D.E. 31] 11 ("[T]ransfer would permit consolidation of those cases for discovery, promoting judicial economy."). ████████ however, does not clarify how ████ arguments concerning the relatedness of the two cases forecloses her transfer request. Moreover, when considering ████ motion to transfer, the court considers (1) whether this action could have been brought in the Eastern District of Louisiana, (2) the weight given to ████████ choice of forum, (3) witness convenience and access, (4) convenience of the parties, and (5) the

interest of justice. Although ▮▮▮ asserts that ▮▮▮▮▮▮ "two cases arise out of the same set of operative facts," [D.E. 31] 1, ▮▮▮▮ makes that assertion as part of her argument that the interest of justice favors transfer. See id. at 15–16, 21–22. Accordingly, the court rejects ▮▮▮▮▮ argument that judicial estoppel bars ▮▮▮▮ motion to transfer.

Alternatively, ▮▮▮▮ position on appeal that ▮▮▮▮▮ cites to invoke judicial estoppel was a legal position, not a factual assertion. On appeal, ▮▮▮ asserted, inter alia, that: (1) ▮▮▮▮▮▮ "did not sue his university" in this action; (2) ▮▮▮▮▮▮ "is not challenging the result of the university disciplinary proceeding" in this action; (3) ▮▮▮▮▮▮ "does not seek to expunge his disciplinary record" in this action; (4) ▮▮▮▮▮ "sued an individual who accused him of sexual assault, alleging defamation and other claims" in this action; and (5) ▮▮▮▮▮ "seeks money damages for injuries of a public nature" in this action. [D.E. 35-2] 23–24; see also id. at 54–59. ▮▮▮▮ does not contradict these factual assertions in her motion to transfer. Cf. [D.E. 31] 15–16, 21–22.[1] Thus, this action differs from mine-run judicial estoppel cases in which a party asserts directly contradictory facts. See, e.g., Hamilton v. Dayco Prods., LLC, C.A. No. 2:07-2781, 2009 WL 335062, at *6–10 (D.S.C. Feb. 10, 2009) (unpublished) (applying judicial estoppel to bar a plaintiff from claiming that she was capable of working at the time of her termination when she had previously asserted repeatedly that she was unable to perform the responsibilities of her job). Accordingly, judicial estoppel does not bar ▮▮▮▮ from seeking a transfer. See, e.g., Scott

---

[1] Indeed, it is not even clear that ▮▮▮▮ legal conclusions contradict each other. On appeal, ▮▮▮ argued that ▮▮▮▮▮ failed justify his use of a pseudonym as a matter of law. See [D.E. 35-2] 23, 53–54. Here, ▮▮▮ relies on additional overlapping facts to argue that transfer is warranted under governing law. See [D.E. 31] 15–16, 21–22. Both can be true because the governing standards differ. Compare Doe v. Pub. Citizen, 749 F.3d 246, 273–74 (4th Cir. 2014), with Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29–30 (1988).

v. Fam. Dollar Stores, Inc., 733 F.3d 105, 118 (4th Cir. 2013). Thus, the court addresses ▮▮▮▮▮ motion to transfer.

<div align="center">B.</div>

▮▮▮▮ moves to transfer this case to the United States District Court for the Eastern District of Louisiana. See [D.E. 29]. ▮▮▮▮▮▮ opposes a transfer. See [D.E. 37].

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). In analyzing a motion to transfer, the court initially determines whether the action could have been brought in the proposed transferee district. See, e.g., Szulik v. TAG V.I., Inc., 858 F. Supp. 2d 532, 547 (E.D.N.C. 2012) (collecting cases). If so, the court must then decide whether to transfer venue. See id.

To determine whether an action could have been brought in the transferee forum, a court must find that personal jurisdiction and venue would have been proper in the proposed transferee district had the plaintiff filed there. See, e.g., Hoffman v. Blaski, 363 U.S. 335, 340–44 (1960). Personal jurisdiction over ▮▮▮▮ would have been proper in the Eastern District of Louisiana based on ▮▮▮▮ contacts with that district. Venue also would have been proper in the Eastern District of Louisiana because a substantial part of the events giving rise to ▮▮▮▮▮ claims arose in that district. See Am. Compl. ¶¶ 11–91; 28 U.S.C. § 1391(b)(2); cf. [D.E. 31] 7, 8–9. Therefore, ▮▮▮▮▮▮ could have brought this action in the Eastern District of Louisiana.

Next, the court must decide whether to transfer venue. See Szulik, 858 F. Supp. 2d at 548; Dacar v. Saybolt LP, No. 7:10-CV-12, 2011 WL 223877, at *2 (E.D.N.C. Jan. 24, 2011) (unpublished); Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007). A district court must "consider four factors when deciding whether to transfer venue:  (1) the weight

<div align="center">8</div>

accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).[2] In balancing these factors, a district court has substantial discretion to decide whether to transfer venue. See Stewart Org., Inc., 487 U.S. at 29; Brock v. Entre Comput. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 493 (E.D.N.C. 2006). "As a court considers [these] factors, it is mindful that the ultimate decision of whether transfer is appropriate is not reached by cataloguing the weighted result of each factor, but rather is within the art of judging." Golden Corral Franchising Sys., Inc. v. GC of Vineland, LLC, No. 5:19-CV-255, 2020 WL 1312863, at *2 (E.D.N.C. Mar. 17, 2020) (unpublished) (quotation omitted).

As for the first factor, a "plaintiff's choice of forum is generally accorded great weight unless the interests of justice weigh heavily in favor of a transfer." Bannister v. Wal-Mart Stores E., L.P., 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012). Courts, however, give deference to the plaintiff's choice of forum that "is proportionate to the relationship between the forum and the cause of action." Id.; see Boyd v. Koch Foods, No. 5:10-CV-349, 2011 WL 2413844, at *2 (E.D.N.C. June 10, 2011) (unpublished); Parham v. Weave Corp., 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004). █████████ is a resident of South Carolina who, at all relevant times, "was a student at Tulane University in Louisiana." Am. Compl. ¶ 6. ██████ resided in North Carolina when █████████ filed this action, but she now resides in Colorado. Compare id. at ¶ 7, with [D.E. 31] 12. █████████ alleges conduct that occurred in the Eastern District of Louisiana when

---

[2] Courts in this district have described the test in terms of eleven more-specific factors rather than four more-general factors, but the analysis remains essentially the same. See Szulik, 858 F. Supp. 2d at 548; Dacar, 2011 WL 223877, at *3; Charles v. Bradley, No. 5:08-CV-124, 2009 WL 1076771, at *2 (E.D.N.C. Apr. 21, 2009) (unpublished).

9

████████ and ████ attended Tulane University. See Am. Compl. ¶¶ 6, 7, 11–76. Thus, this factor weighs against transfer. The court, however, gives this factor little weight in light of the tenuous relationship between the Eastern District of North Carolina and ████████ causes of action. See, e.g., Bannister, 843 F. Supp. 2d at 615.

The second factor concerns accessibility of evidence and witnesses. The Eastern District of Louisiana would be more convenient for potential non-party witnesses because they all share a connection to Tulane where the alleged events took place. Cf. BR Tank, LLC v. Holcim (US) Inc., Civ. No. 09-2110, 2009 WL 3831379, at *3 (S.D. Tex. Nov. 12, 2009) (unpublished). No potential non-party witnesses reside in or have any connection to the Eastern District of North Carolina. See [D.E. 31] 12–14; [D.E. 38] 25. Moreover, transfer to the Eastern District of Louisiana would facilitate access to evidence that remains at Tulane, such as records of ████ statements about ████████ during Tulane's Title IX investigation. See, e.g., Am. Compl. ¶¶ 47–49. The parties have not cited any potential evidence in the Eastern District of North Carolina.

The second factor also encompasses the availability of compulsory processes for witnesses and evidence. Thus, ████ "must identify the specific non-party witnesses, demonstrate whether those witnesses are willing to travel to a foreign jurisdiction, and proffer details concerning the materiality of any non-party testimony." Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc., No. 5:20-CV-46, 2020 WL 4913280, at *6 (E.D.N.C. Aug. 20, 2020) (unpublished) (cleaned up); see Siemens Energy, Inc. v. CSX Transp., Inc., Civ. No. 15-1072, 2016 WL 1059261, at *5 (D. Md. Mar. 17, 2016) (unpublished); IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 623–24 (M.D.N.C. 2012); Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 634–35 (E.D. Va. 2006).

10

████ contends several potential witnesses reside in Louisiana, including Tulane officials who investigated ████████ See [D.E. 31] 12–14. ████ also contends ████████ fails to identify any witnesses who reside in North Carolina. See id. ████████ responds that non-party witnesses reside in New York, Illinois, and Louisiana. See [D.E. 38] 25. ████████ also contends that ████ fails to meet her burden to show that these non-party witnesses would be unwilling to voluntarily testify in North Carolina. See id. at 25–26.

████ fails to demonstrate that any non-party witnesses who reside outside the Eastern District of North Carolina would decline to voluntarily travel to this district. See [D.E. 31] 12–14. ████████ however, concedes that at least one potential non-party witness would be subject to compulsory process in the Eastern District of Louisiana. See [D.E. 38] 25. No potential witnesses mentioned by either party would be subject to compulsory process in the Eastern District of North Carolina. Thus, the second factor slightly favors transfer in light of witness convenience and access to evidence. See, e.g., Hubbard v. Eitan Grp. N. Am., 669 F. Supp. 3d 538, 551 (E.D.N.C. 2023).

As for the third factor, the parties do not currently reside in either the Eastern District of North Carolina or the Eastern District of Louisiana. See Am. Compl. ¶ 6; [D.E. 31] 12; [D.E. 38] 9. The distance from Louisiana to ████████ residence, relative to the distance from North Carolina to ████████ residence, weighs against transfer. See, e.g., D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 783 (D. Md. 2009). Louisiana, however, is closer to ████ current residence in Colorado, and ████████ has a pending case in the Eastern District of Louisiana. Thus, this factor slightly weighs in favor of transfer. Cf. id.

The fourth factor concerns the interest of justice. The interest of justice implicates "the relative congestion of the transferee and transferor courts, the particular interest a forum may have

11

in deciding a case, and the preference for judicial efficiency and consistency." Cherry Tree Farms, LLC v. Runyan, No. 2:16-CV-60, 2016 WL 7436082, at *5 (E.D.N.C. Dec. 21, 2016) (unpublished). "The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum." D2L Ltd., 671 F. Supp. 2d at 783 & n.21–22 (collecting cases).

As for relative docket congestion, the Eastern District of Louisiana is less congested than the Eastern District of North Carolina. As of December 31, 2023, the Eastern District of North Carolina had 992 weighted filings per judge, whereas the Eastern District of Louisiana had 717 weighted filings per judge. See United States Courts, Federal Court Management Statistics, December 2023, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2023 (last visited Mar. 27, 2024). The median time, however, between the filing of a civil action and its disposition is 11.5 months in the Eastern District of Louisiana, compared to 8.1 months in the Eastern District of North Carolina. See id. Moreover, the Eastern District of North Carolina is being inundated with actions under the Camp Lejeune Justice Act and that inundation is not expected to end soon. Thus, the relative congestion of the two forum courts slightly favors transfer. See, e.g., Cherry Tree Farms, LLC, 2016 WL 7436082, at *5.

As for the local interest in this case, "litigation should take place in the federal judicial district or division with the closest relationship to the operative events." Speed Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008). The local interest is much greater in the Eastern District of Louisiana. ▆▆▆▆ and ▆▆ were students at Tulane University at all relevant times. See Am. Compl. ¶¶ 6–7. ▆▆▆▆ alleged conduct underlying ▆▆▆▆ complaint took place in the Eastern District of Louisiana and allegedly injured ▆▆▆▆ in that district. See id. at ¶¶ 11–91. ▆▆▆▆ alleges ▆▆ abused the process of Louisiana's civil courts and Tulane's Title IX process, which presents a uniquely Louisianan

12

concern. See id. at ¶¶ 111, 116. Louisiana law applies to most of ████████ claims. See

Ferrante v. Westin St. John Hotel Co., 559 F. Supp. 3d 492, 504 (E.D.N.C. 2020) (describing North

Carolina choice-of-law rules).[3] "While . . . federal courts in general[] are adept at applying the

law of various states, Louisiana law is unique among jurisdictions—due to its civil law origins."

Troutman v. Cooper Tire & Rubber Co., Civ. No. 09-4084, 2010 WL 10950559, at *2 (W.D. Ark.

Apr. 15, 2010) (unpublished). Thus, this factor weighs "heavily in favor of Louisiana." Sallyport

Glob. Servs., Ltd. v. Arkel Int'l, LLC, 78 F. Supp. 3d 369, 375 (D.D.C. 2015); see, e.g., Troutman,

2010 WL 10950559, at *2.

As for judicial efficiency and consistency, ████████ concedes that "some efficiencies

would be achieved by the transfer and consolidation sought by" ████ [D.E. 38] 30. ████████

however, contends that these efficiencies do not overcome the "[f]undamental [u]nfairness" of

exposing ████████ identity in his Title IX action. Id.; see id. at 27 (arguing "[t]he disclosure

of Plaintiff's identity in the Tulane action would be particularly unjust"). ████ responds that

"████████ identity is already public because he chose to pursue this case, and he is already

linked to the Tulane case because of his own public filing." [D.E. 50] 8; see [D.E. 46-1]

████████ filing in the Fourth Circuit that links this action with his Title IX action).

The court agrees with ████ Moreover, ████████ does not cite, and the court has not

located, any cases in which a party successfully opposed transfer because transfer might destroy

---

[3] ████████ contends that South Carolina law applies to his tortious interference with a contract claim because he resided in South Carolina when Tulane dismissed him from the university. See [D.E. 41] 26–28. The court need not decide whether Louisiana or South Carolina law applies to this claim. Even if South Carolina law applies to ████████ tortious interference with contract claim, the claim would not favor or oppose transfer from North Carolina to Louisiana. Louisiana law applies to ████████ remaining claims. Thus, on balance, this factor still weighs in favor of transfer to the Eastern District of Louisiana.

13

anonymity in another case in the transferee district.  Accordingly, the court rejects ████████ argument, and the court grants ██████ motion to transfer.

On January 17, 2024, ████████ moved to seal ██████ memorandum in support of her motion to transfer and several exhibits.  See [D.E. 42].  On January 22, 2024, ██████ responded in opposition but consented to redacting ████████ phone number from [D.E. 36-1] and sealing that document.  See [D.E. 45] 10.  On January 29, 2024, ████████ moved to seal two exhibits that ████ filed with her response in opposition to ████████ first motion to seal.  See [D.E. 48].  On February 1, 2024, ████ responded in opposition.  See [D.E. 53].  On February 7, 2024, ████████ moved to seal an unredacted version of ██████ reply in support of her motion to transfer.  See [D.E. 54].  On February 9, 2024, ████ responded in opposition.  See [D.E. 56].

The court has reviewed the motions under the governing standard.  See, e.g., Gonzalez v. Cuccinelli, 985 F.3d 357, 376–77 (4th Cir. 2021); Doe, 749 F.3d at 272–73.  The court grants in part ████████ motion to redact his phone number from the unredacted version of ██████ petition for a restraining order and to seal the remainder of ██████ petition.  See [D.E. 45] 10; see also [D.E. 36-1] (██████ petition).  For the reasons stated in ██████ memoranda in opposition, the court denies the remainder of ████████ motions.

## III.

In sum, the court GRANTS IN PART plaintiff's motion to seal [D.E. 42], REDACTS plaintiff's phone number from and SEALS [D.E. 36-1], DENIES plaintiff's motions to seal [D.E. 48, 54], GRANTS defendant's motion to transfer venue [D.E. 29], and TRANSFERS this action to the United States District Court for the Eastern District of Louisiana.  Defendant's motion to dismiss [D.E. 27] remains pending for resolution in the Eastern District of Louisiana.

14

SO ORDERED. This _17_ day of March, 2024.

_/s/ J. Dever_

JAMES C. DEVER III
United States District Judge

15

# U.S. District Court
## EASTERN DISTRICT OF NORTH CAROLINA (Western Division)
## CIVIL DOCKET FOR CASE #: 5:22−cv−00500−D−BM

| Original Filed at Docket No. |
| --- |
| 59, Sealed by Court Order |

John Doe  v. <sup></sup> Jane Doe

Assigned to: District Judge James C. Dever, III
Referred to: Magistrate Judge Brian S. Meyers
 Case in other court:   USCA, 23−01058
Cause: 28:1332 Diversity−Libel,Assault,Slander

Date Filed: 12/08/2022
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: Diversity

**Plaintiff**

John Doe

represented by **Kara L. Gorycki**
Nesenoff & Miltenberg, LLP
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, 5th floor
New York, NY 10001
212−736−4500
Email: kgorycki@nmllplaw.com
*ATTORNEY TO BE NOTICED*

**Andrew T. Miltenberg**
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, 5th Floor
New York, NY 10001
212−736−4500
Fax: 212−736−2260
Email: amiltenberg@nmllplaw.com
*ATTORNEY TO BE NOTICED*

**Robert C. Ekstrand**
Ekstrand & Ekstrand, LLP
110 Swift Ave., 2nd Floor
Durham, NC 27705
919−416−4590
Fax: 416−4591
Email: rce@ninthstreetlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

Jane Doe

represented by **Chelsea Pieroni**
Ellis & Winters LLP
4131 Parklake Avenue,
Suite 400
Raleigh, NC 27612
919−719−0569
Fax: 919−865−7010
Email: chelsea.pieroni@elliswinters.com
*LEAD ATTORNEY*

ATTORNEY TO BE NOTICED

**James Michael Weiss**
Ellis & Winters LLP
4131 Parklake Avenue,
Suite 400
Raleigh, NC 27612
919–865–7000
Fax: 919–865–7010
Email: james.weiss@elliswinters.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelly Margolis Dagger**
Ellis & Winters, LLP
P.O. Box 33550
Raleigh, NC 27636
919–573–1292
Fax: 919–865–7010
Email: kelly.dagger@elliswinters.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/08/2022 | Ï 1 | **COMPLAINT** against Jane Doe ( Filing fee $ 402 receipt number ANCEDC–6857958.), filed by John Doe. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons) (Ekstrand, Robert) (Entered: 12/08/2022) |
| 12/08/2022 | Ï 2 | Notice of Appearance filed by Robert C. Ekstrand on behalf of John Doe. (Ekstrand, Robert) (Entered: 12/08/2022) |
| 12/08/2022 | Ï 3 | Notice of Special Appearance for non–district by Robert C. Ekstrand on behalf of John Doe. (Ekstrand, Robert) (Entered: 12/08/2022) |
| 12/08/2022 | Ï 4 | Financial Disclosure Statement by John Doe (Ekstrand, Robert) (Entered: 12/08/2022) |
| 12/08/2022 | Ï 5 | EX PARTE MOTION by John Doe *for Leave to Proceed under a Pseudonym.* (Attachments: # 1 Proposed Order) (Ekstrand, Robert) (Entered: 12/08/2022) |
| 12/08/2022 | Ï 6 | Memorandum in Support regarding 5 EX PARTE MOTION by John Doe *for Leave to Proceed under a Pseudonym* filed by John Doe. (Ekstrand, Robert) (Entered: 12/08/2022) |
| 12/09/2022 | Ï | NOTICE OF DEFICIENCY regarding 3 Notice of Special Appearance. Notice of Special Appearance. Pursuant to Local Rule 83.1(e)(1), the Special Appearance Attorney must complete the "electronic filing attorney registration form" and comply with Section IV.D of the Policy Manual. Once Counsel receives their login and password, they must file their notice of special appearance so that they will be added to the docket and be able to receive notices of electronic filing "NEF's". (Rudd, D.) (Entered: 12/09/2022) |
| 12/14/2022 | Ï | Motion Submitted to District Judge Terrence W. Boyle regarding 5 EX PARTE MOTION by John Doe *for Leave to Proceed under a Pseudonym.* (Reznick, Debra) (Entered: 12/14/2022) |
| 12/15/2022 | Ï 7 | Notice filed by John Doe regarding 3 Notice of Special Appearance *Attachment: Electronic Filing Attorney Registration Form signed by Andrew T. Miltenberg, Esq.* (Ekstrand, Robert) (Entered: 12/15/2022) |

| 12/15/2022 | Ï | Notice to Counsel regarding: 7 Notice regarding 3 Notice of Special Appearance Attachment: Electronic Filing Attorney Registration Form signed by Andrew T. Miltenberg, Esq. Each attorney must file his or her own notice of appearance or notice of special appearance. The CM/ECF electronic filing and docketing system does not recognize filings made on behalf of other attorneys for purposes of appearing on the court's docket. (Stouch, L.) (Entered: 12/15/2022) |
|---|---|---|
| 12/20/2022 | Ï | TEXT ORDER REASSIGNING CASE. At the direction of the Court and for the continued efficient administration of justice, this case is reassigned to United States District Judge James C. Dever III for all further proceedings. United States District Judge Terrence W. Boyle is no longer assigned to the case. All future filings should reflect the revised case number of 5:22–CV–500–D–BM. Signed by Peter A. Moore, Jr., Clerk of Court on 12/20/2022. (Hockaday, A.) (Entered: 12/20/2022) |
| 12/20/2022 | Ï | Notice to Counsel regarding: 7 Notice – other. This document needs to be mailed to the address on the form with an original signature of the attorney registering. Once the form has been processed, then the registering attorney will need to file their Notice of Special Appearance on the docket. (Sellers, N.) (Entered: 12/20/2022) |
| 01/05/2023 | Ï 8 | ORDER Ex Parte denying 5 Ex Parte Motion. Plaintiff may file an amended complaint using his real name by January 30, 2023. Alternatively, by January 30, 2023, plaintiff may file a Rule 41 notice of dismissal. If plaintiff fails to take either of these actions by January 30, 2023, the clerk SHALL close the case without further order of the court. Signed by District Judge James C. Dever III on 1/5/2023. (Sellers, N.) (Entered: 01/05/2023) |
| 01/15/2023 | Ï 9 | Notice of Interlocutory Appeal filed by John Doe as to 8 Order on Ex Parte Motion,. Filing fee, receipt number ANCEDC–6900902. (Ekstrand, Robert) (Entered: 01/15/2023) |
| 01/17/2023 | Ï 10 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals regarding 9 Notice of Interlocutory Appeal. (Foell, S.) (Entered: 01/17/2023) |
| 01/18/2023 | Ï 11 | US Court of Appeals Case Number 23–1058 (Emily Borneisen, Case Manager) as to 9 Notice of Interlocutory Appeal filed by John Doe. (Foell, S.) (Entered: 01/18/2023) |
| 01/19/2023 | Ï 12 | MOTION to Stay by John Doe *Letter–Motion to stay the court's order [ECF No. 8] requiring Plaintiff to file an amended complaint under his legal name, until the Court of Appeals rules on Plaintiffs appeal*. (Ekstrand, Robert) Modified on 1/20/2023 – to change motion type selected. (Sellers, N.) (Entered: 01/19/2023) |
| 01/20/2023 | Ï | Notice to Counsel regarding: 12 Motion to Stay. Pursuant to Local Civil Rule 7.1(b)(3) and Section V(I)(3) of the CM/ECF Policy and Procedures Manual and Judge Dever's practice preferences, parties must file a proposed order with any non–dispositive motion. Please file a proposed order using the event 'Proposed Order' in the Responses and Replies category and link it back to the motion to which it corresponds. (Sellers, N.) (Entered: 01/20/2023) |
| 01/20/2023 | Ï 13 | Proposed Order regarding 12 MOTION to Stay by John Doe *Letter–Motion to stay the court's order [ECF No. 8] requiring Plaintiff to file an amended complaint under his legal name, until the Court of Appeals rules on Plaintiffs appeal* filed by John Doe. (Ekstrand, Robert) (Entered: 01/20/2023) |
| 01/20/2023 | Ï | Motion Submitted to District Judge James C. Dever III regarding 12 MOTION to Stay. (Sellers, N.) (Entered: 01/20/2023) |
| 01/24/2023 | Ï 14 | ORDER granting 12 Motion to Stay. The portion of the Order (ECF No. 8) requiring Plaintiff to file an amended complaint under his legal name shall beSTAYED until the Court of Appeals rules on Plaintiff's appeal. Signed by District Judge James C. Dever III on 1/24/2023. (Sellers, N.) (Entered: 01/24/2023) |
| 01/25/2023 | Ï | |

| | | Notification to Appeals Court of Filing regarding 14 Order on Motion to Stay. (Foell, S.) (Entered: 01/25/2023) |
|---|---|---|
| 02/24/2023 | Ï 15 | Notice of Appearance filed by Kelly Margolis Dagger on behalf of Jane Doe. (Dagger, Kelly) (Entered: 02/24/2023) |
| 02/24/2023 | Ï 16 | Financial Disclosure Statement by Jane Doe (Dagger, Kelly) (Entered: 02/24/2023) |
| 02/24/2023 | Ï 17 | Notice of Appearance filed by James Michael Weiss on behalf of Jane Doe. (Weiss, James) (Entered: 02/24/2023) |
| 03/03/2023 | Ï 18 | Waiver of Service Returned Executed filed by John Doe. Jane Doe waiver sent on 1/26/2023, answer due 3/27/2023. (Miltenberg, Andrew) (Entered: 03/03/2023) |
| 03/23/2023 | Ï 19 | MOTION for Extension of Time to File Answer regarding 1 Complaint *Until the Later of 14 Days After Stay Is Lifted (DE 14), or 14 Days After Amended Complaint Is Filed* filed by Jane Doe. (Attachments: # 1 Text of Proposed Order Granting Motion for Extension of Time) (Dagger, Kelly) (Entered: 03/23/2023) |
| 03/24/2023 | Ï | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding 19 MOTION for Extension of Time to File Answer regarding 1 Complaint *Until the Later of 14 Days After Stay Is Lifted (DE 14), or 14 Days After Amended Complaint Is Filed*. (Mann, Stephanie) (Entered: 03/24/2023) |
| 03/27/2023 | Ï | Motion No Longer Referred: 19 MOTION for Extension of Time to File Answer regarding 1 Complaint *Until the Later of 14 Days After Stay Is Lifted (DE 14), or 14 Days After Amended Complaint Is Filed* (Mann, Stephanie) (Entered: 03/27/2023) |
| 03/27/2023 | Ï | Motion Submitted to District Judge James C. Dever III regarding 19 MOTION for Extension of Time to File Answer regarding 1 Complaint *Until the Later of 14 Days After Stay Is Lifted (DE 14), or 14 Days After Amended Complaint Is Filed*. (Mann, Stephanie) (Entered: 03/27/2023) |
| 03/27/2023 | Ï 20 | ORDER – The deadline for Defendant to respond to the complaint shall be extended until the later of fourteen days after the Court lifts its order granting Plaintiff John Doe's motion to stay (D.E. 14), or fourteen days after Mr. Doe files an amended complaint as directed in the Court's order denying Mr. Doe's motion for leave to proceed under a pseudonym (D.E. 8). Signed by District Judge James C. Dever III on 3/27/2023. (Mann, Stephanie) (Entered: 03/27/2023) |
| 10/26/2023 | Ï 21 | Published Opinion from Fourth Circuit Court of Appeals. Affirmed. (Foell, S.) (Entered: 10/26/2023) |
| 10/26/2023 | Ï 22 | US Court of Appeals Judgment as to 9 Notice of Interlocutory Appeal filed by John Doe. (Foell, S.) (Entered: 10/26/2023) |
| 11/09/2023 | Ï 23 | AMENDED COMPLAINT against Jane Doe, filed by John Doe. (Miltenberg, Andrew) (Entered: 11/09/2023) |
| 11/16/2023 | Ï 24 | Consent MOTION for Extension of Time to File Answer regarding 23 Amended Complaint, Consent MOTION for Extension of Time to File Response *by Plaintiff to any Motion to Dismiss* filed by Jane Doe (Attachments: # 1 Text of Proposed Order) (Dagger, Kelly) (Entered: 11/16/2023) |
| 11/17/2023 | Ï | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding 24 Consent MOTION for Extension of Time to File Answer regarding 23 Amended Complaint, Consent MOTION for Extension of Time to File Response *by Plaintiff to any Motion to Dismiss*. (Mann, Stephanie) (Entered: 11/17/2023) |
| 11/17/2023 | Ï 25 | MANDATE of US Court of Appeals as to 9 Notice of Interlocutory Appeal filed by John Doe (Foell, S.) (Entered: 11/17/2023) |

| 11/17/2023 | | TEXT ORDER granting Defendant's Consent Motion for Extension of Time 24 . For good cause shown, it is ordered that Defendant has up to and including December 15, 2023, within which to answer or otherwise respond to the Complaint 1 . Plaintiff has up to and including January 17, 2024, within which to respond to any motion to dismiss. Signed by Peter A. Moore, Jr., Clerk of Court on 11/17/2023. (Hockaday, A.) (Entered: 11/17/2023) |
|---|---|---|
| 12/15/2023 | 26 | Notice of Appearance filed by Chelsea Pieroni on behalf of Jane Doe (Pieroni, Chelsea) (Entered: 12/15/2023) |
| 12/15/2023 | 27 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Jane Doe (Dagger, Kelly) (Entered: 12/15/2023) |
| 12/15/2023 | 28 | Memorandum in Support regarding 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Jane Doe (Dagger, Kelly) (Entered: 12/15/2023) |
| 12/15/2023 | 29 | MOTION to Transfer Case filed by Jane Doe (Attachments: # 1 Exhibit 1 – Affidavit of Erica Woodley, # 2 Exhibit 2– Declaration of Jane Doe # 3 Exhibit 3 – Doe Complaint (separately filed under seal), # 4 Exhibit 4– Subpoena to Jane Doe (separately filed under seal), # 5 Exhibit 5– Eastern District of Louisiana Website Excerpt, # 6 Exhibit 6 – Eastern District of North Carolina Website Excerpt, # 7 Exhibit 7 – Federal Judicial Caseload Statistics, # 8 Exhibit 8 – Joint Status Report) (Dagger, Kelly) (Entered: 12/15/2023) |
| 12/15/2023 | 30 | PROPOSED SEALED Exhibit *(Selected Participants Only)*by Jane Doe (available to: Defendant Jane Doe Plaintiff John Doe regarding 29 MOTION to Transfer Case . (Attachments: # 1 Exhibit 3 – Complaint, # 2 Exhibit 4 – Subpoena to Jane Doe (Dagger, Kelly) (Entered: 12/15/2023) |
| 12/15/2023 | 31 | PROPOSED SEALED Memorandum in Support *(Selected Participants Only)*by Jane Doe (available to: Defendant Jane Doe Plaintiff John Doe regarding 29 MOTION to Transfer Case . (Dagger, Kelly) (Entered: 12/15/2023) |
| 12/15/2023 | 32 | Notice filed by Jane Doe regarding 31 PROPOSED SEALED Memorandum in Support, 30 PROPOSED SEALED Exhibit, . (Dagger, Kelly) (Entered: 12/15/2023) |
| 01/12/2024 | 33 | Proposed Order filed by Jane Doe regarding 29 MOTION to Transfer Case. (Dagger, Kelly) (Entered: 01/12/2024) |
| 01/15/2024 | 34 | MOTION for Extension of Time to File Response regarding 29 MOTION to Transfer Case filed by John Doe (Attachments: # 1 Text of Proposed Order) (Miltenberg, Andrew) (Entered: 01/15/2024) |
| 01/16/2024 | | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding 34 MOTION for Extension of Time to File Response regarding 29 MOTION to Transfer Case. (Mann, Stephanie) (Entered: 01/16/2024) |
| 01/16/2024 | | TEXT ORDER granting Plaintiff's Motion for Extension of Time 34 . Plaintiff has up to and including January 17, 2024, within which to respond to the Motion to Transfer Venue 29 . Signed by Peter A. Moore, Jr., Clerk of Court on 1/16/2024. (Hockaday, A.) (Entered: 01/16/2024) |
| 01/17/2024 | 35 | Declaration of Andrew T. Miltenberg in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue regarding 29 MOTION to Transfer Case by John Doe filed by John Doe (Attachments: # 1 Exhibit A – January 5 Order, # 2 Exhibit B – Jane Doe Pseudonym Appeal Response Brief, # 3 Exhibit C – Fourth Circuit Opinion, # 4 Exhibit D – Amended Complaint, # 5 Exhibit E – FedExReceipt, # 6 Exhibit F – Jane Doe Petition REDACTED, # 7 Exhibit G – Pseudonym Order, # 8 Exhibit H – ED North Carolina Statistics, # 9 Exhibit I – ED Louisiana Stats, # 10 Exhibit J – Proposed Redacted Jane Doe Brief REDACTED) (Miltenberg, Andrew) (Entered: 01/17/2024) |

| 01/17/2024 | 36 | PROPOSED SEALED Exhibits F and G *(Selected Participants Only)*by John Doe (available to: Defendant Jane Doe Plaintiff John Doe regarding 35 Declaration (Attachments: # 1 Exhibit F – Jane Doe Petition SEAL, # 2 Exhibit G – Tulane Pseudonym Order) (Miltenberg, Andrew) (Entered: 01/17/2024) |
|---|---|---|
| 01/17/2024 | 37 | Memorandum in Opposition regarding 29 MOTION to Transfer Case filed by John Doe (Miltenberg, Andrew) (Entered: 01/17/2024) |
| 01/17/2024 | 38 | PROPOSED SEALED Memorandum in Opposition: *(Selected Participants Only)*by John Doe (available to: Defendant Jane Doe Plaintiff John Doe regarding 37 Memorandum in Opposition. (Miltenberg, Andrew) (Entered: 01/17/2024) |
| 01/17/2024 | 39 | Declaration of Andrew Miltenberg in Support of Plaintiff's Opposition to Defendant's Partial Rule 12(b) Motion regarding 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by John Doe filed by John Doe (Attachments: # 1 Exhibit 1 – Jane Doe Petition REDACTED) (Miltenberg, Andrew) (Entered: 01/17/2024) |
| 01/17/2024 | 40 | PROPOSED SEALED Exhibit *(Selected Participants Only)*by John Doe (available to: Defendant Jane Doe Plaintiff John Doe regarding 39 Declaration,. (Attachments: # 1 Exhibit 1 – Jane Doe Petition SEAL) (Miltenberg, Andrew) (Entered: 01/17/2024) |
| 01/17/2024 | 41 | Memorandum in Opposition regarding 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by John Doe (Miltenberg, Andrew) (Entered: 01/17/2024) |
| 01/17/2024 | 42 | MOTION to Seal 40 PROPOSED SEALED Exhibit, 38 PROPOSED SEALED Document, 36 PROPOSED SEALED Exhibit, filed by John Doe (Attachments: # 1 Text of Proposed Order) (Miltenberg, Andrew) (Entered: 01/17/2024) |
| 01/17/2024 | 43 | Memorandum in Support regarding 42 MOTION to Seal 40 PROPOSED SEALED Exhibit, 38 PROPOSED SEALED Document, 36 PROPOSED SEALED Exhibit, filed by John Doe (Miltenberg, Andrew) (Entered: 01/17/2024) |
| 01/19/2024 | 44 | Notice of Special Appearance for non–district by Kara L. Gorycki on behalf of John Doe (Gorycki, Kara) (Entered: 01/19/2024) |
| 01/22/2024 | 45 | RESPONSE in Opposition regarding 42 MOTION to Seal 40 PROPOSED SEALED Exhibit, 38 PROPOSED SEALED Document, 36 PROPOSED SEALED Exhibit, filed by Jane Doe (Attachments: # 1 Exhibit 1 – Placeholder for ECF No. 40, Doe v. Doe, No. 23–1058 (4th Cir. May 16, 2023), # 2 Exhibit 2 – Declaration of Kelly Margolis Dagger, # 3 Exhibit 3 – 2023 12 15 Email from J Weiss to K Gorycki, # 4 Exhibit 4 – 2024 01 17 Email between K Gorycki and K Dagger, # 5 Exhibit 5 – Placeholder for PACER Case Locator Search Result, # 6 Text of Proposed Order Granting in Part and Denying in Part Motion to Seal) (Dagger, Kelly) (Entered: 01/22/2024) |
| 01/22/2024 | 46 | PROPOSED SEALED Exhibit *(Selected Participants Only)*by Jane Doe (available to: Defendant Jane Doe Plaintiff John Doe regarding 45 Response in Opposition to Motion,,. (Attachments: # 1 Exhibit 1 – ECF No. 40, Doe v. Doe, No. 23–1058 (4th Cir. May 16, 2023), # 2 Exhibit 5 – PACER Case Locator Search Result) (Dagger, Kelly) (Entered: 01/22/2024) |
| 01/22/2024 | 47 | Notice of Proposed Sealed Documents filed by Jane Doe regarding 46 PROPOSED SEALED Exhibit. (Dagger, Kelly) (Entered: 01/22/2024) |
| 01/29/2024 | 48 | MOTION to Seal 46 PROPOSED SEALED Exhibit, filed by John Doe (Attachments: # 1 Memorandum of Law in Support, # 2 Text of Proposed Order) (Miltenberg, Andrew) (Entered: 01/29/2024) |
| 01/31/2024 | 49 | REPLY to Response to Motion regarding 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Jane Doe (Dagger, Kelly) (Entered: 01/31/2024) |

| 01/31/2024 | Ï 50 | PROPOSED SEALED REPLY *(Selected Participants Only)* by Jane Doe (available to: Defendant Jane Doe Plaintiff John Doe regarding 29 MOTION to Transfer Case . (Dagger, Kelly) (Entered: 01/31/2024) |
|---|---|---|
| 01/31/2024 | Ï 51 | Notice filed by Jane Doe regarding 50 PROPOSED SEALED Reply . (Attachments: # 1 Exhibit 9 – Federal Court Management Statistics, # 2 Exhibit 10 – Dismissal) (Dagger, Kelly) (Entered: 01/31/2024) |
| 01/31/2024 | Ï 52 | Notice of Filing Proposed Sealed Reply Brief filed by Jane Doe regarding 50 PROPOSED SEALED Reply. (Dagger, Kelly) (Entered: 01/31/2024) |
| 02/01/2024 | Ï 53 | RESPONSE in Opposition regarding 48 MOTION to Seal 46 PROPOSED SEALED Exhibit, filed by Jane Doe (Attachments: # 1 Text of Proposed Order) (Dagger, Kelly) (Entered: 02/01/2024) |
| 02/07/2024 | Ï 54 | MOTION to Seal Document 50 PROPOSED SEALED Reply filed by John Doe (Attachments: # 1 Proposed Redacted 50 Reply Br., # 2 Text of Proposed Order) (Ekstrand, Robert) (Entered: 02/07/2024) |
| 02/07/2024 | Ï 55 | Memorandum in Support regarding 54 MOTION to Seal Document 50 PROPOSED SEALED Reply filed by John Doe (Ekstrand, Robert) (Entered: 02/07/2024) |
| 02/09/2024 | Ï 56 | RESPONSE in Opposition regarding 54 MOTION to Seal Document 50 PROPOSED SEALED Reply filed by Jane Doe (Attachments: # 1 Text of Proposed Order) (Dagger, Kelly) (Entered: 02/09/2024) |
| 02/28/2024 | Ï | Motions Submitted to District Judge James C. Dever III regarding 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 29 MOTION to Transfer Case, 42 MOTION to Seal, 48 MOTION to Seal, 54 MOTION to Seal Document. (Mann, Stephanie) (Entered: 02/28/2024) |
| 03/01/2024 | Ï 57 | ORDER REFERRING MOTIONS to Magistrate Judge Brian S. Meyers: Motions to Seal 42 , 48 , 54 . Signed by District Judge James C. Dever III on 3/1/2024. (Mann, Stephanie) (Entered: 03/01/2024) |
| 03/28/2024 | Ï 58 | ORDER – The court GRANTS IN PART plaintiff's motion to seal [D.E. 42], REDACTS plaintiff's phone number from and SEALS [D.E. 36–1], DENIES plaintiff's motions to seal [D.E. 48, 54], GRANTS defendant's motion to transfer venue [D.E. 29], and TRANSFERS this action to the United States District Court for the Eastern District of Louisiana. Defendant's motion to dismiss [D.E. 27] remains pending for resolution in the Eastern. District of Louisiana. Signed by District Judge James C. Dever III on 3/27/2024. (Mann, Stephanie) (Entered: 03/28/2024) |

Original Filed at Docket No. 60,

Sealed by Court Order

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

███████                                            CIVIL ACTION

**VERSUS**                                         NO.   24-825

██████                                             SECTION:   L (1)

O R D E R

The Court is in receipt of transfer of this case from the United States District Court for the Eastern District of North Carolina.   Upon receipt of the transfer, there is currently a pending motion to dismiss filed by the defendant, Rec. Doc. 27. This Court will set this motion for submission with any further briefing to be filed in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules, accordingly;

IT IS ORDERED that the motion of defendant ██████, to Dismiss for Failure to State a Claim Upon Which Relief can be Granted, is set for submission on this Court calendar on Wednesday, May 8, 2024.

New Orleans, Louisiana, this   4th   day of   April  , 2024.

**ELDON E. FALLON
UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 61,
Sealed by Court Order

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

John Doe

   Plaintiff,

  v.

Jane Doe

   Defendant.

Civil Case No.: 24-825

District Judge: Eldon E. Fallon

Magistrate Judge: Janis van Meerveld

## MOTION TO ENROLL COUNSEL OF RECORD

This Court received transfer of this case from the United States District Court for the Eastern District of North Carolina on April 2, 2024. At the time of the transfer, Plaintiff had not yet retained Louisiana-licensed local counsel. Plaintiff has since retained the undersigned as local counsel who wishes to enroll in this case.

Plaintiff's out-of-state counsel will apply for *pro hac vice* admission to this Court once local counsel is enrolled and consents to the filing of this motion.

Pursuant to Local Rule 83.2.12(A), the plaintiff, John Doe respectfully moves the Court to permit the enrollment of Brian P. Marcelle (La. Bar #25156), Alex T. Robertson (La. Bar #37285) and Jacques C. Mestayer (La. Bar #37230) of Marcelle Robertson Mestayer LLC as local counsel of record on his behalf.

WHEREFORE, John Doe respectfully requests that the Court grant this motion and permit the enrollment of local counsel as reflected in the proposed order.

Respectfully submitted,

*/s/ Alex T. Robertson*
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar No. 37230)
**MARCELLE ROBERTSON MESTAYER LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax:    (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com
*Local Counsel for* John Doe

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe      Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Eldon E. Fallon |
| Jane Doe      Defendant. | Magistrate Judge: Janis van Meerveld |

## **ORDER**

Considering the foregoing *Motion to Enroll Counsel of Record* that Plaintiff, John Doe

, filed;

IT IS HEREBY ORDERED, that Plaintiff's *Motion to Enroll Counsel of Record* is

GRANTED and Brian P. Marcelle (La. Bar #25156), Alex T. Robertson (La. Bar #37285) and

Jacques C. Mestayer (La. Bar #37230) of Marcelle Robertson Mestayer LLC are hereby enrolled

as local counsel of record on Plaintiff's behalf.

New Orleans, Louisiana, this _____ day of April, 2024.

_____
HON. ELDON E. FALLON
UNITED STATES DISTRICT COURT JUDGE

Original Filed at Docket No. 62,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

██████████
        Plaintiff,

v.

██████████
        Defendant.

Civil Case No.: 24-825

District Judge: Eldon E. Fallon

Magistrate Judge: Janis van Meerveld

## ORDER

Considering the foregoing *Motion to Enroll Counsel of Record* that Plaintiff,

████████ , filed;

**IT IS HEREBY ORDERED** that Plaintiff's *Motion to Enroll Counsel of Record* is **GRANTED** and Brian P. Marcelle (La. Bar #25156), Alex T. Robertson (La. Bar #37285) and Jacques C. Mestayer (La. Bar #37230) of Marcelle Robertson Mestayer LLC are hereby enrolled as local counsel of record on Plaintiff's behalf.

New Orleans, Louisiana, this 9th day of April, 2024.

_____
United States District Judge

Original Filed at Docket No. 63,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>            Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Eldon E. Fallon |
| Jane Doe<br>            Defendant. | Magistrate Judge: Janis van Meerveld |

**MOTION FOR ADMISSION PRO HAC VICE OF STUART BERNSTEIN**

Pursuant to Local Rule 83.2.5, John Doe requests that this Court allow Stuart Bernstein, (NYSB# 2371953) of Nesenoff & Miltenberg, LLP to be admitted pro hac vice as counsel of record for the plaintiff. The following attached exhibits satisfy Local Rule 83.2.5 for pro hac admission:

1. Ex. A - Declaration

2. Ex. B - Certificate of Good Standing

3. Ex. C – Executed Consent to Electronic Filing

Respectfully submitted,

*/s/ Alex T. Robertson*
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar. No. 37230)
**Marcelle Robertson Mestayer LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax:    (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com
*Local Counsel for Plaintiff*

Page 1 of 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe      Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Eldon E. Fallon |
| Jane Doe      Defendant. | Magistrate Judge: Janis van Meerveld |

## ORDER

Considering the "Motion for Admission Pro Hac Vice of Stuart Bernstein,"

**IT IS ORDERED**, pursuant to Local Rule 83.2.5, that the motion is GRANTED. Attorney

Stuart Bernstein, (NYSB# 2371953) of Nesenoff & Miltenberg, LLP, 363 Seventh Avenue, 5th

Floor New York, New York 10001 is hereby **GRANTED** leave to appear and participate *pro hac*

*vice* in this litigation as counsel for John Doe

New Orleans, Louisiana this _____ day of April 2024.

_____
JUDGE

Page 1 of 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

John Doe
          Plaintiff,

v.

Jane Doe
          Defendant.

Civil Case No.: 24-825

District Judge: Eldon E. Fallon

Magistrate Judge: Janis van Meerveld

## DECLARATION OF STUART BERNSTEIN

I, Stuart Bernstein, declare:

1. I am an attorney of the law firm Nesenoff & Miltenberg, LLP and one of Plaintiff's counsel in this action.

2. I am not a member of the Louisiana bar. I am not eligible for admission to the bar of the Eastern District of Louisiana under Local Rule 83.2.1.

3. I am a member in good standing of the New York state bar and am admitted to practice before the United States District Court for the Southern District of New York, among other courts. A certificate of my good standing in that court is filed herewith.

4. There have been no disciplinary proceedings or criminal charges instituted against me.

5. I consent to electronic service of all documents through the Court's electronic filing system, for which I am already registered.

6. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action. Alex Robertson and the law firm of Marcelle Robertson Mestayer LLC will serve as local counsel for the plaintiff in this case.

Page 1 of 2

7. I have reviewed and am familiar with the Court's Local Rules.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of April, 2024.

_____
Stuart Bernstein

# United States District Court
## Southern District of New York

### Certificate of Good Standing

I, *Ruby J. Krajick*, Clerk of Court, Certify that

STUART   BERNSTEIN , Bar # SB3707

was duly admitted to practice in the Court on

September 14, 2004

and is in good standing as a member of the Bar of this Court

Dated at      500 Pearl St.          On        April 19, 2023
              New York, New York

Ruby J. Krajick                 By        s/ S. Gonzalez
Clerk of Court                            Deputy Clerk

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
www.pacer.gov

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Stuart Bernstein

Attorney Bar # and State: New York State Bar # 2371953

Firm Name: NESENOFF & MILTENBERG, LLP

Firm Address: 363 Seventh Avenue, 5th Floor

New York, New York 10001

Telephone Number: 212-736-4500

E-Mail Address: sbernstein@nmllplaw.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑ Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number 24-cv-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4-8-24

Date

Attorney Signature

[Rev.11/2019]

2

**Original Filed at Docket No. 64,**
**Sealed by Court Order**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>        Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Eldon E. Fallon |
| Jane Doe<br>        Defendant. | Magistrate Judge: Janis van Meerveld |

### MOTION FOR ADMISSION PRO HAC VICE OF ANDREW MILTENBERG

Pursuant to Local Rule 83.2.5, John Doe             requests that this Court allow Andrew

Miltenberg (NYSB# 2399582) of Nesenoff & Miltenberg, LLP to be admitted pro hac vice as

counsel of record for the plaintiff. The following attached exhibits satisfy Local Rule 83.2.5 for

pro hac admission:

1. Ex. A - Declaration

2. Ex. B - Certificate of Good Standing

3. Ex. C – Executed Consent to Electronic Filing

Respectfully submitted,

*/s/ Alex T. Robertson*
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar. No. 37230)
**Marcelle Robertson Mestayer LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax:     (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com
*Local Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe | Civil Case No.: 24-825 |
| Plaintiff, | |
| v. | District Judge: Eldon E. Fallon |
| Jane Doe | |
| Defendant. | Magistrate Judge: Janis van Meerveld |

## <u>ORDER</u>

Considering the "Motion for Admission Pro Hac Vice of Andrew Miltenberg,"

**IT IS ORDERED**, pursuant to Local Rule 83.2.5, that the motion is GRANTED. Attorney

Andrew Miltenberg, (NYSB# 2399582) of Nesenoff & Miltenberg, LLP, 363 Seventh Avenue,

5th Floor New York, New York 10001 is hereby **GRANTED** leave to appear and participate *pro*

*hac vice* in this litigation as counsel for Plaintiff.

New Orleans, Louisiana this _____ day of April 2024.

_____
JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **John Doe** Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Eldon E. Fallon |
| **Jane Doe** Defendant. | Magistrate Judge: Janis van Meerveld |

## DECLARATION OF ANDREW MILTENBERG

I, Andrew Miltenberg, declare:

1. I am an attorney of the law firm Nesenoff & Miltenberg, LLP and one of Plaintiff's counsel in this action.

2. I am not a member of the Louisiana bar. I am not eligible for admission to the bar of the Eastern District of Louisiana under Local Rule 83.2.1.

3. I am a member in good standing of the New York state bar and am admitted to practice before the United States District Court for the Southern District of New York, among other courts. A certificate of my good standing in that court is filed herewith.

4. There have been no disciplinary proceedings or criminal charges instituted against me.

5. I consent to electronic service of all documents through the Court's electronic filing system, for which I am already registered.

6. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action. Alex Robertson and the law firm of Marcelle Robertson Mestayer LLC will serve as local counsel for the plaintiff in this case.

7. I have reviewed and am familiar with the Court's Local Rules.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___8th___ day of April, 2024.

_____
Andrew Miltenberg

# United States District Court
## Southern District of New York

### Certificate of Good Standing

I, *Ruby J. Krajick*, Clerk of Court, Certify that

_____ ANDREW TODD MILTENBERG _____ , Bar # _____ AM7006 _____

was duly admitted to practice in the Court on

_____ March 5, 1991 _____

and is in good standing as a member of the Bar of this Court

Dated at          500 Pearl St.          On          _____ April 19, 2023 _____
          New York, New York

_____ Ruby J. Krajick _____          By          _____ s/ S. Gonzalez _____
Clerk of Court                                        Deputy Clerk

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
<u>www.pacer.gov</u>

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: ANDREW TODD MILTENBERG

Attorney Bar # and State: New York State Bar No. 2399582

Firm Name: NESENOFF & MILTENBERG, LLP

Firm Address: 363 Seventh Avenue, 5th Floor

New York, New York 10001

Telephone Number: 212-736-4500

E-Mail Address: amiltenberg@nmllplaw.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ✔   Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ✔ No ☐ Case number 24-cv-825

Is this regarding a MDL case? Yes ☐ No ✔ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ✔ Office where employed:

_____

1

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4/8/24

**Date**

**Attorney Signature**

[Rev.11/2019]

2

Original Filed at Docket No. 65,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe      Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Eldon E. Fallon |
| Jane Doe      Defendant. | Magistrate Judge: Janis van Meerveld |

### MOTION FOR ADMISSION PRO HAC VICE OF KARA GORYCKI

Pursuant to Local Rule 83.2.5, John Doe requests that this Court allow Kara Gorycki, (NYSB# 4140992) of Nesenoff & Miltenberg, LLP to be admitted pro hac vice as counsel of record for the plaintiff. The following attached exhibits satisfy Local Rule 83.2.5 for pro hac admission:

1. Ex. A - Declaration

2. Ex. B - Certificate of Good Standing

3. Ex. C – Executed Consent to Electronic Filing

Respectfully submitted,

*/s/ Alex T. Robertson*
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar. No. 37230)
**Marcelle Robertson Mestayer LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax:    (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com
*Local Counsel for* John Doe

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe **Plaintiff,** | Civil Case No.: 24-825 |
| v. | District Judge: Eldon E. Fallon |
| Jane Doe **Defendant.** | Magistrate Judge: Janis van Meerveld |

## ORDER

Considering the "Motion for Admission Pro Hac Vice of Kara Gorycki,"

**IT IS ORDERED**, pursuant to Local Rule 83.2.5, that the motion is GRANTED. Attorney

Kara Gorycki, (NYSB# 4140992) of Nesenoff & Miltenberg, LLP, 363 Seventh Avenue, 5th Floor

New York, New York 10001 is hereby **GRANTED** leave to appear and participate *pro hac vice*

in this litigation as counsel for John Doe

New Orleans, Louisiana this _____ day of April 2024.

_____
JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **John Doe** <br> Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Eldon E. Fallon |
| **Jane Doe** <br> Defendant. | Magistrate Judge: Janis van Meerveld |

## DECLARATION OF KARA GORYCKI

I, Kara Gorycki, declare:

1. I am an attorney of the law firm Nesenoff & Miltenberg, LLP and one of Plaintiff's counsel in this action.

2. I am not a member of the Louisiana bar. I am not eligible for admission to the bar of the Eastern District of Louisiana under Local Rule 83.2.1.

3. I am a member in good standing of the New York state bar and am admitted to practice before the United States District Court for the Southern District of New York, among other courts. A certificate of my good standing in that court is filed herewith.

4. There have been no disciplinary proceedings or criminal charges instituted against me.

5. I consent to electronic service of all documents through the Court's electronic filing system, for which I am already registered.

6. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action. Alex Robertson and the law firm of Marcelle Robertson Mestayer LLC will serve as local counsel for the plaintiff in this case.

7. I have reviewed and am familiar with the Court's Local Rules.

Page 1 of 2

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of April, 2024.

_____
Kara Gorycki

# United States District Court
## Southern District of New York

### Certificate of Good Standing

I, *Ruby J. Krajick*, Clerk of Court, Certify that

KARA   LYNN   GORYCKI , Bar # KG3519

was duly admitted to practice in the Court on

March 29, 2005

and is in good standing as a member of the Bar of this Court

Dated at        500 Pearl St.        On        April 12, 2023
         New York, New York

Ruby J. Krajick                    By        s/ D. Shaw
Clerk of Court                               Deputy Clerk

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
<u>www.pacer.gov</u>

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Kara L. Gorycki

Attorney Bar # and State: New York State Bar No. 4140992

Firm Name: NESENOFF & MILTENBERG, LLP

Firm Address: 363 Seventh Avenue, 5th Floor

New York, New York 10001

Telephone Number: 212-736-4500

E-Mail Address: kgorycki@nmllplaw.com
(Attorney's email for electronic service)

Additional E-Mail Address: mbehrens@nmllplaw.com
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑ Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number 24-cv-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4/12/24
_____
**Date**

_____
**Attorney Signature**

[Rev.11/2019]

2

Original Filed at Docket No. 66,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

▆▆▆▆▆▆▆▆▆

Plaintiff,

v.

▆▆▆▆▆

Defendant.

Civil Case No.: 24-825

District Judge: Eldon E. Fallon

Magistrate Judge: Janis van Meerveld

## ORDER

Considering the "Motion for Admission Pro Hac Vice of Stuart Bernstein,"

**IT IS ORDERED**, pursuant to Local Rule 83.2.5, that the motion is GRANTED. Attorney

Stuart Bernstein, (NYSB# 2371953) of Nesenoff & Miltenberg, LLP, 363 Seventh Avenue, 5th

Floor New York, New York 10001 is hereby **GRANTED** leave to appear and participate *pro hac*

*vice* in this litigation as counsel for ▆▆▆▆▆▆

New Orleans, Louisiana this 11th day of April 2024.

_____
United States District Judge

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

### NOTICE TO VISITING ATTORNEYS

### ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Version 6/1/2016

Original Filed at Docket No. 67,
Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

████████████████
          Plaintiff,

v.

██████████
          Defendant.

Civil Case No.: 24-825

District Judge: Eldon E. Fallon

Magistrate Judge: Janis van Meerveld

**ORDER**

Considering the "Motion for Admission Pro Hac Vice of Andrew Miltenberg,"

**IT IS ORDERED**, pursuant to Local Rule 83.2.5, that the motion is **GRANTED**. Attorney Andrew Miltenberg, (NYSB# 2399582) of Nesenoff & Miltenberg, LLP, 363 Seventh Avenue, 5th Floor New York, New York 10001 is hereby **GRANTED** leave to appear and participate *pro hac vice* in this litigation as counsel for Plaintiff.

New Orleans, Louisiana this 11th day of April 2024.

_____
United States District Judge

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules.  Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action.  Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Version 6/1/2016

| Original Filed at Docket No. 68, |
| Sealed by Court Order |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

███████████████
          Plaintiff,

          v.

███████
          Defendant.

Civil Case No.: 24-825

District Judge: Eldon E. Fallon

Magistrate Judge: Janis van Meerveld

## ORDER

Considering the "Motion for Admission Pro Hac Vice of Kara Gorycki,"

**IT IS ORDERED**, pursuant to Local Rule 83.2.5, that the motion is **GRANTED**. Attorney Kara Gorycki, (NYSB# 4140992) of Nesenoff & Miltenberg, LLP, 363 Seventh Avenue, 5th Floor New York, New York 10001 is hereby **GRANTED** leave to appear and participate *pro hac vice* in this litigation as counsel for ███████████.

New Orleans, Louisiana this 15th day of April 2024.

_____
United States District Judge

Page 1 of 1

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Version 6/1/2016

Original Filed at Docket No. 69,
Sealed by Court Order

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe | *    **CASE NO. 2:24-CV-825** |
| | * |
| **VERSUS** | *    **JUDGE ELDON FALLON** |
| | * |
| | * |
| | *    **MAGISTRATE** |
| | *    **JANIS VAN MEERVELD** |
| Jane Doe | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION TO ENROLL COUNSEL OF RECORD

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jane Doe, who moves this Court to allow Jared A. Davidson (La. Bar No. 32419) and Caroline M. Murley (La. Bar No. 36599) with the law firm of Taylor, Wellons, Politz & Duhe, LLC to be enrolled as additional counsel of record for Defendant.

Respectfully submitted,

_/s/ Jared A. Davidson_
JARED A. DAVIDSON (#32419)
CAROLINE M. MURLEY (#36599)
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
Email: jdavidson@twpdlaw.com
        cmurley@twpdlaw.com

**_Counsel for_** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 23rd day of April, 2024.

_/s/ Jared A. Davidson_
TAYLOR, WELLONS, POLITZ & DUHE, LLC

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| . | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>ORDER</u>

Considering the above and foregoing Motion to Enroll Counsel of Record filed on behalf of Defendant Jane Doe

**IT IS HEREBY ORDERED** that Jared A. Davidson and Caroline M. Murley of the law firm of Taylor, Wellons, Politz & Duhe, LLC be and are hereby enrolled as additional counsel of record for Defendant in this matter.

**NEW ORLEANS LOUISIANA,** this _____ day of _____, 2024.

_____
**JUDGE**

3

Original Filed at Docket No. 70,

Sealed by Court Order

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

<table>
<tr><td>████████████████</td><td>*</td><td>CASE NO. 2:24-CV-825</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>VERSUS</td><td>*</td><td>JUDGE ELDON FALLON</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td>MAGISTRATE</td></tr>
<tr><td></td><td>*</td><td>JANIS VAN MEERVELD</td></tr>
<tr><td>████████</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

**************************************

## ORDER

Considering the above and foregoing Motion to Enroll Counsel of Record filed on behalf of Defendant ████████ :

**IT IS HEREBY ORDERED** that Jared A. Davidson and Caroline M. Murley of the law firm of Taylor, Wellons, Politz & Duhe, LLC be and are hereby enrolled as additional counsel of record for Defendant in this matter.

New Orleans, Louisiana, this 25th day of April, 2024.

_____

United States District Judge

| Original Filed at Docket No. 71, |
| Sealed by Court Order |

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **John Doe** | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| **Jane Doe** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## _EX PARTER_ MOTION TO APPEAR _PRO HAC VICE_

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission _pro hac vice_ of Kelly Dagger, Chelsea Pieroni, and Jamie Weiss of the firm Ellis Winters 4131 Parklake Avenue, Suite400, Raleigh NC 27612; Telephone: (949) 865-7015, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson, is an active member in good standing of the bar of this Court and agrees to serve as the designated local counsel for Kelly Dagger, Chelsea Pieroni, and Jamie Weiss pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A _in globo_ are the Affidavits of Kelly Dagger, Chelsea Pieroni, and Jamie Weiss stating they have not been the subject of any disciplinary or criminal proceedings, their current Certificate of Good Standing from Supreme Court of North Carolina attached as Exhibit B _in globo_ and the ECF Attorney Registration Form for Kelly Dagger, Chelsea Pieroni, and Jamie Weiss, attached as Exhibit C _in globo._

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Kelly Dagger. Chelsea Pieroni, and Jamie Weiss of the firm Ellis Winters to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe.

Respectfully submitted,

_/s/ Caroline Murley_
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

**Counsel for Defendant** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 29th day of April, 2024.

_/s/ Caroline Murley_
TAYLOR, WELLONS, POLITZ & DUHE, LLC

2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | CASE NO. 2:24-CV-825 |
| | * | |
| VERSUS | * | JUDGE ELDON FALLON |
| | * | |
| | * | |
| | * | MAGISTRATE |
| | * | JANIS VAN MEERVELD |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

Considering the foregoing Motion for Admission *Pro Hac Vice* of Kelly Dagger, Chelsea Pieroni, and Jamie Weiss as counsel for defendant Jane Doe

IT IS HEREBY ORDERED that Kelly Dagger, Chelsea Pieroni, and Jamie Weiss should be and are hereby admitted to the bar of this Court *pro hac vice* on behalf of defendant Jane Doe

New Orleans, Louisiana, this _____ day of May, 2024.

_____

**United States District Judge**

3

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **John Doe** | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| **Jane Doe** | * | |
| | * | |

*****************************************

### DECLARATION OF KELLY MARGOLIS DAGGER

I, Kelly Margolis Dagger, certify that the following is a true and correct statement submitted in accordance with LOCAL RULE 83.2.5:

1.    I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2.    I have been admitted to practice law in the State of North Carolina.

3.    I have not been admitted to practice law in the State of Louisiana.

4.    I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5.    I am currently licensed in good standing to practice law in the State of North Carolina.

6.    I am not currently suspended or disbarred by any jurisdiction in which I have been admitted.

7.    I have not been the subject of disciplinary action by the bar or courts of any jurisdiction during the preceding five (5) years.



8.      I consent to electronic service of all documents through the Court's electronic filing system.

9.      I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

10.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

NOTARY PUBLIC:

SIGNED THIS 25 DAY OF APRIL, 2024
MY COMMISION ENDS: 10/19/2026

2

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

# John Doe

**VERSUS**

# Jane Doe

\*    **CASE NO. 2:24-CV-825**
\*
\*    **JUDGE ELDON FALLON**
\*
\*
\*    **MAGISTRATE**
\*    **JANIS VAN MEERVELD**
\*
\*

*****************************************

## DECLARATION OF CHELSEA PIERONI

I, Chelsea Pieroni, certify that the following is a true and correct statement submitted in accordance with LOCAL RULE 83.2.5:

1. I desire to appear as counsel for John Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I have been admitted to practice law in the State of North Carolina.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the State of North Carolina.

6. I am not currently suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have not been the subject of disciplinary action by the bar or courts of any jurisdiction during the preceding five (5) years.

8.     I consent to electronic service of all documents through the Court's electronic filing system.

9.     I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

10.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

NOTARY PUBLIC:

SIGNED THIS **25** DAY OF APRIL, 2024
MY COMMISION ENDS: **04-01-2025**

2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**John Doe**

**VERSUS**

**Jane Doe**

\* CASE NO. 2:24-CV-825
\*
\* JUDGE ELDON FALLON
\*
\*
\* MAGISTRATE
\* JANIS VAN MEERVELD
\*
\*

*****************************************

## DECLARATION OF JAMES M. WEISS

I, James M. Weiss, certify that the following is a true and correct statement submitted in accordance with LOCAL RULE 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I have been admitted to practice law in the State of North Carolina.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the State of North Carolina.

6. I am not currently suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have not been the subject of disciplinary action by the bar or courts of any jurisdiction during the preceding five (5) years.

8.      I consent to electronic service of all documents through the Court's electronic filing system.

9.      I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

10.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

NOTARY PUBLIC:

SIGNED THIS **24** DAY OF APRIL, 2024
MY COMMISION ENDS: **04-01-2025**

2

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Grant E. Buckner, Clerk of the Supreme Court of North Carolina, do hereby certify

that on August 24, 2012, license to practice as an Attorney and Counselor at Law in all the

Courts of this State was issued by the North Carolina Board of Law Examiners to

## Kelly Margolis Dagger

according to the certified list of licentiates reported by the Secretary of said Board and filed

in my office as required by statute.

To the date of this certificate, no order revoking said license has been filed with this

Court and no order suspending same is in effect.

WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in

Raleigh, this April 19, 2024.

Grant E. Buckner
Clerk of the Supreme Court
of the State of North Carolina

**EXHIBIT**

**B**

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Grant E. Buckner, Clerk of the Supreme Court of North Carolina, do hereby certify

that on October 21, 2022, license to practice as an Attorney and Counselor at Law in all the

Courts of this State was issued by the North Carolina Board of Law Examiners to

## Chelsea Pieroni

according to the certified list of licentiates reported by the Secretary of said Board and filed

in my office as required by statute.

To the date of this certificate, no order revoking said license has been filed with this

Court and no order suspending same is in effect.

WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in

Raleigh, this April 19, 2024.

Grant E. Buckner
Clerk of the Supreme Court
of the State of North Carolina

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Grant E. Buckner, Clerk of the Supreme Court of North Carolina, do hereby certify

that on March 4, 2011, license to practice as an Attorney and Counselor at Law in all the

Courts of this State was issued by the North Carolina Board of Law Examiners to

## James Michael Weiss

according to the certified list of licentiates reported by the Secretary of said Board and filed

in my office as required by statute.

To the date of this certificate, no order revoking said license has been filed with this

Court and no order suspending same is in effect.

WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in

Raleigh, this April 19, 2024.

Grant E. Buckner
Clerk of the Supreme Court
of the State of North Carolina

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
Consent to Electronic Filing

# E-File Privileges
**must be requested through PACER:**
www.pacer.gov

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: **Kelly Margolis Dagger**

Attorney Bar # and State: **44329 North Carolina**

Firm Name: **Ellis & Winters LLP**

Firm Address: **P.O. Box 33550, Raleigh, NC 27636**

Telephone Number: **(919) 865-7000**

E-Mail Address: **kelly.dagger@elliswinters.com**
(Attorney's email for electronic service)

Additional E-Mail Address: **elizabeth.worthy@elliswinters.com**
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑ Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number **2:23-cv-01348**

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1



EXHIBIT
C

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4/16/2024
**Date**

**Attorney Signature**

[Rev.11/2019]

2

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
**www.pacer.gov**

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: CHELSEA PIERONI

Attorney Bar # and State: 59816 North Carolina

Firm Name: Ellis & Winters LLP

Firm Address: P.O. Box 33550, Raleigh, NC 27636

Telephone Number: (919) 865-7000

E-Mail Address: chelsea.pieroni@elliswinters.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑    Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number 2:23-cv-01348

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

1

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4/16/2024
Date

Attorney Signature

[Rev.11/2019]

2

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
www.pacer.gov

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: **James M. Weiss**

Attorney Bar # and State: **42386 North Carolina**

Firm Name: **Ellis & Winters LLP**

Firm Address: **P.O. Box 33550, Raleigh, NC 27636**

Telephone Number: **(919) 865-7000**

E-Mail Address: **jamie.weiss@elliswinters.com**
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑   Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number **2:23-cv-01348**

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

1

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

April 16, 2024
Date

Attorney Signature

[Rev.11/2019]

2

Original Filed at Docket No. 72,

Sealed by Court Order

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION TO CONSOLIDATE

NOW INTO COURT, through undersigned counsel, comes Defendant Jane Doe who requests consolidation of this matter with the matter entitled, *John Doe v. The Administrators of the Tulane Educational Fund d/b/a Tulane University*, pending in Section P before the Honorable Judge Darrel Papillion as Case Number 2:23-CV-01348. For the reasons set forth more fully in her supporting memorandum, consolidation of these lawsuits is warranted and any potential prejudice is significantly outweighed by the benefits of consolidation for all parties and the Court.

WHEREFORE, Jane Doe prays that her Motion be granted and the instant matter be consolidated with the matter entitled, *John Doe v. The Administrators of the Tulane Educational Fund d/b/a Tulane University*, pending in Section P before the Honorable Judge Darrel Papillion as Case Number 2:23-CV-01348.

Respectfully submitted,

_/s/ Caroline Murley_
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
cmurley@twpdlaw.com

- **And –**

_/s/ Kelly Margolis Dagger_
Kelly Margolis Dagger, N.C. Bar No. 44329
_(pro hac vice pending)_
James M. Weiss, N.C. Bar No. 42386
_(pro hac vice pending)_
Chelsea Pieroni, N.C. Bar No. 59816
_(pro hac vice pending)_
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
kelly.dagger@elliswinters.com

***Counsel for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on

all known counsel of record in this proceeding via the court's CM/ECF this 30th day of April, 2024.

_/s/ Caroline Murley_
TAYLOR, WELLONS, POLITZ & DUHE, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM IN SUPPORT OF<br>MOTION TO CONSOLIDATE</u>

This matter involves common issues of law and facts with the another case filed in this district, *John Doe v. The Administrators of the Tulane Educational Fund d/b/a Tulane University*, pending in Section P before the Honorable Judge Darrel Papillion as Case Number 2:23-CV-01348 (the "Tulane case"). Both cases arise from Plaintiff John Doe sexual assaulting Defendant Jane Doe and another woman, identified as Sue Roe, while all three were students at Tulane University. John Doe brought this case, originally in the Eastern District of North Carolina, alleging that Jane Doe conspired with Sue Roe and defamed him when she notified Tulane of her sexual assault claim and communicated her account to others, resulting in a Title IX investigation and John Doe dismissal from the university. Several months after filing the instant case, John Doe filed the Tulane case, alleging that Tulane's disciplinary process was biased and flawed when the university found him responsible for sexually assaulting Jane Doe and Sue Roe upon their reports.

Because this case and the Tulane Case arise out of the same set of operative facts, namely John Doe assaults of Sue Roe and Jane Doe the reports of those assaults, and the

consequences for John Doe litigating the two cases separately will lead to significant inefficiencies and inequities. Witnesses will have to be deposed multiple times; documents that are in Tulane's possession will have to be obtained by subpoena in this case, and by document requests in the Tulane case; discovery orders and orders concerning the admissibility and relevance of evidence may be inconsistent; all parties will incur increased legal costs. Perhaps most importantly, there is a substantial risk of inconsistent verdicts if the cases proceed separately with two independent juries rendering substantially the same factual determinations. Jane Doe with the support and consent of Tulane, asks the Court to consolidate the cases for all purposes and to join them for trial.

## FACTUAL BACKGROUND

This case arises out of Jane Doe report of being sexually assaulted by John Doe in February 2022. Both Jane Doe and her classmate Sue Roe submitted Title IX complaints to Tulane that John Doe sexually assaulted them, resulting in an investigation by Tulane.[1] John Doe alleges that after the assault, Jane Doe "strategically utilized and manipulated Tulane's Title IX investigation process to further a malicious vendetta against [him]."[2] All student witnesses identified in Jane Doe report to Tulane were undergraduate students at the university living in New Orleans, Louisiana.[3] Tulane investigator Jacqueline Barber met with thirteen individuals in her office and interviewed five more remotely.[4] Multiple other Tulane administrators were involved in the investigation and disciplinary process.[5] At the conclusion of Tulane's

---

[1] Am. Compl. ¶¶ 47-48 (DE 23); Affidavit of Erica Woodley ¶¶ 3-4 (DE 29-1).
[2] DE 29-1. ¶ 3.
[3] *Id.* ¶ 5.
[4] *Id.* ¶ 6.
[5] *Id.* ¶ 7.

2

investigation, John Doe was found responsible for sexual assault and Tulane determined that he should be expelled from the university.[6]

While Tulane's investigation was ongoing, Jane Doe filed a petition for protection from abuse in Louisiana civil court seeking to restrain John Doe from contacting her through third parties and from entering Tulane's campus.[7] The petition for protection includes both Jane Doe and John Doe full names and remains a part of the public record of the Civil District Court for the Parish of Orleans, although the petition has since been dismissed.[8]

In December 2022, John Doe filed this action against Jane Doe in the United States District Court for the Eastern District of North Carolina.[9] John Doe referred to himself as "John Doe" and asked the court for leave to proceed by pseudonym.[10] The court denied John Doe motion,[11] leading him to appeal the decision to the United States Court of Appeals for the Fourth Circuit.[12] The Fourth Circuit affirmed the district court's decision,[13] after which John Doe filed an amended complaint using his real name.[14]

John Doe asserts five claims against Jane Doe (1) defamation, (2) abuse of process, (3) tortious interference with contract, (4) intentional infliction of emotional distress, and (5) civil conspiracy.[15] John Doe alleges that Jane Doe made "false and defamatory statements about [him] to administrators at Tulane University, to the president of [John Doe fraternity, to [his] friends, to the Louisiana civil court, as well as to numerous fellow students."[16] He further

---

[6] DE 23. ¶ 90.
[7] *Id.* ¶ 87.
[8] DE 35-6.
[9] *See* DE 1.
[10] DE 5.
[11] DE 8.
[12] DE 9.
[13] DE 21, 22.
[14] DE 23.
[15] *See id.* ¶¶ 92-153.
[16] *Id.* ¶ 93.

3

alleges that as a result of these purportedly false statements, he suffered harm, including the loss of his "tuition, academic career, impending college degree, future career aspirations, and the lifelong business and social relationships that would have been developed through his association with fellow Tulane students and membership in the fraternity."[17] He further alleges that Jane Doe abused the process of a Louisiana civil court in seeking a restraining order and abused Tulane's Title IX process.[18] John Doe alleges that Jane Doe was aware that he had a contract with Tulane and that she intentionally and maliciously induced Tulane not to perform the contract, depriving John Doe of a fair and equitable grievance process and causing him to be banned from campus and dismissed from the university.[19] He alleges that Jane Doe intentionally inflicted severe emotional distress on him by reporting the sexual assault and participating in Tulane's investigation, causing him to be dismissed from Tulane and to suffer damage to his reputation and ostracism from his peers.[20] Finally, he alleges that Jane Doe conspired with Sue Roe to defame him.[21]

On April 24, 2023, John Doe filed a separate suit in the United States District Court for the Eastern District of Louisiana against The Administrators of the Tulane Educational Fund d/b/a Tulane University, alleging that Tulane violated Title IX and breached its contract with John Doe in its purported mishandling of Jane Doe and Sue Roe's sexual assault reports.[22] He claims that when Jane Doe and Sue Roe reported that he sexually assaulted them, Tulane

---

[17] *Id.* ¶ 102.
[18] *Id.* ¶¶ 111, 116.
[19] *Id.* ¶¶ 125-133.
[20] *Id.* ¶¶ 137-142.
[21] *Id.* ¶ 148.
[22] *See* Complaint submitted in *Doe v. Adm'rs of Tulane Educ. Fund*, No. 2:23-cv-01348 (E.D. La. Apr. 24, 2023) (DE 30-1) ("*Doe* Compl."). The court allowed the Tulane case to be filed under a pseudonym, so John Doe complaint there refers to him as John Doe and Jane Doe as Jane Doe. *See id.* at 1-2. John Doe moved to seal his complaint against Tulane when it was filed as an exhibit in this action (DE 42 (seeking to seal DE 30-1)), but the district court denied that motion to seal except to the extent that John Doe sought to redact a phone number (DE 58 at 14).

engaged in "biased and flawed disciplinary proceedings against Plaintiff" and wrongfully imposed sanctions on him.[23] He asserts two claims against Tulane, one under Title IX and one for breach of contract.[24]

Many of John Doe factual allegations in the Tulane case are substantively identical to the allegations in this case. In both complaints, John Doe details his relationship with Sue Roe, beginning in September 2019 and culminating in a sexual encounter in August 2021 that Sue Roe would later report was not consensual.[25] In both complaints, John Doe then details his relationship with Jane Doe (whom he calls "Jane Doe" in his complaint against Tulane).[26] He describes meeting Jane Doe having sexual encounters with her, learning that she reported to other Tulane students that he sexually assaulted her, and leaving Tulane's campus because of the allegations.[27] John Doe alleges in both complaints that Jane Doe and Sue Roe worked together to coordinate details of their accounts before reporting the sexual assaults to Tulane, and that they lied about when they first connected with one another.[28] Furthermore, in the instant complaint, John Doe identified numerous witnesses by their initials,[29] eighteen of which he also identified in his complaint against Tulane.[30]

---

[23] *Doe* Compl (DE 30-1) ¶ 1.

[24] *Id.* ¶¶ 494-532. Despite the fact that the case against Tulane involves "subject matter that comprises all or a material part of the subject matter or operative facts of another action . . . then or previously pending in any court or administrative agency," in his case against Tulane, John Doe did not file a list and description of his case against Jane Doe *See* Docket *passim, Doe v. Adm'rs of Tulane Educ. Fund,* No. 2:23-cv-01348 (E.D. La.); *see also* L.R. 3.1 (providing that "counsel must file a list and description of all such actions then known to counsel and a brief summary of the relationship between the cases").

[25] *Doe* Compl. (DE 30-1) ¶¶ 147-162; Am. Compl. (DE 23) ¶¶ 14-18.

[26] *Doe* Compl. (DE 30-1)¶¶ 163-213; Am. Compl. (DE 23) ¶¶ 19-45.

[27] *Doe* Compl. (DE 30-1) ¶¶ 163-213; Am. Compl. (DE 23) ¶¶ 19-45.

[28] *Doe* Compl. (DE 30-1)¶¶ 360-371; Am. Compl. (DE 23) ¶¶ 55-67.

[29] *See* Am. Compl. ¶ 14 (M.G. and M.V.), ¶ 16 (B.H.), ¶ 18 (D.E.), ¶ 21 (M.V., K.R., and H.W.), ¶ 23 (K.S.), ¶ 24 (D.K.), ¶ 31 (A.H.), ¶ 32 (T.R.), ¶ 33 (T.G. and A.S.), ¶ 34 (M.K. and S.B.), ¶ 35 (A.T.), ¶ 56 (N.B.), ¶ 85 (E.M.).

[30] *Doe* Compl. (DE 30-1) ¶ 149 (M.G. and M.V.), ¶ 157 (B.H.), ¶ 161 (D.E.), ¶¶ 168-169 (M.V., K.R., and H.W.), ¶ 172 (K.S.), ¶ 174 (D.K.), ¶ 188 (A.H.), ¶ 190 (T.R.), ¶ 192 (T.G. and A.S.), ¶ 194 (M.K.), ¶ 195 (S.B.), ¶ 196 (A.T.), ¶ 311 (N.B.), ¶ 312 (E.M.).

5

John Doe       also seeks overlapping damages in his complaints against Jane Doe and Tulane.  In both complaints, John Doe       alleges that he suffered damages because he was found responsible for sexual assault and expelled from Tulane, causing loss of educational and career opportunities, reputational damages, economic injuries, and other damages.[31]

After John Doe       lost his appeal on the pseudonymity issue and filed an amended complaint in his real name, Jane Doe moved to transfer this case to this district, and to dismiss the complaint in part for failure to state a claim upon which relief can be granted.[32] Among other things, Jane Doe cited John Doe       pending case in this district against Tulane, noted the prospect of overlapping discovery, and argued that transfer was in the interest of justice because it would permit Jane Doe to ask this Court to consolidate the cases.[33]

John Doe       conceded that "some efficiencies would be achieved by the transfer and consolidation sought by Defendant."[34] He acknowledged that "if the two actions are *not* consolidated, and are presided over by different judges in the Eastern District of Louisiana, there would be no assurance that rulings issued in the two matters would be consistent."[35] However, he argued that transfer was still inappropriate, primarily because "transfer, particularly in conjunction with consolidation of this action with the Tulane action, will result in exposing Plaintiff's identity in the latter, effectively voiding the pseudonym order in the Tulane Action."[36]

John Doe       also moved to seal numerous filings associated with the motion to transfer and related briefing,[37] arguing that the public filings referring to his case against Tulane should be sealed on the docket in this case to prevent the public from linking the two cases and thus revealing

---

[31] *E.g., Doe* Compl. (DE 30-1) ¶¶ 489-490, 520; Am. Compl. (DE 23) ¶¶ 91, 108.
[32] DE 27 - 29.
[33] DE 31 at 15-16)
[34] DE 37 at 27.
[35] *Id.* (emphasis added).
[36] *Id.* at 24.
[37] DE 42, 48, 54.

6

that John Doe      is the John Doe who sued Tulane.[38] Jane Doe opposed John Doe

motions,[39] arguing that John Doe      already publicly revealed that he was the John Doe who

sued Tulane in this district when he filed a public notice of supplemental authority in his appeal to

the Fourth Circuit identifying the Tulane case.[40] John Doe      did not ask the Fourth Circuit to

seal this notice of supplemental authority, and it remains available to the public.[41] That notice,

Jane Doe explained, publicly links the two cases.[42]

On March 28, 2024, the United States District Court for the Eastern District of North

Carolina granted Jane Doe motion to transfer venue to this district and denied John Doe

motions to seal, except to the limited extent that John Doe      sought to redact a phone number

from a public filing (which Jane Doe did not oppose).[43] The district court stated, in its publicly

available order, that "[o]n April 24, 2023, John Doe  sued Tulane in the United States District

Court for the Eastern District of Louisiana for violations of Title IX of the Education Amendments

of 1972, 20 U.S.C. §§ 1681-1688, and breach of contract."[44]

The district court considered and balanced the factors relevant to a transfer motion,

including the plaintiff's choice of forum, and the convenience of the parties and witnesses. Turning

to the interest of justice, the court noted John Doe      concession that "'some efficiencies

would be achieved by the transfer and consolidation sought by' Jane Doe [45] The district court rejected

John Doe      argument that these efficiencies could not overcome the "'[f]undamental

[u]nfairness' of exposing John Doe  identity in his Title IX action"[46] and accepted Jane Doe

---

[38] DE 43 at 6-7; DE 48-1 at 6-7; DE 55 at 6-7.
[39] DE 45, 53, 56.
[40] *See* ECF No. 40, *Doe v. Doe*, No. 23-1058 (4th Cir. May 16, 2023) (DE 46-1).
[41] *See* Docket *passim*, *Doe v. Doe*, No. 23-1058 (4th Cir.).
[42] DE 45 at 6-8; DE 53 at 4-6; DE 56 at 4-6.
[43] DE 58.
[44] *Id.* at 5.
[45] *Id.* at 13 (quoting DE 38 at 30).
[46] *Id.* (quoting DE 38 at 30).

7

argument that "'John Doe    identity is already public because he chose to pursue this case, and he is already linked to the Tulane case because of his own public filing.'"[47]

The case was transferred to this Court on April 2, 2024.[48] Jane Doe now moves to consolidate this case with John Doe    case against Tulane.

## LAW AND ARGUMENT

Federal Rule of Civil Procedure 42 ("Rule 42") provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost and delay. A district court has "broad discretion" to consolidate cases.[49] In determining whether consolidation is appropriate, courts consider a number of factors, including:

(1) whether the actions are pending before the same court;

(2) whether common parties are involved in the cases;

(3) whether there are common questions of law and/or fact;

(4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately; and

(5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately.[50]

Weighing these factors, this case should be joined for trial and consolidated with the Tulane case.

---

[47] *Id.* (quoting DE 50 at 8)).

[48] DE 59.

[49] *Bottazzi v. Petroleum Helicopters, Inc.*, 664 F.2d 49, 50 (5th Cir. 1981); *see also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) ("When a case is transferred from a district in another circuit, the precedent of the circuit court encompassing the transferee district court applies to the case on matters of federal law.").

[50] *Longhai Desheng Seafood Stuff Co. v. La. Newpack Shrimp Co.*, No. 20-782, 2020 WL 12814847, at *1 (E.D. La. May 29, 2020); *Danos v. Boh Bros. Constr. Co.*, No. 10-1469, 2010 WL 11538659, at *2 (E.D. La. July 21, 2010).

A. **Both Actions Are Pending in the Same Court and Have Common Parties.**

First, the actions are pending before the same court now that this case has been transferred from the Eastern District of North Carolina to the Eastern District of Louisiana pursuant to the March 28, 2024 order.[51] Thus, the first factor weighs in favor of consolidation.

The second factor also weighs in favor of consolidation because John Doe is the plaintiff in both cases and has the same counsel in both cases.[52] Jane Doe and Tulane are defendants in only one case, but federal courts have found that "the fact that a defendant may be involved in one case and not the other is not sufficient to avoid consolidation.[53] Despite being named only in one case, Tulane supports Jane Doe motion to consolidate.

B. **Both Cases Will Require Determination of Common Questions of Fact and Law.**

The existence of common questions of fact and law also favors consolidation. Although John Doe asserts separate legal claims against Jane Doe and Tulane, the legal claims overlap in at least one important respect—John Doe alleges in the Tulane case that Tulane breached its contract with him[54], and he alleges in this case that Jane Doe induced Tulane to breach that contract.[55] There are critical facts that underlie both complaints, including whether John Doe sexually assaulted Jane Doe and Sue Roe, such that Jane Doe truthfully reported the assault to Tulane; whether Jane Doe manipulated Tulane's Title IX process and induced Tulane

---

[51] DE 58.

[52] *Ill. Cent. R.R. v. Turner*, No. 5:08-cv-18-DCB-MJR, 2009 WL 5217029, at *1 (S.D. Miss. Dec. 30, 2009) (noting that existence of common parties and counsel supported consolidation). John Doe is represented by Kara Gorycki, Andrew Miltenberg, and Stuart Bernstein in this case (DE 66, 67, 68) and in the Tulane case, ECF Nos. 5 & 10, *Doe v. Adm'rs of Tulane Educ. Fund*, No. 2:23-cv-01348 (E.D. La. Apr. 25 and 27, 2023).

[53] *Bottazzi*, 664 F.2d at 50.

[54] *Doe* Compl. ¶¶ 523-532 (DE 30-1).

[55] Am. Compl. ¶¶ 124-135 (DE 23).

9

to breach its contract with John Doe       and, whether John Doe       suffered various forms of damages when he was expelled.[56]

In *Bottazzi*, the United States Court of Appeals for the Fifth Circuit affirmed a district court's decision to consolidate two cases filed by the same plaintiff despite the fact that each case involved prosecution of separate tortious conduct by separate defendants during two different accidents.[57] In affirming the district court's consolidation order, the Fifth Circuit relied on the fact that the same plaintiff sought psychological damages, thus putting his psychological condition at issue in both cases.[58] As the Fifth Circuit explained, "surely the psychological state of a given person at a given time is a unitary matter."[59] The Fifth Circuit concluded that the "question of what that state is and will be, present and future," presented a "sufficient common question of fact to support the consolidation of these two cases, in each of which Mr. Bottazzi's mental infirmities, if any, and their causes were at issue."[60]

John Doe       seeks overlapping damages. In the instant complaint, John Doe claims "loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages."[61] Likewise, John Doe       claims in the Tulane complaint that "he sustained damages, including, but not limited to, emotional distress, loss of future educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages".[62] Here, as in *Bottazzi*, John Doe       emotional state, and the states of his earning capacity, educational and career opportunities, and reputation are each a

---

[56] *Doe 1 v. Gallia Cty. Local Schs. Bd. of Educ.*, No. 2:23-cv-3875, 2024 WL 770770, at \*1-2 (S.D. Ohio Feb. 26, 2024) (consolidating cases arises from alleged sexual abuse perpetrated by the same individuals and reports about that abuse to school officials).
[57] *Bottazzi*, 664 F.2d at 50.
[58] *Bottazzi*, 664 F.2d at 50-51.
[59] *Bottazzi*, 664 F.2d at 51.
[60] *Bottazzi*, 664 F.2d at 51.
[61] *See, e.g.*, Am. Compl. ¶¶ 108, 122, 134, 145, 150 (DE 23)
[62] *Doe* Compl ¶¶ 520, 531 (DE 30-1)

"unitary" matter, and "what that state is and will be, present and future, presents a sufficient common question of fact to support the consolidation of these two cases[.]"[63]

### C. Any Risk of Prejudice or Confusion Would Be Outweighed by the Risk of Inconsistent Outcomes and Duplicative Recovery.

The fourth factor weighs in favor of consolidation because there is no risk of prejudice or confusion, and any such risk would be outweighed by the risk of inconsistent rulings and verdicts, and the possibility of duplicative recoveries. Tulane has consented to consolidation, and thus will not be prejudiced. To the extent that John Doe contends, as he did in opposition to Jane Doe motion to transfer, that consolidation will expose John Doe identity as the plaintiff in the Tulane case, the North Carolina federal court already rejected that argument in the transfer order.[64] John Doe identity is public "because he chose to pursue this case, and he is already linked to the Tulane case because of his own public filing."[65] Moreover, the publicly available transfer order explicitly states that, "[o]n April 24, 2023, John Doe sued Tulane in the United States District Court for the Eastern District of Louisiana . . . ."[66] John Doe is still "John Doe" in the caption of the Tulane case, but he can longer contend that his identity is secret.

Consolidation will not delay either case. No discovery has been taken in this case, and Jane Doe understands that only document discovery has occurred in the Tulane case. John Doe sent Jane Doe a broad subpoena for documents in the Tulane case in September 2023.[67] Jane Doe timely objected, as most of the documents sought by the subpoena were in Tulane's possession.[68] Counsel for Jane Doe and John Doe exchanged letters about the

---

[63] *Bottazzi*, 664 F.2d at 51.
[64] DE 58 at 13.
[65] *Id.* (quoting DE 50 at 8).
[66] *Id.* at 5.
[67] (DE 30-2.
[68] See, Declaration of Kelly Margolis Dagger ¶ 4, attached hereto as Exhibit 1.

11

subpoena objections in October 2023, but counsel for Jane Doe has not heard from John Doe counsel about the subpoena in months.[69]

Regardless, any risk of prejudice or confusion if the cases are consolidated is significantly outweighed by the risk of inconsistent rulings and verdicts if the cases are tried separately. Absent consolidation, two courts could issue inconsistent pretrial rulings on issues that would be common to both cases, such as the admissibility of certain evidence of John Doe alleged damages. Different triers of fact could reach contradictory decisions—one could decide that Tulane did not breach its contract with John Doe while the other could decide that Jane Doe induced Tulane to breach its contract with John Doe One jury could believe that John Doe sexually assaulted Jane Doe and Sue Roe; another could determine otherwise.

Consolidation is also necessary to mitigate the risk of duplicative recoveries. John Doe alleges in both this case and the Tulane case that he was wrongfully expelled from Tulane, and that expulsion caused a variety of other consequences, including diminished earning capacity, loss of educational and job opportunities, emotional distress, and reputational harm.[70] But Jane Doe did not expel John Doe Tulane did. Necessarily, John Doe theory is that Jane Doe (and Sue Roe) contributed to Tulane's decision to expel him, causing his damages.[71] Whatever impact expulsion may have had on John Doe earning capacity and educational and career opportunities, it is a single impact, and John Doe should not be able

---

[69] *Id.* ¶¶ 5-7.

[70] *See Doe* Compl. ¶ 531 (DE 30-1); Am. Compl. ¶ 4 (DE 23).

[71] *See, e.g., Doe* Compl. ¶ 491 (DE 30-1) ("Tulane's affirmance of Sue Roe's and Jane Doe's false allegations paints Plaintiff as a sexual predator, wiping out a lifetime of hard work towards his reputation, education and future career."); Am. Compl. ¶ 3 (DE 23) ("Defendant Ms. Jane Doe strategically utilized and manipulated Tulane's Title IX investigation process to further a malicious vendetta against Plaintiff. Despite Jane Doe inconsistent and varying accounts of the events, witness statements disproving Jane Doe allegations, and significant exculpatory evidence, Tulane ultimately found Plaintiff responsible for nonconsensual sexual activity with Jane Doe and imposed a sanction of expulsion.").

12

to recover damages from both defendants for the same injury.[72] Similarly, if Jane Doe and Tulane both contributed to John Doe alleged reputational damages and emotional distress damages, he cannot recover twice for injuries he suffered once.

### D. Consolidation Will Conserve the Resources of the Parties and the Court and Promote Efficiency.

As John Doe conceded in his response to the motion to transfer, consolidation will promote efficiency.[73] Given the factual similarity of the two cases, discovery between the two cases is likely to overlap significantly.[74] There are numerous common witnesses in the two cases. John Doe Jane Doe and Sue Roe are central to both complaints and appear likely to be witnesses in both cases.[75] Jane Doe has already received a subpoena that John Doe issued in the Tulane case, seeking discovery pertaining to the same facts that give rise to this case.[76] John Doe complaints in the two cases reveal additional potential witnesses common to both cases.[77] John Doe discussed the actions and statements of two Tulane employees, Christopher Zacharda and Jaqueline Barber[78], and eighteen students in both complaints,[79] suggesting that there may be twenty more overlapping potential witnesses.

---

[72] *See, e.g., Pride Centric Res., Inc. v. LaPorte*, No. 19-cv-10163, at *3 (E.D. La. Dec. 9, 2020) (concluding that consolidation for trial was necessary to diminish risk of double recovery).

[73] DE 38 at 30.

[74] *See* Jane Doe Decl. ¶ 15 (DE 29-2).

[75] *Doe* Compl. (DE 30-1) ¶¶ 147-213 (allegations about John Doe interactions with Sue Roe and Jane Doe Am. Compl. (DE 23) ¶¶ 14-45 (same).

[76] *See* Jane Doe Decl. ¶ 14 (DE 29-2); Subpoena to Jane Doe (DE 30-2).

[77] *Kong Meng Xiong v. City of Merced*, No. 1:13-cv-00083, 2013 WL 5493388, at *5 (E.D. Cal. Oct. 1, 2013) (relying on common allegations of complaints to support consolidation).

[78] *Doe* Compl. ¶¶ 69, 221 (DE 30-1), Am. Compl. ¶¶ 48, 50 DE 23).

[79] *Supra* nn.28-29.

Consolidation will prevent witnesses from sitting for deposition twice and being called to testify at two trials.[80] It will also eliminate the need for the parties to subpoena documents from non-party witnesses more than once. Consolidation will conserve judicial resources in the pretrial process and reduce the time and cost of trying the cases separately. Therefore, the final factor also weighs in favor of consolidation.

## **CONCLUSION**

The relevant factors favor consolidation here. The same facts underlying this case are equally critical to the suit John Doe filed against Tulane. Judicial efficiency, the need for harmonized justice, and basic fairness dictate that Jane Doe request for consolidation should be granted.

Respectfully submitted,

_____/s/ Caroline Murley_____
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
cmurley@twpdlaw.com

---

[80] *Danos*, 2010 WL 11538659, at *2 (finding that consolidation was appropriate where two lawsuits would share many of the same witnesses); *see also United States ex rel. Sprinkle Masonry, Inc. v. THR Enters., Inc.*, No. 2:14-cv-251, 2014 WL 4748527, at *3 (E.D. Va. Sept. 22, 2014) (finding that consolidation was appropriate where cases involved the same potential witnesses and the same counsel, explaining that "the parties will save time and expense through consolidation by having one trial and one discovery process, rather than two").

And –

_____/s/ Kelly Margolis Dagger_____
Kelly Margolis Dagger, N.C. Bar No. 44329
*(pro hac vice pending)*
James M. Weiss, N.C. Bar No. 42386
*(pro hac vice pending)*
Chelsea Pieroni, N.C. Bar No. 59816
*(pro hac vice pending)*
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
kelly.dagger@elliswinters.com

***Counsel for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on

all known counsel of record in this proceeding via the court's CM/ECF this 30th day of April, 2024.

_____/s/ Caroline Murley_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
CASE NO. 2:24-CV-825

John Doe

        Plaintiff,

    v.

Jane Doe

        Defendant.

DECLARATION OF KELLY
MARGOLIS DAGGER

Pursuant to 28 U.S.C. § 1746, I, Kelly Margolis Dagger, declare the following:

1.     My name is Kelly Margolis Dagger. I am over twenty-one years of age and competent to testify in all other respects. I have personal knowledge of the matters set forth in this declaration.

2.     I live and work in Raleigh, North Carolina. I have represented Defendant Jane Doe in the above-captioned action since the case was filed in the United States District Court for the Eastern District of North Carolina.

3.     In September 2023, I accepted service of a document subpoena directed to Jane Doe from John Doe counsel. The subpoena sought documents in John Doe case against Tulane University. A copy of the subpoena is already on file at DE 30-2.

4.     On Jane Doe behalf, I timely served written objections to the subpoena on September 25, 2023. Among other things, Jane Doe objected that many of the categories of documents requested were in the possession of Tulane and could not properly be sought from Jane Doe who is not a party to the Tulane case. In the written objections, I offered to meet and confer about Jane Doe objections.



EXHIBIT
1

5.    On October 6, 2023, I received a letter from Kara Gorycki, counsel for John Doe in both the case against Jane Doe and in the Tulane case, responding to and contesting the propriety of Jane Doe subpoena objections.

6.    On October 13, 2023, I replied to Ms. Gorycki by letter, where I reasserted Jane Doe objections, addressed the points in Ms. Gorycki's letter, and reminded Ms. Gorycki that my offer to meet and confer about the objections remained open.

7.    John Doe counsel has not followed up with me about the subpoena or my offer to meet and confer since I sent the October 13, 2023 letter.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 22nd day of April, 2024.

Kelly Margolis Dagger

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## NOTICE OF SUBMISSION DATE

PLEASE TAKE NOTICE, that Defendant Jane Doe  Motion to Consolidate will be submitted for decision to the Honorable Judge Eldon Fallon, United States District Court for the Eastern District of Louisiana, on the **5th day of June, 2024.**

1

Respectfully submitted,

_____/s/ Caroline Murley_____
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
cmurley@twpdlaw.com

-   **And –**

_____/s/ Kelly Margolis Dagger_____
Kelly Margolis Dagger, N.C. Bar No. 44329
*(pro hac vice pending)*
James M. Weiss, N.C. Bar No. 42386
*(pro hac vice pending)*
Chelsea Pieroni, N.C. Bar No. 59816
*(pro hac vice pending)*
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
kelly.dagger@elliswinters.com

***Counsel for Defendant*** Jane Doe


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 30th day of April, 2024.

_____/s/ Caroline Murley_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

Original Filed at Docket No. 73,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

▮▮▮▮▮▮▮▮▮▮                                      **CIVIL ACTION**

**VERSUS**                                        **NO. 24-825**

▮▮▮▮▮                                            **SECTION "L" (1)**

#### ORDER

It has come to the Court's attention that the subject matter of the above-captioned case is related to that at issue in Case No. 23-1348 pending in Section "P" (3) of this Court. Accordingly;

**IT IS ORDERED** that the above captioned matter be **TRANSFERRED** to Section "P", Magistrate Judge Division (3), of this Court.

New Orleans, Louisiana, this 1st day of May, 2024.

May 1, 2024

_____
United States District Judge

TRANSFERRED TO
**SECT. P MAG 3**

Original Filed at Docket No. 74,
Sealed by Court Order

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**John Doe**

    **VERSUS**

                    \*   **CASE NO. 2:24-CV-825**

                    \*   **JUDGE ELDON FALLON**

                    \*   **MAGISTRATE**

**Jane Doe**             \*   **JANIS VAN MEERVELD**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### _EX PARTER_ MOTION TO APPEAR _PRO HAC VICE_

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission _pro hac vice_ of Chelsea Pieroni of the firm Ellis Winters 4131 Parklake Avenue, Suite400, Raleigh NC 27612; Telephone: (949) 865-7015, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson, is an active member in good standing of the bar of this Court and agrees to serve as the designated local counsel for Chelsea Pieroni pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Affidavit of Chelsea Pieroni stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from Supreme Court of North Carolina attached as Exhibit B and the ECF Attorney Registration Form for Chelsea Pieroni attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Chelsea Pieroni of the firm Ellis Winters to appear and participate _pro hac vice_ as co-counsel in the above action on behalf of Jane Doe

Respectfully submitted,

_/s/ Caroline Murley_
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

***Counsel for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 7th day of May, 2024.

_/s/ Caroline Murley_
TAYLOR, WELLONS, POLITZ & DUHE, LLC

2

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>DECLARATION OF CHELSEA PIERONI</u>

I, Chelsea Pieroni, certify that the following is a true and correct statement submitted in accordance with LOCAL RULE 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I have been admitted to practice law in the State of North Carolina.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the State of North Carolina.

6. I am not currently suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have not been the subject of disciplinary action by the bar or courts of any jurisdiction during the preceding five (5) years.

8. No criminal charges have been instituted against me.



**EXHIBIT**

**A**

9.    I consent to electronic service of all documents through the Court's electronic filing system.

10.    I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11.    Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

NOTARY PUBLIC:

Elizabethuana Wang, elizabeth warren worthy

SIGNED THIS __1__ DAY OF __May__, 2024

MY COMMISION ENDS: __10/17/26__

2

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Grant E. Buckner, Clerk of the Supreme Court of North Carolina, do hereby certify

that on October 21, 2022, license to practice as an Attorney and Counselor at Law in all the

Courts of this State was issued by the North Carolina Board of Law Examiners to

## Chelsea Pieroni

according to the certified list of licentiates reported by the Secretary of said Board and filed

in my office as required by statute.

To the date of this certificate, no order revoking said license has been filed with this

Court and no order suspending same is in effect.

WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in

Raleigh, this April 19, 2024.

Grant E. Buckner
Clerk of the Supreme Court
of the State of North Carolina

**EXHIBIT**

tabbies

**B**

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
www.pacer.gov

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: _CHELSEA PIERONI_

Attorney Bar # and State: 59816 North Carolina

Firm Name: Ellis & Winters LLP

Firm Address: P.O. Box 33550, Raleigh, NC 27636

Telephone Number: (919) 865-7000

E-Mail Address: chelsea.pieroni@elliswinters.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑ Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number 2:23-cv-01348

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

1



- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4/16/2024
Date

_____
Attorney Signature

[Rev.11/2019]

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

John Doe

VERSUS

Jane Doe

\* CASE NO. 2:24-CV-825
\*
\* JUDGE ELDON FALLON
\*
\*
\* MAGISTRATE
\* JANIS VAN MEERVELD
\*
\*

*****************************************

## ORDER

Considering the foregoing Motion for Admission *Pro Hac Vice* of Chelsea Pieroni as counsel for defendant Jane Doe

IT IS HEREBY ORDERED that Chelsea Pieroni should be and are hereby admitted to the bar of this Court *pro hac vice* on behalf of defendant Jane Doe.

New Orleans, Louisiana, this _____ day of May, 2024.

_____
**United States District Judge**

3

Original Filed at Docket No. 75,

Sealed by Court Order

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **John Doe** | *    **CASE NO. 2:24-CV-825** |
| | * |
| **VERSUS** | *    **JUDGE ELDON FALLON** |
| | * |
| | * |
| | *    **MAGISTRATE** |
| | *    **JANIS VAN MEERVELD** |
| **Jane Doe** | * |
| | * |

*****************************************

### *EX PARTER* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe, by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Kelly Dagger of the firm Ellis Winters 4131 Parklake Avenue, Suite400, Raleigh NC 27612; Telephone: (949) 865-7015, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson, is an active member in good standing of the bar of this Court and agrees to serve as the designated local counsel for Kelly Dagger pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Affidavit of Kelly Dagger stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from Supreme Court of North Carolina attached as Exhibit B and the ECF Attorney Registration Form for Kelly Dagger attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Kelly Dagger of the firm Ellis Winters to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe

Respectfully submitted,

_____/s/ Caroline Murley_____
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

**Counsel for Defendant** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on

all known counsel of record in this proceeding via the court's CM/ECF this 7th day of May, 2024.

_____/s/ Caroline Murley_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DECLARATION OF KELLY MARGOLIS DAGGER

I, Kelly Margolis Dagger, certify that the following is a true and correct statement submitted in accordance with LOCAL RULE 83.2.5:

1.  I desire to appear as counsel for **Jane Doe** *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2.  I have been admitted to practice law in the State of North Carolina.

3.  I have not been admitted to practice law in the State of Louisiana.

4.  I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5.  I am currently licensed in good standing to practice law in the State of North Carolina.

6.  I am not currently suspended or disbarred by any jurisdiction in which I have been admitted.

7.  I have not been the subject of disciplinary action by the bar or courts of any jurisdiction during the preceding five (5) years.

8.  No criminal charges have been instituted against me.



9.     I consent to electronic service of all documents through the Court's electronic filing system.

10.     I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

NOTARY PUBLIC:

SIGNED THIS ___1___ DAY OF ___May___, 2024

MY COMMISION ENDS: ___10/19/2026___

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Grant E. Buckner, Clerk of the Supreme Court of North Carolina, do hereby certify

that on August 24, 2012, license to practice as an Attorney and Counselor at Law in all the

Courts of this State was issued by the North Carolina Board of Law Examiners to

## Kelly Margolis Dagger

according to the certified list of licentiates reported by the Secretary of said Board and filed

in my office as required by statute.

To the date of this certificate, no order revoking said license has been filed with this

Court and no order suspending same is in effect.

WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in

Raleigh, this April 19, 2024.

Grant E. Buckner
Clerk of the Supreme Court
of the State of North Carolina



**EXHIBIT**

**B**

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
www.pacer.gov

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Kelly Margolis Dagger

Attorney Bar # and State: 44329 North Carolina

Firm Name: Ellis & Winters LLP

Firm Address: P.O. Box 33550, Raleigh, NC 27636

Telephone Number: (919) 865-7000

E-Mail Address: kelly.dagger@elliswinters.com
(Attorney's email for electronic service)

Additional E-Mail Address: elizabeth.worthy@elliswinters.com
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ✔  Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ✔ No ☐ Case number 2:23-cv-01348

Is this regarding a MDL case? Yes ☐ No ✔ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ✔ Office where employed:

1



- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4/16/2024
Date

Attorney Signature

[Rev.11/2019]

2

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>ORDER</u>

Considering the foregoing Motion for Admission *Pro Hac Vice* of Kelly Dagger as counsel for defendant Jane Doe

IT IS HEREBY ORDERED that Kelly Dagger should be and are hereby admitted to the bar of this Court *pro hac vice* on behalf of defendant Jane Doe

New Orleans, Louisiana, this _____ day of May, 2024.

_____

**United States District Judge**

3

Original Filed at Docket No. 76,
Sealed by Court Order

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

-------------------------------------------------------X

John Doe

**Plaintiff,**

-against-

Jane Doe

**Defendant.**

-------------------------------------------------------X

**CASE NO.: 2:24-CV-825**

**JUDGE DARREL PAPILLION**

**MAGISTRATE
EVA J. DOSSIER**

## MEMORANDUM IN OPPOSITION
## TO MOTION TO CONSOLIDATE

Plaintiff John Doe hereby opposes Defendant Jane Doe Motion to Consolidate. The Motion seeks to merge two cases that are both presently in this District before the same judge, the Honorable Judge Darrel Papillion. The case at issue that Defendant seeks to consolidate with this action is *John Doe v. The Administrators of the Tulane Educational Fund d/b/a Tulane University*, Case No. 2:23-CV-01348, which was filed in Section P ("Tulane" case). Although both cases have the same Plaintiff, they have different defendants, different legal claims therein, and different factual bases for those claims. Consolidation of the two cases would disclose Plaintiff's identity protected by a pseudonym order in the Tulane case, in violation of that order, and thus deprive Plaintiff of a substantive right of privacy.[1] In addition, consolidation would be inefficient, more time consuming, and more costly for the court and the parties to adjudicate these cases together, and thus consolidation is not appropriate.

---

[1] Upon information and belief, counsel for Plaintiff is preparing a motion to seal any reference identifying the Plaintiff in association with the Tulane case in the docket of this action.

## FACTUAL BACKGROUND

This case arises out of false claims that Defendant Jane Doe made and filed with Tulane University against Plaintiff, claiming that Plaintiff sexually assaulted her. This allegation was among other false communications, which caused him to be wrongfully expelled from the University. The facts relevant to this Memorandum in Opposition are as follows.

### A. The Instant Action

The five causes of action in this case against Jane Doe are: 1) defamation, 2) abuse of process, 3) tortious interference with contract, 4) intentional infliction of emotional distress, and 5) civil conspiracy. Amended Complaint ("Compl.") ¶¶ 92-153 (R. Doc. 23). The crux of this case is that Defendant Jane Doe made false and defamatory statements about Plaintiff, including false claims that he sexually assaulted her, which were made to staff at Tulane University, and to others, that resulted in him being wrongfully expelled from Tulane, among other harm. Compl. ¶ 93 (R. Doc. 23).

Plaintiff also alleges in this action that Jane Doe abused legal process when she sought a restraining order against him in Louisiana civil court based on false claims that he sexually assaulted her. Those claims are outside the scope of her false claims made directly to Tulane, which caused the University to investigate and punish Plaintiff under Title IX. Compl. ¶ 111, 116 (R. Doc. 23). Those false claims, among other actions, are also the basis for Plaintiff's claims against Jane Doe for intentional infliction of emotional distress, and defamation. Compl. ¶¶ 137-142, 148 (R. Doc. 23).

### B. The Tulane Case

The causes of action in the Tulane case are distinct from those in this action: 1) violation of Title IX, and 2) breach of contract. *See* Complaint in Tulane case ("Tulane Compl.", R. Doc.

30-1). The defendant in the Tulane case is also distinct from the defendant in this action – the Tulane case was filed against The Administrators of the Tulane Educational Fund d/b/a Tulane University, and there are no named individual defendants in that case. *Id.* Jane Doe is not a party to the Tulane case.

## ARGUMENT

### A.      Defendant's Motion is Barred by the Doctrine of Judicial Estoppel

The doctrine of judicial estoppel bars Defendant's motion because Defendant takes a position here – that the facts in the two cases are substantially similar - that is inconsistent with the position she has taken before the Fourth Circuit when she argued against a motion for pseudonym in this case. Defendant also made the opposite argument from that which she makes here before the Eastern District of North Carolina in favor of the transfer order. In that order, the District Court Judge noted that Defendant's argument that the cases were factually dissimilar may be relevant to a motion to consolidate (R. Doc. 58).

The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from engaging in intentional self-contradiction to obtain an unfair advantage in litigation, by pursuing a theory that is incompatible with its prior position. *See* Jett v. Zink, 474 F.2d 149, 154-55 (5th Cir. 1973)(the Fifth Circuit applied judicial estoppel to a party's contradictory position that a particular action initially characterized as in personam was quasi in rem). Defendant should be barred from arguing that this case is so factually similar to the Tulane case that it warrants consolidation, based on her prior contradictory arguments, and the principal of judicial estoppel.

### B.      Consolidation Would Violate the Pseudonym Order in the Tulane Case

Moreover, as Jane Doe noted in her Memorandum, the Tulane case has an existing pseudonym order. If the two cases were combined, Plaintiff's identity would no longer be

protected in the Tulane case, in violation of that order and thus deprive Plaintiff of a substantive right of privacy.[2]

## C.      Consolidation Would Be Less Efficient, More Time Consuming, and More Costly

Defendant [Jane Doe] moves this Court to consolidate this action with the Tulane case, which was recently transferred to this district, pursuant to Federal Rules of Civil Procedure ("FRCP"), Rule 42. Courts in this district consider the following factors when deciding whether consolidation is appropriate:

> In determining whether consolidation is appropriate, courts in this Circuit consider a number of factors, including: (1) whether the actions are pending before the same court; (2) whether common parties are involved in the cases; (3) whether there are common questions of law and/or fact; (4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, whether the risk is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately; and (5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately. Importantly, however, "Consolidation does not so completely merge the two cases as to deprive a party of any substantial rights that he may have had if the actions had proceeded separately, for the two suits retain their separate identities and each requires the entry of a separate judgment."

*Henry v. Maxum Indem. Co.,* No. CV 20-2995-WBV-JVM, 2022 WL 15626272, at *3–4 (E.D. La. Mar. 18, 2022).

In *Henry,* the court found that a "majority of the five factors considered by this Circuit in determining whether to grant consolidation weigh[ed] against consolidation." *Id.* Some of the factors in that case mirror the facts here: (i) there are no common defendants; (ii) there are distinct legal claims; (iii) there are distinct substantive factual bases for the legal claims, and consolidation will not conserve resources, but will, to the contrary, cause both cases to be less efficient and cause all parties greater time and expense.

---

[2] Upon information and belief, counsel for Plaintiff is preparing a motion to seal any reference identifying the Plaintiff in association with the Tulane case in the docket of this action.

The court in *Henry* placed a high value on judicial efficiency, as well as the question of whether there was a risk in "inconsistent adjudications of common factual or legal questions if the cases are tried separately":

> In light of these factual distinctions between the Henry and Gaudet matters, the Court further finds that there is no risk of inconsistent adjudications of common factual or legal questions if the cases are tried separately. On this issue, the Court agrees with Plaintiffs that a finding of liability in the Gaudet matter, based upon the actions or inactions of the Attorney Defendants in the pre-review process, has no bearing on the claims of the Henry plaintiffs regarding the actions or inactions of the Attorney Defendants in the post-review process. The Court further finds that the claims of the Gaudet plaintiffs and the Henry plaintiffs are not "interconnected" or "intertwined" as they were in the Pride Centric Resources, Inc. v. LaPorte case, which supported consolidation in that matter.

*Henry,* at *4 (E.D. La. Mar. 18, 2022).

Although the factual background in the Tulane case overlaps to an extent with the facts relied upon in this action, the substantive factual bases for the claims against Tulane are rooted in the actions of Tulane employees, and not the actions by Jane Doe The Tulane case alleges that Tulane violated Title IX and breached its contract with Plaintiff by improperly investigating and adjudicating the Title IX case against Plaintiff. Tulane Compl. ¶ 1 (R. Doc. 30-1). The crux of the facts supporting the Tulane case involve acts and omissions by Tulane employees specifically, who engaged in a flawed and biased Title IX investigation and adjudication, not the actions or inactions of Jane Doe The factual argument in the Tulane case as to facts relating to Jane Doe is merely that Plaintiff would have been exonerated of the charges against him had Tulane performed its legal obligations properly under Title IX and Tulane policies and procedures. Consequently, there is no risk of inconsistent outcomes, weighing against consolidation.

**D.      Transfer of Cases to Same District and Judge Does Not Necessitate Consolidation**

This action was filed in December 2022 in the Eastern District of North Carolina, and was recently transferred to this district after a motion to transfer was filed in that district by Jane Doe

(R. Doc. 1). Defendant is correct that in response to Jane Doe motion to transfer this case to this district, Plaintiff acknowledged that having the cases before the same judge may assist in assuring that the rulings were consistent in the two matters. (R. Doc. 37 at 27). And in fact, the two cases are now before the same judge.

Having the same judge on two separate, distinct cases, that have some overlapping factual background, may be helpful and more efficient for the courts and the parties because two different judges do not have to become acquainted with that factual background. This, however, is not the same as a consolidation of the matters, where legal claims that are entirely different, against different defendants, would be joined together in the same case. If these two cases were consolidated, the cases would both be less efficient, because each of the defendants would have to contend with matters that do not relate to the case against them, likely causing them additional time and money invested in their respective cases.

**E.     Substantive Facts Supporting Distinct Legal Claims in Each Action Do Not Overlap**

Defendant alleges in her Memorandum that there are facts that overlap in this case with some facts in the Tulane case. However, the facts that overlap in the Tulane case are part of the factual background of that case, and do not form the substance of a legal claim against Tulane.

For example, Defendant highlights Plaintiff's factual background in the Tulane case regarding a consensual relationship that he had with Jane Doe Compl. ¶ 19-45 (R. Doc. 23); Tulane Compl. ¶ 163-213 (R. Doc. 30-1). The scope of the relationship between Plaintiff and Jane Doe is a good example of the type of facts that overlap in the two actions. The question of whether that relationship was consensual, and whether a sexual assault occurred, is directly relevant to whether, for example, Jane Doe defamed Plaintiff, as alleged in this action.

6

In the Tulane action, however, the purpose of outlining the factual background regarding the relationship between the parties is merely to support Plaintiff's argument that Tulane mishandled the investigation and adjudication of the Title IX case against him. Plaintiff's argument in the Tulane case is that but-for that mishandling, Tulane would have made a determination in his favor. To the contrary, in this case, the question of whether Jane Doe falsified her complaints to Tulane about Plaintiff is directly at issue, as are her numerous other instances of false statements and filings against Plaintiff, which falls outside the scope of the Tulane Title IX investigation and adjudication.

**CONCLUSION**

In light of the foregoing, the factors weigh against consolidation of this action with the Tulane case. Consolidation would violate Plantiff's privacy by disclosing his identity that is protected by a pseudonym order in the Tulane case. In addition, consolidation would result in compromised efficiency, greater time, and be more costly to all parties involved. As such, Plaintiff respectfully requests the Court deny Defendant Jane Doe Motion for Consolidation.

Respectfully submitted,

/s/ Andrew T. Miltenberg
Andrew T. Miltenberg (*pro hac vice* admission pending)
Kara L. Gorycki (*pro hac vice* admission pending)
Kimberly S. Courtney (*pro hac vice* admission pending)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500 (telephone)
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com
*Attorneys for Plaintiff*

- *And* -

/s/ Alex T. Robertson
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar. No. 37230)
**Marcelle Robertson Mestayer LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax: (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com
*Local Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECP this 28th day of May, 2024.


/s/ Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP

Original Filed at Docket No. 77,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

*****************************************

## *EX PARTER* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Kelly Dagger of the firm Ellis Winters 4131 Parklake Avenue, Suite400, Raleigh NC 27612; Telephone: (949) 865-7015, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agrees to serve as the designated local counsel for Kelly Dagger pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Affidavit of Kelly Dagger stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from Supreme Court of North Carolina attached as Exhibit B and the ECF Attorney Registration Form for Kelly Dagger attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Kelly Dagger of the firm Ellis Winters to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe

Respectfully submitted,

_____/s/ Caroline Murley_____
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

**Counsel for Defendant** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 29th day of May, 2024.

_____/s/ Caroline Murley_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

2

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

**************************************

## <u>ORDER</u>

Considering the foregoing Motion for Admission *Pro Hac Vice* of Kelly Dagger as counsel for defendant Jane Doe

IT IS HEREBY ORDERED that Kelly Dagger should be and are hereby admitted to the bar of this Court *pro hac vice* on behalf of defendant Jane Doe

New Orleans, Louisiana, this _____ day of May, 2024.

_____

**United States District Judge**

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Grant E. Buckner, Clerk of the Supreme Court of North Carolina, do hereby certify

that on August 24, 2012, license to practice as an Attorney and Counselor at Law in all the

Courts of this State was issued by the North Carolina Board of Law Examiners to

## Kelly Margolis Dagger

according to the certified list of licentiates reported by the Secretary of said Board and filed

in my office as required by statute.

   To the date of this certificate, no order revoking said license has been filed with this

Court and no order suspending same is in effect.

   WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in

Raleigh, this April 19, 2024.

Grant E. Buckner
Clerk of the Supreme Court
of the State of North Carolina

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | CASE NO. 2:24-CV-825 |
| | * | |
| VERSUS | * | JUDGE DARREL PAPILLION |
| | * | |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | EVA J. DOSSIER |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DECLARATION OF KELLY MARGOLIS DAGGER

I, Kelly Margolis Dagger, certify that the following is a true and correct statement submitted in accordance with LOCAL RULE 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I have been admitted to practice law in the State of North Carolina.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the State of North Carolina.

6. I am not currently suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have not been the subject of any disciplinary action by the bar or courts of any jurisdiction.

8. No criminal charges or other criminal matters have been instituted against me.

9. I consent to electronic service of all documents through the Court's electronic filing system.

10. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11. Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

NOTARY PUBLIC:

Elizabeth warren worthy

SIGNED THIS 23 DAY OF May , 2024

MY COMMISION ENDS: 10/19/2026

2

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
**www.pacer.gov**

      This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Kelly Margolis Dagger

Attorney Bar # and State: 44329 North Carolina

Firm Name: Ellis & Winters LLP

Firm Address: P.O. Box 33550, Raleigh, NC 27636

Telephone Number: (919) 865-7000

E-Mail Address: kelly.dagger@elliswinters.com
(Attorney's email for electronic service)

Additional E-Mail Address: elizabeth.worthy@elliswinters.com
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ✔     Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ✔ No ☐ Case number 2:23-cv-01348

Is this regarding a MDL case? Yes ☐ No ✔ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ✔ Office where employed:

_____

1

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4/16/2024

**Date**

**Attorney Signature**

[Rev.11/2019]

2

Original Filed at Docket No. 78,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

John Doe          *    **CASE NO. 2:24-CV-825**

                     *

**VERSUS**         *    **JUDGE ELDON FALLON**

                     *

                     *

                     *    **MAGISTRATE**

                     *    **JANIS VAN MEERVELD**

Jane Doe         *

                     *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## *EX PARTER* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Chelsea Pieroni of the firm Ellis Winters 4131 Parklake Avenue, Suite400, Raleigh NC 27612; Telephone: (949) 865-7015, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agrees to serve as the designated local counsel for Chelsea Pieroni pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Affidavit of Chelsea Pieroni stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from Supreme Court of North Carolina attached as Exhibit B and the ECF Attorney Registration Form for Chelsea Pieroni attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Chelsea Pieroni of the firm Ellis Winters to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe

Respectfully submitted,

_____/s/ Caroline Murley_____
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

***Counsel for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 29th day of May, 2024.

_____/s/ Caroline Murley_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

**************************************

## <u>ORDER</u>

Considering the foregoing Motion for Admission *Pro Hac Vice* of Chelsea Pieroni as counsel for defendant Jane Doe

IT IS HEREBY ORDERED that Chelsea Pieroni should be and are hereby admitted to the bar of this Court *pro hac vice* on behalf of defendant Jane Doe

New Orleans, Louisiana, this _____ day of May, 2024.

_____
**United States District Judge**

3

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Grant E. Buckner, Clerk of the Supreme Court of North Carolina, do hereby certify

that on October 21, 2022, license to practice as an Attorney and Counselor at Law in all the

Courts of this State was issued by the North Carolina Board of Law Examiners to

## Chelsea Pieroni

according to the certified list of licentiates reported by the Secretary of said Board and filed

in my office as required by statute.

    To the date of this certificate, no order revoking said license has been filed with this

Court and no order suspending same is in effect.

    WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in

Raleigh, this April 19, 2024.

Grant E. Buckner
Clerk of the Supreme Court
of the State of North Carolina

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE DARREL PAPILLION** |
| | * | |
| | * | |
| | * | **MAGISTRATE JUDGE** |
| | * | **EVA J. DOSSIER** |
| Jane Doe | * | |
| | * | |

**************************************

## <u>DECLARATION OF CHELSEA PIERONI</u>

I, Chelsea Pieroni, certify that the following is a true and correct statement submitted in accordance with LOCAL RULE 83.2.5:

1.      I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2.      I have been admitted to practice law in the State of North Carolina.

3.      I have not been admitted to practice law in the State of Louisiana.

4.      I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5.      I am currently licensed in good standing to practice law in the State of North Carolina.

6.      I am not currently suspended or disbarred by any jurisdiction in which I have been admitted.  I have not been the subject of any disciplinary action by the bar or courts of any jurisdiction.

7.      No criminal charges or other criminal matters have been instituted against me.

8.     I consent to electronic service of all documents through the Court's electronic filing system.

9.     I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

10.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

NOTARY PUBLIC:

SIGNED THIS _10_ DAY OF _May_____, 2024

MY COMMISION ENDS: _10/19/2026_

2

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
**www.pacer.gov**

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: CHELSEA  PIERONI

Attorney Bar # and State: 59816 North Carolina

Firm Name: Ellis & Winters LLP

Firm Address: P.O. Box 33550, Raleigh, NC 27636

Telephone Number: (919) 865-7000

E-Mail Address: chelsea.pieroni@elliswinters.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑     Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number 2:23-cv-01348

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

4/16/2024
_____
Date

_____
Attorney Signature

[Rev.11/2019]

2

| Original Filed at Docket No. 79, |
| Sealed by Court Order |

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### *EX PARTER* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of James Weiss of the firm Ellis Winters 4131 Parklake Avenue, Suite400, Raleigh NC 27612; Telephone: (949) 865-7015, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agrees to serve as the designated local counsel for James Weiss pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Affidavit of James Weiss stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from Supreme Court of North Carolina attached as Exhibit B and the ECF Attorney Registration Form for James Weiss attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting James Weiss of the firm Ellis Winters to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe

Respectfully submitted,

_____/s/ Caroline Murley_____
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

**Counsel for Defendant** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on

all known counsel of record in this proceeding via the court's CM/ECF this 29th day of May, 2024.

_____/s/ Caroline Murley_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

2

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON FALLON** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **JANIS VAN MEERVELD** |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>ORDER</u>

Considering the foregoing Motion for Admission *Pro Hac Vice* of James Weiss as counsel for defendant Jane Doe

IT IS HEREBY ORDERED that James Weiss should be and are hereby admitted to the bar of this Court *pro hac vice* on behalf of defendant Jane Doe

New Orleans, Louisiana, this _____ day of May, 2024.

---

**United States District Judge**

3

# Supreme Court
## OF THE STATE OF NORTH CAROLINA



I, Grant E. Buckner, Clerk of the Supreme Court of North Carolina, do hereby certify

that on March 4, 2011, license to practice as an Attorney and Counselor at Law in all the

Courts of this State was issued by the North Carolina Board of Law Examiners to

## James Michael Weiss

according to the certified list of licentiates reported by the Secretary of said Board and filed

in my office as required by statute.

    To the date of this certificate, no order revoking said license has been filed with this

Court and no order suspending same is in effect.

    WITNESS my hand and the Seal of the Supreme Court of North Carolina at office in

Raleigh, this April 19, 2024.

Grant E. Buckner
Clerk of the Supreme Court
of the State of North Carolina

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | CASE NO. 2:24-CV-825 |
| | * | |
| VERSUS | * | |
| | * | JUDGE DARREL JAMES PAPILLION |
| | * | |
| | * | |
| | * | MAGISTRATE EVA J. DOSSIER |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>DECLARATION OF JAMES MICHAEL WEISS</u>

I, James Michael Weiss, certify that the following is a true and correct statement submitted in accordance with LOCAL RULE 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I am admitted to practice law in the State of North Carolina.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in North Carolina.

6. I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have never been the subject of disciplinary action by the bar of any jurisdiction.

8. The only criminal charge that has been brought against me was a misdemeanor driving under the influence charge in the District of Columbia to which I pled guilty in 1997. Otherwise, there have been no other criminal charges or matters brought against me.

9. I consent to electronic service of all documents through the Court's electronic filing system.

10. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11. Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

_____
James M. Weiss

NOTARY PUBLIC:

_____ Diana J. Picon Mendez

SIGNED THIS 17th DAY OF May, 2024

MY COMMISSION ENDS: 04-01-2025

2

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
**www.pacer.gov**

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: **James M. Weiss**

Attorney Bar # and State: **42386 North Carolina**

Firm Name: **Ellis & Winters LLP**

Firm Address: **P.O. Box 33550, Raleigh, NC 27636**

Telephone Number: **(919) 865-7000**

E-Mail Address: **jamie.weiss@elliswinters.com**
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐  No ☑  Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number **2:23-cv-01348**

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

April 16, 2024
**Date**

_____
**Attorney Signature**

[Rev.11/2019]

Original Filed at Docket No. 80,
Sealed by Court Order

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | CASE NO. 2:24-CV-825 |
| | * | |
| VERSUS | * | JUDGE DARREL PAPILLION |
| | * | |
| | * | |
| | * | MAGISTRATE |
| | * | EVA J. DOSSIER |
| Jane Doe | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO CONSOLIDATE

Mr.    John Doe   attempts to create as wide a chasm as possible between his suit against Jane Doe and his suit against Tulane University ("Tulane") (the "Tulane case").  However, Mr.  John Doe   fails to rebut Jane Doe's showing that the cases share common parties and common questions of fact and law, that consolidation is necessary to prevent inconsistent outcomes and duplicative recovery, and that consolidate will facilitate efficiency.

Mr.   John Doe    opposition further exposes his awareness that the claims should be consolidated. Mr. John Doe  previously agreed with a core premise of Jane Doe's request— Mr.  John Doe  "recognize[d] that some efficiencies would be achieved by the transfer and consolidation sought by Defendant."[1] He cannot downplay that concession from his brief in opposition to Jane Doe's motion to transfer by now saying that he only "acknowledged that having the cases *before the same judge* may assist in assuring that the ruling were consistent in the two matters."[2] While having the cases assigned to the same judge will promote efficiency and

---

[1] DE 38 at 30.

[2] DE 76 at 6 (emphasis added).

consistency in legal rulings, it does not address the risk of inconsistent verdicts and duplicative recoveries. These risks can be remedied with consolidation.

## A. Judicial Estoppel is Not Applicable.

Mr. John Doe misunderstands the appropriate application of judicial estoppel. In this Circuit, two bases must be satisfied before a party can be estopped. First, it must be shown that "the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position."[3] Mr. John Doe judicial estoppel argument fails because he cannot show that Jane Doe has taken inconsistent positions.

While Mr. John Doe contends that Jane Doe's position here "that the facts in the two cases are substantially similar" is inconsistent with a position she took before, he is unable to point the Court to any evidence that Jane Doe ever said the facts were *not* similar, because she has never taken that position.[4] The crux of Mr. John Doe argument is that, during his appeal of the North Carolina district court's order denying his motion to proceed by pseudonym, Jane Doe apprised the United States Court of Appeals for the Fourth Circuit of differences between a suit filed against a private citizen and one filed against a university.[5] For purposes of Mr. John Doe request to use a pseudonym, those differences were important. Some district courts within the Fourth Circuit found that when a student sued his college or university seeking to reverse a disciplinary decision, it was appropriate to allow the student to use a pseudonym, and Jane Doe argued that the reasoning of those cases did not extend to Mr. John Doe lawsuit an

---

[3] *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000)).
[4] DE 76 at 3.
[5] *Id.*

individual..[6] That distinction raised at the Fourth Circuit is irrelevant here and is not a "smoking gun" acknowledgment from Jane Doe that the cases are too dissimilar for consolidation. To the contrary, Jane Doe continues to acknowledge that there are some differences between the suits. However, those differences do not outweigh the similarities such that consolidation should not be favored simply because one of those differences was important to a pseudonym analysis. Jane Doe never said that Mr. John Doe cases against her and against Tulane were not factually similar.[7] Judicial estoppel does not apply because there is nothing clearly inconsistent in Jane Doe s positions taken before the Fourth Circuit and in the instant request for consolidation.[8]

To the extent that Mr. John Doe contends that the transfer order supports Mr. John Doe judicial estoppel argument, that contention likewise fails.[9] Mr. John Doe previously argued that Jane Doe was judicially estopped, due to her arguments in the Fourth Circuit, from seeking to transfer this case to this Court.[10] The transferor court rejected that argument as irrelevant to a motion to transfer.[11] Although the transferor court noted that a judicial estoppel argument *could* be relevant to a consolidation motion,[12] the court did not, as Mr. John Doe suggests, say that Jane Doe argued that the cases were "factually dissimilar."[13] Instead, the transferor court found that Jane Doe did *not* contradict the factual assertions from her Fourth Circuit brief in her motion to transfer.[14]

---

[6] *See* DE 35-2 at 54-58 (pinpoint citation is to CM/ECF pagination).

[7] *Id. passim.*

[8] *See, e.g., Trinity Marine Prod., Inc. v. United States*, 812 F.3d 481, 491 (5th Cir. 2016) (concluding that judicial estoppel did not apply where party's positions were not inconsistent).

[9] DE 76 at 3.

[10] DE 38 at 20-23 (pinpoint citation is to the CM/ECF pagination).

[11] *See* DE 58 at 6-7.

[12] DE 58 at 6.

[13] DE 76 at 3.

[14] DE 58 at 7.

**B. Consolidation Would Not Jeopardize Mr. John Doe Privacy Because He Has Voluntarily Waived His Pseudonymity.**

Mr. John Doe provides this Court nothing to explain how consolidation would lead to a breach of his "right to privacy" within the Tulane case.[15] Jane Doe has already shown that it is *Plaintiff* who voluntarily breached his own purported right to privacy when identifying this matter when he voluntarily linked the cases together by citing to the Tulane case as supplemental authority in his appeal to the Fourth Circuit in the instant matter.[16] That filing remains publicly available and Mr. John Doe has never moved to have it sealed.[17] As the Eastern District of North Carolina succinctly agreed, Mr. " John Doe identity is already public because he chose to pursue this case, and he is already linked to the Tulane case because of his own public filing."[18] Mr. John Doe does not dispute those facts or attempt to explain why consolidation would jeopardize his privacy when he has already revealed his identity.[19]

Moreover, on the first page of his publicly filed response to Jane Doe motion to consolidate, Mr. John Doe again identified himself as the plaintiff in the Tulane case, saying that "[t]he case at issue that Defendant seeks to consolidate with this action is *John Doe v. The Administrators of the Tulane Educational Fund d/b/a Tulane University*, Case No. 2:23-CV-01348," and that "both cases have the same Plaintiff."[20] Mr. John Doe conclusory argument that his right to privacy precludes consolidation deserves no weight given his repeated decision to publicly identify himself as the pseudonymous plaintiff in the Tulane case.

---

[15] *Id.* at 3-4.
[16] DE 72-1 at 11.
[17] *Id.* at 7 (citing DE 46-1).
[18] DE 58 (quoting DE 50 at 8).
[19] *See* DE 76 *passim*.
[20] *Id.* at 1.

4

Mr. John Doe suggests in two footnotes that, "[u]pon information and belief," his counsel is preparing a motion to seal "any reference identifying the Plaintiff in association with the Tulane case in the docket of this action."[21] But, as the Fifth Circuit admonished, "[p]ublicly available information cannot be sealed."[22] The transferor district court already denied three motions to seal references to the Tulane case in this action,[23] and Mr. John Doe continued public self-identification only provides further support for that decision.

## C. Mr. John Doe Concedes That the Cases Have Overlapping Facts.

Continuing in his efforts to depict the two cases as fundamentally different, Mr. John Doe compares the cases at a surface level approach, saying that the instant suit is focused on Jane Doe actions only, while the Tulane case involves Tulane administrators' actions.[24] However, even a cursory review of the pleadings in the two cases shows otherwise.

Many of Tulane's actions, which form the basis of the Tulane case, were predicated upon Jane Doe actions. For example, Tulane interviewed over a dozen witnesses, determined that Mr. John Doe sexually assaulted Sue Roe and Jane Doe, and expelled him from Tulane, because Jane Doe and Sue Roe reported that Mr. John Doe sexually assaulted them.[25] Mr. John Doe also alleges that Tulane and Jane Doe facilitated one another's purported efforts to hurt Mr. John Doe. He alleges that Jane Doe maliciously induced Tulane not to perform its contract with Mr. John Doe [6]; he sues Tulane for breach of that contract and Jane Doe for interfering with it.[27] He alleges that Tulane "sponsored" Jane Doe s purportedly false petition for a temporary

---

[21] *Id.* at 1, 4 nn.1-2.

[22] *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 520 (5th Cir. 2022).

[23] DE 58 at 14.

[24] DE 76 at 5.

[25] Am. Compl. ¶¶ 2-3, 46-86 (DE 23); *Doe* Compl. ¶¶ 4, 244-249, 298-329, 486 (DE 30-1); *see* Woodley Aff. ¶¶ 3, 6 (DE 29-1).

[26] Am. Compl. ¶ 130.

[27] *Doe* Compl. ¶¶ 523-532; Am. Compl. ¶¶ 124-135.

restraining order ("TRO")[28]; he sues Jane Doe for prosecuting that petition, and Tulane for violating Title IX by relying on the TRO in its investigation.[29]

*Henry v. Maxum Indemnity Co.*[30] does not bolster Mr. John Doe 's arguments. *Henry* involved a set of attorneys who were accused of malpractice by two groups of clients who retained the attorneys to file claims for review by a settlement program relative to the BP oil spill. The first group of clients alleged that the attorneys committed malpractice by failing to file certain claims, untimely filing claims, and failing to file required documentation with other claims.[31] A second group of clients sued the same set of attorneys for alleged acts of malpractice that occurred after their claims had been filed, but had been rejected by the group processing the BP spill claims.[32] The district court rejected the attorneys' request for consolidation, noting that the attorneys' pre-review actions affecting the first group of clients differed entirely from the post-review actions affecting the second group and were not dependent on one another:

> On this issue, the Court agrees with Plaintiffs that a finding of liability in the *Gaudet* matter, based upon the actions or inactions of the Attorney Defendants in the pre-review process, has no bearing on the claims of the *Henry* plaintiffs regarding the actions or inactions of the Attorney Defendants in the post-review process.[33]

While all claims arose from general efforts to assert BP oil spill claims, the underlying facts had no relationship to each other, rendering consolidation inappropriate.[34]

Such is not the case here. The alleged facts that form the basis of Mr. John Doe 's claims against Jane Doe have a direct connection to his claims against Tulane. A critical aspect of Mr. John Doe s claims against Tulane is his allegation that Tulane mishandled the investigation

---

[28] *Doe* Compl. ¶ 335.
[29] Am. Compl. ¶¶ 110-115, 121-123; *Doe* Compl. ¶ 516(k).
[30] *Henry v. Maxum Indem. Co.,* No. CV 20-2995-WBV-JVM, 2022 WL 15626272 (E.D. La. Mar. 18, 2022).
[31] *Id.* at *2.
[32] *Id.*
[33] *Id* at *4.
[34] *Id.*

6

of Jane Doe's report of sexual assault.[35] Mr. John Doe does not suggest that Tulane's investigation would have occurred without Jane Doe; to the contrary, he alleges that Jane Doe "strategically utilized and manipulated Tulane's Title IX investigation process to further a malicious vendetta against" him.[36] He blames Jane Doe for getting him expelled, alleging that he was "dismissed from the University . . . *due to* [ Jane Doe ] malicious actions,"[37] and he seeks to recover damages from Jane Doe for "economic injuries, the loss of education and career opportunities, and the loss of future potential earnings *as a result of the expulsion.*"[38]

Mr. John Doe does not respond to Jane Doe's showing that Mr. John Doe seeks damages from both Tulane and Jane Doe for the same injury—his allegedly wrongful expulsion, and the resulting impact on his education, career, and earnings.[39] Unlike in *Henry*, where different plaintiffs sought recovery from the same defendants for different wrongs,[40] in this case, one plaintiff seeks recovery from two defendants for the same wrong.[41] These factual allegations and damages claims are not independent of one another.

Mr. John Doe makes no attempt to distinguish *Pride Centric Resources, Inc. v. Laporte*,[42] a case cited in *Henry* and in Jane Doe's moving brief.[43] In *Pride*, the defendant accounting firm was sued in two separate suits related to its alleged malfeasance in handling the finances of two companies, a parent and its subsidiary.[44] Facts laid before the court illustrated that the plaintiffs' claims were interconnected—for example, one company alleged that it was damaged

---

[35] *See Doe* Compl. ¶¶ 387-437.

[36] Am. Compl. ¶ 3.

[37] *Id.* ¶ 131 (emphasis added).

[38] *Id.* ¶ 4 (emphasis added).

[39] *See* DE 76 *passim*; DE 72-1 at 10-13.

[40] *Henry*, 2022 WL 15626272, at *2, *4.

[41] *See* DE 72-1 at 10-13.

[42] *Pride Centric Res., Inc. v. LaPorte*, No. CV 19-10163, 2020 WL 7245066 (E.D. La. Dec. 9, 2020).

[43] *Henry*, 2022 WL 15626272, at *1-2; DE 72-1 at 13 n.72.

[44] *Pride*, 2020 WL 7245066, at *1.

7

by its reliance on the defendant's audit of the other company.[45] Recognizing the risk of inconsistent verdicts and double recovery, the court consolidated the cases, reasoning that "[s]uch interrelated claims should be tried in a single trial before a single jury."[46] Here, as in *Pride*, Mr. John Doe should try his interrelated claims before a single jury to prevent inconsistency and double recovery.

## D. There No Valid Argument That Consolidation Would Increase Costs and Decrease Efficiency.

*Pride* equally undermines Mr. John Doe's argument that consolidation would be less cost-efficient and more time-consuming,[47] Due to the deep factual connection between the two claims, the court in *Pride* recognized that the cases were likely to involve significant overlap in witnesses.[48] Mr. John Doe does not dispute or even address Jane Doe s showing that this case and the Tulane case will similarly involve numerous overlapping witnesses, along with duplicative discovery.[49] Here, as in *Pride*, trying the cases separately would educating two juries on "overlapping facts and needlessly having the same witnesses testify twice. Rule 42(a) gives the Court broad discretion to avoid such a waste of resources."[50]

Mr. John Doe does not argue that if the cases are consolidated, *he* will expend more time and resources.[51] The only argument Mr. John Doe advances on the issues of cost and efficiency and cost effectiveness is that "each defendant would have to contend with matters that do not relate to the case against the, likely causing them additional time and money."[52] This argument is unavailing.

---

[45] *Id.* at *2.
[46] *Id.*
[47] *See* DE 76 at 4.
[48] *Pride*, 2020 WL 7245066, at *3.
[49] DE 72-1 at 13-14; DE 76 *passim*.
[50] *Pride*, 2020 WL 7245066, at *2.
[51] DE 76 *passim*.
[52] *Id.* at 6.

First, Tulane, the sole defendant in the Tulane case, has agreed to Jane Doe's request for a consolidation, ameliorating any concerns Mr. John Doe may have about how consolidation will impact Jane Doe and Tulane.[53] Second, all three parties will have to expend more time, energy, and resources should the cases not be consolidated. Mr. John Doe would have to be deposed twice. His counsel, and counsel for Tulane and Jane Doe, would have to participate in the depositions of Jane Doe Sue Roe, administrators involved in Tulane investigation, and every alleged witness Jane Doe communicated with regarding her sexual assault report not once, but twice.[54] Further, this Court could be asked to hear repetitive discovery disputes, forcing it expend unnecessary time ruling on substantively identical disputes. And, as shown above, the Court will have to preside over two jury trials where numerous overlapping witnesses will testify.

## CONCLUSION

As shown above and in Jane Doe's moving brief, this case and the Tulane case have overlapping parties and overlapping factual and legal issues, and litigating the cases separately would increase the cost of discovery and other proceedings and create a risk of inconsistent results and duplicative recovery. The inextricably intertwined suits should proceed on a consolidated basis for the benefit of not only the time and resources of all parties, witnesses, and this Court, but also to ensure equal and fair justice is afforded to all involved.

---

[53] *See* DE 72-1 at 2.
[54] *See id.* at 13-14.

Respectfully submitted,

_____ /s/ Caroline Murley _____
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
cmurley@twpdlaw.com

- **And –**

_____ /s/ Kelly Margolis Dagger _____
Kelly Margolis Dagger, N.C. Bar No. 44329
*(pro hac vice pending)*
James M. Weiss, N.C. Bar No. 42386
*(pro hac vice pending)*
Chelsea Pieroni, N.C. Bar No. 59816
*(pro hac vice pending)*
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
kelly.dagger@elliswinters.com

***Counsel for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on

all known counsel of record in this proceeding via the court's CM/ECF this 3rd[h] day of June, 2024.

_____ /s/ Caroline Murley _____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

10

Original Filed at Docket No. 81,
Sealed by Court Order

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

██████████                                    **CIVIL ACTION**

**VERSUS**                                    **NO. 24-825**

████████                                      **SECTION: "P" (3)**

## ORDER

Having considered the foregoing motions to appear *pro hac vice* (R. Docs. 77, 78, and 79), seeking to admit Kelly Dagger, Chelsea Pieroni, and James Weiss, respectively, *pro hac vice* as additional counsel of record on behalf of ████████,

**IT IS ORDERED** that the motions to appear *pro hac vice* (R. Docs. 77, 78, and 79) are **GRANTED**.

**IT IS FURTHER ORDERED** that **Kelly Dagger** is hereby admitted to the bar of this Court *pro hac vice* and enrolled as additional counsel of record on behalf of defendant ████████.

**IT IS FURTHER ORDERED** that **Chelsea Pieroni** is hereby admitted to the bar of this Court *pro hac vice* and enrolled as additional counsel of record on behalf of defendant ████████.

**IT IS FURTHER ORDERED** that **James Weiss** is hereby admitted to the bar of this Court *pro hac vice* and enrolled as additional counsel of record on behalf of defendant ████████.

New Orleans, Louisiana, this 3rd day of June 2024.

_____
**DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

### NOTICE TO VISITING ATTORNEYS

### ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Version 6/1/2016

Original Filed at Docket No. 82,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

John Doe

**VERSUS**

Jane Doe

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

\*   **CIVIL ACTION NO. 2:24-cv-00825**
\*
\*   **SECTION: P (3)**
\*
\*   **JUDGE DARREL JAMES PAPILLION**
\*
\*   **MAG. JUDGE EVA J. DOSSIER**
\*
\*

**PLAINTIFF'S MOTION TO WITHDRAW HIS OPPOSITION TO THE PORTION OF DEFENDANT'S RULE 12(b)(6) MOTION SEEKING TO DISMISS PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff    John Doe ("Plaintiff"), who respectfully moves this Honorable Court for leave to withdraw his opposition to the portion of Defendant Jane Doe Rule 12(b)(6) motion that seeks to dismiss Plaintiff's claim for tortious interference with contract. (R. Doc. 27, R. Doc. 28, Def. Memo of Law, at 11-14,[1] R. Doc. 41, Pltf. Memo of Law, at 26-28, R. Doc. 49, at 4-7). The reasons for this motion are set forth in the accompanying memorandum of law. A proposed order also accompanies this submission.

WHEREFORE, Plaintiff prays that the Court grant his motion to withdraw his opposition to the portion of Defendant's motion seeking to dismiss his claim for tortious interference with contract and dismiss Plaintiff's tortious interference with contract claim, as alleged in the Amended Complaint, with prejudice. R. Doc. 1, Compl. ¶¶ 124-135, R. Doc. 41, Pltf. Memo of Law, at 26-28.

Respectfully Submitted,

*/s/ Kara L. Gorycki*
Kara L. Gorycki (admitted *pro hac vice*)
Andrew T. Miltenberg (admitted *pro hac vice*)

---

[1] The pagination cited herein is to the ECF pagination at the top of each page of a document.

NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212)736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com

-and-

*/s/ Alex Robertson*

Alex Robertson (La. Bar No. 37285)
MARCELLE ROBERTSON MESTAYER LLC
650 Poydras Street, Suite 2720
New Orleans, Louisiana 70130
(504)910-6220
alex@mrmlaw.com

***Attorneys for Plaintiff***

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CIVIL ACTION NO. 2:24-cv-00825** |
| | * | |
| **VERSUS** | * | **SECTION: P (3)** |
| | * | |
| | * | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | * | |
| | * | **MAG. JUDGE EVA J. DOSSIER** |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * | * | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO WITHDRAW HIS OPPOSITION TO THE PORTION OF DEFENDANT'S RULE 12(b)(6) MOTION SEEKING TO DISMISS PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT**

Plaintiff    John Doe    ("Plaintiff") hereby moves for leave to withdraw his opposition to the portion of Defendant Jane Doe ("Defendant") Rule 12(b)(6) motion that seeks to dismiss Plaintiff's claim for tortious interference with contract. Plaintiff requests this relief because the argument he asserts in his opposition to Defendant's motion is no longer viable under Louisiana choice-of-law principles.

## RELEVANT BACKGROUND

This action was originally filed in the United States District Court for the Eastern District of North Carolina on December 18, 2022. (R. Doc. 1). The Complaint alleges five causes of action against Defendant: 1) defamation; 2) abuse of process; 3) tortious interference with contract; 4) intentional infliction of emotional distress; and 5) conspiracy. (R. Doc. 1, Compl. ¶¶ 92-153). On November 9, 2023 Plaintiff filed an amended complaint. (R. Doc. 23). The Amended Complaint alleged the same claims against Defendant. (R. Doc. 23, Am. Compl. ¶¶ 92-53). On December 15, 2023, Defendant filed a motion to transfer the case to this District, and a Rule 12(b)(6) motion to dismiss **three** of Plaintiff's claims—abuse of process, tortious interference and conspiracy. (R.

Doc. 27, R. Doc. 29). On January 17, 2024, Plaintiff opposed both motions. (R. Doc. 37, R. Doc. 41). On April 2, 2024, the case was transferred to this District. (R. Doc. 59). On May 1, 2024, the case was transferred to this Court. (R. Doc. 73). Defendant's motion to dismiss has yet to be decided. (R. Doc. 60). Defendant also filed a motion to consolidate this case with another pending action. (R. Doc. 72). That motion has yet to be decided.

While Defendant seeks to dismiss Plaintiff's claim for tortious interference with contract, arguing that is simply not viable under Louisiana state law, she relies on that very same claim in support of her motion to consolidate this case with another pending action. (R. Doc. 28, Def. MTD, at 11-14;[1] R. Doc. 72-1, Def. Consolidation Mtn., at 4, 9, 12).

## ARGUMENT

Plaintiff opposed the dismissal of his claim for tortious interference with contract on the ground that South Carolina, as opposed to Louisiana, law applied under ***North Carolina's*** choice-of-law principles. (R. Doc. 41, at 26-28). Now that the case has been transferred to this District, Plaintiff's argument is no longer viable. Under Louisiana choice of law principles, which this Court must apply, the outcome would not be the same. When evaluating the claim under Louisiana choice-of-law principles: a) the law of South Carolina does not apply because it does not provide for a higher standard of conduct; and b) the conduct that caused Plaintiff's injury occurred in Louisiana by a person (Defendant) who had a significant connection with Louisiana at the time. *See Medx, Inc. v. Raymond T. Ranger*, 1993 WL 21250, at *4 (E.D. La. 1993). *Compare* R. Doc. 28, Def. MTD, at 13 ("intentional and unjustifiable interference" with contract); R. Doc. 41, Pltf. Opp., at 27-28 ("intentional procurement of breach" and "absence of justification"); R. Doc. 23, Am. Compl. ¶ 7. For these reasons, Louisiana law applies to Plaintiff's claim for tortious

---

[1] Page numbers cited herein are to the ECF pagination.

interference with contract. Under Louisiana law, a claim for tortious interference with contract may only be brought against a corporate officer. *Medx, Inc.*, 1993 WL 21250, at *3. T

## CONCLUSION

For the above stated reasons, Plaintiff respectfully requests an order from the Court permitting him to withdraw his opposition to the portion of Defendant's Rule 12(b)(6) motion that seeks to dismiss his claim for tortious interference with contract, and dismissing Plaintiff's claim for tortious interference with contract, as alleged in the Amended Complaint, with prejudice.

Dated: June 11, 2024

Respectfully Submitted,

*/s/ Kara L. Gorycki*
Kara L. Gorycki (admitted *pro hac vice*)
Andrew T. Miltenberg (admitted *pro hac vice*)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212)736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com

-and-

*/s/ Alex Robertson*
Alex Robertson (La. Bar No. 37285)
MARCELLE ROBERTSON MESTAYER LLC
650 Poydras Street, Suite 2720
New Orleans, Louisiana 70130
(504)910-6220
alex@mrmlaw.com

***Attorneys for Plaintiff***

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CIVIL ACTION NO. 2:24-cv-00825** |
| | * | |
| **VERSUS** | * | **SECTION: P (3)** |
| | * | |
| | * | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | * | |
| | * | **MAG. JUDGE EVA J. DOSSIER** |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * | * | |

## ORDER

CONSIDERING THE FOREGOING Plaintiff's Motion to Withdraw Plaintiff's Opposition to the Portion of Defendant's Rule 12(b)(6) Motion Seeking to Dismiss Plaintiff's Claim for Tortious Interference With Contract and Plaintiff's Memorandum of Law in support thereof, Plaintiff's motion is GRANTED;

IT IS HEREBY ORDERED, that Plaintiff's claim for tortious interference with contract against Defendant, as alleged in the Amended Complaint, is hereby dismissed with prejudice.

SIGNED, this _____ day of _____, 2024 in New Orleans, Louisiana

_____
**UNITED STATES DISTRICT JUDGE**

*Distribution:* CM/ECF All Counsel of Record

**Original Filed at Docket No. 83,**
**Sealed by Court Order**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CASE NO. 2:24-CV-825** |
| | * | |
| **VERSUS** | * | **JUDGE JAMES PAPILLION** |
| | * | |
| | * | |
| | * | **MAGISTRATE** |
| | * | **EVA J. DOSSIER** |
| Jane Doe | * | |
| | * | |

**************************************

### <u>MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANT</u> Jane Doe

Pursuant to Local Rule 83.2.11, Kelly Margolis Dagger, James M. Weiss, and Chelsea A. Pieroni ("Movants"), all admitted *pro hac vice*, hereby move to withdraw as counsel for Defendant Jane Doe  In support of this motion, Movants respectfully show the following:

1.      Jane Doe is represented in this action by Jared A. Davidson and Caroline M. Murley, who are members of the bar of this Court.  (DE 70).

2.      On June 4, 2024, the Court entered an order granting Movants' motions to appear *pro hac vice* as counsel for Jane Doe.  (DE 81).

3.      With Jane Doe consent, Movants now seek to withdraw from representing Jane Doe.  Mr. Davidson and Ms. Murley will continue to represent Jane Doe

4.      Jane Doe has been notified that there are no current deadlines or pending court appearances.

5.      This motion is being served on all counsel via CM/ECF and on Jane Doe.

This the 21st day of February, 2025.

ELLIS & WINTERS LLP

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger, N.C. Bar No. 44329
James M. Weiss, N.C. Bar No. 42386
Chelsea A. Pieroni, N.C. Bar No. 59816
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
kelly.dagger@elliswinters.com
jamie.weiss@elliswinters.com
chelsea.pieroni@elliswinters.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being served on all counsel of record via the Court's CM/ECF system. I further certify that a copy of the foregoing is being served on Defendant Jane Doe via certified mail.

This the 21st day of February, 2025.

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 24-825** |
| | * | |
| | * | **SECTION: "P" (3)** |
| | * | |
| | * | |
| Jane Doe | * | |
| | * | |

*************************************

## <u>ORDER</u>

Having considered the foregoing motion to withdraw, seeking leave to allow Kelly Margolis Dagger, James Weiss, and Chelsea Pieroni, to withdraw as counsel of record for <sup>Jane Doe</sup>

, IT IS ORDERED that the motion is GRANTED. Ms. Dagger, Mr. Weiss, and Ms. Pieroni are hereby withdrawn as counsel for Jane Doe. Jane Doe shall continue to be represented in this action by Jared Davidson and Caroline Murley.

IT IS SO ORDERED.

New Orleans, Louisiana, this ___ day of _____, 2025.

_____
DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE

Original Filed at Docket No. 84,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe     **,** | **CIVIL ACTION NO. 2:24-CV-00825** |
|       **Plaintiff,** | **SECTION: P (3)** |
| **v.** | |
| Jane Doe  **,** | **JUDGE DARREL JAMES PAPILLION** |
|       **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

*EX PARTE* **MOTION TO WITHDRAW**
**MOTION TO CONSOLIDATE (R. DOC. 72) FROM SUBMISSION**

NOW INTO COURT, through undersigned counsel, comes Defendant, Jane Doe ("Ms. Jane Doe), who respectfully requests to withdraw her Motion to Consolidate (R. Doc. 72) from submission. Because Jane Doe no longer believes that consolidation is necessary or warranted, Ms. Jane Doe seeks to withdraw her Motion to Consolidate and allow the parties to proceed with the litigation, including setting a Scheduling Conference with the Court to address a discovery cutoff and other case deadlines.

WHEREFORE, Defendant, Jane Doe, respectfully requests that this Court grant her Motion and withdraw her Motion to Consolidate from submission and set a Scheduling Conference at the Court's earliest convenience.

Respectfully submitted,

    */s/ Jared A Davidson*
Jared A. Davidson, La. Bar No. 32419
    jdavidson@twpdlaw.com
Caroline M. Murley, La. Bar No. 36599
    cmurley@twpdlaw.com
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
*Counsel for Defendant* Jane Doe

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 25th day of February, 2025.


_____/s/ Jared A. Davidson_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

<table>
<tr><td>John Doe   , <br>       **Plaintiff,** <br><br>    v. <br><br> Jane Doe  , <br>       **Defendant.**</td><td>**CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER**</td></tr>
</table>

## <u>ORDER</u>

Considering the preceding *Ex Parte* Motion to Withdraw Motion to Consolidate (R. Doc. 72) from Submission filed by Defendant, Jane Doe ;

**IT IS HEREBY ORDERED** that Defendant,   Jane Doe  , Motion to Consolidate (R. Doc. 72) is WITHDRAWN from its submission.

New Orleans, Louisiana, this _____ day of February, 2025.

_____
                        **JUDGE**

Original Filed at Docket No. 85,

Sealed by Court Order

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

████████████████                                   **CIVIL ACTION**

**VERSUS**                                          **NO. 24-825**

████████                                            **SECTION: "P" (3)**

## ORDER

Considering the foregoing Ex Parte Motion to Withdraw as Counsel for Defendant ████

████ (R. Doc. 83):

**IT IS ORDERED** that the Motion (R. Doc. 83) is **GRANTED**, and Kelly Margolis

Dagger, James Weiss, and Chelsea Pieroni are hereby **WITHDRAWN** as counsel for ████████.

████████ shall continue to be represented in this action by Jared Davidson and Caroline Murley.

New Orleans, Louisiana, this 25th day of February 2025.



**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 86,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

█████████████                                    **CIVIL ACTION**

**VERSUS**                                        **NO. 24-825**

██████                                            **SECTION: "P" (3)**

## <u>ORDER</u>

Considering the foregoing Ex Parte Motion to Withdraw Motion to Consolidate (R. Doc. 72) from Submission, filed by Defendant ██████ (R. Doc. 84):

**IT IS ORDERED** that the Motion to Withdraw (R. Doc. 84) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Consolidate (R. Doc. 72) filed by Defendant ██████ is hereby **WITHDRAWN** from submission for the Court's consideration.

New Orleans, Louisiana, this 25th day of February 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 87,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

████████████████                          **CIVIL ACTION**

**VERSUS**                                 **NO. 24-825**

██████████                                 **SECTION P(3)**

## SCHEDULING CONFERENCE NOTICE

A SCHEDULING CONFERENCE will be held **BY** **TELEPHONE** on **March 25, 2025 at 3:30 p.m.** for the purpose of scheduling the pre-trial conference and trial on the merits.

**Please use the following information to call in for the conference:**
**Dial-In: 571-353-2301/Toll Free: 833-990-9400**
**Guest ID: 819977081**

**The Court encourages counsel to engage in settlement negotiations.**

**TRIAL COUNSEL** are to participate in this conference.  If, however, you are unable for good cause to do so, another attorney in your firm may participate if acquainted with all details of the case and authorized to enter into any necessary agreements.  If, for good cause, neither is possible, you must file a Motion and Order to Continue at least one week prior to the above date.

COURTNEY ANCAR
CASE MANAGER
SECTION "P"
504-589-7715

## NOTICE

**COUNSEL ADDING NEW PARTIES SUBSEQUENT TO THE MAILING OF THIS NOTICE SHALL NOTIFY SUCH NEW PARTY TO APPEAR AS REQUIRED BY THIS NOTICE.**

## IMPORTANT NOTICE TO COUNSEL

## COUNSEL MUST PARTICIPATE IN THIS CONFERENCE.
## A PARALEGAL OR SECRETARY MAY NOT BE SUBSTITUTED.

COUNSEL WILL BE REQUIRED TO ANSWER THE FOLLOWING QUESTIONS REGARDING DISCLOSURE AT THE CONFERENCE:

1. Have all parties completed your Rule 26(a)(1) mandatory initial disclosures?

2. Have all parties stipulated that initial disclosures under Rule 26(a)(1) will <u>not</u> be made in this case?

3. Do any of the parties object to making Rule 26(a)(1) initial disclosures in this case?*

4. Have the corporate parties filed their corporate disclosure statements?

5. In advance of the conference, every party should be familiar with and ensure compliance with Rule 7.1, which was amended December 31, 2022.


*Written objections must be filed <u>three</u> days prior to the preliminary conference.

Original Filed at Docket No. 88,

Sealed by Court Order

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br><br>    **Plaintiff,**<br><br> **v.**<br><br>Jane Doe<br><br>    **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

### EX PARTE MOTION TO APPEAR PRO HAC VICE

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Ashton E. Woods of the firm Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001-4956; Telephone: (202) 662-5638, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Ashton E. Woods pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Ashton E. Woods stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from the District of Columbia Court of Appeals attached as Exhibit B, and the Consent to Electronic Filing Form for Ashton E. Woods attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Ashton E. Woods of the firm Covington & Burling, LLP to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe.

Respectfully submitted,

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

*Counsel for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 13th day of March 2025.

TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe , **Defendant.** | **JUDGE DARREL JAMES PAPILLIO** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## PROPOSED ORDER

Considering the foregoing Motion for Admission *Pro Hac Vice* of Ashton E. Woods as counsel for Defendant Jane Doe ;

IT IS HEREBY ORDERED that Ashton E. Woods should be and is hereby admitted to the bar of this Court *pro hac vice* on behalf of Defendant Jane Doe .

New Orleans, Louisiana, this ___ day of March 2025.

_____

**United States District Judge**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLIO** |
| Jane Doe | **MAG. JUDGE EVA J. DOSSIER** |
| **Defendant.** | |

## <u>DECLARATION OF ASHTON WOODS</u>

I, Ashton E. Woods, certify that the following is a true and correct statement

submitted in accordance with Local Rule 83.2.5:

1.  I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2.  I am admitted to practice law in the District of Columbia.

3.  I have not been admitted to practice law in the State of Louisiana.

4.  I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5.  I am currently licensed in good standing to practice law in the District of Columbia.

6.  I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7.  I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8.  No criminal charges have been instituted against me.

9.  I consent to electronic service of all documents through the Court's electronic filing system.

10. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11. Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of March 2025.

/s/ Ashton E. Woods

Ashton E. Woods



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

# Ashton Elizabeth Woods

was duly qualified and admitted on November 25, 2024 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.

**In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on February 18, 2025.**

*JULIO A. CASTILLO*
**Clerk of the Court**

Issued By:

David Chu - Director, Membership
District of Columbia Bar Membership

*For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.*

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
**www.pacer.gov**

     This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Ashton E. Woods

Attorney Bar # and State: 90028913, District of Columbia

Firm Name: Covington & Burling, LLP

Firm Address: 850 Tenth Street, NW

Washington, DC 20001-4956

Telephone Number: 202 662 5638

E-Mail Address: awoods@cov.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes [ ] No [✔]   Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes [✔] No [ ] Case number No. 24-825

Is this regarding a MDL case? Yes [ ] No [✔] MDL case number or name _____

Are you a federal government attorney? Yes [ ] No [✔] Office where employed:

_____

1

- **Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.**

- **Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.**

- **By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.**

- **The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.**

- **The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.**

- **The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.**

- **The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.**

2/24/2025
_____
**Date**

_Ashton E. Woods_
_____
**Attorney Signature**

[Rev.11/2019]

2

Original Filed at Docket No. 89,
Sealed by Court Order

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>Plaintiff,<br><br>v.<br><br>Jane Doe<br>Defendant. | CIVIL ACTION NO. 2:24-CV-00825<br><br>SECTION: P (3)<br><br>JUDGE DARREL JAMES PAPILLION<br><br>MAG. JUDGE EVA J. DOSSIER |

## *EX PARTE* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Komal Shah of the firm Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001-4956; Telephone: (202) 662-5869, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Komal Shah pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Komal Shah stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from the District of Columbia Court of Appeals attached as Exhibit B, and the Consent to Electronic Filing Form for Komal Shah attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Komal Shah of the firm Covington & Burling, LLP to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe

Respectfully submitted,

_____

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

*Counsel for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served

on all known counsel of record in this proceeding via the court's CM/ECF this 13th day of March

2025.

_____

TAYLOR, WELLONS, POLITZ & DUHE, LLC

Case 2:24-cv-00825-DJP-EJD Document 289-1 Filed 06/23/25 Page 1017 of 1935

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe    , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLIO** |
| Jane Doe | **MAG. JUDGE EVA J. DOSSIER** |
| **Defendant.** | |

## PROPOSED ORDER

Considering the foregoing Motion for Admission *Pro Hac Vice* of Komal Shah as counsel for Defendant Jane Doe;

IT IS HEREBY ORDERED that Komal Shah should be and is hereby admitted to the bar of this Court *pro hac vice* on behalf of Defendant Jane Doe

New Orleans, Louisiana, this ___ day of March 2025.

_____
**United States District Judge**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>      **Plaintiff,**<br><br>   **v.**<br><br>Jane Doe<br>      **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## DECLARATION OF KOMAL SHAH

I, Komal Shah, certify that the following is a true and correct statement submitted in accordance with Local Rule 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I am admitted to practice law in the District of Columbia.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the District of Columbia.

6. I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8. No criminal charges have been instituted against me.

9. I consent to electronic service of all documents through the Court's electronic filing system.

10. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11. Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of March 2025.

/s/ Komal Shah

Komal Shah



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

# *Komal Shah*

*was duly qualified and admitted on February 26, 2019 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an Active member in good standing of this Bar.*

***In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on February 26, 2025.***

***JULIO A. CASTILLO***
***Clerk of the Court***

*Issued By:*

*David Chu - Director, Membership*
*District of Columbia Bar Membership*

*For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.*

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
**www.pacer.gov**

     This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Komal Shah

Attorney Bar # and State: 1618920   District of Columbia

Firm Name: Covington & Burling, LLP

Firm Address: 850 Tenth Street, NW

Washington, DC 20001-4956

Telephone Number: 202 662 5869

E-Mail Address: KShah@cov.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑   Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number No. 24-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

- **Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.**

- **Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.**

- **By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.**

- **The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.**

- **The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.**

- **The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.**

- **The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.**

2/26/2025
_____
**Date**

_____
**Attorney Signature**

[Rev.11/2019]

2

Original Filed at Docket No. 90,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

John Doe
**Plaintiff,**

v.

Jane Doe
**Defendant.**

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## *EX PARTE* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Neil K. Roman of the firm Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001-4956; Telephone: (202) 662-5135, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Neil Roman pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Neil K. Roman stating he has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from the District of Columbia Court of Appeals attached as Exhibit B, and the Consent to Electronic Filing Form for Neil Roman attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Neil K. Roman of the firm Covington & Burling LLP to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe

Respectfully submitted,

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

*Counsel for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served

on all known counsel of record in this proceeding via the court's CM/ECF this 13th day of March

2025.

TAYLOR, WELLONS, POLITZ & DUHE, LLC

Case 2:24-cv-00825-DJP-EJD Document 90-1 Filed 06/03/25 Page 1025 of 1935

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLIO** |
| Jane Doe , **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

**PROPOSED ORDER**

Considering the foregoing Motion for Admission *Pro Hac Vice* of Neil K. Roman as

counsel for Defendant Jane Doe;

IT IS HEREBY ORDERED that Neil K. Roman should be and is hereby admitted to

the bar of this Court *pro hac vice* on behalf of Defendant Jane Doe.

New Orleans, Louisiana, this ___ day of March 2025.

_____

**United States District Judge**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

John Doe          ,
          **Plaintiff,**

          v.

Jane Doe ,

          **Defendant.**

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLIO**

**MAG. JUDGE EVA J. DOSSIER**

## DECLARATION OF NEIL K. ROMAN

I, Neil K. Roman, certify that the following is a true and correct statement submitted in accordance with Local Rule 83.2.5:

1.  I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2.  I am admitted to practice law in the District of Columbia.

3.  I have not been admitted to practice law in Louisiana.

4.  I have not engaged in the general practice of law in Louisiana without being properly admitted and licensed to practice law in Louisiana.

5.  I am licensed in good standing to practice law in the District of Columbia.

6.  I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7.  I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8.  No criminal charges have been instituted against me.

9.  I consent to electronic service of all documents through the Court's electronic filing system.

10. I agree to confer disciplinary jurisdiction upon this Court for any

alleged misconduct arising in the course of or in preparation for this action.

11.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of March 2025.

                                        /s/ Neil K. Roman

                                        Neil K. Roman



On behalf of *JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,*
*the District of Columbia Bar does hereby certify that*

# *Neil K Roman*

*was duly qualified and admitted on July 23, 1986 as an attorney and counselor entitled to*
*practice before this Court; and is, on the date indicated below, an Active member in good*
*standing of this Bar.*

***In Testimony Whereof,***
***I have hereunto subscribed my***
***name and affixed the seal of this***
***Court at the City of***
***Washington, D.C., on March 03, 2025.***

*JULIO A. CASTILLO*
*Clerk of the Court*

*Issued By:*

*David Chu - Director, Membership*
*District of Columbia Bar Membership*

*For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email*
*memberservices@dcbar.org.*

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
**www.pacer.gov**

     This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Neil Roman

Attorney Bar # and State: DC - 401170

Firm Name: Covington & Burling, LLP

Firm Address: 850 Tenth Street, NW

Washington, DC 20001-4956

Telephone Number: 202 662 5135

E-Mail Address: nroman@cov.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑    Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number No. 24-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

- **Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.**

- **Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.**

- **By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.**

- **The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.**

- **The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.**

- **The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.**

- **The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.**

2/24/25
_____
**Date**

*Neil K. Roman*
_____
**Attorney Signature**

[Rev.11/2019]

2

Original Filed at Docket No. 91,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | CIVIL ACTION NO. 2:24-CV-00825 |
| Plaintiff, | |
| | SECTION: P (3) |
| v. | |
| | JUDGE DARREL JAMES PAPILLION |
| Jane Doe | |
| Defendant. | MAG. JUDGE EVA J. DOSSIER |

## *EX PARTE* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Shanelle Van of the firm Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001-4956; Telephone: (202) 662-5532, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Shanelle Van pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Shanelle Van stating she has not been the subject of any disciplinary or criminal proceedings, current Certificate of Good Standing from the District of Columbia Court of Appeals attached as Exhibit B, current Certificate of Standing from the State Bar of California attached as Exhibit C, and the Consent to Electronic Filing Form for Shanelle Van attached as Exhibit D.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Shanelle Van of the firm Covington & Burling, LLP to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe.

Respectfully submitted,

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

***Counsel for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 13th day of March 2025.

TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe    , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | **MAG. JUDGE EVA J. DOSSIER** |
| **Defendant.** | |

## <u>PROPOSED ORDER</u>

Considering the foregoing Motion for Admission *Pro Hac Vice* of Shanelle Van as counsel for Defendant Jane Doe;

IT IS HEREBY ORDERED that Shanelle Van should be and is hereby admitted to the bar of this Court *pro hac vice* on behalf of Defendant Jane Doe.

New Orleans, Louisiana, this ___ day of March 2025.

_____
**United States District Judge**

Case 2:24-cv-00825-DJP-EJD   Document 91-2   Filed 06/23/25   Page 1034 of 1935

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe    , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

## <u>DECLARATION OF SHANELLE VAN</u>

I, Shanelle Van, certify that the following is a true and correct statement

submitted in accordance with Local Rule 83.2.5:

1.  I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2.  I am admitted to practice law in the District of Columbia and California.

3.  I have not been admitted to practice law in the State of Louisiana.

4.  I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5.  I am currently licensed in good standing to practice law in the District of Columbia and California.

6.  I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7.  I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8.  No criminal charges have been instituted against me.

9.  I consent to electronic service of all documents through the Court's electronic filing system.

10. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11. Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of March 2025.          /s/ Shanelle Van

                                                 Shanelle Van



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that

# Shanelle Clementina Van

*was duly qualified and admitted on February 2, 2021 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an Active member in good standing of this Bar.*

***In Testimony Whereof, I have hereunto subscribed my name and affixed the seal of this Court at the City of Washington, D.C., on March 03, 2025.***

**JULIO A. CASTILLO**
**Clerk of the Court**

Issued By:

David Chu - Director, Membership
District of Columbia Bar Membership

*For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.*

# THE STATE BAR OF CALIFORNIA
# CERTIFICATE OF STANDING

March 12, 2025

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, SHANELLE CLEMENTINA VAN, #353673 was admitted to the practice of law in this state by the Supreme Court of California on December 28, 2023 and has been since that date, and is at date hereof, an ACTIVE licensee of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Lea Randrup
Custodian of Records

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
**www.pacer.gov**

     This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Shanelle Clementina Van

Attorney Bar # and State: 1738076, District of Columbia; 353673, California

Firm Name: Covington & Burling, LLP

Firm Address: 850 Tenth Street, NW

Washington, DC 20001-4956

Telephone Number: 202 662 5532

E-Mail Address: svan@cov.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑   Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number No. 24-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

- **Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.**

- **Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.**

- **By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.**

- **The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.**

- **The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.**

- **The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.**

- **The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.**

02/24/2025

_____
**Date**

*Shanelle Van*

_____
**Attorney Signature**

[Rev.11/2019]

2

Original Filed at Docket No. 92,
Sealed by Court Order

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>   **Plaintiff,**<br><br>v.<br><br>Jane Doe<br>   **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

### *EX PARTE* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Zora F. Franicevic of the firm Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001-4956; Telephone: (202) 841-1209, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Zora Franicevic pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Zora F. Franicevic stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from the Appellate Division of the Supreme Court of the State of New York, First Judicial Department attached as Exhibit B, and the Consent to Electronic Filing Form for Zora F. Franicevic attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Zora F. Franicevic of the firm Covington & Burling, LLP to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe .

Respectfully submitted,

_____

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

*Counsel for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served

on all known counsel of record in this proceeding via the court's CM/ECF this fourth day of

March, 2025.

_____

TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe    , **Plaintiff,** <br><br> v. <br><br> Jane Doe <br><br>    **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLIO** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

## PROPOSED ORDER

Considering the foregoing Motion for Admission *Pro Hac Vice* of Zora F. Franicevic as counsel for Defendant Jane Doe;

IT IS HEREBY ORDERED that Zora F. Franicevic should be and is hereby admitted to the bar of this Court *pro hac vice* on behalf of Defendant Jane Doe.

New Orleans, Louisiana, this ___ day of March 2025.

_____
**United States District Judge**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | |
| | **SECTION: P (3)** |
| v. | |
| | **JUDGE DARREL JAMES PAPILLIO** |
| Jane Doe , | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

## <u>DECLARATION OF ZORA FRANICEVIC</u>

I, Zora F. Franicevic, certify that the following is a true and correct statement submitted in accordance with Local Rule 83.2.5:

1.      I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2.      I am admitted to practice law in the State of New York.

3.      I have not been admitted to practice law in the State of Louisiana.

4.      I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5.      I am currently licensed in good standing to practice law in the State of New York.

6.      I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7.      I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8.      No criminal charges have been instituted against me.

9.      I consent to electronic service of all documents through the Court's electronic filing system.

10.     I agree to confer disciplinary jurisdiction upon this Court for any alleged

misconduct arising in the course of or in preparation for this action.

11.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of March 2025.

/s/ Zora Franicevic

Zora Franicevic



## Appellate Division of the Supreme Court
## of the State of New York
## First Judicial Department

I, Susanna M. Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, do hereby certify that

## Zora Frederika Franicevic

was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **September 12, 2022**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Office of Court Administration, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand in the City of New York on February 19, 2025.

Clerk of the Court

CertID-00215128



# Supreme Court of the State of New York
## Appellate Division, First Department

**DIANNE T. RENWICK**
PRESIDING JUSTICE

**SUSANNA MOLINA ROJAS**
CLERK OF THE COURT

**MARGARET SOWAH**
DEPUTY CLERK OF THE COURT

**DOUGLAS C. SULLIVAN**
DEPUTY CLERK OF THE COURT

To Whom It May Concern

An attorney admitted to practice by this Court may request a certificate of good standing, which is the only official document this Court issues certifying to an attorney's admission and good standing.

An attorney's registration status, date of admission and disciplinary history may be viewed through the attorney search feature on the website of the Unified Court System.

New York State does not register attorneys as active or inactive.

An attorney may request a disciplinary history letter from the Attorney Grievance Committee of the First Judicial Department.

Bar examination history is available from the New York State Board of Law Examiners.

Instructions, forms and links are available on this Court's website.

Susanna Rojas
Clerk of the Court

Revised October 2020

27 MADISON AVENUE     NEW YORK, NEW YORK 10010-2201
TEL.: (212) 340 0400     INTERNET: WWW.NYCOURTS.GOV/COURTS/AD1/

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
**Consent to Electronic Filing**

# E-File Privileges
**must be requested through PACER:**
**www.pacer.gov**

     This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Zora Franicevic

Attorney Bar # and State: 5944269, New York

Firm Name: Covington & Burling, LLP

Firm Address: 620 Eighth Avenue

New York, NY 10018-1405

Telephone Number: 212 841 1209

E-Mail Address: zfranicevic@cov.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐  No ☑  Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number No. 24-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

- **Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.**

- **Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.**

- **By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.**

- **The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.**

- **The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.**

- **The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.**

- **The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.**

02/24/2025

_____
**Date**

_____
**Attorney Signature**

[Rev.11/2019]

Original Filed at Docket No. 93,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

█████████████████                    **CIVIL ACTION**

**VERSUS**                           **NO. 24-825**

████████                             **SECTION: "P" (3)**

**ORDER**

Considering the foregoing *ex parte* motion to admit Ashton E. Woods *pro hac vice* as co-counsel of record for Defendant ████████ (R. Doc. 88),

**IT IS ORDERED** that the motion (R. Doc. 88) is **GRANTED**, and Ashton E. Woods is hereby admitted *pro hac vice* and enrolled as counsel of record for Defendant ████████.

New Orleans, Louisiana, this 17th day of March 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Original Filed at Docket No. 94,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

████████████                                    **CIVIL ACTION**

**VERSUS**                                        **NO. 24-825**

████████                                          **SECTION: "P" (3)**

## ORDER

Considering the foregoing *ex parte* motion to admit Neil K. Roman *pro hac vice* as co-counsel of record for Defendant ████████ (R. Doc. 90),

**IT IS ORDERED** that the motion (R. Doc. 90) is **GRANTED**, and Neil K. Roman is hereby admitted *pro hac vice* and enrolled as counsel of record for Defendant ████████

New Orleans, Louisiana, this 17th day of March 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules.  Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action.  Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Version 6/1/2016

Original Filed at Docket No. 95,

Sealed by Court Order

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

████████████████                                    **CIVIL ACTION**

**VERSUS**                                           **NO. 24-825**

████████                                             **SECTION: "P" (3)**

## ORDER

Considering the foregoing *ex parte* motion to admit Zora F. Franicevic *pro hac vice* as co-counsel of record for Defendant ████████ (R. Doc. 92),

**IT IS ORDERED** that the motion (R. Doc. 92) is **GRANTED**, and Zora F. Franicevic is hereby admitted *pro hac vice* and enrolled as counsel of record for Defendant ████████

New Orleans, Louisiana, this 17th day of March 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1)  the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);
(2)  the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);
(3)  the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and
(4)  all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules.  Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action.  Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Original Filed at Docket No. 96,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

<table>
<tr><td>████████████</td><td>**CIVIL ACTION**</td></tr>
<tr><td>**VERSUS**</td><td>**NO. 24-825**</td></tr>
<tr><td>████████</td><td>**SECTION: "P" (3)**</td></tr>
</table>

## ORDER AND REASONS

Before the Court is Defendant ██████ Partial Motion to Dismiss for Failure to State a Claim.[1] Defendant ███ moves the Court to dismiss, in part, the amended complaint filed by Plaintiff ███████, to the extent Plaintiff attempts to plead claims for abuse of process, tortious interference with contract, and civil conspiracy. While Plaintiff originally opposed the motion in full,[2] he later filed a motion to withdraw the portion of his opposition related to the dismissal of his claim for tortious interference with contract, agreeing that the claim is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] For the following reasons, the Court grants Plaintiff's motion to withdraw his opposition to the portion of Defendant ███ motion seeking to dismiss his claim for tortious interference with contract (R. Doc. 82), and the Court grants in part and denies in part Defendant ███ partial motion to dismiss (R. Doc. 27).

## I. BACKGROUND[4]

Plaintiff was a student at Tulane University between August 2018 and May 2022. Plaintiff alleges he and Defendant ████ who was also a student at Tulane at the time, engaged in multiple consensual sexual encounters between January 29, 2022 and February 2, 2022. According to Plaintiff, on February 3, 2022, Defendant ███ witnessed Plaintiff talking to another woman, A.H.,

---

[1] R. Doc. 27.
[2] R. Doc. 41.
[3] R. Doc. 82.
[4] The information in this section comes from the allegations in Plaintiff's Amended Complaint. *See* R. Doc. 23.

at a bar, and Defendant ▮▮ heard that Plaintiff and A.H. went home together from the bar. Plaintiff alleges that the next day, Defendant ▮▮ began to disseminate false allegations about Plaintiff engaging in nonconsensual sexual activity. This included spreading rumors to Plaintiff's friends and other students at Tulane, posting on social media, reporting what Plaintiff contends were her false claims of sexual misconduct to Tulane's Case Management and Victim Support Services, as well as filing a Title IX/Sexual Misconduct report with Tulane based on false allegations of sexual assault by Plaintiff. Plaintiff also alleges that Defendant ▮▮ filed a Petition for Protection from Abuse in Louisiana state court, based on false allegations of harassment, intimidation, and stalking, to bolster her Title IX claim against him. Plaintiff contends Defendant ▮▮ took these actions to defame, humiliate, harass, and punish Plaintiff.

Plaintiff further alleges that Defendant ▮▮ and another Tulane student ("Sue Roe")— who also filed a Title IX/Sexual Misconduct report against Plaintiff on the same day as Defendant ▮▮ conspired with one another "to target Plaintiff in furtherance of their self-interests, in retaliation for Plaintiff's refusal to enter a committed relationship with either [Defendant ▮▮ or Sue Roe, and in an effort to destroy Plaintiff's academic career and future career goals." Plaintiff was expelled from Tulane on May 8, 2022, following a finding by the university that he was responsible for the charge of sexual assault.

Plaintiff's Amended Complaint asserts five causes of action against Defendant ▮▮ (1) defamation, (2) abuse of process, (3) tortious interference with contract, (4) intentional infliction of emotional distress, and (5) civil conspiracy. Defendant ▮▮ moves the Court to dismiss Plaintiff's claims for abuse of process, tortious interference with contract, and civil conspiracy pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will address each challenged claim, in turn, below.

## II.   LEGAL STANDARD

When presented with a motion to dismiss under Rule 12(b)(6), the Court must assess whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]  Although the Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff,[7] the Court is not bound to accept as true legal conclusions couched as factual allegations.[8]

## III.   LAW AND ANALYSIS

### A.  Abuse of Process

As an initial matter, the parties dispute whether Louisiana law or North Carolina law governs Plaintiff's abuse of process claim.  Federal district courts exercising diversity jurisdiction must apply the choice-of-law provisions of the forum state to determine which state's substantive laws apply.[9]  At the time the parties briefed this issue, this case was pending in the Western Division of the United States District Court for the Eastern District of North Carolina, and the parties conducted their choice-of-law analyses using North Carolina's choice-of-law provisions. The case was subsequently transferred to this District Court.  While the parties have not provided supplemental briefing regarding which state's substantive law governs Plaintiff's claim applying Louisiana's choice-of law provisions, when there is no conflict between the laws of the relevant

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[6] *Id.* at 678.

[7] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).

[8] *Iqbal*, 556 U.S. at 678.

[9] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

states on the issues raised, courts simply apply the law of the forum state.[10]  Here, no conflict exists because the elements of an abuse of process claim are the same under Louisiana and North Carolina law.[11]  Accordingly, to resolve Defendant's motion, the Court will assess whether Plaintiff has plausibly stated a claim for abuse of process under Louisiana law.

"An abuse of process occurs when the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to obtain an unjustifiable end or an object which is was not the purpose of the particular process employed to effect."[12]  "At issue in such actions is the intent to use a legal process for an improper reason."[13]  Thus, if the process is "used to redress a legal wrong, the person who invoked the legal process cannot be said to have committed any tort, even if his motive was vicious or vindictive."[14]  But, when the person who invoked the legal process did so with the intent to "'attain some collateral objective, outside the scope of the operation of the process employed,' a tort arises."[15]  The elements of an abuse of process claim are: (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding.[16]

---

[10] *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).

[11] *Compare Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (citing *Stark v. Eunice Superette, Inc.*, 457 So. 2d 291 (La. App. 3 Cir. 1984)) ("The essential elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose; and (2) a wilful act in the use of the process not in the regular prosecution of the proceeding."), *with Barnette v. Woody*, 242 N.C. 424, 431 (1955) ("[T]he only essential elements for abuse of process are: First, the existence of ulterior purpose, and second, an act in the use of process not proper in the regular prosecution of the proceeding.").

[12] *Delcambre v. Mancuso*, 268 So. 3d 325, 331 (La. App. 3 Cir. 4/10/19) (quoting *Hebert v. Louisiana Licensed Pro. Vocational Rehab. Couns.*, 4 So. 3d 1002, 1009 (La. App. 3 Cir. 3/4/09), *writ denied*, 9 So. 3d 144 (La. 5/22/09)) (cleaned up).

[13] *Delcambre*, 268 So. 3d at 331 (quoting *Goldstein v. Serio*, 496 So. 2d 412, 415 (La. App. 4 Cir. 1986), *writ denied,* 501 So. 2d 208 (La. 1987)).

[14] *Hebert*, 4 So. 3d at 1009.

[15] *Id.*

[16] *Duboue*, 909 F.2d at 132.

Plaintiff asserts two theories of abuse of process in his Amended Complaint.[17] The first is based on Defendant ███ alleged institution of a civil action against Plaintiff in Louisiana state court for the issuance of a temporary restraining order for illegitimate purposes. And the second theory is based on Defendant ███ alleged use of Tulane's Title IX process for illegitimate purposes. Plaintiff concedes his second theory is not viable because Tulane's Title IX investigation is not a "legal process."[18] Accordingly, to the extent Plaintiff's claim for abuse of process is based on Defendant ███ use of Tulane's Title IX process, the claim is dismissed with prejudice.

Turning now to Plaintiff's first theory, the Court finds Plaintiff's allegations are sufficient to state a claim for abuse of process that is plausible on its face. Plaintiff's Amended Complaint contains the following allegations:

> 87. On March 16, 2022, Ms. ███ filed a Petition for Protection from Abuse, also known as a Temporary Restraining Order (TRO), in Louisiana civil court. In her petition, Ms. ███ requested that Plaintiff be barred from contacting her through third parties and from stepping foot on Tulane's campus. The TRO falsely alleged that Plaintiff had been harassing, intimidating, and stalking Ms. ███ despite the fact that Plaintiff had had no contact with Ms. ███ since he first heard of her false claims through mutual friends. In fact, Plaintiff did not even respond to Ms. ███ February 8, 2022 text message, the last correspondence between the parties.

> 88. In her TRO, Ms. ███ cited instances of Plaintiff calling their "mutual friends and interrogating her." However, the one mutual friend Plaintiff had contacted, T.R., informed Barber that Plaintiff had called her, but made no mention of harassment or interrogation. In fact, T.R. voluntarily submitted evidence of her agreeing to speak on the phone with Plaintiff. Ms. ███ also claimed Plaintiff harassed and stalked her by calling two other mutual friends to gather evidence for this investigation. Ms. ███ knew that Plaintiff's phone calls to his own friends, to discuss the ongoing Tulane investigation, did not constitute or include any harassing behavior, but Ms. ███ nonetheless utilized and abused the civil court process as a way to bolster her claims and restrict Plaintiff from contacting relevant witnesses in the Tulane investigation. Furthermore, Ms. ███ recognized that if she

---

[17] R. Doc. 23 ¶¶ 110–23.
[18] *See* R. Doc. 41 at 13 n.4.

5

had a restraining order against Plaintiff, Tulane would view the TRO as evidence of Plaintiff's alleged wrongdoing and Ms. ███ alleged fear and trauma.

89. In order to get the TRO dismissed, Plaintiff flew to New Orleans from South Carolina on March 24, 2022. However, Ms. ███ did not even attend the court hearing. Thus, the TRO was summarily dismissed in her absence. After the hearing Plaintiff and his mother saw Ms. ███ at the airport. It was clear that Ms. ███ false allegations of harassment and stalking were not made in earnest but rather with malicious intent in order to serve her own self interest in the Tulane investigation.

90. On May 8, 2022, Plaintiff was found responsible of the charge of sexual assault and was dismissed from the University, less than one month before he was due to graduate.

.   .   .   .

111. Defendant strategically utilized Louisiana's civil court system, filing a Petition for Protection from Abuse against Plaintiff, for an illegitimate objective; that is, to further harass, defame, retaliate against, and punish Plaintiff and to strengthen Defendant's Title IX claim against Plaintiff.

112. Defendant pursued the Petition for Protection from Abuse with an ulterior purpose, and one for which the Louisiana civil court system was not intended.

113. Defendant acted knowingly and willfully when she pursued the Petition for Protection from Abuse, knowing the allegations precipitating the petition were false.

.   .   .   .

122. As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.[19]

Based on the foregoing allegations, the Court concludes Plaintiff has clearly alleged that

Defendant ███ instituted the Louisiana state court action and obtained a TRO against Plaintiff,

not because Defendant needed protection from harassment, intimidation, and stalking, but, instead,

---

[19] R. Doc. 23 ¶¶ 87–90, 111-13, 122.

for the ulterior, improper purpose of bolstering her Title IX claim against Plaintiff, restricting Plaintiff from contacting witnesses in the Title IX investigation, and to further harass, defame, retaliate, and punish Plaintiff. Plaintiff has also clearly alleged that Defendant made false allegations in her Petition for Protection from Abuse. And it was based on these allegedly false allegations—which Defendant affirmed, under oath, to be true[20]—that the state court issued the TRO against Plaintiff *ex parte*.[21] Plaintiff has, therefore, plausibly alleged a claim for abuse of process based on Defendant █████ use of the Louisiana civil court system.[22] As such, this claim is not subject to dismissal pursuant to Rule 12(b)(6).

### B. Tortious Interference with Contract

Defendant █████ next seeks dismissal of Plaintiff's tortious interference with contract claim, arguing that the claim is governed by Louisiana law, which has not adopted the fully expanded common law doctrine of interference with contract.[23] Defendant █████ asserts that under Louisiana law, a tortious interference with contract claim is only viable in cases involving a corporate officer who intentionally and unjustifiably interfered with a contract between the officer's employer and a third person.[24] Here, Plaintiff alleges that Defendant █████ interfered with Plaintiff's contract with Tulane by providing the university with false information, which induced Tulane to breach its contract with Plaintiff by depriving Plaintiff of a fair and equitable grievance process,[25] and

---

[20] R. Doc. 39-1 at 7.

[21] R. Doc. 39-1 at 13.

[22] *See, e.g., Eicke v. Eicke*, 517 So. 2d 1067, 1072 (La. Ct. App. 1987) (finding mother who instituted proceedings to terminate grandparents' visitation liable for abuse of process because the evidence showed that the mother instituted the proceedings to specifically prevent visitation at Christmas rather than to seek a resolution of the issue raised in the petition, and the mother "improperly misled the trial court into issuing an ex parte order through the use of verified pleadings which were not supported by the evidence").

[23] R. Doc. 28 at 11–13.

[24] R. Doc. 28 at 13 (citing *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 547 (5th Cir. 1999)).

[25] R. Doc. 23 ¶ 130.

which further induced Tulane to cease performance of its contract with Plaintiff and to dismiss Plaintiff from the university.[26] Defendant ▮ argues Plaintiff has failed to state a claim for tortious interference with contract under Louisiana law because Plaintiff has not—and cannot—allege that Defendant ▮ is a corporate officer of Tulane.

Plaintiff originally opposed dismissal of his tortious interference with contract claim, arguing that, applying North Carolina's choice-of-law principles, South Carolina law governed his claim and that he had plausibly alleged a tortious interference with contract claim under South Carolina law, which is not limited in the same manner as Louisiana law.[27] After the case was transferred to this District, however, Plaintiff filed a motion to withdraw the portion of his opposition related to the dismissal of this claim.[28] Plaintiff recognizes that this Court must apply Louisiana's choice-of-law provisions, which results in Louisiana law governing his tortious interference with contract claim.[29] Thus, because Louisiana law governs his claim and because Defendant ▮ is not a corporate officer of Tulane, Plaintiff concedes his tortious interference with contract claim is subject to dismissal for failure to state a claim upon which relief can be granted.[30] Accordingly, Plaintiff's motion to withdraw his opposition to the dismissal of his tortious interference with contract claim is granted, and his claim for tortious interference with contract is dismissed with prejudice.

## C. Civil Conspiracy

Turning now to Plaintiff's civil conspiracy claim, the parties once again dispute whether North Carolina or Louisiana law governs this claim. Like with Plaintiff's abuse of process claim,

---

[26] R. Doc. 23 ¶ 132.
[27] R. Doc. 41 at 22–24.
[28] R. Doc. 82.
[29] R. Doc. 82-1 at 2.
[30] R. Doc. 82-1 at 2–3.

however, the Court concludes no conflict of law exists between North Carolina and Louisiana law on this issue. Indeed, under the law of both states, a civil conspiracy claim operates as a mode of assigning liability for damages resulting from an underlying wrongful or unlawful act committed by one or more co-conspirators pursuant to the formed conspiracy.[31] The elements for imposing such liability are the same under Louisiana and North Carolina law.[32] Accordingly, this Court will apply the law of the forum state—Louisiana—to determine whether Plaintiff has plausibly alleged a civil conspiracy.[33]

Louisiana Civil Code article 2324 provides, "[h]e who conspires with another to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."[34] "The actionable element in an article 2324 claim is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or

---

[31] *Compare Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023) ("As to [Plaintiff's] civil-conspiracy claim, we are mindful that such a cause of action 'is not itself an actionable tort.' . . . Operationally, civil conspiracy assigns liability for an underlying unlawful act to a person who acted in concert with the direct tortfeasor."), *with Fox v. Fox*, 283 N.C. App. 336, 347, 873 S.E.2d 653, 662 (2022) ("'[T]here is not a separate civil action for civil conspiracy in North Carolina.' . . . [C]onspiracy is a mode of liability rather than a cause of action.").

[32] *Compare Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023) ("To impose [liability for civil conspiracy], a plaintiff must prove the following elements: '(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result.'"), *with Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) ("The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme."), *and Fox v. Fox*, 283 N.C. App. 336, 346, 873 S.E.2d 653, 662 (2022) ("A civil action for conspiracy is an action for damages resulting from acts committed by one of more of the conspirators pursuant to the formed conspiracy.").

[33] *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("'[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary,' and we simply apply the law of the forum state.").

[34] LA. CIV. CODE art. 2324(A). This is consistent with North Carolina law, which holds all conspirators "jointly and severally liable for the act of any one of them done in furtherance of the agreement." *BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 300, 826 S.E.2d 746, 762 (2019); *see also Touchard v. Williams*, 617 So. 2d 885, 889 (La. 1993) ("The civilian concept of *in solido* liability in tort is synonymous with the common law phrase 'joint and several' liability.").

9

part."[35]    Thus, to recover under this theory of liability, a plaintiff must prove the following elements: "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result."[36]

In paragraph 148 of the 153-paragraph Amended Complaint, Plaintiff alleges Defendant ███ and Sue Roe "acted in concert with the common purpose to defame and injure Plaintiff emotionally, reputationally and economically by engaging in the acts outlined above, including but not limited to the false reporting to Tulane University, Plaintiff's fraternity, and other individuals that Plaintiff had sexually assaulted and sexually harassed Ms. ███ and Sue Roe."[37] Plaintiff further alleges that "[i]t was foreseeable that the actions taken by Defendant and Sue Roe would result in Plaintiff being injured and were taken by Defendant and Sue Roe for that express purpose."[38]    And Plaintiff contends that, as a result of Defendant ███ and Sue Rue's actions, he has suffered "tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages."[39]

Defendant ███ argues Plaintiff has not plausibly alleged a civil conspiracy because he has not alleged that Defendant ███ entered into an agreement with Sue Roe to commit a wrongful act.[40]    More specifically, Defendant ███ contends Plaintiff has asserted a legal theory of "conspiracy to defame" but that Plaintiff does not allege facts supporting the existence of an

---

[35] *Silver v. Nelson*, 610 F. Supp. 505, 516 (E.D. La. 1985); *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002).
[36] *Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023).
[37] R. Doc. 23 ¶ 148.
[38] R. Doc. 23 ¶ 149.
[39] R. Doc. 23 ¶ 150.
[40] R. Doc. 28 at 16.

10

agreement to defame him.[41]   Defendant ▮ refers to certain allegations in the Amended Complaint where Plaintiff alleges that Defendant and Sue Roe "acted in concert," "conspired," or collud[ed]" with one another with the common purpose to defame and injure Plaintiff; and Defendant ▮ argues these allegations are speculative and conclusory and thus insufficient to plausibly allege there was an agreement between Sue Roe and Defendant ▮ to support Plaintiff's civil conspiracy theory.[42]

In opposition, Plaintiff disagrees that the Amended Complaint fails to plausibly allege a claim for civil conspiracy.  First, Plaintiff argues Defendant ▮ has conceded that Plaintiff plausibly alleged the underlying torts of defamation and intentional infliction of emotional distress because those causes of action are not challenged in Defendant ▮ motion.  Plaintiff points out that Defendant's attack on Plaintiff's civil conspiracy claim is based solely on whether Plaintiff plausibly alleged an agreement between Defendant and Sue Roe "to defame" Plaintiff.[43]   In response to that attack, Plaintiff recites numerous allegations from his Amended Complaint, which he contends are sufficient to plausibly allege an agreement between Defendant ▮ and Sue Roe to defame and cause harm to Plaintiff.[44]   Plaintiff further argues that Defendant ▮ attempts to impose a heightened pleading standard on Plaintiff by requiring him to plead direct evidence of an agreement despite the fact that a civil conspiracy may be proven by circumstantial evidence.[45]

---

[41] R. Doc. 28 at 16.

[42] R. Doc. 28 at 17 (citing R. Doc. 23 ¶¶ 1–2, 91, 148, 151).

[43] In his Opposition, Plaintiff notes that Defendant ▮ characterization of his civil conspiracy claim as being limited to a conspiracy to defame him is incorrect.  R. Doc. 41 at 18 n.7.  Plaintiff contends he has alleged that the conspiracy consisted of additional unlawful or tortious conduct, including *inter alia* the intent to injure him emotionally.  *Id.*  Defendant ▮ does not respond to this assertion.  Because Defendant ▮ challenge is limited to the alleged conspiracy to defame, the Court's analysis is likewise limited to this theory.  The Court makes no determination at this time as to whether Plaintiff has plausibly alleged an agreement between Sue Roe and Defendant ▮ to commit any other illegal or tortious act.

[44] R. Doc. 41 at 18–19 (citing R. Doc. 23 ¶¶ 21-31, 37, 47, 50–51, 55–67).

[45] R. Doc. 41 at 20 (*citing Payne v. Stanley*, 316 So. 3d 104, 113 (La. App. 2 Cir. 3/3/21), *writ denied,* 313 So. 3d 445 (La. 5/25/21)).

11

And Plaintiff reiterates that at the motion to dismiss stage, Plaintiff satisfies his burden so long as he has alleged facts sufficient to give rise to the inference that Defendant ▮ and Sue Roe had an agreement to defame Plaintiff.[46]

Considering Plaintiff's Amended Complaint in its entirety, accepting all factual allegations as true, and drawing all reasonable plausible inferences from the complaint in favor of Plaintiff— as the Court must at this stage[47]— the Court concludes Plaintiff has plausibly alleged, via circumstantial evidence, that Defendant ▮ and Sue Roe had an agreement to defame Plaintiff.

Plaintiff alleges that he had separate, consensual sexual encounters with Sue Roe and Defendant ▮ while enrolled at Tulane.[48] He alleges both women wanted to retaliate against him out of jealousy and because he refused to enter into a committed relationship with either of them.[49] He further alleges that one day after Defendant ▮ witnessed Plaintiff leaving the bar with another woman, Defendant ▮ began spreading rumors that Plaintiff had engaged in nonconsensual sexual activity.[50] A few days later, one of Sue Roe's best friends, A.S., and Defendant ▮ each posted on their Instagram accounts at the same time with messages about sexual assault, with A.S.'s post containing an indication that she was referring to Plaintiff as a sexual assaulter.[51] And a few days after that, Sue Roe and Defendant ▮ simultaneously submitted Title IX/Sexual Misconduct reports to Tulane, naming Plaintiff as the respondent.[52] In

---

[46] R. Doc. 41 at 20.
[47] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 264 (5th Cir. 2009).
[48] R. Doc. 23 ¶¶ 14–31.
[49] R. Doc. 23 ¶¶ 1, 14–15, 86.
[50] R. Doc. 23 ¶¶ 31–32.
[51] R. Doc. 23 ¶¶ 33–34.
[52] R. Doc. 23 ¶ 47.

both reports, the women describe very similar behavior on the part of Plaintiff.[53]   Plaintiff alleges the claims are unequivocally false.[54]

Plaintiff further alleges that Defendant ▇ and Sue Roe scheduled their investigation interviews to be within one hour of each other.[55]   Plaintiff alleges both women made false claims about their experiences with Plaintiff and that their false claims closely mirrored one another.[56] Plaintiff further alleges that during Defendant ▇ interview, Defendant ▇ told the investigator she was aware of Plaintiff's "previous situation" with Sue Roe and that she would let Sue Roe tell the investigator her story.[57]   Plaintiff also alleges that, a few days before the interview, Defendant ▇ texted Plaintiff, calling him a "repeat offender" and telling him that she would not let him "manipulate or invalidate [her] assault, like [he] did to [his] previous victim."[58]   In addition, Plaintiff alleges Defendant ▇ and Sue Roe attempted to conceal their conspiracy by providing false information to the Tulane investigator about when they first connected with one another.[59]

The foregoing allegations, together with the other facts alleged in the Amended Complaint, allow the Court to draw the plausible inference that Defendant ▇ and Sue Roe had an agreement to defame Plaintiff.[60]   Accordingly, Defendant ▇ challenge to Plaintiff's civil conspiracy claim fails, and this claim is not subject to dismissal.

## IV.   CONCLUSION

For the foregoing reasons,

---

[53] R. Doc. 23 ¶ 47.
[54] R. Doc. 23 ¶ 47.
[55] R. Doc. 23 ¶ 50.
[56] R. Doc. 23 ¶¶ 50–51.
[57] R. Doc. 23 ¶ 51.
[58] R. Doc. 23 ¶ 37.
[59] R. Doc. 23 ¶¶ 55–67.
[60] *See Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982) ("This requirement must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence.").

13

**IT IS ORDERED** that Plaintiff's Motion to Withdraw His Opposition to the Portion of Defendant's Rule 12(b)(6) Motion Seeking to Dismiss Plaintiff's Claim for Tortious Interference with Contract (R. Doc. 82) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant ██████ Partial Motion to Dismiss for Failure to State a Claim (R. Doc. 27) is **GRANTED IN PART** and **DENIED IN PART**. This motion is denied insofar as it seeks dismissal of (1) Plaintiff's abuse of process claim based on Defendant's use of the Louisiana civil court system and (2) Plaintiff's civil conspiracy claim. This motion is granted, however, insofar as it seeks dismissal of (1) Plaintiff's abuse of process claim based on Defendant's use of the Tulane Title IX process and (2) Plaintiff's tortious interference with contract claim.

Accordingly, **IT IS FURTHER ORDERED** that (1) Plaintiff's abuse of process claim based on Defendant's use of the Tulane Title IX process and (2) Plaintiff's tortious interference with contract claim are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 17th day of March 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

14

Original Filed at Docket No. 97,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

███████████████                                   **CIVIL ACTION**

**VERSUS**                                                   **NO. 24-825**

████████                                                     **SECTION: "P" (3)**

## ORDER

Considering the foregoing *ex parte* motion to admit Shanelle Van *pro hac vice* as co-counsel of record for Defendant ████████ (R. Doc. 91),

**IT IS ORDERED** that the motion (R. Doc. 91) is **GRANTED**, and Shanelle Van is hereby admitted *pro hac vice* and enrolled as counsel of record for Defendant ████████

New Orleans, Louisiana, this 18th day of March 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

### NOTICE TO VISITING ATTORNEYS

### ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Original Filed at Docket No. 98,

Sealed by Court Order

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

███████████████████          **CIVIL ACTION**

**VERSUS**          **NO. 24-825**

██████████          **SECTION: "P" (3)**

## ORDER

Considering the foregoing *ex parte* motion to admit Komal Shah *pro hac vice* as co-counsel of record for Defendant ████████ (R. Doc. 89),

**IT IS ORDERED** that the motion (R. Doc. 89) is **GRANTED**, and Komal Shah is hereby admitted *pro hac vice* and enrolled as counsel of record for Defendant ████████.

New Orleans, Louisiana, this 20th day of March 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Original Filed at Docket No. 99,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

████████████                                    **CIVIL ACTION**

**VERSUS**                                       **NO. 24-825**

████████                                         **SECTION P(3)**

## NOTICE

     Due to a conflict on the Court's calendar, the telephone scheduling conference set for March 25, 2025 is hereby **RESET to be held on April 3, 2025, at 3:30 p.m.**

**Please use the following information to call in for the conference:**
**Dial-In: 571-353-2301/Toll Free: 833-990-9400**
**Guest ID: 819977081**

COURTNEY ANCAR
CASE MANAGER
SECTION "P"
504-589-7715

Original Filed at Docket No. 100,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| John Doe | * | **CIVIL ACTION NO. 24-cv-825** |
| | * | **SECTION: P (3)** |
| **VERSUS** | * | |
| | * | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | * | |
| | | **MAGISTRATE JUDGE EVA D. DOSSIER** |

**************************************************************************

### ANSWER TO FIRST AMENDED COMPLAINT

Defendant, Jane Doe ("Jane Doe hereby answers Plaintiff's First Amended Complaint. Jane Doe denies all allegations in the First Amended Complaint except those expressly admitted.

1. Jane Doe denies the allegations in Paragraph 1.

2. Jane Doe admits that she and Plaintiff matched on a dating app and did not communicate at the time that they matched. Jane Doe further admits that subsequently she and Plaintiff passed each other in a staircase at a concert and exchanged phone numbers. Jane Doe further admits that later still, she and Plaintiff saw each other at a bar and began a conversation and then went to Plaintiff's apartment (where Plaintiff kissed Jane Doe but otherwise no sexual activity occurred). Jane Doe further admits that she and Plaintiff engaged in consensual sexual activity on two occasions, one of which involved Plaintiff being unable to perform sexually. Jane Doe denies the remaining allegations in Paragraph 2.

3. On information and belief, Jane Doe admits that Tulane University's Office of Student Conduct found Plaintiff responsible for sexual assault based on nonconsensual sexual contact and nonconsensual sexual intercourse with two different female students in violation of the Code of Student Conduct and imposed a sanction of expulsion. Jane Doe denies the remaining

1

allegations in Paragraph 3.

4. Jane Doe denies that her allegation that Plaintiff is a perpetrator of sexual assault is false. Jane Doe further denies that Plaintiff is entitled to damages or other relief. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 4 and therefore denies same.

5. Jane Doe admits that Plaintiff seeks relief in this action, but denies that Plaintiff is entitled to relief.

6. On information and belief, Jane Doe admits the allegations in Paragraph 6, except to deny that Plaintiff was enrolled at Tulane University at all times of the events described herein.

7. Jane Doe admits the allegations in Paragraph 7.

8. The allegations in Paragraph 8 contain legal conclusions as to which no answer is required. To the extent that an answer is required, Jane Doe does not contest that for purposes of this litigation, the Court has jurisdiction, but denies liability and specifically denies that Plaintiff is entitled to damages or other relief.

9. The allegations in Paragraph 9 contain legal conclusions as to which no answer is required. To the extent that an answer is required, Jane Doe does not contest that for purposes of this litigation, the Court has personal jurisdiction over Jane Doe

10. The allegations in Paragraph 10 contain legal conclusions as to which no answer is required. To the extent that an answer is required, Jane Doe does not contest that for purposes of this litigation, venue is proper with respect to Jane Doe

11. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 11 and therefore denies same.

12. Jane Doe is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations of Paragraph 12 and therefore denies same.

13. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 13 and therefore denies same.

14. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 14 and therefore denies same.

15. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 15 and therefore denies same.

16. On information and belief, Jane Doe denies that Plaintiff engaged in consensual sex with Sue Roe on August 22, 2021. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 16 and therefore denies same.

17. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 17 and therefore denies same.

18. On information and belief, Jane Doe denies that Sue Roe wanted Plaintiff out of her bed because she was upset over comments Plaintiff made to Sue Roe. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 18 and therefore denies same.

19. Jane Doe admits the allegations in Paragraph 19.

20. Jane Doe admits that Plaintiff kissed her on the morning of January 28, 2022, but denies that they mutually kissed for several minutes. Jane Doe admits the remaining allegations in Paragraph 20.

21. Jane Doe admits that on or about January 28, 2022, Plaintiff invited her to his fraternity's date party and that she accepted. Jane Doe denies that H.W. had just ended his

3

relationship with her on or about January 28, 2022. Jane Doe further denies that she reported H.W. to Tulane for violating COVID-19 guidelines. On information and belief, Jane Doe further denies that H.W. believed that she had reported him to Tulane for violating COVID-19 guidelines. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 21 and therefore denies same.

22. Jane Doe admits the allegations in Paragraph 22.

23. Jane Doe admits that Plaintiff had a brief conversation with K.S at the date party on or about January 29, 2022. Jane Doe avers that after K.S. left the conversation, she told Plaintiff that K.S. had made her feel uncomfortable once by closing the door while they were both in a room at a party, but denies that she told Plaintiff that K.S. had previously assaulted her by trapping her in a room and refusing to let her leave unless she had sex with him. Jane Doe admits that Plaintiff expressed sympathy about her experience with K.S. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 23 and therefore denies same.

24. Jane Doe denies that her discussion about K.S. with Plaintiff on or about January 29, 2022 was related to her later question to Plaintiff about whether he was avoiding anyone at the date party. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that Plaintiff did not think much of Jane Doe question and that he was referring to D.K. when he told Jane Doe that he was avoiding the girl who he would have asked to the date party had he not asked Jane Doe and therefore denies those allegations. Jane Doe admits that she asked Plaintiff to take a photograph of her and that they took a photograph together, but denies that she asked to have photographs taken with him. Jane Doe denies that the reason that she declined Plaintiff's invitation to add a stop to their Uber back from the racetrack was that she

4

preferred to go to Plaintiff's house, which was within walking distance to her own house. Jane Doe admits the remaining allegations in Paragraph 24.

25. Jane Doe admits she was being kind to Plaintiff about his inability to perform sexually when she told Plaintiff that she was too drunk to try to have sex with Plaintiff on or about January 29, 2022. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that Plaintiff found it odd that Jane Doe said that she was drunk. Jane Doe admits that Plaintiff began kissing her and initiated consensual sexual intercourse but denies that they both began kissing each other at the same time. Jane Doe admits to giving Plaintiff a tour of her house and showing Plaintiff her backyard, but denies inviting Plaintiff to return to her house. Jane Doe admits that Plaintiff gave her a kiss goodbye, but denies that she initiated that kiss. Jane Doe admits the remaining allegations in Paragraph 25.

26. Jane Doe admits that on February 2, 2022, Jane Doe texted Plaintiff to wish him a happy birthday and that the two exchanged text messages that day, including a text from Jane Doe later in the day about celebrating together later. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 26 and therefore denies same.

27. Jane Doe admits that near the end of the night on February 2, 2022, Plaintiff texted Jane Doe to see if she wanted to hang out and that she replied affirmatively. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 27 and therefore denies same.

28. Jane Doe denies that she and Plaintiff went to sleep almost immediately after engaging in consensual sexual intercourse the night of February 2, 2022. Jane Doe further denies the allegations in Paragraph 28 to the extent that Plaintiff alleges that he did not sexually assault

5

Jane Doe the morning of February 3, 2022. Jane Doe admits the remaining allegations in Paragraph 28.

29. Jane Doe admits that Plaintiff kissed Jane Doe once the morning of February 3, 2022, but denies that they engaged in minutes of mutual kissing. Jane Doe admits that Plaintiff told Jane Doe that he would feel better if he walked her home, but denies that he said that it was the right thing to do. Jane Doe denies that she smiled during her interactions with Plaintiff the morning of February 3, 2022. Jane Doe admits the remaining allegations in Paragraph 29.

30. Jane Doe denies that she and Plaintiff talked in an easy and friendly manner on their walk to Jane Doe house the morning of February 3, 2022 and avers that she cannot recall the substance of their conversation. Jane Doe admits that Plaintiff kissed her goodbye, but denies that Jane Doe initiated that kiss. Jane Doe admits the remaining allegations in Paragraph 30.

31. Jane Doe denies that on February 3, 2022, she saw Plaintiff talking to A.H. at a bar and heard that he and A.H. left the bar together. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 31 and therefore denies same.

32. Jane Doe denies seeing Plaintiff with A.H. on February 3, 2022. Jane Doe admits that on the night of February 4, 2022, T.R. asked Jane Doe how her recent encounter with Plaintiff had gone and that she told T.R. that Plaintiff had masturbated on her. Jane Doe further admits that her conversation with T.R. was the first time that she told anyone about Plaintiff sexually assaulting her.

33. To the extent that any rumors began after and concerned Plaintiff's sexual assault of Jane Doe the morning of February 3, 2022, Jane Doe denies that those rumors were false. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the

6

remaining allegations of Paragraph 33 and therefore denies same.

34. Jane Doe admits that after the Plaintiff's sexual assault of Jane Doe the morning of February 3, 2022, she reposted ephemeral content to her Instagram Story created by another user that was about sexual assault generally and was available on her Instagram account for 24 hours. Jane Doe denies that she uploaded her post at the same time as the post by A.S or that she did so in conjunction with A.S.'s post. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 34 and therefore denies same.

35. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 35 and therefore denies same.

36. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 36 and therefore denies same.

37. Jane Doe admits the allegations in Paragraph 37, except to deny the allegation that Jane Doe falsely claimed that Plaintiff had sexually assaulted her.

38. Jane Doe denies that Plaintiff knew that he had not committed any of the acts that Jane Doe identified in her February 8, 2022 text to Plaintiff. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 38 and therefore denies same.

39. Jane Doe denies that her claims about Plaintiff's sexual assault of her the morning of February 3, 2022 were false. Jane Doe admits that she spoke to the president of the ZBT fraternity after he texted her and that she informed him that Plaintiff had sexually assaulted her and that she intended to file a report with Tulane. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 39 and

7

therefore denies same.

40. Jane Doe denies that she approached a group of Plaintiff's female friends on February 9, 2022 to share that Plaintiff had sexually assaulted her the morning of February 3, 2022. Jane Doe admits that she advised T.R. to share information about the sexual assault with other female students to protect them from Plaintiff. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 40 and therefore denies same.

41. Jane Doe admits that her reference to another woman who had been sexually assaulted by Plaintiff in her text to Plaintiff was to Sue Roe. On information and belief, Jane Doe admits that Sue Roe had her roommate, D.E., ask Plaintiff to leave her apartment because Plaintiff tried to have sex with her when she did not want to do so. On information and belief, Jane Doe denies that Sue Roe's text to Plaintiff about his sexual assault of her described events that never occurred. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 41 and therefore denies same.

42. Jane Doe denies that she had been communicating with Sue Roe before Plaintiff's sexual assault of Jane Doe the morning of February 3, 2022. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 42 and therefore denies same.

43. Jane Doe denies that the statements about Plaintiff in her February 8, 2022 text message were false. Jane Doe admits that she changed the contact name for Plaintiff in her phone to "rapist" so that she did not have to keep seeing Plaintiff's name in her phone. Jane Doe denies that anyone who saw the screenshot of the text message saw Plaintiff referred to as a rapist given that no reference to or photograph of Plaintiff appeared in the screenshot. Jane Doe is without

8

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 43 and therefore denies same.

44. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 44 and therefore denies same.

45. On information and belief, Jane Doe admits that Plaintiff withdrew from Tulane on or about February 11, 2022. Jane Doe denies that her accusations of Plaintiff were false. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 45 and therefore denies same.

46. Jane Doe admits that she called the Sexual Aggression Peer Hotline and Education (SAPHE) on or about February 6, 2022 to report the sexual assault and that a staff member advised her to call Case Management and Victim Support Services (CMVSS). Jane Doe further admits that she called CMVSS the same day and that she told the case manager that she had woken up to a man "beating off on [her]." Jane Doe denies the remaining allegations in Paragraph 46.

47. Jane Doe admits that she and Sue Roe each submitted Title IX/Sexual Misconduct reports naming Plaintiff as the respondent on or about February 11, 2022. Jane Doe admits that she and Sue Roe each reported having consensual sex with Plaintiff, falling asleep, and waking up to Plaintiff sexually assaulting them. Jane Doe further admits that Sue Roe reported that on August 23, 2021, Plaintiff vaginally penetrated her with his fingers without her consent and masturbated as she got dressed and left. Jane Doe further admits that she reported that on the morning of February 3, 2022, Plaintiff masturbated while touching her buttocks with his hands and penis without her consent. Jane Doe denies the remaining allegations in Paragraph 47.

48. On information and belief, Jane Doe admits that Plaintiff received a letter from Christopher Zacharda on or about February 16, 2022. Jane Doe avers that the referenced letter is

9

the best evidence of its contents.

49. Jane Doe admits the allegations in Paragraph 49.

50. Jane Doe admits that the Office of Student Conduct scheduled Jane Doe and Sue Roe's investigation interviews on or about February 16, 2022. Jane Doe further admits to attending an interview on or about February 16, 2022 with Jacqueline Barber, an investigator for the Office of Student Conduct. Jane Doe denies that her statements to Ms. Barber were false or defamatory. Jane Doe further avers that the transcript of the recorded interview is the best evidence of its contents.

51. Jane Doe denies that her statements to Ms. Barber in her interview on or about February 16, 2022 were false or defamatory. Jane Doe further denies that she modeled her testimony after Sue Roe's testimony or that Sue Roe communicated her testimony to Jane Doe before Sue Roe's interview. On information and belief, Jane Doe denies that Sue Roe's statements to Ms. Barber were false. Jane Doe further avers that the transcripts of the recorded interviews are the best evidence of their contents.

52. Jane Doe denies that her statements to Ms. Barber in her interview on or about February 16, 2022 were false or defamatory. Jane Doe further avers that the transcript of the recorded interview is the best evidence of its contents.

53. Jane Doe denies that her statements to Ms. Barber in her interview on or about February 16, 2022 were false or defamatory. Jane Doe further denies that the text message she sent to Plaintiff on February 8, 2022 contained false or defamatory information about Plaintiff. Jane Doe admits that she participated in an interview with Ms. Barber on or about February 16, 2022 and avers that the transcript of the recorded interview is the best evidence of its contents.

54. On information and belief, Jane Doe admits that Plaintiff received a letter from Mr.

10

Zacharda on or about February 18, 2022 applying interim measures, including a Tulane campus ban that was effective immediately and an instruction not to participate in university-sponsored or recognized events or activities. Jane Doe denies that she bragged in her texts about Plaintiff being banned from campus. Jane Doe further avers that the referenced letter and text messages are the best evidence of their contents.

55. Jane Doe admits that she participated in an interview with Ms. Barber on or about February 16, 2022. Jane Doe further avers that the transcript of the recorded interview is the best evidence of its contents.

56. Jane Doe admits that on or about January 28, 2022, N.B. expressed concerns about Plaintiff to her. Jane Doe denies that N.B. referenced Sue Roe in their discussion. Jane Doe denies the remaining allegations in Paragraph 56.

57. Jane Doe denies that she asked Plaintiff at the racetrack event whether he was avoiding anyone at the date party to gain information from Plaintiff about Sue Roe's opinion of him. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 57 and therefore denies same.

58. On information and belief, Jane Doe admits that N.B. reached out to K.W. to ask if Sue Roe would be willing to speak to Jane Doe avers that she and Sue Roe first communicated with one another on or about February 7, 2022. Jane Doe denies that she and Sue Roe staged the introductory text messages and denies that they filed false or defamatory claims against Plaintiff. Jane Doe further avers that the transcript of the recorded interview and the referenced text messages are the best evidence of their contents.

59. Jane Doe admits that she submitted text messages as verification of her first correspondence with Sue Roe. Jane Doe denies that the evidence that she submitted to Ms. Barber

11

did not confirm the timeline of her first correspondence with Sue Roe. Jane Doe further avers that the transcript of the recorded interview and the referenced text messages are the best evidence of their contents. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 59 and therefore denies same.

60. Jane Doe denies that she and Sue Roe communicated before Plaintiff's sexual assault of her the morning of February 3, 2022. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 60 and therefore denies same.

61. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 61 and therefore denies same.

62. Jane Doe admits that her Instagram account was a public Instagram account during the relevant period in 2022. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 62 and therefore denies same.

63. Jane Doe admits that she met T.R. on or about January 29, 2022 before the event at the racetrack and that they took a photograph together on the party bus from Tulane's campus to the racetrack. Jane Doe further admits that she followed T.R. on Instagram and that she sent her the photograph via Instagram Direct Message. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 63 and therefore denies same.

64. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 64 and therefore denies same.

65. Jane Doe admits that she attended the "Silent Disco" party on or about January 28,

2022, that L.A. also attended that event, and that she posted a TikTok that showed her attendance at the event. Jane Doe further admits that she met several of Plaintiff's friends at the racetrack on or about January 29, 2022. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 65 and therefore denies same.

66. Jane Doe avers that she and Sue Roe first connected and communicated with one another on or about February 7, 2022. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 66 and therefore denies same.

67. Jane Doe denies the allegations in Paragraph 67.

68. Jane Doe admits that she participated in an interview with Ms. Barber on or about February 16, 2022 and avers that the transcript of the recorded interview is the best evidence of its contents. Jane Doe further avers that the referenced text messages are the best evidence of their contents.

69. Jane Doe denies that she pressured witnesses to align their testimonies with hers and denies the remaining allegations in Paragraph 69. On information and belief, Jane Doe admits that H.W. participated in an interview with Ms. Barber on or about April 6, 2022 and avers that the transcript of the recorded interview is the best evidence of its contents.

70. Jane Doe admits that she deleted text messages between her and Plaintiff shortly after Plaintiff's sexual assault of her the morning of February 3, 2022 and avers that she did so because she did not want to be reminded of the assault.

71. Jane Doe denies that she lied to Ms. Barber in her interview on or about February 16, 2022 and avers that the transcripts of the recorded interviews and the referenced text messages

are the best evidence of their contents. Jane Doe denies the remaining allegations in Paragraph 71.

72. Jane Doe admits that she deleted text messages between her and Plaintiff shortly after Plaintiff's sexual assault of her the morning of February 3, 2022 and avers that she did so because she did not want to be reminded of the assault. Jane Doe denies the remaining allegations in Paragraph 72.

73. Jane Doe admits that Plaintiff took a photograph of her by the racetrack on or about January 29, 2022 and that she posted it to her Instagram account. Jane Doe further admits that she later archived, but did not delete, that photograph from her Instagram profile because she did not want to be reminded of Plaintiff's sexual assault of her the morning of February 3, 2022. Jane Doe denies the remaining allegations in Paragraph 73.

74. Jane Doe admits that she transferred from the University of North Carolina, Charlotte to Tulane and that she told Plaintiff of the transfer. Jane Doe further admits that the University of North Carolina, Charlotte is listed on her LinkedIn page. Jane Doe denies the remaining allegations in Paragraph 74.

75. Jane Doe admits that she set an alarm on her telephone for around 8 am on February 3, 2022 and that she woke up with the alarm. Jane Doe further admits that she had hoped to leave Plaintiff's house without waking him, but that her alarm apparently woke him up as well. Jane Doe denies any inconsistency between her interview testimony and her texts with Plaintiff and avers that the transcript of the recorded interview and the referenced text messages are the best evidence of their contents.

76. The allegations in Paragraph 76 contain legal conclusions as to which no answer is required. To the extent that an answer is required, Jane Doe denies that she used social media to defame Plaintiff. Jane Doe admits that she posted a Tik Tok video on March 12, 2022 that

14

contained only the words "Knowing consent can't be given while someone's sleeping." Jane Doe denies that she posted the Tik Tok video as a tactic to get Plaintiff to stop contacting witnesses. Jane Doe further denies that her claims or allegations about Plaintiff are false or defamatory. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 76 and therefore denies same.

77. Jane Doe denies the allegations in Paragraph 77.

78. Jane Doe admits that she participated in an interview with Ms. Barber on or about February 16, 2022 and avers that the transcript of the recorded interview and the referenced text messages are the best evidence of their contents.

79. Jane Doe denies that she acknowledged that Plaintiff would have no way of knowing of his sexual assault of her the morning of February 3, 2022 or other events related to this lawsuit. Jane Doe further denies that she attempted to create a false narrative in her February 8, 2022 text message to Plaintiff and that the text message presupposed that Plaintiff did not know what he did to Jane Doe further avers that the referenced text messages are the best evidence of their contents.

80. Jane Doe denies the allegations in Paragraph 80.

81. Jane Doe admits that she transferred from the University of North Carolina, Charlotte to Tulane during the COVID-19 pandemic. Jane Doe further admits that she followed some of Plaintiff's friends on Instagram after the racetrack event on or about January 29, 2022. Jane Doe further avers that the referenced text message is the best evidence of its contents. Jane Doe denies the remaining allegations in Paragraph 81.

82. Jane Doe denies that on February 3, 2022, she saw Plaintiff with another woman and learned that he had gone home with that woman. Jane Doe further avers that the referenced text

15

messages are the best evidence of their contents.

83. Jane Doe admits that she did not describe the sexual assault perpetrated on her by Plaintiff to anyone on February 3, 2022. Jane Doe denies on information and belief that E.M. and N.B. told Ms. Barber that Plaintiff's sexual assault of Jane Doe the morning of February 3, 2022 was normal and consensual and denies that they would have a basis to reach any such conclusion. Jane Doe further avers that the transcripts of the recorded interviews are the best evidence of their contents.

84. On information and belief, Jane Doe admits that N.B. participated in an interview with Ms. Barber on March 2, 2022. Jane Doe further avers that the transcript of the recorded interview is the best evidence of its contents.

85. Jane Doe denies that she attempted to create a false narrative that Plaintiff had masturbated on her and inappropriately touched her without her consent. Jane Doe further denies on information and belief that E.M. testified to Ms. Barber that Jane Doe changed her story after seeing Plaintiff with another woman. Jane Doe further avers that the transcript of the recorded interview is the best evidence of its contents.

86. Jane Doe avers that the events described to Ms. Barber on February 16, 2022 are most accurately set forth in the transcript of the recorded interview and the referenced text messages, which are the best evidence of their contents. To the extent that a further response is required, Jane Doe denies the remaining allegations in Paragraph 86.

87. Jane Doe admits that she filed a Petition for Protection From Abuse in Louisiana civil court. Jane Doe further admits that Plaintiff did not respond to her February 8, 2022 text message and that it was the last direct correspondence between the two of them. Jane Doe denies the remaining allegations in Paragraph 87.

16

88. Jane Doe avers that the events described in Paragraph 88 are most accurately set forth in the transcript of the recorded interview, the referenced petition, and the referenced text messages, which are the best evidence of their contents. To the extent that a further response is required, Jane Doe denies the remaining allegations in Paragraph 88.

89. Jane Doe admits that she did not attend the court hearing related to her Petition for Protection From Abuse and that the court dismissed the action. Jane Doe denies that her allegations in the Petition for Protection From Abuse were false, were not made in earnest, or were made with malicious intent to buttress her position in the Tulane investigation. Jane Doe is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 89 and therefore denies same.

90. Jane Doe admits the allegations in Paragraph 90.

91. Jane Doe denies the allegations in Paragraph 91.

## COUNT ONE
### Defamation

92. Jane Doe incorporates her answers to Paragraphs 1-91 of the Complaint as if fully set forth herein.

93. Jane Doe denies the allegations in Paragraph 93.

94. Jane Doe denies the allegations in Paragraph 94.

95. Jane Doe denies the allegations in Paragraph 95.

96. Jane Doe denies the allegations in Paragraph 96.

97. Jane Doe denies the allegations in Paragraph 97.

98. Jane Doe denies the allegations in Paragraph 98.

99. Jane Doe denies the allegations in Paragraph 99.

100. Jane Doe denies the allegations in Paragraph 100.

17

101. Jane Doe denies the allegations in Paragraph 101.

102. Jane Doe denies the allegations in Paragraph 102.

103. Jane Doe denies the allegations in Paragraph 103.

104. Jane Doe denies the allegations in Paragraph 104.

105. Jane Doe denies the allegations in Paragraph 105.

106. Jane Doe denies the allegations in Paragraph 106.

107. Jane Doe denies the allegations in Paragraph 107.

108. Jane Doe denies the allegations in Paragraph 108.

109. Jane Doe denies the allegations in Paragraph 109.

### COUNT TWO
**Abuse of Process**

110. On March 17, 2025, the Court dismissed this cause of action as it pertains to Tulane's Title IX process with prejudice. DE 96 at 5. Therefore, to the extent that this cause of action pertains to Tulane's Title IX process, no response is required. To the extent that a response is required, Jane Doe incorporates her answers to Paragraphs 1-109 of the Complaint as if fully set forth herein.

111. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 111.

112. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 112.

113. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the

18

allegations in Paragraph 113.

114. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 114.

115. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 115.

116. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 116.

117. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 117.

118. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 118.

119. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 119.

120. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 120.

121. To the extent that this cause of action pertains to Tulane's Title IX process, no

response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 121.

122. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 122.

123. To the extent that this cause of action pertains to Tulane's Title IX process, no response is required. DE 96 at 5. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 123.

<div align="center">

**COUNT THREE**
**Tortious Interference with Contract**

</div>

124. On March 17, 2025, the Court dismissed this cause of action with prejudice. DE 96 at 8. Therefore, no response is required to the allegations concerning this cause of action. To the extent that a response is required, Jane Doe incorporates her answers to Paragraphs 1-123 of the Complaint as if fully set forth herein.

125. On March 17, 2025, the Court dismissed this cause of action with prejudice. DE 96 at 8. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 125.

126. On March 17, 2025, the Court dismissed this cause of action with prejudice. DE 96 at 8. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 126.

127. On March 17, 2025, the Court dismissed this cause of action with prejudice. DE 96 at 8. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 127.

128. On March 17, 2025, the Court dismissed this cause of action with prejudice. DE 96 at 8. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 128.

129. On March 17, 2025, the Court dismissed this cause of action with prejudice. DE 96 at 8. To the extent that a response is required, Jane Doe denies the allegations in Paragraph 129.

<div align="center">20</div>

130. On March 17, 2025, the Court dismissed this cause of action with prejudice.  DE 96 at 8.  To the extent that a response is required, Jane Doe denies the allegations in Paragraph 130.

131. On March 17, 2025, the Court dismissed this cause of action with prejudice.  DE 96 at 8.  To the extent that a response is required, Jane Doe denies the allegations in Paragraph 131.

132. On March 17, 2025, the Court dismissed this cause of action with prejudice.  DE 96 at 8.  To the extent that a response is required, Jane Doe denies the allegations in Paragraph 132.

133. On March 17, 2025, the Court dismissed this cause of action with prejudice.  DE 96 at 8.  To the extent that a response is required, Jane Doe denies the allegations in Paragraph 133.

134. On March 17, 2025, the Court dismissed this cause of action with prejudice.  DE 96 at 8.  To the extent that a response is required, Jane Doe denies the allegations in Paragraph 134.

135. On March 17, 2025, the Court dismissed this cause of action with prejudice.  DE 96 at 8.  To the extent that a response is required, Jane Doe denies the allegations in Paragraph 135.

## COUNT FOUR
**Intentional Infliction of Emotional Distress**

136. Jane Doe incorporates her answers to Paragraphs 1-135 of the Complaint as if fully set forth herein.

137. Jane Doe denies the allegations in Paragraph 137.

138. Jane Doe denies the allegations in Paragraph 138.

139. Jane Doe denies the allegations in Paragraph 139.

140. Jane Doe denies the allegations in Paragraph 140.

141. Jane Doe denies the allegations in Paragraph 141.

142. Jane Doe denies the allegations in Paragraph 142.

143. Jane Doe denies the allegations in Paragraph 143.

144. Jane Doe denies the allegations in Paragraph 144.

145. Jane Doe denies the allegations in Paragraph 145.

146. Jane Doe denies the allegations in Paragraph 146.

## COUNT FIVE
### Civil Conspiracy

147. Jane Doe incorporates her answers to Paragraphs 1-146 of the Complaint as if fully set forth herein.

148. Jane Doe denies the allegations in Paragraph 148.

149. Jane Doe denies the allegations in Paragraph 149.

150. Jane Doe denies the allegations in Paragraph 150.

151. Jane Doe denies the allegations in Paragraph 151.

152. Jane Doe denies the allegations in Paragraph 152.

153. Jane Doe denies the allegations in Paragraph 153.

## AFFIRMATIVE DEFENSES

Jane Doe asserts the following defenses and reserves the right to amend her answer and defenses and to file further pleadings. These defenses have been labeled as "affirmative" defenses regardless of whether, as a matter of law, such defenses are truly affirmative defenses. Such designation should in no way be construed to constitute a concession on the part of Jane Doe that she bears the burden of proof to establish such defenses.

A. The Complaint fails to state a claim on which relief can be granted.

B. Any alleged defamatory statements Jane Doe made about Plaintiff were true.

C. Any alleged defamatory statements Jane Doe made about Plaintiff were protected by a conditional or qualified privilege.

D. Plaintiff's damages, if any, were caused in whole or in part by his own negligence or intentional acts, or the negligence or intentional acts of others, for which Ms.

22

<sup>Jane Doe</sup> has no liability.

E.  Plaintiff failed to mitigate, or reasonably attempt to mitigate, his damages, if any.

F.  Plaintiff has not suffered any actual damages caused by Jane Doe

G.  Plaintiff is not entitled to punitive damages because the statements and actions Plaintiff challenges in this lawsuit were undertaken without malice or reckless disregard.

**WHEREFORE**, having fully answered Plaintiff's Complaint, Jane Doe prays that this Answer be deemed good and sufficient and that, after due proceedings had, there be judgment in her favor and against Plaintiff, dismissing Plaintiff's lawsuit with prejudice, with attorneys' fees and court costs awarded to Jane Doe together with such other legal and equitable relief as the Court may deem just and proper.

## JURY DEMAND

Jane Doe requests a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WILLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (pro hac vice)
Komal Shah (pro hac vice)
Shanelle Van (pro hac vice)
Zora F. Franicevic (pro hac vice)
Ashton E. Woods (pro hac vice)
COVINGTON & BURLING LLP
One CityCenter
850 10th St. NW

23

Washington, D.C. 20902
Tel: (202) 662-6000
Fax: (202)778-5528
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com

*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System. I further certify that I mailed the forgoing document and notice of electronic filing by first-class mail to all counsel of record who are not participants in the CM/ECF system on this 31st day of March, 2025.

_____*/s/ Jared A. Davidson*_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

Original Filed at Docket No. 101,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

██████████████          **CIVIL ACTION**

**VERSUS**                **NO. 24-825**

████████                **SECTION P(3)**

## <u>SCHEDULING ORDER</u>

A Scheduling Conference was held April 3, 2025.

Participating were:    Alex Robertson and Kara Gorycki, for plaintiff
                        Jared Davidson and Komal Shah, for defendant

Issue is joined as to all parties. Jurisdiction and venue are established.

Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) must be exchanged no later than

**APRIL 17, 2025.**

Amendments to pleadings, third-party actions, crossclaims, and counterclaims shall be

filed no later than **MAY 2, 2025,** in accordance with Local Rule 7.6.

Counsel adding new parties subsequent to the issuance of this Notice shall serve on each

new party a copy of this Minute Entry. Pleadings responsive thereto, when required, shall be filed

within the applicable delays therefor.

Written reports of experts, as defined by the Federal Rules of Civil Procedure 26(a)(2)(B),

who may be witnesses for Plaintiffs, shall be obtained and delivered to counsel for Defendant as

soon as possible, but in no event later than **JANUARY 2, 2026.** This deadline shall also apply to

all expert disclosures, as defined by the Federal Rules of Civil Procedure 26(a)(2)(C).

Written reports of experts, as defined by the Federal Rules of Civil Procedure 26(a)(2)(B),

who may be witnesses for Defendants, shall be obtained and delivered to counsel for Plaintiff as

soon as possible, but in no event later than **FEBRUARY 2, 2026.** This deadline shall also apply

to all expert disclosures, as defined by the Federal Rules of Civil Procedure 26(a)(2)(C).

Written <u>rebuttal</u> reports of experts, as defined by the Federal Rules of Civil Procedure 26(a)(2)(B), who may be witnesses for Plaintiffs, shall be obtained and delivered to counsel for Defendant no later than **MARCH 3, 2026.** Plaintiff is cautioned that rebuttal reports should be strictly limited to opinions in response to the Defendant's expert reports.

Counsel for the parties shall file in the record and serve upon their opponents a list of all witnesses who may or will be called to testify at trial and a list of all exhibits which may or will be used at trial no later than **MARCH 3, 2026.**

Depositions for trial use shall be taken and all discovery shall be completed no later than **APRIL 2, 2026.** This case does not involve extensive documentary evidence, depositions or other discovery. No special discovery limitations beyond those established in the Federal Rules, Local Rules of this Court, or the Plan are established.

The Court will hold a Status Conference on **APRIL 8, 2026** at **2:00 p.m.** for the purpose of discussing the status of the case. Lead trial counsel shall be present at this conference, and can only be excused by order of the Court, after such counsel certify that they are sending associate or substitute counsel to the conference who shall be familiar with the case and who shall have authority to speak for and bind lead or trial counsel on any issue that may arise during the conference. While client representatives are not invited to the status conference, counsel shall make arrangements to have access to their client or client representative by telephone during the time scheduled for the conference. **Prior to** this status conference, **and either before or after the close of discovery**, the parties shall confer, either in person or electronically, regarding whether the parties intend to file any dispositive motions. The purpose of this <u>mandatory conference</u> of counsel is so that each party can certify to the Court at the status conference that it has made the other parties to the action aware of **ALL** potential motions the party may file, and the parties have

conferred in good faith to determine whether any issue that might be the subject of a motion can be resolved by agreement or stipulation without the necessity of filing a motion. The desire of the Court is that the parties work to resolve factual or legal issues to the extent possible without a formal motion. The parties shall be prepared to identify and discuss the basis and substance of their anticipated motions to the Court at the conference.

While no dispositive motions should be filed prior to the meeting of counsel <u>and</u> the status conference with the Court, all dispositive motions that are filed shall be filed in sufficient time to permit a submission date of no later than 60 days prior to the Pretrial Conference.  No motion shall be filed, without specific leave of court, that was not previously disclosed to all counsel and discussed with the Court as described in the preceding paragraph. Any motion discussed at the conference, and in conformity with the preceding paragraph, can, of course, be filed without leave of Court, unless leave is required by another rule or Court order.

All non-dispositive motions, pretrial motions, including Motions *in limine* regarding the admissibility of expert testimony or other matters, shall also be filed in sufficient time to permit a submission date of no later than 60 days prior to the Pretrial Conference. This Section adheres to Local Rule 78.1 regarding oral argument on motions. **<u>The parties should ONLY submit pertinent pages of deposition transcripts. Submission of an entire transcript will not be accepted without prior leave of Court.</u>**

Motions filed in violation of this order will not be considered unless good cause is shown.

Counsel shall deliver a hard copy of any pleadings along with any exhibits and attachments that together exceed 50 pages in total length to chambers at 500 Poydras Street, Room C-555 for the Court's use. This copy must be forwarded at the time of CM/ECF filing. **This copy must be**

**in a three-ring binder, tabbed and reflect pagination and document numbers consistent with the electronic document stamping of CM/ECF.**

The parties must attend a settlement conference with the assigned magistrate judge. **The parties must contact the assigned magistrate judge six weeks prior to the pretrial conference date for the purpose of scheduling a settlement conference which should be held within two weeks prior to the pretrial conference.**

A Final Pretrial Conference will be held on **JULY 1, 2026 at 11:30 a.m.** Counsel will be prepared in accordance with the final Pretrial Notice attached. The pretrial order must be electronically filed with the Court by 12:00 p.m. five (5) workdays prior to the conference. **THE PRETRIAL ORDER SUBMITTED TO THE COURT MUST BE DOUBLE SPACED AND BEAR THE ELECTRONIC SIGNATURE OF ALL COUNSEL.**

Trial will commence **MONDAY, JULY 13, 2026 at 9:00 a.m.** before the District Judge WITH a jury.  Attorneys are instructed to report for trial no later than 30 minutes prior to this time. Trial is estimated to last seven (7) days.

Deadlines, cut-off dates, or other limits fixed herein may only be extended by the Court upon timely motion filed in compliance with Local Rules and upon a showing of good cause. Continuances will not be granted, except for good cause.

The parties are urged to work diligently to comply with the rules and deadlines set forth in this order.

> **DARREL JAMES PAPILLION**
> **UNITED STATES DISTRICT JUDGE**
>
> **Issued for the Court:**
>
> **By:**    **s/Courtney Ancar**
>              **Case Manager**
>              **504-589-7715**

**THIS PRETRIAL NOTICE**
**ADOPTED NOVEMBER 2023**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**PRE-TRIAL NOTICE**

**IT IS ORDERED** that a pretrial conference will be held in Chambers, 500 Poydras Street, Suite 555, before Judge Darrel James Papillion, Section P, in this case on the date and time indicated on the attached scheduling order.

The purpose of the pretrial conference is to narrow the issues to secure a just, speedy, and inexpensive determination of this matter. If the form of the pretrial order set forth below does not appear calculated to achieve these ends, please request a conference with the Judge and opposing counsel immediately so alternate possibilities can be discussed.

The procedure necessary for the preparation of the proposed pretrial order shall be as follows:

I.

The proposed pretrial order shall be electronically filed with the Court by 12:00 p.m. (noon), five (5) working days prior to the conference, excluding Saturdays, Sundays, and holidays (i.e., if the conference is set for 8:30 a.m. Wednesday, it must be filed by noon the preceding Wednesday). The proposed pretrial order shall contain electronic signatures of all counsel at the time it is electronically filed with the Court. Following the pretrial conference, the Court will issue a minute entry that will, among other things, APPROVE and ADOPT the pretrial order, either in its entirety or with modifications.

II.

Counsel for all parties shall confer at their earliest convenience, **and no later than ten days before the scheduled pretrial conference**, for the purpose of reaching all stipulations that are reasonable and practical, to exchange copies of documents, and to identify the deposition testimony that will be offered in evidence at the trial. It shall be the duty of counsel for plaintiff to initiate this conference, and the duty of other counsel to respond. While the conference can be in person, by phone, or electronically, it is mandatory that the parties actually confer. If, after reasonable effort, any party cannot obtain the cooperation of other counsel, that party shall notify the Court. Counsel should make every effort to alert the Court as quickly as possible regarding problems setting a conference. Communications regarding problems of this type should be sent via email to efile-papillion@laed.uscourts.gov. All counsel of record must be copied on any such communication.

Counsel for each party shall furnish to counsel for all parties a statement of the issues for which it intends to offer evidence at trial. The parties shall work to eliminate any issues in the

pleadings over which there is no real controversy. The parties' statements shall include a listing of the legal issues or issues of law that remain in the case, as well as a listing of the unresolved and thus triable issues of fact. Counsel for plaintiff shall then prepare a proposed pretrial order and submit it to all counsel. Once all necessary changes have been made, counsel for plaintiff shall electronically file the final proposed pretrial order with the Court.

### III.

At the meeting described in Paragraph II, above, counsel **shall** specifically consider the following:

A.  **Jurisdiction.** Because jurisdiction can never be conferred by consent, and because prescription or statutes of limitations may bar a new action if the case or any ancillary demand is dismissed for lack of jurisdiction, counsel should make a diligent effort to ascertain whether the Court has jurisdiction.

B.  **Parties.** Correctness of identity of legal entities; necessity of appointment of tutor, guardian, administrator, executor, etc., and the validity of an appointment if already made; correctness of designation of party as partnership, corporation, or individual d/b/a trade name.

C.  **Joinder.** Questions of misjoinder or nonjoinder of parties.

D.  **Exhibits**. The parties shall exchange copies of all exhibits, and agree as to their admissibility. As to any exhibits to which the parties cannot agree, they shall submit **joint** memoranda (with the contested exhibits attached) no later than **the date set for the filing of the pretrial order**. The proponent shall explain why the exhibit is admissible, and the opponent shall explain why the exhibit is inadmissible.

E.  **Deposition Testimony**. The parties shall work diligently to eliminate by agreement, and after consultation with one another, all irrelevant and repetitive material and all colloquy between counsel. In addition, the parties shall, in good faith, attempt to resolve all objections to deposition testimony so that the Court will only need to rule on those objections to which the parties cannot reach an agreement. As to all objections that cannot be amicably resolved, the parties shall submit **joint** memoranda on the unresolved objections no later than **the date set for the filing of the pretrial order**. The parties shall provide specific reasons, and not mere citation to the rules of evidence, that support of their positions in this particular case.

### IV.

The attorneys who will try the case are specifically required to attend the pretrial conference unless, after a request made at least two business days before the conference, the Court grants specific permission for other counsel to attend. These attorneys must familiarize themselves with the pretrial rules and must come to the conference with full authority to accomplish the

purposes of Rule 16 of the Federal Rules of Civil Procedure.

## V.

At the pretrial conference counsel must be fully authorized and prepared to discuss settlement possibilities with the Court, having conferred with their clients regarding this issue before coming to the conference, and, to the extent practical, trial counsel should have access to their clients or client representatives to discuss settlement issues or any other issues that may require client approval during the pretrial conference.

## VI.

Pretrial conferences will not be continued except for good cause as set forth in a written motion presented sufficiently in advance of the conference for opposing counsel to be notified. Moreover, if there is any material change in the case between the date of the filing of the pretrial order and the date of the conference, counsel shall notify the court in writing via email to efile-papillion@laed.uscourts.gov of the material change. A material change, at a minimum, includes the resolution of any pending motion and any settlement agreement that would affect any motions pending before the court, whether dispositive or *in limine*, or would affect the manner in which the trial would proceed. **Counsel should not come to the pretrial conference and announce at the conference that one or more parties have settled or will be dismissed, that any claims or defenses have been eliminated, or that any pending motions have been mooted, unless these developments occurred within the 24 hours preceding the conference.** Because the Court will be preparing in advance of the pretrial conference, based upon the contents of the pretrial order, any change in the case that would change the pretrial order should be promptly brought to the attention of the court in writing.

## VII.

Failure on the part of counsel to appear at the conference may result in **sanctions**, including, but not limited to, *sua sponte* dismissal of the suit, assessment of costs and attorney fees, default, or other appropriate sanctions. The Court's location in downtown New Orleans, in a secure federal facility, can cause unexpected delays. Please allow sufficient time for traffic, parking, or court security-related delays.

## VIII.

All pending motions and all special issues or defenses raised in the pleadings must be clearly brought to the court's attention in the proposed pretrial order.

## IX.

The proposed pretrial order shall set forth the following information:

1.      The date of the pretrial conference.

2.  The appearance of counsel with a clear identification of the party (or parties) represented.

3.  A description of the parties. In cases involving insurance carriers, the insured(s) must be identified. The legal relationships of all parties with reference to the claims, counterclaims, third-party claims, cross claims, etc.

4.  a.  With respect to jurisdiction, a brief summary of the factual basis supporting each claim asserted, whether original claim, counterclaim, third-party claim, etc., and the legal and jurisdictional basis for each such claim, or if contested, the jurisdictional questions;

    b.  In diversity suits seeking damages, there is authority for dismissing the action, either before or after trial, when it appears the damages reasonably could not come within the jurisdictional minimum. Therefore, the proposed pretrial order in such cases shall contain either a stipulation that $75,000 is involved or a summary of the evidence supporting the potential for such an award.

5.  A list and description of any motions pending or any timely motions that are being contemplated as well as any special issues appropriate for discussion or resolution in advance of trial on the merits. If the Court at any prior hearing has indicated it would decide certain matters at the time of the pretrial conference, a brief summary of those matters and the position of each party with respect thereto should be included in the proposed pretrial order.

6.  A brief summary of the material facts claimed by:
    a.  Plaintiff;
    b.  Defendant;
    c.  Other parties.

7.  A single listing of all uncontested material facts.

8.  A single listing of the contested issues of fact. **This does not mean that counsel must concur in a statement of the issues; it simply means that they must list in a single list all issues of fact.** Where applicable, particularities concerning the following fact issues shall be set forth:

    a.  Whenever there is in issue the seaworthiness of a vessel or an alleged unsafe condition of property, the material facts and circumstances relied upon to establish the claimed unseaworthy or unsafe condition shall be specified with particularity;

    b.  Whenever there is in issue negligence of the defendant or contributory or comparative negligence of the plaintiff, the material facts and circumstances

relied upon to establish the claimed negligence shall be specified with particularity;

c. Whenever personal injuries are at issue, the nature and extent of the injuries and of any alleged disability shall be specified with particularity;

d. Whenever the alleged breach of a contractual obligation is in issue, the act or omissions relied upon as constituting the claimed breach shall be specified with particularity;

e. Whenever the meaning of a contract or other writing is in issue, all facts and circumstances surrounding execution and subsequent to execution, both those admitted and those in issue, which each party contends serve to aid interpretation, shall be specified with particularity;

f. Whenever duress or fraud or mistake is in issue, and set forth in the pleadings, the facts and circumstances relied upon as constituting the claimed duress, fraud, or mistake shall also be set forth in the pretrial order (See Fed. R. Civ. P. 9(b));

g. If special damages are sought, they shall be itemized with particularity (See Fed. R. Civ. P. 9(g));

h. If a conspiracy is alleged or charged, the details of facts constituting the conspiracy shall be particularized.

9. A single listing of the contested issues of law. (See explanation in 8 above.)

10. A list and description of the exhibits each party intends to introduce at the trial.

a. Each list of exhibits should first describe those that are to be admitted without objection, and then those to which there will be objection, noting by whom the objection is made (if there are multiple adverse parties), and the nature of the objection. Markers identifying each exhibit should be attached to the exhibits at the time they are shown to opposing counsel during preparation of the pretrial order.

b. Any party that believes it has good cause not to disclose exhibits to be used solely for the purpose of impeachment, may *ex parte* request a conference with the Court and make its position known to the Court *in camera*.

c. Where appropriate to preserve trade secrets or privileges, the listing of exhibits may be made subject to a protective order or in such other fashion as the Court may direct. If there are such exhibits, the proposed pretrial order will state: "The parties will discuss exhibits alleged to be privileged (or to contain trade secrets, etc.) at the pretrial conference."

5

> d. **Caution**: unless specifically ordered otherwise by the Court, only exhibits included on the exhibit list will be admitted at trial.
>
> e. Each party shall submit to the Court on the day of trial a list of exhibits properly marked for identification that it intends to use at trial.

11. A list of all deposition testimony that each party intends to offer into evidence at trial.

12. A list and brief description of any charts, graphs, models, schematic diagrams, and similar objects which, although not to be offered in evidence, respective counsel intend to use in opening statements or closing arguments. The parties shall also state any objections to the use of the demonstrative exhibits or include a stipulation that there is no objection to the use of the demonstrative exhibits.

13. a. A list of witnesses for all parties, including the names, addresses, **and statement of the general subject matter of their testimony** (it is not sufficient to designate the witness simply "fact," "medical," or "expert"), and an indication in good faith of those who will be called in the absence of reasonable notice to opposing counsel to the contrary;

    b. A statement that the witness lists were filed in accordance with the Federal Rules of Civil Procedure and prior court orders. **No other witnesses shall be allowed unless their addition is agreeable to all parties and does not affect the trial date.** This restriction will not apply to rebuttal witnesses or documents whose necessity cannot be reasonably anticipated. Furthermore, in the case of expert witnesses, counsel shall certify that they have exchanged expert reports in accordance with the Federal Rules of Civil Procedure and prior court orders. **Expert witnesses whose reports have not been furnished to opposing counsel shall not be permitted to testify nor shall experts be permitted to testify to opinions not included in the reports timely furnished**;

    c. Except for good cause shown, the Court will not permit any witness to testify unless with respect to such witness there has been complete compliance with all provisions of the pretrial order and prior court orders;

    d. Counsel shall not be allowed to ask questions on cross- examination of an economic expert that would require the witness to make mathematical calculations in order to frame a response unless the factual elements of such questions shall have been submitted to that expert witness at least three full working days before trial.

14. A statement indicating whether the case is a jury or non-jury case.

a.  If the case is a jury case, then indicate whether the jury trial is applicable to all aspects of the case or only to certain issues, which issues shall be specified. In jury cases, add the following provision:
"Proposed jury instructions[1], special jury interrogatories, and voir dire shall be electronically filed with the Court not less than **five** (5) working days prior to the trial date."

b.  In a non-jury case, suggested findings of fact and conclusions of law and a separate trial memorandum are required, unless the Court enters an order that such is not required. These findings of fact and conclusions of law and separate trial memorandum shall be electronically filed not less than **ten** (10) full working days prior to trial.

c.  In a jury case, a trial memorandum shall be required only when and to the extent ordered by the Court. If, however, counsel anticipates unique evidentiary problems, a memo addressing the same should be filed electronically not less than **five** (5) working days prior to trial. Likewise, briefing on any unusual jury instructions requiring explanation beyond mere citation to authority shall be filed at this time.

15. In cases where damages are sought, include a statement that: "The issue of liability (will or will not) be tried separately from that of quantum."

16. A statement describing any other matters that might expedite a disposition of the case.

17. A statement that trial shall commence on [month/day], [year] at [time] a.m./p.m. and a realistic estimate of the number of trial days required. Where counsel cannot agree upon the number of trial days required, the estimate of each side should be given.

18. The statement that "Counsel for all parties certify this pretrial order has been formulated after conference at which counsel for the respective parties have appeared in person or electronically. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will

---

[1] **The Court requires the parties to use accepted pattern jury instructions, and the parties shall not create their own specific jury instructions.** In cases in which Louisiana law provides the rule of law, use of Louisiana Civil Jury Instructions (Vol. 18, Louisiana Civil Law Treatise Series) is required, if applicable. As to all other cases, and issues of substantive law where Louisiana law does not control, the following pattern jury instructions shall be used in the following order (e.g., an instruction from (b) shall be used only if no such instruction exists in (a)):

(a)  the United States Court of Appeals for the Fifth Circuit pattern jury instructions; or

(b)  any pattern jury instructions published by a federal court (the parties should ensure that substantive instructions on federal questions conform to Fifth Circuit case law).

Requests to supplement the jury instructions during the trial or at the conclusion of the evidence shall not be granted, absent good cause shown.

control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice."

19.     The truthful statement that "Possibility of settlement of this case was considered."

20.     The proposed pretrial order must contain appropriate signature spaces for counsel for all parties.

21.     Each numbered paragraph of the proposed pretrial order shall be preceded by a heading descriptive of its content.

**IT IS FURTHER ORDERED** that the foregoing pretrial notice be issued to counsel of record for all parties to this case, and that counsel will comply with the directions set forth herein.

New Orleans, Louisiana.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

*If needed during trial, counsel are invited to use the Michaelle Pitard Wynne Attorney Conference Center located in Room B-245 on the second floor of the Hale Boggs Federal Building near the crossover to the Courthouse. The space features three private conference rooms, a lounge, and a computer workroom with internet, copy, fax and print services. Details and information on these services including conference room reservations can be found at http://nofaba.org or by contacting the Executive Director at 504-589-7799 or fbaneworleans@gmail.com.*

Original Filed at Docket No. 102,

Sealed by Court Order

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** <br><br> v. <br><br> Jane Doe , **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

### JOINT REQUEST FOR THE ENTRY OF ORDER GOVERNING DISCOVERY

Plaintiff John Doe and Defendant Jane Doe jointly move the Court to enter into the record their Joint Stipulation and Order Governing Discovery (attached as **Exhibit A**) regarding the use of discovery disclosed in another pending litigation in this action.

WHEREFORE, the Parties pray that the Court so-order the Joint Stipulation in the form attached hereto as **Exhibit A**.

Dated: April 15, 2025

Respectfully Submitted,

/s/ *Jared Davidson*

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WILLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (pro hac vice)
Komal Shah (pro hac vice)
Shanelle Van (pro hac vice)
Zora F. Franicevic (pro hac vice)
Ashton E. Woods (pro hac vice)

/s/ *Kara L. Gorycki*

Kara L. Gorycki (pro hac vice)
Andrew T. Miltenberg (pro hac vice)
Stuart Bernstein (pro hac vice)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com

*-and-*

Alex Robertson (La. Bar No. 37285)
MARCELLE ROBERTSON

COVINGTON & BURLING LLP
One CityCenter
850 10th St. NW
Washington, D.C. 20902
Tel: (202) 662-6000
Fax: (202)778-5528
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com


*Attorneys for Defendant* Jane Doe

MESTAYER LLC
650 Poydras Street, Suite 2720
New Orleans, Louisiana 70130
(504) 910-6220
alex@mrmlaw.com

*Attorneys for Plaintiff*
   John Doe

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

<table>
<tr><td>

John Doe     ,
<div align="center">**Plaintiff,**</div>

   v.

Jane Doe ,
<div align="center">**Defendant.**</div>

</td><td>

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

</td></tr>
</table>

<div align="center">

**SEALED JOINT STIPULATION AND ORDER GOVERNING DISCOVERY**

</div>

Plaintiff   John Doe   and Defendant Jane Doe hereby submit this stipulation, subject to approval by the Court:

WHEREAS, on December 8, 2022, Plaintiff filed a Complaint against Defendant in the Eastern District of North Carolina, asserting, among other claims, that Defendant had made false and defamatory statements about Plaintiff to administrators at Tulane University and others. *See* John Doe *v.* Jane Doe Case No. 5:22-cv-500-D (ECF No. 1); and

WHEREAS, on ███████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ and

WHEREAS, on March 28, 2024, the Eastern District of North Carolina transferred the case to this Court. *See* John Doe , Case No. 5:22-cv-500-D (ECF No. 58); and

WHEREAS, discovery in the ████████████ commenced in or around August 2023 with the issuance of a Scheduling Order, *see* ████████████████████████, and, on June 6, 2024, after Defendant moved to consolidate this action ███████████████, the Court vacated the

<div align="center">1</div>

deadlines in the Scheduling Order for ███████████ pending resolution of Defendant's

motion, *see id.* ███████ and

WHEREAS, on March 17, 2025, Defendant withdrew the motion to consolidate, *see*

John Doe *v.* <sup>Jane Doe</sup> Case No. 2:24-CV-00825 (ECF No. 84); and

WHEREAS, the parties to this action ████████████ have conferred and agree that

coordination of fact discovery in the two actions would serve the interests of economy and efficiency.

IT IS HEREBY STIPULATED AND AGREED, by and between the parties to this action

that:

1.      The following categories of fact discovery materials from the ███████ will

be deemed to have been produced or taken in this case and available for the parties to use as if they

had originally been produced or taken in this case:

a.  All depositions;

b.  All interrogatory responses and responses to requests for admission;

c.  All documents produced by the parties; and

d.  All documents produced by third parties in response to subpoenas, as well as written

responses by third parties to subpoenas, provided that the third parties consent to

making these materials available in this case as well as ████████████.

2.      Any discovery material that is clawed back ████████████ will also be

deemed to have been clawed back in this case.

3.      This stipulation shall not prejudice or prevent either party from conducting discovery

to the full extent permissible under the Federal Rules of Civil Procedure.  For the avoidance of doubt,

each party will, except as set forth below, be entitled under Rule 30(d)(1) to one day of examination

of seven hours for each witness for each case unless otherwise subsequently stipulated or ordered by

the Court.  If any witness will be subject to more than one deposition across this case and the ███████ ███████ the parties and the deponent will undertake good faith efforts to schedule the deposition for consecutive days and otherwise to coordinate their examinations.

4.    The parties to this action shall comply with the Protective Order entered ███████ ████████████████████████████, and any subsequent amendments thereto, with respect to the use and filing of discovery materials produced or taken ███████████████ except that the parties in this case shall be under no obligation to use the pseudonyms being used ████████ ████████ or to take other measures not to use the names of the parties or witnesses in this case other than as set forth in paragraph 5 below;

5.    Defendant will not file any document to the public docket in this action that identifies the ████████████ by name or case number and will redact this information from public filings because Plaintiff has not waived his right to proceed by pseudonym ████████████████, *see id.* ████████;

6.    The following categories of fact discovery materials from this action will be deemed to have been produced or taken in the ████████████ and available for Plaintiff and ████████ ████████ to use as if they had originally been produced or taken in the ████████████:

    a.  All depositions;

    b.  All interrogatory responses and responses to requests for admission;

    c.  All documents produced by the parties; and

    d.  All documents produced by third parties in response to subpoenas, as well as written responses by third parties to subpoenas, provided that the third parties consent to making these materials available in the ████████████ as well as in this case.

7.      Plaintiff agrees that he will enter into and file a stipulation with ██████████ in the ██████████ with the same substantive provisions, such that fact discovery produced and taken in this action will also be deemed to have been produced and taken ██████████.

Dated: April 10, 2025

/s/ Jared Davidson                          _____/s/ Kara L. Gorycki_____

Jared A. Davidson, La. Bar No. 32419        Kara L. Gorycki (pro hac vice)
Caroline M. Murley, La. Bar No. 36599       Andrew T. Miltenberg (pro hac vice)
TAYLOR, WILLONS, POLITZ & DUHE, LLC         Stuart Bernstein (pro hac vice)
1555 Poydras Street, Suite 2000             NESENOFF & MILTENBERG, LLP
New Orleans, Louisiana 70112                363 Seventh Avenue, 5th Floor
Tel: (504) 525-9888                         New York, New York 10001
cmurley@twpdlaw.com                         (212) 736-4500
                                            kgorycki@nmllplaw.com
                                            amiltenberg@nmllplaw.com
                                            sbernstein@nmllplaw.com
-and-


Neil K. Roman (pro hac vice)
Komal Shah (pro hac vice)
Shanelle Van (pro hac vice)                 -and-
Zora F. Franicevic (pro hac vice)
Ashton E. Woods (pro hac vice)              Alex Robertson (La. Bar No. 37285)
COVINGTON & BURLING LLP                     MARCELLE ROBERTSON
One CityCenter                              MESTAYER LLC
850 10th St. NW                             650 Poydras Street, Suite 2720
Washington, D.C. 20902                      New Orleans, Louisiana 70130
Tel: (202) 662-6000                         (504) 910-6220
Fax: (202)778-5528                          alex@mrmlaw.com
nroman@cov.com
kshah@cov.com
svan@cov.com                                *Attorneys for Plaintiff*   John Doe
zfranicevic@cov.com
awoods@cov.com


*Attorneys for Defendant* Jane Doe

4

Original Filed at Docket No. 103,

Sealed by Court Order

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe<br>**Plaintiff,**<br><br>v.<br><br>Jane Doe ,<br>**Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**CONSENT MOTION TO SEAL SELECT PORTIONS OF THE PARTIES'
STIPULATION AND ORDER GOVERNING DISCOVERY AND EXHIBIT 1**

Plaintiff    John Doe    ("John Doe"), by and through his counsel, respectfully moves this Court to seal portions of the Parties' "Sealed Joint Stipulation and Order Governing Discovery" pursuant to Local Rule 5.6. In accordance with Local Rule 5.6, Plaintiff has filed a full, unredacted copy of the Joint Stipulation and Order under seal with this motion. Plaintiff has also filed a redacted copy of the Stipulation and Order on the case docket. Plaintiff also seeks to file Exhibit 1 to the Declaration of Kara L. Gorycki, dated April 11, 2025, under seal. Exhibit 1 is an order entered in another pending action in which Plaintiff was permitted to proceed anonymously and the public disclosure of this order on the case docket in this action will lead to Plaintiff's identification in the pending pseudonymous litigation. Counsel for the parties have conferred and Defendant does not object to the relief requested.

For the reasons set forth in this Motion, Memorandum of Law in Support, and Declaration of Kara L. Gorycki, dated April 11, 2025, Plaintiff respectfully requests that this Court enter the proposed order included herewith.

Respectfully submitted,

/s/ *Kara L. Gorycki*
Kara L. Gorycki (admitted pro hac vice)

1

NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , **Plaintiff,** <br><br> v. <br><br> Jane Doe , <br><br> **Defendant.** | CIVIL ACTION NO. 2:24-CV-00825 <br><br> SECTION: P (3) <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

**DECLARATION OF KARA L. GORYCKI IN SUPPORT OF CONSENT MOTION TO SEAL SELECT PORTIONS OF THE PARTIES' JOINT STIPULATION AND ORDER GOVERNING DISCOVERY AND EXHIBIT**

**KARA L. GORYCKI**, hereby declares, subject to the pains and penalties of perjury to 28 U.S.C. § 1746:

1. I am a Partner at the law firm of Nesenoff & Miltenberg, LLP, attorneys for Plaintiff John Doe ("Plaintiff") in the above-captioned litigation. I submit this declaration in support of the consent motion to seal select portions of the parties' "Sealed Joint Stipulation and Order Governing Discovery" as well as Exhibit 1 to this declaration.

2. Defendant has reviewed the papers filed in connection with this motion, including the proposed redactions to the Stipulation and Order and has no objection to, and does not intend to oppose, this motion.

3. Annexed hereto as Exhibit 1 is a true and correct copy of the order dated April 26, 2023 which granted Plaintiff pseudonym protection in another pending action.

4. Annexed hereto as Exhibit 2 is a true and correct copy of the "Sealed Joint Stipulation and Order Governing Discovery," dated April 10, 2025 with the proposed redactions highlighted in yellow.

Executed on the 11th day of April, 2025.

_/s/ *Kara L. Gorycki*_
Kara L. Gorycki

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** v. Jane Doe , **Defendant.** | CIVIL ACTION NO. 2:24-CV-00825 SECTION: P (3) JUDGE DARREL JAMES PAPILLION MAG. JUDGE EVA J. DOSSIER |

**MEMORANDUM OF LAW IN SUPPORT OF CONSENT MOTION
TO SEAL SELECT PORTIONS OF THE PARTIES'
STIPULATION AND ORDER GOVERNING DISCOVERY
AND EXHIBIT 1**

Plaintiff    John Doe    ("Plaintiff") respectfully submits this memorandum of law in support of the consent motion to seal select portions of the parties' "Sealed Joint Stipulation and Order Governing Discovery" (the "Stipulation and Order") pursuant to Local Rule 5.6 and the pseudonym order entered in favor of Plaintiff in another pending litigation (the "Pseudonymous Litigation"). *See* Declaration of Kara L. Gorycki, dated April 11, 2025, Sealed Exhibit 1. A redacted copy of the Stipulation and Order has been filed on the public case docket. Plaintiff seeks to seal only those portions of the Stipulation and Order that could lead to his identification in the Pseudonymous Litigation. As set forth below, there is good cause to seal the requested information.

Prior to filing this motion, Plaintiff conferred with Defendant's counsel. Defendant's counsel reviewed all of the papers filed in support of this motion, including the proposed redactions to the Stipulation and Order. Defendant does not object to this motion and does not intend to oppose this motion.

Although there is a presumption of openness with respect to court records, Rule 26 of the

1

Federal Rules of Civil Procedure permit documents to be sealed for "good cause." Fed. R. Civ. P 26; *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 516 (5th Cir. 2022). Local Rule 5.6 requires a party seeking to seal a document to consider "all reasonable alternatives to filing under seal," including "a line-by-line analysis of the documents…to redact only the truly sensitive information." LR 5.6(A), (C).

Good cause exists for filing the Stipulation and Order under seal because the public disclosure of the information contained in the proposed redactions will cause Plaintiff to be identified in the Pseudonymous Litigation. For the same reason, Plaintiff further requests that Exhibit 1 to the Gorycki Declaration, the court's order allowing Plaintiff to proceed anonymously in the Pseudonymous Litigation, be maintained under seal. Identification of Plaintiff in the Pseudonymous Litigation will violate his court-ordered right to proceed anonymously in that case. In the Pseudonymous Litigation, the court held that Plaintiff could proceed by pseudonym because his interest in proceeding anonymously outweighed the public interest in open proceedings: i) the action required the disclosure of private, intimate details; ii) courts in this Circuit have repeatedly allowed plaintiffs to proceed by pseudonym in cases like the Pseudonymous Litigation; and iii) the defendant in the Pseudonymous Litigation would suffer no prejudice. Gorycki Decl., Ex. 1.

Here, the parties have conferred and conducted a line-by-line analysis of the Joint Stipulation and Order to ensure that only truly sensitive information is redacted—the defendant's name, the case name, case number, case description and docket citations in the Pseudonymous Litigation. If this information is made public in this action then Plaintiff will be identified in the Pseudonymous Litigation.

For the above stated reasons, Plaintiff respectfully requests that the Court enter the

2

accompanying proposed order to file the Stipulation and Order and Exhibit 1 to the Gorycki

Declaration under seal.

Dated: April 11, 2025

Respectfully submitted,

/s/ *Kara L. Gorycki*
Kara L. Gorycki (admitted pro hac vice)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe, **Plaintiff,** | CIVIL ACTION NO. 2:24-CV-00825 |
| v. | SECTION: P (3) |
| Jane Doe, **Defendant.** | JUDGE DARREL JAMES PAPILLION |
| | MAG. JUDGE EVA J. DOSSIER |

**ORDER**

CONSIDERING THE FOREGOING Motion to Seal Select Portions of the Parties' Joint Stipulation and Order Governing Discovery and Exhibit 1, the Memorandum of Law in support thereof and the Declaration of Kara L. Gorycki, dated April 11, 2025 in support thereof, the Motion is GRANTED.

"Judicial records belong to the American people; they are public, not private, documents." Binh Hoa Le v. Exeter Fin. Corp., 990 F.3d 410, 417 (5th Cir. 2021). "And the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (2022) (quoting *Leopold v. United States* (*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*), 964 F.3d 1121, 1123 (D.C. Cir. 2020)) (internal quotations omitted). For this reason, there is a presumption against sealing documents and the party moving to seal "bears the burden to show that the interest in secrecy outweighs the presumption." *Shell Offshore, Inc. v. Eni Petroleum US, LLC*, No. 16-CV-15537, 2017 WL 4226153, at *1 (E.D. La. Sept. 22, 2017) (internal quotations and citations omitted). As such, the Fifth Circuit has instructed that "a judge cannot seal public documents merely because a party asks to add them to the judicial record." *June Med. Servs.*, 22 F.4th at 520. Instead, "the court must undertake a . . . line-by-line balancing of the public's common law right of access against the

interests favoring nondisclosure." *Id.* (quoting *Le*, 990 F.3d at 419) (internal quotations omitted).

After careful review, the Court agrees with Plaintiff that it is appropriate to seal the subject documents. In the order granting Plaintiff's motion to proceed anonymously in the Pseudonymous Litigation (the "Pseudonym Order"), the court acknowledged the public's interest in open proceedings, but found that Plaintiff's interest in proceeding anonymously outweighs the public interest. Gorycki Decl., Ex. 1. Plaintiff seeks to seal the Pseudonym Order, which contains case details through which Plaintiff can be identified in the Pseudonymous Litigation. He also seeks to seal the case caption, case description, docket citations and defendant's name in the Pseudonymous Litigation to avoid being identified in that litigation. The Court does not believe that the public's right of access to this limited information outweighs the nondisclosure interests identified in the Pseudonym Order. Accordingly, the Court finds Plaintiff has met his burden to seal the subject information.

IT IS HEREBY ORDERED that Plaintiff is permitted to file the full, unredacted copies of Exhibit 1 to the Gorycki Declaration and the Sealed Joint Stipulation and Order Governing Discovery under seal.

SIGNED, this _____ day of _____, 2025 in New Orleans, Louisiana

_____
UNITED STATES DISTRICT JUDGE

Original Filed at Docket No. 106,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| ▆▆▆▆▆▆▆▆▆,<br><br>**Plaintiff,**<br><br>v.<br><br>▆▆▆▆▆▆<br><br>**Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## ORDER

CONSIDERING THE FOREGOING Motion to Seal Select Portions of the Parties' Joint Stipulation and Order Governing Discovery and Exhibit 1, the Memorandum of Law in support thereof and the Declaration of Kara L. Gorycki, dated April 11, 2025 in support thereof, the Motion is GRANTED.

"Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "And the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (2022) (quoting *Leopold v. United States* (*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*), 964 F.3d 1121, 1123 (D.C. Cir. 2020)) (internal quotations omitted). For this reason, there is a presumption against sealing documents and the party moving to seal "bears the burden to show that the interest in secrecy outweighs the presumption." *Shell Offshore, Inc. v. Eni Petroleum US, LLC*, No. 16-CV-15537, 2017 WL 4226153, at *1 (E.D. La. Sept. 22, 2017) (internal quotations and citations omitted). As such, the Fifth Circuit has instructed that "a judge cannot seal public documents merely because a party asks to add them to the judicial record." *June Med. Servs.*, 22 F.4th at 520. Instead, "the court must undertake a . . . line-by-line balancing of the public's common law right of access against the

interests favoring nondisclosure." *Id.* (quoting *Le*, 990 F.3d at 419) (internal quotations omitted).

After careful review, the Court agrees with Plaintiff that it is appropriate to seal the subject documents. In the order granting Plaintiff's motion to proceed anonymously in the Pseudonymous Litigation (the "Pseudonym Order"), the court acknowledged the public's interest in open proceedings, but found that Plaintiff's interest in proceeding anonymously outweighs the public interest. Gorycki Decl., Ex. 1. Plaintiff seeks to seal the Pseudonym Order, which contains case details through which Plaintiff can be identified in the Pseudonymous Litigation. He also seeks to seal the case caption, case description, docket citations and defendant's name in the Pseudonymous Litigation to avoid being identified in that litigation. The Court does not believe that the public's right of access to this limited information outweighs the nondisclosure interests identified in the Pseudonym Order. Accordingly, the Court finds Plaintiff has met his burden to seal the subject information.

IT IS HEREBY ORDERED that Plaintiff is permitted to file the full, unredacted copies of Exhibit 1 to the Gorycki Declaration and the Sealed Joint Stipulation and Order Governing Discovery under seal.

SIGNED, this ____16th____ day of __April_, 2025 in New Orleans, Louisiana

_____
UNITED STATES DISTRICT JUDGE

Original Filed at Docket No. 107,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

John Doe              ,
              **Plaintiff,**

    **v.**

Jane Doe ,
              **Defendant.**

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

**DECLARATION OF KARA L. GORYCKI IN SUPPORT OF CONSENT MOTION
TO SEAL SELECT PORTIONS OF THE PARTIES' JOINT
STIPULATION AND ORDER GOVERNING DISCOVERY AND EXHIBIT**

**KARA L. GORYCKI**, hereby declares, subject to the pains and penalties of perjury to 28 U.S.C. § 1746:

1. I am a Partner at the law firm of Nesenoff & Miltenberg, LLP, attorneys for Plaintiff John Doe ("Plaintiff") in the above-captioned litigation. I submit this declaration in support of the consent motion to seal select portions of the parties' "Sealed Joint Stipulation and Order Governing Discovery" as well as Exhibit 1 to this declaration.

2. Defendant has reviewed the papers filed in connection with this motion, including the proposed redactions to the Stipulation and Order and has no objection to, and does not intend to oppose, this motion.

3. Annexed hereto as Exhibit 1 is a true and correct copy of the order dated April 26, 2023 which granted Plaintiff pseudonym protection in another pending action.

4. Annexed hereto as Exhibit 2 is a true and correct copy of the "Sealed Joint Stipulation and Order Governing Discovery," dated April 10, 2025 with the proposed redactions highlighted in yellow.

Executed on the 11th day of April, 2025.

                /s/ *Kara L. Gorycki*
                Kara L. Gorycki

Original Filed at Docket No. 108,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

████████████████                            CIVIL ACTION

**VERSUS**                                  NO.  24-825

████████                                    SECTION:  "P" (3)

## **ORDER**

Considering the foregoing Joint Request for the Entry of Order Governing Discovery (R. Doc. 102),

**IT IS ORDERED** that the Request is **GRANTED.**

New Orleans, Louisiana, this 16th day of April, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

Original Filed at Docket No. 110,

Sealed by Court Order

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe **,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | |
| | **SECTION: P (3)** |
| **v.** | |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe **,** | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

### MOTION TO FILE PLEADING UNDER SEAL

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jane Doe , who seeks an Order from this Court sealing its Motion to Modify Scheduling Order under seal. For the reasons set forth in the accompanying memorandum in support, Jane Doe respectfully requests that this Court enter the proposed order included herewith.

**WHEREFORE**, Defendant, Jane Doe prays for an Order from this Court sealing its Motion to Modify Scheduling Order.

<div style="text-align:right">

*/s/    Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW

</div>

Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on the 25th of April, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe     , <br>        **Plaintiff,** <br><br>    **v.** <br><br> Jane Doe   , <br>        **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

## ORDER

Considering the preceding Motion to File Pleading Under Seal filed by Defendant

Jane Doe

**IT IS ORDERED** that Defendant   Jane Doe   Motion be and is hereby GRANTED and

her Motion to Modify Scheduling Order shall be filed into the record under seal.

New Orleans, Louisiana, this _____ day of _____, 2025.

_____
**JUDGE**

Original Filed at Docket No. 111,

Sealed by Court Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| John Doe        ,<br><br>   Plaintiff,<br><br>v.<br><br>Jane Doe   ,<br><br>   Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER**<br><br> **UNDER SEAL** |

## UNOPPOSED MOTION TO STRI_E FROM PU_LIC RECORD
### DOCUMENT R. DOC NO. _0

NOW INTO COURT, through undersigned counsel, comes Defendant, Jane Doe , who moves this Court to strike from the public record the documents filed as R. Doc. No. 110. Concerns have been raised by Plaintiff,     John Doe    , regarding its compliance with prior Court order. Accordingly, out of an abundance of caution, Defendant has agreed to re-file the pleading removing certain items of concern for Plaintiff.

WHEREFORE, Defendant, Jane Doe  prays that the foregoing unopposed Motion be granted as prayed.

Respectfully Submitted,

*/s/    Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by ECF on all counsel of record on this 25th day of April, 2025.

_/s/ Jared A. Davidson_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| John Doe , <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe , <br><br> Defendant. | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** <br><br> **UNDER SEAL** |

**ORDER**

Considering the preceding Unopposed Motion to Strike from Public Record Document, R. Doc. 110 filed by Defendant, Jane Doe ;

**IT IS ORDERED** that the Motion be and is hereby GRANTED and R. Doc. No. 110 shall stricken, and removed, from the public record.

New Orleans, Louisiana, this _____ day of April, 2025.

_____
**JUDGE**

Original Filed at Docket No. 112,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe    , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| Jane Doe   , **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## MOTION TO FILE PLEADING UNDER SEAL

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jane Doe , who

seeks an Order from this Court sealing its Motion to Modify Scheduling Order under seal. For the

reasons set forth in the accompanying memorandum in support, Jane Doe respectfully requests that

this Court enter the proposed order included herewith.

**WHEREFORE**, Defendant, Jane Doe  prays for an Order from this Court sealing its

Motion to Modify Scheduling Order.

/s/    *Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW

Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on the 25th of April, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe , **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO FILE PLEADING UNDER SEAL**

*MAY IT PLEASE THE COURT*:

Defendant Jane Doe makes this motion to file under seal to comply with an agreement requested by Plaintiff John Doe . Jane Doe seeks to submit a Motion to Modify Scheduling Order and in accordance with that agreement, Jane Doe requests that her Motion to Modify Scheduling Order be filed under seal.

Respectfully Submitted,

*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)

4

Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on the 25th of April, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| John Doe      , **Plaintiff,**  **v.**  Jane Doe   ,  **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**  **SECTION: P (3)**  **JUDGE DARREL JAMES PAPILLION**  **MAG. JUDGE EVA J. DOSSIER** |

## ORDER

Considering the preceding Motion to File Pleading Under Seal filed by Defendant

Jane Doe

**IT IS ORDERED** that Defendant   Jane Doe   Motion be and is hereby GRANTED and

her Motion to Modify Scheduling Order shall be filed into the record under seal.

New Orleans, Louisiana, this _____ day of _____, 2025.

_____
**JUDGE**

Original Filed at Docket No. 113,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

▮▮▮▮▮▮▮▮▮▮                                        **CIVIL ACTION**

**VERSUS**                                        **NO. 24-825**

▮▮▮▮▮                                             **SECTION: "P" (3)**

**ORDER**

Before the Court are Defendant ▮▮▮▮▮ first-filed motion to seal (R. Doc. 110), a motion to strike the first-filed motion to seal (R. Doc. 111), and a subsequent motion to seal (R. Doc. 112).

**IT IS ORDERED** that the motion to strike the first-filed motion to seal (R. Doc. 111) is **GRANTED**, and the first-filed motion to seal (R. Doc. 110) is hereby **STRICKEN** from the record.

**IT IS FURTHER ORDERED** that the subsequent motion to seal (R. Doc. 112) is **DENIED** for failure to comply with Local Rule 5.6 (Procedure for Filing Documents Under Seal), particularly Local Rule 5.6(D).

Defendant shall be mindful to not include confidential material in the memorandum in support of the motion to seal, but the memorandum must include sufficient information for the Court to determine whether sealing is appropriate in accordance with governing case law in this Circuit on sealing court records.

New Orleans, Louisiana, this 29th day of April 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 114,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | CIVIL ACTION NO. 2:24-CV-00825<br><br>SECTION: P (3)<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER**<br><br> **UNDER SEAL** |

## MOTION TO MODIFY SCHEDULING ORDER

NOW INTO COURT, through undersigned counsel, comes Defendant, Jane Doe  who for the reasons contained in the Memorandum in Support, respectfully moves this Court to modify the Scheduling Order entered April 3, 2025 (R. Doc. 101) ("Jane Doe Scheduling Order") (i) to align certain deadlines in the Jane Doe Scheduling Order with those in the Scheduling Order for ███████

█████████████████████████████████████████

█████████████████████████████████████████

███████████ and (ii) to swap the trial date in the Jane Doe Scheduling Order with the trial date in the ████████████ so that  John Doe  lawsuit against Jane Doe ("Jane Doe Litigation") is set for trial before ███████████████████████████.

████ has informed Jane Doe  that it consents to both of  Jane Doe  requests, including the request to swap trial dates;  John Doe  consents only to the former request to align certain deadlines.

WHEREFORE, Defendant, Jane Doe  prays that the foregoing Motion be granted as prayed.

Respectfully Submitted,


/s/     Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM ECF on all counsel of record on this 5th day of May, 2025.


*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

<table>
<tr>
<td>

John Doe

    Plaintiff,

v.

Jane Doe

    Defendant.

</td>
<td>

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

 **UNDER SEAL**

</td>
</tr>
</table>

<u>**MEMORANDUM IN SUPPORT OF MOTION
TO MODIFY SCHEDULING ORDER**</u>

The Court may modify a scheduling order under the rules "for good cause," Fed. R. Civ. Proc. 16(b)(4), as well as under its inherent authority to control its docket, *Hori on River Resta rants LLC v. rench arter Hotel Operator LLC*, No. 22-3955, 2024 WL 5077861, at *1 (E.D. La. Dec. 11, 2024) (Papillion, J.) ("The control of discovery in a federal civil action is left to the district court s sound discretion.").

In the Fifth Circuit, courts evaluate four factors to determine whether good cause exists for alteration of a scheduling order: (1) the explanation for any failure to timely comply with the scheduling order; (2) the importance of the requested relief; (3) the potential prejudice in granting the relief sought; and (4) the availability of a continuance to cure any prejudice. *Id.*

Because Jane Doe has not missed any deadlines in the Scheduling Order entered April 3, 2025 (R. Doc. 101) ("Jane Doe Scheduling Order") and is not requesting that deadlines be extended, Jane Doe addresses only the second and third factors in this motion.

Here, good cause exists to modify the Jane Doe Scheduling Order both to align the discovery deadlines in the Jane Doe Litigation with those in the ███████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████ and to move trial in the <sup>Jane Doe</sup>

Litigation before trial in the ████████████ because each requested amendment is important

to avoid unfair prejudice to Jane Doe and neither amendment will unfairly prejudice <sup>John Doe</sup>

I.    **T e Di   ver Deadline In   t La    it S   ld e T e Sa  e.**

Good cause exists to align the discovery deadlines in the <sup>Jane Doe</sup> Scheduling Order with those

in the Scheduling Order for the █████████████████████████████████

██████████████████████ because   John Doe    Jane Doe  and ███████ have agreed to

coordinate on fact discovery in both cases, and both cases stem from the same underlying facts

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████

██████████████████████████████████████████████████

███████████████████████████████████████ the <sup>Jane Doe</sup> Litigation alleging

that Jane Doe lied when she reported that    John Doe    sexually assaulted her and ███████████

████████████████████████████████████████████████████

████████████████████

Because the lawsuits arise from the same facts and will necessarily involve overlapping

evidence, Jane Doe    John Doe    ████████████ have agreed "that coordination of fact discovery

in the two actions would serve the interests of economy and efficiency."  Joint Stipulation and

Order Governing Discovery, R. Doc. 102.  The parties have thus agreed that "fact discovery

materials from ████████████████ will be deemed to have been produced or taken in  the <sup>Jane Doe</sup>

Litigation and available for the parties to use as if they had originally been produced or taken in the <sup>Jane Doe</sup> Litigation " and vice versa. *Id*.

For this reason, as all parties agree, it is important that the fact discovery deadlines in both cases be the same. To proceed otherwise would undermine the purpose of the Joint Stipulation. As things stand, the deadline for discovery in the <sup>Jane Doe</sup> Scheduling Order is April 2, 2026 whereas the deadline for discovery in the ███████████████████████████. Absent modification, Jane Doe window to obtain discovery would in practical effect be shortened by three weeks, as she has agreed to coordinate discovery with ██████. If Jane Doe were to obtain discovery following █████████████ would not be privy to that discovery even if that discovery were relevant to the █████████ contrary to the terms of the Joint Stipulation.

The requested change in discovery deadlines would not prejudice John Doe as confirmed by his consent to this request and his agreement to the Joint Stipulation.

Accordingly, Jane Doe on behalf of all parties respectfully requests this Court to modify the Scheduling Orders in both cases so that each case has these same deadlines:

Amendments to pleadings    May 2, 2025
Plaintiff's expert reports    December 12, 2025
Defendants' expert reports    January 26, 2026
Rebuttal reports    February 24, 2026
Discovery deadline    March 19, 2026

## II.    The <sup>Jane Doe</sup> Litigation Should Go To Trial First.

Good cause also exists to modify the <sup>Jane Doe</sup> Scheduling Order so that trial in the <sup>Jane Doe</sup> Litigation precedes trial in the █████████ because the recently set case schedules providing for an earlier trial date in the █████████ risks unfair prejudice to Jane Doe

The principal risk for Jane Doe is that a verdict for John Doe ████████████ could distract and confuse the jury in her case into concluding, incorrectly, that any defects in █████████████ bear on Jane Doe credibility. Even though both lawsuits stem

3

from the same set of facts, ██████████████████████ do *not* necessitate the conclusion that Jane Doe lied in reporting that John Doe sexually assaulted her and defamed him. In other words, it is possible both that Jane Doe told the truth *and* ████████████████████

████████ ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ but such a conclusion obviously does not render Jane Doe a liar.

By contrast, swapping the trial dates so that the ^Jane Doe Litigation goes to trial first poses no unfair prejudice to John Doe The parties in both cases are coordinating and exchanging written discovery responses and documents, and no depositions have been taken in either case. Moreover, the outcome of the ^Jane Doe Litigation will not prejudice John Doe ████████

████████ if a jury were to find that Jane Doe defamed John Doe that would clearly assist John Doe ████████████████████████ and if a jury were to find that Jane Doe did not defame John Doe ████████████████████████████████

████████, ████████████████████████████████████████████████

████████████████████████

It also bears mention that the current order of the trials with the ████████ predating the ^Jane Doe trial does not reflect a judgment by anyone ████████████████████ should go first. Rather, the order is merely the result of the fact that the case manager held a scheduling conference for the ████████████ days before the scheduling conference for the ^Jane Doe Litigation.

In light of the risk of prejudice to Jane Doe ████████ request that the scheduling orders in both cases be modified so that the trial date for the ^Jane Doe Litigation precedes the trial date for the ████████████. Specifically, Jane Doe and ████ propose that they swap

4

their trial dates so that the <sup>Jane Doe</sup> Litigation would be set for trial on ███████ and the ████ ███████ would be set for trial on ███████ Although John Doe opposes this request, he is available for trial at both times and would not have to rearrange his schedule in any respect.

<div align="center">*_____</div>

For the foregoing reasons, Jane Doe respectfully requests that the <sup>Jane Doe</sup> Scheduling Order be modified to reflect the dates in the attached proposed order.

Respectfully Submitted,

*/s/    Jared A. Davidson*_____
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM ECF on all counsel of record on this 5ᵗʰ day of May, 2025.


                                        */s/ Jared A. Davidson*
                                        TAYLOR, WELLONS, POLITZ & DUHE, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| John Doe<br><br>    Plaintiff,<br><br>v.<br><br>  Jane Doe<br><br>    Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER**<br><br> **UNDER SEAL** |

## ORDER

Considering only the  *nopposed portion* of the preceding Motion to Modify Scheduling Order filed by Defendant,  Jane Doe

**IT IS ORDERED** that the scheduling order in the above-captioned matter (R. Doc. 101) be partially modified as follows:

May 2, 2025    Deadline for amendments to the pleadings;

December 12, 2025    Deadline for Plaintiff's expert reports;

January 26, 2026    Deadline for Defendants' expert reports;

February 24, 2026    Deadline for rebuttal expert reports; and,

March 19, 2016    Discovery deadline.

New Orleans, Louisiana, this _____ day of _____, 2025.

_____
**JUDGE DARREL JAMES PAPILLION**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** | CIVIL ACTION NO. 2:24-CV-00825 |
| | SECTION: P (3) |
| v. | |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe **Defendant.** | |
| | **MAG. JUDGE EVA J. DOSSIER** |

<u>NOTICE OF SU  MISSION</u>

PLEASE TAKE NOTICE that *the opposed portion* of Defendant,  Jane Doe  , Motion to Modify Scheduling Order will be submitted for decision to the Honorable Judge Darrel James Papillion, United States District Court for the Eastern District of Louisiana, on the 28th day of May, 2025.

Respectfully Submitted,

*/s/    Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

Case 2:24-cv-00325-JD-JBJD Document 102-14 Filed 06/12/05/25 Page 1156 of 1935

Original Filed at Docket No. 115,
Sealed by Court Order

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>**Plaintiff,**<br><br>v.<br><br>Jane Doe<br><br>**Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

### MOTION TO FILE PLEADING UNDER SEAL

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jane Doe who seeks an Order from this Court sealing her Motion to Modify Scheduling Order pursuant to Local Rule 5.6. Pursuant to Local Rule 5.6, Jane Doe has filed a full, unredacted copy of the Motion to Modify Scheduling Order under seal with this motion. For the reasons set forth in the accompanying Memorandum in Support, Jane Doe respectfully requests that this Court enter the proposed order included herewith.

**WHEREFORE**, Defendant, Jane Doe prays for an Order from this Court sealing her Motion to Modify Scheduling Order.

<div style="text-align: right;">

/s/    Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR WELLONS POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

</div>

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on the 5th of May, 2025.

*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | |
| | **SECTION: P (3)** |
| **v.** | |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT S MEMORANDUM IN SUPPORT OF**
**UNOPPOSED MOTION TO FILE PLEADING UNDER SEAL**

Defendant  Jane Doe  respectfully requests to file under seal a motion to modify the scheduling order in this litigation (R. Doc. 101) because it references a separate litigation in which Plaintiff   John Doe    is proceeding under a pseudonym ("Pseudonymous Litigation").  John Doe has consented to this motion to seal.

When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a case outweigh the presumption in favor of the public's common-law right of access to judicial records.  *i on v.  arner Co  nications*, 435 U.S. 589, 597 98 (1978).  To determine whether a judicial record should be sealed, the Court "must undertake a case-by-case, document-by-document, line-by-line balancing of the public s common law right of access against the interests favoring nondisclosure." *Sealed Applicant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *2 (5th Cir. Mar. 7, 2024).  The duty to balance interests and carefully review a sealing request applies even when the parties jointly desire that the matter should be sealed. *C.P. v. Defendant* , No. 2:24-CV-01615, 2024 WL 4940551, at *1 (W.D. La. Nov. 26, 2024).

Here, Jane Doe requests that the Court exercise its supervisory power to seal her motion to modify the scheduling order because Jane Doe agreed in a stipulation entered by the Court not to refer to the Pseudonymous Litigation by name or case number. *See* R. Docs. 102, 108. Jane Doe recognizes that under Local Rule 5.6(d), "reference to a stipulation or protective order is not sufficient to establish the necessity of sealing any document," but nonetheless seeks this sealing to honor her obligations under her agreement with John Doe To balance her obligations under the parties' agreement with the right of the public to access material filed with the Court, Jane Doe requests that only references to the Pseudonymous Litigation are redacted in the Motion to Modify the Scheduling Order. This limitation is appropriate given that the Fourth Circuit rejected John Doe attempt to proceed under a pseudonym in this litigation against Jane Doe

*John Doe v. Jane Doe*, 85 F.4th 206 (4th Cir. 2023) (attached as Ex. A).

Jane Doe seeks to have the Motion to Modify the Scheduling Order maintained under seal so long as the agreement not to refer to the Pseudonymous Litigation entered by the Court, R. Docs. 102, 108, remains in effect.

For the foregoing reasons, Jane Doe requests that the Court grant her motion to seal.

Respectfully Submitted,

*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

2

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

3

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on this 5th day of May, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1058**

───────────────

JOHN DOE,

                Plaintiff – Appellant,

      v.

JANE DOE,

                Defendant – Appellee.

------------------------------

FIRST AMENDMENT COALITION; PROFESSOR EUGENE VOLOKH,

                Amici Supporting Appellee.

───────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge. (5:22-cv-00500-D-BM)

───────────────

Argued:  September 19, 2023                      Decided:  October 26, 2023

───────────────

Before AGEE, WYNN, and THACKER, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Judge Agee and Judge Wynn joined.

───────────────

**ARGUED:**  Kara L. Gorycki, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant.  Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Andrew T. Miltenberg, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant.  James M. Weiss, ELLIS & WINTERS LLP, Raleigh,

**EXHIBIT A**

North Carolina, for Appellee.  Eugene Volokh, First Amendment Amicus Brief Clinic, UCLA SCHOOL OF LAW, Los Angeles, California, for Amici Curiae.

————————

THACKER, Circuit Judge:

John Doe ("Appellant") filed this civil action alleging claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy against Jane Doe ("Appellee") after Appellee accused Appellant of sexual assault. When Appellant filed his complaint, he also filed an ex parte motion to proceed using the pseudonym "John Doe," rather than his real name. The district court denied the motion. Because we conclude that the district court did not abuse its discretion in doing so, we affirm.

I.

Appellant began his undergraduate studies at Tulane University in August 2018 and was on track to graduate in May 2022 prior to the events giving rise to this lawsuit.[1] Appellant had an ongoing but not steady, "uncommitted, casual relationship" with a woman he calls "Sue Roe" in Fall 2019, and at various points in Spring and Summer 2021. J.A. 8.[2] In August 2021, Appellant and Sue Roe left a bar together, went to Sue Roe's house, and engaged in what Appellant alleges was consensual sex. Afterward, Appellant told Sue Roe that they "may regret that later," which made her cry. *Id.* at 9. After apologizing, Appellant went to sleep but was awakened at some point later by Sue Roe's housemate, who asked him to leave.

---

[1] We recount the facts here as Appellant alleged them in his Complaint.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

In September 2021, Appellant "matched" on Tinder with Appellee. Several months later, Appellant invited Appellee to his fraternity party, which they attended on January 29, 2022. Appellee then texted Appellant on February 2, 2022, to wish him a happy birthday. Around midnight that night, Appellant asked Appellee if she "wanted to hang out," to which she responded that she did. J.A. 13. The two went to Appellant's house to have consensual sex, and Appellant walked Appellee home the next morning. On the night of February 3, Appellant went to a bar with his friends and met up with a woman he identifies as "A.H." *Id.* Appellant and A.H. left the bar together and "[u]pon information and belief, [Appellee] saw [Appellant] talking to A.H. at the bar and heard that he and A.H. went home together." *Id.* at 14.

Appellant alleges that after Appellee learned he went home with another woman on February 3, Appellee set off on a campaign to disseminate false allegations against him. Appellant alleges that on February 4, Appellee told one of Appellant's friends that Appellant had "engaged in nonconsensual sexual activity" with her. J.A. 14. "[B]y February 6th, false rumors had begun spreading around school alleging that [Appellant] sexually assaulted a female student" and Appellant had been told about the rumors and social media posts[3] by several people. *Id.* at 14–15. On the evening of February 8, Appellant received a text message from Appellee accusing him of sexually assaulting her and calling him "a predator and repeat offender." *Id.* at 15.

---

[3] Appellant does not allege that any post actually identified him but says there was "an indication" in one post that it was referring to him. J.A. 14.

The following day, Appellant discussed the allegedly false claims with multiple friends, and two of his friends called Appellant's "parents to tell them it was not safe for [Appellant] to be on the Tulane campus." J.A. 15. On February 10, Appellant's mother flew to Tulane to help Appellant pack and take him home. Appellant withdrew from Tulane on February 11, 2022.

Although Appellant was unaware at the time, Appellee had filed a report against Appellant with Tulane's Case Management and Victim Support Services[4] office on February 6, 2022. And on February 11, the day Appellant withdrew from Tulane, both Appellee and Sue Roe filed formal Title IX/Sexual Misconduct reports against Appellant. "Both reported having consensual sex with [Appellant], falling asleep, and waking up to him engaging in sexual activity." J.A. 18. Tulane investigated the reports and interviewed both Appellee and Sue Roe. Appellant alleges that Appellee's statement to Tulane investigators was false, defamatory, and contradicted by other evidence, and that Appellee conspired with Sue Roe and submitted false evidence in the course of the investigation. Tulane found Appellant responsible for sexual misconduct and expelled him from the university on May 8, 2022.

---

[4] The Case Management and Victim Support Services office offers support to Tulane students on a range of academic and non-academic issues, including medical needs, drug or alcohol abuse, and behavioral health concerns. The office also provides support to Tulane students who have been victims of crimes such as sexual assault, intimate partner violence, stalking, and hazing. Tulane University, *Case Management and Victim Support Services*, https://cmvss.tulane.edu/; https://perma.cc/KB2D-GGRJ (last visited Oct. 25, 2023).

On December 8, 2022, Appellant filed this civil action against Appellee[5] in the United States District Court for the Eastern District of North Carolina. In the Complaint, Appellant alleges claims for defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy. Appellant seeks relief in the form of a "declaration that [Appellee] defamed [Appellant]" as well as compensatory and punitive damages on each claim. J.A. 40–41.

On the same day he filed his Complaint, Appellant filed an ex parte motion for leave to proceed using a pseudonym along with a supporting memorandum. In his motion, Appellant asked only "for leave to proceed under pseudonym," S.J.A. 1,[6] and his supporting memorandum reacknowledged that he sought "an Order granting permission to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff." J.A. 43. Therefore, while Appellant's supporting memorandum noted that Jane Doe and Sue Roe were pseudonyms and that "all students shall be identified herein by pseudonym as well," *id.*, the district court construed the motion *only* as one to allow Appellant to use a pseudonym for himself -- not as a motion for leave to use pseudonyms for Jane Doe, Sue Roe, or anyone else. After considering the applicable factors as set out by this court, the district court denied Appellant's motion.

Appellant timely noted this appeal.

---

[5] The Complaint identifies Appellee only as "Jane Doe" and does not reveal her legal name or other identifying characteristics.

[6] Citations to the "S.J.A." refer to the Supplemental Joint Appendix filed by the parties in this appeal.

## II.

"The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Therefore, we review the district court's decision only for abuse of discretion.

We have described three ways a district court can abuse its discretion in considering motions to proceed by pseudonym. First, a district court abuses its discretion when it acts with "a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *James*, 6 F.3d at 239 (citation omitted). Second, a district court abuses its discretion when it fails to "adequately [] take into account judicially recognized factors constraining its exercise" of discretion. *Id.* (citation omitted). And finally, a district court abuses its discretion when its reasoning "is flawed by erroneous factual or legal premises." *Id.* (citation omitted).

## III.

Pursuant to Federal Rule of Civil Procedure 10(a), a civil complaint "must name all the parties." The rule recognizes "the general presumption of openness of judicial proceedings," which has a basis both in common law and in the First Amendment. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014). We have explained that "[p]seudonymous litigation undermines the public's right of access to judicial proceedings" because "[t]he public has an interest in knowing the names of litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Public Citizen*, 749 F.3d at 274 (internal citations omitted).

7

Nevertheless, district courts may, in their discretion, allow pseudonymous litigation because "privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this *rare* dispensation." *James*, 6 F.3d at 238 (emphasis supplied). To warrant this relief, the circumstances must be "exceptional." *Pub. Citizen*, 749 F.3d at 273.

In *James*, we set out five nonexhaustive factors for district courts to consider when deciding motions to proceed by pseudonym:

> (1) "[W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature";
>
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties";
>
> (3) "the ages of the persons whose privacy interests are sought to be protected";
>
> (4) "whether the action is against a governmental or private party"; and,
>
> (5) "relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously."

6 F.3d at 238. We have also clarified that "a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Pub. Citizen*, 749 F.3d at 274.

Appellant's memorandum in support of his motion briefly addressed each of the *James* factors, and the district court considered each of Appellant's arguments in its order

8

Case 2:24-cv-00052-DJP-EJD   Document 19-15    Filed 06/05/25   Page 1172 of 1935

denying the motion.  Nevertheless, Appellant argues the district court abused its discretion by (1) determining that the *James* factors weighed against anonymity, (2) failing to consider irreparable harm to his reputation, and (3) failing to balance Appellant's privacy interest in anonymity against the public's interest in open judicial proceedings. We address each argument, beginning with the *James* factors.

IV.

A.

The first *James* factor is "[w]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).  In his motion, Appellant argued that the underlying facts in the case relate to allegations of sexual assault and, "in light of the nature of this case, private and intimate details regarding the lives of John Doe and Jane Doe will be at issue." J.A. 47.  He also noted that, in bringing this lawsuit, he "seeks to minimize the harm of Jane Doe's claims," "prevent further harm," and "clear [his] good name." *Id.*  Therefore, he argued, "the interests at play here are of a highly sensitive nature" such that this factor should weigh heavily in favor of granting his motion.  *Id.*  He also argued that he should be allowed to proceed by pseudonym because "[i]f [he] is required to disclose his identity in this litigation, the harm would already be done. [Appellant's] name will forever be publicly associated with allegations of . . . sexual misconduct." *Id.*

The district court accepted Appellant's arguments on this factor and determined that Appellant desired to proceed by pseudonym "in order to preserve his privacy in a matter

9

that is highly sensitive and highly personal," J.A. 57, rather than "merely to avoid the annoyance and criticism that may attend litigation," *James*, 6 F.3d at 238. In doing so, the district court explained that "[n]umerous district courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault." J.A. 57. The district court cited several cases where plaintiffs were allowed to proceed by pseudonym when they were suing their universities, or officials at their universities, for due process violations resulting from Title IX investigations. *See, e.g.*, *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-378, 2022 WL 972629, at *2 (W.D. Va. Mar. 30, 2022); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592–94 (E.D. Va. 2016); *Painter v. Doe*, No. 3:15-cv-369, 2016 WL 3766466, at *6 (W.D.N.C. July 13, 2016); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016). Therefore, the district court held that the first factor favored allowing Appellant to proceed by pseudonym.

On appeal, Appellant agrees that the district court's determination on this factor was correct. But he takes issue with the fact that the district court made no express determination as to the weight of this finding. But we have only required that district courts *consider* the *James* factors, and we have not prescribed any particular weight to any individual factor. Rather, we have entrusted district courts to consider each case individually to discern which factors should -- in their discretion -- weigh most heavily. *See James*, 6 F.3d at 242–43. The district court considered this factor, and we find no abuse of discretion in its failure to note the particular weight it attributed to it.

10

B.

As to the second factor -- risk of harm -- Appellant argued to the district court that "if his identity is disclosed, [he] *could be* targeted for retaliatory physical or mental harm based solely on the accusation of sexual misconduct." J.A. 48 (emphasis supplied). He pointed to "the current social climate," as well as the fact that Appellee "spread false and highly damning claims . . . to classmates, friends, and Tulane's administration." *Id.* Thus, he argued that even a finding that Appellee did in fact defame him would not "change the damage done if his request for anonymity is denied" because he will have "to live with this public reputation" which "would be detrimental to [his] physical and mental health." *Id.* Appellant also argued, without further discussion, that "it would be harmful to publicize the names of the female accusers as it would subject them to unwanted scrutiny, harassment, and ridicule." *Id.* (quoting *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *2).

In its opinion, the district court recognized that due to "the inflammatory nature of sexual misconduct, the mere accusation . . . if disclosed, can invite harassment and ridicule." J.A. 57 (internal quotation marks omitted) (citation omitted). But the district court determined that Appellant failed "to produce 'evidence to support more than a mere general fear of retaliation or mere embarrassment.'" *Id.* (quoting *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022) (internal quotation marks omitted)). And the district court noted that there did not appear to be any "aggravating factors" such as media exposure that would endanger Appellant if his identity was known. J.A. 58. Finally, the district court explained that while Appellant expressed "concern[] about the

11

potential harm to Jane Doe and Sue Roe" if *their* identities were revealed, "that consideration does not affect whether the court should allow *plaintiff* to pursue this action pseudonymously." *Id.* (emphasis supplied). Therefore, the court determined that this factor was neutral in its analysis.

On appeal, Appellant argues that his case "is distinguishable from the garden-variety defamation case because it centers around false and defamatory statements made within the context of a Title IX disciplinary proceeding and [Appellee's] use of that proceeding to exact revenge against [Appellant]." Appellant's Opening Br. 28. And again, Appellant points to various courts allowing plaintiffs to proceed by pseudonym when they are suing their universities to challenge Title IX proceedings in order to argue that he has a valid privacy interest. Appellant argues it was error for the district court to find this factor to be neutral, rather than in his favor, because it added an "evidence requirement" that required him to produce evidence of more than a general fear or of aggravating factors, and it did not consider the risk to Appellee and Sue Roe.

We begin with Appellant's argument that the district court relied on an erroneous legal premise -- the additional "evidence requirement" -- and his argument that its conclusion that he had failed to supply evidence "was grounded in [an] erroneous factual premise" because the Complaint "alleges that [Appellant] had already experienced retaliation." Appellant's Opening Br. at 30–31.

The district court was required to consider "whether identification poses a risk of retaliatory physical or mental harm." *James*, 6 F.3d at 238. We do not find that the district court abused its discretion in looking for evidence of a risk beyond Appellant's bare

12

assertion that he *could be* targeted for retaliation if his name were public. Other courts have done the same. *See e.g.*, *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (finding evidence of a risk of harm where the plaintiff had demonstrated that there was press coverage of his case in a "relatively small community"); *Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 920 (W.D. Va. 2022) (explaining that the plaintiffs "argued and provided evidence to support more than a mere 'general fear' of retaliation"); *Freedom From Religion Foundation, Inc. v. Cherry Creek Sch. Dist. #5*, No. 07-cv-02126-MSK, 2009 WL 2176624, at *6 (D. Col. July 22, 2009) (explaining that "the unsubstantiated potential for an adverse public reaction" was insufficient where the plaintiffs had "not presented any evidence that reflects disapproval . . . or suggests they would be the target of actual threats, harassment or retaliation"); *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) ("fears of embarrassment or vague, unsubstantiated fears of retaliatory actions . . . do not permit a plaintiff to proceed under a pseudonym"); *Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215, 217 (E.D. Tex. 1997) (denying use of pseudonym where the record contained no "other factors" or "threats of violence" to support the plaintiff's argument that "it has happened before, therefore it *might* happen here").

In other words, district courts routinely look for "aggravating factors" or "evidence" as a means to determine whether a risk of harm truly exists. Because we cannot see how a district court could properly weigh this factor based on nothing more than a bare assertion of risk, we find no abuse of discretion in the district court's decision to look for additional evidence or aggravating factors to corroborate Appellant's claim.

13

As for Appellant's arguments that the district court relied on an "erroneous factual premise" in determining he had not provided sufficient evidence of a risk of harm, Appellant points to facts he alleged in the Complaint that show he had already experienced retaliation.  He argues on appeal that the Title IX investigation itself was retaliation; "the further spread of false allegations . . . is ever present"; students "across Tulane's campus," including students studying abroad, had heard the rumors; and his friends had told his parents it was not safe for him at Tulane, so his mom flew there to take him home.[7] Appellant's Opening Br. at 31.  Appellant also argues on appeal that his Complaint made clear that he had "already suffered emotional distress, reputational harm, loss of educational and career opportunities and psychological damages." *Id.*

Critically, though, Appellant did not present any of these arguments to the district court in his motion or supporting memorandum.  Instead, he argued only that "[i]f his identity is disclosed, [he] *could be* targeted for retaliatory physical or mental harm" and that "having to live with this public reputation would be detrimental to [his] physical and mental health."  J.A. 48 (emphasis suppled).  The district court correctly noted that Appellant did not provide any evidence to support these fears, and these bald allegations are not sufficient.

---

[7] While Appellant's Complaint does allege that his friends thought he was not safe at Tulane, he made no attempt in his motion or in this appeal to explain why revealing his name in this lawsuit would put him at risk.  Indeed, it seems that Appellant believes his identity is already well known in connection with these allegations on the Tulane campus. Moreover, Appellant has included so many details about his identity in his Complaint that, arguably, he could be readily identified in any event, especially by those in the Tulane community.

14

Finally, Appellant argues that the district court's determination that the second factor was neutral was based on an erroneous legal premise. Specifically, Appellant argues that the district court erred when it held that the risk to Appellee and Sue Roe if *their* identities were disclosed was irrelevant to its determination of whether *Appellant* should be allowed to use a pseudonym. Appellant argues that the risk to Appellee and Sue Roe was not irrelevant because district courts are expressly instructed to consider the risk to third parties, and he argues that he requested pseudonymity for Appellee and Sue Roe in his motion in order to protect them.

Appellant's arguments fail here too. While Appellant did use pseudonyms for Appellee and Sue Roe and suggested that they be identified by those names consistent with the Complaint, he repeatedly only asked for leave to proceed as a pseudonymous plaintiff. While courts are permitted to consider the risk to third parties if the *party seeking* anonymity is identified, Appellant did not argue that Appellee and Sue Roe were at risk if *his* identity was public. Rather he argued that "it would be harmful to publicize the names of the female accusers. . . ." J.A. 48. The district court was correct -- that consideration is not at issue and is irrelevant to whether Appellant should be allowed to use a pseudonym. It is also worth noting that Appellee does not seek anonymity herself. To the contrary, Appellee has identified herself using her real name in public court filings in both the district court and this court.[8]

Thus, the district court did not abuse its discretion in considering "risk of harm."

---

[8] Nevertheless, for purposes of this appeal, we have not identified Appellee by name.

C.

The district court determined that the third factor, age, weighed against Appellant because "all parties are adults, and therefore not minors entitled to special protection based on age." J.A. 58. Although Appellant had argued in his motion that this factor should be neutral because "some courts have stated that being over eighteen years old should not be held against a college student," *id.* at 48, he does not challenge the district court's holding on appeal.

D.

For the fourth factor, whether the action is against a governmental or private party, Appellant recognized in his motion that he was suing a private party and that courts are less likely to allow anonymity in that scenario because "actions against private individuals may harm their reputation." J.A. 49. Nevertheless, Appellant argued he should be permitted to use a pseudonym because Appellee's identity could be protected and "the only information the public needs . . . is that they were all students at Tulane." *Id.* In Appellant's view, "this factor is neutral, at worst." *Id.*

The district court, however, disagreed and determined that the fourth factor "weighs significantly against allowing [Appellant] to proceed pseudonymously" because he is suing only a private individual. J.A. 59. "When a plaintiff accuses an individual of wrongdoing, '[b]asic fairness dictates that those among the defendants' accusers who wish to participate in this suit . . . must do so under their real names.'" *Id.* (quoting *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). The district court was also particularly concerned that "[i]t would be fundamentally unfair for

16

[Appellant] to be able to 'clear his name' and wield a potential [judgment] against [Appellee] but hide under a shield of anonymity if unsuccessful." J.A. 59.

On appeal, Appellant argues that this factor "does not carry significant weight." Appellant's Opening Br. at 33. Appellant points to several Title IX cases to claim that district courts have allowed plaintiffs to use pseudonyms "in cases involving private parties" even if they held that this factor weighed against anonymity. *Id.* (*citing Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-cv-170, 2018 WL 5929647, at *3–4 (W.D. Va. Nov. 13, 2018); *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-cv-00249, 2020 WL 1287960, at *4–5 (W.D. Va. Mar. 18, 2020); *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *2; *B.R. v. F.C.S.B.*, No. 1:19-cv-00917, 2020 WL 12435689, at *26 (E.D. Va. Mar. 10, 2020)).

Not so. Significantly, these cases all differ from the case at hand because the plaintiffs in them were suing *both* public universities *and* private individuals, and, in many instances, the individuals were sued in their official capacities. Even still, the courts in these cases all found that the fourth factor was neutral or weighed against allowing anonymity because of the inclusion of private parties -- the more private parties (sued in their individual capacities), the more likely the courts were to find that the factor weighed against the plaintiff. Thus, the district court's determination here that this factor weighs significantly against allowing anonymity when Appellant is *only* suing a single individual is in line with all of the relevant precedent, despite Appellant's argument to the contrary.

In any event, Appellant does not challenge the district court's holding that this factor weighs against pseudonymity -- rather, he only takes issue with the fact that the court said

17

Case 2:24-cv-00325-DJP-EJD    Document 115-2    Filed 06/25/25    Page 18 of 1935

it "weighs *significantly* against" anonymity. Appellant claims that this determination "appears to be grounded in a general disapproval of party anonymity in cases where private parties are involved, rather than consideration of the relevant case law and the specific circumstances of [Appellant's] case." Appellant's Opening Br. at 36. Appellant cites only to *James* and does not elaborate on this argument further.

In *James*, this court was concerned that the district judge acted by "general rule" rather than "a true exercise of discretion." 6 F.3d at 239. The record in *James* indicated that the judge had "a flat rule of general application based upon [a] strongly felt personal predilection" that "no party or witness may testify at trial except under his or her true name." *Id.* at 240. And the district court in that case had failed to conduct a "particularized assessment of the equities involved." *Id.* at 239. No such facts exist here. The district court below thoroughly considered all the factors and the arguments made by Appellant and determined -- consistent with the weight of authority -- that suing only a private individual weighs against anonymity. We do not find any abuse of discretion in that conclusion.

### E.

Finally, as to the fifth *James* factor, the district court was required to consider the risk of unfairness to Appellee if it allowed Appellant to proceed anonymously. Appellant's motion argued only that there was no risk of unfairness to Appellee because she "is well aware of [Appellant's] identity, as [Appellee] was party to the investigation process conducted by Tulane, during which his identity was disclosed." J.A. 49. The district court accepted this point, but it explained that "there are other sources of significant unfairness

18

or risk of prejudice against [Appellee]." *Id.* at 59. "This risk stems not only from [Appellant's] use of pseudonym for himself, but also from [his] use of pseudonyms and initials throughout the complaint." *Id.* at 59–60. The district court was concerned that "this pervasive anonymity could lead to difficulty and confusion for [Appellee] during discovery," so it held that this factor weighed against allowing Appellant to proceed by pseudonym. *Id.* at 60.

On appeal, Appellant argues that the district court's concern about difficulty and confusion in discovery was an "erroneous factual premise" because Appellant "did not represent to the District Court that he was unwilling to conduct discovery using [] real names . . . which could easily be dealt with through a protective order." Appellant's Opening Br. at 36–37. And he argues that all individuals identified in the Complaint are known to Appellee.

Once again, however, Appellant never made either of these arguments to the district court. Appellant's motion failed to recognize that there could be any risk of unfairness in discovery -- he did not make any argument that anonymity could be dealt with in discovery or at trial, nor did he argue that the others in the complaint were known to Appellee. But the district court, knowing that it would need to manage the entire case if it granted Appellant's motion, rightly noted its concerns in its order.

## F.

Considering the district court's entire analysis of the *James* factors, we conclude that the district court did not abuse its discretion because it did not rely on incorrect factual or legal premises, nor did it give any indication that it was acting by general rule. Instead,

19

the district court conducted a thorough, case specific analysis when it exercised its discretion.

<center>V.</center>

Next, Appellant argues that the district court abused its discretion because it "failed to consider a significant factor in cases brought by persons falsely accused of sexual assault—the irreparable harm that [Appellant's] reputation would suffer if his identity is disclosed in an action through which he is seeking to clear his name."  Appellant's Opening Br. at 25.  Appellant bases his argument on the idea that the *James* factors are not exhaustive, and he points to other cases where courts have considered irreparable harm, such as in *Doe v. Alger* where the plaintiff specifically "argue[d] that there is another factor relevant to this case that weighs in favor of anonymity—irreparable harm to his name." 317 F.R.D. 37, 42 (W.D. Va. Mar. 31, 2016).  But here, Appellant made no argument about his reputation apart from the *James* factors, so there was no reason for the district court to consider it separately.

<center>VI.</center>

Appellant also argues that the district court "failed to balance [Appellant's] interest in anonymity against the public's interest in open judicial proceedings" as required by *Public Citizen*.  Appellant's Opening Br. at 39 (citing *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014)).  On the contrary, the district court dedicated the last two pages of its order "return[ing] to the Fourth Circuit's broad admonition that [it] must balance [Appellant's] stated interest in anonymity against the public's interest in openness."  J.A. 60–62.

<center>20</center>

In its order, the district court held that extraordinary circumstances that would warrant pseudonymity are not present here. It recognized that Appellant had argued "there is no public interest in the public learning his identity or the identities of others," but noted that Appellant had "fail[ed] to address the risk that pseudonymous lawsuits have in eroding public access to proceedings." J.A. 60. Appellant similarly argues on appeal that the crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously. We have held just the opposite: "Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants and disclosing the parties' identities furthers openness of judicial proceedings." *Pub. Citizen*, 749 F.3d at 273 (internal citations omitted).

Appellant's central argument on appeal is that his case "center[s] around a confidential Title IX proceeding" so it is different than "the garden variety defamation case" and overcomes any public interest in disclosure of his identity. Appellant's Opening Br. at 40. We disagree. As the district court explained, Title IX challenges have "considerations . . . [that] do not apply here." J.A. 61. Specifically, in those cases, "those accused of sexual assault" were "su[ing] schools or universities pseudonymously when attacking the findings of a university Title IX investigation." *Id.* "Unlike those cases, [Appellant] is not challenging his expulsion from Tulane or arguing that Tulane violated Title IX or due process during the sexual assault investigation." *Id.* Instead, Appellant is suing only a private individual for defamation, and he seeks only declaratory relief and money damages against Appellee. This case is no different than a garden variety

21

defamation case, and it does not present the exceptional circumstances necessary for Appellant to proceed by pseudonym.

Finally, we fail to see how Appellant can clear his name through this lawsuit without identifying himself. If Appellant were successful in proving defamation, his use of a pseudonym would prevent him from having an order that publicly "clears" him. It is apparent that Appellant wants to have his cake and eat it too. Appellant wants the option to hide behind a shield of anonymity in the event he is unsuccessful in proving his claim, but he would surely identify himself if he were to prove his claims.

The district court considered each of Appellant's arguments, and it carefully balanced Appellant's stated interests against the public's interest in the openness of judicial proceedings as required by *Public Citizen*. It did not abuse its discretion in doing so.

## VII.

The district court did not abuse its discretion when it denied Appellant's motion to proceed as a pseudonymous plaintiff.

*AFFIRMED*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| Jane Doe | **JUDGE DARREL JAMES PAPILLION** |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

**ORDER**

Considering the preceding Motion to File Pleading Under Seal filed by Defendant [Jane Doe]


This Court finds that good cause exists and it is appropriate to seal  Jane Doe  Motion to

Modify Scheduling Order.  When appropriate, courts may order that case documents be filed under

seal if the interests favoring nondisclosure in a particular case outweigh the presumption in favor

of the public's common-law right of access to judicial records.  *i on v.   arner Co    nications*,

435 U.S. 589, 597  98 (1978).

In light of the stipulation entered by the Court in which the parties agreed not to refer to

the Pseudonymous Litigation by name or case number,

**IT IS ORDERED** that Defendant  Jane Doe  motion is hereby **GRANTED** and her

Motion to Modify Scheduling Order shall be filed into the record under seal.


New Orleans, Louisiana, this _____ day of _____, 2025.


_____
**JUDGE**

Original Filed at Docket No. 116,
Sealed by Court Order

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

███████████, **Plaintiff,**

v.

███████, **Defendant.**

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## ORDER

Before the Court is the Motion to File Pleading Under Seal filed by Defendant ███ ███ (R. Doc. 115). Defendant ███ seeks leave to file a redacted version of her Motion to Modify Scheduling Order, in light of the stipulation entered by the Court in which the parties agreed not to refer to the Pseudonymous Litigation by name or case number.

This Court finds that good cause exists and it is appropriate to seal ████████ Motion to Modify Scheduling Order. When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a particular case outweigh the presumption in favor of the public's common-law right of access to judicial records. *Ni on v. arner Co nications*, 435 U.S. 589, 597 98 (1978).

Having conducted a document-by-document, line-by-line analysis of the redactions ███ ███ seeks, the Court finds the redactions are necessary and congruent to the need. Accordingly,

**IT IS ORDERED** that Defendant ████████ motion is hereby **GRANTED,** and her Motion to Modify Scheduling Order may be filed into the record in its redacted form.

New Orleans, Louisiana, this 6th day of May 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

| Original Filed at Docket No. 117, |
| Sealed by Court Order |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO MODIFY THE SCHEDULING ORDER**

Plaintiff    John Doe    ("Plaintiff") respectfully submits this memorandum of law in opposition to the portion of Defendant Jane Doe ("Jane Doe motion to modify the Scheduling Order seeking to swap the trial date scheduled in this action with the trial date scheduled in the pending Pseudonym Action.[1]

This Court should reject Jane Doe latest attempt to dictate the pace and posture of these proceedings. After transferring this case to Louisiana, delaying the discovery process in coordination with ████, moving to consolidate this case with the Pseudonym Action, then abruptly withdrawing that motion after nearly a year of delay, Jane Doe now asks the Court to reorder the two trial dates—placing her preferences over Plaintiff's rights. But the cases are not consolidated, will not be tried before the same jury, and present distinct legal issues. Jane Doe offers no valid reason—let alone good cause—to leapfrog the trial in the Pseudonym Action, where Plaintiff seeks time-sensitive injunctive relief from █████████████████████ ███████████████. This is relief only ████ can provide, and every day of delay

---

[1] █████████████████████████████████████████████. The trial is set for June 22, 2026 in the Pseudonym Action and for July 13, 2026 in this action.

1

further prejudices Plaintiff. Jane Doe motion should be denied in full, with the exception of the unopposed request to align the discovery deadlines.

## PROCEDURAL BACKGROUND

### I. Plaintiff's Action Against Jane Doe

Plaintiff filed this action in the Eastern District of North Carolina on December 8, 2022. ECF No. 1.[2] The case was stayed for approximately nine (9) months as the parties briefed and argued an interlocutory appeal to the Fourth Circuit. On November 9, 2023, Plaintiff filed the First Amended Complaint. ECF No. 23. On December 15, 2023, Jane Doe filed a partial motion to dismiss Plaintiff's abuse of process, tortious interference with contract and conspiracy claims. ECF No. 27. Jane Doe did not move to dismiss Plaintiff's claims for defamation or intentional infliction of emotional distress. *Id.* Rather than proceeding to discovery, on the same day, Jane Doe moved to transfer this action to the Eastern District of Louisiana. ECF No. 29.[3] On April 2, 2024, the case was transferred to this District. Twenty-eight days later, on April 30, 2024, Defendant moved to consolidate this action with Plaintiff's pending Pseudonym Action. Plaintiff opposed the motion. ECF No. 72.

On February 24, 2025, ten months after filing the consolidation motion, Jane Doe withdrew the motion by filing an *ex parte* notice. ECF No. 84. Plaintiff was unaware that Jane Doe planned to withdraw the motion. On March 17, 2025, the Court decided Jane Doe partial motion to dismiss. ECF No. 96. The case now proceeds on claims of defamation, intentional infliction of emotional distress, abuse of process (as to the Louisiana TRO), and civil conspiracy—none of

---

[2] This was the state where Jane Doe was domiciled and where Plaintiff believed she resided at the time the complaint was filed.

[3] In November 2023, Jane Doe counsel, Kelly Dagger, requested a copy of Plaintiff's initial disclosures in the Pseudonym Action from ███ to aid in drafting Jane Doe motion to transfer. Ex. 1. Thankfully, no initial disclosures were exchanged in that case.

2

which overlap with the sex discrimination and breach of contract claims against Tulane in the Pseudonym Action.

## II.     Plaintiff's Pseudonym Action

The Pseudonym Action was filed on April 24, 2023. *Doe* Docket, ECF No. 1. In that action, Plaintiff alleged claims against the defendant for sex discrimination and breach of contract. *Id.* ███ answered on July 14, 2023 after waiving service. *Doe* Docket, ECF Nos. 11, 13. On August 1, 2023, a Scheduling Order was entered in the case, discovery commenced and the case was set to be tried on October 7, 2024. Pseudonym Docket, ECF No. 16.

On September 8, 2023—over three months before Jane Doe moved to transfer the action and over seven months before Jane Doe moved to consolidate—Plaintiff served a document subpoena in the Pseudonym Action on Jane Doe attorney at the time, Kelly Dagger. Ms. Dagger accepted service on September 11, 2023. Before responding to the subpoena, Ms. Dagger conferred with ███. Ex. 2. Jane Doe objected to the subpoena in its entirety, threatened sanctions and refused to produce any documents in response thereto. Ironically, Jane Doe accused Plaintiff of



Ex. 3. Unbeknownst to Plaintiff at the time, Jane Doe was in possession of information ███ ███ — ███ ███.

Plaintiff's counsel made several attempts to narrow the document requests contained in the subpoena and also offered to conduct informal discovery in this action so that Jane Doe would only have to make one production. All attempts to narrow the subpoena and offers to make compliance less burdensome for Jane Doe were rejected.

3

On May 31, 2024, due to Jane Doe filing of the consolidation motion, the parties in the Pseudonym Action filed a joint motion to continue the discovery deadline in the Scheduling Order in order to avoid taking the depositions of overlapping witnesses more than once. Pseudonym docket, ECF No. 30-1. No stay of discovery was requested. *Id.* On June 6, 2024, the Court granted the motion and vacated the Scheduling Order in the Pseudonym Action. No stay was imposed during the pendency of the consolidation motion. Pseudonym docket, ECF No. 32.

In November 2024, Jane Doe counsel, Jared Davidson, directed Plaintiff's counsel to make a motion to compel after Plaintiff again attempted to obtain information from Jane Doe in response to the subpoena served in the Pseudonym Action. Mr. Davidson used the "stay" of the Pseudonym Action as a basis for refusing to respond to the subpoena. Ex. 4. He further claimed that a subpoena was not "a proper vehicle" for obtaining information from Jane Doe because her consolidation motion was pending. *Id.*

Once the consolidation motion was withdrawn, the parties subsequently agreed to coordinate discovery in both actions. ECF No. 109. During a meet and confer that was held on March 17, 2025, Jane Doe counsel, Neil Roman, represented that it would not be necessary for Plaintiff to file a motion to compel a response to the subpoena because of Jane Doe agreement to coordinate discovery in both actions.

Jane Doe objections and responses to Plaintiff's first set of document requests in this action were due on May 5, 2025. On May 2, 2025, Jane Doe served her objections and responses without serving a production. While Plaintiff understands that discovery may need to be produced on a rolling basis, and that issues sometimes arise, the utter lack of documents was surprising. To date, Jane Doe has produced 13 pages of information. On May 12, 2025, Plaintiff learned that ***over two years ago*** Jane Doe attorney reached out to Tulane University in connection with this action

and received copies of nearly 2,000 pages of documents and recordings related to the disciplinary proceedings that are a subject of this action. Plaintiff did not receive notice of this disclosure as required by the Family Educational Rights and Privacy Act. The release of unedited recordings containing identifying information to Jane Doe also violated federal law. Jane Doe failed to produce this information in response to Plaintiff's document requests in this action within the deadline imposed by the Federal Rules (May 5), though it would have been simple to produce a copy. Notably, ███████████████ , ████████████████████████ ███████████████ . ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████ .

## ARGUMENT

### I.      Plaintiff's Pseudonym Action Should Be Tried First

It is clear from the procedural history of this action that Jane Doe has engaged in an intentional effort to obstruct and delay this case until a time that she preferred to move forward. She has further coordinated with Tulane University to obtain information outside the discovery process (and without notice to Plaintiff) while refusing to respond to properly-served discovery. She provides absolutely no reason—no less good cause—why this case should be tried before the Pseudonym Action. Her present motion is yet another effort to control the course of the litigation on her terms. Jane Doe request to try this case first should be denied.

This action and the Pseudonym Action have not been consolidated for trial, they will not be tried before the same jury and they concern distinct legal issues. Jane Doe argument that a jury in this action would be confused by findings in the Pseudonym Action, or would rely on them to assess her credibility, lacks legal or factual basis. Moving Br. at 3. Any concerns that Jane Doe

5

has about the use or effect of the jury's findings in the Pseudonym Action are more properly addressed through a pre-trial motion *in limine*. This is not a basis for changing the scheduled order of the trials. At issue in the Pseudonym Action is whether ██████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████ *See* Pseudonym docket, Compl., ECF No. 1. Plaintiff's second claim, for breach of contract, turns on whether ████████████████████████████. *Id.* It simply does not follow that any findings about ████████████████████████████████████████████ ██████████████████████████████ would concern Jane Doe credibility. Jane Doe points to no other reasons—and offers no evidence—to support her conclusory claim that she would be prejudiced if the Pseudonym Action goes to trial ahead of this action. It seems that the only reason for the request is that she prefers to go first ████████████████████████ ████████████████████████████████████████.

In contrast, Plaintiff will be prejudiced if this action is tried before the Pseudonym Action. Plaintiff seeks ████████████████████████████████████████ ████████████████████████████. *Doe* docket, ECF No. 1, Compl. ¶¶ 521, 532. Only ████ ████████████████████████████████████████████. Plaintiff should not have to put off the possibility of obtaining this relief—after significant delay in having his day in court—when Jane Doe can readily address her concerns via pre-trial motion practice.

## II.      Plaintiff Agrees That The Discovery Schedules Should Be Aligned

The alignment of discovery schedules was requested by Jane Doe counsel and agreed to by Plaintiff before he discovered that Jane Doe and Tulane failed to disclose that Jane Doe received documents and recordings from Tulane two years ago ████████████████████████. The full

6

extent to which ████████████████████████████████ was not fully apparent to Plaintiff until this omission was disclosed by ███████████.

Plaintiff's procedural acquiescence was based on incomplete information and cannot be used to support Jane Doe current request to reorder the trials. The discovery alignment serves only to streamline third-party depositions and subpoenas. It did not—and does not—justify consolidation or reordering the trial sequence in distinct, unconsolidated actions.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Jane Doe request to try this action before the Pseudonym Action. Plaintiff does not oppose the portion of Jane Doe motion which seeks to modify and align the discovery deadlines in both actions.

Dated: May 19, 2025

Respectfully submitted,

   /s/ *Kara L. Gorycki*
   Kara L. Gorycki (admitted pro hac vice)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500

Email: kgorycki@nmllplaw.com


-and-


Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

7

# Exhibit 1

FILED UNDER SEAL

# Exhibit 2

FILED UNDER SEAL

# Exhibit 3

FILED UNDER SEAL

# Exhibit 4

| From: | Jared Davidson |
|---|---|
| To: | Kara Gorycki |
| Cc: | Andrew T. Miltenberg; Alex Robertson; Jamie Weiss; Kelly Dagger; Caroline Murley; Cassie Vitrano |
| Subject: | ██████████████████ - Subpoena to Jane Doe |
| Date: | Thursday, November 7, 2024 4:59:55 PM |
| Attachments: | image003.png |
| | TWPD19-01EmailSignature-Master-cropped600dpi-t1_62668cb9-ae55-417a-a7dd-a4920383add1.png |

I guess I was not too memorable.

If you file a Motion to Compel, we will file our response.

Have a good rest of the week and weekend.

Jared



**Jared Davidson**
Partner

504-525-9888 PH
Bio | Website

1555 Poydras Street, Suite 2000 | New Orleans LA 70112

Taylor Wellons Politz & Duhe, LLC

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Thursday, November 7, 2024 3:57 PM
**To:** Jared Davidson <jdavidson@twpdlaw.com>
**Cc:** Andrew T. Miltenberg <AMiltenberg@nmllplaw.com>; Alex Robertson <alex@mrmlaw.com>;
Jamie Weiss <Jamie.Weiss@elliswinters.com>; Kelly Dagger <Kelly.Dagger@elliswinters.com>;
Caroline Murley <cmurley@twpdlaw.com>; Cassie Vitrano <cvitrano@twpdlaw.com>
**Subject:** RE: ██████████████████ - Subpoena to Jane Doe

Jared,

I have never had any conversations with you.
Discovery in the ████ matter is not stayed. If you have authority that says so, please provide citations. The parties in the ████ matter only sought an adjournment of deposition dates. Not to mention that the subpoena was served over a year ago. In the current posture of the case, the subpoena is a proper vehicle. It is also noteworthy that the litigation against Jane Doe is active, as she did not move to dismiss the Complaint in its entirety. She will not be prejudiced by producing the requested information.

As stated in my letter, I am authorized to make a motion to compel.

I am available to discuss this on Monday or Tuesday of next week before we take it up with the Court.

Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Jared Davidson <jdavidson@twpdlaw.com>
**Sent:** Thursday, November 7, 2024 4:50 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>
**Cc:** Andrew T. Miltenberg <AMiltenberg@nmllplaw.com>; Alex Robertson <alex@mrmlaw.com>; Jamie Weiss <Jamie.Weiss@elliswinters.com>; Kelly Dagger <Kelly.Dagger@elliswinters.com>; Caroline Murley <cmurley@twpdlaw.com>; Cassie Vitrano <cvitrano@twpdlaw.com>
**Subject:** RE: [⬛⬛⬛⬛⬛⬛⬛⬛⬛] - Subpoena to Jane Doe

Kara-

Kelly forward me your November 5th letter. Please include me on all future communications.

As you and I have previously discussed, this matter is effectively stayed pending the consolidation. A subpoena is not a proper vehicle if the matter is consolidated but instead a Request for Production directed to Jane Doe  And as stated, we will not do so until we receive an order on the consolidation as we would then need to conduct a Rule 26(f) conference.

We are available to discuss by phone if you'd like.

Thank you.

Jared



**Jared Davidson**
Partner

**504-525-9888 PH**
Bio | Website

**1555 Poydras Street, Suite 2000 | New Orleans LA 70112**

Taylor Wellons Politz & Duhe, LLC

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Tuesday, November 5, 2024 7:14 AM
**To:** Kelly Dagger <Kelly.Dagger@elliswinters.com>
**Cc:** Andrew T. Miltenberg <AMiltenberg@nmllplaw.com>; Alex Robertson <alex@mrmlaw.com>; Jamie Weiss <Jamie.Weiss@elliswinters.com>
**Subject:** ▮▮▮▮▮▮▮▮ - Subpoena to Jane Doe

Kelly,

Please see attached correspondence.

Sincerely,

Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500  •  212.736.2260 fax

Vcard  •  nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

This email, and any attachments thereto, was provided by Taylor Wellons Politz & Duhe, LLC and is intended only for use of the addressee(s) named herein and may contain legally privileged and/or confidential

information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments thereto is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail and via telephone at 504-525-9888 and permanently delete the original and any copy of any e-mail and any printout thereof.

This email, and any attachments thereto, was provided by Taylor Wellons Politz & Duhe, LLC and is intended only for use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments thereto is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail and via telephone at 504-525-9888 and permanently delete the original and any copy of any e-mail and any printout thereof.

Original Filed at Docket No. 118,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe        , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | **SECTION: P (3)** |
| **v.** | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF'S MOTION TO SEAL HIS OPPOSITION**
**TO DEFENDANT'S MOTION TO MODIFY THE SCHEDULING ORDER**

Pursuant to Local Rule 5.6, Plaintiff     John Doe     ("Plaintiff"), by and through his attorneys, respectfully moves the Court to seal his opposition to Defendant Jane Doe's ("Defendant") motion to modify the Scheduling Order. In accordance with Local Rule 5.6, Plaintiff has filed full, unredacted copies of the documents in question (Exhibits 1-5 to the memorandum of law) under seal with this motion. Plaintiff has filed redacted copies of Exhibit 4 and 5 to the docket.

For the reasons set forth in the accompanying memorandum of law, Plaintiff respectfully requests that this Court enter the proposed order included herewith.

Dated: May 19, 2025                     Respectfully Submitted,

_____/s/ *Kara L. Gorycki*_____
Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com


-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe    , <br>        **Plaintiff,** <br><br> v. <br><br> Jane Doe , <br>        **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEAL PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY THE SCHEDULING ORDER

Plaintiff   John Doe   ("Plaintiff") respectfully submits this memorandum of law in support of his motion to seal his opposition to Defendant Jane Doe 's ("Defendant") motion to modify the Scheduling Order (ECF No. 114) pursuant to Local Rule 5.6. Plaintiff has filed redacted copies of his opposition brief and Exhibit 4 to the case docket. Plaintiff endeavored to redact portions of Exhibits 1-3 and determined that it was not possible to do so because the vast majority of information contained in those documents and communications would lead to the identification of Plaintiff in his pending Pseudonym Action.[1] As set forth below, there is good cause to seal the requested documents.

Although there is a presumption of openness with respect to court records, Rule 26 of the Federal Rules of Civil Procedure permit documents to be sealed for "good cause." Fed. R. Civ. P 26; *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 516 (5th Cir. 2022). Local Rule 5.6 requires a party seeking to seal a document to consider "all reasonable alternatives to filing under seal," including "a line-by-line analysis of the documents…to redact only the truly sensitive information." LR 5.6(A), (C).

---

[1] The case caption for the Pseudonym Action is identified in Exhibits 1-5.

Good cause exists for filing Plaintiff's opposition brief (Exhibit 5), and the appended Exhibits 1-4, under seal because the public disclosure of the information contained in those documents will cause Plaintiff to be identified in the pseudonym action:

- The redacted portions of the opposition brief identify the defendant in the Pseudonym Action and facts which would cause an individual reading the brief to determine the identity of the defendant in the pseudonym action. The relief sought, and allegations at issue, in the Pseudonym Action are also redacted to avoid confirmation of Plaintiff's identity through cross-referencing the same. The opposition brief has been filed as Exhibit 5 to this motion.

- **Exhibit 1**: This email correspondence expressly discusses discovery in the Pseudonym Action and, when read together with the redacted version of the brief, would reveal the identity of the parties in the Pseudonym Action if filed in redacted form. For this reason, Plaintiff requests that Exhibit 1 be sealed in its entirety.

- **Exhibit 2**: This email correspondence expressly identifies the case caption and the defendant in the Pseudonym Action. Redacting this information will not remedy this issue because when read together with the redacted version of the brief, the reader could readily determine the parties to the Pseudonym Action. For this reason, Plaintiff requests that Exhibit 2 be sealed in its entirety.

- **Exhibit 3**: This letter from Jane Doe's attorney is replete with information about the Pseudonym Action, the identities of the parties to the action and "Sue Roe." Plaintiff could not devise a way to safely redact this document without risking exposing his identity in connection with the Pseudonym Action. For this reason, Plaintiff requests that Exhibit 3 be sealed in its entirety.

- **Exhibit 4**: The redactions to Exhibit 4 are express references to the case caption in the Pseudonym Action and the identity of the defendant in that case.

Identification of Plaintiff in the Pseudonym Action will violate his court-ordered right to proceed anonymously in that case. In the Pseudonym Action, the Court held that Plaintiff could proceed by pseudonym because his interest in proceeding anonymously outweighed the public interest in open proceedings: i) the action required the disclosure of private, intimate details; ii) courts in this Circuit have repeatedly allowed plaintiffs to proceed by pseudonym in cases like the Pseudonym Action; and iii) the defendant in the Pseudonym Action would suffer no prejudice.

2

The Court also held that "Sue Roe" could be identified by pseudonym. *See* Pseudonym Docket, ECF No. 9. As detailed above, the public filing of the information that Plaintiff seeks to file under seal will cause him to be identified in the Pseudonym Action.

For the above stated reasons, Plaintiff respectfully requests that the Court enter the accompanying proposed order to file Exhibits 1-5 to this motion under seal.

Dated: May 19, 2025

<div align="right">

Respectfully submitted,

   /s/ *Kara L. Gorycki*
   Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

      -and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

</div>

3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , | CIVIL ACTION NO. 2:24-CV-00825 |
| **Plaintiff,** | |
| | SECTION: P (3) |
| v. | |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

**ORDER AND REASONS**

CONSIDERING THE FOREGOING motion, memorandum of law and Exhibits 1-5 in support of Plaintiff    John Doe    's ("Plaintiff") motion to seal his opposition to Defendant Jane Doe ("Defendant") motion to modify the Scheduling Order, the motion is hereby GRANTED.

"Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "And the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (2022) (quoting *Leopold v. United States* (*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*), 964 F.3d 1121, 1123 (D.C. Cir. 2020)) (internal quotations omitted). For this reason, there is a presumption against sealing documents and the party moving to seal "bears the burden to show that the interest in secrecy outweighs the presumption." *Shell Offshore, Inc. v. Eni Petroleum US, LLC*, No. 16-CV-15537, 2017 WL 4226153, at *1 (E.D. La. Sept. 22, 2017) (internal quotations and citations omitted). As such, the Fifth Circuit has instructed that "a judge cannot seal public documents merely because a party asks to add them to the judicial record." *June Med. Servs.*, 22 F.4th at 520. Instead, "the court must undertake a . . . line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* (quoting *Le*, 990 F.3d at 419) (internal quotations omitted).

After careful review, the Court agrees with Plaintiff that it is appropriate to seal the subject documents. In the order granting Plaintiff's motion to proceed anonymously in the Pseudonym Action (the "Pseudonym Order"), the court acknowledged the public's interest in open proceedings, but found that Plaintiff's interest in proceeding anonymously outweighs the public interest. Here, Plaintiff seeks to seal documents containing information about the Pseudonym Action, through which he, the defendant and a nonparty can be identified. The Court does not believe that the public's right of access to this information outweighs the nondisclosure interests identified in the Pseudonym Order. Accordingly, the Court finds Plaintiff has met his burden to seal the subject information.

IT IS HEREBY ORDERED that Plaintiff is permitted to file Exhibits 1-5 under seal.

SIGNED, this _____ day of _____, 2025 in New Orleans, Louisiana

_____
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe    , <br>       **Plaintiff,** <br><br>   **v.** <br><br> Jane Doe <br><br>       **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

## NOTICE OF SUBMISSION

Please take notice that Plaintiff's motion to seal his opposition to Defendant's motion to modify the Scheduling Order will be submitted for decision to the Honorable Judge Darrel James Papillion, United States District Court for the Eastern District of Louisiana, on June 11, 2025.

Dated: May 19, 2025

Respectfully Submitted,

   /s/ *Kara L. Gorycki*
   Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

         -and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

Original Filed at Docket No. 120,
Sealed by Court Order

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA



**Plaintiff,**

**v.**

**Defendant.**

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## <u>ORDER</u>

Before the Court is Plaintiff ███████████ ("Plaintiff") motion to seal his opposition to Defendant ████████ ("Defendant") motion to modify the Scheduling Order. R. Doc. 118. Plaintiff seeks to file redacted versions of his opposition memorandum and accompanying Exhibit 4; and he seeks to file Exhibits 1, 2, and 3 under seal in their entirety.  For the following reasons, the motion (R.  Doc. 118) is hereby GRANTED.

"Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "And the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (2022) (quoting *Leopold v. United States* (*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*), 964 F.3d 1121, 1123 (D.C. Cir. 2020)) (internal quotations omitted). For this reason, there is a presumption against sealing documents and the party moving to seal "bears the burden to show that the interest in secrecy outweighs the presumption." *Shell Offshore, Inc. v. Eni Petroleum US, LLC*, No. 16-CV-15537, 2017 WL 4226153, at *1 (E.D. La. Sept. 22, 2017) (internal quotations and citations omitted). As such, the Fifth Circuit has instructed that "a judge cannot seal public documents merely because a party asks to add them to the judicial record." *June Med. Servs.*, 22 F.4th at 520. Instead, "the court must undertake a . . . line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* (quoting *Le*, 990 F.3d at 419) (internal quotations omitted).

After careful review, the Court agrees with Plaintiff that it is appropriate to seal the subject documents, either in their entirety or via the redactions, as requested. In the order granting Plaintiff's motion to proceed anonymously in the Pseudonym Action (the "Pseudonym Order"), the court acknowledged the public's interest in open proceedings, but found that Plaintiff's interest in proceeding anonymously outweighs the public interest. Here, Plaintiff seeks to seal documents containing information about the Pseudonym Action, through which he, the defendant and a nonparty can be identified. The Court does not believe that the public's right of access to this information outweighs the nondisclosure interests identified in the Pseudonym Order. Accordingly, the Court finds Plaintiff has met his burden to seal the subject information.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's opposition memorandum and Exhibit 4 in support of his opposition memorandum may be filed in the record in their redacted form, and Plaintiff's Exhibits 1, 2, and 3 in support of his opposition memorandum may be filed in the record under seal in their entirety.

New Orleans, Louisiana, this 21st day of May 2025.

_____
DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE

Original Filed at Docket No. 121,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe<br>    **Plaintiff,**<br><br>v.<br><br>Jane Doe<br>    **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**JOINT CONSENT MOTION FOR THE ENTRY OF PROTECTIVE ORDER**

Plaintiff John Doe and Defendant Jane Doe jointly move the Court to enter into the record their proposed Joint/Consent Protective Order (attached as Exhibit 1) regarding the designation and filing of "Confidential" documents in this action.

WHEREFORE, the Parties pray that the Court so-order the Joint/Consent Protective Order in the form attached hereto as Exhibit 1.

Dated: May 22, 2025

Respectfully Submitted,

/s/ *Jared Davidson*

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WILLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (pro hac vice)
Komal Shah (pro hac vice)
Shanelle Van (pro hac vice)
Zora F. Franicevic (pro hac vice)
Ashton E. Woods (pro hac vice)

/s/ *Kara L. Gorycki*

Kara L. Gorycki (pro hac vice)
Andrew T. Miltenberg (pro hac vice)
Stuart Bernstein (pro hac vice)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com

*-and-*

Alex Robertson (La. Bar No. 37285)
MARCELLE ROBERTSON

COVINGTON & BURLING LLP
One CityCenter
850 10th St. NW
Washington, D.C. 20902
Tel: (202) 662-6000
Fax: (202)778-5528
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com

MESTAYER LLC
650 Poydras Street, Suite 2720
New Orleans, Louisiana 70130
(504) 910-6220
alex@mrmlaw.com

*Attorneys for Plaintiff*
John Doe

*Attorneys for Defendant* Jane Doe

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION TO SEAL SELECT PORTIONS OF THE PROPOSED JOINT/CONSENT PROTECTIVE ORDER**

Plaintiff    John Doe    ("Plaintiff") respectfully submits this memorandum of law in support of the consent motion to seal select lines of the parties' proposed Joint/Consent Protective Order ("Amended Protective Order") pursuant to Local Rule 5.6. *See* Sealed Exhibit 1. A redacted copy of the Amended Protective Order has been filed on the public case docket. Plaintiff seeks to seal only those portions of the Protective Order that could lead to his identification in another pending action in which he is proceeding by pseudonym ("Pseudonym Action").[1] As set forth below, there is good cause to seal the requested information.

Prior to filing this motion, Plaintiff conferred with counsel for Defendant Jane Doe Defendant's counsel reviewed all of the papers filed in support of this motion, including the proposed redactions to the Protective Order. Defendant does not object to this motion and does not intend to oppose this motion, but does not join the arguments in support of this motion.

Although there is a presumption of openness with respect to court records, Rule 26 of the Federal Rules of Civil Procedure permits documents to be sealed for "good cause." Fed. R. Civ.

---

[1] The case caption for the Pseudonym Action can be found in Sealed Exhibit 1.

1

P 26; *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 516 (5th Cir. 2022). Local Rule 5.6 requires a party seeking to seal a document to consider "all reasonable alternatives to filing under seal," including "a line-by-line analysis of the documents…to redact only the truly sensitive information." LR 5.6(A), (C).

Good cause exists for filing the Protective Order under seal because the public disclosure of the information contained in the proposed redactions will cause Plaintiff to be identified in the Pseudonym Action. Identification of Plaintiff on the public docket will violate his court-ordered right to proceed anonymously in this case. Pseudonym Docket, ECF No. 9. The court previously held that Plaintiff could proceed by pseudonym in the Pseudonym Action because his interest in proceeding anonymously outweighed the public interest in open proceedings: i) the Pseudonym Action required the disclosure of private, intimate details; ii) courts in this Circuit have repeatedly allowed plaintiffs to proceed by pseudonym in cases like the Pseudonym Action; and iii) Defendant in the Pseudonym Action would suffer no prejudice. *Id*.

Here, the parties have conferred and conducted a line-by-line analysis of the Protective Order to ensure that only truly sensitive information is redacted—the parties' names and the case caption for the separate litigation that is referenced in the Protective Order.

For the above stated reasons, Plaintiff respectfully requests that the Court enter the accompanying proposed order to file Exhibit 1 under seal.

Dated: May 22, 2025

Respectfully submitted,

   /s/ *Kara L. Gorycki*
   Kara L. Gorycki (admitted pro hac vice)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

2

-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe  **Plaintiff,**  v.  Jane Doe  **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**  **SECTION: P (3)**  **JUDGE DARREL JAMES PAPILLION**  **MAG. JUDGE EVA J. DOSSIER** |

<u>**JOINT/CONSENT PROTECTIVE ORDER**</u>

**IT IS HEREBY STIPULATED** by and between Plaintiff,   John Doe   and Defendant, Jane Doe as follows:

**WHEREAS**, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, documents and information produced or exhibited by and among the parties to this action (including but not limited to initial disclosures, responses to discovery requests, depositions, deposition exhibits, and/or materials produced pursuant to a subpoena, release, and/or waiver) falling within one or more of the following categories are deemed Confidential: (a) name or other identifying information of the woman identified in the Complaint as "Sue Roe"; (b) counseling, mental health and medical information concerning any individual; (c) personal identity information, including the phone numbers, email addresses and physical addresses of any individual; (d) income tax returns (including attached schedules and forms), W-2 forms, and 1099 forms; (e) documents and information that fall under the protection of the Family Educational Rights and Privacy Act ("FERPA"), that identify any party, or any student that is not a party to this action, and consist of employment, academic, educational, counseling, health or disciplinary information; (f) personnel, education, or employment records of a person who is not a party to the case; (g) case citations and references in documents or communications through which plaintiff can be identified as the

1

pseudonymous plaintiff in ███████████████████████████████████████ ███████████████████████████████████████ ; and (h) all information that has been designated as Confidential pursuant to any protective order entered in the ███████████ ; and (i) other discovery material that the designating party believes in good faith constitutes, reflects, discloses, or contains personal information of a sensitive nature not generally disclosed to the public.

THEREFORE, an Order protecting such confidential information shall be and is hereby made by this Court on the following terms:

1. This Order shall govern the use, handling and disclosure of all Confidential documents, testimony and/or information produced or given in this action during discovery and included in any pre-trial filings to the case docket in this action.

2. Any party (collectively, "person" or "persons") producing or filing documents in this action that have been deemed Confidential for the reasons set forth in the preamble may designate such documents and the information contained therein as subject to this Order by typing or stamping on the front of the document, or on the portion(s) of the document for which confidential treatment is designated, "Confidential." If the document or information is not in paper form, the producing person shall use other such reasonable means as necessary to clearly identify the documents or information as "Confidential."

   a. If either party objects to the designation of a document as "Confidential," they shall in good faith confer or attempt to confer with the designating person in an effort to resolve the dispute without court action. If the parties are not able to resolve the dispute, the objecting party may challenge the confidentiality designation by motion, which must be filed within thirty (30) days of raising an objection. All persons subject to this order shall

treat the designated document as "Confidential" until the Court has decided the motion. If no motion is filed within thirty (30) days, the challenge to the confidentiality designation is waived.

b. During the time that documents designated as "Confidential" are disclosed in a deposition or hearing, any party shall have the right to exclude, from only the portion of the deposition or hearing during which the "Confidential" information or document is discussed, any person who has not or will not expressly agree to be bound by this Protective Order. Appropriate sections of depositions or hearing transcripts may be designated "Confidential" by any party objecting on the record and stating their intention to so designate the section of the deposition or transcript at the time of the deposition or hearing. Additional portions of the testimony or hearing transcripts may be designated as "Confidential" within thirty (30) days after receipt of the certified transcript. Until the thirty-day period has expired, the entire transcript shall be treated as "Confidential." A party may challenge any confidentiality designation made under this paragraph by motion, which must be filed within thirty (30) days of receipt of a party's final confidentiality designations. If no motion is filed within thirty (30) days, the challenge to the confidentiality designation is waived. All persons subject to this order shall treat as "Confidential" the portion of the transcript containing a confidentiality designation unless and until the Court has issued a decision on any above-described motion. If a party does not serve a designation letter within thirty (30) days of receiving the certified transcript, the entire transcript will be deemed not to contain Confidential information, and any confidentiality legend shall be removed from the transcript.

3

c. The inadvertent disclosure of a document that could properly be designated as "Confidential" shall be without prejudice to the producing person. The producing party shall have a thirty (30) day period from the date of production to designate such documents and information as "Confidential."

d. The parties have agreed that inadvertent disclosure subject to the attorney-client privilege or work product doctrine (despite the parties' reasonable efforts to prescreen such documents and information prior to production) does not waive the attorney-client privilege or work product doctrine if a request in writing for return of such documents or information is made promptly after the producing person learns of its inadvertent production. The receiving person shall return such documents or information subject to protection under the attorney-client privilege or work product doctrine, or destroy electronic copies of same with a confirmation email to opposing counsel, within ten (10) business days of the written notice from the producing person, and confirm such return or destruction in writing to the producing person.

3. Any documents, discovery responses, testimony, materials or information designated or marked "Confidential" may be disclosed by the receiving party only to the following persons; receiving party is hereby enjoined from disclosing and/or disseminating same to any other person except as provided herein:

a. Plaintiff;

b. Defendant;

c. ███████████ and the attorneys representing the ████████ in connection with the ███████████.

d.  The attorneys of record for the parties and others employed by or associated with them to whom the attorneys of record reasonably believe it necessary to show the documents for purposes of this litigation, including without limitation, outside attorneys assisting in the prosecution or defense of this action, employees of the attorneys of record or assisting outside attorneys, legal support service personnel and their employees;

e.  Deponents in this litigation, provided that such deponents are advised that the information is subject to this Protective Order. No documents or information designated as "Confidential" shall be provided to any Deponents until they have read this Order and have agreed to abide by its terms by signing a copy of the attached "Certification." Deponents shall not be allowed to retain a copy of any "Confidential" information, except they may receive exhibits used during their deposition subject to the return and/or destruction provisions contained herein;

f.  Formally retained independent experts and consultants and their employees.  No documents or information designated as "Confidential" shall be provided to any experts or consultants or the employees of either until the expert, consultant or employee has read this Order and has agreed to abide by its terms by singing a copy of the attached "Certification;"

g.  The Court, Court personnel, Court reporters;

h.  Any person sitting as a juror or alternate juror during the trial of this matter; and

i.  Such other persons as are designated by the producing party and agreed to by all other parties in writing or by Court order.  No documents or information designated as "Confidential" shall be provided to any such persons (excluding subpart (d)) until

5

they have read this Order and have agreed to abide by its terms by signing a copy of the attached "Certification."

4.      The parties shall follow the procedures set forth in Local Rule 5.6 when moving to seal documents or communications that are designated as Confidential pursuant to this Order. However:

(a)  documents that contain citations to the ▆▆▆▆▆▆▆ or reference to the ▆▆▆ ▆▆▆▆▆ through which Plaintiff can be identified in that action—and no other Confidential information—may be filed to the public docket in redacted form without making a motion to seal pursuant to Local Rule 5.6.  In this instance, the parties may file an Ex Parte/Consent motion, which cites this Order, along with a Proposed Order directing the Clerk of the Court to file the unredacted documents under seal.

(b) the parties may redact their phone numbers, email addresses and physical addresses from documents filed to the public docket.  Each party shall redact the phone number(s), email address(es) and physical address(es) of the opposing party and any nonparty from documents filed on the public docket.  Unredacted copies of documents which only redact this identifying information need not be filed with the Court.

5.      All documents, transcripts, or other materials subject to this Order, and all information derived therefrom (including, but not limited to, all testimony, deposition or otherwise, that refers, reflects or otherwise discusses any information designated "Confidential" hereunder), shall not be used, directly or indirectly, by any person for any business, commercial, or competitive purposes, other than for the purposes of this litigation, or for purposes of litigation in the separate action titled ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆, and in preparation for trial in either case and in accordance with the

6

provisions of this Order.  To be clear, the parties agree that discovery materials produced in this litigation may also be used for litigation purposes in the ▮▮▮▮▮▮▮▮, without waiver of any objections by any party.

6.      Nothing in this Order shall prevent a party from using at trial, at deposition or any hearing, any information or materials designated "Confidential" provided the parties adhere to the provisions established in this Order.  As part of the meet and confer process required by the Court's Pre-Trial Notice, (R. Doc. 101-1), the parties agree to meet and confer no later than 14 days prior to the scheduled Pre-Trial Conference in an effort to reach an agreement as to the de-designation of Confidential exhibits for use as trial exhibits in open court at trial.  With respect to all filings to the ECF system, the parties agree to abide by this Order, including with respect to pre- and post-trial filings.

7.      This Order has been agreed to by the parties to facilitate discovery and the production of relevant evidence in this action.  Neither the entry of this Order, nor the designation of any information, document, or the like as "Confidential," nor the failure to make such designation, shall constitute evidence with respect to any issue in this action.

8.      Within sixty (60) calendar days after the entry of the final judgment in this Litigation, from which no appeal has been or can be taken, and/or within thirty (60) calendar days of the dismissal of this Litigation due to settlement, all documents, transcripts, or other material (including copies) afforded "Confidential" treatment pursuant to this Order, including any extracts, summaries or compilations taken therefrom, shall be destroyed or returned to the person who produced or furnished them.  This Paragraph will not prevent the party returning the "Confidential" materials from redacting information on copies of the "Confidential" materials which in the good faith judgment of counsel constitutes work product.  Notwithstanding the obligation to return or

destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any "Confidential" information. Unless otherwise agreed upon or ordered, this Order shall remain in force after dismissal or entry of a final judgment not subject to further appeal.

9.      If at any time any party having possession, custody, or control of "Confidential" materials is served with a subpoena or other process by any court, administrative agency, legislative body, or other legal authority purporting to have authority to compel the production of such information, the person to whom the subpoena or other process is directed shall provide written notice to the counsel for the party that had designated the materials as "Confidential" within ten (10) business days of receiving the subpoena or not less than five (5) business days prior to producing the "Confidential" material, whichever is earlier. The party to whom the subpoena or other process is directed must also promptly inform, in writing, the person or entity that caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order and enclose a copy of this Order.

10.      This Order is without prejudice to the right of any party to apply at any time for additional protection, or to amend, modify, or rescind the restrictions of this Order. The party must provide written notice to counsel of record for all parties in the litigation specifying the portion(s) of this Order it seeks to amend, modify, or rescind and any additional provisions it may seek to add to the Order. The written notice must be served five (5) business days in advance of filing any such motion. The parties expressly reserve the right to seek modification, amendment, or rescission of this Order by mutual agreement in writing.

11.      Except pursuant to an order of the Court after a request for the release of "Confidential" documents under this Order, "Confidential" documents may not be disclosed.

8

12. The fact that information or documents have been designated "Confidential" shall in no way prejudice the right of any party to contest the confidential nature of any documents or information, at the time of trial or otherwise.

13. This Protective Order does not limit or waive the right of any party to object to the scope of discovery in this litigation or the admissibility at trial of any proffered evidence, documentary or otherwise.

14. Nothing in this Protective Order shall be construed to prohibit any party from disclosing information and/or documents or things that are in the public domain.

_____

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**

9

## ATTACHMENT A

## CERTIFICATION AND AGREEMENT TO BE BOUND

The undersigned hereby acknowledges the Consent Protective Order attached hereto, understands the terms thereof, and agrees to be bound by those terms.

Name (printed): _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Signature: _____

Date: _____

Original Filed at Docket No. 122,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

John Doe             ,

**Plaintiff,**

v.

Jane Doe

**Defendant.**

CIVIL ACTION NO. 2:24-CV-00825

SECTION: P (3)

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

### PLAINTIFF'S UNOPPOSED MOTION TO SEAL SELECT LINES OF THE PROPOSED JOINT/CONSENT PROTECTIVE ORDER

Plaintiff    John Doe     ("Plaintiff"), by and through his counsel, respectfully moves this Court to seal portions of the proposed Joint/Consent Protective Order ("Protective Order") pursuant to Local Rule 5.6. In accordance with Local Rule 5.6, Plaintiff has filed a full, unredacted copy of the Protective Order under seal with this motion. Plaintiff has also filed a redacted copy of the Protective Order on the case docket. The public filing of the unredacted Protective Order will cause Plaintiff to be identified by name in another pending action in which he is proceeding by pseudonym. Counsel for the parties have conferred and Defendant does not object to the relief requested.

For the reasons set forth in this Motion and Memorandum of Law in Support, Plaintiff respectfully requests that this Court enter the proposed order included herewith.

Dated: May 22, 2025

Respectfully Submitted,

     /s/ *Kara L. Gorycki*
     Kara L. Gorycki (admitted pro hac vice)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

1

-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

**Attorneys for Plaintiff**

2

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , **Plaintiff,** v. Jane Doe , **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** **SECTION: P (3)** **JUDGE DARREL JAMES PAPILLION** **MAG. JUDGE EVA J. DOSSIER** |

## ORDER AND REASONS

CONSIDERING THE FOREGOING motion, memorandum of law and Exhibits 1 in support of the Plaintiff's unopposed motion to seal the proposed Joint/Consent Protective Order under seal, the motion is GRANTED.

"Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "And the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (2022) (quoting *Leopold v. United States* (*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*), 964 F.3d 1121, 1123 (D.C. Cir. 2020)) (internal quotations omitted). For this reason, there is a presumption against sealing documents and the party moving to seal "bears the burden to show that the interest in secrecy outweighs the presumption." *Shell Offshore, Inc. v. Eni Petroleum US, LLC*, No. 16-CV-15537, 2017 WL 4226153, at *1 (E.D. La. Sept. 22, 2017) (internal quotations and citations omitted). As such, the Fifth Circuit has instructed that "a judge cannot seal public documents merely because a party asks to add them to the judicial record." *June Med. Servs.*, 22 F.4th at 520. Instead, "the court must undertake a . . . line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* (quoting *Le*, 990 F.3d at 419) (internal quotations omitted).

After careful review, the Court agrees with the parties that it is appropriate to seal Exhibit 1 to the Plaintiff's sealing motion. In the order deciding Plaintiff's motion to proceed anonymously in the Pseudonym Action (the "Pseudonym Order"), the Court acknowledged the public's interest in open proceedings, but found that Plaintiff's interest in proceeding anonymously in the Pseudonym Action outweighs the public interest. Here, the Plaintiff seeks to seal select portions of Exhibit 1 which identify the case caption in the Pseudonym Action and the defendant in that case. The Court does not believe that the public's right of access to this information outweighs the nondisclosure interests identified in the Pseudonym Order. Accordingly, the Court finds Plaintiff has met his burden to seal the subject information.

IT IS HEREBY ORDERED that Exhibit 1 shall be filed under seal.

SIGNED, this _____ day of _____, 2025 in New Orleans, Louisiana

_____
UNITED STATES MAGISTRATE JUDGE

Original Filed at Docket No. 123,
Sealed by Court Order

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , | CIVIL ACTION NO. 2:24-CV-00825 |
|     Plaintiff, | SECTION: P (3) |
| v. | JUDGE DARREL JAMES PAPILLION |
| Jane Doe | MAG. JUDGE EVA J. DOSSIER |
|     Defendant. | [UNDER SEAL] |

### DEFENDANT'S REPLY IN SUPPORT OF
### MOTION TO MODIFY SCHEDULING ORDER

Mr. John Doe 's Opposition is devoted more to an irrelevant and largely inaccurate recitation of background "facts" than it is to addressing the sole issue before the Court—whether good cause exists to modify the Scheduling Order entered April 3, 2025, DE 100, so that trial in this case precedes trial in Mr. John Doe 's separate lawsuit against

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████[1] Jane Doe

does not burden the Court by correcting all the Opposition's misstatements and instead focuses on the merits of the question before the Court.

At the outset, however, Jane Doe cannot let pass Mr. John Doe 's misstatements concerning the response to the subpoena served on Jane Doe in the ████████

---

[1] Given that Mr. John Doe (and █████) consented to Jane Doe 's request to align the discovery deadlines in this case with those in the ██████████, Jane Doe does not address that request in this Reply.

Simply put, Mr. John Doe has it backwards: he, not Jane Doe, is responsible for the delay. On September 25, 2023, Jane Doe timely objected to the subpoena for two primary reasons: (i) it sought information from a non-party (Jane Doe) in the possession of a party (███), *see* Fed. R. Civ. P. 45(d)(1); and (ii) it was an improper attempt to circumvent the stay then in effect in this case, DE 14. After initial correspondence, Mr. John Doe did not respond to Jane Doe's objections for *a year*, until September 23, 2024. Exhibit A, Declaration of Kelly Dagger ¶¶ 7–8. When Jane Doe reiterated her objections in September and November 2024, Mr. John Doe did not seek judicial resolution of the dispute and instead resumed his silence. *Id.* at ¶¶ 8, 10–13.

Mr. John Doe's suggestion that Jane Doe is withholding documents responsive to his requests in this litigation is equally misleading: Jane Doe is collecting documents responsive to Mr. John Doe's discovery requests and will continue to produce them on a rolling basis (as Mr. John Doe is doing in response to Jane Doe's requests). Jane Doe has not produced the referenced ███ file because she understands that ███ already produced the same file to Mr. John Doe in the ██████, and it would make no sense to produce it again given the coordination of discovery in the two actions.[2]

More to the point, neither of the two arguments advanced by Mr. John Doe on the trial order issue presented by the motion is persuasive.

---

[2] Jane Doe is also puzzled by Mr. John Doe's discussion in the Opposition of the Family Educational Rights and Privacy Act ("FERPA") and in particular the suggestion that Jane Doe was a party to a FERPA violation. Setting aside the validity of Mr. John Doe's assertions, Jane Doe is not an educational institution, and no issues as to FERPA are pled in the Complaint or otherwise presented in this litigation.

First, Mr.  John Doe  makes the hollow suggestion that Jane Doe can through a motion *in limine* avoid the risk of jury confusion and resulting unfair prejudice posed by presentation of evidence in this case of a verdict for Mr.  John Doe  in the ███████ ███████. Not only does this proposal merely kick the can down the road, but Mr.  John Doe  is notably silent on whether he would oppose such a motion even though he concedes, as he must, that the issues in the ██████████ do not bear on Jane Doe 's credibility.

Second, Mr.  John Doe  makes the remarkable argument that pushing back the trial date in the ██████████ he filed in April 2023 by *three weeks* would unfairly prejudice his ability to get the allegedly "time-sensitive" injunctive relief that he seeks in that case. Mr.  John Doe  offers no facts to support the urgency of the relief he seeks nor does he provide any reasons why relief, if granted, in June 2026 would be less prejudicial than relief in July 2026. Mr.  John Doe  also ignores the desire of Jane Doe to end a litigation that has been hanging over her head since December 2022; Mr.  John Doe 's interest in relief against ██████ does not outweigh  Jane Doe  interest in prompt resolution of Mr.  John Doe 's baseless claims against her.[3]

As set forth in our opening memorandum, the current order of the trials—with the ████████ trial predating the [Jane Doe] trial—is merely the result of the random setting of the

---

[3] Mr.  John Doe  inaccurately attributes delays in this case to Jane Doe. Most notably, Mr.  John Doe  delayed this litigation by nine months when he unsuccessfully appealed to the Fourth Circuit the Eastern District of North Carolina's denial of his motion to proceed under a pseudonym in this litigation.  DE 12–14, 22.

3

scheduling conference for the ████████████ days before the scheduling conference for this case (indeed, the conferences were originally scheduled the same day, but the case manager postponed the conference in this case for reasons unrelated to either case). It does not reflect a judgment by anyone that the ████████████ should go first—or that relief in one case is more important than the other.

WHEREFORE, for the foregoing reasons and those set forth in her opening memorandum, Defendant Jane Doe prays that her motion to modify the scheduling order be granted as prayed.

Respectfully Submitted,

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com

4

svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on all counsel of record on this 23rd day of May, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

Original Filed at Docket No. 124,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , | CIVIL ACTION NO. 2:24-CV-00825 |
| Plaintiff, | SECTION: P (3) |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | **MAG. JUDGE EVA J. DOSSIER** |
| Defendant. | **UNDER SEAL** |

## DEFENDANT S REPLY IN SUPPORT OF
## MOTION TO MODIFY SCHEDULING ORDER

Mr. John Doe 's Opposition is devoted more to an irrelevant and largely inaccurate recitation of background "facts" than it is to addressing the sole issue before the Court whether good cause e ists to modify the Scheduling Order entered April 3, 2025, DE 100, so that trial in this case precedes trial in Mr. John Doe 's separate lawsuit against ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████[1] Jane Doe does not burden the Court by correcting all the Opposition's misstatements and instead focuses on the merits of the question before the Court.

At the outset, however, Jane Doe cannot let pass Mr. John Doe n's misstatements concerning the response to the subpoena served on Jane Doe in the ████████████

---

[1] iven that Mr. John Doe (and █████) consented to Jane Doe request to align the discovery deadlines in this case with those in the ██████████, Jane Doe does not address that request in this Reply.

Simply put, Mr. John Doe has it backwards: he, not Jane Doe, is responsible for the delay. On September 25, 2023, Jane Doe timely objected to the subpoena for two primary reasons: (i) it sought information from a non-party (Jane Doe) in the possession of a party (████), *see* Fed. R. Civ. P. 45(d)(1); and (ii) it was an improper attempt to circumvent the stay then in effect in this case, DE 14. After initial correspondence, Mr. John Doe did not respond to Jane Doe objections for *a year*, until September 23, 2024. E hibit A, Declaration of elly Dagger 7 8. When Jane Doe reiterated her objections in September and November 2024, Mr. John Doe did not seek judicial resolution of the dispute and instead resumed his silence. *Id.* at 8, 10 13.

Mr. John Doe 's suggestion that Jane Doe is withholding documents responsive to his requests in this litigation is equally misleading: Jane Doe is collecting documents responsive to Mr. John Doe 's discovery requests and will continue to produce them on a rolling basis (as Mr. John Doe is doing in response to Jane Doe requests). Jane Doe has not produced the referenced ████ file because she understands that ████ already produced the same file to Mr. John Doe in the ████████, and it would make no sense to produce it again given the coordination of discovery in the two actions.[2]

More to the point, neither of the two arguments advanced by Mr. John Doe on the trial order issue presented by the motion is persuasive.

---

[2] Jane Doe is also pu led by Mr. John Doe 's discussion in the Opposition of the Family Educational Rights and Privacy Act ("FERPA") and in particular the suggestion that Jane Doe was a party to a FERPA violation. Setting aside the validity of Mr. John Doe 's assertions, Jane Doe is not an educational institution, and no issues as to FERPA are pled in the Complaint or otherwise presented in this litigation.

2

First, Mr. John Doe makes the hollow suggestion that Jane Doe can through a motion *in li ine* avoid the risk of jury confusion and resulting unfair prejudice posed by presentation of evidence in this case of a verdict for Mr. John Doe in the ████ ███████. Not only does this proposal merely kick the can down the road, but Mr. John Doe is notably silent on whether he would oppose such a motion even though he concedes, as he must, that the issues in the ████████ do not bear on Jane Doe credibility.

Second, Mr. John Doe makes the remarkable argument that pushing back the trial date in the ████████ he filed in April 2023 by *three ee s* would unfairly prejudice his ability to get the allegedly "time-sensitive" injunctive relief that he seeks in that case. Mr. John Doe offers no facts to support the urgency of the relief he seeks nor does he provide any reasons why relief, if granted, in June 2026 would be less prejudicial than relief in July 2026. Mr. John Doe also ignores the desire of Jane Doe to end a litigation that has been hanging over her head since December 2022; Mr. John Doe interest in relief against ████ does not outweigh Jane Doe interest in prompt resolution of Mr. John Doe baseless claims against her.[3]

As set forth in our opening memorandum, the current order of the trials with the ████ trial predating the [Jane Doe] trial is merely the result of the random setting of the

---

[3] Mr. John Doe inaccurately attributes delays in this case to Jane Doe. Most notably, Mr. John Doe delayed this litigation by nine months when he unsuccessfully appealed to the Fourth Circuit the Eastern District of North Carolina's denial of his motion to proceed under a pseudonym in this litigation. DE 12 14, 22.

scheduling conference for the ▮▮▮▮▮▮▮▮ days before the scheduling conference for this case (indeed, the conferences were originally scheduled the same day, but the case manager postponed the conference in this case for reasons unrelated to either case). It does not reflect a judgment by anyone that the ▮▮▮▮▮▮▮▮ should go first or that relief in one case is more important than the other.

WHEREFORE, for the foregoing reasons and those set forth in her opening memorandum, Defendant Jane Doe prays that her motion to modify the scheduling order be granted as prayed.

Respectfully Submitted,

*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil ▮. Roman (admitted *pro hac vice*)
 ▮omal Shah (admitted *pro hac vice*)
Shanelle ▮an (admitted *pro hac vice*)
Zora F. Franicevic ▮ (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
CO▮IN▮TON & BURLIN▮ LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fa▮: (202) 778-5869
nroman@cov.com
kshah@cov.com

4

svan@cov.com
franicevic@cov.com
awoods@cov.com
New York Office


*Attorneys for Defendant* Jane Doe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on all counsel of record on this 23rd day of May, 2025.

<div align="right">

*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

</div>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe <br><br> Defendant. | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

## DECLARATION OF KELLY MARGOLIS DAGGER

1.     I am a partner in the law firm of Ellis & Winters LLP in Raleigh, North Carolina. I represented Defendant Jane Doe in the above-captioned action from February 2023 (when the action was pending in my home district, the Eastern District of North Carolina) until February 2025.

2.     In September 2023, I accepted service of a document subpoena directed to Jane Doe from Plaintiff    John Doe    . The subpoena sought documents in Mr.   John Doe separate case against ▉▉▉▉▉▉▉. A copy of the subpoena is already on file at DE 30-2.

3.     On Jane Doe behalf, I timely served objections to the subpoena on September 25, 2023.  Among other objections, Jane Doe objected that the subpoena requested documents in the possession of ▉▉ and therefore were not properly sought from Jane Doe who is not a party to the ▉▉ case, and on the basis that the subpoena was an improper attempt to circumvent the discovery stay then in effect in this case.  In the objections, I offered to meet and confer about the objections.

4.      On October 6, 2023, I received a letter from Kara Gorycki, counsel for Mr. John Doe in both the case against Jane Doe and the [ ] case, responding to and contesting the propriety of Jane Doe objections.

5.      On October 13, 2023, I replied to Ms. Gorycki by letter. In the letter, I reasserted Jane Doe objections, addressed the points in Ms. Gorycki's letter, and reminded Ms. Gorycki that my offer to meet and confer about the objections remained open.

6.      Neither Ms. Gorycki nor any other counsel for Mr. John Doe followed up on my offer to meet and confer or otherwise responded to my October 13, 2023 letter until nearly one year later.

7.      On September 23, 2024, Ms. Gorycki emailed me to schedule a call about this case. We agreed to talk on September 26, 2024. During our call on September 26, 2024, approximately one year after I first offered to meet and confer about the document subpoena, Ms. Gorycki informed me that she was working to narrow the subpoena.

8.      Also on that call, Ms. Gorycki also discussed initiating discovery in Mr. John Doe case against Jane Doe, which I indicated could not begin until the parties conducted a Rule 26(f) conference, which had not yet occurred.

9.      On November 5, 2024, I received a letter from Ms. Gorycki withdrawing and narrowing some requests in the subpoena, but refusing to withdraw, narrow, or otherwise modify ten requests. In her letter, Ms. Gorycki stated that she was authorized to move to compel if Jane Doe did not produce documents in response to the subpoena.

10.      On November 7, 2024, Jared Davidson, co-counsel for Jane Doe, replied to Ms. Gorycki by email informing her that Jane Doe n would not respond to Mr. John Doe subpoena until the parties conducted a Rule 26(f) conference.

11.     That same day, Ms. Gorycki replied to Mr. Davidson's email stating that she was authorized to move to compel.

12.     Mr. Davidson responded by email that Jane Doe would respond to any motion to compel filed by Mr. John Doe .

13.     Despite the threats to do so, as far as I am aware, Mr. John Doe never moved to compel Jane Doe to respond to the subpoena.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of May, 2025 in Raleigh, North Carolina.

Kelly Margolis Dagger

Original Filed at Docket No. 125,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe ,<br>**Plaintiff,**<br><br>v.<br><br>Jane Doe ,<br>**Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT S MOTION TO SEAL REPLY IN**
**SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jane Doe , who seeks an Order from this Court sealing her Reply in Support of the Motion to Modify Scheduling Order pursuant to Local Rule 5.6. Pursuant to Local Rule 5.6, Jane Doe has filed a full, unredacted copy of the Reply in Support of the Motion to Modify Scheduling Order and the appended exhibit under seal with this motion. For the reasons set forth in the accompanying Memorandum in Support, Jane Doe respectfully requests that this Court enter the proposed order included herewith.

**WHEREFORE**, Defendant, Jane Doe , prays for an Order from this Court sealing her Reply in Support of the Motion to Modify Scheduling Order.

/s/    *Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)

Zora F. Franicevic\* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
\*New York Office


*Attorneys for Defendant* Jane Doe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on the 23rd of May, 2025.

<div align="right">

*/s/ Jared A. Davidson*      
TAYLOR, WELLONS, POLITZ & DUHE, LLC

</div>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **,** **Plaintiff,** **v.** Jane Doe **Defendant.** | CIVIL ACTION NO. 2:24-CV-00825 SECTION: P (3) **JUDGE DARREL JAMES PAPILLION** **MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT S MEMORANDUM IN**
**SUPPORT OF MOTION TO SEAL REPLY**

Defendant Jane Doe  respectfully requests to file under seal her Reply in Support of the
Motion to Modify the Scheduling Order in this litigation because it references a separate litigation
in which Plaintiff    John Doe    is proceeding under a pseudonym ( Pseudonymous
Litigation ).

When appropriate, courts may order that case documents be filed under seal if the interests
favoring nondisclosure in a case outweigh the presumption in favor of the public s common-law
right of access to judicial records.    *i on v.   arner Co    nications*, 435 U.S. 589, 597 98
(1978).  To determine whether a judicial record should be sealed, the Court  must undertake a
case-by-case, document-by-document, line-by-line balancing of the public s common law right of
access against the interests favoring nondisclosure.    *ealed Applicant v.  ealed Appellee*, No. 22-
50707, 2024 WL 980494, at \*2 (5th Cir. Mar. 7, 2024).  The duty to balance interests and carefully
review a sealing request applies even when the parties jointly desire that the matter should be
sealed. *C.  . v. Defendant* , No. 2:24-CV-01615, 2024 WL 4940551, at \*1 (W.D. La. Nov. 26,
2024).

Here, Jane Doe requests that the Court exercise its supervisory power to seal her reply in support of the motion to modify the scheduling order and the appended exhibit because Jane Doe agreed in a stipulation entered by the Court not to refer to the Pseudonymous Litigation by name or case number. *See* R. Docs. 102, 108. Jane Doe recognizes that under Local Rule 5.6(d), reference to a stipulation or protective order is not sufficient to establish the necessity of sealing any document, but nonetheless seeks this sealing to honor her obligations under her agreement with Mr. John Doe. To balance her obligations under the parties' agreement with the right of the public to access material filed with the Court, Jane Doe requests that only references to the Pseudonymous Litigation are redacted in the Reply in Support of the Motion to Modify the Scheduling Order and the appended exhibit (Exhibit A). This limitation is appropriate given that the Fourth Circuit rejected Mr. John Doe's attempt to proceed under a pseudonym in this litigation against Jane Doe. *John Doe v. Jane Doe*, 85 F.4th 206 (4th Cir. 2023) R. Doc. 22.

Jane Doe seeks to have the Reply in Support of the Motion to Modify the Scheduling Order and the appended exhibit maintained under seal so long as the agreement not to refer to the Pseudonymous Litigation entered by the Court, R. Docs. 102, 108, remains in effect.

For the foregoing reasons, Jane Doe requests that the Court grant her motion to seal.

Respectfully Submitted,

*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

2

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on this 23rd day of May, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **,** **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| Jane Doe **,** **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

### ORDER

Considering the preceding Motion to File Pleading Under Seal filed by Defendant [Jane Doe]

This Court finds that good cause exists and it is appropriate to seal Jane Doe Reply in Support of the Motion to Modify Scheduling Order. When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a particular case outweigh the presumption in favor of the public s common-law right of access to judicial records. *i on v. arner Co nications*, 435 U.S. 589, 597 98 (1978).

In light of the stipulation entered by the Court in which the parties agreed not to refer to the Pseudonymous Litigation by name or case number,

**IT IS ORDERED** that Defendant Jane Doe motion is hereby **GRANTED** and her Reply in Support of the Motion to Modify Scheduling Order shall be filed into the record under seal.

New Orleans, Louisiana, this         day of             , 2025.

_____
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 128,
Sealed by Court Order

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

███████████, 

**Plaintiff,**

v.

████, 

**Defendant.**

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## ORDER

Before the Court is the Motion to File Pleading Under Seal filed by Defendant ████ (R. Doc. 125). Defendant ████ seeks leave to file a redacted version of her Reply in Support of her Motion to Modify Scheduling Order, in light of the stipulation entered by the Court in which the parties agreed not to refer to the Pseudonymous Litigation by name or case number.

When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a particular case outweigh the presumption in favor of the public s common-law right of access to judicial records. *i on v. arner Co nications*, 435 U.S. 589, 597 98 (1978). This Court finds that good cause exists and it is appropriate to seal ████ ████ Reply in Support of the Motion to Modify Scheduling Order. And having conducted a document-by-document, line-by-line analysis of the redactions ████ seeks, the Court finds the redactions are necessary and congruent to the need. Accordingly,

**IT IS ORDERED** that Defendant ████ motion is hereby **GRANTED**, and her Reply in Support of the Motion to Modify Scheduling Order may be filed into the record in its redacted form.

New Orleans, Louisiana, this 27th day of May 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

| Original Filed at Docket No. 129, |
| Sealed by Court Order |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe ,<br>**Plaintiff,**<br><br>v.<br><br>Jane Doe ,<br>**Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO FILE SUR-REPLY**
**IN FURTHER SUPPORT OF OPPOSITION TO DEFENDANT'S**
**MOTION TO MODIFY SCHEDULING ORDER**

Plaintiff    John Doe     ("Plaintiff"), by and through his attorneys, respectfully moves the

Court for leave to file a sur-reply which: i) responds to incorrect factual assertions raised for the

first time in Defendant's reply in support of her motion to modify the Scheduling Order (ECF No.

124) and, more specifically, the Declaration of Kelly Margolis Dagger (ECF No. 124-1); and ii)

provides new information to the Court—obtained on May 22, 2025—regarding Jane Doe receipt

of documents from Tulane University. The proposed sur-reply declaration is attached hereto as

Exhibit 1.

Plaintiff respectfully requests that the Court enter the proposed order included herewith.

Dated: May 28, 2025                    Respectfully Submitted,

                                          /s/ *Kara L. Gorycki*
                                       Kara L. Gorycki (admitted pro hac vice)
                                       Nesenoff & Miltenberg, LLP
                                       363 Seventh Avenue, Fifth Floor
                                       New York, New York 10001
                                       Telephone:(212)736-4500
                                       Email: kgorycki@nmllplaw.com


                                          -and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>   **Plaintiff,**<br><br>v.<br><br>Jane Doe<br>   **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**DECLARATION OF KARA L. GORYCKI IN SUPPORT OF
PLAINTIFF'S SUR-REPLY**

**KARA L. GORYCKI,** hereby declares, subject to the pains and penalties of perjury to 28 U.S.C. § 1746:

1.   I am a Partner at the law firm of Nesenoff & Miltenberg, LLP, attorneys for Plaintiff John Doe ("Plaintiff") in the above-captioned litigation. I submit this declaration in support of Plaintiff's sur-reply to Defendant Jane Doe Reply In Support of Motion to Modify Scheduling Order and, in particular, the Declaration of Kelly Margolis Dagger dated May 23, 2025.

2.   Ms. Dagger's declaration is patently false in its assertion that Plaintiff's counsel failed to respond to her letter dated October 13, 2023 for over one year, omitting several communications between counsel for the parties.

3.   On April 12, 2024, after this case was transferred to this District, Jared Davidson called my co-counsel Alex Robertson and informed him that his firm was representing Jane Doe and would be moving to consolidate this action with the Pseudonym Action. Mr. Robertson subsequently exchanged emails with Mr. Davidson in which we noted Plaintiff's opposition to the consolidation motion.

4.   On April 15, 2024, I was admitted to this case *pro hac vice.*

1

5. On April 23, 2024, I emailed Ms. Dagger and asked if she was still Jane Doe counsel. On the same day, she confirmed that she, Mr. Davidson and Ms. Murley were representing Jane Doe I relayed this information to my colleague, Kim Courtney, who was handling discovery issues relating to the subpoena while I was preparing for a June 2024 trial in another case.

6. On May 21, 2024, Ms. Courtney emailed a letter to Ms. Dagger which addressed the issues raised in Ms. Dagger's October 13, 2023 letter, demanded a response to the subpoena and requested a meet and confer. I was copied on this communication.

7. On May 22, 2024, Ms. Dagger emailed Ms. Courtney and requested that counsel for the defendant in the Pseudonym Action be included in discussions about Jane Doe subpoena response. I was copied on this communication.

8. On May 23, 2024, Ms. Courtney asked Ms. Dagger for clarification of certain issues and declined to include counsel for the defendant in the Pseudonym Action on any meet and confer call because the cases had not been consolidated. I was copied on this communication.

9. On May 28, 2024, Mr. Davidson called Ms. Courtney but did not reach her. Ms. Courtney emailed Mr. Davidson and informed him that she was in the process of arranging a meet and confer with all of Jane Doe counsel. I was copied on this communication.

10. On the same day, Mr. Davidson informed Ms. Courtney by email, copying me, that his firm was taking over for Jane Doe 'other counsel." Mr. Davidson stated that he wanted to speak with Ms. Courtney about the impact of the consolidation motion on the subpoena before she scheduled a meet and confer.

11. On May 30, 2024, Ms. Courtney informed Mr. Davidson by email, copying me, that we did not believe the consolidation motion had any impact on Jane Doe obligation to respond to the subpoena.

2

12.     On May 31, 2024, Mr. Davidson emailed Mr. Courtney, copying me, asserting that "if the cases are consolidated a subpoena is not a proper discovery method." He further stated, "That said, we are happy to conduct a 37.1 conference if you think it is necessary."

13.     At this point, it was clear that Jane Doe attorneys did not intend to respond to the subpoena while the consolidation motion was pending.

14.     As set forth in Exhibit 4 to Plaintiff's opposition to Jane Doe motion to modify the scheduling order (ECF No. 117-4), Mr. Davidson reiterated the same position when I resumed efforts to obtain a response to the subpoena in November 2024.

15.     On May 22, 2025, I was informed by counsel for Tulane University that the information provided to me about Jane Doe receipt of recordings from the University in connection with this action was incorrect. *See* ECF No. 117, at 5. On May 10, 2023, Jane Doe received 1,249 pages of documents from the University. The recordings were restricted to viewing only.

Executed on the 27th day of May 2025.

_Kara L. Gorycki_
Kara L. Gorycki

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** <br><br> v. <br><br> Jane Doe , <br> **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

## NOTICE OF SUBMISSION

Please take notice that Plaintiff's motion for leave to file a sur-reply will be submitted for decision to the Honorable Judge Darrel James Papillion, United States District Court for the Eastern District of Louisiana, on June 18, 2025.

Dated: May 28, 2025

Respectfully Submitted,

    /s/ *Kara L. Gorycki*
    Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

                    -and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe    , <br>         **Plaintiff,** <br><br>   **v.** <br><br> Jane Doe , <br>         **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

## ORDER

CONSIDERING THE FOREGOING motion by Plaintiff   John Doe   for leave to file a sur-reply which i) responds to factual assertions raised for the first time in Defendant Jane Doe reply in further support of her motion to modify the scheduling order (R. Doc. 124); and ii) provides new information to the Court,

IT IS HEREBY ORDERED that the motion is granted and Exhibit 1 to Plaintiff's motion is accepted and will be considered by the Court as part of the briefing submitted in connection with Defendant's motion to modify the Scheduling Order.

SIGNED, this _____ day of _____, 2025 in New Orleans, Louisiana

_____
DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE

Original Filed at Docket No. 130,
Sealed by Court Order

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

████████████,

                            **Plaintiff,**

            **v.**

████████

                            **Defendant.**

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## ORDER AND REASONS

CONSIDERING THE FOREGOING motion, memorandum of law and Exhibits 1 in support of the Plaintiff's unopposed motion to seal the proposed Joint/Consent Protective Order under seal, the motion is GRANTED.

"Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "And the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (2022) (quoting *Leopold v. United States* (*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*), 964 F.3d 1121, 1123 (D.C. Cir. 2020)) (internal quotations omitted). For this reason, there is a presumption against sealing documents and the party moving to seal "bears the burden to show that the interest in secrecy outweighs the presumption." *Shell Offshore, Inc. v. Eni Petroleum US, LLC*, No. 16-CV-15537, 2017 WL 4226153, at *1 (E.D. La. Sept. 22, 2017) (internal quotations and citations omitted). As such, the Fifth Circuit has instructed that "a judge cannot seal public documents merely because a party asks to add them to the judicial record." *June Med. Servs.*, 22 F.4th at 520. Instead, "the court must undertake a . . . line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* (quoting *Le*, 990 F.3d at 419) (internal quotations omitted).

After careful review, the Court agrees with the parties that it is appropriate to seal Exhibit 1 to the Plaintiff's sealing motion. In the order deciding Plaintiff's motion to proceed anonymously in the Pseudonym Action (the "Pseudonym Order"), the Court acknowledged the public's interest in open proceedings, but found that Plaintiff's interest in proceeding anonymously in the Pseudonym Action outweighs the public interest. Here, the Plaintiff seeks to seal select portions of Exhibit 1 which identify the case caption in the Pseudonym Action and the defendant in that case. The Court does not believe that the public's right of access to this information outweighs the nondisclosure interests identified in the Pseudonym Order. Accordingly, the Court finds Plaintiff has met his burden to seal the subject information.

IT IS HEREBY ORDERED that Exhibit 1 shall be filed under seal.

SIGNED, this ___28th___ day of __May__, 2025 in New Orleans, Louisiana

_____
UNITED STATES MAGISTRATE JUDGE

Original Filed at Docket No. 131,
Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮ **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| ▮▮▮▮▮▮ | **JUDGE DARREL JAMES PAPILLION** |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

<u>**JOINT/CONSENT PROTECTIVE ORDER**</u>

**IT IS HEREBY STIPULATED** by and between Plaintiff, ▮▮▮▮▮▮▮▮ and Defendant, ▮▮▮▮, as follows:

**WHEREAS**, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, documents and information produced or exhibited by and among the parties to this action (including but not limited to initial disclosures, responses to discovery requests, depositions, deposition exhibits, and/or materials produced pursuant to a subpoena, release, and/or waiver) falling within one or more of the following categories are deemed Confidential: (a) name or other identifying information of the woman identified in the Complaint as "Sue Roe"; (b) counseling, mental health and medical information concerning any individual; (c) personal identity information, including the phone numbers, email addresses and physical addresses of any individual; (d) income tax returns (including attached schedules and forms), W-2 forms, and 1099 forms; (e) documents and information that fall under the protection of the Family Educational Rights and Privacy Act ("FERPA"), that identify any party, or any student that is not a party to this action, and consist of employment, academic, educational, counseling, health or disciplinary information; (f) personnel, education, or employment records of a person who is not a party to the case; (g) case citations and references in documents or communications through which plaintiff can be identified as the

1

pseudonymous plaintiff in ███████████████████████████████████

██████████████████████████████████; and (h) all information that has been

designated as Confidential pursuant to any protective order entered in the ███████████; and

(i) other discovery material that the designating party believes in good faith constitutes, reflects,

discloses, or contains personal information of a sensitive nature not generally disclosed to the

public.

THEREFORE, an Order protecting such confidential information shall be and is hereby

made by this Court on the following terms:

1. This Order shall govern the use, handling and disclosure of all Confidential

documents, testimony and/or information produced or given in this action during discovery and

included in any pre-trial filings to the case docket in this action.

2. Any party (collectively, "person" or "persons") producing or filing documents in

this action that have been deemed Confidential for the reasons set forth in the preamble may

designate such documents and the information contained therein as subject to this Order by typing

or stamping on the front of the document, or on the portion(s) of the document for which

confidential treatment is designated, "Confidential." If the document or information is not in paper

form, the producing person shall use other such reasonable means as necessary to clearly identify

the documents or information as "Confidential."

    a. If either party objects to the designation of a document as "Confidential," they shall in

        good faith confer or attempt to confer with the designating person in an effort to resolve

        the dispute without court action. If the parties are not able to resolve the dispute, the

        objecting party may challenge the confidentiality designation by motion, which must be

        filed within thirty (30) days of raising an objection. All persons subject to this order shall

treat the designated document as "Confidential" until the Court has decided the motion. If no motion is filed within thirty (30) days, the challenge to the confidentiality designation is waived.

b. During the time that documents designated as "Confidential" are disclosed in a deposition or hearing, any party shall have the right to exclude, from only the portion of the deposition or hearing during which the "Confidential" information or document is discussed, any person who has not or will not expressly agree to be bound by this Protective Order. Appropriate sections of depositions or hearing transcripts may be designated "Confidential" by any party objecting on the record and stating their intention to so designate the section of the deposition or transcript at the time of the deposition or hearing. Additional portions of the testimony or hearing transcripts may be designated as "Confidential" within thirty (30) days after receipt of the certified transcript. Until the thirty-day period has expired, the entire transcript shall be treated as "Confidential." A party may challenge any confidentiality designation made under this paragraph by motion, which must be filed within thirty (30) days of receipt of a party's final confidentiality designations. If no motion is filed within thirty (30) days, the challenge to the confidentiality designation is waived. All persons subject to this order shall treat as "Confidential" the portion of the transcript containing a confidentiality designation unless and until the Court has issued a decision on any above-described motion. If a party does not serve a designation letter within thirty (30) days of receiving the certified transcript, the entire transcript will be deemed not to contain Confidential information, and any confidentiality legend shall be removed from the transcript.

3

c. The inadvertent disclosure of a document that could properly be designated as "Confidential" shall be without prejudice to the producing person. The producing party shall have a thirty (30) day period from the date of production to designate such documents and information as "Confidential."

d. The parties have agreed that inadvertent disclosure subject to the attorney-client privilege or work product doctrine (despite the parties' reasonable efforts to prescreen such documents and information prior to production) does not waive the attorney-client privilege or work product doctrine if a request in writing for return of such documents or information is made promptly after the producing person learns of its inadvertent production. The receiving person shall return such documents or information subject to protection under the attorney-client privilege or work product doctrine, or destroy electronic copies of same with a confirmation email to opposing counsel, within ten (10) business days of the written notice from the producing person, and confirm such return or destruction in writing to the producing person.

3. Any documents, discovery responses, testimony, materials or information designated or marked "Confidential" may be disclosed by the receiving party only to the following persons; receiving party is hereby enjoined from disclosing and/or disseminating same to any other person except as provided herein:

a. Plaintiff;

b. Defendant;

c. ███████████ and the attorneys representing the ███████ in connection with the ██████████.

4

d. The attorneys of record for the parties and others employed by or associated with them to whom the attorneys of record reasonably believe it necessary to show the documents for purposes of this litigation, including without limitation, outside attorneys assisting in the prosecution or defense of this action, employees of the attorneys of record or assisting outside attorneys, legal support service personnel and their employees;

e. Deponents in this litigation, provided that such deponents are advised that the information is subject to this Protective Order. No documents or information designated as "Confidential" shall be provided to any Deponents until they have read this Order and have agreed to abide by its terms by signing a copy of the attached "Certification." Deponents shall not be allowed to retain a copy of any "Confidential" information, except they may receive exhibits used during their deposition subject to the return and/or destruction provisions contained herein;

f. Formally retained independent experts and consultants and their employees. No documents or information designated as "Confidential" shall be provided to any experts or consultants or the employees of either until the expert, consultant or employee has read this Order and has agreed to abide by its terms by singing a copy of the attached "Certification;"

g. The Court, Court personnel, Court reporters;

h. Any person sitting as a juror or alternate juror during the trial of this matter; and

i. Such other persons as are designated by the producing party and agreed to by all other parties in writing or by Court order. No documents or information designated as "Confidential" shall be provided to any such persons (excluding subpart (d)) until

5

they have read this Order and have agreed to abide by its terms by signing a copy of the attached "Certification."

4. The parties shall follow the procedures set forth in Local Rule 5.6 when moving to seal documents or communications that are designated as Confidential pursuant to this Order. However:

(a) documents that contain citations to the ███████████ or reference to the ██████ ████████ through which Plaintiff can be identified in that action—and no other Confidential information—may be filed to the public docket in redacted form without making a motion to seal pursuant to Local Rule 5.6. In this instance, the parties may file an Ex Parte/Consent motion, which cites this Order, along with a Proposed Order directing the Clerk of the Court to file the unredacted documents under seal.

(b) the parties may redact their phone numbers, email addresses and physical addresses from documents filed to the public docket. Each party shall redact the phone number(s), email address(es) and physical address(es) of the opposing party and any nonparty from documents filed on the public docket. Unredacted copies of documents which only redact this identifying information need not be filed with the Court.

5. All documents, transcripts, or other materials subject to this Order, and all information derived therefrom (including, but not limited to, all testimony, deposition or otherwise, that refers, reflects or otherwise discusses any information designated "Confidential" hereunder), shall not be used, directly or indirectly, by any person for any business, commercial, or competitive purposes, other than for the purposes of this litigation, or for purposes of litigation in the separate action titled ███████████████████████████████████ ███████████████████, and in preparation for trial in either case and in accordance with the

6

provisions of this Order.  To be clear, the parties agree that discovery materials produced in this litigation may also be used for litigation purposes in the ████████████, without waiver of any objections by any party.

6.      Nothing in this Order shall prevent a party from using at trial, at deposition or any hearing, any information or materials designated "Confidential" provided the parties adhere to the provisions established in this Order.  As part of the meet and confer process required by the Court's Pre-Trial Notice, (R. Doc. 101-1), the parties agree to meet and confer no later than 14 days prior to the scheduled Pre-Trial Conference in an effort to reach an agreement as to the de-designation of Confidential exhibits for use as trial exhibits in open court at trial.  With respect to all filings to the ECF system, the parties agree to abide by this Order, including with respect to pre- and post-trial filings.

7.      This Order has been agreed to by the parties to facilitate discovery and the production of relevant evidence in this action.  Neither the entry of this Order, nor the designation of any information, document, or the like as "Confidential," nor the failure to make such designation, shall constitute evidence with respect to any issue in this action.

8.      Within sixty (60) calendar days after the entry of the final judgment in this Litigation, from which no appeal has been or can be taken, and/or within thirty (60) calendar days of the dismissal of this Litigation due to settlement, all documents, transcripts, or other material (including copies) afforded "Confidential" treatment pursuant to this Order, including any extracts, summaries or compilations taken therefrom, shall be destroyed or returned to the person who produced or furnished them.  This Paragraph will not prevent the party returning the "Confidential" materials from redacting information on copies of the "Confidential" materials which in the good faith judgment of counsel constitutes work product.  Notwithstanding the obligation to return or

destroy information, counsel may retain attorney work product, including document indices, so long as that work product does not duplicate verbatim substantial portions of the text of any "Confidential" information. Unless otherwise agreed upon or ordered, this Order shall remain in force after dismissal or entry of a final judgment not subject to further appeal.

9. If at any time any party having possession, custody, or control of "Confidential" materials is served with a subpoena or other process by any court, administrative agency, legislative body, or other legal authority purporting to have authority to compel the production of such information, the person to whom the subpoena or other process is directed shall provide written notice to the counsel for the party that had designated the materials as "Confidential" within ten (10) business days of receiving the subpoena or not less than five (5) business days prior to producing the "Confidential" material, whichever is earlier. The party to whom the subpoena or other process is directed must also promptly inform, in writing, the person or entity that caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order and enclose a copy of this Order.

10. This Order is without prejudice to the right of any party to apply at any time for additional protection, or to amend, modify, or rescind the restrictions of this Order. The party must provide written notice to counsel of record for all parties in the litigation specifying the portion(s) of this Order it seeks to amend, modify, or rescind and any additional provisions it may seek to add to the Order. The written notice must be served five (5) business days in advance of filing any such motion. The parties expressly reserve the right to seek modification, amendment, or rescission of this Order by mutual agreement in writing.

11. Except pursuant to an order of the Court after a request for the release of "Confidential" documents under this Order, "Confidential" documents may not be disclosed.

8

12.     The fact that information or documents have been designated "Confidential" shall in no way prejudice the right of any party to contest the confidential nature of any documents or information, at the time of trial or otherwise.

13.     This Protective Order does not limit or waive the right of any party to object to the scope of discovery in this litigation or the admissibility at trial of any proffered evidence, documentary or otherwise.

14.     Nothing in this Protective Order shall be construed to prohibit any party from disclosing information and/or documents or things that are in the public domain.

New Orleans, Louisiana this 28th day of May, 2025.


_____
**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**

**ATTACHMENT A**

**CERTIFICATION AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges the Consent Protective Order attached hereto, understands the terms thereof, and agrees to be bound by those terms.

Name (printed):        _____

Job Title:        _____

Employer:        _____

Business Address:        _____

_____

Signature:        _____

Date:        _____

Original Filed at Docket No. 133,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| John Doe , <br> **Plaintiff,** <br><br> v. <br><br> Jane Doe , <br><br> **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO FILE SUR-REPLY**
**IN FURTHER SUPPORT OF OPPOSITION TO DEFENDANT'S**
**MOTION TO MODIFY SCHEDULING ORDER**

Plaintiff  John Doe  ("Plaintiff"), by and through his attorneys, respectfully moves the

Court for leave to file a sur-reply which: i) responds to incorrect factual assertions raised for the

first time in Defendant's reply in support of her motion to modify the Scheduling Order (ECF No.

124) and, more specifically, the Declaration of Kelly Margolis Dagger (ECF No. 124-1); and ii)

provides new information to the Court—obtained on May 22, 2025—regarding Jane Doe receipt

of documents from Tulane University. The proposed sur-reply declaration is attached hereto as

Exhibit 1.

Plaintiff respectfully requests that the Court enter the proposed order included herewith.

Dated: May 29, 2025                    Respectfully Submitted,

                                         /s/ *Kara L. Gorycki*
                                      Kara L. Gorycki (admitted pro hac vice)
                                   Nesenoff & Miltenberg, LLP
                                   363 Seventh Avenue, Fifth Floor
                                   New York, New York 10001
                                   Telephone:(212)736-4500
                                   Email: kgorycki@nmllplaw.com


                                         -and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | **MAG. JUDGE EVA J. DOSSIER** |
| **Defendant.** | |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO
DEFENDANT'S MOTION TO MODIFY SCHEDULING ORDER**

Plaintiff    John Doe    ("Plaintiff") respectfully submits this sur-reply in further support of his opposition to the portion of Defendant    Jane Doe    motion to modify the Scheduling Order which seeks to swap the trial date in the pending Pseudonym Action with the trial date in this action such that this case is tried first. This sur-reply addresses a factual issue, and factual omissions, raised for the first time in Jane Doe reply papers. ECF No. 124-1. Specifically, Jane Doe former counsel, Kelly Margolis Dagger submitted a declaration to the Court which incorrectly states that "Neither Ms. Gorycki nor any other counsel for Mr. John Doe followed up on my offer to meet and confer or otherwise responded to my October 13, 2023 letter until nearly one year later." ECF No. 124-1, Dagger Decl. ¶ 6. As set forth in the Declaration of Kara L. Gorycki, dated May 27, 2025, which is attached hereto as Exhibit A, Ms. Dagger omitted several communications about the subpoena which took place between May 21 and May 31, 2024. During this timeframe, Plaintiff's counsel attempted to meet and confer about the subpoena. Ultimately, Jane Doe counsel asserted that the subpoena would not be "a proper discovery method" if this case and the Pseudonym Action were consolidated and made clear that she did not intend to respond to the subpoena. *See* Ex. A.

Plaintiff also submits this sur-reply to inform the Court of new information that was received from Tulane University ("Tulane") on May 22, 2025. In Plaintiff's opposition to Ms. ^Jane Doe motion, he references Jane Doe receipt of thousands of pages of documents and recordings from Tulane in May 2023. ECF No. 117, Opp. Br. at 4-5. Plaintiff learned this information on May 12, 2025. On May 22—two days after his opposition was filed—Tulane informed Plaintiff that Jane Doe did not receive the recordings. She received 1,249 pages of documents Ex. A.

Dated: May 29, 2025

Respectfully Submitted,

_/s/ Kara L. Gorycki_
Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

**_Attorneys for Plaintiff_**

# EXHIBIT A

Case 2:24-cv-00825-JP-JBJD Document 133 Filed 06/12/25 Page 1281 of 1435

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe , **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

### DECLARATION OF KARA L. GORYCKI IN SUPPORT OF
### PLAINTIFF'S SUR-REPLY

**KARA L. GORYCKI,** hereby declares, subject to the pains and penalties of perjury to 28 U.S.C. § 1746:

1.      I am a Partner at the law firm of Nesenoff & Miltenberg, LLP, attorneys for Plaintiff John Doe ("Plaintiff") in the above-captioned litigation. I submit this declaration in support of Plaintiff's sur-reply to Defendant Jane Doe Reply In Support of Motion to Modify Scheduling Order and, in particular, the Declaration of Kelly Margolis Dagger dated May 23, 2025.

2.      Ms. Dagger's declaration is patently false in its assertion that Plaintiff's counsel failed to respond to her letter dated October 13, 2023 for over one year, omitting several communications between counsel for the parties.

3.      On April 12, 2024, after this case was transferred to this District, Jared Davidson called my co-counsel Alex Robertson and informed him that his firm was representing Jane Doe and would be moving to consolidate this action with the Pseudonym Action. Mr. Robertson subsequently exchanged emails with Mr. Davidson in which we noted Plaintiff's opposition to the consolidation motion.

4.      On April 15, 2024, I was admitted to this case *pro hac vice.*

1

5. On April 23, 2024, I emailed Ms. Dagger and asked if she was still Jane Doe counsel. On the same day, she confirmed that she, Mr. Davidson and Ms. Murley were representing Jane Doe I relayed this information to my colleague, Kim Courtney, who was handling discovery issues relating to the subpoena while I was preparing for a June 2024 trial in another case.

6. On May 21, 2024, Ms. Courtney emailed a letter to Ms. Dagger which addressed the issues raised in Ms. Dagger's October 13, 2023 letter, demanded a response to the subpoena and requested a meet and confer. I was copied on this communication.

7. On May 22, 2024, Ms. Dagger emailed Ms. Courtney and requested that counsel for the defendant in the Pseudonym Action be included in discussions about Jane Doe subpoena response. I was copied on this communication.

8. On May 23, 2024, Ms. Courtney asked Ms. Dagger for clarification of certain issues and declined to include counsel for the defendant in the Pseudonym Action on any meet and confer call because the cases had not been consolidated. I was copied on this communication.

9. On May 28, 2024, Mr. Davidson called Ms. Courtney but did not reach her. Ms. Courtney emailed Mr. Davidson and informed him that she was in the process of arranging a meet and confer with all of Jane Doe counsel. I was copied on this communication.

10. On the same day, Mr. Davidson informed Ms. Courtney by email, copying me, that his firm was taking over for Jane Doe "other counsel." Mr. Davidson stated that he wanted to speak with Ms. Courtney about the impact of the consolidation motion on the subpoena before she scheduled a meet and confer.

11. On May 30, 2024, Ms. Courtney informed Mr. Davidson by email, copying me, that we did not believe the consolidation motion had any impact on Jane Doe obligation to respond to the subpoena.

12.     On May 31, 2024, Mr. Davidson emailed Mr. Courtney, copying me, asserting that "if the cases are consolidated a subpoena is not a proper discovery method." He further stated, "That said, we are happy to conduct a 37.1 conference if you think it is necessary."

13.     At this point, it was clear that Jane Doe attorneys did not intend to respond to the subpoena while the consolidation motion was pending.

14.     As set forth in Exhibit 4 to Plaintiff's opposition to Jane Doe motion to modify the scheduling order (ECF No. 117-4), Mr. Davidson reiterated the same position when I resumed efforts to obtain a response to the subpoena in November 2024.

15.     On May 22, 2025, I was informed by counsel for Tulane University that the information provided to me about Jane Doe receipt of recordings from the University in connection with this action was incorrect. *See* ECF No. 117, at 5. On May 10, 2023, Jane Doe received 1,249 pages of documents from the University. The recordings were restricted to viewing only.

Executed on the 27th day of May 2025.

_____
Kara L. Gorycki

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe    , <br>        **Plaintiff,** <br><br>   **v.** <br><br> Jane Doe <br><br>        **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

<u>**NOTICE OF SUBMISSION**</u>

Please take notice that Plaintiff's motion for leave to file a sur-reply will be submitted for

decision to the Honorable Judge Darrel James Papillion, United States District Court for the

Eastern District of Louisiana, on June 18, 2025.

Dated: May 29, 2025

Respectfully Submitted,

    /s/ *Kara L. Gorycki*

   Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

          -and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | **SECTION: P (3)** |
| **v.** | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

## <u>ORDER</u>

CONSIDERING THE FOREGOING motion by Plaintiff    John Doe    for leave to file a sur-reply which i) responds to factual assertions raised for the first time in Defendant Jane Doe reply in further support of her motion to modify the scheduling order (R. Doc. 124); and ii) provides new information to the Court,

IT IS HEREBY ORDERED that the motion is granted and Exhibit 1 to Plaintiff's motion is accepted and will be considered by the Court as part of the briefing submitted in connection with Defendant's motion to modify the Scheduling Order.

SIGNED, this _____ day of _____, 2025 in New Orleans, Louisiana

_____
DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE

Original Filed at Docket No. 134,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

███████████                            **CIVIL ACTION**

**VERSUS**                              **NO. 24-825**

██████                                  **SECTION: "P" (3)**

## <u>ORDER</u>

Considering the foregoing Ex Parte Motion for Leave to File Sur-Reply in Further Support of Opposition to Defendant's Motion to Modify Scheduling Order (R. Doc. 133),

**IT IS ORDERED** that the motion is **GRANTED**. The Clerk of Court is directed to file Plaintiff's Sur-Reply (R. Doc. 133-1) and exhibit thereto (R. Doc. 133-2) into the record of the above-captioned matter as a sur-reply to Defendant's Motion to Modify Scheduling Order (R. Doc. 114).

New Orleans, Louisiana, this 30th day of May 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 135,
Sealed by Court Order

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| John Doe<br><br>**Plaintiff,**<br><br>v.<br><br>Jane Doe<br><br>**Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO
DEFENDANT'S MOTION TO MODIFY SCHEDULING ORDER**

Plaintiff John Doe ("Plaintiff") respectfully submits this sur-reply in further support of his opposition to the portion of Defendant Jane Doe ("Jane Doe motion to modify the Scheduling Order which seeks to swap the trial date in the pending Pseudonym Action with the trial date in this action such that this case is tried first. This sur-reply addresses a factual issue, and factual omissions, raised for the first time in Jane Doe reply papers. ECF No. 124-1. Specifically, Jane Doe former counsel, Kelly Margolis Dagger submitted a declaration to the Court which incorrectly states that "Neither Ms. Gorycki nor any other counsel for John Doe followed up on my offer to meet and confer or otherwise responded to my October 13, 2023 letter until nearly one year later." ECF No. 124-1, Dagger Decl. ¶ 6. As set forth in the Declaration of Kara L. Gorycki, dated May 27, 2025, which is attached hereto as Exhibit A, Ms. Dagger omitted several communications about the subpoena which took place between May 21 and May 31, 2024. During this timeframe, Plaintiff's counsel attempted to meet and confer about the subpoena. Ultimately, Jane Doe counsel asserted that the subpoena would not be "a proper discovery method" if this case and the Pseudonym Action were consolidated and made clear that she did not intend to respond to the subpoena. *See* Ex. A.

Plaintiff also submits this sur-reply to inform the Court of new information that was received from Tulane University ("Tulane") on May 22, 2025. In Plaintiff's opposition to Jane Doe motion, he references Jane Doe receipt of thousands of pages of documents and recordings from Tulane in May 2023. ECF No. 117, Opp. Br. at 4-5. Plaintiff learned this information on May 12, 2025. On May 22—two days after his opposition was filed—Tulane informed Plaintiff that Jane Doe did not receive the recordings. She received 1,249 pages of documents Ex. A.

Dated: May 29, 2025

Respectfully Submitted,

   /s/ *Kara L. Gorycki*
  Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com


-and-


Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| John Doe      , <br>            **Plaintiff,** <br><br>    v. <br><br> Jane Doe <br><br>            **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

**DECLARATION OF KARA L. GORYCKI IN SUPPORT OF
PLAINTIFF'S SUR-REPLY**

**KARA L. GORYCKI**, hereby declares, subject to the pains and penalties of perjury to 28 U.S.C. § 1746:

1.      I am a Partner at the law firm of Nesenoff & Miltenberg, LLP, attorneys for Plaintiff John Doe ("Plaintiff") in the above-captioned litigation. I submit this declaration in support of Plaintiff's sur-reply to Defendant Jane Doe's Reply In Support of Motion to Modify Scheduling Order and, in particular, the Declaration of Kelly Margolis Dagger dated May 23, 2025.

2.      Ms. Dagger's declaration is patently false in its assertion that Plaintiff's counsel failed to respond to her letter dated October 13, 2023 for over one year, omitting several communications between counsel for the parties.

3.      On April 12, 2024, after this case was transferred to this District, Jared Davidson called my co-counsel Alex Robertson and informed him that his firm was representing Jane Doe and would be moving to consolidate this action with the Pseudonym Action. Mr. Robertson subsequently exchanged emails with Mr. Davidson in which we noted Plaintiff's opposition to the consolidation motion.

4.      On April 15, 2024, I was admitted to this case *pro hac vice*.

1

5.     On April 23, 2024, I emailed Ms. Dagger and asked if she was still Jane Doe counsel. On the same day, she confirmed that she, Mr. Davidson and Ms. Murley were representing Jane Doe . I relayed this information to my colleague, Kim Courtney, who was handling discovery issues relating to the subpoena while I was preparing for a June 2024 trial in another case.

6.     On May 21, 2024, Ms. Courtney emailed a letter to Ms. Dagger which addressed the issues raised in Ms. Dagger's October 13, 2023 letter, demanded a response to the subpoena and requested a meet and confer. I was copied on this communication.

7.     On May 22, 2024, Ms. Dagger emailed Ms. Courtney and requested that counsel for the defendant in the Pseudonym Action be included in discussions about Jane Doe 's subpoena response. I was copied on this communication.

8.     On May 23, 2024, Ms. Courtney asked Ms. Dagger for clarification of certain issues and declined to include counsel for the defendant in the Pseudonym Action on any meet and confer call because the cases had not been consolidated. I was copied on this communication.

9.     On May 28, 2024, Mr. Davidson called Ms. Courtney but did not reach her. Ms. Courtney emailed Mr. Davidson and informed him that she was in the process of arranging a meet and confer with all of Jane Doe's counsel. I was copied on this communication.

10.     On the same day, Mr. Davidson informed Ms. Courtney by email, copying me, that his firm was taking over for Jane Doe's "other counsel." Mr. Davidson stated that he wanted to speak with Ms. Courtney about the impact of the consolidation motion on the subpoena before she scheduled a meet and confer.

11.     On May 30, 2024, Ms. Courtney informed Mr. Davidson by email, copying me, that we did not believe the consolidation motion had any impact on Jane Doe's obligation to respond to the subpoena.

2

12. On May 31, 2024, Mr. Davidson emailed Mr. Courtney, copying me, asserting that "if the cases are consolidated a subpoena is not a proper discovery method." He further stated, "That said, we are happy to conduct a 37.1 conference if you think it is necessary."

13. At this point, it was clear that Jane Doe's attorneys did not intend to respond to the subpoena while the consolidation motion was pending.

14. As set forth in Exhibit 4 to Plaintiff's opposition to Jane Doe's motion to modify the scheduling order (ECF No. 117-4), Mr. Davidson reiterated the same position when I resumed efforts to obtain a response to the subpoena in November 2024.

15. On May 22, 2025, I was informed by counsel for Tulane University that the information provided to me about Jane Doe's receipt of recordings from the University in connection with this action was incorrect. *See* ECF No. 117, at 5. On May 10, 2023, Jane Doe received 1,249 pages of documents from the University. The recordings were restricted to viewing only.

Executed on the 27th day of May 2025.

Kara L. Gorycki

Original Filed at Docket No. 136,

Sealed by Court Order

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| John Doe | **CIVIL ACTION NO. 2:24-CV-00825** |
| Plaintiff, | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | **MAG. JUDGE EVA J. DOSSIER** |
| Defendant. | |

## DEFENDANT S *EX PARTE* MOTION FOR LEAVE TO FILE RESPONSE TO PLAINTIFF S SUR-REPLY

Defendant Jane Doe  respectfully moves the Court for leave to file a response to Plaintiff's sur-reply to correct inadvertent errors in  Jane Doe  reply in support of her motion to modify the scheduling order (R. Doc. 124) stemming from the underlying Declaration of Kelly Margolis Dagger (R. Doc 124.1).  Jane Doe  proposed response to Plaintiff's sur-reply, as well as a second declaration by Ms. Dagger, attached thereto as Exhibit A, explaining the mistakes in her original declaration are attached.

Defendant respectfully requests that the Court enter the proposed order included herewith.

Respectfully Submitted,

*/s/      Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM ECF on all counsel of record on this 3rd day of June, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br><br>    Plaintiff,<br><br>v.<br><br>  Jane Doe<br><br>    Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## <u>PROPOSED ORDER</u>

CONSIDERING THE FOREGOING Motion by Defendant Jane Doe  for leave to file a

response to Plaintiff's Sur Reply  Doc. 133-1 ;

IT IS HEREBY ORDERED that the Motion is granted and the Response and Exhibit A

attached thereto are accepted and will be considered by the Court as part of the briefing submitted

in connection with  Jane Doe   Motion to Modify the Scheduling Order.

SIGNED, this _____ day of _____, 2025 in New Orleans, Louisiana.

_____
     DARREL JAMES PAPILLION
     UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | CIVIL ACTION NO. 2:24-CV-00825<br>SECTION: P (3)<br>**JUDGE DARREL JAMES PAPILLION**<br>**MAG. JUDGE EVA J. DOSSIER** |

## RESPONSE TO PLAINTIFF S SUR-REPLY TO DEFENDANTS MOTION TO MODIFY SCHEDULING ORDER

NOW INTO COURT, comes Defendant Jane Doe who seeks to submit this Response to Plaintiff's Sur-Reply to Jane Doe Motion for Modify Scheduling Order (R. Doc. 133) to include a Second Declaration from Jane Doe former counsel of record, Kelly Dagger, attached hereto as Exhibit A.

The Second Declaration clarifies that communications between Ms. Dagger and Ms. Courtney, a colleague of Plaintiff's counsel, were inadvertently omitted from Ms. Dagger's Original Declaration due to an organizational error within Ms. Dagger's file regarding this suit.

Although Jane Doe recognizes and respects the need for candor to this Court, thereby requiring this Response and Ms. Dagger's Second Declaration, it bears emphasis that none of the information within Plaintiff's Sur-reply is relevant to the request made in the Motion itself, which seeks to modify the Scheduling Order to allow Jane Doe suit to proceed to trial first. Whether there was a year-long delay or a seven-month delay in discussions concerning the subpoena *d ces tec* issued to Jane Doe in a separate lawsuit has no bearing on trial order, especially given Plaintiff's recent consent to coordination of discovery efforts amongst the suits.

WHEREFORE, Plaintiff Jane Doe requests that this Court grant her Motion to Modify the

Scheduling Order.

Respectfully Submitted,

*/s/      Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM ECF on all counsel of record on this 3rd day of June, 2025.


*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| John Doe<br><br>    Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>    Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## SECOND DECLARATION OF KELLY MARGOLIS DAGGER

1.      I am a partner in the law firm of Ellis & Winters LLP in Raleigh, North Carolina. I represented Defendant Jane Doe in the above-captioned action from February 2023 (when the action was pending in my home district, the Eastern District of North Carolina) until February 2025.

2.      I previously gave a declaration in this case on May 23, 2025.  In paragraph 6 of the declaration, I stated, "Neither Ms. Gorycki nor any other counsel for John Doe followed up on my offer to meet and confer or otherwise responded to my October 13, 2023 letter until nearly one year later."  I believed that statement to be true when I made it, based on my recollection of events and my review of my correspondence file.

3.      However, I have since reviewed Ms. Gorycki's declaration reciting communications that I had with Ms. Gorycki's colleague, Kim Courtney, in May 2024. Ms. Courtney's communications were not saved in my correspondence file, which I erroneously believed to be complete when I gave my prior declaration.  Regretfully, I did not recall these exchanges with Ms. Courtney.  I apologize for my oversight.  After receiving Ms. Gorycki's declaration, I further searched my email account and located the communications with


**EXHIBIT A**

Ms. Courtney that Ms. Gorycki described in her declaration.  Ms. Gorycki's account with respect to these May 2024 communications is accurate to the best of my knowledge.

4.　　　The other events recounted in my first declaration are true and accurate.  Neither Ms. Gorycki nor any other counsel for    John Doe    followed up on my offer to meet and confer or otherwise responded to my October 13, 2023 letter until May 2024.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of May, 2025 in Raleigh, North Carolina.

_____
Kelly Margolis Dagger

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | CIVIL ACTION NO. 2:24-CV-00825 |
| Plaintiff, | SECTION: P (3) |
| v. | JUDGE DARREL JAMES PAPILLION |
| Jane Doe | MAG. JUDGE EVA J. DOSSIER |
| Defendant. | |

## NOTICE OF SU  MISSION

PLEASE TAKE NOTICE that Defendant,  Jane Doe   Motion for Leave to File Response

to Plaintiff's Sur Reply  Doc. 133-1  will be submitted for consideration before the Honorable

Darrell J. Papillion, District Judge for the Eastern District of Louisiana, on **J  ne  8, 2025.**

Respectfully submitted,

/s/  Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com

kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

**_Attorneys for Defendant_** Jane Doe

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that on this 3rd day of June, 2025, I electronically filed the foregoing with

the Clerk of Court by using the CM ECF system which will send a notice of electronic filing to

all counsel of record.

                                    _/s/ Jared A. Davidson_

Original Filed at Docket No. 137,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | CIVIL ACTION NO. 2:24-CV-00825<br><br>SECTION: P (3)<br><br>JUDGE DARREL JAMES PAPILLION<br><br>MAG. JUDGE EVA J. DOSSIER |

**DEFENDANT S MOTION TO COMPEL**
**RESPONSES TO WRITTEN DISCOVERY RE UESTS**

NOW INTO COURT comes Defendant Jane Doe who, for the reasons set forth in the accompanying memorandum in support, respectfully moves this Court pursuant to Federal Rules of Civil Procedure 33, 34, and 37 for an order compelling Plaintiff John Doe to respond to Jane Doe Interrogatory Nos. 14 21, to supplement his responses to Interrogatory Nos. 7, 8, and 12 to provide the information requested, and to supplement his responses to Jane Doe requests for production to state whether he is withholding non-privileged responsive documents and, if so, the basis for withholding. To the extent that this Court concludes that Jane Doe has exceeded the interrogatory limit set forth in Rule 33, Jane Doe seeks by way of alternative relief leave to exceed the limit.

WHEREFORE, Defendant Jane Doe prays that the foregoing Motion be granted as prayed.

Respectfully Submitted,


*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

**Attorneys for Defendant** Jane Doe


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM ECF on all counsel of record on this 3rd day of June, 2025.

*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | **CIVIL ACTION NO. 2:24-CV-00825** |
| Plaintiff, | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | **MAG. JUDGE EVA J. DOSSIER** |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT S**
**MOTION TO COMPEL RESPONSES TO WRITTEN DISCOVERY RE UESTS**

Pursuant to Federal Rules of Civil Procedure 33, 34, and 37, Defendant Jane Doe respectfully moves this Court for an order compelling Plaintiff John Doe (i) to respond substantively and properly to Jane Doe first set of interrogatories, including (a) Interrogatory Nos. 14 21 that he refuses to answer on the specious ground that they e ceed the limit set forth in Rule 33 and (b) Interrogatory Nos. 7, 8, and 12 as to which he has failed to provide the requested information; and (ii) to supplement his responses to Jane Doe requests for production to state whether he is withholding non-privileged responsive documents and, if so, the basis for withholding. To the e tent that this Court concludes that Jane Doe has e ceeded the interrogatory limit set forth in Rule 33, Jane Doe seeks by way of alternative relief leave to e ceed the limit.

**BAC GROUND**

On April 4, 2025, Jane Doe served on John Doe her first set of interrogatories, which includes 21 interrogatories, and her first set of requests for production, which includes 37 requests. E . 1 (interrogatories); E . 2 (document requests).

Although under the Rules John Doe responses and objections to both sets of discovery requests were due May 5, he served only his responses and objections to the

1

interrogatories by that date.  E . 3 (interrogatory responses).  In response to an inquiry from <sup>Jane Doe</sup>

on May 6, John Doe         served his objections and responses (still dated May 5) to <sup>Jane Doe</sup>

first set of requests for production.  E . 4 (document request responses). [1]

In his responses and objections to Jane Doe  interrogatories, John Doe         refused to

provide substantive answers to each of Interrogatory Nos. 14  21 on the following basis:

> Rule 33 of the Federal Rules of Civil Procedure only permits 25 written
> interrogatories including discrete subparts.  This limit was met in Interrogatory
> Numbers 1-13.  Defendant did not seek leave to serve additional interrogatories nor
> has an order been entered permitting Defendant to do so.  Accordingly, Plaintiff is
> not required to respond to this interrogatory.

E . 3, Nos. 14  21.

John Doe         also declined to respond substantively to at least three of the first 13

interrogatories, directing Jane Doe to his initial disclosures in his responses to Interrogatory Nos.

7 and 8 (which do not provide the requested information) and refusing to respond to Interrogatory

No. 12 without adequate basis.  *Id.* at p. 10, 13.

In his responses and objections to Jane Doe  requests for production, John Doe

agreed to "produce non-privileged, relevant documents" in response to 24 of Jane Doe  37

requests for production.  E . 4, Nos. 2, 4, 5, 7, 9  17, 19  21, 23  28, 30, 35.  He declined to commit

to producing all responsive documents (subject to identified limitations and objections) or to

provide guidance as to how he would unilaterally determine relevance.

The parties met on May 12 to discuss discovery issues, including John Doe         refusal

to provide substantive responses to Jane Doe  Interrogatory Nos. 14  21 and to commit to

producing all non-privileged documents responsive to Jane Doe  requests or identifying such

---

[1] John Doe         asserts that his failure to serve timely responses and objections to Jane Doe  requests for production
was inadvertent and maintains that his objections to Jane Doe  requests for production therefore are not waived. <sup>Jane Doe</sup>
does not base her arguments in this motion on the timeliness of John Doe         responses.

documents to be e cluded from production. During the meeting, John Doe agreed to identify the interrogatories that he believes include more than one interrogatory by May 16, but indicated that it is "too early" to know whether he will be withholding non-privileged responsive documents on relevance grounds.

On May 14, Jane Doe emailed John Doe a summary of the parties' positions on the discovery issues discussed at the meet and confer. E . 5 at p. 4 6 (email e change between omal Shah, counsel for Jane Doe and ara orycki, counsel for John Doe

On May 16, John Doe replied to Jane Doe email, and on the topic of withholding non-privileged responsive documents, he asserted: "Plaintiff will update his responses to Defendant's document requests when that review is completed." *Id.* at p. 6.

Later that day, Jane Doe emailed John Doe reiterating questions raised during the meet and confer, including whether John Doe intended to withhold non-privileged responsive documents without identifying the criteria and basis for withholding. *Id.* at p. 3.

John Doe refused to answer the question and merely restated that he would update his responses to Jane Doe documents requests upon completion of his document productions. *Id.*

On May 20, John Doe sent Jane Doe a letter setting forth his analysis of Interrogatory Nos. 2 and 4 13 and opining that each contains more than one interrogatory. E . 6 (letter from Ms. orycki to Ms. Shah).

On May 21, Jane Doe emailed John Doe reiterating her position that she had not e ceeded her allotted 25 interrogatories in her request. E . 5 at p. 1 2. In the spirit of cooperation,

3

however, Jane Doe offered to stipulate that Interrogatory No. 7 contains two separate interrogatories rather than one.[2] *Id.*

John Doe has not responded to the offer set forth in the May 21 email.

On May 28, Jane Doe emailed John Doe requesting that the parties meet to discuss John Doe failure to respond substantively to Interrogatory Nos. 7, 8, and 12. E . 7 at p. 2 (email e change between Zora Franicevic, counsel for Jane Doe and ara orycki, counsel for John Doe

On June 2, one day before the scheduled meet and confer, Ms. orycki informed Jane Doe counsel that she would no longer attend the meeting because she "did not see the need to waste time and resources for several attorneys to sit on a meet and confer call tomorrow to discuss the minimal issues below." E . 8 (email e change between Ms. orycki and Ms. Franicevic). Instead, Ms. orycki wrote a few sentences setting forth John Doe position on each of Interrogatory Nos. 7, 8, and 12. *Id.* at p. 2 3. We set forth and address John Doe position on those interrogatories below. *See infra* at I(b).

## ARGUMENT

John Doe refusal to respond substantively to Jane Doe interrogatories and document requests violates the governing rules and is nothing more than an effort to avoid his obligation to provide discovery in the litigation that he initiated.

John Doe responses to the interrogatories are deficient in two respects. *irst*, the weight of authority rejects John Doe efforts to convert nearly every clause or subpart of

---

[2] Jane Doe offered to split Interrogatory No. 7 as follows: (1) identification of any therapy sought by John Doe as a result of the events that are the subject of this litigation and any resulting diagnoses of a mental health condition or emotional distress or any resulting medications taken to address such conditions; and (2) identification of any other person(s) to whom Plaintiff has confided about his mental health condition or emotional distress and the contents of such communications.

Jane Doe interrogatories to a separate interrogatory. To the contrary, courts consistently hold that where, as here, parts of an interrogatory are subsumed within or necessarily related to the primary question and are otherwise bound by a common theme, they do not count as separate interrogatories. *Second*, it is improper for John Doe to refuse to respond substantively to nearly a quarter of the 13 interrogatories that he purported to answer either by directing Jane Doe to his initial disclosures, which do not provide the requested information or by refusing to supply an answer without providing the basis for such refusal.

There likewise is no basis for John Doe refusal to disclose whether he is withholding non-privileged responsive documents to Jane Doe requests for production while at the same time secretly narrowing his search to only those documents that he unilaterally deems relevant. Again, the law is to the contrary a response must state whether responsive documents are being withheld and articulate the basis for not producing such materials.

I. John Doe **HAS IMPROPERLY REFUSED TO RESPOND TO INTERROGATORIES.**

    a. Jane Doe **Ha N t E eeded t e Interr at r Li it.**

Federal Rule of Civil Procedure 33(a)(1) provides that " u nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." FED. R. CI . P. 33(a)(1). In providing guidance on this rule, the Advisory Committee noted that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated." FED. R. CI . P. 33(a) advisory committee's note to 1993 amendment.

Judges in this District have warned against unduly restrictive treatment of interrogatories containing subparts. One judge observed that interrogatories "often contain subparts" and warned

5

that counting all subparts of a party's interrogatories as discrete and separate interrogatories could "unduly restrict " a party's use of interrogatories and could result in widespread "automatic" requests for additional interrogatories beyond the allotted 25. *Yea er v. Corinthian Colle es Inc*., No. Civ.A.01 3122, 2002 WL 1976773, at 2 (E.D. La. Aug. 23, 2002).

Although there is no "clear and easily applied rule" for assessing whether or not subparts are discrete, courts look to whether subparts are "logically or factually subsumed within or necessarily related to the primary question." *Johnson v. eovera Specialty Ins. Co*., No. 23-4999, 2024 WL 962358, at 2 (E.D. La. Mar. 6, 2024) (internal quotations omitted); *Calo ero v. Sho s Cali alsh LLP*, No. 18-6709, 2021 WL 8572627, at 3 4 (E.D. La. Dec. 15, 2021) (interrogatories with as many as seven subparts all related to primary question). Subparts may be logically or factually subsumed within or necessarily related to the primary question if they "ask for further factual elaboration as to who, what, when, where, and how" of a topic. *Coo v. li ht Services and Sys.*, *Inc*., No. 16-15759, 2018 WL 11447512, at 6 (E.D. La. Nov. 1, 2018); *U.S. EEOC v. E on Mo il Corp*., 347 F.R.D. 451, 464 (M.D. La. 2024).

In the same vein, an interrogatory with subparts directed at eliciting details concerning a "common theme" invariably constitutes one interrogatory, not multiple interrogatories. *United States v. Lo isiana*, No. 11 470 JJB DLD, 2012 WL 3726754, at 3 (M.D. La. Aug. 27, 2012) (no challenged subparts discrete); *see also Yea er*, 2002 WL 1976773, at 3 (challenged subparts did not involve "discrete matters"); *see also ance- sh v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Te . 2021) ("The general attitude, however, seems to favor a rela ed approach that allows individual interrogatories to request a range of information touching on a common theme").

A subpart should "stand alone or be independent of the first question" to be considered a discrete or separate question, which is the case when "the first question can be answered *f lly*

6

*and co pletely* without answering the second question." *Johnson*, 2024 WL 962358, at 2; *Calo ero*, 2021 WL 8572627, at 3 (emphasis added). A subpart should not be considered discrete if the absence of a response to that subpart would result in a response that "is not beneficial to the requesting party " and would thereby render the interrogatory "essentially useless." *Coo* , 2018 WL 11447512, at 6 (no subpart discrete, including in interrogatory that asked plaintiffs to state whether they had requested alleged overtime *and/or* minimum wage pay as well as eight related subparts because failing to respond as to minimum wage pay would "amount to no more than an e ercise in futility").[3]

Here, as set forth below, none of the subparts in Jane Doe interrogatories, including those identified by John Doe  (Nos. 2 and 4 13), constitutes a discrete or separate interrogatory. To the contrary, as discussed below, John Doe  has taken positions that are directly contrary to fundamental discovery principles. *See McLeod Ale ander Po el Apffel P.C. v. arles*, 894 F.2d 1482, 1486 (5th Cir. 1990) (obligation to "assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests"); *J.D. v. a in*, No. 07 9755, 2009 WL 363456, at 5 (E.D. La. Feb. 11, 2009) (warning against "efforts to play fast and loose' with the rules"). In these circumstances, John Doe  should be directed to respond to the remaining interrogatories (Nos. 14 21) or, alternatively, Jane Doe should be granted leave to e ceed the interrogatory limit.

---

[3] The interrogatory that the Court determined did *not* involve discrete subparts requested: "During the time that you were or have been employed with the defendant, state whether you have ever requested some or all of your alleged overtime/minimum wage pay, and, if so, set forth: a. the name and position of each individual to whom you made your request; b. whether you made your request in writing or verbally; c. the response provided by the individual(s) to whom you made your request; d. whether the response given to you was verbal or in writing; e. whether you were given minimum additional compensation on that occasion and, if you were, the name, address and position of each individual who authori ed the payment; f. if you were not given overtime or minimum wage pay, any reason given by anyone for not providing you with overtime pay; g. a description of the type of work for which you requested additional pay; and h. the date(s) when the allegedly unpaid work was performed."

### i. **Interrogatory No. 2**

Interrogatory No. 2 asks John Doe to "state the bases for his claim of defamation against Defendant Jane Doe as alleged in the First Amended Complaint, including identification of every allegedly false and defamatory statement made by Jane Doe of which he is aware." E. 1 at p. 4.

Although John Doe claims that this interrogatory is two separate interrogatories, E. 6 at p. 1, it is only one interrogatory. John Doe defamation claim relies on proving, among other elements, that Jane Doe made false statements about him that unfairly harmed his reputation. *See* ECF 23, First Amended Complaint, 92 109. He cannot state the bases of his defamation claim without identifying the alleged defamatory statements made by Jane Doe *See Calo ero*, 2021 WL 8572627, at 3.

### ii. **Interrogatory No. 4**

Interrogatory No. 4 asks John Doe to "state the bases for his claim of abuse premised on Defendant Jane Doe use of the Louisiana civil court system as alleged in the First Amended Complaint, including identification of any evidence supporting his claim that Jane Doe primary motive in proceeding with the Louisiana civil court system process was to defame, harass and punish Plaintiff.'" E. 1 at p. 4.

Although John Doe claims that this interrogatory is two separate interrogatories, E. 6 at p. 1, it is one interrogatory for the same reasons as Interrogatory No. 2. Again, John Doe cannot state the bases of his abuse of process claim without identifying the evidence that he believes supports that claim. *See Calo ero*, 2021 WL 8572627, at 3.

8

### iii. **Interrogatory No. 5**

Interrogatory No. 5 asks John Doe to " s tate the bases for his claim of civil conspiracy as alleged in the First Amended Complaint, including by identifying and describing the substance of any Communications of which he is aware between or on behalf of Defendant Jane Doe and Sue Roe." Ex. 1 at p. 5.

Although John Doe claims that this interrogatory is three separate interrogatories, Ex. 6 at p. 2, his civil conspiracy claim requires him to show that Jane Doe and the woman identified in the First Amended Complaint as Sue Roe "acted in concert with the common purpose to defame and injure Plaintiff" by engaging in coordinated acts. *See* ECF 23, First Amended Complaint, ¶¶ 147 153. John Doe cannot state the bases of his conspiracy claim without identifying and describing the communications between Jane Doe and Sue Roe that allegedly show that they were acting in concert to defame John Doe *See Calo ero*, 2021 WL 8572627, at 3.

Nor is there merit to John Doe suggestion that "identifying" and "describing" the communications at issue constitute two separate questions. Ex. 6 at p. 2. Mere identification of a communication without describing its substance would render the interrogatory "essentially useless," *Coo* 2018 WL 11447512, at 6, as Jane Doe would not receive information about the contents of the communications that allegedly form the basis of John Doe conspiracy claim.

### iv. **Interrogatory No.**

Interrogatory No. 6 asks John Doe to " i dentify all forms of emotional distress that he ha s e perienced as a result of Defendant Jane Doe conduct as alleged in the First Amended Complaint, including any mental health conditions that he ha s e perienced and any physical

9

symptoms or manifestations that  he  ha s  e perienced as a result of the mental health conditions." E . 1 at p. 5.

Although John Doe claims that this interrogatory is two separate interrogatories, E . 6, p. 2, the primary question of this interrogatory asks John Doe to identify "all *for s* of emotional distress" that he claims to have e perienced as a result of the conduct alleged in the First Amended Complaint, and any resulting mental health conditions or symptoms or manifestations of those conditions would only provide detail about the forms of emotional distress allegedly e perienced. *Coo* , 2018 WL 11447512, at  6 (subparts are logically or factually subsumed within or necessarily related to primary question if they ask for elaboration, including information about the "what" and "how").

### v.  **Interr   at r  N . 7**

Interrogatory No. 7 asks John Doe to " i dentify any therapy that  he  ha s  sought for any mental health conditions or emotional distress that  he  ha s  e perienced as a result of Defendant Jane Doe conduct as alleged in the First Amended Complaint (including the name of  his  therapist and the frequency of and period during which  he  received such therapy), any diagnosis of a mental health condition or emotional distress by a mental health professional, any medications  he  ha s  taken to address the mental health condition or emotional distress  he  ha s e perienced (including when and by whom they were prescribed), and any other persons to whom  he  ha s  confided about  his  mental health condition or emotional distress and the content of any such non-privileged Communications."  E . 1 at p. 5.

Although  John Doe claims that this interrogatory contains five separate interrogatories, E . 6 at p. 2, the primary question of this interrogatory asks John Doe to identify any therapy sought by him and the subparts simply ask for further information about any

such therapy.  For e ample, whether a mental health professional diagnosed John Doe       with a condition or prescribed him medications in connection with therapy provides detail about the therapy that John Doe       received and is necessarily related to that primary question.  *Coo* , 2018 WL 11447512, at  6; *Calo ero*, 2021 WL 8572627, at  4.  Similarly, the request for <sup>John Doe</sup>

to identify any resulting diagnoses and medications prescribed by a therapist is directed at eliciting details concerning a "common theme"  any therapy that John Doe sought following Jane Doe  alleged conduct.  *Lo isiana*, 2012 WL 3726754, at  3 4; *see also Yea er*, 2002 WL 1976773, at  3.  Finally, because Interrogatory No. 7 seeks identification of *any* type of therapy, whether informal or formal, it necessarily includes a request for identification of any person other than a mental health professional in whom John Doe       confided about any mental health conditions or emotional distress that he was e periencing.  As noted, Jane Doe has offered as a compromise to treat Interrogatory No. 7 as two separate interrogatories, with the second interrogatory being identification of any persons other than mental health professionals in whom John Doe       has confided about his mental health condition or emotional distress.  *See s pra* n. 2. John Doe       has not responded to this offer.  *Id*. at p. 4.

    **vi.**  **Interr   at r  N . 8**

Interrogatory No. 8 asks John Doe       to " s tate all amounts being sought by  him from Defendant Jane Doe as damages or otherwise in this case, including a breakdown of each amount being sought and the bases for seeking such amounts."  E . 1 at p. 5.

Although  John Doe       claims that this interrogatory contains two separate interrogatories, E . 6 at p. 2, the bases of any amounts claimed as damages are necessarily related to the amount in damages being sought by John Doe       as they provide detail on "how"

11

John Doe has calculated the amounts of damages that he seeks. *Coo*, 2018 WL 11447512, at 6.

### vii. Interr at r N .

Interrogatory No. 9 asks John Doe to " i dentify any graduate school programs to which he ha s applied, including the graduate schools to which he applied and the month and year in which he applied, and the graduate school admissions decisions on those applications, as well as any graduate schools that he attended, the dates of attendance, and any graduate degrees attained." E . 1 at p. 6.

Although John Doe claims that this interrogatory contains three separate interrogatories, E . 6 at p. 2, any admissions decisions and John Doe subsequent graduate school e perience are necessarily related to the common theme of graduate school education. *See Calo ero*, 2021 WL 8572627, at 4; *Coo*, 2018 WL 11447512, at 6; *Lo isiana*, 2012 WL 3726754, at 3 4; *Yea er*, 2002 WL 1976773, at 3. It bears mention that John Doe response to the three purported questions in Interrogatory No. 9 is limited to a single word: "None." E . 3 at p. 11.

### viii. Interr at r N . 0

Interrogatory No. 10 asks John Doe to " i dentify any jobs for which he ha s applied since January 2021, including the potential employers to whom he ha s applied, and the employment decisions made by those employers." E . 1 at p. 6.

Although John Doe claims that this interrogatory contains two separate interrogatories, E . 6 at p. 2, identification of potential employers to whom John Doe has applied and any resulting decisions from those employers are necessarily related to the common

12

theme of job searches. *See Calo ero*, 2021 WL 8572627, at  4; *Coo* , 2018 WL 11447512, at  6; *Lo isiana*, 2012 WL 3726754, at  3 4; *Yea er*, 2002 WL 1976773, at  3.

### i .  Interr  at r  N .

Interrogatory No. 11 asks John Doe to " i dentify  his  employers and the dates and places of employment since January 2022, including the income that  he  ha s  earned each month." E . 1 at p. 6.

Although  John Doe claims  that  this  interrogatory  contains  three  separate interrogatories, E . 6 at p. 3, dates of employment and income earned are, again, logically or factually subsumed within the common theme of post-college employment. *See* FED. R. CI . P. 33(a) advisory committee's note to 1993 amendment ("a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the *ti e*, *place*, persons present, and *contents* be stated") (emphasis added).  Indeed, courts in this District have held that similar interrogatories with subparts requesting information about employment constitute one interrogatory. *Coo*  2018 WL 11447512, at  6 (interrogatory asking about requests for overtime/minimum wage pay, including name and position of each person involved in request, whether request was made in writing or verbally, any response provided to request, as well as other subparts, constitute single interrogatory).

### .  Interr   at r  N .  2

Interrogatory No. 12 asks John Doe to " s tate by month any income that  he  ha s received from sources other than any jobs that  he  ha s  held since January 2022, including the source(s) of such income." E . 1 at p. 6.

Although  John Doe claims  that  this  interrogatory  contains  two  separate interrogatories, E . 6 at p. 3, the request for sources of John Doe income is logically or

13

factually subsumed within the request for identification of any income that John Doe has

generated from sources other than jobs that he has held since January 2022. *Johnson*, 2024 WL

962358, at  2.  Indeed, stating the income without identifying the sources of such income would

frustrate the purpose of the interrogatory and would "not be beneficial" to Jane Doe  *Coo*  2018

WL 11447512, at  6.

### i. Interr  at r N . 3

Interrogatory No. 13 asks John Doe to " d escribe the events of February 2 and 3,

2022 as they relate to the allegations in the First Amended Complaint, including the locations and

venues (e.g., restaurants, bars, houses, or fraternities)  he  visited and the appro imate times  he

visited those places as well as the persons who were with  him  at those locations and venues."

E . 1 at p. 6.

Although  John Doe claims that this interrogatory contains si  separate

interrogatories, E . 6 at p. 3, it does nothing of the sort.

Most fundamentally, the incident at the core of this litigation  John Doe se ual

assault of Jane Doe  took place the night of February 2 3, 2022.  The two dates cannot be

separated.  Indeed, in his First Amended Complaint, John Doe acknowledges that the se ual

assault occurred in the early hours of February 3, 2022 yet defines the activity as the "February 2,

2022 Encounter," presumably because he considers the events at issue to have taken place over

the night of February 2 3.  ECF 23 at p. 9 10.  As such, the events on both days are necessarily

related to one another such that this interrogatory's request for a description of the events on both

days should be treated as a single question.

Nor is there merit to John Doe claims that there are four additional interrogatories

in this request.  E . 6 at p. 3.  To the contrary, the interrogatory seeks a timeline of the events of

14

the evening, consistent with the Advisory Committee's guidance that an interrogatory containing subparts that request "the time, place, persons present, and contents be stated" should be treated as a single interrogatory. FED. R. CI . P. 33(a) advisory committee's note to 1993 amendment. These subparts are logically and factually subsumed within the request for a description of the events of February 2 3 and specifically request elaboration about those events, including the locations and timing of the events and persons who may have been in attendance. *Coo* , 2018 WL 11447512, at  6.

If the Court nevertheless concludes that Interrogatory No. 1  13 should count as 25 discrete interrogatories, leave should be granted for Jane Doe to serve additional interrogatories such that John Doe must answer all interrogatories served to date. *See Johnson*, 2024 WL 962358, at  2 (citing FED. R. CI . P. 26(b)(1), (2)).

In determining whether to grant additional interrogatories, courts consider whether (i) the additional discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient or less burdensome; (ii) the requesting party has had ample opportunity to obtain the information by discovery in the action; and (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). *Id.* at  3.

Here, the Court should grant Jane Doe leave to serve as many as eight additional interrogatories (those interrogatories constituting Interrogatory Nos. 14  21 in Jane Doe  first set of interrogatories).

First, even a cursory review of the eight unanswered interrogatories shows that they are not unreasonably cumulative or duplicative of Jane Doe  first 13 interrogatories   Interrogatory Nos. 14 21 request information about John Doe  consumption of substances and his se ual

15

activity on February 2  3, 2022 (the night of the assault of Jane Doe  the events underlying the allegations John Doe  made against Sue Roe, John Doe  consumption of substances on August 22  23, 2021 (the night of the assault of Sue Roe), communications between  John Doe  and others about any claims or defenses in this case, the forms of social media and methods of communications used by John Doe  and any complaints or suggestions of se  ual misconduct or other unwanted physical contact involving John Doe  Moreover, the information sought in Interrogatory Nos. 14  21 cannot be obtained from more convenient or less burdensome sources   the information requested has not been provided elsewhere and Jane Doe does not have other, more convenient or less burdensome avenues for obtaining it.

Second, the parties are in the early stages of discovery, and Jane Doe  has not had the opportunity to obtain the information sought by Interrogatory Nos. 14  21 through other discovery in the action.  In fact, John Doe  made his first production to Jane Doe on May 28, less than a week before Jane Doe filed this motion.

Third, and finally, the eight interrogatories request information directly relevant to the issues in this litigation.  As just one e  ample, Interrogatory No. 16 asks John Doe  to " i dentify all persons with whom  he  Communicated about the se  ual activity in which  he  engaged on February 2  3, 2022 and the substance of those Communications," E  . 1 at p. 7, which may lead to discovery of witnesses not available through a review of the documents who will refute John Doe  claim that he engaged in only consensual se  ual activity with Jane Doe  on February 2  3, 2022.

.  **John Doe  Ha  Failed T  Re   nd Pr  erl  T  At Lea t T ree Interr   at rie .**

In addition, even where John Doe  has purported to respond substantively, at least three of those responses   to Interrogatory Nos. 7, 8, and 12   are deficient.

16

### i. **Interr at r N . 7**

Although John Doe claims that Jane Doe request in Interrogatory No. 7 for identification of any informal therapy and the contents of those communications constitutes two separate interrogatories, he failed to provide the requested information as to either subject. His response to this subpart is limited to the following: "Plaintiff refers Jane Doe to his initial disclosures which identify the friends that have information concerning the impact of her accusations on him." E . 3 at p. 10. While John Doe initial disclosures list persons who he says may have information about "the impact of Jane Doe allegations on Plaintiff's mental state," they do not indicate whether John Doe confided in those persons about any mental health conditions or emotional distress; nor do they set forth the contents of any such communications. E . 9 at p. 1 5 (Plaintiff's initial disclosures).

Jane Doe attempted to confer with John Doe on this issue, but John Doe refused to meet and instead wrote in an email that it is "unduly burdensome for Plaintiff to have to list every communication that may appear in his productions concerning his emotional distress and the content of any communications that may appear herein." E . 8 at p. 2.

John Doe burden objection is not well taken. John Doe listed only si persons in his initial disclosures who would have information about "the impact of Jane Doe allegations on his mental state." E . 9 at p. 1 5. If John Doe spoke to only si persons about the effect of Jane Doe allegations on his mental state, it cannot be "unduly burdensome" for him to identify and describe the contents of those limited conversations. It also bears emphasis that John Doe conversations with them likely were not in writing and would not appear in his document productions, meaning that Jane Doe has no other means to obtain this information.

17

### ii. **Interrogatory No. 8**

Similarly, even though John Doe alleges that Interrogatory No. 8, which seeks a breakdown of his asserted damages and the bases of those amounts, contains two separate interrogatories, he failed to respond substantively to either purported question. His response *in full* is as follows: "Plaintiff refers Jane Doe to his initial disclosures." Ex. 3 at p. 10. In the initial disclosures, however, John Doe states only that he seeks at least $2 million for economic damages, reputational harm, emotional distress, attorneys' fees and travel expenses incurred with respect to Jane Doe TRO petition, and attorneys' fees incurred with respect to the Tulane Title IX proceeding. Ex. 9 at p. 6. Notably, Plaintiff does not specify the amounts being sought for any category of the purported damages alleged in his initial disclosures, as requested in Interrogatory No. 8. *See Robinson v. La Doc Co. Inc.*, No. 99 1996, 2000 WL 1059860, at 1 (E.D. La. Aug. 1, 2000) ("An evasive or incomplete response is equal to a party's complete failure to respond") (citing FED. R. CIV. P. 37(a)(3)).

John Doe declined Jane Doe offer to meet and confer on this interrogatory and instead wrote in an email that he would supplement his response to this interrogatory when "any damages calculations are conducted by any experts disclosed in this action." Ex. 8 at p. 2.

John Doe again misinterprets the rules. John Doe was obligated to respond "fully in writing" to each interrogatory within 30 days of being served by Jane Doe FED. R. CIV. P. 33(b). If John Doe did not know the damages amounts for his categories of damages and the bases for those amounts at the time that he submitted his responses to Jane Doe interrogatories, he should have indicated so in his initial response and objected on that basis. But John Doe did not assert a prematurity or any other objection to the interrogatory, and he cannot do so by email after passage of the response deadline.

18

Accordingly, John Doe must provide the information requested in the interrogatory. If he knows his alleged damages, he must provide them. If he does not know his alleged damages, he must say so.

iii. **Interr at r N . 2**

Likewise, even though John Doe alleges that Interrogatory No. 12, which seeks information about non-employment income, contains two separate interrogatories, he failed to respond substantively to either of the purported questions. His response is limited to the following: "Plaintiff will not provide a response to this interrogatory." E . 3 at p. 13. John Doe objected to the interrogatory as irrelevant, vague, "unnecessary, overly burdensome, oppressive and harassing," but did not e plain why. *Id*.

John Doe also refused Jane Doe offer to meet and confer on this issue and instead reiterated in an email his objections to this interrogatory, stating (again without e planation) that his non-employment income is "simply irrelevant" and not proportional to the needs of the case. E . 8 at p. 2 3. John Doe also indicated in his email that he had separately agreed to produce copies of his ta returns and "will not waste time on this unnecessary endeavor." *Id*.

Jane Doe interrogatory is not an "unnecessary endeavor." John Doe income from sources *other than* his jobs since January 2022 is relevant to his claim of economic damages and the economic harm that he has allegedly suffered. Even if providing monthly income from sources other than his jobs is burdensome (which John Doe has not established and seems implausible unless John Doe is receiving such income from multiple sources at multiple times), John Doe has not offered to provide Jane Doe with *any* responsive information, such as annual or total income from such sources.

19

Moreover, John Doe direction to his ta returns that he plans to produce misses the mark. His ta returns would provide information about his official sources of income but would likely omit information about other sources of income such as any financial support that he has received from his family or withdrawals from any trust funds.

Accordingly, in addition to being directed to respond to Interrogatory No. 14 21, John Doe should be ordered to respond substantively to Interrogatory Nos. 7, 8, and 12.

## II. John Doe HAS IMPROPERLY RESPONDED TO THE RE UESTS FOR PRODUCTION.

Federal Rule 34(b)(2)(C) provides that " a n objection must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CI . P. 34(b)(2)(C); *ospel Ho a Asse ly Ch rch v. I Co panies*, No. 22-1989, 2023 WL 7220523, at 3 (E.D. La. Nov. 2, 2023). As the Advisory Committee elaborated, the producing party must "alert the other part y to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." FED. R. CI . P. 34(b)(2)(C) advisory committee note to 2015 amendment.

Most important for present purposes, in response to a request for production, the responding party's responsibility is to state "either that all responsive materials in its possession, custody or control are being produced or that it is withholding responsive materials subject to its objections or that it has no responsive materials in its possession, custody or control." *Allen v. Archer Daniels Midland Co.*, No. 17-14107, 2019 WL 13274354, at 2 (E.D. La. Jan. 9, 2019). Objections to a request for production that fail to indicate whether materials are being withheld are improper. *ospel*, 2023 WL 7220523, at 3; *oodyear Tire R er Co. v. CE A Lo istics Sin apore Ltd.*, 348 F.R.D. 54, 67 (E.D. La. 2024) ("All responses must clearly state whether any responsive materials are being withheld and the specific basis for objecting and not producing

same" otherwise they are "improper"). Put simply, "the Rules require straight talk, not ambiguity and incompleteness that raise a suspicion of evasiveness." *Allen* 2019 WL 13274354, at 2 (citing FED. R. CI . P. 37(a)(4)).

John Doe responses to Jane Doe document requests violate these settled rules. Indeed, John Doe responded to 24 of Jane Doe requests for production by stating that he would produce "non-privileged, *relevant* documents." E . 4, Nos. 2, 4, 5, 7, 9 17, 19 21, 23 28, 30, 35 (emphasis added). John Doe did not indicate in any of his responses to those requests whether he intended to withhold non-privileged responsive documents on the basis of relevance (or any other objection). *Id*.

Moreover, John Doe has steadfastly refused to provide clarity in response to Jane Doe inquiries, claiming that it is "too early" to know and that he plans to update his responses to Jane Doe document requests after he has completed his productions. E . 5 at p. 3.

That is not the way Federal Rule of Civil Procedure 34 works. FED. R. CI . P. 34(b)(2)(C); *Allen*, 2019 WL 13274354, at 2; *oodyear*, 348 F.R.D. at 67 ("a party must provide full and complete responses to requests for production within thirty days after being served" and in those responses must "state whether any responsive materials are being withheld on the basis of an objection"). Waiting until completion of document production to supplement responses with information about which non-privileged responsive documents have been withheld would undermine the purpose of the rule, which is to provide notice of the criteria to be employed in reviewing and producing documents so that the propounding party can raise concerns and, if necessary, move to compel in advance of the production. *See* FED. R. CI . P. 34(b)(2)(C) advisory committee's note to 2015 amendment.

Finally, it bears mention that nine of John Doe responses in which he agreed to produce only "non-privileged relevant documents" do not contain a relevance objection. E . 4, Nos. 2, 4, 7, 19, 21, 24 28. John Doe may not withhold non-privileged responsive documents based on a purported relevance objection that he has failed to interpose in his response.

## CONCLUSION

For the foregoing reasons, John Doe should be compelled (i) to respond to Jane Doe Interrogatory Nos. 14 21 (or, alternatively, Jane Doe should be granted leave to serve additional interrogatories); (ii) to supplement his responses to Interrogatory Nos. 7, 8, and 12 to provide the requested information; and (iii) to supplement his responses to Jane Doe requests for production to state whether he is withholding non-privileged responsive documents and, if so, the basis for withholding.

Respectfully submitted,

*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil . Roman (admitted *pro hac vice*)
 omal Shah (admitted *pro hac vice*)
Shanelle an (admitted *pro hac vice*)
Zora F. Franicevic (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
CO IN TON & BURLIN LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fa : (202) 778-5869
nroman@cov.com
kshah@cov.com

22

svan@cov.com
franicevic@cov.com
awoods@cov.com
New York Office

***Attorneys for Defendant*** Jane Doe


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on all counsel of record on the 3rd day of June, 2025.

*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

23

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| Jane Doe **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT** Jane Doe **FIRST SET OF INTERROGATORIES TO PLAINTIFF** John Doe

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Jane Doe serves her First Set of Interrogatories ("Interrogatories") on Plaintiff John Doe Plaintiff is to provide responses to these Interrogatories, under oath and in writing, within 30 days of service of this request, in accordance with the Definitions and Instructions below.

**DEFINITIONS**

Unless the terms of a request specifically indicate otherwise, the following definitions are applicable throughout these requests and are incorporated into each specific request.

1. "You," "Your," and "Plaintiff" means John Doe including any attorneys, agents, and all other persons acting or purporting to act on Your behalf having information or Documents available within the meaning of Federal Rules of Civil Procedure 26 and 34.

2. "Communication" and "Communications" refer to all inquiries, discussions, conversations, negotiations, social media posts, agreements, understandings, meetings, telephone conversations, letters, e-mails, correspondence, notes, or any other form of oral or written Communication.

3. "Document" and "Documents" have the broadest meaning permitted by Federal Rule of

**EXHIBIT 1**

Civil Procedure 34 and shall include all oral, written, graphic, or electronic material or other media or reproduction of every kind and description, however produced and reproduced, including correspondences, Communications, conversations, meetings, discussions, negotiations, agreements, understandings, statements, text messages, telephone conversations, social media posts, faxes, e-mail, memoranda, notes, computer files, films, X-rays, recordings of any type, transcripts, photographs, slides, drawings, sketches, forms, letters, reports, medical reports, financial statements, telegrams, abstracts, and any other material similar to any of the foregoing, however denominated, by whomever prepared, to whomever addressed, which are in Your possession, custody, and/or control, or to which You can obtain access reasonably. For avoidance of doubt, "Document" and "Documents" include all posts, reposts, comments, and direct messages on all social media platforms, including Instagram, TikTok, X (formerly known as Twitter), Facebook, Snapchat, and Yik Yak.

4. "Drugs" means any substances used as medications or that cause a change in consciousness and includes not only legal substances, but also substances used recreationally or illegally.

5. "Sue Roe" means the woman identified by this pseudonym in the First Amended Complaint.

## INSTRUCTIONS

1. These Interrogatories are continuing in nature and must be supplemented in accordance with Federal Rule of Civil Procedure 26(e). After answering these Interrogatories, supplement or correct any responses later learned to be incomplete or incorrect immediately upon learning that a prior response was incomplete or incorrect.

2. These Interrogatories request all information in Your possession, custody, or control.

3. If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the information to do so, answer to the extent possible, including whatever information or knowledge You have about the unanswered portion of any Interrogatory.

4. If You object to an Interrogatory, state the grounds of the objection and the category of information to which the objection applies with specificity, and the Interrogatory should be answered so far as it is not deemed objectionable.

5. If You withhold information called for by an Interrogatory on the ground that it is subject to the attorney-client privilege, the attorney work product doctrine, or any other privilege or exemption, You shall, with respect to each such Interrogatory or any portion or subpart thereof, (1) state that information is being withheld, (2) explain the nature and grounds for the privilege or exemption claimed, (3) describe the nature of the information withheld with sufficient particularity to provide a basis for determining the validity of the privilege or exemption claimed, and (4) provide all other information called for by the Interrogatory.

6. If information and answers requested are neither known nor reasonably available in the precise manner requested or for the period specified—but can be answered and supplied partially or for a different but relevant date or period—set forth the best and most complete answer and information available and state the reasons that the answer may not be completely responsive to the Interrogatory.

7. Whenever an Interrogatory requests identification of a Document, state sufficient information to identify the Document (e.g., Bates number).

8. Whenever an Interrogatory requests identification of a person, state his or her full name, present or last known business address or location, telephone number, and (if applicable)

social media usernames. Whenever an Interrogatory requests identity of an entity, state its name, address, telephone number, and type of business in which the entity engages.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all persons who may possess knowledge, information, or Documents relating to the claims asserted by You in the First Amended Complaint, including the person's relationship to You and the nature of the knowledge, information, and Documents.  Identify all such persons regardless of whether or not You intend to call them as witnesses at trial or otherwise rely on their testimony or whether You believe that they will support Your allegations.

**INTERROGATORY NO. 2:**

State the bases for Your claim of defamation against Defendant Jane Doe as alleged in the First Amended Complaint, including identification of every allegedly false and defamatory statement made by Jane Doe of which You are aware.

**INTERROGATORY NO. 3:**

State the bases for Your claim that the allegedly false and defamatory statements made by Defendant Jane Doe during the Title IX proceedings are not protected by privilege because Jane Doe knew that they were false.

**INTERROGATORY NO. 4:**

State the bases for Your claim of abuse premised on Defendant Jane Doe use of the Louisiana civil court system as alleged in the First Amended Complaint, including identification of any evidence supporting Your claim that Jane Doe "primary motive in proceeding with the Louisiana civil court system process was to defame, harass and punish Plaintiff."

**INTERROGATORY NO. 5:**

State the bases for Your claim of civil conspiracy as alleged in the First Amended Complaint, including by identifying and describing the substance of any Communications of which You are aware between or on behalf of Defendant Jane Doe and Sue Roe.

**INTERROGATORY NO. 6:**

Identify all forms of emotional distress that You have experienced as a result of Defendant Jane Doe conduct as alleged in the First Amended Complaint, including any mental health conditions that You have experienced and any physical symptoms or manifestations that You have experienced as a result of the mental health conditions.

**INTERROGATORY NO. 7:**

Identify any therapy that You have sought for any mental health conditions or emotional distress that You have experienced as a result of Defendant Jane Doe conduct as alleged in the First Amended Complaint (including the name of Your therapist and the frequency of and period during which You received such therapy), any diagnosis of a mental health condition or emotional distress by a mental health professional, any medications You have taken to address the mental health condition or emotional distress You have experienced (including when and by whom they were prescribed), and any other persons to whom You have confided about your mental health condition or emotional distress and the content of any such non-privileged Communications.

**INTERROGATORY NO. 8:**

State all amounts being sought by You from Defendant Jane Doe as damages or otherwise in this case, including a breakdown of each amount being sought and the bases for seeking such amounts.

**INTERROGATORY NO. 9:**

Identify any graduate school programs to which You have applied, including the graduate schools to which You applied and the month and year in which You applied, and the graduate school admissions decisions on those applications, as well as any graduate schools that You attended, the dates of attendance, and any graduate degrees attained.

**INTERROGATORY NO. 10:**

Identify any jobs for which You have applied since January 2021, including the potential employers to whom You have applied, and the employment decisions made by those employers.

**INTERROGATORY NO. 11:**

Identify Your employers and the dates and places of employment since January 2022, including the income that You have earned each month.

**INTERROGATORY NO. 12:**

State by month any income that You have received from sources other than any jobs that You have held since January 2022, including the source(s) of such income.

**INTERROGATORY NO. 13:**

Describe the events of February 2 and 3, 2022 as they relate to the allegations in the First Amended Complaint, including the locations and venues (*e.g.*, restaurants, bars, houses, or fraternities) You visited and the approximate times You visited those places as well as the persons who were with You at those locations and venues.

**INTERROGATORY NO. 14:**

Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (*e.g.*, whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on February 2 and 3, 2022.

**INTERROGATORY NO. 15:**

Describe all sexual activity in which You engaged on February 2 and 3, 2022, including the sexual activity with Defendant Jane Doe

**INTERROGATORY NO. 16:**

Identify all persons with whom You Communicated about the sexual activity in which You engaged on February 2-3, 2022 and the substance of those Communications.

**INTERROGATORY NO. 17:**

Describe the events underlying the allegations made against You by Sue Roe, including the sexual activity in which You engaged, the Communications that You exchanged with Sue Roe following the sexual activity and the reasons for the statements that You made in those Communications, and the Communications that You had with other persons regarding the sexual activity with Sue Roe and the reasons for the statements that You made in those Communications.

**INTERROGATORY NO. 18:**

Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (*e.g.*, whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on August 22 and 23, 2021.

**INTERROGATORY NO. 19:**

Identify all non-privileged Communications between You and other persons concerning or relating to any claim or defense in this case, including the date of the Communication, the nature and content of the Communication, where the Communication occurred, and the identity of all participants in and any witnesses to the Communication.

## INTERROGATORY NO. 20:

Identify the forms of social media and methods of Communication (*e.g.*, email, text messages, Twitter/X, Facebook, Instagram, Snapchat, and TikTok) that You used between August 2018 and present, including the phone numbers and usernames for each form of social media or Communication.

## INTERROGATORY NO. 21:

Identify all complaints or suggestions of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact of which You have been subject or in which You have in any way been involved, without limitation as to time period and irrespective of whether the complaint resulted in legal or administrative consequences or whether You believe that those complaints or suggestions were warranted or otherwise justified.

Respectfully submitted,

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WILLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (pro hac vice)
Komal Shah (pro hac vice)
Shanelle Van (pro hac vice)
Zora F. Franicevic (pro hac vice)
Ashton E. Woods (pro hac vice)
COVINGTON & BURLING LLP
One CityCenter
850 10th St. NW
Washington, D.C. 20902
Tel: (202) 662-6000
Fax: (202)778-5528
nroman@cov.com
kshah@cov.com

svan@cov.com
zfranicevic@cov.com
awoods@cov.com

***Attorneys for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Interrogatories* has been served upon all parties by email on this 4th day of April, 2025.

_____*/s/ Jared A. Davidson*_____
TAYLOR, WELLONS, POLITZ & DUHE



Ira S. Nesenoff
Andrew T. Miltenberg
Stuart Bernstein
_____
Tara J. Davis
Gabrielle M. Vinci
Kara L. Gorycki

Barbara H. Trapasso
Kristen E. Mohr
Helen J. Setton
Rodman W. Streicher
Kimberly S. Courtney

Nicole E. Hoehle
Regina M. Federico
Adrienne D. Levy
*Senior Litigation Counsel*

Marybeth Sydor
*Title IX Consultant*

**ATTORNEYS AT LAW**

**nmllplaw.com**

May 20, 2025

**VIA EMAIL**
Komal Shah
KShah@cov.com

**Re:** John Doe *v.* Jane Doe **Case No. 2:24-cv-00825-DJP-EJD**
Plaintiff's Objections to Defendant's Interrogatories

Dear Komal,

As discussed on our last meet and confer call, I write to provide a breakdown of my analysis of Defendant's interrogatories, which far exceed the 25 permitted by Federal Rule 33, including all discrete subparts. When faced with a set of interrogatories that violate the Federal Rules, a party need only answer the first 25. *See Stephens v. Florida Marine Transporters, Inc.*, 2013 WL 121000393, at *3 (E.D. La. Feb. 21, 2013) (Wells Roby, M.J.) (directing party to answer first 13 interrogatories). Indeed, "parties cannot evade the presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects." *Id.* (cleaned up). When determining whether a subpart should be considered a separate question, "[i]f the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within and necessarily related to the primary question. *Id. See also Parkcrest Builders, LLC v. Housing Auth'y of New Orleans*, 2017 WL 1426933, at **3-4 (E.D. La. Apr. 21, 2017) (Wells Roby, M.J.) (directing party to answer first 14 interrogatories). Below is a breakdown and tally of each interrogatory that Plaintiff answered (Interrogatories 1-13).

| Interrogatory Number | Breakdown | Tally |
|---|---|---|
| 1 | One interrogatory | 1 |
| 2 | Two interrogatories:<br>1. The bases for defamation claim<br>2. Identify every false and defamatory statement of which you are aware | 3 |
| 3 | One interrogatory | 4 |
| 4 | Two interrogatories:<br>1. The bases for your abuse of process claim.<br>2. Identify evidence supporting your claim re Jane Doe | 6 |

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

**EXHIBIT 6**

# NESENOFF & MILTENBERG

New York | Boston

| | motives. | |
|---|---|---|
| 5. | Three interrogatories<br>1. State the bases for your conspiracy claim<br>2. Identify communications between <sup>Jane Doe</sup> and Roe<br>3. Describe the substance of any communications of which you are aware between <sup>Jane Doe</sup> and Roe | 9 |
| 6 | Two interrogatories:[1]<br>1. Identify all forms of emotional distress that you have experienced.<br>2. Identify any mental health conditions and any attendant symptoms. | 11 |
| 7 | Five interrogatories:[2]<br>1. Identify any therapy you have sought: a) therapist; b) frequency; and c) period<br>2. Identify any mental health diagnosis you have received by a mental health professional<br>3. Identify any medications you have taken: a) when; and b) who prescribed<br>4. Other than therapists, identify "other persons" whom you have confided in.<br>5. Identify the content of communications with persons in whom you have confided | 16 |
| 8 | Two interrogatories:<br>1. "All amounts" of damages/breakdown<br>2. Bases for each amount being sough | 18 |
| 9 | Three interrogatories:[3]<br>1. Graduate school programs to which you have applied: a) schools; b) month/year<br>2. Graduate school admissions decisions<br>3. Graduate schools attended: a) dates of attendance; and b) degrees attained. | 21 |
| 10 | Two interrogatories:<br>1. The jobs to which you applied (potential employers)<br>2. Decision made | 23 |

---

[1] We could have, but did not, count "physical symptoms or manifestations" as a discrete subpart.
[2] We were generous in counting this as only five interrogatories because there are actually more when you count additional discrete subparts such as when medications were prescribed and by whom.
[3] We were generous in counting this as only three because there are actually more discrete subparts in this interrogatory such as dates that Plaintiff applied to school and degrees attained.

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

# NESENOFF & MILTENBERG

New York | Boston

| 11 | Three interrogatories:<br>    1. Identify your employers<br>    2. Identify your dates of employment<br>    3. Identify the income that you earned each month | 26 |
|---|---|---|
| 12 | Two interrogatories:<br>    1. State your monthly income from sources other than jobs<br>    2. Identify the sources of that income. | 28 |
| 13 | Six interrogatories (with discrete subparts):<br>    1. Describe the events of February 2, 2022: a) the locations visited; b) time visited; and c) persons you were with.<br>    2. Describe the events of February 3, 2022: a) the locations visited; b) time visited; and persons you were with. | 34 |

We were actually more generous than we had to be in: (i) interpreting the number of interrogatories; and (ii) answering in excess of Plaintiff's obligations under the Federal Rules. Plaintiff is simply not required to provide any further responses to the improper interrogatories that Defendant propounded.

Sincerely,

*Kara L. Gorycki*

Kara L. Gorycki

cc (by email):
    Alex Robertson, Esq.
    Caroline Mulrey, Esq.
    Jared Davidson, Esq.
    Neil Roman, Esq.
    Ashton Woods, Esq.
    Shanelle Van, Esq.
    Zora Franicevic, Esq.
    Christina Coleburn, Esq.

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

**Woods, Ashton**

| | |
|---|---|
| **From:** | Franicevic, Zora F |
| **Sent:** | Wednesday, May 28, 2025 7:51 PM |
| **To:** | Kara Gorycki; Alex Robertson |
| **Cc:** | Jared Davidson; Caroline Murley; Roman, Neil; Shah, Komal; Van, Shanelle; Woods, Ashton; Coleburn, Christina |
| **Subject:** | RE: John Doe v. Jane Doe - Plaintiff's Responses to Defendant's Interrogatories |

Kara,

We will circulate a meeting invitation for 2:30-3:30 PM ET on Tuesday, June 3 to discuss.

Best,
Zora

**Zora Franicevic**
Pronouns: She/Her/Hers

Covington & Burling LLP
The New York Times Building, 620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1209 | zfranicevic@cov.com
www.cov.com

**COVINGTON**

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Wednesday, May 28, 2025 5:20 PM
**To:** Franicevic, Zora F <ZFranicevic@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Cc:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>; Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Woods, Ashton <AWoods@cov.com>; Coleburn, Christina <CColeburn@cov.com>
**Subject:** RE: John Doe v. Jane Doe - Plaintiff's Responses to Defendant's Interrogatories

[EXTERNAL]
Zora,

I am not available at those times.
My next available is Tuesday, June 3, 1:30-3:30 p.m. Eastern or Friday, June 6, 10:30 a.m.-12:00 p.m., 2:00-3:00 p.m. Eastern.

Thanks,
Kara

1

**EXHIBIT 7**



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500 • 212.736.2260 fax

Vcard • nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Franicevic, Zora F <ZFranicevic@cov.com>
**Sent:** Wednesday, May 28, 2025 1:43 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Alex Robertson <alex@mrmlaw.com>
**Cc:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>; Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Woods, Ashton <AWoods@cov.com>; Coleburn, Christina <CColeburn@cov.com>
**Subject:** John Doe v. Jane Doe - Plaintiff's Responses to Defendant's Interrogatories

Kara,

We would like to meet to discuss Plaintiff's responses to the below interrogatories. We are available to meet this afternoon from 3-5pm ET or 5:30-7pm ET and tomorrow (Thursday) from 10:30am-1pm ET and 5-7pm ET. Please let us know which time works best.

- Interrogatory No. 7
  - The interrogatory requests that John Doe identify "any other persons to whom You have confided about your mental health condition or emotional distress and the content of any such non-privileged Communications." John Doe responded by referring Jane Doe to "his initial disclosures which identify the friends that have information concerning the impact of her accusations on him." Jane Doe specifically requested information about the "content" of any communications between John Doe and other persons about his mental health condition or emotional distress, which are not set forth in his initial disclosures.

- Interrogatory No. 8
  - The interrogatory requests that John Doe state "all amounts being sought by You from Defendant Jane Doe as damages or otherwise in this case, including a breakdown of each amount being sought and the bases for seeking such amounts." John Doe responded by referring Jane Doe to his initial disclosures. John Doe initial disclosures provide only the total number of damages sought by him ($2 million) and do not provide the breakdown of each amount of damages sought for any category of purported damages, or the bases for seeking such amounts.

- Interrogatory No. 12
  - The interrogatory requests that John Doe state "by month any income that You have received from sources other than any jobs that You have held since January 2022, including the source(s) of such income." John Doe responded that he "will not provide a response to this interrogatory." Jane Doe requests the basis for John Doe refusal to respond.

2

Best,
Zora

**Zora Franicevic**
Pronouns: She/Her/Hers

Covington & Burling LLP
The New York Times Building, 620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1209 | zfranicevic@cov.com
www.cov.com

# COVINGTON

**Woods, Ashton**

| | |
|---|---|
| **From:** | Kara Gorycki <KGorycki@nmllplaw.com> |
| **Sent:** | Monday, June 2, 2025 8:00 AM |
| **To:** | Franicevic, Zora F; Alex Robertson |
| **Cc:** | Jared Davidson; Caroline Murley; Roman, Neil; Shah, Komal; Van, Shanelle; Woods, Ashton; Coleburn, Christina |
| **Subject:** | RE: John Doe v. Jane Doe - Plaintiff's Responses to Defendant's Interrogatories |

[EXTERNAL]

Zora,

Please see my responses below. I do not see the need to waste time and resources for several attorneys to sit on a meet and confer call tomorrow to discuss the minimal issues below. I sent correspondence this morning regarding Jane Doe document requests and suggesting dates for a meet and confer on those issues (which could take more than one meeting). I recommend that any outstanding issues with respect to my answers below be addressed at the start of that meeting.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Franicevic, Zora F <ZFranicevic@cov.com>
**Sent:** Wednesday, May 28, 2025 1:43 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Alex Robertson <alex@mrmlaw.com>
**Cc:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>; Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Woods, Ashton <AWoods@cov.com>; Coleburn, Christina <CColeburn@cov.com>
**Subject:** John Doe v. Jane Doe - Plaintiff's Responses to Defendant's Interrogatories

Kara,

**EXHIBIT 8**

We would like to meet to discuss Plaintiff's responses to the below interrogatories. We are available to meet this afternoon from 3-5pm ET or 5:30-7pm ET and tomorrow (Thursday) from 10:30am-1pm ET and 5-7pm ET. Please let us know which time works best.

- Interrogatory No. 7
  - The interrogatory requests that John Doe identify "any other persons to whom You have confided about your mental health condition or emotional distress and the content of any such non-privileged Communications." John Doe responded by referring Jane Doe to "his initial disclosures which identify the friends that have information concerning the impact of her accusations on him." Jane Doe specifically requested information about the "content" of any communications between John Doe and other persons about his mental health condition or emotional distress, which are not set forth in his initial disclosures.

    **It is unduly burdensome for Plaintiff to have to list every communication that may appear in his productions concerning his emotional distress and the content of any communications that may appear therein. Those communications speak for themselves. Plaintiff's response to this interrogatory very clearly states that he discussed the topics set forth in his response to Interrogatory Number 6 with his parents. Plaintiff's initial disclosures, which are incorporated by reference in his response to Interrogatory Number 7, also set forth the specific subject matter related to his emotional distress that was relayed to his friends. No further response is required.**

- Interrogatory No. 8
  - The interrogatory requests that John Doe state "all amounts being sought by You from Defendant Lily Jane Doe as damages or otherwise in this case, including a breakdown of each amount being sought and the bases for seeking such amounts." John Doe responded by referring Jane Doe to his initial disclosures. John Doe initial disclosures provide only the total number of damages sought by him ($2 million) and do not provide the breakdown of each amount of damages sought for any category of purported damages, or the bases for seeking such amounts.

    **This case has specific deadlines for expert disclosures and this interrogatory prematurely seeks information related thereto. As stated in Plaintiff's initial disclosures, which are incorporated by reference in his response to Interrogatory Number 8, Plaintiff will amend his initial disclosures to align with any damages calculations conducted by any experts disclosed in this action. The categories set forth in the initial disclosures are self-explanatory and provide the "bases." Plaintiff will supplement his interrogatory response when additional information becomes available.**

- Interrogatory No. 12
  - The interrogatory requests that John Doe state "by month any income that You have received from sources other than any jobs that You have held since January 2022, including the source(s) of such income." John Doe responded that he "will not provide a response to this interrogatory." Jane Doe requests the basis for John Doe refusal to respond.

    **As stated in Plaintiff's response:
    Plaintiff objects to this interrogatory on the ground that its request for the income that he earned each month since January 2022 seeks financial information at a level of detail that is unnecessary, overly burdensome, oppressive and harassing.
    Plaintiff's "monthly" earnings are simply irrelevant and requesting that Plaintiff retrospectively calculate each month's income over a 3 ½ year period is not proportional to**

**the needs of the case. Plaintiff has agreed to produce copies of his tax returns. Plaintiff will not waste time on this unnecessary endeavor.**

Best,
Zora

**Zora Franicevic**
Pronouns: She/Her/Hers

Covington & Burling LLP
The New York Times Building, 620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1209 | zfranicevic@cov.com
www.cov.com

**COVINGTON**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

### RULE 37 CERTIFICATION

I HEREBY CERTIFY that on May 12, 2025, counsel for the Plaintiff and Defendant met via Microsoft Teams to confer in good faith to resolve the discovery disputes forming the basis of this motion without court action.  Despite numerous email e changes and a meet and confer, Plaintiff has refused to comply with his obligations to properly respond to Jane Doe  written discovery requests.

Respectfully submitted,

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil  . Roman (admitted *pro hac vice*)
 omal Shah (admitted *pro hac vice*)
Shanelle   an (admitted *pro hac vice*)
Zora F. Franicevic   (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
CO  IN  TON & BURLIN   LLP

One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fa : (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
 franicevic@cov.com
awoods@cov.com
 New York Office

***Attorneys for Defendant*** Jane Doe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on all counsel of record on the 3rd day of June, 2025.

*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | **CIVIL ACTION NO. 2:24-CV-00825** |
| | **SECTION: P (3)** |
| Plaintiff, | **JUDGE DARREL JAMES PAPILLION** |
| v. | **MAG. JUDGE EVA J. DOSSIER** |
| Jane Doe | |
| Defendant. | |

**PROPOSED ORDER GRANTING DEFENDANT S MOTION TO**
**COMPEL RESPONSES TO WRITTEN DISCOVERY RE UESTS**

Having considered the Defendant's Motion to Compel, seeking an order compelling Plaintiff to respond to Defendant's written discovery requests,

IT IS ORDERED that the Motion is GRANTED, for the reasons set forth in the Memorandum of Law in Support of Defendant's Motion; and

IT IS FURTHER ORDERED that Plaintiff shall within 14 days respond to Defendant's Interrogatory Nos. 14 21, supplement his responses to Interrogatory Nos. 7, 8, and 12 to provide the information requested, and supplement his responses to Defendant's requests for production to clarify whether he is withholding non-privileged responsive documents and, if so, the basis for withholding.

SO ORDERED, this _____ day of _____, 2025.

**MAGISTRATE EVA DOSSIER**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

John Doe

      Plaintiff,

v.

Jane Doe

      Defendant.

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## NOTICE OF SU  MISSION

PLEASE TAKE NOTICE that Defendant, Jane Doe  Motion to Compel Responses to Written Discovery Requests will be submitted for consideration before the Honorable Eva J. Dossier, Magistrate Judge for the Eastern District of Louisiana, on **J  ne 24, 2025.**

Respectfully submitted,

*/s/  Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869

nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

**Attorneys for Defendant** Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June, 2025, I electronically filed the foregoing with

the Clerk of Court by using the CM ECF system which will send a notice of electronic filing to

all counsel of record.

_/s/ Jared A. Davidson_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| John Doe<br><br>      Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>      Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT** Jane Doe **FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF** John Doe

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Jane Doe

serves the following Requests for Production on Plaintiff John Doe

### DEFINITIONS

Unless a Request indicates otherwise, the following definitions are applicable

throughout these Requests and are incorporated into each Request.

1. "You," "Your," and "Plaintiff" means John Doe including any attorneys,

   agents, and all other persons acting or purporting to act on Your behalf having

   information or Documents available within the meaning of Federal Rules of Civil

   Procedure 26 and 34.

2. "Communication" and "Communications" refer to all inquiries, discussions,

   conversations, negotiations, social media posts, agreements, understandings,

   meetings, telephone conversations, letters, e-mails, correspondence, notes, or any

   other form of oral or written Communication.

3. "Document" and "Documents" have the broadest meaning permitted by Federal Rule of Civil Procedure 34 and shall include all oral, written, graphic, or electronic material or other media or reproduction of every kind and description, however produced and reproduced, including correspondences, Communications, conversations, meetings, discussions, negotiations, agreements, understandings, statements, text messages, telephone conversations, social media posts, faxes, e-mail, memoranda, notes, computer files, films, X-rays, recordings of any type, transcripts, photographs, slides, drawings, sketches, forms, letters, reports, medical reports, financial statements, telegrams, abstracts, and any other material similar to any of the foregoing, however denominated, by whomever prepared, to whomever addressed, which are in Your possession, custody, and/or control, or to which You can obtain access reasonably. For avoidance of doubt, "Document" and "Documents" include all posts, reposts, comments, and direct messages on all social media platforms, including Instagram, TikTok, X (formerly known as Twitter), Facebook, Snapchat, and Yik Yak.

4. "Sue Roe" means the woman identified by this pseudonym in the First Amended Complaint.

5. "Tulane Investigation" refers to the Tulane University Student Conduct Investigation that commenced in February 2022, as discussed in Paragraphs 47–48 of the First Amended Complaint.

6. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

2

## INSTRUCTIONS

1.  These Requests apply to all Documents in Your possession, custody, or control.  You

    are to produce all Documents responsive to one or more of the Requests contained

    herein.

2.  Each Request shall operate and be construed independently.  Unless otherwise

    indicated, no paragraph limits the scope of any other paragraph.

3.  Respond separately to each Request and subpart thereof.  If You object to any portion

    of any Request, You should identify the portion to which You object and respond to

    the remainder.

4.  Attachments to emails should not be separated.

5.  If any Documents requested were at one time in Your possession, custody, or control,

    but are no longer in Your possession, custody, or control, please state for each such

    Document:

    a) the type of Document;
    b) the date on which it left Your possession, custody, or control, ceased to exist, or
       was lost;
    c) the circumstances under which it left Your possession, custody, or control, ceased
       to exist, or was lost;
    d) the identity of all persons having knowledge of the circumstances in which it left
       Your possession, custody, or control, ceased to exist or was lost;
    e) the identity of its last known custodian; and
    f) the identity of all persons having knowledge of the contents of the relevant
       Document.

6.  If You assert either attorney-client privilege or work product doctrine, or both, as to

    any Document being requested herein, as to each such Document subject to such

3

assertion, serve with Your response to these Requests a privilege log containing an

identification of the Document, which shall include:

a) the date of the Document;
b) the identity of the author(s) and sender(s) of the Document and all recipients thereof;
c) the name(s) of each person to whom the original or a copy of the Document was circulated;
d) a summary statement of the subject matter of such document in sufficient detail to permit the Court to make a determination in the event of a motion under Federal Rule of Civil Procedure 37; and
e) the basis for the assertion of privilege or protection.

7. If You claim privilege or protection to part of a Document, redact that portion which is privileged or protected and produce the remainder.  All redactions should also be included on the privilege log described in the preceding paragraph.

8. If You withhold Documents on the basis of an assertion that a Request is overbroad or unduly burdensome, indicate what part of the Request is overbroad or unduly burdensome, the nature and scope of the Documents sought that are overbroad or unduly burdensome, what work would be required to acquire and produce the Documents sought, and identify and produce the portion of the Documents that can be produced within a reasonable scope and with reasonable burden.

9. Whenever a Document is not produced in full or is produced in redacted form, indicate on the Document, state with particularity the reason or reasons it is not being produced, and describe with particularity the portions of the Document not being produced.

10. If no Documents are responsive to a Request, provide a response stating that no responsive Documents exist.

11. The definitions set forth herein have the broadest possible meaning.  Each Request should be construed as being inclusive rather than exclusive.

12. The relevant period for these Requests is August 2018 to present.

13. Pursuant to Federal Rule of Civil Procedure 26(e), You are required to supplement Your responses herein.

## **<u>REQUESTS FOR PRODUCTION</u>**

1. All Documents produced by You in the ████ Litigation.

2. All Documents identified in, consulted for, or related to Your First Amended Complaint in this litigation.

3. All Documents identified in, consulted for, or related to Your Initial Disclosures in this litigation.

4. All Documents identified in, consulted for, or related to Your responses to Defendant's First Set of Interrogatories and any subsequent interrogatories in this litigation.

5. All Documents or Communications referring or relating to Defendant Jane Doe including all Communications between You and Jane Doe

6. All Documents or Communications related to Your application for and admission to Tulane University, including all Documents You signed to finalize Your enrollment.

7. Documents sufficient to identify Your extracurricular memberships and activities and any academic or other awards or citations You received during Your enrollment at Tulane University.

8. Documents sufficient to identify Your academic standing and expected graduation date, including all grade and similar reports.

9. All Documents or Communications related to any disciplinary actions or misconduct investigations, formal or informal, in which You were involved in any way during Your enrollment at Tulane University.

10. All Documents or Communications related to Sue Roe, including all Communications with Sue Roe.

11. All Documents or Communications referring or relating to Your whereabouts and activities on August 23, 2021, including what You ate and drank or otherwise ingested on that date.

12. All Documents or Communications constituting or referring or relating to all text messages You sent to or received from Sue Roe.

13. All Documents or Communications referring or relating to Your whereabouts and activities on January 27, 2022, including what You ate and drank or otherwise ingested on that date.

14. All Documents or Communications referring or relating to Your whereabouts and activities on January 29, 2022, including what You ate and drank or otherwise ingested on that date.

15. All Documents or Communications referring or relating to Your whereabouts and activities on February 2, 2022, including what You ate and drank or otherwise ingested on that date.

16. Documents or Communications sufficient to identify all persons with whom You interacted on the evening of February 2, 2022, including at each location You visited and each event You attended, as discussed in Paragraph 26 of the First Amended Complaint.

17. Documents or Communications sufficient to identify the time You left for, arrived at, and left Defendant Jane Doe house on February 2, 2022 or February 3, 2022.

18. All Documents or Communications referring or relating to any person, adult or minor, who has accused You, formally or informally, of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact.

19. All Documents or Communications related to the information "spreading around the school alleging that [You] had sexually assaulted a female student," as discussed in Paragraphs 33–35 of the First Amended Complaint.

20. All Documents or Communications related to revocation or suspension of Your membership in or association with social or academic organizations at Tulane University.

21. All Documents or Communications related to Your withdrawal from Tulane University.

22. All Documents or Communications related to the charges against You for violating the Tulane University Code of Conduct.

7

23. All Documents or Communications evidencing, reflecting, or referring to Your participation in or failure to participate in the Tulane Investigation, including the proposed interview with Jacqueline Barber.

24. All Documents or Communications reflecting or relating to disciplinary action against You as a result of the Tulane Investigation.

25. All Documents or Communications evidencing, reflecting, or referring to any relationship, correspondence, or coordination of any sort at any time between Defendant Jane Doe and Sue Roe.

26. All Documents or Communications reflecting, referencing, or relating to any meetings or Communications (written or oral), in which You were a participant or privy to the Communication, regarding the Tulane Investigation.

27. All Documents or Communications reflecting, referencing, or related to any diagnosis of or treatment for emotional distress resulting from Defendant Jane Doe statements regarding You.

28. All Documents or Communications evidencing or referring or relating to any emotional distress resulting from Defendant Jane Doe statements regarding You.

29. All Documents reflecting or referring or relating to any graduate school programs to which You have applied, scores or results of any related entrance examinations, and the graduate school admissions decisions on those applications.

30. All Documents reflecting or referring or relating to any job applications You have submitted since January 2021, the potential employers to whom You have applied, and the employment decisions made by those employers.

8

31. All statements taken of any party or of any persons having information regarding Defendant Jane Doe Sue Roe, or this litigation.

32. All Documents or Communications reflecting, referencing, or relating to any investigation performed by You regarding Defendant Jane Doe

33. All Documents or Communications reflecting, referencing, or relating to any investigation performed by You to determine or analyze the veracity of Defendant Jane Doe statements regarding You.

34. All Documents reflecting, referencing, or related to any meetings or Communications (either written or oral), in which You were a participant or privy to the Communication, regarding Defendant Jane Doe

35. All Documents reflecting, referencing, or related to any meetings or Communications between You and others regarding Defendant Jane Doe

36. All tax forms or other Documents sufficient to show income earned by month since January 2022.

37. All Documents on which You intend to rely at trial or otherwise in this litigation.

Respectfully submitted,

*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WILLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

9

-and-

Neil K. Roman (pro hac vice)
Komal Shah (pro hac vice)
Shanelle Van (pro hac vice)
Zora F. Franicevic (pro hac vice)
Ashton E. Woods (pro hac vice)
COVINGTON & BURLING LLP
One CityCenter
850 10th St. NW
Washington, D.C. 20902
Tel: (202) 662-6000
Fax: (202)778-5528
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com

*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Requests for Production* has been served upon all parties by email on this 4th day of April, 2025.

*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| |
|---|
| John Doe |
| **Plaintiff,** |
| v. |
| Jane Doe |
| **Defendant.** |

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT**
Jane Doe  **INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure Plaintiff John Doe hereby objects and responds to Defendant Jane Doe interrogatory responses, served on April 4, 2025, as follows:

**RESERVATION OF RIGHTS**

1.      The following reservations apply to each and every response provided herein.

2.      Plaintiff reserves the right to amend or supplement these responses at any time.

3.      Plaintiff's identification of any witness or information in these responses is not an admission of relevance, materiality, or admissibility of any such information or any particular person's testimony, and Plaintiff reserves all objections with respect thereto.

4.      Plaintiff's identification of any person in these responses is not a guarantee or representation that Plaintiff will call any such person to testify in this matter or that such witness has relevant information or testimony.

5.      Plaintiff reserves all objections as to confidentiality and privilege. Any inadvertent disclosure of confidential or privileged information shall not be deemed a waiver of such confidentiality/privilege and Plaintiff reserves the right to recall any privileged or confidential information inadvertently disclosed

1

**SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1. Plaintiff objects to the definition of "Documents" as seeking information that is overly broad, unduly burdensome and not proportional to the needs of the case in its request for "all posts, reposts, comments and direct messages on all social media platforms including Instagram, TikTok, X, Facebook, Snapchat, and Yik Yak.

2. Plaintiff objects to the definition of "Drugs" as improper in seeking information that is not relevant to any claim or defense in this action.

3. Plaintiff objects to Defendant's Instruction Number 1 as violative of FRCP 26(e) which requires the supplementation of interrogatories "in a timely manner," not "immediately."

**OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1:**

Identify all persons who may possess knowledge, information, or Documents relating to the claims asserted by You in the First Amended Complaint, including the person's relationship to You and the nature of the knowledge, information, and Documents. Identify all such persons regardless of whether or not You intend to call them as witnesses at trial or otherwise rely on their testimony or whether You believe that they will support Your allegations.

**RESPONSE**:
Plaintiff objects to this interrogatory on the grounds that it is duplicative in its request for information that has already been provided to Defendant. Plaintiff refers Defendant to the Initial Disclosures that he served on Defendant's counsel on April 4, 2025.

**INTERROGATORY NO. 2:**

State the bases for Your claim of defamation against Defendant Jane Doe as alleged in the First Amended Complaint, including identification of every allegedly false and defamatory statement made by Jane Doe of which You are aware.

2

**RESPONSE:**

Plaintiff objects to this interrogatory on the ground that it requests information that is already in Defendant's possession, custody or control. Plaintiff also objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his defamation claim at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving these objections, and reserving the right to supplement, and more fully respond to, this interrogatory, Plaintiff provides the following list of false and defamatory statements made by Jane Doe

1. 

2. 

3. 

4. 

5. 

6. On February 7, 2022, Jane Doe posted on Instagram that "Being drunk is not an excuse for sexual assault." Matthew Kisin showed the post to Plaintiff.

7. On February 8, 2022, Jane Doe stated the following in a text message:

After we had consensual sex on your birthday, I told you that I was tired and wanted to sleep. At first you said that was fine but then 10 minutes later you asked me to have sex again to which I responded no, that I was tired and didn't want to. You continued to ask me to have sex with you multiple times, each time with me saying no and asking you to go to sleep. I woke up to the sound of you jerking off and the feeling of you taking the blanket off my naked sleeping body and touching and squeezing it as you pleased. Even though I was paralyzed with fear and half asleep, I mumbled that I was cold and tried to pull the blanket back onto me. You then pulled the blanket off of me again and continued to pleasure yourself and touch me. You took advantage of my body in my most vulnerable state, and had no regard for how violating your actions were to me. You are a predator and a repeat offender,

3

and will not manipulate or invalidate my assault, like you did to your previous victim. It blows my mind that you were able to manipulate people around you into staying friends with you but this time you will be held fully accountable or the trauma that you actions caused. You will be known for the disgusting coward you truly are. You need serious help, and honestly I don't care if you ever get it, but I do know that you will never have the opportunity to violate someone ever again.

Jane Doe disseminated this text message to Tulane University students. This was reported by ██████████, Plaintiff's college roommate, during the Tulane investigation. Plaintiff believes that Harrison White, Noa Banghart and Eugenie McNiff also saw the text message. ████████

8.      On or about February 8, 2022, Jane Doe told the President of the ZBT Fraternity, Ben Miner, that Plaintiff sexually assaulted her.

9.      On February 11, 2022, Jane Doe filed a report with Tulane University that stated:



Jane Doe disseminated this statement to Tulane students outside the investigation, some of whom were witnesses. ████████

10.     On February 16, 2022, in an interview with Tulane investigator Jacqueline Barber, Jane Doe stated the following:[1]



---

[1] The failure to cite each and every statement in Jane Doe statement to Ms. Barber in no way constitutes an admission that any other statement made by Jane Doe is true.

4





11.     On or about February 16, 2022, Jane Doe told Tulane's investigator that █████████

12.     On March 16, 2022, Jane Doe told various Tulane administrators that Plaintiff was harassing and intimidating her friends, who were witnesses in the disciplinary proceeding and asked them to assist her with obtaining a restraining order.

13.     Jane Doe provided a copy of the Petition for Protection From Abuse and TRO that she obtained in Louisiana Civil Court to Tulane University and informed Christopher Zacharda that Plaintiff was making witnesses uncomfortable. She told individuals at the University that she needed to obtain a TRO so that Plaintiff could not communicate with her friends. The Petition provided to Tulane contains the following false and defamatory statements:

    a.  Plaintiff stalked Jane Doe by sending messages to her through third parties.
    b.  Plaintiff harmed or threatened to harm Jane Doe, members of her family or her acquaintances.
    c.  Plaintiff engaged in "intimidation."

Jane Doe also requested relief due to "the immediate and present danger of stalking, or sexual assault" which included a prohibition on the "use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury" and ordering Plaintiff not to damage any of her belongings or in any way interfere in her living conditions.

**INTERROGATORY NO. 3:**

State the bases for Your claim that the allegedly false and defamatory statements made by Defendant Jane Doe during the Title IX proceedings are not protected by privilege because Jane Doe knew that they were false.

6

**RESPONSE:**

Plaintiff objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his claim that Jane Doe statements are not protected by any privilege at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving this objection, Plaintiff states that Jane Doe knew that her sexual assault allegations were false because what she alleged did not occur. Jane Doe also made false statements about Plaintiff in her petition for TRO that she submitted to Tulane during its investigation of her sexual assault allegations.

**INTERROGATORY NO. 4**:

State the bases for Your claim of abuse premised on Defendant Jane Doe use of the Louisiana civil court system as alleged in the First Amended Complaint, including identification of any evidence supporting Your claim that Jane Doe "primary motive in proceeding with the Louisiana civil court system process was to defame, harass and punish Plaintiff."

**RESPONSE:**

Plaintiff objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his abuse of process claim at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving this objection, and reserving the right to supplement and fully respond to this interrogatory at the appropriate time, Plaintiff states that the above interrogatory improperly narrows his claim and also mischaracterizes his claim as "abuse" rather than "abuse of process." As alleged in the Complaint, and upheld in Judge Papillion's order dated March 17, 2025, Jane Doe instituted the Louisiana state court action, and obtained a TRO against Plaintiff, not because she needed protection from harassment, intimidation, and stalking, but, instead, for the ulterior, improper purpose of bolstering her sexual assault complaint, restricting Plaintiff from contacting witnesses in the Tulane investigation and to further harass, defame, retaliate against and punish Plaintiff.

The following evidence, known to Plaintiff at this time, supports his abuse of process claim:

1.      Plaintiff had no contact with Jane Doe since she sent him the text message containing her false accusations on February 8, 2022. He did not respond to that message and did not interact with her at any point after that.

2.      The sworn petition Jane Doe filled out in the Louisiana Civil Court proceeding contains the following false and defamatory statements: (i) Plaintiff stalked Jane Doe by sending messages to her through third parties; (ii) Plaintiff harmed or threatened to harm

7

Jane Doe members of her family or her acquaintances; and (iii) Plaintiff engaged in "intimidation." Jane Doe also requested relief due to "the immediate and present danger of stalking, or sexual assault" which included a prohibition on the "use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury" and ordering Plaintiff not to damage any of her belongings or in any way interfere in her living conditions.

3. Noah Siev and Taylor Rappeport agreed to speak with Plaintiff during the investigation. Neither individual was exclusively friends with Jane Doe

4. Text messages between Will Reynoir and Plaintiff in which Reynoir indicates Harrison White's willingness to speak with Plaintiff. Plaintiff did not speak directly with White. Reynoir is Plaintiff's friend. Harrison White told the Tulane investigator that he knew Plaintiff and had been friendly with him in the past though they were not close.

5. Jane Doe released a Tik Tok about her accusations against Plaintiff after Plaintiff reached out to Taylor Rappeport on March 10, 2022. Plaintiff reached out to Noah Siev and Will Reynoir (about Harrison White) on March 14, 2022. Jane Doe sought the restraining order on March 16, 2022, specifically requesting that Plaintiff permanently stay away from her friends. Jane Doe also told Harrison White that some of the witnesses in the investigation were getting calls from Plaintiff and the types of questions that Plaintiff was asking the witnesses. White did not refer to these questions as intimidating nor did he express feeling intimidated as opposed to wanting to help Jane Doe instead of Plaintiff. Jane Doe discouraged Mr. White from speaking to Plaintiff. Prior to Harrison White's interview with the Tulane investigator, Jane Doe shared her written complaint with White.

6. On March 16, 2022, Jane Doe told Tulane's Interim Assistant Provost for Title IX that she was downtown filing a restraining order.

7. On March 17, 2022, Christopher Zacharda informed Plaintiff that he had a copy of the restraining order.

8. Jane Doe filing of the petition in Louisiana civil court was used as evidence in the Tulane investigation.

9. Jane Doe did not appear to inform Tulane that she did not show up at the court hearing or that the petition was dismissed due to her failure to appear because that information was not included in the Tulane investigation report.

10. Jane Doe could have shown up at the hearing, but elected not to do so, as evidenced by Plaintiff seeing her at the airport when he was in Louisiana for the court hearing.

**INTERROGATORY NO. 5:**

State the bases for Your claim of civil conspiracy as alleged in the First Amended

Complaint, including by identifying and describing the substance of any Communications of

which You are aware between or on behalf of Defendant Jane Doe and Sue Roe.

> **RESPONSE**:
> Plaintiff objects to this contention interrogatory as premature as discovery has just
> commenced in this action. On this ground, Plaintiff need not respond to Defendant's
> request for the "bases" of civil conspiracy claim at this stage of the action. *See Layne Heavy
> Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018)
> ("Premature contention interrogatories may not be propounded."). Without waiving this
> objection, Plaintiff refers Jane Doe to Paragraphs 55-67 of the Complaint. Jane Doe and
> Ms. ███████ further acted in unison during the Tulane investigation. Jane Doe
> coordinated the date and timing of Ms. ███████ interview with the Tulane investigator
> and told the investigator to "prioritize," Ms. ███████ interview over hers. Jane Doe also
> discussed the ███████ allegations in her interview in the Tulane investigation though she
> had no personal, firsthand knowledge of what happened between Ms. ███████ and
> Plaintiff. When Tulane raised the issue of informal resolution during the disciplinary
> process, Jane Doe told Chris Zacharda she <u>and</u> Ms. ███████ had decided that "we want
> this to be formally resolved."

**INTERROGATORY NO. 6:**

Identify all forms of emotional distress that You have experienced as a result of

Defendant Jane Doe conduct as alleged in the First Amended Complaint, including any mental

health conditions that You have experienced and any physical symptoms or manifestations that

You have experienced as a result of the mental health conditions.

> **RESPONSE:**
> In March 2022, Plaintiff experienced a significant weight loss of 20-30 pounds. He
> suffered bouts of depression periodically in 2022. During the investigation he had periods
> of insomnia.
> He presently has anxiety as a result of being falsely accused, including concerns about his
> ability to obtain and maintain employment, getting into law school, becoming a lawyer,
> new romantic partners learning about the allegations, new friends learning about the
> allegations and the future threat of Jane Doe making false and defamatory remarks about
> him. Plaintiff also experiences feelings of loneliness and isolation. He also feels a deep
> sense of despair over his friends recommending he withdraw from Tulane, lost
> friendships, not walking at graduation, not being able to pursue graduate studies at Tulane,
> being banned from Tulane's campus, lost career opportunities and his removal from

student organizations. Rumors also circulated that Plaintiff's friends kicked him out of the house, which did not happen.

**INTERROGATORY NO. 7:**

Identify any therapy that You have sought for any mental health conditions or emotional distress that You have experienced as a result of Defendant Jane Doe conduct as alleged in the First Amended Complaint (including the name of Your therapist and the frequency of and period during which You received such therapy), any diagnosis of a mental health condition or emotional distress by a mental health professional, any medications You have taken to address the mental health condition or emotional distress You have experienced (including when and by whom they were prescribed), and any other persons to whom You have confided about your mental health condition or emotional distress and the content of any such non-privileged Communications.

**RESPONSE**: ███████████
Plaintiff has not been diagnosed with any mental health condition and does not take medication for any mental health condition. ██████████████████████
████████████████████████████████████
████████████████████████ Plaintiff has discussed the above described feelings of emotional distress with his parents. Plaintiff refers Jane Doe to his initial disclosures which identify the friends that have information concerning the impact of her accusations on him.

**INTERROGATORY NO. 8:**

State all amounts being sought by You from Defendant Jane Doe as damages or otherwise in this case, including a breakdown of each amount being sought and the bases for seeking such amounts.

**RESPONSE**:
Plaintiff refers Jane Doe to his initial disclosures.

10

## INTERROGATORY NO. 9:

Identify any graduate school programs to which You have applied, including the graduate schools to which You applied and the month and year in which You applied, and the graduate school admissions decisions on those applications, as well as any graduate schools that You attended, the dates of attendance, and any graduate degrees attained.

**RESPONSE**:
None.

## INTERROGATORY NO. 10:

Identify any jobs for which You have applied since January 2021, including the potential employers to whom You have applied, and the employment decisions made by those employers.

**RESPONSE**:
The following is a non-exhaustive list based on Plaintiff's present recollection:

- Mathnasium - Hired
- Blueprint Test Prep - Hired
- Sports Info Solutions - Hired
- Pro Football Focus - Hired
- SevenRooms - Hired
- Lululemon - Hired
- State & Liberty - Hired
- Harvey AI - Sales Development Rep - Rejected
- Pave - Sales Development Rep - Rejected
- New York Yankees - Associate, Baseball Operations - Rejected
- Amplitude - Sales Development Rep - Rejected
- OneSignal - Withdrew Application
- Salesforce - Business Development Representative - Rejected
- Databricks - Business Development Representative - Rejected
- Merge - Sales Development Represented - Offered

11

- Topline Pro - Full Sales Cycle - Withdrew

- Autogen AI - Business Development Representative - Rejected

- Tennessee Titans - Paralegal - Rejected

- Datasite - Business Development Representative - Rejected

- Expert Institute - Business Development Representative - Rejected

- Snorkel AI - Business Development Representative - Rejected

- Synthesia - Sales Development Representative - Rejected

- Traba - Sales Development Representative - Rejected

- Labelbox - Sales Development Representative - Rejected

- Box - Business Development Representative - Rejected

- Instabase - Business/Sales Development Representative - Rejected

- Glean - Business Development Representative - Rejected

- Hightouch - Business/Sales Development Representative - Rejected

- Roboflow - Sales Development Representative - Rejected

- Juniper - Sales Development Representative - Rejected

- Navan - Sales Development Representative - Withdrew

- Golden Goose - Retail Specialist (Rejected) - Rejected

- Rag n Bone - Sales Specialist (Part Time) - Rejected

**INTERROGATORY NO. 11:**

Identify Your employers and the dates and places of employment since January 2022, including the income that You have earned each month.

**RESPONSE:**

Plaintiff objects to this interrogatory on the ground that its request for the income that he earned each month since January 2022 seeks financial information at a level of detail that is unnecessary, overly burdensome, oppressive and harassing. Plaintiff will not provide this information. Plaintiff will be producing his tax returns. Plaintiff responds as follows:

Mathnasium ($15/hour) – February 2023-August 2023

Lululemon (~$17.20/hour + commission) – February 2023-August 2024

Sports Info Solutions (~$12/hr)– August 2024-February 2025

State & Liberty (~$22/hr) – June 2024-April 2025

Blueprint Test Prep ($40/hr) – January 2025-present

SevenRooms (Salary $68,000 + commission) – March 2025-present

**INTERROGATORY NO. 12:**

State by month any income that You have received from sources other than any jobs that You have held since January 2022, including the source(s) of such income.

**RESPONSE:**

Plaintiff objects to this interrogatory as vague. Plaintiff objects to this interrogatory on the ground that its request for the income that he earned each month since January 2022 seeks financial information at a level of detail that is unnecessary, overly burdensome, oppressive and harassing. Plaintiff also objects to this interrogatory on the ground that it requests information that is not relevant to any claim or defense in this action. Plaintiff will not provide a response to this interrogatory.

13

**INTERROGATORY NO. 13:**

Describe the events of February 2 and 3, 2022 as they relate to the allegations in the First Amended Complaint, including the locations and venues (*e.g.*, restaurants, bars, houses, or fraternities) You visited and the approximate times You visited those places as well as the persons who were with You at those locations and venues.

> **RESPONSE:**
> Plaintiff directs Jane Doe to the following documents that are responsive to this interrogatory and provide contemporaneous evidence concerning the events in question: 1) Plaintiff's written responses to Tulane Investigator Jacqueline Barber's written questions (████_004166-472); 2) Plaintiff's written response to the evidence collected during the Tulane investigation (████_1058-1064); and 3) Plaintiff's written responses to additional questions from Jacqueline Barber (████_01056-1057). Plaintiff has requested that ████ produce unredacted copies of the documents and communications in its production concerning Tulane's investigation of the Jane Doe and ████ complaints, including the documents cited herein. This is because Plaintiff noted errors in the redactions, including ████ reference to Jane Doe as "Jane Roe." In the interim, Plaintiff will provide the documents referenced herein while reserving all rights with respect to the existing redactions.

**INTERROGATORY NO. 14:**

Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (*e.g.*, whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on February 2 and 3, 2022.

> **RESPONSE:**
> Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory.

14

**INTERROGATORY NO. 15**:

Describe all sexual activity in which You engaged on February 2 and 3, 2022, including

the sexual activity with Defendant Jane Doe

**RESPONSE**:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action in its request for the details of sexual activity that Plaintiff engaged in with persons other than Jane Doe Even if Plaintiff were required to respond, Plaintiff will not provide the explicit details of his activities with any nonparty during the timeframe in question.

**INTERROGATORY NO. 16:**

Identify all persons with whom You Communicated about the sexual activity in which

You engaged on February 2-3, 2022 and the substance of those Communications.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this request on the ground to the extent that it seeks information protected by the attorney-client privilege. Plaintiff further objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action in its request for information about sexual activity other than with Jane Doe

**INTERROGATORY NO. 17:**

Describe the events underlying the allegations made against You by Sue Roe, including

the sexual activity in which You engaged, the Communications that You exchanged with Sue

Roe following the sexual activity and the reasons for the statements that You made in those

Communications, and the Communications that You had with other persons regarding the sexual

activity with Sue Roe and the reasons for the statements that You made in those

15

Communications.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this interrogatory on the ground that it is unduly burdensome in its request for a description of statements contained in documents and communications that speak for themselves and are the best evidence of what was stated during the timeframe in question.

## INTERROGATORY NO. 18:

Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (*e.g.*, whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on August 22 and 23, 2021.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

## INTERROGATORY NO. 19:

Identify all non-privileged Communications between You and other persons concerning or relating to any claim or defense in this case, including the date of the Communication, the nature and content of the Communication, where the Communication occurred, and the identity of all participants in and any witnesses to the Communication.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and will not provide a written response. Plaintiff objects to this interrogatory on the grounds that is overly broad, unduly burdensome and not proportional to the needs of the case because it

16

would require Plaintiff to list every communication in his production and productions made by other parties, including Defendant's production. The information requested is further obvious on the face of any documents or communications produced in this action. Plaintiff will not respond to this interrogatory for all of the aforementioned reasons.

## INTERROGATORY NO. 20:

Identify the forms of social media and methods of Communication (*e.g.*, email, text messages, Twitter/X, Facebook, Instagram, Snapchat, and TikTok) that You used between August 2018 and present, including the phone numbers and usernames for each form of social media or Communication.

### RESPONSE:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response.

Plaintiff objects to this interrogatory as overly broad in its request for information dating back to 2018, which pre-dates the events at issue in this action. Plaintiff further objects on the ground that this interrogatory seeks information that is not relevant to any claim or defense in this action.

## INTERROGATORY NO. 21:

Identify all complaints or suggestions of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact of which You have been subject or in which You have in any way been involved, without limitation as to time period and irrespective of whether the complaint resulted in legal or administrative consequences or whether You believe that those complaints or suggestions were warranted or otherwise justified.

### RESPONSE:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was exceeded in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response.

17

Plaintiff objects to this interrogatory as vague in its request for information about "suggestions" of sexual abuse, sexual misconduct, sexual harassment and sexual assault such that Plaintiff cannot respond. Plaintiff further objects to this interrogatory on the ground that "unwanted physical contact" is vague and ambiguous. Plaintiff also objects to this interrogatory on the ground that it is overly broad with respect to timeframe and seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects on the ground that this interrogatory calls for legal conclusions. Plaintiff also objects to the term "sexual misconduct" as vague.

Dated: May 4, 2025

       /s/ Kara L. Gorycki
      Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

       -and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

## <u>VERIFICATION</u>

I, the undersigned, John Doe          , hereby declare under penalty of perjury the following:

1.      I am the plaintiff in this action.

2.      I have reviewed the foregoing Plaintiff's Objections and Responses to Defendant Jane Doe  Interrogatories. The responses contained therein are true and correct to the best of my knowledge, information and belief.

Executed on the  4  day of May, 2025.

<div align="right">

John Doe
_____
John Doe

</div>

# IN THE UNITED STATES DISTRICT
## COURT FOR THE EASTERN DISTRICT
## OF LOUISIANA[1]

|  |  |
|---|---|
| John Doe<br><br>    Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>    Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br>**SECTION: P (3)**<br>**JUDGE DARREL JAMES PAPILLION**<br>**MAG. JUDGE EVA J. DOSSIER** |

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S
## FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

John Doe          by and through his attorneys Nesenoff & Miltenberg, LLP and

Marcelle Robertson Mestayer LLC hereby objects and responds to Defendant <sup>Jane Doe</sup>

First Set of Requests For Production.

Plaintiff's search for, and review of, documents and communications that are responsive to Defendant's requests is ongoing and Plaintiff's production will be made on a rolling basis after the parties agree upon a protective order for certain categories of information. No representation below that Plaintiff will produce any particular category of documents is a representation that Plaintiff has said category of documents in his possession, custody and control. Plaintiff will update his responses to Defendant's requests when his productions are complete.

---

[1] Jane Doe document requests incorrectly cite the Southern District of Texas as the court in which this case is pending.

1

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

## SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Plaintiff objects to the definition of "You," "Your" and "Plaintiff" to the extent that it seeks documents and communications protected by the attorney-client privilege, work product, trial preparation materials or any other applicable privilege.

2.      Plaintiff objects to the definition of "Communication" and "Communications" as seeking information that does not exist in a format that can be produced in discovery—discussions, conversations, understandings, telephone conversations and oral communications.

3.      Plaintiff objects to the definition of "Document" and "Documents" as seeking information in a format that cannot be produced in discovery—"oral" material, "Communications," conversations, discussions, understandings, telephone

2

conversations. Plaintiff further objects to this definition as vague in its request for "any other material similar to any of the foregoing." Plaintiff also objects to this request on the ground that it seeks information outside the scope of FRCP 34(a)(1) in its request for information to which Plaintiff "can obtain access reasonably." Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action and is overly broad and unduly burdensome in its request for "posts, reposts, comments, and direct messages on all social media platforms."

4. Plaintiff objects to Instruction Number 1 on the ground that it misstates that Plaintiff is required to produce "all documents responsive to one or more of the Requests." As a reminder, FRCP 34 states as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

5. Plaintiff objects to Instruction Number 5 on the ground that the requested log is not required by FRCP 34 or any Local Rule.

6. Plaintiff objects to Instruction Number 8 on the ground that it seeks information and directs action that is not required to be provided under Rules 26 and 34 of the Federal Rules of Civil Procedure.

7. Plaintiff objects to Instruction Number 12 on the ground that the timeframe set forth therein is overly broad in that no event that is potentially relevant

3

to any claim or defense in this action occurred prior to September 2019. This objection

is incorporated into each response set forth below.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1.      All Documents produced by You in the ███████ Litigation.

**RESPONSE:**
Plaintiff objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff has produced P0000001-524 with these objections and responses. Any documents or communications that are subject to the Amended Protective Order entered in the ███████ Litigation are labeled accordingly and should be kept Confidential. Discovery in the ███████ Litigation is ongoing.

2.      All Documents identified in, consulted for, or related to Your First Amended Complaint in this litigation.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product. Plaintiff also objects to this request on the ground that it is vague in its request for documents "related to" the First Amended Complaint. Without waiving these objections, and subject to the entry of an appropriate protective order, Plaintiff will produce any nonprivileged, relevant documents and communications that are in his possession, custody or control.

3.   All Documents identified in, consulted for, or related to Your Initial Disclosures in this litigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product. Plaintiff also objects to this request on the ground that it is vague in its request for documents "related to" his Initial Disclosures. Plaintiff also objects to this request a premature as expert disclosures are not yet due in this action. Without waiving these objections, and subject to the entry of an appropriate protective order, Plaintiff will produce the documents identified in Point II of his Initial Disclosures. Plaintiff also refers Defendant to his production in the ███████ Litigation, P0000001-524.

4.  All Documents identified in, consulted for, or related to Your responses to

4

Defendant's First Set of Interrogatories and any subsequent interrogatories in this litigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product. Plaintiff also objects to this request on the ground that it is vague in its request for documents "related to" his response to Defendant's First Set of Interrogatories. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are identified in Plaintiff's interrogatory responses or otherwise responsive to this request. Plaintiff also refers Defendant to his production in the ███ Litigation, P0000001-524

5. All Documents or Communications referring or relating to Defendant Jane Doe including all Communications between You and Jane Doe

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

6. All Documents or Communications related to Your application for and admission to Tulane University, including all Documents You signed to finalize Your enrollment.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff located a single email about his application status which will be produced. Plaintiff does not have access to his application files, which are in Tulane's possession, custody and control.

7. Documents sufficient to identify Your extracurricular memberships and activities and any academic or other awards or citations You received during Your enrollment at Tulane University.

**RESPONSE**:
Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

8. Documents sufficient to identify Your academic standing and expected

5

graduation date, including all grade and similar reports.

RESPONSE:

Plaintiff objects to this request on the ground that it is overly broad and unduly burdensome in its request for "documents sufficient to identify Your academic standing and expected graduation date, including all grade and similar reports." Without waiving this objection, Plaintiff refers Defendant to P000453-454 in the ██████ production. Plaintiff will also produce a copy of his academic transcript subject to the entry of an appropriate protective order in this case.

9. All Documents or Communications related to any disciplinary actions or misconduct investigations, formal or informal, in which You were involved in any way during Your enrollment at Tulane University.

RESPONSE:

Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff also objects to this request on the ground that it is vague in its request for information concerning "informal disciplinary actions or misconduct investigations." Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request. Plaintiff refers Defendant to Plaintiff's production in the ██████ Litigation. Plaintiff will also produce relevant and responsive documents that were produced by ██████ in the ██████ Litigation pursuant to the parties' agreement with ██████ that documents produced by the ██████ may be used in this litigation. Plaintiff has objected to ██████ redaction of documents and communications in the ██████ Litigation because of a number of errors in the redactions and on the ground that the redactions render many of the documents and communications illegible. Plaintiff reserves all rights with respect to this issue.

10. All Documents or Communications related to Sue Roe, including all Communications with Sue Roe.

RESPONSE:

Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the

6

ground that it is vague in its request for information "related to" Sue Roe. Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

11.     All Documents or Communications referring or relating to Your whereabouts and activities on August 23, 2021, including what You ate and drank or otherwise ingested on that date.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that may exist and are responsive to this request.

12.     All Documents or Communications constituting or referring or relating to all text messages You sent to or received from Sue Roe.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it is nonsensical in its request for documents or communications "constituting" all text messages between Plaintiff and Sue Roe. Plaintiff further objects to this request as vague in its request for information "relating to" text messages between Plaintiff and Sue Roe. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

13.     All Documents or Communications referring or relating to Your whereabouts and activities on January 27, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these

7

objections Plaintiff will produce any non-privileged, relevant documents and communications which may exist and are responsive to this request.

14. All Documents or Communications referring or relating to Your whereabouts and activities on January 29, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff will produce any nonprivileged, relevant documents that may exist and are responsive to this request.

15. All Documents or Communications referring or relating to Your whereabouts and activities on February 2, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff will produce any non-privileged, relevant documents that are responsive to this request which may exist.

16. Documents or Communications sufficient to identify all persons with whom You interacted on the evening of February 2, 2022, including at each location You visited and each event You attended, as discussed in Paragraph 26 of the First Amended Complaint.

**RESPONSE**:
Plaintiff objects to this request on the ground that it is overly broad and unduly burdensome in its request for information about "all persons" with whom Plaintiff interacted on an evening that occurred over three years ago. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce any nonprivileged, relevant documents and communications that may exist and are responsive to this request, subject to the entry of an appropriate protective order in

8

this case.

17.    Documents or Communications sufficient to identify the time You left for,

arrived at, and left Defendant Jane Doe house on February 2, 2022 or February 3, 2022.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession, custody and control. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

18.    All Documents or Communications referring or relating to any person, adult or

minor, who has accused You, formally or informally, of sexual abuse, sexual misconduct, sexual

harassment, sexual assault, or other unwanted physical contact.

**RESPONSE**:
Plaintiff objects to Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff states that, apart from documents and communications concerning Jane Doe and Ms. ████████ allegations against him, Plaintiff has no documents or communications that are responsive to this request.

19.    All Documents or Communications related to the information "spreading around

the school alleging that [You] had sexually assaulted a female student," as discussed in

Paragraphs 33–35 of the First Amended Complaint.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information in Defendant's possession, custody and control. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

20.    All Documents or Communications related to revocation or suspension of Your

membership in or association with social or academic organizations at Tulane University.

**RESPONSE**:
Plaintiff objects to this request on the ground that it is overly broad as to the

9

timeframe requested and, in this respect, seeks information that is not relevant to any claim or defense in this action. Plaintiff also objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents and communications concerning any organizations which revoked, suspended or terminated his membership between January 1, 2022 and May 1, 2022.

21. All Documents or Communications related to Your withdrawal from Tulane University.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not within Plaintiff's possession, custody or control. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents and communications that are responsive to this request.

22. All Documents or Communications related to the charges against You for violating the Tulane University Code of Conduct.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it is so vague that Plaintiff cannot discern what is being requested as it references "the charges" against Plaintiff. Plaintiff further objects to this request on the ground that, from what can be inferred, the request is duplicative of Request Number 9. Plaintiff is unable to respond to this request as written.

23. All Documents or Communications evidencing, reflecting, or referring to Your participation in or failure to participate in the Tulane Investigation, including the proposed interview with Jacqueline Barber.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

10

24.    All Documents or Communications reflecting or relating to disciplinary action against You as a result of the Tulane Investigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request. Plaintiff refers Defendant to the documents and communications he produced in the ███ Litigation.

25.    All Documents or Communications evidencing, reflecting, or referring to any relationship, correspondence, or coordination of any sort at any time between Defendant <sup>Jane Doe</sup> and Sue Roe.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is within Defendant's possession, custody or control, particularly since Defendant obstructed Plaintiff's efforts to obtain this information pursuant to document subpoenas served on Defendant, and on ███████ , in the ████ Litigation. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

26. All Documents or Communications reflecting, referencing, or relating to any meetings or Communications (written or oral), in which You were a participant or privy to the Communication, regarding the Tulane Investigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

27.    All Documents or Communications reflecting, referencing, or related to any diagnosis of or treatment for emotional distress resulting from Defendant Jane Doe statements regarding You.

11

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff states that he has no documents or communications concerning a particular mental health diagnosis but he will produce non-privileged, relevant documents that are responsive to the second part of the request relating to emotional distress, subject to the entry of an appropriate protective order in this case.

28.     All Documents or Communications evidencing or referring or relating to any emotional distress resulting from Defendant Jane Doe statements regarding You.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents or communications that are responsive to this request, subject to the entry of an appropriate protective order in this case.

29.     All Documents reflecting or referring or relating to any graduate school programs to which You have applied, scores or results of any related entrance examinations, and the graduate school admissions decisions on those applications.

**RESPONSE**:
Plaintiff has no documents that are responsive to this request.

30.     All Documents reflecting or referring or relating to any job applications You have submitted since January 2021, the potential employers to whom You have applied, and the employment decisions made by those employers.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action and is overly broad in its request for information dating back to January 2021. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents or communications that are responsive to this request from January 1, 2022, subject to the entry of an appropriate protective order in this case.

31.     All statements taken of any party or of any persons having information regarding

Defendant Jane Doe Sue Roe, or this litigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession. Without waiving this objection, Plaintiff has not taken statements from any party or person with information relating to Jane Doe, Sue Roe or this litigation and, accordingly, has no documents that are responsive to this request. ▇▇▇▇ production contains statements taken by investigator Jacqueline Barber during her investigation of the ▇▇▇▇ and <sup>Jane Doe</sup> complaints. Subject to any objections by ▇▇▇, Plaintiff will produce these statements.

32.     All Documents or Communications reflecting, referencing, or relating to any investigation performed by You regarding Defendant <sup>Jane Doe</sup>

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff will not produce any documents or communications in response to this request.

33.     All Documents or Communications reflecting, referencing, or relating to any investigation performed by You to determine or analyze the veracity of Defendant Jane Doe statements regarding You.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff will not produce any documents or communications in response to this request.

34.     All Documents reflecting, referencing, or related to any meetings or Communications (either written or oral), in which You were a participant or privy to the Communication, regarding Defendant Jane Doe

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the ground that it is duplicative of Request Number 5. Plaintiff also objects to this request on the ground that it is unclear exactly what is

13

being requested and, accordingly, Plaintiff will not respond to this request.

35.     All Documents reflecting, referencing, or related to any meetings or

Communications between You and others regarding Defendant Jane Doe

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the ground that it is duplicative of Request Number 5. Plaintiff will not specifically respond to this request. To the extent Plaintiff has any non-privileged, relevant documents that are responsive to this request they will be produced in response to Request Number 5.

36.     All tax forms or other Documents sufficient to show income earned by month

since January 2022.

**RESPONSE**:
Plaintiff objects to this request as unduly burdensome in its request for documents sufficient to show income earned by month. In response to this request, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce copies of his tax returns.

37. All Documents on which You intend to rely at trial or otherwise in this litigation.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request as premature. Defendant will receive copies of Plaintiff's trial exhibits in accordance with the Scheduling Order and Pre-Trial Notice entered in this case.

Dated: May 5, 2025

      /s/ Kara L. Gorycki
       Kara L. Gorycki (admitted pro hac vice)
    Nesenoff & Miltenberg, LLP
    363 Seventh Avenue, Fifth Floor
    New York, New York 10001
    Telephone:(212)736-4500
    Email: kgorycki@nmllplaw.com

        -and-

14

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

*Attorneys for Plaintiff* John Doe

## Woods, Ashton

| | |
|---|---|
| **From:** | Kara Gorycki <KGorycki@nmllplaw.com> |
| **Sent:** | Thursday, May 22, 2025 7:02 AM |
| **To:** | Franicevic, Zora F; Alex Robertson |
| **Cc:** | Roman, Neil; Shah, Komal; Van, Shanelle; Woods, Ashton; Caroline Murley; Jared Davidson |
| **Subject:** | RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ███ Protective Order - Confidential |

[EXTERNAL]
Got it, thanks.



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Franicevic, Zora F <ZFranicevic@cov.com>
**Sent:** Wednesday, May 21, 2025 11:11 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Alex Robertson <alex@mrmlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Woods, Ashton <AWoods@cov.com>; Caroline Murley <cmurley@twpdlaw.com>; Jared Davidson <jdavidson@twpdlaw.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ███ Protective Order - Confidential

Kara,

Please see our responses to your two questions below in red.

- The basis for Plaintiff's response that he is unable to respond to RFP 22 "as written";
  - What are the charges against Plaintiff?
  - <span style="color:red">The charges are those brought by the Office of Student Conduct of Tulane University against Plaintiff, which include charges of non-consensual sexual contact, non-consensual sexual assault, and lewd/obscene conduct.</span>
- The basis for Plaintiff's objection that RFP 34 is "unclear";

- o Is this request for documents and communications concerning meetings about Jane Doe When you say "privy to" are you referring to documents and communications about meetings about Jane Doe that were shared with Plaintiff? It is very poorly worded so that is what is meant by "unclear."
- o <span style="color:red">This request asks for any documents reflecting, referencing, or related to any meetings or communications about Defendant that Plaintiff participated in or otherwise was privy to, which would include any such documents or communications that were shared with Plaintiff or that Plaintiff received, was copied on, overheard, or otherwise had knowledge of.</span>

We also reviewed your letter regarding Plaintiff's position on Defendant's number of interrogatories. As discussed on our meet and confer call, Defendant maintains that her first 13 interrogatories contain subparts that are logically or factually subsumed within or necessarily related to the primary question. For instance, Plaintiff's allegation that Interrogatory No. 2, which asks Plaintiff to "[s]tate the bases for Your claim of defamation against Defendant Jane Doe as alleged in the First Amended Complaint, including identification of every allegedly false and defamatory statement made by Jane Doe of which You are aware," contains two separate interrogatories is contrary to the case law in the Eastern District of Louisiana. The identification of alleged defamatory statements is clearly related to and necessary to fully and completely answering a question about Plaintiff's bases for his claim of defamation.

After further review of the interrogatories, and in the spirit of cooperation, Defendant is willing to stipulate that Interrogatory No. 7 contains two separate interrogatories rather than one: (1) the identification of any therapy sought, and any resulting diagnoses for a mental health condition or emotional distress or any resulting medications taken to address such conditions; and (2) the identification of other persons to whom Plaintiff confided in about his mental health condition or emotional distress and the contents of such communications. Please let us know if you agree or would like to discuss.

Best,
Zora

**Zora Franicevic**
Pronouns: She/Her/Hers

Covington & Burling LLP
The New York Times Building, 620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1209 | zfranicevic@cov.com
www.cov.com

**COVINGTON**

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Tuesday, May 20, 2025 5:44 PM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: Jane Doe Litigation - Attachments Subject to ███ Protective Order - Confidential

<mark>[EXTERNAL]</mark>

2



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Friday, May 16, 2025 3:47 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▓▓▓▓ Protective Order - Confidential

Kara,

Attached please find our revisions to the draft protective order.   Please provide the following outstanding responses to our email by Wednesday, May 21:

- A breakdown and analysis of the interrogatories alleged to be violative of Federal Rule of Civil Procedure 33, and supporting authority from the Eastern District of Louisiana;
  **This has been sent.**
- Plaintiff's bases for narrowing the timeframe in responses to RFPs 20 and 30;
  **Plaintiff withdraws this objection with respect to each request.**
- The basis for Plaintiff's response that he is unable to respond to RFP 22 "as written";
  **What are the charges against Plaintiff?**
- The basis for Plaintiff's objection that RFP 34 is "unclear";
  **Is this request for documents and communications concerning meetings about Jane Doe When you say "privy to" are you referring to documents and communications about meetings about Jane Doe that were shared with Plaintiff? It is very poorly worded so that is what is meant by "unclear."**
- Whether Plaintiff will be withholding any non-privileged documents responsive to RFPs 2, 4, 5, 7, 9, 10, 11, 12, 13, 14, 15,16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 35, and the basis for doing so.  If we don't hear from you by Wednesday, May 21, we will assume your position has unchanged from the below, and will proceed accordingly. **There is no basis for "proceeding" with respect to Plaintiff's responses to Defendant's document requests. As we discussed more than once, we are continuing our review and will update our responses once the productions have been completed.**

Thanks,

Komal

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Friday, May 16, 2025 7:17 AM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ▮▮▮▮ Protective Order - Confidential

<mark>[EXTERNAL]</mark>
See comments below. As noted in our meet and confer I will be following up with correspondence addressing the various issues with Defendant's objections and responses to Plaintiff's document requests.



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Wednesday, May 14, 2025 3:06 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ▮▮▮▮ Protective Order - Confidential

Kara,

Below we summarize the parties' positions on the discovery issues discussed on our call on Monday, May 12.

- Sealing issues:
    - The parties agreed to raise sealing issues with the Court and to request guidance. Plaintiff will send Defendant his availability to meet with the Court, and Defendant will copy Plaintiff on any requests to the Court regarding a conference to discuss sealing.

4

**Jared pointed out that we are subject to the judge's schedule so it was my understanding that we would request a conference without my schedule. Also, that the protective order could guide the discussion with the Judge on how to handle the sealing issue.**

- o The parties are amenable to entering into a protective order, subject to Defendant's review of Plaintiff's draft. Defendant will send Plaintiff her thoughts on the draft protective order by the end of the week.
  **Looking forward to seeing these today**.

- Status of Document Productions:
  - o Plaintiff confirmed that P0000001-524 constitutes the entirety of documents that he has produced to █████
  - o Defendant is still collecting potentially responsive documents, but plans to make an initial production this week. **Looking forward to receiving this today.**
  - o Plaintiff plans to make a production of text messages to Defendant on Friday, May 16 or Monday, May 19 at the latest.
    **Without an agreed upon protective order we will not be producing. The judge does not have to so-order before we produce. I also did not say "at the latest." We will make productions on a rolling basis. My vendor will be able to get the production together by next Wednesday or Thursday providing that the protective order is agreed upon by then.**
  - o Both parties confirmed that they will produce a privilege log for documents redacted or withheld from their productions and that neither party is required to log privileged documents that post-date the filing of this lawsuit. The parties will discuss the format of the privilege log at a later date.

- Social media documents:
  - o Both parties are collecting documents from their social media accounts and upon completion of that process will produce all non-privileged responsive documents.

- Defendant's First Set of ROGs:
  - o ROG 1
    - Plaintiff confirmed that his initial disclosures identify all persons who he believes have knowledge, information, or documents relating to the claims and defenses in this litigation regardless of whether the person supports his claims or Defendant's defenses.
  - o ROGs 14-21
    - Plaintiff's position is that Defendant exceeded her allotment of 25 interrogatories in her first 13 interrogatories, whereas Defendant maintains that her first 13 interrogatories contain discrete subparts that are logically and factually subsumed within and related to the primary question. Plaintiff agreed to provide Defendant with a breakdown and analysis of the interrogatories alleged to be violative of Federal Rule of Civil Procedure 33 this week. Plaintiff also indicated that there is case law in the Eastern District of Louisiana supporting Plaintiff's position, and we would appreciate your sending that authority before the end of the week so that we can consider it before moving to compel.
      **I am tied up on other matters and will send over as soon as I can.**
  - o ROG 16

- Plaintiff confirmed that his relevance objection concerns the relevance of Plaintiff's communications about sexual activity with persons other than Jane Doe and not to Plaintiff's communications about sexual activity with Jane Doe
- ROGs 17-18
  - Plaintiff indicated that he will be prepared to discuss his relevance objections to ROGs 17 and 18 following resolution of the parties' disagreement regarding Plaintiff's allegation that Defendant exceeded her allotment of interrogatories.
- ROG 20
  - Plaintiff indicated that he will be prepared to discuss his objections to ROG 20 following resolution of the parties' disagreement regarding Plaintiff's allegation that Defendant exceeded her allotment of interrogatories. Plaintiff also offered to discuss the forms of his social media accounts with Defendant in the interim.
- ROG 21
  - Plaintiff clarified that his vagueness objection concerns the term "sexual misconduct." Defendant disagrees that the term is vague or ambiguous, but offered to send Plaintiff a definition of "sexual misconduct."

- Defendant's First Set of RFPs:
  - RFPs 20 & 30
    - Plaintiff agreed to send Defendant the basis for narrowing the time period in his responses to RFPs 20 and 30 by the end of the week. **I did not say by the end of the week.**
  - RFP 22
    - Plaintiff agreed to send Defendant the basis for his response that he is "unable to respond to this request as written" by the end of the week. **I did not say by the end of the week.**
  - RFP 34
    - Plaintiff agreed to send Defendant the basis for his objection that the request is "unclear exactly what is being requested" by the end of the week. **I did not say by the end of the week.**
  - RFPs 32 & 33
    - Plaintiff indicated that it is too early in discovery to know whether he will be withholding non-privileged responsive documents to these or other RFPs on the basis that he does not deem them relevant (or perhaps for some other reason). This response is unsatisfactory – Defendant is entitled to know now whether or not she is receiving all responsive non-privileged documents in response to requests and, if not, which ones are being withheld and on what basis. Please clarify this week. **No. You seem to have a disproportionate view of what is required here – your client has provided no information about what is being withheld, produced no documents and no privilege log. As discussed, both parties are continuing to review information and Plaintiff will update his responses to Defendant's document requests when that review is completed.**

Please let us know immediately if you believe that any of the above does not accurately set forth the substance of the call.

Best,
Komal

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Monday, May 12, 2025 4:04 PM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley
<cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>;
Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to █████ Protective Order - Confidential

<mark>[EXTERNAL]</mark>
Counsel,
Attached for your revie is the draft protective order that we discussed earlier today.
Please copy me on any communications with Judge Papillion about scheduling a conference to discuss the filing
of documents referencing the █████ Litigation.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error,
please advise the sender by reply email and immediately delete the message and any attachments without copying or
disclosing the contents.

---

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Monday, May 12, 2025 9:25 AM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley
<cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>;
Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to █████ Protective Order - Confidential

Kara,

During our call later today, we would also like to discuss the following issues with John Doe        responses to
Jane Doe requests for production:

- In responses to RFPs 2, 4, 5, 7, 9, 10, 11, 12, 13, 14, 15,16, 17, 19, 20, 21, 23, 24, 25, 26, 27, 28, 30, and 35,
  John Doe        states that he will produce "non-privileged, relevant" documents that are responsive.  For

each RFP, can you please confirm that John Doe will be producing all responsive documents? If John Doe is withholding any responsive materials, please let us know the basis for doing so.

- Please confirm that John Doe will be producing a privilege log.
- Does P0000001-524 constitute the entirety of documents John Doe has produced to ▮▮▮▮ to date?
- What is John Doe basis for narrowing the time frame for the response to RFP 20 to January 1, 2022 to May 1, 2022?
- What is John Doe basis for narrowing the time frame for the response to RFP 30 to January 1, 2022 to present?
- Why is John Doe unable to produce documents responses to RFP 21 "as written"?
- What is unclear about RFP 34?
- Is John Doe asserting privilege over all documents or communications responsive to RFPs 32 and 33? Please confirm that the basis for those privilege assertions will be included in a privilege log.

Thank you,
Komal

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Thursday, May 8, 2025 9:31 AM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: Jane Doe Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential

<mark>[EXTERNAL]</mark>
Received, thanks.



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500    •    212.736.2260 fax

Vcard    •    nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Thursday, May 8, 2025 9:21 AM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>;

Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▉▉▉ Protective Order - Confidential

Kara,

We can meet from 11-12 on Monday.  I'll send an invite.

Best,
Komal

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Wednesday, May 7, 2025 2:19 PM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▉▉▉ Protective Order - Confidential

**[EXTERNAL]**
Komal,
My schedule this week is very hectic. I have availability on Monday, May 12, between 11:00 a.m.-12:00 p.m.,
1:30 p.m.-2:30 p.m. and 3:30 p.m.-5:00 p.m. Eastern. Wednesday, May 14, also works before 4:00 p.m. Eastern.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500    •    212.736.2260 fax

Vcard    •    nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Wednesday, May 7, 2025 12:10 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▉▉▉ Protective Order - Confidential

Kara,

Are you available on Thursday (tomorrow) to discuss further?  If so, what time?

Thanks,
Komal


**Komal Shah**
Pronouns: She/Her/Hers

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5869 | kshah@cov.com
www.cov.com

## COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Tuesday, May 6, 2025 7:26 PM
**To:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ████ Protective Order - Confidential

<mark>[EXTERNAL]</mark>
Komal,
I checked yesterday's email and it is clear that I inadvertently attached two copies of the interrogatory responses. The email refers to Plaintiff's "discovery responses." I have attached the file that was meant to be attached to yesterday's email.  We have waived nothing. If the ████ production had sufficiently responded to Defendant's document requests than it would be all that need be produced. However, we are not taking that position, as you will see in the attached document.

I will get back to you on the other assertions in your email, including your client's boilerplate and deficient objections to Plaintiff's document requests and failure to produce any documents or communications in this litigation.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Kara Gorycki
**Sent:** Monday, May 5, 2025 5:33 PM
**To:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** ^Jane Doe Litigation - Attachments Subject to ▮▮▮▮ Protective Order - Confidential

Counsel,

Please see attached discovery responses and three documents from ▮▮▮▮ production that are cited in Plaintiff's interrogatory responses.

Below is a link to Plaintiff's production in the ▮▮▮▮ matter:

completelegal.sharefile.com/d-s70af6ddb393b42578ef44cdeb583693f

I will send you the password in a separate email.

Thanks,
Kara

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| John Doe | **)** | CIVIL ACTION NO. 2:24-CV-00825 |
| | **)** | |
| **Plaintiff,** | **)** | SECTION: P (3) |
| | **)** | |
| **v.** | **)** | JUDGE DARREL JAMES PAPILLION |
| | **)** | |
| Jane Doe | **)** | |
| | **)** | MAG. JUDGE EVA J. DOSSIER |
| **Defendant.** | **)** | |
| | **)** | |

**PLAINTIFF'S INITIAL DISCLOSURES**

Plaintiff John Doe by and through his attorneys Nesenoff & Miltenberg, LLP, hereby submits these Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. Plaintiff reserves the right to supplement and/or amend these disclosures based upon subsequently filed and discovered documents and information in this case. The inclusion of any documents or information in this disclosure statement shall not be deemed to waive: (i) the attorney-client privilege and/or work-product doctrine, either generally or as they may pertain to a particular document; and/or (ii) objections to the admissibility of any documents or testimony at trial.

**I.      Rule 26(a)(1)(A)(i)**

The following individuals, as well as those identified in Defendant's initial disclosures, are likely to have discoverable information that Plaintiff may use to support his claims in this action:

| Name | Subjects of Information | Contact Information |
|---|---|---|
| John Doe | Plaintiff | c/o Nesenoff & Miltenberg, LLP |
| Jane Doe | Defendant | c/o Covington & Burling LLP |

1

| Name | Subjects of Information | Contact Information |
|------|------------------------|---------------------|
| Noa Banghart | Conversations with Jane Doe and Ms. ▮▮▮ about Plaintiff; Jane Doe and Ms. ▮▮▮ interactions; Jane Doe interest in Ms. ▮▮▮ allegations; witness in Tulane investigation; provided evidence to Tulane investigator; communications with Jane Doe about this lawsuit and the Tulane lawsuit | c/o Suzanne Montero Sternberg, Naccari & White, LLP 935 Gravier Street, Suite 1800 New Orleans, Louisiana 70112 Main: (504) 324-2141 Direct: (504) 308-1395 Cell: (504) 352-3103 suzy@snw.law |
| ▮▮▮ | Complainant in Tulane disciplinary proceeding against Plaintiff; conversations with N. Banghart about Jane Doe coordination of disciplinary complaints with Jane Doe false accusations against Plaintiff; provided statements and evidence to Tulane during the disciplinary proceedings against Plaintiff | ▮▮▮ |
| Kamran Sakihtab | Individual that Jane Doe accused of sexual harassment/sexual assault as recounted to Plaintiff at the racetrack | Not available |
| Harrison White | Involved in a relationship with Jane Doe reported him to Tulane for COVID-19 violation after they broke up | ▮▮▮ |
| Katy Romano | Conversations with Jane Doe about Plaintiff; conversations with Plaintiff about Ms. ▮▮▮; Ms. Romano's relationship with Harrison White; witness in the Tulane disciplinary proceeding and submitted evidence therein. | ▮▮▮ |
| Marcus Greenstein | Plaintiff's friend and housemate; Plaintiff's interactions with Ms. ▮▮▮; the impact of Jane Doe allegations on Plaintiff's reputation and wellbeing; | ▮▮▮ |
| Madison Green | Plaintiff's friend; Jane Doe allegations and their impact on Plaintiff's reputation | ▮▮▮ |

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Luca Busalacchi | Plaintiff's friend and roommate; information about the ███ allegations; Jane Doe interactions with Plaintiff; impact of Jane Doe allegations on Plaintiff, | ██████████ |
| Tiffany Gradski | Plaintiff's friend; information about Ms. ██████ accusations; Plaintiff's reputation | ██████████ |
| Mariska Voorham | Plaintiff's friend; information about Ms. ██████ allegations | ██████████ |
| Allison Schafer | Friends with Ms. ██████ and Jane Doe ____; allegations against Plaintiff | ██████████ |
| Eugenie McNiff | Jane Doe roommate; witness in Tulane investigation | Uknown |
| Katie Waters | Witness in the Tulane investigation | Unknown |
| Ben Miner | President of ZBT fraternity; knowledge of Jane Doe allegations against Plaintiff | ██████████ |
| Taylor Rappeport | Witness in Tulane investigation | ██████████ |
| Marissa Knell | Case Manager, Tulane University Jane Doe case manager for her disciplinary complaint against Plaintiff | c/o Chaffe McCall |
| Erica Woodley | Dean of Students and Associate Vice President of Student Affairs Tulane University Knowledge of Jane Doe allegations against Plaintiff | c/o Chaffe McCall |
| Christopher Zacharda | Former Director of Student Conduct, Tulane University; oversaw student conduct proceedings against Plaintiff | c/o Chaffe McCall |
| Jacqueline Barber | Former investigator, Tulane University; investigated ██████ and Jane Doe complaints and issued finding | c/o Chaffe McCall |
| Avery Pardee | Acting Appellate Chair in Plaintiff's appeal of Barber's findings | Jones Walker 201 St. Charles Ave New Orleans, LA 70170-5100 D: 504.582.8358 |

3

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Julia Broussard | Chief Title IX Officer, Tulane University Communications with Jane Doe about her allegations the student conduct process and advocacy initiatives on campus | c/o Chaffe McCall |
| Hannah Blalack | Served as witness for Jane Doe Petition for TRO in Louisiana Civil Court | Unknown |
| Will Reynoir | Plaintiff's friend; knowledge of Jane Doe allegations against Plaintiff and the impact on him | ████████ |
| Matthew Kisin | Showed Plaintiff Jane Doe Instagram post on or about February 7, 2022 | ████████ |
| Noah Siev | Called Plaintiff's parents after Jane Doe allegations circulated around campus | ████████ |
| ████████ | Plaintiff's mother; impact of Jane Doe defamatory statements, conduct proceedings and TRO application on Plaintiff, including Plaintiff's departure from Tulane | ████████ |
| ████████ | Plaintiff's father; impact of Jane Doe defamatory statements, conduct proceedings and TRO application on Plaintiff; Plaintiff's departure from Tulane | ████████ |
| Caleb Deutsch | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goal. | ████████ |
| Harry Wiley | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ████████ |
| Max Ruvo | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ████████ |

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Ben Ruvo | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ████████████ |
| Ben Bailey | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state | ████████████ |
| Kelsey Maloney | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state | ████████████ |
| Sarah Donato | Special Olympics Co-President with Plaintiff | ████████████ |
| ███████████ | ███████████ | ████████████████ |
| Lindsay Bilger | Physician's Assistant; saw Plaintiff in April 2022 regarding ██████████████ | ████████████████ |

## II.    Rule 26(a)(1)(A)(ii) Documents:

The following non-exhaustive list enumerates categories of documents, electronic information and other tangible things in the possession, custody or control of Plaintiff and that Plaintiff may use to support his claims in this action:

1. Documents and communications concerning the disciplinary proceedings conducted at Tulane University which arose from Jane Doe complaint against Plaintiff.

2. Documents concerning Jane Doe petition for a TRO.

3. Copies of Jane Doe social media posts from the relevant time period.

4. Text messages between Jane Doe and Plaintiff.

5. Text messages with individuals other than Jane Doe who have knowledge of the events in question.

6. Plaintiff's academic records.

5

7. Documents and communications concerning Plaintiff's damages.

## III.    Rule 26(a)(1)(A)(iii) Damages

Plaintiff anticipates the use of damages expert(s) and will amend these disclosures accordingly. Plaintiff presently seeks damages of at least $2,000,000, comprised of the following:

1. Economic damages resulting from Plaintiff's altered career trajectory and lost educational opportunities.

2. Reputational harm.

3. Emotional distress and attendant physical symptoms including significant weight loss.

4. Attorneys' fees and travel expenses incurred with respect to Jane Doe TRO petition.

5. Attorneys' fees incurred with respect to the Tulane disciplinary proceeding.

Plaintiff also seeks punitive damages.

Dated: April 4, 2025

            /s/ *Kara L. Gorycki*
           Kara L. Gorycki (admitted pro hac vice)
           NY Atty ID: 4140992
           NESENOFF & MILTENBERG, LLP.
           363 Seventh Avenue, Fifth Floor
           New York, New York 10001
           Email: kgorycki@nmllplaw.com
           Telephone: (212) 736-4500

           -and-

           Alex Robertson
           LA Atty ID: 37285
           Email: alex@mrmlaw.com
           Marcelle Robertson Mestayer, LLC
           650 Poydras St. Ste. 2720
           Telephone: (504) 910-6220

           ***Attorneys for Plaintiff***

Original Filed at Docket No. 139,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ████ , <br><br> Plaintiff, <br><br> v. <br><br> ████ , <br><br> Defendant. | CIVIL ACTION <br><br> NO. 24-825 <br><br> SECTION: "P" (3) |

## ORDER

CONSIDERING THE FOREGOING Motion by Defendant ████ for leave to file a response to Plaintiff's Sur Reply (R. Doc. 136);

IT IS HEREBY ORDERED that the Motion is GRANTED. The Clerk of Court is directed to file ████ Response to Plaintiff's Sur-Reply to Defendants' Motion to Modify Scheduling Order (R. Doc. 136-2) and Second Declaration of Kelly Margolis Dagger (R. Doc. 136-3) into the record of the above-captioned matter.

New Orleans, Louisiana, this 4th day of June 2025.

_____

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 140,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | CIVIL ACTION NO. 2:24-CV-00825<br>SECTION: P (3)<br>**JUDGE DARREL JAMES PAPILLION**<br>**MAG. JUDGE EVA J. DOSSIER** |

## RESPONSE TO PLAINTIFF S SUR-REPLY TO DEFENDANTS  MOTION TO MODIFY SCHEDULING ORDER

NOW INTO COURT, comes Defendant Jane Doe , who seeks to submit this Response to Plaintiff's Sur-Reply to  Jane Doe   Motion for Modify Scheduling Order (R. Doc. 133) to include a Second Declaration from  Jane Doe   former counsel of record, Kelly Dagger, attached hereto as Exhibit A.

The Second Declaration clarifies that communications between Ms. Dagger and Ms. Courtney, a colleague of Plaintiff's counsel, were inadvertently omitted from Ms. Dagger's Original Declaration due to an organizational error within Ms. Dagger's file regarding this suit.

Although Jane Doe hin recognizes and respects the need for candor to this Court, thereby requiring this Response and Ms. Dagger's Second Declaration, it bears emphasis that none of the information within Plaintiff's Sur-reply is relevant to the request made in the Motion itself, which seeks to modify the Scheduling Order to allow  Jane Doe   suit to proceed to trial first.  Whether there was a year-long delay or a seven-month delay in discussions concerning the subpoena *d ces tec* issued to Jane Doe  in a separate lawsuit has no bearing on trial order, especially given Plaintiff's recent consent to coordination of discovery efforts amongst the suits.

WHEREFORE, Plaintiff Jane Doe requests that this Court grant her Motion to Modify the

Scheduling Order.

Respectfully Submitted,

/s/      Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM ECF on all counsel of record on this 3rd day of June, 2025.

/s/ *Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe , <br><br> Defendant. | CIVIL ACTION NO. 2:24-CV-00825 <br> SECTION: P (3) <br> JUDGE DARREL JAMES PAPILLION <br> MAG. JUDGE EVA J. DOSSIER |

## SECOND DECLARATION OF KELLY MARGOLIS DAGGER

1. I am a partner in the law firm of Ellis & Winters LLP in Raleigh, North Carolina. I represented Defendant Jane Doe in the above-captioned action from February 2023 (when the action was pending in my home district, the Eastern District of North Carolina) until February 2025.

2. I previously gave a declaration in this case on May 23, 2025. In paragraph 6 of the declaration, I stated, "Neither Ms. Gorycki nor any other counsel for Mr. John Doe followed up on my offer to meet and confer or otherwise responded to my October 13, 2023 letter until nearly one year later." I believed that statement to be true when I made it, based on my recollection of events and my review of my correspondence file.

3. However, I have since reviewed Ms. Gorycki's declaration reciting communications that I had with Ms. Gorycki's colleague, Kim Courtney, in May 2024. Ms. Courtney's communications were not saved in my correspondence file, which I erroneously believed to be complete when I gave my prior declaration. Regretfully, I did not recall these exchanges with Ms. Courtney. I apologize for my oversight. After receiving Ms. Gorycki's declaration, I further searched my email account and located the communications with

**EXHIBIT A**

Ms. Courtney that Ms. Gorycki described in her declaration. Ms. Gorycki's account with respect to these May 2024 communications is accurate to the best of my knowledge.

4. The other events recounted in my first declaration are true and accurate. Neither Ms. Gorycki nor any other counsel for Mr. John Doe followed up on my offer to meet and confer or otherwise responded to my October 13, 2023 letter until May 2024.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of May, 2025 in Raleigh, North Carolina.

Kelly Margolis Dagger

Original Filed at Docket No. 141,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

███████                                   CIVIL ACTION

VERSUS                                     NO.  24-825

███████                                    SECTION:  "P" (3)

## ORDER SETTING ORAL ARGUMENT

**IT IS ORDERED** that oral argument on the Motion to Compel Responses to Written Discovery Requests (R. Doc. 137) will be held on **Tuesday, June 24, 2025, at 2:00 p.m.**, before the undersigned magistrate judge, Courtroom B-305, Hale Boggs Building, 500 Poydras Street, New Orleans, Louisiana 70130. Please note that a photo ID is required to enter the building. **PLEASE ARRIVE TEN MINUTES BEFORE THE SCHEDULED START TIME.**

New Orleans, Louisiana, this 4th day of June, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

*\*\*\*The Court strongly encourages argument by junior attorneys, particularly where the junior attorneys drafted or contributed significantly to the underlying motion or response. Accordingly, if a junior attorney (i.e., a lawyer practicing for less than seven years) argues a motion or opposition for a party, the Court will allow multiple attorneys to argue for that party so that issues can be split between attorneys or a more senior attorney can offer clarification, if necessary.*

Original Filed at Docket No. 142,
Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>        Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Darrel J. Papillion |
| Jane Doe<br>        Defendant. | Magistrate Judge: Eva J. Dossier |

**CONSENT MOTION TO CONTINUE SUBMISSION DATE
AND ASSOCIATED DEADLINES**

NOW INTO COURT, through undersigned counsel, comes Plaintiff,       John Doe       , who respectfully moves this Honorable Court for a continuance of the submission date and associated deadlines concerning    Jane Doe    Motion to Compel [Rec. Doc. 137], and in support states as follows:

1. Jane Doe Motion to Compel is currently set for submission on June 24, 2025, with oral argument also scheduled for that date. The current deadline for filing an opposition is June 16, 2025.

2. Counsel for the parties have conferred, and Defendant    Jane Doe    has agreed to a short continuance of the submission and argument dates to accommodate the schedule of Plaintiff's counsel. *See* Ex. A., Email from Jared Davidson (June 3, 2025).

3. Plaintiff requests that the submission date be continued to July 15, 2025, with the opposition deadline set for July 7, 2025. The parties further request that oral argument be reset to July 15, 2025, to coincide with the continued submission date.

4. This request is made by agreement of the parties and not for purposes of delay.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order continuing the submission date of Plaintiff's Motion to Compel to July 15, 2025 [Rec. Doc. 137], extending the

opposition deadline to July 7, 2025, and resetting oral argument to July 15, 2025, or as soon thereafter as is convenient for the Court.

Respectfully submitted,

*/s/ Alex T. Robertson*
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar No. 37230)
**MARCELLE ROBERTSON MESTAYER LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax:     (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com
*Local Counsel for*     John Doe

*/s/ Kara L. Gorycki*
Kara L. Gorycki (admitted pro hac vice)
**Nesenoff & Miltenberg, LLP**
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe      Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Darrel J. Papillion |
| Jane Doe      Defendant. | Magistrate Judge: Eva J. Dossier |

## **ORDER**

CONSIDERING the foregoing Consent Motion to Continue Submission Date and Associated Deadlines:

IT IS ORDERED that the submission date for Defendant   Jane Doe   's Motion to Compel (Rec. Doc. 137) is CONTINUED from June 24, 2025 to July 15, 2025.

IT IS FURTHER ORDERED that the deadline for Plaintiff to file any opposition to the Motion to Compel is EXTENDED from June 16, 2025 to July 7, 2025.

IT IS FURTHER ORDERED that oral argument on the Motion to Compel is RESET for July 15, 2025 at 2:00 p.m.

New Orleans, Louisiana, this ___ day of _____, 2025.

_____
HON. EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| r | [Jared Davidson](#)<br>[Alex Robertson](#)<br>[Caroline Murley](#); [Cassie Vitrano](#)<br>Motion to Compel [305-105] |
| D | Wednesday, June 4, 2025 4:25:29 PM<br>[TWPD19-01EmailSignature-Master-cropped600dpi-t1_62668cb9-ae55-417a-a7dd-a4920383add1.png](#) |

Alex-

We have no issue moving the submission date to July 15th.  However, we would like the same professional courtesies in exchange, when needed.

Thank you!

Jared



**Jared Davidson**
Partner

504-525-9888 PH
Bio | Website

### 1555 Poydras Street, Suite 2000 | New Orleans LA 70112

Taylor Wellons Politz & Duhe, LLC

This email, and any attachments thereto, was provided by Taylor Wellons Politz & Duhe, LLC and is intended only for use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments thereto is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail and via telephone at 504-525-9888 and permanently delete the original and any copy of any e-mail and any printout thereof.

Original Filed at Docket No. 143,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ████████ | * | CIVIL ACTION |
| VERSUS | * | NO. 24-825 |
| ████████ | * | SECTION "P" (3) |

## ORDER

Before the Court is Plaintiff's Unopposed Motion to Continue Submission Date and Associated Deadlines (Rec. Doc. 142),

**IT IS ORDERED** that the Motion to Continue (Rec. Doc. 142) is **GRANTED**.

**IT IS FURTHER ORDERED** that the submission date and oral argument for the Motion to Compel (R. Doc. 137) is **CONTINUED** to **Tuesday, July 15, 2025, at 2:00 p.m.**[1]

New Orleans, Louisiana, this 6th day of June, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

---

[1] The continuance of the submission date results in the continuance of the briefing deadlines consistent with the Local Rules.

Original Filed at Docket No. 144,
Sealed by Court Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | CIVIL ACTION NO. 2:24-CV-00825<br><br>SECTION: P (3)<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

### DEFENDANT S UNOPPOSED MOTION TO SUBSTITUTE E HIBITS IN SUPPORT OF MOTION TO COMPEL

NOW INTO COURT comes Defendant Jane Doe who respectfully moves this Court to substitute the attached E hibits 2, 3, 4, 5, and 9 to Defendant's Motion to Compel in place of R. Doc. Nos. 137-3 (E hibit 2), 137-4 (E hibit 3), 137-5 (E hibit 4), 137-6 (E hibit 5), and 137-10 (E hibit 9), originally filed on June 3, 2025. After filing the referenced motion, it came to Defendant's attention that the documents referenced therein as E hibits 2, 3, 4, 5, and 9 were not redacted as required by the Court. Defendant will separately move to seal appending the unredacted copies of E hibits 2, 3, 4, 5, and 9.

Plaintiff does not oppose this motion, and the parties agree that this motion shall not alter the briefing deadlines or oral argument hearing date set by the Court concerning Defendant's Motion to Compel. *See* ECF 143.

WHEREFORE, Defendant respectfully requests that this Honorable Court substitute the attached E hibits 2, 3, 4, 5, and 9 and withdraw those corresponding e hibits originally filed with Defendant's Motion to Compel.

Respectfully Submitted,


/s/      *Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil    . Roman (admitted *pro hac vice*)
   omal Shah (admitted *pro hac vice*)
Shanelle    an (admitted *pro hac vice*)
Zora F. Franicevic    (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
CO   IN   TON & BURLIN   LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fa  : (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
  franicevic@cov.com
awoods@cov.com
  New York Office


*Attorneys for Defendant* Jane Doe

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by ECF on all counsel of record on this 25th day of June, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| John Doe <br> Plaintiff, <br><br> v. <br><br> Jane Doe <br><br> Defendant. | **CIVIL ACTION NO. 2:24-CV-00825** <br> **SECTION: P (3)** <br> **JUDGE DARREL JAMES PAPILLION** <br> **MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT** Jane Doe **FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF** John Doe

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Jane Doe serves the following Requests for Production on Plaintiff John Doe

### DEFINITIONS

Unless a Request indicates otherwise, the following definitions are applicable throughout these Requests and are incorporated into each Request.

1. "You," "Your," and "Plaintiff" means John Doe including any attorneys, agents, and all other persons acting or purporting to act on Your behalf having information or Documents available within the meaning of Federal Rules of Civil Procedure 26 and 34.

2. "Communication" and "Communications" refer to all inquiries, discussions, conversations, negotiations, social media posts, agreements, understandings, meetings, telephone conversations, letters, e-mails, correspondence, notes, or any other form of oral or written Communication.

3. "Document" and "Documents" have the broadest meaning permitted by Federal Rule of Civil Procedure 34 and shall include all oral, written, graphic, or electronic material or other media or reproduction of every kind and description, however produced and reproduced, including correspondences, Communications, conversations, meetings, discussions, negotiations, agreements, understandings, statements, text messages, telephone conversations, social media posts, faxes, e-mail, memoranda, notes, computer files, films, X-rays, recordings of any type, transcripts, photographs, slides, drawings, sketches, forms, letters, reports, medical reports, financial statements, telegrams, abstracts, and any other material similar to any of the foregoing, however denominated, by whomever prepared, to whomever addressed, which are in Your possession, custody, and/or control, or to which You can obtain access reasonably. For avoidance of doubt, "Document" and "Documents" include all posts, reposts, comments, and direct messages on all social media platforms, including Instagram, TikTok, X (formerly known as Twitter), Facebook, Snapchat, and Yik Yak.

4. "Sue Roe" means the woman identified by this pseudonym in the First Amended Complaint.

5. "Tulane Investigation" refers to the Tulane University Student Conduct Investigation that commenced in February 2022, as discussed in Paragraphs 47–48 of the First Amended Complaint.

6. ███████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

2

## **INSTRUCTIONS**

1.  These Requests apply to all Documents in Your possession, custody, or control.  You are to produce all Documents responsive to one or more of the Requests contained herein.

2.  Each Request shall operate and be construed independently.  Unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3.  Respond separately to each Request and subpart thereof.  If You object to any portion of any Request, You should identify the portion to which You object and respond to the remainder.

4.  Attachments to emails should not be separated.

5.  If any Documents requested were at one time in Your possession, custody, or control, but are no longer in Your possession, custody, or control, please state for each such Document:

    a)  the type of Document;
    b)  the date on which it left Your possession, custody, or control, ceased to exist, or was lost;
    c)  the circumstances under which it left Your possession, custody, or control, ceased to exist, or was lost;
    d)  the identity of all persons having knowledge of the circumstances in which it left Your possession, custody, or control, ceased to exist or was lost;
    e)  the identity of its last known custodian; and
    f)  the identity of all persons having knowledge of the contents of the relevant Document.

6.  If You assert either attorney-client privilege or work product doctrine, or both, as to any Document being requested herein, as to each such Document subject to such

3

assertion, serve with Your response to these Requests a privilege log containing an

identification of the Document, which shall include:

a) the date of the Document;
b) the identity of the author(s) and sender(s) of the Document and all recipients thereof;
c) the name(s) of each person to whom the original or a copy of the Document was circulated;
d) a summary statement of the subject matter of such document in sufficient detail to permit the Court to make a determination in the event of a motion under Federal Rule of Civil Procedure 37; and
e) the basis for the assertion of privilege or protection.

7. If You claim privilege or protection to part of a Document, redact that portion which

is privileged or protected and produce the remainder. All redactions should also be

included on the privilege log described in the preceding paragraph.

8. If You withhold Documents on the basis of an assertion that a Request is overbroad or

unduly burdensome, indicate what part of the Request is overbroad or unduly

burdensome, the nature and scope of the Documents sought that are overbroad or

unduly burdensome, what work would be required to acquire and produce the

Documents sought, and identify and produce the portion of the Documents that can be

produced within a reasonable scope and with reasonable burden.

9. Whenever a Document is not produced in full or is produced in redacted form,

indicate on the Document, state with particularity the reason or reasons it is not being

produced, and describe with particularity the portions of the Document not being

produced.

10. If no Documents are responsive to a Request, provide a response stating that no responsive Documents exist.

11. The definitions set forth herein have the broadest possible meaning.  Each Request should be construed as being inclusive rather than exclusive.

12. The relevant period for these Requests is August 2018 to present.

13. Pursuant to Federal Rule of Civil Procedure 26(e), You are required to supplement Your responses herein.

## **REQUESTS FOR PRODUCTION**

1. All Documents produced by You in the ▮▮▮▮ Litigation.

2. All Documents identified in, consulted for, or related to Your First Amended Complaint in this litigation.

3. All Documents identified in, consulted for, or related to Your Initial Disclosures in this litigation.

4. All Documents identified in, consulted for, or related to Your responses to Defendant's First Set of Interrogatories and any subsequent interrogatories in this litigation.

5. All Documents or Communications referring or relating to Defendant Jane Doe including all Communications between You and Jane Doe

6. All Documents or Communications related to Your application for and admission to Tulane University, including all Documents You signed to finalize Your enrollment.

7. Documents sufficient to identify Your extracurricular memberships and activities and any academic or other awards or citations You received during Your enrollment at Tulane University.

8. Documents sufficient to identify Your academic standing and expected graduation date, including all grade and similar reports.

9. All Documents or Communications related to any disciplinary actions or misconduct investigations, formal or informal, in which You were involved in any way during Your enrollment at Tulane University.

10. All Documents or Communications related to Sue Roe, including all Communications with Sue Roe.

11. All Documents or Communications referring or relating to Your whereabouts and activities on August 23, 2021, including what You ate and drank or otherwise ingested on that date.

12. All Documents or Communications constituting or referring or relating to all text messages You sent to or received from Sue Roe.

13. All Documents or Communications referring or relating to Your whereabouts and activities on January 27, 2022, including what You ate and drank or otherwise ingested on that date.

14. All Documents or Communications referring or relating to Your whereabouts and activities on January 29, 2022, including what You ate and drank or otherwise ingested on that date.

15. All Documents or Communications referring or relating to Your whereabouts and activities on February 2, 2022, including what You ate and drank or otherwise ingested on that date.

16. Documents or Communications sufficient to identify all persons with whom You interacted on the evening of February 2, 2022, including at each location You visited and each event You attended, as discussed in Paragraph 26 of the First Amended Complaint.

17. Documents or Communications sufficient to identify the time You left for, arrived at, and left Defendant Jane Doe house on February 2, 2022 or February 3, 2022.

18. All Documents or Communications referring or relating to any person, adult or minor, who has accused You, formally or informally, of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact.

19. All Documents or Communications related to the information "spreading around the school alleging that [You] had sexually assaulted a female student," as discussed in Paragraphs 33–35 of the First Amended Complaint.

20. All Documents or Communications related to revocation or suspension of Your membership in or association with social or academic organizations at Tulane University.

21. All Documents or Communications related to Your withdrawal from Tulane University.

22. All Documents or Communications related to the charges against You for violating the Tulane University Code of Conduct.

7

23. All Documents or Communications evidencing, reflecting, or referring to Your participation in or failure to participate in the Tulane Investigation, including the proposed interview with Jacqueline Barber.

24. All Documents or Communications reflecting or relating to disciplinary action against You as a result of the Tulane Investigation.

25. All Documents or Communications evidencing, reflecting, or referring to any relationship, correspondence, or coordination of any sort at any time between Defendant Jane Doe and Sue Roe.

26. All Documents or Communications reflecting, referencing, or relating to any meetings or Communications (written or oral), in which You were a participant or privy to the Communication, regarding the Tulane Investigation.

27. All Documents or Communications reflecting, referencing, or related to any diagnosis of or treatment for emotional distress resulting from Defendant Jane Doe statements regarding You.

28. All Documents or Communications evidencing or referring or relating to any emotional distress resulting from Defendant Jane Doe statements regarding You.

29. All Documents reflecting or referring or relating to any graduate school programs to which You have applied, scores or results of any related entrance examinations, and the graduate school admissions decisions on those applications.

30. All Documents reflecting or referring or relating to any job applications You have submitted since January 2021, the potential employers to whom You have applied, and the employment decisions made by those employers.

31. All statements taken of any party or of any persons having information regarding Defendant Jane Doe Sue Roe, or this litigation.

32. All Documents or Communications reflecting, referencing, or relating to any investigation performed by You regarding Defendant Jane Doe

33. All Documents or Communications reflecting, referencing, or relating to any investigation performed by You to determine or analyze the veracity of Defendant Jane Doe statements regarding You.

34. All Documents reflecting, referencing, or related to any meetings or Communications (either written or oral), in which You were a participant or privy to the Communication, regarding Defendant Jane Doe

35. All Documents reflecting, referencing, or related to any meetings or Communications between You and others regarding Defendant Jane Doe

36. All tax forms or other Documents sufficient to show income earned by month since January 2022.

37. All Documents on which You intend to rely at trial or otherwise in this litigation.

Respectfully submitted,

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WILLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

9

*-and-*

Neil K. Roman (pro hac vice)
Komal Shah (pro hac vice)
Shanelle Van (pro hac vice)
Zora F. Franicevic (pro hac vice)
Ashton E. Woods (pro hac vice)
COVINGTON & BURLING LLP
One CityCenter
850 10th St. NW
Washington, D.C. 20902
Tel: (202) 662-6000
Fax: (202)778-5528
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com

***Attorneys for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Requests for Production* has been served upon all parties by email on this 4th day of April, 2025.

*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE

10

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** v. Jane Doe **Defendant.** | CIVIL ACTION NO. 2:24-CV-00825 SECTION: P (3) JUDGE DARREL JAMES PAPILLION MAG. JUDGE EVA J. DOSSIER |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT**
Jane Doe   **INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure Plaintiff   John Doe hereby objects and responds to Defendant Jane Doe interrogatory responses, served on April 4, 2025, as follows:

**RESERVATION OF RIGHTS**

1.      The following reservations apply to each and every response provided herein.

2.      Plaintiff reserves the right to amend or supplement these responses at any time.

3.      Plaintiff's identification of any witness or information in these responses is not an admission of relevance, materiality, or admissibility of any such information or any particular person's testimony, and Plaintiff reserves all objections with respect thereto.

4.      Plaintiff's identification of any person in these responses is not a guarantee or representation that Plaintiff will call any such person to testify in this matter or that such witness has relevant information or testimony.

5.      Plaintiff reserves all objections as to confidentiality and privilege. Any inadvertent disclosure of confidential or privileged information shall not be deemed a waiver of such confidentiality/privilege and Plaintiff reserves the right to recall any privileged or confidential information inadvertently disclosed

1

**SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.  Plaintiff objects to the definition of "Documents" as seeking information that is overly broad, unduly burdensome and not proportional to the needs of the case in its request for "all posts, reposts, comments and direct messages on all social media platforms including Instagram, TikTok, X, Facebook, Snapchat, and Yik Yak.

2.  Plaintiff objects to the definition of "Drugs" as improper in seeking information that is not relevant to any claim or defense in this action.

3.  Plaintiff objects to Defendant's Instruction Number 1 as violative of FRCP 26(e) which requires the supplementation of interrogatories "in a timely manner," not "immediately."

**OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1:**

Identify all persons who may possess knowledge, information, or Documents relating to the claims asserted by You in the First Amended Complaint, including the person's relationship to You and the nature of the knowledge, information, and Documents.  Identify all such persons regardless of whether or not You intend to call them as witnesses at trial or otherwise rely on their testimony or whether You believe that they will support Your allegations.

> **RESPONSE**:
> Plaintiff objects to this interrogatory on the grounds that it is duplicative in its request for information that has already been provided to Defendant. Plaintiff refers Defendant to the Initial Disclosures that he served on Defendant's counsel on April 4, 2025.

**INTERROGATORY NO. 2:**

State the bases for Your claim of defamation against Defendant Jane Doe as alleged in the First Amended Complaint, including identification of every allegedly false and defamatory statement made by Jane Doe of which You are aware.

2

**RESPONSE:** ████████████████████████████

Plaintiff objects to this interrogatory on the ground that it requests information that is already in Defendant's possession, custody or control. Plaintiff also objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his defamation claim at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving these objections, and reserving the right to supplement, and more fully respond to, this interrogatory, Plaintiff provides the following list of false and defamatory statements made by Jane Doe:



1. ████████████████████████████████████████

2. ████████████████████████████████████████

3. ████████████████████████████████████████

4. ████████████████████████████████████████

5. ████████████████████████████████████████

6. On February 7, 2022, Jane Doe posted on Instagram that "Being drunk is not an excuse for sexual assault." Matthew Kisin showed the post to Plaintiff.

7. On February 8, 2022, Jane Doe stated the following in a text message:

> After we had consensual sex on your birthday, I told you that I was tired and wanted to sleep. At first you said that was fine but then 10 minutes later you asked me to have sex again to which I responded no, that I was tired and didn't want to. You continued to ask me to have sex with you multiple times, each time with me saying no and asking you to go to sleep. I woke up to the sound of you jerking off and the feeling of you taking the blanket off my naked sleeping body and touching and squeezing it as you pleased. Even though I was paralyzed with fear and half asleep, I mumbled that I was cold and tried to pull the blanket back onto me. You then pulled the blanket off of me again and continued to pleasure yourself and touch me. You took advantage of my body in my most vulnerable state, and had no regard for how violating your actions were to me. You are a predator and a repeat offender,

and will not manipulate or invalidate my assault, like you did to your previous victim. It blows my mind that you were able to manipulate people around you into staying friends with you but this time you will be held fully accountable or the trauma that you actions caused. You will be known for the disgusting coward you truly are. You need serious help, and honestly I don't care if you ever get it, but I do know that you will never have the opportunity to violate someone ever again.

Jane Doe disseminated this text message to Tulane University students. This was reported by ███████████, Plaintiff's college roommate, during the Tulane investigation. Plaintiff believes that Harrison White, Noa Banghart and Eugenie McNiff also saw the text message. ███████████████████████████████████████ ███████████████████████

8.      On or about February 8, 2022, Jane Doe told the President of the ZBT Fraternity, Ben Miner, that Plaintiff sexually assaulted her.

9.      On February 11, 2022, Jane Doe filed a report with Tulane University that stated:



Jane Doe disseminated this statement to Tulane students outside the investigation, some of whom were witnesses. ███████████████████████████████████████ ███████████████████████

10.     On February 16, 2022, in an interview with Tulane investigator Jacqueline Barber, Jane Doe stated the following:[1]



---

[1] The failure to cite each and every statement in Jane Doe's statement to Ms. Barber in no way constitutes an admission that any other statement made by Jane Doe is true.





11.    On or about February 16, 2022, Jane Doe told Tulane's investigator that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12.    On March 16, 2022, Jane Doe told various Tulane administrators that Plaintiff was harassing and intimidating her friends, who were witnesses in the disciplinary proceeding and asked them to assist her with obtaining a restraining order.

13.    Jane Doe provided a copy of the Petition for Protection From Abuse and TRO that she obtained in Louisiana Civil Court to Tulane University and informed Christopher Zacharda that Plaintiff was making witnesses uncomfortable. She told individuals at the University that she needed to obtain a TRO so that Plaintiff could not communicate with her friends. The Petition provided to Tulane contains the following false and defamatory statements:

    a.  Plaintiff stalked Jane Doe by sending messages to her through third parties.
    b.  Plaintiff harmed or threatened to harm Jane Doe members of her family or her acquaintances.
    c.  Plaintiff engaged in "intimidation."

Jane Doe also requested relief due to "the immediate and present danger of stalking, or sexual assault" which included a prohibition on the "use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury" and ordering Plaintiff not to damage any of her belongings or in any way interfere in her living conditions.

**INTERROGATORY NO. 3:**

State the bases for Your claim that the allegedly false and defamatory statements made by Defendant Jane Doe during the Title IX proceedings are not protected by privilege because Jane Doe knew that they were false.

6

**RESPONSE:**

Plaintiff objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his claim that Jane Doe statements are not protected by any privilege at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving this objection, Plaintiff states that Jane Doe knew that her sexual assault allegations were false because what she alleged did not occur. Jane Doe also made false statements about Plaintiff in her petition for TRO that she submitted to Tulane during its investigation of her sexual assault allegations.

**INTERROGATORY NO. 4:**

State the bases for Your claim of abuse premised on Defendant Jane Doe use of the Louisiana civil court system as alleged in the First Amended Complaint, including identification of any evidence supporting Your claim that Jane Doe "primary motive in proceeding with the Louisiana civil court system process was to defame, harass and punish Plaintiff."

**RESPONSE:**

Plaintiff objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his abuse of process claim at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving this objection, and reserving the right to supplement and fully respond to this interrogatory at the appropriate time, Plaintiff states that the above interrogatory improperly narrows his claim and also mischaracterizes his claim as "abuse" rather than "abuse of process." As alleged in the Complaint, and upheld in Judge Papillion's order dated March 17, 2025, Jane Doe instituted the Louisiana state court action, and obtained a TRO against Plaintiff, not because she needed protection from harassment, intimidation, and stalking, but, instead, for the ulterior, improper purpose of bolstering her sexual assault complaint, restricting Plaintiff from contacting witnesses in the Tulane investigation and to further harass, defame, retaliate against and punish Plaintiff.

The following evidence, known to Plaintiff at this time, supports his abuse of process claim:

1. Plaintiff had no contact with Jane Doe since she sent him the text message containing her false accusations on February 8, 2022. He did not respond to that message and did not interact with her at any point after that.

2. The sworn petition Jane Doe filled out in the Louisiana Civil Court proceeding contains the following false and defamatory statements: (i) Plaintiff stalked Jane Doe by sending messages to her through third parties; (ii) Plaintiff harmed or threatened to harm

7

Jane Doe members of her family or her acquaintances; and (iii) Plaintiff engaged in "intimidation." Jane Doe also requested relief due to "the immediate and present danger of stalking, or sexual assault" which included a prohibition on the "use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury" and ordering Plaintiff not to damage any of her belongings or in any way interfere in her living conditions.

3. Noah Siev and Taylor Rappeport agreed to speak with Plaintiff during the investigation. Neither individual was exclusively friends with Jane Doe

4. Text messages between Will Reynoir and Plaintiff in which Reynoir indicates Harrison White's willingness to speak with Plaintiff. Plaintiff did not speak directly with White. Reynoir is Plaintiff's friend. Harrison White told the Tulane investigator that he knew Plaintiff and had been friendly with him in the past though they were not close.

5. Jane Doe released a Tik Tok about her accusations against Plaintiff after Plaintiff reached out to Taylor Rappeport on March 10, 2022. Plaintiff reached out to Noah Siev and Will Reynoir (about Harrison White) on March 14, 2022. Jane Doe sought the restraining order on March 16, 2022, specifically requesting that Plaintiff permanently stay away from her friends. Jane Doe also told Harrison White that some of the witnesses in the investigation were getting calls from Plaintiff and the types of questions that Plaintiff was asking the witnesses. White did not refer to these questions as intimidating nor did he express feeling intimidated as opposed to wanting to help Jane Doe instead of Plaintiff. Jane Doe discouraged Mr. White from speaking to Plaintiff. Prior to Harrison White's interview with the Tulane investigator, Jane Doe shared her written complaint with White.

6. On March 16, 2022, Jane Doe told Tulane's Interim Assistant Provost for Title IX that she was downtown filing a restraining order.

7. On March 17, 2022, Christopher Zacharda informed Plaintiff that he had a copy of the restraining order.

8. Jane Doe filing of the petition in Louisiana civil court was used as evidence in the Tulane investigation.

9. Jane Doe did not appear to inform Tulane that she did not show up at the court hearing or that the petition was dismissed due to her failure to appear because that information was not included in the Tulane investigation report.

10. Jane Doe could have shown up at the hearing, but elected not to do so, as evidenced by Plaintiff seeing her at the airport when he was in Louisiana for the court hearing.

**INTERROGATORY NO. 5:**

State the bases for Your claim of civil conspiracy as alleged in the First Amended Complaint, including by identifying and describing the substance of any Communications of which You are aware between or on behalf of Defendant Jane Doe and Sue Roe.

> **RESPONSE**:
> Plaintiff objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of civil conspiracy claim at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving this objection, Plaintiff refers Jane Doe to Paragraphs 55-67 of the Complaint. Jane Doe and Ms. ████ further acted in unison during the Tulane investigation. Jane Doe coordinated the date and timing of Ms. ████ interview with the Tulane investigator and told the investigator to "prioritize," Ms. ████ interview over hers. Jane Doe also discussed the ████ allegations in her interview in the Tulane investigation though she had no personal, firsthand knowledge of what happened between Ms. ████ and Plaintiff. When Tulane raised the issue of informal resolution during the disciplinary process, Jane Doe told Chris Zacharda she <u>and</u> Ms. ████ had decided that "we want this to be formally resolved."

**INTERROGATORY NO. 6:**

Identify all forms of emotional distress that You have experienced as a result of Defendant Jane Doe conduct as alleged in the First Amended Complaint, including any mental health conditions that You have experienced and any physical symptoms or manifestations that You have experienced as a result of the mental health conditions.

> **RESPONSE:**
> In March 2022, Plaintiff experienced a significant weight loss of 20-30 pounds. He suffered bouts of depression periodically in 2022. During the investigation he had periods of insomnia.
> He presently has anxiety as a result of being falsely accused, including concerns about his ability to obtain and maintain employment, getting into law school, becoming a lawyer, new romantic partners learning about the allegations, new friends learning about the allegations and the future threat of Jane Doe making false and defamatory remarks about him. Plaintiff also experiences feelings of loneliness and isolation. He also feels a deep sense of despair over his friends recommending he withdraw from Tulane, lost friendships, not walking at graduation, not being able to pursue graduate studies at Tulane, being banned from Tulane's campus, lost career opportunities and his removal from

student organizations. Rumors also circulated that Plaintiff's friends kicked him out of the house, which did not happen.

**INTERROGATORY NO. 7:**

Identify any therapy that You have sought for any mental health conditions or emotional distress that You have experienced as a result of Defendant Jane Doe conduct as alleged in the First Amended Complaint (including the name of Your therapist and the frequency of and period during which You received such therapy), any diagnosis of a mental health condition or emotional distress by a mental health professional, any medications You have taken to address the mental health condition or emotional distress You have experienced (including when and by whom they were prescribed), and any other persons to whom You have confided about your mental health condition or emotional distress and the content of any such non-privileged Communications.

> **RESPONSE**: ███████████
> Plaintiff has not been diagnosed with any mental health condition and does not take medication for any mental health condition. ████████████████████████
> ████████████████████████████████
> ████████████████████ Plaintiff has discussed the above described feelings of emotional distress with his parents. Plaintiff refers Jane Doe to his initial disclosures which identify the friends that have information concerning the impact of her accusations on him.

**INTERROGATORY NO. 8:**

State all amounts being sought by You from Defendant Jane Doe as damages or otherwise in this case, including a breakdown of each amount being sought and the bases for seeking such amounts.

> **RESPONSE**:
> Plaintiff refers Jane Doe to his initial disclosures.

10

**INTERROGATORY NO. 9:**

Identify any graduate school programs to which You have applied, including the graduate schools to which You applied and the month and year in which You applied, and the graduate school admissions decisions on those applications, as well as any graduate schools that You attended, the dates of attendance, and any graduate degrees attained.

**RESPONSE**:
None.

**INTERROGATORY NO. 10:**

Identify any jobs for which You have applied since January 2021, including the potential employers to whom You have applied, and the employment decisions made by those employers.

**RESPONSE**:
The following is a non-exhaustive list based on Plaintiff's present recollection:

- Mathnasium - Hired
- Blueprint Test Prep - Hired
- Sports Info Solutions - Hired
- Pro Football Focus - Hired
- SevenRooms - Hired
- Lululemon - Hired
- State & Liberty - Hired
- Harvey AI - Sales Development Rep - Rejected
- Pave - Sales Development Rep - Rejected
- New York Yankees - Associate, Baseball Operations - Rejected
- Amplitude - Sales Development Rep - Rejected
- OneSignal - Withdrew Application
- Salesforce - Business Development Representative - Rejected
- Databricks - Business Development Representative - Rejected
- Merge - Sales Development Represented - Offered

11

- Topline Pro - Full Sales Cycle - Withdrew

- Autogen AI - Business Development Representative - Rejected

- Tennessee Titans - Paralegal - Rejected

- Datasite - Business Development Representative - Rejected

- Expert Institute - Business Development Representative - Rejected

- Snorkel AI - Business Development Representative - Rejected

- Synthesia - Sales Development Representative - Rejected

- Traba - Sales Development Representative - Rejected

- Labelbox - Sales Development Representative - Rejected

- Box - Business Development Representative - Rejected

- Instabase - Business/Sales Development Representative - Rejected

- Glean - Business Development Representative - Rejected

- Hightouch - Business/Sales Development Representative - Rejected

- Roboflow - Sales Development Representative - Rejected

- Juniper - Sales Development Representative - Rejected

- Navan - Sales Development Representative - Withdrew

- Golden Goose - Retail Specialist (Rejected) - Rejected

- Rag n Bone - Sales Specialist (Part Time) - Rejected

**INTERROGATORY NO. 11:**

Identify Your employers and the dates and places of employment since January 2022,

including the income that You have earned each month.

**RESPONSE:**
Plaintiff objects to this interrogatory on the ground that its request for the income that he earned each month since January 2022 seeks financial information at a level of detail that is unnecessary, overly burdensome, oppressive and harassing. Plaintiff will not provide this information. Plaintiff will be producing his tax returns. Plaintiff responds as follows:

Mathnasium ($15/hour) – February 2023-August 2023

Lululemon (~$17.20/hour + commission) – February 2023-August 2024

Sports Info Solutions (~$12/hr)– August 2024-February 2025

State & Liberty (~$22/hr) – June 2024-April 2025

Blueprint Test Prep ($40/hr) – January 2025-present

SevenRooms (Salary $68,000 + commission) – March 2025-present

**INTERROGATORY NO. 12:**

State by month any income that You have received from sources other than any jobs that

You have held since January 2022, including the source(s) of such income.

**RESPONSE:**
Plaintiff objects to this interrogatory as vague. Plaintiff objects to this interrogatory on the ground that its request for the income that he earned each month since January 2022 seeks financial information at a level of detail that is unnecessary, overly burdensome, oppressive and harassing. Plaintiff also objects to this interrogatory on the ground that it requests information that is not relevant to any claim or defense in this action. Plaintiff will not provide a response to this interrogatory.

## INTERROGATORY NO. 13:

Describe the events of February 2 and 3, 2022 as they relate to the allegations in the First Amended Complaint, including the locations and venues (*e.g.*, restaurants, bars, houses, or fraternities) You visited and the approximate times You visited those places as well as the persons who were with You at those locations and venues.

**RESPONSE:**
Plaintiff directs Jane Doe to the following documents that are responsive to this interrogatory and provide contemporaneous evidence concerning the events in question: 1) Plaintiff's written responses to Tulane Investigator Jacqueline Barber's written questions (███_004166-472); 2) Plaintiff's written response to the evidence collected during the Tulane investigation (███_1058-1064); and 3) Plaintiff's written responses to additional questions from Jacqueline Barber (███_01056-1057). Plaintiff has requested that ███ produce unredacted copies of the documents and communications in its production concerning Tulane's investigation of the ^Jane Doe and ███ complaints, including the documents cited herein. This is because Plaintiff noted errors in the redactions, including ███ reference to Jane Doe as "Jane Roe." In the interim, Plaintiff will provide the documents referenced herein while reserving all rights with respect to the existing redactions.

## INTERROGATORY NO. 14:

Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (*e.g.*, whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on February 2 and 3, 2022.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory.

**INTERROGATORY NO. 15**:

Describe all sexual activity in which You engaged on February 2 and 3, 2022, including the sexual activity with Defendant Jane Doe

**RESPONSE**:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action in its request for the details of sexual activity that Plaintiff engaged in with persons other than Jane Doe Even if Plaintiff were required to respond, Plaintiff will not provide the explicit details of his activities with any nonparty during the timeframe in question.

**INTERROGATORY NO. 16:**

Identify all persons with whom You Communicated about the sexual activity in which You engaged on February 2-3, 2022 and the substance of those Communications.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this request on the ground to the extent that it seeks information protected by the attorney-client privilege. Plaintiff further objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action in its request for information about sexual activity other than with Jane Doe

**INTERROGATORY NO. 17:**

Describe the events underlying the allegations made against You by Sue Roe, including the sexual activity in which You engaged, the Communications that You exchanged with Sue Roe following the sexual activity and the reasons for the statements that You made in those Communications, and the Communications that You had with other persons regarding the sexual activity with Sue Roe and the reasons for the statements that You made in those

15

Communications.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this interrogatory on the ground that it is unduly burdensome in its request for a description of statements contained in documents and communications that speak for themselves and are the best evidence of what was stated during the timeframe in question.

**INTERROGATORY NO. 18:**

Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (*e.g.*, whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on August 22 and 23, 2021.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

**INTERROGATORY NO. 19:**

Identify all non-privileged Communications between You and other persons concerning or relating to any claim or defense in this case, including the date of the Communication, the nature and content of the Communication, where the Communication occurred, and the identity of all participants in and any witnesses to the Communication.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and will not provide a written response. Plaintiff objects to this interrogatory on the grounds that is overly broad, unduly burdensome and not proportional to the needs of the case because it

16

would require Plaintiff to list every communication in his production and productions made by other parties, including Defendant's production. The information requested is further obvious on the face of any documents or communications produced in this action. Plaintiff will not respond to this interrogatory for all of the aforementioned reasons.

## INTERROGATORY NO. 20:

Identify the forms of social media and methods of Communication (*e.g.*, email, text messages, Twitter/X, Facebook, Instagram, Snapchat, and TikTok) that You used between August 2018 and present, including the phone numbers and usernames for each form of social media or Communication.

**RESPONSE**:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response.

Plaintiff objects to this interrogatory as overly broad in its request for information dating back to 2018, which pre-dates the events at issue in this action. Plaintiff further objects on the ground that this interrogatory seeks information that is not relevant to any claim or defense in this action.

## INTERROGATORY NO. 21:

Identify all complaints or suggestions of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact of which You have been subject or in which You have in any way been involved, without limitation as to time period and irrespective of whether the complaint resulted in legal or administrative consequences or whether You believe that those complaints or suggestions were warranted or otherwise justified.

**RESPONSE**:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was exceeded in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response.

17

Plaintiff objects to this interrogatory as vague in its request for information about "suggestions" of sexual abuse, sexual misconduct, sexual harassment and sexual assault such that Plaintiff cannot respond. Plaintiff further objects to this interrogatory on the ground that "unwanted physical contact" is vague and ambiguous. Plaintiff also objects to this interrogatory on the ground that it is overly broad with respect to timeframe and seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects on the ground that this interrogatory calls for legal conclusions. Plaintiff also objects to the term "sexual misconduct" as vague.

Dated: May 4, 2025

/s/ Kara L. Gorycki
Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

## <u>VERIFICATION</u>

I, the undersigned,      John Doe     hereby declare under penalty of perjury the following:

1.      I am the plaintiff in this action.

2.      I have reviewed the foregoing Plaintiff's Objections and Responses to Defendant Jane Doe  Interrogatories. The responses contained therein are true and correct to the best of my knowledge, information and belief.

Executed on the  4   day of May, 2025.


John Doe
_____
John Doe

**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF LOUISIANA[1]**

|  |  |
|---|---|
| John Doe <br><br> Plaintiff, <br><br> v. <br><br> Jane Doe <br><br> Defendant. | **CIVIL ACTION NO. 2:24-CV-00825** <br> **SECTION: P (3)** <br> **JUDGE DARREL JAMES PAPILLION** <br> **MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S
FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

John Doe     by and through his attorneys Nesenoff & Miltenberg, LLP and

Marcelle Robertson Mestayer LLC hereby objects and responds to Defendant [Jane Doe]

First Set of Requests For Production.

Plaintiff's search for, and review of, documents and communications that are

responsive to Defendant's requests is ongoing and Plaintiff's production will be made

on a rolling basis after the parties agree upon a protective order for certain categories

of information. No representation below that Plaintiff will produce any particular

category of documents is a representation that Plaintiff has said category of documents

in his possession, custody and control. Plaintiff will update his responses to

Defendant's requests when his productions are complete.

---

[1] Jane Doe  document requests incorrectly cite the Southern District of Texas as the court in which this case is pending.

1

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████████

**SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      Plaintiff objects to the definition of "You," "Your" and "Plaintiff" to the extent that it seeks documents and communications protected by the attorney-client privilege, work product, trial preparation materials or any other applicable privilege.

2.      Plaintiff objects to the definition of "Communication" and "Communications" as seeking information that does not exist in a format that can be produced in discovery—discussions, conversations, understandings, telephone conversations and oral communications.

3.      Plaintiff objects to the definition of "Document" and "Documents" as seeking information in a format that cannot be produced in discovery—"oral" material, "Communications," conversations, discussions, understandings, telephone

conversations. Plaintiff further objects to this definition as vague in its request for "any other material similar to any of the foregoing." Plaintiff also objects to this request on the ground that it seeks information outside the scope of FRCP 34(a)(1) in its request for information to which Plaintiff "can obtain access reasonably." Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action and is overly broad and unduly burdensome in its request for "posts, reposts, comments, and direct messages on all social media platforms."

4. Plaintiff objects to Instruction Number 1 on the ground that it misstates that Plaintiff is required to produce "all documents responsive to one or more of the Requests." As a reminder, FRCP 34 states as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

5. Plaintiff objects to Instruction Number 5 on the ground that the requested log is not required by FRCP 34 or any Local Rule.

6. Plaintiff objects to Instruction Number 8 on the ground that it seeks information and directs action that is not required to be provided under Rules 26 and 34 of the Federal Rules of Civil Procedure.

7. Plaintiff objects to Instruction Number 12 on the ground that the timeframe set forth therein is overly broad in that no event that is potentially relevant

3

to any claim or defense in this action occurred prior to September 2019. This objection

is incorporated into each response set forth below.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1.      All Documents produced by You in the ▮▮▮▮ Litigation.

**RESPONSE:**
Plaintiff objects to this Request on the ground that it seeks information that is not
relevant to any claim or defense in this action. Without waiving this objection,
Plaintiff has produced P0000001-524 with these objections and responses. Any
documents or communications that are subject to the Amended Protective Order
entered in the ▮▮▮▮ Litigation are labeled accordingly and should be kept
Confidential. Discovery in the ▮▮▮▮ Litigation is ongoing.

2.      All Documents identified in, consulted for, or related to Your First Amended

Complaint in this litigation.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is
protected by the attorney-client privilege and constitutes attorney work product.
Plaintiff also objects to this request on the ground that it is vague in its request for
documents "related to" the First Amended Complaint. Without waiving these
objections, and subject to the entry of an appropriate protective order, Plaintiff
will produce any nonprivileged, relevant documents and communications that are
in his possession, custody or control.

3.  All Documents identified in, consulted for, or related to Your Initial Disclosures in

this litigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is
protected by the attorney-client privilege and constitutes attorney work product.
Plaintiff also objects to this request on the ground that it is vague in its request for
documents "related to" his Initial Disclosures. Plaintiff also objects to this request
a premature as expert disclosures are not yet due in this action. Without waiving
these objections, and subject to the entry of an appropriate protective order,
Plaintiff will produce the documents identified in Point II of his Initial
Disclosures. Plaintiff also refers Defendant to his production in the ▮▮▮▮
Litigation, P0000001-524.

4.  All Documents identified in, consulted for, or related to Your responses to

4

Defendant's First Set of Interrogatories and any subsequent interrogatories in this litigation.

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product. Plaintiff also objects to this request on the ground that it is vague in its request for documents "related to" his response to Defendant's First Set of Interrogatories. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are identified in Plaintiff's interrogatory responses or otherwise responsive to this request. Plaintiff also refers Defendant to his production in the ███ Litigation, P0000001-524

5. All Documents or Communications referring or relating to Defendant Jane Doe including all Communications between You and Jane Doe

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

6. All Documents or Communications related to Your application for and admission to Tulane University, including all Documents You signed to finalize Your enrollment.

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff located a single email about his application status which will be produced. Plaintiff does not have access to his application files, which are in Tulane's possession, custody and control.

7. Documents sufficient to identify Your extracurricular memberships and activities and any academic or other awards or citations You received during Your enrollment at Tulane University.

> **RESPONSE**:
> Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

8. Documents sufficient to identify Your academic standing and expected

5

graduation date, including all grade and similar reports.

> **RESPONSE**:
>
> Plaintiff objects to this request on the ground that it is overly broad and unduly burdensome in its request for "documents sufficient to identify Your academic standing and expected graduation date, including all grade and similar reports." Without waiving this objection, Plaintiff refers Defendant to P000453-454 in the ▮▮▮▮ production. Plaintiff will also produce a copy of his academic transcript subject to the entry of an appropriate protective order in this case.

9. All Documents or Communications related to any disciplinary actions or misconduct investigations, formal or informal, in which You were involved in any way during Your enrollment at Tulane University.

> **RESPONSE**:
>
> Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff also objects to this request on the ground that it is vague in its request for information concerning "informal disciplinary actions or misconduct investigations." Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request. Plaintiff refers Defendant to Plaintiff's production in the ▮▮▮▮ Litigation. Plaintiff will also produce relevant and responsive documents that were produced by ▮▮▮▮ in the ▮▮▮▮ Litigation pursuant to the parties' agreement with ▮▮▮▮ that documents produced by the ▮▮▮▮ may be used in this litigation. Plaintiff has objected to ▮▮▮▮ redaction of documents and communications in the ▮▮▮▮ Litigation because of a number of errors in the redactions and on the ground that the redactions render many of the documents and communications illegible. Plaintiff reserves all rights with respect to this issue.

10. All Documents or Communications related to Sue Roe, including all Communications with Sue Roe.

> **RESPONSE**:
>
> Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the

6

ground that it is vague in its request for information "related to" Sue Roe. Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

11.     All Documents or Communications referring or relating to Your whereabouts and activities on August 23, 2021, including what You ate and drank or otherwise ingested on that date.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that may exist and are responsive to this request.

12.     All Documents or Communications constituting or referring or relating to all text messages You sent to or received from Sue Roe.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it is nonsensical in its request for documents or communications "constituting" all text messages between Plaintiff and Sue Roe. Plaintiff further objects to this request as vague in its request for information "relating to" text messages between Plaintiff and Sue Roe. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

13.     All Documents or Communications referring or relating to Your whereabouts and activities on January 27, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these

7

objections Plaintiff will produce any non-privileged, relevant documents and communications which may exist and are responsive to this request.

14. All Documents or Communications referring or relating to Your whereabouts and activities on January 29, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff will produce any nonprivileged, relevant documents that may exist and are responsive to this request.

15. All Documents or Communications referring or relating to Your whereabouts and activities on February 2, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff will produce any non-privileged, relevant documents that are responsive to this request which may exist.

16. Documents or Communications sufficient to identify all persons with whom You interacted on the evening of February 2, 2022, including at each location You visited and each event You attended, as discussed in Paragraph 26 of the First Amended Complaint.

**RESPONSE**:
Plaintiff objects to this request on the ground that it is overly broad and unduly burdensome in its request for information about "all persons" with whom Plaintiff interacted on an evening that occurred over three years ago. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce any nonprivileged, relevant documents and communications that may exist and are responsive to this request, subject to the entry of an appropriate protective order in

8

this case.

17.     Documents or Communications sufficient to identify the time You left for, arrived at, and left Defendant Jane Doe house on February 2, 2022 or February 3, 2022.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession, custody and control. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

18.     All Documents or Communications referring or relating to any person, adult or minor, who has accused You, formally or informally, of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact.

**RESPONSE**:
Plaintiff objects to Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff states that, apart from documents and communications concerning Jane Doe and Ms. ███████ allegations against him, Plaintiff has no documents or communications that are responsive to this request.

19.     All Documents or Communications related to the information "spreading around the school alleging that [You] had sexually assaulted a female student," as discussed in Paragraphs 33–35 of the First Amended Complaint.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information in Defendant's possession, custody and control. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

20.     All Documents or Communications related to revocation or suspension of Your membership in or association with social or academic organizations at Tulane University.

**RESPONSE**:
Plaintiff objects to this request on the ground that it is overly broad as to the

9

timeframe requested and, in this respect, seeks information that is not relevant to any claim or defense in this action. Plaintiff also objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents and communications concerning any organizations which revoked, suspended or terminated his membership between January 1, 2022 and May 1, 2022.

21. All Documents or Communications related to Your withdrawal from Tulane University.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not within Plaintiff's possession, custody or control. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents and communications that are responsive to this request.

22. All Documents or Communications related to the charges against You for violating the Tulane University Code of Conduct.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it is so vague that Plaintiff cannot discern what is being requested as it references "the charges" against Plaintiff. Plaintiff further objects to this request on the ground that, from what can be inferred, the request is duplicative of Request Number 9. Plaintiff is unable to respond to this request as written.

23. All Documents or Communications evidencing, reflecting, or referring to Your participation in or failure to participate in the Tulane Investigation, including the proposed interview with Jacqueline Barber.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

10

24.    All Documents or Communications reflecting or relating to disciplinary action against You as a result of the Tulane Investigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request. Plaintiff refers Defendant to the documents and communications he produced in the ███ Litigation.

25.    All Documents or Communications evidencing, reflecting, or referring to any relationship, correspondence, or coordination of any sort at any time between Defendant [Jane Doe] and Sue Roe.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is within Defendant's possession, custody or control, particularly since Defendant obstructed Plaintiff's efforts to obtain this information pursuant to document subpoenas served on Defendant, and on ███████, in the ████ Litigation. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

26. All Documents or Communications reflecting, referencing, or relating to any meetings or Communications (written or oral), in which You were a participant or privy to the Communication, regarding the Tulane Investigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

27.    All Documents or Communications reflecting, referencing, or related to any diagnosis of or treatment for emotional distress resulting from Defendant Jane Doe statements regarding You.

11

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff states that he has no documents or communications concerning a particular mental health diagnosis but he will produce non-privileged, relevant documents that are responsive to the second part of the request relating to emotional distress, subject to the entry of an appropriate protective order in this case.

28.     All Documents or Communications evidencing or referring or relating to any

emotional distress resulting from Defendant Jane Doe statements regarding You.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents or communications that are responsive to this request, subject to the entry of an appropriate protective order in this case.

29.     All Documents reflecting or referring or relating to any graduate school programs

to which You have applied, scores or results of any related entrance examinations, and the

graduate school admissions decisions on those applications.

**RESPONSE**:
Plaintiff has no documents that are responsive to this request.

30.     All Documents reflecting or referring or relating to any job applications You have

submitted since January 2021, the potential employers to whom You have applied, and the

employment decisions made by those employers.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action and is overly broad in its request for information dating back to January 2021. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents or communications that are responsive to this request from January 1, 2022, subject to the entry of an appropriate protective order in this case.

31.     All statements taken of any party or of any persons having information regarding

12

Defendant Jane Doe Sue Roe, or this litigation.

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession. Without waiving this objection, Plaintiff has not taken statements from any party or person with information relating to Jane Doe, Sue Roe or this litigation and, accordingly, has no documents that are responsive to this request. ███████ production contains statements taken by investigator Jacqueline Barber during her investigation of the ███████ and <sup>Jane Doe</sup> complaints. Subject to any objections by █████, Plaintiff will produce these statements.

32. All Documents or Communications reflecting, referencing, or relating to any investigation performed by You regarding Defendant <sup>Jane Doe</sup>

> **RESPONSE:**
> Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff will not produce any documents or communications in response to this request.

33. All Documents or Communications reflecting, referencing, or relating to any investigation performed by You to determine or analyze the veracity of Defendant Jane Doe statements regarding You.

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff will not produce any documents or communications in response to this request.

34. All Documents reflecting, referencing, or related to any meetings or Communications (either written or oral), in which You were a participant or privy to the Communication, regarding Defendant Jane Doe

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the ground that it is duplicative of Request Number 5. Plaintiff also objects to this request on the ground that it is unclear exactly what is

13

being requested and, accordingly, Plaintiff will not respond to this request.

35.     All Documents reflecting, referencing, or related to any meetings or Communications between You and others regarding Defendant Jane Doe

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the ground that it is duplicative of Request Number 5. Plaintiff will not specifically respond to this request. To the extent Plaintiff has any non-privileged, relevant documents that are responsive to this request they will be produced in response to Request Number 5.

36.     All tax forms or other Documents sufficient to show income earned by month since January 2022.

**RESPONSE**:
Plaintiff objects to this request as unduly burdensome in its request for documents sufficient to show income earned by month. In response to this request, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce copies of his tax returns.

37. All Documents on which You intend to rely at trial or otherwise in this litigation.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request as premature. Defendant will receive copies of Plaintiff's trial exhibits in accordance with the Scheduling Order and Pre-Trial Notice entered in this case.

Dated: May 5, 2025

       /s/ Kara L. Gorycki
       Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

-and-

14

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***    John Doe

**Woods, Ashton**

| | |
|---|---|
| **From:** | Kara Gorycki <KGorycki@nmllplaw.com> |
| **Sent:** | Thursday, May 22, 2025 7:02 AM |
| **To:** | Franicevic, Zora F; Alex Robertson |
| **Cc:** | Roman, Neil; Shah, Komal; Van, Shanelle; Woods, Ashton; Caroline Murley; Jared Davidson |
| **Subject:** | RE:[Jane Doe] Litigation - Attachments Subject to ████ Protective Order - Confidential |

Got it, thanks.



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Franicevic, Zora F <ZFranicevic@cov.com>
**Sent:** Wednesday, May 21, 2025 11:11 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Alex Robertson <alex@mrmlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Woods, Ashton <AWoods@cov.com>; Caroline Murley <cmurley@twpdlaw.com>; Jared Davidson <jdavidson@twpdlaw.com>
**Subject:** RE:[Jane Doe] Litigation - Attachments Subject to ████ Protective Order - Confidential

- 
  - 
  - 

-

○                                                                    Jane Doe

Jane Doe

○

Jane Doe

Jane Doe

**Zora Franicevic**
Pronouns: She/Her/Hers

Covington & Burling LLP
The New York Times Building, 620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1209 | zfranicevic@cov.com
www.cov.com

**COVINGTON**

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Tuesday, May 20, 2025 5:44 PM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▮▮▮▮ Protective Order - Confidential



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Friday, May 16, 2025 3:47 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ████ Protective Order - Confidential

- **This has been sent.**

- **Plaintiff withdraws this objection with respect to each request.**

- **What are the charges against Plaintiff?**

- **Is this request for documents and communications concerning meetings about** Jane Doe **When you say "privy to" are you referring to documents and communications about meetings about** Jane Doe **that were shared with Plaintiff? It is very poorly worded so that is what is meant by "unclear."**

- **There is no basis for "proceeding" with respect to Plaintiff's responses to Defendant's document requests. As we discussed more than once, we are continuing our review and will update our responses once the productions have been completed.**

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Friday, May 16, 2025 7:17 AM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential

See comments below. As noted in our meet and confer I will be following up with correspondence addressing the various issues with Defendant's objections and responses to Plaintiff's document requests.



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Wednesday, May 14, 2025 3:06 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential

- 
  -

Jared pointed out that we are subject to the judge's schedule so it was my understanding that we would request a conference without my schedule. Also, that the protective order could guide the discussion with the Judge on how to handle the sealing issue.

     ○

**Looking forward to seeing these today**.

- ○

           █████

     ○

**Looking forward to receiving this today.**

     ○

**Without an agreed upon protective order we will not be producing. The judge does not have to so-order before we produce. I also did not say "at the latest." We will make productions on a rolling basis. My vendor will be able to get the production together by next Wednesday or Thursday providing that the protective order is agreed upon by then.**

     ○

- ○

- ○
         ■

     ○
         ■

**I am tied up on other matters and will send over as soon as I can.**

     ○

- Jane Doe
  Jane Doe

  ○
  -

  ○
  -

  ○
  -

- 
  ○
  - **I did not say by the end of the week.**

  ○
  - **I did not say by the end of the week.**

  ○
  - **I did not say by the end of the week.**

  ○
  -

**No. You seem to have a disproportionate view of what is required here – your client has provided no information about what is being withheld, produced no documents and no privilege log. As discussed, both parties are continuing to review information and Plaintiff will update his responses to Defendant's document requests when that review is completed**

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Monday, May 12, 2025 4:04 PM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▮▮▮▮ Protective Order - Confidential

Counsel,

Attached for your revie is the draft protective order that we discussed earlier today.

Please copy me on any communications with Judge Papillion about scheduling a conference to discuss the filing of documents referencing the ▮▮▮▮ Litigation.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500  •  212.736.2260 fax

Vcard  •  nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Monday, May 12, 2025 9:25 AM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▮▮▮▮ Protective Order - Confidential

John Doe

Jane Doe

- John Doe

John Doe

John Doe

- John Doe
- John Doe
- John Doe

- John Doe

- John Doe

- 
- John Doe

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Thursday, May 8, 2025 9:31 AM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ████ Protective Order - Confidential

Received, thanks.

**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500    •    212.736.2260 fax

Vcard    •    nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Thursday, May 8, 2025 9:21 AM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>;

Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Wednesday, May 7, 2025 2:19 PM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential

Komal,
My schedule this week is very hectic. I have availability on Monday, May 12, between 11:00 a.m.-12:00 p.m., 1:30 p.m.-2:30 p.m. and 3:30 p.m.-5:00 p.m. Eastern. Wednesday, May 14, also works before 4:00 p.m. Eastern.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500    •    212.736.2260 fax

Vcard    •    nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Wednesday, May 7, 2025 12:10 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential

**Komal Shah**
Pronouns: She/Her/Hers

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5869 | kshah@cov.com
www.cov.com

# COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Tuesday, May 6, 2025 7:26 PM
**To:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▮▮▮▮ Protective Order - Confidential

Komal,
I checked yesterday's email and it is clear that I inadvertently attached two copies of the interrogatory responses. The email refers to Plaintiff's "discovery responses." I have attached the file that was meant to be attached to yesterday's email. We have waived nothing. If the ▮▮▮▮ production had sufficiently responded to Defendant's document requests than it would be all that need be produced. However, we are not taking that position, as you will see in the attached document.

I will get back to you on the other assertions in your email, including your client's boilerplate and deficient objections to Plaintiff's document requests and failure to produce any documents or communications in this litigation.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Kara Gorycki
**Sent:** Monday, May 5, 2025 5:33 PM
**To:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** <sup>Jane Doe</sup> Litigation - Attachments Subject to ▇▇▇ Protective Order - Confidential

Counsel,

Please see attached discovery responses and three documents from ▇▇▇ production that are cited in Plaintiff's interrogatory responses.

Below is a link to Plaintiff's production in the ▇▇▇ matter:

completelegal.sharefile.com/d-s70af6ddb393b42578ef44cdeb583693f

I will send you the password in a separate email.

Thanks,
Kara

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| John Doe | ) | CIVIL ACTION NO. 2:24-CV-00825 |
| | ) | |
| **Plaintiff,** | ) | SECTION: P (3) |
| | ) | |
| **v.** | ) | **JUDGE DARREL JAMES** |
| | ) | **PAPILLION** |
| Jane Doe | ) | |
| | ) | **MAG. JUDGE EVA J. DOSSIER** |
| **Defendant.** | ) | |
| | ) | |

---

**PLAINTIFF'S INITIAL DISCLOSURES**

---

Plaintiff    John Doe    by and through his attorneys Nesenoff & Miltenberg, LLP,

hereby submits these Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil

Procedure. Plaintiff reserves the right to supplement and/or amend these disclosures based upon

subsequently filed and discovered documents and information in this case. The inclusion of any

documents or information in this disclosure statement shall not be deemed to waive: (i) the

attorney-client privilege and/or work-product doctrine, either generally or as they may pertain to

a particular document; and/or (ii) objections to the admissibility of any documents or testimony at

trial.

**I.        Rule 26(a)(1)(A)(i)**

The following individuals, as well as those identified in Defendant's initial disclosures, are

likely to have discoverable information that Plaintiff may use to support his claims in this action:

| Name | Subjects of Information | Contact Information |
|---|---|---|
| John Doe | Plaintiff | c/o Nesenoff & Miltenberg, LLP |
| Jane Doe | Defendant | c/o Covington & Burling LLP |

1

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Noa Banghart | Conversations with Jane Doe and Ms. ████ about Plaintiff; Jane Doe and Ms. ████ interactions; Jane Doe interest in Ms. ████ allegations; witness in Tulane investigation; provided evidence to Tulane investigator; communications with Jane Doe about this lawsuit and the Tulane lawsuit | c/o Suzanne Montero Sternberg, Naccari & White, LLP 935 Gravier Street, Suite 1800 New Orleans, Louisiana 70112 Main: (504) 324-2141 Direct: (504) 308-1395 Cell: (504) 352-3103 suzy@snw.law |
| ████████ | Complainant in Tulane disciplinary proceeding against Plaintiff; conversations with N. Banghart about Jane Doe coordination of disciplinary complaints with Jane Doe false accusations against Plaintiff; provided statements and evidence to Tulane during the disciplinary proceedings against Plaintiff | ████████ |
| Kamran Sakihtab | Individual that Jane Doe accused of sexual harassment/sexual assault as recounted to Plaintiff at the racetrack | Not available |
| Harrison White | Involved in a relationship with Jane Doe reported him to Tulane for COVID-19 violation after they broke up | ████████ |
| Katy Romano | Conversations with Jane Doe about Plaintiff; conversations with Plaintiff about Ms. ████; Ms. Romano's relationship with Harrison White; witness in the Tulane disciplinary proceeding and submitted evidence therein. | ████████ |
| Marcus Greenstein | Plaintiff's friend and housemate; Plaintiff's interactions with Ms. ████; the impact of Jane Doe allegations on Plaintiff's reputation and wellbeing; | ████████ |
| Madison Green | Plaintiff's friend; Jane Doe allegations and their impact on Plaintiff's reputation | ████████ |

2

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Luca Busalacchi | Plaintiff's friend and roommate; information about the █████ allegations; Jane Doe interactions with Plaintiff; impact of Jane Doe allegations on Plaintiff, | ████████████ |
| Tiffany Gradski | Plaintiff's friend; information about Ms. ████████ accusations; Plaintiff's reputation | ████████████ |
| Mariska Voorham | Plaintiff's friend; information about Ms. ████████ allegations | ████████████ |
| Allison Schafer | Friends with Ms. ████████ and Jane Doe allegations against Plaintiff | ████████████ |
| Eugenie McNiff | Jane Doe roommate; witness in Tulane investigation | Uknown |
| Katie Waters | Witness in the Tulane investigation | Unknown |
| Ben Miner | President of ZBT fraternity; knowledge of Jane Doe allegations against Plaintiff | ████████████ |
| Taylor Rappeport | Witness in Tulane investigation | ████████████ |
| Marissa Knell | Case Manager, Tulane University Jane Doe case manager for her disciplinary complaint against Plaintiff | c/o Chaffe McCall |
| Erica Woodley | Dean of Students and Associate Vice President of Student Affairs Tulane University Knowledge of Jane Doe allegations against Plaintiff | c/o Chaffe McCall |
| Christopher Zacharda | Former Director of Student Conduct, Tulane University; oversaw student conduct proceedings against Plaintiff | c/o Chaffe McCall |
| Jacqueline Barber | Former investigator, Tulane University; investigated ████████ and Jane Doe complaints and issued finding | c/o Chaffe McCall |
| Avery Pardee | Acting Appellate Chair in Plaintiff's appeal of Barber's findings | Jones Walker 201 St. Charles Ave New Orleans, LA 70170-5100 D: 504.582.8358 |

3

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Julia Broussard | Chief Title IX Officer, Tulane University Communications with Jane Doe about her allegations the student conduct process and advocacy initiatives on campus | c/o Chaffe McCall |
| Hannah Blalack | Served as witness for Jane Doe Petition for TRO in Louisiana Civil Court | Unknown |
| Will Reynoir | Plaintiff's friend; knowledge of Jane Doe allegations against Plaintiff and the impact on him | ███████ |
| Matthew Kisin | Showed Plaintiff Jane Doe Instagram post on or about February 7, 2022 | ███████ |
| Noah Siev | Called Plaintiff's parents after Jane Doe allegations circulated around campus | ███████ |
| ███████ | Plaintiff's mother; impact of Jane Doe defamatory statements, conduct proceedings and TRO application on Plaintiff, including Plaintiff's departure from Tulane | ███████ |
| ███████ | Plaintiff's father; impact of Jane Doe defamatory statements, conduct proceedings and TRO application on Plaintiff; Plaintiff's departure from Tulane | ███████ |
| Caleb Deutsch | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goal. | ███████ |
| Harry Wiley | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ███████ |
| Max Ruvo | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ███████ |

| Name | Subjects of Information | Contact Information |
|------|------------------------|---------------------|
| Ben Ruvo | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ███████████ |
| Ben Bailey | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state | ███████████ |
| Kelsey Maloney | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state | ███████████ |
| Sarah Donato | Special Olympics Co-President with Plaintiff | ███████████ |
| ███████████ | ███████████ | ███████████ |
| Lindsay Bilger | Physician's Assistant; saw Plaintiff in April 2022 regarding ███████████ | ███████████ |

## II.     Rule 26(a)(1)(A)(ii) Documents:

The following non-exhaustive list enumerates categories of documents, electronic information and other tangible things in the possession, custody or control of Plaintiff and that Plaintiff may use to support his claims in this action:

1. Documents and communications concerning the disciplinary proceedings conducted at Tulane University which arose from Jane Doe complaint against Plaintiff.

2. Documents concerning Jane Doe petition for a TRO.

3. Copies of Jane Doe social media posts from the relevant time period.

4. Text messages between Jane Doe and Plaintiff.

5. Text messages with individuals other than Jane Doe who have knowledge of the events in question.

6. Plaintiff's academic records.

7. Documents and communications concerning Plaintiff's damages.

### III. Rule 26(a)(1)(A)(iii) Damages

Plaintiff anticipates the use of damages expert(s) and will amend these disclosures accordingly. Plaintiff presently seeks damages of at least $2,000,000, comprised of the following:

1. Economic damages resulting from Plaintiff's altered career trajectory and lost educational opportunities.

2. Reputational harm.

3. Emotional distress and attendant physical symptoms including significant weight loss.

4. Attorneys' fees and travel expenses incurred with respect to Jane Doe TRO petition.

5. Attorneys' fees incurred with respect to the Tulane disciplinary proceeding.

Plaintiff also seeks punitive damages.

Dated: April 4, 2025

_____/s/ *Kara L. Gorycki*_____
Kara L. Gorycki (admitted pro hac vice)
NY Atty ID: 4140992
NESENOFF & MILTENBERG, LLP.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Email: kgorycki@nmllplaw.com
Telephone: (212) 736-4500

-and-

Alex Robertson
LA Atty ID: 37285
Email: alex@mrmlaw.com
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220

***Attorneys for Plaintiff***

6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## <u>ORDER</u>

Considering the foregoing Motion to Substitute Exhibits on Defendant s Motion to Compel filed by Defendant Jane Doe

IT IS HEREBY ORDERED that the Motion to Substitute Exhibits on Defendant s Motion to Compel is GRANTED and that Exhibits 2, 3, 4, 5, and 9 attached to the foregoing Motion be substituted into the record of this matter for the Exhibits 2, 3, 4, 5, and 9 originally filed with Defendant s Motion to Compel (R. Doc. No. 137) on June 3, 2025.

NEW ORLEANS, LOUISIANA, this        day of                        , 2025.

_____
JUDGE
UNITERD STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Original Filed at Docket No. 145,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** v. Jane Doe , **Defendant.** | CIVIL ACTION NO. 2:24-CV-00825 SECTION: P (3) **JUDGE DARREL JAMES PAPILLION** **MAG. JUDGE EVA J. DOSSIER** |

### DEFENDANT S UNOPPOSED MOTION TO SEAL E HIBITS TO MOTION TO COMPEL

**NOW INTO COURT** comes Defendant Jane Doe , who seeks an Order from this Court sealing Exhibits 2-5 and 9 of her Motion to Compel Responses to Written Discovery Responses pursuant to Local Rule 5.6. Pursuant to Local Rule 5.6, Jane Doe has filed full, unredacted copies of such exhibits to her Motion to Compel under seal with this motion. For the reasons set forth in the accompanying Memorandum in Support, Jane Doe respectfully requests that this Court enter the proposed order included herewith. Plaintiff does not oppose this motion.

**WHEREFORE**, Defendant prays for an Order from this Court sealing such exhibits to her Motion to Compel Responses to Written Discovery Requests.

Respectfully Submitted,

*/s/ Caroline M. M rley*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on the 25th of June, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** | CIVIL ACTION NO. 2:24-CV-00825 |
| **v.** | SECTION: P (3) |
| Jane Doe , **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT S MEMORANDUM IN SUPPORT**
**OF UNOPPOSED MOTION TO SEAL E HI ITS TO MOTION TO COMPEL**

Defendant Jane Doe respectfully moves to file under seal unredacted copies of Exhibits 2-5 and 9 of her Motion to Compel Responses to Written Discovery Requests in this litigation because they reference a separate litigation in which Plaintiff John Doe is proceeding under a pseudonym ("Pseudonymous Litigation") and information that Plaintiff has designated as "confidential" pursuant to the Joint Consent Protective Order. *See* R. Doc. Nos. 131, 132. Ms. Jane Doe has separately filed a Motion to Substitute Exhibits 2-5 and 9 of her Motion to Compel with properly redacted versions of those exhibits. Plaintiff does not oppose this motion.

When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a case outweigh the presumption in favor of the public's common-law right of access to judicial records. *i on v. arner Co nications*, 435 U.S. 589, 597 98 (1978). To determine whether a judicial record should be sealed, the Court "must undertake a case-by-case, document-by-document, line-by-line balancing of the public s common law right of access against the interests favoring nondisclosure." *Sealed Applicant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *2 (5th Cir. Mar. 7, 2024). The duty to balance interests and carefully review a sealing request applies even when the parties jointly desire that the matter should be

sealed. *C.P. v. Defendant*, No. 2:24-CV-01615, 2024 WL 4940551, at *1 (W.D. La. Nov. 26, 2024).

Here, Jane Doe requests that the Court exercise its supervisory power to seal the unredacted copies of Exhibits 2-5 and 9 of her Motion to Compel, filed herewith, because Jane Doe agreed in a stipulation entered by the Court not to refer to the Pseudonymous Litigation by name or case number, *see* R. Doc. Nos. 102, 108, and agreed in a Joint Consent Protective Order entered by the Court to redact information designated as "confidential" by the parties, *see* R. Doc. Nos. 131, 132. Jane Doe recognizes that under Local Rule 5.6(d), "reference to a stipulation or protective order is not sufficient to establish the necessity of sealing any document," but nonetheless seeks this sealing to honor her obligations under her agreements with Mr. John Doe. To balance her obligations under the parties' agreement with the right of the public to access material filed with the Court, Jane Doe requests that only references to the Pseudonymous Litigation, references to personal identifying information (personal phone numbers and addresses), references to the name of the woman identified in the Complaint as "Sue Roe," and references to Plaintiff's counseling, mental health, and medical information are redacted in Exhibits 2-5 and 9 of Defendant's Motion to Compel. This limitation is appropriate given that the Fourth Circuit rejected Mr. John Doe 's attempt to proceed under a pseudonym in this litigation against Jane Doe. *John Doe v. Jane Doe*, 85 F.4th 206 (4th Cir. 2023); R. Doc. No. 22.

Jane Doe seeks to have such exhibits to her Motion to Compel maintained under seal so long as the agreement not to refer to the Pseudonymous Litigation entered by the Court, R. Doc. Nos. 102, 108, and the Joint Consent Protective Order governing confidential information entered by the Court, R. Doc. Nos. 131, 132, remain in effect.

For the foregoing reasons, Jane Doe requests that the Court grant her motion to seal.

Respectfully Submitted,


*/s/   Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic **\*** (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
\*New York Office


*Attorneys for Defendant* Jane Doe

3

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on this 25th day of June, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , **Plaintiff,** | CIVIL ACTION NO. 2:24-CV-00825 |
| v. | SECTION: P (3) |
| Jane Doe , **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## ORDER

Considering the preceding Motion to Seal filed by Defendant Jane Doe

This Court finds that good cause e ists and it is appropriate to seal the unredacted copies of E hibits 2-5 and 9 of Jane Doe Motion to Compel, filed alongside Jane Doe Motion to Seal. When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a particular case outweigh the presumption in favor of the public's common-law right of access to judicial records. *i on v. arner Co nications*, 435 U.S. 589, 597 98 (1978).

In light of the stipulation entered by the Court in which the parties agreed not to refer to the Pseudonymous Litigation by name or case number and the Joint/Consent Protective Order entered by the Court in which the parties agreed to redact certain information designated as confidential that is filed to the public docket,

**IT IS ORDERED** that Defendant Jane Doe motion is hereby **GRANTED** and E hibits 2-5 and 9 of her Motion to Compel shall be filed into the record under seal.

New Orleans, Louisiana, this _____ day of _____, 2025.

_____
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 146,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

███████                                            CIVIL ACTION

VERSUS                                             NO.  24-825

███████                                            SECTION:  "P" (3)

### **ORDER**

Considering the Motion to Substitute Exhibits (R. Doc. 144),

**IT IS ORDERED** that Defendants' Motion to Substitute Exhibits (R. Doc. 144)

is **GRANTED** and that Exhibits 2 (R. Doc. 137-3), 3 (R. Doc. 137-4), 4 (R. Doc. 137-

5), 5 (R. Doc. 137-6), and 9 (R. Doc. 137-10), attached thereto, be substituted into the

record.

New Orleans, Louisiana, this 26th day of June, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

Original Filed at Docket No. 147,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

█████████                                      CIVIL ACTION

VERSUS                                         NO.  24-825

████████                                       SECTION:  "P" (3)

## **ORDER**

Considering the Motion to Seal (R. Doc. 145),

**IT IS ORDERED** that Defendant's Motion to Seal (R. Doc. 145) is

**GRANTED.**

**IT IS FURTHER ORDERED** that Exhibits 2 (R. Doc. 145-3), 3 (R. Doc.

145-4), 4 (R. Doc. 145-5), 5 (R. Doc. 145-6), and 9 (R. Doc. 145-7) be placed in the

record under **SEAL** and attached to R. Doc. 137.

New Orleans, Louisiana, this 26th day of June, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

Original Filed at Docket No. 148,

Sealed by Court Order

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , <br> **Plaintiff,** <br><br> v. <br><br> Jane Doe , <br> **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

## *EX PARTE* MOTION FOR CHRISTINA COLEBURN TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe, by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Christina D. Coleburn of the firm Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001-4956; Telephone: (202) 662-5532, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Christina D. Coleburn pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Christina D. Coleburn stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from the District of Columbia Court of Appeals attached as Exhibit B, a current Certificate of Good Standing from the Missouri Supreme Court attached as Exhibit C, and the Consent to Electronic Filing Form for Christina D. Coleburn attached as Exhibit D.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Christina D. Coleburn of the firm Covington & Burling, LLP to appear and

participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe.

Respectfully submitted,

*/s/ Jared A. Davidson*

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

***Counsel for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 30th day of June, 2025.

*/s/ Jared A. Davidson*

TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , | **CIVIL ACTION NO. 2:24-CV-00825** |
| **Plaintiff,** | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | **MAG. JUDGE EVA J. DOSSIER** |
| **Defendant.** | |

<u>**DECLARATION OF CHRISTINA COLEBURN**</u>

I, Christina Coleburn, certify that the following is a true and correct statement submitted in accordance with Local Rule 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I am admitted to practice law in the District of Columbia and Missouri.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the District of Columbia and Missouri.

6. I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8. No criminal charges have been instituted against me.

9. I consent to electronic service of all documents through the Court's electronic filing system.

**EXHIBIT**

**A**

10. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11. Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Polit & Duhe, LLC will serve as local counsel for Jane Doe in this case.

I declare under penalty of perjury that the foregoing is true and correct.

E ecuted on this 29th day of June, 2025.

/s/ ristina D. o e rn

Christina D. Coleburn



*On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals, the District of Columbia Bar does hereby certify that*

# *Christina Danielle Coleburn*

*was duly qualified and admitted on May 13, 2025 as an attorney and counselor entitled to practice before this Court; and is, on the date indicated below, an Active member in good standing of this Bar.*

*In Testimony Whereof, I have hereunto subscribed my name and affixed the seal of this Court at the City of Washington, D.C., on June 11, 2025.*

*JULIO A. CASTILLO*
*Clerk of the Court*

*Issued By:*

*David Chu - Director, Membership*
*District of Columbia Bar Membership*

*For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email memberservices@dcbar.org.*

**EXHIBIT
B**

## The Supreme Court of Missouri



## Certificate of Admission as an
## Attorney at Law

I, Betsy Ledgerwood, Clerk of the Supreme Court of Missouri, do hereby certify that the records of this office show that on 9/24/2024,

# Christina Danielle Coleburn

was duly admitted and licensed to practice as an Attorney and Counselor at Law in the Supreme Court of Missouri and all courts of record in this state, and is, on the date indicated below, a member in good standing of this Bar.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of the Supreme Court of Missouri at my office in Jefferson City, Missouri, this 12th day of June, 2025.

Clerk of the Supreme Court of Missouri

---

**EXHIBIT**

**C**

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

## <u>E-File Privileges</u>
**must be requested through PACER:**
<u>www.pacer.gov</u>

  This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: **Christina Danielle Coleburn**

Attorney Bar # and State: **76920, Missouri; 90034229, District of Columbia**

Firm Name: **Covington & Burling, LLP**

Firm Address: **850 10th St NW**

**Washington, DC 20001-4956**

Telephone Number: **202-662-5730**

E-Mail Address: **ccoleburn@cov.com**

(Attorney's email for electronic service)

Additional E-Mail Address: _____

(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑  Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number **No. 24-825**

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1



**EXHIBIT**
**D**

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

**06/11/2025**
_____
**Date**

*Christina Coleburn*
_____
**Attorney Signature**

[Rev.11/2019]

2

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **,** **Plaintiff,** **v.** Jane Doe **,** **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** **SECTION: P (3)** **JUDGE DARREL JAMES PAPILLION** **MAG. JUDGE EVA J. DOSSIER** |

**PROPOSED ORDER**

Considering the foregoing Motion for Admission *Pro a i e* of Christina D. Coleburn as counsel for Defendant Jane Doe ;

IT IS HEREBY ORDERED that Christina D. Coleburn should be and is hereby admitted to the bar of this Court *ro a vi e* on behalf of Defendant Jane Doe .

New Orleans, Louisiana, this _____ day of _____ , 2025.

_____

**United State Di tri t J d e**

Original Filed at Docket No. 149,
Sealed by Court Order

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe    **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe    **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

## *EX PARTE* MOTION FOR DESTINEE HALLER TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe, by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Destinee Haller of the firm Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001-4956; Telephone: (212) 379-8814, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Destinee Haller pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Destinee Haller stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from the Appellate Division of the Supreme Court of the State of New York, First Judicial Department attached as Exhibit B, and the Consent to Electronic Filing Form for Destinee Haller attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Destinee Haller of the firm Covington & Burling, LLP to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe.

Respectfully submitted,

/s/Jared A. Davidson

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

**Counsel for Defendant** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 30th day of June, 2025.

/s/Jared A. Davidson

TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>          **Plaintiff,**<br><br>          **v.**<br><br>Jane Doe   ,<br>          **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLIO**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## DECLARATION OF DESTINEE HALLER

I, Destinee Haller, certify that the following is a true and correct statement submitted in accordance with Local Rule 83.2.5:

1.    I desire to appear as counsel for Jane Doe   *ro  a  vi e* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2.    I am admitted to practice law in the State of New York.

3.    I have not been admitted to practice law in the State of Louisiana.

4.    I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5.    I am currently licensed in good standing to practice law in the State of New York.

6.    I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7.    I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8.    No criminal charges have been instituted against me.

9.    I consent to electronic service of all documents through the Court's electronic filing system.

10.    I agree to confer disciplinary jurisdiction upon this Court for any alleged

**EXHIBIT
A**

misconduct arising in the course of or in preparation for this action.

11.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Polit & Duhe, LLC will serve as local counsel for Jane Doe in this case

I declare under penalty of perjury that the foregoing is true and correct.

E ecuted on this 29th day of June, 2025.

/s/ Destinee  a er
_____

Destinee Haller



*Appellate Division of the Supreme Court*
*of the State of New York*
*Second Judicial Department*

———————

I, *Darrell M. Joseph, Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that*

## *Destinee Elizabeth Haller*

*was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **April 16, 2025**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Office of Court Administration, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.*



*In Witness Whereof, I have hereunto set my hand in the City of Brooklyn on June 12, 2025.*

*Clerk of the Court*

*CertID-00236472*

EXHIBIT
B



**Appellate Division**
**Supreme Court of the State of New York**
**Second Judicial Department**
**45 Monroe Place**
**Brooklyn, N.Y. 11201**
(718) 875-1300

HECTOR D. LASALLE
PRESIDING JUSTICE

DARRELL M. JOSEPH
CLERK OF THE COURT

KENNETH BAND
MELISSA KRAKOWSKI
DEPUTY CLERKS

WENDY STYNES
LAUREN G. DOME
BRIAN E. KENNEDY
RIAD P. WILLIAMS
ASSOCIATE DEPUTY CLERKS

To Whom It May Concern

An attorney admitted to practice by this Court may request a certificate of good standing, which is the only official document this Court issues certifying to an attorney's admission and good standing.

An attorney's registration status, date of admission and disciplinary history may be viewed through the attorney search feature on the website of the Unified Court System.

New York State does not register attorneys as active or inactive.

An attorney may request a disciplinary history letter from the Attorney Grievance Committee of the Second Judicial Department.

Bar examination history is available from the New York State Board of Law Examiners.

Instructions, forms and links are available on this Court's website.

Darrell M. Joseph
Clerk of the Court

Revised October 2024

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
<u>www.pacer.gov</u>

      This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Destinee Elizabeth Haller

Attorney Bar # and State: 6182125, New York

Firm Name: Covington & Burling, LLP

Firm Address: 620 Eighth Avenue

New York, NY 10018-1405

Telephone Number: 212 379 8814

E-Mail Address: dehaller@cov.com

(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑    Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number No. 24-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

<div style="border:1px solid black; display:inline-block; padding:5px; text-align:center">
**EXHIBIT**
**C**
</div>

- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

6/29/2025

Date

*Destinee Haller*

Attorney Signature

[Rev.11/2019]

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe     **Plaintiff,** <br><br> **v.** <br><br> Jane Doe   **,** <br><br>     **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** <br><br> **SECTION: P (3)** <br><br> **JUDGE DARREL JAMES PAPILLIO** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

## PROPOSED ORDER

Considering the foregoing Motion for Admission *Pro a i e* of Destinee Haller as counsel for Defendant Jane Doe ;

IT IS HEREBY ORDERED that Destinee Haller should be and is hereby admitted to the bar of this Court *ro a vi e* on behalf of Defendant Jane Doe .

New Orleans, Louisiana, this ____ day of _____ , 2025.

_____

**United State Di tri t J d e**

Original Filed at Docket No. 150,

Sealed by Court Order

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

████████

CIVIL ACTION

**VERSUS**

NO. 24-825

████████

SECTION: "P" (3)

## ORDER

Considering Defendant ████████'s foregoing motion for admission of attorney Christina

Coleburn *pro hac vice* (R. Doc. 148),

**IT IS ORDERED** that the motion is **GRANTED**, and Christina Coleburn is hereby

admitted *pro hac vice* and enrolled as additional counsel of record for Defendant ████████ in the

above-captioned matter.

New Orleans, Louisiana, this 1st day of July 2025.

_____
**DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Original Filed at Docket No. 151,

Sealed by Court Order

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

████████                                                   **CIVIL ACTION**

**VERSUS**                                                 **NO. 24-825**

████████                                                   **SECTION: "P" (3)**

## ORDER

Considering Defendant ████████'s foregoing motion for admission of attorney Destinee

Haller *pro hac vice* (R. Doc. 149),

**IT IS ORDERED** that the motion is **GRANTED**, and Destinee Haller is hereby admitted

*pro hac vice* and enrolled as additional counsel of record for Defendant ████████ in the above-

captioned matter.

New Orleans, Louisiana, this 1st day of July 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## <u>NOTICE TO VISITING ATTORNEYS</u>

## <u>ADMITTED PRO HAC VICE</u>

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Original Filed at Docket No. 152,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** v. Jane Doe **Defendant.** | CIVIL ACTION NO. 2:24-CV-00825 SECTION: P (3) JUDGE DARREL JAMES PAPILLION MAG. JUDGE EVA J. DOSSIER |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL RESPONSES TO WRITTEN DISCOVERY REQUESTS**

Plaintiff    John Doe    ("Plaintiff") respectfully submits this brief in opposition to Defendant Jane Doe ("Defendant") motion to compel, which wrongfully mischaracterizes **her** disregard for the Federal Rules of Civil Procedure as Plaintiff's avoidance of his discovery obligations. This is sheer fabrication.

Defendant is in clear violation of Rule 33 of the Federal Rules of Civil Procedure as well as Local Rule 33.1. Defendant purported to serve 21 interrogatories on Plaintiff. In truth, she served 50 interrogatories. Plaintiff responded to the first thirteen interrogatories. At most, if the Court agrees with the revised analysis set forth in Exhibit A, Plaintiff will have to respond to the first two subparts of Interrogatory Number 14. Nothing more is required and Defendant's motion to compel further responses should be denied.

Defendant's *post hoc* alternative request for "leave" to exceed the 25-interrogatory limit should also be denied. Defendant violated Local Rule 33.1 by failing to seek leave from the Court in the first place. Even if this request were properly made—it was not—Defendant has made no effort to demonstrate that she is entitled to the relief she is seeking. Her argument is grounded in

1

cursory analysis of the interrogatories in question and serious misrepresentations to the Court about the purported lack of evidence in her possession.

Defendant's request for an order compelling supplemental responses to Interrogatory Numbers 7, 8 and 12 should also be denied. Plaintiff fully responded to Interrogatory Number 7. He further provided all current information he has about his damages claim in response to Interrogatory Number 8. Plaintiff asserted valid objections to Interrogatory Number 12 and should not be compelled to respond to same.

The portion of Defendant's motion seeking to compel Plaintiff to provide information about whether he is withholding responsive documents from production is an unnecessary waste of the Court's time and resources. The parties continue to review documents and are making rolling productions. For this reason, neither party has disclosed whether he or she is withholding non-privileged, responsive documents. With this knowledge, Defendant chose to raise this non-issue with the Court. In any event, Plaintiff is not presently withholding any non-privileged responsive documents from production.

## I. Defendant's Motion to Compel Additional Interrogatory Responses Should Be Denied

Rule 33 of the Federal Rules of Civil Procedure ("Rule 33") makes clear that a party may serve "no more than 25 written interrogatories, including discrete subparts." *Id.* The 1993 Advisory Committee notes to Rule 33 stress that the limitation on the number of interrogatories was necessary because "the device can be costly and may be used as a means of harassment." *Id.* (discussing subpart (a)). The 1993 notes further advise:

> Each party is allowed to serve 25 interrogatories upon any other party, but ***must*** secure leave of court (or a stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. *Id.* (emphasis added).

2

This District requires strict adherence to the Rule unless a party is granted leave to serve additional interrogatories. LR 33.1. Leave must be obtained from the Court **before** a party serves more than 25 interrogatories on another party. *Id.* The party seeking leave to serve excess interrogatories must also make a particularized showing as to why they should be permitted to exceed the limit. *Parkcrest Builders, LLC v. Housing Auth'y of New Orleans*, 2017 WL 1426933, at *3 (E.D. La. Apr. 21, 2017) (Wells Roby, M.J.). Rather than following the rules, Defendant elected to serve **50** interrogatories on Plaintiff without leave of Court. *See* Ex. A, Analysis of Defendant's Interrogatories. Instead of accepting responsibility for these errors—or actually trying to reach a compromise with Plaintiff[1]—Defendant elected to waste resources by moving to compel.[2] She then unsuccessfully chose to deflect from her flawed and excessive interrogatories by falsely depicting Plaintiff's adherence to Rule 33 as an attempt to avoid his discovery obligations.[3] Moving Br. at 4, 7.

When evaluating whether a set of interrogatories violates the limit imposed by Rule 33, there is no precise test for determining what constitutes a discrete subpart. *Erfindergemeinschaft Uropep GBR*, 315 F.R.D. 191, 196 (E.D. Tex. 2016). Most courts follow the "related question" approach to deciphering interrogatories. *Id.*; *Cook v. Flight Servs. & Sys., Inc.*, 2018 WL 11447512, at *6 (E.D. La. Nov. 1, 2018) (Knowles, M.J.). *See, e.g.*, *Parkcrest Builders*, 2017 WL 1426933, at *3; *Stephens v. Florida Marine Transporters, Inc.*, 2013 WL 12120393, at *3 (E.D. La. Feb. 21,

---

[1] Defendant conceded that Interrogatory Number 7 constitutes more than one interrogatory. Moving Br. at 4 n. 2; Ex. A, Analysis of Defendant's Interrogatories. She notes in her Moving Brief that Plaintiff did not "respond to [her] offer" to split a single interrogatory into two parts. There was no need to respond. Plaintiff answered that interrogatory.

[2] Plaintiff's counsel was willing to continue discussing Plaintiff's interrogatory responses. This is clear from Ms. Gorycki's June 2, 2025 email which recommended that outstanding issues be discussed at an upcoming meet and confer. R. Doc. #137-9, at p. 1.

[3] The contrary is actually true. Defendant and her counsel have been beyond slow in their production of relevant information, have refused to answer questions in meet and confer calls about the manner in which they are collecting and reviewing information, would not agree to a deadline for the exchange of document discovery and have not disclosed whether Defendant is withholding responsive documents and communications from production. *See* Exs. B, E and G.

2013).[4] Pursuant to this approach, the Court must determine if purported subparts are logically or factually subsumed within and necessarily related to the primary interrogatory in question. *Id.* If the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within and necessarily related to the primary question. *Id.* The degree to which a subpart is logically related to the primary question in the interrogatory requires a case-by-case assessment because there is no "crisp verbal formula" which can readily be applied. *Erfindergemeinschaft*, 15 F.R.D. at 197. Defendant acknowledges that there is no "clear and easily applied rule" yet disingenuously asserts that Plaintiff's valid objection to answering more than twenty-five interrogatories is against the "weight of authority." Moving Br. at 4.

When faced with a set of interrogatories that violate Rule 33, a party need only answer the first 25. *See Stephens*, 2013 WL 12120393, at *3 (directing party to answer first 13 interrogatories); *Parkcrest Builders,* 2017 WL 1426933, at **3-4 (party only required to answer first 14 interrogatories). Here, Plaintiff responded to Interrogatory Numbers 1-13. *See* Exs. A, C. While preparing this opposition, Plaintiff revised his analysis of Defendant's interrogatories, concluding that Interrogatory Numbers 1-13 constitute 23 interrogatories (as opposed to 34). Ex. A. This means that the first two subparts of Interrogatory Number 14 should be answered. If the Court agrees with Plaintiff's revised analysis, Plaintiff will respond to the first two parts of Interrogatory Number 14. *See id*. Notably, Defendant has been in possession of the information sought in

---

[4] Defendant acknowledges that courts typically apply this test, but also argues for application of the "common theme" test. Moving Br. at 6. This approach is problematic because "if the concept of 'common theme' is given a sufficiently broad interpretation, there is almost no limit to the use of multiple subparts that could qualify as falling within a single interrogatory." *Erfindergemeinschaft*, 15 F.R.D. at 196. This would defeat the purpose of the 1993 amendment to Rule 33. *Id.*

Interrogatory Number 14 since May 2023. Plaintiff also produced this information with his interrogatory responses on May 5, 2025. Ex. C.

Plaintiff should not be compelled to answer additional interrogatories. Nor should Defendant be granted leave with respect to her excessive interrogatories because she has made no particularized showing as to why it is necessary for Plaintiff to respond to each additional interrogatory. *See* Moving Br. at 15-16. Rather, Defendant addresses Interrogatory Numbers 14-21 in an admittedly cursory manner. *Id*. Defendant also misrepresents that the information she seeks through Interrogatory Numbers 14-21 is unavailable to her because this case in the early stages of discovery. *Id.* at 16. This is patently false. Defendant has been in possession of the very information she seeks for over two years. In May 2023, Tulane University provided Defendant with a full copy of the records pertaining to the disciplinary proceedings against Plaintiff that are a subject of this action.[5] This included Plaintiff's written statements concerning the events that occurred with Defendant and Sue Roe. Defendant's assertion that Plaintiff was late in producing documents is also false. On May 5, 2025, Plaintiff produced his entire production in the pending Pseudonym Action. On the same day, he served copies of his written statements in the Tulane investigation with his interrogatory responses. Ex. C. On May 28, 2025—before Defendant's motion was filed—Plaintiff produced all of his non-privileged and responsive text messages, including communications about Defendant and Sue Roe.

Defendant's motion for leave to exceed Rule 33's limit should also be denied because certain of Defendant's interrogatories are unduly burdensome. For example, Interrogatory Number 19 would require Plaintiff to catalog the thousands of communications produced in this action by

---

[5] Defendant did not produce these records with her responses to Plaintiff's document requests. She waited until after Tulane University informed Plaintiff that it had provided the records to Defendant. On June 12, 2025 she produced what appears to be a portion of the records received from Tulane.

parties and non-parties alike. Others, like Interrogatory Number 15, delve into the irrelevant and highly personal details of Plaintiff's sexual activity with persons other than Defendant or Sue Roe. These are the very definition of harassing.

*Plaintiff respectfully refers the Court to Exhibit A which separately addresses each interrogatory propounded by Defendant and responds to her arguments with respect thereto*.

## II.  Plaintiff Need Not Supplement His Responses to Interrogatory Numbers 7, 8 and 12

Continuing her false narrative, Defendant suggests that Plaintiff's responses to Interrogatory Numbers 1-13 are improper, asserting that "at least" three of his responses need to be supplemented. Moving Br. at 16. Omitted from her narrative is that Defendant prematurely served contention interrogatories (Interrogatory Numbers 2-5) and an interrogatory concerning Plaintiff's damages (Interrogatory Number 12). Ex. C. Plaintiff fully responded to these interrogatories with the information he presently has in his possession. Defendant's motion to compel is specifically directed to Interrogatory Numbers 7, 8 and 12. Eager to paint Plaintiff as unwilling to cooperate, Defendant falsely asserts that Plaintiff refused or declined to meet and confer in regard to these interrogatories when, in fact, Plaintiff's counsel suggested that any issues be discussed at an upcoming meeting. R. Doc. # 137-9 ("I recommend that any outstanding issues with respect to my answers below be addressed at the start of that meeting"). Defendant elected to file her motion without further discussion.

Plaintiff has fully responded to Interrogatory Number 7. Ex. C. Defendant takes issue with the fact that Plaintiff's response directs her to the friends identified in his initial disclosures and that his initial disclosures do not indicate whether Plaintiff confided in them about "any mental health conditions or emotional distress." Moving Br. at 17. This argument is meritless. Plaintiff clearly states in his interrogatory response that he has not been diagnosed with any mental health

6

condition. Plaintiff then expressly refers Defendant to eleven friends listed in his initial disclosures who have information concerning the impact of her accusations: Marcus Greenstein, Madison Green, Luca Busalacchi, Caleb Deutsch, Will Reynoir, Noah Siev, Harry Wiley, Max Ruvo, Ben Ruvo, Ben Bailey and Kelsey Maloney. Exs. C, D. Plaintiff also identified his parents. Ex. C. For the first time in her motion, Defendant requests that Plaintiff list all oral conversations he had with these individuals about any emotional distress he suffered between February 2022 and the present. It would be unduly burdensome and time consuming for Plaintiff to try to recall every conversation he had with thirteen (not six) people over the course of the past three and a half years. To the extent that Plaintiff produces any documents or communications related to his mental health (discovery is ongoing) it would also be unduly burdensome for him to have to create a list of documents that are readily available in his production.

Plaintiff fully answered Interrogatory Number 8 by incorporating the damages calculation set forth in his initial disclosures, which expressly states that the calculation will be amended as part of expert discovery.[6] Ex. C, D. Defendant is, accordingly, incorrect that Plaintiff failed to preserve his right to amend his response in the future to align with any expert opinions. Moving Br. at 18. Plaintiff's initial disclosures provide the following detailed breakdown of his damages, subject to future amendment:

> Plaintiff anticipates the use of damages expert(s) **and will amend these disclosures accordingly**. Plaintiff presently seeks damages of at least $2,000,000, comprised of the following:
> 1. Economic damages resulting from Plaintiff's altered career trajectory and lost educational opportunities.
> 2. Reputational harm.
> 3. Emotional distress and attendant physical symptoms including significant weight loss.
> 4. Attorneys' fees and travel expenses incurred with respect to Jane Doe TRO petition.

---

[6] Expert reports are presently due on January 2, 2026, though the parties made a motion to align the discovery schedules in this action and the pending Pseudonym Action.

5. Attorneys' fees incurred with respect to the Tulane disciplinary proceeding.

Plaintiff also seeks punitive damages. (emphasis added)

On July 3, 2025, Plaintiff produced the expert reports previously disclosed in his pending Pseudonym Action. While these reports will be amended before the deadline for serving expert reports in that case, they serve as the preliminary basis for the first category of damages. Plaintiff will, of course, serve expert reports in this case in accordance with the Scheduling Order. Plaintiff need not allocate an amount of damages to emotional distress or reputational harm, as those categories of damages are within the province of the jury. Should Plaintiff enlist an expert to calculate damages in either category, he will update his response to Interrogatory Number 8. Plaintiff can, and will, update his response to include the amount of attorney's fees incurred with respect to the TRO petition and disciplinary proceedings. Punitive damages, if awarded, are also within the province of the jury.

Plaintiff need not respond to Interrogatory Number 12, which asks Plaintiff to provide a month-by-month accounting of income he has received from "sources other than jobs" over a three-year period. This is completely irrelevant to any claim or defense in this action. While Defendant baldly asserts that any other income received by Plaintiff is relevant to his damages, she does not specify how or why it is relevant. Moving Br. at 19-20. As noted above, Plaintiff's economic damages concern the impact of Defendant's false accusations on his career trajectory. This relates to income earned from past, current and future *employment*. Whether Plaintiff received "any financial support from his family or withdrawals from any trust funds" has absolutely no bearing on this issue. Moving Br. at 20. Moreover, asking Plaintiff to create a month-by-month accounting of this irrelevant income (if it did exist) is unduly burdensome and not proportional to

8

the needs of the case. Defendant has not met her burden of demonstrating why it is necessary for Plaintiff to respond to this irrelevant interrogatory.

For the above stated reasons, Defendant's motion to compel supplemental responses to Interrogatory Numbers 7, 8 and 12 should be denied.

**III.    Plaintiff Has Not Refused To Supplement His Responses To Defendant's Document Requests**

Defendant's counsel did not clearly inform Plaintiff's counsel that Defendant planned to make a motion to compel Plaintiff to "supplement his responses to Jane Doe requests for production to state whether he is withholding non-privileged responsive documents and, if so, the basis for withholding." ECF No. 137. There is presently no dispute ripe for adjudication by the Court because Plaintiff has not refused to provide this information. Each side has represented to the other that it is producing documents on a rolling basis. *See* Ex. E, K. Shah Ltr. 6/12/25; Ex. F, Pltf. Doc. Req. Resp., at p. 1. Plaintiff has expressly stated that he will update his responses to Defendant's document requests when his review and productions are complete. *Id.* Defendant has not complied with FRCP 34(b)(2)(C) by stating whether she is withholding any responsive materials on the basis of any objections. Ex. G, Def. Am. Obj. & Resp.

To date, Plaintiff has produced: i) his entire production in the pending Pseudonym Litigation; ii) responsive text messages and email communications; iii) his 2023 and 2024 tax returns and documents related to his search for employment; iv) expert reports from the Pseudonym Litigation; v) 5,000 pages of documents from Tulane University concerning his disciplinary record, academic record and the disciplinary proceeding at issue in this case; and vi) text messages produced by nonparty Noa Banghart in response to a document subpoena. While Plaintiff's review is ongoing, he is not presently withholding any non-privileged, responsive documents or communications from production.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel should be denied in its entirety.

Dated: July 7, 2025

                     /s/ Kara L. Gorycki
                Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500

Email: kgorycki@nmllplaw.com

             -and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***   John Doe

**EXHIBIT A**
John Doe  *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| 1 | One interrogatory | 1 | No dispute. |
| 2 | Two interrogatories:<br>1. The bases for defamation claim<br>2. Identify every false and defamatory statement of which you are aware | 3 | Plaintiff can identify each false and defamatory statement known to him fully and completely without stating the legal basis for his multi-element defamation claim. |
| 3 | One interrogatory | 4 | No dispute. |
| 4 | Two interrogatories:<br>1. The bases for your abuse of process claim.<br>2. Identify evidence supporting your claim re <sup>Jane Doe</sup> motives. | 6 | Plaintiff can identify the evidence supporting his claim about Defendant's motives without stating the legal basis for his abuse of process claim. |
| 5. | Two interrogatories<br>1. State the bases for your conspiracy claim<br>2. Identify communications between <sup>Jane Doe</sup> and Roe and describe the substance of any communications of which you are aware between <sup>Jane Doe</sup> and Roe. | 8 | Plaintiff can identify and describe communications between Defendant and Sue Roe without stating the legal bases for his conspiracy claim. Plaintiff revised his analysis of this interrogatory, concluding that it is two interrogatories as opposed to three. |
| 6 | One interrogatory | 9 | No dispute. Plaintiff changed his position. |

**EXHIBIT A**
John Doe  *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| 7 | Five interrogatories:<br>1. Identify any therapy you have sought: a) therapist; b) frequency; and c) period<br>2. Identify any mental health diagnosis you have received by a mental health professional<br>3. Identify any medications you have taken: a) when; and b) who prescribed<br>4. Other than therapists, identify "other persons" whom you have confided in.<br>5. Identify the content of communications with persons in whom you have confided | 14 | Each subpart of this interrogatory can be answered fully and completely, independent of the other subparts. There is, further, no primary question in this interrogatory. The thematic approach to interrogatories runs counter to the "related question" approach adopted by the majority of courts. Even if it were to apply, there is no "theme" in this interrogatory. Defendant is incorrect in her assertion that each subpart concerns "any therapy  John Doe  sought." Therapy does not necessarily entail receiving a mental health diagnosis or being prescribed medication. Doctors and psychiatrists prescribe medication. If Plaintiff spoke to his friends or family about what happened this can hardly be described as therapy.<br><br>Defendant has conceded that this is more than one interrogatory but incorrectly asserts that it is only two interrogatories. |
| 8 | One interrogatory | 15 | No dispute. Plaintiff changed his position on this interrogatory |

**EXHIBIT A**
John Doe  *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| 9 | Two interrogatories:<br>1. Graduate school programs to which you have applied: a) schools; b) month/year; and c) decisions on applications.<br>2. Graduate schools attended: a) dates of attendance; and b) degrees attained. | 17 | That Plaintiff responded to this interrogatory with a single word, "none," does not mean that he conceded that this is one interrogatory. Plaintiff revised his position to assert that this is two interrogatories rather than three. The request for information concerning the graduate schools to which Plaintiff applied is a separate and distinct question from which graduate schools Plaintiff attended. Each question can be answered without reliance on the other. This is why Defendant urges the Court to adopt the thematic approach to this interrogatory, which is not the approach taken by the majority of courts. |
| 10 | One interrogatory | 18 | No dispute. Plaintiff changed his position. |
| 11 | One interrogatory | 19 | No dispute. Plaintiff changed his position. |
| 12 | Two interrogatories:<br>1. State your monthly income from sources other than jobs.<br>2. Identify the sources of that income. | 21 | Plaintiff can state the monthly income that he earned (apart from any jobs) without identifying the sources of that income. Plaintiff can state the sources of income apart from his jobs without providing the amount of monthly income that he earned from those sources. No purpose can be gleaned from this interrogatory that would be frustrated by counting this as two interrogatories. |

3

**EXHIBIT A**
John Doe *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| 13 | Two interrogatories: <br>1. Describe the events of February 2, 2022: a) the locations visited; b) time visited; and c) persons you were with. <br>2. Describe the events of February 3, 2022: a) the locations visited; b) time visited; and persons you were with. | 23 | Plaintiff revised his position on this interrogatory, decreasing the number from six to two. This interrogatory requests information about the events that occurred on two, separate days. One can be answered irrespective of the other. Defendant is incorrect that the two dates "cannot" be separated. As alleged in the Complaint, the parties were not in each other's physical presence until February 3, 2022 when they engaged in sexual activity. Compl. ¶¶ 27-28. Text messages between Plaintiff and Defendant, which Plaintiff produced in this litigation on May 29, 2025, confirm this. Ex. H. |
| 14 | Six interrogatories: <br><br>1. Identify the: a) number of alcoholic beverages you consumed on February 2; b) the type of alcoholic beverages you consumed on February 2; c) the locations at which you consumed alcoholic beverages on February 2; and d) the approximate times you consumed those drinks on February 2. <br>2. Identify the: a) amount of drugs you consumed on February 2; b) the types of drugs you consumed on February 2; c) the locations at which you consumed drugs on February 2; and d) the approximate times you consumed those drugs on February 2. | 29 | This clearly requests information for two separate days—February 2 and February 3—and seeks information about three different categories of intoxicants: alcohol, drugs, and other substances. If the Court agrees with Plaintiff's revised analysis, Plaintiff will have to respond to subparts 1 and 2. <br><br>1. Identify the: a) number of alcoholic beverages you consumed on February 2; b) the type of alcoholic beverages you consumed on February 2; c) the locations at which you consumed alcoholic beverages on February 2; and d) the approximate times you consumed those drinks on February 2. <br>2. Identify the: a) amount of drugs you consumed on February 2; b) the types of drugs you consumed on February 2; c) the locations at which you consumed drugs on February 2; and |

4

**EXHIBIT A**
John Doe *v.* Jane Doe Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| | 3. Identify the: a) amount of substances you consumed on February 2; b) the types of substances you consumed on February 2; c) the locations at which you consumed any substances on February 2; and d) the approximate times you consumed those substances on February 2.<br>4. Identify the: a) number of alcoholic beverages you consumed on February 3; b) the type of alcoholic beverages you consumed on February 3; c) the locations at which you consumed alcoholic beverages on February 3; and d) the approximate times you consumed those drinks on February 3.<br>5. Identify the: a) amount of drugs you consumed on February 3; b) the types of drugs you consumed on February 3; c) the locations at which you consumed drugs on February 3; and d) the approximate times you consumed those drugs on February 3.<br>6. Identify the: a) amount of substances you consumed on February 3; b) the types of substances you consumed on February 3; c) the locations at which you consumed any substances | | d) the approximate times you consumed those drugs on February 2.<br><br>Defendant has addressed Interrogatory 14 in a cursory manner and misrepresented to the Court that she has not had the opportunity to obtain the information sought in these interrogatories in discovery. Moving Br. at 15-16. Defendant already has information in her possession which answers all six interrogatories. In May 2023, Tulane gave Defendant copies of Plaintiff's written statements from the Tulane investigation, which address his use of intoxicants on the dates in question, from Tulane University.[1] She produced them in this litigation on June 12, 2025. Plaintiff also served copies of his statements on May 5, 2025 with his interrogatory responses. Ex. C. |

[1] This information was disclosed by Tulane in May 2025. Defendant did not produce any documents in this action when she served her objections and responses to Plaintiff's document requests, though she had these records in her possession.

**EXHIBIT A**
John Doe *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| | on February 3; and d) the approximate times you consumed those substances on February 3. | | |
| 15 | Two interrogatories:<br>1. All sexual activity in which you engaged on February 2.<br>2. All sexual activity in which you engaged on February 3. | 31 | Defendant addresses this interrogatory in a cursory manner. Moving Br. at 16. It concerns two separate days and each part can be answered independently of the other. The parties engaged in sexual activity on February 3, 2022.<br><br>Plaintiff objects to this interrogatory on relevance grounds. The details of any sexual encounters that Plaintiff may have had on either day—other than with Defendant—is not relevant to any claim or defense in this action. Defendant is in possession of Plaintiff's written statements in the Tulane investigation which detail his interaction with Defendant on February 3. Defendant received copies from Tulane University in May 2023 which she produced in this litigation on June 12, 2025. On May 5, 2025, Plaintiff served copies of his statements with his interrogatory responses. Ex. C. |

**EXHIBIT A**

John Doe  *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825

Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| 16 | Two interrogatories:<br><br>1. Identify: a) all persons with whom you communicated about the sexual activity you engaged in on February 2; and b) the substance of those communications.<br>2. Identify: a) all persons with whom you communicated about the sexual activity you engaged in on February 3; and b) the substance of those communications. | 33 | This concerns two separate days. Each can be answered independently of the other. Defendant addressed this interrogatory in cursory fashion. Moving Br. at 16. The parties engaged in sexual activity on February 3, 2022. Ex. H. Plaintiff has asserted a relevance objection as concerning his sexual activities with persons other than the Defendant or communications related thereto. On May 29, 2025 Plaintiff produced all text messages concerning Defendant. Plaintiff's initial disclosures also identified the people with whom he discussed Defendant and her allegations. Ex. D. |
| 17 | Three interrogatories:<br><br>Describe:<br>1) the events underlying Sue Roe's allegations, including the sexual activity in which you engaged;<br>2) the communications that you exchanged with Sue Roe following that activity and the reasons for the statements made in those communications;<br>3) the communications you had with other persons regarding the sexual activity with Sue Roe and the reasons for the statements that you made in those communications. | 36 | This interrogatory seeks three distinct categories of information and each part can be answered independently of the other. Subparts 2 and 3 are not subsumed by "the events underlying Sue Roe's allegations" as they concern the reasons why Plaintiff communicated with Sue Roe and others.<br><br>Defendant addressed this interrogatory in a cursory manner and misrepresented to the Court that she has not had the opportunity to obtain the information sought in discovery. Moving Br. at 15-16. Defendant had to be in possession of Plaintiff's statements and communications in order to propound this interrogatory. Defendant is in possession of Plaintiff's written statements in the Tulane investigation which detail his interactions with Sue Roe and communications with Sue Roe, and others, thereafter. In May 2023, Tulane University gave Defendant copies of the records relating to the |

7

**EXHIBIT A**
John Doe  *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| | | | Tulane investigation, which included documents and communications relating to Sue Roe's allegations, including Plaintiff's written statements. Defendant produced these records in this litigation on June 12, 2025. Plaintiff's written statements, which address Sue Roe, were also served with Plaintiff's interrogatory responses on May 5, 2025. Ex. C. On May 29, 2025, before the motion to compel was filed, Plaintiff produced all responsive text messages relating to his interactions with Sue Roe, including with persons other than Sue Roe. |
| 18 | Six interrogatories:<br><br>1. Identify the: a) number of alcoholic beverages you consumed on August 22; b) the type of alcoholic beverages you consumed on August 22; c) the locations at which you consumed alcoholic beverages on August 22; and d) the approximate times you consumed those drinks on August 22.<br>2. Identify the: a) amount of drugs you consumed on August 22; b) the types of drugs you consumed on August 22; c) the locations at which you consumed drugs on August 22; and d) the approximate times you consumed those drugs on August 22. | 42 | This clearly requests information for two separate days—August 22 and 23—and seeks information about three different categories of intoxicants: alcohol, drugs, and other substances.<br><br>Defendant addressed this interrogatory in a conclusory manner and misrepresented to the Court that she does not have this information. Moving Br. at 16. Defendant already has information in her possession which answers all six interrogatories. Defendant has had copies of Plaintiff's written statements from the Tulane investigation, which discuss the use of intoxicants on the days in question, since May 2023, when she received copies of the full investigation record from Tulane University. She produced these records in this litigation on June 12, 2025. On May 5, 2025, Plaintiff served copies of his written statements along with his responses to Defendant's interrogatories. Ex. C. |

8

**EXHIBIT A**
John Doe *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| | 3. Identify the: a) amount of substances you consumed on August 22; b) the types of substances you consumed on August 22; c) the locations at which you consumed any substances on August 22; and d) the approximate times you consumed those substances on August 22.<br><br>4. Identify the: a) number of alcoholic beverages you consumed on August 23; b) the type of alcoholic beverages you consumed on August 23; c) the locations at which you consumed alcoholic beverages on August 23; and d) the approximate times you consumed those drinks on August 23.<br><br>5. Identify the: a) amount of drugs you consumed on August 23; b) the types of drugs you consumed on August 23; c) the locations at which you consumed drugs on August 23; and d) the approximate times you consumed those drugs on August 23.<br><br>6. Identify the: a) amount of substances you consumed on August 23; b) the types of substances you consumed on August 23; c) the locations at which you consumed any substances on August 23; and d) the approximate times you consumed those substances on August 23. | | |

9

**EXHIBIT A**

John Doe  *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825

Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| 19 | Two interrogatories:<br>1. Identify all non-privileged communications concerning or relating to any claim in this case including: a) the date of the communication; b) the nature of the communication; c) the content of the communication; d) where the communication occurred; and e) the identity of all participants in and any witnesses to the communication.<br>2. Identify all non-privileged communications concerning or relating to any defense in this case including: a) the date of the communication; b) the nature of the communication; c) the content of the communication; d) where the communication occurred; and e) the identity of all participants in and any witnesses to the communication. | 44 | Defendant addresses this interrogatory in a cursory manner. Moving Br. at 16. There are two clear and distinct interrogatories seeking separate categories of communications.<br><br>Plaintiff has stated that he will not respond to this interrogatory, which would require him to log every communication in the thousands of pages of discovery that have been produced in this action. This interrogatory is improper, unduly burdensome and not proportional to the needs of the case. |
| 20 | Two interrogatories:<br>1. Identify the forms of social media that you used between August 2018 and the present, including usernames.<br>2. Identify the methods of communication that you used between August 2018 and the present, including phone numbers. | 46 | Defendant addresses this interrogatory in cursory fashion. Moving Br. at 15-16. This interrogatory contains two discrete subparts that can be answered independently. Plaintiff's counsel offered to provide information about Plaintiff's social media accounts to Defendant's counsel as part of discussions about e-discovery. R. Doc. # 144-4, Email Correspondence, at p. 6. Defendant's counsel has not asked for this assistance. |

10

**EXHIBIT A**
John Doe  *v.* <sup>Jane Doe</sup> Case No. 24-cv-00825
Analysis Concerning the Excessive Interrogatories Propounded by Defendant

| Interrogatory Number | Breakdown | Tally | Response to Defendant's Arguments |
|---|---|---|---|
| 21 | Four Interrogatories:<br>1. Identify all complaints of sexual misconduct of which you have been subject.<br>2. Identify all complaints of sexual misconduct in which you have in any way been involved.<br>3. Identify all "suggestions" of sexual misconduct of which you have been subject.<br>4. Identify all "suggestions" of sexual misconduct of which you have in any way been involved. | 50 | Defendant addresses this interrogatory in cursory fashion. Moving Br. at 16. Each part of this interrogatory can be answered separately and independently from the other.<br><br>On June 26, 2025, Defendant received a production from Tulane University which includes a complete copy of Plaintiff's disciplinary record. |

# EXHIBIT B

| **From:** | Kara Gorycki |
|---|---|
| **To:** | Shah, Komal; Jared Davidson; Caroline Murley |
| **Cc:** | Roman, Neil; Van, Shanelle; Alex Robertson; Franicevic, Zora F; Woods, Ashton |
| **Subject:** | RE: ^(Jane Doe) Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential |
| **Date:** | Monday, May 12, 2025 9:39:18 AM |
| **Attachments:** | image002.png |

Komal,

This communication is very close to the time in which we have our meeting today about Plaintiff's interrogatory responses. I may or may not be able to answer these questions as I am currently engaged with other matters.

Today you should be prepared to answer:

1. Why your client has not produced a single, responsive document or communication.

2. Be prepared to provide a date on which your client's production will be completed and when you will serve updated responses to Plaintiff's document requests which state whether your client is withholding responsive documents and on what grounds, as required by the Federal Rules.

3. Confirm that your client will be producing a privilege log. Note that I can tell you that we will not be providing a privilege log for any documents/communications concerning this lawsuit or which post-date the filing of the complaint in this case.

I will be sending you correspondence this week in regard to a number of issues we have with your client's objections and responses to Plaintiff's document requests.

Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Monday, May 12, 2025 9:25 AM

**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ᴶᵃⁿᵉ ᴰᵒᵉ Litigation - Attachments Subject to ▉▉▉ Protective Order - Confidential

Kara,

During our call later today, we would also like to discuss the following issues with ᴶᵒʰⁿ ᴰᵒᵉ responses to Jane Doe requests for production:

- In responses to RFPs 2, 4, 5, 7, 9, 10, 11, 12, 13, 14, 15,16, 17, 19, 20, 21, 23, 24, 25, 26, 27, 28, 30, and 35,  John Doe  states that he will produce "non-privileged, relevant" documents that are responsive.  For each RFP, can you please confirm that ᴶᵒʰⁿ ᴰᵒᵉ will be producing all responsive documents?  If  John Doe  is withholding any responsive materials, please let us know the basis for doing so.
- Please confirm that  John Doe  will be producing a privilege log.
- Does P0000001-524 constitute the entirety of documents  John Doe  has produced to ▉▉ to date?
- What is  John Doe  basis for narrowing the time frame for the response to RFP 20 to January 1, 2022 to May 1, 2022?
- What is  John Doe  basis for narrowing the time frame for the response to RFP 30 to January 1, 2022 to present?
- Why is  John Doe  unable to produce documents responses to RFP 21 "as written"?
- What is unclear about RFP 34?
- Is  John Doe  asserting privilege over all documents or communications responsive to RFPs 32 and 33?  Please confirm that the basis for those privilege assertions will be included in a privilege log.

Thank you,
Komal

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Thursday, May 8, 2025 9:31 AM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ᴶᵃⁿᵉ ᴰᵒᵉ Litigation - Attachments Subject to ▉▉▉ Protective Order - Confidential

[EXTERNAL]
Received, thanks.



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500    •    212.736.2260 fax

Vcard    •    nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Thursday, May 8, 2025 9:21 AM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Woods, Ashton <AWoods@cov.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential

Kara,

We can meet from 11-12 on Monday.  I'll send an invite.

Best,
Komal

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Wednesday, May 7, 2025 2:19 PM
**To:** Shah, Komal <KShah@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: ^Jane Doe Litigation - Attachments Subject to ▮▮▮ Protective Order - Confidential

[EXTERNAL]

Komal,
My schedule this week is very hectic. I have availability on Monday, May 12, between 11:00 a.m.-12:00 p.m., 1:30 p.m.-2:30 p.m. and 3:30 p.m.-5:00 p.m. Eastern. Wednesday, May 14, also works before 4:00 p.m. Eastern.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500  •  212.736.2260 fax

Vcard  •  nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Shah, Komal <KShah@cov.com>
**Sent:** Wednesday, May 7, 2025 12:10 PM
**To:** Kara Gorycki <KGorycki@nmllplaw.com>; Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: [Jane Doe] Litigation - Attachments Subject to ███ Protective Order - Confidential

Kara,

Are you available on Thursday (tomorrow) to discuss further? If so, what time?

Thanks,
Komal

**Komal Shah**
Pronouns: She/Her/Hers

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956

T +1 202 662 5869 | kshah@cov.com
www.cov.com

## COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Tuesday, May 6, 2025 7:26 PM
**To:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: <sup>Jane Doe</sup> Litigation - Attachments Subject to ███ Protective Order - Confidential

[EXTERNAL]

Komal,

I checked yesterday's email and it is clear that I inadvertently attached two copies of the interrogatory responses. The email refers to Plaintiff's "discovery responses." I have attached the file that was meant to be attached to yesterday's email. We have waived nothing. If the ███ production had sufficiently responded to Defendant's document requests than it would be all that need be produced. However, we are not taking that position, as you will see in the attached document.

I will get back to you on the other assertions in your email, including your client's boilerplate and deficient objections to Plaintiff's document requests and failure to produce any documents or communications in this litigation.

Thanks,
Kara



**NESENOFF & MILTENBERG** LLP
New York | Boston | Palo Alto

**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500    •    212.736.2260 fax

Vcard    •    nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have

received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Kara Gorycki
**Sent:** Monday, May 5, 2025 5:33 PM
**To:** Jared Davidson <jdavidson@twpdlaw.com>; Caroline Murley <cmurley@twpdlaw.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Van, Shanelle <SVan@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** <sup>Jane Doe</sup> Litigation - Attachments Subject to ███ Protective Order - Confidential

Counsel,

Please see attached discovery responses and three documents from ████ production that are cited in Plaintiff's interrogatory responses.

Below is a link to Plaintiff's production in the ████ matter:

████████████████████████████████

I will send you the password in a separate email.

Thanks,
Kara

# EXHIBIT C

| | |
|---|---|
| **From:** | Kara Gorycki |
| **To:** | Jared Davidson; Caroline Murley |
| **Cc:** | Roman, Neil; Shah, Komal; Van, Shanelle; Alex Robertson |
| **Subject:** | <sup>Jane Doe</sup> Litigation - Attachments Subject to ███ Protective Order - Confidential |
| **Date:** | Monday, May 5, 2025 5:32:00 PM |
| **Attachments:** | |
| | Tulane_001056-1057.pdf |
| | Tulane_004160.pdf |
| | Tulane_001058.pdf |

Counsel,

Please see attached discovery responses and three documents from Tulane's production that are cited in Plaintiff's interrogatory responses.

Below is a link to Plaintiff's production in the ███████ :

███████████████████████████████████████████████████

I will send you the password in a separate email.

Thanks,
Kara

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe     **Plaintiff,**<br><br>v.<br><br>Jane Doe<br><br>    **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT**
Jane Doe   **INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure Plaintiff   John Doe hereby objects and responds to Defendant Jane Doe interrogatory responses, served on April 4, 2025, as follows:

**RESERVATION OF RIGHTS**

1.       The following reservations apply to each and every response provided herein.

2.       Plaintiff reserves the right to amend or supplement these responses at any time.

3.       Plaintiff's identification of any witness or information in these responses is not an admission of relevance, materiality, or admissibility of any such information or any particular person's testimony, and Plaintiff reserves all objections with respect thereto.

4.       Plaintiff's identification of any person in these responses is not a guarantee or representation that Plaintiff will call any such person to testify in this matter or that such witness has relevant information or testimony.

5.       Plaintiff reserves all objections as to confidentiality and privilege. Any inadvertent disclosure of confidential or privileged information shall not be deemed a waiver of such confidentiality/privilege and Plaintiff reserves the right to recall any privileged or confidential information inadvertently disclosed

1

**SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      Plaintiff objects to the definition of "Documents" as seeking information that is overly broad, unduly burdensome and not proportional to the needs of the case in its request for "all posts, reposts, comments and direct messages on all social media platforms including Instagram, TikTok, X, Facebook, Snapchat, and Yik Yak."

2.      Plaintiff objects to the definition of "Drugs" as improper in seeking information that is not relevant to any claim or defense in this action.

3.      Plaintiff objects to Defendant's Instruction Number 1 as violative of FRCP 26(e) which requires the supplementation of interrogatories "in a timely manner," not "immediately."

**OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1:**

Identify all persons who may possess knowledge, information, or Documents relating to the claims asserted by You in the First Amended Complaint, including the person's relationship to You and the nature of the knowledge, information, and Documents.  Identify all such persons regardless of whether or not You intend to call them as witnesses at trial or otherwise rely on their testimony or whether You believe that they will support Your allegations.

> **RESPONSE**:
> Plaintiff objects to this interrogatory on the grounds that it is duplicative in its request for information that has already been provided to Defendant. Plaintiff refers Defendant to the Initial Disclosures that he served on Defendant's counsel on April 4, 2025.

**INTERROGATORY NO. 2:**

State the bases for Your claim of defamation against Defendant Jane Doe as alleged in the First Amended Complaint, including identification of every allegedly false and defamatory statement made by Jane Doe of which You are aware.

2

**<u>RESPONSE</u>: CONFIDENTIAL-** ████████████████████████

Plaintiff objects to this interrogatory on the ground that it requests information that is already in Defendant's possession, custody or control. Plaintiff also objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his defamation claim at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving these objections, and reserving the right to supplement, and more fully respond to, this interrogatory, Plaintiff provides the following list of false and defamatory statements made by Jane Doe



1.

2.

3.

4.

5.

6.     On February 7, 2022, Jane Doe posted on Instagram that "Being drunk is not an excuse for sexual assault." Matthew Kisin showed the post to Plaintiff.

7.     On February 8, 2022, Jane Doe stated the following in a text message:

> After we had consensual sex on your birthday, I told you that I was tired and wanted to sleep. At first you said that was fine but then 10 minutes later you asked me to have sex again to which I responded no, that I was tired and didn't want to. You continued to ask me to have sex with you multiple times, each time with me saying no and asking you to go to sleep. I woke up to the sound of you jerking off and the feeling of you taking the blanket off my naked sleeping body and touching and squeezing it as you pleased. Even though I was paralyzed with fear and half asleep, I mumbled that I was cold and tried to pull the blanket back onto me. You then pulled the blanket off of me again and continued to pleasure yourself and touch me. You took advantage of my body in my most vulnerable state, and had no regard for how violating your actions were to me. You are a predator and a repeat offender,

and will not manipulate or invalidate my assault, like you did to your previous victim. It blows my mind that you were able to manipulate people around you into staying friends with you but this time you will be held fully accountable or the trauma that you actions caused. You will be known for the disgusting coward you truly are. You need serious help, and honestly I don't care if you ever get it, but I do know that you will never have the opportunity to violate someone ever again.

Jane Doe disseminated this text message to Tulane University students. This was reported by ███████████, Plaintiff's college roommate, during the Tulane investigation. Plaintiff believes that Harrison White, Noa Banghart and Eugenie McNiff also saw the text message. ████████████████████████████ ███████████████.

8. On or about February 8, 2022, Jane Doe told the President of the ZBT Fraternity, Ben Miner, that Plaintiff sexually assaulted her.

9. On February 11, 2022, Jane Doe filed a report with Tulane University that stated:



Jane Doe disseminated this statement to Tulane students outside the investigation, some of whom were witnesses. ████████████████████████████

10. On February 16, 2022, in an interview with Tulane investigator Jacqueline Barber, Jane Doe stated the following:[1]



---

[1] The failure to cite each and every statement in Jane Doe statement to Ms. Barber in no way constitutes an admission that any other statement made by Jane Doe is true.

4



5



11. On or about February 16, 2022, Jane Doe told Tulane's investigator that

12. On March 16, 2022, Jane Doe told various Tulane administrators that Plaintiff was harassing and intimidating her friends, who were witnesses in the disciplinary proceeding and asked them to assist her with obtaining a restraining order.

13. Jane Doe provided a copy of the Petition for Protection From Abuse and TRO that she obtained in Louisiana Civil Court to Tulane University and informed Christopher Zacharda that Plaintiff was making witnesses uncomfortable. She told individuals at the University that she needed to obtain a TRO so that Plaintiff could not communicate with her friends. The Petition provided to Tulane contains the following false and defamatory statements:

   a. Plaintiff stalked Jane Doe by sending messages to her through third parties.
   b. Plaintiff harmed or threatened to harm Jane Doe members of her family or her acquaintances.
   c. Plaintiff engaged in "intimidation."

Jane Doe also requested relief due to "the immediate and present danger of stalking, or sexual assault" which included a prohibition on the "use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury" and ordering Plaintiff not to damage any of her belongings or in any way interfere in her living conditions.

**INTERROGATORY NO. 3:**

State the bases for Your claim that the allegedly false and defamatory statements made by Defendant Jane Doe during the Title IX proceedings are not protected by privilege because Jane Doe knew that they were false.

6

**RESPONSE:**
Plaintiff objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his claim that Jane Doe statements are not protected by any privilege at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving this objection, Plaintiff states that Jane Doe knew that her sexual assault allegations were false because what she alleged did not occur. Jane Doe also made false statements about Plaintiff in her petition for TRO that she submitted to Tulane during its investigation of her sexual assault allegations.

**INTERROGATORY NO. 4**:

State the bases for Your claim of abuse premised on Defendant Jane Doe use of the

Louisiana civil court system as alleged in the First Amended Complaint, including identification

of any evidence supporting Your claim that Jane Doe "primary motive in proceeding with the

Louisiana civil court system process was to defame, harass and punish Plaintiff."

**RESPONSE:**
Plaintiff objects to this contention interrogatory as premature as discovery has just commenced in this action. On this ground, Plaintiff need not respond to Defendant's request for the "bases" of his abuse of process claim at this stage of the action. *See Layne Heavy Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018) ("Premature contention interrogatories may not be propounded."). Without waiving this objection, and reserving the right to supplement and fully respond to this interrogatory at the appropriate time, Plaintiff states that the above interrogatory improperly narrows his claim and also mischaracterizes his claim as "abuse" rather than "abuse of process." As alleged in the Complaint, and upheld in Judge Papillion's order dated March 17, 2025, Jane Doe instituted the Louisiana state court action, and obtained a TRO against Plaintiff, not because she needed protection from harassment, intimidation, and stalking, but, instead, for the ulterior, improper purpose of bolstering her sexual assault complaint, restricting Plaintiff from contacting witnesses in the Tulane investigation and to further harass, defame, retaliate against and punish Plaintiff.
The following evidence, known to Plaintiff at this time, supports his abuse of process claim:

1.      Plaintiff had no contact with Jane Doe since she sent him the text message containing her false accusations on February 8, 2022. He did not respond to that message and did not interact with her at any point after that.

2.      The sworn petition Jane Doe filled out in the Louisiana Civil Court proceeding contains the following false and defamatory statements: (i) Plaintiff stalked Jane Doe by sending messages to her through third parties; (ii) Plaintiff harmed or threatened to harm

7

Jane Doe members of her family or her acquaintances; and (iii) Plaintiff engaged in "intimidation." Jane Doe also requested relief due to "the immediate and present danger of stalking, or sexual assault" which included a prohibition on the "use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury" and ordering Plaintiff not to damage any of her belongings or in any way interfere in her living conditions.

3. Noah Siev and Taylor Rappeport agreed to speak with Plaintiff during the investigation. Neither individual was exclusively friends with Jane Doe

4. Text messages between Will Reynoir and Plaintiff in which Reynoir indicates Harrison White's willingness to speak with Plaintiff. Plaintiff did not speak directly with White. Reynoir is Plaintiff's friend. Harrison White told the Tulane investigator that he knew Plaintiff and had been friendly with him in the past though they were not close.

5. Jane Doe released a Tik Tok about her accusations against Plaintiff after Plaintiff reached out to Taylor Rappeport on March 10, 2022. Plaintiff reached out to Noah Siev and Will Reynoir (about Harrison White) on March 14, 2022. Jane Doe sought the restraining order on March 16, 2022, specifically requesting that Plaintiff permanently stay away from her friends. Jane Doe also told Harrison White that some of the witnesses in the investigation were getting calls from Plaintiff and the types of questions that Plaintiff was asking the witnesses. White did not refer to these questions as intimidating nor did he express feeling intimidated as opposed to wanting to help Jane Doe instead of Plaintiff. Jane Doe discouraged Mr. White from speaking to Plaintiff. Prior to Harrison White's interview with the Tulane investigator, Jane Doe shared her written complaint with White.

6. On March 16, 2022, Jane Doe told Tulane's Interim Assistant Provost for Title IX that she was downtown filing a restraining order.

7. On March 17, 2022, Christopher Zacharda informed Plaintiff that he had a copy of the restraining order.

8. Jane Doe filing of the petition in Louisiana civil court was used as evidence in the Tulane investigation.

9. Jane Doe did not appear to inform Tulane that she did not show up at the court hearing or that the petition was dismissed due to her failure to appear because that information was not included in the Tulane investigation report.

10. Jane Doe could have shown up at the hearing, but elected not to do so, as evidenced by Plaintiff seeing her at the airport when he was in Louisiana for the court hearing.

8

**INTERROGATORY NO. 5:**

State the bases for Your claim of civil conspiracy as alleged in the First Amended

Complaint, including by identifying and describing the substance of any Communications of

which You are aware between or on behalf of Defendant Jane Doe and Sue Roe.

> **RESPONSE**:
> Plaintiff objects to this contention interrogatory as premature as discovery has just
> commenced in this action. On this ground, Plaintiff need not respond to Defendant's
> request for the "bases" of civil conspiracy claim at this stage of the action. *See Layne Heavy*
> *Civil, Inc. v. Healtheon, Inc.*, 2018 WL 11457410, at *2-3 (E.D. La. Aug. 31, 2018)
> ("Premature contention interrogatories may not be propounded."). Without waiving this
> objection, Plaintiff refers Jane Doe to Paragraphs 55-67 of the Complaint. Jane Doe and
> Ms. ▮▮▮▮ further acted in unison during the Tulane investigation. Jane Doe
> coordinated the date and timing of Ms. ▮▮▮▮ interview with the Tulane investigator
> and told the investigator to "prioritize," Ms. ▮▮▮▮ interview over hers. Jane Doe also
> discussed the ▮▮▮ allegations in her interview in the Tulane investigation though she
> had no personal, firsthand knowledge of what happened between Ms. ▮▮▮ and
> Plaintiff. When Tulane raised the issue of informal resolution during the disciplinary
> process, Jane Doe told Chris Zacharda she <u>and</u> Ms. ▮▮▮ had decided that "we want
> this to be formally resolved."

**INTERROGATORY NO. 6:**

Identify all forms of emotional distress that You have experienced as a result of

Defendant Jane Doe conduct as alleged in the First Amended Complaint, including any mental

health conditions that You have experienced and any physical symptoms or manifestations that

You have experienced as a result of the mental health conditions.

> **RESPONSE:**
> In March 2022, Plaintiff experienced a significant weight loss of 20-30 pounds. He
> suffered bouts of depression periodically in 2022. During the investigation he had periods
> of insomnia.
> He presently has anxiety as a result of being falsely accused, including concerns about his
> ability to obtain and maintain employment, getting into law school, becoming a lawyer,
> new romantic partners learning about the allegations, new friends learning about the
> allegations and the future threat of Jane Doe making false and defamatory remarks about
> him. Plaintiff also experiences feelings of loneliness and isolation. He also feels a deep
> sense of despair over his friends recommending he withdraw from Tulane, lost
> friendships, not walking at graduation, not being able to pursue graduate studies at Tulane,
> being banned from Tulane's campus, lost career opportunities and his removal from

9

student organizations. Rumors also circulated that Plaintiff's friends kicked him out of the house, which did not happen.

## INTERROGATORY NO. 7:

Identify any therapy that You have sought for any mental health conditions or emotional distress that You have experienced as a result of Defendant Jane Doe conduct as alleged in the First Amended Complaint (including the name of Your therapist and the frequency of and period during which You received such therapy), any diagnosis of a mental health condition or emotional distress by a mental health professional, any medications You have taken to address the mental health condition or emotional distress You have experienced (including when and by whom they were prescribed), and any other persons to whom You have confided about your mental health condition or emotional distress and the content of any such non-privileged Communications.

> **RESPONSE**: **CONFIDENTIAL**
> Plaintiff has not been diagnosed with any mental health condition and does not take medication for any mental health condition. ███████████████████████████████████████████████████████████████ Plaintiff has discussed the above described feelings of emotional distress with his parents. Plaintiff refers Jane Doe to his initial disclosures which identify the friends that have information concerning the impact of her accusations on him.

## INTERROGATORY NO. 8:

State all amounts being sought by You from Defendant Jane Doe as damages or otherwise in this case, including a breakdown of each amount being sought and the bases for seeking such amounts.

> **RESPONSE**:
> Plaintiff refers Jane Doe to his initial disclosures.

**INTERROGATORY NO. 9:**

Identify any graduate school programs to which You have applied, including the graduate schools to which You applied and the month and year in which You applied, and the graduate school admissions decisions on those applications, as well as any graduate schools that You attended, the dates of attendance, and any graduate degrees attained.

**RESPONSE**:
None.

**INTERROGATORY NO. 10:**

Identify any jobs for which You have applied since January 2021, including the potential employers to whom You have applied, and the employment decisions made by those employers.

**RESPONSE**:
The following is a non-exhaustive list based on Plaintiff's present recollection:

- Mathnasium - Hired
- Blueprint Test Prep - Hired
- Sports Info Solutions - Hired
- Pro Football Focus - Hired
- SevenRooms - Hired
- Lululemon - Hired
- State & Liberty - Hired
- Harvey AI - Sales Development Rep - Rejected
- Pave - Sales Development Rep - Rejected
- New York Yankees - Associate, Baseball Operations - Rejected
- Amplitude - Sales Development Rep - Rejected
- OneSignal - Withdrew Application
- Salesforce - Business Development Representative - Rejected
- Databricks - Business Development Representative - Rejected
- Merge - Sales Development Represented - Offered

11

- Topline Pro - Full Sales Cycle - Withdrew

- Autogen AI - Business Development Representative - Rejected

- Tennessee Titans - Paralegal - Rejected

- Datasite - Business Development Representative - Rejected

- Expert Institute - Business Development Representative - Rejected

- Snorkel AI - Business Development Representative - Rejected

- Synthesia - Sales Development Representative - Rejected

- Traba - Sales Development Representative - Rejected

- Labelbox - Sales Development Representative - Rejected

- Box - Business Development Representative - Rejected

- Instabase - Business/Sales Development Representative - Rejected

- Glean - Business Development Representative - Rejected

- Hightouch - Business/Sales Development Representative - Rejected

- Roboflow - Sales Development Representative - Rejected

- Juniper - Sales Development Representative - Rejected

- Navan - Sales Development Representative - Withdrew

- Golden Goose - Retail Specialist (Rejected) - Rejected

- Rag n Bone - Sales Specialist (Part Time) - Rejected

## INTERROGATORY NO. 11:

Identify Your employers and the dates and places of employment since January 2022, including the income that You have earned each month.

> **RESPONSE:**
> Plaintiff objects to this interrogatory on the ground that its request for the income that he earned each month since January 2022 seeks financial information at a level of detail that is unnecessary, overly burdensome, oppressive and harassing. Plaintiff will not provide this information. Plaintiff will be producing his tax returns. Plaintiff responds as follows:
>
> Mathnasium ($15/hour) – February 2023-August 2023
>
> Lululemon (~$17.20/hour + commission) – February 2023-August 2024
>
> Sports Info Solutions (~$12/hr)– August 2024-February 2025
>
> State & Liberty (~$22/hr) – June 2024-April 2025
>
> Blueprint Test Prep ($40/hr) – January 2025-present
>
> SevenRooms (Salary $68,000 + commission) – March 2025-present

## INTERROGATORY NO. 12:

State by month any income that You have received from sources other than any jobs that You have held since January 2022, including the source(s) of such income.

> **RESPONSE:**
> Plaintiff objects to this interrogatory as vague. Plaintiff objects to this interrogatory on the ground that its request for the income that he earned each month since January 2022 seeks financial information at a level of detail that is unnecessary, overly burdensome, oppressive and harassing. Plaintiff also objects to this interrogatory on the ground that it requests information that is not relevant to any claim or defense in this action. Plaintiff will not provide a response to this interrogatory.

## INTERROGATORY NO. 13:

Describe the events of February 2 and 3, 2022 as they relate to the allegations in the First Amended Complaint, including the locations and venues (*e.g.*, restaurants, bars, houses, or fraternities) You visited and the approximate times You visited those places as well as the persons who were with You at those locations and venues.

**RESPONSE:**

Plaintiff directs Jane Doe to the following documents that are responsive to this interrogatory and provide contemporaneous evidence concerning the events in question: 1) Plaintiff's written responses to Tulane Investigator Jacqueline Barber's written questions (████_004166-472); 2) Plaintiff's written response to the evidence collected during the Tulane investigation (████_1058-1064); and 3) Plaintiff's written responses to additional questions from Jacqueline Barber (████_01056-1057). Plaintiff has requested that Tulane produce unredacted copies of the documents and communications in its production concerning Tulane's investigation of the ^Jane Doe and Sue Roe complaints, including the documents cited herein. This is because Plaintiff noted errors in the redactions, including Tulane's reference to Jane Doe as "Jane Roe." In the interim, Plaintiff will provide the documents referenced herein while reserving all rights with respect to the existing redactions.

## INTERROGATORY NO. 14:

Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (*e.g.*, whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on February 2 and 3, 2022.

**RESPONSE:**

Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory.

**INTERROGATORY NO. 15**:

Describe all sexual activity in which You engaged on February 2 and 3, 2022, including

the sexual activity with Defendant Jane Doe

**RESPONSE**:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action in its request for the details of sexual activity that Plaintiff engaged in with persons other than Jane Doe Even if Plaintiff were required to respond, Plaintiff will not provide the explicit details of his activities with any nonparty during the timeframe in question.

**INTERROGATORY NO. 16:**

Identify all persons with whom You Communicated about the sexual activity in which

You engaged on February 2-3, 2022 and the substance of those Communications.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this request on the ground to the extent that it seeks information protected by the attorney-client privilege. Plaintiff further objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action in its request for information about sexual activity other than with Jane Doe

**INTERROGATORY NO. 17:**

Describe the events underlying the allegations made against You by Sue Roe, including

the sexual activity in which You engaged, the Communications that You exchanged with Sue

Roe following the sexual activity and the reasons for the statements that You made in those

Communications, and the Communications that You had with other persons regarding the sexual

activity with Sue Roe and the reasons for the statements that You made in those

15

Communications.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this interrogatory on the ground that it is unduly burdensome in its request for a description of statements contained in documents and communications that speak for themselves and are the best evidence of what was stated during the timeframe in question.

## INTERROGATORY NO. 18:

Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (*e.g.*, whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on August 22 and 23, 2021.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response. Plaintiff objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

## INTERROGATORY NO. 19:

Identify all non-privileged Communications between You and other persons concerning or relating to any claim or defense in this case, including the date of the Communication, the nature and content of the Communication, where the Communication occurred, and the identity of all participants in and any witnesses to the Communication.

**RESPONSE:**
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and will not provide a written response. Plaintiff objects to this interrogatory on the grounds that is overly broad, unduly burdensome and not proportional to the needs of the case because it

16

would require Plaintiff to list every communication in his production and productions made by other parties, including Defendant's production. The information requested is further obvious on the face of any documents or communications produced in this action. Plaintiff will not respond to this interrogatory for all of the aforementioned reasons.

## INTERROGATORY NO. 20:

Identify the forms of social media and methods of Communication (*e.g.*, email, text messages, Twitter/X, Facebook, Instagram, Snapchat, and TikTok) that You used between August 2018 and present, including the phone numbers and usernames for each form of social media or Communication.

**RESPONSE**:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was met in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response.

Plaintiff objects to this interrogatory as overly broad in its request for information dating back to 2018, which pre-dates the events at issue in this action. Plaintiff further objects on the ground that this interrogatory seeks information that is not relevant to any claim or defense in this action.

## INTERROGATORY NO. 21:

Identify all complaints or suggestions of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact of which You have been subject or in which You have in any way been involved, without limitation as to time period and irrespective of whether the complaint resulted in legal or administrative consequences or whether You believe that those complaints or suggestions were warranted or otherwise justified.

**RESPONSE**:
Rule 33 of the Federal Rules of Civil Procedure only permits 25 written interrogatories including discrete subparts. This limit was exceeded in Interrogatory Numbers 1-13. Defendant did not seek leave to serve additional interrogatories nor has an order been entered permitting Defendant to do so. Accordingly, Plaintiff is not required to respond to this interrogatory and, on this ground, will not provide a written response.

Plaintiff objects to this interrogatory as vague in its request for information about "suggestions" of sexual abuse, sexual misconduct, sexual harassment and sexual assault such that Plaintiff cannot respond. Plaintiff further objects to this interrogatory on the ground that "unwanted physical contact" is vague and ambiguous. Plaintiff also objects to this interrogatory on the ground that it is overly broad with respect to timeframe and seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects on the ground that this interrogatory calls for legal conclusions. Plaintiff also objects to the term "sexual misconduct" as vague.

Dated: May 4, 2025

/s/ Kara L. Gorycki
Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

18

## <u>VERIFICATION</u>

I, the undersigned, John Doe , hereby declare under penalty of perjury the following:

1.      I am the plaintiff in this action.

2.      I have reviewed the foregoing Plaintiff's Objections and Responses to Defendant Jane Doe Interrogatories. The responses contained therein are true and correct to the best of my knowledge, information and belief.

Executed on the  4   day of May, 2025.

John Doe

John Doe

19

**THE REMAINDER**

**OF THIS EXHIBIT**

**HAS BEEN FILED UNDER SEAL**

EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| John Doe | ) | **CIVIL ACTION NO. 2:24-CV-00825** |
| | ) | |
| **Plaintiff,** | ) | **SECTION: P (3)** |
| | ) | |
| v. | ) | **JUDGE DARREL JAMES** |
| | ) | **PAPILLION** |
| Jane Doe | ) | |
| | ) | **MAG. JUDGE EVA J. DOSSIER** |
| **Defendant.** | ) | |
| | ) | |

---

**PLAINTIFF'S INITIAL DISCLOSURES**

---

Plaintiff      John Doe      by and through his attorneys Nesenoff & Miltenberg, LLP,

hereby submits these Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil

Procedure. Plaintiff reserves the right to supplement and/or amend these disclosures based upon

subsequently filed and discovered documents and information in this case. The inclusion of any

documents or information in this disclosure statement shall not be deemed to waive: (i) the

attorney-client privilege and/or work-product doctrine, either generally or as they may pertain to

a particular document; and/or (ii) objections to the admissibility of any documents or testimony at

trial.

**I.      Rule 26(a)(1)(A)(i)**

The following individuals, as well as those identified in Defendant's initial disclosures, are

likely to have discoverable information that Plaintiff may use to support his claims in this action:

| Name | Subjects of Information | Contact Information |
|---|---|---|
| John Doe | Plaintiff | c/o Nesenoff & Miltenberg, LLP |
| Jane Doe | Defendant | c/o Covington & Burling LLP |

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Noa Banghart | Conversations with Jane Doe and Ms. Sue Roe about Plaintiff; Jane Doe and Ms. Sue Roe interactions; Jane Doe interest in Ms. Sue Roe allegations; witness in Tulane investigation; provided evidence to Tulane investigator; communications with Jane Doe about this lawsuit and the Tulane lawsuit | c/o Suzanne Montero Sternberg, Naccari & White, LLP 935 Gravier Street, Suite 1800 New Orleans, Louisiana 70112 Main: (504) 324-2141 Direct: (504) 308-1395 Cell: (504) 352-3103 suzy@snw.law |
| ▮▮▮▮▮ | Complainant in Tulane disciplinary proceeding against Plaintiff; conversations with N. Banghart about Jane Doe coordination of disciplinary complaints with Jane Doe false accusations against Plaintiff; provided statements and evidence to Tulane during the disciplinary proceedings against Plaintiff | ▮▮▮▮▮ |
| Kamran Sakihtab | Individual that Jane Doe ▮▮▮▮ ▮▮▮▮ as recounted to Plaintiff at the racetrack | Not available |
| Harrison White | Involved in a relationship with Jane Doe reported him to Tulane for COVID-19 violation after they broke up | ▮▮▮▮ |
| Katy Romano | Conversations with Jane Doe about Plaintiff; conversations with Plaintiff about Ms. ▮▮▮▮; Ms. Romano's relationship with Harrison White; witness in the Tulane disciplinary proceeding and submitted evidence therein. | ▮▮▮▮ |
| Marcus Greenstein | Plaintiff's friend and housemate; Plaintiff's interactions with Ms. ▮▮▮▮; the impact of Jane Doe allegations on Plaintiff's reputation and wellbeing; | ▮▮▮▮ |
| Madison Green | Plaintiff's friend; Jane Doe allegations and their impact on Plaintiff's reputation | ▮▮▮▮ |

2

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Luca Busalacchi | Plaintiff's friend and roommate; information about the ███ allegations; Jane Doe interactions with Plaintiff; impact of Jane Doe allegations on Plaintiff, | ████████████ |
| Tiffany Gradski | Plaintiff's friend; information about ███████ accusations; Plaintiff's reputation | ████████████ |
| Mariska Voorham | Plaintiff's friend; information about Ms. ███████ allegations | ████████████ |
| Allison Schafer | Friends with Ms. ███████ and Jane Doe allegations against Plaintiff | ████████████ |
| Eugenie McNiff | Jane Doe roommate; witness in Tulane investigation | Uknown |
| Katie Waters | Witness in the Tulane investigation | Unknown |
| Ben Miner | President of ZBT fraternity; knowledge of Jane Doe allegations against Plaintiff | ████████████ |
| Taylor Rappeport | Witness in Tulane investigation | ████████████ |
| Marissa Knell | Case Manager, Tulane University Jane Doe case manager for her disciplinary complaint against Plaintiff | c/o Chaffe McCall |
| Erica Woodley | Dean of Students and Associate Vice President of Student Affairs Tulane University Knowledge of Jane Doe allegations against Plaintiff | c/o Chaffe McCall |
| Christopher Zacharda | Former Director of Student Conduct, Tulane University; oversaw student conduct proceedings against Plaintiff | c/o Chaffe McCall |
| Jacqueline Barber | Former investigator, Tulane University; investigated Sue Roe and Jane Doe complaints and issued finding | c/o Chaffe McCall |
| Avery Pardee | Acting Appellate Chair in Plaintiff's appeal of Barber's findings | Jones Walker 201 St. Charles Ave New Orleans, LA 70170-5100 D: 504.582.8358 |

3

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Julia Broussard | Chief Title IX Officer, Tulane University Communications with Jane Doe about her allegations the student conduct process and advocacy initiatives on campus | c/o Chaffe McCall |
| Hannah Blalack | Served as witness for Jane Doe Petition for TRO in Louisiana Civil Court | Unknown |
| Will Reynoir | Plaintiff's friend; knowledge of Jane Doe allegations against Plaintiff and the impact on him | ███████████ |
| Matthew Kisin | Showed Plaintiff Jane Doe Instagram post on or about February 7, 2022 | ███████████ |
| Noah Siev | Called Plaintiff's parents after Jane Doe allegations circulated around campus | ███████████ |
| ███████████ | Plaintiff's mother; impact of Jane Doe defamatory statements, conduct proceedings and TRO application on Plaintiff, including Plaintiff's departure from Tulane | ███████████ |
| ███████████ | Plaintiff's father; impact of Jane Doe defamatory statements, conduct proceedings and TRO application on Plaintiff; Plaintiff's departure from Tulane | ███████████ |
| Caleb Deutsch | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goal. | ███████████ |
| Harry Wiley | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ███████████ |
| Max Ruvo | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ███████████ |

| Name | Subjects of Information | Contact Information |
|---|---|---|
| Ben Ruvo | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state and career goals | ▮▮▮▮▮▮ |
| Ben Bailey | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state | ▮▮▮▮▮▮ |
| Kelsey Maloney | Plaintiff's friend; information about impact of Jane Doe allegations on Plaintiff's mental state | ▮▮▮▮▮▮ |
| Sarah Donato | Special Olympics Co-President with Plaintiff | ▮▮▮▮▮▮ |
| ▮▮▮▮▮▮ | ▮▮▮▮▮▮ | ▮▮▮▮▮▮ |
| Lindsay Bilger | Physician's Assistant; saw Plaintiff in April 2022 regarding ▮▮▮▮▮▮ | 1600 Midtown Ave Floor 3 Mt Pleasant, SC 29464. (843)876-0888 |

## II.     Rule 26(a)(1)(A)(ii) Documents:

The following non-exhaustive list enumerates categories of documents, electronic information and other tangible things in the possession, custody or control of Plaintiff and that Plaintiff may use to support his claims in this action:

1. Documents and communications concerning the disciplinary proceedings conducted at Tulane University which arose from Jane Doe complaint against Plaintiff.

2. Documents concerning Jane Doe petition for a TRO.

3. Copies of Jane Doe social media posts from the relevant time period.

4. Text messages between Jane Doe and Plaintiff.

5. Text messages with individuals other than Jane Doe who have knowledge of the events in question.

6. Plaintiff's academic records.

7. Documents and communications concerning Plaintiff's damages.

## III.     Rule 26(a)(1)(A)(iii) Damages

Plaintiff anticipates the use of damages expert(s) and will amend these disclosures accordingly. Plaintiff presently seeks damages of at least $2,000,000, comprised of the following:

1. Economic damages resulting from Plaintiff's altered career trajectory and lost educational opportunities.

2. Reputational harm.

3. Emotional distress and attendant physical symptoms including significant weight loss.

4. Attorneys' fees and travel expenses incurred with respect to Jane Doe TRO petition.

5. Attorneys' fees incurred with respect to the Tulane disciplinary proceeding.

Plaintiff also seeks punitive damages.

Dated: April 4, 2025

/s/ *Kara L. Gorycki*

Kara L. Gorycki (admitted pro hac vice)
NY Atty ID: 4140992
NESENOFF & MILTENBERG, LLP.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Email: kgorycki@nmllplaw.com
Telephone: (212) 736-4500

-and-

Alex Robertson
LA Atty ID: 37285
Email: alex@mrmlaw.com
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220

***Attorneys for Plaintiff***

# EXHIBIT E

Filed Under Seal

EXHIBIT F

**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF LOUISIANA[1]**

|  |  |
|---|---|
| John Doe<br><br>Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br>**SECTION: P (3)**<br>**JUDGE DARREL JAMES PAPILLION**<br>**MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S
FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

John Doe by and through his attorneys Nesenoff & Miltenberg, LLP and

Marcelle Robertson Mestayer LLC hereby objects and responds to Defendant [Jane Doe]

First Set of Requests For Production.

Plaintiff's search for, and review of, documents and communications that are

responsive to Defendant's requests is ongoing and Plaintiff's production will be made

on a rolling basis after the parties agree upon a protective order for certain categories

of information. No representation below that Plaintiff will produce any particular

category of documents is a representation that Plaintiff has said category of documents

in his possession, custody and control. Plaintiff will update his responses to

Defendant's requests when his productions are complete.

---

[1] Jane Doe document requests incorrectly cite the Southern District of Texas as the court in which this case is pending.

1

Pursuant to the parties' agreement with ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

## SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Plaintiff objects to the definition of "You," "Your" and "Plaintiff" to the extent that it seeks documents and communications protected by the attorney-client privilege, work product, trial preparation materials or any other applicable privilege.

2.      Plaintiff objects to the definition of "Communication" and "Communications" as seeking information that does not exist in a format that can be produced in discovery—discussions, conversations, understandings, telephone conversations and oral communications.

3.      Plaintiff objects to the definition of "Document" and "Documents" as seeking information in a format that cannot be produced in discovery—"oral" material, "Communications," conversations, discussions, understandings, telephone

2

conversations. Plaintiff further objects to this definition as vague in its request for "any other material similar to any of the foregoing." Plaintiff also objects to this request on the ground that it seeks information outside the scope of FRCP 34(a)(1) in its request for information to which Plaintiff "can obtain access reasonably." Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action and is overly broad and unduly burdensome in its request for "posts, reposts, comments, and direct messages on all social media platforms."

4.      Plaintiff objects to Instruction Number 1 on the ground that it misstates that Plaintiff is required to produce "all documents responsive to one or more of the Requests." As a reminder, FRCP 34 states as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

5.      Plaintiff objects to Instruction Number 5 on the ground that the requested log is not required by FRCP 34 or any Local Rule.

6.      Plaintiff objects to Instruction Number 8 on the ground that it seeks information and directs action that is not required to be provided under Rules 26 and 34 of the Federal Rules of Civil Procedure.

7.      Plaintiff objects to Instruction Number 12 on the ground that the timeframe set forth therein is overly broad in that no event that is potentially relevant

3

to any claim or defense in this action occurred prior to September 2019. This objection

is incorporated into each response set forth below.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1.      All Documents produced by You in the ███████████ .

**RESPONSE:**
Plaintiff objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff has produced P0000001-524 with these objections and responses. Any documents or communications that are subject to the Amended Protective Order entered █████████████████ are labeled accordingly and should be kept Confidential. Discovery in the ████████████ is ongoing.

2.      All Documents identified in, consulted for, or related to Your First Amended

Complaint in this litigation.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product. Plaintiff also objects to this request on the ground that it is vague in its request for documents "related to" the First Amended Complaint. Without waiving these objections, and subject to the entry of an appropriate protective order, Plaintiff will produce any nonprivileged, relevant documents and communications that are in his possession, custody or control.

3.      All Documents identified in, consulted for, or related to Your Initial Disclosures in

this litigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product. Plaintiff also objects to this request on the ground that it is vague in its request for documents "related to" his Initial Disclosures. Plaintiff also objects to this request a premature as expert disclosures are not yet due in this action. Without waiving these objections, and subject to the entry of an appropriate protective order, Plaintiff will produce the documents identified in Point II of his Initial Disclosures. Plaintiff also refers Defendant to his production in the ████, ██████ , P0000001-524.

4.      All Documents identified in, consulted for, or related to Your responses to

4

Defendant's First Set of Interrogatories and any subsequent interrogatories in this litigation.

**RESPONSE**:

Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product. Plaintiff also objects to this request on the ground that it is vague in its request for documents "related to" his response to Defendant's First Set of Interrogatories. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are identified in Plaintiff's interrogatory responses or otherwise responsive to this request. Plaintiff also refers Defendant to his production in the ███████████, P0000001-524

5. All Documents or Communications referring or relating to Defendant Jane Doe

including all Communications between You and Jane Doe

**RESPONSE**:

Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

6. All Documents or Communications related to Your application for and admission to Tulane University, including all Documents You signed to finalize Your enrollment.

**RESPONSE**:

Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff located a single email about his application status which will be produced. Plaintiff does not have access to his application files, which are in Tulane's possession, custody and control.

7. Documents sufficient to identify Your extracurricular memberships and activities and any academic or other awards or citations You received during Your enrollment at Tulane University.

**RESPONSE**:

Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

8. Documents sufficient to identify Your academic standing and expected

5

graduation date, including all grade and similar reports.

**RESPONSE**:

Plaintiff objects to this request on the ground that it is overly broad and unduly burdensome in its request for "documents sufficient to identify Your academic standing and expected graduation date, including all grade and similar reports." Without waiving this objection, Plaintiff refers Defendant to P000453-454 in the ███████████. Plaintiff will also produce a copy of his academic transcript subject to the entry of an appropriate protective order in this case.

9. All Documents or Communications related to any disciplinary actions or misconduct investigations, formal or informal, in which You were involved in any way during Your enrollment at Tulane University.

**RESPONSE**:

Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff also objects to this request on the ground that it is vague in its request for information concerning "informal disciplinary actions or misconduct investigations." Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request. Plaintiff refers Defendant to Plaintiff's production in the ███████████. Plaintiff will also produce relevant and responsive documents that were produced by ███████████ ███████████. Plaintiff reserves all rights with respect to this issue.

10. All Documents or Communications related to Sue Roe, including all Communications with Sue Roe.

**RESPONSE**:

Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the

6

ground that it is vague in its request for information "related to" Sue Roe. Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

11.    All Documents or Communications referring or relating to Your whereabouts and activities on August 23, 2021, including what You ate and drank or otherwise ingested on that date.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that may exist and are responsive to this request.

12.    All Documents or Communications constituting or referring or relating to all text messages You sent to or received from Sue Roe.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it is nonsensical in its request for documents or communications "constituting" all text messages between Plaintiff and Sue Roe. Plaintiff further objects to this request as vague in its request for information "relating to" text messages between Plaintiff and Sue Roe. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

13.    All Documents or Communications referring or relating to Your whereabouts and activities on January 27, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these

7

objections Plaintiff will produce any non-privileged, relevant documents and communications which may exist and are responsive to this request.

14. All Documents or Communications referring or relating to Your whereabouts and activities on January 29, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff further objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff will produce any nonprivileged, relevant documents that may exist and are responsive to this request.

15. All Documents or Communications referring or relating to Your whereabouts and activities on February 2, 2022, including what You ate and drank or otherwise ingested on that date.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving this objection, Plaintiff will produce any non-privileged, relevant documents that are responsive to this request which may exist.

16. Documents or Communications sufficient to identify all persons with whom You interacted on the evening of February 2, 2022, including at each location You visited and each event You attended, as discussed in Paragraph 26 of the First Amended Complaint.

**RESPONSE**:
Plaintiff objects to this request on the ground that it is overly broad and unduly burdensome in its request for information about "all persons" with whom Plaintiff interacted on an evening that occurred over three years ago. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce any nonprivileged, relevant documents and communications that may exist and are responsive to this request, subject to the entry of an appropriate protective order in

8

this case.

17.     Documents or Communications sufficient to identify the time You left for, arrived at, and left Defendant Jane Doe house on February 2, 2022 or February 3, 2022.

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession, custody and control. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

18.     All Documents or Communications referring or relating to any person, adult or minor, who has accused You, formally or informally, of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact.

> **RESPONSE**:
> Plaintiff objects to Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff states that, apart from documents and communications concerning Jane Doe and Ms. ███████ allegations against him, Plaintiff has no documents or communications that are responsive to this request.

19.     All Documents or Communications related to the information "spreading around the school alleging that [You] had sexually assaulted a female student," as discussed in Paragraphs 33–35 of the First Amended Complaint.

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it seeks information in Defendant's possession, custody and control. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

20.     All Documents or Communications related to revocation or suspension of Your membership in or association with social or academic organizations at Tulane University.

> **RESPONSE**:
> Plaintiff objects to this request on the ground that it is overly broad as to the

timeframe requested and, in this respect, seeks information that is not relevant to any claim or defense in this action. Plaintiff also objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents and communications concerning any organizations which revoked, suspended or terminated his membership between January 1, 2022 and May 1, 2022.

21. All Documents or Communications related to Your withdrawal from Tulane University.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not within Plaintiff's possession, custody or control. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents and communications that are responsive to this request.

22. All Documents or Communications related to the charges against You for violating the Tulane University Code of Conduct.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it is so vague that Plaintiff cannot discern what is being requested as it references "the charges" against Plaintiff. Plaintiff further objects to this request on the ground that, from what can be inferred, the request is duplicative of Request Number 9. Plaintiff is unable to respond to this request as written.

23. All Documents or Communications evidencing, reflecting, or referring to Your participation in or failure to participate in the Tulane Investigation, including the proposed interview with Jacqueline Barber.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

10

24.     All Documents or Communications reflecting or relating to disciplinary action against You as a result of the Tulane Investigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents that are responsive to this request. Plaintiff refers Defendant to the documents and communications he produced in the ██████ ██████ .

25.     All Documents or Communications evidencing, reflecting, or referring to any relationship, correspondence, or coordination of any sort at any time between Defendant <sup>Jane Doe</sup> and Sue Roe.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is within Defendant's possession, custody or control, particularly since Defendant obstructed Plaintiff's efforts to obtain this information pursuant to document subpoenas served on Defendant, and on Noa Banghart, in the ████████████ . Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

26. All Documents or Communications reflecting, referencing, or relating to any meetings or Communications (written or oral), in which You were a participant or privy to the Communication, regarding the Tulane Investigation.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents that are responsive to this request.

27.     All Documents or Communications reflecting, referencing, or related to any diagnosis of or treatment for emotional distress resulting from Defendant Jane Doe statements regarding You.

11

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff states that he has no documents or communications concerning a particular mental health diagnosis but he will produce non-privileged, relevant documents that are responsive to the second part of the request relating to emotional distress, subject to the entry of an appropriate protective order in this case.

28.     All Documents or Communications evidencing or referring or relating to any emotional distress resulting from Defendant Jane Doe  statements regarding You.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Without waiving this objection, Plaintiff will produce non-privileged, relevant documents or communications that are responsive to this request, subject to the entry of an appropriate protective order in this case.

29.     All Documents reflecting or referring or relating to any graduate school programs to which You have applied, scores or results of any related entrance examinations, and the graduate school admissions decisions on those applications.

**RESPONSE**:
Plaintiff has no documents that are responsive to this request.

30.     All Documents reflecting or referring or relating to any job applications You have submitted since January 2021, the potential employers to whom You have applied, and the employment decisions made by those employers.

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action and is overly broad in its request for information dating back to January 2021. Without waiving these objections, Plaintiff will produce non-privileged, relevant documents or communications that are responsive to this request from January 1, 2022, subject to the entry of an appropriate protective order in this case.

31.     All statements taken of any party or of any persons having information regarding

12

Defendant Jane Doe Sue Roe, or this litigation.

RESPONSE:
Plaintiff objects to this request on the ground that it seeks information that is already in Defendant's possession. Without waiving this objection, Plaintiff has not taken statements from any party or person with information relating to Jane Doe, Sue Roe or this litigation and, accordingly, has no documents that are responsive to this request. ███████████████████ statements taken by investigator Jacqueline Barber during her investigation of the ██████ and <sup>Jane Doe</sup> complaints. Subject to any objections ██████, Plaintiff will produce these statements.

32.     All Documents or Communications reflecting, referencing, or relating to any investigation performed by You regarding Defendant <sup>Jane Doe</sup>

RESPONSE:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff will not produce any documents or communications in response to this request.

33.     All Documents or Communications reflecting, referencing, or relating to any investigation performed by You to determine or analyze the veracity of Defendant Jane Doe statements regarding You.

RESPONSE:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff will not produce any documents or communications in response to this request.

34.     All Documents reflecting, referencing, or related to any meetings or Communications (either written or oral), in which You were a participant or privy to the Communication, regarding Defendant Jane Doe

RESPONSE:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the ground that it is duplicative of Request Number 5. Plaintiff also objects to this request on the ground that it is unclear exactly what is

13

being requested and, accordingly, Plaintiff will not respond to this request.

35.     All Documents reflecting, referencing, or related to any meetings or

Communications between You and others regarding Defendant Jane Doe

**RESPONSE**:
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request on the ground that it seeks information that is not relevant to any claim or defense in this action. Plaintiff further objects to this request on the ground that it is duplicative of Request Number 5. Plaintiff will not specifically respond to this request. To the extent Plaintiff has any non-privileged, relevant documents that are responsive to this request they will be produced in response to Request Number 5.

36.     All tax forms or other Documents sufficient to show income earned by month

since January 2022.

**RESPONSE**:
Plaintiff objects to this request as unduly burdensome in its request for documents sufficient to show income earned by month. In response to this request, and subject to the entry of an appropriate protective order in this case, Plaintiff will produce copies of his tax returns.

37. All Documents on which You intend to rely at trial or otherwise in this litigation.

**RESPONSE:**
Plaintiff objects to this request on the ground that it seeks information that is protected by the attorney-client privilege and constitutes attorney work product or trial preparation materials. Plaintiff also objects to this request as premature. Defendant will receive copies of Plaintiff's trial exhibits in accordance with the Scheduling Order and Pre-Trial Notice entered in this case.

Dated: May 5, 2025

/s/ Kara L. Gorycki
Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

-and-

14

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff*** John Doe

EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| John Doe<br><br>**Plaintiff,**<br><br><br>v.<br><br>Jane Doe<br><br>**Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT** Jane Doe **AMENDED RESPONSES
AND OBJECTIONS TO PLAINTIFF** John Doe
<u>**FIRST SET OF RE  UESTS FOR THE PRODUCTION OF DOCUMENTS**</u>

Pursuant to Federal Rule of Civil Procedure 34, Defendant Jane Doe amends her

objections and responses to Plaintiff John Doe First Request for Production of

Documents.

### GENERAL OBJECTIONS

1. Jane Doe responses to the Requests are based on her investigation to date. Jane Doe

reserves the right to modify and supplement her responses as her investigation continues and

discovery proceeds.

2. Any disclosure of privileged documents or privileged information in the documents is

inadvertent and is not intended to waive privilege. More specifically, Jane Doe reserves all rights

and privileges under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any

other applicable law or rule, and the failure to assert such rights and privileges, or the inadvertent

disclosure by Jane Doe of information protected by such rights or privileges, shall not constitute a

1

waiver thereof, either with respect to these responses or with respect to any future discovery responses or objections.

3. Jane Doe objects to the Requests to the e tent that they seek to impose an obligation on Jane Doe to locate, obtain, and produce information, documents, and things in the public domain and therefore equally accessible to John Doe

4. Jane Doe objects to the definition of "Document" to the e tent that it e tends beyond the meaning of that term as used in Federal Rule of Civil Procedure 34.

5. Any statement by Jane Doe that she will produce any documents in response to a Request shall not be construed as a representation that Jane Doe in fact has documents responsive to that Request or that such information e ists. Rather, any statement that Jane Doe will produce documents means that Jane Doe intends, subject to her objections, to conduct a reasonable search for responsive documents not subject to an asserted objection and to produce or make available such non-privileged responsive documents located through such search.

## SPECIFIC OBJECTIONS AND RESPONSES

1. All communications between You and Plaintiff.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. :**

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

2. Between January 1, 2021 and June 30, 2022, all communications between You and ██████████.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 2:**



Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

3.  All communications between You (or Your attorneys on Your behalf) and ███████ (or her attorney(s)) that concern Plaintiff, this lawsuit, or Plaintiff's lawsuit against ████ ███████ . This includes, without limitation, any such communications e  changed between your attorney(s) and ███████      attorney(s).

**AMENDED RESPONSE TO PRODUCTION RE   UEST NO. 3:**

Jane Doe objects to this Request to the e  tent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, statute, or precedent.

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged communications responsive to this Request that are within  Jane Doe possession, custody, or control and that are located after a reasonable search, if any such documents e  ist.

4.      Between January 1, 2022 and April 1, 2022, all communications between You and Noa Banghart.

**AMENDED RESPONSE TO PRODUCTION RE   UEST NO. 4:**

Jane Doe objects to this Request as overly broad and not relevant insofar as it requests "all" communications regardless of whether or not they are relevant to the claims or defenses in this case.

Subject to and without waiving the foregoing objections and limitations, Jane Doe interprets this Request to seek (i) documents relating to Plaintiff, including documents relating to Jane Doe or Ms. ███████ allegations against Plaintiff, documents relating to  Jane Doe March 2022 petition for a restraining order against Plaintiff, and documents relating to Plaintiff's lawsuits against Jane Doe  or ████ and (ii) documents relating to any allegations by Jane Doe

3

involving se ual assault, se ual harassment, or other se ual misconduct. Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search. Jane Doe will not produce communications with Ms. Banghart that fall outside those categories, such as communications about routine social or educational activities.

5.  All communications between You (or Your attorneys on Your behalf) and Noa Banghart (or her attorney(s)) concerning Plaintiff, this lawsuit or Plaintiff's lawsuit against ██████ ████████ and the subpoena served on Ms. Banghart including communications between Your attorney(s) and Ms. Banghart's attorney(s).

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 5:**

Jane Doe objects to this Request to the e tent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, statute, or precedent. Jane Doe further objects to this request as overly broad and not relevant insofar as it requests " a ll" communications regardless of whether or not they are relevant to the claims or defenses in this case.

Subject to and without waiving the foregoing objections and limitations, Jane Doe interprets this Request to seek (i) documents relating to Plaintiff, including documents relating to Jane Doe or Ms. ████████ allegations against Plaintiff, documents relating to Jane Doe March 2022 petition for a restraining order against Plaintiff, and documents relating to Plaintiff's lawsuits against Jane Doe or ██████ and (ii) documents relating to any allegations by Jane Doe involving se ual assault, se ual harassment, or other se ual misconduct. Jane Doe will produce all such non-privileged documents responsive to this Request that are within Jane Doe possession, custody, or control and that are located after a reasonable search. Jane Doe will not produce communications with Ms. Banghart that fall outside those categories, such as communications about routine social or educational activities.

4

6.      All communications between You and any other person concerning Plaintiff, this lawsuit or Plaintiff's lawsuit against ████

**AMENDED RESPONSE TO PRODUCTION RE UEST NO.  :**

Jane Doe objects to the Request to the e tent that it seeks information that is protected

from disclosure by the attorney-client privilege, the work product doctrine, joint defense

privilege, common interest privilege, or any other applicable privilege, immunity, protection,

statute, or precedent.

Subject to and without waiving the foregoing objections and limitations, Jane Doe has

produced documents responsive to this Request and will continue to produce all non-privileged

documents responsive to this Request that are within her possession, custody, or control and that

are located after a reasonable search.

7. Between January 1, 2022 through the present, all communications between You and any other person concerning the Tulane student conduct proceedings against Plaintiff, including any individuals who appeared as witnesses or provided statements in those proceeding.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 7:**

Jane Doe objects to the Request to the e tent that it seeks information that is protected

from disclosure by the attorney-client privilege, the work product doctrine, joint defense

privilege, common interest privilege, or any other applicable privilege, immunity, protection,

statute, or precedent.

Subject to and without waiving the foregoing objections and limitations, Jane Doe has

produced documents responsive to this Request and will continue to produce all non-privileged

documents responsive to this Request that are within her possession, custody, or control and that

are located after a reasonable search.

8.      Between January 1, 2022 through the present, all documents and communications concerning the participation of witnesses in the Tulane student conduct proceedings against Plaintiff.

5

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 8:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

9. Between January 1, 2022 through the present, communications between You and any case manager or victim support services representative at Tulane.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. :**

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

10. All documents that You received from Tulane concerning the student conduct proceedings against Plaintiff.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 0:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

11. All documents and communications that You provided to Tulane as part of the student conduct proceedings against Plaintiff.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. :**

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged

6

documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

12.     All documents and communications that You received from Tulane concerning any of the University Complaints.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO.  2:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

13. All documents and communications that You provided to Tulane concerning any of the University Complaints.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO.  3:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

14. All documents and communications concerning any of the University Complaints.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO.  4:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

15. All documents and communications concerning any consideration, intent, or decision by You to seek a restraining order against Plaintiff.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO.  5:**

Jane Doe objects to the Request to the e tent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, statute, or precedent.

7

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

16. All documents and communications concerning the petition that you filed against Plaintiff in Louisiana Civil Court seeking a temporary restraining order, including your failure to appear at the hearing on that petition.

**AMENDED RESPONSE TO PRODUCTION REUEST NO.:**

Jane Doe objects to the Request to the etent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, statute, or precedent.

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

17. All communications between You and Tulane concerning Harrison White.

**AMENDED RESPONSE TO PRODUCTION REUEST NO.7:**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe interprets this Request to seek (i) documents relating to Plaintiff, including documents relating to Jane Doe or Ms. ██████ allegations against Plaintiff, documents relating to Jane Doe March 2022 petition for a restraining order against Plaintiff, and documents relating to Plaintiff's lawsuits against Jane Doe or ████; and (ii) documents relating to any allegations by Jane Doe that Harrison White violated any Tulane University policy. Jane Doe will produce all such non-

8

privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

18. All documents and communications concerning Harrison White's violation of any Tulane University policy.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO.  8:**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

19. All documents and communications concerning your interactions with ███████████ and reflecting statements you made to others about ██████ .

**AMENDED RESPONSE TO PRODUCTION RE UEST NO.    :**

Subject to and without waiving the foregoing objections and limitations, Jane Doe interprets this Request to seek (i) documents relating to Plaintiff, including documents relating to Jane Doe or Ms. ███████ allegations against Plaintiff, documents relating to  Jane Doe March 2022 petition for a restraining order against Plaintiff, and documents relating to Plaintiff's lawsuits against Jane Doe or ██████ ; and (ii) documents relating to any allegations by Jane Doe involving se ual assault, se ual harassment, or se ual misconduct by ██████████ . <sup>Jane Doe</sup>

will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

20. Between August 1, 2018 through June 1, 2023, all documents and communications concerning any allegation, report or complaint you made against any person for violating a college or university policy, whether at Tulane or any other school.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 20:**

9

Jane Doe objects to this Request as overly broad and not relevant insofar as it requests "all" documents and communications regardless of whether or not they are relevant to the claims or defenses in this case.

Subject to and without waiving the foregoing objections and limitations, Jane Doe interprets this Request to seek documents relating to reports or complaints filed or submitted by Jane Doe at Tulane University, at the ███████████████████████████ to law enforcement, or in a judicial proceeding involving se ual assault, se ual harassment, or other se ual misconduct. Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

21. A download of your Instagram data for the time period beginning on August 1, 2021 through the present. Data can be downloaded at: https://help.instagram.com/181231772500920

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 2 :**

Jane Doe objects to this request as overly broad and not relevant insofar as it requests " a download" of Jane Doe Instagram data, whether or not such data are relevant to the claims or defenses in this case. Jane Doe further objects to this Request to the e tent that it seeks information in the public domain that is as readily available to John Doe as it is to Jane Doe

Subject to and without waiving the foregoing objections and limitations, Jane Doe understands from the June 11, 2025 meet and confer with Plaintiff that Plaintiff seeks Instagram data between August 1, 2021 and the present that relates to Plaintiff, Plaintiff's lawsuits against Jane Doe or ██████, or se ual assault, se ual abuse, or se ual misconduct, as well as Instagram data concerning Jane Doe followers and the persons who she followed on Instagram from August 1, 2021 through June 30, 2022. Jane Doe will produce all such non-privileged

10

documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

22.     All social media posts, reels, stories, or other content that You created and published about Plaintiff.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 22:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

23.     All documents and communications that concern Your allegations against Plaintiff, including medical, counseling or psychiatry records.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 23:**

Jane Doe objects to this Request as calling for documents protected from disclosure by the Health Insurance Portability and Accountability Act ("HIPAA"), other privacy laws, and the psychotherapist-patient privilege. Jane Doe further objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action because the medical and psychological impacts to Jane Doe of John Doe assault are not relevant to the veracity of Jane Doe allegation that John Doe assaulted her.

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents and communications that concern her allegations against Plaintiff that are within her possession, custody, or control and that are located after a reasonable search. Jane Doe will not produce any medical, counseling, or psychiatry records.

24.     All documents and communications concerning any mental health evaluations that You participated in or mental health diagnosis You received prior to January 1, 2022.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 24:**

11

Jane Doe objects to this Request as calling for documents protected from disclosure by the Health Insurance Portability and Accountability Act ("HIPAA"), other privacy laws, and the psychotherapist-patient privilege. Jane Doe also objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action because the medical and psychological impacts to Jane Doe of John Doe assault are not relevant to the veracity of Jane Doe allegation that John Doe assaulted her.

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents and communications that concern mental health evaluations or mental health diagnoses related to her allegations against Plaintiff. Jane Doe will not produce any medical, counseling, or psychiatry records.

25. A copy of Your cell phone call log history from January 1, 2022 to July 1, 2022.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 25:**

Jane Doe objects to this Request on the ground that it is overly broad and not relevant insofar as it requests cell phone log history spanning si months regardless of whether or not such data are relevant to the claims or defenses in this case.

Subject to and without waiving the foregoing objections and limitations, Jane Doe understands from the June 11, 2025 meet and confer with Plaintiff that Plaintiff seeks Jane Doe cell phone call log history from January 1, 2022 to July 1, 2022 with persons other than her counsel with whom she spoke regarding the Tulane Title I investigation. Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

26. All documents and communications concerning Your involvement in the stabbing at the Boot on March 1, 2022.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 2 :**

12

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action. Jane Doe will not produce documents in response to this Request.

27. Between June 1, 2022-present, all communications between You and Tulane concerning Plaintiff, including communications between your attorneys and Tulane's attorneys.

**AMENDED RESPONSE TO PRODUCTION RE__UEST NO. 27:**

Jane Doe objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, joint defense privilege, common interest privilege, or any other applicable privilege, immunity, protection, statute, or precedent.

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

28. All communications between You and Tulane about this lawsuit ██████████ ███████████, including communications between your attorneys and Tulane's attorneys.

**AMENDED RESPONSE TO PRODUCTION RE__UEST NO. 28:**

Jane Doe objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, joint defense privilege, common interest privilege, or any other applicable privilege, immunity, protection, statute, or precedent.

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

13

29.     A copy of your resume or curriculum vitae.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 2 :**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced her resume to Plaintiff.

30.     Copies of your ta  returns for the last five years.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 30:**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

31.     A statement of your net worth.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 3 :**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe responds that no documents within her possession, custody, or control are responsive to this Request.

32.     All documents and communications evidencing money you received that was not reported on your ta  returns, including but not limited to monetary gifts.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 32:**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action: past one-time monetary gifts do not bear on

14

<sup>Jane Doe</sup> ability to pay any damages in this case. Jane Doe will not produce documents in response to this Request.

33.     Between January 1, 2019-present, documents and communications concerning any criminal charges that were filed against You.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 33:**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

34.     All documents and communications reflecting any accusation or allegation of se ual assault, se ual harassment or nonconsensual se ual behavior that You made against any person other than Plaintiff.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 34:**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe understands from the June 11, 2025 meet and confer with Plaintiff that Plaintiff seeks documents and communications reflecting accusations or allegations of se ual assault, se ual harassment, or nonconsensual se ual behavior e perienced by Jane Doe after she turned 18 years old. Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

35.     Before January 1, 2022, all documents and communications concerning any se ual assault or instance of se ual harassment that You e perienced.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 35:**

15

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action. Jane Doe further objects to this request as overly broad insofar as it requests documents and communications from " b efore" January 1, 2022 concerning the subject of this Request, which covers an unidentified period spanning decades.

Subject to and without waiving the foregoing objections and limitations, Jane Doe understands from the June 11, 2025 meet and confer with Plaintiff that Plaintiff seeks documents and communications concerning any se ual assault or instance of se ual harassment e perienced by Jane Doe after she turned 18 years old. Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

36. All diary entries, journal entries, notes or memos that reference Plaintiff.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 3 :**

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

37. Documents and communications concerning Your travel schedule during the months of February and March 2022.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 37:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any additional documents e ist.

16

38.    Copies of any social media posts, blogs, vlogs, podcasts, articles, or other media content that you created concerning se ual assault,  MeToo, the "It's On Us" campaign, or any topics concerning women's rights.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 38:**

Jane Doe  objects to this Request on the ground that it seeks information that is not

relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe  will

produce all non-privileged documents responsive to this Request that are within her possession,

custody, or control and that are located after a reasonable search, if any such documents e ist.

39.    A copy of your education records, including disciplinary records, from Tulane and any other educational institution that you have attended.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 3 :**

Jane Doe  objects to this Request on the ground that it seeks information that is not

relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe

understands from the June 11, 2025 meet and confer with Plaintiff that Plaintiff seeks documents

relating to  Jane Doe   disciplinary records from Tulane University and the ██████████

███████████. Jane Doe  will produce all such non-privileged documents responsive to

this Request that are within her possession, custody, or control and that are located after a

reasonable search, if any such documents e ist.

40.    A copy of Your mental health and counseling records from Tulane.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 40:**

Jane Doe  objects to this Request as calling for documents protected from disclosure by

the Health Insurance Portability and Accountability Act ("HIPAA"), other privacy laws, and the

psychotherapist-patient privilege.  Jane Doe  further objects to this Request on the ground that it

17

seeks information that is not relevant to any claim or defense in this action because the medical

and psychological impacts to Jane Doe of     John Doe      assault are not relevant to the

veracity of  Jane Doe   allegation that     John Doe      assaulted her.

Subject to and without waiving the foregoing objections and limitations, Jane Doe  will

not produce any mental health and counseling records from Tulane.

41.     Copies of all agreements (e.g. insurance, litigation funding) that you are relying or may rely on to fund your litigation fees and e penses or to pay any money judgment entered against you in this action.

**AMENDED RESPONSE TO PRODUCTION RE   UEST NO. 4  :**

Subject to and without waiving the foregoing objections and limitations, Jane Doe  will

produce all such non-privileged documents responsive to this Request that are within her

possession, custody, or control and that are located after a reasonable search.

42.     All documents and communications between You (or anyone acting on Your behalf) and any member of the media or press (including journalists, reporters, or news organi ations) concerning Plaintiff, the allegations against Plaintiff, the Tulane Title I   or student conduct proceedings, or ███████████████████ .

**AMENDED RESPONSE TO PRODUCTION RE   UEST NO. 42:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe  will

produce all non-privileged documents responsive to this Request that are within her possession,

custody, or control and that are located after a reasonable search, if any such documents e ist.

43.     All documents and communications between You and any advocacy group, non-profit organi ation, or campus/housing group (including any se ual assault survivor advocacy or Title I   support organi ations) concerning Plaintiff, the allegations against Plaintiff, or the proceedings at Tulane or in this lawsuit.

**AMENDED RESPONSE TO PRODUCTION RE   UEST NO. 43:**

Jane Doe objects to this Request on the ground that it seeks information that is protected

from disclosure by the attorney-client privilege, the work product doctrine, or any other

applicable privilege, immunity, protection, statute, or precedent.

18

Subject to and without waiving the foregoing objections and limitations, Jane Doe has produced documents responsive to this Request and will continue to produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

44. All documents and communications concerning: i) Tulane's handling of se ual assault cases; ii) Tulane's Code of Conduct; and iii) Tulane's campus climate attitude towards se ual assault, harassment or gender bias.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 44:**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search.

45. All documents and communications concerning the @boysbewaretulane account.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 45:**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe understands from the June 11, 2025 meet and confer with Plaintiff that Plaintiff seeks documents and communications reflecting personal posts by Jane Doe to the @boysbewaretulane account, reflecting any administration by Jane Doe of the @boysbewaretulane, or relating to Jane Doe views of the @boysbewaretulane account. Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

19

46.     All documents and communications concerning the protests that occurred on or around November 17, 2021 on Tulane's campus.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 4 :**

Jane Doe objects to this Request on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to and without waiving the foregoing objections and limitations, Jane Doe understands from the June 11, 2025 meet and confer with Plaintiff that Plaintiff seeks documents and communications relating to any views of Jane Doe or any participation by Jane Doe in the protests that occurred on or around November 17, 2021 on Tulane's campus. Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

47.     Between January 1, 2022-July 1, 2022, all documents and communications concerning any coordination of social media posts with any other individual.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 47:**

Jane Doe objects to this Request as overly broad and not relevant insofar as it requests "all" documents and communications with "any other individual" about "any coordination" of social media posts regardless of whether or not they are relevant to the claims or defenses in this case.

Subject to and without waiving the foregoing objections and limitations, Jane Doe interprets this Request to seek documents and communications concerning any coordination of social media posts with any other person that relate to Jane Doe or Ms. ███████ allegations against Plaintiff, Tulane's investigation of those allegations, and Plaintiff's subsequent lawsuits against Jane Doe or ██████ Jane Doe will produce all such non-privileged documents

20

responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

48.     All communications in any group chat, group te t, or multi-recipient messaging forum (such as group te ts,   roupMe, WhatsApp groups, Slack channels, etc.) that included You and one or more other persons and in which Plaintiff, the allegations against Plaintiff, or the Tulane investigation/████████ involving Plaintiff were discussed.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 48:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

49.     Documents sufficient to identify all social media accounts or handles used by You from 2018 to present   including accounts on platforms such as Instagram, Facebook, Twitter ( ), Snapchat, TikTok, or similar   to enable identification of where relevant content may be located. (This request is aimed at identifying accounts; no content need be produced here beyond account identifiers.)

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 4 :**

Jane Doe objects to this Request to the e tent that it seeks documents in the public domain that are as readily available to     John Doe     as they are to Jane Doe

Subject to and without waiving the foregoing objections and limitations, Jane Doe responds that the proper avenue to request identification of her social media "accounts or handles" is through an interrogatory.

50.     A forensic image (i.e., an e act bit-by-bit digital copy) of any electronic devices (including smartphones, tablets, or computers) that were used by You during the relevant time period to communicate about Plaintiff, the allegations at issue, or to post on social media about those topics. The forensic imaging shall be conducted by a mutually agreed-upon neutral e pert pursuant to an agreed protocol to preserve relevant electronically stored information (including any deleted or hidden data) in its original form.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 50:**

Jane Doe objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the e tent that it requests a "forensic image" of "any" electronic device used by Jane Doe during the relevant period.

Subject to and without waiving the foregoing objections and limitations, Jane Doe understands from the June 11, 2025 meet and confer with Plaintiff that Plaintiff requests that <sup>Jane Doe</sup>

preserve a forensic copy of her devices during the relevant period and that Jane Doe investigate such copies for deleted or hidden data. Jane Doe submits that such a request is not properly made in a document request and represents that she is complying with her document preservation obligations.

51.     All documents and communications concerning the deletion, removal, alteration, or attempted destruction of any communications, social media posts, or other documents relating to Plaintiff or the allegations against Plaintiff. This includes any instructions or discussions about deleting messages or posts, as well as any records of deletion (such as notices that a social media post was removed).

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 5 :**

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

52.     All documents and communications between You (or anyone acting on Your behalf) and any law enforcement agency or official regarding Plaintiff or any allegations or complaints made by You against Plaintiff.

**AMENDED RESPONSE TO PRODUCTION RE UEST NO. 52:**

Subject to and without waiving the foregoing objections and limitations, Jane Doe responds that no documents within her possession, custody, or control are responsive to this Request.

53.     All documents and communications concerning any plan, strategy, agreement, or coordination between You and any other person to publici e, support, or pursue the allegations against Plaintiff, or to influence the outcome of any investigation or litigation involving Plaintiff

22

(including the Tulane disciplinary process or this civil lawsuit). This request includes, for e ample, communications discussing a coordinated approach to reporting Plaintiff to authorities or the media, or any discussions of "working together" with others (such as Sue Roe ████ Noa Banghart, or any other third party) in making or sustaining allegations against Plaintiff.

## AMENDED RESPONSE TO PRODUCTION RE UEST NO. 53:

Jane Doe objects to this Request to the e tent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, joint defense privilege, common interest privilege, or any other applicable privilege, immunity, protection, statute, or precedent.

Subject to and without waiving the foregoing objections and limitations, Jane Doe will produce all non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

54. Copies of the te t messages referenced at Paragraphs 39, 43 (including te ts of the screenshot referenced), 54, 58, 59, 82, 86.

## AMENDED RESPONSE TO PRODUCTION RE UEST NO. 54:

Subject to and without waiving the foregoing objections and limitations, Jane Doe interprets this Request to seek te t messages referenced in John Doe First Amended Complaint paragraphs 39, 43, 54, 58, 59, 82, and 86. Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that are located after a reasonable search, if any such documents e ist.

Respectfully Submitted,

June 20, 2025

/s/ Jared A. Davidson

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WILLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000

23

New Orleans, Louisiana 70112
Telephone:  (504) 525-9888
cmurley@twpdlaw.com

*and*

Neil  . Roman (admitted *pro hac vice*)
  omal Shah (admitted *pro hac vice*)
Shanelle   an (admitted *pro hac vice*)
Zora F. Franicevic    (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
CO   IN   TON & BURLIN   LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-6000

nroman@cov.com
kshah@cov.com
svan@cov.com
  franicevic@cov.com
awoods@cov.com
  New York Office


*Attorneys for Defendant* Jane Doe

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by electronic mail on all counsel of record on this 20th day of June, 2025.


                                    */s/ Jared A. Davidson*

                          TAYLOR, WILLONS, POLITZ & DUHE, LLC

**Messages in chronological order** (times are shown in GMT -05:00)

---

 **bfb47868de40b53c44086835a298ad60**

Jane Doe ▮▮▮▮▮▮▮▮▮                                  ▶ 2/2/2022, 7:13 PM
I'm glad u are gonna b celebrated 😃 cure is so fun

  John Doe    ▮▮▮▮▮▮▮                            ◀ 2/2/2022, 9:18 PM
  How nice of you

  John Doe    ▮▮▮▮▮▮▮                            ◀ 2/2/2022, 9:18 PM
  What are u planning on doing tonight

Jane Doe ▮▮▮▮▮▮▮                                   ▶ 2/2/2022, 9:52 PM
I'm at trivia just seeing where the night takes me

  John Doe    ▮▮▮▮▮▮▮                            ◀ 2/2/2022, 10:21 PM
  Sounds fun. I wish u many correct answers

Jane Doe ▮▮▮▮▮▮▮                                   ▶ 2/2/2022, 10:31 PM
have not gotten that many right answers tbh

Jane Doe ▮▮▮▮▮▮▮                                   ▶ 2/2/2022, 10:31 PM
how's ur big night going

  John Doe    ▮▮▮▮▮▮▮                            ◀ 2/2/2022, 10:47 PM
  Good. We're boutta go to redeye bc the frat has it but I'm not too confident it'll be fun

  John Doe    ▮▮▮▮▮▮▮                            ◀ 2/2/2022, 10:47 PM
  I'm in a weird mood tho so we'll have fun

  John Doe    ▮▮▮▮▮▮▮                            ◀ 2/2/2022, 10:47 PM
  How are u?

Jane Doe ▮▮▮▮▮▮▮                                   ▶ 2/2/2022, 10:58 PM
hmmm good weird mood?

Jane Doe ▮▮▮▮▮▮▮                                   ▶ 2/2/2022, 10:59 PM
we are losing but having a great time lol, Taylor is coming to trivia next week to help me

  John Doe    ▮▮▮▮▮▮▮                            ◀ 2/2/2022, 11:04 PM
  Yeah like down to do random goofy shit 😎

  John Doe    ▮▮▮▮▮▮▮                            ◀ 2/2/2022, 11:04 PM
  That's hilarious. How did u facilitate that

Jane Doe ▮▮▮▮▮▮▮                                   ▶ 2/2/2022, 11:09 PM
it's ur bday u should do everything u wanna do

Jane Doe ▮▮▮▮▮▮▮                                   ▶ 2/2/2022, 11:09 PM
we can celebrate later

Jane Doe ▮▮▮▮▮▮▮                                   ▶ 2/2/2022, 11:10 PM
me and Taylor had lunch today i really like her

**John Doe** ▬▬▬▬▬▬   ◀ 2/2/2022, 11:16 PM

That's so funny did u ask her to lunch

**John Doe** ▬▬▬▬▬▬   ◀ 2/2/2022, 11:17 PM

She's actually one of the more hilarious girls I know

**Jane Doe** ▬▬▬▬▬▬   ▶ 2/2/2022, 11:42 PM

we were vibing so we decided to go on a date hehe

**John Doe** ▬▬▬▬▬▬   ◀ 2/2/2022, 11:51 PM

Thats awesome. She's such a sweetheart

**John Doe** ▬▬▬▬▬▬   ◀ 2/2/2022, 11:51 PM

Did u have fun?

**Jane Doe** ▬▬▬▬▬▬   ▶ 2/3/2022, 12:00 AM

yea it was a really nice lunch we went to st James

**Jane Doe** ▬▬▬▬▬▬   ▶ 2/3/2022, 12:01 AM

how's redeye ?

**John Doe** ▬▬▬▬▬▬   ◀ 2/3/2022, 12:08 AM

Lol that's so funny to me

**John Doe** ▬▬▬▬▬▬   ◀ 2/3/2022, 12:08 AM

But happy I had fun

**John Doe** ▬▬▬▬▬▬   ◀ 2/3/2022, 12:08 AM

*u

**John Doe** ▬▬▬▬▬▬   ◀ 2/3/2022, 12:10 AM

People are being mean and trying get me drunk

**Jane Doe** ▬▬▬▬▬▬   ▶ 2/3/2022, 12:14 AM

why is it funny

**Jane Doe** ▬▬▬▬▬▬   ▶ 2/3/2022, 12:14 AM

that sounds nice of them

**Jane Doe** ▬▬▬▬▬▬   ▶ 2/3/2022, 12:14 AM

any strippers ?

**John Doe** ▬▬▬▬▬▬   ◀ 2/3/2022, 12:14 AM

It's a good thing

**John Doe** ▬▬▬▬▬▬   ◀ 2/3/2022, 12:14 AM

Last birthday yes

**John Doe** ▬▬▬▬▬▬   ◀ 2/3/2022, 12:15 AM

This birthday not yet

**John Doe** ▬▬▬▬▬▬   ◀ 2/3/2022, 12:15 AM

And I'm happy y'all are friends. That's a good thing

**Jane Doe**        ▶ 2/3/2022, 12:16 AM
Loved "And I'm happy y'all are friends. That's a good thing"

**Jane Doe**        ▶ 2/3/2022, 12:16 AM
Fireball?

**Jane Doe**        ▶ 2/3/2022, 12:16 AM
The night is still young u have time to find some strippers

**Jane Doe**        ▶ 2/3/2022, 12:17 AM
i appreciate you introducing me to your friends it's hard to find nice girl friends here that aren't crazy bitches

       **John Doe**        ◀ 2/3/2022, 12:24 AM
Not fireball but if u insist

       **John Doe**        ◀ 2/3/2022, 12:24 AM
No that's good I've been a new kid before I get it

       **John Doe**        ◀ 2/3/2022, 12:25 AM
And lmao I tried taking the stepper on a date the last time but then I was a little mean and I regret it

**Jane Doe**        ▶ 2/3/2022, 12:33 AM
I'll buy u a bday fireball shot next time i see u

**Jane Doe**        ▶ 2/3/2022, 12:34 AM
i think ur supposed to throw money at them not fall in love

**Jane Doe**        ▶ 2/3/2022, 12:34 AM
why were u mean 🙁

       **John Doe**        ◀ 2/3/2022, 12:36 AM
That makes me happy

       **John Doe**        ◀ 2/3/2022, 12:37 AM
She just found me attractive and let's say i wasn't my best self

       **John Doe**        ◀ 2/3/2022, 12:37 AM
Also haven't asked about u…how's trivia/ur night going?

**Jane Doe**        ▶ 2/3/2022, 12:40 AM
was she a cutie

**Jane Doe**        ▶ 2/3/2022, 12:40 AM
trivia was good i just got home

**Jane Doe**        ▶ 2/3/2022, 12:41 AM
Loved "That makes me happy "

**Jane Doe**        ▶ 2/3/2022, 12:41 AM
was kinda debating going out but it's raining so

       **John Doe**        ◀ 2/3/2022, 12:42 AM
That's good

IM0000685

John Doe ████████████ ◀ 2/3/2022, 12:43 AM
You should go out

John Doe ████████████ ◀ 2/3/2022, 12:43 AM
Nothing good ever happened staying in

Jane Doe ██████████ ▶ 2/3/2022, 12:45 AM
But now I'm all warm in my bedddd

John Doe ████████████ ◀ 2/3/2022, 12:45 AM
Well then another night I guess

John Doe ████████████ ◀ 2/3/2022, 12:46 AM
"Yes that's me I'm saying I want to and making it your decision"

Jane Doe ██████████ ▶ 2/3/2022, 12:47 AM
u want me to go out?

John Doe ████████████ ◀ 2/3/2022, 12:48 AM
Obviously

John Doe ████████████ ◀ 2/3/2022, 12:48 AM
Duh

Jane Doe ██████████ ▶ 2/3/2022, 12:49 AM
I meannnn u didn't invite me so not so obvious

John Doe ████████████ ◀ 2/3/2022, 12:49 AM
Well u weren't close to red eye

John Doe ████████████ ◀ 2/3/2022, 12:49 AM
So I didn't wanna be rude

John Doe ████████████ ◀ 2/3/2022, 12:50 AM
This is a weird game of semantics but if I were to play it I'd say: hi lily IK it's the middle of the week but if u wanted to hang I'd want u to come over

Jane Doe ██████████ ▶ 2/3/2022, 12:53 AM
mmh

Jane Doe ██████████ ▶ 2/3/2022, 12:53 AM
you can just say you wanna hangout with me

Jane Doe ██████████ ▶ 2/3/2022, 12:54 AM
even if it's the middle of the week that's not weird hehe

John Doe ████████████ ◀ 2/3/2022, 12:56 AM
Okay

John Doe ████████████ ◀ 2/3/2022, 12:56 AM
I wanna hang out with u

John Doe ████████████ ◀ 2/3/2022, 12:56 AM
But it's the middle of the week

John Doe ████████████ ◀ 2/3/2022, 12:56 AM
And I don't want to bother u

IM0000686

John Doe ▬▬▬▬▬ ◄ 2/3/2022, 12:56 AM
So I want the good and no bad but that's no possible

John Doe ▬▬▬▬▬ ◄ 2/3/2022, 12:57 AM
Short story - if you're still awake I would like to hangout with you in the middle of the week and I'm sorry for being weird about it I can explain with honestly

John Doe ▬▬▬▬▬ ◄ 2/3/2022, 12:57 AM
*honesty

Jane Doe ▬▬▬▬▬ ► 2/3/2022, 12:58 AM
ur weird i like it

Jane Doe ▬▬▬▬ ► 2/3/2022, 12:59 AM
When are you going home

Jane Doe ▬▬▬▬▬ ► 2/3/2022, 12:59 AM
& ur not bothering me i would tell u if u are

John Doe ▬▬▬▬▬ ◄ 2/3/2022, 12:59 AM
Lol….

John Doe ▬▬▬▬ ◄ 2/3/2022, 1:00 AM
………….

▬▬▬▬ ◄ 2/3/2022, 1:00 AM
…….😴………….

John Doe ▬▬▬▬▬ ◄ 2/3/2022, 1:00 AM
I'm about to call an Uber is that an acceptable timeline?

Jane Doe ▬▬▬▬ ► 2/3/2022, 1:02 AM
lol yes i probably won't fall asleep in the next 15 mins

John Doe ▬▬▬▬ ◄ 2/3/2022, 1:03 AM
You're pressuring me

John Doe ▬▬▬▬ ◄ 2/3/2022, 1:03 AM
It might be working

John Doe ▬▬▬▬ ◄ 2/3/2022, 1:03 AM
But I don't wanna admit it

Jane Doe ▬▬▬▬ ► 2/3/2022, 1:04 AM
don't leave if u don't want to!!

John Doe ▬▬▬▬ ◄ 2/3/2022, 1:04 AM
Lmao

John Doe ▬▬▬▬ ◄ 2/3/2022, 1:04 AM
Hehe

John Doe ▬▬▬▬ ◄ 2/3/2022, 1:04 AM
Make u feel bad

John Doe    █████████  ◀ 2/3/2022, 1:04 AM

Hehe

Jane Doe  █████████  ▶ 2/3/2022, 1:04 AM

It's your bday have a night if u wanna

John Doe    █████████  ◀ 2/3/2022, 1:05 AM

Yeah that's why I'm coming over to yours

John Doe    █████████  ◀ 2/3/2022, 1:05 AM

But remember the avoiding racetrack but

John Doe    █████████  ◀ 2/3/2022, 1:05 AM

*bit

John Doe    █████████  ◀ 2/3/2022, 1:05 AM

Yeah. Here.

Jane Doe  █████████  ▶ 2/3/2022, 1:05 AM

wut

John Doe    █████████  ◀ 2/3/2022, 1:06 AM

I called an Uber to mine/your area if that's ok

John Doe    █████████  ◀ 2/3/2022, 1:06 AM

I just spewed nonsense don't worry

Jane Doe  █████████  ▶ 2/3/2022, 1:07 AM

Emphasized "I just spewed nonsense don't worry "

Jane Doe  █████████  ▶ 2/3/2022, 1:07 AM

you can come to mine if u wanna

Jane Doe  █████████  ▶ 2/3/2022, 1:07 AM

I just have to leave at like 815

John Doe    █████████  ◀ 2/3/2022, 1:08 AM

That's okay. I called an Uber

Jane Doe  █████████  ▶ 2/3/2022, 1:08 AM

so maybe yours is smarter

John Doe    █████████  ◀ 2/3/2022, 1:08 AM

But on the birthday condition

Jane Doe  █████████  ▶ 2/3/2022, 1:09 AM

whats the birthday condition

John Doe    █████████  ◀ 2/3/2022, 1:12 AM

Well mine bought me tequila

John Doe    █████████  ◀ 2/3/2022, 1:14 AM

Uber here. Should I come to yours.

IM0000688

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ | ▶ | 2/3/2022, 1:14 AM |
| sure i just have to leave early ish | | |

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ ▐▐▐ | ▶ | 2/3/2022, 1:14 AM |

| | | |
|---|---|---|
| ▐▐▐▐▐ | ▶ | 2/3/2022, 1:15 AM |
| u can come to mine and we can walk to urs? | | |

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ | ▶ | 2/3/2022, 1:15 AM |
| i jus don't wanna make u get up early i can just slip out at yours haha | | |

| | | |
|---|---|---|
| John Doe ▐▐▐▐▐ | ◀ | 2/3/2022, 1:17 AM |
| Don't worry I'm in an Uber back | | |

| | | |
|---|---|---|
| John Doe ▐▐▐▐▐ | ◀ | 2/3/2022, 1:17 AM |
| If that's ok | | |

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ | ▶ | 2/3/2022, 1:19 AM |
| okay | | |

| | | |
|---|---|---|
| John Doe ▐▐▐▐▐ | ◀ | 2/3/2022, 1:19 AM |
| Where should I call to | | |

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ | ▶ | 2/3/2022, 1:20 AM |
| yours | | |

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ | ▶ | 2/3/2022, 1:21 AM |
| I'll come to urs | | |

| | | |
|---|---|---|
| John Doe ▐▐▐▐▐ ) | ◀ | 2/3/2022, 1:21 AM |
| I'll get u from yours | | |

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ | ▶ | 2/3/2022, 1:21 AM |
| okay | | |

| | | |
|---|---|---|
| John Doe ▐▐▐▐▐ | ◀ | 2/3/2022, 1:21 AM |
| Called to urs | | |

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ | ▶ | 2/3/2022, 1:21 AM |
| that works | | |

| | | |
|---|---|---|
| John Doe ▐▐▐▐▐ | ◀ | 2/3/2022, 1:21 AM |
| If that's ok | | |

| | | |
|---|---|---|
| Jane Doe ▐▐▐▐▐ | ▶ | 2/3/2022, 1:21 AM |
| yes sounds good | | |

| | | |
|---|---|---|
| John Doe ▐▐▐▐▐ | ◀ | 2/3/2022, 1:23 AM |
| 3 min away | | |

| | | |
|---|---|---|
| John Doe ▐▐▐▐▐ | ◀ | 2/3/2022, 1:27 AM |
| Are u ok? | | |

IM0000689

Jane Doe ████████████  ▶ 2/3/2022, 1:27 AM
ya u here?

John Doe ████████████  ◀ 2/3/2022, 1:27 AM
2 min

Jane Doe ████████████  ▶ 2/3/2022, 1:27 AM
kk

John Doe ████████████  ◀ 2/3/2022, 1:31 AM
Are u good?

John Doe ████████████  ◀ 2/3/2022, 1:31 AM
On your block

Jane Doe ████████████  ▶ 2/3/2022, 1:31 AM
yes why wouldn't i b

John Doe ████████████  ◀ 2/3/2022, 1:31 AM
Just making sure

Jane Doe ████████████  ▶ 2/3/2022, 1:31 AM
should i come out or r u coming in

John Doe ████████████  ◀ 2/3/2022, 1:31 AM
If u wanna come out u can

John Doe ████████████  ◀ 2/3/2022, 1:32 AM
If not i was just gonna come in bc I'm here on corner

John Doe ████████████  ◀ 2/3/2022, 1:32 AM
Totally don't care either way

Jane Doe ████████████  ▶ 2/3/2022, 1:32 AM
Okay one sec I'm coming

Original Filed at Docket No. 153,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe     , <br> **Plaintiff,** <br><br> v. <br><br> Jane Doe , <br><br>     **Defendant.** | CIVIL ACTION NO. 2:24-CV-00825 <br><br> SECTION: P (3) <br><br> JUDGE DARREL JAMES PAPILLION <br><br> MAG. JUDGE EVA J. DOSSIER |

**PLAINTIFF'S EX PARTE MOTION TO SEAL A PORTION OF**
**HIS OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

Pursuant to Local Rule 5.6, Plaintiff   John Doe   ("Plaintiff"), by and through his

attorneys, respectfully moves the Court to seal a portion of his opposition to Defendant Jane Doe

("Defendant") motion to compel (R. Doc. ## 137, 144, 145). In accordance with Local Rule 5.6,

Plaintiff has filed full, unredacted copies of the documents in question under seal with this motion.

Plaintiff has filed redacted copies of all but one exhibit to the case docket.

For the reasons set forth in the accompanying memorandum of law, Plaintiff respectfully

requests that this Court enter the proposed order included herewith.

Dated: July 7, 2025

<div style="text-align:right">

Respectfully Submitted,

   /s/ *Kara L. Gorycki*
  Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com


-and-

Alex Robertson
LA Atty ID: 37285

</div>

1

Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | CIVIL ACTION NO. 2:24-CV-00825 |
| **Plaintiff,** | |
| | SECTION: P (3) |
| v. | |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION TO SEAL PORTIONS OF HIS OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

Plaintiff    John Doe    ("Plaintiff") respectfully submits this memorandum of law in support of his motion to seal portions of his opposition to Defendant Jane Doe ("Defendant") motion to compel written discovery responses (R. Doc. ## 137, 144, 145). Plaintiff has filed redacted copies of Exhibits B, C D, F, G and H. Certain documents appended to Exhibit C—designated as Confidential by non-party Tulane University—have been filed under seal in their entirety. Exhibit E, correspondence from Defendant's counsel, has been filed under seal because the letter asserts that information contained therein is Confidential. Plaintiff does not believe that Exhibit E contains Confidential Information but included in this motion out of an abundance of caution.

Although there is a presumption of openness with respect to court records, Rule 26 of the Federal Rules of Civil Procedure permit documents to be sealed for "good cause." Fed. R. Civ. P 26; *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 516 (5th Cir. 2022). Local Rule 5.6 requires a party seeking to seal a document to consider "all reasonable alternatives to filing under seal," including "a line-by-line analysis of the documents…to redact only the truly sensitive information." LR 5.6(A), (C). Here, there is good cause to file the requested information under

1

seal:

**Exhibit B** – The redactions to this email correspondence concern information through which Plaintiff can be identified in the Pseudonym Litigation. The Protective Order entered by the Court on May 28, 2025 allows this information to be filed under seal. R. Doc. #131, Protective Order, ¶ 4(a). There is a single redaction on the last page of Exhibit B which covers a hyperlink to a Confidential document production.

**Exhibit C** – The redactions to this exhibit concern information through which Plaintiff can be identified in the Pseudonym Litigation. The Protective Order entered by the Court on May 28, 2025 allows this information to be filed under seal. R. Doc. #131, Protective Order, ¶ 4(a). Sue Roe's name has also been redacted from this exhibit. There is also a single redaction on the first page which covers a hyperlink to a Confidential document production. The information redacted in Plaintiff's response to Interrogatory Number 2 summarizes Confidential documents produced by nonparty Tulane University. The information redacted from Plaintiff's response to Interrogatory Number 7 concerns personal information about Plaintiff that the parties have designated as Confidential under the Protective Order. The documents attached to Exhibit C have been filed under seal because they were designated as Confidential by nonparty Tulane University.

**Exhibit D** – Identifying information has been redacted from Plaintiff's initial disclosures in accordance with Paragraph 4(b) of the Protective Order. Sue Roe's identity has also been redacted as well as Plaintiff's personal health information. Plaintiff also redacted information concerning sexual misconduct allegations against a nonparty.

**Exhibit E** – This letter concerning Defendant's June 12, 2025 document production purports to contain Confidential information. Plaintiff doesn't see it but filed this under seal out of an abundance of caution.

**Exhibit F** – Plaintiff redacted information from his Objections and Responses to Defendant's First Set of Requests For Production through which he can be identified in the Pseudonym Litigation. He also redacted Sue Roe's name from this exhibit.

**Exhibit G** – Plaintiff redacted information from Defendant's Amended Responses and Objection's to Plaintiff's First Set of Requests for the Production of Documents through which he can be identified in the Pseudonym Litigation. He also redacted Sue Roe's name and information concerning sexual misconduct allegations against a nonparty.

**Exhibit H** – Plaintiff redacted phone numbers from these text messages pursuant to Paragraph 4(b) of the Protective Order.

3

For the above stated reasons, Plaintiff respectfully requests that the Court enter the enclosed order permitting Plaintiff to file Exhibits B-H under seal.

Dated: July 7, 2025

Respectfully submitted,

/s/ *Kara L. Gorycki*
Kara L. Gorycki (admitted pro hac vice)
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:(212)736-4500
Email: kgorycki@nmllplaw.com

-and-

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220
Email: alex@mrmlaw.com

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , **Plaintiff,** | CIVIL ACTION NO. 2:24-CV-00825 |
| | SECTION: P (3) |
| v. | |
| Jane Doe | JUDGE DARREL JAMES PAPILLION |
| **Defendant.** | MAG. JUDGE EVA J. DOSSIER |

## ORDER

CONSIDERING THE FOREGOING motion, memorandum of law and exhibits in support of the Plaintiff's motion to seal portions of his opposition to Defendant's motion to compel, the motion is GRANTED.

"Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "And the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (2022) (quoting *Leopold v. United States* (*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*), 964 F.3d 1121, 1123 (D.C. Cir. 2020)) (internal quotations omitted). For this reason, there is a presumption against sealing documents and the party moving to seal "bears the burden to show that the interest in secrecy outweighs the presumption." *Shell Offshore, Inc. v. Eni Petroleum US, LLC*, No. 16-CV-15537, 2017 WL 4226153, at *1 (E.D. La. Sept. 22, 2017) (internal quotations and citations omitted). As such, the Fifth Circuit has instructed that "a judge cannot seal public documents merely because a party asks to add them to the judicial record." *June Med. Servs.*, 22 F.4th at 520. Instead, "the court must undertake a . . . line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* (quoting *Le*, 990 F.3d at 419) (internal quotations omitted).

1

After careful review, the Court agrees with the parties that it is appropriate to seal Exhibits B-H of Plaintiff's opposition to Defendant's motion to compel in accordance with Paragraph 4 of the Protective Order previously entered in this case (R. Doc. #  131) and because the public's interest in the information contained in the sealed documents does not outweigh the interests favoring nondisclosure.

IT IS HEREBY ORDERED that Exhibit 1 shall be filed under seal.

SIGNED, this _____ day of _____, 2025 in New Orleans, Louisiana


_____
UNITED STATES MAGISTRATE JUDGE

Original Filed at Docket No. 154,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

███████                              CIVIL ACTION

VERSUS                               NO.  24-825

██████                               SECTION:  "P" (3)

## ORDER

Considering the Motion to Seal (R. Doc. 153),

**IT IS ORDERED** that Plaintiffs' Motion to Seal (R. Doc. 153) is **GRANTED.**

**IT IS FURTHER ORDERED** that Exhibits B (R. Doc. 153-3), C (R. Doc. 153-4), D (R. Doc. 153-5), E (R. Doc. 153-6), F (R. Doc. 153-7), G (R. Doc. 153-8), and H (R. Doc. 153-9) be placed into the record under **SEAL**.

New Orleans, Louisiana, this 8th day of July, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

Original Filed at Docket No. 155,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe <br> Plaintiff, <br><br> v. <br><br> Jane Doe <br> Defendant. | CIVIL ACTION NO. 2:24-CV-00825 <br><br> SECTION: P (3) <br><br> **JUDGE DARREL JAMES PAPILLION** <br><br> **MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO**
**COMPEL RESPONSES TO WRITTEN DISCOVERY REQUESTS**

John Doe    Opposition misstates and misapplies the law governing the propriety of Jane Doe discovery requests and the (in)adequacy of    John Doe    responses to those requests and, in an apparent effort to distract from the weakness of his arguments, mischaracterizes the parties' efforts to resolve these issues without judicial intervention.[1]

**1.    John Doe    Misconstrues the Law Governing Calculation of Interrogatories.**

John Doe    arguments concerning Jane Doe interrogatories are a mix of old arguments and new, none with merit.

As to the old, Jane Doe does not repeat the analysis in her Motion as to her first 13 interrogatories, *see* R. Doc. 137-1 at 8–15, but it bears mention that    John Doe    Opposition

---

[1] Although    John Doe    understandably does not want the Court to learn of the unreasonable positions that he has taken in response to Jane Doe discovery requests, he cannot credibly use a purported failure to meet and confer as a shield. Jane Doe Motion sets out the pre-motion discussions and chronicles her efforts to get    John Doe    to abide by his discovery obligations. *See* R. Doc. 137-1 at 1–4. That record speaks for itself.

retreats from his position with respect to seven of these 13 interrogatories, *see* R. Doc. 152 at 4, underscoring the extreme and unreasonable positions he took in the meet-and-confer process.

John Doe new arguments fare no better. Specifically, he argues for the first time in his Opposition that Jane Doe Interrogatory Nos. 14–21 each comprise multiple interrogatories. *See* R. Doc. 152-1, Ex. A. As set forth in Exhibit A to this Reply, however, the subparts of those interrogatories are "logically or factually subsumed within or necessarily related to the primary question."[2] *Johnson v. Geovera Specialty Ins. Co.*, No. 23-4999, 2024 WL 962358, at *2 (E.D. La. Mar. 6, 2024) (internal quotations omitted); *Calogero v. Shows, Cali & Walsh, LLP*, No. 18-6709, 2021 WL 8572627, at *3 (E.D. La. Dec. 15, 2021) (citation omitted); *Cook v. Flight Services and Sys., Inc.*, No. 16-15759, 2018 WL 11447512, at *6 (E.D. La. Nov. 1, 2018) (citation omitted).

More broadly, John Doe analysis suffers from at least three overarching flaws.

*First*, John Doe incorrectly concludes that subparts of Jane Doe interrogatories should be considered distinct because they can be answered without answering the first, primary question posed by the interrogatory. This argument flips the law which, as John Doe concedes, *see, e.g.*, R. Doc. 152 at 4, provides that a subpart should be considered a separate interrogatory when "the *first* question can be answered fully and completely without answering the *second* question." *Calogero*, 2021 WL 8572627 at *3 (emphasis added).

John Doe argument with respect to Interrogatory No. 2 is illustrative. Interrogatory No. 2 requests that John Doe "[s]tate the bases for [his] claim of defamation against [Jane Doe . . . including identification of every allegedly false and defamatory statement

---

[2] As noted in Exhibit A, Jane Doe agrees to treat Interrogatory No. 17 as two separate interrogatories, meaning that, given her previous offer to treat Interrogatory No. 7 as two separate interrogatories, she has propounded 23 interrogatories and has two left.

made by Jane Doe of which [ John Doe is] aware." John Doe argues that Interrogatory No. 2 constitutes two separate interrogatories because John Doe "can identify each false and defamatory statement known to him fully and completely without stating the legal basis for his multi-element defamation claim." R. Doc. 152-1, Ex. 1 at 1. This analysis answers the wrong question. The correct inquiry is whether John Doe can state the basis for his defamation claim without identifying every defamatory statement known to him. Because John Doe cannot state the basis of his defamation claim without identifying the purported defamatory statements, Interrogatory No. 2 does not contain two separate interrogatories.[3]

*Second*, John Doe analysis fails to appreciate that when calculating number of interrogatories served, courts in this District have also found subparts logically or factually subsumed within or necessarily related to the primary question if they "ask for further factual elaboration as to [the] who, what, when, where, and how" of a topic. *Cook*, 2018 WL 11447512, at *6.[4] As just one example, John Doe argues that Interrogatory No. 12, which asks John Doe to "[s]tate by month any income that [he has] received from sources other than any jobs that [he has] held since January 2022, including the source(s) of such income," R. Doc. 137-2, Ex. 1 at 6, constitutes two interrogatories because John Doe "can state the monthly

---

[3] John Doe arguments with respect to Jane Doe Interrogatory Nos. 4 and 5 suffer from the same flaw.

[4] Although John Doe suggests that use of a "common theme" test would be "problematic," R. Doc. 152 at n.4, he cites no binding case law criticizing use of the common theme test. To the contrary, "common theme" has been implicitly adopted by this District as a further test for courts to consider when calculating interrogatories. *See, e.g.*, *Cook*, 2018 WL 11447512, at *6 (subparts not distinct when they do not involve "'discrete' matters" and merely ask for elaboration as to "who, what, when, where, and how" of main interrogatory); *see also Estate of Manship v. United States*, 232 F.R.D. 552, 557 (M.D. La. 2005) (subparts of interrogatories that seek "who, what, when where and how" information relating to "common theme" not distinct).

income that he earned (apart from any jobs) without identifying the sources of that income," R. Doc. 152-1, Ex. A at 3. But seeking income sources merely asks "for further factual elaboration as to [the] who, what, when, where, and how" of John Doe non-employment income.[5] *Cook*, 2018 WL 11447512, at *6.

*Third*, and finally, John Doe objections to Interrogatory Nos. 13–16 because they reference two days is baseless. Those interrogatories all seek information concerning a single event which started when John Doe began celebrating his birthday the evening of February 2, 2022 and concluded when John Doe walked Jane Doe home the morning of February 3.[6]

John Doe suggestion that February 2 is distinct from February 3 because he and Jane Doe did not meet until past midnight is based on a meaningless technicality. John Doe activities immediately before meeting Jane Doe are relevant to his assault of her: for example, the substances that John Doe consumed before meeting Jane Doe bear on his ability to recall his sexual activity with Jane Doe including whether the activity was consensual or not.

### 2. John Doe Misinterprets the Law Concerning Requests to Serve Additional Interrogatories.

Even if John Doe analysis of the calculation of Jane Doe interrogatories were correct, his arguments opposing Jane Doe alternate request for leave to serve additional interrogatories make no sense. *See* R. Doc. 152 at 3. Jane Doe did not seek leave of Court *before* serving interrogatories because she did not believe—and still does not believe—that she has exceeded the limit set forth in Rule 33.

---

[5] John Doe analysis with respect to Interrogatory Nos. 17 and 21 suffers from the same flaw, as explained in Jane Doe Motion and in Exhibit A to this Reply.

[6] As explained in Exhibit A to this Reply, these interrogatories do not seek information regarding events that occurred after John Doe walked Jane Doe home on February 3.

This circumstance is not novel, and courts routinely grant leave to serve additional interrogatories *after* finding that a party has met or exceeded the 25 interrogatory limit, even where the party did not seek leave before serving those interrogatories. *See, e.g.*, *Johnson*, 2024 WL 962358, at *3–4 (granting leave to serve additional interrogatories after requesting party had already served 25 interrogatories); *Estate of Manship*, 232 F.R.D. at 557–60 (granting leave to serve additional interrogatory requested as alternative relief in plaintiff's motion to compel related to dispute about number of interrogatories).

John Doe suggestion that Jane Doe "has made no effort to demonstrate that she is entitled to the relief she is seeking" is equally unfounded. R. Doc. 152 at 1. When assessing a request to serve additional interrogatories, courts in this District have applied a balancing test, which should "weigh[] in favor of the requesting party where the additional interrogatories are substantially relevant to the claims made in the litigation, and the burden of responding is not high." *Johnson*, 2024 WL 962358, at *2. Jane Doe has demonstrated good cause to exceed the 25 interrogatory limit because Interrogatory Nos. 14–21 go to the heart of the issues in this case, including identification of persons with whom John Doe communicated about his sexual activity with Jane Doe and a description of his version of the events underlying the similar allegations made against him by Sue Roe with whom Jane Doe is alleged to have conspired, and John Doe burden in responding is low given that these are all interrogatories seeking information to which he has immediate access. *See* R. Doc. 137-1 at 15–16; 137-2, Ex. 1 at 6–8.

Relatedly, John Doe suggestion that Jane Doe has access to the requested information in John Doe document productions does not tilt the scales in his favor. *See* R. Doc. 152 at 5. John Doe must at minimum specify the documents that may provide

5

answers to an interrogatory in "sufficient detail" in his response to enable Jane Doe to locate them. *See* FED. R. CIV. P. 33(d).  John Doe  has not done so.

Moreover, even if  John Doe  had pointed Jane Doe to particular documents in compliance with Rule 33(d), his responses would still be incomplete because not all the information requested by Interrogatory Nos. 14–21 is available in the productions that Jane Doe has received.  For example,  John Doe  suggested that his Title IX disciplinary record provides an answer to Interrogatory No. 21, R. Doc. 152-1, Ex. A at 11, which asks <sup>John Doe</sup>

to identify "all complaints or suggestions of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact [against  John Doe  . . without limitation as to time period." R. Doc. 137-2, Ex. 1 at 8.  But the disciplinary record does not fully answer the question given the possibility of "complaints or suggestions" not reported to Tulane.

**3.   John Doe    Does Not Justify His Inadequate Responses to Interrogatory Nos. 7, 8, and 12.**

There likewise is no merit to  John Doe  arguments with respect to three specific interrogatories—Nos. 7, 8, and 12.  In his responses to these interrogatories,  John Doe sidesteps his obligation under Rule 33 to provide sworn testimony on issues relevant to this litigation by referring Jane Doe to his initial disclosures and produced documents.  *See* R. Doc. 152 at 4–7.  But those materials do not provide complete responses to the interrogatories and as such violate Rule 33(d).  We address the three interrogatories in turn.

John Doe   response to **Interrogatory No. 7** referring Jane Doe to his initial disclosures is incomplete because the disclosures do not indicate to which persons, if any, <sup>John Doe</sup>

confided specifically about his purported emotional distress or describe the content of those communications, as requested.  *See* R. Doc. 152 at 7.  Contrary to    John Doe

6

suggestion, describing the conversations that he had with a limited number of persons about his purported emotional distress, which may not have been in writing and may not appear in the documents, is not unduly burdensome—especially when they relate directly to his claims.

As for **Interrogatory No. 8**, John Doe initial disclosures list only total claimed damages of $2 million for five categories of damages, and his interrogatory response fails to provide the requested detail. *See* R. Doc. 137-10, Ex. 9 at 6. Most notably, John Doe fails to provide estimates of his damages for two categories as to which his asserted damages should be known and final: Category 4 for "[a]ttorneys' fees and travel expenses incurred with respect to Jane Doe TRO petition" and Category 5 for "[a]ttorneys' fees incurred with respect to the Tulane disciplinary proceeding," both of which concluded over three years ago. *See id.* If John Doe has no knowledge concerning these or any other categories of purported damages, he was required to indicate so in his response.

Finally, John Doe cannot maintain his relevance and burden objections to **Interrogatory No. 12**, which seeks information about non-employment income. R. Doc. 152 at 8–9. Such income could negate his claims of financial losses or hardship due to Jane Doe accusations. John Doe has made no effort to offer any form of responsive information, such as annual or total income from non-employment sources, which Jane Doe has indicated that she would accept as an alternative to monthly figures.

### 4. John Doe Does Not Justify His Refusal to State Whether he is Withholding Non-Privileged Responsive Documents.

Finally, John Doe Opposition doubles down on his improper refusal to identify the responsive materials that he plans to withhold from production. John Doe responses to Jane Doe Request for Production Nos. 2, 4, 5, 7, 9–17, 19–21, 23–28, 30 each state that he will produce only "non-privileged, *relevant* documents" without identifying the responsive

documents that he will withhold on the basis that they are not relevant.  R. Doc. 137-5, Ex. 4 (emphasis added).  These responses are inconsistent with     John Doe     obligations under the rules, which require him to specify and commit at the time that responses are due what he will be producing and what he will be withholding from forthcoming document productions.  *See* FED. R. CIV. P. 34(b)(2)(C).

John Doe     argument based on his representation that he is "not presently withholding any non-privileged, responsive documents or communications from production," R. Doc. 152 at 9, misses the mark and is inconsistent with the rules.  To the contrary, and ominously, John Doe     suggests that he may decide whether to withhold responsive documents later in discovery and thereby impede Jane Doe ability to timely meet and confer on any disagreements and, if necessary, seek relief from the Court.

Moreover, contrary to     John Doe     suggestion, R. Doc. 152 at 9, Jane Doe discovery responses do not suffer from the same flaw.  In response to many of     John Doe document requests, Jane Doe unambiguously commits to producing "*all* non-privileged documents [or communications] responsive to this Request."  *See, e.g.,* R. Doc. 152-7, Ex. G (emphasis added).  Where Jane Doe does not intend to produce documents in response to     John Doe requests, either in full or in part, she has stated as such.  *See, e.g.*, R. Doc. 152-7, Ex. G at 3–4 ("Jane Doe interprets this Request to seek (i) documents relating to Plaintiff, including documents relating to Jane Doe or [Sue Roe's] allegations against Plaintiff, documents relating to Jane Doe March 2022 petition for a restraining order against Plaintiff, and documents relating to Plaintiff's lawsuits . . . ; and (ii) documents relating to any allegations by Jane Doe involving sexual assault, sexual harassment, or other sexual misconduct.  Jane Doe will produce all such non-privileged documents responsive to this Request that are within her possession, custody, or control and that

are located after a reasonable search.  Jane Doe will not produce communications with Ms.

Banghart that fall outside those categories, such as communications about routine social or

educational activities.").

John Doe by contrast, has left Jane Doe guessing as to what he deems relevant and

what he will deign to produce.

WHEREFORE, for the foregoing reasons and those set forth in her opening memorandum,

Defendant Jane Doe prays that her motion to compel responses to written discovery requests be

granted as prayed.

Respectfully Submitted,

*/s/ Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee Haller (admitted *pro hac vice*)
Christina Coleburn (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

9

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on all

counsel of record on this 10th day of July, 2025.


/s/ *Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**Exhibit A**

John Doe  *v.* <sup>Jane Doe</sup> No. 24-CV-00825

Jane Doe Analysis of Interrogatory Nos. 14-21

| Interrogatory No. | Interrogatory Request | Analysis |
|---|---|---|
| 14 | Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (e.g., whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on February 2 and 3, 2022. | Although   John Doe    claims that this interrogatory is six separate interrogatories, it is only one interrogatory because each subpart is "logically or factually subsumed within or necessarily related to the primary question," *Johnson v. Geovera Specialty Ins. Co.*, No. 23-4999, 2024 WL 962358, at *2 (E.D. La. Mar. 6, 2024) (internal quotations omitted), here: to what degree was   John Doe    under the influence of substances on the night he assaulted Jane Doe

  John Doe    assertion that the interrogatory should be split into separate interrogatories based on the category of intoxicant consumed by   John Doe    is unfounded—whether it be alcohol, drugs, or other substances, each is necessarily related to the primary question of the degree of   John Doe    intoxication the night he engaged in sexual activity with Jane Doe

  John Doe    additional assertion that the interrogatory should be split into separate interrogatories on the basis that it covers separate days, February 2 and February 3, equally lacks merit.  As discussed in the Reply brief, these days cannot be separated.  For example, any drinks, drugs, or other substances   John Doe   consumed the evening of February 2 would likely influence his degree of intoxication in the early hours of February 3, when he assaulted Jane Doe  By this interrogatory, Jane Doe does not seek an accounting of the drinks, drugs, or other substances <sup>John Doe</sup> consumed after he walked Jane Doe home the morning of February 3.

The answer to this interrogatory is not found in documents produced to Jane Doe as   John Doe    alleges, because they do not provide a complete answer to this Request.  For example, the Title IX investigation file provides information regarding the amount of alcohol   John Doe    consumed on the night of his encounter with |

1

| | | |
|---|---|---|
| | | Jane Doe but does not provide the locations or approximate times that [John Doe] consumed each of those drinks; nor does it specify the type of alcohol John Doe consumed. |
| 15 | Describe all sexual activity in which You engaged on February 2 and 3, 2022, including the sexual activity with Defendant Jane Doe | Although John Doe claims that this interrogatory is two separate interrogatories, this interrogatory is a single interrogatory because any subparts are "logically or factually subsumed within or necessarily related to the primary question," *Johnson*, 2024 WL 962358, at \*2, here: what does John Doe recall regarding his sexual activity with Jane Doe on the evening of February 2 into the morning of February 3?<br><br>Again, contrary to John Doe assertions, the interrogatory cannot be separated on the basis that it covers two separate days, as John Doe activities on the evening of February 2 continued into the morning hours of February 3, when he assaulted Jane Doe<br><br>John Doe relevance objection is moot, as Jane Doe does not seek an accounting of John Doe sexual activity after he walked Jane Doe home the morning of February 3; nor does she seek a description of any sexual activity in which John Doe may have engaged on February 2 or 3 with persons other than [Jane Doe]<br><br>The answer to this interrogatory is not found in documents produced to Jane Doe as John Doe alleges, because they do not provide a complete answer to this Request. For example, John Doe written statement in the Title IX investigation file provides only a cursory, high-level description of the sexual activity between John Doe and Jane Doe stating only that they engaged in sexual intercourse, without further description. |

2

| 16 | Identify all persons with whom You Communicated about the sexual activity in which You engaged on February 2-3, 2022 and the substance of those Communications. | This interrogatory is a single interrogatory because any subparts are "logically or factually subsumed within or necessarily related to the primary question," *Johnson*, 2024 WL 962358, at *2, here:  with whom did   John Doe   communicate about his sexual activity with Jane Doe the night of February 2 and the early morning hours of February 3?

Again, contrary to   John Doe   assertions, the interrogatory cannot be separated on the basis that it covers two separate days, as   John Doe   activities the night of February 2 continued into the morning hours of February 3, when he assaulted Jane Doe

  John Doe   relevance objection is moot, as Jane Doe does not seek the identity of persons with whom   John Doe   communicated about any sexual activity in which he engaged after he walked Jane Doe home the morning of February 3; nor does she seek any such communications about any sexual activity in which John Doe may have engaged on February 2 and 3 with persons other than Jane Doe

The answer to this interrogatory is not found in documents produced to Jane Doe as   John Doe   alleges, because they do not provide a complete answer to this Request.  For instance, they do not provide information about any oral conversations that   John Doe   may have had concerning the sexual activity in which he engaged with Jane Doe on February 2-3 or the substance of such conversations. |
| 17 | Describe the events underlying the allegations made against You by Sue Roe, including the sexual activity in which You engaged, the Communications that You exchanged with Sue Roe following the sexual activity and the reasons for the statements that You made in those Communications, and the Communications that You had with | Jane Doe agrees to treat this interrogatory as two interrogatories:  (i) describe the events underlying the allegations against You by Sue Roe, including the sexual activity in which You engaged, and (ii) describe the communications you had with Sue Roe and other persons regarding the sexual activity with Sue Roe and the reasons for the statements You made in those communications.

  John Doe   is nonetheless incorrect that this interrogatory is three separate interrogatories.   John Doe   communications with Ms. Roe and others regarding his sexual activity with Ms. Roe are "logically or factually subsumed within or necessarily related to the primary question," *Johnson*, 2024 WL 962358, at *2, |

| | | |
|---|---|---|
| | other persons regarding the sexual activity with Sue Roe and the reasons for the statements that You made in those Communications. | here: after engaging in sexual activity with Ms. Roe, what did John Doe say about the sexual activity to others, including Ms. Roe?<br><br>Furthermore, this interrogatory seeks "further factual elaboration as to [the] who, what, when, where, and how" of the events underlying Ms. Roe's allegations against John Doe including to whom he spoke about the sexual activity, what those communications concerned, and why he made the communications. *Cook v. Flight Services and Sys., Inc.*, No. 16-15759, 2018 WL 11447512, at *6 (E.D. La. Nov. 1, 2018).<br><br>The answer to this interrogatory is not found in documents produced to Jane Doe as John Doe alleges, because they do not provide information about any oral conversations that John Doe had concerning his sexual encounter with Ms. Roe; nor do they provide information about the reasons for his communications to Ms. Roe or his communications with other persons about his sexual encounter with Ms. Roe. |
| 18 | Identify the number and types of alcoholic beverages, the amount and types of Drugs or other substances (e.g., whippits) used or consumed, and the locations and the approximate times You used or consumed those drinks, Drugs, or substances on August 22 and 23, 2021. | Although John Doe claims that this interrogatory is six separate interrogatories, it is only one interrogatory because any subparts are "logically or factually subsumed within or necessarily related to the primary question," *Johnson*, 2024 WL 962358, at *2, here: to what degree was John Doe under the influence of substances on the night he engaged in sexual activity with Ms. Roe?<br><br>John Doe assertion that the interrogatory should be split into separate interrogatories based on the category of intoxicant consumed by John Doe is unfounded—whether it be alcohol, drugs, or other substances, each is necessarily related to the primary question of the degree of John Doe intoxication the evening he engaged in sexual activity with Ms. Roe. |

4

| | | |
|---|---|---|
| | | John Doe additional assertion that the interrogatory should be split into separate interrogatories on the basis that it covers separate days, August 23 and 24,[1] 2021, is similarly unfounded. These days cannot be separated as, for example, any alcohol, drugs, or other substances John Doe consumed the evening of August 23 would likely influence his degree of intoxication in the early hours of August 24. By this interrogatory, Jane Doe does not seek an accounting of the alcohol, drugs, or other substances John Doe consumed after he left Ms. Roe's home the morning of August 24.<br><br>The answer to this interrogatory is not found in documents produced to Jane Doe as John Doe alleges, because they do not provide a complete answer to this Request. For example, the Title IX investigation file provides information regarding the amount of alcohol John Doe consumed on the night of his encounter with Ms. Roe but does not provide the locations or approximate times that John Doe consumed each of those drinks; nor does it specify the type of alcohol John Doe consumed. |
| 19 | Identify all non-privileged Communications between You and other persons concerning or relating to any claim or defense in this case, including the date of the Communication, the nature and content of the Communication, where the Communication occurred, and the identity of all participants in and any witnesses to the Communication. | This interrogatory is a single interrogatory despite John Doe claim that it constitutes two separate interrogatories because communications related to any "claim" are not distinct or separate from communications related to any "defense" in this case. John Doe communications about any claims in this litigation are necessarily related to his communications about any defenses in this litigation. *Johnson*, 2024 WL 962358, at *2.<br><br>John Doe argues that Interrogatory No. 19 is unduly burdensome because it would require cataloguing "thousands of communications." R. Doc. 152 at 5–6. It is implausible that John Doe has had thousands of conversations about the claims or defenses in this case, considering that John Doe has not produced anywhere |

---

[1] Jane Doe intends to amend Interrogatory No. 18 so that the requested information pertains to August 23-24, 2021. Plaintiff's First Amended Complaint incorrectly suggests that the sexual encounter between John Doe and Ms. Roe took place later in the night on August 22, 2021. R. Doc. 23 at 5–6. Based on the Title IX investigation file, Jane Doe understands that the sexual encounter took place in the early morning hours of August 24, 2021.

| | | near that many communications to Jane Doe Regardless, Jane Doe is primarily interested in any conversations that were not documented or would not otherwise be found in John Doe document productions and is willing to accept summaries of the conversations that he had with each confidant. |
|---|---|---|
| 20 | Identify the forms of social media and methods of Communication (e.g., email, text messages, Twitter/X, Facebook, Instagram, Snapchat, and TikTok) that You used between August 2018 and present, including the phone numbers and usernames for each form of social media or Communication. | This interrogatory is a single interrogatory despite John Doe claim that it constitutes two separate interrogatories because identification of his "forms of social media" are not distinct from his "methods of communication." This analysis defies any fair reading of the interrogatory, which seeks identification of John Doe methods of communication, which in turn may include any forms of social media. |
| 21 | Identify all complaints or suggestions of sexual abuse, sexual misconduct, sexual harassment, sexual assault, or other unwanted physical contact of which You have been subject or in which You have in any way been involved, without limitation as to time period and irrespective of whether the complaint resulted in legal or administrative consequences or whether You believe that those complaints or suggestions were warranted or otherwise justified. | Although John Doe claims that this interrogatory is four separate interrogatories, it is only one interrogatory. To be clear, Jane Doe request for identification of "complaints" and "suggestions" are not separate subparts or questions, but rather constitute a single primary question: what is the universe of potential allegations related to sexual misconduct by John Doe The same is true for the portion of Jane Doe interrogatory that clarifies that the information that she seeks is identification of complaints or suggestions of sexual misconduct of which John Doe has been "subject" to or "involved" in. These subparts seek "factual elaboration as to [the] who, what, when, where, and how" of the potential allegations related to sexual misconduct by John Doe including how he was connected to the allegations. *Cook*, 2018 WL 11447512, at *6. They are thus necessarily related to one another such that a separate response to each would result in substantial overlap and frustrate the purpose of the interrogatory. *Id.*<br><br>The answer to this interrogatory is not found in documents produced to Jane Doe as they do not provide a complete answer to this Request. The Title IX investigation file does not provide information about complaints or suggestions of sexual misconduct by John Doe from persons other than Jane Doe and Ms. Roe. |

Original Filed at Docket No. 156,
Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

██████████                                                  CIVIL ACTION

**VERSUS**                                                  **NO. 24-825**

████████                                                    **SECTION: "P" (3)**

## ORDER & REASONS

Before the Court is the Motion to Modify Scheduling Order filed by Defendant, ████████ [1]

Plaintiff, ████████, opposes the motion.[2]  For the reasons that follow, the Motion is

**GRANTED**.

### I. BACKGROUND

████████ is a former student at Tulane University ("Tulane") who was expelled after

Tulane concluded that he sexually assaulted two fellow students, ████ and Sue Roe.[3]  In this

action, ████████ alleges ████ defamed him by making false reports of sexual assault to Tulane;

abused an official process by filing a petition for protection from abuse against him in Louisiana

civil court, based on the same false accusations; tortiously interfered with ████████ s contract

as a student at Tulane; and intentionally inflicted emotional distress upon ████████.[4]

████████ proceeds anonymously in a separate action involving different claims arising from

the same constellation of facts (the "Pseudonym Action").

████ now seeks to modify the Scheduling Order in this action by (1) harmonizing the

discovery deadlines with those in the Pseudonym Action and (2) moving the trial in this action

before the trial in the Pseudonym Action to avoid "unfair prejudice."[5]  The parties agree that the

---

[1] R. Doc. 114.
[2] R. Doc. 117.
[3] ████ identified the other complainant as Sue Roe in his Complaint.  *See* R. Doc. 23.
[4] *See id.*
[5] *See* R. Doc. 114 at 1-2.

discovery deadlines in the two cases should be harmonized, but █████████ opposes ████ second request.

## II.   LAW & ANALYSIS

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Courts in the Fifth Circuit consider four factors to determine whether a Rule 16(b)(4) motion should be granted: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[6]

### A.  Switching trial dates

As ████ notes, she has not missed any of the deadlines in the April 3, 2025 Scheduling Order and, because she is not requesting any deadlines be extended, a continuance is unnecessary to accommodate her requested changes to the trial dates.[7]  Thus, the Court's analysis focuses on the second and third factors to determine whether the trial in this action should take place before the trial in the Pseudonym Action.

████ argues that her proposed change to the Scheduling Order is important because, under the current order of trials, a verdict in █████████ 's favor in the Pseudonym Action would prejudice ████ at trial in this case by unfairly and incorrectly influencing the jury.[8] ████ contends that a limiting instruction could not resolve these concerns.

█████████████ responds that ████ concerns, to the extent they hold merit, can be resolved with a limiting instruction to prevent any unfair prejudice to ███.[9]  Instead, █████████ argues,

---

[6] *Lupis v. City of Tex. City*, No. 23-40445, 2024 WL 4678880, at *6 (5th Cir. Nov. 5, 2024) (quoting *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016)) (internal quotation marks omitted) (cleaned up).

[7] *See* R. Doc. 101 (Scheduling Order); *see also* R. Doc. 114-4 at 1.

[8] R. Doc. 114-4 at 3-4.

[9] R. Doc. 117 at 5-6.

2

switching the trial dates would prejudice him by further delaying his ability to obtain the injunctive relief he seeks in the Pseudonym Action.[10]

The Court finds that, in addition to the potentially uncurable prejudice ███ could suffer from a verdict in the Pseudonym Action adverse to her interests, an equally important consideration is the efficiency gained from trying this action before the Pseudonym Action.[11] Proceeding in the order proposed by ███ could narrow the disputed issues in the Pseudonym Action, preventing re-litigation of certain factual issues. This efficiency interest outweighs the minimal prejudice to ████ in delaying trial in the Pseudonym Action by a few more weeks.

### B. Harmonizing discovery deadlines

The Court finds good cause for ███ unopposed request to modify the pretrial deadlines in the Scheduling Order. Accordingly, the Scheduling Order is modified as set forth below:

- Written reports of experts, as defined by the Federal Rules of Civil Procedure 26(a)(2)(B), who may be witnesses for Plaintiffs, shall be obtained and delivered to counsel for Defendant as soon as possible, but in no event later than **DECEMBER 12, 2025.** This deadline shall also apply to all expert disclosures, as defined by the Federal Rules of Civil Procedure 26(a)(2)(C).

- Written reports of experts, as defined by the Federal Rules of Civil Procedure 26(a)(2)(B), who may be witnesses for Defendants, shall be obtained and delivered to counsel for Plaintiff as soon as possible, but in no event later than **JANUARY 26, 2026.** This deadline shall also apply to all expert disclosures, as defined by the Federal Rules of Civil Procedure 26(a)(2)(C).

- Written rebuttal reports of experts, as defined by the Federal Rules of Civil Procedure 26(a)(2)(B), who may be witnesses for Plaintiffs, shall be obtained and delivered to counsel for Defendant no later than **FEBRUARY 24, 2026.** Plaintiff is cautioned that rebuttal reports should be strictly limited to opinions in response to the Defendant's expert reports.

---

[10] *Id.* at 6.

[11] *See* FED. R. EVID. 105 ("If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

- Counsel for the parties shall file in the record and serve upon their opponents a list of all witnesses who may or will be called to testify at trial and a list of all exhibits which may or will be used at trial no later than **FEBRUARY 24, 2026.**

- Depositions for trial use shall be taken and all discovery shall be completed no later than **MARCH 19, 2026.** This case does not involve extensive documentary evidence, depositions or other discovery. No special discovery limitations beyond those established in the Federal Rules, Local Rules of this Court, or the Plan are established.[12]

### III. CONCLUSION

**IT IS ORDERED** that ▮▮▮▮ Motion to Modify the Scheduling Order (R. Doc. 114) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Scheduling Order (R. Doc. 101) is hereby modified as set forth in Section I.B.

**IT IS FURTHER ORDERED** that **trial** in this action is hereby rescheduled from July 13, 2026, to **June 22, 2026, at 9:00 a.m.** The **status conference** previously scheduled for April 8, 2026, is hereby rescheduled to **March 18, 2026, at 1:30 p.m.**, and the **pretrial conference** previously scheduled for July 1, 2026, is hereby rescheduled to **June 10, 2026, at 9:30 a.m.** The corresponding dispositive motion, motion *in limine*, and all other pretrial deadlines tied to those dates that have not yet expired are adjusted accordingly.[13]

New Orleans, Louisiana, this 10th day of July 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[12] ▮▮▮ Motion also suggests May 2, 2025, as the deadline for amendments to pleadings. *See* R. Doc. 114-2. That is the same deadline included in the April 3, 2025 Scheduling Order. R. Doc. 101.
[13] *See* R. Doc. 101-1.

4

Original Filed at Docket No. 157,
Sealed by Court Order

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe | Civil Action No. 2:24-CV-00825 |
| **Plaintiff,** | Section: P(3) |
| **v.** | **Judge Darrel James Papillion** |
| Jane Doe **,** | |
| **Defendant.** | |

## *EX PARTE* MOTION TO ENROLL ADDITIONAL COUNSEL OF RECORD

Pursuant to Local Rule 83.2.12(A), the plaintiff,        John Doe        , respectfully moves the Court to permit the enrollment of Allena McCain (La. Bar. No. 38830) of Marcelle Robertson Mestayer LLC as additional counsel of record on plaintiffs' behalf. All of Plaintiff's current counsel will remain as counsel of record.

WHEREFORE,        John Doe        , respectfully requests that the Court grant this motion and permit the enrollment of additional counsel as reflected in the proposed order.

Respectfully submitted,

*/s/ Alex T. Robertson*
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar. No. 37230)
**MARCELLE ROBERTSON MESTAYER LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax:    (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe ,<br><br>**Plaintiff,**<br><br>v.<br><br>Jane Doe<br><br>**Defendant.** | **Civil Action No. 2:24-CV-00825**<br>**Section: P(3)**<br><br>**Judge Darrel James Papillion** |

## O R D E R

Considering the foregoing motion to enroll additional counsel of record, which was filed by plaintiff, John Doe ;

IT IS HEREBY ORDERED that the motion is GRANTED and Allena McCain (La. Bar. No. 38830) of Marcelle Robertson Mestayer LLC, is hereby enrolled as additional counsel of record on behalf of the plaintiff, John Doe

New Orleans, Louisiana, this _____ day of July, 2025.

_____
HON. DARREL PAPILLION
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

██████ ,

**Plaintiff,**

v.

██████ ,

**Defendant.**

**CIVIL ACTION**

**NO. 24-825**

**SECTION: "P" (3)**

| Original Filed at Docket No. 158, Sealed by Court Order |
| --- |

**O R D E R**

Considering the foregoing motion to enroll additional counsel of record, which was filed by plaintiff, ██████ (R. Doc. 157);

IT IS HEREBY ORDERED that the motion is GRANTED and Allena McCain (La. Bar. No. 38830) of Marcelle Robertson Mestayer LLC, is hereby enrolled as additional counsel of record on behalf of the plaintiff, ██████ .

New Orleans, Louisiana, this 15th day of July 2025.

_____

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

MINUTE ENTRY
DOSSIER, M.J.
July 15, 2025
MJSTAR: 00:35

Original Filed at Docket No. 159,

Sealed by Court Order

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe | CIVIL ACTION |
| VERSUS | NO. 24-825 |
| Jane Doe | SECTION: "P" (3) |

## **ORAL ARGUMENT**

Courtroom Deputy: Reianda Rousseau
Court Reporter:     Karen Ibos

APPEARANCES:     Allena McCain, Counsel for Plaintiff
Jared Davidson, Caroline Murley, and Zora Franicevic, Counsel for
Defendant

MOTION to Compel (137)

Case called at 2:03 p.m.
All present and ready.
Argument by counsel for the parties.
MOTION to Compel (137) GRANTED for reasons stated on the record.
Order to follow.
Court adjourned at 2:38 p.m.

Original Filed at Docket No. 160,
Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

████████                           CIVIL ACTION

**VERSUS**                         NO.  24-825

████████                           SECTION:  "P" (3)

## **ORDER**

Considering the Motion to Compel Responses to Written Discovery Requests

(R. Doc. 137),

**IT IS ORDERED** that Defendant's Motion to Compel (R. Doc. 137) is

**GRANTED** for reasons stated on the record. Plaintiff is to provide supplemental

discovery responses consistent with the Court's ruling within 30 days.

New Orleans, Louisiana, this 15th day of July, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

Original Filed at Docket No. 161,

Sealed by Court Order

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

John Doe      *      Docket 24-CV-825

     *

versus      *      Section P

     *

Jane Doe      *      July 15, 2025

     *

* * * * * * * * * * * * * * * * *

ORAL ARGUMENT BEFORE
THE HONORABLE EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

<u>Appearances</u>:

For the Plaintiff:      Marcelle Robertson Mestayer, LLC
     BY:  ALLENA MCCAIN, ESQ.
     650 Poydras Street, Suite 2720
     New Orleans, Louisiana 70130

For the Defendant:      Taylor Wellons Politz & Duhe, APLC
     BY:  JARED A. DAVIDSON, ESQ.
         CAROLINE M. MURLEY, ESQ.
         ZORA F. FRANICEVIC, ESQ.
     1555 Poydras Street, Suite 2000
     New Orleans, Louisiana 70112

Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
     500 Poydras Street, HB-275
     New Orleans, Louisiana 70130
     (504) 589-7778

Proceedings recorded by mechanical stenography using
computer-aided transcription software.

**I N D E X**

|                                    | PAGE |
|------------------------------------|------|
| Oral Argument                      |      |
| Zora F. Franicevic, Esq.           | 4    |
| Allena McCain, Esq.                | 12   |
| Zora F. Franicevic, Esq.           | 19   |
| James E. Davidson, Esq.            | 20   |
| Allena McCain, Esq.                | 21   |

**PROCEEDINGS**

**(July 15, 2025)**

(Call to Order of the Court.)

**THE COURT:** Good afternoon everyone.  Please be seated.

**THE DEPUTY CLERK:** Now calling Civil Action 24-825, John Doe *v.* Jane Doe  Counsel, please make your appearances for the record.

**MR. DAVIDSON:** Good afternoon, Your Honor. Jared Davidson, Caroline Murley, and Zora Franicevic for the defendant, Jane Doe

**THE COURT:** Good afternoon, Counsel.  Please feel free to take a seat at counsel's table.

**MR. DAVIDSON:** Thank you.

**MS. MCCAIN:** Good afternoon.  Allena McCain on behalf of plaintiff, John Doe

Your Honor, when I checked in, the docket didn't have my updated information, but my motion to enroll was granted just a few hours ago.

**THE COURT:** So I have heard.  You are late-breaking news.  Welcome to your formal enrollment to the case.

**MS. MCCAIN:** Thank you.

**THE COURT:** We are here, of course, on defendant's motion to compel.  With the parties being assured that I have carefully read the briefing, including the attachments, I would

like to hear argument from defense counsel.

**MR. DAVIDSON:** Your Honor, according to the order, we are going to let Zora go ahead and take the lead.

**THE COURT:** Excellent.

**MS. FRANICEVIC:** Are you ready, Your Honor?

**THE COURT:** Yes, Counsel.

**MS. FRANICEVIC:** Per our motion and our reply brief, the issues before the Court are three distinct discovery issues that we have been facing.

The first one concerns a number of interrogatories propounded on plaintiff and the plaintiff's allegation that we have exceeded our allotment of our 25 interrogatories and that we have in fact exceeded an alleged 50 separate interrogatories in our 21 that we propounded. This is contrary to the law, which holds that subparts of an interrogatory that are factually or logically subsumed within or necessarily related to the primary question do not consist of separate interrogatories.

The second issue is of the 13 interrogatories that the plaintiff did respond to, three of them are inadequate and do not provide complete answers.

The third issue is concerning plaintiff's responses to our requests for production and how plaintiff failed to specify whether they are withholding any responsive materials or, if not, whether -- on the basis that they, in

their responses, said that they would be providing only nonprivileged relevant documents.

I will get into the first issue, which is the number of interrogatories. The fact that plaintiff has alleged that there are a total of 50 separate interrogatories in our first 21 interrogatories is an unreasonable interpretation of the law here. There are a few different issues with the analysis here. To streamline this for the Court, I think many of the interrogatories can be grouped into some of these issues with the analysis by plaintiff.

The first group concerns John Doe misapplication of when a subpart is separate. The rule states that a subpart is separate from the primary interrogatory when it can be answered fully and completely without answering the secondary components of the interrogatory.

John Doe flips this analysis and argues that the subparts can be answered without answering the first part. That's not what the rule says. This applies to Interrogatories No. 2, No. 4, and No. 5.

For instance, Interrogatory No. 2 requests that John Doe state the bases for his claim of defamation against Jane Doe including identification of every false or defamatory statement. The correct inquiry is whether John Doe can state the bases for his defamation claim without identifying every alleged defamatory statement, and it

is clear he cannot do so.  What makes up the basis of his defamation claim in part is the alleged defamatory false statements that have been made allegedly by my client.  That is the same for Interrogatories No. 4 and No. 5 which ask about abuse of process and civil conspiracy claims.  For each of those, they cannot be answered without stating the evidence supporting the claims.

The second group is related to      John Doe failing to appreciate that a subpart is part of the primary question if it asks for further factual elaboration.  As indicated in the case *Cook*, this applies to many interrogatories.  While we acknowledge that the rule on its face says that if you answer the first interrogatory fully and completely without answering the subparts, then those may stand on their own, in practice there are a few other considerations.

As held in the case law here in *Cook*, in *Calogero*, and *in Yeager*, these interrogatories, while the subparts may in fact be answered separately, they should be considered a single interrogatory when they seek further factual elaboration or are necessarily factually related to one another or seek further elaboration.  So the issue is that they are related factually to the same thing.

**THE COURT:**  Ms. Franicevic, I would like to focus on Interrogatories No. 7 and No. 17.  There may have been a concession on No. 7.  I can't quite recall.  Can we discuss

Interrogatories No. 7 and No. 17.

MS. FRANICEVIC: Yes. Interrogatory No. 7, that seeks identification of therapy sought for any mental health conditions or emotional distress as well as any resulting mental health diagnoses or medications, and then also any other persons that he has confided in about his mental health or emotional distress and the contents of those communications. During the meet-and-confer process, we offered to treat this interrogatory as two separate interrogatories.

THE COURT: Oh, thank you for refreshing me on that one. We can proceed to No. 17, then.

MS. FRANICEVIC: Okay. Then No. 17, we also offered to treat this as two separate interrogatories. These are the only two in which we saw an argument and in which we made that offer. No. 17, we made this agreement in our reply.

THE COURT: All right. I'll note that on No. 17 I saw three discrete subparts to it. That said, given my counting, the issue might be academic at the end of the day. So I would welcome you to address the other issues in the motion. Put differently, you are ahead on the counting of interrogatories. I want to hear your argument on the other issues.

MS. FRANICEVIC: Okay. Well, I will turn to the substantive responses to the three interrogatories that we are taking issue with, which is Interrogatory No. 7, No. 8, and

No. 12.

As we just discussed, Interrogatory No. 7 asks about therapy and other people he may have confided in about his emotional distress. In the response the plaintiff, we consider, adequately answered the first interrogatory in which we split these up. The second interrogatory asks about communications in which he confided in -- people who he confided in, those conversations about his emotional distress, and the contents of those conversations.

In his response he said that he confided in his parents but did not provide the contents of those conversations. He then referred us to his initial disclosures, which list 13 individuals who have general information about the effects of Jane Doe claims on him, six of which, of those 13, have specific information about the effects on his mental state.

They referred us to the initial disclosures, but it's not clear whether these people who have information about the mental state, if he actually confided in them about his emotional distress, if that's the same thing as mental state here, and if they actually had conversations about that or if they just know generally from looking at him or from seeing him. Again, they didn't provide the contents or the substance of the communications.

In terms of any burden argument there, we are

not asking for a transcript of any of these conversations. We are just asking for a high-level summary, subject matter that was discussed.

The second substantive interrogatory is Interrogatory No. 8 and that is concerning the damages sought, a breakdown of the damages sought and the bases for those damages.

He again referred us to his initial disclosures. The initial disclosures provide a high-level, top-line alleged damage assertion of $2 million and then five categories of damages claims. He did not provide to us the alleged breakdown of those damages according to each category.

We understand that that might not be available to him at this point, but what we are saying is he should have specified in his response to the interrogatory that he did not have that information on hand. He did not. I will note for the Court that two of those five categories concern attorneys' fees from proceedings that ended over three years ago. That information should be at his disposal right now. He knows how much he paid his attorneys three years ago. He should have provided that in his initial response when it was due.

The last issue for the substantive responses to the interrogatories is Interrogatory No. 12. Interrogatory No. 12 concerns income from sources other than jobs since January 2022, including those sources of that income. In

response to this interrogatory, the plaintiff said that he would not respond, and he asserted relevance and burden objections.

The interrogatory is relevant because he is asserting economic damages here. His nonemployment income, to the extent it exists -- which we don't even know if it exists -- would be relevant here. It would show or negate whether or not he was facing financial hardship/financial losses as a result of Jane Doe allegations. If he received financial support from his parents, from friends, or even from a GoFundMe, for example, that would be relevant to whether or not he was facing financial hardship in the aftermath of these allegations, or instead maybe it's possible he benefited from it. It's relevant.

In terms of the burden argument, it does seek a monthly accounting of this nonemployment income since January 2022. We don't believe it is burdensome to do that, especially if it's only one source of nonemployment income; for example, his parents. But even assuming it is, if there are multiple sources of this nonemployment income and they truly believe that it would be burdensome to lay that out to us in an interrogatory response, we are willing to accept an alternative responsive answer which could take the form of an annual accounting.

THE COURT: I see Interrogatory No. 12 as one of the

most challenging in terms of establishing relevance.  From the way I read it and my understanding of the argument, there's two potential arguments for relevance.

One is let's say there's a completely hypothetical gift of $100,000 from a grandparent.  Let's just imagine this part.  I don't see how that would be relevant to, let's say, a lost wages claim.  The second basis for relevance would be, I suppose, if you are alleging some sort of emotional distress based on financial hardship.  Could you connect the dots for me, if we use the hypothetical $100,000 gift, to where it would be relevant.

**MS. FRANICEVIC:**  In his economic damages, he is asserting economic damages in the form of lost career trajectory and, I think, lost damages in the form of, for example, graduate school experience or his ability to pursue graduate school.  If he had received $100,000 as a gift, but he is at the same time alleging that he wasn't able to go to graduate school because he was suffering from emotional distress and wasn't able to secure a scholarship, for example, but he has that at his disposal already, he may very well have been able to pursue that graduate school experience.

**THE COURT:**  Thank you, Counsel.  Unless you have anything further, I would like to hear from Ms. McCain.

**MS. FRANICEVIC:**  The only issue that we haven't discussed is the request for production issue in detail, but if

Your Honor is fine with that issue, we can turn it over.

**THE COURT:** I can go ahead and preview my ruling, which I think is rather bread and butter on that one.

With respect to the argument that the request for production did not disclose whether any responsive nonprivileged documents were being withheld, I'm satisfied by counsel's representation and briefing that no documents are being withheld. To ensure that formalities are met, I will require that the responses be supplemented to make that clear, but 30 days is fine. There's no real urgency on that one.

**MS. FRANICEVIC:** Okay. That sounds good. Thank you.

**THE COURT:** Thank you, Counsel.

Ms. McCain.

**MS. MCCAIN:** Just a moment, Your Honor. I'm making a note of your ruling.

**THE COURT:** I appreciate that. I will advise counsel for both sides I do anticipate that my ruling from the bench will be my sole ruling in this case. I will give you an opportunity at the end to request clarification, if needed, but it is a good idea to be taking notes.

**MS. MCCAIN:** Good afternoon, Your Honor.

**THE COURT:** Good afternoon.

**MS. MCCAIN:** Your Honor, defendant's motion to compel discovery responses should be denied in its entirety. As we set forth in our briefing, the interrogatories are overbroad

and incorporate up to 50 interrogatories disguised within 21 numbered questions.  This isn't an oversight or a good faith belief that the subparts are subsumed within the primary inquiry.  In fact, opposing counsel has acknowledged that some of those interrogatories were in fact multiple interrogatories and have agreed to regard them as such.

On that note, I want to direct Your Honor's attention to Interrogatory No. 7, which was discussed in opposing counsel's argument.  Specifically, opposing counsel says that the subpart should be considered part of the same interrogatory when they relate to further factual corroboration or necessary factual relatedness to the primary inquiry.

In record document 152-1, which is Exhibit A to our opposition brief, we wrote down our position on how many interrogatories were contained within each of the 21 numbered interrogatories, and   John Doe   believes that this is five interrogatories.  Opposing counsel has agreed to regard this as two, and Your Honor will certainly rule as to your own interpretation.

I think it's important to look at this specific one as an example because it demonstrates the pervasive issues throughout the other interrogatories.  Specifically, Interrogatory No. 7, according to the defendant, relates to therapy and mental health treatment and discussions of that nature with nontherapy providers or their acquaintances.

If, in fact, Interrogatory No. 7 relates to therapy as the primary inquiry -- as we believe it should upon a review of the actual drafting, which Interrogatory No. 7 begins: "Identify any therapy that you have sought for any mental health conditions or emotional distress that you have experienced." Your Honor, if that is the primary inquiry, then this interrogatory is in fact five separate interrogatories.

This interrogatory seeks information not only about therapy and treatment sought for mental health diagnoses, but it seeks information about actual diagnoses received, the treatment and medications for those diagnoses, and other than therapists people with whom John Doe has confided about these issues. Finally, the fifth one is the content of those communications.

These are separate. They are all different. If you look carefully at the way these interrogatories are drafted and the intent behind them, you can see that these interrogatories are often much more broad than a single inquiry into related factual information.

With respect to Interrogatory No. 17, which was another one that Your Honor brought attention to, we agree with Your Honor's comment that this was three discrete issues. As you can see on page 7 of doc. 152-1, we outline what those issues are. These are not simple issues that opposing counsel has found and attempted to negotiate with us. In fact, they

are only concessions that were made in response to this dispute that has been brought before the Court.

We note that, as demonstrated in our briefing, we offered to continue negotiations and to try to work this out out of court, and that suggestion was flatly rejected and followed promptly by this motion.

We will refer Your Honor to the rest of our chart that we produced, which I take you at your word that you have reviewed --

**THE COURT:** I have my annotated version here.

**MS. MCCAIN:** -- as to the number of interrogatories issue.

I would just conclude that particular section by noting a distinction between "factually related information" and "factually subsumed information." Both of those terms were discussed in opposing counsel's argument. I would just point out that all information in this case is factually related. It's all factually related to the claims that were brought by my client. Factually subsumed are the who, what, when, where, and why related to the actual primary inquiry, and we demonstrated that through our briefing. Those semantic discussions are of critical importance here when we are talking about discovery requests that are limited in number.

With respect to the defendant's alternative request for leave to serve additional interrogatories, we note

this is an issue where the opposing counsel has requested forgiveness and not permission. Local Rule 33.1 specifically requires that a party seek permission, not forgiveness, for exceeding the rule. The opposing party and her counsel have acknowledged that their initial calculation was incorrect, and we believe that it's even more incorrect than they agree.

As to the incomplete responses, with respect to Interrogatory No. 7, we have already discussed that that's several interrogatories, and we have answered the primary inquiry. Moreover, the information sought was also included in initial disclosures.

As to Request No. 8 as to the damages calculation, opposing counsel argued that John Doe should have specified what information was not on hand in order to outline the damages. Again, we refer to our initial disclosures. We have done our due diligence in disclosing what we can at this stage of the litigation. Pursuant to the rules, those answers will be supplemented as required by the rules.

**THE COURT:** Are you willing to supplement that answer to identify any attorneys' fees and expenses incurred in connection with the TRO and the administrative proceeding?

**MS. MCCAIN:** Your Honor, I believe that would be reasonable, and I don't think we would have an issue with that. We would request, for any supplementation or additional responses, that we would get 30 days, which I believe is

reasonable and it sounds like was your inclination already.  We would just request 30 days to get all the information together.

THE COURT:  Did you want to discuss Interrogatory No. 12?

MS. MCCAIN:  Yes, Your Honor.  We agree with you that this is a difficult issue in terms of outlining the relevance.  Specifically, I will turn to Your Honor's hypothetical of a gift of $100,000.

Your Honor, our client is seeking economic damages.  We are not alleging economic hardship.  I think that's distinct.  The damages that are associated with the inability to obtain additional education, the inability to be admitted to a graduate school, the inability emotionally to proceed with education and career are different damages than economic hardship that might be incurred had someone not had a $100,000 gift from their grandfather.

The economic damages are demonstrated through what we have already provided, which are the tax returns and the supporting documents, but external gifts or income sources that are not related to employment or education are not relevant to economic damages that are legally acknowledged and legally tenable under the claims that my client has brought.  We believe that that information is burdensome, harassing, and frankly irrelevant.

Finally, I'll just reiterate on the record that

we are not withholding any nonprivileged documents. We will produce a privilege log once production is complete with anything that is attorney-client privilege from before the date of filing. Pursuant to Your Honor's discussion already, we will supplement our responses to indicate that no such documents have been withheld.

If Your Honor has any further more detailed questions, I would be happy to field them, but I have laid out the primary gist of my argument along with the briefing that we submitted.

THE COURT: Thank you, Counsel.

With respect to Interrogatory No. 15, which goes to the sexual activity from February 2 to 3, I note that there's an objection as to relevance noted in your chart. Given that there hasn't been a motion to compel specifically as to that objection, I'm not going to reach it unless the parties think I need to today, but I will let opposing counsel speak to that as well. Again, for purposes of today's hearing, I'm focused on the specific interrogatories we discussed in terms of substantive objections, so I didn't understand the parties to have briefed relevance as to No. 15. I'll hear from opposing counsel on that in a moment, I'm sure.

MS. MCCAIN: I'll defer to opposing counsel.

THE COURT: I'll give you a chance to reply should the issue come up.

MS. MCCAIN: Thank you, Your Honor.

MS. FRANICEVIC: Your Honor, I will address No. 15 right now just since it's top of mind.

So No. 15 asks about sexual activity in which the plaintiff engaged on February 2 and 3, including sexual activity with defendant, Jane Doe The relevance objection by plaintiff to that was for activity with other people. In our reply and in our attachment to our reply, we explain that we are only seeking information about the events leading up to the sexual activity with Jane Doe which is the core issue of this litigation.

THE COURT: Understood. So I understand that, in effect, that one has been modified to extend only as to the named party.

MS. FRANICEVIC: Yes.

THE COURT: Thank you, Counsel.

MS. FRANICEVIC: With regards to Interrogatory No. 7, we consider that two interrogatories. I'll take the first one that we consider to be a single interrogatory.

THE COURT: I actually consider No. 7 to be two as well. I will explain my reasoning when I give my reasons. I'm persuaded on that one.

MS. FRANICEVIC: Okay. Then on Interrogatory No. 17, Interrogatory No. 17 we had offered to treat as two. We consider the first to be describe the events underlying the

allegations made by Sue Roe, including the sexual activity in which was engaged, and the second to be describe the communications that you engaged in with Sue Roe and others following the sexual activity and the reasons for those statements.

What we are looking for in this interrogatory are communications with other people, including Sue Roe, about this sexual activity with Sue Roe. That's just seeking further factual elaboration as to the who that we are looking for. That's No. 17. I think that's it. Thank you, Your Honor.

**THE COURT:** Thank you, Counsel.

**MR. DAVIDSON:** Per your order, Your Honor, you said that the supervising attorney could just clear up anything if they needed to. May I proceed in that manner?

**THE COURT:** Yes.

**MR. DAVIDSON:** Your Honor, the only thing I wanted to do is just respond to your question of a $100,000 gift. I don't think we are talking about a $100,000 gift here. We are talking about what counsel just said, the inability to obtain employment. That's what counsel just said, the inability to obtain employment. That means they first need to convince a jury that they were going to seek employment, Your Honor.

So, therefore, if there is a trust fund or some sort of wages that he was receiving, a jury may say, "Well, wait a minute. He wasn't ever really planning on going to find

a job.  He wasn't ever planning on going to do this."  That is discoverable information.  Whether it's admissible, Your Honor, we are not even close to there yet, but we are at least allowed to discover whether this gentleman intended to actually go and obtain employment, whether he intended to obtain all of the things that counsel just said.

They are just saying, "You don't get to know about a $100,000 gift."  I would agree.  A $100,000 gift is not what we are talking about here.  We are trying to say is there steady income that he receives every year that we are allowed to discover to determine whether all of these claims of I was going to go do this, I was going to go do that -- well, no, you weren't because we can challenge that credibility based on this discovery.  Again, whether it's admissible is for another day, but we are allowed to discover that information, Your Honor.  That's the only point I would like to add.

THE COURT:  All right.  I will allow Ms. McCain to respond to it since that was new argument.

MS. MCCAIN:  Your Honor, I'll be brief.  The issue is that they want to tell a jury that this particular plaintiff has suffered no injury because he comes from a wealthy family.  That should not be admissible.  It's irrelevant.  It is an attempt to confuse and mislead the jury.

What's relevant is the impact that the defendant's actions had on          John Doe          opportunities, on

his employment, on his career.  Those are the damages that can be discovered and are discoverable and are relevant in this case.

The external issues of whether or not John Doe was going to seek such employment or whether or not he had that are already demonstrated by other documents that have been produced relating to his intent to pursue further education, his intent and his attempts to obtain employment.  All of that information has already been produced and discovered and opposing counsel has that in his possession.  This is a red herring and is an intent to import a sideshow about the plaintiff or his family's wealth.  Thank you.

**THE COURT:**  Thank you, Counsel.

On this case, I again commend the parties on their briefing and argument.  It was very well briefed and thoroughly argued.  For the following reasons, I am granting the motion to compel.  I note although I'm broadly granting it, certain points have essentially been made moot or negotiated with counsel.

Beginning with the counting of the interrogatories, I conclude that the interrogatories propounded so far, although numbered 21, actually constitute 24 different interrogatories.  I'm going to focus on No. 7 since that was the subject of some argument, but I will note that I went through a similar analysis with respect to each one.

Read for its substance, Interrogatory No. 7 seeks information relative to mental health treatment. It essentially seeks the who, what, where, when, and why; that is, when the therapy occurred, who was seen, any medications, any diagnosis. So although perhaps drafted in a convoluted way that opened up the door to the objection, I think the substance of that interrogatory stands alone in that first part.

Now, the separate questions as to nonmental health professionals who were consulted, that I read as a second interrogatory. So in responding to Interrogatory No. 7 -- and this dovetails with my ruling on the merits -- first, No. 7 counts as two interrogatories.

Second, in terms of identifying other persons in whom the plaintiff confided and the content of the communications, certainly the plaintiff is not required to remember with precise detail an exact transcript, but to the extent that he recalls confiding in particular individuals -- hypothetically, a certain friend -- those details need to be filled in with respect to a supplemental interrogatory response.

Now, the other interrogatory that I counted as more than one goes to Interrogatory No. 17. I agree with the plaintiff that that is in fact three distinct interrogatories. For brevity purposes, I won't belabor the point. I'll only say that I agree with plaintiff's characterization of that one as

involving three.

With that counting and having carefully reviewed the others subject to the distinct subpart analysis, we have plaintiff thus far has been subject to 24 interrogatories. Now, although it's not necessary, in the alternative, should there be some room for a difference of opinion of has it been 24 or 26, I find that there's good cause to grant leave for the one additional interrogatory remaining. I will say that I undertook an exhaustive analysis of each one to reach that conclusion.

Now, as for the requests for production, I formally repeat my prior ruling that, yes, I'm satisfied by plaintiff counsel's representation that no nonprivileged responsive documents are being withheld. The discovery responses just need to be updated within 30 days to reflect that. I'm going to give the same amount of time as to the substantive supplementation of interrogatory responses.

Now, going beyond the counting number, as alluded to a moment ago, the objection to Interrogatory No. 7 is overruled. Of course, if the plaintiff doesn't recall particulars, he can state just that. Interrogatory No. 7, which again I have counted as two interrogatories, needs to be answered in full.

As for Interrogatory No. 8, as touched upon with counsel, within 30 days the supplemental response should

identify the information as to the attorneys' fees and expenses incurred in the TRO and administrative proceedings. I know that both parties will continue to supplement their discovery responses as supplementation becomes appropriate.

Finally, as to Interrogatory No. 12, this to me poses the closest call. My role today is not to apply a balancing test under Rule 403, but rather to consider discoverability in the first instance.

I recognize the potential prejudice of an argument that somehow plaintiff has not been harmed because he is from a well-to-do family, but at this stage I find that other income is discoverable. While plaintiff's counsel in good faith might question whether it really is persuasive at all in impeaching plaintiff's statements as to his potential goals, at this stage that information is discoverable. Now, should there be some particular concerns as to confidentiality or sensitivity, I'm sure the parties can work out something through a protective order or otherwise to address that.

To reiterate, I'm granting the motion. Plaintiff has 30 days to supplement his request for production -- and that's just to make clear that no responsive documents are being withheld -- and also to supplement his responses to the interrogatories to reflect that at this point the defendant has not exceeded the cap, we are only at 24, and in particular to respond in substance to No. 7, No. 8, and

No. 12.

So I assured counsel, given that I'm ruling from the bench, I would give an opportunity for clarification. Let me first ask from plaintiff's counsel, any clarification needed?

**MS. MCCAIN:** No, Your Honor.

**THE COURT:** On behalf of defendant?

**MS. FRANICEVIC:** No, Your Honor.

**MR. DAVIDSON:** The only thing, are we doing the order or are you doing the order?

**THE COURT:** The order that I issue will say that the motion is granted for the reasons stated on the record, but I'm not yet adopting the state court practice of requesting a proposed judgment.

**MR. DAVIDSON:** Oh, no, I'm sorry.

**THE COURT:** I've considered it, but not today.

**MR. DAVIDSON:** Sorry, Your Honor.

**THE COURT:** As you all work through this, should there be some sort of difference of opinion as to what was said, you can also request a status conference with me, and I'm happy to provide any further clarification. Going forward, as at least some counsel know, I'm also very available for status conferences by telephone should other discovery issues arise in the future.

So with that, as I said, the case was well

briefed and well argued, and those are my reasons.  The order will reflect that the motion is granted.  I can't recall whether it requested fees and costs, but I'm denying that request if it was made.

          **MR. DAVIDSON:**  Thank you, Your Honor.

          **MS. FRANICEVIC:**  Thank you.

          **MS. MCCAIN:**  Thank you.

          **THE COURT:**  Thank you, Counsel.

                              * * *

                         **CERTIFICATE**

          I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled matter.


                                   *s/ Toni Doyle Tusa*
                                   Toni Doyle Tusa, CCR, FCRR
                                   Official Court Reporter

Original Filed at Docket No. 163,

Sealed by Court Order

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| Jane Doe , **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## DEFENDANT S UNOPPOSED MOTION TO
## SEAL SUBPOENA *DUCES TECUM*

**NOW INTO COURT** comes Defendant Jane Doe , who seeks an Order from this Court

sealing the subpoena *d es te* and the attachments thereto filed into the record on September

25, 2025 Rec. Doc. 162 162-1 162-2 . For the reasons set forth in the accompanying

Memorandum in Support, the unredacted subpoena *d es te* was inadvertently filed into the public

docket of this litigation and contains references to information the parties have previously agreed to keep

confidential in earlier stipulations entered into in this litigation. Jane Doe respectfully requests that this

Court enter the proposed order included herewith. Plaintiff does not oppose this motion.

**WHEREFORE**, Defendant prays for an Order from this Court sealing the subpoena *d es*

*te* and attachments thereto.

Respectfully Submitted,

/s/    Jared A Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

 and

Neil K. Roman (admitted  ro   a  vi  e)
Komal Shah (admitted   ro   a  vi  e)
Shanelle Van (admitted  ro   a  vi  e)
Zora F. Franicevic* (admitted  ro   a  vi  e)
Ashton E. Woods (admitted  ro   a  vi  e)
Destinee Haller* (admitted  ro   a  vi  e)
Christina Coleburn (admitted  ro   a  vi  e)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


Attorne s  or De endant Jane Doe

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on the 26th day of September, 2025.

/s/ *Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| Jane Doe | **JUDGE DARREL JAMES PAPILLION** |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

**DEFENDANT S MEMORANDUM IN SUPPORT**
**OF UNOPPOSED MOTION TO SEAL SU POENA E TE M**

Defendant Jane Doe respectfully moves this Court to seal the Subpoena *D ces ec* filed into the record on September 25, 2025 Rec. Doc. 162; 162-1; 162-2 including all exhibits attached thereto. The subpoena was inadvertently filed into the record with unredacted references to a separate litigation in which Plaintiff John Doe is proceeding under a pseudonym ("Pseudonymous Litigation") and information that Plaintiff has designated as "confidential" pursuant to the Joint Consent Protective Order. Rec. Doc. 131, 132 . Plaintiff does not oppose this motion.

When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a case outweigh the presumption in favor of the public's common-law right of access to judicial records. *i on v. arner Co nications*, 435 U.S. 589, 597 98 (1978). To determine whether a judicial record should be sealed, the Court "must undertake a case-by-case, document-by-document, line-by-line balancing of the public s common law right of access against the interests favoring nondisclosure." *ealed Applicant v. ealed Appellee*, No. 22-50707, 2024 WL 980494, at *2 (5th Cir. Mar. 7, 2024). The duty to balance interests and carefully review

a sealing request applies even when the parties jointly desire that the matter should be sealed. *C. . v. Defendant*, No. 2:24-CV-01615, 2024 WL 4940551, at *1 (W.D. La. Nov. 26, 2024).

Jane Doe agreed in a stipulation entered by the Court not to refer to the Pseudonymous Litigation by name or case number, Rec. Doc. 102, 108, and agreed in a Joint Consent Protective Order entered by the Court to redact information designated as "confidential" by the parties, Rec. Doc. 131, 132. Jane Doe recognizes that under Local Rule 5.6(d), "reference to a stipulation or protective order is not sufficient to establish the necessity of sealing any document," but nonetheless seeks this sealing to honor her obligations under her agreements with Plaintiff.

Jane Doe requests that the Court exercise its supervisory power to seal the unredacted subpoena *d ces tec* inadvertently filed into the record rather than provided to the clerk's office for processing. Now that the subpoena is part of the record, it cannot be withdrawn and simply presented to the Clerk's Office for handling. Accordingly, to remedy the inadvertent disclosure of information all parties have agreed shall remain confidential in this litigation, Jane Doe has moved for redaction of the subpoena and its attachments in full. While Jane Doe recognizes the right of the public to access materials filed with the Court, that right is not improperly abridged by Ms. Jane Doe request as there is no requirement for a subpoena to be filed into the public record of the court's docket and available for the public to access.

Jane Doe seeks to have the subpoena *d ces tec* and attachments thereto maintained under seal so long as the agreement not to refer to the Pseudonymous Litigation entered by the Court, Rec. Doc. 102, 108, and the Joint Consent Protective Order governing confidential information entered by the Rec. Doc. 131, 132, remain in effect.

For the foregoing reasons, Jane Doe requests that the Court grant her motion to seal.

Respectfully Submitted,


/s/    Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee Haller* (admitted *pro hac vice*)
Christina Coleburn (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel:  (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

3

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on all counsel of record on this 26th day of September, 2025.

*/s/ Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe    **,** | **CIVIL ACTION NO. 2:24-CV-00825** |
|       **Plaintiff,** | |
| | **SECTION: P (3)** |
|    **v.** | |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | |
|       **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

<u>**ORDER**</u>

Considering the preceding Motion to Seal filed by Defendant Jane Doe ;

This Court finds that good cause e ists and it is appropriate to seal the unredacted subpoena

*d*            and the e hibits attached thereto, filed by Jane Doe on September 25, 2025  Rec Doc.

162; 162-1; 162-2 .  When appropriate, courts may order that case documents be filed under seal

if the interests favoring nondisclosure in a particular case outweigh the presumption in favor of

the public's common-law right of access to judicial records.                    *r  r C*                ,

435 U.S. 589, 597  98 (1978).

In light of the stipulation entered by the Court in which the parties agreed not to refer to

the Pseudonymous Litigation by name or case number and the Joint/Consent Protective Order

entered by the Court in which the parties agreed to redact certain information designated as

confidential that is filed to the public docket,

**IT IS ORDERED** that Defendant  Jane Doe   motion is hereby **GRANTED** and the Rec.

Doc. 162; 162-1; 162-2 shall be sealed.

New Orleans, Louisiana, this _____ day of _____, 2025.

_____
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 164,
Sealed by Court Order

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| ████ , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| ████ , **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
|  | **MAG. JUDGE EVA J. DOSSIER** |

## ORDER

Considering the preceding Motion to Seal filed by Defendant ████ (R. Doc. 163);

This Court finds that good cause e ists and it is appropriate to seal the unredacted subpoena *d ces tec* and the e hibits attached thereto, filed by ████ on September 25, 2025  Rec Doc. 162; 162-1; 162-2 . When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a particular case outweigh the presumption in favor of the public's common-law right of access to judicial records. *i on v. arner Co nications*, 435 U.S. 589, 597 98 (1978).

In light of the stipulation entered by the Court in which the parties agreed not to refer to the Pseudonymous Litigation by name or case number and the Joint/Consent Protective Order entered by the Court in which the parties agreed to redact certain information designated as confidential that is filed to the public docket,

**IT IS ORDERED** that Defendant ████ motion is hereby **GRANTED** and the Rec. Docs. 162; 162-1; and 162-2 shall be **SEALED**.

New Orleans, Louisiana, this 29th day of September 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

MINUTE ENTRY
DOSSIER, M.J.
October 23, 2025[1]

| Original Filed at Docket No. 166, |
| Sealed by Court Order |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

████████████████          CIVIL ACTION

VERSUS                    NO.  24-825

███████████               SECTION: "P" (3)

### ORDER

PRESENT FOR:

    *Plaintiff*: Kara Gorycki, Alex Tyler Robertson,

    *Defendant*: Jared A. Davidson, Caroline M. Murley, Komal Shah

The parties agreed that counsel in Case No. 24-825 and Case No. 23-1348 can attend any deposition in either of these cases. This agreement extends to Tulane's client representative or in house counsel.

**IT IS ORDERED** that the parties work together in good faith to determine by **October 30, 2025**, whether any depositions can go forward on December 19, 2025.

**IT IS FURTHER ORDERED** that any party that intends to question a deponent provide written notice of that intent to counsel for all parties (in both cases) at least 7 days before the deposition.

---

[1] The telephone status conference was conducted relative to Case No. 24-825 and Case No. 23-1348.  The total time (40 minutes) has been split evenly across the two cases.

**IT IS FURTHER ORDERED** that by **November 6, 2025**, the parties participate in at least one telephonic, video, or in-person conference to identity the nonparty witnesses likely to be called at trial and discuss the scheduling of their depositions.

<div align="right">

_____

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

</div>

MJSTAR: 00:20

Original Filed at Docket No. 167,
Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>          Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Darrel J. Papillion |
| Jane Doe<br>          Defendant. | Magistrate Judge: Eva J. Dossier |

## MOTION FOR ADMISSION PRO HAC VICE OF RODMAN STREICHER

Pursuant to Local Rule 83.2.5, John Doe requests that this Court allow Rodman Streicher, (NYSB# 5936059) of Nesenoff & Miltenberg, LLP to be admitted pro hac vice as counsel of record for the plaintiff. The following attached exhibits satisfy Local Rule 83.2.5 for pro hac admission:

1. Ex. A - Declaration

2. Ex. B - Certificate of Good Standing

3. Ex. C – Executed Consent to Electronic Filing

Respectfully submitted,

*/s/ Alex T. Robertson*
Brian P. Marcelle (La. Bar No. 25156)
Alex T. Robertson (La. Bar No. 37285)
Jacques C. Mestayer (La. Bar. No. 37230)
**Marcelle Robertson Mestayer LLC**
650 Poydras St. Ste 2720
New Orleans, LA 70130
Phone: (504)910-6220
Fax:    (504)910-6800
brian@mrmlaw.com
alex@mrmlaw.com
jacques@mrmlaw.com
*Local Counsel for John Doe*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>　　　Plaintiff, | Civil Case No.: 24-825 |
| v. | District Judge: Darrel J. Papillion |
| Jane Doe<br>　　　Defendant. | Magistrate Judge: Eva J. Dossier |

## ORDER

Considering the "Motion for Admission Pro Hac Vice of Rodman Streicher,"

**IT IS ORDERED**, pursuant to Local Rule 83.2.5, that the motion is GRANTED. Attorney

Rodman Streicher, (NYSB# 5936059) of Nesenoff & Miltenberg, LLP, 363 Seventh Avenue, 5th

Floor, New York, New York 10001 is hereby **GRANTED** leave to appear and participate *pro hac*

*vice* in this litigation as counsel for John Doe.

New Orleans, Louisiana this _____ day of October, 2025.


_____
UNITED STATES DISTRICT COURT JUDGE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe **Plaintiff,** | Civil Case No.: 24-825 |
| v. | District Judge: Darrel J. Papillion |
| Jane Doe **Defendant.** | Magistrate Judge: Eva J. Dossier |

## <u>DECLARATION OF RODMAN STREICHER</u>

I, Rodman Streicher, declare:

1. I am an attorney of the law firm Nesenoff & Miltenberg, LLP and one of Plaintiff's counsel in this action.

2. I am not a member of the Louisiana bar. I am not eligible for admission to the bar of the Eastern District of Louisiana under Local Rule 83.2.1.

3. I am a member in good standing of the New York state bar, among other courts. A certificate of my good standing in that court is filed herewith.

4. There have been no disciplinary proceedings or criminal charges instituted against me.

5. I consent to electronic service of all documents through the Court's electronic filing system, for which I am already registered.

6. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action. Alex Robertson and the law firm of Marcelle Robertson Mestayer LLC will serve as local counsel for the plaintiff in this case.

7. I have reviewed and am familiar with the Court's Local Rules.

I declare under penalty of perjury that the foregoing is true and correct to the best of knowledge, information, and belief.

Dated this 28th day of October, 2025.     s/Rodman W. Streicher
                                           Rodman Streicher



## Appellate Division of the Supreme Court
## of the State of New York
## Third Judicial Department

_____

I, Robert D. Mayberger, Clerk of the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department, do hereby certify that

### Rodman Wells Streicher

was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **January 18, 2022**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Office of Court Administration, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand in the City of Albany on October 27, 2025.

Clerk of the Court

CertID-00257116



*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*
*Admissions Office*
*P.O. Box 7350, Capitol Station*
*Albany, NY 12224-0350*

*Robert D. Mayberger*
*Clerk of the Court*

*AD3AdmissionsOffice@nycourts.gov*
*http://www.nycourts.gov/ad3/admissions*
*(518) 471-4778*

*Anthony A. Moore*
*Director of Attorney*
*Admissions*

To Whom It May Concern:

An attorney admitted to practice by this Court may request a certificate of good standing, which is the only official document this Court issues certifying to an attorney's admission and good standing.

An attorney's registration status, date of admission and disciplinary history may be viewed through the attorney search feature on the website of the Unified Court System.

New York State does not register attorneys as active or inactive.

An attorney may request a disciplinary history letter from the Attorney Grievance Committee of the Third Judicial Department.

Bar examination history is available from the New York State Board of Law Examiners.

Instructions, forms and links are available on this Court's website.

Robert D. Mayberger
Clerk of the Court

Revised January 2022

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
<u>www.pacer.gov</u>

       This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Rodman Wells Streicher

Attorney Bar # and State: New York State Bar No. 5936059

Firm Name: NESENOFF & MILTENBERG, LLP

Firm Address: 363 Seventh Avenue, 5th Floor

New York, New York 10001

Telephone Number: 212-736-4500

E-Mail Address: rstreicher@nmllplaw.com
(Attorney's email for electronic service)

Additional E-Mail Address: blever@nmllplaw.com
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑     Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number 24-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1

- **Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.**

- **Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.**

- **By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.**

- **The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.**

- **The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.**

- **The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.**

- **The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.**

10/28/2025
_____
**Date**

_____
**Attorney Signature**

[Rev.11/2019]

2

Original Filed at Docket No. 168,

Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CIVIL ACTION**

**VERSUS**

**NO. 24-825**

**SECTION: "P" (3)**

**ORDER**

Considering Plaintiff's foregoing Motion for Admission Pro Hac Vice of Rodman Streicher (R. Doc. 167),

**IT IS ORDERED** that the Motion is **GRANTED**, and Rodman Streicher, of Nesenoff & Miltenberg, LLP, is hereby admitted *pro hac vice* and enrolled as additional counsel of record for Plaintiff in the above-captioned matter.

New Orleans, Louisiana, this 30th day of October 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules. Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action. Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Original Filed at Docket No. 169,
Sealed by Court Order

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| John Doe<br>   **Plaintiff,**<br><br>v.<br><br>Jane Doe<br>   **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

### *EX PARTE* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Kathryn Irwin Bronstein of the firm Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067-4643; Telephone: (424) 332-4755, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Kathryn Irwin Bronstein pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Kathryn Irwin Bronstein stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from the California Bar attached as Exhibit B, and the Consent to Electronic Filing Form for Kathryn Irwin Bronstein attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Kathryn Irwin Bronstein of the firm Covington & Burling, LLP to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe

Respectfully submitted,

*/s/Jared A. Davidson*

_____

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

*Counsel for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 2nd day of December, 2025.

*/s/Jared A. Davidson*

_____

TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br><br>        **Plaintiff,**<br><br>v.<br><br>Jane Doe<br><br>        **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLIO**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## DECLARATION OF KATHRYN IRWIN BRONSTEIN

I, Kathryn Irwin Bronstein, certify that the following is a true and correct statement submitted in accordance with Local Rule 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I am admitted to practice law in the State of California.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the State of California.

6. I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8. No criminal charges have been instituted against me.

9. I consent to electronic service of all documents through the Court's electronic filing system.

10. I agree to confer disciplinary jurisdiction upon this Court for any alleged



misconduct arising in the course of or in preparation for this action.

11. Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of November, 2025.        /s/ Kathryn Irwin Bronstein

Kathryn Irwin Bronstein

# THE STATE BAR OF CALIFORNIA
## CERTIFICATE OF STANDING

**ISSUE DATE:** 11/4/2025

**LICENSEE NAME:** Kathryn Ann Irwin Bronstein

**LICENSEE BAR NUMBER:** 349585

**LICENSEE STATUS:** Active

**ADMIT DATE:** 5/20/2023

**To Whom it May Concern:**

This certificate of standing certifies the record above is a true and correct copy of Kathryn Ann Irwin Bronstein's current standing with the State Bar of California as of the issue date. No recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

*Carolina Almarante-Terrero*

**Carolina Almarante-Terrero**
Custodian of Record



*NOTE: Only ACTIVE licensees of the State Bar of California are entitled to practice law in California (See Sections 6006 and 6125, et seq., Business and Professions Code.)*

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
www.pacer.gov

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Kathryn Irwin Bronstein

Attorney Bar # and State: 349585, California

Firm Name: Covington & Burling, LLP

Firm Address: 1999 Avenue of the Stars

Los Angeles, CA 90067-4643

Telephone Number: 424 332 4755

E-Mail Address: kirwinbronstein@cov.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ✔ Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ✔ No ☐ Case number No. 24-825

Is this regarding a MDL case? Yes ☐ No ✔ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ✔ Office where employed:

_____

1



- **Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.**

- **Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.**

- **By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.**

- **The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.**

- **The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.**

- **The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.**

- **The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.**

**11/4/2025**
_____
**Date**

*Kathryn Arwin Bronstein*
_____
**Attorney Signature**

[Rev.11/2019]

2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe **Plaintiff,** v. Jane Doe **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** **SECTION: P (3)** **JUDGE DARREL JAMES PAPILLIO** **MAG. JUDGE EVA J. DOSSIER** |

## PROPOSED ORDER

Considering the foregoing Motion for Admission *Pro Hac Vice* of Kathryn Irwin Bronstein as counsel for Defendant Jane Doe

IT IS HEREBY ORDERED that Kathryn Irwin Bronstein should be and is hereby admitted to the bar of this Court *pro hac vice* on behalf of Defendant Jane Doe

New Orleans, Louisiana, this ___ day of November, 2025.

_____

**United States District Judge**

Original Filed at Docket No. 170,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## *EX PARTE* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant  Jane Doe

by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of

Thomas Scott Shelton of the firm Covington & Burling LLP, 850 Tenth Street, NW,

Washington, DC 20001-4956; Telephone: (202) 662-5980, for the purpose of appearing and

participating as co-counsel on her behalf in the above action.  The undersigned counsel of

record, Jared A. Davidson and Caroline M. Murley are active members in good standing of

the bar of this Court and agree to serve as the designated local counsel for Scott Shelton

pursuant to LR 83.2.5, in the above action.  In support of this motion, attached hereto as Exhibit

A is the Declaration of Scott Shelton stating she has not been the subject of any disciplinary

or criminal proceedings, a current Certificate of Good Standing from the District of Columbia

Court of Appeals attached as Exhibit B, and the Consent to Electronic Filing Form for Scott

Shelton attached as Exhibit C.

WHEREFORE, Defendant  Jane Doe  moves this Honorable Court for an Order

permitting Scott Shelton of the firm Covington & Burling, LLP to appear and participate *pro*

*hac vice* as co-counsel in the above action on behalf of  Jane Doe

Respectfully submitted,

*/s/Jared A. Davidson*

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

*Counsel for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 2nd day of December, 2025.

*/s/Jared A. Davidson*

TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>　　　　　Plaintiff,<br><br>　　v.<br><br>Jane Doe<br>　　　　　Defendant. | CIVIL ACTION NO. 2:24-CV-00825<br><br>SECTION: P (3)<br><br>JUDGE DARREL JAMES PAPILLIO<br><br>MAG. JUDGE EVA J. DOSSIER |

## DECLARATION OF THOMAS SCOTT SHELTON

I, Thomas Scott Shelton, certify that the following is a true and correct statement submitted in accordance with Local Rule 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I am admitted to practice law in the District of Columbia.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the District of Columbia.

6. I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8. No criminal charges have been instituted against me.

9. I consent to electronic service of all documents through the Court's electronic filing system.



10. I agree to confer disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in preparation for this action.

11. Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of November, 2025.          *T. Scott Shelton*

                                                    T. Scott Shelton



On behalf of *JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,*
the District of Columbia Bar does hereby certify that

# Thomas Scott Shelton

*was duly qualified and admitted on September 8, 2017 as an attorney and counselor entitled to
practice before this Court; and is, on the date indicated below, an Active member in good
standing of this Bar.*

**In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of
Washington, D.C., on November 05, 2025.**

**JULIO A. CASTILLO
Clerk of the Court**

*Issued By:*

*David Chu - Director, Membership
District of Columbia Bar Membership*

*For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.*



EXHIBIT
**B**

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>Consent to Electronic Filing</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
www.pacer.gov

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Thomas Scott Shelton

Attorney Bar # and State: DC (1048395); IL (6321506)

Firm Name: Covington & Burling, LLP

Firm Address: 850 Tenth Street

Washington DC 20001-4956

Telephone Number: 202 662 5960

E-Mail Address: sshelton@cov.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑   Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number No. 24-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

_____

1



- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

**11/14/2025**

**Date**

*T. Scott Shelton*

**Attorney Signature**

[Rev.11/2019]

2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe<br>　　　　　**Plaintiff,**<br><br>　　v.<br><br>Jane Doe<br>　　　　　**Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLIO**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## PROPOSED ORDER

Considering the foregoing Motion for Admission *Pro Hac Vice* of Thomas Scott Shelton

as counsel for Defendant  Jane Doe

IT IS HEREBY ORDERED that Scott Shelton should be and is hereby admitted to the

bar of this Court *pro hac vice* on behalf of Defendant Jane Doe

New Orleans, Louisiana, this ___ day of November, 2025.

_____

**United States District Judge**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

Original Filed at Docket No. 171,

Sealed by Court Order

████████████

**VERSUS**

████████

**CIVIL ACTION**

**NO. 24-825**

**SECTION: "P" (3)**

## ORDER

Considering the foregoing *Ex Parte* Motion to Appear *Pro Hac Vice* (R. Doc. 170),

**IT IS ORDERED** that the motion is **GRANTED**, and Thomas Scott Shelton is hereby

admitted *pro hac vice* and enrolled as additional counsel of record for Defendant ████████, in the

above-captioned case.

New Orleans, Louisiana, this 5th day of December 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1)  the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2)  the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3)  the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4)  all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules.  Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action.  Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| | Original Filed at Docket No. 173, Sealed by Court Order |

John Doe
**Plaintiff,**

v.

Jane Doe
**Defendant.**

CIVIL ACTION NO. 2:24-CV-00825

SECTION: P (3)

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

### UNOPPOSEED MOTION TO SUBSTITUTE E  HIBITS
### IN SUPPORT OF MOTION TO COMPEL R. DOC.  72

**NOW INTO COURT**, through undersigned counsel, comes Defendant,   Jane Doe

, who respectfully moves this Court to substitute the attached Exhibits  A through E to Ms.

Jane Doe R. Doc. 172 in place of R. Doc. Nos. 172-2 (Exhibit A), 172-3 (Exhibit B), 172-4 (Exhibit

C), 172-5 (Exhibit D), and 172-6 (Exhibit E), originally filed on December 8, 2025. After filing

the referenced motion, it came to Defendant counsel s attention that upon filing, redactions

previously placed were not present.

Plaintiff does not oppose this motion.

**WHEREFORE**, Defendant respectfully requests that this Honorable Court substitute the

attached Exhibits A - E and withdraw those corresponding exhibits originally filed with

Defendant s Motion to Compel R. Doc. 172.

Respectfully Submitted,

December 8, 2025

/s/ *Jared A. Davidson*

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

 *and*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic * (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee E. Haller* (admitted *pro hac vice*)
Christina Coleburn (admitted *pro hac vice*)
Thomas Scott Shelton (admitted *pro hac vice*)

COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
ccoleburn@cov.com
sshelton@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

2

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM ECF System. I further certify that I mailed the forgoing document and notice of electronic filing by first-class mail to all counsel of record who are not participants in the CM ECF system on this 8th day of December, 2025.

<div style="text-align:center">

_/s/ Jared A. Davidson_

TAYLOR, WELLONS, POLITZ & DUHE, LLC

</div>

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Louisiana

| | | |
|---|---|---|
| John Doe | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 2:24-CV-00825 |
| Jane Doe | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: ████████████████████

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: TAYLOR, WELLONS, POLITZ & DUHE, LLC 1555 Poydras St. Suite 2000, New Orleans, LA 701112 | Date and Time: 10/28/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/07/2025

*CLERK OF COURT*

_____     OR     _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ___Defendant,___
Jane Doe
_____ , who issues or requests this subpoena, are:

Jared A. Davidson, 1555 Poydras St., Suite 2000, New Orleans, LA 70112, 504-525-9888, cmurley@twpdlaw.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT A**

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:24-CV-00825

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### DEFINITIONS AND INSTRUCTIONS

1.  "Plaintiff" refers to      John Doe

2.  "You" and "Your" refer to ███████████

3.  "Communication" and "Communications" refer to all inquiries, discussions, conversations, negotiations, social media posts, agreements, understandings, meetings, telephone conversations, letters, e-mails, correspondence, notes, or any other form of oral or written Communication.

4.  "Document" and "Documents" have the broadest meaning permitted by Federal Rule of Civil Procedure 34 and shall include all oral, written, graphic, or electronic material or other media or reproduction of every kind and description, however produced and reproduced, including correspondences, Communications, conversations, meetings, discussions, negotiations, agreements, understandings, statements, text messages, telephone conversations, social media posts, faxes, e-mail, memoranda, notes, computer files, films ███████, recordings of any type, transcripts, photographs, slides, drawings, sketches, forms, letters, reports, ████████████ financial statements, telegrams, abstracts, and any other material similar to any of the foregoing, however denominated, by whomever prepared, to whomever addressed, which are in Your possession, custody, and/or control, or to which You can obtain access reasonably.

5.  "███████████████████████████████████████████████████████████████
    ███████████████████████████████████████████████████████████

6.  "Sexual Misconduct" encompasses sexual assault, sexual battery, and sexual harassment and includes non-consensual sexual intercourse, sexual contact, and any other conduct of a sexual nature, including unwanted touching and sexual acts committed in the presence of a person that do not involve touching, committed without the Consent (as defined below) of the other person.

7.  "Consent" is a freely given agreement. Silence or lack of resistance does not imply consent; a sleeping, unconscious, or incompetent person cannot consent; and submission resulting from force, threat, or fear is not consent. Consent must exist throughout the activity and can be

withdrawn at any time. Consent for one sexual activity does not constitute consent to a subsequent sexual activity, even if the sexual activities occur in close proximity to one another.

8. This Request applies to all Documents in Your possession, custody, or control. You are to produce all Documents responsive to the Request contained herein.

9. Attachments to emails should not be separated.

10. If any Documents requested were at one time in Your possession, custody, or control, but are no longer in Your possession, custody, or control, please state for each such Document:

   i) the type of Document;
   ii) the date on which it left Your possession, custody, or control, ceased to exist, or was lost;
   iii) the circumstances under which it left Your possession, custody, or control, ceased to exist, or was lost;
   iv) the identity of all persons having knowledge of the circumstances in which it left Your possession, custody, or control, ceased to exist or was lost;
   v) the identity of its last known custodian; and
   vi) the identity of all persons having knowledge of the contents of the relevant Document.

11. If You assert either attorney-client privilege or work product doctrine, or both, as to any Document being requested herein, as to each such Document subject to such assertion, serve with Your response to these Requests a privilege log containing an identification of the Document, which shall include:

   i) the date of the Document;
   ii) the identity of the author(s) and sender(s) of the Document and all recipients thereof;
   iii) the name(s) of each person to whom the original or a copy of the Document was circulated;
   iv) a summary statement of the subject matter of such document in sufficient detail to permit the Court to make a determination in the event of a motion under Federal Rule of Civil Procedure 37; and
   v) the basis for the assertion of privilege or protection.

12. If You claim privilege or protection to part of a Document, redact that portion which is privileged or protected and produce the remainder. All redactions should also be included on the privilege log described in the preceding paragraph.

13. If You withhold Documents on the basis of an assertion that a Request is overbroad or unduly burdensome, indicate what part of the Request is overbroad or unduly burdensome, the nature and scope of the Documents sought that are overbroad or unduly burdensome, what work would be

required to acquire and produce the Documents sought, and identify and produce the portion of the Documents that can be produced within a reasonable scope and with reasonable burden.

14. Whenever a Document is not produced in full or is produced in redacted form, indicate on the Document, state with particularity the reason or reasons it is not being produced, and describe with particularity the portions of the Document not being produced.

15. If no Documents are responsive to the Request, provide a response stating that no responsive Documents exist.

16. The definitions set forth herein have the broadest possible meaning. The Request should be construed as being inclusive rather than exclusive.

17. The relevant period for this Request is August 1, 2018 to present.

## DOCUMENT REQUESTS

1. All Documents and Communications related to Plaintiff, including:

   a. All Documents and Communications related to ███████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████████████████

   b. All Documents and Communications with Plaintiff relating to ██████████

   c. All Documents and Communications with Plaintiff relating to Jane Doe

   d. All Documents and Communications with Plaintiff relating to █████████

   e. All Documents and Communications with Plaintiff relating to█████████

   f. All Documents and Communications relating to ████████████████████ ███████████████████████████████████

   g. All Documents and Communications relating to ███████████████████ ███████████████████████████████████████████████ ██████████

   h. All Documents and Communications relating to ████████████████████ ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

i.  All Documents and Communications relating to ████████████████████████

████████████████████████████████

j.  All Documents and Communications relating to ████████████████████

████████████████████████████████████████████████████



**EXHIBIT B**



























































**EXHIBIT C**









Case 2:24-cv-00252-DJP-EJD   Document 73-3   Filed 06/12/25   Page 172 of 1935











| From: | Irwin Bronstein, Kathryn |
|---|---|
| To: | "Kara Gorycki"; ███████ |
| Cc: | Shah, Komal; Roman, Neil; Jared Davidson |
| Subject: | RE: John Doe v. Jane Doe Subpoena Follow Up |
| Date: | Tuesday, November 25, 2025 7:26:13 AM |
| Attachments: | image001.png |

Thank you, Kara.

████ we would appreciate your prompt compliance with all aspects of the subpoena, including the production of documents.  Please let us know if you have further questions and by when you plan to produce documents in response to the subpoena.

Many thanks,
Kathryn

## Kathryn Irwin Bronstein

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

## COVINGTON

---

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Monday, November 24, 2025 10:51 AM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>; ████████████

████████████████

**Cc:** Shah, Komal <KShah@cov.com>; Roman, Neil <nroman@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>
**Subject:** Re: John Doe v. Jane Doe. Subpoena Follow Up

████████

████████████████ to produce documents in response to the subpoena.



New York | Boston

Kara Gorycki, Partner

EXHIBIT D

363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
212.736.4500 • 212.736.2260 fax
Vcard • nmllplaw.com

*Recognized by Chambers and Partners 2025*

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Sent:** Monday, November 24, 2025 10:52:42 AM
**To:** ███████████████████████████
**Cc:** Shah, Komal <KShah@cov.com>; Roman, Neil <nroman@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Kara Gorycki <KGorycki@nmllplaw.com>
**Subject:** RE: John Doe v. Jane Doe - Subpoena Follow Up

███

We understand ████████████████████████████████████████ ██████ including the documents requested in the subpoena. If you still have questions about the ███████████ we suggest that you contact     John Doe     lawyer, Kara Gorycki (copied here). Otherwise, we would appreciate prompt compliance with all aspects of the subpoena, including the production of documents.

Many thanks,
Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

---

**From:** █████████████████████████████
**Sent:** Friday, November 21, 2025 2:12 PM

**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: John Doe v. Jane Doe. Subpoena Follow Up

▇▇▇▇▇

Right, but I believe ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ So, given that restriction, let me know how I can show up for
this. Thanks, ▇▇▇

On Fri, Nov 21, 2025, 3:42 PM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:

▇▇▇

Thank you for the follow up and for confirming you have the deposition on your schedule.

We are requesting the documentation listed in the attachment of the attached subpoena. The
subpoena requests all documents and communications related to ▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ among other more specific requests. That includes
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In sum, we anticipate the request will
cover ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Thank you,
Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

**From:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Sent:** Friday, November 21, 2025 12:27 PM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: John Doe v. Jane Doe. Subpoena Follow Up

▇▇▇▇▇

Hi Kathryn -



█████ So I've got █████ deposition in my calendar. I believe it's going to be online - let me know details on how to join the meeting. As far as documentation, could you let me know in layman's terms what y'all are asking for? █████

Thanks, ████

On Fri, Nov 14, 2025 at 11:43 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:

████

We represent  Jane Doe , defendant in an action brought by     John Doe     in federal court in New Orleans.

As you know, last month, we served you with the attached subpoena for documents related to     John Doe     with an October 28th deadline for producing the documents described in the subpoena.

We are reaching out because we have received no documents responsive to the subpoena notwithstanding the passage of the deadline. Please let us know by when you plan to respond to the subpoena.

In addition, we understand from     John Doe     counsel, Kara Gorycki, that you are available for a remote deposition on ████ Please find attached a subpoena directing your participation in the deposition that day at ████ and requesting you bring to the deposition ████ as well as a notice for your deposition. Again, please let us know if you have questions.

Best,
Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP

1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

## COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

| From: | Irwin Bronstein, Kathryn |
|---|---|
| To: | ██████████ |
| Cc: | Roman, Neil; Shah, Komal; Jared Davidson |
| Bcc: | Jane Doe |
| Subject: | RE: Subpoena Response |
| Date: | Thursday, December 4, 2025 11:16:15 AM |
| Attachments: | image001.png |
| | image002.png |

Thank you, ██████ Your references in your email to the "scope of permissible disclosure" and that you are "not able to produce additional materials beyond what is already furnished," imply that you have some materials (emails, documents, handwritten notes, etc.) that you have determined are not in the "scope of permissible disclosure" or that you are otherwise "not able to produce." Is that correct? If so, what materials are you withholding? Under the law, we are entitled to understand whether you are withholding items that we requested in the subpoena and if so, on what basis. Please let us know.

Separately, do you ████████████████████████████████████████

Kathryn


**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

# COVINGTON

**From:** ████████████████████████████
**Sent:** Thursday, December 4, 2025 9:15 AM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: Subpoena Response

██████████
Hi - As I stated already, I've responded in full to the subpoena. ██████


On Thu, Dec 4, 2025, 10:57 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:

> ██████
>
> Thank you for the response. To clarify, are you withholding any documents responsive to the subpoena from your production? For example, if you have ███████████████████████████ ████████████████████ those would be responsive to the subpoena. If so, please identify which documents you are withholding and on what basis.



If you are withholding responsive documents on the basis of ███████████
█████████████████████████████████████████████████████████
█████████████████████████████████████

Kathryn


**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

---

**From:** ████████████████████████
**Sent:** Wednesday, December 3, 2025 1:04 PM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: Subpoena Response


Hi  -

This letter confirms that I have already responded in full to the subpoena issued in the above matter.

I am not able to produce any additional materials beyond what has already been furnished.

If you have further questions regarding the scope of permissible disclosure, please direct them to the court or your client.

Sincerely,

████

On Tue, Dec 2, 2025 at 11:16 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:



> Thank you for sending your subpoena response on Friday, although it does not appear to be complete.

**By the end of this week, please supplement your response** ████████████
████████████████████████ **as well with as any other materials from**
████ **that you have not yet produced.**



Please let us know if you have questions.

Kathryn

## Kathryn Irwin Bronstein

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

## COVINGTON

**From:** Irwin Bronstein, Kathryn
**Sent:** Saturday, November 29, 2025 4:56 PM
**To:** ████████████████████████
**Subject:** RE: Subpoena Response

Thank you, ████ Confirming receipt.  Hope you had a wonderful Thanksgiving.

Kathryn

## Kathryn Irwin Bronstein

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com

www.cov.com

# COVINGTON

**From:** ██████████████████████████████
**Sent:** Friday, November 28, 2025 11:30 AM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Subpoena Response

████████

█ ██████

--

████████████████████
██████████          ██████████
██████████     █
██████████

████████████████████████████████
████

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe **Plaintiff,** v. Jane Doe **Defendant.** | CIVIL ACTION NO. 2:24-CV-00825 SECTION: P (3) **JUDGE DARREL JAMES PAPILLION** **MAG. JUDGE EVA J. DOSSIER** |

## <u>PROPOSED ORDER</u>

Considering the foregoing Motion to Substitute Exhibits on Defendant s Motion to Compel R. Doc. 172 filed by Defendant Jane Doe

IT IS HEREBY ORDERED that the Motion to Substitute Exhibits on Defendant s Motion to Compel is GRANTED and that Exhibits A - E attached to the foregoing Motion be substituted into the record of this matter for the Exhibits A - E originally filed with Defendant s Motion to Compel (R. Doc. No. 172) on December 8, 2025.

New Orleans, Louisiana, this        day of December, 2025.

_____
**JUDGE EVA J. DOSSIER**

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Louisiana

| | | |
|---|---|---|
| John Doe | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:24-CV-00825 |
| Jane Doe | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: ▉▉▉▉▉▉▉▉▉▉▉▉▉

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: TAYLOR, WELLONS, POLITZ & DUHE, LLC 1555 Poydras St. Suite 2000, New Orleans, LA 701112 | Date and Time: 10/28/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/07/2025

| CLERK OF COURT | | |
|---|---|---|
| _____ | OR | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Defendant, Jane Doe _____ , who issues or requests this subpoena, are:

Jared A. Davidson, 1555 Poydras St., Suite 2000, New Orleans, LA 70112, 504-525-9888, cmurley@twpdlaw.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT A**

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:24-CV-00825

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

1. "Plaintiff" refers to ___ John Doe

2. "You" and "Your" refer to ███████████

3. "Communication" and "Communications" refer to all inquiries, discussions, conversations, negotiations, social media posts, agreements, understandings, meetings, telephone conversations, letters, e-mails, correspondence, notes, or any other form of oral or written Communication.

4. "Document" and "Documents" have the broadest meaning permitted by Federal Rule of Civil Procedure 34 and shall include all oral, written, graphic, or electronic material or other media or reproduction of every kind and description, however produced and reproduced, including correspondences, Communications, conversations, meetings, discussions, negotiations, agreements, understandings, statements, text messages, telephone conversations, social media posts, faxes, e-mail, memoranda, notes, computer files, films █████, recordings of any type, transcripts, photographs, slides, drawings, sketches, forms, letters, reports, ███████████ financial statements, telegrams, abstracts, and any other material similar to any of the foregoing, however denominated, by whomever prepared, to whomever addressed, which are in Your possession, custody, and/or control, or to which You can obtain access reasonably.

5. "███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

6. "Sexual Misconduct" encompasses sexual assault, sexual battery, and sexual harassment and includes non-consensual sexual intercourse, sexual contact, and any other conduct of a sexual nature, including unwanted touching and sexual acts committed in the presence of a person that do not involve touching, committed without the Consent (as defined below) of the other person.

7. "Consent" is a freely given agreement. Silence or lack of resistance does not imply consent; a sleeping, unconscious, or incompetent person cannot consent; and submission resulting from force, threat, or fear is not consent. Consent must exist throughout the activity and can be

withdrawn at any time. Consent for one sexual activity does not constitute consent to a subsequent sexual activity, even if the sexual activities occur in close proximity to one another.

8.  This Request applies to all Documents in Your possession, custody, or control. You are to produce all Documents responsive to the Request contained herein.

9.  Attachments to emails should not be separated.

10. If any Documents requested were at one time in Your possession, custody, or control, but are no longer in Your possession, custody, or control, please state for each such Document:

    i)   the type of Document;
    ii)  the date on which it left Your possession, custody, or control, ceased to exist, or was lost;
    iii) the circumstances under which it left Your possession, custody, or control, ceased to exist, or was lost;
    iv)  the identity of all persons having knowledge of the circumstances in which it left Your possession, custody, or control, ceased to exist or was lost;
    v)   the identity of its last known custodian; and
    vi)  the identity of all persons having knowledge of the contents of the relevant Document.

11. If You assert either attorney-client privilege or work product doctrine, or both, as to any Document being requested herein, as to each such Document subject to such assertion, serve with Your response to these Requests a privilege log containing an identification of the Document, which shall include:

    i)   the date of the Document;
    ii)  the identity of the author(s) and sender(s) of the Document and all recipients thereof;
    iii) the name(s) of each person to whom the original or a copy of the Document was circulated;
    iv)  a summary statement of the subject matter of such document in sufficient detail to permit the Court to make a determination in the event of a motion under Federal Rule of Civil Procedure 37; and
    v)   the basis for the assertion of privilege or protection.

12. If You claim privilege or protection to part of a Document, redact that portion which is privileged or protected and produce the remainder. All redactions should also be included on the privilege log described in the preceding paragraph.

13. If You withhold Documents on the basis of an assertion that a Request is overbroad or unduly burdensome, indicate what part of the Request is overbroad or unduly burdensome, the nature and scope of the Documents sought that are overbroad or unduly burdensome, what work would be

required to acquire and produce the Documents sought, and identify and produce the portion of the Documents that can be produced within a reasonable scope and with reasonable burden.

14. Whenever a Document is not produced in full or is produced in redacted form, indicate on the Document, state with particularity the reason or reasons it is not being produced, and describe with particularity the portions of the Document not being produced.

15. If no Documents are responsive to the Request, provide a response stating that no responsive Documents exist.

16. The definitions set forth herein have the broadest possible meaning. The Request should be construed as being inclusive rather than exclusive.

17. The relevant period for this Request is August 1, 2018 to present.

## DOCUMENT REQUESTS

1. All Documents and Communications related to Plaintiff, including:

    a. All Documents and Communications related to ███████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

    b. All Documents and Communications with Plaintiff relating to ████████████

    c. All Documents and Communications with Plaintiff relating to Jane Doe

    d. All Documents and Communications with Plaintiff relating to ███████

    e. All Documents and Communications with Plaintiff relating to ███████

    f. All Documents and Communications relating to ████████████████ ██████████████████████████████

    g. All Documents and Communications relating to ███████████████ ████████████████████████████████████████ ██████████

    h. All Documents and Communications relating to ████████████████ ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

i.  All Documents and Communications relating to ███████████████████████

████████████████████████████

j.  All Documents and Communications relating to ████████████████████

███████████████████████████████████████████████



**EXHIBIT B**



















































Case 2:24-cv-00325-DJF-EDD   Document 173-2   Filed 06/12/28/25









**EXHIBIT C**









Case 2:24-cv-00082-DJP-EJD Document 127-3 Filed 06/12/25 Page 1836 of 1935











| From: | Irwin Bronstein, Kathryn |
|---|---|
| To: | "Kara Gorycki"; ████ |
| Cc: | Shah, Komal; Roman, Neil; Jared Davidson |
| Subject: | RE: John Doe v Jane Doe - Subpoena Follow Up |
| Date: | Tuesday, November 25, 2025 7:26:13 AM |
| Attachments: | image001.png |

Thank you, Kara.

████ we would appreciate your prompt compliance with all aspects of the subpoena, including the production of documents. Please let us know if you have further questions and by when you plan to produce documents in response to the subpoena.

Many thanks,
Kathryn


**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

---

From: Kara Gorycki <KGorycki@nmllplaw.com>
Sent: Monday, November 24, 2025 10:51 AM
To: Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>; ████
████
Cc: Shah, Komal <KShah@cov.com>; Roman, Neil <nroman@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>
Subject: Re John Doe v Jane Doe Subpoena Follow Up

████
████ to produce documents in response to the subpoena.



New York | Boston

**Kara Gorycki, Partner**

**EXHIBIT D**

363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
212.736.4500    •    212.736.2260 fax
Vcard    •    nmllplaw.com

*Recognized by Chambers and Partners 2025*

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Sent:** Monday, November 24, 2025 10:52:42 AM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Shah, Komal <KShah@cov.com>; Roman, Neil <nroman@cov.com>; Jared Davidson <jdavidson@twpdlaw.com>; Kara Gorycki <KGorycki@nmllplaw.com>
**Subject:** RE:    John Doe v Jane Doe    - Subpoena Follow Up

▮▮▮▮

We understand ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ including the documents requested in the subpoena. If you still have questions about the ▮▮▮▮▮▮▮▮ we suggest that you contact Mr.    John Doe    lawyer, Kara Gorycki (copied here). Otherwise, we would appreciate prompt compliance with all aspects of the subpoena, including the production of documents.

Many thanks,
Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

---

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Friday, November 21, 2025 2:12 PM

**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re:  John Doe v Jane Doe  - Subpoena Follow Up

███████

Right, but I believe ████████████████████████████████████
████████████████████████████ So, given that restriction, let me know how I can show up for
this. Thanks, ████

On Fri, Nov 21, 2025, 3:42 PM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:

████

Thank you for the follow up and for confirming you have the deposition on your schedule.

We are requesting the documentation listed in the attachment of the attached subpoena.  The
subpoena requests all documents and communications related to ████████████
████████████████████████ among other more specific requests.  That includes
██████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████ In sum, we anticipate the request will
cover ██████████████████ ████████████████
██████████████████████

Thank you,
Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

**From:** ████████████████████████████
**Sent:** Friday, November 21, 2025 12:27 PM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: John Doe v Jane Doe - Subpoena Follow Up

████████

Hi Kathryn -

██████████ So I've got ██████████ deposition in my calendar. I believe it's going to be online - let me know details on how to join the meeting. As far as documentation, could you let me know in layman's terms what y'all are asking for? ██████████

Thanks, ██

On Fri, Nov 14, 2025 at 11:43 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:

██████████

We represent Jane Doe, defendant in an action brought by John Doe in federal court in New Orleans.

As you know, last month, we served you with the attached subpoena for documents related to Mr. John Doe, with an October 28th deadline for producing the documents described in the subpoena.

We are reaching out because we have received no documents responsive to the subpoena notwithstanding the passage of the deadline. Please let us know by when you plan to respond to the subpoena.

In addition, we understand from Mr. John Doe counsel, Kara Gorycki, that you are available for a remote deposition on ██████████ Please find attached a subpoena directing your participation in the deposition that day at ████████ and requesting you bring to the deposition ██████████ as well as a notice for your deposition. Again, please let us know if you have questions.

Best,
Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP

1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

## COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

| From: | Irwin Bronstein, Kathryn |
|---|---|
| To: | ██████████ |
| Cc: | Roman, Neil; Shah, Komal; Jared Davidson |
| Bcc: | Jane Doe |
| Subject: | RE: Subpoena Response |
| Date: | Thursday, December 4, 2025 11:16:15 AM |
| Attachments: | image001.png |
| | image002.png |

Thank you, ████ Your references in your email to the "scope of permissible disclosure" and that you are "not able to produce additional materials beyond what is already furnished," imply that you have some materials (emails, documents, handwritten notes, etc.) that you have determined are not in the "scope of permissible disclosure" or that you are otherwise "not able to produce." Is that correct? If so, what materials are you withholding? Under the law, we are entitled to understand whether you are withholding items that we requested in the subpoena and if so, on what basis. Please let us know.

Separately, do you ███████████████████████████████████████████

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

# COVINGTON

**From:** ████████████████████████████████
**Sent:** Thursday, December 4, 2025 9:15 AM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: Subpoena Response

███████████

Hi - As I stated already, I've responded in full to the subpoena. ██████

On Thu, Dec 4, 2025, 10:57 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:

> ████████
>
> Thank you for the response. To clarify, are you withholding any documents responsive to the subpoena from your production? For example, if you have ████████████████████████ ████████████████████ those would be responsive to the subpoena. If so, please identify which documents you are withholding and on what basis.

**EXHIBIT E**

If you are withholding responsive documents on the basis of ██████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

## COVINGTON

---

**From:** ████████████████████████
**Sent:** Wednesday, December 3, 2025 1:04 PM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: Subpoena Response


Hi  -

This letter confirms that I have already responded in full to the subpoena issued in the above matter.

I am not able to produce any additional materials beyond what has already been furnished.

If you have further questions regarding the scope of permissible disclosure, please direct them to the court or your client.

Sincerely,

████

On Tue, Dec 2, 2025 at 11:16 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:



> Thank you for sending your subpoena response on Friday, although it does not appear to be complete.

**By the end of this week, please supplement your response ███████████████ ███████████████████ as well with as any other materials from ███ that you have not yet produced.**



Please let us know if you have questions.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

## COVINGTON

**From:** Irwin Bronstein, Kathryn
**Sent:** Saturday, November 29, 2025 4:56 PM
**To:** ████████████████████████
**Subject:** RE: Subpoena Response

Thank you, ████ Confirming receipt.  Hope you had a wonderful Thanksgiving.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com

www.cov.com

# COVINGTON

**From:** ████████████████████████████████

**Sent:** Friday, November 28, 2025 11:30 AM

**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>

**Subject:** Subpoena Response

████████

███████

--

████████████████████████
████████ ████████████████
████ █ ████████

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** v. Jane Doe , **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** **SECTION: P (3)** **JUDGE DARREL JAMES PAPILLION** **MAG. JUDGE EVA J. DOSSIER** |

## PROPOSED ORDER

Considering the foregoing Motion to Substitute Exhibits on Defendant s Motion to Compel R. Doc. 172 filed by Defendant Jane Doe

IT IS HEREBY ORDERED that the Motion to Substitute Exhibits on Defendant s Motion to Compel is GRANTED and that Exhibits A - E attached to the foregoing Motion be substituted into the record of this matter for the Exhibits A - E originally filed with Defendant s Motion to Compel (R. Doc. No. 172) on December 8, 2025.

New Orleans, Louisiana, this        day of December, 2025.

_____

**JUDGE EVA J. DOSSIER**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| |
|---|
| Original Filed at Docket No. 174, |
| Sealed by Court Order |

John Doe　　　，

　　Plaintiff,

v.

Jane Doe　，

　　Defendant.

**CIVIL ACTION NO. 2:24-CV-00825**

**SECTION: P (3)**

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## <u>DEFENDANT S UNOPPOSED MOTION TO SEAL MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SU POENA</u>

**NOW INTO COURT,** through undersigned counsel, comes Defendant Jane Doe , who

respectfully seeks an Order from this Court sealing her Motion to Compel Compliance with a

Third-Party Subpoena, together with accompanying Memorandum in Support of the Motion and

exhibits, pursuant to Local Rule 5.6. Jane Doe has filed full, unredacted copies of the Motion to

Compel Compliance with a Third-Party Subpoena, the Memorandum in Support of the Motion,

and the accompanying Exhibits under seal with this motion. For the reasons set forth in the

accompanying Memorandum in Support, Jane Doe respectfully requests that this Court enter the

proposed order included herewith. Plaintiff does not oppose this Motion to Seal.

**WHEREFORE**, Defendant prays for an Order from this Court sealing her Motion to

Compel Compliance with a Third-Party Subpoena, together with the Memorandum in Support of

the Motion and the accompanying Exhibits.

Respectfully Submitted,

December 8, 2025

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee E. Haller* (admitted *pro hac vice*)
Christina Coleburn (admitted *pro hac vice*)
Thomas Scott Shelton (admitted *pro hac vice*)

COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
ccoleburn@cov.com
sshelton@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that a true and correct copy of the foregoing was served by CM ECF on all counsel of record on this 8th day of December, 2025.

                              */s/ Jared A. Davidson*

                              TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | CIVIL ACTION NO. 2:24-CV-00825 |
| **Plaintiff,** | SECTION: P (3) |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | **MAG. JUDGE EVA J. DOSSIER** |
| **Defendant.** | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SEAL MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENA**

Defendant Jane Doe respectfully moves to file under seal her Motion to Compel Compliance with a Third-Party Subpoena, together with the Memorandum in Support of the Motion and the accompanying exhibits, because Jane Doe agreed in a stipulation entered by the Court not to refer to the Pseudonymous Litigation by name or case number, *see* R. Doc. Nos. 102, 108, and agreed in a Joint/Consent Protective Order entered by the Court to redact information designated as "confidential" by the parties, *see* R. Doc. Nos. 131, 132. Plaintiff does not oppose this motion.

When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a case outweigh the presumption in favor of the public's common-law right of access to judicial records. *Nixon v. Warner Communications*, 435 U.S. 589, 597–98 (1978). To determine whether a judicial record should be sealed, the Court "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Sealed Applicant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *2 (5th Cir. Mar. 7, 2024). The duty to balance interests and carefully review a sealing request applies even when the parties jointly desire that the matter should be

sealed.  *C.P. v. Defendant 1*, No. 2:24-CV-01615, 2024 WL 4940551, at *1 (W.D. La. Nov. 26, 2024).

Jane Doe recognizes that under Local Rule 5.6(d), "reference to a stipulation or protective order is not sufficient to establish the necessity of sealing any document," but nonetheless seeks this sealing to honor her obligations under her agreements with John Doe  To balance her obligations under the parties' agreement with the right of the public to access material filed with the Court, Jane Doe requests that only references to the Pseudonymous Litigation and references to information designated as "confidential" by the parties under the Joint/Consent Protective Order are redacted in her Motion to Compel Compliance with a Third-Party Subpoena, together with the Memorandum in Support of the Motion and the accompanying exhibits.  This limitation is appropriate given that the Fourth Circuit rejected John Doe  attempt to proceed under a pseudonym in this litigation against Jane Doe  *John Doe v. Jane Doe*, 85 F.4th 206 (4th Cir. 2023); R. Doc. No. 22.

Jane Doe seeks to have her Motion to Compel, the Memorandum in Support of the Motion, and the accompanying exhibits maintained under seal so long as the agreement not to refer to the Pseudonymous Litigation entered by the Court, R. Doc. Nos. 102, 108, and the Joint/Consent Protective Order governing confidential information entered by the Court, R. Doc. Nos. 131, 132, remain in effect.

For the foregoing reasons, Jane Doe requests that the Court grant her motion to seal.

Respectfully Submitted,

December 8, 2025

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee E. Haller* (admitted *pro hac vice*)
Christina Coleburn (admitted *pro hac vice*)
Thomas Scott Shelton (admitted *pro hac vice*)

COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
ccoleburn@cov.com
sshelton@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on all counsel of record on this 8th day of December, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## <u>ORDER</u>

Considering the preceding Motion to Seal filed by Defendant Jane Doe

This Court finds that good cause e ists and it is appropriate to seal Jane Doe Motion to Compel Compliance with a Third-Party Subpoena, together with the Memorandum in Support of the Motion and the accompanying e hibits, filed alongside Jane Doe Motion to Seal. When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a particular case outweigh the presumption in favor of the public's common-law right of access to judicial records. *i on v. arner Co nications*, 435 U.S. 589, 597 98 (1978).

In light of the stipulation entered by the Court in which the parties agreed not to refer to the Pseudonymous Litigation by name or case number and the Joint/Consent Protective Order entered by the Court in which the parties agreed to redact certain information designated as confidential that is filed to the public docket.

**IT IS ORDERED** that Defendant Jane Doe motion is hereby **GRANTED** and her Motion to Compel Compliance with a Third-Party Subpoena served, together with the Memorandum in Support of the Motion and the accompanying e hibits shall be filed into the record under seal.

New Orleans, Louisiana, this _____ day of _____, 2025.


_____
**UNITED STATES DISTRICT JUDGE**

Original Filed at Docket No. 175,
Sealed by Court Order

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe **,** **Plaintiff,** **v.** Jane Doe **,** **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825** **SECTION: P (3)** **JUDGE DARREL JAMES PAPILLION** **MAG. JUDGE EVA J. DOSSIER** |

### *EX PARTE* MOTION TO EXPEDITE HEARING ON MOTION TO COMPEL COMPLIANCE OF ▆▆▆▆▆▆▆ WITH THIRD PARTY SUBPOENA, R. DOC. NO. 172

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jane Doe , who respectfully requests that the Court expedite consideration of her Motion to Compel Compliance of ▆▆▆▆▆ with Third-Party Subpoena, R. Doc. No. 172. ▆▆▆▆▆ is Plaintiff s ▆▆▆▆ who, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ , apparently refuses to comply with the Court s subpoena by not producing all documents responsive to the subpoena. Any delay caused by ▆▆▆▆▆ s refusal to comply with the Court s subpoena threatens not only the parties ability to timely conduct his deposition (set for ▆▆▆▆▆ ), but also threatens to derail the parties ability to comply with the Court s Scheduling Order. Accordingly, expedited consideration is warranted to ensure that ▆▆▆▆ s deposition proceeds as scheduled and the parties may continue to comply with the Court s Scheduling Order.

**WHEREFORE**, Defendant, Jane Doe, prays for an Order from this Court granting this Motion and setting an expedited hearing on Jane Doe Motion to Compel Compliance of ▆▆▆ ▆▆▆ with Third-Party Subpoena, R. Doc. No. 172.

Respectfully Submitted,

December 8, 2025

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

 and

Neil K. Roman (admitted pro hac vice)
Komal Shah (admitted pro hac vice)
Shanelle Van (admitted pro hac vice)
Zora F. Franicevic * (admitted pro hac vice)
Ashton E. Woods (admitted pro hac vice)
Destinee E. Haller* (admitted pro hac vice)
Christina Coleburn (admitted pro hac vice)
Thomas Scott Shelton (admitted pro hac vice)

COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
ccoleburn@cov.com
sshelton@cov.com
*New York Office


Attorneys for Defendant Jane Doe

2

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM ECF System. I further certify that I mailed the forgoing document and notice of electronic filing by first-class mail to all counsel of record who are not participants in the CM ECF system on this 8th day of December, 2025.

            /s/ Jared A. Davidson
        TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe **,** **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| **v.** | **SECTION: P (3)** |
| Jane Doe **,** **Defendant.** | **JUDGE DARREL JAMES PAPILLION** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## <u>PROPOSED ORDER</u>

In consideration of the preceding *Ex Parte* Motion to Expedite Hearing on Motion to Compel Compliance of ▮▮▮▮▮▮ with Third-Party Subpoena, R. Doc. No. 172 (the  Motion ) filed by Defendant,      Jane Doe

**IT IS ORDERED** that   Jane Doe   Motion to Expedite is hereby GRANTED and the submission of Jane Doe s Motion to Compel shall be reset for the       day of December, 2025, at       a.m., with any opposition by ▮▮▮▮▮▮ due on the       day of December, 2025.

New Orleans, Louisiana, this       day of December, 2025.

<div style="text-align:center">_____</div>

<div style="text-align:center"><b>JUDGE EVA J. DOSSIER</b></div>

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| | **SECTION: P (3)** |
| **v.** | |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe , **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

## PROPOSED ORDER

In consideration of the preceding *Ex Parte* Motion to Expedite Hearing on Motion to Compel Compliance of ███████ with Third-Party Subpoena, R. Doc. No. 172 (the  Motion ) filed by Defendant,        Jane Doe

**IT IS ORDERED** that  Jane Doe  Motion to Expedite is hereby GRANTED and the submission of  Jane Doe  Motion to Compel shall be reset for the        day of December, 2025, at        a.m., with any opposition by ███████ due on the        day of December, 2025.

New Orleans, Louisiana, this        day of December, 2025.

_____
**JUDGE EVA J. DOSSIER**

Original Filed at Docket No. 176,

Sealed by Court Order

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John   Doe        , | **CIVIL ACTION NO. 2:24-CV-00825** |
| Plaintiff, | **SECTION: P (3)** |
| v. | **JUDGE DARREL JAMES PAPILLION** |
| Jane  Doe  , | **MAG. JUDGE EVA J. DOSSIER** |
| Defendant. | |

**DEFENDANT S UNOPPOSED MOTION TO SEAL MOTION TO E  PEDITE HEARING ON MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SU  POENA**

**NOW INTO COURT,** through undersigned counsel, comes Defendant Jane  Doe , who respectfully seeks an Order from this Court sealing her Motion to Expedite the Hearing on her Motion to Compel Compliance with a Third-Party Subpoena and accompanying Proposed Order pursuant to Local Rule 5.6.  Jane  Doe  has filed full, unredacted copies of the Motion to Expedite the Hearing on her Motion to Compel Compliance with a Third-Party Subpoena and accompanying Proposed Order under seal with this motion.  For the reasons set forth in the accompanying Memorandum in Support, Jane  Doe  respectfully requests that this Court enter the proposed order included herewith.  Plaintiff does not oppose this Motion to Seal.

**WHEREFORE**, Defendant prays for an Order from this Court sealing her Motion to Expedite the Hearing on her Motion to Compel Compliance with a Third-Party Subpoena.

Respectfully Submitted,

December 8, 2025

/s/ *Jared A. Davidson*
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee E. Haller* (admitted *pro hac vice*)
Christina Coleburn (admitted *pro hac vice*)
Thomas Scott Shelton (admitted *pro hac vice*)

COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
ccoleburn@cov.com
sshelton@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM ECF on all counsel of record on this 8th day of December, 2025.

/s/ Jared A. Davidson
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | |
| **Plaintiff,** | |
| v. | |
| Jane Doe | |
| **Defendant.** | |

CIVIL ACTION NO. 2:24-CV-00825

SECTION: P (3)

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SEAL MOTION TO EXPEDITE HEARING ON MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENA

Defendant Jane Doe respectfully moves to file under seal her Motion to Expedite the Hearing on her Motion to Compel Compliance with a Third-Party Subpoena and accompanying Proposed Order because they reference information that Plaintiff has designated as "confidential" pursuant to the Joint/Consent Protective Order. *See* R. Doc. Nos. 131, 132. Plaintiff does not oppose this motion.

When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a case outweigh the presumption in favor of the public's common-law right of access to judicial records. *Nixon v. Warner Communications*, 435 U.S. 589, 597–98 (1978). To determine whether a judicial record should be sealed, the Court "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Sealed Applicant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *2 (5th Cir. Mar. 7, 2024). The duty to balance interests and carefully review a sealing request applies even when the parties jointly desire that the matter should be sealed. *C.P. v. Defendant 1*, No. 2:24-CV-01615, 2024 WL 4940551, at *1 (W.D. La. Nov. 26, 2024).

Jane Doe recognizes that under Local Rule 5.6(d), "reference to a stipulation or protective order is not sufficient to establish the necessity of sealing any document," but nonetheless seeks this sealing to honor her obligations under her agreements with John Doe   To balance her obligations under the parties' agreement with the right of the public to access material filed with the Court, Jane Doe requests that only references to information designated as "confidential" by the parties under the Joint/Consent Protective Order are redacted in her Motion to Expedite the Hearing on her Motion to Compel Compliance with a Third-Party Subpoena and accompanying Proposed Order.

Jane Doe seeks to have her Motion to Expedite and accompanying Proposed Order maintained under seal so long as the Joint/Consent Protective Order governing confidential information entered by the Court, R. Doc. Nos. 131, 132, remain in effect.

For the foregoing reasons, Jane Doe requests that the Court grant her motion to seal.

Respectfully Submitted,

December 8, 2025

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Thomas Scott Shelton (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee E. Haller* (admitted *pro hac vice*)

Christina Coleburn (admitted *pro hac vice*)

COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
ccoleburn@cov.com
sshelton@cov.com
*New York Office

*Attorneys for Defendant* Jane Doe

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on all counsel of record on this 8th day of December, 2025.

                                                */s/ Jared A. Davidson*
                                                TAYLOR, WELLONS, POLITZ & DUHE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| John Doe | |
| **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| | **SECTION: P (3)** |
| v. | |
| | **JUDGE DARREL JAMES PAPILLION** |
| Jane Doe | |
| **Defendant.** | **MAG. JUDGE EVA J. DOSSIER** |

**ORDER**

Considering the preceding Motion to Seal filed by Defendant Jane Doe

This Court finds that good cause exists and it is appropriate to seal Jane Doe Motion to Expedite the Hearing on her Motion to Compel Compliance with a Third-Party Subpoena and accompanying Proposed Order, filed alongside Jane Doe Motion to Seal. When appropriate, courts may order that case documents be filed under seal if the interests favoring nondisclosure in a particular case outweigh the presumption in favor of the public's common-law right of access to judicial records. *Nixon v. Warner Communications*, 435 U.S. 589, 597–98 (1978).

In light of the Joint/Consent Protective Order entered by the Court in which the parties agreed to redact certain information designated as confidential that is filed to the public docket,

**IT IS ORDERED** that Defendant Jane Doe motion is hereby **GRANTED** and her Motion to Expedite the Hearing on her Motion to Compel Compliance with a Third-Party Subpoena and accompanying Proposed Order shall be filed into the record under seal.

New Orleans, Louisiana, this _____ day of _____, 2025.

_____
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| |
|---|
| Original Filed at Docket No. 177, |
| Sealed by Court Order |

John Doe

VERSUS

Jane  Doe

CIVIL ACTION

NO.  24-825

SECTION:  "P" (3)

## <u>ORDER</u>

Considering the *Ex Parte* Motion to Expedite Hearing,

**IT IS ORDERED** that the Motion to Expedite (R. Doc. 175) is **GRANTED.**

**IT IS FURTHER ORDERED** that any opposition to the Motion to Compel

Compliance with Third-Party Subpoena be filed by **December 15, 2025, at 11:00**

**a.m.** Any reply must be filed by **December 16, 2025, at 11:00 a.m.,** at which time

the motion will be taken under advisement.

**IT IS FURTHER ORDERED** that Defendant is responsible for ensuring that

the subject of the subpoena is served with a copy of this Order.  Defendant must file

a certificate reflecting the service date on or before December 12, 2025.

New Orleans, Louisiana, this 9th day of December, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

Original Filed at Docket No. 178,
Sealed by Court Order

| | |
|---|---|
| John Doe          ,<br>**Plaintiff,**<br><br>v.<br><br>Jane Doe    ,<br><br>          **Defendant.** | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## CERTIFICATE OF SERVICE

NOW INTO COURT, through undersigned counsel, comes Defendant, Jane Doe , who provides Certificate of Service that she has served her Motion to Compel Compliance with Third-Party Subpoena (R. Doc. 172) ("Motion to Compel") and subsequent Order (R. Doc. 177) setting the Motion for expedited submission upon the Third-Party made subject of the Motion ("Third-Party"). More particularly, on December 8, 2025, Jane Doe counsel sent by email a complete copy of the Motion to Compel to Third-Party. On December 9, 2025, Jane Doe counsel sent by email to Third-Party a copy of the Court's Order setting the expedited response schedule and notifying Third-Party of their deadline of December 15, 2025 to file an opposition.

Respectfully Submitted,

December 10, 2025

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Thomas Scott Shelton (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee E. Haller* (admitted *pro hac vice*)
Christina Coleburn (admitted *pro hac vice*)


COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
ccoleburn@cov.com
sshelton@cov.com
*New York Office


*Attorneys for Defendant* Jane Doe

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

> Original Filed at Docket No. 179,
> Sealed by Court Order

| | |
|---|---|
| John Doe | |
| **Plaintiff,** | |
| v. | |
| Jane Doe | |
| **Defendant.** | |

CIVIL ACTION NO. 2:24-CV-00825

SECTION: P (3)

**JUDGE DARREL JAMES PAPILLION**

**MAG. JUDGE EVA J. DOSSIER**

## *EX PARTE* MOTION TO APPEAR *PRO HAC VICE*

NOW INTO COURT, pursuant to Local Civil Rule 83.2.5, comes Defendant Jane Doe by her undersigned counsel, who respectfully moves this Court for admission *pro hac vice* of Kathryn Irwin Bronstein of the firm Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067-4643; Telephone: (424) 332-4755, for the purpose of appearing and participating as co-counsel on her behalf in the above action. The undersigned counsel of record, Jared A. Davidson and Caroline M. Murley are active members in good standing of the bar of this Court and agree to serve as the designated local counsel for Kathryn Irwin Bronstein pursuant to LR 83.2.5, in the above action. In support of this motion, attached hereto as Exhibit A is the Declaration of Kathryn Irwin Bronstein stating she has not been the subject of any disciplinary or criminal proceedings, a current Certificate of Good Standing from the California Bar attached as Exhibit B, and the Consent to Electronic Filing Form for Kathryn Irwin Bronstein attached as Exhibit C.

WHEREFORE, Defendant Jane Doe moves this Honorable Court for an Order permitting Kathryn Irwin Bronstein of the firm Covington & Burling, LLP to appear and participate *pro hac vice* as co-counsel in the above action on behalf of Jane Doe .

Respectfully submitted,

*/s/Jared A. Davidson*

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
cmurley@twpdlaw.com

***Counsel for Defendant*** Jane Doe

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all known counsel of record in this proceeding via the court's CM/ECF this 11th day of December, 2025.

*/s/Jared A. Davidson*

TAYLOR, WELLONS, POLITZ & DUHE, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe , **Defendant.** | **JUDGE DARREL JAMES PAPILLIO** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## DECLARATION OF KATHRYN IRWIN BRONSTEIN

I, Kathryn Irwin Bronstein, certify that the following is a true and correct

statement submitted in accordance with Local Rule 83.2.5:

1. I desire to appear as counsel for Jane Doe *pro hac vice* before the United States District Court for the Eastern District of Louisiana in the above-referenced litigation.

2. I am admitted to practice law in the State of California.

3. I have not been admitted to practice law in the State of Louisiana.

4. I have not engaged in the general practice of law in the State of Louisiana without being properly admitted and licensed to practice law in the State of Louisiana.

5. I am currently licensed in good standing to practice law in the State of California.

6. I have never been suspended or disbarred by any jurisdiction in which I have been admitted.

7. I have never been the subject of disciplinary action by the bar or courts of any jurisdiction.

8. No criminal charges have been instituted against me.

9. I consent to electronic service of all documents through the Court's electronic filing system.

10. I agree to confer disciplinary jurisdiction upon this Court for any alleged



misconduct arising in the course of or in preparation for this action.

11.     Jared A. Davidson and Caroline M. Murley of the law firm Taylor, Wellons, Politz & Duhe, LLC will serve as local counsel for Jane Doe in this case

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of December, 2025.      /s/ Kathryn Irwin Bronstein

Kathryn Irwin Bronstein



## Supreme Court of California

JORGE E. NAVARRETE
*Clerk and Executive Officer of the Supreme Court*

## CERTIFICATE OF THE CLERK OF THE SUPREME COURT

### OF THE

## STATE OF CALIFORNIA

### <u>KATHRYN ANN IRWIN BRONSTEIN</u>

I, JORGE E. NAVARRETE, Clerk and Executive Officer of the Supreme Court of the State of California, do hereby certify that KATHRYN ANN IRWIN BRONSTEIN, #349585, was on the 20th day of May 2023 duly admitted to practice as an attorney and counselor at law in all the courts of this state, and is now listed on the Roll of Attorneys as a member of the bar of this state in good standing.

Witness my hand and the seal of the court on the 5th day of December 2025.

JORGE E. NAVARRETE
*Clerk and Executive Officer of the Supreme Court*

By: _____
T. Ma, Deputy Clerk

**EXHIBIT**

**B**

**United States District Court**
**Eastern District of Louisiana**
**ELECTRONIC CASE FILING SYSTEM**
<u>**Consent to Electronic Filing**</u>

# <u>E-File Privileges</u>
**must be requested through PACER:**
<u>www.pacer.gov</u>

This form shall be used to consent to electronic filing in the Eastern District of Louisiana's Electronic Case Filing System (ECF). Registered attorneys will have privileges to submit documents electronically and to view and retrieve electronic docket sheets and documents accessible to the public for cases in the ECF System. If you are seeking admission to the bar of this Court, attach this form to your petition for admission to practice. If you are already admitted to practice, this form should be emailed to ECF_Registration@laed.uscourts.gov. The following information is required for electronic filing.

**Please Type**

First/Middle/Last Name: Kathryn Irwin Bronstein

Attorney Bar # and State: 349585, California

Firm Name: Covington & Burling, LLP

Firm Address: 1999 Avenue of the Stars

Los Angeles, CA 90067-4643

Telephone Number: 424 332 4755

E-Mail Address: kirwinbronstein@cov.com
(Attorney's email for electronic service)

Additional E-Mail Address: _____
(Secretary, central repository, etc.)

Is this regarding a Petition for Admission to practice in the Eastern District of Louisiana?

Yes ☐ No ☑ Date of Filing of Petition for Admission _____

Is this regarding Pro Hac Vice Admission? Yes ☑ No ☐ Case number No. 24-825

Is this regarding a MDL case? Yes ☐ No ☑ MDL case number or name _____

Are you a federal government attorney? Yes ☐ No ☑ Office where employed:

1



- Electronic case filing by attorneys is mandatory in the USDC for the Eastern District of Louisiana for all attorneys and attorneys must file all documents using the CM/ECF System, unless the attorney has filed a motion for an exemption, and the Chief Judge has granted an exemption for good cause shown. See EDLA Local Rule 5.1, EDLA Administrative Procedures for Electronic Case Filings and Unique Procedures for Electronic Case Filings, Rules 1 and 2.

- Attorneys seeking to file documents electronically must be admitted to practice in the United States District Court, Eastern District of Louisiana, pursuant to Civil Local Rule 83.2.2 or be admitted for a particular case (pro hac vice) pursuant to Civil Local Rule 83.2.5. If allowed in the MDL case management order, attorneys may register for electronic case filing in MDL cases without being admitted to practice in this Court or admitted pro hac vice.

- By signing this consent to electronic filing, the undersigned agrees to abide by all Court rules, orders and policies and procedures governing the use of the Electronic Filing System. The undersigned also consents to receive notice of filings pursuant to Fed.R.Civ.P. 5(b) and 77(d) via the Court's Electronic Filing System and consents to receive service from other Filing Users by the Notice of Electronic Filing generated by the Court's Electronic Filing System. The combination of user id and password will serve as the signature of the attorney filing the documents. Attorneys must protect the security of their passwords and immediately notify the court if they learn that their password has been compromised.

- The undersigned agrees to keep informed of the current electronic filing procedures and any updated procedures posted on the court's website at http://www.laed.uscourts.gov/case-information/procedures-and-practices-e-filing.

- The undersigned certifies that he/she has an individual PACER account for filing and viewing documents in the system, appropriate computer hardware, internet access, and software, necessary for ECF filing, including hardware/software that will convert documents created into Portable Document Format (PDF) as required by the Court.

- The undersigned acknowledges that it is his/her responsibility to understand how to file electronically via the CM/ECF system. If necessary, the undersigned will obtain CM/ECF training via the court's online tutorial at http://www.laed.uscourts.gov/cmecf/ecf.htm.

- The undersigned agrees and acknowledges that pursuant to Local Rule 83.2.7, everyone who appears in court in proper person and every attorney permitted to practice in this court must be familiar with the Local Rules. Willful failure to comply with the rules, or a false certificate of compliance is cause for disciplinary action.

**11/4/2025**

Date

*Kathryn Irwin Bronstein*

Attorney Signature

[Rev.11/2019]

2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| John Doe , **Plaintiff,** | **CIVIL ACTION NO. 2:24-CV-00825** |
| v. | **SECTION: P (3)** |
| Jane Doe , **Defendant.** | **JUDGE DARREL JAMES PAPILLIO** |
| | **MAG. JUDGE EVA J. DOSSIER** |

## PROPOSED ORDER

Considering the foregoing Motion for Admission *Pro Hac Vice* of Kathryn Irwin Bronstein as counsel for Defendant Jane Doe ;

IT IS HEREBY ORDERED that Kathryn Irwin Bronstein should be and is hereby admitted to the bar of this Court *pro hac vice* on behalf of Defendant Jane Doe .

New Orleans, Louisiana, this ___ day of December, 2025.

_____
**United States District Judge**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

Original Filed at Docket No. 180, Sealed by Court Order

██████████                                                    CIVIL ACTION

**VERSUS**                                                        NO. 24-825

██████████                                                    SECTION "P" (3)

### ORDER

    Considering Defendant's Unopposed Motion to Substitute Exhibits in Support of Motion to Compel R. Doc. 172 (R. Doc. 173), Defendant's Unopposed Motion to Seal Motion to Compel Compliance with Third Party Subpoena (R. Doc. 174), and Defendant's Unopposed Motion to Seal Motion to Expedite Hearing on Motion to Compel Compliance with Third Party Subpoena (R. Doc. 176);

    **IT IS ORDERED** that Defendant's Motion (R. Doc. 173) is **GRANTED in part and DENIED in part.** The exhibits from the Motion to Substitute Exhibits (R. Doc. 173) shall be filed in the record to be read in place of the exhibits from the Motion to Compel (R. Doc. 172).

    **IT IS FURTHER ORDERED** that Defendant's Motions to Seal (R. Docs. **174** and 176) are **GRANTED** and that the documents at issue (R. Docs. 172, 175) are placed under seal.

    New Orleans, Louisiana, this 11th day of December, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

Original Filed at Docket No. 181,
Sealed by Court Order

████████████                                    **CIVIL ACTION**

**VERSUS**                                        **NO. 24-825**

████████                                          **SECTION: "P" (3)**

## ORDER

Considering the foregoing *Ex Parte* Motion to Appear *Pro Hac Vice* (R. Doc. 179),

**IT IS ORDERED** that the motion is **GRANTED**, and Kathryn Irwin Bronstein is hereby

admitted *pro hac vice* and enrolled as additional counsel of record for Defendant, ████████, in the

above-captioned matter.

New Orleans, Louisiana, this 12th day of December 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

Original Filed at Docket No. 181,
Sealed by Court Order

## NOTICE TO VISITING ATTORNEYS

## ADMITTED PRO HAC VICE

By filing a motion pursuant to Local Rule 83.2.5 to be admitted pro hac vice as a visiting attorney to practice before the United States District Court for the Eastern District of Louisiana, and after being admitted pro hac vice to this court, in addition to the Federal Rules of Civil, Criminal, Appellate, and Bankruptcy Procedure and any other applicable rules, statutes, and laws, you must also comply with and are subject to:

(1) the Local Civil and Criminal Rules of the United States District Court for the Eastern District of Louisiana (Civil Local Rule 83.2.7);

(2) the Rules for Lawyer Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, which incorporate and adopt the Louisiana Rules of Professional Conduct (Civil Local Rule 83.2.3, Rules for Lawyer Disciplinary Enforcement, United States District Court for the Eastern District of Louisiana, Rule 1);

(3) the Louisiana State Bar Association Code of Professionalism (adopted by the Court en banc on August 4, 1999); and

(4) all Court rules, orders, and policies and procedures governing the use of the Electronic Filing System in accordance with the registration form completed when registering for the Electronic Case Filing System for the United States District Court for the Eastern District of Louisiana.

In accordance with Local Rule 83.2.5, by filing a motion to be admitted pro hac vice and after being admitted pro hac vice, you have conferred disciplinary jurisdiction upon the United States District Court for the Eastern District of Louisiana for any alleged attorney misconduct arising in the course of and in preparation for the proceeding.

Pursuant to Local Rule 83.2.7, every attorney admitted to practice in the Eastern District of Louisiana must be familiar with the Local Rules.  Willful failure to comply with the Local Rules, or a false certificate of compliance, is cause for disciplinary action.  Furthermore, all counsel of record must be familiar with the substance of all documents and court orders filed in the case and in any consolidated case pursuant to Local Rule 83.2.8.

Any attorney admitted to practice before the United States District Court for the Eastern District of Louisiana may also be sanctioned for late appearance or for failing to appear, and may be subject to the sanctions listed in Local Rule 83.2.9, in addition to any other sanctions the court imposes.

Version 6/1/2016

FILED    **Dec 15 2025**

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CAROL L. MICHEL
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

_____

CIVIL ACTION NO. 24-CV-0825

John Doe        **Plaintiff**        SECTION: "P"(3)

| Original Filed at Docket No. 182, |
| Sealed by Court Order |

-against-        JUDGE DARRELL JAMES PAPILLION

Jane Doe        **Defendant**        MAGISTRATE JUDGE EVA J. DOSSIER

_____

████████████████ hereby declares, subject to the penalties of perjury pursuant to 28 U.S.C. §1746 as follows:

1.    I am plaintiff's therapist. I am not a party to this proceeding. I live and maintain my professional practice in New Orleans. I am licensed in Louisiana (Licensed Professional Counselor). I am not a lawyer, not used to dealing with lawyers, I haven't engaged a lawyer nor can I afford a lawyer. I didn't receive assistance from my client's lawyer in dealing with this matter. I am unfortunately alone in this. I have never been involved in a lawsuit and have never been subpoenaed. This is a first for me. I have been bullied, treated with disdain and a gross lack of respect by two giant law firms with at least 8 individual lawyers who are named in the papers I received[1].

_____

[1]I am appending ("Appendix "A"") an email from Kara Gorycki, plaintiff's lawyer, which asks the other lawyers to "stand down" with respect to the "harassment" I have been subject to. I did not ask Ms. Gorycki to send this email.

Eight against one is not a fair fight, particularly where the one is me, and I am not a lawyer. I have been forced to take substantial time away from my practice, without pay, without any offer of pay or offer of reimbursement for my time or expense, and try to figure out on my own what to do. I am an educated and respected professional. I did nothing to deserve the manner in which I have been treated and the immense time pressure these lawyers have forced upon me, particularly with the holiday season upon us. I am shocked. I am angry. I am overwhelmed and I feel like an accused person on the run.

2.     I acknowledge that I received the subpoena. Before I get to what my objections are and why I feel I have fully, properly and promptly complied with the subpoena, there are a few things that rankle me. I'm certainly not as well versed in the law as all of these lawyers, but I do have a masters degree and can read and understand English. And I think I know my way around a computer. As set forth below, I am claiming a privilege over my personal psychotherapy notes (I call them my "therapy notes").  I refer this Court to the Supreme Court decision in Jaffe -v- Redmond, 518 U.S. 1 (1996) which addresses the privilege I am claiming.

2

3.     It is undisputed that I promptly and diligently gave the lawyers for Ms. <sup>Jane Doe</sup> my professional clinical notes, actually 30+ pages of clinical notes, for each session with my client from 2021 to 2025. I learned in my training and education that there is a significant distinction between therapy notes and clinical notes and that courts treat this distinction quite differently for purposes of disclosure. I was able to research that the Federal Rules of Evidence Section 501 provides that in civil cases such as this, state law, in this case Louisiana Law, governs privileged communications and privileged documents a therapist, such as myself, can assert in this case.

4.     I researched the Louisiana Law and I'm claiming that the lawyers who sent me this motion to compel did not comply with the Louisiana Law on proper service of a subpoena and, as a result, the subpoena should be thrown out. Louisiana statute RS #13:3715.1, subsection B(1), a copy of which I have appended to this declaration (Appendix "B"), says that I must disclose patient records pursuant to a subpoena issued in a lawsuit "BUT ONLY IF THE HEALTH CARE PROVIDER HAS RECEIVED AN AFFIDAVIT OF THE PARTY OR THE PARTY'S ATTORNEY AT WHOSE REQUEST THE SUBPOENA HAS BEEN ISSUED THAT ATTESTS TO THE FACT THAT SUCH SUBPOENA IS FOR THE RECORDS OF A PARTY TO THE LITIGATION................".

3

I never received an affidavit as required by Louisiana Law, nor is an affidavit part of the motion papers. In view of the above, serving a subpoena without an accompanying affidavit does not comply with Louisiana Law on what is required with regard to subpoenas. I also never received any payment or fee. Accordingly, it is my position that the subpoena I received is no good, not legal, not valid, not effective and not enforceable. I am asking this Court to throw out the subpoena because the rules were not complied with.

5. I am also troubled by how I received this motion. Judge Dossier said, in her Court Order, that "Defendant is responsible for ensuring that the subject of the subpoena (me) is served with a copy of the order". I am a non-party in this case. I acknowledge I received a copy of the Judge's order, but by email only, not by serving me in person, which I have been told is the correct way to serve me unless I have agreed otherwise, which I did not. I do admit to having previously communicated with one of the lawyers by email when I produced my clinical notes but I've been told that does not give them the right to serve me with this motion by email. If in fact service of the motion papers by email is improper, the order to serve me was not complied with and this motion should be denied and the subpoena voided.

4

## DISTINCTION BETWEEN THERAPY NOTES AND CLINICAL NOTES

6. As stated above, I produced 30+ pages of clinical notes to the lawyers for both parties. I believe I fully complied with my legal obligation. I did not produce my personal therapy notes, which is my right, and I am claiming that my personal notes are privileged and are not required to be produced. Clinical notes are used for documenting objective information like diagnosis, symptoms, prognosis, treatment plan and session dates. Therapy notes are personal notes of the therapist which analyze the contents of private counseling sessions and are kept separate from the clinical notes. The distinction exists because therapy notes in general (and my therapy note specifically) contain sensitive personal impressions and hypotheses that are non-objective and are not required for treatment or health care record keeping purposes. Psychotherapy notes are afforded much greater protection from disclosure so as to foster an environment of trust and open communications with the patient. HIPAA privacy rules give special protection to "psychotherapy notes".

7. I have appended (Appendix "C") an online article written by Kim Stanger, Esq., an attorney who leads Holland & Hart's regional Health Law Group which thoroughly explains the distinction, recognizing

the need to protect sensitive private information, including the personal thoughts and opinions of a therapist unrelated to the litigation. As stated in Attorney Stanger's article:

> "....the rationale for providing special protection for psychotherapy notes is not only that they contain particularly sensitive information, but also that they are the personal notes of the therapist, intended to help him or her recall the therapy discussion and are of little or no use to others not involved in the therapy. Information in these notes is not intended to communicate to or even be seen by persons other than the therapist...."

8. The lawyers for defendant assert their belief that I am withholding information or statements made by my client that will incriminate him or prove that he is lying or making a false claim. It is my position that my therapy notes should never be disclosed. It is my contention that this motion should be denied for all of the reasons set forth above. I am nevertheless willing to agree, should the procedural issues be decided against me, to provide my therapy notes to this Court for an "in camera" review to ensure that any disclosure of such notes is protected and extremely limited solely to what is relevant and necessary for the litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 14th day of December, 2025.

6

**APPENDIX "A"**

Email from lawyer Kara Gorycki dated December 4, 2025 to other counsel

From: Kara Gorycki <KGorycki@nmllplaw.com>
Sent: Thursday, December 4, 2025 10:25 AM
To: ██████████████████████████████ Irwin Bronstein, Kathryn
<KIrwinbronstein@cov.com>
Cc: Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Alex
Robertson <alex@mrmlaw.com>
Subject: RE: Subpoena Response

Kathryn,

I respectfully request that you stand down. ████████ is a non-party witness who is not
represented by counsel and your communications are bordering on harassment. He
already stated that he responded fully to the document subpoena. ████████ was given
permission by Plaintiff to fully respond to the subpoena and no one has asserted
psychotherapist/plaintiff privilege. Going to the Court under such circumstances would
only serve to waste ████████ time and resources. He did not even request that you
reimburse him for the time he already spent responding to Defendant's subpoena and
numerous communications from your team.

Thanks,

Kara

Kara Gorycki, Partner
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
212.736.4500   •   212.736.2260 fax
Vcard   •   nmllplaw.com

Recognized by Chambers and Partners 2025

# APPENDIX "B"

Copy of Louisiana Statute on Subpoenas

# RS 13:3715.1

NOTE: This provision of law was included in the Unconstitutional Statutes Biennial Report to the Legislature, dated March 14, 2016.

§3715.1. Medical or hospital records of a patient; subpoena duces tecum and court order to a health care provider; reimbursement for records produced

A. As used in this Section, the following terms shall have the respective meanings ascribed thereto:

(1) Patient "records" shall not be deemed to include x-rays, electrocardiograms, and like graphic matter unless specifically referred to in the subpoena, summons, or court order.

(2) "Health care provider" shall mean a person, partnership, corporation, facility, or institution defined in R.S. 40:1231.1(A).

B. The exclusive method by which medical, hospital, or other records relating to a person's medical treatment, history, or condition may be obtained or disclosed by a health care provider, shall be pursuant to and in accordance with the provisions of R.S. 40:1165.1 or Code of Evidence Article 510, or a lawful subpoena or court order obtained in the following manner:

(1) A health care provider shall disclose records of a patient who is a party to litigation pursuant to a subpoena issued in that litigation, whether for purposes of deposition or for trial and whether issued in a civil, criminal, workers' compensation, or other proceeding, but only if the health care provider has received an affidavit of the party or the party's attorney at whose request the subpoena has been issued that attests to the fact that such subpoena is for the records of a party to the litigation and that notice of the subpoena has been mailed by registered or certified mail or delivered by commercial courier as defined in Code of Civil Procedure Article 1313(D) to the patient whose records are sought, or, if represented, to his counsel of record, at least seven days prior to the issuance of the subpoena; and the subpoena is served on the health care provider at least seven days prior to the date on which the records are to be disclosed, and the health care provider has not received a copy of a petition or motion indicating that the patient has taken legal action to restrain the release of the records. If the requesting party is the patient or, if represented, the attorney for the patient, the affidavit shall state that the patient authorizes the release of the records pursuant to the subpoena. No such subpoena shall be issued by any clerk unless the required affidavit is included with the request.

(2) Any attorney requesting medical records of a patient, who is not a party to the litigation in which the records are being sought may obtain the records by written authorization of the patient whose records are being sought or if no such authorization is given, by court order, as provided in Paragraph (5) of this Subsection.

(3) Any attorney requesting medical records of a patient who is deceased may obtain the records by subpoena, as provided in Paragraph (1) of this Subsection, by written authorization of the person authorized under Civil Code Article 2315.1 or the executor or administrator of the deceased's estate, or by court order, as provided in Paragraph (5) of this Subsection.

(4) Any subpoena for medical records issued by the office of workers' compensation administration in Louisiana Works, or by a hearing officer or agent employed by such office, shall for all purposes be considered a subpoena within the meaning of this Section.

(5) A court shall issue an order for the production and disclosure of a patient's records, regardless of whether the patient is a party to the litigation, only: after a contradictory hearing with the patient, or, if represented, with his counsel of record, or, if deceased, with those persons identified in Paragraph (3) of this Subsection, and after a finding by the court that the release of the requested information is proper; or with consent of the patient.

(6) Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance or alcohol abuse, education, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall be confidential and disclosed only for the purposes and under the circumstances expressly authorized in 42 CFR Part 2. Under this Section, said programs shall include but not be limited to any alcohol or substance abuse clinic or facility operated by the Louisiana Department of Health. No subpoena or court order shall compel disclosure of any record or patient-identifying information of an individual who has applied for or been given diagnosis or treatment for alcohol or drug

abuse in a federally assisted program, unless said court order or subpoena meets the criteria set forth in 42 CFR 2.61, 2.64, or 2.65. No health care provider, employee, or agent thereof shall be held civilly or criminally liable for refusing to disclose protected alcohol and substance abuse records or patient-identifying information unless first presented with a valid consent signed by the individual, which complies with 42 CFR 2.31 or a court order and subpoena which complies with 42 CFR Part 2.

C. No health care provider, employee, or agent thereof shall be held civilly or criminally liable for disclosure of the records of a patient pursuant to the procedure set forth in this Section, R.S. 40:1165.1, or Code of Evidence Article 510, provided that the health care provider has not received a copy of the petition or motion indicating that legal action has been taken to restrain the release of the records.

D. Unless the subpoena or court order otherwise specifies, it shall be sufficient compliance therewith if the health care provider delivers by registered or certified mail, at least forty-eight hours prior to the date upon which production is due, or delivers by hand on the date upon which production is due a true and correct copy of all records described in such subpoena. However, no subpoena or court order shall require the production of original, nonreproducible materials and records unless accompanied by a court order or stipulation of the parties and the health care provider which specifies the person who will be responsible for the care of the items to be produced, the date and manner of the return to the provider of the items to be produced, and that the items to be produced are not to be destroyed or subject to destructive testing. Any subpoena duces tecum not timely served shall be quashed by the trial court without the necessity of an appearance by the hospital, health care facility, or medical physician.

E. The records shall be accompanied by the certificate of the health care provider or other qualified witness, stating in substance each of the following:

(1) That the copy is a true copy of all records described in the subpoena.

(2) That the records were prepared by the health care provider in the ordinary course of the business of the health care provider at or near the time of the act, condition, or event.

F. If the health care provider has none of the records described, or only part thereof, the health care provider shall so state in the certificate, and deliver the certificate and such records as are available.

G. The health care provider shall be reimbursed by the person causing the issuance of the subpoena, summons, or court order in accordance with the provisions of R.S. 40:1165.1.

H. Notwithstanding any other provision of law to the contrary, no health care provider, as defined in R.S. 40:1165.1, shall be required to grant access to or copying of photographs, or both, of any minor or part of a minor's body who is alleged to be the victim of child sexual abuse unless a court of competent jurisdiction, after a contradictory hearing at which the health care provider may but need not be present, orders the health care provider to grant access to or copying of said photographs to the moving party's counsel of record or experts qualified in the medical diagnosis of child sexual abuse, or to both. The court's order granting the access to or copying of said photographs shall be limited to the movant's counsel of record or the experts qualified in the medical diagnosis of child sexual abuse, or both; shall be limited solely to use of said photographs for the purposes of trial preparation; shall prohibit further copying, reproduction, or dissemination of said photographs; and shall prohibit counsel of record or the experts qualified in the medical diagnosis of child sexual abuse from allowing any other person access to said photographs without court order and for good cause shown.

I. A coroner, deputy coroner, or other assistant, while acting in his official capacity relating to a physical or mental investigation and examination or an investigation into the cause and manner of a death, is exempt from complying with the provisions of this Section.

J. The Louisiana State Board of Medical Examiners, Louisiana State Board of Dentistry, Louisiana State Board of Psychologists, Louisiana State Board of Nursing, Louisiana Board of Pharmacy, Louisiana State Board of Social Work Examiners, Louisiana State Board of Physical Therapy Examiners, and the Louisiana State Board of Chiropractic Examiners, while acting in an official capacity relating to an investigation of an individual over whom such board has regulatory authority shall be exempt from complying with the notice provisions of this Section when the subpoena clearly states that no notice or affidavit is required. Notwithstanding any privilege of confidentiality recognized by law, no health care provider or health care institution with which such health care provider is affiliated shall, acting under any such privilege, fail or refuse to respond to a lawfully issued subpoena of such board for any medical information, testimony, records, data, reports or other documents, tangible items, or information relative to any patient treated by such

individual under investigation; however, the identity of any patient identified in or by such records or information shall be maintained in confidence by such board and shall be deemed a privilege of confidentiality existing in favor of any such patient. For the purpose of maintaining such confidentiality of patient identity, such board shall cause any such medical records or the transcript of any such testimony to be altered so as to prevent the disclosure of the identity of the patient to whom such records or testimony relates.

K. Any attorney who causes the issuance of a subpoena or court order for medical, hospital, or other records relating to a person's medical treatment, history, or condition and who intentionally fails to provide notice to the patient or to the patient's counsel of record in accordance with the requirements of this Section shall be subject to sanction by the court.

L. No provision of this Section shall preclude a patient from personally receiving a copy or synopsis of his medical records as provided by law.

Added by Acts 1979, No. 75, §1; Acts 1987, No. 802, §1; Acts 1992, No. 660, §1; Acts 1993, No. 988, §1; Acts 1995, No. 1250, §2; Acts 1999, No. 793, §1; Acts 2001, No. 375, §1; Acts 2001, No. 396, §1; Acts 2004, No. 252, §1; Acts 2006, No. 370, §1; Acts 2008, No. 743, §7, eff. July 1, 2008; Acts 2024, No. 185, §1.

**APPENDIX "C"**

Article by Lawyer Kim Stanger on HIPAA protection to psychotherapy notes

Case 2:24-cv-00825-JD-JBJD Document 182 Filed 06/12/25 Page 1903 of 1935

# HIPAA, Psychotherapy Notes, and Other Mental Health Records

By Kim Stanger



The HIPAA privacy rules give special protection to "psychotherapy notes," but providers often misunderstand what are and are not covered and how they differ from other mental health records.

**I. "Psychotherapy Notes" Defined.**

Contrary to popular belief, HIPAA does not provide special protection to mental health records in general, but it does give added protection to "psychotherapy notes". As defined by HIPAA,

> *Psychotherapy notes* means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's medical record. Psychotherapy notes excludes medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: Diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date.

(45 C.F.R. § 164.501). To be considered "psychotherapy notes", the notes must be separate from the medical record. The 2000 commentary explains the reason for this rule along with HHS's practical view of what constitutes "psychotherapy notes":

> *Comment:* Some commenters thought the definition of psychotherapy notes was contrary to standard practice. They claimed that reports of psychotherapy are typically part of the medical record and that psychologists are advised, for ethical reasons and liability risk management purposes, not to keep two separate sets of notes....
>
> *Response:* We conducted fact-finding with providers and other knowledgeable parties to determine the standard practice of psychotherapists and determined that only some psychotherapists keep separate files with notes pertaining to psychotherapy sessions. These notes are often referred to as "process notes," distinguishable from "progress notes," "the medical record," or "official records." These process notes capture the therapist's impressions about the patient, contain details of the psychotherapy

conversation considered to be inappropriate for the medical record, and are used by the provider for future sessions. We were told that process notes are often kept separate to limit access, even in an electronic record system, because they contain sensitive information relevant to no one other than the treating provider. These separate "process notes" are what we are calling "psychotherapy notes." Summary information, such as the current state of the patient, symptoms, summary of the theme of the psychotherapy session, diagnoses, medications prescribed, side effects, and any other information necessary for treatment or payment, is always placed in the patient's medical record. Information from the medical record is routinely sent to insurers for payment.

*Comment:* ... Many commenters believed that the psychotherapy notes should include frequencies of treatment, results of clinical tests, and summary of diagnosis, functional status, the treatment plan, symptoms, prognosis and progress to date. They claimed that this information is highly sensitive and should not be released without the individual's written consent, except in cases of emergency....

*Response:* As discussed above and in the NPRM, the rationale for providing special protection for psychotherapy notes is not only that they contain particularly sensitive information, but also that they are the personal notes of the therapist, intended to help him or her recall the therapy discussion and are of little or no use to others not involved in the therapy. Information in these notes is not intended to communicate to, or even be seen by, persons other than the therapist. Although all psychotherapy information may be considered sensitive, we have limited the definition of psychotherapy notes to only that information that is kept separate by the provider for his or her own purposes. It does not refer to the medical record and other sources of information that would normally be disclosed for treatment, payment, and health care operations.

Comment: One commenter was particularly concerned that the use of the term "counseling" in the definition of psychotherapy notes would lead to confusion because counseling and psychotherapy are different disciplines.

*Response:* In the final rule, we continue to use the term "counseling" in the definition of "psychotherapy." During our fact-finding, we learned that "counseling" had no commonly agreed upon definition, but seemed to be widely understood in practice. We do not intend to limit the practice of psychotherapy to any specific professional disciplines.

*Comment:* One commenter noted that the public mental health system is increasingly being called upon to integrate and coordinate services among other providers of mental health services and they have developed an integrated electronic medical record system for state-operated hospitals, part of which includes psychotherapy notes, and which cannot be easily modified to provide different levels of confidentiality. Another commenter recommended allowing use or disclosure of psychotherapy notes by members of an integrated health care facility as well as the originator.

*Response:* The final rule makes it clear that any notes that are routinely shared with others, whether as part of the medical record or otherwise, are, by definition, not psychotherapy notes, as we have defined them. To qualify for the definition and the increased protection, the notes must be created

and maintained for the use of the provider who created them i.e., the originator, and must not be the only source of any information that would be critical for the treatment of the patient or for getting payment for the treatment. The types of notes described in the comment would not meet our definition for psychotherapy notes.

*Comment:* Many providers expressed concern that if psychotherapy notes were maintained separately from other protected health information, other health providers involved in the individual's care would be unable to treat the patient properly…

*Response:* The final rule retains the policy that psychotherapy notes be separated from the remainder of the medical record in order to receive additional protection. We based this decision on conversations with mental health providers who have told us that information that is critical to the treatment of individuals is normally maintained in the medical record and that psychotherapy notes are used by the provider who created them and rarely for other purposes. **A strong part of the rationale for the special treatment of psychotherapy notes is that they are the personal notes of the treating provider and are of little or no use to others who were not present at the session to which the notes refer.**

(65 F.R. 82622-23, emphasis added).

## II. Limits on Use or Disclosure of Psychotherapy Notes.

A. **Permissible Uses; Authorizations.** Unlike other protected health information, only the creator of the psychotherapy notes may use the notes for treatment purposes; use or disclosure by others for purposes of treatment payment or healthcare operations or for other reasons generally require the patient's HIPAA-compliant authorization. The relevant rule states:

*Authorization required:* psychotherapy notes. Notwithstanding any provision of this subpart, … a covered entity must obtain an authorization for any use or disclosure of psychotherapy notes, except:

  i. To carry out the following treatment, payment, or health care operations:

    A. Use by the originator of the psychotherapy notes for treatment;

    B. Use or disclosure by the covered entity for its own training programs in which students, trainees, or practitioners in mental health learn under supervision to practice or improve their skills in group, joint, family, or individual counseling; or

    C. Use or disclosure by the covered entity to defend itself in a legal action or other proceeding brought by the individual; and

  ii. A use or disclosure that is required by § 164.502(a)(2)(ii) [i.e., a disclosure to HHS] or permitted by § 164.512(a) [i.e., disclosure required by another law, such as reporting abuse]; § 164.512(d) with respect to the oversight of the originator of the psychotherapy notes [i.e., health oversight activities]; § 164.512(g)(1) [i.e., coroners]; or § 164.512(j)(1)(i) [i.e., disclosures to avoid harm to patient or others].

  (45 C.F.R. § 164.508(a)(2)). "An authorization for a use or disclosure of psychotherapy notes may only be combined with another authorization for a use or disclosure of psychotherapy notes." (*Id.* at § 164.508(b)(3)(ii)).

The Office for Civil Rights has explained the differing standards that apply to psychotherapy notes as compared to other mental health records:

> Generally, the Privacy Rule applies uniformly to all protected health information, without regard to the type of information. One exception to this general rule is for psychotherapy notes, which receive special protections....
>
> Psychotherapy notes are treated differently from other mental health information both because they contain particularly sensitive information and because they are the personal notes of the therapist that typically are not required or useful for treatment, payment, or health care operations purposes, other than by the mental health professional who created the notes. Therefore, with few exceptions, the Privacy Rule requires a covered entity to obtain a patient's authorization prior to a disclosure of psychotherapy notes for any reason, including a disclosure for treatment purposes to a health care provider other than the originator of the notes. See 45 CFR 164.508(a)(2). A notable exception exists for disclosures required by other law, such as for mandatory reporting of abuse, and mandatory "duty to warn" situations regarding threats of serious and imminent harm made by the patient (State laws vary as to whether such a warning is mandatory or permissible).

(OCR, *HIPAA Privacy Rule and Sharing Information Related to Mental Health*, emphasis added.).

B. **Denial of Access.** Unlike other protected health information, a healthcare provider may deny a patient or their personal representative access to psychotherapy notes. (45 C.F.R. § 164.524(a)(1)(ii)). The OCR has published the following FAQ on the issue:

> *Does a parent have a right to receive a copy of psychotherapy notes about a child's mental health treatment?*
>
> No. The Privacy Rule distinguishes between mental health information in a mental health professional's private notes and that contained in the medical record. It does not provide a right of access to psychotherapy notes.... Psychotherapy notes are primarily for personal use by the treating professional and generally are not disclosed for other purposes. Thus, the Privacy Rule includes an exception to an individual's (or personal representative's) right of access for psychotherapy notes. See 45 CFR 164.524(a)(1)(i).

(OCR, *HIPAA Privacy Rule and Sharing Information Related to Mental Health*).

HHS commentary affirms that the right to deny access only applies to psychotherapy notes, not other mental health records:

> We generally agree with the commenters concerns that denying access specifically to mental health records could create distrust. To balance this concern with other commenters' concerns about the potential for psychological harm, however, we **exclude psychotherapy notes from the right of access.** This is the only distinction we make between mental health information and other types of protected health information in the access provisions of this rule. Unlike other types of protected health information, these notes are not widely disseminated through the health care system. We believe that the individual's privacy interests in having access to these notes,

therefore, are outweighed by the potential harm caused by such access. We encourage covered entities that maintain psychotherapy notes, however, to provide individuals access to these notes when they believe it is appropriate to do so.

(65 F.R. 82733, emphasis added). In the context of parental access, the OCR explained:

[P]arents generally are the personal representatives of their minor child and, as such, are able to receive a copy of their child's mental health information contained in the medical record, including information about diagnosis, symptoms, treatment plans, etc. Further, although **the Privacy Rule does not provide a right for a patient or personal representative to access psychotherapy notes regarding the patient,** HIPAA generally gives providers discretion to disclose the individual's own protected health information (including psychotherapy notes) directly to the individual or the individual's personal representative. As any such disclosure is purely permissive under the Privacy Rule, mental health providers should consult applicable State law for any prohibitions or conditions before making such disclosures.

(OCR, *HIPAA Privacy Rule and Sharing Information Related to Mental Health*). Thus, there is no general right to deny access to other mental health records that are not psychotherapy notes. If the patient requests psychotherapy notes along with other records, "[t]he covered entity must, to the extent possible, give the individual access to any other protected health information requested, after excluding the [psychotherapy notes]." (45 C.F.R. § 164.524(d)(1)). That should be relatively easy because, by definition, psychotherapy notes must be maintained separately from other medical records.

To deny access to mental health records beyond psychotherapy notes, the provider would have to fit within one of the other exceptions in § 164.524, including but not limited to the following:

a. The "information was obtained from someone other than a health care provider under a promise of confidentiality and the access requested would be reasonably likely to reveal the source of the information;"
b. "A licensed health care professional has determined, in the exercise of professional judgment, that the access requested is reasonably likely to endanger the life or physical safety of the individual or another person;"
c. "The protected health information makes reference to another person (unless such other person is a health care provider) and a licensed health care professional has determined, in the exercise of professional judgment, that the access requested is reasonably likely to cause substantial harm to such other person;" or
d. "The request for access is made by the individual's personal representative and a licensed health care professional has determined, in the exercise of professional judgment, that the provision of access to such personal representative is reasonably likely to cause substantial harm to the individual or another person."

(*Id.* at § 164.524(a)(2)-(3)). A patient who is denied access to their mental health records under situations (2) to (4), above, is entitled to have the denial reviewed by a licensed independent practitioner identified by the provider. (*Id.* at § 164.524(a)(4)).

C. **Psychotherapy Notes and Health Information Organizations.** Because of the special protection given psychotherapy notes, providers generally may not share psychotherapy notes with healthcare databanks absent the patient's authorization. The OCR published the following FAQ:

> *Does the HIPAA Privacy Rule permit a covered entity to disclose psychotherapy notes to or through a health information organization (HIO)?*

Yes, provided the covered entity has obtained the individual's written authorization in accordance with 45 C.F.R. § 164.508.... With few exceptions, the Privacy Rule requires a covered entity to obtain individual authorization prior to a disclosure of psychotherapy notes, even for a disclosure to a health care provider other than the originator of the notes, for treatment purposes. For covered entities operating in an electronic environment, the Privacy Rule does, however, allow covered entities to disclose protected health information pursuant to an electronic copy of a valid and signed authorization, as well as to obtain HIPAA authorizations electronically from individuals, provided any electronic signature is valid under applicable law.

(OCR FAQ, emphasis added).

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

Original Filed at Docket No. 183,
Sealed by Court Order

| | |
|---|---|
| John Doe<br><br>        Plaintiff,<br><br>v.<br><br>Jane Doe<br><br>        Defendant. | **CIVIL ACTION NO. 2:24-CV-00825**<br><br>**SECTION: P (3)**<br><br>**JUDGE DARREL JAMES PAPILLION**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

## DEFENDANT'S REPLY TO ███████████ OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENA

███████████ opposition to Jane Doe Motion confirms that he is withholding materials—"therapy notes"—that are unquestionably responsive to Jane Doe subpoena.

███████████ refusal to produce those materials proceeds from the erroneous premise that a psychotherapist can assert the psychotherapist-patient privilege even where the patient has waived it. *See Jaffe v. Redmond*, 518 U.S. 1, 15 n.14 (1996) ("Like other testimonial privileges, the patient may of course waive the [psychotherapist-patient] protection."). The privilege belongs to the patient, not the psychotherapist, and the patient alone can waive the privilege—as Plaintiff John Doe has done here. *See Hillhouse v. IPFS Corp.*, No. 24-cv-1855, 2025 WL 2207033, at *3 (E.D. La. Aug. 4, 2025) (Louisiana Code of Evidence 510 is "subject to exceptions, including '[w]hen the communication is relevant to an issue of the health condition of the patient in any proceeding in which the patient is a party and relies upon the condition as an element of his claim or defense.'" (quoting La. Code Evid. art. 510(B)(2)(c)); *McPherson v. Vignobles Sullivan, LLC*, No. 3:20-cv-00384, 2022 WL 815061, at *3 (M.D. Tenn. Mar. 16, 2022) ("[T]he [psychotherapist-patient] privilege is [the patient's] to waive…").

Here, there is no dispute that **John Doe** has waived the privilege. *See* Ex. A, at 1 (email from **John Doe** counsel: "no one has asserted the psychotherapist/plaintiff privilege"). ***Consistent with that waiver,*** **John Doe** ***has not opposed*** Jane Doe *motion*.

Moreover, **John Doe** waiver is not limited. Regardless of how ▮▮▮▮▮ characterizes them, all notes of his communications with **John Doe** are responsive and discoverable. *See, e.g.*, *McPherson*, 2022 WL 815061, at *3 (categorizing "therapy notes" and "other records regarding [patient's] therapy appointments" as both falling within scope of waiver of psychotherapist-patient privilege). Both "clinical notes" and "therapy notes" fall within the ambit of the psychotherapist-patient privilege; both are within the scope of **John Doe** waiver; and both must be produced in response to **Jane Doe** subpoena. *See Hardy v. Scandinavian Airline Systems*, No. 21-1591, 2025 WL 416106, at *9–10 (E.D. La. Feb. 6, 2025) (ordering production of medical records, including "psychotherapy notes," where patient waived psychotherapist-patient privilege and finding that court order satisfies protections of such notes under Health Insurance Portability and Accountability Act ("HIPAA"))*; McPherson*, 2022 WL 815061, at *3–4 (granting motion to compel non-party psychotherapist's compliance with subpoena requesting medical records, including "therapy notes" and other records related to patient's appointments given patient's privilege waiver).

Nor is there a basis for ▮▮▮▮▮▮ request for the Court to conduct an *in-camera* review of his "therapy notes." Because **John Doe** has waived the psychotherapist-patient privilege, the Court need not review ▮▮▮▮▮ therapy notes to determine whether the notes are covered by the privilege. Indeed, ▮▮▮▮▮ does not contest that his notes from his sessions with <sup>John Doe</sup> are responsive to the subpoena.

2

As to ███████ procedural arguments, Jane Doe properly served the subpoena on ██

███ Where, as here, there has been waiver of the privilege, Louisiana Code of Evidence

Article 510 provides that a party may obtain medical records through a standard discovery request

like the one Jane Doe served on ████████ La. Code Evid. art. 510(E) ("The exceptions to the

privilege set forth in Paragraph B(2) shall constitute a waiver of the privilege . . . as to . . . discovery

of the privileged communication by one of the discovery methods authorized by Code of Civil

Procedure Article 1421 et seq., or pursuant to R.S. 40:1165.1 or R.S. 13:3715.1"); La. Code of

Civ. P. art. 1421 (describing discovery methods under Louisiana law, including "depositions" and

"productions of documents and things"). Moreover, Jane Doe followed all applicable procedures

for serving a subpoena in federal court. *See* Fed. R. Civ. P. 45(b); Ex. B (proof of delivery of

subpoena to █████████[1]

Jane Doe also properly served the Court's December 9, 2025 Order on ████████ by

email the same day that the Court issued the Order. *See* Certificate of Service, Defendant's Motion

to Compel Compliance with Third Party Subpoena (Dec. 10, 2025). As ███████

acknowledges, Jane Doe counsel previously communicated with ████████ by email.

*See, e.g.*, Ex. A. Nor is there an issue as to ████████ receipt of the Order given that he filed

a timely response on December 15 and indicated no issues in that regard.

Finally, as to ███████ assertion that Jane Doe counsel has "bullied" and "treated

[████████ with disdain and a gross lack of respect," *see* Mem. in Opp'n, at 6, we invite the

Court to review Jane Doe email correspondence with ████████ *See* Ex. A; *see also* Exs. D

---

[1] To the extent that ████████ has incurred or will incur duplicating costs in connection with preparing materials for production, Jane Doe will reimburse ████████ for those expenses. Further, pursuant to Fed. R. Civ. P. 45(b)(1) and 28 U.S.C. § 1821(b), ██ne Doe will tender ██ ████ $40 for one day's attendance at his deposition, which is scheduled for January 5, 2026.

3

and E, Def.'s Mem. in Supp. of Mot. to Compel Compliance of ▇▇▇▇▇▇ with Third Party Subpoena. Jane Doe has had no communication with ▇▇▇▇▇ other than the correspondence in those three exhibits.

For the foregoing reasons and those set forth in her opening memorandum, Jane Doe respectfully requests that the Court grant the Motion to Compel ▇▇▇▇▇▇ compliance with the third party subpoena issued October 7, 2025. Given that ▇▇▇▇▇▇ deposition is scheduled for January 5, 2026, Jane Doe requests that the documents be produced as soon as possible and in no event later than December 29, 2025.

Respectfully Submitted,

December 16, 2025

/s/ Jared A. Davidson
Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

-and-

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)
Destinee E. Haller* (admitted *pro hac vice*)
Christina Coleburn (admitted *pro hac vice*)
Thomas Scott Shelton (admitted *pro hac vice*)
Kathryn Irwin Bronstein** (admitted *pro hac vice*)

COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
ccoleburn@cov.com
sshelton@cov.com
kirwinbronstein@cov.com
*New York Office
**Los Angeles Office

*Attorneys for Defendant* Jane Doe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on all counsel of record on this 16th day of December, 2025.

/s/ *Jared A. Davidson*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

| **From:** | Irwin Bronstein, Kathryn |
| **To:** | Kara Gorycki; ███████ |
| **Cc:** | Roman, Neil; Shah, Komal; Alex Robertson |
| **Subject:** | RE: Subpoena Response |
| **Date:** | Thursday, December 4, 2025 11:17:04 AM |
| **Attachments:** | image001.png |
| | image004.png |

Kara,

As you know, we are entitled to all documents responsive to the subpoena. Although ███ ██████ has stated that he has responded in full to the subpoena, he has not yet stated whether he is withholding responsive documents (and, if so, on what basis) – if he is not withholding documents, he should say so and the matter will be ended; that he has declined to do so suggests that he is withholding responsive documents. Without the requisite confirmation, we will seek relief from the Court – again, as you know, non-parties who do not honor their obligations under subpoenas may be required to explain their non-compliance to a court.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

# COVINGTON

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Thursday, December 4, 2025 10:25 AM
**To:** ███████ ████████████████████ Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: Subpoena Response

==[EXTERNAL]==
Kathryn,
I respectfully request that you stand down. ███████ is a non-party witness who is not represented by counsel and your communications are bordering on harassment. He already stated that he responded fully to the document subpoena. ███████ was given permission by Plaintiff to fully respond to the subpoena and no one has asserted psychotherapist/plaintiff privilege. Going to the Court under such circumstances would only serve to waste ███ ██████ time and resources. He did not even request that you reimburse him for the time he already spent responding to Defendant's subpoena and numerous communications from your

team.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

Vcard   •   nmllplaw.com

*Recognized by Chambers and Partners 2025*

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** ▮▮▮▮▮▮ <▮▮▮▮▮▮▮▮▮▮▮com>
**Sent:** Thursday, December 4, 2025 12:15 PM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: Subpoena Response

Hi - As I stated already, I've responded in full to the subpoena. -

On Thu, Dec 4, 2025, 10:57 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:

>
>
> Thank you for the response.  To clarify, are you withholding any documents responsive to the subpoena from your production?  For example, if you have any handwritten notes from sessions with John Doe     those would be responsive to the subpoena.  If so, please identify which documents you are withholding and on what basis.
>
> If you are withholding responsive documents on the basis of the psychotherapist-patient privilege, we will have no choice but to seek relief from the Court given that John Doe      has waived

that privilege and advised you that he has done so.  Again, we understand that normally communications with clients are privileged, but that is not the case here.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

# COVINGTON

---

**From:** ██████████ <████████████████████com>
**Sent:** Wednesday, December 3, 2025 1:04 PM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: Subpoena Response

<mark>[EXTERNAL]</mark>
Hi  -

This letter confirms that I have already responded in full to the subpoena issued in the above matter.

I am not able to produce any additional materials beyond what has already been furnished.

If you have further questions regarding the scope of permissible disclosure, please direct them to the court or your client.

Sincerely,

██████

On Tue, Dec 2, 2025 at 11:16 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:



> Thank you for sending your subpoena response on Friday, although it does not appear to be complete.
>
> **By the end of this week, please supplement your response with scans of any handwritten notes from your sessions with**  John Doe **as well with as any other materials from**

**his file that you have not yet produced.**

Although we understand the sensitivity of this information and that you may not have encountered this situation before, John Doe has waived the psychotherapist-patient privilege by raising claims of emotional distress in this litigation. As his attorney has confirmed, this waiver means that nothing between you and John Doe is protected and you are required to respond in full to the subpoena, including with substantive materials related to the issues addressed in therapy. The same will be true for your deposition – all information requested about your therapy sessions with John Doe must be provided.

Please let us know if you have questions.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

---

**From:** Irwin Bronstein, Kathryn
**Sent:** Saturday, November 29, 2025 4:56 PM
**To:** ███████ <████████████████com>
**Subject:** RE: Subpoena Response

Thank you, ██████ Confirming receipt. Hope you had a wonderful Thanksgiving.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

**From:** ███████████████████████

**Sent:** Friday, November 28, 2025 11:30 AM

**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>

**Subject:** Subpoena Response

[EXTERNAL]

📄 IM.zip

--

███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████

*Email is not very secure; please use discretion conveying sensitive content. In case of emergency, please call 211 (the crisis line) or 911.



 

Tracking ID:     884979966549                                                           ⋮

 Delivered
Wednesday, 10/8/25 at 10:41 AM

Signed for by: ███████

→ **View more details**

⤓ **Obtain proof of delivery**

🔍 **Report missing package**

**From**
NEW ORLEANS,LA US

**To**
NEW ORLEANS, LA US

**OUR COMPANY**

About FedEx

Our Portfolio

Investor Relations

Careers

FedEx Blog

Corporate Responsibility

Newsroom

Contact Us

**MORE FROM FEDEX**

FedEx Compatible

FedEx Developer Portal

FedEx Logistics

**LANGUAGE**

 United States

**FOLLOW FEDEX**

© FedEx 1995-2025
Site Map  |  Cookie Consent  |  Terms of Use  |  Privacy & Security  |  Ad Choices

| | |
|---|---|
| **From:** | Irwin Bronstein, Kathryn |
| **To:** | Kara Gorycki; ███████ |
| **Cc:** | Roman, Neil; Shah, Komal; Alex Robertson |
| **Subject:** | RE: Subpoena Response |
| **Date:** | Thursday, December 4, 2025 11:17:04 AM |
| **Attachments:** | image001.png |
| | image004.png |

Kara,

As you know, we are entitled to all documents responsive to the subpoena.  Although ██ ██████ has stated that he has responded in full to the subpoena, he has not yet stated whether he is withholding responsive documents (and, if so, on what basis) – if he is not withholding documents, he should say so and the matter will be ended; that he has declined to do so suggests that he is withholding responsive documents.  Without the requisite confirmation, we will seek relief from the Court – again, as you know, non-parties who do not honor their obligations under subpoenas may be required to explain their non-compliance to a court.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

**From:** Kara Gorycki <KGorycki@nmllplaw.com>
**Sent:** Thursday, December 4, 2025 10:25 AM
**To:** ██████ <██████████████ com>; Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Cc:** Roman, Neil <nroman@cov.com>; Shah, Komal <KShah@cov.com>; Alex Robertson <alex@mrmlaw.com>
**Subject:** RE: Subpoena Response

<mark>[EXTERNAL]</mark>
Kathryn,
I respectfully request that you stand down. ██████████ is a non-party witness who is not represented by counsel and your communications are bordering on harassment. He already stated that he responded fully to the document subpoena. ██████████ was given permission by Plaintiff to fully respond to the subpoena and no one has asserted psychotherapist/plaintiff privilege. Going to the Court under such circumstances would only serve to waste ███ ██████ time and resources. He did not even request that you reimburse him for the time he already spent responding to Defendant's subpoena and numerous communications from your

team.

Thanks,
Kara



**Kara Gorycki, Partner**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500  •  212.736.2260 fax

Vcard  •  nmllplaw.com

*Recognized by Chambers and Partners 2025*

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.

---

**From:** ▮▮▮▮▮▮▮ <▮▮▮▮▮▮▮▮▮▮▮▮▮com>
**Sent:** Thursday, December 4, 2025 12:15 PM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: Subpoena Response

Hi - As I stated already, I've responded in full to the subpoena. -

On Thu, Dec 4, 2025, 10:57 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:



> Thank you for the response.  To clarify, are you withholding any documents responsive to the subpoena from your production?  For example, if you have any handwritten notes from sessions with John Doe those would be responsive to the subpoena.  If so, please identify which documents you are withholding and on what basis.
>
> If you are withholding responsive documents on the basis of the psychotherapist-patient privilege, we will have no choice but to seek relief from the Court given that John Doe has waived

that privilege and advised you that he has done so. Again, we understand that normally communications with clients are privileged, but that is not the case here.

Kathryn


**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

# COVINGTON

---

**From:** ███████ <█████████████████com>
**Sent:** Wednesday, December 3, 2025 1:04 PM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Re: Subpoena Response

<mark>[EXTERNAL]</mark>
Hi -

This letter confirms that I have already responded in full to the subpoena issued in the above matter.

I am not able to produce any additional materials beyond what has already been furnished.

If you have further questions regarding the scope of permissible disclosure, please direct them to the court or your client.

Sincerely,



On Tue, Dec 2, 2025 at 11:16 AM Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com> wrote:

>
>
> Thank you for sending your subpoena response on Friday, although it does not appear to be complete.
>
> **By the end of this week, please supplement your response with scans of any handwritten notes from your sessions with** John Doe **as well with as any other materials from**

**his file that you have not yet produced.**

Although we understand the sensitivity of this information and that you may not have encountered this situation before, John Doe has waived the psychotherapist-patient privilege by raising claims of emotional distress in this litigation. As his attorney has confirmed, this waiver means that nothing between you and John Doe is protected and you are required to respond in full to the subpoena, including with substantive materials related to the issues addressed in therapy. The same will be true for your deposition – all information requested about your therapy sessions with John Doe must be provided.

Please let us know if you have questions.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

---

**From:** Irwin Bronstein, Kathryn
**Sent:** Saturday, November 29, 2025 4:56 PM
**To:** ████████ <████████████████com>
**Subject:** RE: Subpoena Response

Thank you, ████ Confirming receipt. Hope you had a wonderful Thanksgiving.

Kathryn

**Kathryn Irwin Bronstein**

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T +1 424 332 4755 | kirwinbronstein@cov.com
www.cov.com

**COVINGTON**

**From:** █████████████████████████████████
**Sent:** Friday, November 28, 2025 11:30 AM
**To:** Irwin Bronstein, Kathryn <KIrwinbronstein@cov.com>
**Subject:** Subpoena Response

<mark>[EXTERNAL]</mark>

📄 IM.zip

--

████████████████████████████████

*Email is not very secure; please use discretion conveying sensitive content. In case of emergency, please call 211 (the crisis line) or 911.



 

**Tracking ID:** 884979966549

⋮

✅ **Delivered**
Wednesday, 10/8/25 at 10:41 AM

Signed for by:

→ **View more details**

⤓ **Obtain proof of delivery**

🔍 **Report missing package**

**From**
NEW ORLEANS,LA US

**To**
NEW ORLEANS, LA US

**OUR COMPANY**

About FedEx

Our Portfolio

Investor Relations

Careers

FedEx Blog

Corporate Responsibility

Newsroom

Contact Us

**MORE FROM FEDEX**

FedEx Compatible

FedEx Developer Portal

FedEx Logistics

**LANGUAGE**

 United States

**FOLLOW FEDEX**

© FedEx 1995-2025

Site Map | Cookie Consent | Terms of Use | Privacy & Security | Ad Choices

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**Original Filed at Docket No. 184, Sealed by Court Order**

CIVIL ACTION

**VERSUS**                                                    NO. 24-825

█████████                                                    SECTION "P" (3)

## <u>ORDER AND REASONS</u>

Before the Court is Defendant's Motion to Compel Compliance with Third Party Subpoena (R. Doc. 172). The subpoena is directed to documents in the possession of Plaintiff's therapist, █████████ relative to his treatment of Plaintiff. Plaintiff does not oppose the motion to compel compliance with the subpoena. █ █████ opposes the motion. For the following reasons, the motion is granted.

█████████ previously produced his clinical notes, but he objects to the production of his therapy notes. █████████ maintains that his therapy notes are subject to the psychotherapist-patient privilege. █████████ is correct. *See Jaffe v. Redmond*, 518 U.S. 1 (1996). The privilege, however, belongs to the patient. *See id.* at 15 n.14 ("Like other testimonial privileges, the patient may of course waive the protection."). Once a patient waives the privilege, the therapist may no longer rely on its protection. Here, through counsel, Plaintiff unequivocally waived any privilege relative to the documents. Email correspondence from Plaintiff's counsel confirms: "█████████ was given permission by Plaintiff to fully respond to the subpoena and

no one has asserted psychotherapist/plaintiff privilege."[1] Thus, ▮▮▮▮▮▮ may not avoid compliance with the subpoena through the assertion of privilege.

Although primarily relying on privilege, ▮▮▮▮▮▮ also submitted authority for the proposition that a mental healthcare provider may deny "a patient or their personal representative" access to psychotherapy notes.[2] But "the regulations specifically allow covered entities to disclose protected health information in judicial proceedings, including in response to a court order or subpoena." *Evenson v. Hartford Life & Annuity Ins. Co.*, 244 F.R.D. 666 (M.D. Fla. 2007); *see also Townsend v. Shook*, No. 506CV70, 2007 WL 1612657 (W.D.N.C. May 31, 2007); *Findley v. Findley*, 2006-266 (La. App. 3 Cir. 8/16/06), 937 So. 2d 912, 916, *writ denied*, 2006-2280 (La. 10/6/06), 938 So. 2d 88.

▮▮▮▮▮▮ remaining procedural objections are unfounded. First, ▮▮▮▮ relies on state statutes relative to service, but Federal Rule of Civil Procedure 45 governs service in this lawsuit. Second, although ▮▮▮▮▮▮ suggests that the Court's briefing order should have been served on him personally, defense counsel reasonably interpreted the Order to allow email service given the imminence of the deadlines. Third, insofar as ▮▮▮▮▮▮ suggests that document review and production may be burdensome, Defendant has agreed to reimburse ▮▮▮▮▮▮ for

---

[1] R. Doc. 183-1 at 1.
[2] *See* R. Doc. 182-3 at 5.

costs incurred in connection with the production. If a dispute arises relative to reimbursement, the Court will handle it on an expedited basis.

The Court recognizes the burden placed on ███████ in litigating these issues. His noncompliance with the subpoena rested on a good faith misunderstanding of the law relative to privilege. That said, there is no legitimate basis by which to refuse compliance with the subpoena given today's Order.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Compel Compliance with Third-Party Subpoena (R. Doc. 172) is **GRANTED** and that ███████ must produce to defense counsel *all* documents responsive to the subpoena (whether categorized as therapy notes or something else) no later than **December 29, 2025**.

**IT IS FURTHER ORDERED** that all responsive documents are designated Confidential under the Protective Order pending further review and designation by the parties.

New Orleans, Louisiana, this 16th day of December, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

**Original Filed at Docket No. 185, Sealed by Court Order**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| John Doe , Plaintiff, v. Jane Doe , Defendant. | CIVIL ACTION NO. 2:24-CV-00825 SECTION: P (3) JUDGE DARREL JAMES PAPILLION MAG. JUDGE EVA J. DOSSIER |

## STIPULATION OF DISMISSAL

**IT IS HEREBY STIPULATED AND AGREED**, by and among Plaintiff John Doe , and Defendant Jane Doe, through their undersigned counsel, that the above-captioned action be, and hereby is, dismissed with prejudice pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, with each party to bear its own costs and attorneys' fees.

Dated: February 18, 2026

/s/ *Kara L. Gorycki*
   Kara L. Gorycki (admitted *pro hac vice*)
NY Atty ID: 4140992
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Email: kgorycki@nmllplaw.com
Telephone: (212) 736-4500

   *-and-*

Alex Robertson
LA Atty ID: 37285
Marcelle Robertson Mestayer, LLC
650 Poydras St. Ste. 2720
Telephone: (504) 910-6220

***Attorneys for Plaintiff***   John Doe

/s/ *Jared A. Davidson*

Jared A. Davidson, La. Bar No. 32419
Caroline M. Murley, La. Bar No. 36599
TAYLOR, WELLONS, POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Tel: (504) 525-9888
jdavidson@twpdlaw.com
cmurley@twpdlaw.com

*-and-*

Neil K. Roman (admitted *pro hac vice*)
Komal Shah (admitted *pro hac vice*)
Thomas Scott Shelton (admitted *pro hac vice*)
Shanelle Van (admitted *pro hac vice*)
Zora F. Franicevic* (admitted *pro hac vice*)
Ashton E. Woods (admitted *pro hac vice*)

1

Destinee E. Haller* (admitted *pro hac vice*)
Kathryn Irwin Bronstein**

Christina Coleburn (admitted *pro hac vice*)

COVINGTON & BURLING LLP
One CityCenter
850 10th St NW
Washington, DC 20902
Tel: (202) 662-5869
Fax: (202) 778-5869
nroman@cov.com
kshah@cov.com
sshelton@cov.com
svan@cov.com
zfranicevic@cov.com
awoods@cov.com
dhaller@cov.com
kirwinbronstein@cov.com
ccoleburn@cov.com
*New York Office
**Los Angeles

***Attorneys for Defendant*** Jane Doe

MINUTE ENTRY
DOSSIER, M.J.
May 4, 2026

Original Filed at Docket No. 187,
Sealed by Court Order

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

John Doe                                   CIVIL ACTION

VERSUS                                     NO. 24-825

Jane Doe                                   SECTION: "P" (3)

A telephone status conference was held on Monday, May 4, 2026.

PRESENT FOR:

*Plaintiff:* Kara Gorycki

*Defendants:* Komal Shah

The parties discussed the Motion to Seal.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

MJSTAR: 00:05

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

▉▉▉▉▉▉

VERSUS

▉▉▉▉▉▉

CIVIL ACTION

NO. 24-825

SECTION "P" (3)

**Original Filed at Docket No. 189, Sealed by Court Order**

## ORDER

Considering the Joint Motion to Seal Case Docket and Amend Case Caption (R. Doc. 186),

**IT IS ORDERED** that the Motion (R. Doc. 186) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties may re-urge their motion to seal as follows. The motion to seal and its attached documents **should not be filed under seal.** The parties are authorized, however, to use pseudonyms, **including in case captions**, with respect to all filings going forward on a provisional basis.[1]

**IT IS FURTHER ORDERED** that both the supporting memorandum and the proposed order and reasons should specifically address the prior decisions in this matter relative to the use of pseudonyms.

---

[1] Should the Court grant the motion to seal, this will avoid the need to continuously update the contents of the "mirror docket."

**IT IS FURTHER ORDERED** that the motion should address an approach by which all existing docket entries are sealed but a "mirror docket"[2] (to be constructed and submitted by the parties) would be filed in the record to accurately reflect sealed documents (other than as stated in footnote 2). With respect to Court orders, redactions rather than pseudonyms should be used. It is incumbent upon the parties to identify a method of indicating in the "mirror docket" that the original documents remain under seal and that changes have been made as described above.

New Orleans, Louisiana, this 7th day of May, 2026.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

---

[2] For ease of filing and review, the mirror docket should consist of a single document that includes all of the sealed documents (modified to reflect pseudonyms and redactions) with a table of contents.